## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COURT OF MASSACHUSETTS

| | |
|---|---|
| Ina Steiner, | |
| David Steiner, | |
| Steiner Associates, LLC, | CASE NO: _____ |
| (*Publisher of EcommerceBytes*) | COMPLAINT AND DEMAND |
| Plaintiffs | FOR A JURY TRIAL |
| | |
| vs. | |
| | |
| eBay, Inc., | |
| Progressive F.O.R.C.E.Concepts, LLC | |
| Devin Wenig, | |
| Steve Wymer, | |
| James Baugh, | |
| David Harville, | |
| Brian Gilbert, | |
| Stephanie Popp, | |
| Stephanie Stockwell, | |
| Veronica Zea, | |
| Philip Cooke, | |
| John and Jane DOE, | |
| Defendants | |

## INTRODUCTION

1.     eBay, a multinational *Fortune 500* Company with a market value of over $47 billion,

engaged in a systematic campaign to emotionally and psychologically torture Ina and

David Steiner, the two-person team behind a small ecommerce trade publication,

EcommerceBytes. eBay, along with Progressive F.O.R.C.E Concepts, LLC, (hereinafter

"PFC") engaged in a coordinated effort to intimidate, threaten to kill, torture, terrorize,

stalk and silence the Steiners, in order to stifle their reporting on eBay.

1

2.    Ina and David Steiner, a married couple living in Natick, Massachusetts, operate
EcommerceBytes, a trade publication where the Steiners report about various ecommerce
companies, including eBay, in an effort to assist ecommerce sellers. The Steiners provide
factually based reporting on the inner-workings of various ecommerce companies, to
keep subscribers and readership for their trade publication – many of whom are eBay
sellers – up to date and informed.

3.    Defendant Devin Wenig, then Chief Executive Officer of eBay, and Defendant Steven
Wymer, then Senior Vice President and Chief Communications Officer of eBay,
consistently tracked EcommerceBytes' reporting, and became increasingly enraged by
what they perceived as the Steiners' negative coverage of eBay and the upper echelons of
the corporation.

4.    eBay, through its Chief Executive leadership, sent a directive and enlisted at least seven
members of the eBay security staff – Defendants James Baugh, David Harville, Brian
Gilbert, Stephanie Popp, Stephanie Stockwell, Philip Cooke, and Veronica Zea, an eBay
contractor employed by PFC, most of whom, on information and belief directly or
indirectly reported to eBay's Head of Security and Operations  – to deal with the Steiners.
Defendants Wenig and Wymer provided the other Defendants with carte blanche
authority to terminate the reporting of the Steiners by whatever means necessary, with
Defendant Wymer expressing "…I want to see ashes. As long as it takes. Whatever it
takes." Defendant Wymer promised the Defendants he would, "embrace managing any
bad fallout" if the plan went south, further directing, "We need to STOP her."  All of the
horrific, vicious and sickening conduct that followed was committed by employees of

eBay and PFC, while acting in the scope of their employment under the authority of and for the benefit of eBay and PFC.

5.     The events that followed shock the conscience, and demonstrate the utter depths eBay would stoop to in order to take the Steiners down and end their reporting on eBay. Starting with an online intimidation campaign, the Defendants taunted Ina Steiner using a phony Twitter handle pretending to be an eBay seller, and directly threatened her to stop reporting on eBay. The online attacks continued to escalate into threatening and disturbing package deliveries, which included live spiders, cockroaches, a bloody pig mask, a funeral wreath, and a book entitled "Grief Diaries: Surviving Loss of a Spouse" sent directly to David Steiner. These messages and deliveries often were accompanied by ominous simultaneous Twitter messages such as "do I have your attention now, cunt?" Shockingly graphic and vulgar messages, such as "U are sick motha fuckers…and every one will kno! U fuckin cunt ass bitch!" paired with taunting emails and deliveries, including pornography and "Hustler: Barely Legal" magazines sent to the Steiner's neighbors' home in David Steiner's name, to defame the Steiners and attempt to disgrace them and tarnish their reputation within their community.

6.     After several days of around the clock threatening and vulgar emails, packages and online messages, Defendants Wenig and Wymer's henchmen, including Defendants Baugh, Harville and Zea, traveled over 3,000 miles from California to Natick, Massachusetts to continue the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners.

7.     The Defendants, including but not limited to Defendants Zea and Harville, carrying out the orders of eBay senior executives, menacingly stalked and tailed the Steiners in a

black van and other rental vehicles, repeatedly circling the block, tracking their every move, and following David Steiner when he left the residence. The Defendants even went as far as to attempt to break into the Steiner garage in order to install a GPS tracking device on their vehicle. The Defendants, including but not limited to Baugh, Harville and Zea, had practiced installing a tracking device on a similar vehicle in California, in an eBay parking lot, for this specific purpose. Simultaneously, the Defendants who remained in California, including but not limited to Defendants Popp, Stockwell, Cooke and Gilbert, continued with the online threats and stalking, and their menacing skull avatar Twitter handle began publicly posting the Steiners' home address on Twitter along with threats to kill the Steiners. The Defendants also posted the Steiner's address on Craigslist and other websites, inviting strangers to the Steiners' home for sex parties, and advertising yard sales, announcing that would-be visitors should knock on the door at all hours because "Everything must go!"

8. Fearing for their lives, the Steiners installed surveillance cameras to monitor anyone approaching their home. The Steiners manned the surveillance footage at all hours of the day and night, and stayed in separate bedrooms so that if any of the Defendants broke into their home or attacked one of the Steiners, the other could escape and call for help.

9. The Steiners were paralyzed with fear. Their calls to the local police grew more frequent, which Defendants Zea and Popp, at the direction of Defendant Baugh, monitored with a police scanner in an attempt to stay one step ahead of both the Steiners and any law enforcement.  The Defendants knew the panic and fear they were inflicting on the Steiners by carrying out Defendants Wenig and Wymer's plan, which only fueled their fire: they praised one another that their "work" was accomplishing their goal of intimidating,

threatening, torturing, terrorizing, stalking and silencing the Steiners.  The Defendants callously joked that the Steiners were "seeing ghosts, think everyone is following them and they call the police every 10 minutes," and "We know the targets have been impacted by this op." Despite recognizing the mental and emotional anguish the Defendants were inflicting, the Defendants continued to persist with the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners.

10.    Once the Defendants realized that the Natick Police Department ("NPD") was investigating the conspiracy, the Defendants plotted to destroy evidence, mislead the investigation, and divert attention away from eBay. Defendant Baugh called a meeting and directed the others to delete all communications and evidence relating to the scheme, and the Defendants persistently lied to investigators and fabricated evidence. Their cover-up attempts included efforts to create a fake dossier, and a phony "persons of interest" file on the Steiners to make them appear crazy, and ensure the Defendants could deflect their own blame when interacting with law enforcement.

11.    Ultimately, Defendants Cooke, Gilbert, Popp, Stockwell and Zea pled guilty to an Information in Federal District Court, District of Massachusetts, and Defendants Baugh and Harville were indicted, as a result of Defendants' conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, and for misleading and tampering with the investigation.

12.    Defendant Wymer's employment was terminated by eBay, and Chief Executive Officer Defendant Wenig departed eBay with a $57 million severance package.

13.    At all times relevant to this Complaint, the individually named Defendants were acting in concert with one another, as agents and employees of eBay and/or PFC, within the scope

of their employment with the intent to benefit their employers in furtherance of eBay's

direct command – through Chief Executive Officer Defendant Wenig and Senior Vice

President Chief Communications Officer Defendant Wymer – to silence the Steiners and

their reporting, and all actions taken were in furtherance of that goal. When Defendants

Baugh, Harville, Gilbert, Cooke, Popp, Stockwell, and others were carrying out the

directives of Defendants Wenig and Wymer, all were acting within the scope of their

employment with and for the benefit of eBay. Defendant Zea and other Jane and John

DOE Defendants were either employed by eBay, or contracted by eBay through PFC; in

carrying out the directives of Defendants Wenig and Wymer, they were acting within the

scope of their employment.

14.     eBay and PFC's conspiracy – through its employees and contractors – to intimidate,

threaten, torture, terrorize, stalk and silence the Steiners was successful and harmful. As a

natural and foreseeable consequence of Defendants' coordinated efforts, Defendants'

conduct has had a devastating effect on the emotional and mental well-being of David and

Ina Steiner, causing permanent harm. The unrelenting stream of threats to kill, disturbing

deliveries, as well as the physical surveillance caused the Steiners to suffer from

significant and continuing emotional distress, including but not limited to, anxiety, panic

attacks, persistent and debilitating concerns about their physical safety, habitual insomnia,

embarrassment, humiliation, shame and perpetual fear that they are being followed and

tracked, all of which suffering continues now and will continue in the future.  The conduct

of the Defendants has also defamed both Steiners' names within the community, and

online.

15.    The conspiracy also caused harm to EcommerceBytes because the Defendants' actions have had a chilling effect on EcommerceBytes' ability to report on eBay, where the conspiracy has caused would-be sources and customers to avoid further dealings with the Steiners for fear that they will become eBay's next victims. Moreover, at the time of this conspiracy, the Steiners and EcommerceBytes were the leading source of ecommerce information and data nationwide, but the conduct of eBay and PFC has had a stifling effect on their reporting, hampering current and future business growth.

16.    The Steiners bring this action to put an end to the Defendants' conspiracy and the violation of their state and Constitutional rights, including but not limited to freedom of speech and press, to ensure that such harassment does not again happen to them or any other journalists, to seek redress for the significant emotional, physical and economic harm it has caused, and to seek to become whole again as a result of the damage to their business and reputation.

## JURISDICTION AND VENUE

17.    This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendants are citizens of different states, and the amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs. Plaintiffs David and Ina Steiner are both citizens of Massachusetts. On information and belief, Defendants Wenig, Wymer, Baugh, Harville, Gilbert, Popp, Stockwell, Zea, and Cooke are all citizens of California. eBay is incorporated in Delaware, and its principal place of business is in California. PFC is incorporated in Nevada, and its principal place of business is in Las Vegas, Nevada.

18.   This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 based on the federal claims asserted under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.*, and 18 U.S.C. §§ 1343, 1962, and 1964.

19.   This Court may exercise supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

20.   This Court has personal jurisdiction over Defendants pursuant to M.G.L. c. 223A, § 3(a) and (c), because the Defendants caused tortious injury in this Commonwealth by acts committed outside of Massachusetts where eBay regularly transacts business in Massachusetts, and the Defendants caused tortious injury by acts in this Commonwealth. Defendants committed intentional torts purposefully directed at Plaintiffs, residents of Massachusetts, with knowledge that their actions would harm and cause Plaintiffs emotional and economic injury in their home state of Massachusetts.

21.   Venue is proper in the District Court of Massachusetts pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred in Massachusetts.

**THE PARTIES**[1]

22.   Plaintiffs Ina and David Steiner are citizens of Massachusetts, residing in Natick, Massachusetts, and own and operate Steiner Associates, LLC.

---

[1] The Plaintiffs reserve their right to amend this Complaint and add additional parties and claims as discovery progresses.

23.     Steiner Associates, LLC is the publisher for EcommerceBytes, a leading trade publication for ecommerce information. Steiner Associates, LLC has a principal place of business in Natick, Massachusetts.

24.     Defendant eBay, Inc. is a Delaware corporation with its principal place of business in San Jose, California.

25.     eBay is a multinational ecommerce corporation that facilitates online sellers and buyers through its website. In 2020, eBay ranked 295th in the *Fortune 500* with a market value of over $47 billion and over 13,000 employees worldwide.

26.     Defendant PFC is a Limited Liability Company with its principal place of business in Las Vegas, Nevada. On information and belief, PFC has five separate companies operating under its umbrella: (1) training in armed and unarmed self-defense, including firearm training; (2) consulting services; (3) an online store selling tactical products and equipment; (4) a Crossfit gym; and (5) Skypointe Concierge, a concierge firm that provides "unique services." Upon information and belief, eBay hired PFC in December of 2018. PFC hired analysts for eBay, and paid their salaries, including but not limited to Defendant Zea, and John and Jane DOE.

27.     Defendant Devin Wenig, eBay's former Chief Executive Officer of eBay, upon information and belief, resides in Los Altos Hills, California and holds a Juris Doctor from Columbia Law School. Defendant Wenig is admitted to the bar in New York, and his membership is active.

28.     Defendant Steve Wymer, eBay's former Senior Vice President and Chief Communications Officer of eBay, upon information and belief, resides in California. According to eBay, Defendant Wymer oversaw "company reputation."

29. Defendant James Baugh is an individual who, on information and belief, resides in both Utah and San Jose, California, is a citizen of California, and was eBay's Senior Director of Safety & Security in charge of its Global Security and Resiliency business.

30. Defendant Brian Gilbert who, on information and belief, resides in San Jose, California, was Senior Manager of Special Operations for eBay's Global Security Team. Defendant Gilbert was responsible for executive protection, special events security and safety at eBay's North American offices. Defendant Gilbert is a former police captain in Santa Clara, California.

31. Defendant Stephanie Popp resides in San Jose, California. She served as Senior Manager of the Global Intelligence Center ("GIC"), which was an intelligence and analytics group within GSR that supported eBay's security operations.

32. Defendant Stephanie Stockwell is an individual who, on information and belief, resides in Redwood City, California. She was an intelligence analyst for PFC until May of 2019, when she was hired by eBay as manager of the GIC.

33. Defendant David Harville is an individual who, on information and belief, resides in Gilroy, California. He was the Director of Global Resiliency at eBay.

34. Defendant Philip Cooke is an individual who, on information and belief, resides in San Jose, California. He was hired by eBay in April of 2019, and supervised security operations at eBay's offices in Europe and Asia. Defendant Cooke worked for PFC from April 2018 through October of 2018. Defendant Cooke is a former police captain in Santa Clara, California. On information and belief, Defendant Cooke was promoted by eBay in October of 2019 to Director.

35.    Defendant Veronica Zea is an individual who, on information and belief, resides in Santa Clara, California. Defendant Zea was an eBay contractor who worked as an intelligence analyst in the GIC. Defendant PFC, upon information and belief, was paid by eBay during Defendant Zea's employment to serve as her manager throughout her placement at eBay.

36.    Jane and John DOE Defendants were employees of either eBay or PFC.

37.    Together, Defendants Baugh, Gilbert, Popp, Stockwell, Harville, Zea and Cooke make up some of the members of the eBay security division and, on information and belief, the entire team was a direct report eBay's head of security and operations, who ultimately reported to Defendant Wenig. Defendant Wymer, on information and belief, was a direct report to Defendant Wenig. All Defendants were responsible for the intimidation, threats, torture, terrorization, stalking and silencing of the Steiners, acts that occurred during the scope of their employment. All took instructions, both directly and indirectly, from senior management of eBay.

38.    The aiding and abetting and/or the failure to intervene and/or prevent the acts of eBay, its employees and contractors, including but not limited to, Defendants Wenig, Wymer, Baugh, Harville, Cooke, Gilbert, Popp, Stockwell and Zea give rise to liability on the part of other DOE Defendants.

### THE FACTS

39.    In 1999, the Steiners started a trade publication – AuctionBytes which later transformed into EcommerceBytes – reporting on ecommerce companies to assist sellers in the very early days of internet commerce. From its beginnings, the trade publication was a key resource for sellers and businesses that sell items online, on a number of platforms, such

as eBay and Amazon, and later Etsy and others. Plaintiff Ina Steiner serves as EcommerceBytes' reporter and editor. Plaintiff David Steiner, Ina's husband, is its publisher and is also a reporter for the trade publication.

