**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Ina Steiner,<br>David Steiner,<br>Steiner Associates, LLC,<br><br>*Plaintiffs*,<br><br>    v.<br><br>eBay, Inc.,<br>Progressive F.O.R.C.E. Concepts, LLC,<br>Devin Wenig,<br>Steve Wymer,<br>James Baugh,<br>David Harville,<br>Brian Gilbert,<br>Stephanie Popp,<br>Stephanie Stockwell,<br>Veronica Zea,<br>Philip Cooke, and<br>John and Jane DOE,<br><br>    *Defendants*. | No. 1:21-cv-11181-DPW<br><br><br>Leave to File Granted<br>October 20, 2021 |

**DEFENDANT DEVIN WENIG'S MEMORANDUM OF LAW
<u>IN SUPPORT OF MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 1

    A.    Devin Wenig ................................................................................................. 1

    B.    Plaintiffs' Allegations ................................................................................. 2

MOTION-TO-DISMISS STANDARD ........................................................................ 5

ARGUMENT ............................................................................................................. 7

I.    Plaintiffs do not state a RICO claim against Wenig ............................................. 7

    A.    Plaintiffs lack standing to assert a RICO claim ......................................... 8

    B.    Plaintiffs do not state a claim under § 1962(c) .......................................... 9

            1.    The complaint fails to allege racketeering activity ..................................... 10

                a.    The complaint fails to plead interference with commerce ........... 10

                b.    The complaint fails to plead mail or wire fraud ............................ 11

                c.    The complaint fails to plead obstruction of justice ...................... 13

                d.    The complaint fails to plead witness tampering ........................... 14

             2.    The complaint fails to allege a "pattern of racketeering activity" ........... 15

                 a.    The complaint fails to plead a "closed" pattern of racketeering activity .................................................................... 16

                 b.    The complaint fails to plead an "open-ended" pattern of racketeering activity .................................................................... 19

             3.    The complaint does not allege that Wenig conducted or participated in the alleged enterprise ............................................. 20

    C.    Plaintiffs do not state a conspiracy claim under § 1962(d) .................................. 22

II.    Plaintiffs do not state a state-law claim against Wenig ................................... 24

    A.    Plaintiffs do not state a claim for intentional infliction of emotional distress ..... 24

    B.    Plaintiffs do not state a claim for stalking ............................................. 26

    C.    Plaintiffs do not state a claim under the Massachusetts Civil Rights Act ........... 27

    D.    Plaintiffs do not state a claim for defamation ........................................ 27

    E.    Plaintiffs do not state a claim for trespassing ........................................ 28

    F.    Plaintiffs do not state a claim for false imprisonment ........................... 29

    G.    Plaintiffs do not state a claim for vandalism .......................................... 29

    H.    Plaintiffs do not state a claim for unfair and deceptive trade practices ............... 30

i

I.      Plaintiffs do not state a claim for tortious interference with business relations ... 31

J.      Plaintiffs do not state a claim for civil conspiracy................................................. 33

CONCLUSION............................................................................................................................ 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*8 Erie St. JC LLC v. City of Jersey City*,
    2020 WL 2611540 (D.N.J. 2020) ........................................................................23

*Ahmed v. Rosenblatt*,
    118 F.3d 886 (1st Cir. 1997) ...............................................................................10

*Anderson v. R.J. Reynolds Tobacco Co.*,
    1999 WL 33944684 (D. Mass. 1999) .....................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................6, 7, 12

*Asphaltos Trade, S.A. v. Bituven P.R., LLC*,
    2021 U.S. Dist. LEXIS 28828 (D.P.R. 2021) .......................................................18

*Barmapov v. Amuial*,
    2018 WL 11267365 (S.D. Fla. 2018) ....................................................................12

*Bassett v. Jensen*,
    459 F. Supp. 3d 293 (D. Mass. 2020) ..................................................................34

*Beck v. Prupis*,
    529 U.S. 494 (2000) .........................................................................................8, 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................................5, 6

*Bobbitt v. United States*,
    2006 WL 335231 (D. Mass. 2006) ..................................................................26, 29

*Cmty. Builders, Inc. v. Indian Motocycle Assocs., Inc.*,
    692 N.E.2d 964 (1998) ........................................................................................31

*Cremaldi-Vickery v. Otis Elevator, Inc.*,
    782 N.E.2d 48, 2003 WL 168452 (Mass. App. Ct. 2003) .....................................29

*Daniels v. Varela*,
    2020 WL 5440574 (D. Mass. 2020) .....................................................................28

*Davignon v. Clemmey*,
    322 F.3d 1 (1st Cir. 2003) ...................................................................................26

*DeMauro v. DeMauro*,
    115 F.3d 94 (1st Cir. 1997) ............................................................................... 9

*Do Corp. v. Town of Stoughton*,
    2013 WL 6383035 (D. Mass. 2013) ................................................................. 27

*Doyle v. Hasbro, Inc.*,
    103 F.3d 186 (1st Cir. 1996) .................................................................. 8, 10, 21

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
    48 F.3d 1260 (D.C. Cir. 1995) ........................................................................ 18

*Efron v. Embassy Suites (P.R.), Inc.*,
    223 F.3d 12 (1st Cir. 2000) ........................................................................ 19, 22

*Feinstein v. Resol. Tr. Corp.*,
    942 F.2d 34 (1st Cir. 1991) .............................................................................. 12

*Ferring Pharms. Inc. v. Braintree Laby's, Inc.*,
    38 F. Supp. 3d 169 (D. Mass. 2014) ........................................................... 16, 22

*Fogie v. THORN Americas, Inc.*,
    190 F.3d 889 (8th Cir. 1999) ........................................................................... 23

*Fowler v. United States*,
    563 U.S. 668 (2011) ..................................................................................... 14, 15

*Gilanian v. City of Boston*,
    431 F. Supp. 2d 172 (D. Mass. 2006) ............................................................. 27

*Giuliano v. Fulton*,
    399 F.3d 381 (1st Cir. 2005) .................................................................. 15, 18, 19

*Guidry v. Bank of LaPlace*,
    740 F. Supp. 1208 (E.D. La. 1990) ................................................................. 12

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989) .............................................................................. 15, 16, 17

*Hamilton v. Partners Healthcare Sys., Inc.*,
    209 F. Supp. 3d 379 (D. Mass. 2016) ............................................................. 12

*Heal v. Wells Fargo, N.A.*,
    2021 WL 3915023 (D. Mass. 2021) ................................................................. 30

*Home Orthopedics Corp. v. Rodríguez*,
    781 F.3d 521 (1st Cir. 2015) ..................................................................... *passim*

iv

*Imprimis Invs., LLC v. KPMG Peat Marwick LLP*,
  868 N.E.2d 143 (Mass. App. Ct. 2007) ..................................................31

*Knit With v. Knitting Fever, Inc.*,
  2012 WL 2938992 (E.D. Pa. 2012) .........................................................9

*Lawson v. FMR LLC*,
  --- F. Supp. 3d ----, 2021 WL 3493859 (D. Mass. 2021).....................8, 9

*Levin v. Dalva Bros., Inc.*,
  459 F.3d 68 (1st Cir. 2006).....................................................................26

*Licata v. GGNSC Malden Dexter LLC*,
  2 N.E.3d 840 (Mass. 2014) ....................................................................35

*Maldonado v. Fontanes*,
  568 F.3d 263 (1st Cir. 2009).....................................................................7

*Mansor v. JPMorgan Chase Bank, N.A.*,
  183 F. Supp. 3d 250 (D. Mass. 2016) ....................................................35

*McLarnon v. United States*,
  2009 WL 1395462 (D. Mass. 2009) ........................................................10

*McNally v. United States*,
  483 U.S. 350 (1987).................................................................................11

*Mechigian v. Art Cap. Corp.*,
  612 F. Supp. 1421 (S.D.N.Y. 1985)........................................................12

*Payton v. Abbott Labs*,
  512 F. Supp. 1031 (D. Mass. 1981) ..................................................34, 35

*Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B.*,
  815 N.E.2d 241 (Mass. App. Ct. 2004) ...............................................32, 33

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979)...................................................................................8

*Richardson v. Ne. Hosp. Corp.*,
  883 N.E.2d 342, 2008 WL 834447 (Mass. App. Ct. 2008) .....................29

*Robertson v. Betz*,
  2009 WL 2144371 (D. Mass. 2009) .........................................................7

*Roman v. Trustees of Tufts Coll.*,
  964 N.E.2d 331 (Mass. 2012)..................................................................25

*Sanchez v. Pereira-Castillo*,
    590 F.3d 31 (1st Cir. 2009)..................................................................23

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012)..............................................................6, 31

*Scheidler v. Nat'l Org. for Women, Inc.*,
    537 U.S. 393 (2003)...........................................................................11

*Sena v. Commonwealth*,
    629 N.E.2d 986 (Mass. 1994)............................................................24

*Soto-Negrón v. Taber Partners I*,
    339 F.3d 35 (1st Cir. 2003)................................................................15

*Soto-Torres v. Fraticelli*,
    654 F.3d 153 (1st Cir. 2011).............................................................6, 7

*Suna v. Bailey Corp.*,
    107 F.3d 64 (1st Cir. 1997)................................................................16

*Sunwealth Glob. HK Ltd. v. Pinder Int'l, Inc.*,
    2021 WL 1145245 (S.D.N.Y. 2021)..................................................12

*Taylor v. Am. Chemistry Council*,
    576 F.3d 16 (1st Cir. 2009)................................................................34

*United States v. Acevedo*,
    882 F.3d 251 (1st Cir. 2018)..............................................................14

*United States v. Ernst*,
    502 F. Supp. 3d 637 (D. Mass. 2020).................................................20

*United States v. Flaherty*,
    2015 WL 6965099 (D. Mass. 2015)...................................................14

*United States v. Gurry*,
    2020 WL 1063001 (D. Mass. 2020)...................................................23

*United States v. Leoner-Aguirre*,
    939 F.3d 310 (1st Cir. 2019)..........................................................23, 24

*United States v. Rodriguez-Torres*,
    939 F.3d 16 (1st Cir. 2019)................................................................22

*United States v. Ruggiero*,
    726 F.2d 913 (2d Cir. 1984)..............................................................13

*United States v. Sawyer,*
    85 F.3d 713 (1st Cir. 1996)...................................................................................11

*United States v. Weadick,*
    15 F.4th 1, 2021 WL 4350064 (1st Cir. 2021).......................................................14

*White v. Blue Cross & Blue Shield of Mass., Inc.,*
    809 N.E.2d 1034 (Mass. 2004) ........................................................................27, 28

