## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Ina Steiner,<br>David Steiner,<br>Steiner Associates, LLC,<br>(Publisher of EcommerceBytes)<br><br>Plaintiffs,<br><br><br>vs.<br><br><br>eBay, Inc.,<br>Progressive F.O.R.C.E.Concepts, LLC<br>Devin Wenig,<br>Steve Wymer,<br>James Baugh,<br>David Harville,<br>Brian Gilbert,<br>Stephanie Popp,<br>Stephanie Stockwell,<br>Veronica Zea,<br>Philip Cooke,<br>John and Jane DOE,<br><br>Defendants. | No. 21-CV-11181-DPW<br><br><br>**ORAL ARGUMENT REQUESTED**<br><br>**LEAVE TO FILE EXCESS PAGES<br>GRANTED ON OCTOBER 26, 2021** |

## DEFENDANT PHILIP COOKE'S MEMORANDUM
## <u>IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT</u>

## TABLE OF AUTHORITIES

## CASES

*Albright v. Morton*, 321 F. Supp. 2d 130 (D. Mass. 2004) ........................................................ 12

*All Seasons Servs., Inc. v. Comm'r of Health and Hosp. of Bos.*, 416 Mass. 269 (1993) .............. 9

*Am. Private Line Servs., Inc. v. E. Microwave, Inc*., 980 F.2d 33 (1st Cir. 1992)........................ 11

*Amrak Prods., Inc. v. Morton*, 410 F.3d 69 (1st Cir. 2005)........................................................ 12

*Appling v. City of Brockton*, 649 F. Supp. 258 (D. Mass. 1986) ................................................ 23

*Arthur D. Little, Inc. v. Dooyang Corp*., 147 F.3d 47 (1st Cir. 1998) ........................................ 10

*Ball v. Wal-Mart, Inc*., 102 F. Supp. 2d 44 (D. Mass. 2000)........................................................ 5

*Barrows v. Wareham Fire Dist*., 82 Mass. App. Ct. 623 (2012) .................................................. 5

*Bennett v. Centerpoint Bank*, 761 F. Supp. 908 (D. N.H. 1991) ................................................ 15

*Blake v. Prof'l Coin Grading Serv*., 898 F. Supp. 2d 365 (D. Mass. 2012) ................................ 21

*Blazheiev v. Ubisoft Toronto Inc*., 2018 WL 3417481 (N.D. Cal. 2018) ...................................... 5

*Bos. Cab Dispatch, Inc. v. Uber Techs., Inc*., 2015 WL 314131 (D. Mass. Jan. 26, 2015) ......... 17

*Brennan v. Ferreira*, 251 F. Supp. 3d 338 (D. Mass. 2017)........................................................ 21

*Camelio v. Am. Fed'n*, 137 F.3d 666 (1st Cir. 1998)................................................................ 15

*Canney v. City of Chelsea*, 925 F. Supp. 58 (D. Mass. 1996) ...................................................... 6

*Cash Energy, Inc. v. Weiner*, 768 F. Supp. 892 (D. Mass. 1991) ................................................ 8

*Circiello v. Alfano*, 612 F. Supp. 2d 111 (D. Mass. 2009) ........................................................ 16

*Conning v. Halpern*, 2021 WL 1580837 (D. Mass. Apr. 22, 2021) ............................................ 15

*Crimson Galeria Ltd. P'ship v. Healthy Pharms, Inc*., 337 F.Supp.3d (D. Mass. 2018) ............. 16

*Damon v. Moore*, 520 F.3d 98 (1st Cir. 2008)........................................................................ 14

*Debnam v. FedEx Home Delivery*, 766 F.3d 93 (1st Cir. 2014)................................................ 7, 9

*DeMauro v. DeMauro*, 115 F.3d 94 (1st Cir. 1997) .................................................................. 16

*DeVona v. Zeitels*, 2014 WL 972145 (D. Mass. Mar. 12, 2014) .................................................. 9

*Diaz v. Devlin*, 229 F. Supp. 3d 101 (D. Mass. 2017) ..................................................... 4

*Driscoll v. McCann*, 505 F. Supp. 3d 32 (D. Mass. 2020) ......................................... 6, 9

*Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12 (1st Cir. 2000) ...................... 17, 19, 20

*Emerson v. Mass. Port Auth.*, 138 F. Supp. 3d 73 (D. Mass. 2015) ............................................. 24

*FAC, Inc. v. Cooperativa de Seguros de Vida*, 106 F. Supp. 2d 244 (D. P.R. 2000) .................. 19

*Fiorillo v. Winiker*, 85 F. Supp. 3d 565 (D. Mass. 2015) ................................................ 12

*Giuliano v. Fulton*, 399 F.3d 381 (1st Cir. 2005) ....................................................... 19

*Greenspan v. Random House, Inc.*, 859 F. Supp. 2d 206 (D. Mass. 2012) ........................... 12, 14

*Hallal v. Vicis Cap. Master Fund Ltd.*, 2013 WL 1192384 (D. Mass. Feb. 25, 2013)................. 21

*Haufler v. Zotos*, 446 Mass. 489 (2006) ................................................................... 22

*Henriquez v. City of Lawrence*, 2015 WL 3913449 (D. Mass. June 25, 2015)............................ 23

*In re GlassHouse Techs., Inc.*, 604 B.R. 600 (Bankr. D. Mass. 2019) ...................................... 8

*In re TelexFree Secs. Litg.*, 358 F. Supp. 3d 112 (D. Mass. 2019).................................... 8

*Joe Hand Promotions, Inc. v. Rajan*, 2011 WL 3295424 (D. Mass. July 28, 2011) .................... 8

*John Boyd Co. v. Bos. Gas Co.*, 775 F. Supp. 435 (D. Mass. 1991)................................... 8

*Katin v. Nat'l Real Est. Info. Servs., Inc.*, 2009 WL 929554 (D. Mass. Mar. 31, 2009) ............. 11

*L.B. Corp. v. Schweitzer-Mauduit Intern., Inc.*, 121 F. Supp. 2d 147 (D. Mass. 2000) ................ 7

*Lawson v. FMR LLC*, 2021 WL 3493859 (D. Mass. Aug. 9, 2021)........................................... 16

*Li v. Zeng*, 98 Mass. App. Ct. 743 (2020)................................................................ 13

*Linkage Corp. v. Trs. of Boston Univ.*, 425 Mass. 1 (1997). ......................................... 7

*Mani v. United Bank*, 498 F. Supp. 2d 406 (D. Mass. 2007)........................................... 20

*Mass Port Auth. v. Turo Inc.*, 487 Mass. 235 (2021)................................................... 2

*McNally v. United States*, 483 U.S. 350 (1987) ............................................................ 18

*Meuser v. Fed. Express Corp.*, 564 F.3d 507 (1st Cir. 2009) ....................................... 23

*Mullane v. Breaking Media, Inc.*, 433 F. Supp. 3d 102 (D. Mass. 2020) ..................... 21

*Natale v. Espy Corp.*, 2 F. Supp. 3d 93 (D. Mass. 2014) .............................................. 16

*North Bridge Assocs., Inc. v. Boldt*, 274 F.3d 38 (1st Cir. 2001) ................................. 17

*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1 (1st Cir. 2011) .................................. 3

*Orwat v. Maloney*, 360 F. Supp. 2d 146 (D. Mass. 2005) ............................................. 22

