## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

INA STEINER, DAVID STEINER, and
STEINER ASSOCIATES, LLC,

        Plaintiffs,

    v.

EBAY INC., et al.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 1:21-cv-11181-DPW

Leave to File Oversized Brief Granted
By Order Dated 10/22/2021
(ECF No. 68)

## DEFENDANT STEVE WYMER'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................. 1

II.   BACKGROUND ................................................................................. 3

III.   THE RELEVANT LEGAL STANDARDS .......................................... 7

IV.   ARGUMENT ...................................................................................... 8

    A.   The Complaint Fails to Plead Direct Liability Against Wymer for the Tort Claims ...................................................................... 9

        1.   The Complaint Does Not State a Claim That Wymer Intentionally Inflicted Emotional Distress ................................... 10

        2.   The Complaint Does Not State a Claim That Wymer Stalked Plaintiffs ........................................................................... 11

        3.   The Complaint Does Not State a Claim That Wymer Violated the Massachusetts Civil Rights Act .............................. 11

        4.   The Complaint Does Not State a Claim That Wymer Defamed Plaintiffs .......................................................................... 12

        5.   The Complaint Does Not State a Claim That Wymer Trespassed............ 13

        6.   The Complaint Does Not State a Claim That Wymer Intentionally Confined Plaintiffs ................................................. 13

        7.   The Complaint Does Not State a Claim That Wymer Vandalized ........... 14

        8.   The Complaint Does Not State a Claim That Wymer Violated M.G.L. CH. 93A § 11 ................................................. 14

        9.   The Complaint Does Not State a Claim That Wymer Interfered with Plaintiffs' Business Relations ...................................... 15

    B.   The Complaint Fails to Plead That Wymer is Secondarily or Vicariously Liable .............................................................. 16

        1.   The Complaint Does Not State a Claim Against Wymer for Civil Conspiracy ................................................................ 16

a.     The Intra-Corporate Conspiracy Doctrine Requires Dismissal of the Civil Conspiracy Claim ..................................... 17

b.     The Complaint Has Not Pled a "Concert of Action" or "Substantial Assistance" Theory Against Wymer ....................... 19

2.     The Complaint Does Not State a Claim Against Wymer for Aiding and Abetting ............................................................................ 23

C.     The Complaint Fails to Plead a Civil RICO Claim ................................ 26

1.     The Complaint Fails to Plead RICO Predicate Acts ................................ 27

18 U.S.C. § 1951 ...................................................................... 27

18 U.S.C. §§ 1341 and 1343 .................................................... 27

18 U.S.C. § 1510 ...................................................................... 28

18 U.S.C. § 1512 ...................................................................... 28

2.     The Complaint Fails to Plead a "Pattern" of Racketeering Activity ........ 29

a.     The Complaint Fails to Plead Closed Continuity ......................... 29

b.     The Complaint Fails to Plead Open Continuity ............................ 32

3.     The Complaint Fails to Plead Wymer's Participation in The Alleged Enterprise .................................................................................. 34

4.     The Complaint Fails to Plead a RICO Conspiracy .................................. 34

V.     CONCLUSION ........................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alston v. Spiegel*,
988 F.3d 564 (1st Cir. 2021) ...........................................................................8, 9

*Anderson v. R.J. Reynolds Tobacco Co.*,
No. 99-11382-GAO, 1999 WL 33944684 (D. Mass. Sept. 20, 1999) ..............................27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................7, 8, 21

*Beck v. Prupis*,
529 U.S. 494 (2000) ....................................................................................27

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 554 (2007) ..................................................................................7, 8, 28

*Bell v. Rinchem Co.*,
No. 4:14-40177-TSH, 2016 U.S. Dist. LEXIS 57668
(D. Mass. Feb. 11, 2016) ...........................................................................18, 19

*Blake v. Prof. Coin Grading Serv.*,
898 F. Supp. 2d 365 (D. Mass. 2012) ..........................................................16, 20, 22, 23

*C Co., Inc. v. Hackel*,
50 N.E.3d 221 (Mass. App. Ct. 2016) ................................................................24

*Cohen v. Brokers' Serv. Mktg. Grp. II, LLC*,
31 N.E.3d 76 (Mass. App. Ct. 2015) ................................................................24

*D'Ambrosio v. City of Methuen*,
No. 16-10534-MPK, 2019 WL 1438050 (D. Mass. Mar. 31, 2019) ................................13

*Dilbert v. Hanover Ins. Co.*,
825 N.E.2d 1071 (Mass. App. Ct. 2005) ............................................................13

*Doyle v. Hasbro, Inc.*,
103 F.3d 186 (1st Cir. 1996) ........................................................................26

*Efron v. Embassy Suites (P.R.), Inc.*,
223 F.3d 12 (1st Cir. 2000) ................................................................... *passim*

*ePlus Tech., Inc. v. Aboud*,
313 F.3d 166 (4th Cir. 2002) ........................................................................33

*Feinstein v. Resolution Tr. Corp.*,
942 F.2d 34 (1st Cir. 1991) ..................................................................27, 32, 34

*Fine v. Guardian Life Ins. Co. of Am.*,
    No. 3:19-cv-30067-KAR, 2021 WL 916270 (D. Mass. Mar. 10, 2021) ..........................10

*Fogie v. THORN Americas, Inc.*,
    190 F.3d 889 (8th Cir. 1999) ..................................................................33

*Fowler v. United States*,
    563 U.S. 668 (2011)............................................................................28

*Gilanian v. City of Boston*,
    431 F. Supp. 2d 172 (D. Mass. 2006) ..........................................................12

*Giuliano v. Fulton*,
    399 F.3d 381 (1st Cir. 2005)...........................................................*passim*

*Go-Best Assets Ltd. v. Citizens Bank of Mass.*,
    972 N.E.2d 426 (Mass. 2012) ...............................................................23, 24

*Guadalupe- Báez v. Pesquera*,
    819 F.3d 509 (1st Cir. 2016) ..................................................................25

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989)......................................................................29, 31

*Hagenah v. Berkshire Cty. Arc, Inc.*,
    No. 3:16-cv-30141-KAR, 2018 U.S. Dist. LEXIS 24696
    (D. Mass. Feb. 15, 2018)......................................................................19

*Heinrich ex rel. Heinrich v. Sweet*,
    49 F. Supp. 2d 27 (D. Mass. 1999) .........................................................20, 22

*Home Orthopedics Corp. v. Rodríguez*,
    781 F.3d 521 (1st Cir. 2015) ..........................................................*passim*

*In re Brittany K.*,
    127 Cal. App. 4th 1497 (2005) ................................................................11

*In re TelexFree Sec. Litig.*,
    389 F. Supp. 3d 101 (D. Mass. 2019) ..........................................................24

*Integrated Commc'ns & Techs., Inc. v. Hewlett-Packard Fin. Servs., Co.*,
    No. 16-CV-10386-LTS, 2017 WL 354847 (D. Mass. Jan. 24, 2017) ..............................13

*Irwin v. Town of Ware*,
    467 N.E.2d 1292 (Mass. 1984) ................................................................25

*Kenda Corp. v. Pot O' Gold Money Leagues, Inc.*,
    329 F.3d 216 (1st Cir. 2003)..................................................................31

*Kurker v. Hill*,
    689 N.E.2d 833 (Mass. App. Ct. 1998) ........................................................22

*Kyte v. Philip Morris Inc.*,
    556 N.E.2d 1025 (Mass. 1990) ................................................................24

iv

*Langan v. Smith*,
  312 F. Supp. 3d 201 (D. Mass. 2018) ..................................................31

*Lawson v. FMR LLC*,
  No. 19-11222-DPW, 2021 WL 3493859 (D. Mass. Aug. 9 2021)
  (Woodlock, J.)..........................................................................26

*Libertad v. Welch*,
  53 F.3d 428 (1st Cir.1995)..........................................................26

*Madison v. Cruz*,
  393 F. Supp. 3d 135 (D. Mass. 2019) ...............................................3

*Malden Transp., Inc. v. Uber Techs., Inc.*,
  286 F. Supp. 3d 264 (D. Mass. 2017) .............................................15

*Maldonado v. Fontanes*,
  568 F.3d 263 (1st Cir. 2009) ........................................................25

*Mani v. United Bank*,
  498 F. Supp. 2d 406 (D. Mass. 2007) .............................................34

*Martensen v. Koch*,
  No. 13-Cv-02411-Reb-Cbs, 2014 U.S. Dist. LEXIS 91817
  (D. Colo. June 12, 2014) .............................................................19

*Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*,
  62 F. Supp. 2d 236 (D. Mass. 1999) ...............................................19

*Mass. Port Auth. v. Turo Inc.*,
  166 N.E.3d 972 (Mass. 2021) .......................................................25

*Menasco, Inc. v. Wasserman*, 866
  F.2d 681 (4th Cir. 1989) .............................................................26

*Moving & Storage, Inc. v. Panayotov*,
  No. CIV.A. 12-12262-GAO, 2014 WL 949830 (D. Mass. Mar. 12, 2014)......................15

*Papasan v. Allain*,
  478 U.S. 265 (1986)......................................................................7

*Payton v. Abbott Labs*,
  512 F. Supp. 1031 (D. Mass. 1981) .....................................20, 21, 22

*Penalbert-Rosa v. Fortuno-Burset*,
  631 F.3d 592 (1st Cir. 2011)........................................................8, 34

*Platten v. HG Bermuda Exempted Ltd.*,
  437 F.3d 118 (1st Cir. 2006).......................................................17, 18

*Rastelli v. Goodyear Tire & Rubber Co.*,
  79 N.Y.2d 289 (N.Y. 1992) ..........................................................22

*Rubin v. Waplate Constr. Mgmt.*,
No. 96146, 1999 Mass. Super. LEXIS 319 (Mass. Super. Ct. Aug. 24,
1999) ............................................................................................................... 13

*Sanchez v. Pereira-Castillo*,
590 F.3d 31 (1st Cir. 2009) ........................................................................ 8, 35

*Schatz v. Republican State Leadership Comm.*,
669 F.3d 50 (1st Cir. 2012) .................................................................. 7, 8, 32

*Scheidler v. NOW, Inc.*,
537 U.S. 393 (2003) .......................................................................................27

*Sena v. Commonwealth*,
629 N.E.2d 986 (Mass. 1994) ................................................................ 10, 11

*Shay v. Walters*,
702 F.3d 76 (1st Cir. 2012) ...........................................................................13

