# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

INA STEINER, DAVID STEINER, and
STEINER ASSOCIATES, LLC,

     Plaintiffs,

  v.

EBAY INC., ET AL.,

     Defendants.

CIVIL ACTION NO.: 1:21-CV-11181-DPW

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS BY DEFENDANT BRIAN GILBERT

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

I.      STATEMENT OF FACTS ....................................................................................... 2

II.     LEGAL STANDARD............................................................................................... 4

III.    ARGUMENT ............................................................................................................ 6

        A.      Count Two: Stalking ..................................................................................... 6

        B.      Count Three: Civil RICO ............................................................................. 7

                1.      RICO Standing.................................................................................. 8

                2.      RICO's "Pattern" Requirement........................................................ 9

                3.      Plaintiffs' "Continuity" Allegations ............................................. 10

                        a.      Closed-Ended Continuity.................................................... 10

                        b.      Open-Ended Continuity ...................................................... 13

        C.      Count Four: Massachusetts Civil Rights Act.............................................. 14

        D.      Count Five: Defamation.............................................................................. 17

        E.      Count Six: Trespassing ............................................................................... 19

        F.      Count Seven: False Imprisonment.............................................................. 20

        G.      Count Eight: Vandalism.............................................................................. 21

        H.      Count Ten: Violation of M.G.L. Ch. 93A, § 11......................................... 21

        I.      Count Eleven: Tortious Interference with Business Relations ................... 24

        J.      Count Twelve: Ratification......................................................................... 26

IV.     CONCLUSION....................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
    512 F.3d 46 (1st Cir. 2008) ............................................................................................ 4

*Alharbi v. Theblaze, Inc.*,
    199 F. Supp. 3d 334 (D. Mass. 2016) ........................................................................... 17

*Anderson v. R.J. Reynolds Tobacco Co.*,
    No. CIV.A. 99-11382-GAO, 1999 WL 33944684 (D. Mass. Sept. 20, 1999) ................. 9

*Apparel Art Int'l, Inc. v. Jacobson*,
    967 F.2d 720 (1st Cir. 1992) ............................................................................. 10, 12, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................ 4

*Atl. Acquisitions, LLC v. J.H. Reid Gen. Contractor*,
    909 F. Supp. 2d 32 (D. Mass. 2012) ...................................................................... 10, 12

*Atuahene v. City of Hartford*,
    10 Fed. Appx. 33 (2d Cir. 2001) ............................................................................... 5, 25

*Bagheri v. Galligan*,
    160 Fed. Appx. 4 (1st Cir. 2005) .................................................................................... 5

*Ball v. Wal–Mart*,
    102 F. Supp. 2d 44 (D.Mass.2000) ............................................................................... 20

*Bally v. Ne. Univ.*,
    403 Mass. 713, 532 N.E.2d 49 (1989) .......................................................................... 16

*Barbosa v. Conlon*,
    962 F. Supp. 2d 316 (D. Mass. 2013) ........................................................................... 20

*Batchelder v. Allied Stores Corp.*,
    393 Mass. 819, 473 N.E.2d 1128 (1985) ...................................................................... 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................... 4, 5

*Buster v. Moore*,
    No. CIV. A. 97-637-F, 2000 WL 576363 (Mass. Super. Apr. 28, 2000) ....................... 16

*Calvi v. Knox County*,
    470 F.3d 422 (1st Cir. 2006) ........................................................................................... 5

*Canales v. Gatzunis*,
    979 F. Supp. 2d 164 (D. Mass. 2013) .......................................................... 5, 7

*Cash Energy, Inc. v. Weiner*,
    768 F. Supp. 892 (D. Mass. 1991) ................................................................ 22

*Circiello v. Alfano*,
    612 F. Supp. 2d 111 (D. Mass. 2009) ............................................................ 8

*Cremaldi–Vickery v. Otis Elevator, Inc.*,
    57 Mass. App. Ct. 1105, 2003 WL 168452 (Jan. 24, 2003) (unpub.op.)......... 20

*Diamond Multimedia Sys., Inc. v. Superior Ct.*,
    19 Cal.4th 1036 (1999) ................................................................................... 7

*Doe v. Roe*, 958 F.2d 763
    (7th Cir. 1992)................................................................................................. 8

*Educadores Puertorriqueños en Acción v. Hernández*,
    367 F.3d 61 (1st Cir.2004)............................................................................... 5

*Efron v. Embassy Suites (Puerto Rico), Inc.*,
    223 F.3d 12 (1st Cir. 2000).................................................... 10, 12, 13, 14

*Fed. Ins. Co. v. Boston Water and Sewer Comm'n*,
    583 F. Supp. 2d 225 (D. Mass. 2008) ........................................................... 19

*Feinstein v. Resol. Tr. Corp.*,
    942 F.2d 34 (1st Cir. 1991)........................................................................... 10

*Fine v. Guardian Life Ins. Co. of Am.*,
    No. 3:19-CV-30067-KAR, 2021 WL 916270 (D. Mass. Mar. 10, 2021)......... 5

*Freeman v. Plan. Bd. of W. Boylston*,
    419 Mass. 548 (1995) .................................................................................... 16

*Giuliano v. Fulton*,
    399 F.3d 381 (1st Cir. 2005)......................................................................... 12

*Go-Best Assets Ltd. v. Citizens Bank of Mass.*,
    463 Mass. 50 (2012) ...................................................................................... 19

*Grant v. Target Corp.*,
    126 F. Supp. 3d 183 (D. Mass. 2015) ........................................................... 17

*H.J., Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989)......................................................................................... 9

*Hershenow v. Enter. Rent-A-Car Co. of Bos., Inc.*,
    445 Mass. 790 (2006) ...................................................................... 23

*In re Loestrin 24 Fe Antitrust Litig.*,
    814 F.3d 538 (1st Cir. 2016) .............................................................. 5

*In re TelexFree Sec. Litig.*,
    358 F. Supp. 3d 93 (D. Mass. 2019) ................................................. 22

*Inn Foods, Inc. v. Equitable Co-op. Bank*,
    45 F.3d 594 (1st Cir. 1995) ............................................................... 26

*Joe Hand Promotions, Inc. v. Rajan*,
    No. 10-40029-TSH, 2011 WL 3295424 (D. Mass. July 28, 2011) ................. 23

*John Boyd Co. v. Bos. Gas Co.*,
    775 F. Supp. 435 (D. Mass. 1991) .................................................... 22

*Kader v. Sarepta Therapeutics, Inc.*,
    887 F.3d 48 (1st Cir. 2018) ................................................................ 4

*Korb v. Raytheon Corp.*,
    410 Mass. 581 (1991) ...................................................................... 15

*Kuney Int'l S.A. v. DiIanni*,
    746 F. Supp. 234 (D. Mass. 1990) .................................................... 6

*L.B. Corp. v. Schweitzer-Mauduit Int'l, Inc.*,
    121 F. Supp. 2d 147 (D. Mass. 2000) .............................................. 22

*Langan v. Smith*,
    312 F. Supp. 3d 201 (D. Mass. 2018) ............................................... 14

*Libertad v. Welch*,
    53 F.3d 428 (1st Cir. 1995) ............................................................... 8

*Linkage Corp. v. Trustees of Bos. Univ.*,
    425 Mass. 1 (1997) ......................................................................... 26

*Mani v. United Bank*,
    498 F. Supp. 2d 406 (D. Mass. 2007) .............................................. 14

*McCann v. Wal–Mart Stores, Inc.*,
    210 F.3d 51 (1st Cir. 2000) ............................................................... 20

*Mehta v. Ocular Therapeutix, Inc.*,
    955 F.3d 194 (1st Cir. 2020) .............................................................. 4

*Moore v. Eli Lilly & Co.*,
    626 F. Supp. 365 (D. Mass. 1986) ................................................................. 8

*Natale v. Espy Corp.*,
    2 F. Supp. 3d 93 (D. Mass. 2014) ................................................................. 12

