# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| _____ | ) | |
| INA STEINER, DAVID STEINER, and | ) | |
| STEINER ASSOCIATES, LLC, | ) | |
|  | ) | Civil Action No. 21-CV-11181-DPW |
| Plaintiffs, | ) | |
|  | ) | Leave to File Granted |
| v. | ) | October 22, 2021 |
|  | ) | |
| EBAY INC., et al., | ) | |
|  | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT EBAY INC.'S PARTIAL MOTION TO DISMISS THE COMPLAINT

Jack W. Pirozzolo (BBO #564879)
Kathryn L. Alessi (BBO #651110)
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
Telephone: (617) 223-0300
Facsimile: (617) 223-0301
jpirozzolo@sidley.com
kalessi@sidley.com

Scott T. Nonaka (*pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1285
snonaka@sidley.com

*Counsel for eBay Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 2

LEGAL STANDARD ........................................................................................................ 6

ARGUMENT ..................................................................................................................... 7

I.   The Complaint Fails to State a RICO Claim Against eBay (Count III) ............................... 7

   A.  Plaintiffs Cannot Allege eBay Is Both a RICO Enterprise and a RICO Person ............. 7

   B.  The Complaint Fails to Adequately Allege a Pattern of Racketeering Activity.............. 8

      1.  Plaintiffs' Allegations Do Not Establish Closed-Ended Continuity......................... 9

      2.  Plaintiffs' Allegations Do Not Establish Open-Ended Continuity ......................... 17

   C.  The Complaint Fails to Adequately Allege that Defendants Operated or Conducted the Affairs of the eBay/PFC Enterprise ...................................................................... 19

II.  The Complaint Fails to State a Claim for Vandalism (Count VIII)..................................... 21

III. The Complaint Fails to State a Claim for False Imprisonment (Count VII) ....................... 22

IV.  The Complaint Fails to Allege a Violation of Mass. Gen. Laws Chapter 93A, §11 (Count X) .................................................................................................................... 23

V.   The Complaint Fails to State a Claim for Tortious Interference with Business Relations (Count XI) ........................................................................................................ 26

VII. The Complaint Fails to State a Claim for Stalking (Count II)........................................... 28

VIII. The Complaint Fails to State a Claim for Ratification (Count XII) ................................... 30

CONCLUSION................................................................................................................. 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apparel Art Int'l, Inc. v. Jacobson*,
  967 F.2d 720 (1st Cir. 1992) ................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................6, 27

*Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*,
  7 N.E.3d 1066 (Mass. 2014) ................................................................25

*Ball v. Wal-Mart, Inc.*,
  102 F. Supp. 2d 44 (D. Mass. 2000) ................................................................22

*Beebe v. Williams Coll.*,
  430 F. Supp. 2d 18 (D. Mass. 2006) ................................................................26

*Blackstone v. Cashman*,
  860 N.E.2d 7 (Mass. 2007) ................................................................26

*Boice-Perrine Co. v. Kelley*,
  137 N.E. 731 (Mass. 1923) ................................................................31

*Burleigh v. Alfa Laval, Inc.*,
  313 F. Supp. 3d 343 (D. Mass. 2018) ................................................................29, 30

*Buster v. George W. Moore, Inc.*,
  783 N.E.2d 399 (Mass. 2003) ................................................................26

*Carden v. Klucznik*,
  775 F. Supp. 2d 247 (D. Mass. 2011) ................................................................22

*Carter's of New Bedford v. Nike, Inc.*,
  No. 13-11513-DPW, 2014 WL 1311750 (D. Mass. Mar. 31, 2014), *aff'd*, 790
  F.3d 289 (1st Cir. 2015) ................................................................6

*Composite Co. v. Am. Int'l Grp., Inc.*,
  988 F. Supp. 2d 61 (D. Mass. 2013) ................................................................26

*Cranshaw Constr. of New England, L.P. v. Int'l Ass'n of Bridge, Structural &
  Ornamental Ironworkers, AFL-CIO, Local No. 7*,
  891 F. Supp. 666 (D. Mass. 1995) ................................................................21

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
  48 F.3d 1260 (D.C. Cir. 1995) ................................................................19

*Efron v. Embassy Suites (P.R.), Inc.*,
  223 F.3d 12 (1st Cir. 2000) ......................................................................... *passim*

*Entretelas Americanas S.A. v. Soler*,
  840 F. App'x 601 (2d Cir. 2020), *as amended* (Jan. 7, 2021) ................................................11

*Feinstein v. Resol. Tr. Co.*,
  942 F.2d 34 (1st Cir. 1991), *abrogation on other grounds recognized by*
  *United States v. Velazquez-Fontanez*, 6 F.4th 205 (1st Cir. 2021), *petition for*
  *cert. filed*, No. 21-5812 (U.S. Sept. 22, 2021) ..........................................................9

*Fleet Credit Corp. v. Sion*,
  893 F.2d 441 (1st Cir. 1990) ......................................................................14

*Fontanez v. City of Worcester*,
  No. 09-40203-FDS, 2010 WL 4056078 (D. Mass. Oct. 15, 2010) ..........................................21

*Giuliano v. Fulton*,
  399 F.3d 381 (1st Cir. 2005) ..................................................................... *passim*

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989) ..............................................................................9, 10

*Hallal v. Vicis Cap. Master Fund Ltd.*,
  No. 12-10166-NMG, 2013 WL 1192384 (D. Mass. Feb. 25, 2013) ......................................27

*Halper v. Demeter*,
  610 N.E.2d 332 (Mass. App. Ct. 1993) ...............................................................26

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010) ..................................................................................11

*Home Orthopedics Corp. v. Rodríguez*,
  781 F.3d 521 (1st Cir. 2015) ....................................................................12, 17

*Hughes v. Consol-Pa. Coal Co.*,
  945 F.2d 594 (3d Cir. 1991) .........................................................................10

*Hutchings v. City of Gardner*,
  No. 20092074, 2010 WL 653968 (Mass. Super. Ct. Jan. 4, 2010) ..........................................27

*ICONICS, Inc. v. Massaro*,
  192 F. Supp. 3d 254 (D. Mass. 2016) ...............................................................7, 12

*Johnson v. Republican Co.*,
  1987 Mass. App. Div. 85 (1987) ....................................................................25

iii

*Kalimantano GmbH v. Motion in Time, Inc.*,
  939 F. Supp. 2d 392 (S.D.N.Y. 2013) ..................................................................................19

*Kamayou v. Univ. of Mass. Lowell*,
  No. 16-cv-10098-IT, 2018 WL 4609130 (D. Mass. Sept. 7, 2018), *report and
  recommendation adopted*, 2018 WL 4600646 (D. Mass. Sept. 25, 2018) ............................22

*Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*,
  329 F.3d 216 (1st Cir. 2003) ..............................................................................................18

*Lavery v. Restoration Hardware, Inc.*,
  No. 17-10856, 2018 WL 1524398 (D. Mass. Mar. 28, 2018) ................................................26

*Lerner v. Colman*,
  485 F. Supp. 3d 319 (D. Mass. 2020), *appeal docketed*, No. 20-1984 (1st Cir.
  Oct. 15, 2020) ....................................................................................................................10

*Levin v. Dalva Bros. Inc.*,
  459 F.3d 68 (1st Cir. 2006) ................................................................................................28

*Lincoln House, Inc. v. Dupre*,
  903 F.2d 845 (1st Cir. 1990) ..............................................................................................10

*Linkage Corp. v. Trs. of Bos. Univ.*,
  679 N.E.2d 191 (Mass. 1997) .............................................................................................30

*In re Lupron Mktg. & Sales Practices Litig.*,
  295 F. Supp. 2d 148 (D. Mass. 2003) ...............................................................................8, 14

*Mahoney v. Bank of Am., N.A.*,
  No. 10-12230-DPW, 2011 WL 3105265 (D. Mass. June 10, 2011).........................................6

*Garcia ex rel. Marin v Clovis Unified Sch. Dist.*,
  627 F. Supp. 2d 1187 (E.D. Cal. 2009).................................................................................31

*McCann v. Wal-Mart Stores, Inc.*,
  210 F.3d 51 (1st Cir. 2000) ................................................................................................23

*McElroy v. City of Lowell*,
  741 F. Supp. 2d 349 (D. Mass. 2010) ..................................................................................26

*McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*,
  904 F.2d 786 (1st Cir. 1990) ..............................................................................................14

*Midwest Grinding Co. v. Spitz*,
  976 F.2d 1016 (7th Cir. 1992) ............................................................................................10

*Milliken & Co. v. Duro Textiles, LLC*,
    887 N.E.2d 244 (Mass. 2008) ...................................................................24

*Morse v. Mut. Fed. Sav. & Loan Ass'n of Whitman*,
    536 F. Supp. 1271 (D. Mass. 1982) ..........................................................25

*New England Data Servs., Inc. v. Becher*,
    829 F.2d 286 (1st Cir. 1987) .....................................................................15

*O'Neil v. DaimlerChrysler Corp.*,
    538 F. Supp. 2d 304 (D. Mass. 2008) ..................................................22, 23

*Odishelidze v. Aetna Life & Cas. Co.*,
    853 F.2d 21 (1st Cir. 1988)..........................................................................8

*P.R. Clean Energy Corp. v. Hatton-Gotay*,
    115 F. Supp. 3d 288 (D.P.R. 2015).............................................................12

