IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

INA STEINER, *et al.*,

v.

JIM BAUGH, *et al.*

No. 21-cv-11181-DPW

**DEFENDANT JIM BAUGH'S MEMEORANDUM
IN SUPPORT OF MOTION TO DISMISS**

Defendant Jim Baugh[1] respectfully submits this memorandum in support of his Motion to Dismiss. Pursuant to Fed. R. Civ. P. 12(b)(6), the Court must dismiss the Complaint [D.E. #1] insofar as it "fail[s] to state a claim upon which relief can be granted."

**I.   The Complaint fails to state a California law "stalking" claim (Count II).**

Plaintiffs' stalking claim under California Code of Civil Procedure Section 1708.7 must be dismissed because the Complaint fails to allege "stalking" conduct in California and, in any event, Massachusetts law applies and does not recognize a civil stalking claim. Mr. Baugh adopts and incorporates by reference the arguments and authorities of Defendants Devin Wenig [D.E. #79-1 at 26-27], Steve Wymer [D.E. #84 at 11], Brian Gilbert [D.E. #88-1 at 6-7], and eBay [D.E. #90 at 28-30], which apply in equal measure to him.

**II.   The Complaint fails to state a civil RICO claim (Count III).**

   **A.   Plaintiffs lack standing to assert a RICO claim.**

Plaintiffs fail to allege an injury to "business or property" within the meaning of 18 U.S.C. § 1962(c). Mr. Baugh adopts and incorporates by reference the arguments and authorities of

---

[1] Mr. Baugh's full, true given name is "Jim" not "James."

1

Defendants Wenig [D.E #79-1 at 8-9] and Gilbert [D.E. #88-1 at 8-9], which apply in equal measure to him.

    **B.**    **The Complaint fails to establish the alleged predicate acts.**

        **1.**    **18 U.S.C. § 1951 (Hobbs Act)**

The Complaint does not allege that any defendant obtained property by "actual or threated force, or violence, or fear," or otherwise. Mr. Baugh adopts and incorporates by reference the arguments and authorities of Defendants Wenig [D.E. #79-1 at 10-11] and Wymer [D.E. #84 at 27], which apply in equal measure to him.

        **2.**    **18 U.S.C. §§ 1341 & 1343 (Mail and Wire Fraud)**

The Complaint fails to allege facts that would constitute mail or wire fraud under 18 U.S.C. §§1341 or 1343. Mr. Baugh adopts and incorporates by reference the arguments and authorities of Defendants Wenig [D.E. #79-1 at 11-13] and Wymer [D.E. #84 at 27-28], which apply in equal measure to him.

        **3.**    **18 U.S.C. §§ 1503 & 1510 (Obstruction of Justice)**

The Complaint fails to allege any facts that could conceivably constitute a violation of 18 U.S.C. §§ 1503 or 1510. Mr. Baugh adopts and incorporates by reference the arguments and authorities of Defendants Wenig [D.E. #79-1 at 13-14] and Wymer [D.E. #84 at 28], which apply in equal measure to him.

        **4.**    **18 U.S.C. § 1512 (Witness Tampering)**

Both the Complaint and the separate criminal indictment of Mr. Baugh[2] allege that he tampered with witnesses by lying to a Natick Police detective and an eBay investigator, in violation of 18 U.S.C. § 1512(b)(3). However, these allegations fail as a matter of law.

---

[2] *See United States v. Baugh, et al.*, No. 20-cr-10263-PBS, D.E. #33 (Indictment).

### a) Making false statements to witnesses does not constitute "hindering, delaying, or preventing the communication of information."

