# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

INA STEINER, DAVID STEINER, and
STEINER ASSOCIATES, LLC,

      Plaintiffs,

v.

EBAY INC., ET AL.,

      Defendants.

**CIVIL ACTION NO.: 1:21-CV-11181-DPW**

LEAVE TO FILE GRANTED OCTOBER 29, 2021

---

## DEFENDANT PROGRESSIVE F.O.R.C.E. CONCEPTS, LLC'S <u>MEMORANDUM OF LAW IN SUPPORT OF</u> <u>MOTION TO DISMISS</u>

Tory A. Weigand, BBO #548559
tweigand@morrisonmahoney.com
Mathew J. Holmes, BBO #675994
mholmes@morrisonmahoney.com
Morrison Mahoney LLP
250 Summer Street
Boston, MA  02210-1181
(617) 439-7500
*Counsel for Progressive F.O.R.C.E.*
*Concepts, LLC*

# TABLE OF CONTENTS

Factual Allegations in Plaintiffs' Complaint Pertinent to PFC ........................................................2

ARGUMENT ....................................................................................................................................5

I.   The Complaint Fails To State A Plausible RICO Claim
     As to PFC...............................................................................................................................5

     A.   Plaintiffs Lack Standing..............................................................................................6

     B.   PFC Cannot Be Both A RICO Enterprise
          And A RICO Person ....................................................................................................7

     C.   The Complaint Fails to Adequately Allege An
          Association-In-Fact Or That PFC Operated Or
          Conducted The Affairs Of Any eBay/PFC Enterprise.............................................8

     D.   The Complaint Fails to Adequately Allege Either
          Open Or Closed Ended Continuity Required For
          A Pattern Of Racketeering Activity.......................................................................10

     E.   The Complaint Fails To Allege Predicate Acts
          Or Any Viable RICO Conspiracy ..........................................................................14

II.  Plaintiffs Fail To Establish That This Court Has
     Personal Jurisdiction Over PFC .........................................................................................14

III. The Complaint Fails To State Any Viable State Based Claim
     As To PFC............................................................................................................................17

     A.   The Complaint Fails To Allege That PFC Controlled,
          Directed, Ratified Or Was Even Aware Of Zea's Actions ...................................18

     B.   The Complaint Is Devoid Of Any Factual
          Allegation Supporting Any Assertion That
          Zea's Alleged Actions Were Within The Scope Of
          Any Agency With PFC ...........................................................................................23

     C.   The Complaint Fails To State A Claim For
          Vandalism Or Trespass ..........................................................................................24

     D.   The Complaint Fails To State A Claim For Violations
          Of The Massachusetts Civil Rights Act ................................................................25

     E.   The Complaint Fails To State A Claim For False
          Imprisonment ........................................................................................................26

F.     The Complaint Fails To Allege A Violation Of
G.L. c. 93A .................................................................................28

G.    The Complaint Fails To State A Claim For Tortious
Interference With Business Relations ...............................................29

H.    The Complaint Fails To State A Claim For
Stalking .........................................................................................30

I.     The Complaint Fails To State A Claim For
Civil Conspiracy ...........................................................................32

J.     The Complaint Fails To State A Claim For
Defamation.....................................................................................33

K.    The Complaint Fails To State A Claim For
Ratification ....................................................................................34

CONCLUSION..................................................................................................35

# Table of Authorities

*Afonso v. City of Boston,*
    587 Supp. 1342 (D. Mass. 1984) ............................................................19n.13

*Arzuaga–Collazo v. Oriental Fed. Sav. Bank,*
    913 F.2d 5, 6 (1st Cir.1990) .......................................................................7

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 (2009) ...................................................................5n.3, 18

*Ball v. Wal-Mart, Inc.,*
    102 F. Supp. 2d 44 (D. Mass. 2000) ............................................................26

*Bally v. Ne. Univ.,*
    403 Mass. 713 (1989) ...............................................................................26

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 570 (2007 ......................................................................5n.3

*Blackstone v. Cashman,*
    860 N.E.2d 7 (Mass. 2007) ........................................................................29

*Boit v. Gar-Tec Prods., Inc.,*
    967 F.2d 671 (1st Cir. 1992) ..............................................................14n.10, 16

*Boyle v. United States,*
    556 U.S. 938, 946 (2009) ..........................................................................8

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ......................................17

*Burleigh v. Alfa Laval, Inc.,*
    313 F. Supp. 3d 343 (D. Mass. 2018) .................................................32, 32n.17

*Buster v. Moore,*
    No. CIV. A. 97-637-F, 2000 WL 576363, at *22 (Mass. Super. Apr. 28, 2000) ..............25

*Buster v. George W. Moore, Inc.,*
    783 N.E.2d 399 (Mass. 2003) .....................................................................29

*Buscaglia v. Vasarhelyi,*
    2014 WL 4187615 (D. P.R. 2014) ...............................................................7

*Carden v. Klucznik,*
    775 F. Supp. 2d 247, 249 (D. Mass. 2011) ....................................................27

*Carter's of New Bedford v. Nike, Inc.,*
    No. 13-11513-DPW, 2014 WL 1311750, at *1–2 (D. Mass. Mar. 31, 2014) ...............5n.3

100706226

*Chlebda v. H.E. Fortna & Nro Inc.,*
609 F.3d 1022 (1st Cir. 1979) .......................................................................16

*Circiello v. Alfano,*
612 F. Supp. 111 (D. Mass. 2009) ...................................................................6

*Clarendon Nat'l Ins. Co. v. Arbella Mut. Ins. Co.,*
803 N.E.2d 750, 752 (Mass. App. Ct. 2004) ................................................31

*Cranshaw Constr. of New England, L.P. v. Int'l Ass'n of Bridge, Structural & Ornamental*
*Ironworkers, AFL-CIO, Local No. 7,*
891 F. Supp. 666, 675 (D. Mass. 1995). .......................................................25

*City of New York v. Smokes-Spirits.com, Inc.,*
541 F.3d 425 (2d Cir. 2008)........................................................................10n.6

*Copia Commc'ns, LLC v. AMResorts, L.P.,*
812 F.3d 1, 4 (1st Cir. 2016).........................................................................15

*Crichton v. Golden Rule Ins. Co.,*
576 F. 3d 392 (7th Cir. 2009) ...............................................................9-10, 10

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,*
290 F.3d 42 (1st Cir. 2002)........................................................................15, 17

*Denton v. Yazoo & Miss. Valley R.R. Co.,*
284 U.S. 305, 308 (1932)..........................................................................19n.3

*Dep't of Economic Development v. Arthur Anderson & Co.,*
924 F. Supp. 449 (S.D.N.Y. 1996) ...................................................................8

*Dias v. Brigham Med. Assocs., Inc.,*
438 Mass. 317 (2002) .......................................................................................23

*Dilbert v. Hanover Ins. Co.,*
825 N.E. 2d 1071 (Mass. App. Ct. 2005) .....................................................25

*Dismukes v. Brandeis Univ.,*
2021 WL 15188828 (1st Cir. 2021)...............................................................33

*Efron v. Embassy Suites (P.R.), Inc.,*
223 F.3d 12 (1st Cir. 2000)........................................................6, 12, 12n.8, 13

*Feinstein v. Resol. Tr. Co.,*
942 F.2d 34 (1st Cir. 1991).............................................................................12

*Fiorillo v. Winiker,*
85 F. Supp. 3d 565 (D. Mass. 2015) ..............................................................34

100706226

*Fontanez v. City of Worcester,*
   No. 09-40203-FDS, 2010 WL 4056078, at *3 (D. Mass. Oct. 15, 2010)........................24

*Foster–Miller, Inc. v. Babcock & Wilcox Canada,*
   46 F.3d 138 (1st Cir. 1995)......................................................................14n.10

*Freeman v. Plan. Bd. of W. Boylston,*
   419 Mass. 548 (1995) ...........................................................................26

*Gabriel v. Superstation Media, Inc.,*
   2014 WL 551009 (D. Mass. 2014) ...............................................................23

*Galloway's Case,*
   354 Mass. 427 (1968) ........................................................................19n.13

*Greenspan v. Random House Inc.,*
   859 F. Supp. 2d 206 (D. Mass. 2012) ............................................................34

*Grogan v. Platt,*
   835 F.2d 844 (11th Cir. 1988) ...............................................................6, 7n.5

*Giuliano v. Fulton,*
   399 F.3d 381, 386–87 (1st Cir. 2005) ...................................................10, 11, 12n.8

*Hallal v. Vicis Cap. Master Fund Ltd.,*
   No. 12-10166-NMG, 2013 WL 1192384, at *21 (D. Mass. Feb. 25, 2013).....................30

*Hemi Group LLC. v. City of New York,*
   130 S. Ct. 983 (2010).........................................................................10n.6

*H.J. Inc. v. Nw. Bell Tel. Co.,*
   492 U.S. 229 (1989)......................................................................11, 11n.7

*Home Orthopedics,*
   781 F3.2d at 529 ....................................................................11, 12n.8, 13

*Hughes v. Consol-Pa. Coal Co.,*
   945 F.2d 594 (3d Cir. 1991)......................................................................12

*Hutchings v. City of Gardner,*
   No. 20092074, 2010 WL 653968, at *2 (Mass. Super. Ct. Jan. 4, 2010) ........................30

*ICONICS, Inc. v. Massaro,*
   192 F. Supp. 3d 254 (D. Mass. 2016) ..........................................................5-6

*In re Lupron Mktg. & Sales Practices Litig.,*
   295 F. Supp. 2d 148 (D. Mass. 2003) ...........................................................7,8

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945)...................................................................................15

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.,*
    731 F.3d 556, 565-66 (6th Cir. 2013) .........................................................7n.5

*Johnson v. Republican Co.,*
    1987 Mass. App. Div. 85, 88 (1987)...............................................................29

*Kamayou v. Univ. of Mass. Lowell,*
    No. 16-cv-10098-IT, 2018 WL 4609130, at *8 (D. Mass. Sept. 7, 2018)........26

*Lawson v. FMR LLC.,*
    2012 Wl 3493859 (D. Mass. 2021) ...................................................................6

*Ledbetter v. M.B. Foster Electric, Co.,*
    354 Mass. 780 (1970) ...............................................................................19n.13

*Lerner v. Coleman,*
    485 F. Supp 3d 319 (D. Mass. 2020) ..............................................................12

*Lev v. Beverly Enterprises-Massachusetts, Inc.,*
    457 Mass. 234, 238 (2010) ..............................................................................23

*Levin v. Dalva Bros. Inc.,*
    459 F.3d 68 (1st Cir. 2006).................................................................31, 31n.16

*Libertad v. Welch,*
    53 F.3d 428 (1st Cir. 1995).................................................................................6

*Linkage Corp. v. Trs. of Bos. Univ.,*
    679 N.E.2d 191, 207 (Mass. 1997) .......................................................28, 34-35

*Mahoney v. Bank of Am., N.A.,*
    No. 10-12230-DPW, 2011 WL 3105265, at *1 (D. Mass. June 10, 2011)....5n.3

