UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| INA STEINER, DAVID STEINER, and STEINER ASSOCIATES, LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>EBAY INC., et al.<br><br>        Defendants. | Case No.: 1:21-cv-11181-DPW<br><br>Leave to File Reply Brief Granted By Order Dated June 1, 2022 (ECF No. 127) |

**<u>DEFENDANT STEVE WYMER'S REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

**I.     INTRODUCTION**[1]

Plaintiffs' Opposition, like the Complaint, resorts to the simplest tactic available to try to construct a façade that Wymer knew of or engaged in illegal conduct—it lumps Wymer in with the Charged Defendants, who have now all pled guilty to crimes arising from their harassment of the Steiners.  But that tactic, along with the Opposition's parroting of the Complaint's conclusory allegations and its distorting of its 545-page "Appendix" ("App.," ECF No. 117-1), underscores the lack of well-pled facts sufficient to state a claim as to Wymer.  The Opposition's reliance on conclusory allegations and mischaracterizations confirms that the Complaint does not contain well-pled factual allegations that Wymer participated in or was aware of the acts committed by the Charged Defendants.  For secondary liability, Plaintiffs have not pointed to any well-pled facts that Wymer agreed to engage in a tort, knew of the Charged Defendants' conduct, or assisted in committing any wrongful act.  And, Plaintiffs point to no facts showing Wymer participated in the alleged RICO enterprise or agreed to further a RICO conspiracy.

**II.    ARGUMENT**

        **A.    The Improper Extrinsic Evidence Does Not Support Claims Against Wymer**

Not only did Plaintiffs improperly submit the extrinsic evidence in the Appendix, they grossly mischaracterize it.  While Plaintiffs argue that Baugh and Cooke made "admissions" about Wymer during their respective plea hearings, and the Opposition prominently features lengthy excerpts from those transcripts in purported support (Opp. at 7-12 (citing App. at R277-85, R495-97)), those quoted statements by government attorneys *do not even mention Wymer*—

---

[1] Consistent with the Court's Order (ECF No. 127), Wymer joins the joint reply with the other defendants, and the joint reply of defendants Wenig and Wymer, both filed on the date of this pleading.  Wymer submits this reply to address issues raised in Plaintiffs' Consolidated Opposition to Defendants' Motions to Dismiss ("Opp.," ECF No. 117) specific to him.  Capitalized terms have the same meaning as ascribed in Wymer's opening brief (ECF No. 84).

let alone amount to any "admissions" as to him.  *See* App. at R260-96, R467-503.  Plaintiffs' further misleading claim that the Charged Defendants each "admitted" the acts were done "at the behest of" Wenig and Wymer (Opp. at 7 n.5) has been spun from whole cloth—the Opposition cites no support for the claim, nor is any such "admission" found anywhere in the Appendix.

Plaintiffs also mischaracterize eBay's presentation to the government as purportedly expressing eBay's opinion that "at a minimum, Wymer could be criminally charged[.]"  Opp. at 10 n.8.  But the cited slides do not say that at all, they say:  "The conduct of the *seven defendants* was clearly criminal [. . . ]"—not Wymer's.  App. at R6 (emphasis added).  Moreover, eBay's presentation specifically *rejects* Plaintiffs' allegations as to Wymer, stating:  ***"[w]e did not find evidence [Wymer] actually directed or knew that criminal acts would follow."***  App. at R13 (emphasis added).  Plaintiffs' attempt to rewrite the presentation speaks volumes.[2]

