**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Ina Steiner,<br>David Steiner,<br>Steiner Associates, LLC,<br><br>               *Plaintiffs*,<br><br>   v.<br><br>eBay, Inc.,<br>Progressive F.O.R.C.E. Concepts, LLC,<br>Devin Wenig,<br>Steve Wymer,<br>James Baugh,<br>David Harville,<br>Brian Gilbert,<br>Stephanie Popp,<br>Stephanie Stockwell,<br>Veronica Zea,<br>Philip Cooke, and<br>John and Jane DOE,<br><br>               *Defendants*. | No. 1:21-cv-11181-DPW<br><br>Oral Argument Requested<br><br>Leave to File Granted June 1, 2022 |

**JOINT REPLY OF DEFENDANTS EBAY INC., WENIG, WYMER, COOKE, BAUGH, POPP, AND GILBERT IN SUPPORT OF THEIR RESPECTIVE MOTIONS TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

   I.   Plaintiffs do not state a RICO claim. ........................................................................ 2

      A.   Plaintiffs offer no response to numerous defects in their RICO claim. ...................... 2

      B.   Plaintiffs lack standing to assert a RICO claim because they have not adequately
          alleged a cognizable injury. ...................................................................................... 3

      C.   Plaintiffs do not state a claim under § 1962(c). ........................................................ 4

          1.   The Complaint fails to allege predicate racketeering activity. .............................. 4

              a.   The Complaint fails to plead interference with commerce. ............................. 4

              b.   The Complaint fails to plead mail or wire fraud. ............................................ 4

              c.   The Complaint fails to plead obstruction of justice. ....................................... 6

          2.   The Complaint fails to allege a "pattern of racketeering activity." ...................... 7

              a.   The Complaint fails to plead a "closed" pattern of racketeering. .................... 7

              b.   The Complaint fails to plead an "open-ended" pattern of racketeering............ 8

   II.  Plaintiffs' state-law claims fail. ............................................................................... 9

      A.   Plaintiffs fail to state a stalking claim. ...................................................................... 9

      B.   Plaintiffs fail to state a false imprisonment claim. .................................................... 13

      C.   Plaintiffs fail to state a tortious interference claim. .................................................. 14

   III.  Plaintiffs' reliance on extrinsic evidence is improper and shows that even with the
        benefit of hundreds of pages of additional allegations, their claims still fail. .................. 16

CONCLUSION ................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   267 F.3d 30 (1st Cir. 2001)............................................................................................17

*Amalgamated Titanium Int'l Corp. v. Mennie Mach. Co.*,
   2022 WL 161610 (D. Mass. 2022) ..................................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................................................................18

*Bruno Int'l Ltd. v. Vicor Corp.*,
   2015 WL 5447652 (D. Mass. 2015) ..............................................................................15

*Buster v. George W. Moore, Inc.*,
   438 Mass. 635 (2003) ....................................................................................................14

*Coblyn v. Kennedy's, Inc.*,
   359 Mass. 319 (1971) ....................................................................................................14

*Decoulos v. Town of Aquinnah*,
   2018 WL 3553351 (D. Mass. 2018), *aff'd*, 2019 WL 11234357 (1st Cir. 2019) ...................17

*Diamond Multimedia Sys., Inc. v. Superior Ct.*,
   19 Cal. 4th 1036 (1999) .................................................................................................12

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
   48 F.3d 1260 (D.C. Cir. 1995)........................................................................................9

*Efron v. Embassy Suites (P.R.), Inc.*,
   223 F.3d 12 (1st Cir. 2000)..............................................................................................8

*Ezell v. Lexington Ins. Co.*,
   335 F. Supp. 3d 91 (D. Mass. 2018), *aff'd*, 926 F.3d 48 (1st Cir. 2019)...............................18

*Feliciano-Hernández v. Pereira-Castillo*,
   663 F.3d 527 (1st Cir. 2011)............................................................................................3

*Foley v. Polaroid Corp.*,
   400 Mass. 82 (1987) ......................................................................................................14

*Freeman v. Town of Hudson*,
714 F.3d 29 (1st Cir. 2013) ...................................................................................17

*Giragosian v. Ryan*,
547 F.3d 59 (1st Cir. 2008) ...................................................................................16

*Giuliano v. Fulton*,
399 F.3d 381 (1st Cir. 2005) ...................................................................................7

*Gratz v. Ruggiero*,
822 F. App'x 78 (3d Cir. 2020) ...............................................................................3

*Grogan v. Platt*,
835 F.2d 844 (11th Cir. 1988) ................................................................................3

*Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*,
187 F.3d 941 (8th Cir. 1999) ..................................................................................3

*HDI-Gerling Am. Ins. Co. v. Navigators Ins. Co.*,
2015 WL 5315190 (D. Mass. 2015) .....................................................................10

*Home Orthopedics Corp. v. Rodríguez*,
781 F.3d 521 (1st Cir. 2015) ...................................................................................7

*Jacques v. Childs Dining Hall Co.*,
244 Mass. 438 (1923) ...........................................................................................14

*John Paul Mitchell Sys. v. Eslami*,
110 F.3d 68 (9th Cir. 1997) ....................................................................................3

*Johnson v. Ocwen Loan Servicing, LLC*,
2020 WL 1063083 (D. Mass. 2020) .......................................................................3

*Kaufman v. Richmond*,
442 Mass. 1010 (2004) .........................................................................................10

*Lawson v. FMR LLC*,
554 F. Supp. 3d 186 (D. Mass. 2021) ..................................................................3, 4

*Levin v. Dalva Bros., Inc.*,
459 F.3d 68 (1st Cir. 2006) ...................................................................................10

*Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co.*,
792 F.2d 341 (3d Cir. 1986), *aff'd sub nom. Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987) ...............................................................3

