IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Ina Steiner,<br>David Steiner,<br>Steiner Associates, LLC,<br><br>      *Plaintiffs*,<br><br> v.<br><br>eBay, Inc.,<br>Progressive F.O.R.C.E. Concepts, LLC,<br>Devin Wenig,<br>Steve Wymer,<br>James Baugh,<br>David Harville,<br>Brian Gilbert,<br>Stephanie Popp,<br>Stephanie Stockwell,<br>Veronica Zea,<br>Philip Cooke, and<br>John and Jane DOE,<br><br>      *Defendants*. | No. 1:21-cv-11181-DPW<br><br>Leave to File Granted<br>June 1, 2022 |

**DEFENDANT DEVIN WENIG'S REPLY IN<br><u>IN SUPPORT OF MOTION TO DISMISS</u>**

Four pervasive flaws in Plaintiffs' opposition underscore the insufficiency of their allegations against Devin Wenig. *First*, rather than defend the sufficiency of the complaint's allegations, Plaintiffs rely on 545 pages of extrinsic materials that may not be considered on a motion to dismiss and would not support a claim against Wenig even if they were. *Second*, Plaintiffs repeatedly misrepresent those extrinsic materials, falsely asserting, for example, that eBay told the government that Wenig had committed a crime when the relevant document says the opposite. *Third*, unable to identify well-pleaded factual allegations sufficient to state a claim against Wenig in particular, Plaintiffs resort—more than 260 times—to referring to "the Defendants" collectively in an effort to tar Wenig with Plaintiffs' allegations against others. *Finally*, despite having submitted an 82-page opposition, Plaintiffs ignore, and thus concede, numerous dispositive arguments fatal to their claims.

Plaintiffs' entire case against Wenig rests on a lone, three-word phrase—"take her down"—ripped from two texts taken out of context. Plaintiffs, whose opposition repeats the phrase 25 times, insinuate that Wenig sent those texts to Baugh and thereby directed him to harass the Steiners. But the complaint does not (and cannot) allege that Wenig ever communicated those words to Baugh. To the contrary, it concedes that Wenig was communicating with Wymer, not Baugh, and that Wenig never directed Baugh to do anything. Plaintiffs now try to tie Wenig to Baugh's conduct by falsely representing that Wenig texted Baugh to say that the "cavalry is back." Wenig did not do so, and the extrinsic document cited by Plaintiffs does not say that he did.

In short, nothing that Plaintiffs say in their opposition alters the conclusion their claims against Wenig should be dismissed.[1]

I.  **Plaintiffs misstate and misrepresent facts—or make them up outright.**

Plaintiffs try to plug holes in the complaint by mischaracterizing and inventing facts.

---

[1] The arguments made here are in addition to those in the joint replies that Wenig has joined.

1

Contrary to Plaintiffs' assertions:

- eBay did *not* conclude that "Wenig … engaged in criminal acts and could be charged." Opp. 21, 60. In fact, the company "*did not* find evidence that [Wenig] directed or knew that criminal acts would occur." R13 (emphasis added).

- Wenig was *not* "forced to resign." Opp. 15 n.18. Plaintiffs concede that he resigned voluntarily (Opp. 77–78) and allege nothing that ties his resignation to the events at issue.

- Wenig *did not* "enlist … Baugh" or "use [Baugh] to carry out" his purported "directive." Opp. 2; *see also id.* at 20, 21. Plaintiffs allege no communication between Wenig and Baugh; concede that it was Wymer, not Wenig, who "communicated directly with … Baugh" (Opp. 20); and admit that Wenig "d[id] not" tell Wymer or Baugh to "burn [Plaintiff] down" (Opp. 19). *Cf.* Compl. ¶¶ 67–68.

- Wenig did *not* tell anyone to do "Whatever. It. Takes." As Plaintiffs' extrinsic materials show, it was Wymer who wrote those words and he did so only *after* Wenig was removed from the email chain. *Compare* Opp. 14 (citing R437–39) *with* R437 ("-Devin").

- Wenig's communication stating that "[t]he Cavalry is back" was *not* sent to Baugh; nothing in the appendix suggests that it was (*compare* Opp. 13–14 *with* R545); and nothing in the complaint or appendix connects the communication—which simply marked Wenig's previously planned return from a sabbatical—to the events at issue.

