**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF MASSACHUSETTS**

| |
Ina Steiner,                                               |
David Steiner,                                             |
Steiner Associates, LLC,                                   |
      (*Publisher of EcommerceBytes*)           |          CASE NO: 1:21-cv-11181
              Plaintiffs  |
                                                        |
     vs.                                      |
                                                        |
                                                        |
eBay, Inc., et al.,                                        |
            Defendants   |
                                                        |

**PLAINTIFFS' SUPPLEMENT TO CONSOLIDATED OPPOSITION TO**
**DEFENDANTS' MOTONS TO DISMISS**
*(Leave to File Granted on September 30, 2022)*

Now come the Plaintiffs and respectfully submit the following documents to supplement their Consolidated Opposition to Defendants' Motions to Dismiss:

    A.  Defendant Jim Baugh's Sentencing Memorandum filed on September 29, 2022;

    B.  Defendant Jim Baugh letter of attrition filed on September 29, 2022; and

    C.  Amended Sentencing Memorandum of David Harville filed on September 24, 2022.

Plaintiffs also request permission to submit the transcripts of the sentencing hearings which took place on September 29, 2022 for Defendants Baugh and Harville, once they are completed.

While the defendants may contend the supplemental documents are extrinsic evidence which should not be considered by the Court in conjunction with the Defendants' various

motions to dismiss, the same exceptions apply to these documents as the various documents submitted with the Plaintiffs' Consolidated Opposition to Defendants' Motions to Dismiss.

As the Defendants know, the Court may consider extrinsic documents in deciding a Rule 12(b)(6) motion to dismiss "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 4 (1st Cir. 1993).  Just the same as the documents submitted with Plaintiffs' originally filing, the two sentencing memoranda are public pleadings, signed and affirmed by attorneys in good standing on behalf of parties of this case, and should be considered by this Court where the authenticity of these documents cannot reasonably be questioned by the Defendants in the instant proceedings. *See Watterson*, 987 F.2d at 4. As to the Defendant Baugh attrition letter, it should be considered by the Court in conjunction with Baugh's Motion to Dismiss.[1]

Defendant Jim Baugh's Sentencing Memorandum filed on September 29, 2022 is relevant because it undermines the bulk of the claims made by Defendants eBay, Wenig, Wymer and Baugh set forth in their Motions to Dismiss.

Crucially, Defendant Baugh's memorandum and the included communications corroborate and provide further evidence for Plaintiffs' claims set forth in the Complaint that this was a top-down conspiracy, where Defendant Baugh was acting as the conduit between the c-suite executives, and the lower-level individuals who were carrying out the conspiracy. In each communication included in Defendant Baugh's memorandum, Defendant Baugh is included on Defendant Wenig, Defendant Wymer, Wendy Jones and Marie Huber's discussions regarding

---

[1] Defendant Baugh admits he engaged in the conduct set forth in the Plaintiffs' Complaint, and for which he denied in his Motion to Dismiss.

eCommerceBytes and the need to put an end to the reporting. <u>See</u> Exhibit A at 12-19. Defendant Baugh then turned around and formed his team, to carry out the C-Suit executives' directives.

Defendant Baugh describes the culture at eBay, which fostered the top-down conspiracy beginning with Defendant Wenig, which Defendant Baugh described as an "insular, high pressure environment," a claim that should not be taken lightly coming from an individual who worked for the National Clandestine Services of the CIA, providing security for the Vice President and other government assets. Exhibit A at 2.  While Defendant Wenig has adamantly denied any involvement in the conspiracy, Defendant Baugh indicates that not only was his cubicle just outside Defendant Wenig and the other executives' private officers, Defendant Wenig subjected Defendant Baugh to "intense, relentless pressure" relating to eCommerceBytes, and both Defendant Wenig *and his wife* communicated with Defendant Baugh directly as to eCommerceBytes postings. Exhibit A at 2. For example, Defendant Baugh and Defendant Wenig texted each other directly where Defendant Baugh updated him that he was using a fake Twitter account to communicate directly with the person behind an eBay parody account that was criticizing Wenig. Exhibit A at 13, 16. In short, Defendant Wenig was "obsessed" with neutralizing the Steiners' website, which trickled down through the rest of the C-Suite, to Defendant Baugh and the team he ultimately organized. Exhibit A at 3.

Additionally, Jones, who was a member of the C-Suite along with Defendants Wenig and Wymer, directly ordered Defendant Baugh to "find a way to deal with the issue 'off the radar since comms and legal couldn't handle it'… 'Just get it done. I don't want to know the details, just make sure you sync with Wymer." Exhibit A at 13.

The communications also demonstrate that although Defendant Wenig and Jones were conveniently on sabbatical during the month of August, the time that the events of the conspiracy

were actually carried out, that at least Defendant Wenig continued to remain in the loop by communicating with Defendant Baugh while he was away from eBay Headquarters. Exhibit A at 16.

