# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

Ina Steiner,
David Steiner,
Steiner Associates, LLC,

        *Plaintiffs*,

v.

eBay, Inc.,
Progressive F.O.R.C.E. Concepts, LLC,
Devin Wenig,
Steve Wymer,
James Baugh,
David Harville,
Brian Gilbert,
Stephanie Popp,
Stephanie Stockwell,
Veronica Zea,
Philip Cooke, and
John and Jane DOE,

        *Defendants*.

No. 1:21-cv-11181-DPW

Leave to File Granted
October 12, 2022

**DEVIN WENIG'S SUPPLEMENTAL REPLY IN**
**IN SUPPORT OF HIS MOTION TO DISMISS**

Plaintiffs' supplemental brief in opposition to Devin Wenig's motion to dismiss is a procedurally improper, inaccuracy-filled hatchet job that does nothing to save their claims against Wenig from dismissal.[1]

Now as before, Plaintiffs' baseless claims against Wenig rest on three words taken out of context.[2] Despite submitting more than 600-pages of extrinsic materials in support of their legally deficient complaint, Plaintiffs have presented no evidence that Wenig directed, suggested, encouraged, condoned, or even knew of Baugh's harassment campaign. Unable to tie Wenig to Baugh's outrageous conduct, Plaintiffs smear Wenig with false accusations, many of which are contradicted by the very materials Plaintiffs have submitted. Plaintiffs' claims against Wenig fail as a matter of law and should be dismissed.

## I. Plaintiffs misstate the facts.

Plaintiffs misstate the facts yet again. *Cf.* Dkt. 142 at 2 (cataloging Plaintiffs' previous false statements).

Grossly mischaracterizing the materials they have submitted, Plaintiffs claim that the materials "corroborate[]" that the supposed "conspiracy was spearheaded by … Wenig." Dkt. 146 at 4. But that assertion is both false and directly contrary to other evidence that Plaintiffs have submitted. Plaintiffs have, for example, submitted evidence that Baugh's attorney informed an outside attorney conducting an internal investigation that "Baugh had confirmed" that "Wenig …

---

[1] Neither the Federal Rules of Civil Procedure nor this Court's local rules contemplate supplemental briefs. Leave must be obtained before a supplemental brief may be filed. Although Plaintiffs obtained leave to file certain specified "documents" (namely, the exhibits attached to their supplemental brief and as-of-then unavailable transcripts), they never sought, let alone received, leave to file a supplemental brief. Dkt. 144, at 1. Their brief therefore should be stricken.

[2] As previously explained, Wenig's text to the eBay's head of communications was in the course of a much longer discussion concerning the public-relations steps that the company could take to respond to unfairly negative reporting that was harming it and its customers. *See* Dkt. 79-1 at 3 n.2

1

never told him to do anything illegal or improper with regard to the Steiners." Dkt. 117-1 at R460. Plaintiffs have also submitted evidence showing that the investigation found no "evidence that [Wenig] directed or knew that criminal acts would occur." *Id.* at R13.

And the transcripts that Plaintiffs plan to submit negate any suggestion that Wenig directed, suggested, encouraged, condoned, or knew of Baugh's bizarre harassment campaign against the Steiners. Indeed, at Baugh's sentencing, the government and Baugh's attorney agreed that the harassment was purely Baugh's idea. As the government told the court:

> [N]o one at eBay told [Baugh] to anonymously threaten and harass and stalk the Steiners. That idea, what happened to the Steiners, was ***his and his alone***. There's no one above Jim Baugh at eBay who thought up the depraved things that happened to David and Ina Steiner.

Tr. 16, *U.S. v. Baugh*, Crim. No. 20-10263 (D. Mass. Sept. 29, 2022) (emphasis added). Having conceived, planned, and led the harassment campaign, Baugh, said the government, "earned every point of [a] four-point [sentencing-guideline] enhancement" as "leader/organizer" of the harassment campaign. *Id.* at 14. Indeed, despite railing against eBay's "C Suite" executives, Baugh's attorney conceded that "they didn't order [Baugh] to do it." *Id.* at 34. And, although Baugh challenged an unrelated enhancement, he did not contest the four-point enhancement for his role as "leader/organizer" of the harassment campaign. *Cf.* Dkt. 146-1 at 21–24 (challenging only "pattern of activity" enhancement). Indeed, Baugh admitted that he "was one hundred percent responsible" for the harassment campaign. Tr. 37, *U.S. v. Baugh*, Crim. No. 20-10263 (D. Mass. Sept. 29, 2022).

