UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INA STEINER, DAVID STEINER, and STEINER ASSOCIATES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>EBAY INC., et al.,<br><br>Defendants. | Case No.: 1:21-cv-11181-DPW<br><br>Leave to File Granted on:<br>October 25, 2022 |

**DEFENDANT STEVE WYMER'S SUPPLEMENTAL REPLY
IN SUPPORT OF HIS MOTION TO DISMISS**

Plaintiffs' recent filing (ECF No. 146) in opposition to Defendants' motions to dismiss, while made under the guise of submitting documents purportedly subject to judicial notice, in fact inserted belated attorney argument, mischaracterizations, and unsupported legal conclusions into the record, along with documents for which the truth of the matter asserted cannot legally be accepted. Defendant Steve Wymer ("Wymer") has repeatedly made clear that he was and remains shocked and appalled by the conduct directed at Plaintiffs Ina and David Steiner by the Charged Defendants (who have now all pleaded guilty), for which Defendant Baugh has now acknowledged responsibility. Plaintiffs' Complaint is devoid of any factual allegations that Wymer participated in or was aware of the acts committed by those individuals, at Baugh's behest. *See* ECF Nos. 84, 136, 138, 141 (Wymer MTD briefing). As explained below, Plaintiffs' latest submission should be stricken, but in any event it does not cure the deficiencies in Plaintiffs' allegations as against Wymer, and instead confirms that Plaintiffs' attempt to impose liability on Wymer fails as a matter of law.

**I.      Plaintiffs' Brief Is Procedurally Improper and Should be Stricken, and Assertions in Its Attached Exhibits Are Not Subject to Judicial Notice**

As this Court well knows, neither the Federal Rules of Civil Procedure nor this District's local rules allow sur-reply briefs without leave of court. Plaintiffs' counsel knows this too; indeed, in connection with prior motion to dismiss briefing, Plaintiffs conditioned assent to a brief extension of time on them being allowed to file a 20-page sur-reply with the Court's permission (*see* ECF No. 126), which the Court ultimately did not grant. The Court did, however, grant Plaintiffs' more recent limited request to "supplement their Consolidated Opposition to Defendants' Motions to Dismiss" with three specified documents (Baugh's sentencing memorandum and "letter of attrition," and Harville's amended sentencing memorandum). ECF No. 144 at 1-2. The Court granted that

limited request, but Plaintiffs proceeded to submit those documents with an accompanying *de facto* sur-reply, replete with attorney argument and mischaracterizations of the submitted exhibits.[1]

As an initial matter, Plaintiffs' brief should be stricken as it was not allowed by the Court. It is also axiomatic that in deciding a motion to dismiss under Rule 12(b)(6), the Court may not consider factual allegations asserted in opposition briefing, including the purported "facts" contained in Plaintiffs' brief. *See, e.g.*, *Doe, Next Friend of A v. Spears*, No. CV 18-12547-NMG, 2022 WL 4381943, at *3 (D. Mass. Sept. 22, 2022) ("It is improper, however, for a plaintiff to 'bolster the allegations of the [] Complaint through the late addition of new facts in opposing a motion to dismiss.'" (quoting *Decoulos v. Town of Aquinnah*, No. 17-CV-11532-ADB, 2018 WL 3553351, at *12 (D. Mass. July 24, 2018), *aff'd,* No. 18-1820, 2019 WL 11234357 (1st Cir. Dec. 10, 2019))); *Miller v. Suffolk Cnty. House of Correction*, No. CIV.A.01-11331-DPW, 2002 WL 31194866, at *2 (D. Mass. Sept. 27, 2002) (Woodlock, J.) (declining to consider new allegation set forth in plaintiff's opposition to defendants' motion to dismiss). The brief should therefore be disregarded.

