**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF MASSACHUSETTS**

| | |
|---|---|
| Ina Steiner, | |
| David Steiner, | |
| Steiner Associates, LLC, | |
|      (*Publisher of EcommerceBytes*) | CASE NO: 1:21-cv-11181 |
|          Plaintiffs | |
| | |
|    vs. | |
| | |
| | |
| eBay, Inc., et al., | |
|         Defendants | |

## MOTION FOR LIMITED DISCOVERY AND INCORPORATED MEMORANDUM OF LAW, AND FOR AN EXTENSION OF THE DEADLINE TO FILE AN AMENDED COMPLAINT

Now come the Plaintiffs and respectfully request that this Court permit the Plaintiffs to obtain limited discovery before amending the Complaint.

This Court has granted Plaintiffs leave to file an amended Complaint by February 15, 2023. (Woodlock, J.). As noted in the Court's Order, voluminous information has come to light in the parallel criminal cases, which has cast light on further discovery that would aid in amending Plaintiffs' complaint, and conduct the "careful reconsideration for purposes of specific reframing" the claims in Plaintiffs' original complaint. In order to conserve the resources of the Court and the parties, Plaintiffs seek additional, limited discovery at this juncture, in order to amend the Complaint and prevent the need to request further amendment in the future, to either additional claims or parties.[1]

---

[1] In lodging the request for discovery, Plaintiffs are in no way conceding that any of the claims in its original complaint fail to satisfy the well-pleaded complaint standard. *See* Fed. R. Civ. P. 8; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In the January 4, 2023

In light of these discovery requests, Plaintiffs are requesting an extension of the date to file an Amended Complaint, currently scheduled for February 15, 2023.

**PROCEDURAL HISTORY**

The Plaintiffs, David and Ina Steiner and Steiner Associates, LLC, filed a Complaint against eBay, Progressive Force Concepts ("PFC"), two eBay executives – Devin Wenig and Steve Wymer – and various other employees of eBay and PFC – Jim Baugh, David Harville, Brian Gilbert, Philip Cooke, Stephanie Popp, Stephanie Stockwell, and Veronica Zea – on July 21, 2021.[2]

All Defendants except for Defendant Harville – who filed an Answer – have filed motions to dismiss various counts of the Complaint.

This Court granted leave to file a consolidated opposition to the Defendant's Motions to Dismiss on November 15, 2021. This Order was stayed to allow the parties to attempt to mediate this case. The Plaintiffs' filed their consolidated Opposition to Defendants' Motions to Dismiss on June 9, 2022. The Defendants filed a number of replies, and consolidated replies, on June 24, 2022. On September 29, 2022, Plaintiffs filed a Motion for Leave to File Supplement to Plaintiffs' Consolidated Opposition to Defendants' Motions to Dismiss, including new information learned in the Defendants' respective criminal cases.  The next date, September 30, 2022, the Court allowed the Motion for Leave. (Woodlock, J.). On October 11, 2022, Defendant Wenig filed a Motion

---

Order, this Court provided the Plaintiffs with leave to amend the Complaint to "provide a simple, concise and direct statement of currently plausible claims" in light of the voluminous information that came to light in the criminal cases, as noted by Judge Woodlock. Additional discovery – more specifically, materials which came to light in the related criminal proceedings – would assist with complying with the Court's Order.

[2] The Complaint also named several John and Jane Does.

for Leave to File a Supplemental Reply in Support of Motion to Dismiss, which was allowed by the Court the next day. On October 15, 2022, eBay also filed a Motion for Leave to File a Supplemental Reply, which was likewise allowed. On October 17, 2022, Defendant Wymer also filed a Motion for Leave to File a Supplemental Reply, which was also granted by the Court. On October 26, 2022, Plaintiffs filed a Motion for Leave to file a Consolidated Response to Defendants eBay, Wenig and Wymer's replies, which the Court allowed the next day.

On January 4, 2023, the Court entered an "Order Regarding Pending Motions to Dismiss and Consent to Transfer." (Docket No. 167). The Order stated as follows:

> Pending before this Court is a collection of motions to dismiss for failure to state a claim [Dkt Nos. 79, 81, 83, 88, 89, 93, 98 (and also to dismiss for lack of jurisdiction), 101, 102, 106, 118 (as to counterclaim of defendant Baugh)]. As a result of the successive guilty pleas by various of the defendants in criminal proceedings against them, Plaintiffs have been permitted leave to supplement the currently operative initial complaint [Dkt. No. 1] that commenced this action on July 21, 2021, with materials from those criminal cases and to filed a consolidated response [Dkt No. 159] to the various supplemental reply materials Defendants have filed. The consequence of the successive filings of these supplemental – albeit current – materials is that a) the allegations of the currently operative initial complaint – filed well before the effective conclusion of all of the parallel criminal litigation – have been obscured by a massive accumulation of paper that does not provide a simple, concise and direct statement of currently plausible claims and counterclaims, see Fed. R. Civ. P. 8(d)(1); those allegations cannot be said any longer to be plain and (c) Plaintiffs' allegations would undoubtedly benefit from careful reconsideration for purposes of specific reframing and focus on whether there is a likelihood that current case law and factual circumstances would support the variety of separate claims initially made in the way they were. Plaintiffs are entitled to state their claims in light of the current development of litigation bearing on their civil case before motion to dismiss practice is completed. Plaintiffs will be afforded that opportunity through the filing of an amended complaint on or before February 15, 2023. In the interim, the currently outstanding motions to dismiss are hereby DENIED without prejudice to reassertion if no such amended complaint is timely filed by Plaintiffs.
>
> In the interests of justice and to further the efficient performance of the business of this court, after consultation with Chief Judge Saylor and Judge Saris, I hereby direct the transfer of this case to Judge Saris, with her consent, pursuant to Local

Rule 40.1(i)(1). ("a district judge may,…with respect to civil cases only,…transfer the case to another district judge, if the other judge consents to the transfer.").

(Woodlock, J.).

In order to further substantiate the claims in Plaintiffs' impending amended Complaint, Plaintiffs now file this Motion for Limited Discovery.

## STANDARD FOR GRANTING LIMITED DISCOVERY AT THIS STAGE

The district court has the authority to allow limited discovery before a Plaintiff amends the Complaint, where "modest discovery may provide the missing link." *See Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012). Discovery is warranted where Plaintiff alleges "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that supports Plaintiff's claims. *See Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Generally, discovery is appropriate where "a material part of the information needed is likely to be within the defendant's control." *Garcia-Catalan v. United States*, 734 F.3d 100 (1st Cir. 2013) (noting "it cannot reasonably be expected that the appellant, without the benefit of discovery, would have any information" about circumstances readily known to defendants), *citing Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012) (highlighting "[s]moking gun proof" is "rarely available…at the pleading stage").

As to discovery generally, pursuant to Federal Rule of Civil Procedure 26(b), parties are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26 is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Energy Power (Shenzhen) Co. v. Wang*, No. 13-cv-11348, 2014 WL 4687784, at *2

(D. Mass. Sept. 17, 2014) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351

(1978)). "District courts exercise broad discretion to manage discovery matters,"

*Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.,* 333 F.3d 38, 41 (1st Cir. 2003), and

"to tailor discovery narrowly," *Cutter v. HealthMarkets, Inc.,* No. 10-cv-11488, 2011 WL

613703, at *2 (D. Mass. Feb. 10, 2011) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598

(1998)). When exercising this discretion, courts are mindful of the proportionality

considerations articulated in Rule 26(b)(1). Fed. R. Civ. P. 26(b)(1).

## REQUESTS

1. Any reports of "Internal Investigation," conducted by eBay, Morgan Lewis or Guidepost Solutions, and "Production Letters" to USAO (from eBay)

As the First Circuit noted in *Menard*, an investigation conducted by a corporation

could easily reveal what percipient witnesses observed that are relevant to the Plaintiffs'

claims. *See Menard*, 698 F.3d at 45.

As stated in the Declaration of Andrew C. Phelan, Esq., filed in conjunction with

eBay and Morgan Lewis' Motion to Quash Defendant Baugh's Rule 17 subpoenas filed in

the criminal case, eBay engaged Morgan Lewis to "conduct an internal investigation in

coordination with eBay's in-house legal team." (A3 ¶ 3).[3] At the same time, Morgan Lewis

also "represented eBay in conjunction with the USAO Investigation." (A3 ¶ 4). In other

words, at the same time Morgan Lewis was allegedly probing into the Natick events, it was

simultaneously attempting to advance eBay's interests by convincing the US Attorney's

Office not to charge eBay criminally.

---

[3] References to the Appendix filed with this Motion are cited as "A#." References to
Docket Entry numbers and filings refer to the above-referenced docket, for the instant case.

During the course of its dual roles, Morgan Lewis "collect[ed] relevant facts regarding the alleged harassment of the Steiners…" and "collected relevant documents and conducted interviews." (A3, 4 ¶¶ 6, 9). Throughout the investigation eBay conducted interviews with a number of eBay employees. The privilege logs submitted by eBay relating to its motion to quash Baugh and Harville's Rule 17 requests also refer to interviews conducted by Guidepost Solutions, during the month of August 2020. (A100-101). According to Attorney Phelan's affidavit, the PowerPoint, and the privilege logs submitted in conjunction with the motion to quash Baugh and Harville's Rule 17 subpoenas, the following eBay employees were interviewed:

1) Defendant Jim Baugh;