40. eBay has always been a frequent topic of reporting by EcommerceBytes. As a result, it has been a crucial resource for eBay sellers since the inception of the online marketplace. The Steiners' reporting was instrumental in developing a cohesive resource for buyers and sellers of ecommerce goods, with a stellar reputation of seller advocacy and information.

41. Ina Steiner created the Twitter account handle, @EcommerceBytes, to promote her reporting and provided the email, ina@EcommerceBytes.com, to allow users of the trade publication a means by which to communicate with her. More than 50 eBay executives and employees subscribed to the EcommerceBytes newsletter over the years, including high level management and public relations personnel.

42. While eBay was an advocate and collaborator in EcommerceBytes' beginning days, even inviting the Steiners to interview executive team members and other employees and contractors, eBay executives under a new tutelage with Defendant Wenig took issue with the Steiners' reporting of eBay and its upper management. Resistance to the site, and its reporting began in May of 2012, when eBay falsely accused and reported EcommerceBytes as a phishing site. eBay later admitted its error and retracted its report.

43. eBay employees also frequently used fake identities to post in the comment section below EcommerceBytes news articles, but the IP addresses for the comments were associated with eBay. This action was in violation of EcommerceBytes' user agreement. Oftentimes,

the comments were critical of the Steiners, EcommerceBytes, and attacked legitimate commenters and users of the website.

44.     In January of 2019, an outside investor, Elliott Management, a hedge fund known for its reputation in cutting costs and driving profits, bought a portion of eBay stock and sought changes within the company. Defendants Wenig, Wymer, and other executive leadership within eBay became increasingly concerned about declining market sales and any perceived negative news coverage.

45.     EcommerceBytes was followed with interest by eBay executives, including Wendy Jones, eBay's head of security and operations, and eBay's public relations personnel.

46.     On or about January 2019, the executive leadership at eBay, including Defendants Wenig and Wymer, expressed frustration with Ina Steiner's frequent reporting on eBay. Defendant Baugh directed Defendant Stockwell, and later Defendant Zea, to monitor the EcommerceBytes newsletter posts, and instructed them to screenshot them and forward the posts to Defendant Baugh via WhatsApp, an encrypted messaging application, on a real-time basis, day or night, any day of the week. This was done to keep executive leadership up to date on an immediate basis.

47.     EcommerceBytes allowed its readers the opportunity to leave comments below the articles. Oftentimes in articles relating to eBay, the anonymous comments were critical of eBay, in general, and of its executive leadership, in particular.

48.     One commenter of the publication, in particular, who was best known by his handle "Fidomaster," expressed negative opinions regarding eBay.

49.     For example, on or about May 21, 2019, Plaintiff Ina Steiner reported that eBay had built on its campus an expensive replica of Walker's, a popular Manhattan bar, and noted that

no expense had been spared. Fidomaster tweeted a link to Ina Steiner's article and criticized Defendant Wenig for undertaking such a lavish project while eBay was experiencing cost reductions, layoffs and scrutiny by activist investors.

50.    With no evidence of a connection, senior members of eBay's Security Division, including Defendants Baugh, Harville and Gilbert, wrongfully believed there was a relationship between the Steiners and Fidomaster.

51.    In the spring of 2019, Defendant Baugh held a meeting with the other Defendants and other members of GSR where he discussed sending a fake threatening letter to the Steiners, with a post-stamp making it appear as if the letter came from a disgruntled seller in Texas.

52.    Around this same time, executives, including Defendants Wenig and Wymer, retained a consultant firm.

53.    The consultant firm produced a report "Next Steps: Alternative Digital Methods for Reducing Impact of [Ina Steiner] and [David Steiner] and [Ecommercebytes]." The report outlined strategies that would drive the Steiners' articles lower in search engine results.

54.    Absent any evidence, the Defendants, including but not limited to Defendants Baugh, Harville and Gilbert, were convinced the Steiners and Fidomaster were working together. On or about June 8, 2019, acting within the scope of his employment and in an effort to carry out eBay's directive and goal to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, Defendant Gilbert, at Defendant Baugh's direction, flew cross country from California to Boston and drove to the Steiner's home in Natick, Massachusetts and scrawled the word "FIDOMASTER" on their fence.

55.   Defendant Gilbert, acting within the scope of his employment and at the direction of

Defendant Baugh, also began reconnaissance into the Steiners' lives, attending a yard

sale at the Steiner home falsely posing as a potential buyer to gain intelligence so that

eBay could carry out their conspiracy to intimidate, threaten, torture, terrorize, stalk and

silence the Steiners, and interfere with their First Amendment and Article 16 rights.

56.   As part of the conspiracy to silence EcommerceBytes, and the Steiners' reporting,

Defendants Wenig, Wymer, Baugh, Harville, Gilbert, Cooke, Popp, Stockwell, Zea and

John and Jane DOE, all while acting within the scope of their employment with eBay and

PFC, set a plan in motion to destroy the Steiner's business.

57.   The Defendants' conspiracy to intimidate, threaten, torture, terrorize, stalk and silence

David and Ina Steiner with the purpose to end their reporting about eBay was

documented in emails and text messages, including:

- In response to a text sent by Defendant Wenig that linked to an article in which Ina Steiner observed that Defendant Wenig's $18 million compensation was 152 times that of an average eBay employee, Defendant Wymer wrote "[w]e are going to crush this lady."

- When discussing the Wall Street Journal coverage on eBay, Defendant Wenig texted to Defendant Wymer, "[f]uck them. The journal is next on the list after [Ina Steiner]."

- Defendant Wymer texted to Defendant Baugh, "[Ina] is out with a hot piece on the litigation [between eBay and Amazon]. If we are ever going to take her down . . . now is the time."

- When Defendant Wymer noted an article by Ina Steiner where she indicated Defendant Wenig "promised to give sellers greater protection" was "[s]hockingly reasonable," Defendant Wenig responded, "[t]ake her down."

- In a text exchange between Defendants Wymer and Baugh, Defendant Baugh stated, "[Devin Wenig] said to burn her to the ground correct?" and Defendant Wymer responded, "[Ina Steiner] is a biased troll who needs to get BURNED DOWN…I want to see ashes. As long as it takes. Whatever it takes."

- In an email from Defendant Wymer to Defendant Baugh, Defendant Wymer states that the website "gives [him] ulcers, harms employee moral [sic], and trickles into everything about our brand. I genuinely believe these people are acting out of malice and ANYTHING we can do to solve it should be explored. Somewhere, at some point, someone chose to let this slide. It has grown to a point that is absolutely unacceptable. It's the 'blind eye toward graffiti that turns into mayhem syndrome and I'm sick about it. Whatever. It. Takes."

- Defendant Wenig's wife texted Defendant Baugh privately about a comment below an EcommerceBytes newsletter, where a commenter called Defendant Wenig a "con artist and thief."  Defendant Wenig's wife wrote to Defendant Baugh, "Im not exactly thrilled with this post on my favorite [Newsletter]. The author gets people worked up with the way she skews her stories. Don't tell [Defendant Wenig] I sent this I'm just letting you know about it. Ok?"

58. Ina Steiner was exercising her First Amendment and Article 16 (amended by Article 77) right to report on eBay, which she had done for nearly two decades before eBay formed its conspiracy and created an internal task force to "find and destroy" the Steiners.

59. Defendants Wenig and Wymer, members of the eBay executive leadership, directed and granted the other Defendants carte blanche authority to torture the Steiners with whatever means necessary, expressing "…I want to see ashes. As long as it takes. Whatever it takes." The actions of Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea were a natural and foreseeable consequence of the directive to take the Steiners down at any cost, and all their subsequent actions occurred within the scope of their employment with eBay and PFC.

60. When discussing the conspiracy, Defendant Wymer promised to "manage any bad fallout" from the Defendants' acts, and ordered Defendant Baugh to "do whatever it takes," making it clear that all Defendants would receive support and backing from the executive leadership at eBay regardless of the volatility or force used against the Steiners.

61. eBay, through its executive leadership, including Defendants Wenig and Wymer, conspired with Defendants Baugh, Harville, Gilbert, Popp, Stockwell, Cooke, Zea and

John and Jane DOE to intimidate, threaten, torture, terrorize, stalk and silence the Steiners. On information and belief, Defendants Baugh, Harville, Gilbert, Popp, Stockwell, Cooke, Zea, John and Jane DOE all reported to management, who knew or should have known of the conspiracy given its scope.

62.   As admitted to by Defendants Gilbert, Popp, Stockwell and Zea during their plea hearings, the conspiracy was set in motion to attempt to eliminate what eBay executives viewed as negative coverage of eBay, to put a final end to the Steiners' reporting. The conspiracy was also enacted to send a message to all reporters that any negative reporting into eBay would not be tolerated. All Defendants knew or should have known that the plan would cause great harm, where it was reasonably foreseeable that such a relentless campaign of around-the-clock threats, harassment, and stalking would cause the Steiners to suffer emotional, physical and economic harm.

63.   Although the stated purpose of the duties of the employees of eBay's security division GSR was to eliminate legitimate security threats worldwide, with a sizeable budget and an entire department devoted to carrying out that objective, the Defendants, acting within the scope of their employment and under directions from executive leadership, used those corporate resources like personal weapons to intimidate, threaten, torture, terrorize, stalk and silence the Steiners from providing legitimate reporting on eBay.

64.   eBay's Chief Executive Officer, Defendant Wenig, and eBay's Senior Vice President and Chief Communications Officer, Defendant Wymer gave the directive to do "whatever it takes," granting the Defendants broad discretion to use their sought-after background and skills, including Defendants Baugh, Harville, Cooke and Gilbert's past law enforcement and military experience and training. This allowed Defendants to engage in whatever

means necessary to carry out eBay's goal of intimidating, threatening, torturing, terrorizing, stalking and silencing the Steiners.

65.     eBay, through its hiring practices, sought employees with the unique experience and skills necessary to engage in the type of behavior used during the course of the conspiracy. eBay used its vast resources to form an internal army with the idiosyncratic proficiency needed to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, and the tactics used by Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell, Zea and John and Jane DOE were reasonably foreseeable. Defendants eBay, PFC, Wenig, and Wymer knew or should have known that their directives would result in emotional, physical and economic damage to the Steiners.

66.     At all times relevant to the allegations in this Complaint, all the named individual Defendants acted in concert with one another, in furtherance of eBay's directive – through its executive leadership, Defendants Wenig and Wymer – to silence the Steiners. Members of management knew or should have known subordinates were engaging in the vast conspiracy, using eBay resources and time. All acts, whether committed individually or together, were in furtherance of this goal, and are attributable to eBay due to the conduct, direction and commands of its Chief Executive Officer Defendant Wenig, and Senior Vice President and Chief Communications Officer, Defendant Wymer. All Defendants were acting within the scope of his or her employment during the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners.

67.     On August 1, 2019, Ina Steiner published an article about the lawsuit eBay filed against Amazon. It was a short post that ended with Plaintiff Ina Steiner questioning Defendant Wenig's strategy in dealing with Amazon. Within a half hour of the article's posting,

eBay through its CEO, Defendant Wenig, texted Senior Vice President and Chief Communications Director Defendant Wymer "[Ina] is out with a hot piece on the litigation. If we are ever going to take her down . . . now is the time." Defendant Wymer responded, "[o]n it." This cruel directive to take the Steiners' down would then travel down the chain of command at eBay.

68.    Disseminating Defendant Wenig's orders, Defendant Wymer texted Defendant Baugh: "[h]atred is a sin" and "I am very sinful," to which Defendant Baugh replied that he was ready to escalate stating, "I'm not fucking around with her anymore." Defendant Wymer responded, "[a]men. I want her DONE." Defendant Baugh replied, "[Wenig] said to burn her to the ground correct?" Defendant Wymer wrote "[s]he is a biased troll who needs to get BURNED DOWN." Defendant Wymer assured Defendant Baugh that he would "embrace managing any bad fall out. We need to STOP her."



69.    Each of the Defendants, including eBay and PFC's employees and contractors – Defendants Devin Wenig, Steve Wymer, James Baugh, David Harville, Brian Gilbert, Stephanie Popp, Stephanie Stockwell, Veronica Zea, Philip Cooke –  directly or indirectly engaged in the intentional and malicious attacks against the Steiners during the scope of their employment, at the direction of eBay through its senior management staff,

with the intention of chilling the Steiner's First Amendment and Article 16 rights through the stifling of the Steiner's reporting.

70. Not only were the directives from executive leadership, including Defendants Wenig and Wymer, with respect to the Steiners clear, the culture itself within eBay fostered an almost cult-like atmosphere where employees were not only expected, but required, to fulfill company directives, regardless of criminality. On information and belief, eBay was known to break down analysts psychologically, and there was a high turnover rate for employees, which executives at eBay knew or should have known was due to the culture.

71. Defendant Baugh, the ringleader, referred to himself as "Dad" and claimed to have worked for the CIA. He used off-kilter techniques to get within the heads of the other Defendants. On one occasion, after discovering a knife on a barbeque grill onsite, Defendant Baugh warned his team that a deranged person could have found it and used it to stab someone, and proceeded to maniacally stab a chair to prove this point.

72. Defendant Baugh, acting within the scope of his employment with eBay, would often call meetings where he would play movie clips in an effort to perpetuate the code of silence and the requirement that all members of the conspiracy display the utmost loyalty towards other members of the group. This behavior was well known and could have easily been corrected or prevented by eBay. During one such meeting, Defendant Baugh played a clip from "American Gangster" where Denzel Washington casually executed a man in front of a crowd in order to prove a point. On another occasion, Defendant Baugh played a scene from "The Wolf of Wall Street" where the federal government was investigating lurid activities, but somehow none of the perpetrators could recall a thing. Defendant Baugh also played a clip from "Meet the Fockers" about a retired CIA agent's

"circle of trust" and Defendant Baugh would often warn "we'll keep it in the circle of trust" when secrets within the Global Resiliency department arose.

73. On another occasion, Defendant Baugh went as far as to have all employees' personal belongings stripped from their lockers and dumped into trash bags in order to teach them that they were not entitled to privacy at work. Defendant Baugh then played a clip from "Full Metal Jacket" about locker discipline.

74. The GSR employees, reporting to Defendant James Baugh consisting mainly of women, were referred to as "Jim's Angels" amongst eBay executive leadership, demonstrating that the sick and dysfunctional culture was well known and rose to the top echelons.

75. When planning out the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, Defendant Baugh played a clip from the 1988 movie *Johnny Be Good*, in which two friends arranged for the delivery to their football coach's home of a series of unwanted items and people, including $283 in pizzas, an elephant, a male stripper, an exterminator, and Hare Krishna's missionaries. Defendant Baugh said he wanted to do the same to the Steiners and asked the Defendants, including but not limited to Defendants Popp and Stockwell, to brainstorm other things they could deliver to the Steiner residence to carry out the conspiracy to intimidate, threaten, torture and silence the Steiners. During this meeting there was a discussion about sending a coffin to the Steiner residence.

76. During the same meeting, Defendant Baugh shared messages from Defendant Wymer, and informed the other Defendants, including Popp, Gilbert and Cooke, that eBay, through Defendants Wenig and Wymer, sanctioned this conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners.

77.     Armed with directives from Defendants Wenig and Wymer, Defendant Baugh and the

other Defendants, including Harville, Gilbert, Popp, Cooke, Stockwell and Zea, set in

motion their conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the

Steiners. As admitted by Defendants Gilbert, Popp, Stockwell and Zea during their plea

hearings, the conspiracy was set in motion due to the communications between

Defendants Wenig, Wymer and Baugh.

78.     Defendant Popp, acting within the scope of her employment, created the Twitter account

handle @Tui_Elei (hereinafter "the Tui_Elei Account"), and Defendant Baugh approved

the image of a menacing skull for the account avatar to further intimidate the Steiners.