*Wilson v. Town of Fairhaven,*
    2019 WL 1757780 (D. Mass. 2019) .....................................................................23

*Ziglar v. Abbasi,*
    137 S. Ct. 1843 (2017)....................................................................................23, 33

*Zucker v. Farish,*
    2018 WL 6570867 (N.D. Tex. 2018) ....................................................................13

**Statutes**

18 U.S.C. § 371 .............................................................................................................13, 14

18 U.S.C. § 1341 ...........................................................................................................10, 11

18 U.S.C. § 1343 ...........................................................................................................10, 11

18 U.S.C. § 1503 ...........................................................................................................13, 14

18 U.S.C. § 1510 ......................................................................................................10, 13, 14

18 U.S.C. § 1510(a) ............................................................................................................13

18 U.S.C. § 1512 ......................................................................................................10, 13, 14

18 U.S.C. § 1512(b) ............................................................................................................14

18 U.S.C. § 1951 .................................................................................................................10

18 U.S.C. § 1951(a) ............................................................................................................10

18 U.S.C. § 1951(b)(1) ..................................................................................................10, 11

18 U.S.C. § 1951(b)(2) ..................................................................................................10, 11

18 U.S.C. § 1961(1) ........................................................................................................*passim*

18 U.S.C. § 1961(3) .............................................................................................................21

18 U.S.C. § 1961(4) .............................................................................................................21

18 U.S.C. § 1961(5) ................................................................................................15

18 U.S.C. § 1961(c) ................................................................................................23

18 U.S.C. § 1962(c) ............................................................................................ *passim*

18 U.S.C. § 1962(d) ...........................................................................................23, 24

Cal. Civ. Code § 1708.7 ....................................................................................26, 27

MGL c.12 § 11I .......................................................................................................27

MGL c.93A § 11 ................................................................................................30, 31

MGL c.265 § 43A ...................................................................................................26

**Other Authorities**

Fed. R. Civ. P. 8 ..................................................................................................6, 12

Fed. R. Civ. P. 9(b) ...........................................................................................12, 16

Fed. R. Civ. P. 12(b)(6) ........................................................................................1, 5

Pattern Crim. Jury Instr. 1st Cir. (1998) ................................................................11

Restatement (Second) of Conflict of Laws .............................................................26

Restatement (Second) of Torts ....................................................................28, 30, 33

## INTRODUCTION

The fact that Plaintiffs Ina and David Steiner were subjected to a vile harassment campaign does not mean that former eBay CEO Devin Wenig is liable for the damages that they and their company, Steiner Associates LLC, allegedly suffered as a result. Plaintiffs assert RICO claims against Wenig but fail to adequately allege the essential elements of a RICO claim. They do not adequately allege that Plaintiffs suffered cognizable injury to business or property; that any defendant committed a predicate act of racketeering; or that the purported predicate acts were part of a "pattern" of racketeering activity. In any case, Plaintiffs do not allege facts plausibly suggesting that Wenig participated in, or conspired to participate in, a pattern of racketeering that caused cognizable injuries. Nor do they allege facts plausibly suggesting that he committed any state-law tort. Even if Plaintiffs have stated claims against other defendants, their claims against Wenig rest on three words in a lone text, taken out of context, that cannot bear the weight that Plaintiffs place on them. Thus, Plaintiffs' claims against Wenig should be dismissed under Rule 12(b)(6).

## BACKGROUND

### A.    Devin Wenig

The complaint's allegations against Devin Wenig are contrary to his character, experience, leadership style, and reputation. Wenig ran public companies for 25 years. During that time, he built a reputation as an ethical leader who fostered an inclusive and respectful business culture.

In 1991, at just 25, Wenig became CEO of Nastech Pharmaceutical and raised $5 million in venture capital as the company awaited FDA approval of its first drug to reach market. The next year, after the FDA granted approval and after hiring a successor, Wenig—a graduate of Columbia Law School—joined Cravath, Swaine & Moore. In 1993, he moved to global technology, media, and information company Reuters, where he ultimately became Chief Operating Officer and a member of the company's board of directors. When Reuters merged in 2008 with the Thomson

1

Corporation, Wenig became CEO of Thomson Reuters Markets, the 33,000-employee, $9 billion media and technology business created by the merger. As head of one of the world's largest news organizations, Wenig understood, respected, and protected journalistic integrity.

Wenig joined eBay in 2011 as President. During his tenure, eBay experienced substantial growth—active users rose from 99 million to nearly 160 million. In 2015, Wenig became both President and CEO. During his time as President and CEO, eBay delivered a 56% total return to shareholders and continued to add millions of active users. Under his leadership, eBay was consistently recognized as one of *Fortune*'s "World's Most Admired" companies and one of Silicon Valley's "Best Places to Work." Reflecting his longstanding commitment to—and successful record of—empowering women, the LGBT community, and minorities in technology, in 2019 eBay achieved 99.8% U.S. gender pay equity and a 100% rating on the Human Rights Campaign's Corporate Equality Index. The same year, Wenig was ranked on *Forbes*'s list of America's most innovative leaders, one of the many accolades that Wenig received for his leadership at eBay.

To this day, Wenig fosters technological solutions to pressing needs. He sits on the boards of directors of General Motors and Cruise Automation, an autonomous vehicle company, and on the advisory board of Salesforce, Inc. In January 2020, he formed the Norse Charitable Trust to facilitate technology- and data-led solutions to issues of inequality and access in the United States.

### B.    Plaintiffs' Allegations

The Steiners operate and Steiner Associates LLC publishes EcommerceBytes, an online trade publication that "report[s] on the inner-workings of various ecommerce companies," including eBay. ECF 1 ("Compl.") ¶ 2. Over a three-week period in August 2019, "between approximately August 5 … and August 23," the Steiners were allegedly subjected to a harassment campaign of "online threats, package deliveries, in-person stalking and surveillance." *Id.* ¶¶ 212(a), 266(a)(vii). The campaign was, Plaintiffs allege, "a coordinated effort to … silence the

Steiners, in order to stifle their reporting on eBay." *Id.* ¶ 1.

According to the complaint and criminal charges brought by the government, the harassment campaign was conducted by seven eBay "employees and contractors"—James Baugh, David Harville, Brian Gilbert, Stephanie Popp, Stephanie Stockwell, Philip Cooke, and Veronica Zea. Compl. ¶¶ 4, 11, 59, 209–12. None was hired directly by Wenig; nor did any report directly to him. Baugh was "eBay's Senior Director of Safety and Security in charge of its Global Security and Resiliency" unit, for which the others worked in various capacities. *Id.* ¶¶ 29–35, 37. Each has been criminally charged with stalking, cyberstalking, obstruction of justice, and/or conspiracy. *Id.* ¶¶ 209–11. Harville and Gilbert await trial; the others have pleaded guilty. *Id.* ¶ 212.

The Steiners allege that Baugh and his subordinates launched the harassment campaign after "the executive leadership at eBay … expressed frustration with Ina Steiner's frequent reporting on eBay." Compl. ¶¶ 14, 46, 212(a). According to the complaint, the harassment campaign was triggered by an article, which discussed litigation between eBay and Amazon, that Ina Steiner published on August 1, 2019. *Id.* ¶ 67. Plaintiffs allege that soon after the article was posted eBay's then-CEO, Wenig, texted the company's then-Senior Vice President and Chief Communications Director, Steve Wymer, stating that "[i]f we are ever going to take [Steiner] down … now is the time." *Id.*[1] According to the complaint, Wymer responded, "[o]n it." *Id.* Based on this exchange, which takes Wenig's text out of context, Plaintiffs falsely suggest that Wenig directed Wymer to launch the subsequent harassment campaign. *Cf. id.* ¶¶ 251, 267(c)(viii).[2]

---

[1]    The complaint alleges no other conduct by Wenig immediately before or during the August harassment campaign. Apart from the August 1 text, the only conduct by Wenig alleged in the complaint is the purported sending of two texts in April 2019. One allegedly "linked to an article in which Ina Steiner observed that [his] $18 million compensation was 152 times that of an average eBay employee." Compl. ¶ 57. The other allegedly said of the *Wall Street Journal*, which had also reported on his compensation: "[F]uck them. The journal is next on the list after [Steiner]." *Id.*

[2]    In fact, Wenig's text followed a series of conversations in which he and Wymer discussed how to publicize the fact that—as illustrated by its coverage of the eBay/Amazon litigation—

Wymer is alleged to have "[d]isseminat[ed]" what the complaint characterizes as "Wenig's orders." Compl. ¶ 68. But characterizing Wenig's text as an "order" is inconsistent with the text's words and the complaint's factual allegations, which make clear that he gave no order. According to the complaint, after Wymer and Baugh exchanged a series of texts, Baugh asked Wymer whether Wenig had "said to burn [Steiner] to the ground." *Id.* Wymer did not answer the question. Nor did he indicate that Wenig had directed him, or anyone else, to do anything. Instead, Wymer simply gave Baugh his own opinion on Steiner. *Id*. The complaint alleges that Baugh was "the ringleader" of the subsequent harassment campaign, the one who "plann[ed]" it, and the one who—together with the six others charged with federal crimes—"set [it] in motion." Compl. ¶¶ 71, 75, 77.[3]

The complaint pleads no facts suggesting that Wenig directly participated in the harassment campaign.[4] Indeed, it pleads no facts suggesting that Wenig even knew of—let alone condoned—the harassment campaign. Although the complaint alleges that "Wenig … knew or should have known that [eBay's] corporate resources were being used for illicit undertakings and sanctioned the behavior" (Compl. ¶ 132), it offers no facts to support that bare assertion or other equally conclusory allegations to similar effect. *Cf., e.g.*, *id.* ¶¶ 66, 101.

The complaint alleges that the harassment campaign caused the Steiners to suffer "emotional, physical and economic harm." Compl. ¶ 62. Specifically, it alleges that the Steiners

---

EcommerceBytes's reporting may be colored by the substantial advertising dollars that it takes from Amazon, one of eBay's direct competitors.

[3]      Consistent with Plaintiffs' characterization of Baugh as the ringleader, the government, after thorough investigation, has not charged Wenig (or Wymer) with any crime.