*Payton v. Wells Fargo Bank, N.A.*, 2013 WL 782601 (D. Mass. Feb. 28, 2013) ......... 24

*Phelan v. May Dept. Stores Co.*, 443 Mass. 52 (2004) ................................................. 14

*Pollard v. Georgetown Sch. Dist.*, 132 F. Supp. 3d 208 (D. Mass. 2015) .................... 24

*Rose v. Town of Concord*, 971 F. Supp. 47 (D. Mass. 1997) ...................................... 5, 6

*Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003) ..................................... 18

*see also Moving and Storage, Inc. v. Panayotov*, 2014 WL 949830 (D. Mass. Mar. 12, 2014) .. 11

*Shapiro v. Am. Home Assur. Co.*, 584 F. Supp. 1245 (D. Mass. 1984) .......................... 6

*Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25 (1st Cir. 2002) .............. 10

*Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*, 990 F.3d 31 (1st Cir. 2021) .......... 16, 17

*United States v. Ernst*, 502 F. Supp. 3d 637 (D. Mass. 2020) ..................................... 20

*United States v. Ruggiero*, 726 F.2d 913 (2d Cir. 1984) .............................................. 19

*United States v. Sawyer*, 85 F.3d 713 (1st Cir. 1996) ................................................... 18

*Whitman & Co., Inc. v. Longview Partners.*, 2015 WL 4467064 (D. Mass. July 20, 2015) ........ 22

*Zareas v. Bared-San Martin*, 209 Fed. App'x. 1 (1st Cir. Dec. 15, 2006) ................... 15

## **STATUTES**

18 U.S.C.  § 1341 ........................................................................................................... 18

18 U.S.C. § 1510(a) ...................................................................................................... 18

18 U.S.C. § 1951(a) ...................................................................................................... 17

18 U.S.C. § 1961(5) ...................................................................................................... 19

18 U.S.C. § 1964(c) ...................................................................................................... 15

Mass. Gen. Laws Ch. 12, §§ 11H, 11I ......................................................................... 22

Mass. Gen. Laws Ch. 93A, § 1(b) ................................................................................. 9

Mass. Gen. Laws Ch. 93A, § 11 .................................................................................. 10

Mass. Gen. Laws Ch. 93A, § 2(a) .................................................................................. 7

## TABLE OF CONTENTS

RELEVANT BACKGROUND ................................................................................ 2

LEGAL STANDARD ........................................................................................... 3

ARGUMENT ....................................................................................................... 4

I.      Plaintiffs' Trespass (6) and Vandalism (8) Claims Must be Dismissed ..................... 4

II.     Plaintiffs' Stalking (2), False Imprisonment (7), and Ratification (12) Claims Fail... 4

III.    Plaintiffs Fail to State a Claim for Violation of Chapter 93A (10) ............................. 7

IV.     Plaintiffs' Intentional Interference with Business Relationships (11) Claim Fails ... 10

V.      Plaintiffs Cannot State a Claim for Defamation (5) ................................................. 12

VI.     Plaintiffs Cannot State a Claim for Civil RICO (3) ................................................. 15

        A.      Plaintiffs Lack Standing to Pursue a RICO Claim .................................. 15

        B.      Plaintiffs Fail to Sufficiently Allege Predicate Racketeering Acts ......... 17

        C.      Plaintiffs Fail to Properly Allege a "Pattern of Racketeering Activity" ... 19

        D.      Plaintiffs Fail to Properly Allege Mr. Cooke Participated in the Operation or
                Management of the Enterprise .......................................................... 20

VII.    Plaintiffs' Civil Conspiracy (9) Claim Fails ............................................................ 21

VIII.   Plaintiffs' Claim Under the Massachusetts Civil Rights Act (4) Fails ..................... 22

IX.     Plaintiffs' IIED (1) Claim Must be Dismissed ......................................................... 23

CONCLUSION ................................................................................................... 24

This action arises out of claims by Ina and David Steiner and their LLC ("Plaintiffs") against two corporate entities, senior executives of eBay, Inc., and their subordinates ("Defendants"). Despite the lengthy Complaint, Plaintiffs fail to include the necessary specific factual allegations to support their causes of action against Mr. Cooke. The Complaint is devoid of allegations that Mr. Cooke trespassed or vandalized their property, stalked or falsely imprisoned them, or that he was ever in Massachusetts during the alleged misconduct (he was not). Plaintiffs do not allege that Mr. Cooke was involved in sending deliveries of unwanted items to the Plaintiffs; signed the Plaintiffs up for unwanted email subscriptions; posted information on Craigslist about them; or purchased or acquired items for use in the alleged harassment. Similarly, Plaintiffs fail to provide a factual basis to believe that there was any business relationship between themselves and Mr. Cooke, much less facts needed to support their claims of business or property injury, as needed for their Chapter 93A and interference with business relationship claims. While Plaintiffs allege that Mr. Cooke approved certain tweets, they utterly fail to identify which tweets he supposedly approved, when, and whether or how many of the ones he supposedly approved were defamatory. The civil RICO claims are legally deficient for reasons set forth herein. The civil conspiracy claim lacks allegations that Mr. Cooke agreed to a plan to conduct the various torts alleged or committed any tortious acts in furtherance of the agreement. No facts are set forth to show Mr. Cooke threatened, intimidated or coerced the Plaintiffs; and no facts are alleged that Mr. Cooke's actions caused the Plaintiffs' distress. Finally, no factual allegations suggest Mr. Cooke supervised any of the other Defendants or ratified anyone's alleged misconduct. For these reasons, the Complaint against Mr. Cooke should be dismissed in its entirety.

To the extent Plaintiffs seek to rescue their deficient pleading with an "aiding and abetting" theory, it similarly fails. Aiding and abetting requires (1) that the Defendants committed the

relevant tort, (2) that Mr. Cooke knew that the Defendants committed the relevant tort, and (3) Mr. Cooke actively participated in or substantially assisted in the commission of the tort. *Mass Port Auth. v. Turo Inc.*, 487 Mass. 235, 244 (2021). As with the various causes of action alleged and as described above, the Complaint is devoid of any factual allegations that plausibly suggest Mr. Cooke committed the relevant torts, knew others were committing the relevant torts, and/or that he actively participated or substantially assisted in their commission.

### RELEVANT BACKGROUND[1]

Mr. Cooke is a California resident. Compl. ¶¶ 17, 34. In April 2019, Mr. Cooke joined eBay. *Id*. at ¶ 34. He supervised security operations at eBay's offices in Europe and Asia. *Id*. He ultimately reported to eBay's head of security and operations, Defendant James Baugh. *Id*. at ¶ 37. Plaintiffs do not allege that Mr. Cooke had supervisory authority over any employees involved in this case.