*Snyder v. Collura*,
812 F.3d 46 (1st Cir. 2016) ...........................................................................19

*Sovereign Bank v. Sturgis*,
863 F. Supp. 2d 75 (D. Mass. 2012) (Woodlock, J.) .......................................12

*Speakman v. Allmerica Fin. Life Ins. & Annuity Co.*,
367 F. Supp. 2d 122 (D. Mass. 2005) .............................................................15

*Spinner v. Nutt*,
631 N.E.2d 542 (Mass. 1994) .......................................................................24

*Stathos v. Bowden*,
728 F.2d 15 (1st Cir. 1984) ...........................................................................19

*Steep Hill Labs., Inc. v. Moore*,
No. 18-cv-00373-LB, 2018 WL 1242182 (N.D. Cal. Mar. 8, 2018), *aff'd*,
744 F. App'x 443 (9th Cir. 2018) ...................................................................11

*Taylor v. Am. Chemistry Council*,
576 F.3d 16 (1st Cir. 2009) ......................................................... 16, 19, 20, 22

*Thomas v. Harrington*,
909 F.3d 483 (1st Cir. 2018) ............................................................. 20, 21, 23

*Tolbert v. Clarke*,
No. 10-11643-RWZ, 2011 WL 797372 (D. Mass. Feb. 28, 2011) ...................10

*United States ex rel. Winkelman v. CVS Caremark Corp.*,
827 F.3d 201 (1st Cir. 2016) ...........................................................................3

*United States v. Aguilar*,
515 U.S. 593 (1995) .......................................................................................28

*United States v. Ernst,*
  502 F. Supp. 3d 637 (D. Mass. 2020) ...................................................34

*United States v. Gurry,*
  427 F. Supp. 3d 166 (D. Mass. 2019), *aff'd in part, rev'd in part on other
  grounds, United States v. Simon*, 12 F.4th 1 (1st Cir. 2021) ...............33

*United States v. Sawyer,*
  85 F.3d 713 (1st Cir. 1996) ...................................................................28

*Vicom, Inc. v. Harbridge Merchant Servs., Inc.,*
  20 F.3d 771 (7th Cir. 1994) ...................................................................33

*Wade v. Tri-Wire Eng'g Sols., Inc.,*
  No. CV 20-10523-LTS, 2021 WL 847989 (D. Mass. Mar. 5, 2021) ...............31

*Wadja v. R.J. Reynolds Tobacco Co.,*
  103 F. Supp. 2d 29 (D. Mass. 2000) .......................................................20

*Warren Envtl., Inc. v. Source One Envtl., Ltd.,*
  No. 18-11513-RGS, 2020 WL 1974256 (D. Mass. Apr. 24, 2020)...............14

*Wentworth Precious Metals, LLC v. City of Everett,*
  No. 11-10909-DPW, 2013 WL 441094 (D. Mass. Feb. 4, 2013)
  (Woodlock, J.)..........................................................................................18

*White v. Blue Cross & Blue Shield of Mass., Inc.,*
  809 N.E.2d 1034 (Mass. 2004) ...............................................................12

*Williams v. Northfield Mount Herman School,*
  504 F. Supp. 1319 (D. Mass. 1981) ........................................................18

*Zenon v. Guzman,*
  924 F.3d 611 (1st Cir. 2019) .....................................................................7

*Ziglar v. Abbasi,*
  137 S. Ct. 1843 (2017).............................................................................17

*ZyXEL Commc'ns, Inc. v. Skyworks Sols., Inc.,*
  No. CV 19-11573-RGS, 2019 WL 6726398 (D. Mass. Dec. 11, 2019) ...........31

## STATUTES

18 U.S.C. § 1341 .............................................................................................27

18 U.S.C. § 1343 .............................................................................................27

18 U.S.C. § 1510 ........................................................................................27, 28

18 U.S.C. § 1510(a) .........................................................................................28

18 U.S.C. § 1512 ........................................................................................27, 28

18 U.S.C. § 1951 .............................................................................................27

18 U.S.C. § 1951(b)(1) .............................................................................................27

18 U.S.C. § 1951(b)(2) .............................................................................................27

18 U.S.C. § 1961(1) ..................................................................................................27

18 U.S.C. § 1961(5) ..................................................................................................29

18 U.S.C. § 1961(c) ..................................................................................................34

18 U.S.C. § 1962(c) ..................................................................................................27

18 U.S.C. § 1962(d) ..................................................................................................34

M.G.L. CH. 12 § 11I ................................................................................................11

M.G.L. CH. 93A § 11 ...............................................................................................14

# I.    <u>INTRODUCTION</u>

Steve Wymer, the former Chief Communications Officer of defendant eBay, Inc. ("eBay"), joined eBay in early February 2019 after a successful career in both the private and public sectors. He was and remains shocked and appalled by the conduct directed at plaintiffs Ina and David Steiner by seven individuals working for eBay. Five of those individuals pled guilty to criminal charges arising from their conduct, and the other two were indicted and are awaiting trial.[1] In addition to suing those individuals in this civil lawsuit, the Complaint also names Wymer as a defendant—despite the absence of any factual allegations that he participated in or was aware of the acts committed by the Charged Defendants.

As the Complaint reflects, Wymer learned of potential misconduct directed at Plaintiffs only *after* the last of the alleged acts occurred. Indeed, the extent of the wrongdoing was not revealed to Wymer until criminal charges were publicly filed in federal court. Therefore, the question for this motion is not whether the Steiners were grossly mistreated (they were), but instead whether the Complaint states a claim against Wymer. It does not.

First, the Complaint fails to state a direct claim against Wymer on any count. The Complaint includes no facts reflecting that Wymer participated in *any* of the allegedly tortious acts the Charged Defendants committed. For example, the Complaint pleads no facts reflecting that Wymer had any knowledge that the Charged Defendants intended to—or did—stalk, threaten, or harass Plaintiffs or vandalize their property. The Complaint does not allege—nor could it—facts reflecting that Wymer was involved in any such conduct.

---

[1] Those defendants criminally charged are James Baugh, David Harville, Brian Gilbert, Stephanie Popp, Stephanie Stockwell, Veronica Zea, and Philip Cooke. For purposes of this motion, "Charged Defendants" refers to these defendants collectively and individually.

Second, implicitly recognizing that Wymer is not directly liable for the Charged Defendants' acts, the Complaint seeks to hold him secondarily or vicariously liable. To do so, the Complaint must plead (among other things) facts demonstrating that Wymer *knew* the Charged Defendants were committing the tortious acts alleged in the Complaint *and* that he actively participated in or substantially assisted in the commission of those acts. The Complaint again does not—and cannot—do so. The Complaint relies exclusively on a handful of animated and off-the-cuff messages from Wymer, stacking inference upon inference on them to attempt to state a claim against Wymer. That is not enough to survive this motion to dismiss. The communications do not plausibly suggest Wymer knew the types of acts alleged in the Complaint were being (or had been) committed—let alone that he participated or substantially assisted in committing those tortious acts. In fact, the Complaint's allegations substantiate that Wymer was not contemporaneously made aware of any misconduct. In addition, the Complaint's civil conspiracy claim is barred by the intra-corporate conspiracy doctrine that courts have applied in this Circuit to hold that a corporation and its agents constitute a single actor that cannot conspire for purposes of a civil conspiracy. That doctrine aside, the Complaint fails to plead the elements of a civil conspiracy claim under Massachusetts law.

Finally, the Complaint does not state a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim against Wymer. It fails to allege sufficient "predicate acts" under the statute, fails to allege that Wymer participated in the "conduct" of any RICO enterprise, and fails to allege a "pattern" of racketeering activity that suffices to state a claim under 18 U.S.C. §§ 1962 and 1964 and well-established First Circuit law. "RICO-conspiracy" liability is likewise not stated against Wymer given the absence of alleged facts reflecting that he both "knowingly" joined the alleged RICO conspiracy and "involved himself" in committing predicate offenses.

In sum, the Complaint fails to plead Wymer's involvement in any unlawful acts or that he can be liable for the conduct of other defendants. Accordingly, pursuant to Rule 12(b)(6), Wymer respectfully submits that he should be dismissed from this case.

## II.    **BACKGROUND**

Wymer had a very successful career leading communications and policy at several well-known companies before joining eBay in February 2019. *See* Exhibit A.[2] Prior to his employment in the private sector, Wymer served as a senior advisor in the U.S. Senate and led communications on behalf of three U.S. senators. *Id.*

As described in the Complaint, the Steiners operate Steiner Associates, LLC (collectively, "Plaintiffs"), which publishes EcommerceBytes, an ecommerce trade publication where the Steiners report about various ecommerce companies, including eBay. ¶¶ 1, 2.[3] According to the Complaint, in August 2019, the Steiners were subjected to a harassment campaign of "online threats, package deliveries, in-person stalking and surveillance" intended to "intimidate, threaten to kill, torture, terrorize, stalk and silence the Steiners, in order to stifle their reporting on eBay." ¶¶ 1, 212(a), 266(a)(vii). The facts pleaded in the Complaint show that these acts were committed by the Charged Defendants, all former members of eBay's security staff, allegedly on eBay's behalf—and do not show that Wymer participated. *E.g.*, ¶¶ 78-86, 99-100, 102-105, 109-112, 115-116.

---

[2] The Court can take judicial notice of the Exhibit A press release, which is attached to the accompanying declaration of Caz Hashemi. *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 208 (1st Cir. 2016) (affirming district court's "judicial notice of the proffered press release [and] news articles"); *Madison v. Cruz*, 393 F. Supp. 3d 135, 137 n.2 (D. Mass. 2019) (taking judicial notice of "press releases, of which the accuracy cannot be reasonably questioned, indicating that [defendant] resigned in April 2015").

[3] References to "¶ __" refer to paragraphs of the Complaint, ECF No. 1.

The federal government filed criminal charges against the Charged Defendants, and five of those individuals pled guilty. ¶ 274. Wymer was not charged and is not alleged to have been aware of or participated in the criminal acts described in the charging documents. Indeed, Wymer's professional career is wholly inconsistent with an inference that he would ever condone the alleged tortious acts perpetrated against Plaintiffs. And, in fact, the Complaint— through what it alleges and, of equal note, what it does *not* allege—demonstrates that Wymer did not participate in the alleged wrongdoing, did not have knowledge of it, and did not assist it. Specifically:

- Wymer is not alleged to have committed *any* of the unlawful acts alleged in the Complaint. For example, he is not alleged to have stalked, imprisoned, or defamed Plaintiffs or to have vandalized or trespassed upon their property. *E.g.*, ¶¶ 54, 78, 79, 80, 99, 102-105, 111-112.