*New England Box Co. v. C&R Constr. Co.*,
    313 Mass. 696 (1943) ................................................................................... 19

*O'Neil v. Daimlerchrysler Corp.*,
    538 F. Supp. 2d 304 (D. Mass. 2008) ................................................... 20, 21

*Ortiz v. Hampden County*,
    16 Mass. App. Ct. 138 (1983) ...................................................................... 20

*Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B.*,
    62 Mass. App. Ct. 34 (2004) ........................................................................ 24

*Piccone v. Bartels*,
    785 F.3d 766 (1st Cir. 2015) ........................................................................ 18

*Planned Parenthood League of Mass., Inc. v. Blake*,
    417 Mass. 467 (1994) ............................................................................ 15, 16

*Ravnikar v. Bogojavlensky*,
    438 Mass. 627 (2003) ................................................................................... 17

*Redgrave v. Bos. Symphony Orchestra, Inc.*,
    855 F.2d 888 (1st Cir. 1988) ........................................................................ 15

*Roeder v. Alpha Indus., Inc.*,
    814 F.2d 22 (1st Cir. 1987) .......................................................................... 14

*Rojas-Buscaglia v. Taburno-Vasarely*,
    39 F. Supp. 3d 208 (D.P.R. 2014) ............................................................... 14

*Sarvis v. Boston Safe Deposit & Trust Co.*,
    47 Mass. App. Ct. 86 (1999) ....................................................................... 20

*Sebago, Inc. v. Beazer E., Inc.*,
    18 F. Supp. 2d 70 (D. Mass. 1998) ............................................................... 6

*Shay v. Walters*,
    702 F.3d 76 (1st Cir. 2012) .......................................................................... 17

*Sietins v. Joseph*,
    238 F. Supp. 2d 366 (D. Mass. 2003) .......................................................... 20

*Singh v. Blue Cross/Blue Shield of Mass., Inc.*,
 308 F.3d 25 (1st Cir. 2002)..........................................................................24

*Sires v. Hefferman*,
 No. CA 10-11993-MLW, 2011 WL 2516093 (D. Mass. June 21, 2011) ................ *passim*

*Standard Reg. Co. v. Bolton-Emerson, Inc.*,
 38 Mass. App. Ct. 545 (1995)......................................................................23

*Swanset Dev. Corp. v. City of Taunton*,
 423 Mass. 390 (1996) .................................................................................24

*Sys. Mgmt., Inc. v. Loiselle*,
 303 F.3d 100 (1st Cir. 2002)..........................................................................9

*Tech Plus, Inc. v. Ansel*,
 59 Mass. App. Ct. 12 (2003)........................................................................23

*Thunder Studios, Inc. v. Kazal*,
 13 F.4th 736 (9th Cir. 2021) ...........................................................................7

*U1it4less, Inc. v. Fedex Corp.*,
 871 F.3d 199 (2d Cir. 2017)...........................................................................7

*United Truck Leasing Corp. v. Geltman*,
 406 Mass. 811 (1990) .................................................................................24

*Walsh v. TelTech Sys., Inc.*,
 821 F.3d 155 (1st Cir. 2016).........................................................................22

*Wax v. McGrath*,
 255 Mass. 340 (1926) .................................................................................20

**Statutes**

18 U.S.C.
 § 1341...........................................................................................................5, 8
 § 1343...........................................................................................................5, 8
 § 1962..............................................................................................................7
 § 1964..............................................................................................................7

42 U.S.C. § 1983 ...................................................................................................15

Cal Civ. Code
 § 1708.7...........................................................................................................6
 § 1708.7(a)(3) ..................................................................................................7

Mass. Gen. L.
    ch. 12, § 11H ................................................................................................. 15
    ch. 93A, § 9 ................................................................................................... 23
    ch. 93A, § 11 ........................................................................................... 21, 23
    ch. 265, § 43 .................................................................................................... 6
    ch. 266, § 126A ............................................................................................. 21

## Other Authorities

Fed. R. Civ. P.
    Rule 8 ................................................................................................ 1, 4, 17
    Rule 8(a)(2) ...................................................................................................... 1
    Rule 9(b) ................................................................................................ 5, 7, 12
    Rule 12(b)(6) ............................................................................................ 5, 26

Restatement (Second) of Conflict of Laws § 145 (1971) ............................................. 7

Restatement (Second) of Torts § 35 (1965) ............................................................... 20

Restatement (Second) of Torts § 40 cmt. b (2021 update) ........................................ 21

## INTRODUCTION

The Complaint in this case names eleven separate defendants.  It asserts twelve different claims against each of them.  The case thus entails 132 separate causes of action.  These claims are set out across a 92-page pleading encompassing 366 paragraphs.  Despite its girth, however, the Complaint is grossly defective.  Mostly, it sets forth shotgun allegations about what "Defendants" did, without bothering to distinguish between the acts of the many defendants, let alone articulating a factual basis for the specific claims asserted against each of them.

The sheer volume of Plaintiffs' Complaint should not be confused for adequate pleading. Rule 8 requires a "short and plain statement" of each claim, as well as actual facts (not conclusions or mere recitations of claim elements) demonstrating a plaintiff's entitlement to relief.  Fed. R. Civ. P. 8(a)(2).  "To provide the notice required under Rule 8(a), a plaintiff cannot 'lump' defendants together when it cannot be reasonably inferred that all of the defendants were involved in the alleged misconduct, or it is otherwise not clear to which defendant or defendants the plaintiff is referring." *Sires v. Hefferman*, No. CA 10-11993-MLW, 2011 WL 2516093, at *5 (D. Mass. June 21, 2011).

Plaintiffs have failed to satisfy their pleading obligations here, for despite the volume of their Complaint, in most instances it does not set forth allegations sufficient to sustain the specific claims asserted against the individual defendants, including against Defendant Brian Gilbert. As set forth below, Gilbert requests that the Court dismiss Counts Two, Three, Four, Five, Six, Seven, Eight, Ten, Eleven, and Twelve, as each of these counts fails adequately to state a viable cause of action as to him.

## I.      STATEMENT OF FACTS

The Complaint's 366 paragraphs of allegations are summarized in relevant part here and, for purposes of this motion, are assumed to be true—even though many are not true, some are demonstrably false, and some are contradicted by the very sources upon which Plaintiffs rely.

Plaintiffs Ina and David Steiner are a married couple who operate a "trade publication" called "EcommerceBytes."  Compl. ¶ 2.  Their publication reports on "ecommerce companies, including eBay."  *Id.*  Plaintiffs claim that eBay and certain individuals associated with that company engaged in a "coordinated effort to intimidate, threaten to kill, torture, terrorize, stalk and silence [them] in order to stifle their reporting on eBay."  *Id.* ¶ 1.

Defendant Brian Gilbert is alleged to have been one of the people who participated in eBay's unlawful "conspiracy."  He is alleged to have acted at all relevant times within the scope of his employment eBay. *Id.* ¶ 56.

The exact conduct for which Plaintiffs seek to hold Gilbert individually liable, however, is unclear.  This is because the Complaint does not actually or adequately allege what Gilbert— as opposed to the other ten Defendants—did.  Instead, the Complaint repeatedly and inappropriately describes conduct undertaken by "Defendants," without specifying which of the eleven separate actors were responsible for the actions underlying each individual claim that is asserted against Gilbert.  In other words, Plaintiffs plead their claims as though the conduct described in the Complaint was that of a single indivisible actor, as opposed to eleven separate defendants who have been separately sued.

The Complaint contains only the following limited allegations with respect to Gilbert:

Gilbert is citizen of California, a resident of San Jose, and a former employee of eBay. *Id.* ¶¶ 17, 30, 202. He is a former police captain and, during the relevant period, was "Senior

Manager of Special Operations for eBay's Global Security Team." *Id.* ¶ 30. Gilbert took directions from eBay management and reported to the head of eBay's security and operations team. *Id.* ¶¶ 37, 133. All of the acts attributed by the Complaint to Gilbert were done "in the scope of [his] employment under the authority of and for the benefit of eBay." *Id.* ¶ 4.