*Petrell v. Shaw*,
    453 Mass. 377 (2009) .................................................................................31

*Primary Care Invs., Seven, Inc. v. PHP Healthcare Corp.*,
    986 F.2d 1208 (8th Cir. 1993) ...................................................................10

*Rafferty v. Merck & Co.*,
    92 N.E.3d 1205 (Mass. 2018) ...................................................................24

*Roeder v. Alpha Indus., Inc.*,
    814 F.2d 22 (1st Cir. 1987)........................................................................18

*Rojas-Buscaglia v. Taburno-Vasarely*,
    39 F. Supp. 3d 208 (D.P.R. 2014)..............................................................12

*Rule v. Fort Dodge Animal Health, Inc.*,
    607 F.3d 250 (1st Cir. 2010) .....................................................................25

*Scheidler v. Nat'l Org. for Women, Inc.*,
    537 U.S. 393 (2003)...................................................................................15

*Schofield v. First Commodity Corp. of Bos.*,
    793 F.2d 28 (1st Cir. 1986).....................................................................7, 8

*Sekhar v. United States*,
    570 U.S. 729 (2013).............................................................................14, 15

*Steele v. Kelley*,
    710 N.E.2d 973 (Mass. App. Ct. 1999) .....................................................24

*Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*,
   419 F. Supp. 3d 176 (D. Mass. 2019), *aff'd on other grounds*, 990 F.3d 31 (1st
   Cir. 2021) .................................................................................................................18, 19

*Sys. Mgmt., Inc. v. Loiselle*,
   303 F.3d 100 (1st Cir. 2002) ...............................................................................14

*Szalla v. Locke*,
   657 N.E.2d 1267 (Mass. 1995) ............................................................................24

*Terek v. Finkbiner*,
   No. 3:14 CV 1391, 2015 WL 5542535 (N.D. Ohio Sept. 18, 2015) ......................31

*Thunder Studios, Inc. v. Kazal*,
   13 F.4th 736 (9th Cir. 2021) ................................................................................30

*Trs. of Bos. Univ. v. ASM Commc'ns, Inc.*,
   33 F. Supp. 2d 66 (D. Mass. 1998) ......................................................................24

*Uni*Quality, Inc. v. Infotronx, Inc.*,
   974 F.2d 918 (7th Cir. 1992) ...............................................................................10

*United Food & Commercial Workers Union & Emps. Midwest Health Benefits
   Fund v. Walgreen Co.*,
   719 F.3d 849 (7th Cir. 2013) .....................................................................19, 20, 21

*United States v. Acevedo*,
   882 F.3d 251 (1st Cir. 2018) ................................................................................16

*United States v. Aguilar*,
   515 U.S. 593 (1995) .............................................................................................16

*United States v. Aulicino*,
   44 F.3d 1102 (2d Cir. 1995) .................................................................................17

*United States v. Martino*,
   648 F.2d 367 (Former 5th Cir. June 1981), *on reconsideration in part sub
   nom. United States v. Holt*, 650 F.2d 651 (Former 5th Cir. July 1981), *and on
   reh'g*, 681 F.2d 952 (Former 5th Cir. 1982), *aff'd sub nom. Russello v. United
   States*, 464 U.S. 16 (1983) ..................................................................................15

*Vranos v. Skinner*,
   930 N.E.2d 156 (Mass. App. Ct. 2010) ...............................................................27

*Watterson v. Page*,
   987 F.2d 1 (1st Cir. 1993) ......................................................................................6

**Statutes**

18 U.S.C. § 1343 ...............................................................................................................15

18 U.S.C. § 1510 ...............................................................................................................16

18 U.S.C. § 1951(b)(2) ......................................................................................................14

18 U.S.C. § 1961(1) ....................................................................................................14, 15

18 U.S.C. § 1962(c) ............................................................................................................7

Cal. Civ. Code § 1708.7(g) ..............................................................................................29

Mass. Gen. Laws ch. 93A, § 2 .........................................................................................23

Mass. Gen. Laws ch. 266, § 126A ....................................................................................21

**Rule**

Fed. R. Civ. P. 11(a) ...........................................................................................................3

**Other Authorities**

Restatement (Second) of Conflict of Laws (1971) ...........................................................28

Restatement (Second) of Torts (1965) .........................................................................22, 23

U.S. Dep't of Justice, Press Release, Six Former eBay Employees Charged with
    Aggressive Cyberstalking Campaign Targeting Natick Couple (June 15,
    2020), https://www.justice.gov/usao-ma/pr/six-former-ebay-employees-
    charged-aggressive-cyberstalking-campaign-targeting-natick ...............................31

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    1333 (4th ed. 2019) ..................................................................................................3

## INTRODUCTION

This case arises from criminal misconduct in the summer of 2019 by former eBay employees against plaintiffs Ina and David Steiner ("Steiners," and with Steiner Associates, LLC, "Plaintiffs").  As is documented in the complaint, from June to August 2019, members of eBay's security team engaged in stalking, harassment, and threats to pressure the Steiners to stop writing about eBay on their trade publication, EcommerceBytes.   Those same employees then unsuccessfully attempted to cover their tracks to thwart investigations by law enforcement and eBay.  But within days of learning of possible misconduct, eBay took action against the employees, and it promptly reported information it had gathered in its own investigation to federal prosecutors. Roughly nine months later, federal prosecutors filed criminal charges against six eBay employees and one eBay contractor.  Five of those individuals have pled guilty to conspiracy to commit cyberstalking, obstruction of justice, and witness tampering.  Two are awaiting trial.

By their complaint, the Steiners seek relief against both eBay and the former eBay employees they allege orchestrated and perpetrated these actions.  The complaint seeks to hold eBay liable under twelve different legal claims. As eBay sets forth in more detail in this memorandum, many of the claims are not legally viable, either because the complaint's allegations fail to establish essential elements of the claims or because the claims are not available under Massachusetts law.  Specifically:

- the RICO claim (Count III) fails because eBay cannot be both an alleged enterprise and a RICO defendant and because the complaint's allegations establish neither continuity nor that the defendants acted on behalf of the alleged enterprise;

- the vandalism claim (Count VIII) fails because there is no vandalism tort in Massachusetts;

- the false imprisonment claim (Count VII) fails because it does not adequately allege that Plaintiffs were confined or that any defendants intended to confine them;

- the Chapter 93A claim (Count X) fails because Plaintiffs allege no commercial transaction between themselves and the defendants as the statute requires;

- the tortious interference claim (Count XI) fails because the complaint does not allege facts showing that the defendants induced a party to breach a contract or not enter into or continue a business relationship with Plaintiffs;

- the stalking claim (Count II) under California law fails because Massachusetts law applies here, and Massachusetts does not provide an independent cause of action for stalking; and

- the ratification claim (Count XII) fails because Plaintiffs' allegations do not support a reasonable inference that eBay ratified the other defendants' conduct, particularly given that the complaint acknowledges that within weeks of discovering the conduct, eBay had terminated six involved employees.

There is one aspect of this motion eBay wants to make clear at the outset, however.  Although the Court should dismiss many of the claims set forth in the complaint because those legal theories do not apply to the conduct alleged, nowhere in this motion or elsewhere does eBay intend to minimize the conduct alleged in the complaint.  By any measure, the conduct of those former employees who now stand either charged or convicted of multiple crimes was appalling, and eBay recognizes that the Steiners likely are entitled to some fair and appropriate recovery for that conduct.  It is, however, very much in the interest of all parties seeking the just and efficient resolution of this matter that the case proceed on those legal theories that are properly pleaded rather than those that are not.  It is for this reason that eBay brings this partial motion to dismiss.

## BACKGROUND[1]

Ina and David Steiner own and operate Steiner Associates, LLC, through which they publish EcommerceBytes, a trade publication covering ecommerce.  Dkt. 1 ("Compl.") ¶¶ 22–23, 354.  EcommerceBytes publishes both email newsletters and a website covering news related to

---

[1] eBay accepts Plaintiffs' factual allegations as true for purposes of this motion.

various ecommerce platforms, including Defendant eBay Inc. *Id.* ¶¶ 39, 343. The Steiners reside in Natick, Massachusetts, and Steiner Associates, LLC has its principal place of business there.[2] *Id.* ¶¶ 22–23, 343.

According to the complaint, beginning in January 2019, Defendant Devin Wenig, eBay's then-CEO, and Defendant Steven Wymer, eBay's then-Senior Vice President and Chief Communications Officer, became increasingly concerned about negative news coverage of eBay and expressed frustration specifically about EcommerceBytes' reporting. *Id.* ¶¶ 27–28, 44, 46. To keep the executive leadership up to date, *id.* ¶ 46, Defendant James Baugh, eBay's then-Senior Director of Safety & Security, in charge of the Global Security and Resiliency (GSR) team, directed two subordinates, Defendants Stephanie Stockwell and Veronica Zea, to monitor EcommerceBytes' reporting and forward posts to Baugh, *id.* ¶¶ 29, 32, 35, 46. Stockwell was an eBay employee, *id.* ¶ 32, while Zea worked at eBay as a contractor from Defendant Progressive F.O.R.C.E. Concepts, LLC (PFC), *id.* ¶ 35, which contracted security analysts to eBay, *id.* ¶ 26.