"In determining the scope of a statute, we look first to its language," giving the "words used" their "ordinary meaning." *Moskal v. United States*, 498 U.S. 103, 108 (1990) (internal quotations and citations omitted). Here, the relevant statutory language provides:

> Whoever knowingly uses intimidation, threats, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(b)(3) (emphasis added). By its terms, the statute prohibits certain conduct, such as intimidating or misleading, when undertaken with the specific intent to "hinder, delay, or prevent the communication . . . of information" related to possible federal criminal activity. Unlike 18 U.S.C. § 1001 which expressly prohibits lying about matters within the jurisdiction of the federal government, 18 U.S.C. § 1512 is only concerned with preventing the communication of information. It says nothing about making inaccurate or untruthful statements.

The statutory language "hinder, delay, or prevent" leaves no doubt that the aim of 18 U.S.C. § 1512 is to impose criminal penalties on persons who, by violence, threats, or trickery, silence witnesses and victims. The ordinary meaning of "prevent" is "to keep from happening." Merriam-Webster Online Dictionary (2021). "Hinder" and "delay," commonly mean "to hold back" or "to make slow or difficult." *Id*. To the extent any of these words might be stretched more broadly, "the canon of noscitur a sociis teaches that 'statutory words are often known by the company they keep.'" *Lagos v. United States*, 138 S. Ct. 1684, 1688-89 (2018); *see Wheeling & Lake Erie Ry. Co. v. Keach (In re Montreal, Me. & Atl. Ry., Ltd.)*, 799 F.3d 1, 8 (1st Cir. 2015). "Under this canon, 'a string of statutory terms raises the implication that the 'words grouped in list should be

given related meaning.'" *City of Providence v. Barr*, 954 F.3d 23, 34 (1st Cir. 2020) (quoting *S.D. Warren Co. v. Me. Bd. of Envtl. Prot.*, 547 U.S. 370, 378 (2006) (further internal quotation omitted)). In the context of § 1512(b)(3), all three synonyms, "hinder, delay, [and] prevent," refer to stopping or slowing "the communication . . . of information," regardless of its content.

The broader context of 18 U.S.C. § 1512 further reinforces the clear meaning of subsection (b)(3). *See United States v. Bauzo-Santiago*, 867 F.3d 13, 18 (1st Cir. 2017) ("In considering the meaning of the text, we read a legislative enactment as a whole, "since the meaning of the statutory language, plain or not, depends on context.") (quoting *United States v. Rivera*, 131 F.3d 222, 225-26 (1st Cir. 1997) (en banc) (quoting *Conroy v. Aniskoff*, 507 U.S. 511, 515 (1993))); *see United States v. Voisine*, 778 F.3d 176, 180 (1st Cir. 2015) (recognizing that "context matters"). Subsection (a)(1)(C) prohibits killing (or attempting to kill) to "prevent" communications by witnesses to law enforcement officers or judges, and subsection (a)(1)(C) prohibits using physical force (or threatening to use force) to "hinder, delay, or prevent" such communications. The paradigmatic example of an offense in violation of § 1512(a)(1)(C)1 is killing a witness so that he or she cannot testify at trial. *See, e.g., Fowler v. United States*, 563 U.S. 668 (2011).

Looking even more broadly at 18 U.S.C. § 1513 leads to the same conclusion: § 1512 prohibits preventing a witness from communicating information to federal officials, and § 1513 prohibits retaliating against a witness who does so. Mirroring § 1512(a)(1) and (2), § 1513(a) and (b) impose penalties on persons who kill (or attempt to kill) or harm (or threaten to harm) anyone for "providing to a law enforcement officer any information relating to the commission or possible commission of a Federal offense." § 1513(a)(1)(B) and (b)(2) (emphasis added). Again, "any information," includes both truthful and false information. The point is to punish people for retaliating against witnesses who talk, regardless of what those witnesses might say.