*McCann v. Wal-Mart Stores, Inc.,*
    210 F.3d 51 (1st Cir. 2000)...............................................................................27

*Midwest Grinding Co. v. Spitz,*
    976 F.2d 1016 (7th Cir. 1992) .........................................................................12

*Milliken & Co. v. Duro Textiles, LLC,*
    887 N.E.2d 244 (Mass. 2008) ..........................................................................28

*Mosko v. Raytheon Co.,*
    416 Mass. 395 (1993) .......................................................................................23

100706226

*Natale v. Espy Corp.,*
    2 F. Supp. 3d 93, 102 (D. Mass. 2014) ...........................................................................12

*N. Bridge Assocs., Inc. v. Boldt,*
    274 F.3d 38  (1st Cir. 2001)) 18 U.S.C. § 1962(c) ............................................................6

*N.E. Compounding Pharmacy Inc. Litig.,*
    2014 WL 4322409 *21-22 (D. Mass. 2014) ...................................................................23

*Nixon v. Kysela Pere Ltd.,*
    2021 WL 3700253, *5 (W.D. Va. 2021 .............................................................................18

*Noonan v. Winston Co.,*
    135 F.3d 85, 90 (1st Cir. 1998) .................................................................................15n.12

*Odishelidze v. Aetna Life & Casualty Co.,*
    853 F.2d 21, 23 (1st Cir.1988) .........................................................................................7

*O'Neil v. DaimlerChrysler Corp.,*
    538 F. Supp. 2d 304 (D. Mass. 2008) ....................................................................... 26-27

*Payton v. Abbot Labs,*
    512 F. Supp. 1031 (D. Mass. 1981) .................................................................................33

*Petrell v. Shaw,*
    453 Mass. 377 (2009) ......................................................................................................35

*Phillip Exeter Academy v. Howard Phillips Fund, Inc.,*
    196 F.3d 284 (1st Cir. 1999) ...........................................................................................17

*Planned Parenthood League of Mass., Inc. v. Blake,*
    417 Mass. 467 (1994) ................................................................................................25, 26

*Primary Care Invs., Seven, Inc. v. PHP Healthcare Corp.,*
    986 F.2d 1208, 1215 (8th Cir. 1993) ..............................................................................12

*Rafferty v. Merck & Co.,*
    92 N.E.3d 1205 (Mass. 2018) .........................................................................................28

*Reves v. Ernst & Young,*
    507 U.S. 170 (1993) ..........................................................................................................8

*Roggio v. City of Gardner,*
    2011 WL 1303141 (D. Mass. 2011) ..........................................................................18, 23

*Sawtelle v. Farrell,*
    70 F.3d 1381 (1st Cir. 1995) ...........................................................................................17

*Shofield v. First Commodity Corp. of Boston,*
    793 F. 2d 28 (1st Cir. 1986) ................................................................7,8

*Soto-Negron v. Taber Partners I,*
    339 F.3d 35, 38 (1st Cir. 2003) ..............................................................6

*Steele v. Kelley,*
    710 N.E.2d 973 (Mass. App. Ct. 1999) ................................................28

*Steep Hill Labs, Inc v. Moore,*
    2018 WL 1242182, *11 (N. D. Cal. March 8, 2018 ) ...........................31

*Sterling Suffolk Racecourse LLC v. Wynn Resorts LTD,*
    419 F. Supp 3d 176 (D. Mass. 2019) ...................................................13

*Systems Mgmt.,*
    303 F.3d at 105-06 ...........................................................................12n.8

*Szalla v. Locke,*
    657 N.E.2d 1267 (Mass. 1995) .............................................................28

*Trs. of Bos. Univ. v. ASM Commc'ns, Inc.,*
    33 F. Supp. 2d 66 (D. Mass. 1998) ......................................................28

*Thunder Studios, Inc. v. Kazal,*
    13 F.4th 736 (9th Cir. 2021) ................................................................31

*Transport-Spec Truck Service, Inc. v. Caterpillar, Inc.*
    524 F.3d 315 (1st Cir. 2008)...................................................2n.1, 5n.3

*U.S. v. Turkett,*
    452 U.S. 583 ...........................................................................................8

*United Food & Commercial Workers Union & Emps. Midwest Health Benefits Fund v. Walgreen Co.,*
    719 F.3d 849, 855 (7th Cir. 2013) ...................................................9, 10

*Uni*Quality, Inc. v. Infotronx, Inc.,*
    974 F.2d 918, 922 (7th Cir. 1992) .......................................................12

*United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.,*
    987 F.2d 39 (1st Cir. 1993)..............................................................14n.10

*United States v. Swiss Am. Bank, Ltd.,*
    274 F.3d 610 (1st Cir. 2001)............................................14n.10, 15, 15n.12

*United States v. Velazquez-Fontanez,*
    6 F.4th 205 (1st Cir. 2021)...................................................................12

*U.S. v. Cianci,*
    378 F.3d 71 (1st Cir. 2004) ............................................................................8

*Vranos v. Skinner,*
    930 N.E.2d 156 (Mass. App. Ct. 2010) ...........................................................30

*Wang Lab., Inc. v. Business Incentives, Inc.,*
    398 Mass. 854 (1986) ....................................................................................23

*Watterson v. Page,*
    987 F.2d 1 (1st Cir. 1993). ...........................................................................5n.3

*World Depot Corp v. Onofri,*
    2017 WL 6003032 (D. Mass. 2017) ....................................................14, 15n.11

*Zareas v. Bared-San Martin,*
    209 Fed. Appx. 1(1st Cir. 2006) .......................................................................6

## Statutes

18 U.S.C. §1962(c) .............................................................................................5

Cal. Civ. Code 1708.7(g) ....................................................................31n.15, 32n.18

M.G.L. c. 266, §126A ..........................................................................................24

G.L. c. 223A, 3....................................................................................................15

## Other Authorities

Restatement (Second) of Agency § 228 (1958) .......................................................23

Restatement (Second) of Torts § 35 (1965)......................................................26, 27

Restatement (Second) of Torts § 36......................................................................26

Restatement (Second) of Torts § 40......................................................................27

Restatement (Second) of Conflict of Laws (1971) ..................................................31

Restatement (Second) of Conflict of Laws § 146 cmt. c ..........................................32

Restatement (Second) of Conflicts of Laws § 146 cmt. e......................................32n17

This action is premised on the criminal conduct of former eBay security team members undertaken as to Natick residents Ira and David Steiner as well as Steiner Associates, LLC, a publisher of an ecommerce newsletter. Defendants include 11 individuals as well as eBay and Progressive F.O.R.C.E. Concepts, LLC (PFC). PFC is a Nevada based company and was an independent contractor providing certain security services to eBay, including providing one of the individual defendants, Veronica Zea, to eBay who worked out of eBay's California office and as an eBay analyst in its GIC, or Global Intelligence Center. The allegations of the complaint make clear that Zea was, at all material times, directed by eBay's former supervisory security team supervisor/employees as to her activities and responsibilities at eBay, and particularly the events in question. As more fully set forth below, the claims as to PFC must be dismissed as:

- the civil RICO claims fails as plaintiffs lack standing and otherwise failed to allege any viable enterprise; continuity; or that PFC in any way operated or managed any enterprise;

- this Court lacks personal jurisdiction over PFC as to the state-based claims;

- the allegations specific to PFC are conclusory and insufficient to state any plausible liability based on vicarious liability or otherwise for any of the alleged conduct of the individual eBay security team defendants, including Zea as to any of the state-based claims;

- the vandalism and ratification claims fail as a matter of law as there is no such cause of action in Massachusetts with the allegations otherwise having no relationship or mention of Zea or PFC;

- the false imprisonment claim fails as the facts no matter how favorably construed do not plausibly allege that the Steiners were confined or that there was any intention attributable to PFC for such confinement;

- the stalking claim fails as it is based on a California statute having no extraterritorial application;

- the 93A claim fails as there was no commercial transaction between the plaintiffs and PFC; and

- there is no plausible interference with advantageous relations claim as plaintiffs failed to identify any entity or person that refused to deal with or contract with plaintiffs as a result of the alleged actions resulting in any loss.

100706226

## Factual Allegations in Plaintiffs' Complaint Pertinent to PFC[1]

Plaintiffs Ina and David Steiner operate a trade publication, Ecommercebytes which reports on ecommerce business including eBay. Compl 2; 23. The gravamen of the complaint is that the individual defendants, either former executives of eBay or former members of eBay's security department, devised and engaged in a scheme of harassment in an effort to stifle the plaintiffs' reporting on eBay which conduct took place between June and August 2019. It is alleged that the scheme was the result of former senior eBay executives, defendants Wymer (Chief Executive Officer) and Wenig (Chief Communications Officer), frustration with the Steiner's newsletter tone and content. Compl. 46. It is alleged that eBay, through Wymer and Wenig, sent a directive to eBay security personnel, particularly James Baugh, Chief of Security for eBay granting authority to Baugh and the individual defendants to "take down the Steiners at any cost" and/or that the campaign resulted from communications between eBay senior executives and defendant Baugh as eBay Chief of Security. Compl. 4; 57, 59, 60; 64; 66-67;89; 212; see also Exh. A to Compl. para. 20,24-25, 29, 32, 36-39, 44, 49, 55, 177..

Based on the directive from eBay's executive management, defendant Baugh directed the remaining individual defendants, all members of eBay security department (Harville, Gilbert, Cooke, Popp, Stockwell and Zea), to engage in certain conduct intended to "intimidate, threaten, torture, terrorize, stalk and silence the Steiners." Compl. 4; 59; Exh. A to Compl. (20;24-25;29,32,36-39, 44, 49, 55, 177). All of the conduct undertaken between June and August 2019, was to "carry out Wenig and Wymer's plan" (Compl. 9; 7;13) and included, *inter alia* creating a

---

[1] The referenced allegations are taken from plaintiffs' complaint as well as the exhibits to the complaint that are incorporated by reference. *Trans-Spec Truck Service, Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008); Fed. R. Civ. P. 10(c) (Exhibits attached to the complaint are" also "properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6) ").

phony Twitter account pretending to be a eBay seller and threatening Ms. Steiner to stop reporting on eBay; sending pornographic material/publications to neighbors of the plaintiffs; arranging and having delivered to the Steiners' home "death theme" deliveries such as a "sympathy" wreath; delivering live spiders, cockroaches, a bloody pig mask, a book entitled Grief Diaries: Surviving the Loss of a Spouse; traveling to Massachusetts and surveilling the Steiner's home including attempting to place a GPS tracker on plaintiffs car; and otherwise publicly posting the Steiner's address on Twitter, Craigslist and other websites inviting strangers to the Steiner's home for sex parties and yard sales. Compl. 5-7; et seq.