## B. The Complaint Does Not State An IIED Claim Against Wymer

The Opposition identifies no well-pled facts reflecting that Wymer engaged in any of the allegedly outrageous conduct, or that he knew of Baugh's and others' harassment.  Opp. at 22-24.  Instead, the Opposition cites Wymer's text message to Baugh using the phrase "[w]hatever it takes" no less than six times, claiming this was a "directive" to Baugh to engage in criminal acts against the Steiners, using (in Plaintiffs' words) "whatever means necessary[.]"  Opp. at 1.  But tellingly, the Opposition cites another instance Wymer used this phrase, which cannot plausibly be seen as being a "directive" to engage in criminal behavior—specifically, Wymer used the exact phrase in an email to eBay's in-house lawyers (including its Chief Legal Counsel), on which Baugh was copied, regarding an imposter Twitter user.  Opp. at 14-15 (citing App. at R437-39).  Wymer's demonstrated use of the phrase in the ordinary course renders Plaintiffs'

---

[2] Wymer does not concede that all aspects of eBay's presentation are accurate.

characterization of it as a "directive" to Baugh to criminally terrorize the Steiners even more implausible and unreasonable. Further, the Appendix (on a page Plaintiffs cite) discloses eBay's finding that "Baugh *'spun'* to the defendants" Wymer's communications. App. at R25 (emphasis added). Accordingly, Plaintiffs' own submission confirms that Baugh mischaracterized Wymer's messages to the Charged Defendants.[3]

Plaintiffs also cite Wymer's text to Baugh stating "I want to see ashes. As long as it takes. Whatever it takes" and "I'll embrace managing any bad fall out" (Opp. at 22; App. at R366), but Plaintiffs ignore that these hyperbolic statements on their face are about Baugh's questions regarding the Steiner's *website* (Compl. Ex. A at ¶¶ 38-39, 55)—they were not about stalking, imprisoning, defaming, vandalizing, trespassing, or threatening to kill them.[4]

Finally, Plaintiffs' Opposition rests on the argument that Baugh purportedly "had a history of engaging in alarming behavior such as stabbing chairs" and "harassing subordinates," and that "Wenig and Wymer knew [Baugh] to be a loose cannon with experience engaging in the behavior at play here," such that Wenig and Wymer should have foreseen Baugh's criminal conduct. Opp. at 19, 39. **Critically**, there is no well-pled allegation that Wymer was present for or aware of any of Baugh's alleged disturbing behavior, or had any idea that Baugh was capable of, or predisposed to, such acts. Plaintiffs' Appendix admits as much; it reveals the company's

---

[3] Plaintiffs' Appendix also belies the argument that Wymer did not cooperate in eBay's internal investigation (Opp. at 23): it shows that Wymer voluntarily sat for *four* interviews with eBay's internal and external investigators. App. at R243; *see also* R218 (eBay's outside counsel stating that Wymer conveyed he was "shocked" when he learned of the Natick events, and he denied directing or intending anyone to engage in criminal conduct).

[4] While Plaintiffs argue Wymer should have used "traditional methods" of addressing "'negative' press" (Opp. at 23), the Complaint alleges he did just that: eBay executives, including Wenig and Wymer, had just recently retained a consultant firm that produced a report outlining strategies pertaining to the Steiners' articles and search engine results. ¶¶ 52-53. It is unsurprising that Wymer as Chief Communications Officer would be the one to manage any "fall out" from eBay's communication strategies.

review of Baugh's personnel file and other sources identified "no red flags." App. at R25. Given that Plaintiffs' theory of liability requires Wymer to have known Baugh was a "loose cannon," it necessarily fails for lack of any such supporting, non-conclusory factual allegations.

### C. The Complaint Does Not State The Other Direct Claims Against Wymer

For the other direct claims, Plaintiffs' Opposition, like the Complaint, improperly employs the homogenized term "Defendants" to attribute the wrongful conduct of the Charged Defendants to Wymer. *E.g.*, Opp. at 68, 71-72, 76-77 (indiscriminately using term "Defendants"). But no requisite, well-pled allegation supports that *Wymer* engaged in any tortious act, or conduct giving rise to a direct claim for stalking, the Massachusetts Civil Rights Act, defamation, trespass, false imprisonment, or interference with a business relationship.