*McCann v. Wal-Mart Stores, Inc.*,
210 F.3d 51 (1st Cir. 2000) ...................................................................................13

iii

*Mendez Internet Mgmt. Servs., Inc. v. Banco Santander de P.R.*,
   621 F.3d 10 (1st Cir. 2010).............................................................................5

*Miller v. Suffolk Cnty. House of Corr.*,
   2002 WL 31194866 (D. Mass. 2002) ..........................................................17

*Morgan v. Harmonix Music Sys., Inc.*,
   2009 WL 2031765 (N.D. Cal. 2009) ...........................................................12

*Nygard v. Bacon*,
   2021 WL 4312581 (S.D.N.Y. 2021), *report and recommendation adopted*,
   2021 WL 3721347 ..........................................................................................3

*Roeder v. Alpha Indus., Inc.*,
   814 F.2d 22 (1st Cir. 1987)............................................................................8

*Sherman v. Clear Channel Outdoor, Inc.*,
   889 F. Supp. 2d. 168 (D. Mass. 2012) ........................................................15

*Thunder Studios. Inc. v. Kazal*,
   13 F.4th 736 (9th Cir. 2021), *cert. denied sub nom. David v. Kazal*, 142 S. Ct.
   1674 (2022).....................................................................................................12

*Van Buren v. United States*,
   141 S. Ct. 1648 (2021)....................................................................................5

*Watterson v. Page*,
   987 F.2d 1 (1st Cir. 1993)............................................................................16

**Statutes**

18 U.S.C. § 1341 ...........................................................................................................4

18 U.S.C. § 1343 ...........................................................................................................4

**Other Authorities**

Fed. Jury Prac. & Instr., Pattern Crim. Jury Instr. 1st Cir. (1998)................................5

Restatement (Second) of Torts (1965)..........................................................................13

Restatement (Second) of Conflict of Laws (1971) ................................................10, 11

6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d
   ed. 2010) ........................................................................................................18

## INTRODUCTION

Despite the massive volume of material Plaintiffs have filed with their opposition to the motions to dismiss ("Opposition"), Dkt. 117 ("Opp."), one core truth remains: the Complaint suffers from various fatal defects. Plaintiffs have not, and cannot, cure those defects by burying the Court in a hundred-page Opposition supplemented by five-hundred pages of extrinsic "evidence." As discussed in more detail below, the Opposition completely fails to answer the multiple deficiencies in the Complaint that Defendants have identified.

To begin with, the Opposition falls well short of saving the RICO claim. First, despite its length, the Opposition inexplicably fails to address several dispositive arguments set forth in Defendants' motions to dismiss. For example, Plaintiffs completely fail to address Defendants' dispositive argument that the Complaint adequately alleges neither a closed- nor open-ended pattern of racketeering because it pleads only a single, narrow scheme with a clear and terminable goal. This failure, by itself, amounts to a waiver and entitles the Defendants to dismissal of the RICO claim. Inadequate allegations of a racketeering pattern aside, Plaintiffs identify nothing in the Complaint establishing that they have standing to assert a RICO claim or have sufficiently alleged predicate acts.

The Opposition also does not answer Defendants' arguments for dismissing their claims for false imprisonment, tortious interference with business relations, and stalking. Rather than show how the Complaint's allegations satisfy the elements of false imprisonment, the Opposition simply ignores them, arguing only that Plaintiffs were "afraid to leave their home." Similarly, rather than show how the Complaint's allegations regarding EcommerceBytes' subscribers and advertisers are sufficient to plead a tortious interference claim, the Opposition jettisons the theory alleged in the Complaint and advances the entirely new theory that the Steiners' relationships with "sources" were affected. Even if Plaintiffs were allowed to amend their Complaint through their

1

Opposition, this new theory also does not state a tortious-interference claim. As to the stalking claim asserted under California law, the Opposition's argument that there is no conflict of law because Massachusetts does not have a stalking statute is flat wrong, as is their argument as to how the conflict of law factors should apply.

Finally, Plaintiffs' reliance on extrinsic evidence, much of which they grossly mischaracterize, is wholly inappropriate. First Circuit law carefully circumscribes when a court may consider documents outside a complaint in evaluating a motion to dismiss for failure to state a claim, and Plaintiffs' five hundred pages do not fall within any recognized exception. Ultimately, however, Plaintiffs' blatant effort to constructively amend their Complaint through improper extrinsic evidence only underscores the Complaint's incurable failings. Even with the benefit of allegations drawn from their appendix, Plaintiffs cannot fix their claims' many fatal flaws. Accordingly, the Court should dismiss the claims discussed herein with prejudice.[1]

## I.     Plaintiffs do not state a RICO claim.

### A.     Plaintiffs offer no response to numerous defects in their RICO claim.

As an initial matter, Plaintiffs fail to respond to many of Defendants' dispositive arguments. For example, they ignore Defendants' arguments that Plaintiffs have failed to adequately allege a predicate Hobbs Act violation (*cf.* eBay Br. 14–15; Wenig Br. 10–11; Wymer Br. 27–29); that Plaintiffs cannot rely on the alleged pre-2019 events to establish a "closed" pattern of racketeering (*cf.* eBay Br. 10–11; Wenig Br. 17; Wymer Br. 31); that Plaintiffs' allegations of a "narrow scheme targeting few victims" does not establish a "closed" pattern of racketeering (*cf.* eBay Br. 12; Wenig Br. 18–19; Wymer Br. 29–30); and that Plaintiffs cannot rely on purported acts supposedly directed at a YouTuber and the *Wall Street Journal* to establish an "open" pattern

---

[1]     Claims and arguments not addressed in this joint brief will be addressed, to the extent applicable, in the Defendants' individual replies and certain Defendants' other joint reply.

of racketeering (*cf.* eBay Br. 17–19; Wenig Br. 19–20; Wymer Br. 32). Having "failed to address" these arguments, Plaintiffs have "conceded" them. *Johnson v. Ocwen Loan Servicing, LLC*, 2020 WL 1063083, at *10 (D. Mass. 2020); *accord, e.g.*, *Feliciano-Hernández v. Pereira-Castillo*, 663 F.3d 527, 536 (1st Cir. 2011).