It is telling that Plaintiffs cite nothing in either their complaint or the extrinsic materials they submitted to support many of their factual assertions regarding Wenig (and "Defendants" generally).[2] For example, Plaintiffs assert without citation that "Wenig required subordinates to keep him up-to-date" on Plaintiffs' reporting. Opp. 18, 20. There is good reason the Plaintiffs offer no citation for this assertion: their own complaint attributes the demand to Baugh, not Wenig, alleging that it was "*Baugh*" who "instructed" others to send *him* Plaintiffs' posts "on a real-time basis, day or night, any day of the week." Compl. ¶ 46 (emphasis added).

Without sufficient well-pleaded allegations against Wenig, Plaintiffs rely heavily on the contention that Wenig, through his two "take her down" texts to Wymer—which they cite 25

---

[2] Plaintiffs cite nothing in the complaint or appendix to support their assertions that the Defendants who pled guilty admitted that their actions were "taken at the request of Wenig" (Opp. 17); that Wenig "aided and abetted the trespass" (Opp. 69); that Wenig "continued with the online threats and stalking" (Opp. 2); that Wenig "intentionally made the Steiners afraid to leave their home" (Opp. 71); or that Wenig "agreed to … obstruct the investigation" (Opp. 63).

2

times—"direct[ed]" others to engage in wrongful conduct. *See* Opp. 1, 7, 17–22, 39–40, 45, 48–49, 53–54, 63, 66, 73, 76. But as Wenig explained and Plaintiffs do not rebut, the complaint (like the appendix to Plaintiffs' opposition) contains no well-pleaded factual allegations connecting Wenig to the alleged harassment. *See* MTD 4, 23–24, 25–26, 26–27, 28–29, 30, 31, 32–33, 34–35. Instead, Plaintiffs rely on the contention that Wenig "aided and abetted" the criminal defendants. *See* Opp. 40, 66, 69. But Plaintiffs do not address, much less refute, Wenig's argument that they fail to plead facts sufficient to establish aiding-and-abetting liability. *Compare* MTD 34–35 & n.11 *with* Opp. 40, 66, 68–69. Plaintiffs admit that an individual cannot be held liable on an aiding-and-abetting theory unless they actually "knew the other defendants were committing the relevant tort" (Opp. 68) but identify no well-pleaded allegations as to Wenig's purported knowledge.

## II. Plaintiffs do not state a RICO claim.

Plaintiffs identify no well-pleaded facts to rebut Wenig's argument that their allegations about his purported participation in a RICO enterprise are conclusory, and that even if the "take her down" texts *were* orders, they do not establish his participation in a racketeering enterprise. *See* MTD 21–22. Instead, relying on extrinsic material, Plaintiffs argue that Wenig participated by "promis[ing] 'top cover' should the plan go south." Opp. 61. But the complaint alleges that Baugh requested "top cover" from *Wymer*, not Wenig (Compl. ¶ 189), and provides no basis to infer that Wenig—then on sabbatical (*see* Opp. 13–14)—even knew of the exchange between them. Compl. ¶¶ 4, 60.

## III. Plaintiffs do not state a state-law claim against Wenig.

*Intentional infliction of emotional distress.* The complaint alleges that Baugh, not Wenig, "plan[ned]" and "set" in motion the campaign that caused Plaintiffs' alleged emotional distress. MTD 25 (citing Compl. ¶¶ 57, 60, 75, 77). In any event, Plaintiffs do not contest that, even if Baugh believed he was acting at Wenig's direction, Wenig could not reasonably have foreseen

3

Baugh's extraordinary criminal conduct, which is as a matter of law therefore "deemed to be the proximate cause" of Plaintiffs' alleged injury. MTD 25–26 (quoting *See Bobbitt v. United States*, 2006 WL 335231, at *1 (D. Mass. 2006)). Having conceded the point, Plaintiffs' claim fails.

Plaintiffs place the onus on Wenig to explain "what he believed would happen" in response to his texts. Opp. 21. But it is their burden to plead facts as to what Wenig knew or should have known, and they have not carried it; the opposition cites no well-pleaded allegations as to Wenig's actual or constructive knowledge. *See* Opp. 18–20; *cf.* MTD 24. Speculation that discovery might link Wenig to the alleged wrongdoing (Opp. 19) does not save the claim from dismissal.