Moreover, after Defendant Gilbert sprayed "FidoMaster" on the Steiners' fence, Defendant Baugh informed Defendant Wymer that "his team had given the Steiners 'a tap on the shoulder.'" Exhibit A at 13. Wymer expressed approval but did not ask questions, and the executives were pleased because the perceived negative postings by eCommerceBytes subsided. Exhibit A at 13. This demonstrates the "don't ask, don't tell" policy engaged in by the executives, but demonstrates they directed the acts, and endorsed them.

After an August 7, 2019 email – just days before Defendant Baugh and his team flew to Natick – Wymer met with Baugh and was very agitated, pointing his finger at Baugh. Exhibit A at 19. Defendant Wymer "instructed Baugh to take any actions necessary to neutralize the Steiners and identify Fidomaster." Defendant Wymer indicated *it was a **direct order** from Defendant Wenig. Id.* Defendant Wymer confirmed the "don't ask, don't tell" policy, instructing Defendant Baugh that he did not want to know the details but that "his group would have 'executive level support' if efforts led to any 'any legal problems.'" *Id.*  The reference to "legal problems" implies that the executives knew what they asked Baugh to do was criminal; Defendant Baugh and his team did not need legal protection from eBay, where they were instructed to engage in illegal activity *by eBay* through its executives and legal department. During this conversation, Defendant Wymer instructed Defendant Baugh that Defendant Wenig wanted the website burned to the ground, that "the only thing that matters is that it stops" and that "eBay Corporate is willing to absorb any legal exposure." *Id.* This all corroborates Plaintiffs' claims – and undermines all Defendants' claims to the contrary – that the conspiracy was

spearheaded by Defendants Wenig, Wymer and other c-suite executives, and that Defendant Baugh's role was to organize the team and carry out the directives.

Additionally, Defendant Baugh corroborates that eBay conducted a sham investigation after their actions were exposed. First, General Counsel, Marie Huber, took part in directing that "ordinary tools such as lawsuits and cease-and-desist letters would be ineffective to address the 'problems' posed by eCommercyBytes and FidoMaster." Exhibit A at 2, 8. Huber was at the helm of the legal department that was the first to investigate the matter and conducted the first interviews, but she herself appeared to be actually involved in provoking the escalation to illegal activity.

After Natick Police became involved, Defendant Wymer informed that he and Jones were aware of what occurred because they saw an email from Natick PD to eBay legal. Defendant Wymer reiterated that he did not know the details but that he would not say anything to legal during the internal investigation, noting they "just needed to get rid of the Hardy Boys." Exhibit A at 19. Defendant Wymer also instructed Baugh to "stick to your guns," which Defendant Baugh took as a directive from Defendant Wymer to stick to the cover story that they went to Boston for a conference. *Id.*

In sum, Defendant Baugh's memorandum further lends support to Plaintiffs' claims within its Complaint that this was a conspiracy that started with Defendant Wenig and trickled down, that the culture within eBay created and fostered an environment where criminal activity was not only condoned but expected in order to destroy eCommerceBytes and the Steiners, that the executives would provide "cover" for any illegal activity, and that the investigation conducted by eBay legal was a sham. When the executives directed Defendant Baugh to handle the issue "off the radar" and that they would cover for "any legal problems," this implied they

knew what they asked Defendant Baugh to do was criminal; how would legal problems arise if the conduct was non-criminal. Directing Defendant Baugh not to share the details was an attempt to insulate the C-suite, and amounted to willful blindness, but the message was clear: Defendant Baugh was to carry out their instruction to take care of the issue using any means possible and off the radar even if it meant engaging in criminal activity.

Defendants Wenig, Wymer and eBay are now using their instruction to Defendant Baugh not to share the precise details of the conspiracy to absolve themselves of all liability, when the executives set the entire conspiracy in motion, and knew it would lead to criminal activity.

Plaintiffs request that this Court deny the Defendants' Motions to Dismiss based on the information set forth in this supplement and the arguments made in the prior opposition where this information further satisfies the burden Plaintiffs already previously met. See Fed. R. Civ. P. 12(b)(6); *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (noting Court assesses whether the "factual allegations gives rise to a plausible claim to relief.").

## CONCLUSION

Wherefore, the Plaintiffs respectfully request that this Court consider these supplemental documents in support of its request to deny all Defendants' Motions to Dismiss.

Respectfully submitted,
INA AND DAVID STEINER
By their attorney,

/s/ Rosemary Curran Scapicchio
Rosemary C. Scapicchio, BBO No. 558312
Law Office of Rosemary Scapicchio
107 Union Wharf
Boston, MA 02109
617.263.7400
Rosemary@Scapicchiolaw.com

Respectfully submitted,
STEINER ASSOCIATES, LLC
By its attorney,

/s/ Jillise McDonough
Jillise McDonough, BBO No. 688694
Law Office of Jillise McDonough
107 Union Wharf
Boston, MA 02109
617.263.7400
Jillise@Scapicchiolaw.com

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record
for each party and upon any party appearing pro se by complying with this Court's directives on
electronic filing.

Dated:    October 1, 2022                    Signed: /s/ Jillise McDonough