In short, despite Plaintiffs' unfounded accusations, the documents that they have submitted and have sought leave to submit demonstrate that Wenig had nothing to do with Baugh's harassment campaign.

Plaintiffs also falsely assert that "Baugh indicates" that "Wenig subjected … Baugh to

2

'intense, relentless pressure' relating to eCommerceBytes"; (2) that "both … Wenig and his wife communicated with … Baugh directly as to eCommerceBytes postings"; and (3) that "Wenig was 'obsessed' with neutralizing the Steiners' website." Dkt. 146 at 3–4 (citing Dkt. 146-1 at 2, 3, 12, 13, 16) (emphasis omitted). In fact, Baugh indicated none of these things, each of which is untrue.

Although Plaintiffs submitted Baugh's letter to the court as an exhibit to their supplemental brief (*see* Dkt. 146-2), they do not cite it. And for good reason. The letter never mentions Wenig by name or title. Not once. Thus, contrary to Plaintiffs' assertion, Baugh did *not* "indicate[]" that Wenig personally subjected him to any "pressure," that Wenig communicated with Baugh as to eCommerceBytes postings, or that Wenig was "'obsessed' with neutralizing the Steiners' website.'" Dkt. 146 at 3–4. In short, Baugh's letter to the court indicates nothing at all about Wenig.

Rather than rely on what *Baugh* said, Plaintiffs rely exclusively on what Baugh's *attorneys* (supposedly) argued in a sentencing memorandum. *See* Dkt. 146 (citing only Dkt. 146-1). But they of course have no personal knowledge of the purported events. And the goal of their submission was to minimize Baugh's responsibility for the harassment campaign that he "plann[ed]" and "set in motion" (Compl. ¶¶ 75, 77) by deflecting responsibility onto others. Outcome-oriented argument by a person's attorney is not the same as facts attested to by the person themself.

Not only do Plaintiffs rely on an inherently unreliable source, they misstate what it says. Plaintiffs cite the sentencing memorandum as supposed support for their assertion that "both … *Wenig* and his wife communicated with … Baugh directly as to eCommerceBytes postings." Dkt. 146 at 3 (citing Dkt. 146-1 at 2) (emphasis altered). But nothing in the sentencing memo (or Plaintiffs' complaint) supports the assertion that Wenig communicated directly with Baugh regarding eCommerceBytes (as opposed to the distinct matter involving a pseudonymous and possibly threatening Twitter user). Neither the memo nor the complaint identifies any

communication between Wenig and Baugh related to eCommerceBytes.

Plaintiffs create the false impression that Wenig communicated with Baugh about eCommerceBytes when they state that "[i]n each communication included in Defendant Baugh's memorandum, Defendant Baugh is included on Defendant Wenig, Defendant Wymer, Wendy Jones and Marie Huber's discussions regarding eCommerceBytes." Dkt. 146 at 2. In fact, Wenig was party to only two of the communication included in Baugh's sentencing memo and neither communication involved eCommerceBytes. Rather, each involved an anonymous Twitter user who was not merely critical of Wenig but, with apparent inside knowledge of Wenig's travel plans, made implicit threats of violence against him and eBay. *See* Dkt. 146-1 at 9–10, 16. Far from nefarious, it is both normal and appropriate for a company's CEO, acting in the best interests of the company and its employees, to discuss such threats with the company's legal and security teams.

The communications reproduced in Baugh's sentencing memo undermine rather than support Plaintiffs' contention that Wenig was "obsessed" with eCommerceBytes. Again, the only communications to which Wenig was a party concerned the "imposter Twitter account," *not* eCommerceBytes. Dkt. 146-1 at 16. One was an email sent by Marie Huber, eBay's general counsel, describing the "legal channels" that eBay had pursued and could in the future pursue through "outside counsel." *Id.* The other was a text exchange in which Baugh informed Wenig that Baugh's efforts to identify who was behind the pseudonymous Twitter account were going slowly. Describing himself as "relaxed" about the situation, Wenig told Baugh, "don't worry" because "this comes with the territory" and is simply "part of running [a] consumer company." *Id.* Someone who is "relaxed" about implicit threats made by an anonymous Twitter user is not someone likely to "obsess[]" over negative reporting by a known, unthreatening individual.