As to the newly submitted exhibits, Plaintiffs improperly seek to have the underlying contentions in them considered by the Court under principles of judicial notice. *See* ECF No. 146 at 2. Specifically, Plaintiffs assert that the sentencing memoranda can be considered in deciding the Rule 12(b)(6) motions because the memoranda's "authenticity" "cannot reasonably be questioned by the Defendants in the instant proceedings." *Id.* But "[t]aking judicial notice of a [document] . . . is not the same as taking judicial notice of a fact within the [document]." *Lopes v. Riendeau*, 177 F. Supp. 3d 634, 667 (D. Mass. 2016). Indeed, while "[i]t is well-accepted that federal courts may take

---

[1] Plaintiffs also indicated that they intend to submit the transcripts of Baugh's and Harville's sentencing hearings, which took place on September 29, 2022. *See* ECF No. 146 at 1.

judicial notice of proceedings in other courts," court filings "are recognized not for the truth of the matters asserted within them, but instead *only* to establish the fact that related litigation has been initiated or to establish that the fact that documents have been filed in that related case." *Barnstable Cnty. v. 3M Co.*, No. CV 17-40002, 2017 WL 6452245, at *4 (D. Mass. Dec. 18, 2017) (emphasis added).  Accordingly, the Court can consider the fact that the exhibits *were filed*, but the Court cannot accept the truth of the matters asserted in those documents, as Plaintiffs suggest, for purposes of ruling on Wymer's motion to dismiss.[2]

## II. The Attorney Argument in Plaintiffs' Brief Is Erroneous and Misleading

Plaintiffs incorrectly argue that their filed supplemental documents, and in particular Baugh's sentencing memorandum, provide "evidence for Plaintiffs' claims set forth in the Complaint."  ECF No. 146 at 2.  As an initial matter, Baugh's sentencing memorandum submitted by his criminal defense counsel has no evidentiary value in this action—it contains self-serving assertions made primarily to persuade the sentencing court to impose a lower sentence.  Indeed, the sentencing court did not appear to be swayed by Baugh's sentencing memorandum and letter, and ultimately sentenced him to 57 months' imprisonment, significantly higher than the 30 months proposed by

---

[2] Should the Court not strike Plaintiffs' submission and intend to rule on Defendants' pending motions to dismiss, as an alternative, the Court could consider ordering Plaintiffs to seek leave to file an amended complaint with whatever well-pleaded factual allegations they wish to supplement into their Complaint, to allow Wymer the opportunity to challenge those allegations in a procedurally proper manner.  As it stands now, Wymer is unfairly left seeking to defend against scattershot allegations strewn across various filings (including over 600 pages of extrinsic evidence outside the Complaint, submitted after he filed his motion to dismiss), in which Plaintiffs have not attempted to make well-pleaded factual allegations specifying how those scattershot allegations purportedly support their specific causes of action and the legal elements of Plaintiffs' claims as to each defendant.  *See Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 46 (1st Cir. 2011) (complaint must contain "sufficient detail . . . to give a defendant fair notice of the claim and the grounds upon which it rests").

Baugh's criminal defense counsel. *Compare U.S. v. Baugh, et al.*, Crim. No. 20-10263, ECF No. 235 (D. Mass. Oct. 4, 2022) *with* ECF No. 146-1.  Harville's amended sentencing memorandum—though it bears no mention of Wymer—is not "evidence" for the same reasons:  it is merely a self-serving submission by his criminal defense counsel.  *See* ECF No. 146-3.

Further troubling, Plaintiffs' characterizations of Baugh's sentencing memorandum is replete with mischaracterizations and unfounded legal conclusions.  For example, Plaintiffs cite a conversation that Baugh claims occurred between eBay executive Wendy Jones and Baugh, during which Jones purportedly directed Baugh to "find a way to deal with the issue 'off the radar since comms and legal couldn't handle it' . . . 'Just get it done.  I don't want to know the details, just make sure you sync with Wymer.'"  ECF No. 146 at 3.  Plaintiffs conclude that eBay executives therefore "knew what they asked Defendant Baugh to do was criminal" and authorized Baugh to engage in "illegal activity."  *Id*. at 5.  But the context from the sentencing memorandum makes clear that the purported conversation pertained to publication of information about eBay's campus that the security team viewed as a potential security risk (*see* ECF No. 146-1 at 15-16); it had nothing to do with harassing the Plaintiffs or directing "criminal" activity against them, as Plaintiffs' brief asserts.  ECF No. 146 at 5.  The sentencing memorandum also cites no record documenting this purported conversation with Jones, nor does Baugh claim that he ever "sync[ed]" with Wymer about the security issue.  *See* ECF No. 146-1 at 16.