2) Defendant David Harville;

3) Defendant Devin Wenig;

4) Defendant Steven Wymer;

5) Defendant Brian Gilbert;

6) Defendant Stephanie Popp;

7) Defendant Stephanie Stockwell;

8) Defendant Veronica Zea;

9) Wendy Jones;

10) Scott Fitzgerald;

11) Eleanor Mount, aka Michelle Echevarria;

12) Megan Barrett;

13) Michelle Alford; and

14) Philip Cooke.[4]

Attorney Phelan communicated several times with the USAO, and "provided to the USAO information that eBay had learned during the course of the initial eBay in-house investigation and the Internal Investigation…[and] provided information in response to specific requests for information the USAO made of eBay." (A4 ¶ 11). Attorney Phelan provided "factual information" to the USAO, including "documents collected during the investigations, for example, emails and text messages by and among Defendants in this matter and other eBay personnel." (A5 ¶ 12). Attorney Phelan also informed the USAO of statements made during the investigation for Defendant Baugh, Defendant Harville and Defendant Wymer. (A5 ¶ 13).

It also appears eBay provided "Production Letters" to the USAO when providing documents, as referenced in the privilege logs. Plaintiffs also request the "Production Letters," to determine which information was provided to the USAO.

While Attorney Phelan attested that he did not prepare any document he would "characterize as a final report," he did note that he "prepared updates reporting the current status of the matter for the company, each of which was one or two pages long." (A7 ¶ 18). He did not indicate whether eBay prepared a final report. Plaintiffs are seeking any reports drafted or notes which contain factual recitations of the events, as well as any and all documents, text messages, emails or other communications accumulated during the course of the investigation. *See Attorney General v. Facebook, Inc.*, 487 Mass. 109, 123 (2021) (emphasizing that "[the distinction between communications and underlying facts] is

---

[4] Mount, Alford and Cooke appear to have been interviewed only by the USAO, however, according to the privilege logs, Attorney Andrew Phelan attended the interviews and took notes.

crucial because attorney-client privilege only protects against disclosure of confidential communications made to render legal services…It does not immunize underlying facts available from another source from discovery just because a client disclosed the facts to an attorney."); *Upjohn v. United States*, 449 U.S. 383, 395-396 (1981) ("A fact is one thing and a communication concerning a fact is an entirely different thing.").

The contents and factual information revealed during the investigations conducted by eBay, Morgan Lewis and Guidepost Solutions will provide the "missing link" between Plaintiffs' claims and the C-Suite executives and eBay, all of whom allege that Defendant Baugh and his team were rogue actors, and Defendants Wenig, Wymer and eBay had no reason to know the events were either going to occur, or that they were occurring. As noted by eBay in its PowerPoint presentation to the USAO, "[t]he evidence eBay provided in its cooperation will also help the victims to recover to the extent they pursue available civil remedies…" which suggests both an admission of liability, and that eBay would not attempt to stonewall the Steiners from receiving available discovery in pursuit of civil remedies. (A38).

Because the investigation involved phone dumps of the actors involved, as well as interviews with each percipient witness, Plaintiffs have met their burden of alleging "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that supports Plaintiff's claims. *See Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Moreover, this information is only within the defendant's control, so discovery is appropriate at this juncture, before Plaintiffs filed an amended Complaint. *See Garcia-Catalan v. United States*, 734 F.3d 100 (1st Cir. 2013).

2. <u>Discovery relating to Defendant Wymer (from eBay)</u>

Plaintiffs request the following discovery with respect to Defendant Wymer:

1) Any and all interviews, including notes of interviews, including interviews conducted on August 27, 2019; August 28, 2019; August 30, 2019; and September 9, 2019;

2) Phone extraction;

3) Any and all emails for Defendant Wymer reviewed during the investigation;

4) Personnel file.

Defendant Wymer alleges in his Motion to Dismiss pleadings that the Plaintiff's Complaint "pleads no facts reflecting that Wymer participated in *any* of the allegedly tortious acts the Charged Defendants committed. For example, the Complaint pleads no facts reflecting that Wymer had any knowledge that the Charged Defendants intended to – or did – stalk, threaten, harass Plaintiffs or vandalize their property." (Document No. 84 at 1). Wymer also claims that he could not be held vicariously liable because the Complaint failed to plead facts "demonstrating that Wymer *knew* the Charged Defendants were committing the tortious acts alleged in the Complaint *and* that he actively participated in or substantially assisted in the commission of those acts." (Document No. 84 at 2).

Wymer alleged that his "handful of animated and off-the-cuff messages" do nothing more than "stack[] inference upon inference on them to attempt to state a claim against Wymer," and that "[t]he communications do not plausibly suggest Wymer knew the types of acts alleged in the Complaint were being (or had been) committed…" (Document No. 84 at 2). Wymer claims that, "[i]n fact, the Complaint's allegations substantiate that Wymer was not contemporaneously made aware of any misconduct." (Document No. 84 at 2).