79.     The Defendants, including but not limited to Baugh, Gilbert, Cooke, Popp, Stockwell and

Zea intimidated and threatened to kill the Steiners by sending and approving a series of

anonymous tweets and Twitter direct messages to the Steiners to create an impression that

there were eBay sellers who disapproved of EcommerceBytes' coverage of eBay, as

admitted to by Defendants Gilbert, Popp, Stockwell and Zea during their plea hearings.

The tweets were drafted by Defendant Popp, and approved by other members of the

conspiracy, including but not limited to Defendants Baugh, Cooke and Gilbert.

80.     The messages included:

- "I guess im goin to have to get ur attention another way bitch. . ."

- "U don't have the balls to talk to me?? Stop hiding behind ur computer screen u fuckin cunt!!!"

- "Ur fat pussy husband [David Steiner] needs to be put in line cunt"

- "after he takes the plugs out of his asshole . . . fucking pussies!!!"

- "U are sick motha fuckers . . . and every one will kno! U fuckin cunt ass bitch!!"

"wen u hurt our bizness u hurt our familys… Ppl will do ANYTHING 2 protect family!!!!"



81.     On or about August 8, 2019, Plaintiff Ina and David Steiner's email was flooded with

over 53 email subscriptions they had never signed up for, which were harmful to their

reputation and terrifying upon receipt, including but not limited to:



82.     The emails, which were signed up for by the Defendants in the Steiner's name, included

subscriptions to pornography, bondage, cadaver interest, sex toys and anthropornography.

83.     Around this same time, Defendant Zea, while attempting to conceal her appearance,

purchased prepaid debit cards at a Safeway grocery store in Santa Clara, California, to

23

use in the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners.

84.    On or about August 6, 2019, Defendant Stockwell purchased a laptop computer to assist in the campaign to intimidate, threaten, torture, harass, stalk and silence the Steiners. Defendant Stockwell admitted to purchasing the laptop for use in the conspiracy during her plea hearing.

85.    On or about August 8, 2019, Defendant Zea purchased a prepaid phone and laptop with cash at a Best Buy in San Jose in furtherance of the conspiracy. Defendant Zea admitted to purchasing a laptop and phone for use in the conspiracy during her plea hearing.

86.    Defendants subjected the Steiners to a steady stream of threatening and disturbing deliveries to their home for items they had never ordered. Defendants Gilbert, Popp, Stockwell and Zea admitted to these deliveries during their plea hearings, and that they were for the purpose of intimidating and harassing the Steiners to end their reporting. These items came from unknown leased servers with IP addresses that were undetectable, further signifying the vast resources of eBay and the Defendants in their common use of avoiding detection.

87.    On or around August 10, 2019, the Defendants, acting in the scope of their employment with eBay and PFC, ordered a "Preserved Fetal Pig" to the Steiner residence. The Steiners received a phone call relating to the pig on August 10, 2019.



88.     The Defendants also ordered a Halloween mask of a bloody pig face from the movie

SAW, delivered later that day on August 10, 2019, as admitted to by Defendants Gilbert,

Popp, Stockwell and Zea during their plea hearings. The mask was a trademark in the

SAW movies, which became the last image each victim would see before they were

abducted, tortured and killed.



89.     On August 11, 2019, in a text message to Defendant Baugh, Defendant Wymer ordered:

"I want to see ashes. As long as it takes. Whatever it takes." The actions that followed

were a natural and foreseeable consequence of the directive, and were committed by

Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea during the scope

of their employment, for the benefit of eBay.

90.     Defendant Baugh shared Defendant eBay's additional directives with the other

Defendants, acting in concert, stating, "I've been ordered to find and destroy."

91.     On or about August 12, 2019, Defendants, acting within the scope of their employment

with eBay and PFC, threatened to kill the Steiners by sending the book "Grief Diaries:

Surviving Loss of a Spouse" to the Steiner home, as admitted to by Defendants Gilbert, Popp, Stockwell and Zea during their plea hearings.



92.     On or about August 14, 2019, the Defendants, acting within the scope of their employment with eBay and PFC, sent a package from Carolina Biological Supply in Burlington, North Carolina that contained fly larvae and live spiders and a box of cockroaches from Dubai Roaches in Wichita, Kansas to the Steiners. The package was ordered by Defendant Stockwell using a Protonmail account that was specifically created for the conspiracy.



93.     The Steiners were terrified and feared for their lives.

94.     In direct response to the intentional and malicious acts of the Defendants, and the conspiracy hatched by eBay and its senior management to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, the Steiners took steps to protect their personal safety and their home. Concerned about identity theft, fraud and financial mayhem, the

Steiners froze their accounts with three the major credit agencies, adding to their economic suffering, and their loss of property.

95.   On or about August 13, 2019, the Steiners received a call from a representative of Adam & Eve, an adult sex toy store, because the Defendants signed them up as potential franchise owners.

96.   The Defendants, including but not limited to Baugh, Harville, and Zea, acting within the scope of their employment with eBay and PFC, travelled cross-country from California to the Steiners' hometown of Natick, Massachusetts in order to further carry out the goals and directives of the conspiracy through physical stalking, surveillance and threats.

97.   In order to provide cover for their trip to Natick to stalk the Steiners, on or about August 14, 2019, Defendants Harville and Zea falsely registered for a software development conference that was being held in Boston.

98.   While they were admitted off the waitlist for the conference, neither Defendant Harville nor Defendant Zea ever attended the event. According to Defendant Zea's plea hearing, neither she nor Defendant Harville ever intended on attending the conference.

99.   As admitted to by Defendants Gilbert, Popp, Stockwell and Zea during their plea hearings, in furtherance of eBay's directive to silence the Steiners, and so they could continue to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, the Defendants, including but not limited to Defendants Baugh, Harville, and Zea, conspired to place a GPS device on the Steiner's vehicle.

100.  Just prior to departing California for Natick, Defendant Baugh, acting within the scope of his employment with eBay, practiced installing a GPS device on a car in the eBay parking lot that was similar in make and model to one owned by the Steiners.  On

information and belief, the Defendants used their past law enforcement experience and resources to gain intelligence on the Steiners and determined the make and model of the Steiners' vehicle before traveling to Natick. This GPS would allow the Defendants to learn the location of the Steiners' travels in order to carry out the goals of the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, which would also have the result of exposing the Steiner's journalism sources.

101.   Defendant Baugh's premeditated acts demonstrate the conscious knowing and embracing of unlawful behavior condoned by Defendant eBay through its senior management, including but not limited to Defendants Wenig and Wymer.

102.   On or around August 15, 2019 Defendants Baugh, Harville and Zea, all acting within the scope of their employment with eBay and PFC for the benefit of eBay, traveled to Massachusetts. Utilizing eBay funds and acting at the direction of eBay to silence the Steiners, Defendants Baugh, Harville and Zea rented two vehicles and checked into the Ritz Carlton in Boston.

103.   Upon arriving, Defendants Baugh, Harville and Zea, acting within the scope of their employment with eBay and PFC, drove to the Steiners' home in Natick on or around 11:30pm on August 15, 2019, to physically stalk the Steiners in furtherance of the conspiracy to threaten to kill, intimidate, torture, terrorize, stalk and silence the Steiners.

104.   On or around August 15, 2019, Defendants Baugh, Harville and Zea, acting within the scope of their employment with eBay and PFC, approached the Plaintiffs' home to install a GPS tracking system on the Steiner's vehicle. Their attempt was thwarted because the Steiners had locked their vehicle in their garage.

105.    While Defendants Baugh, Harville and Zea attempted to install the GPS device,

Defendant Popp, who remained in California, monitored the NPD dispatch to alert the

other Defendants of any police detection, as admitted to during her plea hearing.

106.    On or about August 15, 2019, the Defendants threatened to kill the Steiners when they

sent an ominous funeral wreath to the Steiner residence.



107.    On or about August 15, 2019, Defendants acting within the scope of their employment

with eBay and PFC sent pornographic magazines entitled "Hustler: Barely Legal" to the

Steiners' neighbors, with David Steiner's name on the mailing label in an attempt to

defame the Steiners within their community.



108.    On the evening of August 15, 2019, Defendants Baugh and Harville discussed a plan to

break into the Steiner's garage and once again trespass and attempt to install the GPS

tracking system on the Steiner car.

109.    The Steiners bought and installed security cameras for their home, which they now
        monitored at all hours of the day and night. Within hours of installing the new security
        cameras, footage of a black Dodge van driven by Defendant Baugh with Defendant Zea
        circling the neighborhood, was captured. The Steiners began staying in separate
        bedrooms so they could divide their efforts, in the event one or more of the Defendants
        attempted to break into their house, since it was now apparent the Defendants knew and
        publicized their home address, and the attacks on their home were causing severe
        emotional distress. David Steiner stayed in the front bedroom in order to watch the
        surveillance footage on the big screen, while Ina Steiner stayed in a back bedroom in
        order to monitor any potential intruders coming through the back of the home. The
        Steiners installed several battery powered alarms, as well as placed baking trays on top of
        a laundry cart and positioned it against the back door so that they would know if someone
        broke into their home.

110.    On or about August 16, 2019, Defendant Harville, acting within the scope of his
        employment with eBay, purchased a slotted screwdriver, a 6-in-1 painters' tool, a two-
        ended catspaw with pry bar and rubber gloves, from a Boston hardware store in order to
        attempt to break into the Steiner garage to install the GPS device.

111.    On or about August 16, 2019, Defendants Baugh and Zea, acting within the scope of their
        employment with eBay and PFC, again drove to Natick to the Steiners' home to
        intimidate, threaten, torture, terrorize, stalk and silence the Steiners, and continued
        stalking the Steiners and their residence in a rented black van.

112.    The Steiners realized that they were being followed and surveilled and notified the NPD.
        Defendant Zea was monitoring the NPD dispatch and quickly informed the Defendants,

including but not limited to Defendants Baugh and Harville, that the NPD had been alerted and the Defendants immediately left the area.

113. In the days that followed, not only did the Defendants predatorily stalk and surveil the Steiners by driving around the block repeatedly, they also parked at the end of the street to watch the Steiner residence. When David Steiner left his home, the Defendants followed him throughout town, causing David Steiner to believe the Defendants were there to kill him. The Steiners remained in their home and cancelled countless visits they had planned with friends and family out of fear they would expose their loved ones to the stalking campaign. Not knowing who was following them and what could happen, they were in fear for their own lives, and the lives of their loved ones. The Steiners installed a dashcam in the rear window of their car to detect and record anyone following them. The dashcam remains in their car to this day.

114. This predatory behavior caused the Steiners severe and debilitating anxiety, stress, and fear of leaving their home. This imprisonment caused permanent psychological harm.

115. On or about August 16, 2019, Defendant Baugh directed the Defendants who remained in California, including but not limited to Defendants Popp, Stockwell, Gilbert and Cooke, to continue to carry out the conspiracy to intimidate, threaten torture and harass and silence the Steiners by sending more threatening deliveries to the Steiner residence. While conspiring, Defendant Harville suggested having chainsaw or human feces delivered to the Steiners, while Defendant Baugh suggested sending a dead rat.

116. Defendant Baugh instructed Defendant Stockwell to send an emergency plumber to the Steiners' home. Defendant Stockwell also used an eBay issued cell phone to research an adult exotic dancer website, as admitted to during her plea hearing.

117.   eBay and the other Defendants working in concert knew or should have known that their
actions would cause the Steiners to become paralyzed with fear, which was their intent.
Any reasonable person would be terrorized by the Defendants' actions, and, in fact, the
Steiners did experience debilitating fear, were unable to sleep, and lived in terror that
they may be killed.

118.   During the course of the conspiracy, the Defendants barraged the Steiners with
unrelenting, around-the-clock threatening Twitter messages, emails, and deliveries, which
they knew or should have known would terrorize and frighten the Steiners.

119.   The Defendants strategically selected a book on spousal death, together with the funeral
wreath, and the SAW pig mask so that the Steiners would truly believe that the stalkers
were going to kill them, and to make them feel as though their lives were in imminent
danger.

120.   The Steiners did, in fact, fear for their lives, and believed they could be killed at any
moment.

121.   Due to the nature of the Defendants' calculated conspiracy, where the Defendants hid
their identity but made known that they were aware of the Steiners' address and were not
afraid to attack their home, the Defendants purposely and maliciously inflicted terror onto
the Steiners. The Defendants knew or should have known that the unrelenting stalking
and threats would cause the Steiners to be on high alert, constantly anticipating and
preparing for the next menacing act. The Steiners were, in fact, on high alert and installed
several surveillance cameras outside the residence, manning the footage at all hours of
the day and night to defend themselves against this campaign of terror and threats to kill

by eBay, at the direction of its senior management and others, including Defendants Wenig and Wymer.

122.    In fear of, and in further protection of their home, the Steiners asked a friend to park his car at the end of their driveway to prevent any vehicles from entering, fearing that the Defendants would send a large order to be dumped on their driveway to block in their vehicle. They also created accounts for independent mail sources so they could preview any deliveries.

123.    The Defendants also mounted around-the-clock intimidation, threats, and terrorization efforts, which they knew or should have known would cause the Steiners to experience anguish and lose sleep, not knowing when the next attack would come. The nature of the conspiracy – riddled with the element of surprise, and unrelenting torture – caused the Steiners to stay in separate bedrooms in case one of them was attacked, the other could get out safely and call for help. David Steiner stayed in the master bedroom in the front of the house so he could watch a live feed of the surveillance footage on the large screen television, while Ina Steiner stayed in the back bedroom to hear any would-be intruders attempting to break-in from the back. Any reasonable person would feel terrorized by the Defendants' actions, and that was the Defendants' intent when using their background and training to formulate a psychological torture campaign.

124.    On or around 4:30am on August 16, 2019, David Steiner observed a black vehicle pull up in front of their home, and an unknown man exited.  The man then pulled a large leather bag out of the vehicle which, David Steiner reasonably thought, contained a rifle.  David Steiner reasonably believed he and Ina would be killed.  Terrified, he shouted to his wife Ina to call 911.

125.  Ina Steiner called 911 and reported that a man who may have a gun was at her house.

126.  As Ina Steiner was on the phone with the police, David Steiner yelled for the person to put the bag down but did not receive a response. Instead, the man approached closer with the bag. The Steiners were terrified, and David continued to yell at the man, while Ina Steiner urged the police to come as quickly as possible because she believed the man had a gun.

127.  The man left what he was carrying at the front gate – which turned out to be a pizza delivery – ordered by the Defendants around 4:30am.

128.  The Defendants knew or should have known that an unknown person showing up at their home at 4:30am, after threatening to kill the Steiners and subjecting them to around the clock relentless stalking, harassment and psychological attacks, would cause them to fear for their lives. Any reasonable person would believe they were about to be killed, and in fact, when they saw the man approaching their home with a large bag, the Steiners thought the man was there to kill them.

129.  Defendants eBay, Devin Wenig, Steven Wymer, James Baugh, David Harville, Stephanie Popp, Stephanie Stockwell, Philip Cooke, Brian Gilbert, Veronica Zea, contractor for PFC, and Jane and John DOE Defendants, knew or should have known the directives and conduct would cause the permanent psychological trauma and damage to the Steiners, which they now suffer from. The Steiners continue to worry about their personal safety and have lost the security previously associated with the sanctity of their home.