[4]      On multiple occasions, the complaint falsely attributes certain statements to Wenig in clear contradiction to other, more specific allegations elsewhere in the complaint. Thus, the complaint broadly asserts that Wenig and Wymer "gave [Baugh] the directive to 'do whatever it takes'" (Compl. ¶ 64; *see also id.* ¶¶ 59, 267(a)(i)(5), 267(b)(iv)), but elsewhere specifically alleges that it was Wymer who instructed Baugh to do "'[w]hatever it takes.'" *Id.* ¶ 89; *accord id.* ¶¶ 4, 57, 60. The complaint also broadly refers to "Wenig and Wymer" as having allegedly "promised [to] 'manage any bad fallout'" (*id.* ¶ 267(d)(iv)), but elsewhere specifically alleges that it was Wymer who made that purported promise. *Id.* ¶¶ 4, 60, 68.

have suffered "emotional distress" in the form of "anxiety, panic attacks, persistent and debilitating concerns about their physical safety, habitual insomnia, embarrassment, humiliation, shame and perpetual fear that they are being followed and tracked" (*id.* ¶ 14); "physical manifestations of anxiety" (*id.* ¶¶ 319, 350); and economic harm both as the result of "damage to their reputation and good will" and because they have "become suspicious of freelance writers and sources," which "hinder[s] their ability to use these critical resources" (*id.* ¶ 277–78).

As for Steiner Associates LLC, the complaint alleges the harassment campaign caused its publication, EcommerceBytes, to sustain two distinct injuries: (1) "decreased" revenue because the Steiners' emotional distress has diminished "their ability to produce voluminous, quality content"; and (2) a loss of "standing … as an unbiased trade publication" because "anonymous tweets" purportedly "left readers and advertisers with the impression that Plaintiffs' news coverage of eBay was biased and unfair." Compl. ¶¶ 276, 278.

Based on the foregoing allegations, the Steiners and their LLC assert claims for violation of the Racketeer Influenced and Corrupt Organizations Act (RICO); conspiracy to violate RICO; intentional infliction of emotional distress; stalking; violation of the Massachusetts Civil Rights Act; defamation; trespass; false imprisonment; vandalism; unfair and deceptive business practices; tortious interference with business relations; and civil conspiracy. They assert those claims against the seven criminally charged individuals; Wymer; Wenig; eBay; and Progressive F.O.R.C.E. Concepts LLC (PFC), the contractor that employed one of the criminally charged individuals.

## MOTION-TO-DISMISS STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a probability requirement, but it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" and must be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). Mere "labels and conclusions" do not suffice; nor do "naked assertion[s] devoid of further factual enhancement." *Id.* (quotation marks omitted). On the contrary, a complaint's "*[f]actual* allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (emphasis added). Thus, when determining whether a complaint states a claim upon which relief may be granted, a court must "isolate and ignore" all conclusory assertions and consider only "the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Because "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss" (*Iqbal*, 556 U.S. at 679), the critical question is whether the complaint's well-pleaded facts "state a plausible, not a merely conceivable, case for relief." *Soto-Torres v. Fraticelli*, 654 F.3d 153, 159 (1st Cir. 2011).

*Iqbal* is not only binding but instructive when evaluating the sufficiency of Plaintiff's allegations against Wenig. In *Iqbal*, the plaintiff claimed that an agency's top official was liable for unlawful acts purportedly committed by subordinates pursuant to what the plaintiff characterized as an official policy to treat certain targeted individuals "harsh[ly]." *Iqbal*, 556 U.S. at 680. According to the plaintiff, the top official was liable for those acts because he was allegedly "the principal architect" of the policy and allegedly "knew of, condoned, and … agreed" to the unlawful acts supposedly committed pursuant to that policy. *Id*. Finding those "bare assertions" of

direction, knowledge, and acquiescence to be "conclusory and not entitled to be assumed true," the Court held that the plaintiff "fail[ed] to plead sufficient facts to state a claim" against the top official "under a theory of 'supervisory liability.'" *Id*. at 677, 681. Applying *Iqbal*, the First Circuit has directed the dismissal of claims predicated on "supervisory liability" when the complaint at issue alleges that a top official "participated in or directed" purportedly unlawful activity but "provide[s] no facts to support" the official's participation in or direction of such activity. *Soto-Torres*, 654 F.3d at 159. Even when subordinates have allegedly "inflict[ed] truly outrageous, uncivilized, and intolerable harm on a person," the First Circuit has directed the dismissal of claims based on "supervisory liability" where the top official at issue is not alleged to have personally engaged in such conduct and there are no well-pleaded allegations that his "conduct led inexorably to" that of the subordinates. *Maldonado v. Fontanes*, 568 F.3d 263, 274 (1st Cir. 2009).

## ARGUMENT

The complaint does not state a claim against Devin Wenig under either federal or state law. Plaintiffs' claims against Wenig hang on three words from a single text ripped from the context in which it was sent. The complaint pleads no facts plausibly suggesting that Wenig knew of, let alone participated in, the harassment campaign allegedly conducted by Baugh and his associates. The only specific and arguably relevant fact it pleads regarding Wenig is that he texted Wymer. Even if that lone text were on its face consistent with initiating a harassment campaign, it would not sustain Plaintiffs' claims against Wenig. "What is required" to state a claim "are factual 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." *Robertson v. Betz*, 2009 WL 2144371, at *3 (D. Mass. 2009) (quoting *Twombly*, 550 U.S. at 557). Because the complaint pleads no such facts as to Wenig, Plaintiff's claims against him must be dismissed.

## I.   Plaintiffs do not state a RICO claim against Wenig.

RICO makes it "unlawful" both "for (1) any person employed by or associated with any

7

enterprise engaged in … interstate … commerce, (2) to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs (3) through a pattern of racketeering activity," and "for any person to conspire" to do so. 18 U.S.C. § 1962(c), (d). RICO "creates a civil cause of action for '[a]ny person injured in his business or property by reason of a violation of section 1962.'" *Beck v. Prupis*, 529 U.S. 494, 495 (2000) (quoting 18 U.S.C. § 1964(c)). To state a claim, a "complaint must allege: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir. 1996) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Moreover, "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Id.* (quoting *Sedima*, 473 U.S. at 496).

Here, Plaintiffs lack standing, and the complaint does not adequately allege either a substantive RICO violation or Wenig's participation in a conspiracy to commit such a violation.

### A.    Plaintiffs lack standing to assert a RICO claim.

To have standing, a RICO plaintiff must plead that "he has been injured in his business or property." *Doyle*, 103 F.3d at 190 (quoting *Sedima*, 473 U.S. at 496). Here, Plaintiffs do not plead an injury to their "business or property" within the meaning of 18 U.S.C. § 1962(c).

Because the statutory "phrase 'business or property' … exclude[s] personal injuries" (*Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)), "[c]ourts have consistently held that … 'emotional damages are not the type of injuries redressable by [RICO]'"; that "RICO does not recognize 'physical … harm to a person'"; and that "reputational harm" to a person "is not cognizable injury under RICO." *Lawson v. FMR LLC*, --- F. Supp. 3d ----, 2021 WL 3493859, at *5 (D. Mass. 2021) (Woodlock, J.) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006); *Genty v. RTC*, 937 F.2d 899, 918 (3d Cir. 1991)) (emphasis omitted). Indeed, not only does RICO "not provide a cause of action for personal injury," it does not provide a cause of action for

"economic injury deriving from personal injury." *Anderson v. R.J. Reynolds Tobacco Co.*, 1999 WL 33944684, at *2 (D. Mass. 1999). Because each injury that they claim is either a personal injury or an economic injury derived from a personal injury (*see supra* at 4–5), the Steiners have not alleged an injury to their "business or property."

Nor has Steiner Associates LLC. The claim that it has lost revenue because the Steiners' purported "fear[]" and "suspicio[n]" prevent them from generating content for EcommerceBytes (Compl. ¶ 276) is a claim for non-cognizable "economic injury deriving from personal injury." *Anderson*, 1999 WL 33944684, at *2. And the claim that it has been harmed because EcommerceBytes' "standing as an unbiased trade publication" has been diminished by tweets that purportedly "left readers and advertisers with the impression that Plaintiffs' news coverage of eBay was biased and unfair" (Compl. ¶ 278) is a claim for "losses to goodwill and reputation," which "are simply not the types of injuries compensable under RICO." *Knit With v. Knitting Fever, Inc.*, 2012 WL 2938992, at *10 (E.D. Pa. 2012), *aff'd*, 625 F. App'x 27 (3d Cir. 2015).[5]

Alleging an injury to "business or property" is "the statutory precondition" that "must … be met" to have "standing" to assert a civil RICO claim. *DeMauro v. DeMauro*, 115 F.3d 94, 96 (1st Cir. 1997) (quoting *Sedima*, 473 U.S. at 496). Because the complaint fails to clear this "threshold" (*id.*), Plaintiffs' RICO claims must be dismissed.

**B.      Plaintiffs do not state a claim under § 1962(c).**

Even if the complaint alleged facts sufficient to establish standing, Plaintiffs' RICO claim against Wenig would still need to be dismissed because the complaint does not adequately allege that he "(1) conduct[ed] (2) … an enterprise (3) through a pattern (4) of racketeering activity."

---

[5]      Moreover, because the complaint lacks well-pleaded factual allegations plausibly suggesting that EcommerceBytes has actually lost advertisers or subscribers, Plaintiffs' claimed economic injury is impermissibly "hypothetical or speculative." *Lawson*, 2021 WL 3493859, at *5.

*Doyle*, 103 F.3d at 190 (quoting *Sedima*, 473 U.S. at 496). Even assuming the existence of an enterprise, the complaint does not plead facts sufficient to plausibly allege any racketeering activity, much less a pattern of racketeering activity. And even if it did, it does not allege facts sufficient to plausibly allege that Wenig "conduct[ed] or participate[d]" in such activity. 18 U.S.C. § 1962(c).

### 1.    The complaint fails to allege racketeering activity.

The term "racketeering activity" refers to the violation of a law enumerated in 18 U.S.C. § 1961(1). Such a violation is "commonly referred to as [a] 'predicate act[].'" *Beck*, 529 U.S. at 497 n.2. To state a claim under § 1962(c), a "complaint must identify the predicate act upon which the plaintiff bases his claim." *McLarnon v. United States*, 2009 WL 1395462, at *4 (D. Mass. 2009). "Failure to plead predicate acts adequately is enough to sink [a] RICO claim." *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997).

Here, the complaint alleges five predicate acts: (1) interference with commerce in violation of 18 U.S.C. § 1951; (2) mail fraud in violation of 18 U.S.C. § 1341; (3) wire fraud in violation of 18 U.S.C. § 1343; (4) obstruction of justice in violation of 18 U.S.C. § 1510; and (5) witness tampering in violation of 18 U.S.C. § 1512. Compl. ¶ 264. The complaint does not plead facts sufficient to adequately allege any of the purported predicate acts.