As the Complaint makes clear, the alleged conduct was driven by other Defendants. Mr. Cooke was not involved in Defendant Gilbert's alleged trip from California to Massachusetts to write "FIDOMASTER" on Plaintiffs' fence. *Id*. at ¶ 54. He did not visit Plaintiffs' home in Massachusetts. *See id*. at ¶¶ 54-55. He was not present when Defendants Baugh, Harville, and Zea allegedly traveled to Massachusetts to attempt to place a GPS device on Plaintiffs' vehicle. *Id*. at ¶¶ 97, 102-104, 111. He was not involved in surveillance of the Plaintiffs in Massachusetts. *Id*. at ¶¶ 111-113, 134, 137. Other Defendants, not Mr. Cooke, are alleged to have sent certain items to the Plaintiffs. *Id*. at ¶¶ 86, 88, 91, 92. Plaintiffs do not allege that Mr. Cooke signed them up for email subscriptions or posted about them on Craigslist. *Id*. at ¶¶ 81, 144. Nor do they allege

---

[1] For the purposes of this Motion to Dismiss only, Mr. Cooke accepts the allegations of the Complaint.

that Mr. Cooke purchased any items used in the alleged conspiracy such as prepaid debit cards or laptops. *Id*. at ¶¶ 83-85.

The only conduct in which Mr. Cooke was allegedly involved was approving tweets. Defendant Popp created the Twitter account and Defendant Baugh approved the account's avatar. *Id*. at ¶¶ 78, 153. Defendant Popp drafted the tweets and messages. *Id*. at ¶ 79. The allegations do not suggest that Mr. Cooke ever created a Twitter account or drafted or sent a tweet or message. Plaintiffs claim that Mr. Cooke was one of three people who approved tweets drafted and sent by Defendant Popp to Plaintiffs. *Id*. at ¶¶ 78-79. However, the Complaint is entirely devoid of any supporting factual allegations regarding the specific tweets Mr. Cooke purportedly approved; the nature, timing and form of his approval; the number of tweets he was supposedly involved in approving; and whether anyone else was involved in approving the specific tweets in which he was allegedly involved.

## **LEGAL STANDARD**

Pursuant to Fed. R. Civ. P. 12(b)(6), a court must dismiss plaintiffs' complaint where they fail to state a claim upon which relief may be granted. In making this determination, a court should employ a two-pronged approach. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).[2] First, it begins "by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." *Id*. Second, taking non-conclusory factual allegations as true, a court must determine whether the allegations "state a plausible, not a merely conceivable, case for relief." *Id*. Here, because Plaintiffs merely recite the elements of causes of action and offer no sufficient factual allegations regarding Mr. Cooke, dismissal of each of their claims is warranted.

---

[2] Except where otherwise indicated, all internal citations and quotations are omitted.

**ARGUMENT**

**I.    Plaintiffs' Trespass (6) and Vandalism (8) Claims Must be Dismissed[3]**

The trespass and vandalism claims fail because Plaintiffs do not allege that Mr. Cooke entered their property or damaged it in any way.  To state a claim for trespass, a plaintiff must allege actual possession of the property and an intentional and illegal entry by the defendant.  *Diaz v. Devlin*, 229 F. Supp. 3d 101, 113 (D. Mass. 2017) (dismissing claim where defendant was not physically present at time of alleged trespass).   Plaintiffs do not allege that Mr. Cooke entered onto their property or even traveled to Massachusetts.  Plaintiffs allege that Defendants Baugh, Harville, and Zea traveled to Massachusetts and attempted to install a GPS device on Plaintiffs' vehicle.  Compl. ¶ 104.  Plaintiffs do not allege that Mr. Cooke was aware of these activities or involved in them.  The vandalism claim similarly fails.  Plaintiffs allege that Defendant Gilbert traveled to Massachusetts and wrote "Fidomaster" on their fence.  *Id*. at ¶ 54.  Plaintiffs do not allege that Mr. Cooke was aware of Defendant Gilbert's conduct or involved in it in any way. Therefore, the Court should dismiss the trespass and vandalism counts because Plaintiffs' do not allege that Mr. Cooke entered their property or defaced it in any way.

**II.   Plaintiffs' Stalking (2), False Imprisonment (7), and Ratification (12) Claims Fail**

Plaintiffs do not plausibly allege claims for stalking, false imprisonment, and ratification. Even if Plaintiffs can raise a cognizable claim under California law for stalking,[4] the Complaint fails to allege that Mr. Cooke was engaged in a pattern of harassing conduct or that he intended to place Plaintiffs in reasonable fear for their safety, or that they ever demanded the activity cease. To state a stalking claim under California law, Plaintiffs must prove that (1) the defendant was

---

[3] For the Court's convenience, the number of the pertinent count is included in the argument headers.
[4] Massachusetts has no stalking statute.  Whether California law applies turns on a question of choice of law; arguably, the conduct which forms the basis for the stalking claim took place primarily in Massachusetts.

engaged in a pattern of conduct with the intent to follow, alarm, or harass the plaintiff, (2) as a result of the defendant's conduct, the plaintiff reasonably feared for his safety or the safety of an immediate family member or suffered substantial emotional distress, and (3) the defendant made a credible threat intending to place plaintiff in reasonable fear for his or her own safety despite plaintiff's demand to cease and desist the pattern of conduct. *Blazheiev v. Ubisoft Toronto Inc*., No. 17-CV-07160-EMC, 2018 WL 3417481, at *7 (N.D. Cal. 2018). Plaintiffs allege no facts to show that Mr. Cooke engaged in a pattern of harassing conduct or made a credible threat. They do not specify which tweets Mr. Cooke was supposedly involved in approving, how they constituted a pattern, or how they caused the Plaintiffs to reasonably fear for their safety. Finally, Plaintiffs fail to allege that they ever made any demand to cease and desist any of the conduct to which they attribute their emotional distress.

The false imprisonment claim must be dismissed because Plaintiffs do not allege that Mr. Cooke intentionally confined them to their home. To state a claim for false imprisonment, Plaintiffs must allege an intentional and unjustified confinement of a person, directly or indirectly, of which the person confined is conscious or harmed by such confinement. *Ball v. Wal-Mart, Inc*., 102 F. Supp. 2d 44, 55 (D. Mass. 2000). "The tort of false imprisonment requires an unlawful restraint of a person's freedom of movement by force or threats." *Rose v. Town of Concord*, 971 F. Supp. 47, 51 (D. Mass. 1997). It also requires a clear specific intent. *Barrows v. Wareham Fire Dist*., 82 Mass. App. Ct. 623, 628 n.8 (2012). Plaintiffs fail to adequately allege confinement and specific intent. The "key factor in determining whether there has been confinement is determining whether the person is free to leave." *Ball*, 102 F. Supp. 2d at 55. Here, Plaintiffs do not allege that Mr. Cooke confined their movement to their home such that they were not free to leave. They do not allege that Mr. Cooke threatened them in order to restrain their movement.

*Rose*, 971 F. Supp. at 51.  Even if Plaintiffs alleged confinement, they have not sufficiently alleged specific intent.  Plaintiffs do not allege any facts to show that Mr. Cooke specifically intended to confine them to their home.  They claim that deliveries, stalking, and messages by the Defendants made them fearful.  Compl. ¶¶ 319, 325.  However, Plaintiffs do not allege that Mr. Cooke was involved in sending deliveries to Plaintiffs or stalking.  *Id.* at ¶¶ 88, 91-92, 111-113.  As to messages, Mr. Cooke never created a Twitter account or drafted or sent a message.  Plaintiffs claim that Mr. Cooke was one of three people who approved tweets drafted and sent by Defendant Popp.  *Id.* at ¶¶ 78-79.  However, the Complaint is entirely devoid of any supporting factual allegations regarding the tweets Mr. Cooke purportedly approved, such as the nature of his approval and which tweets he was involved in approving.