- Both the Complaint (*see id.*) and the government allege the harassment campaign was conducted by only the Charged Defendants. Compl. Ex. B at ¶ 16 (ECF No. 1-2); Compl. Ex. C at ¶ 18 (ECF No. 1-3). For example, the Complaint alleges that Plaintiffs were stalked by defendants Baugh, Harville, and Zea (*e.g.*, ¶ 111), and that the Steiners' property was vandalized by defendant Gilbert (¶ 54) and trespassed upon by defendants Baugh, Harville, and Zea (¶ 104). *See also* ¶¶ 78-99, 104, 230-236, 329. There is no allegation whatsoever that Wymer participated in or had any knowledge of such acts.

- The Complaint pleads no facts supporting its conclusory assertion that Wymer directed, planned, ordered, or condoned the individuals' unlawful acts. *E.g.*, ¶¶ 59, 69, 76, 101, 132. In fact, none of the Charged Defendants even reported to Wymer. The alleged "ringleader" of the harassment campaign (¶ 71), defendant Baugh, reported to eBay's head of security and operations, not Wymer. ¶ 37. No Charged Defendant other than Baugh is alleged to have communicated or interacted with Wymer at any time.

- The Complaint does not allege that anyone informed Wymer that they planned to, or were, engaging in stalking, vandalizing, trespassing, or any of the other misconduct inflicted upon the Steiners. To the contrary, the Complaint specifically alleges that Baugh "would often warn [his group] 'we'll keep it in the circle of trust' when secrets" within the security department arose, and he

played a clip from a movie to his team to reinforce that directive.  ¶ 72.[4]

- Criminal charges for, *inter alia*, stalking, conspiracy to commit cyberstalking, and/or witness tampering were filed against the Charged Defendants.  ¶¶ 209-211.  Baugh and Harville are awaiting trial while the other five individuals pled guilty.  ¶ 274.  No criminal charges were filed against Wymer (or against Devin Wenig, eBay's then-CEO and Wymer's former boss).

Despite the foregoing, the Complaint attempts to hold Wymer liable for the Charged Defendants' unlawful acts by quoting certain messages between him and his boss (defendant Wenig) and between him and defendant Baugh.  *E.g.*, ¶ 57.  The animated language in these messages with co-workers reflected eBay's frustration with Plaintiffs' reporting and Wymer's desire, as its Chief Communications Officer, to counteract the reporting.  While the Complaint alleges messages about "[taking] her down," that eBay should do "Whatever. It. Takes." and that Wymer would (or did) "manage any bad fall out" (¶¶ 57, 60), neither the messages themselves nor any other pleaded facts plausibly suggest that the messages were intended to encourage or assist with criminal conduct of any sort.  Nor do they demonstrate any knowledge or understanding that such illegal conduct would occur or had occurred.  For example, the Complaint does not allege facts plausibly supporting an interpretation that Wymer would "manag[e] any bad fall out" from *illegal activity* as opposed to non-illegal activity (*e.g.*, ordinary communications strategy issues).[5]

---

[4] While the Complaint pleads various disturbing behavior attributed to Baugh in the course of business, such as "maniacally stab[bing] a chair" with a knife at a barbeque grill at eBay or "play[ing] a clip from 'American Gangster' where [the main character] casually executed a man in front of a crowd in order to prove a point" to his team, it does not suggest that Wymer was present for or aware of such conduct.  ¶¶ 71, 72.

[5] As another example of an unwarranted inference in the Complaint, in quoting a message from Wymer that stated "I want to see ashes.  As long as it takes.  Whatever it takes.'" (¶¶ 4, 57), the Complaint omits that the hyperbolic message was in response to Baugh's question about the Steiners' *website*—it was not about stalking, imprisoning, defaming, vandalizing, trespassing, or

(continued...)

Further, the Complaint does not allege—nor could it— facts reflecting that Wymer was even aware of the alleged bad acts until they were brought to his attention during a police investigation. For example, while the Complaint selectively quotes one portion of a text message to allege that defendant Baugh was "keep[ing] Defendant Wymer updated on the progress of the conspiracy" (¶ 189), the full content of that message contradicts the suggestion that Wymer had been being "updated" on the Charged Defendants' alleged criminal conduct. *See* Compl. Ex. A at ¶ 177. Specifically, *after* the Charged Defendants ceased their bad acts, Baugh texted Wymer the following: "Hi [Steve] – this is Jim Baugh's personal cell. My team ran an Op on our friend in Boston. Nothing illegal occurred and we were actually intending to team up with [Ms. Steiner] and get her on our side in a positive manner." *Id.* He also informed Wymer that "[w]e are cooperating" in "an internal investigation on us." *Id.* In the portion of the message that *is* cited in the Complaint, Baugh informed Wymer "[w]e will continue to cooperate" with an internal investigation, and Baugh reiterated that "no crime was committed[.]" ¶ 189.

The full message makes clear that (i) Baugh used the word "we" to refer to *his* team, *excluding* Wymer, when describing what that "team" did (*i.e.*, "[m]y team ran an Op"; "[w]e were actually intending"; "my people"; "[w]e are cooperating"; "[w]e will continue to cooperate"); (ii) Baugh told Wymer twice that nothing illegal occurred (*i.e.*, "[n]othing illegal occurred"; "[a]gain, no crime was committed"); (iii) Baugh put an innocuous spin on whatever

---

threatening to kill them. *See* Compl. Ex. A at ¶ 55 (ECF No. 1-1) (Baugh: "If I can neutralize *[Ina Steiner's] website* in two weeks or less, does that work for you?") (emphasis added). Instead, a non-speculative inference alleged in the Complaint explains that eBay executives, including Wenig and Wymer, retained a consultant firm on behalf of eBay that produced a report regarding "Alternative Digital Methods" that outlined strategies that "would drive the Steiners' articles lower in search engine results." ¶¶ 52-53. The report "included the recommendation, among others, that eBay promote company-friendly content that would drive [EcommerceBytes'] posts lower in search engine results." Compl. Ex. A at ¶ 21.

had occurred (*i.e.*, Baugh and his team had intended to "team up with her and get her on our side in a positive manner"); and (iv) Baugh did not suggest that Wymer was already in-the-know about the Charged Defendants' so-called "Op" (because he was not). *See* Compl. Ex. A at ¶ 177. This message contradicts the Complaint's key allegation against Wymer—namely that he knew about, encouraged, and directed the Charged Defendants' tortious acts. Thus, not only does the Complaint fail to plead facts supporting that allegation, it pleads facts negating it.

## III.   <u>THE RELEVANT LEGAL STANDARDS</u>

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels [a court] 'to draw on' [its] 'judicial experience and common sense.'" *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Iqbal*, 556 U.S. at 663-64, 679). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility,'" and dismissal is warranted. *Iqbal*, 556 U.S. at 678 (citation omitted). Courts are "instruct[ed]" "to 'take the complaint's well-pled (*i.e.*, *non-conclusory, non-speculative*) facts as true . . . .'" *Zenon v. Guzman*, 924 F.3d 611, 612 n.1 (1st Cir. 2019) (omission in original) (emphasis added) (quoting *Schatz*, 669 F.3d at 55). Even where "there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (quoting *Papasan v.*

*Allain*, 478 U.S. 265, 286 (1986)).  In fact, a court should "*isolate and ignore* statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."  *Schatz*, 669 F.3d at 55 (emphasis added); *see also Iqbal*, 556 U.S. at 664 ("A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth.").  To be sure, "some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual,'" and should therefore be similarly isolated and ignored.  *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 595 (1st Cir. 2011) (quoting *Twombly*, 550 U.S. at 557 n.5).

Finally, the court "must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted."  *Alston v. Spiegel*, 988 F.3d 564, 573 (1st Cir. 2021) (quoting *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009)).  In other words, whether the Complaint has stated a claim against *other* defendants in this case is irrelevant to whether the Complaint has stated a claim against Wymer.

## IV.   ARGUMENT

The Complaint asserts claims against all defendants, including Wymer, for intentional infliction of emotional distress; stalking; violation of the Massachusetts Civil Rights Act; defamation; trespass; false imprisonment; vandalism; unfair and deceptive business practices; and tortious interference with business relations (collectively, the "Tort Claims"), as well as civil conspiracy and RICO.[6]  These claims against Wymer rest entirely on a few animated messages recycled from government charging documents (in which Wymer was not charged), none of

---

[6] Plaintiffs' Count XII for "Ratification" is not alleged against Wymer.  ¶¶ 361, 364 (alleging the misconduct was "ratified" by defendant eBay and its Board of Directors).

which reflect participation in, knowledge of, or substantial assistance with any of the acts committed against the Steiners. Nor are there other "well-pleaded factual allegations" that would plausibly reflect that Wymer had knowledge of, participated in, or substantially assisted with any of that wrongdoing. Therefore, each claim against Wymer fails as a matter of law.

### A. The Complaint Fails to Plead Direct Liability Against Wymer for the Tort Claims

Important to this motion is the fact that the Complaint pleads that the *Charged Defendants*—not Wymer—engaged in the actions underlying the Tort Claims. Indeed, the only allegations relevant to Wymer are a handful of internal communications, none of which give rise to direct liability for the Tort Claims.[7] Thus, at least with respect to Wymer, these claims should be dismissed.

Further, in a pleading tactic here that should be rejected, the Complaint routinely uses the homogenized term "Defendants" in detailing allegedly wrongful conduct by some or all of the Charged Defendants. *See, e.g.*, ¶¶ 222, 234, 286, 294, 313, 319, 329, 355 (relying on term "Defendants" in "Causes of Action" section of Complaint); *compare also, e.g.*, ¶ 54 (specifically alleging "Defendant Gilbert" vandalized the Steiners' fence after driving to the Steiners' home and "scrawl[ing] the word Fidomaster on their fence" in "The Facts" section of Complaint), *with* ¶ 329 (instead alleging "Defendants" vandalized the Steiners' fence by "scrawling 'Fidomaster' on their fence" in the "Count VIII: Vandalism" section of Complaint). This sleight of hand cannot form the basis for potential liability as to Wymer. As explained above, the Court must determine whether *as to each defendant* a claim has been sufficiently alleged. *Alston*, 988 F.3d at 573; *see also Fine v. Guardian Life Ins. Co. of Am.*, No. 3:19-cv-30067-KAR, 2021 WL

---

[7] Section IV.B. explains why these internal messages do not give rise to secondary or vicarious liability, let alone direct liability.