Gilbert's specific contribution to the alleged conspiracy among eBay agents is described in Paragraph 256 of the Complaint, which states:

> Defendant Gilbert's role was to assist in threatening, harassing and intimidating the Steiners through online threats, and deliveries to their home. Once the NPD detected the eBay/PFC Enterprise, Defendant Gilbert directed others to fabricate persons of interest, and to create a fake dossier dubbing the Steiners as a threat. Defendant Gilbert also travelled to Massachusetts to provide false information to Natick police officers, and attempt to thwart their investigation. Defendant Gilbert, a prior police captain, used his prior law enforcement experience, skills and training to assist with the planning, conspiring and cover-up of the conspiracy.

Beyond this single paragraph, the Complaint alleges the following specific actions by Gilbert:

- Gilbert incorrectly believed there was a relationship between Plaintiffs and an individual known by the handle "Fidomaster," who had expressed "negative opinions regarding eBay" in the comments section of Plaintiffs' online trade publication. *Id.* ¶¶ 48, 50. Gilbert allegedly flew from California to Massachusetts, went to the Gilberts' house, and "scrawled the word 'FIDOMASTER' on their fence." *Id.* ¶ 54.

- Gilbert "began reconnaissance" into Plaintiffs' lives, which included "attending a yard sale" at their home and "falsely posing as a potential buyer." *Id.* ¶ 55.

- When Plaintiffs made reports to the Natick Police Department ("NPD"), Gilbert allegedly acted to "conceal" the wrongdoing of other Defendants and divert the NPD investigation. He allegedly participated in email exchanges about the idea of providing "dossiers" to NPD to make Plaintiffs "look crazy." *Id.* ¶ 159-161. He proposed deflecting the attention of the NPD back onto the Steiners to "make them look like the problem," or alternatively, proposed concocting a "person of interest" for the NPD to pursue in San Jose, allegedly to deflect attention from eBay. *Id.* ¶¶ 164-170. Further, he allegedly attempted to link certain actions taken by other Defendants to fictional Twitter users. *Id.* ¶¶ 150, 151. He also traveled to Natick to meet with NPD officers to "cover up" the conspiracy. *Id.* ¶¶ 178-181. Further, he telephoned Ina Steiner and offered to help her with her complaints to the NPD. *Id.* ¶¶ 187-188.

3

Beyond these specific allegations about his own conduct, the Complaint simply lumps Gilbert in with the rest of the Defendants.  For example, "Defendants" allegedly drafted and sent anonymous and threatening messages to Plaintiffs, supposedly "approved" but not actually authored or sent by several other Defendants, including Gilbert.  *Id.* ¶ 79.  Similarly, "Defendants" made a "steady stream of threatening and disturbing deliveries" to Plaintiffs, and while Gilbert is one of numerous persons who acknowledged that these deliveries occurred, he is not alleged to have directed or made any of them, nor is his supposed "assistance" described with any specific supporting facts.  *Id.* ¶¶ 86, 91.

Finally, in boilerplate language appended to each of the causes of action in the Complaint, Plaintiffs group Gilbert together with all other Defendants, and Plaintiffs assert that "aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants."  *E.g., id.* ¶ 229.  This aiding-and-abetting hook is, apparently, the method by which Plaintiffs hope to escape the requirement of Rule 8 and to pin liability on all eleven individual defendants based on the acts of any of the others.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter … to state a claim to relief that is plausible on its face."  *Mehta v. Ocular Therapeutix, Inc.*, 955 F.3d 194, 205–06 (1st Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted)).  In determining whether a complaint is adequately pled, a district court must "accept well-pleaded factual allegations in the complaint as true and view all reasonable inferences in the plaintiffs' favor."  *Id.* (quoting *Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 56 (1st Cir. 2018) (quoting *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008)) (internal

quotation marks omitted)).  The standard on a Rule 12(b)(6) motion is lenient, but substantive: a complaint "must provide 'more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do.'" *In re Loestrin 24 Fe Antitrust Litig.*, 814 F.3d 538, 549 (1st Cir. 2016) (quoting *Twombly*, 550 U.S. at 555).

"In a multiple defendant case, each defendant's acts must be isolated and analyzed separately under Rule 12(b)(6)." *Fine v. Guardian Life Ins. Co. of Am.*, No. 3:19-CV-30067-KAR, 2021 WL 916270, at *3 (D. Mass. Mar. 10, 2021).  "At a minimum, the complaint must 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Sires*, 2011 WL 2516093, at *4 (quoting *Calvi v. Knox County*, 470 F.3d 422, 430 (1st Cir. 2006) (quoting *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 66 (1st Cir.2004))). "This means that the statement of the claim must 'at least set forth minimal facts as to who did what to whom, when, where, and why.'" *Id.* (quoting *Calvi*, 470 F.3d at 430 (quoting *Educadores*, 367 F.3d at 68)).  A complaint is not adequately pled, and is subject to dismissal, if it asserts claims by "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct."  *Id.* (quoting *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001)).  *Accord Canales v. Gatzunis*, 979 F. Supp. 2d 164, 170 (D. Mass. 2013) ("[T]o satisfy the minimal requirements of notice pleading, a plaintiff cannot 'lump' multiple defendants together and must 'state clearly which defendant or defendants committed each of the alleged wrongful acts.'" (quoting *Bagheri v. Galligan*, 160 Fed. Appx. 4, 5 (1st Cir. 2005))).

Further, a heightened pleading standard applies to claims pled under RICO that involve predicates of mail or wire fraud, as Plaintiffs' Complaint here does.  *See* Compl. ¶ 249 (citing 18 U.S.C. §§ 1341, 1343).  Such claims are subject to the "particularity requirement" of Rule 9(b), which demands that a plaintiff allege in detail the "time, place, and content of an alleged false

representation" and "that fraud be alleged particularly *as to each defendant*." *Sebago, Inc. v. Beazer E., Inc.*, 18 F. Supp. 2d 70, 79 (D. Mass. 1998) (citing *Kuney Int'l S.A. v. DiIanni*, 746 F. Supp. 234, 237 (D. Mass. 1990) (emphasis added)).

## III.   ARGUMENT

By this motion, Gilbert seeks dismissal of only a subset of the claims pled against him. Specifically, for purposes of this motion, Gilbert does not challenge the adequacy of Plaintiff's pleading with respect to Count One (intentional infliction of emotional distress) or Count Nine (civil conspiracy).  The remaining causes of action—Counts Two, Three, Four, Five, Six, Seven, Eight, Ten, Eleven, and Twelve—are not adequately pled against Gilbert and must be dismissed.

### A.    Count Two: Stalking

Under Massachusetts law, "stalking" is not a valid civil claim.  It is a crime.  The crime of stalking is defined in Chapter 265 of the Massachusetts General Laws ("Crimes Against Persons") as the willful or malicious engagement in a knowing pattern of conduct or series of acts over a period of time, directed at a specific person, which seriously alarms or annoys that person and would cause a reasonable person to suffer substantial emotional distress.  Mass. Gen. Laws ch. 265, § 43. The Massachusetts legislature has not written the stalking statute to afford a private right of action. So, to the extent it is asserted under Massachusetts law, Count Two must be dismissed.