Over the course of the first half of 2019, EcommerceBytes continued to publish articles and user comments that Wenig, Wymer, Baugh, and others at eBay viewed as negative. *See id.* ¶¶ 46–50, 57. In response, according to the complaint, these defendants, together with Defendants David Harville, Brian Gilbert, Stephanie Popp, and Philip Cooke, all of whom worked under Baugh, *see id.* ¶¶ 30–31, 33–34, allegedly began to formulate a plan to silence Plaintiffs'

---

[2] eBay notes that the complaint is not signed on behalf of Steiner Associates, LLC, notwithstanding the requirement that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name." Fed. R. Civ. P. 11(a); *see* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1333 (4th ed. 2019) ("[E]ven when an attorney represents multiple [parties], the signing attorney must make explicit that each [party] has consented and that he or she therefore is signing the … paper[] on behalf of each [party] whom he or she represents.").

reporting.[3]  *See id.* ¶¶ 46–51, 56–66.  The alleged plan was to "intimidate, threaten, torture, terrorize, stalk and silence" the Steiners "with the purpose to end their reporting about eBay."  *Id.* ¶ 57.

According to the complaint, Baugh and Gilbert first put this plan into action in June 2019. Plaintiffs allege that that month, at Baugh's direction, Gilbert flew to Natick and scrawled the word "FIDOMASTER" on the Steiners' fence.  *Id.* ¶ 54.  The graffiti was a reference to the username of a commenter on EcommerceBytes who often posted criticism of eBay and who Baugh and Gilbert believed was connected to the Steiners.  *See id.* ¶¶ 48–50.

The next phase of the plan took place over several weeks in August 2019.  Beginning on or about August 8, the GSR Defendants subjected the Steiners to "several days of around the clock threatening and vulgar emails, packages and online messages."  *Id.* ¶¶ 6, 81–95.  The following week, on or about August 15, Baugh, Harville, and Zea traveled to Natick, where, over the next five days, they proceeded to surveil the Steiners, both by sitting in a rented van outside the Steiners' house and by following Mr. Steiner around town.  *Id.* ¶¶ 96–99, 102–104, 108–113, 134–137. Meanwhile, the GSR Defendants continued to subject the Steiners to threatening and vulgar deliveries, *id.* ¶¶ 106–107, 124–127, 139, 143, and online postings and messages, *id.* ¶¶ 140–141, 144, 146.  The "menacing messages" continued through August 22.  *Id.* ¶¶ 151–155, 186.

Understandably, the Steiners reported the GSR Defendants' conduct to the Natick police, which began an investigation on or about August 16.  *See id.* ¶¶ 124–126, 134, 137.  eBay also began its own investigation immediately after being contacted by the Natick police.  *Id.* ¶ 191. Between August 20 and August 26, the GSR Defendants took numerous steps to obstruct both the

---

[3] This brief refers to Baugh, Stockwell, Zea, Harville, Gilbert, Popp, and Cooke collectively as the "GSR Defendants"; to the GSR Defendants, Wenig, and Wymer collectively as the "Individual Defendants"; and to all the defendants, collectively, as "Defendants."

Natick Police Department's investigation and eBay's own internal investigation, including lying to both law enforcement and eBay investigators and deleting records from their phones.  *Id.* ¶¶ 164–184, 189–200.  But both investigations proceeded quickly.  By August 22, the FBI and U.S. Attorney's office had opened an investigation of their own into the GSR Defendants' actions.  *Id.* ¶ 185.  And on or about August 30, 2019, eBay placed Baugh, Popp, and Harville on administrative leave and, in September 2019, terminated their employment, together with that of Wymer, Gilbert, and Stockwell.  *Id.* ¶¶ 200, 202, 206.  PFC terminated Zea's employment.  *Id.* ¶ 202.  Wenig, eBay's CEO, also departed around this time.  *Id.* ¶ 204.

The U.S. Attorney's Office for the District of Massachusetts subsequently brought criminal charges against all the GSR Defendants, but not against Wenig or Wymer.  *See id.* ¶¶ 209–211. Gilbert, Popp, Stockwell, and Zea were charged in May 2020 with conspiracy to commit cyberstalking and conspiracy to tamper with a witness.  *See id.* ¶ 209, Ex. C.  The following month, Baugh and Harville were charged with conspiracy to commit stalking, stalking, witness tampering, and destruction, alteration, or falsification of records in a federal investigation.  *See id.* ¶ 210, Exs. B, D.  And in July 2020, Cooke was charged with conspiracy to commit cyberstalking and conspiracy to tamper with a witness.  *Id.* ¶ 211.  Popp, Stockwell, and Zea subsequently pleaded guilty to conspiracy to commit cyberstalking and conspiracy to obstruct justice.  *Id.* ¶ 212, Ex. E. Gilbert and Cooke pleaded guilty to conspiracy to commit cyberstalking and conspiracy to commit witness tampering.  *Id.*  After the charges became public, eBay's new CEO emailed the Steiners to apologize for what they went through.  *See id.* ¶ 208.

Plaintiffs initiated this action on July 21, 2021.  *See* Dkt. 1.  Their complaint asserts twelve claims against all Defendants: intentional infliction of emotional distress (Count I); stalking (Count II); violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act (Count III);

violation of the Massachusetts Civil Rights Act (Count IV); defamation (Count V); trespassing (Count VI); false imprisonment (Count VII); vandalism (Count VIII); civil conspiracy (Count IX); violation of Massachusetts General Law Ch. 93A, § 11 (Count X); tortious interference with business relations (Count XI); and ratification (Count XII).  *See generally id.*  For the reasons set forth below, Counts II, III, VII, VIII, X, XI, and XII should be dismissed.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard requires that a plaintiff's factual allegations establish "more than a sheer possibility that a defendant has acted unlawfully," and allegations that are "merely consistent with a defendant's liability" do not clear this bar.  *Id.* (quoting *Twombly*, 550 U.S. at 557).  To determine whether a complaint states a plausible claim to relief, the court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs."  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).  However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Mahoney v. Bank of Am., N.A.*, No. 10-12230-DPW, 2011 WL 3105265, at *1 (D. Mass. June 10, 2011); *see Iqbal*, 556 U.S. at 678.  Dismissal is warranted where the complaint fails to set forth well-pleaded factual allegations "respecting each material element necessary to sustain recovery under some actionable legal theory."  *Carter's of New Bedford v. Nike, Inc.*, No. 13-11513-DPW, 2014 WL 1311750, at *1–2 (D. Mass. Mar. 31, 2014) (cleaned up), *aff'd*, 790 F.3d 289 (1st Cir. 2015).

**ARGUMENT**

I.      **The Complaint Fails to State a RICO Claim Against eBay (Count III)**

Plaintiffs allege that Defendants violated the Racketeer Influenced and Corrupt Organizations (RICO) Act, which in relevant part prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  "To establish a RICO violation, a plaintiff must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 267 (D. Mass. 2016) (quoting *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 14–15 (1st Cir. 2000)).  Here, Plaintiffs' RICO claim must be dismissed for three independent reasons.  First, Plaintiffs allege that eBay constitutes an "enterprise," and therefore eBay cannot also be a RICO defendant.  Second, Plaintiffs fail to adequately plead a pattern of racketeering activity.  And third, to the extent Plaintiffs rely on an alleged "eBay/PFC enterprise," they fail to adequately allege that Defendants' conduct constituted the affairs of that enterprise, as opposed to the affairs of eBay and PFC individually.[4]

A.      **Plaintiffs Cannot Allege eBay Is Both a RICO Enterprise and a RICO Person**

To begin with, Plaintiffs' RICO claim must be dismissed as against eBay for the simple reason that Plaintiffs allege that eBay "individually … constitute[s] an 'enterprise'" under RICO. Compl. ¶ 246.  Because the text of § 1962(c) "require[s] a relationship between the person and the enterprise," *Schofield v. First Commodity Corp. of Bos.*, 793 F.2d 28, 31 (1st Cir. 1986), it is well-

---

[4] Plaintiffs also allege that Defendants conspired to violate § 1962(c), in violation of § 1962(d). *See* Compl. ¶ 262.  This theory of liability fails for the same reasons as the substantive RICO claim. *See Efron*, 223 F.3d at 21 ("[I]f the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails[.]").

established that "[t]he 'person' alleged to be engaged in a racketeering activity … must be an entity distinct from the 'enterprise,'" *Odishelidze v. Aetna Life & Cas. Co.*, 853 F.2d 21, 23 (1st Cir. 1988) (per curiam).  Thus, "[t]he enterprise … cannot itself be a RICO defendant."  *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 164 (D. Mass. 2003).  Because Plaintiffs allege that eBay itself constitutes a RICO enterprise, eBay cannot also be a RICO defendant.  This allegation also precludes Plaintiffs from holding eBay vicariously liable under RICO.  The First Circuit has held that it would be "inappropriate to use *respondeat superior* to accomplish indirectly what … the statute directly denies."  *Schofield*, 793 F.2d at 33.