4

If any sliver of doubt remains, the heading of § 1512 "resolve[s] any textual ambiguities." *Bhd. of R.R. Trainmen v. Balt. Ohio R.R. Co.*, 331 U.S. 519, 528-29 (1947). "'[T]he title of a statute and the heading of a section' are 'tools available for resolution of a doubt' about the meaning of a statute." *Almendarez-Torres v. United States*, 523 U.S. 224, 235 (1998) (quoting *Bhd. of R.R. Trainmen*, 331 U.S. at 528-29). Here, the heading of § 1512 is "tampering with a witness, victim, or an informant" (emphasis added). The ordinary meaning of "tamper" is "to inflict physical harm, threats, intimidation, or corrupt persuasion with the goal of influencing or preventing a witness's testimony," MERRIAM-WEBSTER ONLINE DICTIONARY (2021), and "such language certainly does provide at least some evidence of the intended congressional scheme." *Chu v. Comm'r*, 486 F.2d 696, 700 (1st Cir. 1973). "Tampering" with a witness to keep him or her from talking is not the same as trying to spread misinformation or falsehoods through the witness.

In some circumstances, lying to a local police officer may be a federal crime (18 U.S.C. § 1001, perhaps), and misleading an in-house corporate investigator could conceivably constitute some sort of federal fraud (18 U.S.C. §§ 1341 or 1343, maybe). But making false statements is not the same as preventing the communication of information related to a federal investigation, and § 1512 prohibits only the latter. The offense in *United States v. Baldyga*, 233 F.3d 674 (1st Cir. 2000), illustrates the core conduct that § 1512 criminalizes. Baldyga was the target of an extensive investigation by various agencies, including the DEA, into cocaine distribution. On several occasions, a cooperating witness made "controlled purchases" at Baldyga's home. *Id*. at 678. Then, on the final occasion, Baldyga "gave him a note instructing him to remain silent and to put his hands on the wall," found a listening device that he was wearing, "point[ed] a gold colored, double barreled gun at his face," and ordered him to "leave the premises and never return." *Id.* Although Baldyga never explicitly threatened to harm the cooperating witness "should he contact federal

5

authorities," the First Circuit affirmed the conviction under § 1512(b)(3), because "the jury in this case could readily and reasonably infer that Baldyga's brandishing the gun, and holding it to [his]'s head, reflected an intent to deter [the witness] from discussing the cocaine deals with federal authorities." *Id*. at 679; *see also id*. ("The jury could also have concluded that Baldyga intended to prevent or discourage such communication when he ripped the wire away from the transmitter.").

Here, the Complaint alleges only that Mr. Baugh "lied to detectives" and "made false statements to eBay in house lawyers." Further conclusory allegations that he "used the threat of physical force" to prevent the Steiners and other members of the conspiracy from communicating with law enforcement officers lack support in any well-pleaded facts.

### b) The Complaint fails to allege that a federal investigation existed or was likely to occur.

In *United States v. Bailey*, 405 F.3d 102 (1st Cir. 2005), the First Circuit rejected the defendant's argument that "§ 1512(b)(3) requires an existing or imminent federal investigation at the time of the defendant's misleading conduct." *Id*. at 109; *see also United States v. Byrne*, 153 F.3d 1233, 1250 (1st Cir. 1998) ("By its terminology, § 1512(b)(3) does not depend on the existence or imminency of a federal case or investigation but rather on the possible existence of a federal crime and a defendant's intention to thwart an inquiry into that crime."). Nevertheless, the fact that a federal investigation need not be "existing or imminent" does not mean that lying to any investigator or interfering with a potential witness, anywhere in the United States, about any potential crime, comes within the ambit of the statute merely because a federal investigation is conceivable or remotely possible.

The required connection to a federal investigation must be a meaningful one. At a minimum, a federal investigation must be likely or probable, *United States v. Veal*, 153 F.3d 1233, 1251 (11th Cir 1998) ("For violation of § 1512(b)(3), it is sufficient if the misleading information

is likely to be transferred to a federal agent.") (emphasis added), rather than "remote, outlandish, or simply hypothetical," *United States v. Flaherty*, No. 15-cr-10127-MLW, 2015 U.S. Dist. LEXIS 152723, at *7-8 (D. Mass. Nov. 11, 2015) (quoting *Fowler*, 563 U.S. at 678). This "federal nexus" is a critical element, because without it, § 1512(b)(3) could be misread "to federalize the treatment of witness tampering in run-of-the mill cases." *United States v. Weadick*, __ F.4th __, 2021 U.S. App. LEXIS 29204, at *17 (1st Cir. Sept. 24, 2021).