The allegations as to PFC are that it is a limited liability company with a principal place of business in Las Vegas, Nevada and that it hired analysts for eBay and paid their salaries including as to defendant Zea. Compl. 26. Zea is alleged to be a California resident who at all times and together with eBay employees Harville, Gilbert, Cooke, Popp, and Stockwell was a member of the eBay security (GIC) department.[2] Compl. 35; Ex A to Compl at 15(f). It is otherwise alleged that all of the individual defendants, including Zea, were at all times and as to all of the conduct at issue, directed and controlled as to their activities by defendant Baugh as Chief of Security for eBay who, in turn, it is alleged ultimately reported to defendant Wenig. Compl. 4;7;13;37; 59;61-64; 66;69; 77;94;99;107;121;133;191;212; Exh A to Comp. 26,28, 41, 43, 51,

_____

[2] While the complaint makes periodic and conclusory references to all of the individual defendants "acting within the scope of their employment with eBay and PFC," (Compl. 87;91;92; 96; 102-03;107; 137; 140-41; 191) it is undisputed that all of the individual defendants were employees of eBay except for Zea who was a eBay contractor provided by PFC. The complaint otherwise makes clear that all of the individual defendants, including Zea, were under the direction and control of eBays supervisors and were, in fact, directed and controlled as to the putative conduct as to the Steiners by eBay supervisors pursuant to the purported plan of individual eBay executive defendants Wenig and Wymer. Compl.4;7;13;37;59;61-64;66;69; 77;94;99;107;121;133;191;212; Exh A to Comp. 26,28, 41, 43, 51, 62-65, 85, 92, 95, 128-30, 140, 165, 169, 181-82, 184. The complaint is devoid of any allegations that PFC knew of the conduct; participated in the conduct; or in any way ratified the conduct.

62-65, 85, 92, 95, 128-30, 140, 165, 169, 181-82, 184. According to the complaint, all of the individual eBay security team defendants "took direction, directly and indirectly, from senior management at eBay" including and particularly Baugh and as to the specific conduct identified in the complaint and which is otherwise alleged to be implementation of the "plan" or "orders" of the eBay executive defendants. Compl. 4; 7;13; 37; 59; 61; 63-64; 66; 69; 77; 94; 99; 107; 121; 133; 191; 212. All of the individual eBay security team defendants were terminated in or about September 2019. Compl. 202-03. There are no allegations that PFC participated in the conduct; knew of the conduct; condoned or ratified the conduct; had any knowledge of the asserted plan or directive of senior eBay management or that any of the conduct, including as to defendant Zea, was within the scope of any agency with PFC.

Five of the individual defendants from the eBay security team, including Zea, subsequently pleaded guilty to conspiracy to commit cyberstalking and conspiracy to obstruct justice. While Zea was paid by PFC (a loaned servant to eBay), PFC had no knowledge of or in any way directed or controlled Zea's activities as a member of eBay's security team and particularly as to the alleged putative conduct set forth in the complaint with no factual allegations in the complaint to the contrary. Indeed, there is no allegation that PFC had any knowledge of the activities of the security team as to the Steiners including Zea, until informed in mid to late Summer of 2019 at which time investigation and termination of Zea ensued.

The complaint contains twelve counts: one federal claim-civil RICO and 11 claims under the state law of either Massachusetts or California. There is no actionable RICO claim as well as no personal jurisdiction over PFC. Despite the length of the complaint and the graphic underlying conduct of eBay's individual security team members taken from the findings of the criminal investigation, the allegations as to PFC are entirely conclusory and insufficient to impose any

vicarious or other liability upon PFC. Based on the specific allegations of the complaint, Zea took the putative actions at the express and sole control and direction of eBay's supervisory security team members (i.e. Baugh, Harville, etc.) without any knowledge, support, participation of or acquiescence or ratification by PFC. Zea's actions, in turn, were otherwise clearly outside the scope of any loaned servant or agency relationship with PFC.

## ARGUMENT

I.  **THE COMPLAINT FAILS TO STATE A PLAUSIBLE RICO CLAIM AS TO PFC (COUNT III)[3]**

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "To establish a RICO violation, a plaintiff must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *ICONICS, Inc.*

---

[3] To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The plausibility standard requires that a plaintiff's factual allegations establish "more than a sheer possibility that a defendant has acted unlawfully," and allegations that are "merely consistent with a defendant's liability" do not clear this bar. *Id.* (quoting *Twombly,* 550 U.S. at 557). To determine whether a complaint states a plausible claim to relief, the court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Mahoney v. Bank of Am., N.A.,* No. 10-12230-DPW, 2011 WL 3105265, at *1 (D. Mass. June 10, 2011); *see Iqbal,* 556 U.S. at 678. Dismissal is warranted where the complaint fails to set forth well-pleaded factual allegations "respecting each material element necessary to sustain recovery under some actionable legal theory." *Carter's of New Bedford v. Nike, Inc.,* No. 13-11513-DPW, 2014 WL 1311750, at *1–2 (D. Mass. Mar. 31, 2014) (cleaned up), *aff'd,* 790 F.3d 289 (1st Cir. 2015). "Exhibits attached to the complaint are" also "properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6)." Trans-Spec Truck Service, Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008); Fed. R. Civ. P. 10(c).

(continued on next page)

*v. Massaro*, 192 F. Supp. 3d 254, 267 (D. Mass. 2016) (*quoting Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 14–15 (1st Cir. 2000)); *Soto-Negron v. Taber Partners I, 339 F.3d 35, 38 (1st Cir. 2003)* (quoting *N. Bridge Assocs., Inc. v. Boldt, 274 F.3d 38, 42 (1st Cir. 2001))* 18 U.S.C. § 1962(c). Plaintiffs have failed to allege a plausible civil RICO claim as they have failed to allege sufficient standing; a viable enterprise; a pattern of racketeering activity; or any PFC management or operation of the purported enterprise.[4]

### A.    *Plaintiffs Lack Standing*

Standing under RICO requires injury to "business or property." *Libertad v. Welch*, 53 F. 3d 428, 436 (1ˢᵗ Cir. 1995). Allegations of emotional or personal injury are insufficient, *Circiello v. Alfano*, 612 F. Supp. 111, 114 (D. Mass. 2009); *Zareas v. Bared-San Martin*, 209 Fed. Appx. 1(1ˢᵗ Cir. 2006), as is any economic injury derivative of personal harm or injury. *Grogan v. Platt*, 835 F. 2d 844, 847 (11ᵗʰ Cir. 1988). There likewise can be no recovery for speculative allegations as to damages. *Circiello*, 612 F. Supp. at 114.

Plaintiffs have not alleged sufficient facts as to cognizable and non-speculative damages. The gravamen of the complaint asserts fear, distress, and upset as to the alleged conduct. Comp. 276. It likewise alleges derivative assertions such as generic and conclusory damage to their "reputation and good will." Compl. 277-78. *Lawson v. FMR LLC*., 2012 Wl 3493859 (D. Mass. 2021)(reputational injury not cognizable under RICO). The allegations as to "economic" damages including the fleeting assertion of decrease in advertising and revenue as to the newsletter are

---

[4] Plaintiffs also allege that Defendants conspired to violate § 1962(c), in violation of § 1962(d). See Compl. Par. 262. This theory of liability fails for the same reasons as the substantive RICO claim. See *Efron*, 223 F.3d at 21 ("[I]f the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails[.]").

(continued on next page)

entirely conclusory and insufficient and are otherwise derivative of the alleged personal injury claims and thus provides no standing.[5]

### B.    *PFC Cannot Be Both A RICO Enterprise And A RICO Person*

The First Circuit has long established that there can be no viable RICO claim under 1962c where there is no distinction between the defendant and the enterprise. *See Shofield v. First Commodity Corp. of Boston,* 793 F. 2d 28, 32 (1ˢᵗ Cir. 1986); *Arzuaga–Collazo v. Oriental Fed. Sav. Bank,* 913 F.2d 5, 6 (1st Cir.1990); *Odishelidze v. Aetna Life & Casualty Co.,* 853 F.2d 21, 23 (1st Cir.1988) (per curiam) ("[I]t is clear that under § 1962(c) the 'person' alleged to be engaged in a racketeering activity ... must be an entity distinct from the 'enterprise'); *Buscaglia v. Vasarhelyi,* 2014 WL 4187615 (D. P.R. 2014)(corporate defendants cannot be both the person charged with racketing and part of the enterprise); *In re Lupron Mktg. & Sales Practices Litig.,* 295 F. Supp. 2d 148, 164 (D. Mass. 2003)("[t]he enterprise … cannot itself be a RICO defendant").

Here, plaintiffs allege that PFC "individually" is a RICO enterprise. Compl 246. Because the racketeer and the enterprise must be distinct, there can be no viable claim as to PFC. The lack of distinctiveness applies equally to any assertion that the RICO enterprise is alternatively "eBay and PFC." This is no more than a pleading subterfuge contrary to the clear intention of Congress that the RICO enterprise be separate from the criminal person or persons. Indeed, this end-run is

---

[5] According to the complaint, because of their emotional upset and fear, the plaintiffs alleged they have not been able to publish the newsletter as much causing economic loss in the form of lost "revenue" and/or advertising. Because this purported harm is derivative of the personal injury related harm it is not cognizable under RICO. See *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.,* 731 F.3d 556, 565-66 (6th Cir. 2013) ("[B]oth personal injuries and pecuniary losses flowing from those personal injuries fail to confer relief under § 1964(c)."); *Grogan,* 835 F.2d at 848 (holding that plaintiffs "cannot recover under RICO for those pecuniary losses that are most properly understood as part of a personal injury claim"). Further, the claimed economic injury is entirely speculative and hypothetical as not a single purported lost subscriber or advertiser is identified or alleged.

an effort to impermissibly invoke vicarious liability into RICO (and as to PFC) which the First

Circuit has held is "inappropriate" as it would allow "*respondeat superior* to accomplish indirectly

what … the statute directly denies." *Schofield,* 793 F.2d at 33.

### C. The Complaint Fails to Adequately Allege An Association-in-Fact Or That PFC Operated or Conducted the Affairs of Any eBay/PFC Enterprise

An enterprise based on an "association-in-fact" requires "a purpose, relationships among

those associated with the enterprise, and longevity sufficient to permit these associates to pursue

the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). "'Common purpose'

does not mean commonality of motive, it means coordinated activity in pursuit of a common

objective." *In re Lupron Mktg. & Sales Pracs. Litig.*, 295 F. Supp. 2d 148, 173 (D. Mass. 2003).

The various associates must function as a continuing unit. *Turkett*, 452 U.S. at 583; *U.S. v. Cianci*,

378 F.3d 71, 82 (1st Cir. 2004) ("those associated in fact [must] 'function as an ongoing unit' and

constitute an 'ongoing organization'"). Even assuming a viable enterprise or association in fact,

the putative defendant must participate in the operation and management of the enterprise. *See*

*Reves v. Ernst & Young,* 507 U.S. 170, 183 (1993). This requires factual allegations that the

defendant actively directs/controls the affairs of the purported enterprise/association-in-fact. *See*

*Dep't of Economic Development v. Arthur Anderson & Co.*, 924 F. Supp. 449, 466 (S.D.N.Y.