### D. The Complaint Fails To Plead Wymer Is Secondarily Or Vicariously Liable

#### 1. The Civil Conspiracy Claim Against Wymer Fails

Plaintiffs' attempt to plead civil conspiracy as to Wymer fails because the Opposition does not attempt to identify a substantial assistance theory of liability, and, for the concerted action theory, it points to no non-conclusory allegation that Wymer (i) was aware of or agreed to commit a wrongful act, or (ii) committed a tortious act himself. Opp. at 73-74. Plaintiffs argue Wymer can be liable as a conspirator even when he did not commit any wrongful act, but their only authority says the opposite. *Id*. (citing *Aetna Cas. Sur. Co. v. P&B Autobody*, 43 F.3d 1546, 1565 (1st Cir. 1994) (upholding a verdict finding appellant conspiratorially liable because the appellant herself made fraudulent statements in connection with an insurance scheme)).

#### 2. The Claims Of Aiding And Abetting Tort Claims Fail Against Wymer

Plaintiffs' attempt to use an aiding and abetting theory to hold Wymer liable for underlying torts in which he was not involved fails because the Complaint does not plausibly allege he knew the alleged torts were occurring, or that he substantially assisted in any such torts.

4

Plaintiffs do not address these flaws in their Opposition, and instead merely repeat conclusory allegations that Wymer directed the conduct of the Charged Defendants or aided and abetted such conduct. *E.g.*, Opp. at 66, 69 (summarily alleging Wymer is liable under aiding and abetting theory for trespass and Massachusetts Civil Rights Act violation, with no explanation of how he purportedly aided and abetted those torts).

### E. The Complaint Does Not State A Civil RICO Claim Against Wymer

To plead a civil RICO claim, Plaintiffs concede they must allege facts showing that each defendant "conduct[ed] or participate[d] . . . in the conduct of such enterprise's affairs" (Opp. at 61), but the Complaint pleads none as to Wymer.[5] As discussed *supra*, Wymer's messages were not a criminal "directive" nor show he was a participant in RICO enterprise activities. Opp. at 61. The Opposition also argues Wymer "promised 'top cover'" (*id.*), but that is false: the Complaint pleads that Baugh *requested* "top cover" from Wymer (Compl. Ex. A at ¶ 177), *not* that Wymer ever responded or agreed.

For RICO conspiracy liability (18 U.S.C. § 1962(d)), the Complaint must allege Wymer "knowingly joined the conspiracy, agreeing with one or more coconspirators 'to further [the] endeavor which, if completed, would satisfy all the elements of a substantive [RICO] offense.'" *U.S. v. Rodríguez-Torres*, 939 F.3d 16, 23-24 (1st Cir. 2019). The Opposition, like the Complaint, cites no specific facts that Wymer agreed to join a conspiracy and facilitate a substantive RICO offense. Plaintiffs' false "top cover" "promise" (Opp. at 63) falls far short.

### III. CONCLUSION

For the reasons set forth, all claims against Wymer should be dismissed with prejudice.

---

[5] Plaintiffs are wrong that being "integral" to carrying out the enterprise's activities suffices. *Id*. (citing *U.S. v. Ernst*, 502 F. Supp. 3d 637, 661 (D. Mass. 2020) (the First Circuit requires showing a defendant's participation in the "operation or management of the enterprise itself")).

Respectfully submitted,
STEVE WYMER
By his Attorneys,

*/s/ Caz Hashemi*

Caz Hashemi, Esq. *(pro hac vice)*
WILSON SONSINI GOODRICH & ROSATI P.C.
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300
chashemi@wsgr.com


Michael J. Pineault, Esq.
Mass. Bar. No. 555314
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
(617) 621-6578
mpineault@andersonkreiger.com

Dated: June 24, 2022

## CERTIFICATE OF SERVICE

    I hereby certify that on June 24, 2022, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: June 24, 2022                                                         */s/ Michael J. Pineault*
                                                                                Michael J. Pineault