**B.    Plaintiffs lack standing to assert a RICO claim because they have not adequately alleged a cognizable injury.**

Defendants explained that, as a matter of law, neither personal injury nor economic losses attributable to personal injury constitute RICO injuries. *Cf.* Wenig Br. 8–9; Wymer Br. 26 n.17. Still, Plaintiffs insist that "reputational damage can constitute a RICO injury." Opp. 58. But this Court has already held that reputational harm is *not* a cognizable RICO injury. *See Lawson v. FMR LLC*, 554 F. Supp. 3d 186, 195–96 (D. Mass. 2021) (Woodlock, J.) (citing *Tal v. Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006)). Many other courts have also so held. *E.g.*, *Gratz v. Ruggiero*, 822 F. App'x 78, 82 (3d Cir. 2020); *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 954 (8th Cir. 1999); *John Paul Mitchell Sys. v. Eslami*, 110 F.3d 68 (9th Cir. 1997) (unpublished table decision); *Grogan v. Platt*, 835 F.2d 844, 847 (11th Cir. 1988); *Nygard v. Bacon*, 2021 WL 4312581, at *2 (S.D.N.Y. 2021), *report and recommendation adopted*, 2021 WL 3721347. Plaintiffs, who rely on cases predating this Court's *Lawson* decision (Opp. 58–59), identify no basis to reconsider the issue. Regardless, as Defendants noted, Plaintiffs have alleged no well-pleaded facts to support their conclusory allegations of economic loss. *Compare* Wenig Br. 9 n.5, *with* Opp. 58 (citing Compl. ¶¶ 276–77).

Hoping to save their RICO claims from dismissal for lack of standing, Plaintiffs say that they have alleged that the Defendants "injure[d] Plaintiffs' cause of action against the Defendants" and that this constitutes a cognizable property injury under *Malley-Duff & Associates, Inc. v. Crown Life Insurance Co.*, 792 F.2d 341, 354–55 (3d Cir. 1986), *aff'd sub nom. Agency Holding*

*Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987). Opp. 59. Leaving aside their failure to plead facts plausibly suggesting that Defendants' purported obstruction has actually injured any cause of action they might have, Plaintiffs' reliance on *Malley-Duff* is misplaced. As this Court recognized in *Lawson*, *Malley-Duff* stands for the proposition that "costs incurred *in a prior concluded litigation* are regarded as injury to 'business or property.'" *Lawson*, 554 F. Supp. 3d at 196–97 (emphasis added). Plaintiffs do not—and cannot—allege the existence of prior litigation.

### C.      Plaintiffs do not state a claim under § 1962(c).

The Complaint does not plead facts sufficient to plausibly allege racketeering activity, much less a pattern of racketeering activity.

#### 1.      The Complaint fails to allege predicate racketeering activity.

Defendants demonstrated that Plaintiffs have failed to adequately allege predicate acts sufficient to sustain a RICO claim. *See* eBay Br. 14–16 & n.6; Wenig Br. 10–15; Wymer Br. 27–29. Nothing Plaintiffs say in their Opposition alters that conclusion. Plaintiffs offer no response to Defendants' dispositive arguments as to the Hobbs Act and have not rebutted Defendants' arguments as to the other purported predicates.

##### a.      The Complaint fails to plead interference with commerce.

Having failed to respond to Defendants' dispositive arguments regarding the Hobbs Act (*cf.* eBay Br. 14–15; Wenig Br. 10–11; Wymer Br. 27–29), Plaintiffs have forfeited reliance on it. *See supra* at 3.

##### b.      The Complaint fails to plead mail or wire fraud.

Defendants explained that Plaintiffs did not adequately plead the use of an interstate carrier or interstate communication "for the purpose of executing" a "scheme … to defraud" or "obtain[] money or property by means of false or fraudulent pretenses." 18 U.S.C. §§ 1341, 1343; *cf.* eBay Br. 14–16; Wenig Br. 11; Wymer Br. 27–29. Tacitly acknowledging that they did not plead a

4

scheme to obtain money or property, Plaintiffs rely solely on allegations that they implicitly suggest are sufficient to plead a scheme to defraud. *See* Opp. 51–55. There is no merit to that suggestion.

To plead a scheme to defraud, Plaintiffs must allege that the Defendant in question acted "with the specific intent to deceive or cheat for the purpose of either causing some financial loss to another or bringing about some financial gain to [them]self." Fed. Jury Prac. & Instr., Pattern Crim. Jury Instr. 1st Cir. 4.13 (1998). Plaintiffs have not done so. The only purported deceptions that Plaintiffs identify are (a) constructing false identities and online avatars; (b) reporting EcommerceBytes as a phishing site in 2012; and (c) posting false ads for sex parties on Craigslist. Opp. 52–55. But none of these constitutes deception for the purpose of financial gain or financial loss to the victim, and Plaintiffs cite no case suggesting otherwise. Nor could they. *See, e.g.*, *Mendez Internet Mgmt. Servs., Inc. v. Banco Santander de P.R.*, 621 F.3d 10, 15 (1st Cir. 2010) (alleged defamation "standing alone" can "hardly be enough to comprise fraud" (emphasis omitted)). Plaintiffs attempt to salvage their mail- and wire-fraud allegations with the contention that "the goal of the [alleged] conspiracy was to prevent the Steiners from continuing with their business in the usual course, to their detriment." Opp. 52. This argument "betrays a misunderstanding of 'obtain'—disrupting or attempting to close a business is not an attempt to obtain that business" or its property. *Mendez*, 621 F.3d at 15–16. Were the use of avatars or online defamation construed as mail or wire fraud under §§ 1341 and 1343, the statutes would "attach criminal penalties to a breathtaking amount of commonplace computer activity." *Van Buren v. United States*, 141 S. Ct. 1648, 1661 (2021) (such "fallout underscores the implausibility of the Government's interpretation" of the Computer Fraud and Abuse Act).