**Stalking.** Conflating "personal" and "physical" participation in the alleged stalking, Plaintiffs mischaracterize Wenig's argument and attack a straw man. *Compare* Opp. 39–40 *with* MTD 26–27. Lacking well-pleaded allegations that Wenig personally participated in the alleged stalking, Plaintiffs again rely on (i) misattributed messages that Wymer, not Wenig, sent Baugh; and (ii) speculation that "additional emails" that might be uncovered during discovery "may" fill the gaps. Opp. 40–41. But neither mischaracterization of facts nor speculation about discovery are sufficient to avoid dismissal.

**Massachusetts Civil Rights Act.** Again conflating "personal" and "physical" participation, Plaintiffs do not to respond to Wenig's argument that they do not state a Massachusetts Civil Rights Act claim because they do not allege that Wenig *personally* engaged in threats, intimidation, or coercion. *Compare* Opp. 66 *with* MTD 27. Accordingly, they have forfeited the claim as to Wenig.

**Defamation.** Plaintiffs do not dispute that a plaintiff must plead a "factual basis for the claim against each defendant" individually when a claim is asserted against multiple defendants. MTD 28 (quoting *Daniels v. Varela*, 2020 WL 5440574, at *5 (D. Mass. 2020)). And they entirely ignore Wenig's argument that they pleaded no facts on which to hold him liable for any alleged

4

defamation. MTD 28. Plaintiffs have thus forfeited their defamation claim against Wenig.

*Trespassing.* Nor do Plaintiffs address Wenig's argument that the complaint pleads no facts plausibly suggesting that Wenig caused anyone to enter the Steiners' property or could have reasonably foreseen that any other defendant would do so in response to his text to Wymer. *Compare* MTD 28–29 *with* Opp. 69–70 (describing conduct by Baugh, Zea, Gilbert, and Popp, but not Wenig). Having failed to address the argument, Plaintiffs have conceded it.

*False Imprisonment.* Plaintiffs ignore Wenig's argument that they fail to adequately allege that he intended to confine the Steiners. MTD 29. Indeed, the "false imprisonment" section of the opposition never mentions his name. Opp. 70–72. Thus, they have forfeited this claim too.

*Tortious interference.* Similarly, Plaintiffs do not address—and have thus conceded—Wenig's argument that the complaint fails to adequately allege that he had specific intent to interfere with the Steiners' business relationships. MTD 32–33. Rather than identify any purportedly sufficient allegations of Wenig's supposed intent, the relevant section of the opposition simply lumps the Defendants together. *See* Opp. 75–77.

*Civil conspiracy.* Plaintiffs' civil-conspiracy claim fails. Although they invoke it multiple times in their opposition, Plaintiffs have forfeited reliance on the "aiding and abetting" theory. *See supra* at 3. They also have forfeited reliance on the "concert of action" theory by entirely ignoring Wenig's argument that the complaint fails to allege facts sufficient to show that his "*own* conduct [was] tortious." MTD 34–35 (quoting *Payton v. Abbott Labs*, 512 F. Supp. 1031, 1035 (D. Mass. 1981)). In any event, this claim is barred by the intra-corporate conspiracy doctrine.

## CONCLUSION

For the reasons stated here, in the two joint replies, and in Wenig's opening memorandum, all claims against Wenig should be dismissed with prejudice.

Dated: June 24, 2022                                     Respectfully submitted,

                                                                          /s/ *Abbe David Lowell*
Abbe David Lowell (*pro hac vice*)
Andrew E. Tauber (*pro hac vice*)
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
adlowell@winston.com
atauber@winston.com
(202) 282-5000

Martin G. Weinberg, Esq.
MARTIN G. WEINBERG PC
20 Park Plaza
Suite 1000
Boston, MA 02116
owlmgw@att.net
(617) 227-3700

*Counsel for Devin Wenig*

## CERTIFICATE OF SERVICE

I, Abbe David Lowell, hereby certify that on this date, June 24, 2022, a copy of the foregoing document has been served via the Electronic Court Filing system on all registered participants.

/s/ *Abbe David Lowell*
Abbe David Lowell

AmericasActive:17154454.17