Moreover, contrary to Plaintiffs' insinuation, the fact that Baugh kept Wenig "in the loop" regarding Baugh's efforts to identify the potentially violent Twitter user does not suggest that Wenig knew of—let alone encouraged or condoned—Baugh's unrelated harassment campaign against the Steiners. Dkt. 146 at 4. Indeed, when sentencing Baugh, Judge Saris recognized the distinction between efforts to identify the Twitter user, who she said was possibly "a threat to the personnel of eBay," and the harassment of the Steiners, who "never" caused anyone to be "afraid." Tr. 39, *U.S. v. Baugh*, Crim. No. 20-10263 (D. Mass. Sept. 29, 2022). Regardless, Plaintiffs assert that after Gilbert had vandalized their home "Baugh informed … *Wymer*," not Wenig, that "his team had given the Steiners 'a tap on the shoulder.'" *Id.* (emphasis added).

Plaintiffs' false assertion that "Wymer instructed … Baugh that … Wenig wanted the [eCommerceBytes] website burned to the ground" is contrary to Plaintiffs' previous admission and belied by the very document on which Plaintiffs' rely. Plaintiffs previously admitted that Wenig's text to Wymer "d[id] *not* reflect that language" (Dkt. 117 at 19 (emphasis added)) and the text between Wymer and Baugh shows that when specifically asked by Baugh whether "[Wenig] said to burn [Ina Steiner] to the ground," Wymer did *not* confirm the existence of any such (non-existent) directive from Wenig. Dkt. 146-1 at 15; *see also* Dkt. 1 ¶¶ 19, 57, 68; Dkt. 79-1 at 4. Moreover, contrary to Plaintiffs' baseless suggestion that Wymer was implementing a directive from Wenig, a document previously submitted by Plaintiffs claims that Wymer "hid" his text telling Baugh to do "[w]hatever it takes" however "long it takes" from "everyone[,] … apparently even Wenig." Dkt. 117-1 at R13.

Simply put, notwithstanding Plaintiffs' assertions to the contrary, the extrinsic materials that they have submitted do not support their allegations against Wenig. They actually prove the opposite—that Wenig had nothing to do with the harassment of the Steiners.

5

Given Plaintiffs' repeated misrepresentations, this Court should not rely on their recitation of supposed facts—and should instead remind Plaintiffs' counsel of her obligations under Federal Rule of Civil Procedure 11(b)(3).

## II. The supplemental documents do not save Plaintiffs' complaint from dismissal.

The documents Plaintiffs attached to their supplemental brief may not be considered at this stage of the proceedings and would not save Plaintiffs' claims against Wenig even if they were.

### A. The supplemental documents cannot be considered on a motion to dismiss.

In general, a court must confine its analysis to the four corners of a complaint when evaluating the sufficiency of a complaint challenged under Rule 12(b)(6). It may not consider extrinsic evidence unless a particular exception applies.

None of the "narrow exceptions" to the general rule apply here. *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993); *see also* Dkt. 138 at 16–17. The documents attached to Plaintiffs' supplemental brief are neither "central to [Plaintiffs'] claims" nor "referred to in the complaint." *Watterson*, 987 F.2d at 3. Indeed, because they post-date the filing of Plaintiffs' complaint, the documents could not be central to Plaintiffs' claims let alone referred to in their complaint. And because they "lack any indicia of reliability" and their contents are "not subject to judicial notice," the documents may not be considered as "matters of public record." *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (internal quotation marks omitted).[3]

Plaintiffs argue that the documents may be considered because their authenticity "cannot reasonably be questioned." Dkt. 146 at 2. But authenticity alone is not a sufficient basis for considering the documents. *Cf. Freeman*, 714 F.3d at 36 (rejecting reliance on indisputably authentic records held by local police department). Were authenticity alone sufficient, a plaintiff could rely on virtually any

---

[3] This applies to each of the documents but especially to the two sentencing memos, which are nothing more than lawyers' argument. *Cf.* Dkt. 146-1 and 146-3.

document that is what it purports to be when opposing a motion to dismiss—even documents created by the plaintiff for purposes of opposing the motion. But if that were true a "narrow exception[]" (*Watterson v. Page*, 987 F.2d at 3) would swallow the general rule that extrinsic material may not be considered on a motion to dismiss.[4]

### B. Even if they were considered, the supplemental documents would not cure the complaint's legal deficiencies.

The documents that Plaintiffs have submitted would not stave off dismissal of their claims against Wenig even if they were considered. Nothing in the documents—or Plaintiffs' supplemental brief—cures the complaint's fatal deficiencies.