Plaintiffs also cite another purported conversation in which, according to Baugh, he informed Wymer that "his team had given the Steiners 'a tap on the shoulder,'" and Wymer "expressed approval but did not ask questions," which Plaintiffs claims demonstrates the executives' "'don't ask, don't tell' policy."  ECF No. 146 at 4.  But the purported conversation as described by Baugh is again unsubstantiated by a contemporaneous record or document, derives from Baugh's self-serving

sentencing memorandum, and should not be credited. Furthermore, the phrase "tap on the shoulder" itself lacks any context, is utterly vague and does not allude to any criminal or improper conduct, let alone supports Plaintiffs' Complaint allegations that Wymer "directed" or "condoned" illegal activity. *E.g.*, ¶¶ 59, 69, 76, 101, 132. Plaintiffs' brief's claim that this purported interaction "demonstrates that [the executives] directed the acts, and endorsed them" lacks the support of any well-pleaded factual allegations.

In addition, Plaintiffs' brief focuses on an alleged meeting between Wymer and Baugh, during which Baugh claims that Wymer "instructed Baugh"—as supposedly ordered by Devin Wenig—"to take any actions necessary to neutralize the Steiners," and Wymer allegedly said he "did not want to know details" but Baugh's group "would have 'executive level support' if efforts led to [] 'any legal problems.'" ECF No. 146 at 4. Yet Plaintiffs omit that even according to Baugh, Wenig, through Wymer, was focused on the "*website*"—not harassment or anything illegal. *Id.* (emphasis added). While Plaintiffs further claim this "corroborates" their allegations that eBay executives "spearheaded" the harassment campaign (*id*. at 4-5), their own filing cites Baugh's admission that it was nonsensical to blame others for Baugh's conduct, with Baugh stating: "*[a]t the time of my crime* and for several months after my arrest, I tried every way imaginable to justify my actions. Taking ownership for my behavior never crossed my mind and *I took advantage of every opportunity possible to shift the blame to other people[.] . . . This was all just complete nonsense.*" ECF No. 146-2 at 3 (emphasis added).

Finally, Plaintiffs rely on Baugh's characterization of a phone call between Wymer and Baugh to claim that Wymer and Jones "were aware of what occurred" because they received an email sent to eBay legal from Natick police, and that Wymer "reiterated that he did not know the details but that he would not say anything to legal during the internal investigation." ECF No. 146 at

5.  However, even crediting Baugh's (non-credible) version of a call, his sentencing memorandum does *not* say that Wymer knew "what occurred," that Baugh told Wymer what he and the Charged Defendants had done, or that Baugh revealed that he had done anything illegal.  *See* ECF No. 146-1 at 22.  To the contrary, Plaintiffs' previous filings *acknowledge* that Baugh sent a contemporaneous text message to Wymer explicitly stating that "no crime was committed."  *See* ECF No. 117-1 at R401; ECF No. 84 (Wymer MTD) at 15-16.  Further, Baugh's suggestion that Wymer purportedly told Baugh to "stick to [his] guns," which Baugh claims he interpreted as a "directive . . . to stick to the cover story that they went to Boston for a conference" (ECF No. 146 at 5), is entirely self-serving and merely implicates *Baugh's* supposed notion that *he* "understood" "stick to your guns" to mean "stick to the cover story"—not that *Wymer* meant that or knew anything about a "cover story."  *Id*.  Similarly unavailing is citation to Baugh's recitation of a purported reference, devoid of context, to "get[ting] rid of the Hardy Boys" (*id*.), which is no substitute for well-pleaded factual allegations showing that Wymer had any participation in or knowledge of Baugh's illegal activity.

**III.  Even Considering Plaintiffs' Submission, Wymer Should Be Dismissed From This Action**

Even should the Court consider Plaintiffs' submission, nothing in it changes the fact that no claim has been stated against Wymer.  As Wymer's motion to dismiss demonstrated, the Complaint reflects that he learned of potential misconduct directed at Plaintiffs only *after* the last of the alleged acts occurred, and he did not learn the extent of the wrongdoing until criminal charges were publicly filed in federal court.  ECF No. 84 (Wymer MTD) at 1, 6.  The Complaint includes no facts reflecting that Wymer participated in any of the alleged wrongdoing, or that he knew of the tortious acts and actively participated in or substantially assisted in them, as required to impose liability on him.  Not only does Plaintiffs' submission not remedy these fatal flaws, it confirms them.  For