The discovery and pleadings in the criminal case, however, alludes to Defendant Wymer having more knowledge than has been asserted by him, than has been portrayed in the media, and is not reflected in the government's decision not to charge Defendant Wymer criminally. See e.g., A41 (noting Wymer's non-cooperation in the investigation, and deletion of texts and other communications relating to EcommerceBytes and Steiners).

On August 7, 2019, Aaron Johnson emailed Wymer, and cc:ed Huber and Baugh, discussing ways to go after the "eBay Imposter Twitter account," including sending a cease and desist letter. At the end of the email, Johnson queries, "Jim – any news/developments on your end?" He then asks the group to advise whether they "want to discuss live."

Four minutes later, Wymer responds complaining about the Twitter account and "the eCommercebytes gal" and how "unfair" it is because it "causes tremendous damage because we look bad fighting back in public and standing up for ourselves." This is the email referenced throughout the criminal case where he signs off, "Whatever. It. Takes." (A61).

Baugh outlined in his Sentencing Memorandum that shortly after the email, Wymer met Baugh and the following occurred:

- Wymer was very agitated, pointing his finger, etc.
- He instructed Baugh to take any actions necessary to neutralize the Steiners and identify FidoMaster
- "Direct order" from the CEO
- Wymer did not want to know details but assured Mr. Baugh that his group would have "executive level support" if efforts led to "any legal problems"
- "Devin [Wenig] wants the website burned to the ground."
- "The only thing that matters is that it stops."
- "If it doesn't stop, we're all done."
- eBay Corporate is willing to absorb any legal exposure

Baugh also outlined conversations he had with Wymer in the aftermath:

- Wymer stated that he and Jones were aware of the criminal investigation because they saw an email from Natick PD to eBay legal
- Wymer reasoned that harassment – which he equated to "TPing" a house – is not a crime
- Wymer seemed nervous and said multiple times that he didn't know anything about what was going on but that he wouldn't say anything to legal during its internal investigation
- Wymer told Mr. Baugh, "Stick to your guns," which Mr. Baugh understood as instruction to have his security team stick to its cover story about attending an industry conference in Boston
- Wymer asked Mr. Baugh how long it would be before legal started reading his emails/tests; Mr. Baugh said he didn't know
- Wymer told Baugh they "just needed to get rid of the Hardy Boys," referring to eBay legal

(A62)

Plaintiffs, however, have not had access to the full scope of communications between Wymer and Baugh. While the PowerPoint presentation indicates eBay was able to determine Wymer deleted text and other communications, it appears the full scope of communications were not publicly released in the context of the criminal case where Defendant Baugh submitted at least one written communication that was not included with the criminal Affidavit. (A59-62).

Moreover, the documents submitted by eBay in the context of Baugh's discovery requests indicate that Wymer's phone was searched. In the PowerPoint presentation, eBay noted that it "provided phones, devices, and images along with forensic results/reports to government." (A21). The PowerPoint also noted that eBay "sent Wymer's phone image to government with chain of custody" on December 4, 2020. In addition to his phone, eBay also provided Wymer's emails to the government from August 23, 2019 to September 1, 2019. (A23).

According to the Privilege Logs submitted by eBay in connection with its motion to quash Baugh and Harville's Rule 17 subpoena, eBay listed the following interviews with Defendant Wymer:

Interview at 10:35am on August 27, 2019

Interview at 1:30pm on August 28, 2019

Interview at 3:30pm on August 30, 2019

Interview on September 9, 2019

(A88-89).

Additionally, both in Attorney Phelan's affidavit and in the PowerPoint presentation, it is noted that eBay participated in a "fact proffer" with eBay's investigators, and relayed the factual content of Wymer's interviews. (A5-6, 23).

As noted in the PowerPoint presentation, Defendant Wymer deleted all texts with Defendant Wenig and Defendant Baugh, including a "Aug. 24 detailed 'Op' text." (A41). Wymer also withheld knowledge and evidence during his August 27, 2019 interview, and did not admit to any texts with Baugh until confronted with the texts during his August 28, 2019 interview. (A41). Wymer also had two phone calls with Defendant Baugh on August 22 and 24, but deleted these calls from his history. (A41). Presumably, both Defendant Baugh and Defendant Wymer were questioned about the content of these calls during their interviews with eBay investigators.