130.  In an effort to conceal the existence of the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, Defendant Baugh, acting within the scope of his employment with eBay, ordered Defendants Stockwell and Zea to create a false

document featuring the Steiners as eBay Persons of Interest ("POI").  Defendants created

this defamatory, false document on or about August 15, 2019, to suggest the Steiners had

a history of threats against eBay and its executive management. As admitted to by

Defendant Gilbert during his plea hearing, the Defendants attempted to use the Steiners'

status as purported "Persons of Interest" to justify and provide cover for eBay's presence

in Boston, to falsely claim they were there to investigate the Steiners and their purported

threats against eBay and members of its executive leadership, and to undermine the

Steiner's credibility with law enforcement in an attempt to make the Steiners appear

crazy thus defaming their reputations and their credibility.

131.   Moreover, dubbing the Steiners as "Persons of Interest" was an attempt to provide

legitimacy for their attack on the Steiners.

132.   Instead of using eBay's near-bottomless resources to investigate, monitor and eliminate

legitimate threats, eBay through their own internal army, used eBay resources to torture,

intimidate, threaten and stalk the Steiners, who were providing legitimate news coverage

on eBay. Defendants Wenig, Wymer and other senior executives and management knew

or should have known that corporate resources were being used for illicit undertakings

and sanctioned the behavior.

133.   On information and belief, the head of security and operations had the responsibility for

overseeing the Defendants, including but not limited to Defendants Baugh, Harville,

Gilbert, Cooke, Popp, Stockwell and Zea, while Defendants Wenig and Wymer,

executives at eBay, were actively directing the unlawful behavior.

134.   On or about Sunday, August 18, 2019, despite the ongoing criminal investigation, the

Defendants continued their conspiracy to intimidate, threaten, torture, terrorize, stalk and

silence the Steiners. After circling the block several times, the Defendants parked at the end of the Steiners' street in their silver GMC SUV and awaited David Steiner's departure.

135.   The Defendants began following David Steiner, and were forced to abort their plan when they realized David Steiner had photographed their vehicle.

136.   The Steiners shared the photograph of the license plate with the NPD.

137.   On or about August 20, 2019, the Defendants, acting within the scope of their employment with eBay and PFC, resumed their surveillance and stalking efforts but abruptly aborted their mission upon noticing a Jeep with tinted windows parked outside the Steiner's home, which they correctly assumed was an undercover police officer assigned to protect the Steiners.

138.   In a subsequent series of WhatsApp messages to the other Defendants, Defendant Baugh wrote "[t]hey are seeing ghosts now. Lol." In his communication to Defendant Popp, Defendant Baugh attached a link to the audio recording of an NPD dispatcher describing the threats, intimidation and silencing of the Steiners, "[a] little glimpse of what all your hard work is has led too. And stuff like this around the clock." That same day, Defendant Popp traveled to Natick to assist in the in-person harassment, threats and stalking, and Defendant Harville returned to California.

139.   On or about August 17, 2019, at 11:30pm the Defendants acting within the scope of their employment with eBay and PFC, caused another delivery of pizza to the Steiners.

140.   On or about August 18, 2019, the Defendants, acting within the scope of their employment with eBay and PFC, caused a classified advertisement for a house party to be posted on Craigslist with the Steiner's home address provided as the location.

141.    On or about August 18, 2019, Defendants acting within the scope of their employment with eBay and PFC, doxed the Steiners, and Defendant Popp, through the Tui_Elei Account, publicly posted the Steiners full name and address then asked "Dis UR address??"

142.    Immediately afterwards, the Defendants, through the Tui_Elei Account, sent a private message to Ina Steiner asking, "U get my gifts cunt???"

143.    On or about August 20, 2019, the Defendants, acting within the scope of their employment with eBay and PFC, sent a third neighbor of the Steiners a pornographic magazine with Plaintiff David Steiner's name on the address label.

144.    On or about August 18, 2019 at around 3:00pm, the Defendants, acting within the scope of their employment with eBay and PFC, posted another Craigslist advertisement claiming to be the Steiners identified as a married couple seeking a sexual partner or partners and providing the Steiners' home address.



145.    Defendant Baugh sent a clip to the other Defendants with a link to the 2003 movie *Old School* in which the character arrives at home unannounced, stating: "I'm here for the gang bang," and commenting, "this has been the Steiners' house for the past five nights."

146.    On or about August 20, 2019, Defendants acting within the scope of their employment

with eBay and PFC, also posted an online advertisement for an "Everything must go!"

estate sale, again listing the Steiner's home address as the location.



147.    It was reasonably foreseeable and all Defendants knew or should have known that

soliciting random strangers to the Steiners' home at all hours, who would be seeking to

take the Steiners' personal belongings or engage in sexual activity, would terrorize the

Steiners; this was, in fact, the Defendants' intent when posting advertisements listing the

Steiners' address on Craigslist and the other websites.

148.    Any reasonable person would be terrified, and the Steiners were in fear for their lives

when strangers started showing up at their door, unannounced.

149.    The Steiners again called the police, thinking they would soon be killed.

150.    Defendant Gilbert, acting within the scope of his employment, attempted to link the

Defendants' threatening and intimidating deliveries they sent to silence the Steiners with

Santa Clara gift cards to the Samoan sounding Twitter accounts, @Tui_Elei and

@Elei_Tui. Defendant Gilbert, as admitted during his plea hearing, proposed creating

more anonymous Twitter accounts to support "our cause," and proposed content for the

specific Twitter posts criticizing the newsletter.

151.    Around the same time, Defendant Gilbert, as part of his formal duties at eBay, on

information and belief, was assisting a well-known eBay seller. Defendant Gilbert was

assigned to assist the eBay seller and investigate an incident where the seller was

attacked. Instead of assisting the seller, Defendant Gilbert created a fake Twitter handle

in an attempt to assume the seller's identity, to send the Steiners menacing messages,

with the potential to shift the blame from eBay onto an honest, true eBay seller, and

attempt to make the seller the fall guy.



152.    The Steiners contacted the NPD once again when the Defendants started posting

threatening tweets through several contrived eBay accounts. The accounts were all

created by the Defendants, falsely pretending to be eBay sellers, one with a sinister skull

mask as its avatar, and another with a disturbing image of a pig.



153.    After their original @Tui_Elei Account was suspended, Defendant Popp, acting within

the scope of her employment with eBay, created a second account with a slight iteration

to the username, @Elei_Tui.  Using the new account, Defendant Popp posted: "[n]ice try.

. . [Ina] U cant shut me down!!"

154.    Another account by Defendant Popp, @TopSeller13, posing as a legitimate eBay seller, posted "[Ina] focuz on sumthin else and stop fuckin with our customers!!! I dunt wanna c unuther fuckin post bout #ebay. . . Leave our bizness alone!!! @Elei_Tui."

155.    Defendant Popp, using the account with the sinister mask, responded to @TopSeller13 stating, "I agree! [Ina] is hurting small business with all the negativity and pushing buyers to Amazon!"

156.    These new accounts by Defendant Popp were created, acting within the scope of her employment with eBay, as a decoy; sending tweets to the Steiners were additional efforts by the Defendants to continue to conceal the conspiracy from law enforcement, to mislead the ongoing investigation, and divert attention from eBay by attempting to make it appear as though disgruntled eBay sellers were behind the campaign to terrorize the Steiners.

157.    Defendant Popp forwarded the fake Twitter exchange to Defendants Baugh and Gilbert via their eBay work email accounts and falsely claimed that the Steiners were "really bringing out some angry Twitter users."

158.    Defendant Popp admitted that she falsely claimed she had discovered the tweets rather than written them herself to lend credence eBay's false claims of assistance to the Steiners. The messages were sent via eBay work email accounts in the event they were accessed as part of an investigation, and to lend credence to the false allegations that the Steiners were "Persons of Interest."

159.    Defendant Gilbert, Baugh and Popp, emboldened and sanctioned by eBay, engaged in discussion over eBay corporate email that obstructed the investigation and defamed and blamed the Steiners for the Defendants' own conspiracy.

160. As admitted to during his plea hearing, Defendant Gilbert wrote to Defendants Popp and Baugh "[t]he more I thought about it I do think we should bring a dossiers on the [Plaintiffs] to the PD. Definitely want to make them look crazy," carrying out Defendant eBay's directive to "burn her down." Defendant Baugh replied, "I agree" and Defendant Popp responded "[c]opy re dossiers."

161. In an effort to carry out the directives of eBay through its senior management staff Defendants Wenig and Wymer, Defendants Baugh, Harville, Gilbert and Popp, intended to share the fabricated dossiers with the NPD to create the appearance that the Steiners were crazy, to defame them, and discredit their reports of intimidation, threats to kill, and torture.

162. The Defendants knew or should have known their actions would cause the Steiners emotional and psychological harm, including but not limited to stress, anxiety and fear, which they callously acknowledged through texts: at one point Defendant Baugh texted Defendant Stockwell, "We've 'burned' 2 of our rental cars by following them…now they are seeing ghosts, think everyone is following them and they call the police every 10 minutes." Defendant Gilbert later texted, "…We know the targets have been impacted by this op."

163. Despite recognizing the terror the Defendants were inflicting upon the Steiners, they continued to persist with the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, demonstrating depravity, actual malice and reckless disregard. The conduct was intended to cause injury, and it was despicable conduct which was carried out by the Defendants with a willful and conscious disregard for the rights and

safety of Ina and David Steiner. The conduct also subjected the Steiners to cruel and unjust hardship in conscious disregard for the Steiner's rights.

164.   On or about August 20, 2019, in an effort to conceal the Defendants' conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, Defendant Gilbert, acting within the scope of his employment with eBay, proposed that co-conspirators "pin the deliveries to a POI in the San Jose or Santa Clara Area" noting that "[m]ost eBay employees live in San Jose or Santa Clara. So it's just a coincidence."

165.   Defendant Baugh instructed Defendant Popp "to find a local POI," and Defendant Popp, in turn, delegated the job to Defendant Stockwell.

166.   Defendant Gilbert, acting within the scope of his employment with eBay, proposed creating a "Samoan POI" who would become the "primary suspect" and believed such a move "actually might help the entire op," in an effort to conceal the Defendants' conspiracy to intimidate, threaten torture, terrorize, stalk and silence the Steiners.

167.   In an effort to conceal and obstruct the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, Defendant Gilbert, acting within the scope of his employment with eBay, suggested to other co-conspirators that they should blame the Steiners for the acts of the conspiracy. He wrote, "I'll brief the cops on the [Steiner's] background and make them look like the problem."

168.   On or about August 20, 2019, Defendant Popp, acting within the scope of her employment with eBay and in an effort to obstruct the investigation, emailed Defendant Gilbert a Bay Area POI false report to support the claim that a POI was responsible for the pizza delivery that would deflect attention from Defendant Zea.

169.   In an effort to conceal the Defendants' conduct and obstruct the investigation, Defendants Baugh, Harville and Gilbert, some of whom are former police officers, acting within the scope of their employment with eBay, discussed intervening with any San Jose area police that the NPD contacted as part of their investigation.

170.   Defendant Gilbert, acting within the scope of his employment with eBay and in an effort to obstruct the investigation, explained that if the NPD raised the issue, then he "might volunteer to assist with that. Then we can control the local cop and maybe provide a video from a different Santa Clara Safeway."

171.   Defendant Baugh continued to conspire with his co-Defendants to attach the GPS device to the Steiners car stating "[i]s there a chance in hell we are even gonna try to put the tracker on at this point?"

172.   On or about August 21, 2019, Defendant Zea, with the assistance of Defendant Popp, removed her public LinkedIn profile to obstruct the NPD from discovering the connection between the conspiracy and eBay, as admitted to during their plea hearings.

173.   On August 22, 2019, in another effort to conceal their conspiracy and obstruct the investigation Defendant Zea, acting within the scope of her employment with eBay and PFC, lied to NPD about the rental car that David Steiner photographed, as she admitted during her plea hearing.

174.   When the NPD made the connection between Defendant Zea and eBay and attempted to interview Defendant Zea regarding her presence in Natick, Defendant Baugh, acting within the scope of his employment with eBay and in an effort to obstruct the investigation, answered Defendant Zea's phone. Defendant Baugh lied to the detective

claiming he was Defendant Zea's husband and insisted that any questions to Defendant Zea could be directed to him, as admitted to by Defendant Zea during her plea hearing.

175.   Defendant Baugh drove Defendant Zea to the airport to make her escape and conceal her from law enforcement, in an effort to obstruct the investigation.

176.   As part of its investigation, a member of the NPD contacted eBay in order to investigate any potential eBay involvement in the scheme.  On information and belief, the NPD officer did so by initiating contact through the dedicated portal lawenforcement@eBay.com.  When the NPD email reached the portal, on information and belief, with astounding coincidence, Defendant Gilbert was the responder.

177.   On information and belief, eBay hosts hundreds of police officers around the country at its headquarters, under the auspices of relationship building, education and familiarizing local police departments. eBay's website states *"we are committed to keeping eBay a safe place to shop and will always assist in a criminal investigation…"*.

178.   On or about August 21, 2019, Defendant Gilbert, acting within the scope of his employment with eBay and in an effort to obstruct the investigation, lied to NPD detectives and falsely claimed that he did not knew either Defendants Zea or Harville, that there was a legitimate investigation underway by Defendant eBay, and that he had to travel to NY and Toronto but would attempt to change his travel plans to come to Boston and meet with the NPD.

179.   Defendant Gilbert, acting within the scope of his employment with eBay, then traveled from California to Natick to speak to investigators with the NPD to attempt to cover-up the conspiracy, obstruct the investigation and divert attention from eBay.  During a

44

meeting with NPD, Defendant Gilbert insisted that eBay had no involvement in the intimidation and threats to silence the Steiners.

180.    As Defendant Gilbert admitted during his plea hearing, he falsely told investigators that Defendants Harville and Zea traveled to Boston to attend the software developers conference, and that Defendant Zea traveled to Natick alone.

181.    In an effort to conceal Defendants' conspiracy, Defendant Gilbert, acting within the scope of his employment with eBay, brazenly offered eBay's assistance to the NPD to investigate the torture and harassment of the Steiners.

182.    The NPD obtained store video surveillance showing Defendant Zea and another eBay employee purchasing gift cards used to send the threatening and intimidating deliveries to the Steiners.

183.    Days into the NPD investigation, Defendant Baugh messaged Defendant Gilbert, "Ina is such a cunt – that 20 year anniversary article about journalism and integrity came out of nowhere. I assume it's for the cops. These people are scum. I think we could still get [the tracker] on the car, bu[t] My concern with the tracker is that you guys patch things up and build a rapport with the local cops tomorrow then either David or Ina finds it next month during an oil change and we lose credibility with PD."

184.    In anticipation of a further investigation by the police, Defendant Baugh discussed leveraging eBay executive leadership's promises to "manage any bad fallout" stating, "[a]nd just remember, [Defendant Wymer] said this [Steiner reporting] has to stop even if there ebay takes on some risk (which we have). If I need to bring in and ebay attorney to talk to cops, I have that in my back pocket."

185.    On August 22, 2019, the FBI along with the United States Attorney's Office opened an

official investigation into the cyberstalking of the Plaintiffs, as well as the efforts to

obstruct the investigation and tamper with witnesses.

186.    While Defendant Gilbert was meeting with the NPD, Defendant Popp, acting within the

scope of her employment with eBay and in an effort to further obstruct the criminal

investigation, continued to send intimidating and threatening messages to carry out the

conspiracy's goal to silence the Steiners and was a continued attempt to divert attention

from eBay, as Defendant Popp admitted to during her plea hearing. Using @TopSeller13

account, she wrote:

- UR NOT A JOURNALIST!! U R DISTROIN FAMILYS N BIZNESS. . . N ITS ALL
  GOIN 2 CUM BAK 2 U!!

- 20 years of lies n distroin familys. . .dunt b proud of dat u worthless BITCH!!! i will
  distroy ur family n bizness 2 . . . C how u like it . . . \n\n@Elei_Tui vven r we goin 2 visit
  her in natik???"