### a.    The complaint fails to plead interference with commerce.

Known as the "Hobbs Act," 18 U.S.C. § 1951 criminalizes interference in, or conspiracy to interfere in, interstate commerce "by robbery or extortion." 18 U.S.C. § 1951(a). As used in the statute, "[t]he term 'robbery' means the unlawful taking or obtaining of personal property from the person … of another" against that person's will through "actual or threatened force, or violence, or fear of injury" to the victim's "person or property." *Id.* § 1951(b)(1). And "[t]he term 'extortion' means the obtaining of property from another," with that person's consent, through the "wrongful use of actual or threatened force, violence, or fear." *Id.* § 1951(b)(2). Because each prong requires

that one "obtain[]" the property of another, one must plead "not only the deprivation but also the acquisition of property" to allege a violation of the Hobbs Act. *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 404 (2003). Here, the complaint does not allege that any defendant acquired any property through "actual or threatened force, or violence, or fear," or otherwise. 18 U.S.C. § 1951(b)(1)–(2); *cf.* Compl. ¶ 267(a). Thus, it fails to allege a predicate violation of the Hobbs Act.

        **b.**      **The complaint fails to plead mail or wire fraud.**

The mail and wire fraud statutes make it a crime to use the U.S. Postal Service, another interstate carrier, or interstate transmissions "for the purpose of executing" any "scheme … to defraud" or "obtain[] money or property by means of false or fraudulent pretenses." 18 U.S.C. §§ 1341, 1343. Apart from an exception not relevant here, each is "limited in scope to the protection of property rights." *McNally v. United States*, 483 U.S. 350, 360 (1987). The complaint does not adequately allege either mail or wire fraud.[6]

As noted above in connection with the Hobbs Act, the complaint does not allege that any defendant obtained—or tried to obtain—money or property from the Plaintiffs. Thus, Plaintiffs' mail and wire fraud allegations must depend on the contention that one or more defendants acted "for the purpose of executing" a "scheme … to defraud." 18 U.S.C. §§ 1341, 1343.

To commit mail or wire fraud in connection with a scheme to defraud, a person must act "with the specific intent to defraud." *United States v. Sawyer*, 85 F.3d 713, 723 (1st Cir. 1996). This means that the individual must act "with the specific intent to deceive or cheat for the purpose of either causing some financial loss to another or bringing about some financial gain to [them]self." Pattern Crim. Jury Instr. 1st Cir. 4.13 (1998). Here, the complaint lacks any allegation that any particular defendant acted with the requisite specific intent.

---

[6]     Notably, neither mail fraud nor wire fraud is among the criminal charges brought by the government against Baugh and his six subordinates. *Cf.* Compl. ¶¶ 209–11.

The only allegation in the complaint that might be construed as an attempt to plead specific intent is the allegation that "Defendants … transmitted by means of wire communication … numerous communications that were designed to defraud Plaintiffs out of property and money, and to cause reputational harm." Compl. ¶ 267(c)(xi). But this allegation is not sufficient to plead either mail or wire fraud as a predicate act. As an initial matter, it cannot support an allegation of mail fraud because it is—by its express terms—limited to purported wire fraud. The allegation is, moreover, entirely conclusory; the complaint alleges no facts that, if true, would plausibly suggest that Defendants' purported acts "were designed to defraud Plaintiffs."

The allegation is also insufficient because it does not satisfy Federal Rule of Civil Procedure 9(b). "It is settled law in this circuit that Fed. R. Civ. P. 9(b), which requires a party to plead fraud with particularity, extends to pleading predicate acts of mail and wire fraud under RICO." *Feinstein v. Resol. Tr. Corp.*, 942 F.2d 34, 42 (1st Cir. 1991), *abrogated on other grounds as recognized by United States v. Velazquez-Fontanez*, 6 F.4th 205, 213 n.2 (1st Cir. 2021); *accord, e.g.*, *Hamilton v. Partners Healthcare Sys., Inc.*, 209 F. Supp. 3d 379, 396 (D. Mass. 2016) (Woodlock, J.). Although Rule 9(b) allows intent to "be alleged generally," when a complaint claiming fraud names multiple defendants, the rule still requires that the complaint "specifically allege facts to show the fraudulent intent … of each defendant." *Guidry v. Bank of LaPlace*, 740 F. Supp. 1208, 1217 (E.D. La. 1990), *aff'd*, 954 F.2d 278 (5th Cir. 1992); *accord, e.g.*, *Iqbal*, 556 U.S. at 687; *Sunwealth Glob. HK Ltd. v. Pinder Int'l, Inc.*, 2021 WL 1145245, at *10 (S.D.N.Y. 2021). Here, however, the complaint—to the extent that it alleges fraudulent intent at all—"simply refers to 'defendants' collectively," and that "is insufficient under Rule 9(b)." *Mechigian v. Art Cap. Corp.*, 612 F. Supp. 1421, 1429 (S.D.N.Y. 1985). Indeed, the "failure to separately allege facts … as to each of the[] Defendants violates Rule 8 … as well as Rule 9(b)." *Barmapov v.*

*Amuial*, 2018 WL 11267365, at *5 (S.D. Fla. 2018).

Plaintiffs have thus failed to adequately allege either mail or wire fraud as a predicate act.

### c.   The complaint fails to plead obstruction of justice.

Plaintiffs identify "[m]ultiple violations of 18 U.S.C. § 1510" as among the predicate acts on which their RICO claims depend. Compl. ¶ 267(d). The complaint, however, fails to allege any facts that would suggest a violation of § 1510. Its only provision that is even conceivably relevant is the provision making it a crime to attempt, "by means of bribery[,] to obstruct … communication of information relating to a violation of" a federal criminal statute. 18 U.S.C. § 1510(a). With no allegation in the complaint that any defendant bribed or attempted to bribe anyone for any purpose, Plaintiffs cannot rely on purported violations of 18 U.S.C. § 1510.

Plaintiffs are not helped by the allegation that several of Baugh's subordinates "pled guilty to conspiracy to obstruct justice." Compl. ¶ 267(d)(i). As alleged elsewhere in the complaint, those individuals were charged with and pleaded guilty to "[c]onspiracy to tamper with a witness" under "18 U.S.C. § 371." *Id.* ¶¶ 209, 212. Although tampering with a witness in violation of 18 U.S.C. § 1512 constitutes a predicate act for purposes of RICO, conspiracy to commit a federal offense in violation of 18 U.S.C. § 371 does not. *See, e.g.*, *United States v. Ruggiero*, 726 F.2d 913, 920 (2d Cir. 1984), *abrogated on other grounds by Salinas v. United States*, 522 U.S. 52, 61–63 (1997); *Zucker v. Farish*, 2018 WL 6570867, at *4 (N.D. Tex. 2018); *cf.* 18 U.S.C. § 1961(1).

Nor are Plaintiffs helped by their conclusory allegation that unspecified defendants committed "[m]ultiple violations of 18 U.S.C. § 1503." Compl. ¶ 264. Violation of § 1503—which proscribes "influenc[ing], obstruct[ing], or imped[ing] … the due administration of justice" by "threats or force"—can constitute a predicate act (*see* 18 U.S.C. § 1961(1)), but the complaint pleads no facts to suggest such a violation. To establish a violation of § 1503, a plaintiff must allege that "there was a pending judicial proceeding; that [the defendant] had notice of the

13

proceeding; and that [the defendant] acted corruptly with the intent to influence or obstruct … the proceeding." *United States v. Acevedo*, 882 F.3d 251, 257 (1st Cir. 2018). The complaint alleges no facts to support any, let alone each, of these elements.

In short, a violation of 18 U.S.C. § 371 is not a predicate act under 18 U.S.C. § 1961(1), and the complaint fails to adequately allege a violation of 18 U.S.C. § 1503 or 18 U.S.C. § 1510.[7]

### d.    The complaint fails to plead witness tampering.

The last alleged predicate acts identified in the complaint are alleged acts of witness tampering in violation of 18 U.S.C. § 1512(b)(2), (3). *Cf.* Compl. ¶ 267(e) & Ex. B ¶¶ 16(vv), (ww), (fff), (ggg), (jjj), (kkk), (mmm), (nnn), 27–30. Although witness tampering in violation of 18 U.S.C. § 1512 is a predicate act under 18 U.S.C. § 1961(1), the conduct alleged in the complaint does not constitute witness tampering in violation of § 1512.

To establish witness tampering in violation of § 1512, the government must "prove a 'reasonable likelihood' that 'at least one of the relevant communications would have been made to a federal officer.'" *United States v. Weadick*, 15 F.4th 1, 2021 WL 4350064, at *6 (1st Cir. 2021) (quoting *Fowler v. United States*, 563 U.S. 668, 677–78 (2011)). "This means that the likelihood of communication to a federal officer must be more than remote, outlandish, or simply hypothetical." *United States v. Flaherty*, 2015 WL 6965099, at *2 (D. Mass. 2015).

Here, the complaint alleges that Baugh and others—but not Wenig—"lied to [Natick Police Department] detectives"; threatened Ina Steiner to "delay or prevent her cooperation with the Natick Police Department"; and "made false statements to eBay in-house lawyers who were investigating in response to the Natick police's inquiries." Compl. ¶¶ 178, 212(a), 267(e)(v); *see also id.* ¶¶ 173, 191 & Ex. B ¶¶ 16(vv), (ww), (fff), (ggg), (jjj), (kkk), (mmm), (nnn). But the

---

[7]    Notably, neither violation of § 1503 nor violation of § 1510 is among the criminal charges brought by the government against Baugh and his six subordinates. *Cf.* Compl. ¶¶ 209–11.

complaint contains no well-pleaded factual allegations plausibly suggesting a "reasonable likelihood" that the statements that were made or would have been made to Natick detectives or eBay's internal investigators "would have been made to a federal officer." *Fowler*, 563 U.S. at 677–78. The complaint does not allege that there was a federal investigation at the time of the alleged witness tampering; nor does it allege any facts plausibly suggesting that those who engaged in the alleged witness tampering anticipated a federal investigation. Although the indictment charging Baugh and Harville asserts that each acted "with intent to hinder, delay, and prevent … communication to a law enforcement officer of the United States" (Compl. Ex. B ¶¶ 28, 30), it alleges no facts to support that bare assertion. *Cf. id.* ¶ 16(a)–(rrr).

Plaintiffs have thus failed to adequately allege witness tampering as a predicate act.