Plaintiffs' ratification claim fails as a matter of law because they do not allege that Mr. Cooke was in an agency relationship.  "Ratification does not create an agency where none existed, but instead can be used to make a principal responsible for unauthorized acts performed by one who was in fact acting as an agent."  *Shapiro v. Am. Home Assur. Co.*, 584 F. Supp. 1245, 1251 (D. Mass. 1984).  It is "limited to the adoption of an act purporting to be done, or in fact done, on behalf of the principal."  *Id.*  "A purported or intended principal cannot ratify an act which the principal could not have authorized in the first place."  *Canney v. City of Chelsea*, 925 F. Supp. 58, 66 n.8 (D. Mass. 1996).  Plaintiffs do not allege that Mr. Cooke was in a principal-agent relationship with any of the other Defendants.  "Under Massachusetts law, agency results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control."  *Driscoll v. McCann*, 505 F. Supp. 3d 32, 37 (D. Mass. 2020).  Mr. Cooke had no principal-agent relationship with anyone.  The Complaint makes no allegation that any individual acted on Mr. Cooke's behalf and was subject to his control.  *Canney*, 925 F. Supp. at 66 n.8

(dismissing ratification claim where no principal-agent relationship existed).  Because Plaintiffs do not allege that Mr. Cooke was a principal who ratified any agent's actions, the ratification claim must be dismissed.

### III.   Plaintiffs Fail to State a Claim for Violation of Chapter 93A (10)

The Chapter 93A claim fails because Plaintiffs and Mr. Cooke were not engaged in a commercial transaction in trade or commerce.  Independently, Plaintiffs did not suffer loss of money or property.  For these reasons, the Court should dismiss the Chapter 93A claim with prejudice.

Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws Ch. 93A, § 2(a).  It contains provisions for consumer transactions and for transactions between businesses or businesspeople.  *See id*. at §§ 9, 11.  Section 11, for business transactions, applies "only if both parties were engaged in trade or commerce when they took part in the transaction giving rise to the suit."  *Debnam v. FedEx Home Delivery*, 766 F.3d 93, 96 (1st Cir. 2014).   It prohibits unfair or deceptive practices in business and trade, not unfair or deceptive practices in general.  *L.B. Corp. v. Schweitzer-Mauduit Intern., Inc*., 121 F. Supp. 2d 147, 152 (D. Mass. 2000).   Without this limitation, "any tort claim against a business [could be converted into] a Chapter 93A claim, because all torts encompass acts or practices that could arguably be considered unfair."  *Id*.  To determine whether Section 11 applies to an interaction between two parties, courts consider (1) "whether the interaction is commercial in nature" and (2) "whether the parties were both engaged in trade or commerce and therefore acting in a business context."  *Linkage Corp. v. Trs. of Boston Univ*., 425 Mass. 1, 23 (1997).

Section 11 claims must be dismissed where there was no commercial transaction between the parties.  *L.B. Corp*., 121 F. Supp. 2d at 152.  The Supreme Judicial Court "has stressed the

existence of some contractual or business relationship between the parties as a precursor to liability under Chapter 93A." *John Boyd Co. v. Bos. Gas Co.*, 775 F. Supp. 435, 550 (D. Mass. 1991).  The requirement "is consistent with the development of Chapter 93A, enacted as a consumer protection act and later extended to the protection of business entities as well.  The common thread is protection against unfair acts and practices *in transactions." Cash Energy, Inc. v. Weiner*, 768 F. Supp. 892, 894 (D. Mass. 1991) (dismissing Section 11 claim where parties had no business relationship) (emphasis added).

For example, this Court dismissed a Chapter 93A claim where plaintiff alleged that both parties engaged in trade or commerce but failed to allege that the parties engaged in business practice together.  *Joe Hand Promotions, Inc. v. Rajan*, No. 10-40029-TSH, 2011 WL 3295424, at *7 (D. Mass. July 28, 2011).  In another recent case, the Court dismissed plaintiffs' claim because Section 11 "applies only between parties having a transactional business relationship" and plaintiffs made no such allegations.  *In re TelexFree Secs. Litg.*, 358 F. Supp. 3d 112, 115 (D. Mass. 2019); *see also In re GlassHouse Techs., Inc.*, 604 B.R. 600, 638 (Bankr. D. Mass. 2019) (dismissing Chapter 93A claim because parties did not have necessary business contacts).

Like the cases above, dismissal is required because Plaintiffs fail to allege that they were engaged in a commercial transaction with Mr. Cooke.  There was no transaction—and certainly no commercial one—between Plaintiffs and Mr. Cooke.  Plaintiffs attempt to bridge this necessary gap by claiming that unidentified employees and contractors of eBay and PFC are subscribers and/or readers of EcommerceBytes.  Compl.  ¶ 345.  This allegation is plainly insufficient. Subscribing to or reading a website does not constitute a transactional business relationship.   For this reason alone, Plaintiffs' Chapter 93A claim fails.

Independently, the Chapter 93A claim also fails because neither Plaintiffs nor Mr. Cooke were engaged in trade or commerce. Chapter 93A defines trade and commerce broadly to include advertising services or offering for sale any property. Mass. Gen. Laws Ch. 93A, § 1(b). The trade or commerce described in the statute refers to services "offered generally by a person for sale to the public in a business transaction." *DeVona v. Zeitels*, No. 13-10952-RWZ, 2014 WL 972145, at *5 (D. Mass. Mar. 12, 2014). When determining whether the parties were both engaged in trade or commerce, courts consider the nature of the transaction, the character of the parties and their activities, and whether the transaction was motivated by business or personal reasons. *All Seasons Servs., Inc. v. Comm'r of Health and Hosp. of Bos.*, 416 Mass. 269, 271 (1993). Plaintiffs publish a trade publication and email newsletters. Compl. ¶ 343. They do not advertise services to the general public or offer any property for sale. *Id*. The same is true for Mr. Cooke. He supervised eBay's security operations at its offices in Europe and Asia. *Id*. at ¶ 34. He did not offer his services to the public or offer property for sale. *Debnam*, 766 F.3d at 98 (plaintiff was not engaged in trade or commerce where business was devoted to providing services to one client only).

To the extent Plaintiffs allege that Mr. Cooke was in trade or commerce as an agent of eBay and/or PFC, the conclusion remains the same. "Under Massachusetts law, agency results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control." *Driscoll*, 505 F. Supp. 3d at 37. Plaintiffs do not allege that Mr. Cooke and eBay expressed mutual consent that Mr. Cooke would act on its behalf in trade or commerce. Even if Plaintiffs had adequately alleged an agency relationship between Mr. Cooke and eBay, they do not allege that Mr. Cooke offered services or property to the public on behalf of eBay. Because neither Plaintiffs nor Mr. Cooke, in any capacity, engaged in trade or commerce, the Court should dismiss Plaintiffs' Chapter 93A claim.

Even if Plaintiffs' claim was proper under Section 11, it fails because they do not properly allege that they suffered loss of money or property.  Mass. Gen. Laws Ch. 93A, § 11.  "Money means money, not time, and . . . property means the kind of property that is purchased or leased, not such intangibles as a right to a sense of security, to peace of mind, or to personal liberty." *Arthur D. Little, Inc. v. Dooyang Corp*., 147 F.3d 47, 56 (1st Cir. 1998).  The loss of money or property must stem from the allegedly deceptive conduct.  *Id*.  Here, the only interest at issue is money as Plaintiffs do not allege any facts to show loss of property.  Compl. ¶ 349.  As to loss of money, Plaintiffs simply allege that they chose not to publish certain articles, which led to a decrease in content, then a decrease in advertisements, and then a decrease in revenue.  *Id*.  This allegation is speculative and cannot survive a motion to dismiss.  Moreover, Plaintiffs fail to allege how Mr. Cooke, whose purported role was minimal, caused them loss of money.