916270, at \*5 (D. Mass. Mar. 10, 2021) (citation omitted) ("In order to satisfy the minimal requirements of notice pleading, a plaintiff cannot 'lump' multiple defendants together and must 'state clearly which defendant or defendants committed each of the alleged wrongful acts.'"); *Tolbert v. Clarke*, No. 10-11643-RWZ, 2011 WL 797372, at \*3 (D. Mass. Feb. 28, 2011) (Fed. R. Civ. P. 8 not met by "refer[ring] collectively to the 'defendants' [throughout the complaint] when the specific factual allegations do not support a reasonable inference that all of the defendants were involved in the alleged misconduct").

### 1. The Complaint Does Not State a Claim That Wymer Intentionally Inflicted Emotional Distress

The elements necessary to adequately sustain a claim for intentional infliction of emotional distress ("IIED") are well established. "[A] plaintiff must show (1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress." *Sena v. Commonwealth*, 629 N.E.2d 986, 994 (Mass. 1994).

The Complaint asserts IIED based on "outrageous conduct," specifically: "threatening the Steiners online; sending unwanted threatening deliveries and packages including a book on surviving the loss of a spouse, a bloody pig SAW mask, a funeral wreath, and live spiders; engaging in around-the-clock harassment; signing them up for over 50 unwanted email subscriptions, some vulgar in nature; doxing them online and soliciting strangers to their house; following them and surveilling them at all hours of the day and night; stalking and tailing them; and threatening, intimidating, harassing and terrorizing them for weeks on end." ¶ 222. But the Complaint only identifies the Charged Defendants' threats, surveillance, and harassment. *See* ¶¶ 78-96, 102-116. The Complaint does not allege facts reflecting that Wymer engaged in any of

the allegedly outrageous conduct that could give rise to the claim.

While the Complaint alleges that the "Defendants" "knew or should have known their actions would cause the Steiners emotional . . . harm" (¶ 162), Wymer is not one of the "Defendants" alleged to have engaged in any such "actions," and there are no well-pled facts plausibly suggesting that he (i) knew Baugh was executing an illegal "Op" of harassment (in fact, Exhibit A of the Complaint at ¶ 177 undermines any such suggestion), or (ii) intended or reasonably should have expected for Baugh to do so. This requires dismissal of the IIED claim. *Sena*, 629 N.E.2d at 994.

### 2. The Complaint Does Not State a Claim That Wymer Stalked Plaintiffs

The Complaint alleges the Steiners were stalked in Massachusetts in violation of California Civil Code Section 1708.7. ¶¶ 231-234. But Section 1708.7 only applies to stalking in California, not anywhere else. *See Steep Hill Labs., Inc. v. Moore*, No. 18-cv-00373-LB, 2018 WL 1242182, at *11 (N.D. Cal. Mar. 8, 2018) (dismissing Section 1708.7 stalking claim because conduct occurred in Nevada, not California), *aff'd*, 744 F. App'x 443 (9th Cir. 2018). Even if it applied here, however, to state a claim a plaintiff must plead "a pattern of conduct the intent of which was to follow, alarm, or harass the plaintiff." *In re Brittany K.*, 127 Cal. App. 4th 1497, 1510 (2005). The Complaint does not plead facts that Wymer ever followed, alarmed, or harassed the Plaintiffs (or ever interacted with them in any way). *E.g.*, ¶¶ 79, 80, 99, 111-112 (showing Charged Defendants engaging in such conduct).

### 3. The Complaint Does Not State a Claim That Wymer Violated the Massachusetts Civil Rights Act

To plead a claim under the Massachusetts Civil Rights Act (M.G.L. CH. 12 § 11I ) ("MCRA"), Plaintiffs must allege Wymer interfered with a right secured by the U.S. Constitution, federal law, or state law by way of threats, intimidation, or coercion. *Sovereign*

*Bank v. Sturgis*, 863 F. Supp. 2d 75, 87 (D. Mass. 2012) (Woodlock, J.). Putting aside arguments as to whether the alleged rights to free speech and liberty of the press are implicated (¶ 286), this MCRA claim requires dismissal against Wymer because he is not alleged to have interfered with any such right—only the Charged Defendants are specifically alleged to have threatened and intimidated Plaintiffs. ¶¶ 78-96, 102-116; *see Gilanian v. City of Boston*, 431 F. Supp. 2d 172, 173 n.1 (D. Mass. 2006) ("barr[ing] claim" where defendant not alleged to have "personally engaged" in unlawful acts). No facts are pled reflecting that Wymer did so. Indeed, the Complaint does not allege Wymer ever interacted with Plaintiffs.

### 4. The Complaint Does Not State a Claim That Wymer Defamed Plaintiffs

To plead a defamation claim, the Complaint must establish that Wymer is at "fault for publishing a false statement" regarding the Plaintiffs, "capable of damaging" the Plaintiffs' reputation, which "caused economic loss or is actionable without proof of economic loss." *White v. Blue Cross & Blue Shield of Mass., Inc.*, 809 N.E.2d 1034, 1036 (Mass. 2004). The Complaint claims that Plaintiffs were defamed by certain actions of the Charged Defendants', such as false online postings and the delivery of pornography to the Steiners' neighbors in David Steiner's name. ¶¶ 107, 130, 150, 294-300. But no facts are alleged reflecting that Wymer did anything that Plaintiffs claim to be defamatory and therefore he cannot be liable for defamation. *See, e.g.*, *White*, 809 N.E.2d at 1036, 1040 (affirming dismissal of defamation claim because defendant not alleged to have made any alleged defamatory statement to third parties). Nor are there any well-pled allegations suggesting that Wymer is personally "at fault for the publication of" such allegedly defamatory material (particularly where he is not even alleged to have known about, for example, the sending of pornography to the Steiners' neighbors). Thus, the defamation claim must be dismissed as to Wymer. *See Shay v. Walters*, 702 F.3d 76, 82-83 (1st

Cir. 2012) (affirming dismissal of defamation claim where "the complaint contains no plausible allegations of fault"; "[a]s a matter of constitutional bedrock, a plaintiff must show fault in order to impose liability upon a defendant for defamation.").

### 5. The Complaint Does Not State a Claim That Wymer Trespassed

In Massachusetts, liability for trespass requires a defendant "intentionally . . . enter[ing] land in the possession of the other, or caus[ing] a thing or a third person to do so . . . .'" *Dilbert v. Hanover Ins. Co.*, 825 N.E.2d 1071, 1077 (Mass. App. Ct. 2005). The Complaint alleges trespass based on specific Charged Defendants entering the Steiners' property to install a GPS device (¶ 104), but does not allege that Wymer ever visited Massachusetts during his eBay tenure, let alone that he entered the Steiners' property. *See Rubin v. Waplate Constr. Mgmt.*, No. 96146, 1999 Mass. Super. LEXIS 319, at *10-11 (Mass. Super. Ct. Aug. 24, 1999) (dismissing trespass claim where no allegation of defendant's entry onto plaintiffs' property or directing a thing onto it). Nor are there any well-pled facts alleging that Wymer "caus[ed]" any Charged Defendants to trespass to try to install a GPS device, or for any other purpose.

### 6. The Complaint Does Not State a Claim That Wymer Intentionally Confined Plaintiffs

False imprisonment is the intentional and unjustified confinement of a person. *D'Ambrosio v. City of Methuen*, No. 16-10534-MPK, 2019 WL 1438050, at *14 (D. Mass. Mar. 31, 2019). The Complaint alleges the Steiners were confined because "[t]he Defendants' incessant packages and cruel and abusive messages and threats forced the Plaintiffs to remain in their home . . . ." ¶ 319. However, there is not a single factual allegation in the Complaint that Wymer ever sent the Steiners a package, message, or threat. *See* ¶¶ 79, 80, 88, 99. Moreover, the claim fails as to Wymer because a plaintiff must allege sufficient facts that a defendant *intended* to confine the plaintiff (*Integrated Commc'ns & Techs., Inc. v. Hewlett-Packard Fin.*

*Servs., Co.*, No. 16-CV-10386-LTS, 2017 WL 354847, at *7 (D. Mass. Jan. 24, 2017)), and no pled facts plausibly allege such an intention by Wymer.

### 7. The Complaint Does Not State a Claim That Wymer Vandalized

Even assuming Massachusetts recognized "vandalism" as a claim (though it does not), this claim is based entirely on the damage to the Steiners' property caused by the scrawling of "Fidomaster" on their fence (¶ 329), which the Complaint specifically alleges was done "[o]n or about June 8, 2019" by defendant "Gilbert"—not Wymer. Moreover, it was allegedly done "at Baugh's direction" after Gilbert "flew . . . from California to Boston." ¶ 54. This claim requires dismissal because Wymer is not alleged to have vandalized anything.

### 8. The Complaint Does Not State a Claim That Wymer Violated M.G.L. CH. 93A § 11

Chapter 93A creates a private right of action for any person who "suffers any loss of money or property" as a result of an "unfair method of competition or an unfair or deceptive act or practice" in the "conduct of any trade or commerce . . . ." M.G.L. CH. 93A § 11. To be liable, the defendant must have "engaged in an unfair method of competition or committed an unfair or deceptive act or practice . . . ." *Warren Envtl., Inc. v. Source One Envtl., Ltd.*, No. 18-11513-RGS, 2020 WL 1974256, at *10 (D. Mass. Apr. 24, 2020). Even assuming a predicate business relationship existed based on eBay and defendant PFC being "subscribers" of EcommerceBytes (¶ 345), the Complaint alleges no facts—as it must—reflecting that Wymer actively participated in the allegedly unfair acts or practices described in the Complaint— namely, "creating false online accounts in order to pose as sellers on eBay who were angry about articles written by Plaintiff Ina Steiner . . . , sending disturbing packages to Plaintiffs' home to frighten the Plaintiffs into providing more favorable coverage of eBay and conducting surveillance on the Plaintiffs while at their home and in their community in Natick,

Massachusetts." ¶ 346. The only defendants specifically alleged to have engaged in such conduct are the Charged Defendants. *See, e.g.*, ¶¶ 78-96, 102-116; *see Speakman v. Allmerica Fin. Life Ins. & Annuity Co.*, 367 F. Supp. 2d 122, 142 (D. Mass. 2005) (for Chapter 93A liability, a "defendant must have taken an 'active role' in that conduct").