The Complaint indicates that Plaintiffs are pursuing their claim for "stalking" under California law.  *See* Compl. ¶ 231 (citing Cal. Civ. Code § 1708.7).  But a stalking claim under California law fails for three reasons.  First, the Complaint does not describe any conduct *by Gilbert* that falls within California's civil stalking statute.  Specifically, the Complaint does not allege that Gilbert ever "violated a restraining order," and it does not allege that he individually

ever "made a credible threat" against Plaintiffs with either "intent to place [Plaintiffs] in reasonable fear for [their] safety" or "reckless disregard for [their] safety." Cal Civ. Code § 1708.7(a)(3).  To the extent that the Complaint would simply "lump" Gilbert in with other Defendants, it fails to state a claim for stalking against him.  *Canales*, 979 F. Supp. 2d at 170; *Sires*, 2011 WL 2516093, at *4.  Second, the Complaint contains no allegations that Plaintiffs were in California at any relevant time while they were allegedly stalked, and California's stalking law does not apply extraterritorially to protect residents of Massachusetts.  *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743 (9th Cir. 2021) (citing *Diamond Multimedia Sys., Inc. v. Superior Ct.*, 19 Cal.4th 1036, 1059 n.20 (1999)).  Third, even if California's Civil Code could be construed to apply extraterritorially, choice of law principles dictate that Massachusetts law must govern any claim of stalking in this case, because the conduct supporting Plaintiffs' claim occurred in that jurisdiction.  Restatement (Second) of Conflict of Laws § 145 (1971); *see also* Compl. ¶¶ 96-97, 102, 110-113.

## B.      Count Three: Civil RICO

Plaintiffs' claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") suffers from numerous defects.  Gilbert joins and endorses the arguments made by other Defendants about Plaintiffs' failure to allege predicate offenses with adequate specificity under Rule 9(b) and the lack of an actual "enterprise."  *See, e.g.*, Dkt. No. 79-1 at 10-15.[1]  This

---

[1] Plaintiffs' RICO claim is deficient insofar as it alleges the existence of an "enterprise" comprising eBay and its own employees and agents. *See U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 206 (2d Cir. 2017) ("[A] plaintiff may not circumvent the distinctness requirement by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant . . . that consists, in other words, of a corporate defendant corrupting itself." (quotation marks and citations omitted)).  And Plaintiffs' pleading of predicate offense is woefully inadequate: as the principal thrust of their RICO theory, Plaintiffs cite purported instances of mail and wire fraud as predicate offenses of their RICO claim, but their Complaint describes a variety of actions—*e.g.* mailing pornographic

motion focuses on two specific and glaring defects with Plaintiffs' RICO claim, namely, that the Complaint does not establish Plaintiffs' standing to bring a RICO claim and does not plead a "pattern" of racketeering activity.

### 1.     RICO Standing

To establish standing as a RICO plaintiff, a complaint must allege an injury to "business or property." *Circiello v. Alfano*, 612 F. Supp. 2d 111, 114 (D. Mass. 2009) (citing *Libertad v. Welch*, 53 F.3d 428, 436 (1st Cir. 1995)).  An allegation of personal or emotional injury does not suffice.  *Id.* at 114-15 (collecting cases); *see also Moore v. Eli Lilly & Co.*, 626 F. Supp. 365, 366 (D. Mass. 1986) ("If Congress had intended that the rights and remedies established by RICO be available in every personal injury action involving financial loss, it could easily have enacted a statute referring to 'injury' generally or have referred expressly to injury to 'persons' in addition to injury to 'business or property.'").

Here, Plaintiffs do not allege injury sufficient to confer standing under the RICO statute. The Complaint states that Plaintiffs "feared for their lives" and were thereby "hampered [in] their ability to continue at the same level"—that is, they became less productive.  Compl. ¶ 276.  They claim that, in turn, "EcommerceBytes revenue has decreased."  *Id.*  Plaintiffs also allege damage to their "reputation and good will" and unspecified harm to their relationships with writers, advertisers and sources because they have become "suspicious" of others.  *Id.* ¶¶ 277-278.  The supposedly economic injuries described by the Complaint "are plainly derivatives of her emotional distress—and therefore reflect personal injuries which are not compensable under RICO."  *Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992); *see also Anderson v. R.J. Reynolds*

---

magazines, a bloody pig mask, and a book, Compl. ¶ 267(b), or creating pseudonymous social media profiles, *id.* ¶ 267(c)—that simply are not criminal offenses under 18 U.S.C. section 1341 or 1343.

*Tobacco Co.*, No. CIV.A. 99-11382-GAO, 1999 WL 33944684, at *2 (D. Mass. Sept. 20, 1999) ("RICO does not provide a cause of action for personal injury or economic injury deriving from personal injury.").

### 2.    RICO's "Pattern" Requirement

The "pattern" element of a RICO claim is the critical test by which federal courts distinguish "a single narrow criminal episode"—"even if that single episode involves behavior that amounts to several crimes"—from genuine RICO conspiracies and racketeering enterprises. *Sys. Mgmt., Inc. v. Loiselle*, 303 F.3d 100, 105 (1st Cir. 2002).  To plead a RICO claim properly, a plaintiff must allege "more than just a multiplicity of racketeering predicates."  *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989).  Instead, RICO requires a plaintiff to allege repeated criminal acts by the defendants that are both "related" and "continuous" in nature.  *Id.* As the Supreme Court has explained: "RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of *continued criminal activity*."  *Id.* at 239 (emphasis added). This continuity requirement reflects Congress' concern about eradicating "long-term criminal conduct," not providing treble damages and attorneys' fees to plaintiffs seeking redress for episodic wrongdoing.  *Id.* at 242.

Under RICO, a plaintiff may plead RICO's "continuity" requirement as either "open-ended" or "closed-ended."  *Id.*  Closed-ended continuity is established by a series of related predicate acts committed over a substantial period of time.  *Id.* at 241-42. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement . . . ."  *Id.*  Open-ended continuity involves conduct that by its nature projects into the future with a threat of repetition.  *Id.* at 241-42.  It requires proof of "a specific threat of

repetition extending indefinitely into the future" or that the predicate acts are "part of an ongoing entity's regular way of doing business." *Id.* at 242.

In applying the continuity requirement, the First Circuit and the District of Massachusetts have repeatedly dismissed RICO claims where, as here, a complaint alleges only a single scheme that was perpetrated upon a single cohort of victims, and where the alleged scheme occurred over a brief period of time and has long since ended. *See, e.g.*, *Apparel Art Int'l, Inc. v. Jacobson*, 967 F.2d 720, 723 (1st Cir. 1992) (citing *Feinstein v. Resol. Tr. Corp.*, 942 F.2d 34, 44 (1st Cir. 1991)); *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 21 (1st Cir. 2000); *Atl. Acquisitions, LLC v. J.H. Reid Gen. Contractor*, 909 F. Supp. 2d 32, 36 (D. Mass. 2012).

### 3.   Plaintiffs' "Continuity" Allegations

Plaintiffs' Complaint aspires to meet RICO's continuity requirement in two specific paragraphs—Paragraph 266(a), which attempts to allege "closed-ended" continuity, and Paragraph 266(b), which attempts to allege opening-ended continuity.  Neither paragraph alleges "continuity" adequately to sustain a claim under RICO.

### a.   Closed-Ended Continuity

Regarding closed-ended continuity, Paragraph 266(a) makes clear that the entire purported pattern of racketeering activity occurred principally over a three-week period in August 2019, and, even construing the Complaint with extreme liberality in Plaintiffs' favor, involved conduct that lasted no more than roughly five months.  The Complaint identifies no victims other than Plaintiffs, and it does not articulate a scheme to accomplish anything other

than the singular objective of intimidating or silencing Plaintiffs.  This limited "pattern" is fatal to Plaintiffs' RICO claim.

Specifically, the Complaint alleges that a meeting occurred in the "spring of 2019" where eBay personnel discussed "sending a fake threatening letter" to Plaintiffs (though there is no allegation that the letter was actually sent).  Compl. ¶¶ 51, 266(a)(v).  The Complaint then details a series of actions allegedly taken by eBay personnel over the course of June, July, and August 2019.  *Id.* ¶ 266(a)(vi)-(vii); *see also id.* ¶¶ 54-200.  The Complaint alleges that most of the individual defendants in this case, including Gilbert, were fired in September 2019.  *Id.* ¶ 202.