### B.   The Complaint Fails to Adequately Allege a Pattern of Racketeering Activity

Plaintiffs' RICO claim also fails for the independent reason that Plaintiffs do not adequately plead a pattern of racketeering activity.  The pattern requirement is an essential element of RICO because "RICO was intended by Congress to apply only to enduring criminal conduct." *Efron*, 223 F.3d at 15.  To plead that acts of racketeering activity constitute a pattern, Plaintiffs must allege facts showing that "the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity."  *Giuliano v. Fulton*, 399 F.3d 381, 386–87 (1st Cir. 2005) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).  Plaintiffs may establish continuity either "by showing 'a series of related predicates extending over a substantial period of time' that 'amount to' a threat of continued criminal activity"—*i.e.*, "closed-ended continuity"— or by showing that the alleged "racketeering acts themselves include a specific threat of repetition extending indefinitely into the future [or] … are part of an ongoing entity's regular way of doing business'"—*i.e.*, "open-ended continuity."  *Id.* at 387 (alteration and omission in original) (quoting *H.J. Inc.*, 492 U.S. at 242).  "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from

allegations that, upon closer scrutiny, do not support it." *Efron*, 223 F.3d at 20.  Here, for multiple

reasons, the complaint's allegations establish neither closed-ended nor open-ended continuity and

therefore fail to establish the required pattern element.

### 1.   Plaintiffs' Allegations Do Not Establish Closed-Ended Continuity

As described above, Plaintiffs allege that Defendants subjected them to a series of abusive

acts that, except for an act of vandalism in June 2019, all took place during a three-week period in

August 2019.  Defendants' alleged actions do not constitute a closed-ended pattern of racketeering

activity for several independent reasons.

*First*, even assuming that every tortious act alleged in the complaint constituted a RICO

predicate, *but see infra* at 13–16, the period of time over which those acts occurred is too short, as

a matter of law, to establish closed-ended continuity.  It is well-established that "[p]redicate acts

extending over a few weeks or months and threatening no future criminal conduct do not satisfy

[the closed-ended continuity] requirement."  *H.J. Inc.*, 492 U.S. at 242.  Indeed, this rule is black

and white:  "[W]here the period of time is short, continuity can *never* be established."  *Giuliano*,

399 F.3d at 387 (emphasis added).  Here, except for the vandalism of Plaintiffs' fence in June

2019, the alleged misconduct all took place in August 2019.  *See* Compl. ¶¶ 264–267.  As discussed

below, vandalism is not a racketeering predicate, but even if it were, the entire campaign against

Plaintiffs took place over, at most, three months.

The First Circuit has repeatedly held that three months is far too short a period to establish

continuity.  *See Giuliano*, 399 F.3d at 390 ("[T]he commission of 16 predicate acts over a six-

month period is inadequate to establish a closed-ended pattern of racketeering activity."); *Feinstein*

*v. Resol. Tr. Co.*, 942 F.2d 34, 45 (1st Cir. 1991) (3-4 months too short), *abrogation on other*

*grounds recognized by United States v. Velazquez-Fontanez*, 6 F.4th 205, 213 n.2 (1st Cir. 2021),

*petition for cert. filed*, No. 21-5812 (U.S. Sept. 22, 2021); *accord Primary Care Invs., Seven, Inc. v. PHP Healthcare Corp.*, 986 F.2d 1208, 1215 (8th Cir. 1993) (10-11 months too short); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1024 (7th Cir. 1992) (9 months too short); *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 922 (7th Cir. 1992) (7-8 months too short); *Hughes v. Consol-Pa. Coal Co.*, 945 F.2d 594, 611 (3d Cir. 1991) (12 months too short).

To create the appearance of a longer scheme, Plaintiffs allege that unnamed eBay employees committed wire fraud on four occasions in 2009, 2012, 2014, and 2018, and that Defendants conspired to commit mail fraud in spring 2019. Compl. ¶ 266(a)(i)–(v). These allegations, however, are insufficient to rescue Plaintiffs' claim. To begin with, as discussed below, the 2009 predicate is inadequately pleaded, and the alleged spring 2019 conspiracy is not racketeering activity. *Infra* at 15–16 & n.6. In any event, whether Plaintiffs plead five predicates over ten years, or three over seven, these alleged predicates are far too sporadic to form a pattern. "A pattern is not formed by 'sporadic activity,'" *H.J. Inc.*, 492 U.S. at 239, and courts in this circuit have accordingly treated acts separated from one another by long periods of time as "sporadic" activity insufficient to establish a pattern, *see, e.g.*, *Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 846–47 (1st Cir. 1990) (observing that six acts of wire fraud over 26 months constituted "only 'sporadic criminal activity'"); *Lerner v. Colman*, 485 F. Supp. 3d 319, 342 (D. Mass. 2020) ("Except for one disconnected act in 2008, all of the conduct was committed over a short period of time, making the 2008 transaction a 'sporadic' offshoot that does not weigh heavily in the temporal analysis."), *appeal docketed*, No. 20-1984 (1st Cir. Oct. 15, 2020). That reasoning applies equally here.

In addition, even if these alleged predicates were not sporadic, Plaintiffs cannot rely on the four alleged acts of wire fraud between 2009 and 2018 to extend the alleged scheme because they

have failed to plead sufficient facts "to meet RICO's requirement of a direct causal connection between the predicate offense and the alleged harm." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10–11 (2010). Those four incidents were far removed in time from the GSR Defendants' actions—occurring one, five, seven, and ten years earlier—and differed from them in kind. Plaintiffs allege that (1) in 2009, an eBay employee "wrote criticizing remarks in the EcommerceBytes comments section, slandering the website"; (2) in 2012, an eBay employee "falsely reported EcommerceBytes as a phishing website, in order to have the website removed from the internet"; (3) in 2014, an eBay employee posed "as a legitimate EcommerceBytes user" and, through unspecified means online, "attacked a long-standing user of the website"; and (4) in 2018, an eBay employee "posed as an eBay seller and made derogatory comments towards users of the EcommerceBytes website." Compl. ¶ 266(a)(i)–(iv).

Plaintiffs, however, offer no explanation of how these long ago actions, which are materially different from the stalking, harassment, and intimidation directed against Plaintiffs personally, directly caused them to "fear[] for their lives," "hampered their ability to continue [publishing articles] at the same level," or damaged their "reputation as objective and impartial journalists and editors"—their alleged RICO injuries. *See id.* ¶¶ 276–278. Because Plaintiffs fail to plausibly allege proximate causation, Plaintiffs cannot rely on these alleged predicates to establish a pattern pre-dating summer 2019. *See Entretelas Americanas S.A. v. Soler*, 840 F. App'x 601, 604 (2d Cir. 2020) ("[E]ven assuming that Soler committed predicate acts of extortion in violation of RICO, Entretelas did not sufficiently allege that such violations proximately caused injury."), *as amended* (Jan. 7, 2021). These allegations therefore do not undermine the conclusion that Defendants' actions occurred over too short a period to establish closed-ended continuity.

*Second*, Plaintiffs fail to establish closed-ended continuity because their allegations of racketeering activity describe only "a single, narrow scheme targeting few victims," *Giuliano*, 399 F.3d at 390, which the First Circuit has repeatedly held is insufficient under RICO.

To begin with, even if Plaintiffs had adequately alleged predicates dating back to 2009, a handful of predicates over many years "does not automatically compel a finding of close[d]-ended continuity." *P.R. Clean Energy Corp. v. Hatton-Gotay*, 115 F. Supp. 3d 288, 293–94 (D.P.R. 2015) (holding that twelve predicate acts over nine years does not automatically establish closed-ended continuity); *accord ICONICS*, 192 F. Supp. 3d at 270 (finding that allegations of "racketeering activity beginning in 2008 and continuing with some regularity to the present" do not compel a "finding of continuity … outright"); *Rojas-Buscaglia v. Taburno-Vasarely*, 39 F. Supp. 3d 208, 214 (D.P.R. 2014) (ten predicate acts over ten years). Rather, such allegations at most place a case "into a middle ground where the duration and extensiveness of the alleged conduct does not easily resolve the issue." *Giuliano*, 399 F.3d at 387. In such cases, courts must consider "other 'indicia of continuity,'" such as "whether the defendants were involved in multiple schemes, as opposed to 'one scheme with a singular objective'; whether the scheme affected many people, or only a 'closed group of targeted victims'; and whether the scheme had the potential to last indefinitely, instead of having a 'finite nature.'" *Home Orthopedics Corp. v. Rodríguez*, 781 F.3d 521, 529 (1st Cir. 2015) (quoting *Giuliano*, 399 F.3d at 387 and *Efron*, 223 F.3d at 18–19); *see ICONICS*, 192 F. Supp. 3d at 270.

Here, all relevant indicia demonstrate the absence of continuity. Even accounting for the pre-2019 predicates, the alleged scheme had the "singular objective" of intimidating, harassing, and ultimately silencing Plaintiffs' reporting; affected only Plaintiffs, "a closed group of targeted victims"; and had a "finite nature" dictated by its clear goal. *Home Orthopedics*, 781 F.3d at 529;

*see* Compl. ¶¶ 249, 263 (describing Defendants' "common purpose" and "goal").   Because Defendants' acts, "taken together, … comprise[d] a single effort" to harass, intimidate, and silence Plaintiffs "and are appropriately characterized as separate parts of a single criminal episode," *Apparel Art Int'l, Inc. v. Jacobson*, 967 F.2d 720, 723 (1st Cir. 1992) (Breyer, C.J.), Plaintiffs cannot establish continuity.   The First Circuit has "consistently declined to find continuity where the RICO claim concerns a single, narrow scheme targeting few victims."   *Giuliano*, 399 F.3d at 390; *see Apparel Art*, 967 F.2d at 723 (noting that courts "have consistently held that a single episode does not constitute a 'pattern,' even if that single episode involves behavior that amounts to several crimes").