In most reported cases, the circumstances made federal investigations highly likely, if not almost certain. In *Bailey*, the defendant prison guard was charged with excessive force. Given the frequency of civil rights claims under 42 U.S.C. § 1983, guards in state and local facilities understand that federal investigations are commonplace, and that witnesses "might communicate with federal officials." *United States v. Guadalupe*, 402 F.3d 409, 413 (3d Cir. 2005). The same was true in *Byrne*, which involved allegations of excessive force by a police officer. *Byrne*, 435 F.3d at 17-18. Indeed, the defendant told another officer that "the FBI was investigating the incident." *Id*. at 26. Finally, there was also no question about probable federal involvement in *Baldyga*, a federal drug case that followed a task force investigation in which the DEA participated. *See* 233 F.3d at 681. Reading these cases to hold that § 1512(b)(3) applies whenever a federal investigation is merely possible would ignore their critical factual contexts. Moreover, a "possible" investigation standard would all-but eliminate the federal investigation element of the offense.

Such an unbounded interpretation would be a dangerous mistake, because an investigation of potential federal criminal activity is almost always possible. Commentators have observed that "modern federal criminal laws . . . have become not only exceedingly numerous . . . and broad, but also . . . impossibly vague." Harvey A. Silverglate, THREE FELONIES A DAY (2009) at xxx; *see also* Mike Chase, HOW TO BECOME A FEDERAL CRIMINAL (2019) at 2 ("Congress has passed thousands

of federal criminal statutes and has allowed federal agencies like the IRS and FDA to make thousands upon thousands more rules that carry criminal penalties. These criminally enforceable rules cover everything from how runny ketchup can be to what you're allowed to do if a bird of prey takes up residence in your house."). For example, Justice Scalia cited 18 U.S.C. § 1346, the honest services fraud statute, as a vague but expansive law that "had been invoked to impose criminal penalties on a staggeringly broad swath of behavior." *Sorich v. United States*, 555 U.S. 1204, 1205 (2009) (Scalia, J., dissenting from cert. denial). Such laws "invite[] abuse by headline-grabbing prosecutors in pursuit of [people] who engage in any manner of unappealing or ethically questionable conduct." *Id*. at 1206.

In this case, the Complaint does not allege that federal authorities were likely to investigate the Steiner's reports that they received unwanted deliveries of packages and pizzas to their home, had their fence vandalized, and been followed around Natick. Those reports concern quintessential local police matters. The FBI is not typically called to track down vandals and pranksters, even ones who engage in persistent harassment. At the time when Mr. Baugh supposedly tampered with witnesses in a potential federal investigation, there was no such investigation – and none was likely to occur. Of course, a federal investigation did happen, and it led to a federal prosecution and this federal litigation. But as the allegations in this case demonstrate, unlikely things can come to pass, and that reality does not expand federal jurisdiction to reach every remote possibility.

        **C.**        **The Complaint fails to allege a "pattern" of racketeering activity.**

Mr. Baugh adopts and incorporates by reference the arguments and authorities of Defendants Wenig [D.E. #79-1 at 15-20], Wymer [D.E. #84 at 29-33], Gilbert [D.E. #88-1 at 9-14] and eBay [D.E. #90 at 8-19], which apply in equal measure to him.

    **D.**    **The Complaint fails to state a claim for RICO conspiracy.**

Mr. Baugh adopts and incorporates by reference the arguments and authorities of Defendants Wenig [D.E. #79-1 at 22-24], and Wymer [D.E. #84 at 34-35], which apply in equal measure to him.