1996) (under the operative "operation and management" test, there must be facts setting forth, not

mere involvement, but control).

While plaintiffs identify "eBay and PFC" as an enterprise (Comp. 246) and leaving aside

the lack of sufficient distinctiveness between "enterprise" and "person," the complaint is deficient

as to any such operative association in fact or that PFC participated in the direction and

management of any such enterprise. Other than alleging that PFC was a contractor who provided

certain security related service to eBay and who paid Zea who was otherwise a "contractor" for

eBay, there are no factual, as opposed to conclusory allegations, establishing a common purpose or coordinated activity in pursuit of any common objective between eBay and PFC. Plaintiffs' linkage of eBay and PFC rests entirely on the allegation that one individual Defendant analyst (Zea) was paid by PFC as a contractor working exclusively for eBay and as a member of eBay's GIC. *See* Compl. ¶ 26. Plaintiffs' allegations show only that eBay and PFC "had a commercial relationship, not that they had joined together to create a distinct entity for purposes of [intimidating and harassing Plaintiffs]." *United Food & Commercial Workers Union & Emps. Midwest Health Benefits Fund v. Walgreen Co.,* 719 F.3d 849, 855 (7th Cir. 2013).

The complaint is devoid of any allegations of how PFC and eBay collaborated with each other and as it pertains to the putative conduct of the individual eBay security team defendants. There is no allegation that PFC had any knowledge or reason to know of the motives and conduct of the individual defendants with Zea otherwise under the direct supervision and control of eBay's GIC supervisors. The scheme or campaign is alleged to have been solely at the behest of eBay executives (Wenig and Wyman) implemented through or by the defendant Baugh as Chief of eBay's security and whose eBay team he solely directed and controlled as to the conduct in question, for the benefit of eBay. The Complaint does not sufficiently allege a factual basis for any collaboration, cooperation and/or interdependence involving PFC necessary for an association in fact enterprise between PFC and eBay as to the putative conduct at issue.

As set forth above, an association-in-fact enterprise must be meaningfully distinct from the entities that comprise it such that the entity sought to be held liable can be said to have controlled and conducted the enterprise rather than merely its own affairs. *Crichton v. Golden Rule*

*Ins. Co.,* 576 F. 3d 392, 399 (7th Cir. 2009).[6] Here, other than a contractor relationship with eBay, there are no facts remotely establishing direction, control or participation in the affairs of any "eBay/PFC" enterprise with there not even a single factual allegation that PFC knew of or in any way ratified or participated in the alleged conduct of the individual defendants as members of eBay's security department. The complaint likewise does not allege that eBay and PFC involved themselves in one another's affairs, coordinated at any supervisory level regarding the Individual Defendants' alleged actions, or established any particular management or financial arrangement related to the alleged enterprise. The sole linkage between the two companies—PFC hired and formally employed an eBay contractor, *see* Compl. ¶ 26, 35—reflects only a "normal commercial relationship," *United Food,* 719 F.3d at 855, and at most establishes a "sheer possibility" that eBay and PFC "were acting in concert on behalf of a shadow enterprise" instead of simply "each going about its own business," *id.see also, Crichton, 576 F. 2d at 399 (*"Allegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant performed services for that enterprise do not suffice"). There is no viable RICO claim as to PFC as a matter of law.

### D. *The Complaint Fails to Adequately Allege Either Open or Closed Ended Continuity Required For A Pattern of Racketeering Activity*

Plaintiffs' RICO claim independently fails as they have not plead a plausible pattern of racketeering activity. To plead that acts of racketeering activity constitute a pattern, plaintiffs must allege facts showing that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *Giuliano v. Fulton,* 399 F.3d 381, 386–87 (1st Cir. 2005)

---

[6] The dual requirements of "distinctiveness" and sufficient proof of an actual "association in fact" "work in tandem to weed out claims dressed up as RICO violation but which are not in fact." *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 447 (2d Cir. 2008), *rev'd on other grounds*, *Hemi Group LLC. v. City of New York*, 130 S. Ct. 983 (2010).

(quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). The required continuity showing can be closed ended (i.e. 'a series of related predicates extending over a substantial period of time' that 'amount to' a threat of continued criminal activity") or "open ended" (i.e., showing that the alleged "racketeering acts themselves include a specific threat of repetition extending indefinitely into the future [or] … are part of an ongoing entity's regular way of doing business).' *Id.* at 387 quoting *H.J. Inc.*, 492 U.S. at 242. Both duration and extensiveness are controlling with other indicia including whether the defendants were involved in multiple schemes, whether the schemes involved multiple people, and whether having the potential to last indefinitely. *See Home Orthopedics*, 781 F. 2d at 529; *Efron*, 223 F. 3d at 18-19 *Guiliano*, 399 F. 2d 381. Under any examination and indulgence provided to the complaint, the allegations (para 266(a) and (b) of Complaint) fail to establish either closed-ended or open-ended continuity.

The entire length of the purported racketeering activity was a span of a few months.[7] It commences with a discussion about sending a "threating letter" in the Spring of 2019 and is followed by the purported conduct and actions taken between June and August, 2019. Even assuming that every tortious act alleged in (or incorporated into—see Exhibits) the complaint constituted a RICO predicate, the purported period during which those acts occurred is too short, as a matter of law, to establish closed-ended continuity. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the closed-ended continuity] requirement." *H.J. Inc.,* 492 U.S. at 242. Indeed, "where the period of time is short, continuity can *never* be established." *Giuliano,* 399 F.3d at 387, 390 ("[T]he commission of 16 predicate acts

---

[7] To the extent the Complaint can be construed as including events outside of this period, they are isolated and sporadic. *H.J.*, 492 U.S. at 239-40. Indeed, only four such acts are alleged to have occurred before the Spring of 2019 (Compl. 266(a)(1)-(iv). There are no facts supporting and relatedness; are alleged to have been committed by unspecified eBay employees; and are not alleged to have been participants in the purported "eBay/PFC" enterprise.

100706226

over a six-month period is inadequate to establish a closed-ended pattern of racketeering activity."); *Feinstein v. Resol. Tr. Co.,* 942 F.2d 34, 45 (1st Cir. 1991) (3-4 months too short), abrogation on other grounds recognized by *United States v. Velazquez-Fontanez,* 6 F.4th 205, 213 n.2 (1st Cir. 2021), *petition for cert. filed,* No. 21-5812 (U.S. Sept. 22, 2021); *accord Primary Care Invs., Seven, Inc. v. PHP Healthcare Corp.,* 986 F.2d 1208, 1215 (8th Cir. 1993) (10-11 months too short); *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1024 (7th Cir. 1992) (9 months too short); *Uni*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 922 (7th Cir. 1992) (7-8 months too short); *Hughes v. Consol-Pa. Coal Co.,* 945 F.2d 594, 611 (3d Cir. 1991) (12 months too short).

Most notably, none of the purported allegations in any way suggest or infer a pattern of racketeering activity that involves anyone other than plaintiffs and their newsletter. No other victim or scheme is alleged or identified with the complaint otherwise devoid of any basis to plausibly conclude that there was a pattern of racketeering activity. See *Efron*, 223 F. 3d at 18-20 (discussing that single effort over finite period of time and involving a limited number of victims not subject to RICO); *Natale v. Espy Corp.,* 2 F. Supp. 3d 93, 102 (D. Mass. 2014)(affirming dismissal of singular scheme and singular goal); *Lerner v. Coleman*, 485 F. Supp 3d 319, 343 (D. Mass. 2020)(same).[8]

The complaint likewise fails to plausibly set out any open-ended continuity. Based on the plaintiffs' own allegations, the purported racketeering activity was over by September 2019 with

---

[8] In *Efron*, the court ruled that a scheme consisting of numerous alleged instances of wire and mail fraud, all designed to drive up costs in the construction of a hotel in order to extract value, did not exhibit closed continuity because the scheme was limited to a single business venture. 223 F.3d at 19. Similarly, in *Giuliano* the court ruled that a series of fraudulent mailings designed to gain control of a racetrack business venture were insufficient to establish closed continuity, as the fraud was limited to a single business with only one victim. 399 F.3d at 390 ("Our case law suggests that the commission of 16 predicate acts over a six-month period is inadequate to establish a closed-ended pattern of racketeering activity."). Accord *Home Orthopedic*s, 781 F.3d at 530; *Systems Mgmt.*, 303 F.3d at 105-06.

the firing of the individuals and the departure of eBay's chief executive taking place at that time. Indeed, "schemes that have a clear and terminable goal have a natural ending point" and cannot support a finding of open-ended continuity. *Efron*, 223 F. 3d at 20. There are no facts remotely supporting any basis of ongoing or continuing racketeering activity and certainly no facts supporting any basis of such conduct recurring or carrying on indefinitely into the future. See *Home Orthopedics,* 781 F.3d at 531.

The lack of continuity is particularly apparent as to PFC and the asserted PFC/eBay "enterprise." There is no allegation that PFC has any ongoing association with eBay or that this purported "association in fact enterprise" operated in any fashion after the events or will continue to operate in the future. The sole involvement of PFC was that it employed Zea who was otherwise exclusively directed and controlled by eBay as to her day to day activities as an analyst including as to the conduct at issue and who was otherwise terminated in September 2019. The operative allegations constitute, at best, a scheme which had a singular, terminable goal of harassing plaintiffs to have them cease reporting on eBay. There is no basis for any finding of a threat of future or ongoing criminal activity and certainly nothing to support such conduct or threat by PFC. See *Sterling Suffolk Racecourse LLC v. Wynn Resorts LTD*, 419 F. Supp 3d 176, 194-95 (D. Mass. 2019); *Menasco,* 886 F.2d at 683 ("Congress contemplated that only a party engaging in widespread fraud would be subject to such serious consequences.... The pattern requirement ... ensure[s] that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value....").

### E. The Complaint Fails to Allege Predicate Acts or Any Viable RICO Conspiracy

Defendant incorporates by reference the arguments in the accompanying motions to dismiss by the co-defendants eBay, Wenig, Weymer, Gilbert, Baugh, and Cook including as to the lack of sufficient allegations of predicate acts or an actionable RICO conspiracy which apply as well to PFC. Indeed, plaintiffs have failed to plead with particularity the asserted mail or wire fraud committed by PFC and otherwise failed to allege facts supporting any "extortion," "witness tampering," or "obstruction of justice" attributable to PFC.[9] The Complaint is likewise devoid of facts supporting a substantive RICO violation as well as any <u>facts</u> (as opposed to conclusory, generic assertions) supporting that PFC knew about and agreed to facilitate a substantive RICO violation.

### II. PLAINTIFFS FAIL TO ESTABLISH THAT THIS COURT HAS PERSONAL JURISDICTION OVER PFC[10]

Absent a viable RICO claim, there is no personal jurisdiction over PFC absent satisfaction of Massachusetts' long arm statute and minimum contacts.[11] *World Depot Corp v. Onofri*, 2017

---

[9] As there is no substantive civil RICO claim, the RICO conspiracy claim fails. Efron, 223 F. 3d at 21.