Regardless, Plaintiffs do not point to any allegations in their Complaint sufficient to

establish that any Defendant in particular acted with a specific intent to defraud. *Cf.* Wenig Br. 11–12; Wymer Br. 27–28. Their Opposition, like their Complaint, improperly lumps "the defendants" together, and improperly relies on purported facts not alleged in the Complaint— namely, the purported content of certain Defendants' plea allocutions. Opp. 52. In short, Plaintiffs identify no well-pleaded allegations in the Complaint plausibly suggesting that any Defendant committed mail or wire fraud.

> **c.      The Complaint fails to plead obstruction of justice.**

Plaintiffs do not dispute that obstruction "by means of bribery" is the only possible basis for their assertion that the Defendants obstructed justice; nor do they dispute that the Complaint contains no allegations of bribery. *Cf.* eBay Br. 16; Wenig Br. 13; Wymer Br. 28. Having tacitly conceded these points, Plaintiffs cannot rely on a purported violation of 18 U.S.C. § 1510 as a predicate act.[2]

Nor can they rely on the allegation that Defendants "conspire[ed] to obstruct justice." Compl. ¶ 267(d)(i). As Defendants explained and Plaintiffs do not deny, conspiracy to commit a federal offense in violation of 18 U.S.C. § 371 does not constitute a predicate act for purposes of RICO. *Cf.* eBay Br. 10, 15–16; Wenig Br. 13; Wymer Br. 28.

*      *      *

In sum, despite spending pages of their Opposition quoting the allegations in the Complaint (Opp. 52–56), Plaintiffs never dispute that those allegations do not adequately plead mail fraud, wire fraud, obstruction of justice, or extortion. This leaves Plaintiffs' RICO claim relying, at most, on alleged witness tampering predicates. Plaintiffs, however, offer no response to the argument

---

[2]      Plaintiffs have also abandoned any claim based on 18 U.S.C. § 1503, which is mentioned in the Complaint but not referenced in their Opposition. *Cf.* eBay Br. 16; Wenig Br. 13–14; Wymer Br. 28 n.18.

that the Complaint does not plead facts sufficient to establish witness tampering in violation of 18 U.S.C. § 1512 because it does not adequately allege a "'reasonable likelihood' that 'at least one of the relevant communications would have been made to a federal officer.'" Wenig Br. 14–15; Wymer Br. 28 (quoting *United States v. Weadick*, 15 F.4th 1, 13 (1st Cir. 2021), quoting in turn *Fowler v. United States*, 563 U.S. 668, 677–78 (2011)). And even if those predicates were adequately pleaded, as discussed *infra* at 7, Plaintiffs concede that they occurred over too short a period to establish continuity as a matter of law.

### 2.    The Complaint fails to allege a "pattern of racketeering activity."

Plaintiffs have adequately alleged neither a "closed" nor an "open" pattern of racketeering.

#### a.    The Complaint fails to plead a "closed" pattern of racketeering.

Plaintiffs do not dispute that courts have "consistently declined to find continuity where," as here, "the RICO claim concerns a single, narrow scheme targeting few victims." *Home Orthopedics Corp. v. Rodríguez*, 781 F.3d 521, 530 (1st Cir. 2015) (citation omitted); *cf.* eBay Br. 12–13; Wenig Br. 18; Wymer Br. 30–31. Nor do they deny that the scheme they allege here is precisely such a scheme. On the contrary, Plaintiffs admit that "*all*" of the predicate acts that they allege were purportedly committed with the supposed "goal of eradicating the Steiner's reporting." Opp. 46 (emphasis added); *see also id.* at 76 ("[T]he entire object of the Defendants' conduct was to 'take down' the Steiners ....."). This concession alone is fatal to Plaintiffs' allegation of a "closed" pattern of racketeering activity.

The allegation also fails for yet another reason. Plaintiffs concede (at Opp. 46) that "closed continuity cannot be established" when, as here, "the acts span only a 'few weeks or months.'" *Rodríguez*, 781 F.3d at 529; *cf.* eBay Br. 9–10; Wenig Br. 18; Wymer Br. 31. Recognizing that continuity "can *never* be established" where "the period of time is short," *Giuliano v. Fulton*, 399 F.3d 381, 387 (1st Cir. 2005) (emphasis added), Plaintiffs try to expand the relevant time period

by pointing to isolated acts that allegedly occurred in 2009, 2012, 2014, and 2018. Opp. 46–47. But Plaintiffs offer no response to—and thus effectively concede—Defendants' analysis showing that these alleged acts cannot support a finding of closed continuity because they are inadequately pleaded, not attributable to the purported "eBay/PFC enterprise," and only sporadic. *Cf.* eBay Br. 10–11; Wenig Br. 16–17. Plaintiffs have therefore forfeited any reliance on a supposedly "closed" pattern of racketeering.

> **b.** **The Complaint fails to plead an "open-ended" pattern of racketeering.**

Plaintiffs have also failed to adequately allege an "open-ended" pattern of racketeering. They do not dispute that "[s]chemes which have a clear and terminable goal have a natural ending point and therefore cannot support a finding of any specific threat of continuity that would constitute open-ended continuity." *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000) (cleaned up); *cf.* eBay Br. 17; Wenig Br. 19; Wymer Br. 32. Nor do they point to any allegations in the Complaint sufficient to establish an open-ended pattern of racketeering.