Indeed, because the documents do not substantiate their baseless claims against Wenig, Plaintiffs once again resort to improperly lumping multiple defendants together, assigning collective responsibility to eBay's "c-suite executives."—even when the documents make clear that someone other than Wenig was responsible for the purported conduct. Dkt. 146 at 2, 6; *cf.* Dkt. 79-1 at 12, 24, 25, 28; Dkt. 138 at 6; Dkt. 142 at 5. For example, Plaintiffs argue that "*the executives* directed … Baugh to handle the issue 'off the radar' and that they would cover for 'any legal problems'" even though the document they cite in support of that assertion shows clearly states that it was Wendy Jones—not Wenig nor any other eBay executive—who issued the purported directive. *Compare* Dkt. 146 at 5 *with* Dkt. 146 at 3 and Dkt. 146-1 at 13. Similarly, Plaintiffs contend that "Wenig, Wymer, and eBay" collectively "instruct[ed]" Baugh "to not share precise details of the [alleged] conspiracy" so as "to absolve themselves of all liability." Dkt. 146 at 6. But Plaintiffs admit that it was Jones—not Wenig or anyone else—who did not want to know of Baugh's plans, telling him, "*I* don't want to know the details." Dkt. 146 at 3 (emphasis added).

---

[4] This is also why the rules of evidence draw a distinction between a document's authenticity and its admissibility. *Compare* Fed. R. Evid. 901 *with* Fed. R. Evid. 802.

Allegations directed at "defendants" collectively do not state a claim against Wenig in particular; a complaint must "allege the factual basis for the claim against each defendant" individually. *Daniels v. Varela*, 2020 WL 5440574, at *5 (D. Mass. 2020). Plaintiffs have failed to do so.

As noted above, Plaintiffs' supplemental brief relies exclusively on the sentencing memo submitted by Baugh's lawyers. But, apart from the communications reproduced in the memo, the only supposed facts—as opposed to lawyer's argument—in the supplemental material submitted by Plaintiffs are found in Baugh's letter to the court. There are, however, no factual assertions in the letter that would save Plaintiffs' claims against Wenig from dismissal even if they were (impermissibly) deemed amendments to the complaint. Plaintiffs implicitly acknowledge this, asserting that, "[i]n sum, Defendant Baugh's *memorandum* further lends support to Plaintiffs' claims within its Complaint that this was a conspiracy that started with Defendant Wenig and trickled down." Dkt. 146 at 5. But, once again, an attorney's statements are not evidence.

Regardless, the supplemental materials Plaintiffs have submitted do not cure any of the complaint's many legal deficiencies.

*RICO***:** Nothing in the supplemental materials changes the fact that Plaintiffs have adequately alleged neither a predicate act nor a pattern of racketeering activity. *Cf.* Dkt. 79-1 at 10–20; Dkt. 138 at 4–7. And nothing in the supplemental materials bolsters Plaintiffs' baseless, conclusory assertions that Wenig participated in the alleged racketeering enterprise's affairs. *Cf.* Dkt. 79-1 at 20–22; Dkt. 142 at 3.

*Intentional Infliction of Emotional Distress:* As previously noted, Plaintiffs have conceded that Wenig could not have reasonably foreseen Baugh's criminal behavior and have thus forfeited their claim for intentional infliction of emotional distress. Dkt. 142 at 3–4. Plaintiffs' supplemental brief does nothing to alter that dispositive fact. And the materials attached to their brief contain no

purported facts suggesting that Baugh's extraordinary conduct could have been foreseen by Wenig.[5]

*Stalking:* The supplemental materials submitted by Plaintiffs do not save their stalking claim, which fails as a matter of law. Nothing Plaintiffs submit changes the fact that Massachusetts tort law does not recognize a claim for stalking. *Cf.* Dkt. 79-1 at 26; Dkt. 138 at 9–13. And even if a stalking claim under California law were in theory cognizable, the materials Plaintiffs have submitted do not suggest that Wenig participated in the purported stalking. *Cf.* Dkt. 142 at 4.