example, the Baugh sentencing transcripts that Plaintiffs intend to submit (*see* ECF No. 146 at 1) wholly undercut Plaintiffs' allegations that eBay executives, including Wymer, directed, planned, or ordered the individuals' unlawful acts (*e.g.*, ¶¶ 59, 69, 76, 101, 132). Indeed, Baugh's own attorney *conceded* that eBay's C-Suite "didn't order [Baugh] to do it." *U.S. v. Baugh*, Crim. No. 20-10263 (D. Mass. Sept. 29, 2022) (emphasis added), Tr. 34. And Baugh admitted that *he* was responsible for what occurred, stating: "***I was one hundred percent responsible for everything that happened on my watch, and that means everything.*** I take one hundred percent responsibility for this, and there is no excuse for what I've done." Tr. 37 (emphasis added). The government confirmed as much, telling the court that Baugh "earned every point of [a] four-point [sentencing-guideline] enhancement" as the "leader/organizer" of the harassment campaign, and "no one at eBay told [Baugh] to anonymously threaten and harass and stalk the Steiners. ***That idea, what happened to the Steiners, was his and his alone***. There's no one above Jim Baugh at eBay who thought up the depraved things that happened to David and Ina Steiner." Tr. 14, 16.[3]

In addition, Plaintiffs' claims remain legally deficient for the reasons below.

<u>RICO</u>: Nothing in Plaintiffs' filing indicates that Baugh's harassment campaign against the Steiners was anything other than a "single, narrow scheme targeting few victims," which cannot sustain a claim under RICO. *See* ECF No. 84 (Wymer MTD) at 29-33. Similarly, nothing in the filing changes the fact that Plaintiffs have failed to plead a requisite predicate act. *Id.* at 27-29.

*Intentional Infliction of Emotional Distress:* An intentional infliction of emotional distress claim requires that a defendant knew or should have known that the conduct suborned would cause

---

[3] Baugh tacitly admitted he was the "leader/organizer" of the harassment campaign by not challenging the four-point sentencing enhancement he earned for that role. *See* ECF No. 146-1 at 24-27.

emotional distress. ECF No. 84 (Wymer MTD) at 10. But nothing in Plaintiffs' submission indicates that Wymer had any knowledge of the harassment campaign Baugh and his cohort were inflicting on the Steiners, or intended or reasonably should have expected it, so that claim still fails.

*Massachusetts Civil Rights Act, Stalking and Trespassing*: As explained in Wymer's motion to dismiss, each of these claims requires personal involvement by a defendant to state a claim. ECF No. 84 (Wymer MTD) at 9. But nothing in Plaintiffs' latest submission suggests that Wymer ever encountered or interacted with the Plaintiffs or their property in any way, so those claims still fail.

*Civil Conspiracy*: Nothing in Plaintiffs' filing suggests that anyone other than eBay personnel was involved in any harassment scheme, and as such, the intra-corporate conspiracy doctrine still applies with full force and effect to require dismissal of Plaintiffs' civil conspiracy claim. *See* ECF No. 84 (Wymer MTD) at 17-19.

*Tortious Interference and Defamation*: Nothing in Plaintiffs' filing shows that Wymer tortiously disrupted any business relationship or that he "published" any public statement about the Plaintiffs, let alone a defamatory one, as required to state a claim. ECF No. 84 (Wymer MTD) at 12, 15.

*False Imprisonment*: A cause of action for false imprisonment requires a specific intent to confine. *See* ECF No. 84 (Wymer MTD) at 13-14. No part of Plaintiffs' new filings suggests, even implicitly, that Wymer intended to confine Plaintiffs in their home, and accordingly the claim still fails.

## CONCLUSION

For the reasons explained above, in Wymer's opening memorandum (ECF No. 84) and individual reply (ECF No. 136), and in the defendants' two joint replies (ECF Nos. 138, 141), Wymer respectfully submits that all claims asserted against him should be dismissed.

Dated: October 25, 2022

Respectfully submitted,

*/s/ Caz Hashemi*
Caz Hashemi (pro hac vice)
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300
chashemi@wsgr.com

Michael J. Pineault (BBO #555314)
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
T: +1 617-621-6578
mpineault@andersonkreiger.com

*Counsel for Steve Wymer*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2022, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: October 25, 2022

*/s/ Caz Hashemi*
Caz Hashemi