The contents of Defendant Wymer's electronic communications and interviews are directly relevant to the claims against him. Defendant Wymer has alleged in his motion to dismiss that "I want to see ashes" was merely referring to the Steiner's website, and was not talking about "stalking, imprisoning, defaming, vandalizing, trespassing or threatening

to kill them." Defendant Wymer's communications with Defendant Baugh – both before and after the events – are directly relevant to what he knew before the acts happened, what he directed, and what his intent was in sending his texts. His interview will also likely shed light on these issues. Moreover, the destruction of texts and phone logs, as well as the content within, are relevant to the RICO count relating to the underlying predicate act of obstruction of justice.

Defendant Wymer's personnel file is also relevant to Plaintiffs' claims where the PowerPoint presentation notes both that Defendant Wymer was terminated, and that he was "inexperienced." (A18). This is relevant to a potential negligent hiring claim, where the Board of Directors would have approved Defendant Wymer's hiring.

At this juncture, Defendant Wymer maintains that Plaintiffs have not set forth sufficient information within the Complaint to demonstrate the criminal defendants' acts were foreseeable to him when he instructed Defendant Baugh to burn Steiner to the ground. His interview, phone extraction and other discovery "may provide the missing link." *See Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012). Where we know the communications and interviews exist, and that eBay terminated Defendant Wymer based on the information revealed, Plaintiff allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that supports Plaintiff's claims. *See Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

3. <u>Discovery relating to Defendant Wenig (from eBay)</u>

Plaintiffs request the following discovery with respect to Defendant Wenig:

1) Any and all interviews, including notes of interviews with Defendant Wenig;

2) Phone extraction;

3) Any and all emails for Defendant Wenig reviewed during the investigation;

4) Personnel file.

Defendant Wenig likewise denied any knowledge of the acts of the other Defendants in his motion to dismiss all counts of the complaint, and asserted that his text "[i]f we are ever going to take [Steiner] down…now is the time" was neither a directive nor an order. (Document No. 79-1 at 12-13). Defendant Wenig asserted that he was not involved in the planning, nor did he sanction the behavior of the other Defendants and "[the complaint] offers no facts to support that bare assertion or other equally conclusory allegations to similar effect." (Document No. 79-1 at 13).  Defendant Wenig asserted that when a chief executive officer asks his public relations chief for a 'take…down,' the 'natural inference' is that he is referring to 'taking lawful action,' like issuing a press release, not a 'series of bizarre criminal acts.'

On information and belief, Defendant Baugh's desk was immediately outside of Defendant Wenig's conference room office, despite that Defendant Baugh was neither part of executive leadership, nor a direct report to Defendant Wenig.

Moreover, it appears there were further communications between Wenig and Wymer deleted by Defendant Wymer but not yet made public. The PowerPoint presentation refers to Wenigs "[t]ext**s** with Wymer about Steiner/ECB" that "were bad/improper" but only one Wenig text was released to the public. (A41) (emphasis added). A privilege log entry refers to "Key Wenig and Wymer Text**s**." (A102) (emphasis added). Furthermore, on August 26, 2019, Defendant Baugh gathered Harville, Popp, Zea, Gilbert and others in an eBay conference room, and directed the group to keep Defendants

Wenig and Wymer's names of out of any conversations in conjunction with the investigation, suggesting they were involved.

Additionally, there appear to be further texts between Defendant Wenig and Defendant Baugh not made public. For example, Defendant Zea submitted a letter with her sentencing memorandum where she indicates Baugh showed Zea and others texts from Defendant Wenig "saying that he was sorry to see Baugh go and Baugh said his loyalty would pay off." (A124). On August 23, 2019, Wenig tweeted, "Oh boy," just two days after Natick Police reached out to eBay via the law enforcement portal, and one day after eBay legal became involved. Defendant Baugh's filings also refer to a communication Wenig sent Baugh on August 25, 2019 – during the midst of the investigation by Natick Police and eBay legal – stating, "See you tomorrow. The Cavalry is back." (A74).

Defendant Wenig maintains that Plaintiffs have not set forth sufficient information within the Complaint to demonstrate the criminal defendants' acts were foreseeable to him when he instructed Defendant Baugh to burn Steiner to the ground. His interview, phone extraction and other discovery "may provide the missing link." *See Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012). Where we know the communications and interviews exist, and that eBay determined Wenig's conduct was negligent and even potentially reckless, based on the information revealed, Plaintiff allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that supports Plaintiff's claims. *See Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Moreover, the full scope of Wenig's conduct is relevant to the ratification claim against eBay where Wenig was not terminated, and left with a $57 million severance package.

4.  <u>Discovery relating to Wendy Jones (from eBay)</u>

Plaintiffs request the following discovery with respect to Wendy Jones:

1)  Any and all interviews, including notes of interviews with Jones;

2)  Any and all phone extractions;

3)  Any and all emails for Jones secured during the investigation;

4)  Personnel file, including but not limited to any retention bonuses from 2019 through 2020.