187.    In an effort to conceal Defendants' conspiracy directed by senior management Defendants

Wenig and Wymer, Defendant Gilbert, acting within the scope of his employment with

eBay, phoned Plaintiff Ina Steiner, identified himself as an eBay employee and offered

eBay's assistance to the Steiners, as admitted by Defendant Gilbert during his plea hearing.

188.   After speaking with Plaintiff Ina Steiner, Defendant Gilbert informed the other Defendants: "[j]ust made phone contact . . . They are totally rattled and immediately referred me to the Natick PD . . . [Plaintiff] said talk to the detective and then hung up the phone." Defendant Gilbert then wrote, "[Ina] was a bitch."

189.   On or about August 23, 2019, in order to keep Defendant Wymer updated on the progress of the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, Defendant Baugh sent the following text communication to Defendant Wymer:

> [w]e will continue to cooperate but not sure how much longer we can keep this up. If there is any way to get some top cover that would be great. If not, I just wanted you to have a heads up because they are aware that multiple members of the ELT are not a fan of that website to include [Defendant Wenig] and his wife. Again, no crime was committed and local police don't have a case. I don't want our legal team to give them one. Let me know if you want to discuss this weekend.

190.   On or about August 24, 2019 and August 25, 2019, in an effort to conceal Defendants' conspiracy and obstruct the investigation, Defendant Baugh, acting within the scope of his employment, directed Defendant Popp to take down any accounts that had been used to contact the Steiners, including any accounts registered with the EcommerceBytes newsletter, as Defendant Popp admitted during her plea hearing.

191.   On August 26, 2019, on information and belief, Defendants Baugh, Harville, Popp, Gilbert, Cooke, Stockwell and Zea and others, all acting within the scope of their employment with eBay and PFC, gathered in an eBay conference room to discuss the NPD investigation of the Steiners' complaints as well as the internal investigation that was being conducted by eBay in response to the NPD's request for assistance. At this

meeting, Defendant Baugh instructed all Defendants not to talk to anyone and to keep Defendants Wenig and Wymer's names out of any conversations.

192.     During the August 26, 2019 meeting, in an effort to conceal all conspiracy activity and obstruct the criminal investigation, Defendant Baugh, acting within the scope of his employment with eBay, directed the other Defendants to delete the WhatsApp messages on their phones.

193.     On or about August 26, 2019, Defendant Harville was interviewed by eBay's legal department in response to NPD's request for assistance. The interview was conducted over the phone, without careful confidentiality protocols, instead of in person where the integrity of the investigation could be maintained.

194.     Defendant Harville kept the call on the speakerphone to allow all Defendants to hear the conversation, to collectively enable all Defendants to align their lies, and maintain a consistent story throughout the investigation.

195.     Defendant Harville lied and claimed he attended the conference in Boston with Defendant Zea, and that he had rented a vehicle in order to visit his sister, who lived in the area.

196.     On or about August 26, 2019, the legal department also conducted Defendant Popp's interview over the phone rather than in person. Because of eBay's lack of attention and adherence to protocols during the investigation, Defendant Popp was also able to allow all Defendants to listen in, so the Defendants could continue to attempt to maintain a consistent story, and thus obstruct the criminal investigation.

197.     Defendant Popp falsely claimed that Defendant Zea traveled to Boston with Defendant Harville in order to attend the conference.

48

198.    Defendant Baugh, acting within the scope of his employment with eBay, then directed
        Defendant Popp to monitor the subsequent interviews of Defendants Stockwell and Zea.

199.    Defendant Popp was able to coach Defendants Stockwell and Zea when they spoke with
        eBay's legal department, because they were not physically present for the critical
        investigation.

200.    On or about August 30, 2019, eBay placed Defendants Baugh, Popp and Harville on
        administrative leave. On the same day, Defendant Baugh directed an eBay employee to
        retrieve computers from the GIC and bring them to his house.

201.    On or about September 6, 2019, still acting within the scope of her employment with
        eBay and in an effort to obstruct the criminal investigation, Defendant Popp posted five
        new tweets to one of the Twitter accounts created and used to intimidate, threaten,
        torture, terrorize, stalk and silence the Steiners, to create the appearance that those
        responsible for the torture were still at large.

202.    On information and belief, in September of 2019, eBay terminated the employment of
        Defendants Baugh, Harville, Gilbert, Popp, and Stockwell. On information and belief,
        PFC terminated Defendant Zea.

203.    On information and belief, Defendant Cooke was promoted from Manager to Director
        following the termination of the other employees, once again calling into question the
        integrity of any internal eBay investigation. On information and belief, Defendant
        Cooke's employment was later terminated after the federal charging document became
        public and then he was subsequently charged in Federal District Court, District of
        Massachusetts.

204.   Defendant Wenig departed eBay at about the same time as the other Defendants, with a
       $57 million severance package. (Exh. F).

205.   Defendant eBay allowed Defendant Wenig to resign, rather than enacting a "for cause
       termination" later calling his behavior "inappropriate." eBay's action allowed Defendant
       Wenig to reap the substantial benefits of his severance pay and equity holdings, while
       also receiving the benefit of legal and travel costs for cooperation in future litigation, as
       detailed in his 2019 severance agreement. As noted in the 2019 severance agreement,
       eBay's compensation committee voted to allow Defendant Wenig's acceleration of
       vesting of his equity related payments.

206.   On information and belief, eBay terminated Defendant Wymer's employment with an
       unknown and undisclosed severance package.

207.   Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea were charged in
       the Federal District Court, District of Massachusetts with various offenses relating to the
       conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, and the
       attempted cover up and obstruction of the criminal investigation. (Exh. C, D).

208.   On the day that the charges became public, nearly one year after the incidents, Jamie
       Iannone, eBay's CEO, sent an email to the Steiners and in an attempt to absolve itself
       from liability, referring to the actions of "several former eBay employees." This was an
       effort to minimize the conduct, insisting the actions of the Defendants "are not
       representative of the values held by eBay team members." The email further claimed,
       "[t]hose responsible hid their actions from the company." While Iannone indicated that
       eBay had conducted its own internal investigation during the time of law enforcement's

investigation, the email did not address why Defendant Cooke was retained and promoted.

209. On May, 22, 2020, a two-count Information was returned for Defendants Gilbert, Popp, Stockwell, and Zea, (Exh. C), charging them with the following:

    a. Conspiracy to commit cyberstalking, 18 U.S.C. § 371; and

    b. Conspiracy to tamper with a witness, 18 U.S.C. § 371.

210. On June 11, 2020, a Complaint was issued charging Defendants Baugh and Harville with the following:

    a. Conspiracy to commit stalking through travel and through facilities of interstate commerce, 18 U.S.C. § 371;

    b. Stalking through interstate travel, 18 U.S.C. § 2261A(1)(B);

    c. Stalking through facilities of interstate commerce, 18 U.S.C. § 2261A(2)(B);

    d. Witness tampering, 18 U.S.C. § 1512(b)(3); and

    e. Destruction, alteration and falsification of records in a federal investigation, 18 U.S.C. § 1519.

211. On July 7, 2020, a two-count Information was returned for Philip Cooke (Exh. C), charging him with:

    a. Conspiracy to commit cyberstalking, 18 U.S.C. § 371; and

    b. Conspiracy to tamper with a witness, 18 U.S.C. § 371.

212. In October 2020, Defendants Popp, Stockwell, and Zea pled guilty to conspiracy to commit cyberstalking in violation of U.S.C. § 371 and conspiracy to obstruct justice in violation of U.S.C. § 371. (Exh. E). Defendants Gilbert and Cooke pled guilty to conspiracy to commit cyberstalking and conspiracy to commit witness tampering. (Exh.

E). The charges of conspiracy to commit cyberstalking, conspiracy to tamper with a
witness, and conspiracy to obstruct justice each carry a sentence of up to five years in
prison, three years of supervised release, a fine of up to $250,000 and restitution. In
addition to their own individual conduct, each of the Defendants admitted the following
during their plea hearings:

    a.  As recited by the Government, between approximately August 5, 2020 and

        August 23, 2020, Defendants Popp, Zea, Stockwell, Gilbert, Baugh, Harville,

        Cooke and others:

        [A]ll then employees or contractors of eBay, Inc., the multinational eCommerce
        company, agreed to engage in a stalking campaign targeting a husband and wife
        who lived in Natick, Massachusetts…The campaign targeted [the Steiners] for
        their roles in publishing a newsletter that reported on issues of interest to people
        who sold goods on eBay. Senior executives…at eBay were frustrated with the
        newsletter's tone and content and with the tone and content of comments that
        appeared underneath the newsletter's article.

        The stalking campaign…arose from communications between eBay senior
        executives and Jim Baugh, who was then eBay's senior security officer, it was
        intended to intimidate or harass [the Steiners], and was a course of conduct that
        included sending threatening communications to the victims over Twitter, which
        is an instrumentality of interstate commerce, ordering unwanted and securing
        deliveries to the [Steiner's] home through Amazon and other instrumentalities of
        interstate commerce, and to Zea's, Harville's, Baugh's and Popp's travel, from
        California to Natick, to surveil the victims in their home and community.

        The deliveries ordered to the [Steiner's] home [] included a book on surviving the
        death of a spouse, a bloody pig mask, a fetal pig, a funeral wreath, and various
        live insects. The harassment also featured Craigslist posts on the internet invited
        the public for sexual encounters or estate sales at the [Steiner's] home.

        The threatening Twitter messages were written to [Ina Steiner] and sometimes
        addressed to [David Steiner] as if they had been sent by eBay sellers who were
        unhappy with [the Steiners'] coverage in the newsletter. Some of these messages
        posted the [Steiner's] address publicly on the internet and threatened to visit the
        [Steiners] at their home…

        Mr. Baugh and Mr. Harville and Ms. Zea also traveled to Natick on August 15th.
        Mr. Baugh and Mr. Harville intended to install a GPS device on the [Steiner's]

car, but the car was safe in the [Steiner's] garage. The [Steiner's], however, spotted the surveillance team on August 16th, which led them to call the Natick Police Department in fear.

Ms. Zea, Mr. Baugh, and Ms. Popp, who arrived to replace Mr. Harville on August 17th, continued surveillance even after having been spotted by the [Steiners]. The Natick police, which was investigating the deliveries, threats, and the surveillance, connected Ms. Zea and Mr. Harville to two of the rented cars and then to eBay, who they reached out to for assistance.

When [Zea and Popp], and Ms. Stockwell, Mr. Baugh, Mr. Gilbert, Mr. Cooke, and Mr. Harville, learned that NPD was making inquiries, they agreed to prevent the Natick police from learning about the harassment campaign. With support from Ms. Stockwell, Ms. Popp, Mr. Cooke, Mr. Baugh, and others, Mr. Gilbert made false statements directly to the NPD…Ms. Popp and Ms. Zea [] made false statements to eBay in-house lawyers who were investigating in response to the Natick police's inquiries. All the co-conspirators…either deleted digital evidence related to the cyberstalking campaign or created records intended to throw Natick police off the trail.

b. Defendants Gilbert, Popp, Stockwell and Zea admitted that all co-conspirators

"agreed to harass or intimidate [the Steiners] and to use the facilities of interstate

commerce to engage in a course of conduct that caused or would reasonably be

expected to cause substantial emotional distress to [the Steiners]."

213. On November 3, 2020, a federal grand jury in Boston indicted Defendants Baugh and

Harville for conspiracy to commit stalking through interstate travel and through facilities

of interstate commerce, stalking through interstate travel, stalking through facilities of

interstate commerce, witness tampering, and destruction, alteration, and falsification of

records in a federal investigation. (Exh. B).

214. The Steiners have devoted a tremendous amount of time and effort developing

EcommerceBytes into a reputable trade publication, serving as the leading source of

ecommerce information nationwide. The trade publication built its goodwill and is highly

regarded within the ecommerce community, known for providing balanced reporting. Ina

Steiner, who serves as the face of EcommerceBytes, has gained considerable recognition and esteem for her vast knowledge of ecommerce.

215. The Defendants knew or should have known that the commercial value of EcommerceBytes' name, image and identity would be substantially diminished and tainted by the Defendants' actions, and in fact, the commercial value of EcommerceBytes was and continues to be, substantially diminished. The EcommerceBytes name is now associated with the misconduct of eBay and those acting on its behalf, and the false implication eBay attempted to portray that the trade publication was unfairly reporting negatively on eBay.

216. The Defendants' conduct manifested a depraved disregard for the Steiners' autonomy, sense of safety, psychological well-being and their good name.

217. The Steiners' business, EcommerceBytes, which relies on both advertisements as well as sourced information to provide content for news articles, has been severely impacted by the conduct of Defendants eBay, PFC, Wenig, Wymer, Baugh, Harville, Gilbert, Cooke, Popp, Stockwell, Zea, John and Jane DOE. The Defendants knew or should have known that their conduct would stifle reporting, and would cause would-be sources not to want to work with the Steiners for fear that they could also be terrorized by eBay. Without sources and new content, EcommerceBytes is unable to fully provide new material and content for its readership and subscribers, which was reasonably foreseeable to the Defendants. Not only have pre-existing customers ceased contracting with the Steiners, prior sources have been reluctant to speak to the Steiners for fear that they will next be targeted by eBay, creating a stifling effect on honest reporting, which was one of the

goals of the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners.

218.  At all material times, the actions or omissions of each Defendant were intentional and/or wanton and/or willful and/or reckless and/or callous and/or malicious and/or deliberately indifferent to Ina and David Steiner's rights.

219.  David and Ina Steiner, as well as their business, have incurred economic harms and losses as well as ongoing stress and anxiety as a result of the Defendants tortious wrongful and Constitutionally volatile conduct.

## CAUSES OF ACTION

### COUNT I: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

220.  Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 219 above, and incorporates them by reference, herein.

221.  All named Defendants' conduct towards Plaintiffs was significantly extreme and outrageous.

222.  The Defendants intentionally or recklessly engaged in outrageous conduct, including but not limited to: threatening the Steiners online; sending unwanted threatening deliveries and packages including a book on surviving the loss of a spouse, a bloody pig SAW mask, a funeral wreath, and live spiders; engaging in around-the-clock harassment; signing them up for over 50 unwanted email subscriptions, some vulgar in nature; doxing them online and soliciting strangers to their house; following them and surveilling them at all hours of the day and night; stalking and tailing them; and threatening, intimidating, harassing and terrorizing them for weeks on end. The Defendants' actions caused the

Steiners to believe they would be killed, and any reasonable person would believe the same as a result of the Defendants' relentless actions.

223. The Defendants intended to have the Steiners suffer emotional distress by engaging in the above acts that the Defendants knew or should have known would cause a reasonable person emotional distress.

224. The Defendants knew or should have known the Steiners would suffer emotional distress from the actions of all Defendants.

225. Defendants harmed Plaintiffs because their actions caused them to suffer humiliation, embarrassment, mental anguish, permanent and persistent psychological trauma and emotional distress.

226. As a direct and proximate result of the Defendants' actions, Plaintiffs were injured in mind and body. Plaintiffs suffer from significant and continuing emotional distress, including but not limited to, severe anxiety, persistent concern about their physical safety, loss of sleep, shame, humiliation embarrassment, and when in public, the chronic fear that they are being followed.

227. The conduct of Defendants proximately caused Plaintiffs to suffer, to continue to suffer, and suffer in the future, damages, in an amount which will be proven at trial.

228. The Steiners request compensatory, emotional and special damages, including lost income and damage to their business.

229. The aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants, as well as other to-be-identified John and Jane DOE Defendants.

## COUNT II: STALKING

230.   Plaintiffs reallege each and every allegation set forth in Paragraphs 1 through 229, inclusive, and incorporate them by reference, herein.