## 2.    The complaint fails to allege a "pattern of racketeering activity."

Even if Plaintiffs had adequately alleged a cognizable injury sufficient to establish standing, and even if they had adequately alleged each of the predicate acts on which they rely, their RICO claims would still have to be dismissed because Plaintiffs fail to adequately allege a "pattern of racketeering activity." 18 U.S.C. § 1962(c).

A "'pattern of racketeering activity' requires at least two acts of racketeering activity … within ten years" of each other. 18 U.S.C. § 1961(5). The Supreme Court has held the "pattern element" to "requir[e] a showing that 'the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" *Giuliano*, 399 F.3d at 386 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). "Acts are related if they have 'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Soto-Negrón v. Taber Partners I*, 339 F.3d 35, 38 (1st Cir. 2003) (quoting *H.J.*, 492 U.S. at 240). A plaintiff "can show continuity in one of two ways." *Home Orthopedics Corp. v. Rodríguez*, 781 F.3d 521, 528 (1st Cir. 2015).

> Under the "closed" approach, a plaintiff would have to prove a "closed period of repeated conduct" that "amounted to … continued criminal activity." Alternatively, under the "open-ended" approach, a plaintiff could satisfy the continuity requirement by showing "past conduct that by its nature projects into the future with a threat of repetition."

*Id.* (quoting *H.J.*, 492 U.S. at 241). Here, Plaintiffs do not allege facts sufficient to establish a pattern of racketeering activity under either approach.

> ### a. The complaint fails to plead a "closed" pattern of racketeering activity.

Even if it were adequately pleaded, the racketeering activity alleged in the complaint is too limited in time and too narrow in scope to establish closed continuity.

Plaintiffs' allegation of "closed-ended" continuity rests on purported acts that supposedly occurred in April 2009, May 2012, January 2014, October 2018, the spring of 2019, June 2019, and August 2019. Compl. ¶¶ 266(a)(i)–(vii). The purported acts were allegedly committed for the "purpose of attempting to silence [the Steiners'] reporting on eBay." *Id.* ¶ 266(a). Notably, not all of the purported acts that supposedly constitute the pattern of racketeering activity are otherwise alleged to be predicate acts of racketeering activity. *Compare* Compl. ¶¶ 266(a)(i), (iii)–(v), *with id.* ¶¶ 267(b), (c). Regardless, insofar as the purported acts supposedly constitute interference with interstate commerce, mail fraud, wire fraud, obstruction of justice, or conspiracy, they are inadequately pleaded or inapposite for the reasons explained above. *See supra* at 10–15.[8]

Pleading defects aside, the purported acts do not establish a "closed" pattern of racketeering activity. Supreme Court precedent teaches "that when a plaintiff has only alleged a few predicate

---

[8]     The purported acts of wire fraud identified in ¶¶ 266(a)(i)–(iv) are inadequately pleaded for other reasons too. The allegations in ¶¶ 266(a)(i), (iii), and (iv) neither "specify the statements that the plaintiff[s] contend[] were fraudulent, … identify the speaker," nor "explain why the statements were fraudulent." *Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir. 1997) (quotation marks omitted). And ¶ 266(a)(ii) fails to identify "to whom" the purportedly false phishing report was made. *Ferring Pharms. Inc. v. Braintree Lab'ys, Inc.*, 38 F. Supp. 3d 169, 181 (D. Mass. 2014). Thus, none of these allegations satisfy Rule 9(b)'s particularity requirement.

acts (*i.e.*, 'sporadic activity'), or when the acts span only a 'few weeks or months,' closed continuity cannot be established." *Home Orthopedics*, 781 F.3d at 529 (directly and indirectly quoting *H.J.*, 492 U.S. at 239, 242). Plaintiffs' allegations founder on this teaching.

Although Plaintiffs (inadequately) allege purported acts that supposedly occurred between 2009 and 2019, only four of those purported acts are alleged to have occurred before the spring of 2019—namely, individual acts that allegedly occurred in April 2009, May 2012, January 2014, and October 2018. *Cf.* Compl. ¶¶ 266(a)(i)–(iv). Because four acts spread over more than nine years are "isolated" events, they do not satisfy the "element of relatedness" needed to fulfill "RICO's pattern requirement." *H.J.*, 492 U.S. at 239–40. In any case, although the four acts were purportedly committed by unspecified eBay employees, the complaint does not allege that any of the supposed employees participated in the "eBay/PFC Enterprise" at issue here. Compl. ¶ 248; *cf. id.* ¶¶ 266(a)(i)–(iv). And only one of the supposed employees, the one purportedly responsible for the May 2012 act, is alleged to have acted within the scope of his employment. *Compare id.* ¶¶ 266(a)(i), (iii), (iv), *with id.* ¶ 266(a)(ii). Thus, even if the alleged May 2012 act—the reporting of EcommerceBytes as a phishing site—were well-pleaded "wire fraud," it is the only act supposedly attributable to the "eBay/PFC Enterprise," and therefore the only supposedly relevant act, that is alleged to have occurred before the spring of 2019. That lone act, alleged to have occurred seven years before the 2019 harassment campaign is, at most, "sporadic activity" incapable of establishing a "closed" pattern. *Home Orthopedics*, 781 F.3d at 529.

The 2019 harassment campaign is the gravamen of Plaintiffs' complaint, and Plaintiffs allege that multiple acts committed during 2019 are part of what they claim is a closed pattern of racketeering activity. One such act was allegedly committed "[i]n the Spring of 2019," another "[o]n or about June 8, 2019," and the remainder "[d]uring the month of August 2019." Compl.

¶¶ 266(a)(v)–(vii). But neither the act allegedly committed in the spring nor the act allegedly committed in June can help establish a pattern of racketeering activity, closed or otherwise. As for the act that allegedly took place in the spring, Plaintiffs allege that Baugh and others "conspired to commit mail fraud." *Id.* ¶ 266(a)(v). But, as noted above, conspiracy does not constitute a predicate act for purposes of RICO. *Cf.* 18 U.S.C. § 1961(1). Nor does interstate travel for the purpose of "scrawl[ing]" graffiti, even threatening graffiti, which is the act alleged to have occurred in June. Compl. ¶ 266(a)(vi). Thus, the only acts that could support Plaintiffs' allegation of a closed pattern of racketeering activity are those that are alleged to have occurred in August 2019.

But precisely because all are alleged to have occurred within a month's time, they too fail to support Plaintiffs' claim of a closed pattern of racketeering activity. Indeed, even if one considered all the acts alleged to have occurred in 2019—*i.e.*, not only those in August but also those in the spring and June—they still would not be enough to establish a closed pattern of racketeering activity because "closed continuity cannot be established" when, as here, "the acts span only a few weeks or months." *Home Orthopedics*, 781 F.3d at 529 (internal quotation marks omitted); *see also, e.g.*, *Giuliano*, 399 F.3d at 390 ("16 predicate acts over a six-month period is inadequate"); *Asphaltos Trade, S.A. v. Bituven P.R., LLC*, 2021 U.S. Dist. LEXIS 28828, at *26 (D.P.R. 2021) (a "handful of predicate acts … barely spanning one year, and concentrated primarily over one month.… do not amount to closed-ended continuity").

The First Circuit, like other courts, has "consistently declined to find continuity where," as here, "the RICO claim concerns a single, narrow scheme targeting few victims." *Home Orthopedics*, 781 F.3d at 530 (quotation marks omitted); *see also, e.g.*, *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (it is "virtually impossible for plaintiffs to state a RICO claim" when the alleged racketeering involves a "single scheme,

single injury, and few victims"). Thus, even if all the acts purportedly targeting EcommerceBytes and the Steiners alleged to have occurred between 2009 and 2019 are considered, the complaint still would not adequately allege a "closed" pattern of racketeering activity.

> **b.    The complaint fails to plead an "open-ended" pattern of racketeering activity.**

Plaintiffs have also failed to plead an "open-ended" pattern of racketeering activity. To plead an open-ended pattern, a complaint must allege facts sufficient to "show[] a threat of future criminal activity—that is, a realistic prospect of continuity over an open-ended period yet to come." *Home Orthopedics*, 781 F.3d at 531 (quotation marks omitted). To do so, the complaint must allege facts that would "show[] that the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future [or] … are part of an ongoing entity's regular way of doing business." *Id.* (quotation marks omitted). The complaint alleges no such facts.

Because "[s]chemes which have a clear and terminable goal have a natural ending point," they "cannot support a finding of any specific threat of continuity that would constitute open-ended continuity." *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000) (quotation marks omitted). Here, the complaint alleges a scheme with a "clear and terminable goal" and a "natural ending point"—namely, a scheme "to silence the Steiner's [sic] reporting on eBay." Compl. ¶ 263. "Once" that purported objective was "achieved, the illegal scheme, as alleged, would end." *Giuliano*, 399 F.3d at 391. Thus, the scheme alleged here cannot establish open-ended continuity.

Implicitly recognizing that an alleged scheme limited to silencing the Steiners cannot establish an open-ended pattern of racketeering activity, Plaintiffs try to expand the alleged scheme's alleged scope beyond silencing just the Steiners. In particular, Plaintiffs allege that in October 2018 "eBay executives, including … Wenig and Wymer, intimidated" an unidentified "YouTube journalist into removing a negative YouTube video about the company," and that in

April 2019 "eBay employees … conspired as to ways to attack the Wall Street Journal" after it published an article discussing Wenig's compensation. Compl. ¶¶ 266(b)(i), (iii). Apart from any pleading deficiencies, neither of these allegations is sufficient to allege an open-ended pattern of racketeering because neither alleges a predicate act of racketeering. As noted already, conspiracy is not a predicate act under 18 U.S.C. § 1961(1). Nor is intimidation, unless it constitutes extortion under the Hobbs Act, which requires, among other things, that the perpetrator obtain (or attempt to obtain) the property of another. *See supra* at 10–11. Here, there is no allegation that any defendant obtained (or attempted to obtain) the unidentified YouTuber's property. Because neither pleads a predicate act enumerated in § 1961(1), these allegations cannot establish that "racketeering acts … are part of [eBay's] regular way of doing business," and thus cannot establish an open-ended pattern of racketeering activity. *Home Orthopedics*, 781 F.3d at 531 (quotation marks omitted).

### 3. The complaint does not allege that Wenig conducted or participated in the alleged enterprise.

For an individual to be held liable under 18 U.S.C. § 1962(c), that individual must have "conduct[ed] or participate[d] … in the conduct of" the racketeering "enterprise's affairs." Even if Plaintiffs had adequately alleged cognizable injury caused by a pattern of racketeering activities, their claim against Wenig under § 1962(c) would still have to be dismissed because the complaint does not adequately allege that Wenig personally "participated in the operation or management of the [purported eBay/PFC] enterprise itself." *United States v. Ernst*, 502 F. Supp. 3d 637, 661 (D. Mass. 2020) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993)).