## IV.     Plaintiffs' Intentional Interference with Business Relationships (11) Claim Fails

The claim for intentional interference with business relationships must be dismissed because Plaintiffs fail to adequately allege an advantageous business relationship and Mr. Cooke's knowledge of the same.  To state a claim for intentional interference with business relationships, a plaintiff must allege (1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship; (3) the defendant's interference with the relationship through improper motive or means; and (4) the plaintiff's loss of advantage as a direct result of the defendant's conduct.  *Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25, 47 (1st Cir. 2002).  Because Plaintiffs fail to allege an advantageous business relationship and Mr. Cooke's knowledge of such relationship, their intentional interference claim must be dismissed.

Under Massachusetts law, a plaintiff must allege a specific and advantageous business relationship with which a defendant interfered.  "To establish this element, a plaintiff must allege

that it had a probable future business relationship anticipating a reasonable expectancy of financial benefit." *Katin v. Nat'l Real Est. Info. Servs., Inc*., No. 07-10882-DPW, 2009 WL 929554, at *8 (D. Mass. Mar. 31, 2009) (quoting *Am. Private Line Servs., Inc. v. E. Microwave, Inc*., 980 F.2d 33, 36 (1st Cir. 1992)). "[W]here a plaintiff alleges interference only with its general efforts to compete for prospective customers in the market at large, it has not satisfied even the first element of a tortious interference claim—the existence of an advantageous business relationship." *Id*. For example, in *Katin*, the Court dismissed a tortious interference claim where plaintiffs alleged interference with their anticipated business relationships with prospective clients and failed to allege interference with existing transactions. *Id*.; *see also Moving and Storage, Inc. v. Panayotov*, No. 12-12262-GAO, 2014 WL 949830, at *3-4 (D. Mass. Mar. 12, 2014) (dismissing claim where plaintiffs alleged interference with a general group of potential customers).

The Court should dismiss Plaintiffs' tortious interference claim because they do not sufficiently allege an advantageous business relationship. Plaintiffs allege only that "[c]lients, businesses and advertisers" were led to believe false information and "[o]nline sellers now fear doing business with the Plaintiffs." Compl. ¶ 355. They fail to allege that they had a probable future business relationship with any of these unspecified groups and a reasonable expectation of financial benefit. One threadbare allegation that Defendants interfered with Plaintiffs' general efforts to compete for prospective customers is insufficient to state an advantageous business relationship. *Katin*, 2009 WL 929554, at *8. In addition, Plaintiffs allege generally that the Defendants as a whole had knowledge of their purported business relationships, but they fail to allege any facts which suggest that Mr. Cooke was aware of these claimed relationships. Compl. ¶ 354. For these reasons, Plaintiffs' claim must be dismissed.

**V.      Plaintiffs Cannot State a Claim for Defamation (5)**

Plaintiffs cannot state a claim for defamation because they do not allege that Mr. Cooke published defamatory statements about them or caused them economic loss.  To maintain a defamation action, "a plaintiff must allege facts to show that (1) a defendant made a false statement of and concerning the plaintiff; (2) the statement could damage the plaintiff's reputation in the community; (3) the defendant was at fault in making the statement; and (4) the statement caused economic harm or is actionable without proof of economic loss." *Albright v. Morton*, 321 F. Supp. 2d 130, 134 (D. Mass. 2004).  To be defamatory, a statement must be false and "tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community." *Amrak Prods., Inc. v. Morton*, 410 F.3d 69, 72 (1st Cir. 2005).  Courts must examine the alleged defamatory statement in context.  *Id.*  Statements of pure opinion are not defamatory.  *Greenspan v. Random House, Inc.*, 859 F. Supp. 2d 206, 223 (D. Mass. 2012).

None of the alleged statements identified by Plaintiffs constitute actionable defamation against Mr. Cooke.  Plaintiffs reference pornography, but fail to allege that Mr. Cooke was involved in sending pornography to their neighbors in Plaintiff David Steiner's name.  Compl. ¶¶ 107, 143.  The conclusory allegation that Defendants engaged in false and defamatory communications fails for lack of specificity.  "To survive a motion to dismiss, a plaintiff must allege (1) the general tenor of the libel or slander claim, along with the precise wording of at least one sentence of the alleged defamatory statement(s); (2) the means and approximate dates of publication; and (3) the falsity of those statements." *Fiorillo v. Winiker*, 85 F. Supp. 3d 565, 576 (D. Mass. 2015) (dismissing claim where plaintiff did not include the means or dates of publication).  Plaintiffs fail to allege any description of the alleged defamatory communications. Compl. ¶¶ 295-296.   Plaintiffs do not allege that Mr. Cooke participated in the Craigslist posts.

They allege that Defendants Gilbert, Stockwell, Popp, and Zea participated in the posts.  Compl. ¶ 73.  Moreover, the Craigslist ad is not defamatory because it is not of and concerning the Plaintiffs.  To prove defamation, Plaintiffs must show that those to whom the Craigslist ad was published would have understood the statement as being of and concerning Plaintiffs.  *Li v. Zeng*, 98 Mass. App. Ct. 743, 749 (2020) (affirming dismissal of defamation claim where plaintiffs' identity was not revealed).  "[I]f the person is not referred to by name or in such manner as to be readily identifiable from the descriptive matter in the publication, extrinsic facts must be alleged and proved showing that a third person other than the person [defamed] understood it to refer to him." *Id*. at 748.  The Craigslist ad does not refer to Plaintiffs by name and Plaintiffs do not allege that a third person understood it to refer to them.  Compl. ¶ 144.  Finally, the Persons of Interest File was created by Defendants Baugh, Stockwell, Zea, and Gilbert.  Compl. ¶ 130.  Plaintiffs allege no facts to support a claim that Mr. Cooke was involved.

The only activity in which Mr. Cooke was allegedly involved - twitter messages and tweets - are not sufficient to state a cause of action for defamation against him because Plaintiffs do not sufficiently allege that Mr. Cooke was involved in drafting or sending them.  Defendant Popp created the Twitter account and Defendant Baugh approved the account's avatar.  Compl. ¶¶ 78, 153.  Defendant Popp drafted the tweets and messages.  *Id*. at ¶ 79.  Mr. Cooke never created a Twitter account or drafted or sent a tweet or message.  Plaintiffs claim that Mr. Cooke was one of three people who approved anonymous tweets drafted and sent by Defendant Popp to Plaintiffs.  *Id*. at ¶¶ 78-79.  However, the Complaint is entirely devoid of any supporting factual allegations regarding the specific tweets Mr. Cooke purportedly approved; the nature and form of his approval; the number, timing, and nature of his approval; and whether anyone else was involved in approving the tweets with him.