### 9. The Complaint Does Not State a Claim That Wymer Interfered with Plaintiffs' Business Relations

To state a claim for tortious interference with business relations, a plaintiff must allege: "(1) the plaintiff was involved in a business relationship or anticipated involvement in one, (2) the defendant knew about the relationship, (3) the defendant intentionally interfered with the relationship for an improper purpose or by an improper means and (4) the plaintiff suffered damages as a result." *See Malden Transp., Inc. v. Uber Techs., Inc.*, 286 F. Supp. 3d 264, 281-82 (D. Mass. 2017).

As explained above, the Complaint contains no allegations that Wymer engaged in any of the conduct that caused the alleged financial harm to Plaintiffs, such as creating harassing Twitter accounts to mislead Plaintiffs' clients "into believing that Plaintiffs were hurting small and family businesses" (¶¶ 154, 155, 355), to satisfy the element of Wymer's intentional interference. Moreover, a complaint must identify a *specific* business relationship that was disrupted. *Malden*, 286 F. Supp. 3d at 282. Here, setting aside Wymer's lack of alleged involvement, the Complaint does not allege how the alleged Charged Defendants' conduct disrupted any specific business relationship. The mere allegation that Plaintiffs' relationships with unidentified "[c]lients, businesses and advertisers" (¶ 355) were disrupted is far too generalized to state a claim, including as to Wymer. *Moving & Storage, Inc. v. Panayotov*, No. CIV.A. 12-12262-GAO, 2014 WL 949830, at *3 (D. Mass. Mar. 12, 2014) (generic allegations of loss of "customers and prospective customers" insufficient).

**B.      The Complaint Fails to Plead That Wymer is Secondarily or Vicariously Liable**

Unable to allege that Wymer should be held directly liable for the Tort Claims, the Complaint claims Wymer is secondarily or vicariously liable under civil conspiracy and aiding and abetting.  With respect to Wymer, neither theory should survive this motion.[8]

**1.      The Complaint Does Not State a Claim Against Wymer for Civil Conspiracy**

The Complaint attempts to hold Wymer vicariously liable for other defendants' misconduct and related torts through Count IX for civil conspiracy.  ¶¶ 332-341.  As a preliminary matter, Count IX cannot withstand the intra-corporate conspiracy doctrine, which provides that a corporation and its agents constitute a single actor and therefore cannot conspire among themselves for purposes of a civil conspiracy claim.  That doctrine aside, the Complaint fails to plead the required elements of civil conspiracy under either (i) a concert of action theory, which requires allegations that Wymer agreed with another person to commit wrongful acts and he himself committed a tort, or (ii) a substantial assistance theory, which requires allegations that Wymer knew a conspirator was committing a tort and he substantially assisted or encouraged their conduct.

---

[8] To the extent that the defendants in this action may successfully move to dismiss the Tort Claims as insufficiently pleaded such that no underlying claim(s) remains, the Complaint's conspiracy and secondary/vicarious liability claims based on the dismissed claims also would fail.  *See Taylor v. Am. Chemistry Council*, 576 F.3d 16, 34-35 (1st Cir. 2009) ("Because it is vicarious liability, this type of civil conspiracy requires an underlying tort."); *Blake v. Prof. Coin Grading Serv.*, 898 F. Supp. 2d 365, 392 (D. Mass. 2012) (no conspiracy claim as to conversion because conversion not adequately pleaded as to any defendant).

### a. The Intra-Corporate Conspiracy Doctrine Requires Dismissal of the Civil Conspiracy Claim

The intra-corporate conspiracy doctrine provides that "an agreement between or among agents of the same legal entity [like a corporation], when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). In other words, a corporation and its agents acting within the scope of their duties are considered one entity and, as the First Circuit phrased it, "an entity cannot conspire with itself." *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 131 (1st Cir. 2006).

Here, Plaintiffs repeatedly allege the individual defendants acted within the scope of their employment and on behalf of their then-employer, eBay. For example:

- "At all times relevant to this Complaint, the individual named Defendants were acting in concert with one another, as agents and employees of eBay and/or [Progressive F.O.R.C.E. Concepts, LLC ("PFC")], *within the scope of their employment* with the intent to benefit their employers in furtherance of eBay's direct command . . . ." (¶ 13) (emphasis added);[9]

- "As part of the conspiracy to silence EcommerceBytes, and the Steiners' reporting, [the individual defendants], all *while acting within the scope of their employment* with eBay and PFC, set a plan in motion to destroy the Steiners' business." (¶ 56) (emphasis added);

- "At all times relevant to the allegations in this Complaint, all the named individual Defendants acted in concert with one another, in furtherance of eBay's directive – through its executive leadership, Defendants Wenig and Wymer – to silence the Steiners. . . . All Defendants *were acting within the scope of his or her employment* during the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners." (¶ 66) (emphasis added);

- "Each of the Defendants, including eBay and PFC's employees and contractors . . . engaged in intentional and malicious attacks against the Steiners *during the scope of their employment*, at the direction of eBay through its senior management staff . . . ." (¶ 69) (emphasis added).

---

[9] eBay allegedly hired defendant PFC in December 2018 (¶ 26), and eBay paid PFC for defendant Zea's placement at eBay. ¶ 35.

These allegations are fatal to Plaintiffs' civil conspiracy claim.  The First Circuit's decision in *Platten* is instructive.  There, former partners at a consulting firm asserted a civil conspiracy claim to hold the firm and its various holding companies liable for the chief executive partner's alleged scheme to unlawfully deny the plaintiffs their distribution payments.  437 F.3d at 131.  The plaintiffs, however, alleged that the chief executive partner, the firm, and related entities comprised a "single corporate enterprise," which warranted dismissal of the civil conspiracy claim "because an entity cannot conspire with itself."  *Id.*

Similarly, in *Bell v. Rinchem Co.*, No. 4:14-40177-TSH, 2016 U.S. Dist. LEXIS 57668, at *2, *59-60 (D. Mass. Feb. 11, 2016), the court dismissed a conspiracy claim under the intra-corporate conspiracy doctrine where the alleged conspirators were plaintiff's employer, its subsidiary, and its employees allegedly acting within the scope of their employment.  And in *Williams v. Northfield Mount Herman School*, 504 F. Supp. 1319, 1328-29 (D. Mass. 1981), the court applied the doctrine to grant defendants' motion to dismiss, noting that all acts alleged to be committed in furtherance of the conspiracy were allegedly taken within the scope of the defendants' duties as employees.  *See also Wentworth Precious Metals, LLC v. City of Everett*, No. 11-10909-DPW, 2013 WL 441094, at *14 (D. Mass. Feb. 4, 2013) (Woodlock, J.) ("When these employees acted in the course of their employment, they acted on behalf of the City of Everett, and a conspiracy of one fails to state a claim.").  Plaintiffs' civil conspiracy claim should be dismissed for the same reason because the Complaint expressly alleges an intra-corporate conspiracy among eBay and its agents acting on eBay's behalf and within the scope of their duties.  *E.g.*, ¶¶ 13, 56, 66, 69.[10]

---

[10] Plaintiffs' decision to sue non-employee defendants Zea and PFC does not vitiate the applicability of the doctrine.  *See* ¶ 26.  Zea is alleged to be an "eBay contractor" who worked as
(continued...)

The intra-corporate conspiracy doctrine requires dismissal of the Complaint's civil conspiracy claim.[11]  Even without that doctrine, however, the claim would fail because the Complaint does not plead the required elements of any form of civil conspiracy.

### b. The Complaint Has Not Pled a "Concert of Action" or "Substantial Assistance" Theory Against Wymer

"Massachusetts recognizes two types of civil conspiracy, so-called 'true conspiracy' and conspiracy based on section 876 of the Restatement (Second) of Torts." *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 34 (1st Cir. 2009).  True conspiracy is "a very limited cause of action in Massachusetts" that is "based on the defendants' allegedly unique ability to exert a 'peculiar power of coercion' when acting in unison." *Snyder v. Collura*, 812 F.3d 46, 52 (1st Cir. 2016) (citation omitted).  This standalone tort is typically applied to market collusion among competitors or refusals to deal. *Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 244 (D. Mass. 1999).  Here, the Complaint does not allege, nor could it, that the Charged Defendants (or any defendants) engaged in market collusion or exerted a peculiar

---

an "intelligence analyst" at eBay and in "furtherance of eBay's direct command . . . ." ¶¶ 13, 35; *see also* ¶ 102 (Zea travelled to Massachusetts "for the benefit of eBay").  These allegations put Zea within the eBay entity for purposes of the intra-corporate conspiracy doctrine. *See Martensen v. Koch*, No. 13-Cv-02411-Reb-Cbs, 2014 U.S. Dist. LEXIS 91817, at *21 (D. Colo. June 12, 2014) (non-employees retained by defendant to investigate plaintiff did not bar application of the doctrine because non-employees were acting on behalf of defendant).  No facts are alleged that PFC engaged in any conduct, but whatever role it allegedly had in a conspiracy is also alleged to have been for the benefit of and on behalf of eBay, and thus within the scope of the doctrine. *See* ¶¶ 13, 14, 26, 102; *Rinchem*, 2016 U.S. Dist. LEXIS 57668, at *60 (nonspecific allegations regarding an entity's role in a conspiracy was not a basis to vitiate the doctrine for a conspiracy specifically alleged to have involved another entity and its employees).

[11] An exception to this doctrine exists for allegations of continuous harassment (*see Stathos v. Bowden*, 728 F.2d 15, 21 (1st Cir. 1984)), but that exception only applies to violations by government officials under Section 1985(3)—not where, as here, "[p]laintiff alleges that agents of a private entity conspired against [plaintiff] in violation of Massachusetts common law." *Hagenah v. Berkshire Cty. Arc, Inc.*, No. 3:16-cv-30141-KAR, 2018 U.S. Dist. LEXIS 24696, at *26 (D. Mass. Feb. 15, 2018).

power of coercion that they would not have been able to alone.[12]

What the Complaint appears to try to plead is civil conspiracy based on section 876 of the Restatement, which "is a form of vicarious liability [that] requires an underlying tort." *Taylor*, 576 F.3d at 34-35. Massachusetts courts recognize two types of section 876 conspiracies: "concert of action" and "substantial assistance." *Id.* at 35. Both theories require the plaintiff to "show an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement." *Blake v. Pro. Coin Grading Serv.*, 898 F. Supp. 2d 365, 392 (D. Mass. 2012) (internal quotations omitted). The Complaint fails to plead the elements of either type of conspiracy as to Wymer.