The Complaint contains no allegations that any racketeering activity occurred either *before* spring 2019 or *after* September 2019.  *Id.* ¶ 266(a).  Plaintiffs struggle in vain to expand the scope of the alleged RICO conspiracy beyond this limited five-month timeframe.  For example, Plaintiffs' kitchen-sink Complaint asserts (i) that in April 2009 an eBay employee "wrote criticizing remarks in the EcommerceBytes comments section," *id.* ¶ 266(a)(i); (ii) that in May 2012 an eBay employee "falsely reported EcommerceBytes as a phishing website," *id.* ¶ 266(a)(ii); (iii) that in January 2014 an eBay employee posed as a "EcommerceBytes user" and "attacked a long-standing user of the website" via a written comment in an online forum, *id.* ¶ 266(a)(iii); and (iv) that in October 2018 an eBay employee anonymously made "derogatory comments" toward users of the website, *id.* ¶ 266(a)(iv).  But *none* of these allegations comes close to alleging a "pattern" of racketeering activity, for none of those allegations involves predicate criminal offenses.  And certainly none of them pleads "wire fraud"—the supposed offense committed by engaging in pseudonymous online commentary—with the specificity

required under Rule 9(b).  Accordingly, these allegations do not suffice to establish continuity within the meaning of the RICO statute.

Significantly, none of Plaintiffs' closed-ended allegations suggest a pattern of racketeering activity that extends beyond Plaintiffs and their EcommerceBytes publication.  No other victims are identified.  No "scheme" other than the one to deter Plaintiffs' from reporting negatively on eBay is identified.

Such allegations are inadequate to establish closed-ended continuity under RICO.  In *Efron v. Embassy Suites*, the First Circuit explained that a "a single effort, over a finite period of time," extending only to a "limited number of [victims]" is not "the kind of broad or ongoing criminal behavior at which the RICO statute was aimed."  223 F.3d at 18-20.  Numerous First Circuit and District of Massachusetts cases are in accord.  For example, in *Apparel Art International*, Chief Judge Breyer wrote that a case involving "several instances of criminal behavior" occurring over a "comparatively short period" of several months and involving a "single" objective was not a RICO conspiracy, but more appropriately described as "separate parts of a single criminal episode."  967 F.2d at 723.  *Accord Giuliano v. Fulton*, 399 F.3d 381, 390 (1st Cir. 2005) (collecting cases and holding that "the commission of 16 predicate acts over a six-month period is inadequate to establish a closed-ended pattern of racketeering activity"); *Natale v. Espy Corp.*, 2 F. Supp. 3d 93, 102 (D. Mass. 2014) (affirming dismissal where "complaint alleges a single scheme, aimed at a single victim, with a single goal") ); *Atl. Acquisitions, LLC v. J.H. Reid Gen. Contractor*, 909 F. Supp. 2d 32, 36 (D. Mass. 2012) (dismissing RICO claim based on weekly acts of wire fraud occurring over nine months, but where "acts were narrowly tailored to a single scheme with a singular objective" and "involved only two victims").  Under First Circuit precedent, the claimed scheme in this case is not a close

12

call.  As in *Atlantic Acquisitions*, this case "falls squarely in the *Loiselle*, *Efron*, and *Apparel Art*

line of cases rejecting closed-ended continuity."  909 F. Supp. 2d at 36.

### b.      Open-Ended Continuity

Regarding open-ended continuity, Paragraph 266(b) purports to set forth allegations

showing that criminal racketeering activity is "part of eBay's regular way of doing business."

Compl. ¶ 266(b).  But the actual facts asserted in support of this theory fall far short of the mark.

Setting aside allegations specifically involving eBay's conduct vis-à-vis Plaintiffs, the Complaint

alleges the following: (i) in October 2018 eBay executives "intimidated a YouTube journalist

into removing a negative YouTube video about the company," *id.* ¶ 266(b)(i); and (ii) in April

2019 the *Wall Street Journal* published an article discussing the compensation of eBay's CEO,

and Plaintiffs allege "[o]n information and belief" that Defendants engaged in unspecified

conspiratorial acts to "attack" the *Journal* in unspecified ways that are not actually alleged to

have been carried out or caused anyone harm, *id.* ¶ 266(b)(iii).  Beyond this, Plaintiffs make a

series of disparaging allegations about the "culture" at eBay—for example, that its security

personnel have training in law enforcement tactics and "blindly follow orders"; that the security

division "suffers from an enormously high turnover rate"; and that its employees have "readily

available access to IP addresses and servers" (which is to say that they own computers).  *Id.* ¶¶

266(b)(iv)-(vii).  All of these facts are asserted by Plaintiffs supposedly to show that eBay's

"way of doing business" is to "conspire against other reporters."  *Id.* ¶ 266(b)(vii). But none of

this gets Plaintiffs anywhere near establishing "open-ended continuity" for purposes of RICO.

The exclusive gravamen of the Complaint is that eBay engaged in a campaign "to

intimidate, threaten, torture, terrorize, stalk and silence" Plaintiffs.  Compl. ¶ 14.  "There is no

suggestion that defendants used similar means" with respect to any other victims.  *Roeder v.*

*Alpha Indus., Inc.*, 814 F.2d 22, 31 (1st Cir. 1987).  This "scheme" clearly ended in September

2019 with the firing of most of the individual employees allegedly involved and the departure of

eBay's chief executive.  *Id.* ¶¶ 202, 204-205.  The Complaint contains no allegation of any

racketeering conduct beyond September 2019, and it alleges no facts to suggest a credible risk

that eBay's allegedly unlawful campaign might continue "indefinitely into the future" or that

eBay would "seek to repeat their [conduct] in other … similar business settings."  *Efron*, 223

F.3d at 19.  In a transparent attempt to manufacture open-ended continuity where none exists,

Plaintiffs describe eBay's supposed displeasure with a single YouTube video and the *Wall Street*

*Journal*.  But tellingly, those allegations are unaccompanied by allegations of criminal conduct,

and they do not establish that Defendants were engaged in a wide-ranging scheme to stalk and

silence journalists through a repertoire of criminal acts.  A mere "bare assertion" or "passing

attempt" to suggest an inchoate risk of repeated criminal conduct in the future "is not sufficient

to establish the sort of genuine threat of ongoing criminality that the 'open-ended' test requires."

*Langan v. Smith*, 312 F. Supp. 3d 201, 207 (D. Mass. 2018).  Accordingly, Plaintiffs have failed

to allege open-ended continuity.  *Mani v. United Bank*, 498 F. Supp. 2d 406, 412 (D. Mass.

2007) (no open-ended continuity based on bank's allegedly fraudulent scheme to take her home);

*see also Rojas-Buscaglia v. Taburno-Vasarely*, 39 F. Supp. 3d 208, 215 (D.P.R. 2014)

(collecting First Circuit cases rejecting open-ended continuity claims against "legitimate

business[es]" such as eBay).

### C.      Count Four: Massachusetts Civil Rights Act

Plaintiffs' claim under the Massachusetts Civil Rights Act ("MCRA") is subject to

dismissal because it does not allege—as to any of the Defendants, let alone as to Gilbert

specifically—that Defendants' conduct involved "*an actual or potential physical confrontation*

accompanied by a threat of harm," which is "an element of MCRA claims." *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 473 (1994) (emphasis added).

The MCRA is an "unusual statute." *Redgrave v. Bos. Symphony Orchestra, Inc.*, 855 F.2d 888, 904 (1st Cir. 1988) (en banc). Enacted to safeguard civil liberties, the MCRA provides for a private right of action against anyone who "interfere[s]" or "attempt[s] to interfere" with "rights secured by the constitution or laws" of the United States or the Commonwealth. Mass. Gen. Laws ch. 12, § 11H. With respect to the constitutional interests it protects, the MCRA is thus "coextensive with 42 U.S.C. § 1983." *Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 823, 473 N.E.2d 1128, 1131 (1985). In contrast to Section 1983, however, the MCRA provides that a defendant may be sued for constitutional interference "whether or not acting under color of law." Mass. Gen. Laws ch. 12, § 11H. Thus, MCRA claims may be asserted against private as well as governmental actors. *Redgrave*, 855 F.2d at 904.[2] Also, unlike Section 1983, the MCRA provides that a constitutional injury is actionable only if it occurs through "threats, intimidation or coercion." Mass. Gen. Laws ch. 12, § 11H.