The First Circuit's decision in *Efron* is instructive.   There, a real estate investor alleged that defendants, his partners in a hotel project, engaged in a "scheme to diminish the value of the project in the short run, pressing plaintiff and two others to yield up their interests so that the schemers could own and control the whole project." 223 F.3d at 18.   To carry out the scheme, the defendants allegedly committed 17 predicate acts of wire fraud over 21 months.   *See id.* at 14.   The First Circuit held that the allegations did not establish a pattern of racketeering activity because "[a]lthough multiple related acts of deception were claimed to underlay the faxes and mailings, all allegedly were aimed at the single goal of transforming the ownership of the [business]" and harmed only "three named victims."   *Id.* at 18.   The court concluded that allegations of "a single effort, over a finite period of time, to wrest control of a particular partnership from a limited number of its partners … cannot be a RICO violation." *Id.* at 21.   That conclusion applies *a fortiori* here, where Plaintiffs allege an equally narrow scheme based on far fewer predicates.

*Third*, Defendants' actions by and large did not constitute racketeering activity.   Under RICO, "racketeering activity" comprises only "defined criminal acts" set forth in 18 U.S.C.

§ 1961(1).   *Sys. Mgmt., Inc. v. Loiselle*, 303 F.3d 100, 104 (1st Cir. 2002).   The stalking,

cyberstalking, harassment, and vandalism that Plaintiffs allege formed the core of Defendants'

scheme, *see* Compl. ¶ 266(a)(vi)–(vii), do not fall within the statutory definition of racketeering

activity and therefore cannot form the basis of a pattern of racketeering activity.[5]

To overcome this problem, Plaintiffs attempt to characterize Defendants' conduct as mail

fraud, extortion, wire fraud, and obstruction of justice.   *See* Compl. ¶¶ 267(a)–(d).   But Plaintiffs

fail to adequately plead these predicates.   *See Fleet Credit Corp. v. Sion*, 893 F.2d 441, 444 (1st

Cir. 1990).

*Mail Fraud*.   To plead a mail fraud scheme, Plaintiffs must allege "some false statement,

representation or promise."   *In re Lupron*, 295 F. Supp. 2d at 165; *accord McEvoy Travel Bureau,

Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir. 1990).   But Plaintiffs do not satisfy this

requirement.   Their mail fraud predicates all rest on the allegation that Defendants "mailed

threatening, intimidating and harassing items to the Steiners, which was for the purpose of

intimidating, threatening and coercing the Steiners, so that they would cease reporting on eBay."

Compl. ¶ 267(b)(ii); *see id.* ¶ 267(b)(iii)–(iv).   Because Plaintiffs allege no false statement,

representation, or promise, they do not adequately plead mail fraud.

*Extortion*.   To plead extortion, a plaintiff must allege that "the victim 'part[ed] with' his

property, and that the extortionist 'gain[ed] possession' of it."   *Sekhar v. United States*, 570 U.S.

729, 734 (2013) (citations omitted); *see* 18 U.S.C. § 1951(b)(2) (extortion requires "the obtaining

of property from another").   "The property extorted must therefore be *transferable* ...."   *Sekhar*,

570 U.S. at 734.   Here, Plaintiffs extortion allegations rest on Defendants' alleged scheme "to

---

[5] By contrast, witness tampering in violation of 18 U.S.C. § 1512 is a racketeering predicate.   *See*
18 U.S.C. § 1961(1); Compl. ¶ 267(e) (alleging violations of 18 U.S.C. § 1512).   But, as explained
*infra* at 16, those acts are insufficient to establish continuity.

eliminate their reporting on eBay" and to thereby interfere with their publication of EcommerceBytes. Compl. ¶ 267(a). This allegation, however, fails to identify any transferable property that Defendants acquired, and therefore fails to adequately plead extortion. *See Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 404–05 (2003) (allegations that activists unlawfully shut down abortion clinics did not constitute extortion because the activists "did not 'obtain' [the clinic's] property").

*Wire Fraud.* To plead wire fraud, a plaintiff likewise must allege a scheme "for obtaining money or property." 18 U.S.C. § 1343. Thus, as with extortion, the property a defendant seeks to obtain via fraud must be "*transferable*—that is, capable of passing from one person to another." *Sekhar*, 570 U.S. at 734. Here, Plaintiffs allege that Defendants committed mail fraud by seeking to "prevent any further reporting [by Plaintiffs] on eBay." Compl. ¶ 267(c)(vi). Plaintiffs' future reporting, however, is analogous to "an employee's yet-to-be-issued recommendation," which, as *Sekhar* held, is not "something of value … that can be exercised, transferred, or sold." *Sekhar*, 570 U.S. at 736–37. It therefore is not obtainable property cognizable under the wire fraud statute.[6]

Plaintiffs also fail to plead with sufficient particularity that an unnamed eBay employee committed wire fraud in 2009 by writing "criticizing remarks in the EcommerceBytes comments section, slandering the website." Compl. ¶ 266(a)(i) Under Rule 9(b), a plaintiff must "state the time, place and content of the alleged … communication" perpetrating the fraud. *New England*

---

[6] Plaintiffs' allegation of a conspiracy to commit wire fraud, Compl. ¶ 266(a)(v), also fails because such a conspiracy is not "indictable under" the wire fraud statute, 18 U.S.C. § 1343, and therefore is not racketeering activity under 18 U.S.C. § 1961(1)(B). *See United States v. Martino*, 648 F.2d 367, 400 (Former 5th Cir. June 1981), *on reconsideration in part sub nom. United States v. Holt*, 650 F.2d 651 (Former 5th Cir. July 1981), *and on reh'g*, 681 F.2d 952 (Former 5th Cir. 1982), *aff'd sub nom. Russello v. United States*, 464 U.S. 16 (1983).

*Data Servs., Inc. v. Becher*, 829 F.2d 286, 290–91 (1st Cir. 1987). Plaintiffs' conclusory assertion

here that an eBay employee said something false about EcommerceBytes fails this requirement.[7]

*Obstruction of Justice.* To plead obstruction of justice under 18 U.S.C. § 1510, *see* Compl.

¶ 267(d), Plaintiffs must allege either that Defendants attempted to obstruct justice "by means of

bribery," 18 U.S.C. § 1510(a), or that Defendants were "officer[s] of a financial institution," *id.*

§ 1510(b). The complaint, however, does neither. *See* Compl. ¶ 267(d). Plaintiffs therefore fail

to adequately plead violations of § 1510.

Plaintiffs' allegations are likewise insufficient to plead obstruction under 18 U.S.C. § 1503.

*See id.* ¶¶ 249, 264. To violate that provision, a defendant must have notice of a "pending judicial

proceeding" and corruptly obstruct or influence, or endeavor to obstruct or influence, that

proceeding. *United States v. Acevedo*, 882 F.3d 251, 257 (1st Cir. 2018); *see United States v.*

*Aguilar*, 515 U.S. 593, 599 (1995) ("[I]t is not enough that there be an intent to influence some

ancillary proceeding, such as an investigation independent of [a] court's or grand jury's

authority."). Here, however, the complaint fails to allege that Defendants knew of or sought to

obstruct any pending judicial proceeding. Accordingly, the complaint fails to adequately plead

this predicate as well.

Ultimately, the only racketeering predicates Plaintiffs adequately plead relate to the GSR

Defendants' witness tampering, in violation of 18 U.S.C. § 1512. *See* Compl. ¶ 267(e). But those

acts constitute an even briefer and narrower scheme than that alleged by Plaintiffs and therefore

even more clearly fail to establish continuity for the reasons set forth above.

---

[7] In addition, Plaintiffs' allegation that the first predicate act of the alleged RICO conspiracy to silence them occurred in 2009, Compl. ¶ 266(a)(i), directly contradicts their allegation that "[r]esistance to the site [EcommerceBytes], and its reporting began in May of 2012," *id.* ¶ 42.

> ### 2.   Plaintiffs' Allegations Do Not Establish Open-Ended Continuity

Plaintiffs' allegations also fail to establish open-ended continuity.  To establish open-ended continuity, a complaint must "show[] that the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future or are part of an ongoing entity's regular way of doing business."  *Home Orthopedics*, 781 F.3d at 531 (cleaned up).  Plaintiffs' complaint does neither.

*First*, the alleged racketeering acts do not include a specific threat of repetition.  As shown above, Plaintiffs plead that the alleged scheme had a clear and terminable goal of "harassing, threatening, intimidating, and silencing [Plaintiffs], so that they would cease reporting on eBay." Compl. ¶ 249; *accord id.* ¶ 263. "[S]chemes which have a clear and terminable goal," however, "have a natural ending point … [and] therefore cannot support a finding of any specific threat of continuity that would constitute open-ended continuity."  *Efron*, 223 F.3d at 20 (alterations in original) (quoting *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 782 (7th Cir. 1994)). Here, as in *Giuliano*, once Defendants' alleged "singular objective" of stopping Plaintiffs' reporting was "achieved, the illegal scheme, as alleged, would end."  *Giuliano*, 399 F.3d at 391; *see generally United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995) (noting that, "in cases concerning alleged racketeering activity in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property, the courts generally have found no threat of continuing criminal activity arising from conduct that extended over … periods [of many months]").