**III.**    **The Complaint fails to state a claim under the Massachusetts Civil Rights Act ("MCRA") (Count IV).**

Plaintiffs' MCRA claim must be dismissed it does not allege that Mr. Baugh's conduct involved actual or potential physical confrontation accompanied by threat of harm and because the statute does not properly apply to interference with free speech by private actors. Mr. Baugh adopts and incorporates by reference the arguments and authorities of Defendant Gilbert [D.E. #88-1 at 14-16], which apply in equal measure to him.

**IV.**    **The Complaint fails to state a claim for false imprisonment (Count VII).**

Plaintiffs' false imprisonment claim must be dismissed because they fail to allege that they were actually confined and fail to allege that Mr. Baugh acted with the specific intent to confine them. Mr. Baugh adopts and incorporates by reference the arguments and authorities of Defendants Wenig [D.E. #79-1 at 29], Wymer [D.E. #84 at 13-14], Gilbert [D.E. #88-1 at 20-21], and eBay [D.E. #90 at 22-23], which apply in equal measure to him.

**V.**    **The Complaint fails to state a claim for Vandalism (Count VIII).**

Plaintiffs' "vandalism" claim must be dismissed because it is not a cognizable cause of action under Massachusetts law. Mr. Baugh adopts and incorporates by reference the arguments and authorities of Defendants Wenig [D.E. #79-1 at 29-30], Wymer [D.E. #84 at 14], Gilbert [D.E. #88-1 at 21],and eBay [D.E. #90 at 21], which apply in equal measure to him.

### VI. The Complaint fails to state a claim for civil conspiracy (Count IX).

The Plaintiffs' civil conspiracy claim must be dismissed under the intra-corporate conspiracy doctrine. Mr. Baugh adopts and incorporates by reference the arguments and authorities of Defendant Wymer [D.E. #84 at 17-19], which apply in equal measure to him.

### VII. The Complaint fails to state a claim under M.G.L. c. 93A, § 11 (Count X).

The Plaintiffs' c. 93A claim must be dismissed because theyh fail to allege a business relationship with Mr. Baugh or any cognizable loss of money or property. Mr. Baugh adopts and incorporates by reference the arguments and authorities of Defendants Wenig [D.E. #79-1 at 30-31], Gilbert [D.E. #88-1 at 21-24], and eBay [D.E. #90 at 23-26], which apply in equal measure to him.

### VIII. The Complaint fails to state a claim for tortious interference with business relations (Count XI).

The Plaintiffs' claim for tortious interference with business relations must be dismissed because they fail to allege how Mr. Baugh's conduct interfered with any specific business relationship. Mr. Baugh adopts and incorporates by reference the arguments and authorities of Defendants Wenig [D.E. #79-1 at 31-32], Wymer [D.E. #84 at 15], Gilbert [D.E. #88-1 at 24-25], and eBay [D.E. #90 at 26-27], which apply in equal measure to him.

### IX. The Complaint fails to state a claim for "ratification" against Mr. Baugh (Count XII).

On its face, the Complaint alleges only that eBay, Wymer, and Wenig "ratified" the conduct of Mr. Baugh and others.  It does not purport to make any ratification claim against Mr. Baugh.

### CONCLUSION

For the foregoing reasons, Counts II, II, IV, VII, VIII, IX, X, XI, and XII should be dismissed as to Mr. Baugh.

Respectfully submitted,

**JIM BAUGH**

By his attorneys,

*/s/ William W. Fick*
William W. Fick (BBO #650562)
Daniel N. Marx (BBO #674523)
Amy Barsky (BBO #601111)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA  02110
(857) 321-8360
*wfick@fickmarx.com*
*dmarx@fickmarx.com*
*abarsky@fickmarx.com*

Dated: November 5, 2021

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 5, 2021.

*/s/ William W. Fick*