[10] The "court must have personal jurisdiction over the parties to hear a case, that is, the power to require the parties to obey its decrees." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 617 (1st Cir. 2001). The court may rule on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing. In such cases, the plaintiff must make a prima facie showing that personal jurisdiction exists. *See id.* at 618; *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F.2d 39, 43-44 (1st Cir. 1993) [hereinafter "*Pleasant St. II*"]. The plaintiff must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the [D]ue [P]rocess [C]lause of the Constitution." *Pleasant St. II*, 987 F.2d at 44 . It is also well settled "that plaintiffs may not rely on unsupported allegations in their pleadings to make a *prima facie* showing of personal jurisdiction," *Boit*, 967 F.2d at 675, and the plaintiff "is obliged to adduce evidence of specific facts." *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995).

[11] Under the two prevailing views, RICO provides for personal jurisdiction where: (a) claimant establishes personal jurisdiction over at least one defendant and that jurisdiction over the remaining defendants may occur where "the ends of justice require," or (b) at least one defendant has
(continued on next page)

WL 6003032 (D. Mass. 2017) (no viable RICO claim and lack of personal jurisdiction over remaining claims). Both the Massachusetts long arm statute and due process must be met. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002); *Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016). Plaintiffs have plead nothing to establish that PFC had or has any relationship or contact with Massachusetts sufficient to allow this Court to exercise jurisdiction, either general or specific. *See United States v. Swiss Am. Bank*, 274 F.3d 610, 618 (1st Cir. 2001).[12]

Under the Massachusetts long-arm statute personal jurisdiction arises, *inter alia*, where the defendant transacts business in the commonwealth; contracts to provide services and things within the commonwealth; and where it causes tortious injury within the commonwealth. G.L.c. 223A, 3. Jurisdiction upon a non-resident corporation can arise through the conduct of its agents so long as the actions are authorized or ratified. *Daynard*, 55-56. Due process, in turn, requires minimum contacts between a nonresident defendant and the forum state such that the exercise of personal jurisdiction over that defendant accords with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

Here, plaintiffs make no allegation that PFC owns any property, offices or transacts any business in Massachusetts or otherwise has contracted to provide services in Massachusetts. Indeed, it is simply alleged that PFC is a Nevada based corporation, is a contractor to eBay, and

---

minimum contacts with the United States. *See World Depot Corp.*, 2017 WL 6003032 at *5. The First Circuit has not addressed the issue.

[12] Specific jurisdiction requires a "demonstrable nexus" between the claims of the plaintiff and the defendant's contacts in the forum state. *Id.* Such contacts must demonstrate that the defendant "purposeful[ly] avail[ed] [itself] of the privilege of conducting activities in the forum state." *Noonan v. Winston Co.*, 135 F.3d 85, 90 (1st Cir. 1998). General jurisdiction, on the other hand, exists when the defendant has engaged in "continuous and systematic activity, unrelated to the suit, in the forum state." *Swiss Am. Bank*, 274 F. 3d at 618.

100706226

one of the individual defendants was paid by PFC and was a resident of California (i.e. Zea). Compl. 4; 26;35. As to Zea, it is alleged she was a member of the eBay's GIC and participated in some of the conduct identified in the complaint including travelling to Massachusetts in August 2019 to surveil the Steiners. It is alleged that she was under the direction and control as to those putative activities by eBay supervisors. There is otherwise nothing alleging that PFC sent Zea to Massachusetts; knew of or ratified any of the alleged conduct attributed to her or any facts providing any basis that PFC directed and controlled Zea's conduct as to the Steiner's or any facts setting out any scope of any agency as to PFC. The allegation as to the individual defendants "acting within the scope of employment with eBay and PFC" are entirely conclusory as to PFC with no <u>factual</u> basis. Further, the clear gravamen of the allegations are that Zea was acting at the exclusive and specific direction of eBay supervisors with no allegation whatsoever that PFC knew or, condoned or participated in such activities or that such activities were within the scope of any agency with PFC.

The properly pled allegations fall far short of establishing jurisdiction over PFC either under the long arm statute or due process minimum contacts. *See Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992)("The 'plaintiff must go beyond the pleadings and make affirmative proof,' " and "may not rely on unsupported allegations in their pleadings to make a *prima facie* showing of personal jurisdiction.") (quoting *Chlebda v. H.E. Fortna & Nro Inc.*, 609 F.3d 1022, 1024 (1st Cir. 1979)).

The allegation that PFC is a contractor to eBay providing certain security related services is no basis to premise personal jurisdiction in Massachusetts. As a separately constituted corporation, jurisdiction must be assessed based on PFC's own contacts, not any attributable to eBay or its employees. Further, as to the allegations pertaining to defendant Zea and any reliance

on her allegedly causing injury to the plaintiffs in Massachusetts, it remains that the complaint is entirely devoid of factual allegations that her conduct was within the scope of any agency or employment with PFC. Indeed, the complaint confirms and makes clear that Zea was working as a member of eBay's GIC including as to the putative conduct in Massachusetts and pursuant to the exclusive and express direction and control of eBay and its supervisors. To any extent that personal jurisdiction can be premised on a corporation's agent's activities or conduct, there must be a factual basis and supporting allegations or evidence that the agent was acting within the scope of the agency. There are no such allegations as to PFC, with the complaint otherwise clear that the scheme and putative conduct by the individual defendants, including Zea, was at the suggestion, direction, and exclusive control of eBay personnel with no allegation whatsoever supporting any basis to find that Zea acted pursuant to any direction from or pursuant to any possible agency with PFC. There is likewise no allegation that PFC knew of or ratified Zea's alleged conduct. *Daynard*, 290 F. 3d at 55-56 (personal jurisdiction based on evidence/allegations of ratification).

Given the lack of any affirmative showing that the claims arise out of contacts PFC had with Massachusetts; that PFC otherwise purposefully availed itself of the privilege to conduct business in Massachusetts; and that exercising jurisdiction over PFC would be reasonable, the complaint must be dismissed for lack of personal jurisdiction. *Sawtelle v. Farrell*, 70 F.3d 1381, 1388 (1st Cir. 1995); *Phillip Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

## III. THE COMPLAINT FAILS TO STATE ANY VIABLE STATE BASED CLAIM AS TO PFC

There is no claim that PFC participated in the alleged conduct sufficient to impose any direct corporate liability. Instead, the state law claims as to PFC are all apparently based on vicarious liability and the conduct of Zea and the allegation she was paid by PFC. Compl.26. The

complaint fails to plead any plausible vicarious liability claim as the allegations establish that Zea's actions were at the sole direction of eBay and as there are no facts supporting any plausible finding that Zea's conduct was in anyway within the scope of any possible agency with PFC. *See Roggio v. City of Gardner*, 2011 WL 1303141 (D. Mass. 2011)(granting motion to dismiss as no plausible claim of vicarious liability); *see also Iqbal*, 129 S. Ct. at 1949-50 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). *See Nixon v. Kysela Pere Ltd.*, 2021 WL 3700253, *5 (W.D. Va. 2021) ("District Courts routinely evaluate whether plaintiff has stated a claim for vicarious liability at the motion to dismiss stage").

### A.     The Complaint Fails to Allege That PFC Controlled, Directed, Ratified or Was Even Aware of Zea's Actions

Plaintiffs attempt to implicate PFC by alleging that Zea and the other individual eBay security team defendants were "acting within the scope of their employment with eBay and PFC." (Compl. 87;91;92; 96; 102-03;107; 137; 140-41; 191). However, this rote and conclusory assertion is woefully insufficient to state a plausible claim or transfer liability based on *respondeat superior*/ vicarious liability as to PFC or to establish that PFC was involved in a conspiracy with Zea, eBay, and others. *Roggio, supra*, ("Conclusory statements that a person was acting as an agent or within the scope of employment are not entitled to any assumption of truth"); *Scott v. Am. Nat. Trust & Inv. Mgt. Co.*, 2013 WL 12123836 (N.D. Texas 2013) (same).

Other than Zea and that she was allegedly paid by PFC, no person affiliated with PFC in any capacity is named or mentioned in the Complaint. There is likewise no allegation that PFC employed, directed or controlled any of the other individual eBay defendants as to the putative conduct at issue. The allegations are to the contrary asserting that they were all eBay employees. While it is alleged that Zea was an contractor supplied to eBay by PFC, the Complaint is devoid of any factual as opposed to conclusory allegations as to PFC, let alone any facts that PFC directed,

controlled, or even had knowledge of Zea's actions as they relate to the Steiners.[13] Plaintiffs do not (and cannot) allege that a specific manager, supervisor, or agent of PFC was directing Zea or was even aware of her activities in relation to the Steiners. Indeed, the Complaint is replete with allegations to the contrary in that Zea, was at all times and as to the allegedly harassing/stalking conduct, being directed and controlled by the eBay supervisors and not in any way by PFC. The specific allegations include the following:

- **eBay... sent a directive and enlisted at least seven members of the eBay security staff** including **Veronica Zea** to deal with the Steiners. Compl. ¶ 4.
- **Wenig and Wymer's henchmen, including Zea**, traveled over 3,000 miles from California to Natick, Massachusetts to continue the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners. Compl. ¶ 6.
- **Zea** and Harville, **carrying out the orders of eBay senior executives**, menacingly stalked and tailed the Steiners. Compl. ¶ 7.
- The Steiners were paralyzed with fear. Their calls to the local police grew more frequent, which **Zea** and Popp, **at the direction of Baugh**, monitored. Compl. ¶ 9.
- Baugh directed the other defendants Compl. 10
- Individual defendants acted "in furtherance of eBay's direct command..." Compl 13
- **Zea** and other individual defendants make up some of the members of the eBay security division. The entire team was a direct report of eBay's head of security and operations, who **ultimately reported to Wenig** and "all" took instruction directly and indirectly from senior management of eBay. Compl. ¶ 37.
- **Baugh directed Zea**, to monitor the EcommerceBytes newsletter posts. Compl. ¶ 46.
- eBay executives directed and granted the other defendants carte blanche authority to torture the plaintiffs. Compl. 59;
- **eBay conspired with Zea** to intimidate, threaten, torture, terrorize, stalk and silence the Steiners and all defendant reported to eBay management. Compl. ¶ 61.

---

[13] Under the loaned servant doctrine, there can be no liability upon the loaning "employer" where the loaned servant is subject to the control and direction of the special employer. *Galloway's Case,* 354 Mass. 427, 430 (1968); *Ledbetter v. M.B. Foster Electric, Co.,* 354 Mass. 780 (1970(no liability upon lending employer); *Afonso v. City of Boston,* 587 Supp. 1342 (D. Mass. 1984)(motion to dismiss as no vicarious liability based on borrowed servant doctrine); see also *Denton v. Yazoo & Miss. Valley R.R. Co.,* 284 U.S. 305, 308 (1932)( "When one person puts his [employee] at the disposal and under the control of another for the performance of a particular service ... [the employee] is to be dealt with as [that] of the latter and not of the former." Zea worked at eBay and under its direction for years.