Defendants explained, and Plaintiffs do not deny, that an alleged scheme limited "to silenc[ing] the Steiners' reporting on eBay" (Compl. ¶ 263) has a "clear and terminable goal" and a "natural ending point" and thus cannot by itself establish an open-ended pattern of racketeering. *Cf.* eBay Br. 17; Wenig Br. 19–20; Wymer Br. 33. Instead, Plaintiffs try to expand the alleged scheme to include purported acts allegedly targeting a YouTuber and the *Wall Street Journal*. *Cf.* Opp. 49–50. Plaintiffs, however, do not respond to Defendants' argument that neither of these purported acts constitutes racketeering, and thus concede that they cannot help establish an "open-ended" pattern of racketeering. *See Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 31 (1st Cir. 1987). Moreover, as already noted, Plaintiffs themselves say that each purported predicate act had "the goal of eradicating *the Steiner[s']* reporting." Opp. 46 (emphasis added). In other words, Plaintiffs

implicitly admit that the purported scheme they allege had "a clear and terminable goal," *Efron*, 223 F.3d at 20, and thus cannot constitute an "open-ended" pattern of racketeering.

Plaintiffs' assertions with respect to the criminally charged Defendants do not cure these fatal deficiencies. Plaintiffs appear to contend that an open-ended pattern is established by the fact that the criminally charged Defendants supposedly "had both the means and the background to carry out such a conspiracy." Opp. 50. But if that were sufficient, open-ended continuity would exist whenever a defendant had engaged in any racketeering activity given that logically such a defendant must have had whatever "means" and "background" were necessary to engage in that activity. In other words, Plaintiffs ask the Court to find open-ended continuity based on the theory that "once a RICO violator, always a RICO violator." *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1264 (D.C. Cir. 1995). But as eBay explained and Plaintiffs do not dispute, that theory "would deprive the pattern requirement of all meaning" and is not the law. eBay Br. 19 (quoting *Edmondson & Gallagher*, 48 F.3d at 1264).

## II.     Plaintiffs' state-law claims fail.

### A.     Plaintiffs fail to state a stalking claim.

Plaintiffs' Opposition fails to refute Defendants' showing that their stalking claim asserted under California law must be dismissed because Massachusetts law applies here. *Cf.* eBay Br. 28–30; Wenig Br. 26; Wymer Br. 11.

As a threshold matter, Plaintiffs are wrong when they say that "where there is no Massachusetts civil stalking statute, the Court should find no conflict of law exists" Opp. 29. Numerous courts in this district have recognized that a conflict exists where one state recognizes a cause of action that another does not. *See, e.g.*, *Amalgamated Titanium Int'l Corp. v. Mennie Mach. Co.*, 2022 WL 161610, at *6 (D. Mass. 2022) (conflict existed where Massachusetts recognized a cause of action for breach of implied covenant of good faith and fair dealing but

Illinois did not); *HDI-Gerling Am. Ins. Co. v. Navigators Ins. Co.*, 2015 WL 5315190, at *2 (D. Mass. 2015) ("Because New York recognizes a direct claim for bad faith .... and Massachusetts does not … New York and Massachusetts law conflict."). Plaintiffs do not cite a single case holding otherwise. Although they claim (at Opp. 29) that *Levin v. Dalva Bros., Inc.*, 459 F.3d 68 (1st Cir. 2006), supports them, they are mistaken. *Levin* engaged in a choice of law analysis after determining that "under New York law, the express warranty claims are governed by a statute that has no parallel in Massachusetts law." 459 F.3d at 74. Such an analysis would not have been necessary if, as would have been the case under Plaintiffs' view, there were no conflict. *See Kaufman v. Richmond*, 442 Mass. 1010, 1012 (2004) (explaining that "only actual conflicts between the laws of different jurisdictions must be resolved").

Plaintiffs' application of the choice-of-law factors is also mistaken. Fundamentally, while Plaintiffs argue that certain factors favor application of California law—for example, they contend that a "majority of the parties are residents of California" (Opp. 32)—they have no response to Defendants' showing that the "nature of the interest affected" determines how the factors are analyzed and weighted; that for personal injury claims such as stalking, the weightiest factors are where the injury occurred and where the plaintiffs reside; and that, in this case, both locations are Massachusetts.[3] Indeed, the Restatement expressly recognizes that "[w]hen the interest affected is a personal one," as here, the "single most important contact for determining the state of the applicable law" is the "plaintiff's domicile," which in this case unquestionably is Massachusetts. Restatement (Second) of Conflict of Laws § 145 cmt. e (1971).

---

[3]   Plaintiffs instead spend pages arguing that the place of injury is not "solely determinative" of choice of law (Opp. 33–37), even though Defendants never argued otherwise. Plaintiffs attack this straw man because they have no response to Defendants' actual arguments about how the various choice-of-law factors must be weighted.

Plaintiffs' efforts to stress that the criminally charged Defendants engaged in "harassing and tortious acts from California" (Opp. 34) are also to no avail. As an initial matter, even if California were the *only* place where the conduct causing Plaintiffs' injury took place, Plaintiffs do not dispute that, under the Restatement, this factor still would not outweigh the factors discussed immediately above that favor Massachusetts law. As Defendants explained (eBay Br. 29), the Restatement provides that where the defendant's conduct and the resulting injury "occur in different states … the local law of the state of injury will usually be applied to determine most issues involving the tort," especially "when the injured person has a settled relationship to that state … because he is domiciled or resides there." Restatement (Second) of Conflict of Laws § 146 cmt. e. Plaintiffs offer no reason why this principle, which dictates the application of Massachusetts law, should not apply here.