*Massachusetts Civil Rights Act:* As previously explained, Plaintiffs have forfeited their MCRA claim against Wenig because they did not respond to Wenig's argument that their complaint fails to adequately that he was "personally engaged" in threats, intimidation, or coercion directed at the Steiners. *Gilanian v. City of Boston*, 431 F. Supp. 2d 172, 174 n.1 (D. Mass. 2006); *cf.* Dkt. 79-1 at 27; Dkt. 142 at 4. Plaintiffs' supplemental brief does not—and cannot—cure that forfeiture. Regardless, none of the supplemental materials Plaintiffs submitted suggest that Wenig engaged in any such conduct.

*Defamation:* Having failed to respond to Wenig's argument that the complaint fails to allege a defamation claim against him, Plaintiffs forfeited the claim. *Cf.* Dkt. 79-1 at 27–28; Dkt. 142 at 4–5. Nothing in Plaintiffs' supplemental brief or the accompanying materials changes that.

*Trespassing*: Similarly, neither Plaintiffs' supplemental brief nor the accompanying materials cures Plaintiffs dispositive failure to address Wenig's argument that the complaint pleads

---

[5] Baugh's outrageous, unforeseeable behavior extended beyond his harassment of the Steiners. "[A]t the exact same time" he was terrorizing the Steiners, Baugh tried to enlist two eBay employees "to harass a prosecutor" who was then prosecuting his father. Dkt. 117-1 at R387; Tr. 18–20, *U.S. v. Baugh*, Crim. No. 20-10263 (D. Mass. Sept. 29, 2022). That Baugh would launch a rogue harassment campaign against the Steiners using eBay employees was no more foreseeable to Wenig than was Baugh's effort to use eBay employees to harass an Arkansas prosecutor.

no facts plausibly suggesting that he caused someone or could have reasonably foreseen that someone would enter the Steiners' property. *Cf.* Dkt. 79-1 at 28–29; Dkt. 142 at 5.

*False Imprisonment:* Plaintiffs' false imprisonment claim against Wenig fails, both because Plaintiffs have conceded that they "left [their] home" during their supposed imprisonment and because their complaint fails to adequately the requisite intent on Wenig's part. *Cf. Cf.* Dkt. 79-1 at 29; Dkt. 138 at 13–14; Dkt. 142 at 5. Plaintiffs' supplemental filings do not cure those fatal defects.

*Tortious Interference:* In his motion to dismiss, Wenig explained that Plaintiffs failed to state a claim for tortious interference either generally (because they failed to adequately allege injury) or against him individually (because they failed to adequately allege intent). *See* Dkt. 79-1 at 31–33. On reply, Wenig noted that Plaintiffs' opposition had abandoned the theory of tortious interference pled in the complaint, which was based on subscribers and advertisers, and substituted in its place a different but equally unavailing theory centered on supposed eCommerceBytes sources. *See* Dkt. 138 at 15–16. Wenig also noted that Plaintiffs had implicitly conceded that their complaint fails to adequately allege culpable intent on his part. *See* Dkt. 142 at 5. Plaintiffs' supplemental filings do not address, let alone rectify, these dispositive failings.

*Civil Conspiracy:* Plaintiffs' civil conspiracy claim fails as a matter of law under the intra-corporate conspiracy doctrine and as to Wenig in particular because the complaint does not adequately allege that he aided and abetted Baugh's criminal activity or personally engaged in tortious conduct. *Cf.* Dkt. 79-1 at 33–35; Dkt. 141 at 1; Dkt. 142 at 5. The materials appended to Plaintiffs' supplemental brief cannot alter the intra-corporate conspiracy doctrine and do not contain any purported facts that would sustain a conspiracy claim against Wenig.

## CONCLUSION

For the reasons stated here, in Wenig's individual reply, in the defendants' two joint replies,

and in Wenig's opening memorandum, all claims against Wenig should be dismissed with prejudice.

Dated: October 12, 2022                    Respectfully submitted,

                                                    /s/ *Abbe David Lowell*
Abbe David Lowell (*pro hac vice*)
Andrew E. Tauber (*pro hac vice*)
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
adlowell@winston.com
atauber@winston.com
(202) 282-5000

Martin G. Weinberg, Esq.
MARTIN G. WEINBERG PC
20 Park Plaza
Suite 1000
Boston, MA 02116
owlmgw@att.net
(617) 227-3700

*Counsel for Devin Wenig*

11

**CERTIFICATE OF SERVICE**

I, Abbe David Lowell, hereby certify that on this date, October 12, 2022, a copy of the foregoing document has been served via the Electronic Court Filing system on all registered participants.

/s/ *Abbe David Lowell*
Abbe David Lowell