Wendy Jones was Defendant Baugh's direct supervisor. An individual named James Fussell was in Baugh's role when Baugh was first hired. Baugh convinced Jones to fire Fussell, and promote Baugh into the role of Senior Director of Safety and Security in charge of eBay's Global Security and Resiliency department. At the time of promotion, Defendant Baugh's conduct and behavior would have been apparent to Jones.

There is also some suggestion in the filings in Defendant Baugh's criminal case that Jones also directed the acts set forth in the Complaint. Jones emailed regarding the Twitter accounts and EcommerceBytes, then later had a lunch meeting with Baugh on May 23, 2019. As Baugh outlined in his sentencing memorandum:

> At the lunch meeting, Jones asked Mr. Baugh if he could find a way to deal with the issue "off the radar since comms and legal couldn't handle it." Jones told Mr. Baugh, "Just get it done. I don't want to know the details, just make sure you sync with Wymer." Mr. Baugh thereafter provided regular updates to Jones.

> (A55-56).

On or about July 19, 2019, Baugh met with Jones and played a recorded call between a security team member using a false identity and a subject associated with FidoMaster. Jones "fist bumped" Mr. Baugh. (A57).

On August 6, 2019, Baugh had a text communication with Wenig about the "eBay Imposter Twitter account." He sent a screenshot of the text communication to Jones to keep her in the loop, and she responded with a "thumbs up." (A59-60).

Therefore, while Defendant Wenig has asserted that any executive would use proper channels such as PR or legal means to rid eBay of press it took issue with, Jones specifically directed Baugh to handle the Steiners and EcommerceBytes "off the radar" since the communications department and legal could not handle it. Jones then requested regular updates from Baugh, and specifically ordered him to keep Defendant Wymer updated.

Moreover, as Baugh directly reported to Jones, they would have weekly meetings, and Baugh's desk was also right outside Jones' conference room suite, allowing them to have frequent contact, and for Jones to directly observe Baugh's escalating behavior, such as his harassment of his subordinates. On information and belief, Jones was a part of the C-Suite staff who would refer to Baugh's subordinates as "Jim's Angels," suggesting she was directly aware of the perverse culture Baugh was creating within his team.

After the circumstances of the harassment and stalking of the Steiners came to light, Jones was interviewed by eBay investigators on August 30, 2019 and September 6, 2019. (A89). Her interviews are directly relevant to determine her role, and whether there is sufficient basis to add her as a defendant for her role in the acts set forth in the Complaint. Any potential searches of her cell phone and emails are also relevant for this purpose, where a limited number of written communications were released to the public throughout the course of the criminal case.

Additionally, Jones was not terminated after this incident, and retired from eBay in December of 2020. If Jones played an active role, or was complicit in, or willfully blind to, Defendant Baugh's escalating behavior within the company, this would be directly relevant to the ratification claim against eBay, as well as the forthcoming negligent hiring and failure to supervise claims. Jones personnel file is therefore relevant to determine the circumstances of her employment, whether she was in any way punished for her role, or for her decision to promote Baugh and either knowledge of Baugh's conduct, or her failure to adequately supervise and train him.

Jones has not yet been named in the Complaint, but discovery "may provide the missing link" between Defendant Baugh and the other defendants' conduct and Jones. *See Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012).[5] Jones was Defendant Baugh's direct supervisor, and Defendant Baugh set forth detailed communications he had with Jones where she specifically instructed him to take care of the problem "off the radar." Plaintiff allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that supports Plaintiff's claims. *See Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Additionally, the information is relevant to the ratification claim where Jones was not terminated, but instead retired from eBay in December of 2020.

5. Discovery relating to Defendant Baugh (from eBay)

Plaintiffs request the following discovery with respect to Defendant Baugh:

1)  Any and all interviews, including notes of interviews with Defendant Baugh;

---

[5] Jones was not named in the original Complaint and according to the USAO, she was not investigated. The USAO made no requests for her interviews from eBay, and did not seek to interview her during its investigation.

    2) Any and all phone extractions;

    3) Any and all emails for Defendant Baugh reviewed during the investigation;

    4) Personnel file.

Defendants eBay, Wenig and Wymer have alleged that Defendant Baugh was a rogue employee, and that he went off the rails without their knowledge of his plan. Defendant Baugh, however, has alleged in his criminal filings that eBay specifically hired him due to his work with the federal government, including the FBI and CIA. Baugh stated the following with respect to his past experience, and eBay's express knowledge and interest in his experience for use on its behalf in the security department:

> [W]hile working as a private security contractor, Mr. Baugh was enlisted from time to time by U.S. government agencies, via a 'handler' from the FBI, to conduct and assist those agencies with certain covert operations. These activities involved conducting physical and electronic surveillance, engaging in physical trespass, using false pretenses and fake identities, and gaining unauthorized access to private corporate computer systems, documentation, resources, all in support of certain national security objectives.
> …
> Mr. Baugh was consistently instructed by his FBI handler to stick with his false 'cover story' if confronted or questioned by local law enforcement or corporate representatives about his actions in connection with these covert government operations.
> …
> eBay executives were well aware of Mr. Baugh's background, and they expected he would use strategies and tactics he learned in service of the U.S. government to address what they characterized as the existential threat posed by the Newsletter. eBay General Counsel, Marie Huber, had advised executives and Mr. Baugh that ordinary legal tools were unlikely to be effective in addressing issues posed by the Newsletter and a Twitter account believed to be associated with the Victims. Executives therefore turned to Mr. Baugh to solve the problem by less conventional means.