231.   This is a cause of action by the Plaintiffs against all of the Defendants working in concert both in California and Massachusetts for Stalking in violation California Civil Code 1708.7.

232.   The Defendants engaged in a pattern of conduct, the intent of which was to follow, alarm, place under surveillance and harass the Steiners.

233.   As a result of the Stalking scheme, the Steiners reasonably feared for their lives and their safety. The Steiners suffered substantial emotional distress as a result of the pattern of conduct, and the conduct would cause a reasonable person to suffer substantial emotional distress.

234.   The conduct which caused the Steiners substantial emotional distress includes but is not limited to taunting and threatening Twitter and email messages, and menacing package deliveries. The Defendants then began physically surveilling, following and harassing the Steiners in Natick, while simultaneously continuing with the threatening Twitter messages and packages sent or directed from California. The Defendants pattern of conduct caused alarm, annoyed, tormented and harassed the Steiners.

235.   Because the Steiners did not know who was stalking them, they were unable to clearly and definitively demand that the Defendants cease and abate their behavior, giving rise to exigent circumstances that rendered a demand impractical. The Defendants persisted even though they were aware that their conduct was causing the Steiners considerable distress. After the Defendants intercepted communications on the NPD police scanner

and called Ina Steiner, the Defendants acknowledged the Steiners were "rattled" and were "seeing ghosts." Despite the obvious distress they were causing Plaintiffs, the Defendants continued with their stalking campaign.

236. The Defendants acted with malice, or oppression or fraud, entitling the Steiners to punitive damages.

237. Plaintiffs have been harmed emotionally as a result of the pattern of conduct. The actions caused the Steiners to suffer, and continue to suffer, damages, in an amount which will be proven at trial. The Steiners also request general, special, punitive and exemplary damages pursuant to California Civil Code 1708.7 and Section 3294.

238. The Steiners also request injunctive relief.

239. The aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants, as well as other to-be-identified John and Jane DOE Defendants.

### COUNT III: VIOLATION OF 18 U.S.C. §§ 1962 and 1964
### (CIVIL RACKETEERING ACT)

240. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 239 above, and incorporate them by reference, herein.

241. 18 U.S.C. § 1962 (c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

242. 18 U.S.C. § 1962 (d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

243.   18 U.S.C. § 1964(c) states that "[a]ny person injured in his business or property by reason of a violation of 18 U.S.C. § 1962 may sue therefor in any appropriate United States district court…"

     **I.**     **The association in fact.**

244.   Each individually named Defendant including but not limited to Defendants Wenig, Wymer, Baugh, Harville, Gilbert, Cooke, Popp, Stockwell, Zea, John and Jane DOE is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1964(d) who conducted the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. 1962(c).

245.   eBay and PFC are persons within the meaning of 18 U.S.C. § 1961(3) because they are entities capable of holding legal or beneficial interest in property and they employed, controlled, supervised, and directed Defendants Wenig, Wymer, Baugh, Harville, Gilbert, Cooke, Popp, Stockwell, Zea, and John and Jane DOE.

246.   Both eBay individually and PFC individually, and eBay and PFC together, constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1964(d) and 1962(c), known as the "eBay/PFC Enterprise." Defendants participated, directly and indirectly, in the operation and management of the eBay/PFC Enterprise. The employees and contractors coordinated and targeted the Steiners in a scheme to intimidate, threaten, torture, terrorize, stalk and silence the Steiners into ceasing their reporting of eBay. Through its agents, eBay and PFC engaged in a pattern of racketeering activity.

247.   The members of the conspiracy consist of an association-in-fact within the meaning of 18 U.S.C. § 1961(4) consisting of (a) eBay; (b) PFC; and (c) all individually named

"persons," including Wenig, Wymer, Baugh, Harville, Gilbert, Cooke, Popp, Stockwell, Zea, John and Jane DOE, and their employees.

248. The Defendant "persons" are distinct from the eBay/PFC Enterprise.

## II.   The common purpose.

249. The conspiracy between the Defendants falls within the meaning of 18 U.S.C. § 1961(4) and consists of a group of "persons" associated together for the common purpose of: interfering with commerce by threats or violence under 18 U.S.C. § 1951; engaging in wire and mail fraud under 18 U.S.C. §§ 1341 and 1343; obstructing justice under 18 U.S.C. § 1503; and tampering with witnesses under 18 U.S.C. § 1512, while associating for the common purpose of: (1) harassing, threatening, intimidating, and silencing the Steiners, so that they would cease reporting on eBay; (2) undermining the credibility and reputation of the Steiners, by falsely claiming they were a threat to both eBay and eBay sellers (3) destroying, mutilating, and concealing emails, social media messages, documents, videos, and other evidence to prevent the use of such evidence that would uncover the conspiracy between the Defendants, or to prevent the use of such evidence to investigate or prosecute acts within the conspiracy, and interfering with the Steiners ability to file a civil lawsuit; and (4) tampering with witnesses to prevent the uncovering and investigation of the conspiracy.  The ultimate goal of the eBay/PFC Enterprise was to generate profits for, and prevent any losses to, eBay and PFC that could result from any negative reporting on eBay.

## III.   The roles of the participants.

250. The participants in the eBay/PFC Enterprise assigned each member of the enterprise a task or tasks to fulfill, with the common purpose of profitability to eBay and PFC.

251.    Defendants Wenig and Wymer identified the Steiners as the target, and orchestrated and directed all Defendants, including but not limited to Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell, Zea, John and Jane DOE and others to destroy the Steiners and their business.

252.    eBay and/or PFC, in approving the expenses of the Defendants to travel to Boston, and in supplying the funds to purchase laptops and cell phones to use during the eBay/PFC Enterprise, aided the conspiracy. eBay purposely hires former police officers and military personnel with unique experience to enable the conspiracy to thrive without detection. PFC supplied contractors and analysts to eBay with prior law enforcement and military experience. The participants in the eBay/PFC Enterprise were also able to readily access various IP addresses to aid in masking the campaign, which were available through eBay resources. eBay condoned and embraced the cult-like atmosphere, and were aware of it due to the high turnover rate.

253.    Defendant Baugh took orders from Defendants Wenig and Wymer, and disseminated the orders to Defendants Harville, Gilbert, Cooke, Popp, Stockwell, Zea and John and Jane DOE.  Defendant Baugh ordered others to destroy and fabricate evidence, and lie to investigators.

254.    Defendant Harville took orders from Defendants Wenig, Wymer and Baugh. Defendant Harville travelled across state lines for the purpose of threatening the Steiners, and assisted and conspired with other participants in the enterprise to destroy and fabricate evidence, and lie to investigators.

255.    Defendant Cooke's role, among other roles, was to assist in threatening, harassing, and intimidating the Steiners through online threats, and deliveries to their home. Defendant

Cooke assisted with fabricating persons of interest, drafting and approving Twitter messages. Defendant Cooke also conspired to and assisted with destroying and fabricating evidence. Defendant Cooke, a prior police captain, used his prior law enforcement experience, skills and training to assist with the planning, conspiring and cover-up of the conspiracy.

256. Defendant Gilbert's role was to assist in threatening, harassing and intimidating the Steiners through online threats, and deliveries to their home. Once the NPD detected the eBay/PFC Enterprise, Defendant Gilbert directed others to fabricate persons of interest, and to create a fake dossier dubbing the Steiners as a threat. Defendant Gilbert also travelled to Massachusetts to provide false information to Natick police officers, and attempt to thwart their investigation. Defendant Gilbert, a prior police captain, used his prior law enforcement experience, skills and training to assist with the planning, conspiring and cover-up of the conspiracy.

257. Defendant Popp's role in the conspiracy, among other roles, was to commit wire fraud, by creating fraudulent avatars through Twitter, in order to harass, stalk, intimidate and threaten the Steiners. Defendant Popp's role was to travel to Natick to engage in threats, intimidation, surveillance and stalking of the Steiners. Defendant Popp conspired with Defendants Baugh, Harville, Gilbert, Cooke, Stockwell, Zea and John and Jane DOE to destroy and fabricate evidence, obstruct justice and tamper with witnesses.

258. Defendant Stockwell's role in the conspiracy was to commit mail and wire fraud, by ordering frightening packages to be delivered to the Steiner's home, posting fraudulent advertisements on Craigslist to cause unwanted guests at the Steiner home, and to purchase the cell phone and computer used to carry out the fraudulent activities.

Defendant Stockwell also conspired with the other participants in the eBay/PFC Enterprise to destroy and fabricate evidence, obstruct justice and tamper with witnesses.

259.   Defendant Zea's role in the conspiracy was to travel interstate, for the purpose of carrying out the conspiracy's goal of threatening the Steiners. Defendant Zea also purchased instrumentalities used in the conspiracy, including markers to vandalize the Steiner's property, and a cell phone and computer for use in the wire and mail fraud. Defendant Zea made false statements to investigators, and fabricated and destroyed evidence to obstruct justice, and conspired with the other participants to obstruct justice and tamper with witnesses.

260.   Once the NPD caught on to the conspiracy, the role of all members was to destroy evidence, lie to investigators and mislead the investigation, which obstructed the criminal investigation and had the effect of tampering with witnesses. It also had the effect of hindering the Steiner's ability to pursue a civil suit.

261.   Defendants Harville, Gilbert, Cooke, Popp, Stockwell and Zea and others reported their activities to Defendant Baugh, who reported to Defendants Wenig and Wymer.

262.   The nature of the Defendants' acts in furtherance of the conspiracy gives rise to an inference that they not only agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(c), but also were aware that their ongoing acts have been and are a part of an overall pattern of racketeering activity. At all relevant times, all Defendants were aware of the essential nature and scope of the conspiracy and intended to participate in it.

### IV.      The goal of the racketeering conspiracy.

263.   Defendants designed and participated in this scheme in order to harm, threaten and

intimidate the Plaintiffs personally as well as professionally by causing harm to their

trade publication, EcommerceBytes. One goal of the conspiracy was to silence the

Steiner's reporting on eBay, in order to prevent any losses to eBay as a result of negative

news coverage.  The Defendants engaged in this conduct in order to generate profits for

eBay, secure and maintain investors, and engender positive goodwill for eBay. The

individual Defendants believed that their actions would render positive results for

themselves and their employer as their dedication to eBay would be apparent given the

lengths they would go to stop legitimate reporting that they deemed to be harmful to

eBay. Additionally, through their actions, Defendant eBay would generate increased

profits by eliminating the Steiners' reporting, and send other reporters a message not to

engage in any negative reporting on eBay, or its executive staff.

### V.      Pattern of racketeering activity and predicate acts.

264.   The Defendants have conducted and participated in the affairs of the eBay/PFC

Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§

1961(1) and 1961(5), which includes: (i) multiple violations of 18 U.S.C. § 1951 by

interfering with commerce by threats or violence, (ii) Multiple violations of 18 U.S.C. §

1341 by engaging in mail fraud, (iii) Multiple violations of 18 U.S.C. § 1343 by engaging

in wire fraud, (iv) Multiple violations of 18 U.S.C. § 1503 by obstructing justice, and (v)

Multiple violations of 18 U.S.C. § 1512 by tampering with witnesses and victims.

265.   Each of the individually named Defendants engaged in at least two or more predicate acts under 18 U.S.C. § 1962 (c). The Defendants willfully, knowingly, and unlawfully conspired, combined, and agreed together to violate 18 U.S.C. § 1962 (c).

266.   The Defendants' acts are related and amounted to or posed a threat of continued criminal activity.

   a.   The conspiracy was closed-ended in that it occurred over a substantial period of time, where the first predicate act occurred in 2009, and where the Steiners were the victims with the common purpose of attempting to silence their reporting on eBay:

      i.   On April 28, 2009, an eBay employee engaged in wire fraud.  The employee fraudulently posed as an anonymous eBay seller, and wrote criticizing remarks in the EcommerceBytes comments section, slandering the website. The IP address belonged to an eBay employee in the public relations department.

      ii.   In May of 2012, members of eBay engaged in wire fraud.  An eBay employee from eBay's audit, fraud and investigations department, while acting in the scope of his employment, falsely reported EcommerceBytes as a phishing website, in order to have the website removed from the internet. At that point, as eBay was aware, EcommerceBytes had been operating as a legitimate website for over 13 years. The fraudulent activity was an attempt to silence the Steiners, and eliminate their legitimate reporting on eBay.

iii. On January 28, 2014, an eBay employee engaged in wire fraud.  The employee, fraudulently acting as a legitimate EcommerceBytes user, attacked a long-standing user of the website, fostering a threatening environment intended to intimidate users. Interactions with the EcommerceBytes website (and all websites), drives Google and other search engine metrics. As a result, causing a downturn in interactions with the website has a direct correlation to rankings, traffic to the website and, in turn, profits.

iv. On October 15, 2018, an eBay employee engaged in wire fraud.  The anonymous user posed as an eBay seller and made derogatory comments towards users of the EcommerceBytes website. The comments were linked to an eBay IP address, and the fraudulent activity had the effect of attacking legitimate EcommerceBytes users.

v. In the Spring of 2019, Defendant Baugh and the other Defendants conspired to commit mail fraud. The Defendants discussed sending a fake threatening letter to the Steiners, with a post-stamp making it appear as if the letter came from a disgruntled seller in Texas. The purpose was to attempt to silence the Steiners.

vi. On or about June 8, 2019 Defendant Gilbert, at Defendant Baugh's direction, flew cross country from California to Boston and drove to the Steiner's home in Natick, Massachusetts and scrawled the word "FIDOMASTER" on their fence. This act had the common purpose of attempting to threaten and silence the Steiners.

    vii.  During the month of August 2019, the Defendants, including but not limited to Defendants Baugh, Harville, Cooke, Gilbert, Popp, Stockwell, Zea and others stalked, harassed, intimidated, tortured and attempted to silence the Steiners through online threats, package deliveries, in-person stalking and surveillance, and then destroyed evidence, obstructed justice and tampered with witnesses and victims.

b.  The conspiracy was open-ended, where the racketeering activities include a specific threat of repetition extending indefinitely into the future, or are part of eBay's regular way of doing business:

    i.  In October of 2018, eBay executives, including Defendants Wenig and Wymer, intimidated a YouTube journalist into removing a negative YouTube video about the company.

    ii.  During the month of August 2019, the Defendants, including but not limited to Defendants Baugh, Harville, Cooke, Gilbert, Popp, Stockwell, Zea and others stalked, harassed, intimidated, tortured and attempted to silence the Steiners through online threats, package deliveries, in-person stalking and surveillance, and then destroyed evidence, obstructed justice and tampered with witnesses and victims.

    iii.  While conspiring to attack the Steiners, in April of 2019, the Wall Street Journal published an article discussing Defendant Wenig's $18.2 million compensation. In response, Defendant Wenig texted Defendant Wymer, "The journal is next on our list." On information and belief, eBay employees then conspired as to ways to attack the Wall Street Journal.

iv.  Not only did eBay and its agents and employees conspire to target
     journalists other than the Steiners, demonstrating a threat of repetition, the
     racketeering acts were part of an eBay's ongoing and regular way of doing
     business. The culture within eBay requires the utmost loyalty and the
     expectation that all employees will carry out the goals and directives of
     eBay, and eBay has engaged in a pattern of hiring not only people with the
     background and experience held by the Defendants, with the expectation
     that they will utilize their military and police backgrounds to engage in the
     type of conduct that occurred here, but also impressionable, young entry-
     level employees to act as low-level analysts within the security
     department. The security division, on information and belief, suffers from
     an enormously high turnover rate due to the culture of breaking down low-
     level employees psychologically, and re-building them into the type of
     employee that will blindly follow orders.

v.   The Defendants, including but not limited to Defendants Popp, Stockwell
     and Zea also had readily available access to IP addresses and servers that
     allowed the participants within the eBay/PFC Enterprise to disguise their
     identities. Such sophistication demonstrates familiarity with the tools used
     to threaten, intimidate and harass the Steiners, and suggests a common
     modus operandi, coupled with the frequency with which eBay employees
     use fraudulent identities online, to pose as non-eBay employees.

vi.  During the planning stages before Defendants Baugh, Harville, Zea and
     Popp traveled to Massachusetts, the Defendants were able to decipher and

learn the make and model of the Steiner vehicle. This also demonstrates a level of sophistication and experience, suggesting the Defendants were tapping into their prior military and law enforcement experience and tools.

vii. The culture and hiring practices within eBay, as well as the use of intimidation tactics to influence and conspire against other reporters suggests that there is an ongoing threat of repetition, and demonstrates eBay's regular way of doing business.