Although the complaint makes conclusory allegations that Baugh and Harville "took orders from … Wenig" (Compl. ¶¶ 253–54), and that Wenig "orchestrated and directed all Defendants … to destroy the Steiners and their business" (*id.* ¶ 251), the complaint alleges no facts to support

these allegations. In 366 paragraphs spread over 92 pages, the complaint does not identify even one communication between Wenig and Baugh, Harville, or any of the others who conducted the August 2019 harassment campaign. Not one. Nor can it identify any specific action Wenig took that could be interpreted as authorizing the specific acts that the others allegedly undertook.

The only communication—indeed, the only act of any kind—purportedly related to the harassment campaign that the complaint attributes to Wenig is a single text that he allegedly sent Wymer following Ina Steiner's publication of an article on August 1. In that text, Wenig is alleged to have said: "If we are ever going to take [Steiner] down … now is the time." Compl. ¶ 67. Plaintiffs characterize this as an "order[]" that was then "[d]isseminat[ed]" by Wymer to Baugh (*id.* ¶ 68), and implicitly rely on that characterization to tie Wenig to the purported racketeering enterprise. *Cf. id.* ¶¶ 251, 253–54.

But even if Wenig's text to Wymer, which Plaintiffs take out of context, did constitute an "order," it does not establish that Wenig, the CEO of eBay, "participate[d] … in the conduct of" the purported racketeering "enterprise's affairs." 18 U.S.C. § 1962(c). Plaintiffs define the purported racketeering enterprise as "an association-in-fact within the meaning of 18 U.S.C. § 1961(4)" that is "known as the 'eBay/PFC Enterprise.'" Compl. ¶¶ 246–47. Plaintiffs allege— as they must, if they are to sue eBay (*cf., e.g.*, *Doyle*, 103 F.3d at 191)—that eBay is a "person[]" within the meaning of 18 U.S.C. § 1961(3)" that is "distinct from the eBay/PFC Enterprise." Compl. ¶¶ 245, 248. Therefore, to adequately allege Wenig's participation in the purported racketeering enterprise, they must allege well-pleaded facts plausibly suggesting that Wenig's "order" to Wymer, eBay's Chief Communications Officer, was issued not in Wenig's capacity as eBay CEO but in his supposed role as a participant in the "eBay/PFC Enterprise."

Plaintiffs allege no such facts. Indeed, the complaint's well-pleaded factual allegations

strongly suggest that Wenig's text was sent in his capacity as eBay CEO, not as a participant in the supposed "eBay/PFC Enterprise." The complaint contains no well-pleaded factual allegations suggesting that Wymer ever told Baugh that it was Wenig who wanted action taken. On the contrary, the complaint makes clear that when Baugh asked Wymer whether Wenig had "said to burn [Steiner] to the ground," Wymer evaded the question and instead offered his own opinion regarding Steiner. Compl. ¶ 68. In short, the complaint's well-pleaded factual allegations do not plausibly suggest that Wenig participated in the affairs of the purported "eBay/PFC Enterprise."[9]

Because the complaint fails to adequately allege Wenig's participation in a pattern of racketeering conduct that caused Plaintiffs cognizable injury, the complaint fails to state a claim against Wenig under 18 U.S.C. § 1962(c).

### C.      Plaintiffs do not state a conspiracy claim under § 1962(d).

The complaint also fails to state a conspiracy claim against Wenig under 18 U.S.C. § 1962(d). To plead "a RICO-conspiracy," the complaint must allege that "the defendant knowingly joined the conspiracy, agreeing with one or more coconspirators 'to further [the] endeavor which, if completed, would satisfy all the elements of a substantive [RICO] offense.'" *United States v. Rodriguez-Torres*, 939 F.3d 16, 23–24 (1st Cir. 2019) (quoting *Salinas*, 522 U.S. at 65). Here, the complaint adequately alleges neither the existence of a conspiracy that would have committed a substantive RICO offense had it been successful nor Wenig's agreement to join any such conspiracy.

"[I]f," as here, "the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails." *Efron*, 223 F.3d at 21. As explained above (*supra* at 10–15), Plaintiffs have not adequately alleged a racketeering enterprise that, if successful, would

---

[9]      When, as here, a well-reputed CEO of a major public company communicates with the company's chief communications officer about a "take … down," the natural inference is that he is referring to taking lawful action, such as a public rebuttal, rather than engaging in a series of bizarre criminal acts. *See supra* at 3–4 n.2.

have committed a substantive RICO offense: they have alleged neither a cognizable injury nor a pattern of racketeering activity. That alone requires dismissal of their claim under § 1962(d).[10]

But even if Plaintiffs had adequately alleged the existence of a cognizable conspiracy to commit a substantive RICO offense, the conspiracy claim against Wenig (Compl. ¶ 242) still would have to be dismissed because the complaint does not allege well-pleaded facts that, if true, would establish that Wenig "knew about and agreed to facilitate a substantive RICO violation." *United States v. Leoner-Aguirre*, 939 F.3d 310, 316 (1st Cir. 2019). The conclusory allegation that "[t]he Defendants willfully, knowingly, and unlawfully conspired, and agreed … to violate 18 U.S.C. § 1961(c)" does not suffice. Compl. ¶ 265. Conclusory allegations are never sufficient, much less "conclusory allegations against [d]efendants as a group." *8 Erie St. JC LLC v. City of Jersey City*, 2020 WL 2611540, at *3 (D.N.J. 2020). When ruling on a motion to dismiss, a court "must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009); *accord, e.g.*, *Wilson v. Town of Fairhaven*, 2019 WL 1757780, at *17 (D. Mass. 2019), *report and recommendation adopted*, 2019 WL 1760591 (D. Mass. 2019). Here, Plaintiffs allege no well-pleaded facts that would plausibly suggest that Wenig knew of the alleged conspiracy, let alone agreed to join it. Even if the complaint alleged facts to support the conclusory assertion that Wenig, as a member of eBay "management[,] knew or should have known subordinates were engaging in

---

[10]     The claim is also barred by the "intra-corporate-conspiracy" doctrine, which holds that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). The doctrine—which applies to "RICO civil conspiracies" (*Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 898 (8th Cir. 1999)); *cf. United States v. Gurry*, 2020 WL 1063001, at *5 (D. Mass. 2020) (noting circuit split); *aff'd sub nom. United States v. Simon*, 12 F.4th 1 (1st Cir. 2021)—bars Plaintiffs' claim under § 1962(d) because all the purported conspirators are alleged to have been agents of eBay "acting … within the scope of their employment" "in furtherance of eBay's" supposed objectives. Compl. ¶ 13; *see also id.* ¶ 56.

the vast conspiracy" (Compl. ¶ 66), that still would not be enough to hold Wenig liable for that purported conspiracy. Mere knowledge that others were engaged in a conspiracy does not plausibly suggest that Wenig "knew about *and agreed to facilitate*" that purported conspiracy. *Leoner-Aguirre*, 939 F.3d at 316 (emphasis added). Plaintiffs have therefore failed to state a RICO conspiracy claim against Wenig.

## II.   Plaintiffs do not state a state-law claim against Wenig.

Plaintiffs have also failed to state a state-law claim against Wenig. Although the complaint contains ample allegations to plausibly suggest that Baugh and his subordinates conducted a vile harassment campaign against the Steiners, it alleges no facts plausibly suggesting that Wenig participated in that campaign. Wenig's only alleged act is having sent Wymer a text. The alleged sending of that text does not constitute a tort and does not create liability under state law.

### A.   Plaintiffs do not state a claim for intentional infliction of emotional distress.

"To sustain a claim of intentional infliction of emotional distress, a plaintiff must show (1) that *the defendant* intended to cause, or should have known that his conduct would cause, emotional distress; (2) that *the defendant's* conduct was extreme and outrageous; (3) that *the defendant's* conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress." *Sena v. Commonwealth*, 629 N.E.2d 986, 994 (Mass. 1994) (emphasis added). Here, even if it adequately alleges that the August 2019 harassment campaign caused the Steiners to suffer severe emotional distress, the complaint alleges no facts plausibly suggesting (1) that Wenig intended to cause, or knew that texting Wymer would cause, emotional distress; (2) that Wenig texting Wymer was "extreme and outrageous"; or (3) that Wenig's text caused the Steiners' distress.

The complaint contains many conclusory allegations that "[t]he Defendants" collectively "knew or should have known their actions would cause the Steiners emotional … harm" (Compl. ¶ 162; *see also id.* ¶¶ 62, 65, 117, 118, 121, 123, 128, 129, 147, 223, 224), but alleges no well-

24

pleaded facts concerning what Wenig in particular knew or should have known about his own alleged conduct. Nowhere does the complaint plead facts plausibly suggesting that Wenig knew or should have known that texting Wymer would purportedly result in Baugh "planning" a "conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners." *Id.* ¶ 75. Similarly, although the complaint several times alleges that "[t]he Defendants" collectively "intended to have the Steiners suffer emotional distress" (*id.* ¶ 223; *see also id.* ¶¶ 117, 123), it contains no well-pleaded allegations about Wenig's intent, let alone allegations sufficient to plausibly suggest that he intended the Steiners to suffer extreme emotional distress.

In any event, even if the complaint had adequately alleged that Wenig had intended for the Steiners to suffer emotional distress, that alone would not sustain a claim against Wenig for intentional infliction of emotional distress. For a defendant's actions to constitute "extreme and outrageous" conduct, it is "no[t] … enough that the defendant … intended to inflict emotional distress, or even that his conduct [was] characterized by malice." *Roman v. Trustees of Tufts Coll.*, 964 N.E.2d 331, 341 (Mass. 2012) (quotation marks omitted). Rather, the defendant's actions must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (quotation marks omitted). What Baugh and his subordinates did to the Steiners might well satisfy that standard, but Wenig's alleged conduct—texting eBay's chief communications officer—does not.