Even assuming Mr. Cooke was involved in approving Twitter messages and tweets, the claim still fails because the direct messages were not published, and the tweets were not defamatory.  The direct messages cannot constitute defamation because they were not published to anyone other than the Plaintiffs.  *Phelan v. May Dept. Stores Co.*, 443 Mass. 52, 56 (2004) (publication element is satisfied if statement is made to someone other than the plaintiff).  In addition, the tweets were not defamatory.  For example, Plaintiffs allege that certain tweets were threatening, but fail to allege that the supposedly threatening language subjected them to scorn or hatred in the community.  Compl. ¶ 186.  Any non-threatening statements which were pure opinion cannot be defamatory.  *Greenspan*, 859 F. Supp. 2d at 223.  "A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is."  *Id*.  For example, the tweet that "[Plaintiff Ina Steiner] is hurting small business with all the negativity and pushing buyers to Amazon!" is an expression of pure opinion and no reasonable reader would conclude that it suggests an assertion of fact about Plaintiffs.  *Id*. at 224.

Each defamation claim independently fails because Plaintiffs do not sufficiently allege economic loss.  Plaintiffs do not allege any specific facts showing that they suffered damages as a result of the claimed defamatory statements.  They allege generally that their business has been harmed, but they do not allege that it was harmed because of any defamatory statements.  Compl. ¶ 217.  Plaintiffs also do not allege any statements that are actionable without proof of economic loss.  In limited circumstances, statements that may prejudice the plaintiff's profession or business are actionable without proof of economic loss.  *Damon v. Moore*, 520 F.3d 98, 103 n.2 (1st Cir. 2008).  "A statement falls within this exception to the economic harm requirement if it alleges that the plaintiff lacks a necessary characteristic of the profession."  *Conning v. Halpern*, No. 18-CV-

12336-ADB, 2021 WL 1580837, at *10 (D. Mass. Apr. 22, 2021).  Plaintiffs claim that they suffered economic harm, but they fail to allege that any statements claimed that Plaintiffs lacked a necessary characteristic of their profession.

## VI.   Plaintiffs Cannot State a Claim for Civil RICO (3)

The RICO claim fails because Plaintiffs have no standing to sue, fail to sufficiently allege racketeering; do not adequately allege a "pattern of racketeering activity;" and fail to properly allege that Mr. Cooke participated in the operation or management of the racketeering enterprise.

### A.   Plaintiffs Lack Standing to Pursue a RICO Claim

Plaintiffs do not have standing to pursue a RICO claim because they fail to sufficiently allege that the predicate acts proximately caused an injury to their business or property.  Under RICO, only a "person injured in his business or property by reason of a [RICO] violation" has standing to bring a civil claim.  18 U.S.C. § 1964(c).  A plaintiff must show that at least one racketeering activity proximately caused an injury to plaintiff's business or property.  *Camelio v. Am. Fed'n*, 137 F.3d 666, 670 (1st Cir. 1998).  Plaintiffs suffered no injury to their business or property, and even if they did, they alleged no facts demonstrating that their alleged injuries were proximately caused by the claimed predicate acts.

The Complaint fails to sufficiently allege an injury to business or property.  The gravamen of Plaintiffs' alleged injury is fear and suspicion and damage to their reputation.  Compl. ¶¶ 276, 278.  Emotional distress and fear "are not business or property and are not cognizable under RICO."  *Zareas v. Bared-San Martin*, 209 Fed. App'x. 1, 2, No. 06–1180, 2006 WL 3691659, at *1 (1st Cir. Dec. 15, 2006).  Fear for personal safety because of threats is also not an injury to business or property.  *Bennett v. Centerpoint Bank*, 761 F. Supp. 908, 916 (D. N.H. 1991).  Harm to Plaintiffs' reputation and good will is similarly not cognizable.  *Lawson v. FMR LLC*, No. 19-

11222-DPW, 2021 WL 3493859, at *5 (D. Mass. Aug. 9, 2021) (injury to one's reputation, dignity and emotional damages are not redressable by RICO).

To the extent Plaintiffs claim injury to EcommerceBytes, the injury is too speculative to permit recovery. *Crimson Galeria Ltd. P'ship v. Healthy Pharms, Inc.*, 337 F.Supp.3d 20, 37 (D. Mass. 2018) (RICO damages may not be based on speculation). Plaintiffs allege no facts in support of injuries to their business. Compl. ¶ 276. For example, they do not allege what sources they passed on, what articles they would have written, and what advertisements they would have sought. Therefore, any claimed injuries would be wholly speculative. Lastly, Plaintiffs allege that they suffered damage their ability to bring a lawsuit, which they claim is a property right. Compl. ¶ 279. Such claims are regularly dismissed. *DeMauro v. DeMauro*, 115 F.3d 94, 97-98 (1st Cir. 1997) ("hypothetical inability to recover" in a pending lawsuit was too speculative to constitute an injury to property).

Even if Plaintiffs alleged a viable injury, they fail to allege the injury was proximately caused by any of the purported predicate acts. *Circiello v. Alfano*, 612 F. Supp. 2d 111, 115 (D. Mass. 2009) (dismissing civil RICO claim where plaintiff failed to allege how predicate acts contributed to injury). A plaintiff must establish that a RICO violation was a cause-in-fact and proximate cause of any alleged injuries. *Natale v. Espy Corp.*, 2 F. Supp. 3d 93, 100 (D. Mass. 2014). "The central question in evaluating proximate causation in the RICO context is whether the alleged violation led directly to the plaintiff's injuries." *Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*, 990 F.3d 31, 35 (1st Cir. 2021) (affirming dismissal of RICO claim).

Here, Plaintiffs cannot establish proximate causation because there are too many steps in the causal chain connecting Defendants' alleged actions to Plaintiffs' injury. Plaintiffs claim that because of Defendants' conduct they were suspicious of sources and passed on stories which

caused them to produce fewer newsletters.  Compl. ¶ 276.  Fewer newsletters allegedly caused a decrease in content which led to a decrease in advertisements.  *Id*.  Any causal link between Defendants' conduct and the claimed decrease in revenue is "purely contingent."  *Sterling Suffolk Racecourse, LLC*., 990 F.3d at 36.  Plaintiffs may not have produced additional newsletters regardless of whether they were suspicious of sources.  In turn, companies may not have been interested in placing advertisements in the newsletters leading to a decrease in revenue wholly independent from any of Defendants' alleged conduct. *Bos. Cab Dispatch, Inc. v. Uber Techs., Inc*., 13-10769-NMG, 2015 WL 314131, at *7 (D. Mass. Jan. 26, 2015) (causation chain was too attenuated to satisfy proximate cause).

### B.    Plaintiffs Fail to Sufficiently Allege Predicate Racketeering Acts

To state a claim under 18 U.S.C. §1962(c), a plaintiff must allege conduct of an enterprise through a pattern of racketeering activity.  *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 14-15 (1st Cir. 2000).  A RICO plaintiff must plead the predicate acts constituting an alleged pattern of racketeering activity with specificity.  *North Bridge Assocs., Inc. v. Boldt*, 274 F.3d 38, 43 (1st Cir. 2001).  The Complaint alleges five predicate acts: (1) interference with commerce in violation of 18 U.S.C. § 1951; (2) mail fraud in violation of 18 U.S.C. § 1341; (3) wire fraud in violation of 18 U.S.C. § 1343; (4) obstruction of justice in violation of 18 U.S.C. § 1510; and (5) witness tampering in violation of 18 U.S.C. § 1512. Compl. ¶ 264. The complaint does not plead facts sufficient to allege any of the purported predicate acts.