To plead a "concert of action" theory (also called a "concerted action" or "common design" theory), a plaintiff must show the defendant and at least one other person agreed to commit a wrongful act, *and* that the defendant committed a tortious act. *Thomas v. Harrington*, 909 F.3d 483, 490 (1st Cir. 2018); *see also Blake*, 898 F. Supp. 2d at 393 ("Under the 'concerted action theory,' [defendants] must have agreed to work toward an unlawful result and take steps to do it."); *Payton v. Abbott Labs*, 512 F. Supp. 1031, 1035 (D. Mass. 1981) ("The second element of the [concert of action] theory is that the defendant's own conduct must be tortious."). As explained above, this theory is precluded because the Complaint pleads no facts reflecting that Wymer agreed to—or was even aware of—the Charged Defendants' unlawful conduct. *See Heinrich ex rel. Heinrich v. Sweet*, 49 F. Supp. 2d 27, 44 (D. Mass. 1999) (under concert of action theory, "the defendant [must] be aware of and agree with the allegedly tortious conduct of its co-defendants"). The Complaint's threadbare recital that "Defendants Wenig and Wymer

---

[12] *See, e.g.*, *Wadja v. R.J. Reynolds Tobacco Co.*, 103 F. Supp. 2d 29, 37 (D. Mass. 2000) (no true conspiracy against tobacco companies because plaintiff did not allege how one tobacco company acting alone could not have caused the alleged harm to plaintiff).

specifically advised the other Defendants . . . to engage in the tortious conduct" is insufficient as it relies on the bare assertion itself without any factual support. ¶ 338; *Iqbal*, 556 U.S. at 664 ("mere conclusions[] are not entitled to the assumption of truth" on motion to dismiss). Wymer's internal messages—his only specific conduct alleged in the Complaint—certainly do not reflect an agreement with the Charged Defendants to engage in the unlawful acts alleged in the Complaint (*see* ¶¶ 57, 68), nor do they reflect that he was aware of *any* unlawful conduct.[13]

    The First Circuit's decision in *Thomas*, 909 F.3d at 483, is instructive. There, the plaintiff alleged that he was wrongfully terminated following a sham investigation that was the product of a conspiracy between a town manager and an investigator. Plaintiff argued that the town manager's communications to the investigator, including the instruction to "dig deep," revealed a concerted action conspiracy to find a pretextual justification to terminate plaintiff's employment. The court disagreed on summary judgment, reasoning that the communications did not show an agreement to commit a wrongful act. *Id.* at 491-92 ("[S]uch communications show that [town manager] was 'generally aware[]' of the investigation's progress, [but] they do not rise to the level necessary to impose liability under the common design theory."). Similarly, Wymer's messages do not show an agreement to participate in wrongful conduct and therefore "do not rise to the level necessary to impose liability[.]" *See also Payton*, 512 F. Supp. at 1038 (judgment on concert of action conspiracy theory granted where contacts between parties showed no agreement to engage in "inherently wrong" conduct).

    A "concert of action" theory also fails because the Complaint pleads no facts showing

---

[13] In fact, after the last alleged wrongful act, Baugh informed Wymer of "an Op . . . in Boston" to get Ms. Steiner "on our side in a positive manner," gave him a "heads up" about an investigation, and told him that "no crime was committed . . . ." ¶ 189; Compl. Ex. A at ¶ 177. The reasonable construction of this message contradicts that Wymer was previously aware of the "Op," and had agreed to participate in unlawful conduct as the concerted action theory requires.

that Wymer committed a tortious act in furtherance of the conspiracy. *See Heinrich*, 49 F. Supp. 2d at 44 (citing *Payton*, 512 F. Supp. at 1035, for proposition that "charged conspirator-defendant must have engaged in tortious conduct of its own"); *id.* (quoting *Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 295 (N.Y. 1992), for the "requirement that 'each defendant charged with acting in concert have acted tortiously'"). As explained in Section IV.A., no well-pleaded facts show tortious acts by Wymer. Further demonstrating this, in a section titled "Overt Acts in Furtherance of the Conspiracy" in the Baugh and Harville indictment attached to the Complaint, the government listed 70 overt acts taken by the Charged Defendants in furtherance of the conspiracy. Compl. Ex. B at ¶ 16. Not a *single* one of those acts references Wymer. The same is true for the information filed by the government as to defendants Gilbert, Popp, Stockwell and Zea; there is no mention of Wymer in the recitation of the overt acts alleged in furtherance of the conspiracy to commit cyberstalking (or obstruction). Compl. Ex. C. at ¶¶ 18-22. Wymer's complete absence from the planning and execution of the alleged conspiracy—as reflected in the Complaint and its exhibits—underscores his non-involvement in the harassment of the Steiners.

The Complaint likewise fails to state a claim under the "substantial assistance" theory. To plead this theory, a plaintiff must plead that the alleged conspirator provided substantial assistance or encouragement to another *with knowledge that such assistance is contributing to the commission of a tort*. *Blake*, 898 F. Supp. 2d at 392 (citing *Taylor*, 576 F.3d at 35-36); *Kurker v. Hill*, 689 N.E.2d 833 (Mass. App. Ct. 1998) (granting motion to dismiss). The complaint also must show the defendant intended that the tort be committed (*Blake*, 898 F. Supp. 2d at 393), which requires "knowledge that the other's conduct is tortious[] and an intent to substantially assist or encourage that conduct." *Thomas*, 909 F.3d at 491 (omission in original)

(citation omitted).

The Complaint does not come close to pleading such facts. First, there are no facts alleged reflecting that Wymer assisted—let alone substantially assisted—with the commission of a tort. Other than his messages (which on their face show no assistance with or knowledge of the wrongful acts), no conduct by Wymer is pled anywhere in the Complaint. Second, no facts are pled reflecting that Wymer intended that a tort be committed—which requires *knowledge* of the others' tortious conduct (and knowledge that it is a tort). *Blake*, 898 F. Supp. 2d at 392. The Complaint does not plead (nor could it) that Wymer knew of the other defendants' harassment of the Steiners, and the message pled in ¶ 189 (Compl. Ex. A at ¶ 177) further shows that he was not aware of it. *See Blake*, 898 F. Supp. 2d at 392 (dismissing conspiracy claim based on substantial assistance theory where plaintiff failed to allege defendant knew alleged co-conspirator committed a tort and that defendant intended the co-conspirator to commit that tort).

### 2. The Complaint Does Not State a Claim Against Wymer for Aiding and Abetting

The Complaint asserts at the end of each Tort Claim that "[t]he aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants . . . ." ¶¶ 229, 239, 288, 311, 316, 327, 331, 340, 352, 357. But to plead aiding and abetting, a plaintiff must allege, among other requirements, "that the [defendant] *knew* [the tortfeasor] was committing the tort" and "*actively participated in or substantially assisted in*" the commission of the tort. *Go-Best Assets Ltd. v. Citizens Bank of Mass.*, 972 N.E.2d 426, 438 (Mass. 2012) (emphasis added). These elements are similar to the "substantial assistance" civil conspiracy theory discussed above

and should be dismissed for similar reasons.[14]

As an initial matter, there are no well-pled facts showing that Wymer knew the Charged

Defendants were committing any of the underlying torts such as stalking, trespassing, vandalism,

defamation, and false imprisonment (to the contrary, Baugh told Wymer that illegal acts had *not*

occurred—*see* Compl. Ex. A at ¶ 177). While the Complaint makes generalized allegations

regarding defendants, any assertion that Wymer knew such acts occurred or were occurring are

wholly conclusory, unsupported by any factual allegations, and contradicted by Complaint

Exhibit A.[15]

Even if the Complaint pled facts reflecting that Wymer knew the alleged torts were being

committed (which it does not), the Complaint would still need to plead facts reflecting that

Wymer actively participated in the torts or substantially assisted the wrongdoers. *Go-Best*

*Assets*, 972 N.E.2d at 437-38. It fails to do so. "Substantial assistance" for aiding and abetting

requires specific knowledge of the torts allegedly being committed by a third-party tortfeasor.

*Kyte v. Philip Morris Inc.*, 556 N.E.2d 1025, 1028 (Mass. 1990) (no aiding and abetting liability

---

[14] The aiding and abetting claim in Count X (¶ 352) should be dismissed for the additional reason that courts do not recognize such liability for violations of M.G.L. Ch. 93A, § 11. *In re TelexFree Sec. Litig.*, 389 F. Supp. 3d 101, 105 (D. Mass. 2019) (no claim pleaded because "Chapters 93 and 93A do not explicitly enumerate private 'aiding and abetting' liability").

[15] *See also, e.g.*, *Go-Best Assets*, 972 N.E.2d at 429 (no aiding and abetting liability "where [defendant] had no knowledge of Goldings's scheme to defraud Go-Best"); *Spinner v. Nutt*, 631 N.E.2d 542, 546 (Mass. 1994) (affirming dismissal of aiding and abetting claim where plaintiffs "failed to set forth sufficient allegations" that "the defendant knew of the breach [of fiduciary duty]"); *C Co., Inc. v. Hackel*, 50 N.E.3d 221, at *2 (Mass. App. Ct. 2016) (aiding and abetting claim dismissed because plaintiff "failed to allege any facts demonstrating that the accounting defendants actually knew any financial information was false or that the accounting defendants had any role in creating the underlying data"); *Cohen v. Brokers' Serv. Mktg. Grp. II, LLC*, 31 N.E.3d 76, at *2 (Mass. App. Ct. 2015) (affirming dismissal of aiding and abetting claim where "a void remains [in the complaint] concerning Brokers' actual knowledge that Baldo was stealing money from the Cohens").

at summary judgment where defendant tobacco company "had no specific knowledge that [store] sold cigarettes to minors," and therefore it "could not have been aware of any substantial role it had in [store's] alleged illegal sales."). As explained above, because Plaintiffs fail to allege that Wymer had knowledge of the Charged Defendants' tortious acts, the Complaint fails to set forth factual allegations sufficient to plead that he substantially assisted their alleged illegal conduct.