In interpreting the MCRA, Massachusetts courts have held, based on the "threats, intimidation or coercion" clause, that the statute applies only when a constitutional injury stems

---

[2] For purposes of this motion, Gilbert assumes that the constitutional right alleged to be at issue—Plaintiffs' right to free expression under the First Amendment and Article 16 of the Massachusetts Declaration of Rights, Compl. ¶ 286—may support a claim against a private actor under the MCRA, and that Plaintiffs' publication of EcommerceBytes constitutes an exercise of such rights. Still, as the First Circuit has noted, the logic of the MCRA is "strained" where the constitutional right at issue is "the plaintiff's 'right' to free speech." *Redgrave*, 855 F.2d at 904. In this context, freedom of speech "traditionally has content only in relation to state action," for the right "is to be free of state regulation, so that all private speech is formally on equal footing as a legal matter." *Id.* (emphasis added). For this reason, courts applying the MCRA have tended to interpret the statute narrowly when evaluating claims for interference with free speech rights by private actors. *See id.* (no liability where symphony orchestra refused to perform with actor following her exercise of free speech rights); *Korb v. Raytheon Corp.*, 410 Mass. 581, 585 (1991) ("no improper interference with secured rights" occurs "when an employer fires an at-will employee" in response to exercise of free speech rights).

from "an actual or potential physical confrontation accompanied by a threat of harm." *Buster v. Moore*, No. CIV. A. 97-637-F, 2000 WL 576363, at *22 (Mass. Super. Apr. 28, 2000) (citing *Blake*, 417 Mass. at 473). A physical confrontation is thus "an essential element of a claim under the Act." *Id.* As Massachusetts courts have explained, the physical confrontation requirement is necessary to circumscribe the otherwise potentially limitless reach of the MCRA:

> The fact of the matter is that, unless the Act is limited in scope to those interferences of secured rights involving an actual or potential physical confrontation accompanied by a threat of harm, it will be limited only by some judicial variant of "I know it when I see it." Since so much conduct falls within the rubric of "rights secured by the constitution or laws" of the United States and Commonwealth, and since the reach of the Act is not limited to state action, and since so much that persons do may affect the economic position of others, interpreting the Act to include economic coercion will render the Act nearly boundless in its reach. *Limiting the Act to actual or potential physical confrontations accompanied by a threat of harm reflects what the Legislature thought it was enacting in 1979* and is necessary to prevent that legislation from becoming "a vast constitutional [and statutory] tort."

*Id.* at *23 (quoting *Freeman v. Plan. Bd. of W. Boylston*, 419 Mass. 548, 565 (1995) and citing *Bally v. Ne. Univ.*, 403 Mass. 713, 718, 532 N.E.2d 49, 52 (1989)) (emphasis added).

Here, Plaintiffs allege no "actual or potential physical confrontation" with Gilbert. To the contrary, they allege only limited interactions with him, always non-physical and non-confrontational. Specifically, the Complaint asserts that Gilbert (i) scrawled graffiti on Plaintiffs' fence, Compl. ¶ 54; (ii) attended a yard sale at their house while "falsely posing as a potential buyer," *id.* ¶ 55; and (iii) called Ina Steiner to offer to help with her complaints to the police, *id.* ¶¶ 187-188. None of these allegations involves an "actual or potential physical confrontation," and the Complaint alleges no other interaction between Plaintiffs and Gilbert. So Plaintiffs' MCRA claim against him must be dismissed. *Buster*, 2000 WL 576363, at *22; *Blake*, 417 Mass. at 473.

16

### D.    Count Five: Defamation

"To establish a defamation claim under Massachusetts law, a plaintiff must allege four elements: '(1) that the defendant made a statement, concerning the plaintiff, to a third party; (2) that the statement was defamatory such that it could damage the plaintiff's reputation in the community; (3) that the defendant was at fault in making the statement; and (4) that the statement either caused the plaintiff economic loss ... or is actionable without proof of economic loss.'" *Alharbi v. Theblaze, Inc.*, 199 F. Supp. 3d 334, 351 (D. Mass. 2016) (quoting *Shay v. Walters*, 702 F.3d 76, 81 (1st Cir. 2012) (citing *Ravnikar v. Bogojavlensky*, 438 Mass. 627 (2003))).  To satisfy the notice pleading requirement of Rule 8, a plaintiff must "explain the essential 'who, what, when, and where' of the allegedly defamatory statements." *Grant v. Target Corp.*, 126 F. Supp. 3d 183, 193 (D. Mass. 2015); *see also id.* ("Merely alleging that unnamed Target agents or employees made defamatory statements about the propriety of Plaintiff's conduct … does not give Target fair notice of the factual basis for Plaintiff's defamation claim.").

Here, Plaintiffs' defamation claim does not allege the publication of any defamatory statement *by Gilbert*.  To the contrary, each allegedly defamatory statement described in the Complaint falls short of the necessary elements to state a claim against him:

- *First*, the Complaint alleges defamation based on the mailing of sexually explicit material to Plaintiffs' neighbors.  *See* Compl. ¶¶ 5, 107, 143, 294, 297.  None of the relevant allegations in the Complaint describes any conduct by Gilbert.

- *Second*, the Complaint describes an ad on Craigslist relating to sexual activities. *Id.* ¶¶ 7, 140, 144-145, 298.  Again, Gilbert is not alleged to have had any individual participation in the publication of this statement—which, in addition, does not identify Plaintiffs and

17

therefore cannot be said to be a statement "concerning the plaintiff" insofar as its publication is concerned.

- *Third*, the Complaint asserts that "false statements" were made "on Twitter" that Plaintiffs were "destroying small and family business" through "biased and negative reporting." *Id.* ¶ 299.  To begin, such statements are opinions, not falsehoods, and therefore not actionable.  *See, e.g.*, *Piccone v. Bartels*, 785 F.3d 766, 772 (1st Cir. 2015) (holding that "pejorative and unflattering" description of plaintiff as "[u]nprofessional" was "protected" and not actionable). Regardless, the Complaint affirmatively alleges that these statements were made by another defendant, not Gilbert.  *Id.* ¶¶ 154-155.  And Gilbert is alleged only to have created a Twitter account for the purpose of sending direct messages *to Plaintiffs*, not publishing any statements to third parties.  *Id.* ¶ 151.

- *Fourth*, Plaintiffs claim defamation based on "fake 'Persons of Interest' files" suggesting Plaintiffs were "a threat to eBay."  *Id.* ¶ 300.  As to this item, the Complaint does not describe any allegedly false statement in the file, nor does it allege the *publication* of this file to anyone. *See id.* ¶ 10 (alleging that "cover-up attempts included efforts to *create* … a phony 'person of interest' file" (emphasis added)); *id.* ¶ 130 (alleging that eBay employees were ordered to "*create* a false document" (emphasis added)).  Absent an allegation that the file was ever shown to a third party, or that Gilbert caused its publication, Plaintiffs have failed to state a cause of action against him based on it.

Beyond the specific statements described above, Plaintiffs allege only vaguely that "Defendants" had unspecified "communications" with unnamed "third parties" who "understood the defamatory meaning of the statements."  *Id.* ¶ 295-296; *see also id.* ¶¶ 301-302.  These

remaining vacuous allegations do not satisfy notice pleading requirements and cannot support a defamation claim against *any* defendant, including Gilbert.