To sidestep this problem, Plaintiffs insinuate that Defendants' actions were indicative of how Wenig and Wymer handled bad press generally.  They allege that, in October 2018, Wenig and Wymer "intimidated a YouTube journalist into removing a negative YouTube video about the

company," and that, in April 2019, they "conspired as to ways to attack the Wall Street Journal" following an article discussing Wenig's compensation. Compl. ¶¶ 266(b)(i), (iii). To establish a threat of repetition, however, a plaintiff must offer some "suggestion that defendants used similar [illegal] means" in other contexts. *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 31 (1st Cir. 1987) (finding no pattern where "[t]here is no suggestion that defendants used similar means to obtain other subcontracts, or that they bribed anyone else"). Plaintiffs have failed to do so here.

The complaint's vague allegations at most show that Wenig and Wymer sought to tamp down negative press, not that they ever engaged in racketeering activity with respect to YouTube or the *Wall Street Journal*. As a result, the complaint offers "nothing to suggest that the defendants would seek to repeat their [alleged racketeering activity] in … similar business settings." *Efron*, 223 F.3d at 19; *accord Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 233 (1st Cir. 2003) ("If Kenda had produced evidence that the defendants had plans to take over another company or pool league *in the same fraudulent manner*, they might have had a stronger argument [for open-ended continuity]." (emphasis added)). Moreover, both Wenig and Wymer "have since left their control positions" at eBay, which further negates any "realistic prospect that the association-in-fact enterprise will continue to operate into the future or that it is likely to conduct further racketeering activity." *Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*, 419 F. Supp. 3d 176, 194 (D. Mass. 2019), *aff'd on other grounds*, 990 F.3d 31 (1st Cir. 2021).

*Second*, for similar reasons, Plaintiffs also fail to adequately allege that "racketeering activity might be a 'regular way of conducting [eBay's] ongoing legitimate business.'" *Efron*, 223 F.3d at 19 (quoting *H.J. Inc.*, 492 U.S. at 243). Plaintiffs attempt to make this showing by alleging that the GSR Defendants had the "background," "experience," and "sophistication" to carry out the "type of conduct that occurred here." Compl. ¶ 266(b)(iv)–(vii). But, as with the YouTube

18

and *Wall Street Journal* allegations, these allegations fail to identify any racketeering activity directed at anyone other than Plaintiffs.  Rather, Plaintiffs seek to rely only on the "hypothetical possibility of further predicate acts" based on the theory that "once a RICO violator, always a RICO violator"—a theory that, if accepted, "would deprive the pattern requirement of all meaning." *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1264 (D.C. Cir. 1995).  Fundamentally, the alleged acts of racketeering activity "all relate to a single, discrete scheme to [silence Plaintiffs], which is generally not enough to establish open-ended continuity." *Sterling Suffolk*, 419 F. Supp. 3d at 195; *see Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 407 (S.D.N.Y. 2013) (finding that allegations of "six instances in which [a watch company], a business that has been operating out of New York City for eight years, has purportedly defrauded its customers into buying used watches on the premise that they were new" are "insufficient to make out a claim of racketeering based on a theory that such fraud was [the defendants'] regular way of conducting their business").

### C.   The Complaint Fails to Adequately Allege that Defendants Operated or Conducted the Affairs of the eBay/PFC Enterprise

Finally, Plaintiffs' RICO claim also fails to the extent it relies on an alleged "eBay/PFC Enterprise" because it does not adequately allege that Defendants were conducting the affairs of this enterprise, as opposed to the affairs of eBay and PFC individually.  Indeed, Plaintiffs' linkage of eBay and PFC rests entirely on the allegation that one GSR Defendant was a contractor formally employed by PFC.  *See* Compl. ¶ 26.  Plaintiffs' allegations show only that eBay and PFC "had a commercial relationship, not that they had joined together to create a distinct entity for purposes of [intimidating and harassing Plaintiffs]." *United Food & Commercial Workers Union & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013).

The Seventh Circuit confronted a similar issue in *United Food*. *United Food* involved a RICO claim alleging that Walgreens and Par Pharmaceuticals had carried out the affairs of an association-in-fact enterprise comprising "Walgreens, Par [Pharmaceuticals], and management personnel from the two companies," which was formed to "profit[] from illegally substituting Par's more expensive dosage forms of ranitidine and fluoxetine for the cheaper dosage forms actually prescribed." *Id.* at 854.  The plaintiffs based their claim on allegations that Walgreens and Par had engaged in "various communications … in which Par proposed the drug-switching program and Walgreens agreed to implement it," that Par had "manufactured the expensive dosage forms," and that "Walgreens rigged its internal computer systems automatically to switch all ranitidine and fluoxetine prescriptions to the expensive dosage form." *Id.*  The Seventh Circuit held that the plaintiffs failed to "adequately allege that Walgreens and Par were conducting the affairs of this [enterprise]" because "nothing in the complaint reveals how one might infer that these communications or actions were undertaken on behalf of the *enterprise* as opposed to on behalf of Walgreens and Par in their individual capacities, to advance their individual self-interests." *Id.* The court observed that "[t]he complaint does not allege, for instance, that officials from either company involved themselves in the affairs of the other," *id.*, or that "profits from the illegal drug-switching scheme were siphoned off to the [alleged] enterprise or to individual enterprise members," *id.* at 855.  The court acknowledged that the allegations "do not entirely rule out the inference that Walgreens and Par were acting in concert on behalf of a shadow enterprise while maintaining the outward appearance of a normal commercial relationship," but concluded that "there is ultimately not enough in this complaint to elevate that inference from a 'sheer possibility' to something that is 'plausible on its face,'" given that the "activities the complaint describes are entirely consistent with Walgreens and Par each going about its own business." *Id.*

The same reasoning applies here, where the complaint offers even less of a basis for inferring that Defendants' actions were undertaken on behalf of the alleged eBay/PFC enterprise, rather than on behalf of eBay and PFC individually.  The complaint does not allege that eBay and PFC involved themselves in one another's affairs, coordinated at any supervisory level regarding the Individual Defendants' alleged actions, or established any particular management or financial arrangement related to the alleged enterprise.  The sole linkage between the two companies—PFC hired and formally employed an eBay contractor, *see* Compl. ¶¶ 26, 35—reflects only a "normal commercial relationship," *United Food*, 719 F.3d at 855, and at most establishes a "sheer possibility" that eBay and PFC "were acting in concert on behalf of a shadow enterprise" instead of simply "each going about its own business," *id.*  Plaintiffs' failure to plead a sufficient basis for inferring that Defendants' actions were undertaken on behalf of the alleged eBay/PFC enterprise provides an additional ground for dismissal.

## II.    The Complaint Fails to State a Claim for Vandalism (Count VIII)

Plaintiffs assert a claim for "Vandalism" against all Defendants for "defac[ing], mutilat[ing], vandaliz[ing] and injur[ing] the Steiners' property. Compl. ¶ 329.  But Massachusetts does not provide a standalone cause of action for vandalism.  Massachusetts makes vandalism a crime, of course, *see* Mass. Gen. Laws ch. 266, § 126A, but "[i]t is clear that a plaintiff may not assert criminal claims against a defendant in a civil action," *Fontanez v. City of Worcester*, No. 09-40203-FDS, 2010 WL 4056078, at *3 (D. Mass. Oct. 15, 2010).  Rather, damages from vandalism may be recoverable through a claim for trespass, which Plaintiffs have brought here. *See, e.g.*, *Cranshaw Constr. of New England, L.P. v. Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, AFL-CIO, Local No. 7*, 891 F. Supp. 666, 675 (D. Mass. 1995). Accordingly, Plaintiffs' standalone vandalism claim should be dismissed.

### III.     The Complaint Fails to State a Claim for False Imprisonment (Count VII)

The complaint also fails to state a claim for false imprisonment.  The elements of false imprisonment are (1) intentional and (2) unjustified (3) confinement of a person, (4) directly or indirectly, (5) of which the person confined is conscious or is harmed by such confinement.  *See Ball v. Wal-Mart, Inc.*, 102 F. Supp. 2d 44, 55 (D. Mass. 2000) (citing Restatement (Second) of Torts § 35 (1965)).  Here, Plaintiffs' allegations are insufficient on two independent grounds: they fail to adequately allege confinement and intent.

*First*, to allege adequately false imprisonment, the "confinement within the boundaries fixed by the [defendant] must be complete."  Restatement (Second) of Torts § 36; *see also id.* § 40 cmt. c (explaining that to allege confinement by threats of physical force, the alleged victim "must submit to the threat by remaining within the limits fixed by the actor in order to avoid or avert force threatened").  As a matter of law, Plaintiffs cannot state a claim for false imprisonment in their home if they were able to, and did, leave it.  *See Kamayou v. Univ. of Mass. Lowell*, No. 16-cv-10098-IT, 2018 WL 4609130, at *8 (D. Mass. Sept. 7, 2018) (concluding at summary judgment that the plaintiff was not confined because he actually left the office), *report and recommendation adopted*, 2018 WL 4600646 (D. Mass. Sept. 25, 2018); *O'Neil v. DaimlerChrysler Corp.*, 538 F. Supp. 2d 304, 321–22 (D. Mass. 2008) (finding that plaintiff could not establish confinement where "there is no evidence that [plaintiff] … attempted to leave and was unable to do so"); *see also Carden v. Klucznik*, 775 F. Supp. 2d 247, 249 (D. Mass. 2011) (explaining that, on a motion to dismiss, "a court will not accept as true any facts that are 'conclusively contradicted by plaintiffs' concessions or otherwise'").  Here, the complaint explicitly alleges that Mr. Steiner in fact left the house during the period when the Steiners were receiving threatening messages and packages.  *See* Compl. ¶¶ 113, 134–135.  These allegations foreclose the claim.