- All individual defendants acted "under direction from eBay's executive leadership and were carrying out eBay's goal**. Compl 63-64.
- [A]ll the named individual Defendants acted in concert with one another, **in furtherance of eBay's directive**… Compl. ¶ 66.
- All of the individual defendants acted "at the direction of eBay through senior management staff;" Compl. 69
- Armed with **directives from Wenig and Wymer**, Baugh and the other Defendants, including **Zea**, **set in motion their conspiracy** to intimidate, threaten, torture, terrorize, stalk and silence the Steiners. Compl. ¶ 77.
- "the conspiracy hatched by eBay and its senior management;" Compl. 94
- **Utilizing eBay funds and acting at the direction of eBay** to silence the Steiners, **Zea** rented two vehicles and checked into the Ritz Carlton in Boston. Compl. ¶ 102.
- "campaign of terror and threats to kill by eBay, at the direction of its senior management…" Compl. 121
- **Baugh, acting within the scope of his employment with eBay, ordered Zea** to create a false document featuring the Steiners as eBay Persons of Interest ("POI"). Compl. ¶ 130.
- **The [eBay] head of security and operations had the responsibility for overseeing the Defendants, including** but not limited to Baugh, Harville… and **Zea**, while **Wenig and Wymer, executives at eBay, were actively directing the unlawful behavior**. Compl. ¶ 133.
- Defendant Baugh "instructed all individual defendants…." Compl. 191
- Popp was able to coach Zea when she spoke with eBay's legal department. Compl. ¶ 199.
- In either April or May 2019, according to CW-1, CW-2. and CW-3, **Baugh summoned Popp, Stockwell, Analyst 1, and Zea to an eBay conference room**. Baugh stated that the GIC would be writing an anonymous, threatening letter to Mrs. Steiner to get her to stop publishing articles critical of eBay. Wilson Aff., ¶ 26.
- In July 2019, **Baugh directed Zea** to monitor Mrs. Steiner's Newsletter posts, screenshot them, and forward them by WhatsApp on a real-time basis, day or night, any day of the week. Wilson Aff., ¶ 28.
- In mid-July 2019, **Baugh tasked the GIC** with identifying the author of the Parody Account, Fidomaster; a top priority coming from eBay's executive leadership. Wilson Aff., ¶ 32.
- **Baugh directed Zea** to anonymously harass the Steiners, with the goal of distracting Mrs. Steiner and making her uncomfortable to the point where she would stop writing negative articles about eBay. Wilson Aff., ¶ 41.
- **Baugh** also directed **Zea** and other GIC analysts to pay for the harassing deliveries using prepaid debit cards, and to make online orders using anonymous email accounts, virtual private networks, and cell phones and computers specifically purchased for the harassment campaign. Wilson Aff., ¶ 43.

- In early August 2019, **Baugh recruited Harville and Zea to travel to Boston** to physically surveil the Steiners. Wilson Aff., ¶ 51.
- On August 14, 2019, **Baugh directed Zea to go to a Target store to purchase permanent markers that could be used to write on the Steiners' fence**. Zea purchased these markers at approximately 8:10 p.m. that day (as reflected in a Target receipt obtained by the FBI from eBay). Wilson Aff., ¶ 63.
- On or about August 15, 2019, **Baugh also directed Zea** to create a document that featured he Steiners as eBay "Persons of Interest" (or "POIs"). Wilson Aff., ¶ 56.
- During a meal on August 16, 2019, **Baugh discussed with Harville and Zea that they would need to start "spamming" the Steiners again**. Wilson Aff., ¶ 95.
- **Baugh directed Popp to monitor Zea's interview with eBay's legal department**. Popp listened on speakerphone and **gave prompts to Zea** that helped her get the conference cover story out. Wilson Aff., ¶ 184.
- **Baugh directed Zea to delete her WhatsApp communications and phone data**. Wilson Aff., ¶ 185.
- On August 6, 2019, **Baugh, Popp, Stockwell, Zea, and other members of the GIC met at eBay headquarters to plan** the delivery to the Steiners' home of unwanted and disturbing items to distract the Steiners from publishing the Newsletter.
- On August 12, 2019, **Baugh sent Zea** the following WhatsApp message: "Starting now through Tuesday night double our effort on everything. Spam, house deliveries, etc. I don't want anything delivered on Thursday, so the cutoff should be Wednesday night — wake them up with a limo driver or something and then everything goes cold Thursday morning. ... Take down all Craigslist posts late Wednesday night. Stop spam late Wednesday night, etc. Ex. B, Indictment of Baugh and Harville, ¶ 16.
- Between August 5th, 2019 and August 23rd, 2019, Popp and Zea, along with Stephanie Stockwell, Brian Gilbert, Jim Baugh, David Harville, Phil Cook, and others, all then employees or contractors of eBay, Inc., agreed to engage in a stalking campaign targeting the Steiners. Zea Plea, p. 30-31, 38, 41.
- **The campaign arose from communications between eBay senior executives and Jim Baugh**, who was then eBay's senior security officer, it was intended to intimidate or harass the Steiners. Zea Plea, p. 32, 38, 41.
- **Baugh intended** for the harassment and intimidation to distract the Steiners from publishing the newsletter, to change the newsletter's coverage of eBay, and ultimately to enable eBay to contact the Steiners to offer assistance with that harassment, what the government has called a "White Night Strategy." Zea Plea, p. 33, 38, 41.
- On August 6th, 2019, at a Safeway Supermarket in Santa Clara, **at Baugh's direction**, Zea wore a baseball cap and paid cash to purchase prepaid gift cards for use in ordering harassing deliveries. Zea Plea, p. 35, 38, 41.

100706226

- On August 14th, 2019, **at Baugh's direction**, at a San Jose area target, Zea purchased permanent markers for others to use in writing a message on the Steiners' property. Zea Plea, p. 35.
- On August 14th, 2019, **at Baugh's direction**, Zea registered herself and Harville to attend a software development conference in Boston as cover for their trip to Boston to surveil the Steiners. Zea Plea, p. 35, 38, 41.
- On August 16th, 2020, **at Harville's request**, Zea used the internet to locate a Boston hardware store for Mr. Harville to purchase tools that he could use to break into the Steiners' garage for purposes of installing a GPS tracker on their car. Zea Plea, p. 36, 38, 41.
- On August 21st, 2020, when an officer from the Natick police department called Zea from the lobby of Boston's Ritz Carlton Hotel, where the surveillance team was staying, Zea falsely told the officer that she had a call and could not speak with him, and then **at Baugh's direction**, left the hotel to avoid the officer's request to speak. Zea Plea, p. 36, 38, 41.

Given that the clear <u>factual</u> gravamen of the complaint (including the incorporated exhibits) is that Zea was, at all times, directed by eBay supervisors as to the conduct pertaining to the Steiners with no factual allegation of involvement, participation or knowledge of PFC, there is no plausible claim as to PFC. The factual allegations include that Zea acted at the express direction of eBay supervisors, generally Baugh, Harville, or Popp. Plaintiffs make no allegations that any supervisor, manager, executive, or owner of PFC in any way directed or controlled Zea's conduct or activities as to the plaintiffs or as an analyst in eBay's GIC. There are no factual allegations that PFC in anyway directed or even knew about the putative conduct alleged to have been taken by Zea as to the Steiners until after the fact. Beyond the conclusory and bare allegation that Zea was acting "within the scope of employment with eBay and PFC", not only is there nothing pled in Plaintiffs' Complaint to establish that PFC directed, controlled, or even knew of Zea's actions as to the Steiners but the complaint's factual allegations make unequivocally clear she was acting, at all times, at the direction of eBay supervisors without any knowledge or participation of PFC. The complaint fails to set out any plausible claim as to PFC requiring dismissal of the state law-based

claims. *In re N.E. Compounding Pharmacy Inc.* Litig., 2014 WL 4322409 *21-22 (D. Mass. 2014)(failure to sufficiently plead vicarious liability claim); *Roggio*, *supra* (same).

### B.     The Complaint is Devoid of Any Factual Allegation Supporting Any Assertion That Zea's Alleged Actions Were Within The Scope Of Any Agency with PFC

Zea was loaned/contracted out to eBay to work as an analyst in their GIC. The Complaint alleges that Zea took actions to terrorize the Steiners, beginning with frightening, annoying, or embarrassing deliveries, and ending with Zea travelling to Massachusetts to stalk, harass, and terrorize the Steiners in person. Leaving aside that Zea, based on the unequivocal allegations of the complaint, was acting at the specific direction of eBay as to the asserted conduct and pursuant to a purported plan or order from eBay executives, there are no facts supporting any plausible basis that Zea was acting within the scope of any possible agency with PFC as to the conduct in question. *Roggio*, 2011 WL 1303141 (dismissing complaint as no plausible vicarious liability claim as no factual allegations that "employee" acting within scope of employment); *Gabriel v. Superstation Media*, *Inc*., 2014 WL 551009 (D. Mass. 2014) (same).

Under the doctrine of *respondeat superior*, "an employer, or master, should be held vicariously liable for the torts of its employee, or servant, committed within the scope of employment." *Lev v. Beverly Enterprises-Massachusetts, Inc.*, 457 Mass. 234, 238 (2010), citing *Dias v. Brigham Med. Assocs., Inc.,* 438 Mass. 317, 319–320 (2002). "The 'conduct of an agent is within the scope of employment if it is of the kind he is employed to perform, ... if it occurs substantially within the authorized time and space limits, ... and if it is motivated, at least in part, by a purpose to serve the employer' " *Lev* citing *Mosko v. Raytheon Co.,* 416 Mass. 395, 399 (1993) quoting *Wang Lab., Inc. v. Business Incentives, Inc.,* 398 Mass. 854, 859 (1986). See Restatement (Second) of Agency § 228 (1958).

Here, while agency and within the scope are often times factual issues, there remains no facts plead that plausibly provide any basis that Zea was acting within the scope of any possible "employment" or agency with PFC. While paid by PFC to perform analysis for eBay, there are no factual allegations supporting any finding that Zea's alleged conduct as to the plaintiffs was the kind employed to be performed or which in any way served any interest of PFC. There is no allegation that the purpose of any employment or agency (particularly with PFC) was to harass, stalk, or intimidate critics of eBay at the direction and control of eBay supervisors. There are no factual allegations supporting a plausible finding that PFC was aware of any of the complained of actions including that Zea had travelled to Massachusetts until after the fact. Plaintiffs make numerous allegations throughout their Complaint that the actions of Zea and the other individual defendants were done to silence or otherwise intimidate critics of eBay. However, there is no allegation that the conduct of Zea (or the other individual eBay defendants) was in any way intended to benefit PFC, nor could such allegation be reasonably asserted. Zea's conduct was not of the kind she was paid to perform nor was it motivated in any part by a purpose to serve PFC with the complaint devoid of sufficient facts to support any plausible showing to the contrary. Plaintiffs have failed to plead any plausible claim as to PFC.