Of course, that the Complaint in fact alleges stalking *in Massachusetts* (*see* Compl. ¶¶ 231, 234) only reinforces this conclusion. Indeed, Plaintiffs acknowledge that "*the most disturbing act* of surveilling and stalking the Steiners in their home and while driving occurred in Massachusetts," Opp. 34 (emphasis added), effectively conceding that even this factor points strongly toward application of Massachusetts law, *see also id.* at 38 (acknowledging that without the alleged "offline" acts in Massachusetts, "the online acts would not have been as petrifying"). Furthermore, for all their emphasis on conduct in California, Plaintiffs make no attempt to reconcile their efforts to downplay what allegedly occurred in Massachusetts with their allegation, elsewhere in the Complaint, that the same alleged conduct underlying their stalking claim—"threatening to kill Plaintiffs …, sending disturbing packages to Plaintiffs' home to frighten the Plaintiffs …, and conducting surveillance on the Plaintiffs while at their home and in their community," Compl. ¶ 346—"occurred primarily and substantially in the Commonwealth of Massachusetts," *id.* ¶ 347.

Thus, by Plaintiffs own admission, the place where the conduct causing their injury occurred was "primarily and substantially" Massachusetts.

The centrality of alleged Massachusetts conduct to Plaintiffs' stalking claim undermines Plaintiffs' bid to apply California law for another reason as well: Contrary to Plaintiffs' suggestion, the California stalking statute does not apply to out-of-state conduct, even if it is "part and parcel of [an] ongoing pattern of stalking, threats and harassment." Opp. 37. Directly addressing this point, the Ninth Circuit explained that the stalking statute "proscribes only conduct occurring in California," and held that events taking place outside of California "cannot be part of a 'pattern of conduct' under California law." *Thunder Studios. Inc. v. Kazal*, 13 F.4th 736, 743, 747 (9th Cir. 2021), *cert. denied sub nom. David v. Kazal*, 142 S. Ct. 1674 (2022). None of Plaintiffs' cases reaches a different conclusion of law. *See Diamond Multimedia Sys., Inc. v. Superior Ct.*, 19 Cal. 4th 1036 (1999) (determining California securities laws apply to out-of-state stock purchases affected by market manipulation that takes place within California); *Morgan v. Harmonix Music Sys., Inc.*, 2009 WL 2031765, at *2 (N.D. Cal. 2009) ("California courts have extended state-created remedies to out-of-state parties harmed by wrongful conduct only when that conduct occurs in California."). Instead, *Thunder Studios* plainly forecloses a claim that relies on Massachusetts conduct to establish an unlawful "pattern" of stalking.

Finally, against this backdrop, the fourth Restatement factor—where the relationship between the parties is centered—is entitled to little weight, though it too favors Massachusetts law. Plaintiffs assert that the relationship between the parties was centered in California because "eBay's California business was the essential focus of the relationship." Opp. 33. But that explanation of the parties' relationship is plainly incomplete. What gave rise to the relationship among the parties—and, more importantly, to the allegations in this case—was Plaintiffs'

*reporting* on eBay's business, which undisputedly took place from their home in Massachusetts. Without that reporting, eBay still would have carried on its "California business," but the parties' relationship would not have come into being. The very first paragraph of the Complaint underscores this point, alleging that the purpose of all the allegedly tortious acts was "to stifle [Plaintiffs'] reporting on eBay." Compl. ¶ 1. Plaintiffs' assertion that they could have "report[ed] on eBay from literally anywhere" (Opp. 33) is immaterial; the fact remains that they actually reported on eBay—and formed the relationship with eBay most relevant to this case—from Massachusetts. Thus, this factor favors applying Massachusetts law as well. For all these reasons, Plaintiffs' stalking claim under California law should be dismissed.

### B.   Plaintiffs fail to state a false imprisonment claim.

Defendants explained that the Complaint fails to allege two essential elements of a false imprisonment claim: complete confinement and intent to confine within boundaries fixed by the defendant. *Cf.* eBay Br. 22–23; Wenig Br. 29; Wymer Br. 13–14. The Opposition sidesteps these dispositive issues. *See* Opp. 70–72. While Plaintiffs assert that they were "afraid to leave their home," *id.* at 71, they do not grapple with their affirmative allegations that Mr. Steiner in fact "left his home" repeatedly, Compl. ¶¶ 113; *see id.* ¶¶ 134–35; *see also id.* ¶ 113 (alleging that Plaintiffs installed a "dashcam" to record defendants "following" them outside their home). Those allegations alone preclude Plaintiffs' claim because "[t]o make the actor liable for false imprisonment, the other's confinement within the boundaries fixed by the actor must be complete." Restatement (Second) of Torts § 36(1) (1965).

The Opposition also fails to address the inadequacy of Plaintiffs' allegations that Defendants "intended to … 'confine' [them] 'within boundaries fixed by [Defendants].'" *McCann v. Wal-Mart Stores, Inc.*, 210 F.3d 51, 53 (1st Cir. 2000). While Plaintiffs conclusorily assert that Defendants had such intent (*see* Opp. 71; Compl. ¶ 321), they identify no factual allegations in the

13

Complaint indicating that the threats against Plaintiffs were tied in any way to physical boundaries. This distinguishes this case from those Plaintiffs cite (at Opp. 71), each of which involved actions by defendants that either expressly or implicitly required the plaintiff to remain within set boundaries. *See Foley v. Polaroid Corp.*, 400 Mass. 82, 87 (1987) (explaining that one of the defendant's employees "told [the plaintiff] not to leave [his office], and when [the plaintiff] began to walk toward the door, [the employee] pushed [the plaintiff's] chair against the door" and "said, '[i]f you go out that door the job goes with you'"); *Coblyn v. Kennedy's, Inc.*, 359 Mass. 319, 321 (1971) ("Just as the plaintiff had stepped out of the door of the store, the defendant … stopped him, firmly grasped his arm and told him that he had 'better go back and see the manager.'"); *Jacques v. Childs Dining Hall Co.*, 244 Mass. 438, 439–40 (1923) (explaining that various employees of the defendant restaurant intervened to stop the plaintiff from leaving the restaurant, directed the plaintiff to go to the rear of the restaurant, and directed the plaintiff, "[w]ait here," before the manager told the plaintiff, "[y]ou may go now"). This pleading defect is another, independent basis for dismissing the false imprisonment claim.