(A80-81).

As alleged by Defendants, eBay, Wenig and Wymer, Defendant Baugh was the ringleader, and the buck stopped with him as to the criminal conduct. Defendant Baugh's

communications with Defendant Wenig, Defendant Wymer, and Wendy Jones and any other person involved are directly relevant to the claims in the Complaint against the C-Suite Executives, and potentially may lead to additional information to include Wendy Jones – Defendant Baugh's direct supervisor – as a Defendant. Moreover, his interviews are necessary in order to assess the full scope of the involvement of the Defendants Wenig and Wymer, who disclaim any involvement in the activities that form the basis of Plaintiffs' Complaint.

Additionally, Defendant Baugh's personnel file is relevant to determine what the C-Suite Executives and the Board of Directors knew about Defendant Baugh's background at the time of his hiring and promotion. This information is relevant to determine whether the acts charged in the Complaint were foreseeable to Defendants Wenig and Wymer, and whether there was negligent hiring, supervision or oversight.

Defendant Baugh is the link between his subordinates who carried out the acts, and Defendants Wenig and Wymer, who directed the acts. Defendants Wenig and Wymer still maintain Defendant Baugh and the others' acts were not foreseeable, so Defendant Baugh's interviews and his communications with all members of the conspiracy "may provide the missing link." *See Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012). Moreover, Defendant Baugh's personnel file is relevant to determine just what eBay and the C-Suite executives knew about Baugh at the time of hiring, the time of his promotion, and throughout the criminal acts.  At this point, Plaintiffs have alleged "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that supports Plaintiff's claims. *See Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

6. <u>PFC/Expense Report Information (from both eBay and PFC)</u>

1) Any and all expense records submitted by Defendants Zea or any other PFC employee working for eBay from April of 2019 through September of 2019;

2) Any and all invoices, receipts, and credit card statements submitted by PFC to eBay from April of 2019 through September of 2019;

3) Any and all expense records approved by eBay and submitted by PFC from April of 2019 through September of 2019; and

4) Contract between PFC and eBay.

PFC contracted with eBay to provide security staff to the Global Security and Resiliency Department after Defendant Baugh fired Concentric Advisors. Defendant Baugh had a long-standing, decades-long friendship with Steven Krystek, one of the owners of PFC. Plaintiffs have set forth claims against PFC both on the theory of respondeat superior because Defendant Zea was a PFC employee and was involved in each of the acts alleged in the Complaint, and also Plaintiffs assert a RICO claim involving an enterprise between PFC and eBay.

While PFC has disclaimed any involvement in the acts set forth in the Complaint, on information and belief, PFC funded the campaign and also fostered an environment to cause the events. Plaintiffs are seeking discovery which will supply information towards this end, including the contract between PFC and eBay.

Defendants Baugh, Harville and others used Defendant Zea's PFC credit card to purchase plane tickets, book the hotel in Boston, and purchase other items in furtherance of the campaign to stalk, terrorize and harass the Steiners. PFC would bill eBay for any expenses, and would receipt reimbursement as well a 5% markup. The expense reports

were reviewed by both eBay and PFC. According to the contract between eBay and PFC, however, airline tickets and other expenses were supposed to go through eBay, not PFC.

Moreover, eBay was PFC's biggest contract, which was initially $4 million. PFC secured the contract because Defendant Baugh was friends with the CEO of PFC, and sought a company he could use for his security team that would grant him carte blanche authority to oversee the contractors. After eBay hired the company for its security contractors, PFC hired a number of employees, and significantly expanded their staff.  Just before the Natick incident, Defendant Zea's credit card limit was increased to $20,000.00.

The expense records requested were submitted by eBay to the USAO during the course of the criminal investigation. On October 9, 2019, eBay produced to the USAO "expense records." Then, on October 18 and October 25, eBay produced to the USAO "expensive reimbursements" and "expense and travel reports." (A22).