267. The Defendants engaged in the following racketeering activities:

a. Multiple violations of 18 U.S.C. § 1951 by interfering with commerce by threats or violence.

i. Defendant Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea knowingly affected interstate or foreign commerce:

1. Through their trade publication, the Steiners engage in commerce, by facilitating the transfer of goods through EcommerceBytes classifieds, and also provide information as well as advertising through its Newsletter and trade publication.

2. Defendants Zea, Baugh, Harville and Popp flew from California to Natick in order to stalk, threaten, harass, intimidate and silence the Steiners, thereby hampering commerce activities facilitated through the trade publication;

3. Defendants Zea and Popp admitted during their plea hearing that they both traveled to Natick for the purpose of stalking,

intimidating and harassing the Steiners, in order to eliminate their reporting on eBay;

4. Defendants Zea, Popp, Stockwell and Gilbert admitted during their plea hearing to utilizing Twitter, an instrumentality of interstate commerce, to threaten physical violence against the Steiners, in order to eliminate their reporting on eBay;

5. Defendants Wenig and Wymer conspired with the Defendants, including but not limited to Baugh, Harville, Gilbert, Cooke, Popp, Stockwell, Zea and others, to stalk, threaten, harass, intimidate and silence the Steiners through threats of violence, and to travel across state lines in order to attempt to silence the Steiners, through their directive to "do whatever it takes" to take down the Steiners, and thereby conspired with them to commit threats or violence which effect interstate commerce.

b. Multiple violations of 18 U.S.C. § 1341 by engaging in mail fraud. The Defendants used the mails for the transmission, delivery, or shipment of the following by the Defendants or third-parties that were foreseeably caused to be sent as a result of the Defendant's illegal scheme:

i. Used U.S. Mail in furtherance of the scheme;

ii. Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea mailed threatening, intimidating and harassing items to the Steiners, which was for the purpose of intimidating, threatening and coercing the Steiners,

so that they would cease reporting on eBay, which in turn, would cause damage to the trade publication's business;

   iii.   Defendants Cooke, Popp, Gilbert, Stockwell and Zea admitted to mailing a book on surviving the death of a spouse and a bloody pig mask – veiled death threats – to the Steiners, in order to threaten and intimidate them into ceasing all reporting on eBay;

   iv.   Defendants Wenig and Wymer conspired with the Defendants, including but not limited to Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell, Zea, and John and Jane DOE and others to stalk, threaten, harass, intimidate and silence the Steiners by use of the mail, through their directive to "do whatever it takes" to take down the Steiners, and conspired with the other Defendants to commit the predicate acts.

   v.   The mail transmissions described herein were made in furtherance of the Defendants' scheme and common course of conduct to threaten, intimidate, harass and silence the Steiners and their reporting on eBay, and use of the mail was foreseeable to all participants.

c.   Multiple violations of 18 U.S.C. § 1343 by engaging in wire fraud. The Defendants used the wires for the transmission or delivery of the following by the Defendants or third-parties that were foreseeably caused to be sent as a result of the Defendant's illegal scheme:

   i.   Emails, texts and telephone calls with inquiries or meetings to conspire about the attacks on the Steiners;

   ii.   Construct false identities and online avatars to deceive the Plaintiffs;

iii.  Mail and wire transmissions to carry out the scheme and common course
of conduct;

iv.  In May of 2012, Defendant eBay, or an employee acting on its behalf
within the scope of his or her employment, fraudulently reported the
EcommerceBytes website as a phishing site. At that point, as eBay was
aware, EcommerceBytes had been operating as a legitimate website for
over 13 years;

v.  In August of 2019, the Defendants posed as the Steiners and subscribed to
over 50 email subscriptions, including but not limited to:

1.  Satanic Temple membership

2.  Narcotics Anonymous

3.  Communist Party

4.  BDSM

5.  Blazing Grace

6.  Central for Islamic Pluralism

7.  Dapper Cadaver newsletter

8.  Adam and Eve

9.  Black Velvet Seductions

10. Bondage Accessories and luxury bondage tools

11. Babeland sex toys

12. Shameless book deals (erotica)

13. MNFURS

14. Jihadology

15. Pleasure Pantry

16. Irritable Bowel Syndrome news

17. TSA

18. Bible Study software

19. Furry migration

20. Allugottoday – Instagirls

vi.  Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea created fake avatars and identities on Twitter, and contacted the Steiners using threats of violence, intimidation and coercion in order to prevent any further reporting on eBay. During their plea hearings, Defendants Popp, Stockwell, Zea, and Gilbert admitted to creating the false Twitter accounts, and using them to attack the Steiners.  Defendants Popp, Gilbert, Stockwell and Zea admitted during their plea hearings that they then created other accounts to attempt to conceal their illegal actions;

vii.  The Defendants, including but not limited to Defendants Gilbert, Stockwell, Popp and Zea, posted fraudulent Craigslist and other classified websites, inviting strangers to the Steiners home for sex and estate sales;

viii.  Defendants Wenig and Wymer directed the conspiracy through the use of wire communications, where they discussed taking down the Steiners over text and email;

ix.  Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea conspired to and did obstruct justice by destroying evidence and tampering with witnesses through the use of wire communications, where they

discussed deleting all phone, social media activity and email activity over Whatsapp.

    x.   The wire transmissions and communications were made in furtherance of the Defendants' scheme and common course of conduct to intimidate and threaten any members of the public who engaged in reporting on eBay.

   xi.   In furtherance of the scheme to defraud, it was reasonably foreseeable that interstate wire communications would be used, and interstate wire communications were in fact used. Defendants caused to be transmitted by means of wire communication in interstate commerce numerous communications that were designed to defraud Plaintiffs out of property and money, and to cause reputational harm.

d.   Multiple violations of 18 U.S.C. § 1510 by obstructing justice.

    i.   Defendants Popp, Zea and Stockwell pled guilty to conspiracy to obstruct justice;

   ii.   Once the Defendants realized members of the Natick Police Department were investigating their conduct, Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea destroyed evidence, lied to investigators and misled the Natick Police investigation in order to both further and conceal their racketeering activity;

  iii.   Defendants Popp, Stockwell, and Zea did plead guilty to conspiracy to obstruct justice. During their plea hearings, both Defendants admitted to destroying evidence, including deleting electronic communications, and lying to investigators.

    iv.   Defendant Baugh also contacted Defendant Wymer, and requested he institute the previously promised "manage any bad fallout" from Defendants Wenig and Wymer, thereby conspiring to obstruct justice.

e.   Multiple violations of 18 U.S.C. § 1512 by tampering with witnesses and victims.

    i.   Defendants Gilbert and Cooke pled guilty to tampering with witnesses;

    ii.   "Tampering with a witness, victim or an informant," provides in pertinent part:

> (2) Whoever uses physical force or the threat of physical force against any person, or attempts to do so, with intent to –
> (C) hinder, delay, or prevent the communication to a law enforcement officer…information relating to the commission or possible commission of a Federal offense…
> shall be punished…

    iii.   Here, the Defendants, including but not limited to, Defendants Baugh, Harville, Cooke, Gilbert, Popp, Stockwell, Zea and others used the threat of physical force to hinder, delay or prevent the Steiners from reporting and communicating with officers to report the Defendants' activities.

    iv.   Defendants Baugh, Harville, Gilbert, Cooke and Popp did prevent each other and other members of the conspiracy from speaking with investigators, and influenced their communications with Natick Police detectives;

    v.   Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea also conspired to and did call Ina Steiner with the purpose of intimidating,

threatening and coercing her to hinder, delay or prevent her cooperation with the Natick Police Department or any investigation. These actions were intended to engender her to eBay and disguise eBay's involvement, by aligning themselves with the Steiners;

vi. It was reasonably foreseeable to Defendants eBay, Wenig and Wymer that the other Defendants would use means to cover-up the conspiracy, where the Defendants were strategically hired for their unique expertise and skills, including prior law enforcement and military experience. Additionally, the culture within eBay required the Defendants to protect eBay, so it was reasonably foreseeable that the Defendants would utilize means to ensure eBay's involvement in the conspiracy was not detected by outside law enforcement.

### VI.   Affected interstate commerce.

268.   Defendants have engaged in racketeering and other activities affecting interstate and foreign commerce because eBay is a multinational corporation, that does business in all 50 states and throughout various different countries.  PFC conducts business throughout the United States. EcommerceBytes also engages in interstate commerce, where it provides valuable information to the nationwide subscribers of its newsletter, many of whom are eBay sellers engaging in interstate commerce. EcommerceBytes also provides advertisements, for businesses that engage in interstate commerce.

### VII.   Operation and Management

269.   Defendants each exerted some measure of control over the conspiracy, and Defendants participated in the operation or management of the affairs of the conspiracy.

270. Within the conspiracy, there was a common communication network by which co-conspirators shared information on a regular basis.

271. Each participant in the conspiracy had a systematic linkage to each other participant through corporate ties, contractual relationships, financial ties, and the continuing coordination of their activities. Through the conspiracy, the Defendants functioned as a continuing unit with the purpose of furthering the illegal scheme and their common purposes.

272. Defendants' scheme and the above-outlined racketeering activities amounted to a common course of conduct intended to stalk, intimidate, threaten, harass and silence the Steiners. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had the result of affecting the Steiners and their business. Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to the Steiners and EcommerceBytes' property.

273. The conduct, by its nature, projects into the future the threat of continued criminal activity where the acts are part of the regular way of doing business for eBay, and where future reporting by EcommerceBytes and other news organizations is inevitable. Additionally, the actions of the Defendants constitute repeated activity, amounting to continued criminal activity.

274. Defendants Popp, Stockwell and Zea have all pled guilty in Federal District Court to conspiracy to obstruct justice. Defendants Gilbert and Cooke have pled guilty in Federal District Court to conspiracy to commit witness tampering. Defendants Baugh and Harville are awaiting trial for conspiring to tamper with witnesses.

275.   To achieve their common goals, eBay conducted its initial investigation in slipshod

fashion only at the request of the NPD, without following standard protocols, which

allowed the other Defendants to further obstruct and tamper with the investigation, and

also hid from the general public Defendant Wenig and Wymer's behavior, thus allowing

Defendant Wenig to resign, without terminating his employment for cause.

## VIII.   RICO Injury.

276.   The Steiners and EcommerceBytes have been injured in their property and business as a

direct and proximate result of the racketeering activities. Due to the threats and

intimidation and the wire and mail fraud, the Steiners feared for their lives and the

conspiracy has hampered their ability to continue at the same level, causing them

significant economic damage. Because of the fraudulent activity, the Steiners are

suspicious of sources and pass on stories which as a result has a grave impact on their

ability to produce voluminous, quality content for their newsletters.  Prior to the inception

of the conspiracy, EcommerceBytes produced two and three newsletters, weekly.  Now,

the Steiners struggle to produce just two newsletters per week, and have not produced

three since the Summer of 2019. Because of the decrease in content, there is a decrease in

content both on the EcommerceBytes website, and within the newsletters causing

advertisements to decrease. In turn, EcommerceBytes revenue has also decreased.

277.   Defendants' conspiracy interfered with the Steiners' contractual relations with freelance

writers, advertisers and sources. The Defendants' actions have caused the Steiners to

become suspicious of freelance writers and sources, thus hindering their ability to use

these critical resources. The Defendants' actions have also caused sources to not to want

to associate with the Steiners, for fear that the Defendants will likewise target them. This

also has a direct correlation to the amount of content the Steiners are able to produce for EcommerceBytes and the newsletters, affecting website traffic, advertisements and revenue.

278. The Steiners also suffered damage to their reputation and good will. The Steiners were directly injured and suffered damages to themselves and their business as a result of Defendants' acts.  The various online accounts created by Defendants in order to send anonymous tweets and direct Twitter messages left readers and advertisers with the impression that Plaintiffs' news coverage of eBay was biased and unfair.  Thus, Plaintiffs' reputation as objective and impartial journalists and editors and the standing of EcommerceBytes as an unbiased trade publication, suffered as a direct result of Defendants' acts.

279. The Defendants, including but not limited to, Defendants Wenig, Wymer, Baugh, Harville, Cooke, Gilbert, Popp, Stockwell, Zea and others interfered with the Steiners ability to bring a civil suit, which is a property right, by destroying evidence, including but not limited to emails, social media messages, Whatsapp messages, and other evidence which would assist in bringing these claims.

280. As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962 (c), Plaintiffs have been damaged in an amount to be proven at trial, including costs associated with investigating and rectifying Defendants' conduct.

281. As a result of Defendants' violation of 18 U.S.C. § 1962(c), (d) and 1964(c), Plaintiffs are entitled to three-fold their damages and the costs of the suit, including reasonable attorneys' fees.

282.  The aiding and abetting and the failure to intervene gives rise to liability on the part of other to-be-identified John and Jane DOE Defendants.

### COUNT IV: VIOLATION OF TITLE II, Ch. 12, § 11I
### (MASSACHUSETTS CIVIL RIGHTS ACT VIOLATION)

283.  Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 282 above, and incorporates them by reference, herein.

284.  The violation of Plaintiffs' civil rights, as described by the cruel acts detailed above, was pursuant to the direction of the highest levels of Defendants' management.

285.  The main purpose of the Defendants' campaign to intimidate, threaten, torture, terrorize, stalk and silence the Steiners was to coerce them into ceasing their reporting on eBay.

286.  By way of threats, intimidation and coercion, the Defendants attempted to interfere with the Steiners exercise and enjoyment of their First Amendment and Article 16 (as amended by Article 77) rights to free speech and liberty of the press, rights secured by both the United States Constitution and the Massachusetts Declaration of Rights.

287.  As a direct and proximate result of Defendants' actions, Plaintiffs suffered harm, and request compensatory and emotional damages in an amount which will be proven at trial.

288.  The aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants, as well as other to-be-identified John and Jane DOE Defendants.

### COUNT V: DEFAMATION

289.  Plaintiff Ina and David Steiner reallege each and every allegation set forth in Paragraphs 1 through 288, inclusive, and incorporates them by reference, herein.

290.  Plaintiff Ina Steiner is the reporter and editor for the online trade publication, EcommerceBytes, and is the author of the EcommerceBytes Blog and Newsletters. David Steiner is also a reporter of EcommerceBytes as well as its publisher.

291.  Plaintiff Ina Steiner has enjoyed a stellar reputation as an unbiased and impartial reporter in the ecommerce industry amongst the online community of merchants.

292.  Plaintiff Ina Steiner was an early contributor to support the needs of ecommerce sellers and buyers, filling a void that exists between selling platforms and sellers and buyers. She is frequently quoted by major news organizations about eBay, online trading and Internet fraud including such publications as the *Wall Street Journal*, *New York Times*, *Smart Money Magazine*, and *Fortune Small Business*.