Finally, the complaint alleges no facts plausibly suggesting that Wenig's text caused the Steiners' emotional distress. On Plaintiffs' own account, it was Baugh—after communicating with Wymer—who "plann[ed]" and "set" the harassment campaign "in motion." Compl. ¶¶ 57, 60, 75, 77. Even if Baugh somehow mistakenly believed that he was acting at Wenig's indirect behest (*but see id.* ¶ 68), what Baugh and his subordinates allegedly did was "so extraordinary that it could not

25

reasonably have been foreseen" by Wenig. *Bobbitt v. United States*, 2006 WL 335231, at *1 (D. Mass. 2006) (quoting *Delaney v. Reynolds*, 825 N.E.2d 554, 557 (2005)). Their intervening conduct is therefore "deemed to be the proximate cause of the [Steiners'] injury and relieves [Wenig] of liability" for the Steiners' emotional distress. *Id.* (quoting *Delaney*, 825 N.E.2d at 557); *cf. Davignon v. Clemmey*, 322 F.3d 1, 9 n.4 (1st Cir. 2003) (rejecting challenge to jury instruction requiring defendant's conduct to "be the proximate cause of the[] severe emotional distress").

Thus, Plaintiffs' claim against Wenig for intentional infliction of emotional distress fails.

### B.      Plaintiffs do not state a claim for stalking.

Recognizing that Massachusetts tort law does not recognize a claim for stalking (*cf.* MGL c.265 § 43A), Plaintiffs assert a claim under Cal. Civ. Code § 1708.7. But it does not apply. Sitting in Massachusetts, this court applies Massachusetts conflict-of-law principles, which are "explicitly guided by the Restatement (Second) of Conflict of Laws." *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 74 (1st Cir. 2006) (quotation marks omitted). Under the Restatement, "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." Restatement (Second) of Conflict of Laws § 145 (1971). Here, Massachusetts, not California, has the most significant relationship to the alleged stalking. *Cf.* Compl. §§ 97, 103. Thus, Massachusetts law applies. Because it does not recognize a stalking claim, Plaintiffs' claim fails.

In any case, Plaintiffs do not state a claim under Cal. Civ. Code § 1708.7. To state a claim, Plaintiffs must allege that "[t]he defendant engaged in a pattern of conduct the intent of which was to follow, alarm, place under surveillance, or harass the plaintiff." *Id.* § 1708.7(a)(1). The statute defines "pattern of conduct" as "a series of acts over a period of time." *Id.* § 1708.7(b)(1). Here, the complaint contains no well-pleaded factual allegations that Wenig engaged in a series of acts over a period of time. It attributes only one arguably relevant act to him—texting Wymer.

Furthermore, it alleges no well-pleaded facts regarding Wenig's intent, let alone well-pleaded facts plausibly suggesting that Wenig intended "to follow, alarm, place under surveillance, or harass" the Steiners. *Id.* § 1708.7(a)(1). Thus, the complaint fails to state a stalking claim against Wenig.

### C.      Plaintiffs do not state a claim under the Massachusetts Civil Rights Act.

To state a claim under the Massachusetts Civil Rights Act (MGL c.12 § 11I), Plaintiffs must allege "that (1) their exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion." *Do Corp. v. Town of Stoughton*, 2013 WL 6383035, at *12 (D. Mass. 2013) (quotation marks omitted). Here, Plaintiffs' MCRA claim against Wenig is "barred" because there is no allegation that Wenig "personally engaged" in threats, intimidation, or coercion. *Gilanian v. City of Boston*, 431 F. Supp. 2d 172, 174 n.1 (D. Mass. 2006). That he allegedly sent a text to Wymer does not support an MCRA claim against Wenig because, even if it encouraged Wymer to act against the Steiners, the text "was directed towards [Wymer] … and … not aimed at Plaintiffs." *Do Corp.*, 2013 WL 6383035, at *12 (allegation that defendant's letter and testimony encouraged third party to take purportedly unlawful action against plaintiff "failed to state an MCRA claim"). Thus, the complaint fails to state an MCRA claim against Wenig.

### D.      Plaintiffs do not state a claim for defamation.

"To prevail on a claim of defamation, a plaintiff must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." *White v. Blue Cross & Blue Shield of Mass., Inc.*, 809 N.E.2d 1034, 1036 (Mass. 2004). Here, Plaintiffs allege that "Defendants" defamed Plaintiffs "by intentionally sending sexually charged pornography to the Steiners' neighbor[s'] homes, in David Steiner's

name" (Compl. ¶ 294); "by posting ads on Craigslist [stating] that the Plaintiffs were sexual swingers" (*id.* ¶ 298); by making "false statements on Twitter claiming that … Ina Steiner was destroying small and family businesses through her biased and negative reporting on eBay" (*id.* ¶ 299); and "by creating fake 'Persons of Interest' files on [the Steiners], in order to suggest the Steiners were a threat to eBay and [its] security" (*id.* ¶ 300).

The allegation that "Defendants" defamed the Steiners does not state a claim against Wenig. When a "claim is asserted against multiple defendants," the complaint must "allege the factual basis for the claim against each defendant" individually. *See Daniels v. Varela*, 2020 WL 5440574, at *5 (D. Mass. 2020). Here, the complaint pleads no facts that would suggest that Wenig personally made or was otherwise "at fault for the publication of" any of the allegedly defamatory statements. *White*, 809 N.E.2d at 1036. Thus, it fails to state a defamation claim against Wenig.

### E.  Plaintiffs do not state a claim for trespassing.

Under Massachusetts law, "'[o]ne is subject to liability to another for trespass … if he intentionally … enters land in the possession of the other, or causes a thing or a third person to do so.'" *Dilbert v. Hanover Ins. Co.*, 825 N.E.2d 1071, 1077 (Mass. App. Ct. 2005) (quoting Restatement (Second) of Torts § 158). Here, Plaintiffs' trespassing claim turns on the allegation that "[t]he Defendants entered onto the Steiners' property without right or privilege to do so, in order to attempt to attach a GPS device to their vehicle." Compl. ¶ 313. Given that the complaint does not allege that he personally entered the Steiners' property, the trespass claim against Wenig must rest on the implicit contention that he "cause[d] … a third person to do so." *Dilbert*, 825 N.E.2d at 1077. There is, however, no well-pleaded factual allegation plausibly suggesting that Wenig caused anyone to enter the Steiners' property for any purpose, whether to attach a GPS device to their vehicle or otherwise. Because Wenig "could not reasonably have … foreseen" that his lone alleged act, texting Wymer, would lead to someone entering the Steiners' property in an

attempt to attach a GPS device to their vehicle, it cannot be said that Wenig proximately "cause[d]" the alleged trespass, even if the text were "a but-for cause." *Bobbitt*, 2006 WL 335231, at *1. Thus, the complaint fails to state a trespassing claim against Wenig.

### F. Plaintiffs do not state a claim for false imprisonment.

"A defendant is liable for false imprisonment if: (a) he acts *intending to confine* another within fixed boundaries; (b) the act directly or indirectly results in confinement; and (c) the plaintiff is conscious of the confinement." *Cremaldi-Vickery v. Otis Elevator, Inc.*, 782 N.E.2d 48 (table), 2003 WL 168452, at *2 (Mass. App. Ct. 2003) (citing Restatement (Second) of Torts § 35) (emphasis added). Thus, to be liable for false imprisonment, one must act with "the specific intent to confine another." *Id.* (citing *Sarvis v. Boston Safe Deposit & Tr. Co.*, 47 Mass. App. Ct. 86, 98 (1999)). Here, the complaint alleges that "[t]he Defendants' incessant packages and cruel and abusive messages and threats forced the Plaintiffs to remain in their home, as house prisoners, too fearful to leave their property." Compl. ¶ 319. Although it characterizes this as "intentional confinement" (*id.* ¶ 321), it alleges no facts plausibly suggesting that Wenig ever acted with "the specific intent to confine" the Steiners. *Cremaldi-Vickery, Inc.*, 2003 WL 168452, at *2. Thus, the complaint fails to state a false-imprisonment claim against Wenig.

### G. Plaintiffs do not state a claim for vandalism.

Plaintiffs assert a claim for vandalism based on "[t]he Defendants" having allegedly "scrawl[ed] 'Fidomaster' on [the Steiners'] fence." Compl. ¶ 329.

Although Massachusetts does not recognize a cause of action for "vandalism" as such, it does recognize the tort of "trespass to chattel[s]," which, under certain circumstances, is the civil equivalent to malicious destruction of property. *Richardson v. Ne. Hosp. Corp.*, 883 N.E.2d 342 (table), 2008 WL 834447, at *1 n.6 (Mass. App. Ct. 2008) (citing Restatement (Second) of Torts § 217). "Under Massachusetts law, '[o]ne who commits a trespass to chattels is subject to liability

29

to the possessor of the chattel if … the chattel is impaired as to its condition, quality, or value.'" *Heal v. Wells Fargo, N.A.*, 2021 WL 3915023, at *12 (D. Mass. 2021) (quoting *Smith v. Wright*, 2013 WL 1042544, at *6 (Mass. App. Div. 2013), in turn citing Restatement (Second) of Torts § 218). Like all torts enumerated in Division 1 of the Restatement (Second) of Torts, trespass to chattels is an intentional tort. Thus, for a person to commit trespass of chattels, that person must either "desire[] to cause [the] consequences of his act, or … believe[] that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A.

Even if the "vandalism" claim is construed as a claim for trespass to chattels, the complaint does not state a claim against Wenig, who is not alleged to have had any direct or indirect involvement in the purported vandalism. The complaint alleges that the purported vandalism occurred when "Gilbert, at … Baugh's direction, flew" in June 2019 "from California to Boston" and then "drove to the Steiners' home in Natick … and scrawled the word 'FIDOMASTER' on their fence." Compl. ¶ 54. It alleges no facts plausibly suggesting that Wenig acted with a "desire[] to cause" the defacement of the Steiners' fence or "believe[d]" that the defacement was "substantially certain to result" from any act he took. Restatement (Second) of Torts § 8A. Indeed, as a matter of temporal logic, the complaint cannot allege that Wenig's alleged act—texting Wymer in August 2019—would directly or indirectly cause the June 2019 defacement of the Steiners' fence. Thus, the complaint fails to state a "vandalism" claim against Wenig.

## H.   Plaintiffs do not state a claim for unfair and deceptive trade practices.

Plaintiffs assert a claim against Wenig for unfair and deceptive trade practices under MGL c.93A § 11. The claim rests on "Defendants," as purported "agents for eBay," having allegedly "creat[ed] false online accounts in order to pose as sellers on eBay who were angry about articles written by Plaintiff Ina Steiner"; "threaten[ed] to kill Plaintiffs unless such purported negative coverage of eBay ceased"; "sen[t] disturbing packages to Plaintiffs' home to frighten the Plaintiffs

into providing more favorable coverage of eBay"; and "conduct[ed] surveillance on the Plaintiffs while at their home and in their community." Compl. ¶¶ 344, 346.