(1)  Section § 1951 criminalizes interference in, or conspiracy to interfere in, interstate commerce "by robbery or extortion."  18 U.S.C. § 1951(a).  As used in the statute, "[t]he term 'robbery' means the unlawful taking or obtaining of personal property from theperson … of another" against that person's will through "actual or threatened force, or violence, or fear of

injury" to the victim's "person or property." *Id.* § 1951(b)(1). And "[t]he term 'extortion' means the obtaining of property from another," with that person's consent, through the "wrongful use of actual or threatened force, violence, or fear." *Id.* § 1951(b)(2). Because each prong requires that one "obtain[]" the property of another, one must plead "not only the deprivation but also the acquisition of property" to allege a violation of the Hobbs Act. *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 404 (2003). Here, the Complaint does not allege that any defendant acquired any property through "actual or threatened force, or violence, or fear," or otherwise. 18 U.S.C. §§ 1951(b)(1)-(2). Thus, it fails to allege a predicate violation of the Hobbs Act.

(2) The crimes of mail fraud and (3) wire fraud prohibit using mail or wires "for the purpose of executing" any "scheme … to defraud" or "obtain[] money or property by means of false or fraudulent pretenses." 18 U.S.C. §§ 1341, 1343. Apart from an exception not relevant here, each is "limited in scope to the protection of property rights." *McNally v. United States*, 483 U.S. 350, 360 (1987). Here, there is no allegation that Mr. Cooke intended to either cause financial loss to another or to bring financial gain to himself. *United States v. Sawyer*, 85 F.3d 713, 723 (1st Cir. 1996) (a person must act with a specific intent to defraud).

(3) With regard to obstruction of justice, the Complaint fails to allege any facts that would suggest a violation of § 1510. Under the relevant provision it is a crime to attempt, "by means of bribery[,] to obstruct … communication of information relating to a violation of" a federal criminal statute. 18 U.S.C. § 1510(a). With no allegation in the complaint that any defendant bribed or attempted to bribe anyone for any purpose, Plaintiffs cannot rely on purported violations of 18 U.S.C. § 1510.

(4) With regard to witness tampering in violation of Section 1512, multiple Defendants, including Mr. Cooke, pled guilty to a Section 371 conspiracy to commit witness tampering, but

Section 371 is not a RICO predicate.  *See*, *e.g*., *United States v. Ruggiero*, 726 F.2d 913, 920 (2d Cir. 1984), *abrogated on other grounds by Salinas v. United States*, 522 U.S. 52, 61–63 (1997).

C.     *Plaintiffs Fail to Properly Allege a "Pattern of Racketeering Activity"*

A "'pattern of racketeering activity' requires at least two acts of racketeering activity … within ten years" of each other. 18 U.S.C. § 1961(5). To show a pattern, a plaintiff must prove that two or more predicate acts are (1) related and (2) amount to or pose a threat of continued criminal activity.  *Giuliano v. Fulton*, 399 F.3d 381, 386 (1st Cir. 2005).  Continuity, the second element of pattern, can be either closed or open-ended.  *Id*. at 387.  Neither form of continuity is properly alleged.

The Complaint cannot establish closed continuity because the allegations involve a single scheme and a short time period.  Closed continuity requires a plaintiff to allege "a series of related predicates extending over a substantial period."  *FAC, Inc. v. Cooperativa de Seguros de Vida*, 106 F. Supp. 2d 244, 257 (D. P.R. 2000).  The First Circuit has firmly rejected RICO activity involving a single scheme and lasting for a short time period.  *Efron*, 223 F.3d at 19 (affirming dismissal of RICO claim where racketeering activity was of a "finite nature" and occurred over modest time period) (collecting cases).  "[P]redicate acts must extend over a period of time longer than a few weeks or months."  *FAC, Inc*. 106 F. Supp. 2d at 258 (eleven month time period was insufficient to satisfy closed-end continuity test).  Here, Plaintiffs allege that the racketeering activity consists of a single scheme—with Plaintiffs as its two victims—to end Plaintiffs' reporting on eBay. Compl. ¶¶ 4, 13.  The purported scheme lasted for a limited time period in August 2019.  *Id*. at ¶¶ 67, 200.  Plaintiffs do not allege a threat of continued activity nor could they as all the individuals involved no longer work at eBay.  *Id*. at ¶¶ 202-206.  A single scheme lasting approximately four

weeks cannot establish closed-continuity.  *Mani v. United Bank*, 498 F. Supp. 2d 406, 412 (D. Mass. 2007) (failure to pled closed-ended continuity because alleged activity involved single scheme).  To the extent Plaintiffs attempt to identify and link alleged past events, the individual acts occurred in 2009, 2012, 2014 and 2018 (Compl. ¶¶ 266(a)(i)-(iv)), such events are isolated incidents without the necessary element of relatedness.

Plaintiffs' allegations of open-ended continuity similarly fail.  Open-ended continuity involves the risk of a broader scheme and fraudulent acts that continue indefinitely into the future such that racketeering activity might be a regular way of conducting defendant's ongoing legitimate business.  *Efron*, 223 F.3d at 19.  Schemes with "a clear and terminable goal" have a natural ending point and "cannot support a finding of any specific threat of continuity that would constitute open-ended continuity."  *Id*. at 20.  Plaintiffs allege that the goal of the scheme was to end their reporting on eBay.  Compl. ¶¶ 4, 13.  They do not allege any similar scheme involving other individuals besides themselves.  There is no threat of long-term criminal conduct as all individuals allegedly involved no longer work at eBay.  *Id*. at ¶¶ 67, 200.

D.     *Plaintiffs Fail to Properly Allege Mr. Cooke Participated in the Operation or Management of the Enterprise*

For an individual to be held liable under 18 U.S.C. § 1962(c), that individual must have "conduct[ed] or participate[d] … in the conduct of" the racketeering "enterprise's affairs." Even if Plaintiffs had adequately alleged a cognizable injury proximately caused by a pattern of racketeering activities, their claim against Mr. Cooke under § 1962(c) would still have to be dismissed because the Complaint does not adequately allege that Mr. Cooke personally "participated in the operation or management of the purported enterprise itself." *United States v. Ernst*, 502 F. Supp. 3d 637, 661 (D. Mass. 2020) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993)).

## VII.   Plaintiffs' Civil Conspiracy (9) Claim Fails

The civil conspiracy claim should be dismissed because Plaintiffs do not allege facts to demonstrate an agreement or a tortious act in furtherance by Mr. Cooke.  To state a claim for civil conspiracy, a plaintiff must allege (1) a common design or agreement between two or more persons to do a wrongful act and (2) proof of some tortious act in furtherance of the agreement.[5]  *Mullane v. Breaking Media, Inc.*, 433 F. Supp. 3d 102, 115 (D. Mass. 2020).   "Key to this cause of action is a defendant's substantial assistance [to another], with the knowledge that such assistance is contributing to a common tortious plan." *Brennan v. Ferreira*, 251 F. Supp. 3d 338, 343 (D. Mass. 2017).  Because Plaintiffs fail to adequately allege both elements, the civil conspiracy claim must be dismissed.