It is equally clear that the Complaint has not pleaded "substantial assistance" by demonstrating that Wymer's actions "were a 'substantial factor' in the [Charged Defendants'] 'ability to perpetrate' the [tort]." *Mass. Port Auth. v. Turo Inc.*, 166 N.E.3d 972, 980 (Mass. 2021). There are no facts pleaded in the Complaint reflecting that Wymer assisted in any way— let alone substantially—in stalking, trespassing, or otherwise harassing Plaintiffs.

Similarly, the Complaint's conclusory assertions that Wenig and Wymer "planned," "directed," and "ordered" the alleged misconduct do not suffice to state a claim because the Complaint pleads no facts reflecting such planning, direction, or orders to engage in the conduct alleged in the Tort Claims. *See Guadalupe- Báez v. Pesquera*, 819 F.3d 509, 517 (1st Cir. 2016) ("bare and conclusory allegations" against police chief insufficient to plead liability for junior officers' misconduct); *Maldonado v. Fontanes*, 568 F.3d 263, 274 (1st Cir. 2009) ("generalized allegation that the Mayor planned, personally participated in, and executed the raids . . . are insufficient . . . .").[16]

---

[16] The Complaint also does not adequately plead a failure to intervene. There is no duty to "intervene" absent a "special relationship" between a plaintiff and defendant. *Irwin v. Town of Ware*, 467 N.E.2d 1292, 1300 (Mass. 1984). Plaintiffs have not pleaded they had *any* relationship—let alone any special relationship—with Wymer. It is also axiomatic that one cannot intervene without knowledge of events giving rise to such a need.

## C. The Complaint Fails to Plead a Civil RICO Claim

RICO was enacted by Congress "as a tool in the federal government's 'war against organized crime,'" "to help combat 'enduring criminal conduct.'" *Home Orthopedics Corp. v. Rodríguez*, 781 F.3d 521, 527 (1st Cir. 2015) (quoting *Libertad v. Welch*, 53 F.3d 428, 445 (1st Cir.1995)). To state a civil RICO claim, a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through "a pattern . . . of racketeering activity." *Id.* at 528 (citation omitted). RICO specifically enumerates what kinds of illegal acts count as "racketeering," and includes crimes such as extortion, counterfeiting and mail and wire fraud. *Id.* The First Circuit has emphasized the need to closely scrutinize civil RICO claims premised on mail and wire fraud (as alleged here—*see, e.g.*, ¶ 264) "because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000); *see also id.* at 21 (RICO "pattern" requirement ensures, *inter alia*, that "treble damage suits are not brought against isolated offenders for their . . . settlement value . . . .") (quoting *Menasco, Inc. v. Wasserman¸* 866 F.2d 681, 683 (4th Cir. 1989)).

The Complaint here has failed to allege (a) predicate acts, (b) that Wymer participated in the "conduct" of a "RICO enterprise," (c) a required RICO "pattern," and (d) a RICO-conspiracy.[17]

---

[17] The Complaint's RICO threshold standing allegations are also deficient. To have standing, a RICO plaintiff must plead facts showing that "he has been injured in his business or property." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir. 1996). Here, standing is not adequately alleged because the Complaint's allegations are focused on the Steiners' alleged injuries to their emotional wellbeing and/or reputation—not on injuries to business or property. *See* ¶¶ 276-278; *Lawson v. FMR LLC*, No. 19-11222-DPW, 2021 WL 3493859, at *5-6 (D. Mass. Aug. 9 2021) (Woodlock, J.) ("[E]motional damages" and "[r]eputational harm" to a person "are not cognizable injuries under RICO."). Nor is standing conveyed through allegations of "economic

(continued...)

### 1. The Complaint Fails to Plead RICO Predicate Acts

To state a claim under 18 U.S.C. § 1962(c) (*e.g.*, ¶¶ 241, 243), a complaint must adequately allege acts of racketeering—or "predicate acts"—enumerated in 18 U.S.C. § 1961(1). *Beck v. Prupis*, 529 U.S. 494, 497 n.2 (2000).  Here, the Complaint alleges that "Defendants" committed predicate acts of (1) interference with commerce, (2) mail fraud, (3) wire fraud, (4) obstruction of justice, and (5) witness tampering, in violation of, respectively, 18 U.S.C. §§ 1951, 1341, 1343, 1510 and 1512 (¶ 264).  However, as explained below, the Complaint fails to plead facts constituting one or more elements of each of the underlying crimes, thereby requiring dismissal of the Complaint's RICO claim.

**_18 U.S.C. § 1951:_**  This statute criminalizes interference in, or conspiracy to interfere in, interstate commerce "by robbery or extortion" or threats of physical violence.  *Id*. § 1951(a) and (b).  This predicate act fails because the Complaint does not plead facts demonstrating that any defendant acquired any property from Plaintiffs through "actual or threatened force, or violence, or fear," or otherwise.  18 U.S.C. § 1951(b)(1)-(2); *see also Scheidler v. NOW, Inc.*, 537 U.S. 393, 405, 409 (2003) (discussing requirement to "obtain or attempt to obtain property" for extortion claim).

**_18 U.S.C. §§ 1341 and 1343:_**  These statutes criminalize using an interstate carrier or interstate transmissions "for the purpose of executing" any "scheme . . . to defraud" or "obtain[] money or property by means of false or fraudulent pretenses."  *Id*.  These claims are subject to Fed. R. Civ. P. 9(b)'s heightened pleading standard for pleading fraud with particularity as to

---

injury deriving from personal injury," as alleged in the Complaint.  *See Anderson v. R.J. Reynolds Tobacco Co.*, No. 99-11382-GAO, 1999 WL 33944684, at *2 (D. Mass. Sept. 20, 1999); *e.g.*, ¶¶ 276, 277 ("suspicio[ns]" of Steiners allegedly cause of "economic damage" and correlates to "revenue").

each defendant. *Feinstein v. Resolution Tr. Corp.*, 942 F.2d 34, 42 (1st Cir. 1991). As discussed above, the Complaint does not plead the taking of anything from Plaintiffs. Nor is any "scheme" liability adequately alleged, which requires a specific intent to *defraud*. *United States v. Sawyer*, 85 F.3d 713, 723 (1st Cir. 1996). The Complaint's closest allegation to specific intent to defraud is a mere conclusory recitation of the elements of the cause of action in ¶ 267(c)(xi) (alleging Defendants' wire "communications [] were designed to defraud Plaintiffs out of property and money"), which "will not do." *Twombly*, 550 U.S. at 555.

**_18 U.S.C. § 1510:_** The Complaint alleges that defendants violated this statute "by obstructing justice." ¶ 267(d). By its own language, however, in the only part potentially relevant here, the statute criminalizes obstructing justice only if "by means of bribery." 18 U.S.C. § 1510(a). None of the Complaint's alleged four examples of obstruction of justice mention anything about bribery (and, no Charged Defendant "pled guilty" to § 1510, as the Complaint suggests). *See* ¶ 267(d)(i)-(iv). Nor are there allegations of bribery anywhere else in the Complaint.[18]

**_18 U.S.C. § 1512_:** Witness tampering under this statute requires tampering with statements to a federal officer or judge. 18 U.S.C. § 1512; *see also Fowler v. United States*, 563 U.S. 668, 677 (2011) (§ 1512 violation requires a "reasonable likelihood" that a tampered-with statement would have been made to a federal law enforcement officer). But here, the Complaint's allegations focus on local "Natick police detectives" (¶ 267(e)(iv) and (v)), with passing references to eBay internal investigators (*e.g.*, ¶¶ 191, 212(a)). Lacking any allegations

---

[18] The Complaint's conclusory allegation of "multiple violations of 18 U.S.C. § 1503" (¶ 264) regarding obstruction of justice is insufficient as there is no allegation a defendant endeavored to corruptly or by "threats or force" obstruct a federal proceeding as Section 1503 requires. *See United States v. Aguilar*, 515 U.S. 593, 598-99 (1995). The predicate act is not pleaded absent such factual allegations.

of a pending or anticipated federal investigation at the time of the Charged Defendants' alleged witness tampering, nor well-pled allegations suggesting that tampered-with statements were reasonably likely to have been provided to a federal officer or judge, the predicate act for civil RICO fails.

As none of the predicate acts is sufficiently pled, the RICO count must be dismissed.

### 2. The Complaint Fails to Plead a "Pattern" of Racketeering Activity

To establish a "pattern" of racketeering activity, the statute requires a plaintiff to show that at least two acts of racketeering occurred within ten years of each other. 18 U.S.C. § 1961(5). In addition, the Supreme Court added a requirement that "the racketeering predicates [be] related, *and* that they amount to or pose a threat of continued criminal activity." *Giuliano v. Fulton*, 399 F.3d 381, 386-87 (1st Cir. 2005) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). The latter requirement is the "continuity" requirement. *Giuliano*, 399 F.3d at 386–87 (citing *Efron*, 223 F.3d at 15). A plaintiff can show continuity through a "closed" approach by proving a "closed period of repeated conduct" that "amounted to . . . continued criminal activity," or through an "open-ended" approach by showing "past conduct that by its nature projects into the future with a threat of repetition." *H.J.*, 492 U.S. at 237, 241. Here, the Complaint states no claim through either approach.

### a. The Complaint Fails to Plead Closed Continuity

Closed continuity is not established where a plaintiff has only alleged a "single, narrow scheme targeting few victims,'" even if the defendants "commit[] numerous crimes" in service of the single scheme. *Home Orthopedics*, 781 F.3d at 530. As the First Circuit has cautioned, "[w]e have 'consistently declined to find continuity where the RICO claim concerns a single, narrow scheme targeting few victims.'" *Id.* (allegation that defendants "sought to accomplish a

specific, narrow mission" with only a "targeted victim" properly held insufficient to allege a closed pattern).

A "single, narrow scheme targeting few victims" is precisely what the Complaint alleges. Specifically, Plaintiffs allege a scheme against them—and only them—designed to silence Plaintiffs' reporting on eBay. *See, e.g.*, ¶ 1 (describing a "coordinated effort to intimidate, threaten to kill, torture, terrorize, stalk and silence the Steiners, in order to stifle their reporting on eBay"); ¶ 57 (describing a "conspiracy to intimidate, threaten, torture, terrorize, stalk and silence David and Ina Steiner with the purpose to end their reporting about eBay"); ¶ 212(a) (quoting the indictment against the Charged Defendants: "[t]he campaign targeted [the Steiners] for their roles in publishing a newsletter that reported on issues of interest to people who sold goods on eBay"); ¶ 266(a) ("the Steiners were the victims [of an alleged conspiracy] with the common purpose of attempting to silence their reporting on eBay").