### E.    Count Six: Trespassing

Plaintiffs do not plead facts to support a claim for trespassing *against Gilbert*.  "To sustain a claim for trespass a plaintiff must show (1) plaintiff's actual possession of the property at issue and (2) an intentional and illegal entry by defendant."  *Fed. Ins. Co. v. Boston Water and Sewer Comm'n*, 583 F. Supp. 2d 225, 229 (D. Mass. 2008) (citing *New England Box Co. v. C&R Constr. Co.*, 313 Mass. 696, 707 (1943)).

Here, Plaintiffs do not allege an intentional and illegal entry onto their property *by Gilbert*.  Instead, their claim for trespass is supported by the single allegation that "Defendants entered onto the Steiners' property" in order to "attach a GPS device to their vehicle."  Compl. ¶ 313.  The Complaint affirmatively alleges, however, that this supposed trespass was *not* committed by Gilbert, who at the time of the trespass "remained in California."  *Id.* ¶ 7.  Indeed, the Complaint makes clear that any trespass related to the alleged installation of a GPS device on Plaintiffs' car was committed by *other* Defendants.  *See id.* ¶¶ 99-100, 102-105, 108-110, 171.

The Complaint also contains no facts to support a claim that Gilbert aided or abetted a trespass by another Defendant.  To the contrary, the Complaint affirmatively alleges that Gilbert "remained in California" during the time of the alleged trespasses.  *Id.* ¶ 7.  And none of the relevant paragraphs of the Complaint, *see id.* ¶¶ 99-100, 102-105, 108-110, 171, contains facts suggesting that Gilbert "actively participated in or substantially assisted in" the commission of a trespass. *Go-Best Assets Ltd. v. Citizens Bank of Mass.*, 463 Mass. 50, 64 (2012).  Accordingly, Plaintiff's Count Six must be dismissed as to Gilbert.

### F.      Count Seven: False Imprisonment

Plaintiffs' claim for false imprisonment fails because they do not allege that Gilbert did anything that resulted in their "unlawful confinement."  *Ortiz v. Hampden County*, 16 Mass. App. Ct. 138, 140 (1983) (citing *Wax v. McGrath*, 255 Mass. 340, 342 (1926)).  Nor do they allege facts plausibly suggesting that Gilbert committed any act with "the specific intent to confine" Plaintiffs in their home. *Cremaldi–Vickery v. Otis Elevator, Inc.*, 57 Mass. App. Ct. 1105, 2003 WL 168452, at *2 (Jan. 24, 2003) (unpub.op.).

"Under Massachusetts law, the tort of "[f]alse imprisonment consists of '(1) intentional and (2) unjustified (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement.'" *Barbosa v. Conlon*, 962 F. Supp. 2d 316, 334 (D. Mass. 2013) (quoting *Sietins v. Joseph*, 238 F. Supp. 2d 366, 381 (D. Mass. 2003) (quoting *Ball v. Wal–Mart*, 102 F. Supp. 2d 44, 55 (D.Mass.2000))).  Regarding confinement, a plaintiff must allege conduct by the defendant "which is intended to, and does in fact, 'confine' another 'within boundaries fixed by the actor.'" *O'Neil v. Daimlerchrysler Corp.*, 538 F. Supp. 2d 304, 321 (D. Mass. 2008) (quoting *McCann v. Wal–Mart Stores, Inc.*, 210 F.3d 51, 53 (1st Cir. 2000) (quoting Restatement (Second) of Torts § 35 (1965)).  It is "critical to a claim for false imprisonment that the confining act be done with the specific intent to confine another." *Cremaldi-Vickery*, 2003 WL 168452, at *3 (citing *Sarvis v. Boston Safe Deposit & Trust Co.*, 47 Mass. App. Ct. 86, 98 (1999)).

Here, Plaintiffs do not allege actual "confinement."  Instead, Plaintiffs claim that they suffered "horrifying fear" that "if they left their home, they would be in danger or would be killed."  Compl. ¶ 319.  They assert that this fear was due to the "incessant" delivery of "packages" to their home and "abusive messages and threats" and that the "above-described acts

and omissions … constitute intentional confinement."  *Id.* ¶ 321. But this is a legal conclusion. Merely reciting the element of intentional confinement does not establish an adequate factual basis for Plaintiffs' claim.  Massachusetts law requires more: the delivery of "packages" and the transmission of "messages" do not constitute "actual confinement" within "fixed boundaries," as Plaintiffs were at all times perfectly free to leave their home and do not allege otherwise.  *See, e.g.*, *O'Neil*, 538 F. Supp. 2d at 322 (holding that plaintiff could not establish a false imprisonment claim on the ground that he "felt he could not leave" because he had "failed to establish that he was *actually confined*" (emphasis added)); *see also* Restatement (Second) of Torts § 40 cmt. b (2021 update) (noting that threats of force are sufficient to establish "confinement" only where there is a "threat to apply … physical force immediately"). Nor is it plausible that the publication of messages on the Internet or the delivery of packages to Plaintiffs' home suggests an *intent* to confine them within the "fixed boundaries" of their house. To hold otherwise would stretch "confinement" beyond all plausible meaning.

### G.       Count Eight: Vandalism

"Vandalism" is not a valid civil claim.  It is a crime.  The crime of vandalism is defined in Chapter 266 of the Massachusetts General Laws ("Crimes Against Property") as the willful or wanton marking, painting, etching, marring, defacing, destroying, or injuring of property.  Mass. Gen. Laws ch. 266, § 126A. The Massachusetts legislature has not written the vandalism statute to afford a private right of action. Plaintiffs' Count Eight must be dismissed.

### H.       Count Ten: Violation of M.G.L. Ch. 93A, § 11

Plaintiffs' claim against Gilbert alleging unfair or deceptive trade practices under Section 11 of Chapter 93A suffers from numerous flaws and must be dismissed.

First, Plaintiffs do not identify any act committed by Gilbert as a basis for their Section 11 claim, nor do they allege causation with respect to any action by him.  Instead, Plaintiffs' employ classic shotgun pleading, asserting that many bad acts were committed by many defendants, which cumulatively had the effect of harming plaintiffs and costing them money. Compl. ¶¶ 342-352.  This is not adequate.  Under notice pleading requirements, Plaintiffs must allege specific conduct by Gilbert that factually and proximately caused them to lose money or property.  *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) ("A plaintiff's failure to establish both factual causation and proximate causation is fatal to her Chapter 93A claim."). Here, Plaintiffs simply "lump" the defendants together, but "it cannot be reasonably inferred that all of the defendants were involved in the alleged misconduct" and "it is otherwise not clear to which defendant or defendants [Plaintiffs are] referring."  *Sires*, 2011 WL 2516093, at *5; *see also In re TelexFree Sec. Litig.*, 358 F. Supp. 3d 93, 96 (D. Mass. 2019) (holding that Section 11 affords "no separate Cause of Action" for aiding and abetting).

Second, "section 11 applies only between parties having some transactional business relationship."  *Cash Energy, Inc. v. Weiner*, 768 F. Supp. 892, 894 (D. Mass. 1991).  Here, Plaintiffs do not claim to have had a transactional relationship with eBay—let alone with Gilbert or any of the individual defendants.  Plaintiffs merely allege having owned a trade publication that reported on "various ecommerce companies, including eBay," and that certain eBay employees were "subscribers and/or readers." Compl. ¶¶ 2, 345.  That Plaintiffs published articles about eBay does not mean they had a "transactional business relationship" with the defendants.  *John Boyd Co. v. Bos. Gas Co.*, 775 F. Supp. 435, 440 (D. Mass. 1991) (explaining that "some business connection between the parties is an essential element of liability under the statute"); *L.B. Corp. v. Schweitzer-Mauduit Int'l, Inc.*, 121 F. Supp. 2d 147, 152 (D. Mass. 2000)

(holding that "a plaintiff must allege some sort of transaction between the parties"). And even if eBay personnel may have received or read Plaintiffs' newsletters, this does not establish a *transactional* relationship between them (as opposed to an uncovered *consumer* relationship). *Joe Hand Promotions, Inc. v. Rajan*, No. 10-40029-TSH, 2011 WL 3295424, at *7 (D. Mass. July 28, 2011) (concluding that a commercial business did not have a "business relationship" with the cable provider whose programs it received and broadcast without a license); *Standard Reg. Co. v. Bolton-Emerson, Inc.*, 38 Mass. App. Ct. 545, 551 (1995) (stating that "more than a minor or insignificant business relationship" is required to state a claim under Section 11).