*Second*, the complaint also fails to allege adequately that the Defendants intended to confine the Steiners.  "[T]he gist of the common law tort [of false imprisonment] is conduct by the [defendant] which is intended to, and does in fact, 'confine' another 'within boundaries fixed by the [defendant]' …."  *McCann v. Wal-Mart Stores, Inc.*, 210 F.3d 51, 53 (1st Cir. 2000) (quoting Restatement (Second) of Torts § 35).  Here, although the complaint alleges that the Steiners were "too fearful to leave their property," Compl. ¶ 319, it alleges no facts indicating that Defendants, either expressly or implicitly, "fixed" any "boundaries."  The GSR Defendants' conduct, awful as it was, did not threaten "to apply physical force to [Plaintiffs] immediately upon [Plaintiffs'] going or attempting to go beyond" their home.  Restatement (Second) of Torts § 40.  As in *O'Neil*, Defendants "did not place [Plaintiffs] anywhere, did not touch [Plaintiffs] and did not tell [Plaintiffs] that [they] could not leave."  538 F. Supp. 2d at 322 (concluding that, without such evidence, plaintiff's feeling that "he could not leave his office" due to the defendants' actions did not establish that defendants intended to confine him there).  Given the absence of facts indicating that Defendants intended to confine them to their home, Plaintiffs' false imprisonment claim must be dismissed.

## IV.    The Complaint Fails to Allege a Violation of Mass. Gen. Laws Chapter 93A, §11 (Count X)

As pleaded, Plaintiffs' claim that eBay violated Mass. Gen. Laws ch. 93A, §11 fails because Plaintiffs do not sufficiently allege that any unfair or deceptive acts or practices occurred in the context of "trade or commerce" between themselves and eBay.  Chapter 93A makes it unlawful to engage in "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, § 2.  To state a § 11 claim based on unfair or deceptive acts, a plaintiff must allege that such acts occurred during "a commercial transaction between a person engaged in trade or commerce and another person engaged in trade or commerce, such that

they were acting in a 'business context.'" *Milliken & Co. v. Duro Textiles, LLC*, 887 N.E.2d 244, 259 (Mass. 2008); *see Rafferty v. Merck & Co.*, 92 N.E.3d 1205, 1223 n.7 (Mass. 2018) ("[C]laims under § 11 require not only that the defendant's conduct occur in 'trade or commerce' but also that there be a commercial transaction between the parties."). Thus, courts analyzing a 93A claim must first determine "that there [is] a commercial transaction" between the parties. *Szalla v. Locke*, 657 N.E.2d 1267, 1269 (Mass. 1995).

Here, Plaintiffs do not sufficiently allege a commercial transaction between themselves and eBay. "A transaction is 'commercial' for the purposes of § 11 if it involves the 'arm's-length' exchange of services for compensation." *Trs. of Bos. Univ. v. ASM Commc'ns, Inc.*, 33 F. Supp. 2d 66, 76 (D. Mass. 1998) (citing *Linkage Corp. v. Trs. of Bos. Univ.*, 679 N.E.2d 191, 207 (Mass. 1997)). Plaintiffs do not allege any transaction meeting this standard. They identify no "commercial relationship—i.e., that of buyer and seller of goods or services" that ever existed between themselves and eBay. *Steele v. Kelley*, 710 N.E.2d 973, 984 (Mass. App. Ct. 1999). Accordingly, "no c. 93A, § 11, claim can be maintained" here. *Id.*

Instead of identifying a commercial transaction, Plaintiffs attempt to base their § 11 claim on the allegation that EcommerceBytes is a "must-read for businesses like eBay" and that "[b]y and through [its] employees and contractors, Defendant[] eBay … [is a] subscriber[] and/or reader[] of EcommerceBytes." Compl. ¶ 345. This allegation, however, is insufficient for two reasons.

*First*, it conspicuously fails to allege any actual *exchange* between Plaintiffs and eBay. *See ASM Commc'ns*, 33 F. Supp. 2d at 76. The complaint never alleges that any eBay employee, let alone eBay itself, paid for any subscription to EcommerceBytes or otherwise compensated

Plaintiffs in exchange for property or services.  In the absence of such an exchange, a mere subscription to EcommerceBytes does not constitute a commercial transaction.

*Second*, Massachusetts courts have already held that merely purchasing a publication is insufficient to support a § 11 claim.  In *Johnson v. Republican Co.*, 1987 Mass. App. Div. 85, 88 (1987), the court held that "[a] person who purchases a news publication cannot rightfully be said to be engaging in 'trade' or 'commerce' within the meaning of Chapter 93A."  That reasoning controls here, where Plaintiffs base their § 11 claim on the allegation that eBay, through its employees, subscribes and/or reads their publication.  Otherwise, nearly every subject of media reporting—from businesses to politicians to private citizens—could be said to be in a "business relationship" with the outlets that report on them.  Because Plaintiffs fail to allege any commercial transaction between themselves and eBay, let alone a sufficiently significant transaction, their § 11 claim must be dismissed.

*Finally*, to the extent Count X is sufficiently pleaded, Plaintiffs' prayer for emotional damages under § 11 must be dismissed.  Section 11 provides a right of action to "'[a]ny person who engages in the conduct of any trade or commerce and who suffers *any loss of money or property*, real or personal,' as a result of the unfair or deceptive act or practice … of another person who engaged in trade or commerce."  *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 7 N.E.3d 1066, 1076 (Mass. 2014) (alteration in original and emphasis added) (quoting Mass. Gen. Laws ch. 93A, § 11).  "Such monetary or property loss constitutes the 'actual damages' to which a prevailing plaintiff is entitled …."  *Id.*; *see also Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250, 255 (1st Cir. 2010) (concluding that "injury under Chapter 93A means economic injury in the traditional sense").  Emotional damages are unavailable.  *See Morse v. Mut. Fed. Sav. & Loan Ass'n of Whitman*, 536 F. Supp. 1271, 1281–82 (D. Mass. 1982) (holding that emotional damages

are unavailable under § 11); *Halper v. Demeter*, 610 N.E.2d 332, 335 (Mass. App. Ct. 1993) (explaining that § 11 does not provide recovery for "such intangibles as a right to a sense of security, to peace of mind, or to personal liberty").  Here, Plaintiffs allege that they "continue to suffer severe emotional distress" from Defendants' alleged unfair and deceptive acts and practices. Compl. ¶ 350.  Because emotional damages are not recoverable under § 11, this Court should dismiss Count X to the extent that it seeks such damages.[8]

## V.   The Complaint Fails to State a Claim for Tortious Interference with Business Relations (Count XI)

To plead a claim for tortious interference with business relations, a plaintiff must allege that: (1) the plaintiff had an advantageous relationship with a third party; (2) the defendant knowingly induced a breaking of that relationship; (3) the alleged interference was intentional and improper in motive or means; and (4) the defendant's actions harmed the plaintiff.  *Blackstone v. Cashman*, 860 N.E.2d 7, 12–13 (Mass. 2007).  No tortious interference claim exists unless the plaintiff "show[s] that the defendant … induced a party to breach a contract or not to enter into or continue a business relationship, resulting in damage."  *Buster v. George W. Moore, Inc.*, 783 N.E.2d 399, 414 (Mass. 2003).

Here, the complaint's tortious interference count fails because Plaintiffs do not allege that eBay actually "induced a party to breach a contract or not to enter into or continue a business relationship."  *Id.*   Instead, they allege that their "established relationships with numerous

---

[8] Courts in this district routinely dismiss improper damages theories under Rule 12(b)(6).  *See, e.g.*, *Lavery v. Restoration Hardware, Inc.*, No. 17-10856, 2018 WL 1524398, at *1 (D. Mass. Mar. 28, 2018); *McElroy v. City of Lowell*, 741 F. Supp. 2d 349, 356–57 (D. Mass. 2010); *Beebe v. Williams Coll.*, 430 F. Supp. 2d 18, 22 (D. Mass. 2006) (citing cases).  However, some courts have resolved such issues under Rule 12(f), through motions to strike.  *See, e.g.*, *Composite Co. v. Am. Int'l Grp., Inc.*, 988 F. Supp. 2d 61, 80 (D. Mass. 2013).  eBay respectfully requests that the Court construe this request as a motion to strike to the extent it regards Rule 12(f) as the appropriate procedural vehicle.

advertisers, clients and businesses that utilized EcommerceBytes' services" were harmed because these entities were "misled into believing" certain negative views of Plaintiffs and because "[o]nline sellers *now fear doing business* with the Plaintiffs.   Compl. ¶¶ 354–355 (emphasis added).   Such "[a]llegations that the defendant's activities 'jeopardized' the plaintiff's existing or anticipated relationships are not enough." *Vranos v. Skinner*, 930 N.E.2d 156, 165 (Mass. App. Ct. 2010); *Hutchings v. City of Gardner*, No. 20092074, 2010 WL 653968, at *2 (Mass. Super. Ct. Jan. 4, 2010) (dismissing tortious interference with business relations claim because complaint failed to allege that any advantageous relations "were in fact terminated," a "required element" of the claim).   Plaintiffs conspicuously stop short of alleging that any of the "numerous advertisers, clients and businesses" actually ceased doing business with them.   This failure to allege that eBay induced a party to breach or terminate its relationship with Plaintiffs is fatal to Plaintiffs' tortious interference claim.