### C. The Complaint Fails to State A Claim For Vandalism or Trespass

Plaintiffs assert a claim for "Vandalism" against all Defendants for "defac[ing], mutilat[ing], vandaliz[ing] and injur[ing] the Steiners' property. Compl. ¶ 329. Massachusetts does not provide a standalone cause of action for vandalism. While Massachusetts makes vandalism a crime, *see* Mass. Gen. Laws ch. 266, § 126A, "[i]t is clear that a plaintiff may not assert criminal claims against a defendant in a civil action," *Fontanez v. City of Worcester,* No. 09-40203-FDS, 2010 WL 4056078, at *3 (D. Mass. Oct. 15, 2010). Rather, damages from vandalism may be

100706226

recoverable through a claim for trespass. *Cranshaw Constr. of New England, L.P. v. Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, AFL-CIO, Local No. 7,* 891 F. Supp. 666, 675 (D. Mass. 1995). Further, there is no allegation that PFC was involved in any such vandalism or how such an act would be within the scope of any possible "employment" or agency for purposes of vicarious liability upon PFC.

As to the claim of trespass, it fails as to PFC as it requires the defendant to intentionally enter the land of another or to cause another or thing to do so. *Dilbert v. Hanover Ins. Co.*, 825 N.E. 2d 1071, 1011 (Mass. App. Ct. 2005). There are no allegations that PFC engaged in any trespass. To the extent reliance is made on the actions of Zea not only are there insufficient allegations as to any vicarious liability upon PFC but the alleged conduct of Zea did not involve any actual entrance on the land of the plaintiffs.

### D. *The Complaint Fails To State A Claim for Violations of the Massachusetts Civil Rights Act (Count IV)*

Defendant PFC incorporates by references the arguments and submissions of defendants eBay, Weiner, Wyman, Gilbert, and Baugh as to this claim as it applies equally to PFC. Reduced to essentials, plaintiffs' claim under the Massachusetts Civil Rights Act ("MCRA") is subject to dismissal because it does not allege—as to any of the Defendants, but specifically as to PFC—that PFC's conduct involved "an actual or potential physical confrontation accompanied by a threat of harm," which is "an element of MCRA claims."[14] *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 473 (1994); *Buster v. Moore*, No. CIV. A. 97-637-F, 2000 WL 576363, at

---

[14] Plaintiffs allege no "actual or potential physical confrontation" with PFC. To the contrary, they allege only limited interactions with Zea (and none with PFC), all non-physical and non-confrontational. Specifically, the Complaint asserts Zea (i) drove by Plaintiffs' house repeatedly or followed their vehicle, Compl. ¶ 7; and participated in sending harassing deliveries (ii)," *id.* Ex. A, ¶ 41. None of these allegations involves an "actual or potential physical confrontation." The Complaint alleges no other interaction between Plaintiffs and Zea or PFC.

100706226

*22 (Mass. Super. Apr. 28, 2000) (citing *Blake*, 417 Mass. at 473); *Freeman v. Plan. Bd. of W. Boylston*, 419 Mass. 548, 565 (1995); *Bally v. Ne. Univ.*, 403 Mass. 713, 718 (1989). Further, the Supreme Judicial Court has not addressed whether MCRA imposes vicarious liability. Indeed, there otherwise remains no facts that PFC engaged in any threats intimidation or coercion. Regardless, given that the actions of all of the individual defendants including Zea were at the direction of eBay officials and supervisors with no allegation of any knowledge, participation or involvement of PFC, there can be no viable claim as to PFC.

### E.    The Complaint Fails To State A Claim For False Imprisonment (Count VII)

The complaint also fails to state a claim for false imprisonment. The elements of false imprisonment are (1) intentional and (2) unjustified (3) confinement of a person, (4) directly or indirectly, (5) of which the person confined is conscious or is harmed by such confinement. *See Ball v. Wal-Mart, Inc.,* 102 F. Supp. 2d 44, 55 (D. Mass. 2000) (citing Restatement (Second) of Torts § 35 (1965)). The claim fails as to PFC as there are no factual allegations supporting that PFC caused confinement or had the requisite intent

To allege adequately false imprisonment, the "confinement within the boundaries fixed by the [defendant] must be complete." Restatement (Second) of Torts § 36; *see also id.* § 40 cmt. c (explaining that to allege confinement by threats of physical force, the alleged victim "must submit to the threat by remaining within the limits fixed by the actor in order to avoid or avert force threatened"). As a matter of law, Plaintiffs cannot state a claim for false imprisonment in their home if they were able to leave it. *See Kamayou v. Univ. of Mass. Lowell,* No. 16-cv-10098-IT, 2018 WL 4609130, at *8 (D. Mass. Sept. 7, 2018) (concluding at summary judgment that the plaintiff was not confined because he actually left the office), *report and recommendation adopted,* 2018 WL 4600646 (D. Mass. Sept. 25, 2018); *O'Neil v. DaimlerChrysler Corp.,* 538 F. Supp. 2d

304, 321–22 (D. Mass. 2008) (finding that plaintiff could not establish confinement where "there is no evidence that [plaintiff] … attempted to leave and was unable to do so"); *see also Carden v. Klucznik,* 775 F. Supp. 2d 247, 249 (D. Mass. 2011) (explaining that, on a motion to dismiss, "a court will not accept as true any facts that are 'conclusively contradicted by plaintiffs' concessions or otherwise'"). The complaint explicitly alleges that Mr. Steiner in fact left the house during the period when the Steiners were receiving threatening messages and packages. *See* Compl. ¶ 113, 134–135.

The complaint also fails to allege adequately that PFC in anyway intended to confine the Steiners. Assuming arguendo that PFC's liability is vicarious based on Zea, the allegations as to her conduct do not indicate any intention to confine. "[T]he gist of the common law tort [of false imprisonment] is conduct by the [defendant] which is intended to, and does in fact, 'confine' another 'within boundaries fixed by the [defendant]' …." *McCann v. Wal-Mart Stores, Inc.,* 210 F.3d 51, 53 (1st Cir. 2000) (quoting Restatement (Second) of Torts § 35). Here, although the complaint alleges that the Steiners were "too fearful to leave their property," Compl. ¶ 319, it alleges no facts indicating that PFC or Zea, either expressly or implicitly, "fixed" any "boundaries." The alleged conduct of Zea did not threaten "to apply physical force to [Plaintiffs] immediately upon [Plaintiffs'] going or attempting to go beyond" their home. Restatement (Second) of Torts § 40. As in *O'Neil*, Zea "did not place [Plaintiffs] anywhere, did not touch [Plaintiffs] and did not tell [Plaintiffs] that [they] could not leave." 538 F. Supp. 2d at 322 (concluding that, without such evidence, plaintiff's feeling that "he could not leave his office" due to the defendants' actions did not establish that defendants intended to confine him there). Given the absence of facts indicating that PFC directly or through Zea intended to confine plaintiffs to their home, Plaintiffs' false imprisonment claim must be dismissed.

***F.***      ***The Complaint Fails to Allege A Violation of G.L. c. 93A (COUNT X)***

Chapter 93A makes it unlawful to engage in "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. To state a § 11 claim based on unfair or deceptive acts, a plaintiff must allege that such acts occurred during "a commercial transaction between a person engaged in trade or commerce and another person engaged in trade or commerce, such that they were acting in a 'business context.'" *Milliken & Co. v. Duro Textiles, LLC,* 887 N.E.2d 244, 259 (Mass. 2008); *see Rafferty v. Merck & Co.,* 92 N.E.3d 1205, 1223 n.7 (Mass. 2018) ("[C]laims under § 11 require not only that the defendant's conduct occur in 'trade or commerce' but also that there be a commercial transaction between the parties."). Thus, courts analyzing a 93A claim must first determine "that there [is] a commercial transaction" between the parties. *Szalla v. Locke,* 657 N.E.2d 1267, 1269 (Mass. 1995).

Plaintiffs do not allege any commercial transaction between themselves and PFC. "A transaction is 'commercial' for the purposes of § 11 if it involves the 'arm's-length' exchange of services for compensation." *Trs. of Bos. Univ. v. ASM Commc'ns, Inc.,* 33 F. Supp. 2d 66, 76 (D. Mass. 1998) (citing *Linkage Corp. v. Trs. of Bos. Univ.,* 679 N.E.2d 191, 207 (Mass. 1997)). Plaintiffs do not allege any transaction meeting this standard; or for that matter, any transaction whatsoever between themselves and PFC. There are no facts establishing any business interaction between plaintiffs and PFC. Except for the actions of Zea who was otherwise under the direction and control of eBay as to the putative conduct at issue, Plaintiffs do not allege any interaction whatsoever between themselves and PFC. They identify no "commercial relationship—i.e., that of buyer and seller of goods or services" that ever existed between themselves and PFC. *Steele v. Kelley,* 710 N.E.2d 973, 984 (Mass. App. Ct. 1999). To the extent plaintiff rely on the allegation that EcommerceBytes is a "must-read for businesses like eBay" and that "[b]y and through [its]

employees and contractors, Defendants eBay and PFC are subscribers and/or readers of EcommerceBytes," Compl. ¶ 345, it is insufficient as it lacks any exchange between plaintiffs and PFC. *See ASM Commc'ns*, 33 F. Supp. 2d at 76. The complaint never alleges that any PFC employee, let alone PFC itself, paid for any subscription to EcommerceBytes or otherwise compensated Plaintiffs in exchange for property or services. In the absence of such an exchange, a mere subscription to EcommerceBytes does not constitute a commercial transaction. See *Johnson v. Republican Co.,* 1987 Mass. App. Div. 85, 88 (1987)("[a] person who purchases a news publication cannot rightfully be said to be engaging in 'trade' or 'commerce' within the meaning of Chapter 93A").

### G. The Complaint Fails to State A Claim For Tortious Interference With Business Relations

To plead a claim for tortious interference with business relations, a plaintiff must allege that: (1) the plaintiff had an advantageous relationship with a third party; (2) the defendant knowingly induced a breaking of that relationship; (3) the alleged interference was intentional and improper in motive or means; and (4) the defendant's actions harmed the plaintiff. *Blackstone v. Cashman,* 860 N.E.2d 7, 12–13 (Mass. 2007). No tortious interference claim exists unless the plaintiff "show[s] that the defendant … induced a party to breach a contract or not to enter into or continue a business relationship, resulting in damage." *Buster v. George W. Moore, Inc.,* 783 N.E.2d 399, 414 (Mass. 2003).