## C.      Plaintiffs fail to state a tortious interference claim.

Plaintiffs do not directly address, let alone refute, Defendants' argument that no tortious interference claim exists unless the plaintiff "show[s] that the defendant … induced a party to breach a contract or not to enter into or continue a business relationship, resulting in damage." *Buster v. George W. Moore, Inc.*, 438 Mass. 635, 652 (2003); *cf.* eBay Br. 26. Although Plaintiffs allege that unidentified "[c]lients, businesses and advertisers … were misled into believing" certain things about the Steiners and that unidentified "[o]nline sellers now fear doing business" with them, Compl. ¶ 355, Plaintiffs offer no response to Defendants' argument that their tortious interference claim fails because they have alleged no facts plausibly suggesting that Defendants actually induced any client, business, or advertiser to breach a contract with Plaintiffs or to not

enter or continue a business relationship with them. *Cf.* eBay Br. 26–27; Wenig Br. 32; Wymer Br. 15.

Rather than address Defendants' argument regarding the insufficiency of their allegations as to clients, businesses, and advertisers, Plaintiffs have abandoned the theory that they plead in their Complaint. Instead, Plaintiffs now argue that Defendants allegedly interfered in their relationships with certain unidentified *sources*, who supposedly have ceased sharing information with the Plaintiffs. Opp. 76. This new theory is also unavailing.

*First*, although they acknowledge that a tortious interference claim requires a "business relationship" (Opp. 75), Plaintiffs fail to allege any actual business relationship with any "source." The Complaint does not allege that the Steiners compensated their sources, let alone had any ongoing economic relationship with them. Indeed, the Complaint stops short of alleging that any existing sources even broke contact, averring only that certain unnamed "prior sources have been *reluctant* to speak to the Steiners." Compl. ¶ 217 (emphasis added); *see id.* ¶ 277. To be sure, the Complaint also conclusorily alleges that Defendants' purported conduct "caused" unnamed "*would-be* sources not to want to work with the Steiners," *id.* ¶ 217 (emphasis added), but purported interference with hypothetical prospective relationships does not support a tortious interference claim under Massachusetts law because a plaintiff "may not speculate about future business relationships when alleging" tortious interference, *Sherman v. Clear Channel Outdoor, Inc.*, 889 F. Supp. 2d 168, 177 (D. Mass. 2012) (quoting *Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25, 47–48 (1st Cir. 2002)).

*Second*, even if Plaintiffs had pleaded that existing sources ceased sharing information, they allege no resulting direct economic harm. To plead tortious interference with business relations, "[a] plaintiff must allege some economic harm, and that the harm or loss of advantage

resulted *directly* from the defendant's interference." *Bruno Int'l Ltd. v. Vicor Corp.*, 2015 WL 5447652, at *17 (D. Mass. 2015) (emphasis added) (citation omitted). Here, however, instead of alleging direct harm, Plaintiffs rely on effects several steps removed from the purported interference, alleging that the supposed interference with their sources prevented them from producing content, which led to fewer subscribers and, in turn, fewer advertisers. Opp. 76. The absence of any alleged direct harm is fatal to Plaintiffs' claim. Moreover, even if it were not fatal, as Defendants explained and Plaintiffs do not dispute, Plaintiffs fail to allege that any advertisers actually ceased doing business with them. *Cf.* eBay Br. 27; Wenig Br. 32; Wymer Br. 15. Thus, for multiple reasons, Plaintiffs' tortious interference claim should be dismissed.

## III.  Plaintiffs' reliance on extrinsic evidence is improper and shows that even with the benefit of hundreds of pages of additional allegations, their claims still fail.

Tacitly conceding that facts alleged in the Complaint are insufficient to state a claim, Plaintiffs attempt to supplement their allegations with materials in a 545-page appendix attached to their Opposition. Indeed, the Opposition cites the Complaint only six times while citing materials in the appendix 62 times. But Plaintiffs cannot rely on facts other than those alleged in the Complaint unless they are "incorporated by reference in [the Complaint], matters of public record, and other matters susceptible to judicial notice." *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (citation omitted).

Although there are "narrow exceptions" when extrinsic evidence may be considered on a motion to dismiss, *see Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993), they do not apply here. Contrary to Plaintiffs' assertion, it is not enough that "the authenticity of the[] documents cannot reasonably be questioned." Opp. 16–17. As the First Circuit has clarified, even if a document's authenticity is uncontested, a court may review it on a motion to dismiss only "when 'a complaint's factual allegations are expressly linked to—and admittedly dependent upon—[that] document.'"

*Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 34 (1st Cir. 2001) (citation omitted); *see also Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (declining to consider indisputably authentic deposition transcript because "[t]he mere mention of the depositions in the complaint does not amount to sufficient reference"). Here, the Complaint's allegations are not "expressly linked" to the documents in the appendix, many of which in fact post-date the Complaint. The Court should therefore disregard Plaintiffs' appendix in evaluating the sufficiency of their allegations. *See Decoulos v. Town of Aquinnah*, 2018 WL 3553351, at *12 (D. Mass. 2018) ("[Plaintiff] cannot bolster the allegations of the Amended Complaint through the late addition of new facts in opposing a motion to dismiss."), *aff'd*, 2019 WL 11234357 (1st Cir. 2019); *Miller v. Suffolk Cnty. House of Corr.*, 2002 WL 31194866, at *2 n.1 (D. Mass. 2002) (collecting cases).