The requested discovery "may provide the missing link" between the claims alleged in the Complaint and PFC. *See Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012). Plaintiffs have alleged "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that supports Plaintiff's claims, in order to attempt to establish PFC funded the campaign and was a part of the RICO enterprise. *See Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

       7.    <u>Training Materials (from eBay)</u>

       a.   Training manuals for employees, including security department

       b.   Any training manuals used to train each Defendant, or provided to any of the Defendants

The requested discovery is relevant to determine whether there is a basis to include a negligent hiring, supervision, training and/or oversight claim to the forthcoming amended Complaint, and will provide the "missing link" between those in the C-Suite, and the Defendants who carried out the acts.

8.  <u>Any discovery produced in criminal case to any defendant (from each criminal defendant)</u>

During the criminal prosecutions of Defendants Baugh and Harville, the USAO produced discovery it received from eBay and the Natick Police during the investigation. The USAO produced the mandatory discovery to the defendants on December 21, 2020, and reported to the Court on March 8, 2021 that the government had completed all automatic discovery.

This discovery is directly relevant to each individual defendants' role in the acts, and will provide the missing link between the Plaintiffs claims set forth in the Complaint and the Defendants. *See Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012); *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

9.  <u>Board of Directors Information (from eBay)</u>

Plaintiffs request the following discovery with respect to the Board of Directors, both to support the ratification claim against eBay, and to determine whether any of the Board of Directors are viable Defendants due to either ratification, gross negligence, failure to provide oversight:

1)  Board of Directors minutes, notes, memoranda from April of 2019 through March of 2021;

2)  Board of Directors information and reporting system and controls in 2019;

3) Board of Directors method of oversight of CEO of eBay in 2019;

4) Memorandum, notes, logs, topics discussed including whether Steiners were discussed for all meetings with CEO from April of 2019 through March of 2021;

5) Any and all minutes where the decision to hire PFC as a contracting agency was discussed; and

6) Any and all communications and reports and/or notes of interviews with Wendy Jones; Defendant Wenig; Defendant Wymer; and Defendant Baugh relating to the Natick events.

As alleged by each of the Defendants in the criminal proceedings, in addition to the acts against the Steiners, eBay and the Security Department harbored a party atmosphere, including drinking on the premises, starting in the morning hours and going into the late evening hours. Moreover, Defendants Popp and Stockwell alleged that Defendant Baugh raped and sexually assaulted them, and Zea outlined extensive examples of a hostile work environment within the office. Defendant Baugh had a habit of firing staff on a whim, and hired mostly young impressionable women. This was apparently known to the C-Suite Executives where they referred to the women Defendant Baugh hired, harassed, and assaulted as "Jim's Angels."

Moreover, while Defendant Wymer was hired as Senior Vice President and Chief Communications Officer of eBay, eBay noted in its PowerPoint presentation to the USAO that Defendant Wymer was "inexperienced."

The Board of Directors' role in hiring the individuals involved in the acts set forth in the Complaint, what they knew before the individuals were hired, and what they knew

while the planning and conspiracy were ongoing are all relevant to potential claims relating

to the Board of Directors' duty of oversight. The discovery is necessary and Plaintiffs have

alleged "enough fact[s] to raise a reasonable expectation that discovery will reveal

evidence" that supports Plaintiff's potential claims. *See Parker v. Landry*, 935 F.3d 9, 18

(1st Cir. 2019); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## **CONCLUSION**

Wherefore, Plaintiffs respectfully request that this Court grant the limited

discovery, as requested, prior to Plaintiffs amending the Complaint.

Respectfully submitted,
INA AND DAVID STEINER
By their attorney,

/s/ Rosemary Curran Scapicchio
Rosemary C. Scapicchio, BBO No. 558312
Law Office of Rosemary Scapicchio
107 Union Wharf
Boston, MA 02109
617.263.7400
Rosemary@Scapicchiolaw.com

Respectfully submitted,
STEINER ASSOCIATES, LLC
By its attorney,

/s/ Jillise McDonough
Jillise McDonough, BBO No. 688694
Law Office of Jillise McDonough
107 Union Wharf
Boston, MA 02109
617.263.7400
Jillise@Scapicchiolaw.com

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

Pursuant to Local Rule 7.1(a)(2), the undersigned counsel certifies that counsel for Plaintiffs conferred with counsel for each Defendant regarding this motion. Defendants Jim Baugh and Veronica Zea assent to this motion. Defendant Popp takes no position on this motion. The following Defendants object to this motion: (1) Defendant eBay; (2) Defendant PFC; (3) Defendant Devin Wenig; (4) Defendant Steven Wymer; (5) Defendant David Harville; (6) Defendant Brian Gilbert; (7) Defendant Philip Cooke; (8) and Defendant Stephanie Stockwell.

Dated:    February 13, 2023                    Signed: /s/ Rosemary Scapicchio


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party and upon any party appearing pro se by complying with this Court's directives on electronic filing.

Dated:    February 13, 2023                    Signed: /s/ Rosemary Scapicchio