293.  Plaintiff Ina Steiner has appeared on multiple television and radio programs to discuss ecommerce and the online-auction industry, including Public Radio's Marketplace, National Public Radio's On Point, eBay Radio, CNBC Squawk Box, CNN Anderson Cooper 360, CNBC's "Closing Bell with Maria Bartiromo," and Bloomberg Radio's Tomorrow Tonight.

294.  Defendants caused defamation by intentionally sending sexually charged pornography to the Steiners' neighbor's homes, in David Steiner's name.  Such activity was meant to reputationally harm the Steiners and tarnish their name within the community.

295.  Defendants engaged in communications with third parties that were false, defamatory, unprivileged and with the natural tendency to injure and cause special damages.

296.  Defendants made the defamatory communications to third parties who understood the defamatory meaning of the statements to David Steiner.

297.  Defendants slandered David Steiner by making false and unprivileged publications to neighbors through the mail, which accused David of soliciting pornography and anthropornography.

298.  Defendants caused defamation by posting ads on Craigslist that the Plaintiffs were sexual swingers.  Such activity was shown to the public and included their personal home address.

299.  At the time Defendants made the false statements on Twitter claiming that Plaintiff Ina Steiner was destroying small and family businesses through her biased and negative reporting on eBay, the Defendants knew that these statements were false.

300.  Defendants defamed the Steiners by creating fake "Persons of Interest" files on them, in order to suggest the Steiners were a threat to eBay and their security.

301.  Defendants made these false statements intentionally and with reckless disregard to the truth.

302.  The Defendants knew that the false and libelous statements about the Plaintiffs' would be read by individuals both in the United States and in the Defendants' international audience.

303.  Plaintiffs' social reputation harmed, as now her name is associated with bondage and anthropornography, and other illicit sites.

304.  As a direct and proximate results of the acts of the Defendants, Plaintiffs have suffered injury, damage, loss, harm, anxiety, embarrassment, humiliation, shame and severe emotional distress.

305.  The Defendants actions constitute defamation per se where the Defendants actions and statements related to, and caused damage to, the Steiners' business, and where the Defendants falsely claimed the Steiners were engaged in criminal activity.

306.  Plaintiffs Ina and David Steiner have suffered immeasurable and significant damage to their reputation and great emotional distress as a result of the false statements made by

the Defendants and with this Complaint seek compensation for this defamation and libel by the Defendants.

307.    In addition to presumed damages, as the direct and proximate cause of the Defendants actions, the Steiners were emotionally injured and suffered distress and pain and suffering, and incurred lost wages, and other costs.

308.    Such activity was intended to harm the reputations of the Plaintiffs.

309.    The Plaintiffs suffered economic and emotional harm as a result of the publications.

310.    In making the libelous and defamatory statements about Plaintiffs, the Defendants acted with malice, oppression and/or fraud and thus the Defendants are liable for compensatory damages in an amount to be proven at trial.

311.    The aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants, as well as other to-be-identified John and Jane DOE Defendants.

## COUNT VI:  TRESPASSING

312.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 311 above, and incorporates them by reference, herein.

313.    The Defendants entered onto the Steiners' property without right or privilege to do so, in order to attempt to attach a GPS device to their vehicle. The Defendants entry onto the property was intentional and illegal.

314.    The intrusive nature of the Defendants' actions onto their property and within the sanctity of their home and yard caused them emotional turmoil.

315.    As a direct and proximate result of the Defendants' actions, Plaintiffs suffered significant harm, including emotional distress, and request emotional and compensatory damages in an amount which will be proven at trial.

316.   The aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants, as well as other to-be-identified John and Jane DOE Defendants.

## COUNT VII: FALSE IMPRISONEMENT

317.   Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 316 above, and incorporates them by reference, herein.

318.   All named Defendants' conduct towards Plaintiffs was extreme and outrageous.

319.   Defendants harmed Plaintiffs because their actions caused them to suffer horrifying fear that if they left their home, they would be in danger or would be killed.  The Defendants' incessant packages and cruel and abusive messages and threats forced the Plaintiffs to remain in their home, as house prisoners, too fearful to leave their property.  The actions of Defendants injured Plaintiffs' mind and body. Plaintiffs suffer from significant and continuing emotional distress, including but not limited to, physical manifestations of anxiety, persistent concern about their physical safety and, loss of sleep, and when in public, the chronic fear that they are being followed.

320.   Plaintiffs were under the justified belief that leaving their home would place them in danger that they might be killed. They believed the only safe place to remain during periods of unrelenting messages and deliveries was in their home, where they remained on constant alert at all times.

321.   The above-described acts and omissions of the Defendants constitute intentional confinement of Ina and David Steiner.

322.   The intentional confinement of Ina and David Steiner was committed without lawful privilege.

323.   The intentional confinement lasted for an appreciable period of time.

324. By the above-described acts or omissions alleged herein, the Plaintiffs were falsely imprisoned thereby entitling Ina and David Steiner to damages pursuant to Massachusetts law.

325. The Plaintiffs justifiably believed the fear of threat of physical force, as demonstrated by the threatening messages and vehicles stalking their home, restricted their ability to leave the safety of their home.

326. The conduct of Defendants proximately caused Plaintiffs to suffer, and to continue to suffer, damages, and request compensatory and emotional damages in an amount which will be proven at trial.

327. The aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants, as well as other to-be-identified John and Jane DOE Defendants.

## COUNT VIII: VANDALISM

328. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 327 above, and incorporates them by reference, herein.

329. The Defendants did deface, mutilate, vandalize and injure the Steiners' property by scrawling "Fidomaster" on their fence.

330. As a direct and proximate result of the Defendants' actions, Plaintiffs suffered harm, including damage to property and emotional distress, and request compensatory and emotional damages, in an amount which will be proven at trial.

331. The aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants, as well as other to-be-identified John and Jane DOE Defendants.

## COUNT IX: CIVIL CONSPIRACY

332.   Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 331 above, and incorporate them by reference, herein.

333.   The Defendants, acting in concert, conspired to intimidate, harass, threaten, and stalk the Steiners,

334.   The Defendants, as part of a common design, conspired to implement a common scheme to intimidate, harass, threaten, and stalk the Steiners, and in order to destroy their business and end their reporting on eBay.

335.   The Defendants intended to, and did commit the tortious acts alleged herein in furtherance of the conspiracy to silence the Steiners.

336.   As a result of their common design, the Defendants are each jointly and severally liable for the tortious acts alleged herein committed by any one of them.

337.   Defendants Wenig and Wymer provided substantial assistance and/or encouragement to Defendants Baugh, Harville, Cooke, Gilbert, Popp, Stockwell, Zea and John and Jane DOE, who were engaging in the tortious conduct alleged herein.

338.   Defendants Wenig and Wymer specifically advised the other Defendants, including but not limited to, Baugh, Harville, Cooke, Gilbert, Popp, Stockwell, Zea and John and Jane DOE, to engage in the tortious conduct.

339.   Defendants Wenig and Wymer knew the conduct of the other Defendants was tortious, and intended to substantially assist or encourage that conduct.

340.   The aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants, as well as other to-be-identified John and Jane DOE Defendants.

341.    As a result other their unified actions, the Steiners have sustained compensatory, emotional and business damages, in an amount to be determined at trial, plus interests, costs and other relief that this Court deems just.

## COUNT X: VIOLATION OF M.G.L. CH. 93A §11

342.    Plaintiffs reallege each and every allegation set forth in Paragraphs 1 through 341, inclusive, and incorporate them by reference, herein.

343.    Plaintiffs Ina and David Steiner are engaged in the conduct of trade or commerce as the reporter/editor and publisher, respectively, of EcommerceBytes, a trade publication for businesses that sell items online. Steiner Associates, LLC, which operates EcommerceBytes, is a domestic limited liability corporation with its principal place of business in Natick, MA. EcommerceBytes was launched in 1999 as AuctionBytes by Steiner Associates and later changed its name in 2011. EcommerceBytes is a publisher and online source of news for ecommerce and online merchants. It publishes email newsletters and the EcommerceBytes trade publication which provides resources for online auction buyers and sellers, including blogs, tools, service ratings charts, and discussion forums.

344.    Defendants eBay and PFC are engaged in the conduct of trade or commerce and engaged in unfair and deceptive practices in a business context. The individual Defendants including Defendants Wenig, Wymer, Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea were engaged in the conduct of trade or commerce as agents for eBay and PFC and engaged in unfair and deceptive practices in a business context.

345.    The relationship between the Steiners, EcommerceBytes and eBay is commercial in nature. As the leading trade publication for businesses that sell online items,

EcommerceBytes is a must-read for businesses like eBay, an ecommerce corporation that facilitates online sellers and buyers through its trade publication. By and through their employees and contractors, Defendants eBay and PFC are subscribers and/or readers of EcommerceBytes.

346. Defendants have willfully and knowingly engaged in unfair and deceptive acts or practices, including: creating false online accounts in order to pose as sellers on eBay who were angry about articles written by Plaintiff Ina Steiner and threatening to kill Plaintiffs unless such purported negative coverage of eBay ceased, sending disturbing packages to Plaintiffs' home to frighten the Plaintiffs into providing more favorable coverage of eBay and conducting surveillance on the Plaintiffs while at their home and in their community in Natick, Massachusetts.

347. Defendants' unfair and deceptive acts or practices occurred primarily and substantially in the Commonwealth of Massachusetts because their wrongful conduct was directed toward Plaintiffs who are residents of Massachusetts. Also, the substantial harm their actions have caused the Plaintiffs occurred in Massachusetts.

348. As a result of these unfair and deceptive practices, Plaintiffs have suffered losses including long-term injury to their professional reputation and to the reputation of their fairness and impartiality of their trade publication, EcommerceBytes, as a reliable source of news information.

349. The Steiners and EcommerceBytes have suffered economic injury, loss of money and property, and the actions of the Defendants have caused adverse consequence or loss. Because of the Defendants' actions, the Steiners are suspicious of sources and pass on stories as a result, which has a grave impact on their ability to produce voluminous,

quality content for their newsletters. Prior to August of 2019, EcommerceBytes produced two or three newsletters weekly, rotating on a bi-weekly basis. Now, the Steiners struggle to produce just two newsletters per week, and have not produced three since the Summer of 2019. Because of the decrease in content, there is a decrease in content both on the EcommerceBytes website, and within the newsletters, causing advertisements to decrease. EcommerceBytes revenue has also decreased as a result.

350. Moreover, as a result of these unfair and deceptive practices, Plaintiffs have suffered and continue to suffer severe emotional distress, including but not limited to, physical manifestations of anxiety, persistent concern about their physical safety and, loss of sleep, and when in public, the chronic fear that they are being followed.

351. As a result of Defendants' violation of M.G.L. c. 93A § 11, Plaintiffs are entitled to three-fold their damages and the costs of the suit, including reasonable attorneys' fees.

352. The aiding and abetting and the failure to intervene gives rise to liability on the part of other to-be-identified John and Jane DOE Defendants.

**COUNT XI: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**

353. Plaintiffs reallege each and every allegation set forth in Paragraphs 1 through 352, inclusive, and incorporate them by reference, herein.

354. Plaintiffs had established relationships with numerous advertisers, clients and businesses that utilized EcommerceBytes' services to the substantial benefit of EcommerceBytes. Defendants were well aware of these relationships given their subscription to the EcommerceBytes newsletter and the constant monitoring of the Steiners' trade publication.

355.    Defendants intentionally interfered with Plaintiffs' protectable business interests by the conduct set forth above.  Clients, businesses and advertisers of EcommerceBytes were misled into believing that Plaintiffs were hurting small and family businesses and were pushing buyers away from eBay through their purported negative coverage of eBay. Online sellers now fear doing business with the Plaintiffs will result in similar conduct directed towards them.

356.    Defendants' conduct in interfering with Plaintiffs' business relationships was intentional, willful, and calculated to cause damage to Plaintiffs' business. There was no justifiable cause for Defendants' actions. The Steiners request monetary relief, in order to be made whole again, in an amount to be determined at trial.

357.    The aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants, as well as other to-be-identified John and Jane DOE Defendants.

### COUNT XII: RATIFICATION

358.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 357 above, and incorporates them by reference, herein.

359.    Defendants Wenig and Wymer were executive officers with eBay during their employment.  Defendants Baugh, Harville, Gilbert, Cooke, Popp, and Stockwell were employees of eBay. Defendant Zea was a contractor with eBay.

360.    At the time of the acts, there was an actual or assumed relationship between each individually named Defendant and eBay.

361.    All acts or omissions alleged for the period of time from 2012 through 2019 were ratified by eBay and its Board of Directors. eBay and its Board of Directors knew of the acts and

omissions by the Defendants, as well as the culture and hiring practices, and failed to take any actions to stop it.

362.    Despite knowledge of Defendant Wenig and Wymer's misconduct, on information and belief, no true disciplinary action was taken against the two executives.

363.    Despite overwhelming evidence that Defendants Wenig and Wymer were involved in the acts, eBay allowed Defendant Wenig to resign from eBay without terminating him for cause, thus allowing him to reap the rewards of not-for-cause termination. On information of belief, Defendant Wymer was terminated, but consistent with eBay practices, received no punitive action.

364.    Upon information and belief, eBay's actions regarding Defendants Wenig and Wymer were ratified by eBay's Board of Directors, who knew or should have known about the volatile conduct of the Defendants, but took no action. The Board, with fiduciary obligations, ratified the behavior by seemingly rewarding executives with severance and no evidence of any significant disciplinary action taken. The Board acted willfully blind to the behavior and conduct of senior executives, with no disincentive for wrongdoing.

365.    After the criminal charges against Defendants Baugh, Harville, Cooke, Gilbert, Popp, Stockwell and Zea were made public, then President and CEO of eBay, Jamie Iannone, sent the Steiners an email where he attempted to absolve eBay from liability claiming "[t]hose responsible for this matter hid their actions from the company." In a public statement, eBay also claimed it did not have knowledge, and did not place any blame on Defendants Wenig or Wymer, stating only that some "inappropriate" comments were made.

366.    eBay and PFC are responsible for the acts of the individually named Defendants.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including but not limited to an Order:

1. Entering judgment in their favor;

2. Awarding Plaintiffs monetary relief, including damages sustained by Plaintiffs in an amount to be determined at trial;

3. Awarding compensatory damages;

4. Awarding Plaintiffs treble damages;

5. Awarding Plaintiffs punitive and exemplary damages in such amount as may be awarded at trial;

6. Awarding special damages;

7. Awarding attorneys' fees;

8. Awarding costs of suit incurred herein;

9. Awarding interest according to law;

10. For a constructive trust to be placed upon Defendants and all persons acting on their behalf under their direction or control, as to all revenues and profits received by any and all such individuals, including Defendants, to be held for the benefit of the Plaintiffs, and to be disgorged in their entirety to the Plaintiffs, in connection with any book, movie, story or any other media or means to attempt to profit off of the events set forth within this Complaint;

11. Awarding such other and further relief as this Court may deem just and proper.

Respectfully submitted,
INA AND DAVID STEINER
By their attorneys,

/s/ Rosemary Curran Scapicchio
Rosemary C. Scapicchio, BBO No. 558312
Law Office of Rosemary Scapicchio
107 Union Wharf
Boston, MA 02109
617.263.7400
Rosemary@Scapicchiolaw.com


/s/ Jillise McDonough
Jillise McDonough, BBO No. 688694
Law Office of Rosemary Scapicchio
107 Union Wharf
Boston, MA 02109
617.263.7400
Jillise@Scapicchiolaw.com


/s/ Laura Panos
Laura Panos, BBO No. 558263
Law Office of Laura Panos
50 Leonard Street
Belmont, MA 02478
617.484.9600
lpanos@panoslawoffice.com


DATED: July 21, 2021