Absent privity of contract, a plaintiff must allege that the parties were "engaged in more than a minor or insignificant business relationship." *Imprimis Invs., LLC v. KPMG Peat Marwick LLP*, 868 N.E.2d 143, 153 (Mass. App. Ct. 2007). Here, the only business relationship alleged between the parties is that "Defendants eBay and PFC are subscribers *and/or* readers of EcommerceBytes." Compl. ¶ 345 (emphasis added). Thus, the only allegation of a contractual relationship between the parties is that eBay and PFC *might* be EcommerceBytes subscribers. That is not enough to plausibly allege privity of contract, because "[p]lausible, of course, means something more than merely possible." *Schatz*, 669 F.3d at 55. Having failed to adequately allege privity of contract, Plaintiffs must allege that the parties were "engaged in more than a minor or insignificant business relationship." They fail to do so. That eBay and PFC are allegedly "readers of EcommerceBytes" is, at most, a minor or insignificant relationship. Compl. ¶ 345.

In any event, the complaint does not state a claim for unfair and deceptive trade practices against Wenig. Although "[i]t is settled that corporate officers may be held liable under c.93A for their *personal* participation in conduct invoking its sanctions" (*Cmty. Builders, Inc. v. Indian Motocycle Assocs., Inc.*, 692 N.E.2d 964, 979 (1998) (emphasis added)), the complaint contains no well-pleaded factual allegations plausibly suggesting that Wenig personally participated in any of the allegedly unfair and deceptive acts. Indeed, to the extent that the complaint attributes any of those acts to specific individuals, it attributes them not to Wenig but to Baugh, Harville, Gilbert, Cooke, Popp, Stockwell, and Zea. *Cf.* Compl. ¶¶ 78, 79, 92, 96, 103–05, 108, 110, 151, 153–56. Thus, the complaint fails to state an MGL c.93A § 11 claim against Wenig.

### I.      Plaintiffs do not state a claim for tortious interference with business relations.

To state a claim for tortious interference with business relations, a complaint must

adequately allege "that a business relationship from which the plaintiff might benefit existed; the defendant knew of the relationship; the defendant intentionally interfered with the relationship for an improper purpose or by improper means; and the plaintiff was damaged by that interference." *Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B.*, 815 N.E.2d 241, 245 (Mass. App. Ct. 2004). Plaintiffs' complaint does not state a tortious-interference claim against Wenig.

To start, the complaint does not adequately allege that Plaintiffs were damaged by the alleged interference. Plaintiffs were allegedly injured because "clients, businesses and advertisers were misled into believing that that Plaintiffs were hurting small and family businesses and were pushing buyers away from eBay through their purported negative coverage of eBay," and because "[o]nline sellers now fear doing business with the Plaintiffs will result in similar" unspecified "conduct directed towards them." Compl. ¶ 355. This allegation of harm is insufficient for several reasons. Although the complaint alleges that Plaintiffs have business relations with advertisers, subscribers, and sources, nowhere does it allege that Plaintiffs have "clients" or "do[] business" with online sellers. Nor does it explain what economic relations, if any, Plaintiffs have with "businesses." And even if one assumes that the unidentified clients, sellers, and businesses are EcommerceBytes advertisers and subscribers, the complaint contains no well-pleaded factual allegations plausibly suggesting that any advertiser or subscriber was "misled into believing" anything or "now fear[s] doing business with the Plaintiffs." *Id.* Nor does it contain any well-pleaded factual allegations plausibly suggesting that any purported misperception or fear cost EcommerceBytes any revenue. In short, the complaint fails to adequately allege that Plaintiffs were "damaged by [the alleged] interference." *Pembroke Country Club*, 815 N.E.2d at 245.

In any case, even if the complaint did adequately allege injury, it does not state a tortious-inference claim against Wenig in particular. To be liable for tortious interference with a business

relationship, "the defendant" must have "intentionally interfered with the relationship for an improper purpose or by improper means." *Pembroke Country Club*, 815 N.E.2d at 245. To have intentionally interfered, a defendant must have acted either with the "desire[]" to interfere or in the "belie[f]" that interference was "substantially certain to result." Restatement (Second) of Torts § 8A. Here, the complaint alleges no facts plausibly suggesting that Wenig, in texting Wymer, acted with a desire to interfere with Plaintiffs' economic relationships for an improper purpose or by improper means, or that he did so in the belief that such interference was substantially certain to result. Thus, it fails to state an intentional-interference claim against Wenig.

**J.      Plaintiffs do not state a claim for civil conspiracy.**

Implicitly recognizing their failure to allege facts plausibly suggesting Wenig's direct participation in the tortious conduct alleged, Plaintiffs invoke the civil-conspiracy doctrine to claim that Wenig is liable for the other defendants' purportedly tortious acts. But the doctrine is not applicable when, as here, all of the purported conspirators are alleged to have been acting as agents of a single corporate entity. In any event, the complaint fails to allege facts sufficient to hold Wenig vicariously liable under the civil-conspiracy doctrine.

The complaint alleges that the purported individual conspirators "were acting … within the scope of their employment" and that all "were employed by eBay, or contracted by eBay through PFC." Compl. ¶ 13. In other words, according to the complaint, all of the alleged conspirators were acting as agents of eBay. That includes Zea, allegedly "an eBay contractor" who, according to the complaint, "direct[ly] report[ed]" to "eBay's head of security and operations." *Id.* ¶¶ 13, 37. Because all the purported conspirators are alleged to have been "agents of the same legal entity" acting within the scope of their agency (*Ziglar*, 137 S. Ct. at 1867), the intra-corporate-conspiracy doctrine (*cf. supra* at 23 n.10) bars Plaintiffs' civil-conspiracy claim.

Under Massachusetts civil-conspiracy law, one person can be held vicariously liable for

33

the tortious conduct of another if that person "does a tortious act in concert with the other pursuant to a common design with him," or if that person "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." *Payton v. Abbott Labs*, 512 F. Supp. 1031, 1035 (D. Mass. 1981) (quoting Restatement (Second) of Torts § 876(a), (b)); *accord Taylor v. Am. Chemistry Council*, 576 F.3d 16, 35 (1st Cir. 2009). Plaintiffs do not plead sufficient facts to support vicarious liability under either theory.

To state a civil-conspiracy claim under the "concert of action" theory, a plaintiff must plead: (1) "that the defendant and the other have an agreement to perform the act or achieve the particular result"; and (2) "that the defendant's own conduct [was] tortious." *Payton*, 512 F. Supp. at 1035. Plaintiffs' complaint adequately alleges neither element. Apparently trying to satisfy the first element, it asserts that all "[t]he Defendants[] act[ed] in concert" and that "Wenig … specifically advised" the others "to engage in the tortious conduct." Compl. ¶¶ 333, 338. But it alleges no facts to support these conclusory assertions; nor does it allege any facts that would plausibly suggest that Wenig and the other "'defendants agreed together' to commit an underlying tort." *Bassett v. Jensen*, 459 F. Supp. 3d 293, 312 (D. Mass. 2020) (quoting *Gutierrez v. Mass. Bay Transp. Auth.*, 772 N.E.2d 552, 568 (Mass. 2002)). In any event, as shown above (*see supra* at 20–22), the complaint contains no well-pleaded factual allegations plausibly suggesting that Wenig's "own conduct"—*i.e.*, texting Wymer—was tortious. *Payton*, 512 F. Supp. at 1035. Thus, Plaintiffs have failed to state a civil-conspiracy claim against Wenig under the "concert of action" theory.

To state a civil-conspiracy claim under the "aiding and abetting" theory, a plaintiff must plead: (1) that the defendant gave "substantial assistance or encouragement to the other party"; and (2) that the defendant had "an unlawful intent, *i.e.*, knowledge that the other party [wa]s breaching a duty and the intent to assist that party's actions." *Payton*, 512 F. Supp. at 1035. Here,

the complaint fails to adequately plead either element. It offers only the conclusory allegations that "Wenig … knew the conduct of the others[s] … was tortious" and "provided" them "substantial assistance and/or encouragement" while they "were engaging in the tortious conduct." *Id.* ¶¶ 337, 339. It alleges no facts to support these bare assertions. Wenig's only alleged act was to text Wymer. On Plaintiffs' own account, Wenig texted Wymer *before* the harassment campaign was "plann[ed]" and "set in motion" by Baugh, its "ringleader." *Id.* ¶¶ 71, 75, 77. The complaint alleges no further act by Wenig and no facts plausibly suggesting that Wenig knew of the subsequent allegedly tortious conduct or that he intended to assist it. Thus, Plaintiffs have failed to state a civil-conspiracy claim against Wenig under the "aiding and abetting" theory.[11]

Because the complaint fails to adequately plead Wenig's participation in a civil conspiracy, he cannot be held vicariously liable for torts committed by others.[12]

## CONCLUSION

Plaintiffs' claims against Devin Wenig should be dismissed.

Dated: October 28, 2021

Respectfully submitted,

/s/ *Abbe David Lowell*
Abbe David Lowell (*pro hac vice*)
Andrew E. Tauber (*pro hac vice*)
WINSTON & STRAWN LLP

---

[11]     The complaint's general aiding-and-abetting allegations (Compl. ¶¶ 229, 239, 282, 288, 311, 316, 327, 331, 352, 357) fail for the same reasons. *See Mansor v. JPMorgan Chase Bank, N.A.*, 183 F. Supp. 3d 250, 264 (D. Mass. 2016).

[12]     In an apparent effort to hold eBay vicariously liable for the allegedly tortious "acts of the individually named Defendants," Plaintiffs allege that "eBay and its Board of Directors" ratified those acts. Compl. ¶¶ 361, 366. On its face, the ratification claim is directed at eBay, not Wenig. And even if it were aimed at Wenig, the complaint's allegations would be insufficient to hold him vicariously liable on a ratification theory. Ratification requires "full knowledge of all material facts, subject, however, to the qualification that there may be ratification when one purposely shuts his eyes to means of information within his own possession and control, and ratifies an act deliberately." *Licata v. GGNSC Malden Dexter LLC*, 2 N.E.3d 840, 847 (Mass. 2014) (quotation marks omitted). Here, there are no well-pleaded facts plausibly suggesting that Wenig knew of the harassment campaign or deliberately ratified it after shutting his eyes to available information. There is therefore no basis on which to hold Wenig vicariously liable.

1901 L Street, NW
Washington, DC 20036
adlowell@winston.com
atauber@winston.com
(202) 282-5000

Martin G. Weinberg, Esq.
Martin G. Weinberg PC
20 Park Plaza
Suite 1000
Boston, MA 02116
owlmgw@att.net
(617) 227-3700

*Counsel for Devin Wenig*