Conspiracy "derives from concerted action whereby liability is imposed on one individual for the tort of another."  *Hallal v. Vicis Cap. Master Fund Ltd.*, No. 12-10166-NMG, 2013 WL 1192384, at *19 (D. Mass. Feb. 25, 2013).  The agreement among the parties to the alleged conspiracy may be proven by direct evidence or may be inferred from conduct suggesting that the parties had an implied meeting of the minds.  *Id.*  A civil conspiracy claim cannot be maintained unless a plaintiff alleges facts evincing an agreement between the parties.  *Blake*, 898 F. Supp. 2d at 392 (dismissing civil conspiracy claim for failure to allege agreement to commit a wrongful act).

Here, Plaintiffs do not allege any facts in support of their claim that Mr. Cooke agreed to commit the acts alleged in the Complaint.  Mr. Cooke purportedly attended one meeting with Defendant Baugh and others.  Compl. ¶ 76.  However, Plaintiffs do not allege that Mr. Cooke

---

[5] Massachusetts recognizes another type of civil conspiracy, known as "true conspiracy," which is a limited cause of action requiring coercion.  *Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 392 (D. Mass. 2012).  Plaintiffs do not allege coercion, and therefore Mr. Cooke does not address this theory.

agreed with any other defendant to undertake the tortious acts of which they complain. At most, Plaintiffs allege that Mr. Cooke approved tweets and messages drafted by Defendant Popp. *Id*. at ¶ 79. They fail to allege what tweets Mr. Cooke allegedly approved and when, or to allege sufficient facts to show they were tortious acts in furtherance of an agreement.

The civil conspiracy claim independently fails because there is no underlying tort liability against Mr. Cooke. This type of conspiracy requires an underlying tort because it is vicarious liability. *Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*, No. 14-CV-12047-ADB, 2015 WL 4467064, at *12 (D. Mass. July 20, 2015) (dismissing civil conspiracy claim where underlying tort claim failed). As explained above, Plaintiffs cannot state a tort claim against Mr. Cooke. Therefore, the conspiracy claim necessarily fails.

## VIII.   Plaintiffs' Claim Under the Massachusetts Civil Rights Act (4) Fails

The Court should dismiss the Massachusetts Civil Rights Act (the "MCRA") claim because Plaintiffs do not allege that Mr. Cooke threatened, intimidated, or coerced them. The MCRA provides enhanced protection for existing civil rights and was not intended to be a "vast constitutional tort." *Haufler v. Zotos*, 446 Mass. 489, 504 (2006). To state a claim under the MCRA, plaintiffs must show interference with their federal or state constitutional rights by threats, intimidation, or coercion. Mass. Gen. Laws Ch. 12, §§ 11H, 11I. "A direct violation of civil rights is not, without a showing of coercive behavior, actionable." *Orwat v. Maloney*, 360 F. Supp. 2d 146, 164 (D. Mass. 2005). Courts use a reasonable person standard to determine whether the conduct constituted threats, intimidation, or coercion. *Haufler*, 446 Mass. at 505. Because Plaintiffs allege no facts to support threats, intimidation, or coercion by Mr. Cooke, their MCRA claim should be dismissed.

Plaintiffs do not allege that Mr. Cooke threatened them or intimidated them.  A threat under the MCRA is the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.  *Meuser v. Fed. Express Corp.*, 564 F.3d 507, 516 (1st Cir. 2009).  Intimidation involves putting another in fear for the purpose of compelling or deterring her conduct.  *Id.*  Plaintiffs allege that Mr. Cooke approved tweets drafted by Defendant Popp.   Compl. ¶ 79.  They do not allege that Mr. Cooke took any action threatening Plaintiffs with injury or harm or intimidating them.  Therefore, they cannot base their MCRA claim on threats or intimidation.  *Appling v. City of Brockton*, 649 F. Supp. 258, 261 (D. Mass. 1986) (dismissing claim where plaintiff failed to plead facts showing threats, coercion, or intimidation).  Likewise, Plaintiffs fail to allege that Mr. Cooke coerced them, and the MCRA claim similarly fails under this theory.  To constitute coercion under the MCRA, a defendant must act with force, either physical or moral, against another to constrain her to do against her will something she would not otherwise have done.  *Meuser*, 564 F.3d at 516.  There are no allegations that Mr. Cooke acted with force against the Plaintiffs.

## IX.   Plaintiffs' IIED (1) Claim Must be Dismissed

Plaintiffs' intentional infliction of emotional distress claim fails because they do not allege facts to show that Mr. Cooke intended to inflict emotional distress and that his conduct was extreme and outrageous.  To establish intentional infliction of emotional distress, a plaintiff must demonstrate (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.  *Henriquez v. City of Lawrence*, No. 14-CV-14710-IT, 2015 WL 3913449, at *5 (D. Mass. June 25, 2015).

Plaintiffs do not allege any facts to demonstrate that Mr. Cooke intended to inflict emotional distress on them.  Recovery "requires more than that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress." *Payton v. Wells Fargo Bank, N.A.*, No. 12-11540-DJC, 2013 WL 782601, at *4 (D. Mass. Feb. 28, 2013).  Here, there are no factual allegations that Mr. Cooke intended to harm Plaintiffs or should have known that his conduct would harm Plaintiffs.  As explained herein, Mr. Cooke's alleged role was minimal.  Plaintiffs do not allege that Mr. Cooke sent any specific items to them or even knew that such conduct had taken place.  Compl.  ¶¶ 88, 91, 92.  He did not visit Plaintiffs' home in Massachusetts.  *See id.* at ¶¶ 54-55.  There are no factual allegations from which the Court can infer that Mr. Cooke intended to harm the Plaintiffs.

The minimal factual allegations regarding Mr. Cooke are insufficient to allege extreme and outrageous conduct.  Conduct is extreme and outrageous when it is atrocious, beyond all possible bounds of decency, and is utterly intolerable in a civilized community.  *Emerson v. Mass. Port Auth.*, 138 F. Supp. 3d 73, 76 (D. Mass. 2015).  Mr. Cooke's alleged conduct cannot surpass this high bar.[6]  Plaintiffs allege that Mr. Cooke approved tweets and messages drafted by Defendant Popp.  *Id.* at ¶ 79.  They fail to allege what tweets Mr. Cooke allegedly approved and when, or why such particular tweets should be considered extreme and outrageous.

## CONCLUSION

For the foregoing reasons, Mr. Cooke respectfully requests that this Court dismiss the Complaint with prejudice for failure to state a claim upon which relief can be granted.

---

[6] To the extent Plaintiffs' claim Mr. Cooke failed to act, passive conduct cannot state a claim for infliction of emotional distress.  *Pollard v. Georgetown Sch. Dist.*, 132 F. Supp. 3d 208, 232 (D. Mass. 2015).

Dated: October 29, 2021

Respectfully submitted,

PHILIP COOKE

By his attorneys,

*/s/ Christina N. Lindberg*
Christina N. Lindberg, BBO No. 690443
clindberg@msdefenders.com
MINER SIDDALL LLP
101 Federal Street, Suite 650
Boston, MA 02110
Tel: (617) 202-5890

Susan G. Winkler, BBO No. 530682
winkler.susan@gmail.com
WINKLER LAW LLC
120 Holmes Street, Unit 313
Quincy, MA 02171
Tel: (617) 642-6671


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed through the ECF system on October 29, 2021 and will be sent electronically to the registered participants on the Notice of Electronic Filing and paper copies will be sent to any non-registered participants.


*/s/ Christina N. Lindberg*
Christina N. Lindberg