This narrow scheme against only Plaintiffs is a textbook example of the type of scheme that courts in this Circuit consistently find inadequate to plead a civil RICO claim. For example, in *Home Orthopedics*, defendants sought to extract an illegitimate consulting payment from a medical equipment supplier through a series of criminal acts—including an extortionate threat that the plaintiff-company's president would "bleed drop by drop" unless the company paid. *See* 781 F.3d at 524-26. Despite "numerous crimes" committed to extract the payment, the First Circuit affirmed that plaintiffs failed to allege a pattern under RICO because the "defendants engaged in unlawful conduct for the purpose of accomplishing a singular, narrow goal" with a "targeted victim." *Id.* at 529-30. Similarly, in *Giuliano*, the First Circuit affirmed a finding of no RICO pattern despite an unlawful scheme involving the use of forged signatures because "all of the racketeering activity was focused on the singular objective of wresting control of the

racetrack away from Giuliano."  399 F.3d at 391; *see also ZyXEL Commc'ns, Inc. v. Skyworks Sols., Inc.*, No. CV 19-11573-RGS, 2019 WL 6726398, at *3 (D. Mass. Dec. 11, 2019) (citation omitted) (the First Circuit "'firmly rejects' RICO liability . . . where the alleged racketeering acts . . . comprise a single effort to facilitate a single . . . endeavor.  And this is true no matter how many discrete acts undertaken to accomplish endeavor are alleged.") (no RICO pattern pled for alleged fraudulent sales of inventory).[19]

Moreover, the Complaint's closed-ended continuity allegations fail because "when a plaintiff has only alleged a few predicate acts (*i.e.*, 'sporadic activity'), or when the acts span only a 'few weeks or months,' closed continuity cannot be established."  *Home Orthopedics*, 781 F.3d at 529 (citations omitted).  Here, the alleged activity occurred in a short "span [of] only a few weeks" (*id.* (internal quotes omitted)) in August 2019.  ¶¶ 266(a)(vii).  While Plaintiffs allege a few acts by unidentified eBay employees (none of whom are alleged to be a defendant in this case) in April 2009, May 2012, January 2014, and October 2018 (¶¶ 266(a)(i)–(iv)), long before Wymer's tenure at eBay, these isolated acts are too attenuated to satisfy the "element of relatedness" for RICO's pattern requirement.  *H.J.*, 492 U.S. at 239 (1989); *see also Giuliano*, 399 F.3d at 390 n.7 (a RICO "pattern is not formed by sporadic activity.").

_____

[19] *See also Kenda Corp. v. Pot O' Gold Money Leagues, Inc.*, 329 F.3d 216, 233 (1st Cir. 2003) (scheme to induce plaintiff into "signing away of control of [its] assets and its pool league" insufficient under RICO because "all of these efforts were directed toward one transaction" and there was no "evidence that the defendants had plans to take over another company or pool league in the same fraudulent manner"); *Wade v. Tri-Wire Eng'g Sols., Inc.*, No. CV 20-10523-LTS, 2021 WL 847989, at *2 (D. Mass. Mar. 5, 2021) (citation omitted) ("Wade's allegations that defendants worked together over several months to deprive him of his ownership and leadership of the company fall well short of establishing continuity because he has described only 'a single, narrow scheme targeting few victims'"); *Langan v. Smith*, 312 F. Supp. 3d 201, 208 (D. Mass. 2018) (citation omitted) (a series of bad faith, frivolous litigations designed to "extort" payment from defendants not a RICO pattern because, "[a]t bottom, Plaintiff has alleged that Defendants 'sought to accomplish a specific, narrow mission' . . . [a]s a result, he has failed to plausibly allege continuity for purposes of stating a RICO claim").

### b.　The Complaint Fails to Plead Open Continuity

The Complaint similarly fails to plead "open" continuity. Open continuity requires a plaintiff show a "'threat of'" future criminal activity—that is, 'a realistic prospect of continuity over an open-ended period yet to come.'" *Home Orthopedics*, 781 F.3d at 531 (quoting *Feinstein*, 942 F.2d at 45). To plead this approach, a plaintiff must show that the racketeering acts "'include a specific threat of repetition extending indefinitely into the future [or] . . . are part of an ongoing entity's regular way of doing business." *Id.* (quotations omitted).

Here, the Complaint generically alleges the misconduct was "part of eBay's regular way of doing business" and an "ongoing threat of repetition . . . ." ¶ 266. No facts support these generalized and conclusory assertions. *See Schatz*, 669 F.3d at 55 (courts should "ignore" a "mere[] rehash [of] cause-of-action elements"). Aside from the acts directed at Plaintiffs (which are insufficient under RICO as explained above), the Complaint's only purported support are the assertions that unspecified "eBay executives" somehow "intimidated" an unspecified "YouTube journalist" in unspecified ways, defendant Wenig once texted Wymer that the *Wall Street Journal* "is next on our list," and vague allegations about "culture and hiring practices." ¶ 266(b)(i), (iii) and (iv). But these vague allegations do not include any of the enumerated types of "racketeering activity"—or "predicate acts" (*e.g.*, mail fraud, wire fraud, extortion)—that can be considered in finding a "pattern." *See Efron*, 223 F.3d at 15 (only violations of RICO statute's specified federal laws may be considered in determining whether a "pattern" of racketeering activity exists); *Giuliano*, 399 F.3d at 387 (only the "racketeering acts themselves" are relevant for pattern purposes in alleging open-ended continuity).

In addition, the Complaint does not sufficiently plead a threat of ongoing future racketeering activity that has a "realistic prospect of continuity over an open-ended period yet to come." *Home Orthopedics*, 781 F.3d at 531. The Complaint alleges the conspiracy was for the

benefit of eBay but, as the Complaint reflects, none of the nine individuals alleged to have effectuated the scheme still works for eBay (¶¶ 202-205), and the Complaint does not allege any bad acts in the more than two years since criminal charges were brought (and the accused defendants departed eBay).[20]

Further, "schemes which have a clear and terminable goal have a natural ending point . . . [and] therefore cannot support a finding of any specific threat of continuity that would constitute open-ended continuity." *Efron*, 223 F.3d at 20 (quoting *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 782 (7th Cir. 1994)) (alterations in original) (omission in original). Here, the Complaint pleads "a clear and terminable goal"—namely, "eBay's [alleged] goal of intimidating, threatening, torturing, terrorizing, stalking and silencing the Steiners." ¶ 64; *see also* ¶ 13 ("all actions taken were in furtherance of that goal" "to silence the Steiners and their reporting"). The Complaint alleges this goal was pursued, and alleges no further conduct following the Charged Defendants' terminations in September 2019. Consequently, the alleged scheme came to an "ending point" and is not "open" for open-ended continuity purposes. *Efron*, 223 F.3d at 20; *Giuliano*, 399 F.3d at 391 ("[Complaint] acknowledged that all of the racketeering activity was focused on the singular objective . . . . Once achieved, the illegal scheme, as alleged, would end.").

---

[20] The intra-corporate conspiracy doctrine discussed above is an additional ground on which to dismiss the Complaint's RICO claim. While the First Circuit has not yet weighed in on the circuit split as to whether the doctrine applies to civil RICO (*see United States v. Gurry*, 427 F. Supp. 3d 166, 191 (D. Mass. 2019), *aff'd in part, rev'd in part on other grounds*, *United States v. Simon*, 12 F.4th 1 (1st Cir. 2021)), some Circuit courts have held that it does preclude RICO liability. *See ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179-80 (4th Cir. 2002); *Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 899 (8th Cir. 1999).

### 3. The Complaint Fails to Plead Wymer's Participation in The Alleged Enterprise

For individual liability under RICO, the individual must have "conduct[ed] or participate[d] … in the conduct of" the racketeering "enterprise's affairs." 18 U.S.C. § 1961(c); *see United States v. Ernst*, 502 F. Supp. 3d 637, 661 (D. Mass. 2020). But as explained above, there are simply no factual allegations in the Complaint supporting that Wymer in fact participated in the affairs of the "eBay/PFC Enterprise" (¶ 246). While the Complaint asserts that Wenig and Wymer "identified the Steiners as the target" and "orchestrated and directed all Defendants" (¶ 251), no factual allegations support these bare assertions. *See Penalbert-Rosa*, 631 F.3d at 595 ("threadbare or speculative" allegations should be "isolated and ignored"). For example, the Complaint does not allege any facts that Wymer "participate[d]" in the execution or planning of any of the alleged conduct, such as sending a preserved fetal pig to the Steiners (¶ 87) or installing a GPS device on their car (¶¶ 104-105, 108, 110), or any of the Charged Defendants' other conduct.

### 4. The Complaint Fails to Plead a RICO Conspiracy

The Complaint's "RICO-conspiracy" claim (¶¶ 242, 262) fails for lack of a viable underlying RICO claim as explained above. *Efron*, 223 F.3d at 21. Moreover, to plead a RICO conspiracy under 18 U.S.C. § 1962(d), a plaintiff must allege that "each RICO co-conspirator *knowingly* joined the conspiracy and involved himself or herself, directly or indirectly, in the commission of at least two predicate offenses." *Mani v. United Bank*, 498 F. Supp. 2d 406, 411 (D. Mass. 2007) (emphasis added) (citing *Feinstein*, 942 F.2d at 40). There are simply no factual allegations in the Complaint supporting that Wymer "knowingly" joined a racketeering conspiracy and "involved himself" in committing at least two predicate offenses. The rote recital that "Defendants"—not even Wymer in particular—"knowingly . . . conspired" is insufficient. ¶

265; *Sanchez*, 590 F.3d at 48 (allegations "as to each defendant" must be evaluated on motion to dismiss).

## V.    <u>CONCLUSION</u>

For these reasons, Wymer respectfully submits that all claims asserted against him should be dismissed.

Respectfully submitted,
STEVE WYMER
By His Attorneys,

*/s/ Caz Hashemi*
Caz Hashemi, Esq. (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300
chashemi@wsgr.com


Michael J. Pineault, Esq.
(BBO # 555314)
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
T: +1 617-621-6578
mpineault@andersonkreiger.com


Dated: October 29, 2021