Third, Plaintiffs do not adequately allege "loss of money or property," as required by Section 11. Mass. Gen. L. ch. 93A, § 11. Plaintiffs allege "injury to their professional reputation and to the reputation of … their trade publication," Compl. ¶ 348, but reputational injuries are inadequate to state a claim under the statute, which requires "tangible economic harm or pecuniary loss." *Tech Plus, Inc. v. Ansel*, 59 Mass. App. Ct. 12, 21 (2003). Plaintiffs similarly allege "severe emotional distress" and "physical manifestations of anxiety," but under the plain text of the statute, mental or physical injuries cannot support a claim under Section 11, either. *Compare* Mass. Gen. L. ch. 93A, § 11 (defining actionable injury as "loss of money or property"), *with id.* § 9 (allowing suit by anyone "who has been injured").[3] Finally, Plaintiffs allege that they now produce only "two" newsletters per week, as opposed to producing "two or three" weekly. Compl. ¶ 349. That Plaintiffs may produce fewer newspapers today than they

---

[3] In contrast to Section 11 of Chapter 93A, which requires "loss of money or property," Section 9 of Chapter 93A was specifically amended in 1979 to include broader language authorizing claims by any individual "who has been injured" by an unlawful business practice, and thus, the case law reflects successful claims filed by plaintiffs under Section 9—but not Section 11— "when an unfair or deceptive act caused a personal injury loss such as emotional distress, even if the consumer lost no 'money' or 'property.'" *Hershenow v. Enter. Rent-A-Car Co. of Bos., Inc.*, 445 Mass. 790, 798 (2006) (collecting personal injury cases under Section 9).

produced two years ago is not a loss of "money or property"—it is a repackaging of their emotional and physical injury allegations, which are not compensable under the statute.

## I.      Count Eleven: Tortious Interference with Business Relations

Plaintiffs' claim for tortious interference with business relations contains only a boilerplate recitation of the elements of the claim and shotgun allegations that "Defendants" collectively are liable.  Compl. ¶¶ 353-357.  The Complaint does not set forth *facts* sufficient to support the claim, let alone any facts specifically relating to Gilbert that might supply a basis for individual liability on his part.  The claim against Gilbert is thus subject to dismissal.

Under Massachusetts law, a claim for tortious interference with business relations includes the following elements: "[1] a business relationship from which the plaintiff might benefit existed; [2] the defendant knew of the relationship; [3] the defendant intentionally interfered with the relationship for an improper purpose or by improper means; and [4] the plaintiff was damaged by that interference." *Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B.*, 62 Mass. App. Ct. 34, 38 (2004) (citing *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 812, 815–817 (1990) and *Swanset Dev. Corp. v. City of Taunton*, 423 Mass. 390, 397 (1996)).  These elements are not adequately pled as to Gilbert.

*First*, the Complaint does not describe *any* disrupted business relationship with adequate specificity.  A plaintiff "may not speculate about future business relationships when alleging this tort" but instead must cite "a specific business relationship that was interfered with." *Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25, 48 (1st Cir. 2002). Here, Plaintiffs fail to do this.  They allege only the existence of unspecified relationships with "numerous advertisers, clients and businesses that utilized EcommerceBytes' services."  Compl. ¶ 354.  This conclusory allegation does identify any specific business relationship at all, and so Gilbert is left to guess

about which business relationships are at issue in this cause of action.  As to this element,

therefore, Plaintiffs' allegations do not satisfy the basic requirement of notice pleading.

*Second*, the Complaint does not allege Gilbert's actual knowledge of the relevant

business relationships, whatever they might be.  Rather, the Complaint contains the conclusory

allegation that "Defendants" all were "well aware" of relationships with unnamed advertisers,

clients and businesses, due to "their subscription to the EcommerceBytes newsletter" (though

Gilbert is not alleged to have subscribed) and their "monitoring of the Steiners' trade

publication" (though Gilbert is not alleged to have monitored).  *Id.* ¶ 354.  Absent allegations

that *Gilbert* knew of the relationships, or subscribed to Plaintiffs' newsletter, or otherwise

monitored its contents, Plaintiffs fail to state a claim against him.  Plaintiffs cannot claim

interference by "lumping all the defendants together in [this] claim and providing no factual

basis to distinguish their conduct."  *Sires*, 2011 WL 2516093, at *5 (quoting *Atuahene*, 10 Fed.

Appx. at 34).

*Third*, Plaintiffs do not even attempt to allege the last element of the tort, which is that

any of their business relationships were actually harmed.  They do not allege that any of their

"advertisers" severed ties.  They do not allege that any of their "clients" stopped doing business.

They do not claim that any "businesses" refused to work with them.  Instead, Plaintiffs' sole

allegation of damage is in Paragraph 355, which says (i) that these unnamed advertisers, clients,

or businesses were "misled into believing that Plaintiffs were hurting small and family

businesses and were pushing buyers away from eBay" and (ii) that online sellers now fear that

"doing business with the Plaintiffs will result in similar conduct directed towards them."  Compl.

¶ 355.  No *facts* are alleged regarding the disruption of any actual business relationship or

expectancy.  For this reason, too, Plaintiffs' tortious interference claim must be dismissed.

25

### J.      Count Twelve: Ratification

"Ratification" is not a valid civil claim.  It is a concept of the law of agency. Specifically, it is the rule that a principal may be bound by the acts of an agent, even if unauthorized, "if the principal acquiesces in the agent's action, or fails promptly to disavow the unauthorized conduct."  *Linkage Corp. v. Trustees of Bos. Univ.*, 425 Mass. 1, 18 (1997); *see also Inn Foods, Inc. v. Equitable Co-op. Bank*, 45 F.3d 594, 597 (1st Cir. 1995) ("Under Massachusetts law, ratification of an agent's acts may be express or implied and, as a general proposition, the principal must have full knowledge of all material facts.").

Plaintiffs may not assert a stand-alone claim for "ratification." And even if they could, such a claim could not be validly pled against Gilbert, who did not engage—and whom the Complaint does not allege to have engaged—in any "ratifying" as a principal.  Plaintiffs' Count Twelve must be dismissed.

## IV.    CONCLUSION

For the reasons set forth above, Gilbert respectfully requests that Court enter an order, pursuant to Rule 12(b)(6), dismissing Counts Two, Three, Four, Five, Six, Seven, Eight, Ten, Eleven, and Twelve, which do not adequately state a claim against him.


Dated: October 29, 2021                              */s/ Mark R. Conrad*
                                                     Mark R. Conrad
                                                     CONRAD | METLITZKY | KANE LLP
                                                     Four Embarcadero Center, Suite 1400
                                                     San Francisco, California 94111
                                                     Tel:    (415) 343-7100
                                                     Fax:    (415) 343-7101
                                                     Email:  mconrad@conmetkane.com

Dated: October 29, 2021                    /s/ Douglas Brooks
                                           _____
                                           Douglas S. Brooks
                                           LIBBY HOOPES BROOKS, P.C.
                                           399 Boylston Street
                                           Boston, Massachusetts 02116
                                           Tel:    (617) 338-9300
                                           Fax:    (617) 338-9911
                                           Email: dbrooks@lhblaw.com


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-participants on October 29, 2021.


                                           /s/ Mark R. Conrad
                                           _____
                                           Mark R. Conrad

27