To be sure, the 366-paragraph complaint mentions once that "pre-existing customers [have] ceased contracting with the Steiners."  Compl. ¶ 217.  But this threadbare allegation merely recites an element of a tortious interference claim—that third parties ceased business relationships with Plaintiffs—and it is well-established that a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678. Accordingly, courts have dismissed tortious interference claims based on similarly conclusory allegations.  *See, e.g.*, *Hallal v. Vicis Cap. Master Fund Ltd.*, No. 12-10166-NMG, 2013 WL 1192384, at *21 (D. Mass. Feb. 25, 2013) (recommending dismissal of tortious interference claim because allegations that defendant induced a "breaking" of relationships with "a multitude of third party businesses" are "insufficient to comply with *Twombly*").  The Court should do likewise here.

**VII.    The Complaint Fails to State a Claim for Stalking (Count II)**

Plaintiffs bring a stalking claim under California Code of Civil Procedure Section 1708.7. This claim must be dismissed, however, because Massachusetts law applies here, and Massachusetts does not recognize a standalone cause of action for stalking.

Plaintiffs' stalking claim presents a conflict of laws because Section 1708.7 has "no parallel in Massachusetts law," *Levin v. Dalva Bros. Inc.*, 459 F.3d 68, 74 (1st Cir. 2006), which protects Massachusetts residents from stalking through criminal laws and traditional tort claims.  To resolve this conflict, the Court must apply the choice-of-law principles of the forum state, Massachusetts. *See id.* at 73.  "Massachusetts applies a 'functional approach to choice of law,'" *id.* at 74, that "is explicitly guided by the Restatement (Second) of Conflict of Laws (1971)," *id.* (quoting *Clarendon Nat'l Ins. Co. v. Arbella Mut. Ins. Co.*, 803 N.E.2d 750, 752 (Mass. App. Ct. 2004)).

The Restatement factors relevant to the general choice of law analysis include:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).  In applying these principles to tort actions, the Restatement specifies four factors to take into account: (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) the "residence," "place of incorporation and place of business of the parties," and (4) "the place where the relationship, if any, between the parties is centered."  *Id.* § 145.

Here, all four factors in the Restatement's tort analysis point to Massachusetts law.  First, according to the complaint, Plaintiffs suffered injury in Massachusetts from the alleged stalking. *See id.* cmt. e.  Second, notwithstanding allegations of some wrongful conduct in California,

Defendants' most egregious acts of "physical[] surveilling" were in Massachusetts.  Compl. ¶ 234.
Indeed, Plaintiffs themselves characterize the same allegations that support their stalking claim as
"occur[ing] primarily and substantially in the Commonwealth of Massachusetts."  *Id.* ¶¶ 346–47.
And in any event, where a defendant's conduct and a plaintiff's injury take place in different states,
"the law of the state where the injury occurred 'usually' applies," especially where, as where, the
place of injury is also where the plaintiffs are domiciled and reside.  *Burleigh v. Alfa Laval*, *Inc.*,
313 F. Supp. 3d 343, 353–54 (D. Mass. 2018) (citing Restatement (Second) of Conflicts of Laws
§ 146 cmt. e).  Third, both Plaintiffs' residence and place of business are in Massachusetts, whereas
eBay does business from California but is incorporated in Delaware.  And fourth, to the extent
Plaintiffs allege the parties had any preexisting relationship, it was centered on Plaintiffs' business
in Massachusetts.  *See* Compl. ¶¶ 42, 345.

    The Restatement's general choice of law factors also favor Massachusetts law here.  First,
applying Massachusetts law serves the needs of the interstate system because it would be highly
"anomalous for [Massachusetts] to insist on providing greater benefits to its citizens under another
state's law than it provides to its citizens under its own law."  *Burleigh*, 313 F. Supp. 3d at 357.
Second, Massachusetts' substantial interest in protecting its own residents according to its own
laws overrides any interest California may have in deterring wrongful conduct merely "directed"
from within its borders.  Compl. ¶ 234; *see Burleigh*, 313 F. Supp. 3d at 354 (interests of state
where injury took place and plaintiff resided were weightier than interests of state where
defendants' conduct took place).  California's interest is particularly weak here because Section
1708.7 is expressly "for the protection of the health, safety, and welfare of the people of the State
of California," Cal. Civ. Code § 1708.7(g), not out-of-state plaintiffs.

Third, applying Massachusetts law also promotes predictability and simplifies judicial determinations.  In general, applying the law of the state where plaintiff's injury occurred yields predictable results because "the state where the injury occurred will usually be readily ascertainable." *Burleigh*, 313 F. Supp. 3d at 358 (quoting Restatement (Second) of Conflict of Laws § 146 cmt. c).  In this case, applying Massachusetts law is also easier for the court because Massachusetts law applies to all Plaintiffs' other tort claims. Massachusetts law also avoids the complications of dissecting Plaintiffs' allegations to determine which (if any) conduct falls within the reach of California's stalking statute.  *See Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 745 (9th Cir. 2021) (noting Section 1708.7 does not reach conduct outside California).

For all these reasons, Massachusetts law applies, and Plaintiffs' claim under California's stalking statute should be dismissed.

## VIII.   The Complaint Fails to State a Claim for Ratification (Count XII)

Plaintiffs also fail to plead facts plausibly showing that eBay ratified the Individual Defendants' alleged misconduct.  Ratification is a theory of liability that applies where a "principal acquiesces in the agent's action, or fails promptly to disavow the unauthorized conduct after disclosure of material facts." *Linkage Corp.*, 679 N.E.2d at 204.  Plaintiffs' allegations here do not plausibly allege acquiescence.  To the contrary, they show unequivocally that eBay promptly disavowed the Individual Defendants' alleged misconduct.

Plaintiffs plead that eBay investigated their allegations, and that, within a month of the Natick events, all but one of the Individual Defendants were no longer employed at eBay. Specifically, Plaintiffs allege that eBay began an internal investigation into the Individual Defendants' actions by August 26, 2019, Compl. ¶ 191; placed Baugh, Popp, and Harville on administrative leave just four days later, on August 30, *id.* ¶ 200; and, in September, fired Baugh,

Harville, Gilbert, Popp, Stockwell, and Wymer, *id.* ¶¶ 202, 206, and Wenig resigned, *id.* ¶ 205. Furthermore, the charges against Baugh and Harville state that they lied to an "eBay Internal Investigator," showing that they knew eBay did not acquiesce to their actions. *Id.* Ex. B ¶ 28; *see also id.* Ex. A. ¶ 179 (noting that Baugh, Harville, Popp, Gilbert, and Zea were "aware that eBay's legal department was attempting to investigate in response to the NPD's request for assistance"). In light of these allegations, "no reasonable inference could be drawn that would suggest [eBay] ratified [the Individual Defendants'] conduct."[9]  *Petrell v. Shaw*, 453 Mass. 377, 384 n.5 (2009) (rejecting ratification theory as a matter of law because where defendant took "prompt action" after learning of the alleged misconduct).

Plaintiffs seem to suggest that the fact that Wenig resigned with severance is enough to plead ratification, notwithstanding all of eBay's actions to promptly disavow the Individual Defendants' actions.  *See* Compl. ¶ 205.  That suggestion cannot be correct.  Although Massachusetts does not appear to have squarely addressed the issue, other courts have held as a matter of law that ratification may not be inferred where "[t]he only evidence" of alleged ratification was that the defendant "did not terminate [the employee] but rather allowed him to voluntar[il]y resign." *Terek v. Finkbiner*, No. 3:14 CV 1391, 2015 WL 5542535, at *4 (N.D. Ohio Sept. 18, 2015); *see also Garcia ex rel. Marin v Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1203 (E.D. Cal. 2009) ("[A]n employer need not always terminate an employee in order to avoid ratification.").  In all events, it was enough for eBay, "upon ascertaining the facts, at once to disaffirm an act done in [eBay's] name." *Boice-Perrine Co. v. Kelley*, 137 N.E. 731, 733 (Mass.

---

[9] Indeed, as DOJ has noted, "eBay provided valuable assistance and cooperation with the federal investigation."  U.S. Dep't of Justice, Press Release, Six Former eBay Employees Charged with Aggressive Cyberstalking Campaign Targeting Natick Couple (June 15, 2020), https://www.justice.gov/usao-ma/pr/six-former-ebay-employees-charged-aggressive-cyberstalking-campaign-targeting-natick.

1923).  Because Plaintiffs' allegations do not plausibly show that eBay acquiesced to the alleged

misconduct, their claim for ratification should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant eBay's motion to partially dismiss the

complaint.

Dated: October 29, 2021

/s/ Jack W. Pirozzolo
Jack W. Pirozzolo (BBO #564879)
Kathryn L. Alessi (BBO #651110)
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
Telephone: (617) 223-0300
Facsimile: (617) 223-0301
jpirozzolo@sidley.com
kalessi@sidley.com

Scott T. Nonaka (*pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1285
snonaka@sidley.com

*Counsel for eBay Inc*

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2021, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


Dated: October 29, 2021                          /s/ *Jack W. Pirozzolo*
                                                 Jack W. Pirozzolo