The complaint is devoid of any facts showing any plausible actual breach or failure to do business by any entity or third party as a result of any conduct of PFC. There are no factual allegations, as opposed to mere conclusory assertions, supporting any plausible finding that the conduct of PFC in any way or actually "induced a party to breach a contract or not to enter into or continue a business relationship." *Id.* To the extent the allegations that certain unidentified

"advertisers, clients and businesses that utilized EcommerceBytes' services" were harmed because these entities were "misled into believing" certain negative views of Plaintiffs and because "[o]nline sellers *now fear doing business* with the Plaintiffs (see Compl. ¶ 354–355), they amount to nothing more than an assertion that the alleged conduct but at risk or "jeopardized" plaintiff's purported existing or anticipated relationships which is insufficient as a matter of law *Vranos v. Skinner,* 930 N.E.2d 156, 165 (Mass. App. Ct. 2010); *Hutchings v. City of Gardner,* No. 20092074, 2010 WL 653968, at \*2 (Mass. Super. Ct. Jan. 4, 2010). Plaintiffs stop short of alleging that any of the "numerous advertisers, clients and businesses" actually ceased doing business with them with any such reference conclusory and threadbare (Comp. 217). *See, e.g., Hallal v. Vicis Cap. Master Fund Ltd.,* No. 12-10166-NMG, 2013 WL 1192384, at \*21 (D. Mass. Feb. 25, 2013) (recommending dismissal of tortious interference claim because allegations that defendant induced a "breaking" of relationships with "a multitude of third party businesses" are "insufficient to comply with *Twombly")* . The failure to allege that PFC induced a party to breach or terminate a relationship with Plaintiffs is fatal to the tortious interference claim. There is likewise no factual allegations permitting any plausible finding that PFC interfered with any such advantageous relation and did so with any improper means or motive.

### H. The Complaint Fails To State A Claim For Stalking (Count II)

Plaintiffs stalking claim fails as a matter of law as (a) it is based on California law which is inapplicable and (b) there is no such cause of action in Massachusetts. Further, as a matter of law, there can be no liability upon PFC based on any vicarious theory as stalking cannot be considered in anyway within the scope of any agency with PFC.

Plaintiffs stalking claim is based on a California statute which, by its very terms, has no application to conduct outside of California.[15] Since the gravamen of the stalking claim is premised on the physical surveillance undertaken in Massachusetts there is no viable claim under the asserted statute. *Thunder Studios, Inc. v. Kazal,* 13 F.4th 736, 745 (9th Cir. 2021) (noting Section 1708.7 does not reach conduct outside California); *Steep Hill Labs, Inc v. Moore*, 2018 WL 1242182, *11 (N. D. Cal. March 8, 2018 )(dismissing 1708.7 stalking claim as conduct occurred in Nevada not California).

To any extent the California civil stalking statute can be deemed applicable outside of California—which it cannot, Massachusetts has no civil cause of action or statute requiring the application of choice law principles. The forum choice of law rule applies with Massachusetts following the "'functional approach to choice of law,'" that "is explicitly guided by the Restatement (Second) of Conflict of Laws (1971)," *Levin v. Dalva Bros. Inc.,* 459 F.3d 68, 74 (1st Cir. 2006); *Clarendon Nat'l Ins. Co. v. Arbella Mut. Ins. Co.,* 803 N.E.2d 750, 752 (Mass. App. Ct. 2004).[16] All four of the operative Restatement factors dictate that Massachusetts law applies; the injury resulting from any "stalking" occurred in Massachusetts; the acts of physical surveillance took place in Massachusetts; plaintiff's residence and business is in Massachusetts; and plaintiffs' otherwise concede and allege that the stalking took place "primarily and

---

[15]The provision expressly provides it is intended for the welfare of residents of California. Cal. Civ. Code 1708.7(g)("[t]his act is an exercise of the police power of the state for the protection of the health, safety, and welfare of the people of the State of California, and shall be liberally construed to effectuate those purposes").

[16]Plaintiffs' stalking claim presents a conflict of laws because Section 1708.7 of the California Civil Code  has "no parallel in Massachusetts law," *Levin v. Dalva Bros. Inc.,* 459 F.3d 68, 74 (1st Cir. 2006), which protects Massachusetts residents from stalking through criminal laws and traditional tort claims.

(continued on next page)

substantially in the Commonwealth of Massachusetts." Compl. ¶ 346–47.[17] Moreover, the Restatement's general choice of law factors clearly favor Massachusetts law as it serves the needs of the interstate system because it would be highly "anomalous for [Massachusetts] to insist on providing greater benefits to its citizens under another state's law than it provides to its citizens under its own law," *Burleigh,* 313 F. Supp. 3d at 357; Massachusetts' substantial interest in protecting its own residents according to its own laws overrides any interest California may have in deterring wrongful conduct merely "directed" from within its borders. Compl. ¶ 234; *see Burleigh,* 313 F. Supp. 3d at 354 (interests of state where injury took place and plaintiff resided were weightier than interests of state where defendants' conduct took place);[18] and Massachusetts law promotes predictability and simplifies judicial determinations as applying the law of the state where plaintiff's injury occurred yields predictable results because "the state where the injury occurred will usually be readily ascertainable." *Burleigh,* 313 F. Supp. 3d at 358 (quoting Restatement (Second) of Conflict of Laws § 146 cmt. c). As Massachusetts law would apply and as there is no cause or action or private right of action for stalking the claim must be dismissed.

## I. *The Complaint Fails to State a Claim for Civil Conspiracy*

---

[17]To any extent any of the relied upon conduct took place in California at Ebay's offices, where a defendant's conduct and a plaintiff's injury take place in different states, "the law of the state where the injury occurred 'usually' applies," especially where, as here, the place of injury is also where the plaintiffs are domiciled and reside. *Burleigh v. Alfa Laval, Inc.,* 313 F. Supp. 3d 343, 353–54 (D. Mass. 2018) (citing Restatement (Second) of Conflicts of Laws § 146 cmt. e).

[18] California's interest is particularly weak because Section 1708.7 is expressly "for the protection of the health, safety, and welfare of the people of the State of California," Cal. Civ. Code § 1708.7(g), not out-of-state plaintiffs

(continued on next page)

The count for civil conspiracy does not name or specify PFC and otherwise, in conclusory terms, asserts "all defendants" engaged in a civil conspiracy. Compl. 332-341.[19] The allegations are insufficient to state any cognizable claim as to PFC.

There are no factual allegations plausibly setting out any direct or vicarious liability for civil conspiracy as to PFC. There are no factual allegations establishing that PFC engaged both in tortious conduct and that it and the other purported conspiratorial defendants agreed to perform the putative act or result. *See Payton v. Abbot Labs*, 512 F. Supp. 1031, 1035 (D. Mass. 1981); see *Dismukes v. Brandeis Univ.*, 2021 WL 15188828 (1st Cir. 2021)(no viable conspiracy claim as no facts upon which to find agreement among alleged conspirators). The complaint is likewise devoid of any facts alleging any "aiding and abetting" conspiracy as there are no facts alleged permitting any plausible finding that PFC "gave substantial assistance or encouragement" to the co-conspirators and that PFC harbored an "unlawful intent , i.e., knowledge that the other party was breaching a duty and the intent to assist that other party." Id. There are no facts remotely establishing that PFC had any knowledge of the tortious conduct and otherwise gave substantial assistance. There is no viable civil conspiracy claim involving PFC.

## J.     *The Complaint Fails to State a Claim for Defamation*

The complaint fails to state any viable defamation claim as to PFC. There are no allegations as to any defamatory statement otherwise published by PFC about the plaintiffs. There is no basis for any finding that any defamatory statement is attributable to PFC or otherwise made within the scope of any properly and sufficiently alleged agency with PFC. The reference and allegation as

---

[19]The allegations assert that all of the individual defendants were agents of eBay. Comp.13 (all "employed by eBay or contracted to eBay through PFC."). This includes Zea who is alleged to be an "eBay contractor" who directly reported to "eBay's head of security operations." Compl, 13, 37.

to "defendants" with no identification of which defendant is responsible for what particular defamatory statement is insufficient to satisfy a viable claim as to PFC. *See Fiorillo v. Winiker*, 85 F. Supp. 3d 565, 576 (D. Mass. 2015). Indeed, any defamatory statement is required to be examined in context with opinions not actionable. *See Greenspan v. Random House Inc.*, 859 F. Supp. 2d 206, 223 (D. Mass. 2012).

To the extent the defamation claim as to PFC is based on the conduct of Zea, the complaint remains devoid of any plausible claim. There is no allegation that Zea sent pornography to Steiner's neighbor in Steiner's name or that such materials were "defamatory" or caused non-speculative reputational injury. There is no allegation as to what Zea posted in the Craigslist posts with such posting not defamatory because it is not of and concerning the plaintiff as any Craigslist listing is not alleged to have referred to plaintiffs by name. The allegations of the creation of Persons of Interest are insufficient to constitute any plausible basis to find defamation as it is not a defamatory statement about the plaintiffs. There are otherwise no allegations that Zea participated in the alleged Twitter messages and tweets. There is no viable defamation claim attributable to PFC.

### K. *The Complaint Fails to State a Claim for Ratification (COUNT XII)*

There is no viable cause of action for "ratification" as to PFC. Indeed, none of the allegations in the count, which is otherwise exclusively directed at eBay, Wenig and Wymer, pertain to or mention PFC.

To any extent the claim was intended to include PFC it fails as the complaint is devoid of any facts plausibly showing that PFC ratified the Individual Defendants' alleged misconduct. Ratification is a theory of liability that applies where a "principal acquiesces in the agent's action, or fails promptly to disavow the unauthorized conduct after disclosure of material facts." *Linkage*

*Corp.,* 679 N.E.2d at 204. The allegations do not support any agency relationship between PFC and any of the individual defendants necessary for any possible ratification. As to defendant Zea, the allegations do not plausibly allege any knowledge or acquiescence. To the contrary, they show unequivocally that PFC was unaware of and promptly disavowed Zea's alleged misconduct with every <u>factual</u> allegation as to specific acts undertaken by Zea asserting that she did so at or under the direction of Baugh, Harville, Popp, or other eBay personnel.[20] In light of these allegations, "no reasonable inference could be drawn that would suggest [PFC] ratified [the Individual Defendants'] conduct." *Petrell v. Shaw,* 453 Mass. 377, 384 n.5 (2009) (rejecting ratification theory as a matter of law because where defendant took "prompt action" after learning of the alleged misconduct). Because Plaintiffs' allegations do not plausibly show that PFC acquiesced to, or was even aware of, the alleged misconduct, their claim for ratification should be dismissed.

## CONCLUSION

Based on the foregoing, defendant Progressive F.O.R.C.E. Concepts, LLC's Motion to Dismiss should be GRANTED.

---

[20] Plaintiffs plead that within a month of the Natick events, PFC terminated Zea. Compl. ¶ 202. Furthermore, when Zea and others learned that the NPD was making inquiries, they interfered with the investigation, either lying to the NPD about eBay's involvement while pretending to offer the company's assistance with the harassment, lying to eBay's lawyers about their own involvement, or both. Compl., Ex. A, Wilson Aff., ¶ 13.

Respectfully submitted,
PROGRESSIVE F.O.R.C.E. CONCEPTS, LLC,
By Its Attorneys,

*/s/ Tory A. Weigand*

Tory A. Weigand, BBO #548553
tweigand@morrisonmahoney.com
Matthew J. Holmes, BBO #675994
mholmes@morrisonmahoney.com
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210-1181
Phone: 617-439-7500

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 12, 2021.

*/s/ Tory A. Weigand*

Tory A. Weigand

100706226