Regardless, even if Plaintiffs are allowed to rely on the appendix, they should not be permitted to mischaracterize what those documents say, as they repeatedly do. For example, to bolster their allegations against Defendants Wenig and Wymer, Plaintiffs claim that eBay admitted in a PowerPoint presentation to the Government that "Wenig and Wymer engaged in criminal acts and could be charged." Opp. 60. This is false. The presentation states that eBay "did *not* find evidence" that Wenig or Wymer "directed or knew that criminal acts would occur." R13 (emphasis added). Similarly, to create the appearance of coordination between Wenig and Baugh, Plaintiffs claim that "[t]he privilege logs" included in the appendix "demonstrate that during the coverup stage, … Wenig texted … Baugh that he would be returning from sabbatical the next day, and stated, 'the cavalry is back.'" Opp. 13–14 (quoting R545). The document Plaintiffs cite shows no such thing. It does not state that Wenig sent this message to Baugh (and in fact he did not). Whatever latitude Plaintiffs may have to rely on extrinsic evidence, it does not include the right to

misrepresent that evidence for purposes of stating a claim.

Furthermore, if the Court allows Plaintiffs to rely on the appendix, it should treat the appendix as tantamount to an amendment of the Complaint, which is in effect what it is. If the Court finds that Plaintiffs' newly supplemented allegations are still insufficient to state a particular claim, it should dismiss that claim with prejudice because, "[i]f [an] amended complaint is deficient, dismissal will be with prejudice." *Ezell v. Lexington Ins. Co.*, 335 F. Supp. 3d 91, 97 n.1 (D. Mass. 2018), *aff'd*, 926 F.3d 48 (1st Cir. 2019). Plaintiffs' inability to state a claim despite relying on hundreds of pages of extrinsic evidence generated by a federal investigation shows that further amendment would be futile.[4] *See* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1487 & n.28 (3d ed. 2010) ("[I]f a complaint as amended could not withstand a motion to dismiss …, then the amendment should be denied as futile.") (citing cases).

## CONCLUSION

The Defendants' respective motions to dismiss should be granted.

Dated: June 24, 2022

Respectfully submitted,

/s/ *Abbe David Lowell*
Abbe David Lowell (*pro hac vice*)
Andrew E. Tauber (*pro hac vice*)
WINSTON & STRAWN LLP
1901 L Street, NW

/s/ *Jack W. Pirozzolo*
Jack W. Pirozzolo
Kathryn L. Alessi
SIDLEY AUSTIN LLP
60 State Street, 36th Floor

---

[4] Plaintiffs' inability to sufficiently plead these claims despite reliance on a 545-page appendix also underscores the hollowness of their speculation that ultimately "discovery will reveal evidence" to support their claims. Opp. 4; *see also id.* at 49, 51 (requesting "latitude … in applying the plausibility standard" because "a material part of the information needed is likely to be within the defendant's control"). In reality, Plaintiffs have received far more information at this stage than is usual. And, in any event, Plaintiffs must state a claim *before* "the doors of discovery" can be "unlock[ed]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). This requirement applies even if missing facts are purportedly "in the possession of the Defendants." Opp. 49, 51 (citing *Saldivar v. Racine*, 818 F.3d 14, 23 (1st Cir. 2016)). Both *Twombly* and *Iqbal* affirmed the dismissal of claims for failure to plead sufficient facts even though the claims depended upon knowledge within the defendants' control. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) ("bare assertion[s]" that secret conspiracy existed "will not suffice"); *Iqbal*, 556 U.S. at 686–87 (allegations of defendants' discriminatory intent failed to meet pleading standard).

Washington, D.C. 20036
adlowell@winston.com
atauber@winston.com
(202) 282-5000

Martin G. Weinberg, Esq.
MARTIN G. WEINBERG PC
20 Park Plaza
Suite 1000
Boston, MA 02116
owlmgw@att.net
(617) 227-3700

*Counsel for Devin Wenig*

Boston, MA 02109
jpirozzolo@sidley.com
kalessi@sidley.com
(617) 223-0300

Scott T. Nonaka *(pro hac vice)*
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1285
snonaka@sidley.com

Daniel J. Feith *(pro hac vice)*
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
Telephone: (202) 736-8511
dfeith@sidley.com

*Counsel for eBay Inc.*

/s/ William W. Fick
William W. Fick (BBO #650562)
Daniel N. Marx (BBO #674523)
Amy Barsky (BBO #601111)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
wfick@fickmarx.com
dmarx@fickmarx.com
abarsky@fickmarx.com

*Counsel for Jim Baugh*

/s/ Caz Hashemi
Caz Hashemi, Esq.
WILSON SONSINI GOODRICH & ROSATI P.C.
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300
chashemi@wsgr.com

Michael J. Pineault, Esq.
Mass. Bar. No. 555314
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
(617) 621-6578
mpineault@andersonkreiger.com

*Counsel for Steve Wymer*

/s/ Christina N. Lindberg
Christina N. Lindberg
MINER SIDDALL LLP
101 Federal Street, Suite 650
Boston, MA 02110
Tel: (617) 202-5890

/s/ Mark Conrad
Mark Conrad
CONRAD METLITZKY KANE LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
(415) 343-7102

19

clindberg@msdefenders.com

*Counsel for Philip Cooke*

mconrad@conmetkane.com

*Counsel for Brian Gilbert*

*/s/ Alexandra H. Deal*
Alexandra H. Deal
PAIK, BREWINGTON & DEAL, LLP
6 Beacon Street, Suite 305
Boston, MA 02108
(617) 439-0150
adeal@pbdlaw.com

*Counsel for Stephanie Popp*

20

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2022, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


Dated: June 24, 2022                              */s/ Jack W. Pirozzolo*

                                                  Jack W. Pirozzolo

21