**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF MASSACHUSETTS**

Ina Steiner,                                    |
David Steiner,                                  |
Steiner Associates, LLC,                        |
          (*Publisher of EcommerceBytes*)       |          CASE NO: 1:21-cv-11181-PBS
                    Plaintiffs                   |
                                                |
                                                |
          vs.                                   |          FIRST AMENDED COMPLAINT
                                                |
                                                |
eBay, Inc.,                                     |
Progressive F.O.R.C.E.Concepts, LLC             |
Devin Wenig,                                    |
Steve Wymer,                                    |
Wendy Jones,                                    |
Steve Krystek,                                  |
Jim Baugh,                                      |
David Harville,                                 |
Brian Gilbert,                                  |
Stephanie Popp,                                 |
Stephanie Stockwell,                            |
Veronica Zea,                                   |
Philip Cooke,                                   |
John and Jane DOE,                              |
                    Defendants                   |

## INTRODUCTION

1.      eBay, a multinational *Fortune 500* Company with a market value of over $48 billion,

        engaged in a systematic campaign to emotionally and psychologically torture Ina and

        David Steiner, the two-person team behind a small ecommerce trade publication,

        EcommerceBytes. eBay, along with Progressive F.O.R.C.E Concepts, LLC, (hereinafter

        "PFC") engaged in a coordinated effort to intimidate, threaten to kill, torture, terrorize,

        stalk and silence the Steiners, in order to stifle their reporting on eBay.

1

2.      Ina and David Steiner, a married couple living in Natick, Massachusetts, operate
        EcommerceBytes, a trade publication where the Steiners report about various ecommerce
        companies, including eBay, in an effort to assist ecommerce sellers. The Steiners provide
        factually based reporting on the inner-workings of various ecommerce companies, to
        keep subscribers and readership for their trade publication – many of whom are eBay
        sellers – up to date and informed.

3.      Defendant Devin Wenig, then Chief Executive Officer of eBay, Defendant Steven
        Wymer, then Senior Vice President and Chief Communications Officer of eBay, and
        Defendant Wendy Jones, then Senior Vice President of Global Operations, consistently
        tracked EcommerceBytes' reporting, and became increasingly enraged by what they
        perceived as the Steiners' negative coverage of eBay and the upper echelons of the
        corporation.

4.      eBay, through its Chief Executive leadership, Defendants Wenig, Wymer and Jones, sent
        a directive and enlisted at least seven members of the eBay security staff: Defendants Jim
        Baugh, David Harville, Brian Gilbert, Stephanie Popp, Stephanie Stockwell, Philip
        Cooke, and Veronica Zea, an eBay contractor employed by Defendant PFC through
        Defendant Krysek. All knew of and approved the plan to deal with the Steiners.
        Defendants Wenig, Wymer and Jones provided the other Defendants with carte blanche
        authority – with the support of Defendants PFC and Krystek – to terminate the reporting
        of the Steiners by whatever means necessary, with Defendant Wymer expressing "…I
        want to see ashes. As long as it takes. Whatever it takes." Defendant Wymer promised
        the Defendants he would, "embrace managing any bad fallout" if the plan went south,
        further directing, "We need to STOP her." Defendant Jones instructed Defendant Baugh

to take care of it "off the radar," and said she did not want to know the details but to "sync with" Defendant Wymer. All of the horrific, vicious and sickening conduct that followed was committed by employees of eBay and PFC, while acting in the scope of their employment under the authority of and for the benefit of Defendants eBay, PFC and Krystek.

5.    The events that followed shock the conscience, and demonstrate the utter depths eBay and PFC would stoop to in order to take the Steiners down and end their reporting on eBay. Starting with an online intimidation campaign, the Defendants taunted Ina Steiner using a phony Twitter handle pretending to be an eBay seller, and directly threatened her to stop reporting on eBay. The online attacks continued to escalate into threatening and disturbing package deliveries, which included live spiders, cockroaches, a bloody pig mask, a funeral wreath, and a book entitled "Grief Diaries: Surviving Loss of a Spouse" sent directly to David Steiner. These messages and deliveries often were accompanied by ominous simultaneous Twitter messages such as "do I have your attention now, cunt?" Shockingly graphic and vulgar messages, such as "U are sick motha fuckers…and every one will kno! U fuckin cunt ass bitch!" paired with taunting emails and deliveries, including pornography and "Hustler: Barely Legal" magazines sent to the Steiner's neighbors' home in David Steiner's name, to defame the Steiners and attempt to disgrace and reputationally harm the Steiners and EcommerceBytes, and tarnish their name within the community.

6.    After several days of around the clock threatening and vulgar emails, packages and online messages, Defendants Wenig and Wymer's henchmen, including Defendants Baugh, Harville and Zea, and later Popp, traveled over 3,000 miles from California to Natick,

Massachusetts to continue the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners.

7.      The Defendants, including but not limited to Defendants Baugh, Zea and Harville, carrying out the orders of eBay senior executives, menacingly stalked and tailed the Steiners in a black van and other rental vehicles, repeatedly circling the block, tracking their every move, and following David Steiner when he left the residence. The Defendants even went as far as to attempt to break into the Steiner garage in order to install a GPS tracking device on their vehicle. The Defendants, including but not limited to Baugh, Harville and Zea, had practiced installing a tracking device on a similar vehicle in California, in an eBay parking lot, for this specific purpose.

8.      Simultaneously, the Defendants who remained in California, including but not limited to Defendants Popp, Stockwell, Cooke and Gilbert, continued with the online threats and stalking, and their menacing skull avatar Twitter handle began publicly posting the Steiners' home address on Twitter along with threats to kill the Steiners. The Defendants also posted the Steiner's address on Craigslist and other websites, inviting strangers to the Steiners' home for sex parties, and advertising yard sales, announcing that would-be visitors should knock on the door at all hours because "Everything must go!"

9.      Fearing for their lives, the Steiners installed surveillance cameras to monitor anyone approaching their home. The Steiners manned the surveillance footage at all hours of the day and night, and stayed in separate bedrooms so that if any of the Defendants broke into their home or attacked one of the Steiners, the other could escape and call for help. The Steiners were prisoners in their own home.

10.     The Steiners were paralyzed with fear. Because Ina Steiner was the target of the threats,

she was confined to her house from August 6, 2019 until the last week of August. Their

calls to the local police grew more frequent, which Defendants Zea and Popp, at the

direction of Defendant Baugh, with the support of Defendants PFC and Krystek,

monitored with a police scanner in an attempt to stay one step ahead of both the Steiners

and any law enforcement.  The Defendants knew the panic and fear they were inflicting on

the Steiners by carrying out Defendants Wenig, Wymer and Jones's plan, which only

fueled their fire: they praised one another that their "work" was accomplishing their goal

of intimidating, threatening, torturing, terrorizing, stalking and silencing the Steiners.  The

Defendants callously joked that the Steiners were "seeing ghosts, think everyone is

following them and they call the police every 10 minutes," and "We know the targets have

been impacted by this op." Despite recognizing the mental and emotional anguish the

Defendants were inflicting, the Defendants continued to persist with the conspiracy to

intimidate, threaten, torture, terrorize, stalk and silence the Steiners, funded by Defendant

PFC, with the assistance of Defendant Krystek.

11.     Once the Defendants realized that the Natick Police Department ("NPD") was

investigating the conspiracy, the Defendants plotted to destroy evidence, mislead the

criminal investigation, and divert attention away from eBay to protect the company and its

C-Suite, fully expecting that eBay and its executives would provide "top cover" resources

for them to get away with their crimes. Defendant Baugh called a meeting and directed the

others to delete all communications and evidence relating to the scheme, and the

Defendants persistently lied to investigators and fabricated evidence. Their cover-up

attempts included efforts to create a fake dossier, and a phony "persons of interest" file on

the Steiners to make them appear crazy, and ensure the Defendants could deflect their own blame when interacting with law enforcement.

12.  Ultimately, Defendants Cooke, Gilbert, Popp, Stockwell and Zea pled guilty to an Information in Federal District Court, District of Massachusetts, and Defendants Baugh and Harville were indicted, as a result of Defendants' conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, and for misleading and tampering with the investigation.

13.  Defendant Wymer's employment was terminated by eBay. While Defendant Wymer was hired as Senior Vice President and Chief Communications Officer of eBay, eBay noted after this incident that Defendant Wymer was "inexperienced" and too "green" to push back against Defendant Wenig and his tone. Defendant eBay also found that with his conduct, he hoped to curry favor with Defendant Wenig, demonstrating that this conspiracy began at the very top echelon, with the CEO, Defendant Wenig.

14.  Chief Executive Officer Defendant Wenig departed eBay with a $57 million severance package. Defendant Jones retired in December of 2020 after the criminal indictments were issued, with a compensation package of over $16 million.

15.  At all times relevant to this Complaint, the individually named Defendants were acting in concert with one another, as agents and employees of eBay and/or PFC, within the scope of their employment with the intent to benefit their employers in furtherance of eBay's direct command – through Chief Executive Officer Defendant Wenig, Senior Vice President Chief Communications Officer Defendant Wymer and Senior Vice President of Global Operations Defendant Wendy Jones – to silence the Steiners and their reporting, and all actions taken were in furtherance of that goal. When Defendants Baugh, Harville,

Gilbert, Cooke, Popp, Stockwell, and others were carrying out the directives of Defendants Wenig, Wymer and Jones, all were acting within the scope of their employment with and for the benefit of eBay. Defendant Zea was employed by Defendant PFC and contracted with eBay, and was acting within the scope of her employment with PFC with the assistance of Defendant Krystek when carrying out Defendants Wenig, Wymer and Jones' directives. Other Jane and John DOE Defendants were either employed by eBay, or contracted by eBay through PFC; in carrying out the directives of Defendants Wenig and Wymer, they were acting within the scope of their employment.

16.    eBay and PFC's conspiracy – through its employees and contractors – to intimidate, threaten, torture, terrorize, stalk and silence the Steiners was successful and harmful. As a natural and foreseeable consequence of Defendants' coordinated efforts, Defendants' conduct has had a devastating effect on the emotional and mental well-being of David and Ina Steiner, causing permanent harm. The unrelenting stream of threats to kill, disturbing deliveries, as well as the physical surveillance caused the Steiners to suffer from significant and continuing emotional distress, including but not limited to, headaches, anxiety, panic attacks, persistent and debilitating concerns about their physical safety, habitual insomnia, embarrassment, humiliation, shame and perpetual fear that they are being followed and tracked, all of which suffering continues now and will continue in the future. David Steiner also suffered physical harm where the acts exasperated his Essential tremor and arthritis, causing him instability and pain when he stands and walks, and chest pains which cause him to feel as though he is having a heart attack. Ina Steiner has been diagnosed with depression and PTSD. The conduct of the Defendants has also defamed the Steiners and EcommerceBytes' names within the community, and online.

17.     The conspiracy also caused harm to EcommerceBytes because the Defendants' actions have had a chilling effect on EcommerceBytes' ability to report on eBay, where the conspiracy has caused would-be sources and customers to avoid further dealings with the Steiners for fear that they will become eBay's next victims. Moreover, at the time of this conspiracy, the Steiners and EcommerceBytes were a leading source of ecommerce information and data nationwide, but the conduct of eBay and PFC has had a stifling effect on their reporting, and hampered current and future business growth. EcommerceBytes' business revenue has decreased by 64% in the past two years, and the Steiners are no longer able to live off of EcommerceBytes alone. As a result, David Steiner has been forced to take Social Security at 62, rather than 66 and 10 months, when he would have received full benefits. This will impact the Steiners' income for the remainder of their lives.

18.     The Steiners bring this action to put an end to the Defendants' conspiracy and the violation of their state and Constitutional rights, including but not limited to freedom of speech and press, to ensure that such harassment does not again happen to them or any other journalists, to seek redress for the significant emotional, mental, physical and economic harm it has caused, and to seek to become whole again as a result of the damage to their business and reputation.

## JURISDICTION AND VENUE

19.     This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendants are citizens of different states, and the amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs. Plaintiffs David and Ina Steiner are both citizens of Massachusetts. On information

and belief, Defendants Wenig, Wymer, Baugh, Harville, Gilbert, Popp, Stockwell, Zea, and Cooke are all citizens of California. On information and belief, Defendant Jones is a citizen of Maryland. On information and belief, Defendant Krystek is a citizen of Nevada. eBay is incorporated in Delaware, and its principal place of business is in California. PFC is incorporated in Nevada, and its principal place of business is in Las Vegas, Nevada.

20.     This Court may exercise supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

21.     This Court has personal jurisdiction over Defendants pursuant to M.G.L. c. 223A, § 3(a) and (c), because the Defendants caused tortious injury in this Commonwealth by acts committed outside of Massachusetts where eBay regularly transacts business in Massachusetts, and the Defendants caused tortious injury by acts in this Commonwealth and in California. PFC caused tortious injury by acts in this Commonwealth and in California. Defendants committed intentional torts purposefully directed at Plaintiffs, residents of Massachusetts, with knowledge that their actions would harm and cause Plaintiffs emotional and economic injury in their home state of Massachusetts.

22.     Venue is proper in the District Court of Massachusetts pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred in Massachusetts.

**THE PARTIES**[1]

23.   Plaintiffs Ina and David Steiner are citizens of Massachusetts, residing in Natick,

       Massachusetts, and own and operate Steiner Associates, LLC.

24.   Steiner Associates, LLC is the publisher for EcommerceBytes, a leading trade publication

       for ecommerce information. Steiner Associates, LLC has a principal place of business in

       Natick, Massachusetts, and has been operating since 1999.

25.   Defendant eBay, Inc. is a Delaware corporation with its principal place of business in San

       Jose, California.

26.   eBay is a multinational ecommerce corporation that facilitates online sellers and buyers

       through its website. In 2022, eBay ranked 301 in the *Fortune 500* with a market value of

       over $48 billion and over 13,000 employees worldwide.

27.   Defendant PFC is a Limited Liability Company with its principal place of business in Las

       Vegas, Nevada. On information and belief, PFC has five separate companies operating

       under its umbrella: (1) training in armed and unarmed self-defense, including firearm

       training; (2) consulting services; (3) an online store selling tactical products and

       equipment; (4) a Crossfit gym; and (5) Skypointe Concierge, a concierge firm that

       provides "unique services." Upon information and belief, eBay hired PFC in January of

       2019. PFC hired analysts for eBay, and paid their salaries, including but not limited to

       Defendant Zea, and John and Jane DOE.

28.   Defendant Devin Wenig, eBay's former Chief Executive Officer of eBay, upon

       information and belief, resides in Los Altos Hills, California and holds a Juris Doctor

---

[1] The Plaintiffs reserve their right to amend this Complaint and add additional parties and claims
as discovery progresses.

from Columbia Law School. Defendant Wenig is admitted to the bar in New York, and his membership is active.

29.    Defendant Steve Wymer, eBay's former Senior Vice President and Chief Communications Officer of eBay, upon information and belief, resides in California. According to eBay, Defendant Wymer oversaw "company reputation."

30.    Defendant Wendy Jones, former Senior Vice President of Global Operations, was running the Global Security and Resiliency organizations. At all relevant times of this Complaint, Defendant Jones was Defendant Baugh's direct report. On information and belief, she resides in Maryland. Defendant Jones retired from eBay in December of 2020.

31.    Defendant Steve Krystek is the CEO of PFC, and was the CEO at all relevant times of this Complaint. On information and belief, Defendant Krystek resides in Las Vegas, Nevada.

32.    Defendant Jim Baugh is an individual who, on information and belief, is in Federal Prison in Montgomery, Alabama, after pleading guilty to the criminal indictments for (1) conspiracy to commit stalking through interstate travel; (2) stalking through interstate travel; (3) stalking through facilities of interstate commerce, aiding and abetting; (4) witness tampering; and (5) destruction, alteration, and falsification of records in a federal investigation, aiding and abetting. He is serving a 57-month sentence. At the relevant times in this complaint, he was eBay's Senior Director of Safety & Security in charge of its Global Security and Resiliency business.  At the time of these events, eBay paid Defendant Baugh over $275,000 per year, plus a bonus.  Defendant Baugh reported directly to Defendant Jones.

33.  Defendant Brian Gilbert who, on information and belief, resides in San Jose, California,
     was Senior Manager of Special Operations for eBay's Global Security Team. Defendant
     Gilbert pled guilty to the criminal indictments for (1) conspiracy to commit stalking; and
     (2) conspiracy to tamper with a witness, and is awaiting sentencing.  Defendant Gilbert
     was responsible for executive protection, special events security and safety at eBay's
     North American offices. Defendant Gilbert is a former police captain in Santa Clara,
     California.

34.  Defendant Stephanie Popp is an individual who, on information and belief, is in Federal
     Prison in Lexington, Kentucky, after pleading guilty to the criminal complaint for (1)
     conspiracy to commit stalking; and (2) conspiracy to tamper with a witness. She is
     serving a sentence of one year to one year and a day. At the relevant times in this
     complaint, she served as Senior Manager of the Global Intelligence Center ("GIC"),
     which was an intelligence and analytics group within GSR that supported eBay's security
     operations.

35.  Defendant Stephanie Stockwell is an individual who, on information and belief, resides in
     Redwood City, California. She pled guilty to the criminal complaint for (1) conspiracy to
     commit stalking; and (2) conspiracy to tamper with a witness, and was sentenced to 24-
     months of probation, with the first year to be served on home confinement.  She was an
     intelligence analyst for PFC until May of 2019, when she was hired by eBay as manager
     of the GIC.

36.  Defendant David Harville is an individual who, on information and belief, is in Federal
     Prison in Atwater, California, after pleading guilty to the criminal indictments for (1)
     conspiracy to commit stalking through interstate travel; (2) stalking through facilities of

interstate commerce, aiding and abetting; (3) witness tampering; and (4) destruction, alteration, and falsification of records in a federal investigation, aiding and abetting. He is serving a 24-month sentence. He was the Director of Global Resiliency at eBay at all times relevant to this complaint.

37.     Defendant Philip Cooke is an individual who, on information and belief, resides in San Jose, California. He pled guilty to the criminal complaint for (1) conspiracy to commit stalking; and (2) conspiracy to tamper with a witness and was sentenced to 18 months in custody, and is currently on supervised release.  He was hired by eBay in April of 2019, and supervised security operations at eBay's offices in Europe and Asia. Defendant Cooke worked for PFC from April 2018 through October of 2018. Defendant Cooke is a former police captain in Santa Clara, California. On information and belief, Defendant Cooke was promoted by eBay in October of 2019 to Director.

38.     Defendant Veronica Zea is an individual who, on information and belief, resides in Santa Clara, California. She pled guilty to the criminal complaint for (1) conspiracy to commit stalking; and (2) conspiracy to tamper with a witness, and was sentenced to two years probation, with the first 12 months to be served on home confinement.  Defendant Zea was an eBay contractor who worked as an intelligence analyst in the GIC. Defendant PFC, upon information and belief, was paid by eBay during Defendant Zea's employment to serve as her manager throughout her placement at eBay.

39.     Jane and John DOE Defendants were employees of either eBay or PFC.

40.     Together, Defendants Baugh, Gilbert, Popp, Stockwell, Harville, Zea and Cooke make up some of the members of the eBay security division and, on information and belief, the entire team was a direct report eBay's head of security and operations, Defendant Jones,

who ultimately reported to Defendant Wenig. Defendant Wymer, on information and belief, was a direct report to Defendant Wenig. All Defendants were responsible for the intimidation, threats, torture, terrorization, stalking and silencing of the Steiners, acts that occurred during the scope of their employment. All took instructions, both directly and indirectly, from senior management of eBay.

41.    The aiding and abetting and/or the failure to intervene and/or prevent the acts of eBay, its employees and contractors, including but not limited to, Defendants Wenig, Wymer, Jones, Baugh, Harville, Krystek, Cooke, Gilbert, Popp, Stockwell and Zea give rise to liability on the part of other DOE Defendants.

### THE FACTS

42.    In 1999, the Steiners started a trade publication – AuctionBytes which later transformed into EcommerceBytes – reporting on ecommerce companies to assist sellers in the very early days of internet commerce. From its beginnings, the trade publication was a key resource for sellers and businesses that sell items online, on a number of platforms, such as eBay and Amazon, and later Etsy and others. Plaintiff Ina Steiner serves as EcommerceBytes' reporter and editor. Plaintiff David Steiner, Ina's husband, is its publisher and is also a reporter for the trade publication.

43.    eBay has always been a frequent topic of reporting by EcommerceBytes. As a result, it has been a crucial resource for eBay sellers since the inception of the online marketplace. The Steiners' reporting was instrumental in developing a cohesive resource for buyers and sellers of ecommerce goods, with a stellar reputation of seller advocacy and information.

44.   Plaintiffs Ina and David Steiner and EcommerceBytes have enjoyed a stellar reputation as an unbiased and impartial reporting source in the ecommerce industry amongst the online community of merchants.

45.   Plaintiffs Ina and David Steiner and EcommerceBytes were early contributors to support the needs of ecommerce sellers and buyers, filling a void that exists between selling platforms and sellers and buyers. Ina Steiner is frequently quoted by major news organizations about eBay, online trading and Internet fraud including such publications as the *Wall Street Journal*, *New York Times*, *Smart Money Magazine*, and *Fortune Small Business*.

46.   Ina Steiner has also appeared on multiple television and radio programs to discuss ecommerce and the online-auction industry, including Public Radio's Marketplace, National Public Radio's On Point, eBay Radio, CNBC Squawk Box, CNN Anderson Cooper 360, CNBC's "Closing Bell with Maria Bartiromo," and Bloomberg Radio's Tomorrow Tonight.

47.   Ina Steiner created the Twitter account handle, @EcommerceBytes, to promote her reporting and provided the email, ina@EcommerceBytes.com, to allow users of the trade publication a means by which to communicate with her. More than 50 eBay executives and employees subscribed to the EcommerceBytes newsletter over the years, including high level management and public relations personnel.

48.   While eBay was an advocate and collaborator in EcommerceBytes' beginning days, even inviting the Steiners to interview executive team members and other employees and contractors, eBay executives under a new tutelage with Defendant Wenig took issue with the Steiners' reporting of eBay and its upper management. Resistance to the site, and its

reporting began in May of 2012, when eBay falsely accused and reported
EcommerceBytes as a phishing site. eBay later admitted its error and retracted its report.

49.     eBay employees also frequently used fake identities to post in the comment section below
EcommerceBytes news articles, but the IP addresses for the comments were associated
with eBay. This action was in violation of EcommerceBytes' user agreement. Oftentimes,
the comments were critical of the Steiners, EcommerceBytes, and attacked legitimate
commenters and users of the website.

50.     In January of 2019, an outside investor, Elliott Management, a hedge fund known for its
reputation in cutting costs and driving profits, bought a portion of eBay stock and sought
changes within the company. Defendants Wenig, Wymer, Jones, and other executive
leadership within eBay became increasingly concerned about declining market sales and
any perceived negative news coverage.

**eBay's Focus on EcommerceBytes & the Steiners & Intimidation Tactics to Stop Their
Reporting**

51.     EcommerceBytes was followed with interest by eBay executives, including Defendant
Jones, and eBay's public relations personnel.

52.     On or about January 2019, the executive leadership at eBay, including Defendants
Wenig, Wymer and Jones, expressed frustration with Ina Steiner's frequent reporting on
eBay. Defendant Baugh directed Defendant Stockwell, and later Defendant Zea, to
monitor the EcommerceBytes newsletter posts around the clock, and instructed them to
screenshot them and forward the posts to Defendant Baugh via WhatsApp, an encrypted
messaging application, on a real-time basis, day or night, any day of the week. This was
done to keep executive leadership, including Defendants Wenig, Wymer and Jones, up to
date on an immediate basis.

53.     Defendant Zea and other analysts were required to wake up every three hours to monitor whether there were any new EcommerceBytes or Twitter posts regarding eBay. Part of Defendant Zea's responsibilities were to draft summaries of all postings to send to Defendant Baugh, who in turn would send the summaries to Defendants Wenig, Wymer and Jones. Defendant Baugh would then provide Defendants Wenig, Wymer and Jones' feedback to Defendant Zea, and inform her the executives relayed she was doing a good job, and "That's the kind of stuff we're looking for." The updates would amp up Defendants Wenig, Wymer and Jones even further, and fuel their contempt for the trade publication.

54.     Defendant Baugh had weekly meetings with Defendant Jones, every Wednesday, in order to update her on their subordinates. A frequent topic of these meetings was the Steiners, EcommerceBytes, and the Twitter postings regarding eBay.

55.     EcommerceBytes allowed its readers the opportunity to leave comments below the articles. Oftentimes in articles relating to eBay, the anonymous comments were critical of eBay, in general, and of its executive leadership, in particular.

56.     One commenter of the publication, in particular, who was best known by his handle "Fidomaster," (LKA UnsuckeBay) expressed negative opinions regarding eBay.

57.     With no evidence of a connection, senior members of eBay's Security Division, including Defendants Baugh, Harville and Gilbert, wrongfully concluded there was a relationship between the Steiners and Fidomaster.

58.     On March 21, 2019, eBay employee Marc Rome emailed General Counsel Marie Huber and Molly Finn about a Fidomaster tweet and asked, "I assume we don't know who is behind the account?" General Counsel Huber forwarded Rome's email to Defendant

Baugh with the message "Jim, can you give us as much info as possible on whose account this is?"

59.     Later than same morning, Huber emailed Defendant Baugh instructing him to notify her of all relevant online activity. She also inquired about a Twitter handle in the name of Jesse Cohn, a representative of Elliot Management on the eBay Board, and asked Defendant Baugh whether there was any way to find out who was behind the "Blind handle."

60.     In April or May of 2019, Defendant Baugh held a meeting with the other Defendants, including Defendants Stockwell and Zea, and other members of GSR where he discussed sending a fake threatening letter to the Steiners, with a post-stamp making it appear as if the letter came from a disgruntled seller in Texas.

61.     On April 10, 2019, Defendant Wenig sent a text to Defendant Wymer that linked to an article in which Ina Steiner observed that Defendant Wenig's $18 million compensation was 152 times that of an average eBay employee. Defendant Wymer replied, "[w]e are going to crush this lady."

62.     On April 20, 2019, when discussing the Wall Street Journal coverage on eBay, Defendant Wenig texted to Defendant Wymer, "[f]uck them. The journal is next on the list after [Ina Steiner]."

63.     On or about May 22, 2019, Plaintiff Ina Steiner reported that eBay had built on its campus an expensive replica of Walkers West, a popular Manhattan bar, and noted that no expense had been spared. Fidomaster tweeted a link to Ina Steiner's article and criticized Defendant Wenig for undertaking such a lavish project while eBay was experiencing cost reductions, layoffs and scrutiny by activist investors.

64.     On May 23, 2019, Defendants Wymer, Jones and Baugh discussed the article via email.
        The information in the EcommerceBytes article was obtained from a building
        contractor's website, so they had the contractor remove the information from its website.
        Defendant Jones asked Defendant Baugh to "huddle on this at lunch please today."

65.     During Defendant Jones and Defendant Baugh's lunch meeting, Defendant Jones asked
        Defendant Baugh if he could find a way to deal with the issue "off the radar since comms
        and legal couldn't handle it." Jones added, "Just get it done. I don't want to know the
        details, just make sure you sync with Wymer." After the lunch meeting, Defendant Baugh
        provided regular updates to Defendant Jones.

66.     On May 31, 2019, Defendant Wymer discussed an article with Defendant Wenig where
        Ina Steiner indicated Defendant Wenig "promised to give sellers greater protection,"
        which Defendant Wymer noted was "[s]hockingly reasonable." Defendant Wenig
        responded, "I couldn't care less what she says, then seconds later added, "[t]ake her
        down."

67.     In June of 2019, Defendant Zea and another eBay security analyst, Michelle Alford were
        tasked with attending a training on the "Reid Technique of Interviewing and
        Interrogation." Around the time of this training, Defendants Baugh and Stockwell
        approached Defendant Zea about a "project" they were working on regarding the
        Steiners. At first, it appeared to be a typical look into the background of a Persons of
        Interest, and Defendant Zea and others already had Google alerts set up to receive emails
        about their articles.

68.     In June of 2019, Defendant Baugh also met with Defendants Popp and Zea about a
        Steiner "op."

69.  Around this same time, in June of 2019, executives, including Defendants Wenig and Wymer, retained a consultant firm.

70.  The consultant firm produced a report "Next Steps: Alternative Digital Methods for Reducing Impact of [Ina Steiner] and [David Steiner] and [Ecommercebytes]." The report outlined strategies that would drive the Steiners' articles lower in search engine results to interfere with their reporting and to negatively impact EcommerceBytes.

71.  Absent any evidence, the Defendants, including but not limited to Defendants Baugh, Harville and Gilbert, wrongfully concluded the Steiners and Fidomaster were working together.

72.  In early June of 2019, Defendant Baugh placed a late-night "hang-up" phone call to the Steiner residence, intending to intimidate them.

73.  On or about June 8, 2019, acting within the scope of his employment and in an effort to carry out eBay's directive and goal to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, Defendant Gilbert, at Defendant Baugh's direction and with Defendant Jones' knowledge, flew cross country from California to Boston and drove to the Steiner's home in Natick, Massachusetts and scrawled the word "FIDOMASTER" on their fence. Defendant Gilbert entered the Steiners' property without right or privilege to do so. The Defendants entry onto the property was intentional and illegal. The Defendants did deface, mutilate, vandalize and injure the Steiners' property by scrawling "Fidomaster" on their fence.

74.  Defendant Gilbert, acting within the scope of his employment and at the direction of Defendants Baugh and Jones, also began reconnaissance into the Steiners' lives, attending a yard sale at the Steiner home falsely posing as a potential buyer to gain

intelligence so that eBay could carry out their conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, and interfere with their First Amendment and Article 16 rights.

75.    After Defendant Gilbert's trip to Natick, Defendant Baugh told Defendant Wymer that his team had given the Steiners "a tap on the shoulder." Defendant Wymer expressed approval but did not ask questions, as Defendant Jones had suggested.

76.    After Defendant Gilbert's trip to Natick in June of 2019 as part of the planned "op," the Defendants, including Defendants Wenig, Wymer, Jones, Baugh, Gilbert, Harville, Cooke, Popp, Stockwell and Zea, continued to track and monitor the Steiners and EcommerceBytes, as well as the Twitter accounts they believed were connected to the Steiners.

77.    On July 9, 2019, a Twitter user with the handle @LAclips tweeted @DevinWenig a complaint about the @unsuckEBAY account.

78.    The next day, July 10, 2019, Defendant Wenig emailed Huber and Defendant Wymer about the Unsuckebay Twitter account complaints by customers, where they discussed how Twitter would not take any action against the account.

79.    On July 15, 2019, Defendant Wymer forwarded the email thread to Defendant Baugh with the message, "FYI."

80.    On July 18, 2019, Defendant Wenig's wife texted Defendant Baugh privately about a comment below an EcommerceBytes newsletter, where a commenter called Defendant Wenig a "con artist and thief."  Defendant Wenig's wife wrote to Defendant Baugh, "Im not exactly thrilled with this post on my favorite [Newsletter]. The author gets people

worked up with the way she skews her stories. Don't tell [Defendant Wenig] I sent this I'm just letting you know about it. Ok?"

81.    On or about July 19, 2019, Defendant Baugh met with Defendant Jones and played a recorded call between a security team member using a false identity and a subject associated with Fidomaster. After hearing the recording, Defendant Jones "fist bumped" Defendant Baugh.

**<u>August 2019 & the Plan to Take Down EcommerceBytes & the Steiners to Stop Their Reporting</u>**

82.    On August 1, 2019, Ina Steiner published an article about the lawsuit eBay filed against Amazon. It was a short post that ended with Plaintiff Ina Steiner questioning Defendant Wenig's strategy in dealing with Amazon. Within a half hour of the article's posting, at 2:19pm, eBay through its CEO, Defendant Wenig, texted Defendant Wymer "[Ina] is out with a hot piece on the litigation. If we are ever going to take her down . . . now is the time." Defendant Wymer responded, "[o]n it." This cruel directive to take the Steiners' down would then travel down the chain of command at eBay, and the conspiracy that followed would be financed by Defendant PFC.

83.    It is no coincidence in time, Defendant Wenig issued the directive to take Ina Steiner down the same day he began sabbatical and travelled to Italy for the month, allowing him a measure of plausible deniability. Defendant Jones was on sabbatical during the same time period. Defendant Baugh informed the other members of the conspiracy that the problem had to be handled by the time Defendants Wenig and Jones returned from sabbatical, or eBay was going under.

84.    Not only did the article prompting the conspiracy directly involve Defendant Wenig in that it questioned his handling of Amazon, he set in motion the directives. As admitted to

by the criminal Defendants during their plea hearings, their actions were carried out to please "the boss," i.e. Defendant Wenig.

85.  Disseminating Defendant Wenig's orders, Defendant Wymer texted Defendant Baugh as Defendant Jones had ordered: "[h]atred is a sin" and "I am very sinful," to which Defendant Baugh replied that he was ready to escalate stating, "I'm not fucking around with her anymore." Defendant Wymer responded, "[a]men. I want her DONE." Defendant Baugh replied, "[Wenig] said to burn her to the ground correct?" Defendant Wymer wrote "[s]he is a biased troll who needs to get BURNED DOWN." Defendant Wymer assured Defendant Baugh that he would "embrace managing any bad fall out. We need to STOP her."

86.  When discussing the conspiracy, Defendant Wymer promised to "manage any bad fallout" from the Defendants' acts, making it clear that all Defendants would receive support and backing from the executive leadership at eBay regardless of the volatility or force used against the Steiners.



87.  "Plan B" in the above text message referred to a scheme to hire Samoan gang members to stalk, intimidate and harm and potentially kill the Steiners, where Defendant Baugh admitted once he involved the Samoan gangs it was out of his hands as to how they would handle the Steiners.

88.   Defendants Gilbert and Cooke had an ongoing relationship with several Samoan gang members as a result of their work with the Santa Clara Police Department. While working in that capacity, they investigated a Samoan gang, and also established relationships with Samoan confidential informants.

89.   In furtherance of "Plan B," Defendant Gilbert flew to Los Angeles and met with a Samoan gang member he knew from his time as a Captain with the Santa Clara Police Department and paid him $4,000.00 to carry out the plan, if needed. This appeared to be a contracted hit on the Steiners.

90.   Defendant Gilbert and Defendant Baugh informed other members of the conspiracy that the Samoan gang members were dangerous people, and that once they were enlisted, it was "out of their hands" and they could no longer control what happened.

91.   On August 6, 2019, Defendant Wenig received another complaint about @unsuckEBAY aka FidoMaster. He sent the following email to Huber, Defendant Wymer and Defendant Baugh: "First of all we should shut down the account. Second, this user name keeps popping up and causing all kinds of trouble. Might be worth some research Jim." Defendant Wymer responded that he had Defendant Baugh working on the issue.

92.   In the same email thread, Huber responded that legal remedies were not and would not be effective. Huber noted that the legal team had "escalated through legal channels at Twitter and they've said that this doesn't violate their policies. (He also harasses me and others.)." Huber ended by stating, "If we send a letter, the user could tweet it and create more cycles. Legally, we don't care about that, but don't know Steve if you do."

93.   Later that same day on August 6, 2019, Defendants Baugh, Gilbert, Cooke, Popp, Stockwell, Zea and others met in a conference room and discussed how to further

escalate the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners and stop their reporting, including plans to send unwanted and disturbing items to distract the Steiners from publishing the Newsletter.

94.     Defendant Baugh played a clip from the 1988 movie *Johnny Be Good*, in which two friends arranged for the delivery to their football coach's home of a series of unwanted items and people, including $283 in pizzas, an elephant, a male stripper, an exterminator, and Hare Krishna's missionaries. Defendant Baugh said he wanted to do the same to the Steiners and asked the Defendants, including but not limited to Defendants Popp and Stockwell, to brainstorm other things they could deliver to the Steiner residence to carry out the conspiracy to intimidate, threaten, torture and silence the Steiners. During this meeting there was a discussion about sending a coffin and a chain saw to the Steiner residence.

95.     After showing the clips, the Defendants discussed sending harassing and threatening packages to the Steiners, including a casket and sex workers Defendants Gilbert and Cooke knew through their work at the Santa Clara police department. They also discussed role play as a way to alarm Ina Steiner, surveilling the Steiners, and the potential use of a GPS device to aid in the surveillance.

96.     During the same meeting, Defendant Baugh shared messages from Defendant Wymer, and informed the other Defendants, including Popp, Gilbert and Cooke, that eBay, through Defendants Wenig, Wymer and Jones, sanctioned this conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners.

97.     Defendant Baugh informed Defendant Zea and other members of the conspiracy that General Counsel Huber instructed him to "do what you need to do," and that she had

given him the green light to use unconventional means to address the Steiners. Defendant eBay hired Defendant Baugh for his covert operation skills as a fixer when legal means failed to stop negative reporting on eBay.

98.     During the meeting, Defendants also discussed sending harassing Twitter messages to Ina Steiner so that she would be more receptive to eBay's assistance, and hopefully provide eBay with the identity of Fidomaster, falsely still believing the Steiners were behind the Fidomaster Twitter handle.

99.     To carry out the Twitter harassment, the Defendants decided on the Twitter handle @Tui_Elei and also discussed using a friendly persona, one that also had been created prior to the August 6th meeting, that the Steiners might respond to positively.

100.    Armed with directives from Defendants Wenig, Wymer and Jones, Defendant Baugh and the other Defendants, including Harville, Gilbert, Popp, Cooke, Stockwell and Zea, set in motion their conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners. As admitted by Defendants Gilbert, Popp, Stockwell and Zea during their plea hearings, the conspiracy was set in motion due to the communications between Defendants Wenig, Wymer, Jones and Baugh.

101.    After the meeting, Defendant Stockwell went to Best Buy and purchased a laptop to use in the harassment and intimidation campaign, which was financed by Defendant PFC with the approval of Defendant Krystek.

102.    The Defendants used Virtual Private Networks on the laptop so that their online acts could not be traced back to eBay.

103.    Defendant Popp, acting within the scope of her employment, created the Twitter account handle discussed during the August 6 meeting, @Tui_Elei (hereinafter "the Tui_Elei

Account"), and Defendant Baugh approved the image of a menacing skull for the account avatar to further intimidate the Steiners.

104.   The Defendants, including but not limited to Baugh, Gilbert, Cooke, Popp, Stockwell and Zea intimidated and threatened to kill the Steiners by sending and approving a series of anonymous tweets and Twitter direct messages to the Steiners to create an impression that there were eBay sellers who disapproved of EcommerceBytes' coverage of eBay. The Tweets were drafted by Defendant Popp, and shared via WhatsApp where they approved by other members of the conspiracy, including but not limited to Defendants Baugh, Cooke and Gilbert. The Defendants used WhatsApp throughout the conspiracy to discuss the plan, due to the encrypted nature of communications on the app.

105.   While Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell, and Zea were carrying out the plan, there were a flurry of emails throughout the day between Huber, Defendants Wenig, Wymer, Baugh, Jones, and others regarding the "eBay Imposter Twitter Account."

106.   At 11:59pm on August 6, 2019, @Tui_Elei sent the first Tweet: "Ina…What's your problem w/eBay? You know that's how we pay rent…"

107.   On August 7, 2019 at 2:23pm, @Tui_Elei Tweeted at Ina Steiner: "HELLO!!!!!!"

108.   That same day, General Counsel Huber, Defendant Wymer, and Defendant Baugh and others continued to remain in contact via email.

109.   At 3:39pm, Aaron Johnson from eBay legal sent an email to the group stating, "Steve [Wymer] – What's your thinking on this from a comms perspective? We've escalated at Twitter, but as noted, the legal claim is weak and Twitter is notoriously slow to respond…The other avenue is to go after Twitter directly with a cease & desist letter (if

we can find him/her). That also has a low likelihood of success and potential backfire (low risk). Given the strength of the claims and the cost, I'd strongly recommend against suing." Johnson finished the email by asking, "Jim – any news/developments on your end?"

110.    Defendant Wymer responded four minutes later that the website "gives [him] ulcers, harms employee moral [sic], and trickles into everything about our brand. I genuinely believe these people are acting out of malice and ANYTHING we can do to solve it should be explored. Somewhere, at some point, someone chose to let this slide. It has grown to a point that is absolutely unacceptable. It's the 'blind eye toward graffiti that turns into mayhem syndrome and I'm sick about it. Whatever. It. Takes."

111.    Shortly after Defendant Wymer's email to the group, Defendant Wymer met with Defendant Baugh. Defendant Wymer was very agitated, pointing his finger at Defendant Baugh as he spoke. Defendant Wymer instructed Defendant Baugh to take any actions necessary to neutralize the Steiners and identify FidoMaster, and that it was a "direct order" from the CEO, Defendant Wenig. Defendant Wymer indicated that he did not want to know the details but assured Defendant Baugh that his group would have "executive level support" if efforts led to "any legal problems." Defendant Wymer informed Defendant Baugh that Defendant Wenig "wants the website burned to the ground," and that the "only thing that matters is that it stops." Defendant Wymer stated that, "If it doesn't stop, we are all done" and that "eBay Corporate is willing to absorb any legal exposure," implying that Defendant eBay knew about the conspiracy and would pay any legal costs if they broke the law or violated any eBay employee regulation.

112.   Defendant Baugh shared the conversations he had with Defendant Wymer with
Defendants Cooke, Gilbert, Harville and Popp and told them, "I've been ordered to find
and destroy."

113.   The next day, on August 8, 2019, Defendant Zea purchased a prepaid phone and laptop at
Best Buy with cash in order to use during the campaign against the Steiners, using
Defendant PFC funds. Defendant Zea and another GIC analyst, while concealing their
appearances, also purchased debit cards with cash at a Safeway grocery store in Santa
Clara.

114.   Throughout that same day and into August 9, 2019, Plaintiff Ina and David Steiner's
email was flooded with over 53 email subscriptions they had never signed up for, which
were harmful to their reputation and terrifying upon receipt, including but not limited to:

| | | | |
|---|---|---|---|
| ☐ | Sin City Fetish Night | 2019/08/09 01:03 18.84 kB | Sin City Fetish Night Newsletter: Subscription Co... |
| ☐ | Vancouver Fetish Weekend | 2019/08/09 01:04 79.54 kB | Vancouver Fetish Weekend : tickets + password |
| ☐ | Banco Bradesco S/A. | 2019/08/09 00:16 3.74 kB | Comunicado Importante Bradesco,Resgate Seus |
| ☐ | Passional Boutique | 2019/08/09 01:01 11.43 kB | Thanks for subscribing! |
| ☐ | Diana ~ Recipes with Essential Oils | 2019/08/09 00:57 51.17 kB | Welcome to Recipes with Essential Oils! |
| ☐ | MJBizDaily | 2019/08/09 00:52 19.49 kB | [Required] Confirm Your Subscription Now |
| ☐ | Extra | 2019/08/09 00:51 3.74 kB | ACTION REQUIRED: Verify your submission to Ext |
| ☐ | <infowars-store@store.infowars.com> | 2019/08/09 00:47 20.57 kB | ALEX JONES INFOWARS S TORE: Confirm the sul |
| ☐ | FanSided Daily | 2019/08/09 00:49 7.06 kB | Confirm your subscription to FanSided Daily |
| ☐ | Center for Islamic Pluralism | 2019/08/09 00:45 7.37 kB | Action Required - Validation for the Center for Isla |
| ☐ | Donna Patterson | 2019/08/09 00:35 3.46 kB | Become A Bitcoin Billionaire with this done for yo |
| ☐ | Heather's IBS News | 2019/08/09 00:37 10.12 kB | Welcome to Heather's IBS Diet Cheat Sheet & Nev |
| ☐ | lunaKM | 2019/08/09 00:34 9.29 kB | Please Confirm Your Subscription to Submissive |
| ☐ | Gorgeousgetaways | 2019/08/09 00:31 19.96 kB | Gorgeousgetaways Newsletter: Subscription Con |
| ☐ | Cat Faeries | 2019/08/09 00:28 15.40 kB | Response necessary to complete subscription |
| ☐ | Dr. Bob Mizenga | 2019/08/09 00:24 17.51 kB | Welcome - the 3 Keys |
| ☐ | Lisa J. Pieretti | 2019/08/09 00:21 5.73 kB | SweatHelp Newsletter |
| ☐ | Vaping Post | 2019/08/09 00:13 5.39 kB | Confirm your subscription to Vaping Post |
| ☐ | info@celesteanddanielle.com | 2019/08/09 00:12 2.72 kB | Thank you for signing up! |
| ☐ | just_for_today Confirmation (from Lyris ListManager) | 2019/08/09 00:04 2.34 kB | Your confirmation is needed |
| ☐ | Communist Party | 2019/08/09 00:00 2.83 kB | Thank you! |
| ☐ | SpecificFeeds | 2019/08/08 23:58 19.64 kB | Please confirm your subscription to "Thesocialist |
| ☐ | The Satanic Temple | 2019/08/08 23:51 7.12 kB | Please confirm your membership |
| ☐ | Breitbart News | 2019/08/08 23:46 14.93 kB | Welcome to Breitbart News! |
| ☐ | Scientology Info | 2019/08/08 23:46 23.05 kB | Thanks for signing up! A few things to know... |
| ☐ | Mike Genung | 2019/08/08 23:40 6.09 kB | Important: confirm your subscription |

115.   The emails, which were signed up for by the Defendants in the Steiner's name, included
subscriptions to pornography, bondage, cadaver interest, sex toys and anthropornography.

116.   The Steiners never consented to have any Defendant use their identity or name.

117.   On August 9, 2019 – while the email subscriptions continued - @Tui_Elei Tweeted Ina Steiner at 1:15am: "WTF…whats it going to take for you to answer me??"

118.   At 2:01am, @Tui_Elei Tweeted, "I guess im goin to have to get ur attention another way bitch. . ."

119.   During the day on August 9, 2019, Defendant Baugh claimed during a conversation with Defendant Zea that there were strong indications the Steiners were funded by Elliot Management.

120.   At 2:49pm on August 9, 2019, @Tui_Elei Tweeted: "U don't have the balls to talk to me?? Stop hiding behind ur computer screen u fuckin cunt!!!"

121.   That same day the Defendants, acting in the scope of their employment with eBay and PFC, ordered a "Preserved Fetal Pig" to the Steiner residence, paid for by PFC.

122.   At around 3:00pm on August, 10, 2019, the Steiners received a phone call relating to the pig fetus order as part of an attempt to deliver the pig to the Steiner residence.



123.   The Defendants also ordered a Halloween mask of a bloody pig face from the movie SAW, delivered later that day on August 10, 2019 and paid for by Defendant PFC with the approval of Defendant Krystek. The mask was a trademark in the SAW movies, which became the last image each victim would see before they were abducted, tortured and killed.



124.    Fourteen minutes after the delivery, @Tui_Elei Tweeted, "DO I HAVE UR
        ATTENTION NOW????"

125.    Into that night and early morning hours of August 11, 2019, the Tweets continue:

        • "Ur fat pussy husband [David Steiner] needs to be put in line cunt"

        • "after he takes the plugs out of his asshole . . . fucking pussies!!!" at 2:10am

126.    After the relentless stream of Tweets, email subscriptions and packages that had already
        occurred, on August 11, 2019, in a text message to Defendant Baugh, Defendant Wymer
        ordered: "I want to see ashes. As long as it takes. Whatever it takes." The actions that
        followed were a natural and foreseeable consequence of the directive, and were
        committed by Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea
        during the scope of their employment, with eBay and PFC, respectively, for the benefit of
        eBay. The content of the text also suggests Defendant Baugh was keeping Defendant
        Wymer updated, as Defendant Jones had instructed Defendant Baugh to do.

127.    During the day on August 11, 2019 – in order to up the ante at Defendant Wymer's
        direction – Defendant Baugh directed Defendant Harville to travel with him to Boston for

an "op" targeting Ina Steiner and her website in an effort to intimidate her into stopping

her reporting on eBay.

128.   As the Defendants begin planning the "op" to Boston, the barrage of email subscriptions

and Tweets continue. At 8:56pm @Tui_Elei Tweeted, "U are sick motha fuckers . . . and

every one will kno! U fuckin cunt ass bitch!!"



129.   Feeling the pressure of Defendant Wymer's directive issued the day prior to do whatever

it takes, and gearing up for the "ops" trip to Natick, Defendant Baugh messaged the

group: "Starting now through Tuesday night double our effort on everything. Spam,

house deliveries, etc. I don't want anything delivered on Thursday, so the cutoff should

be Wednesday night – wake them up with a limo driver or something and then everything

goes cold Thursday morning. … Take down all Craigslist posts late Wednesday night.

Stop Spam late Wednesday night. etc." The constant deliveries and packages were paid

for by Defendant PFC.

130.   As a result, the emails subscriptions, Tweets and packages escalated on August 12, 2019.

Defendants, acting within the scope of their employment with eBay and PFC, threatened

to kill Ina by sending the book "Grief Diaries: Surviving Loss of a Spouse" to David

Steiner, paid for by Defendant PFC.



131.   @Tui_Elei also began Tweeting at EcommerceBytes publicly.

132.   On August 13, 2019, the Steiners received a call from a representative of Adam & Eve,

an adult sex toy store, because the Defendants falsely used the Steiners identity to sign

them up as potential franchise owners.

133.   On August 14, 2019, Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and

Zea, acting within the scope of their employment with Defendant eBay and Defendant

PFC through Defendant Krystek, sent a package from Carolina Biological Supply in

Burlington, North Carolina that contained fly larvae and live spiders and a box of

cockroaches from Dubai Roaches in Wichita, Kansas to the Steiners, paid for by PFC.

The package was ordered by Defendant Stockwell using a Protonmail account that was

specifically created for the conspiracy.



134.   The Steiners were terrified and feared for their lives.

135.  There was no question the conduct of all Defendants was significantly extreme and outrageous.

136.  In direct response to the intentional and malicious acts of the Defendants, and the conspiracy hatched by eBay and its senior management, including Defendants Wenig, Wymer and Jones, to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, the Steiners took steps to protect their personal safety and their home. Concerned about identity theft, fraud and financial mayhem, the Steiners froze their accounts with three the major credit agencies, adding to their economic suffering, and their loss of property. All Defendants intentionally or recklessly engaged in this outrageous conduct and/or aided and abetted in the conduct by directing the acts with the knowledge that the specific conduct was foreseeable.

137.  While the Steiners continued to receive email subscriptions and packages on August 14, 2019, Defendants Baugh, Harville, Zea, Gilbert and Popp met to discuss the "op" to Boston. During this meeting, the Defendants discussed the plan to install a GPS tracking device on the Steiners' vehicle. Defendant Baugh hung a map of Natick on the wall, and discussed surveillance planning. The attempt to secure a GPS device to the Steiners' vehicle was, in part, to facilitate the stalking and intimidation by the Samoan gang members, as was the use of a Twitter handle - @Tue_Elei – a Samoan "sounding" name, in order to perpetuate the guise that a Samoan individual was harassing the Steiners.

138.  After the meeting, Defendants Harville and Zea falsely registered for a software development conference – RedHat DevCon – that was being held in Boston in order to provide cover for the upcoming "ops" trip.

139.   Defendant Harville also downloaded an app to his phone that could be used to monitor the "Natick Police and Fire Live Audio Feed".

140.   Although they were admitted off the waitlist for the conference, neither Defendant Harville nor Defendant Zea ever attended the event, nor did they ever intend on attending the conference.

141.   Just prior to departing California for Natick, Defendant Baugh, acting within the scope of his employment with eBay, practiced installing a GPS device on a car in the eBay parking lot that was similar in make and model to one owned by the Steiners.  On information and belief, Defendant Gilbert used his past law enforcement experience and resources to gain intelligence on the Steiners and determined the make and model of the Steiners' vehicle before traveling to Natick. This GPS would allow Defendants Baugh, Harville, Popp and Zea to learn the location of the Steiners' travels in order to carry out the goals of the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, which would also have the result of exposing the Steiner's journalism sources.

142.   Defendant Baugh's premeditated acts demonstrate the conscious knowing and embracing of unlawful behavior condoned by Defendant eBay through its senior management, including but not limited to Defendants Wenig, Wymer and Jones.

143.   On or around August 15, 2019 Defendants Baugh, Harville and Zea, all acting within the scope of their employment with eBay and PFC for the benefit of eBay, traveled to Massachusetts. Utilizing Defendants eBay and PFC funds and acting at the direction of eBay to silence the Steiners, Defendants Baugh, Harville and Zea rented two vehicles. One was rented in Defendant Zea's name, using her PFC credit card. Defendant Harville also rented a vehicle, and because these were events sanctioned by eBay, Defendant

Harville had no concerns about concealing his activities from the company and used his corporate credit card to rent the vehicle. Defendants Baugh, Harville and Zea then checked into the Ritz Carlton in Boston. Defendant Baugh instructed Defendant Zea before they left that she had to attend the trip to Natick so they could use a PFC credit card, and that because Defendant Zea was 25, and could rent a vehicle.

144.   While Defendants Baugh, Harville and Zea travelled to Boston, funded by Defendant PFC with the approval of Defendant Krystek, the other Defendants, including Defendants Cooke, Gilbert, Popp and Stockwell, continued with the online harassment and threats, and continued to send packages to the Steiners.

145.   On August 15, 2019, the Defendants sent an ominous funeral wreath to the Steiner residence, serving as a threat to kill the Steiners.



146.   The Defendants also sent pornographic magazines entitled "Hustler: Barely Legal" to the Steiners' neighbors, with David Steiner's name on the mailing label in an attempt to defame the Steiners within their community.



147.    Upon arriving in Boston and after the Steiners had been flooded with package deliveries, Tweets and online subscriptions throughout the day, Defendants Baugh, Harville and Zea, acting within the scope of their employment with eBay and PFC, drove to the Steiners' home in Natick on or around 11:30pm on August 15, 2019, to physically stalk and assault the Steiners in furtherance of the conspiracy to threaten to kill, intimidate, torture, terrorize, stalk and silence the Steiners. The Steiners were terrified that Ina would be killed.

148.    Defendants Baugh, Harville and Zea approached the Plaintiffs' home to install a GPS tracking system on the Steiner's vehicle. Their attempt was thwarted because the Steiners had locked their vehicle in their garage. They entered the Steiner property without a right or privilege to do so.

149.    While Defendants Baugh, Harville and Zea attempted to install the GPS device, Defendant Popp, who remained in California, monitored the NPD dispatch to alert the other Defendants of any police detection. Defendant Stockwell texted Defendant Harville the license plate numbers for the Steiners' cars.

150.    Later that night, since the attempt to install the GPS was thwarted, Defendants Baugh and Harville discussed a plan to break into the Steiner's garage and once again trespass and attempt to install the GPS tracking system on the Steiner car, and assault them.

151.    The next day, August 16, 2019, Defendant Harville, acting within the scope of his employment with eBay, purchased a slotted screwdriver, a 6-in-1 painters' tool, a two-ended catspaw with pry bar and rubber gloves, from a Boston hardware store in order to carry out the plan of breaking into the Steiner garage to install the GPS device. Because this was an eBay sanctioned operation and Defendant Harville did not have concerns

about concealing his activities from the company, he used his corporate credit card to
make the purchase.

152.   On or about August 16, 2019, Defendants Baugh and Zea, acting within the scope of their
employment with eBay and PFC, again drove to Natick to the Steiners' home to
intimidate, threaten, torture, terrorize, stalk and silence the Steiners, and continued
stalking the Steiners and their residence in a rented black van.

153.   That same day, August 16, the Steiners bought and installed security cameras for their
home, which they now monitored at all hours of the day and night. The Steiners began
staying in separate bedrooms so they could divide their efforts, in the event one or more
of the Defendants attempted to break into their house, since it was now apparent the
Defendants knew their home address, and the attacks on their home were causing severe
emotional distress with physical manifestations. David Steiner stayed in the front
bedroom in order to watch the surveillance footage on the big screen, while Ina Steiner
stayed in a back bedroom in order to monitor any potential intruders coming through the
back of the home. The Steiners installed several battery powered alarms, as well as
placed baking trays on top of a laundry cart and positioned it against the back door so that
they would know if someone broke into their home.

154.   Within hours of installing the new security cameras, footage of a black Dodge van driven
by Defendant Baugh with Defendant Zea circling the neighborhood, was captured.

155.   In the days that followed, not only did the Defendants predatorily stalk and surveil the
Steiners by driving around the block repeatedly, they also parked at the end of the street
to watch the Steiner residence. When David Steiner left his home, the Defendants

followed him throughout town, causing David Steiner to believe the Defendants were there to kill them. The Steiners were prisoners in their own home and car.

156.    The Defendants intended to confine the Steiners or knew that confinement would result. The Defendants confined the Steiners to their home without cause or justification. The Steiners believed they were not free to leave their home for fear that they would be killed, based on the Defendants threats to harm, including sending the book on surviving the death of a spouse, the funeral wreath and the SAW mask. Because Ina Steiner was the target of the death threats, she never left the house. Ina Steiner believed she had no reasonable avenue for escape, and David Steiner was confined in his motor vehicle where the Defendants followed him throughout Natick. Based on these circumstances, a reasonable person would have apprehended that they were not free to leave their home or vehicle. The actions of the Defendants both directly and indirectly caused the Steiners' confinement because the Defendants both instigated and caused the confinement. Defendant eBay is vicariously liable for the false imprisonment of the Plaintiffs caused by its employees. The Steiners were aware that they were confined to their house and/or car, and as a proximate cause of the Defendants' actions, Plaintiffs suffered significant trauma, including emotional distress, panic attacks, believing they would be killed and psychological trauma.

157.    The Steiners realized that they were being followed and surveilled and notified the NPD. Defendant Zea was monitoring the NPD dispatch and quickly informed the Defendants, including but not limited to Defendants Baugh and Harville, that the NPD had been alerted and the Defendants immediately left the area.

158. This predatory behavior caused the Steiners severe and debilitating anxiety, stress, and fear of leaving their home. It also caused panic attacks where David Steiner believed he was having a heart attack. This imprisonment caused permanent psychological harm.

159. On or about August 16, 2019, Defendant Baugh directed the Defendants who remained in California, including but not limited to Defendants Popp, Stockwell, Gilbert and Cooke, to continue to carry out the conspiracy to intimidate, threaten torture and harass and silence the Steiners by sending more threatening deliveries paid for by Defendant PFC with the approval of Defendant Krystek to the Steiner residence. While conspiring, Defendant Harville suggested having chainsaw or human feces delivered to the Steiners, while Defendant Baugh suggested sending a dead rat.

160. The conduct includes but is not limited to threatening Tweets, following and harassing the Steiners, menacing package deliveries, attempting to break into their home to attach a GPS on their car, while simultaneously continuing to send threatening Twitter messages and packages purchased, sent or directed from California. Defendants working in concert in both California and Massachusetts stalked the Plaintiffs. The Defendants engaged in a pattern of conduct and intended to follow, alarm, place under surveillance and harass the Steiners. As a result of the stalking scheme, the Steiners reasonably feared for their lives and their safety.

161. The Steiners suffered substantial emotional distress as a result of this pattern of conduct. The Defendants knew or should have known that this pattern of conduct would cause any reasonable person to suffer substantial emotional distress. This pattern of conduct placed the Steiners in fear for their lives. Despite their best efforts to determine who was stalking

them, the Steiners did not know who was behind the acts and thus the Steiners could not demand that they cease and desist.

162.    The Defendants were aware that the conduct was causing the Steiners to be in fear for their lives, including but not limited to Defendants acknowledgement that the Steiners were rattled, were seeing ghosts and thumbs up emojis and laughing at the Steiners' terror. Despite the Steiners distress and fear, the Defendants continued with their stalking campaign. The Defendants acted with malice, oppression and fraud.  The Steiners have suffered emotionally as a result of this pattern of conduct. The Steiners have suffered and continue to suffer significant trauma, emotional distress, anxiety, and psychological damage. The Defendants who did not physically participate in the stalking aided and abetted and/or failed to intervene.

163.    Despite knowing of the terror the Steiners were experiencing, Defendant Baugh instructed Defendant Stockwell to send an emergency plumber to the Steiners' home. Defendant Stockwell also used an eBay issued cell phone to research an adult exotic dancer website while Baugh spoke to Defendants Gilbert and Cooke who provided names of sex workers gained through their law enforcement with the Santa Clara police department to send to the Steiners' residence.

164.    Around 4:30am on August 17, 2019, David Steiner observed a black vehicle pull up in front of their home, and an unknown man exited.  The man then pulled a large leather bag out of the vehicle which, David Steiner reasonably thought, contained a rifle.  David Steiner reasonably believed he and Ina would be killed.  Terrified, he shouted to his wife Ina to call 911.

165.    Ina Steiner called 911 and reported that a man who may have a gun was at her house.

166.  As Ina Steiner was on the phone with the police, David Steiner yelled for the person to put the bag down but did not receive a response. Instead, the man approached closer with the bag. The Steiners were terrified, and David continued to yell at the man, while Ina Steiner urged the police to come as quickly as possible because she believed the man had a gun.

167.  The man left what he was carrying at the front gate – which turned out to be a pizza delivery paid for by Defendant PFC with Defendant Krystek's approval – ordered by the Defendants around 4:30am. The Steiners feared for their lives.

168.  The Defendants knew or should have known that an unknown person showing up at the Steiners' home at 4:30am, after threatening to kill the Steiners and subjecting them to around the clock relentless stalking, harassment and psychological attacks, would cause them to fear for their lives. Any reasonable person would believe they were about to be killed, and in fact, when they saw the man approaching their home with a large bag, the Steiners thought the bag contained a gun and that the man was there to kill them.

169.  At 11:30pm that day – August 17, 2019 – the Steiners received another pizza delivery.

170.  On Sunday, August 18, 2019, the Defendants continued their conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners. After circling the block several times, Defendants Baugh, Popp and Zea parked at the end of the Steiners' street in their silver GMC SUV and awaited David Steiner's departure.

171.  That same day, and the day prior, the Steiners observed a woman circling the block on foot. Defendant Zea later admitted this was her.

172.  When David Steiner left the home shortly after 11:00am, the Defendants began following David Steiner, and were forced to abort their plan when they realized David Steiner had

photographed their vehicle. Both Ina and David Steiners were terrified and believed they would be killed.

173. The Steiners shared the photograph of the license plate with the NPD.

174. Because David Steiner was able to take a picture of their license plate – which Defendants learned while monitoring the NPD scanner – Defendant Baugh returned the "burned" rental van, and rented another vehicle.

175. Defendants Baugh, Harville, and Zea returned to their hotel's bar, where Defendants Baugh and Harville joked about what else could be delivered to the Steiners, including the bag of human feces. Defendant Baugh called Defendant Stockwell and directed her to resume the harassing deliveries, paid for by Defendant PFC and approved by Defendant Krystek, even though Defendant Baugh already knew the Steiners were terrified. Defendant Baugh also told the group chat on WhatsApp to call 911 to the Steiner household, which would essentially "swat" them.

176. Later that day, the Steiners observed another unknown woman circling the neighborhood on foot, walking past the Steiner residence four times. Because of the small street the Steiners lived on, they recognized everyone who lived in the area and knew the woman was unfamiliar.

177. On August 18, 2019, the Defendants, acting within the scope of their employment with eBay and PFC, caused a classified advertisement for a house party to be posted on Craigslist, paid for by Defendant PFC with the approval of Defendant Krystek, with the Steiner's home address provided as the location.

178. At around 3:00pm, the Defendants, acting within the scope of their employment with eBay and PFC, posted another Craigslist advertisement, paid for by Defendant PFC with

the approval of Defendant Krystek, falsely claiming to be the Steiners identified as a married couple seeking a sexual partner or partners and providing the Steiners' home address. Defendants caused defamation by posting such ads on Craigslist that the Plaintiffs were sexual swingers.  Such activity was shown to the public and included their personal home address. Defendants made these statements intentionally and with reckless disregard for the truth.



179.   The Steiners never authorized the Defendants to place this advertisement or use their address.

180.   Defendant Baugh sent a clip to the other Defendants, including Defendants Harville, Gilbert, Cooke, Popp, Stockwell and Zea, with a link to the 2003 movie *Old School* in which the character arrives at home unannounced, stating: "I'm here for the gang bang," and commenting, "this has been the Steiners' house for the past five nights." The Defendants' cruel pleasure in joking about the crimes they were committing against the Steiners is direct knowledge of the impact the Defendants conduct had on the Steiners.

181.   At 2:40pm, the Steiners received another pizza delivery, paid for by Defendant PFC with the approval of Defendant Krystek. Again, this delivery caused the Steiners fear and emotional turmoil.

182.    Defendants acting within the scope of their employment with eBay and PFC, then posted

another online advertisement, paid for by Defendant PFC with the approval of Defendant

Krystek, for an "Everything must go!" estate sale, again listing the Steiner's home

address as the location.



183.    The Steiners never authorized the Defendants to place this advertisement or use their

address.

184.    It was reasonably foreseeable and all Defendants knew or should have known that

soliciting random strangers to the Steiners' home at all hours after threatening to kill

them, who would be seeking to take the Steiners' personal belongings or engage in sexual

activity, would terrorize the Steiners; this was, in fact, the Defendants' intent when

posting advertisements listing the Steiners' address on Craigslist and the other websites.

185.    Any reasonable person would be terrified, and the Steiners were in fear for their lives

when strangers started showing up at their door, unannounced.

186.    The Steiners again called the police, thinking they would soon be killed.

187.    The next morning, on August 19, 2019 at 9:00am, the Defendants doxed the Steiners, and Defendant Popp, through the Tui_Elei Account, publicly posted the Steiners full name and address then asked "Dis UR address??" Immediately afterwards, the Defendants, through the Tui_Elei Account, sent a private message to Ina Steiner asking, "U get my gifts cunt???" The Defendants publicly doxing the Steiners placed the Steiners in ever more danger. The Steiners were terrified. Not only were they scared to leave their home, now their address was publicly displayed on Twitter.

188.    The surveillance, tailing and stalking of the Steiners, both by vehicle and on foot, caused the Steiners to fear immediate physical harm of a battery or attempted battery.

189.    On August 20, 2019, the Defendants, acting within the scope of their employment with Defendant eBay and Defendant PFC, resumed their surveillance and stalking efforts but abruptly aborted their mission upon noticing a Jeep with tinted windows parked outside the Steiner's home, which they correctly assumed was an undercover police officer assigned to protect the Steiners.

190.    In a subsequent series of WhatsApp messages to Defendants Harville, Gilbert, Cooke, Popp, Stockwell and Zea, Defendant Baugh wrote "[t]hey are seeing ghosts now. Lol." In his communication to Defendant Popp, Defendant Baugh attached a link to the audio recording of an NPD dispatcher describing the threats, intimidation and silencing of the Steiners, "[a] little glimpse of what all your hard work is has led too. And stuff like this around the clock." Defendant Baugh also informed the others that people had been approaching the Steiners' residence for the past five nights, to which Defendant Cooke responded, "hahaha." That same day, Defendant Popp traveled to Natick to assist in the in-person harassment, threats and stalking, and Defendant Harville returned to California.

191.   On August 20, 2019, the Defendants, acting within the scope of their employment with Defendant eBay and Defendant PFC with the approval of Defendant Krystek, sent a third neighbor of the Steiners a pornographic magazine paid for by Defendant PFC with Plaintiff David Steiner's name on the address label.

192.   At around 12:11pm that same day, a yard sale visitor knocked on the Steiner's door looking for the "everything must go" sale. Additional individuals knocked on the Steiners' door and appeared on their property during the surrounding days. Because of the Defendants' actions, the Steiners were in fear of being killed every time someone rang their doorbell.

193.   Defendant Gilbert, acting within the scope of his employment, attempted to link the Defendants' threatening and intimidating deliveries they sent to silence the Steiners with Santa Clara gift cards to the Samoan sounding Twitter accounts, @Tui_Elei and @Elei_Tui. Defendant Gilbert, as admitted during his plea hearing, proposed creating more anonymous Twitter accounts to support "our cause," and proposed content for the specific Twitter posts criticizing the newsletter.

194.   Around the same time, Defendant Gilbert, as part of his formal duties at eBay, on information and belief, was assisting a well-known eBay seller. Defendant Gilbert was assigned to assist the eBay seller and investigate an incident where the seller was attacked by eBay staff. Instead of assisting the seller, Defendant Gilbert created a fake Twitter handle in an attempt to falsely assume the seller's identity, to send the Steiners menacing messages, with the potential to shift the blame from eBay onto an honest, true eBay seller, and attempt to make the seller the fall guy.



195.    The Steiners contacted the NPD once again when Defendants Stockwell and Popp started

posting threatening tweets through several contrived eBay accounts. The accounts were

all created by Defendants Popp and Stockwell, at the direction of Defendants Baugh,

Harville, Gilbert and Cooke, falsely pretending to be eBay sellers, one with a sinister

skull mask as its avatar, and another with a disturbing image of a pig.



196.    After their original @Tui_Elei Account was suspended for doxing the Steiners,

Defendant Popp, acting within the scope of her employment with eBay, created a second

account with a slight iteration to the username, @Elei_Tui.  Using the new account,

Defendant Popp posted: "[n]ice try. . . [Ina] U cant shut me down!!" The Steiners felt

completely helpless. They could not stop these attacks.

197.    Another account by Defendant Popp, @TopSeller13, posing as a legitimate eBay seller,

posted "[Ina] focuz on sumthin else and stop fuckin with our customers!!! I dunt wanna c

unuther fuckin post bout #ebay. . . Leave our bizness alone!!! @Elei_Tui." Defendant

Popp, posing as a legitimate eBay seller, posted, "I agree! [Ina] is hurting small

businesses with all the negativity and pushing buyers to Amazon!" On information and

belief, the Mask Account seller never gave the Defendants permission to use his name or

likeness.

198.    Defendant Popp, using the account with the sinister mask, responded to @TopSeller13

stating, "I agree! [Ina] is hurting small business with all the negativity and pushing

buyers to Amazon!"

199.    These new accounts by Defendant Popp were created, acting within the scope of her

employment with eBay, as a decoy; sending tweets to the Steiners were additional efforts

by Defendants Baugh, Harville, Gilbert, Cooke, Stockwell and Zea to continue to conceal

the conspiracy from law enforcement, to mislead the ongoing investigation, and to protect

eBay and its executive staff by attempting to make it appear as though disgruntled eBay

sellers were behind the campaign to terrorize the Steiners.

200.    Defendant Popp forwarded the fake Twitter exchange to Defendants Baugh and Gilbert

via their eBay work email accounts and falsely claimed that the Steiners were "really

bringing out some angry Twitter users." Defendant eBay failed to monitor and supervise

its employees and allowed its own email account to be used to stalk the Steiners.

201.    Defendant Popp admitted that she falsely claimed she had discovered the tweets rather

than written them herself and to protect eBay and its executives and to lend credence to

eBay's false claims of assistance to the Steiners. The messages were sent via eBay work

email accounts in the event they were accessed as part of an investigation, and to lend

credence to the false allegations that the Steiners were "Persons of Interest."

202.    Defendant Gilbert, Baugh and Popp, emboldened and sanctioned by eBay, engaged in

discussion over eBay corporate email that obstructed the criminal investigation and

defamed and blamed the Steiners for the Defendants' own conspiracy. Defendant eBay failed to supervise its employees or monitor its own emails.

203.   eBay and the other Defendants, including Defendants Wenig, Wymer, Jones, Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea, working in concert knew or should have known that their actions would cause the Steiners to become paralyzed with fear, which was their intent. Any reasonable person would be terrorized by the Defendants' actions, and, in fact, the Steiners did experience debilitating fear, were unable to sleep, and lived in terror that they may be killed.

204.   During the course of the conspiracy, the Defendants barraged the Steiners with unrelenting, around-the-clock threatening Twitter messages, emails, and deliveries, which they knew or should have known would terrorize and frighten the Steiners.

205.   The Defendants strategically selected a book on spousal death, together with the funeral wreath, and the SAW pig mask so that the Steiners would truly believe that the stalkers were going to kill them, and to make them feel as though their lives were in imminent danger, all in an effort to carry out the directives of Defendants Wenig, Wymer and Jones to stop negative reporting on eBay.

206.   These acts and threats caused the Steiners to fear immediate physical harm of a battery or attempted battery.

207.   The Steiners feared for their lives, and believed they could be killed at any moment.

208.   Due to the nature of the Defendants' calculated conspiracy, where Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea hid their identity but made known that they were aware of the Steiners' address and were not afraid to attack their home, Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea – at Defendants

Wenig, Wymer and Jones' direction – purposely and maliciously inflicted terror onto the Steiners. The Defendants knew or should have known that the unrelenting stalking and threats would cause the Steiners to be on high alert, constantly anticipating and preparing for the next menacing act. The Steiners were, in fact, on high alert and installed several surveillance cameras outside the residence, manning the footage at all hours of the day and night to defend themselves against this campaign of terror and threats to kill by eBay, at the direction of its senior management and others, including Defendants Wenig, Wymer and Jones, who ordered the conspiracy and were either reckless or willfully blind to the specific acts carried out by Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea. Defendant eBay failed to train and failed to supervise the Defendants.

209.    In fear of, and in further protection of their home, the Steiners asked a friend to park his car at the end of their driveway to prevent any vehicles from entering, fearing that the Defendants would send a large order to be dumped on their driveway to block in their vehicle to further isolate and imprison the Steiners. They also created accounts with USPS and shipping carriers so they could preview any deliveries.

210.    Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea – at the direction of Defendants Wenig, Wymer and Jones - also mounted around-the-clock intimidation, threats, and terrorization efforts, which they knew or should have known would cause the Steiners to experience anguish and lose sleep, not knowing when the next attack would come. The nature of the conspiracy – riddled with the element of surprise, and unrelenting torture – caused the Steiners to stay in separate bedrooms in case one of them was attacked, the other could get out safely and call for help. David Steiner stayed in the

master bedroom in the front of the house so he could watch a live feed of the surveillance footage on the large screen television, while Ina Steiner stayed in the back bedroom to hear any would-be intruders attempting to break-in from the back. The Steiners feared for their lives. Any reasonable person would feel terrorized by the Defendants' actions, and that was the Defendants' intent when using their background and training to formulate a psychological torture campaign.

211.   Defendants eBay, PFC, Devin Wenig, Steven Wymer, Wendy Jones, Steve Krystek, Jim Baugh, David Harville, Stephanie Popp, Stephanie Stockwell, Philip Cooke, Brian Gilbert, Veronica Zea, contractor for Defendant PFC, and Jane and John DOE Defendants, knew or should have known the directives and conduct would cause the permanent psychological trauma and damage to the Steiners, which they now suffer from. The Steiners continue to worry about their personal safety and have lost the security previously associated with the sanctity of their home.

212.   In an effort to conceal the existence of the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, Defendant Baugh, acting within the scope of his employment with eBay, ordered Defendants Stockwell and Zea to create a false document featuring the Steiners as eBay Persons of Interest ("POI"), defaming the Steiners.  Defendants created this defamatory, false document on or about August 15, 2019, to suggest the Steiners had a history of threats against eBay and its executive management. As admitted to by Defendant Gilbert during his plea hearing, the Defendants attempted to use the Steiners' status as purported "Persons of Interest" to justify and provide cover for eBay's presence in Boston, to falsely claim they were there to investigate the Steiners and their false threats against eBay and members of its

executive leadership, and to undermine the Steiner's credibility with law enforcement in an attempt to make the Steiners appear crazy thus defaming their reputations and the reporting of EcommerceBytes and damage their credibility.

213.   Moreover, dubbing the Steiners as "Persons of Interest" was an attempt to provide legitimacy for their attack on the Steiners.

214.   Instead of using eBay's near-bottomless resources to investigate, monitor and eliminate legitimate threats, Defendant eBay weaponized their own internal army, used Defendants eBay and PFC resources to torture, intimidate, threaten and stalk the Steiners, who were providing legitimate news coverage on eBay. Defendants eBay, Wenig, Wymer and Jones and other senior executives and management knew or should have known that corporate resources were being used for illicit undertakings and sanctioned the behavior.

215.   On information and belief, the head of security and operations, Defendant Jones, had the responsibility for overseeing the Defendants, including but not limited to Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea, while Defendants Wenig and Wymer, executives at eBay, and Defendant Krystek, CEO of PFC, were actively directing the unlawful behavior, or were reckless or willfully blind.

216.   All Defendants not physically participating in the events, including but not limited to Defendants Wenig, Wymer, Jones, and Krystek aided and abetted and/or failed to intervene to stop the harassment, torture, intentional and negligent infliction of emotional distress, stalking, defamation, trespass, threats and damage to the EcommerceBytes business.

217.   All Defendants knew or should have known of the plan and its purpose and either took affirmative steps, were willfully blind, or encouraged the achievement of the harassment,

torture, intentional and negligent infliction of emotional distress, stalking, defamation, trespass, threats and damage to the EcommerceBytes business.

**The Investigation and Cover Up**

218.   On August 20, 2019, after running the license plate for the vehicle tailing David Steiner and determining the vehicle was rented by an eBay employee, Detective Haswell of the NPD reached out to eBay through its law enforcement email portal.

219.   That same day, Defendant Wymer called Defendant Baugh.

220.   During the call, Defendant Wymer indicated that he and Defendant Jones were aware of the NPD criminal investigation because they saw an email from Natick PD to eBay legal. Defendant Wymer reasoned that the harassment, which he equated to "TPing" a house – is not a crime. During the call, Defendant Wymer seemed nervous, and lied multiple times, claiming that he did not know anything about what was going on but that he would not say anything to legal during the internal investigation.

221.   Defendant Wymer instructed Defendant Baugh to "Stick to your guns," which Defendant Baugh interpreted as an instruction to have his security team stick to its cover story about attending an industry conference in Boston. Defendant Wymer also inquired as to how long it would be before legal started reading his emails and texts, but Defendant Baugh indicated that he did not know. Defendant Wymer told Defendant Baugh that they "just needed to get rid of the Hardy Boys," referring to eBay legal.

222.   Defendant Wymer carried through with his assurances: he deleted all texts with Defendants Wenig and Baugh, his call log history showing proof of his call with Defendant Baugh, and he did not cooperate in the internal investigation.

223.   Although Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea were now aware of the NPD criminal investigation, they continued to harass the Steiners, in an attempt to cover their tracks, and thwart law enforcement efforts. This caused the Steiners to fear that the unrelenting harassment, stalking, intimidation, threats and torture would never end, where the police were involved but the harassment, stalking and threats continued.

224.   As admitted to during his plea hearing, Defendant Gilbert wrote to Defendants Popp and Baugh "[t]he more I thought about it I do think we should bring a dossiers on the [Plaintiffs] to the PD. Definitely want to make them look crazy," carrying out Defendant eBay's directive, through Defendants Wenig and Wymer, to "burn her down," and Defendant Jones' directive to do it off the radar, Defendant Baugh replied, "I agree" and Defendant Popp responded "[c]opy re dossiers."

225.   In an effort to carry out the directives of Defendant eBay through its senior management staff Defendants Wenig, Wymer and Jones, Defendants Baugh, Harville, Gilbert and Popp, intended to share the fabricated dossiers with the NPD to create the appearance that the Steiners were crazy, to defame them, and discredit the Steiners' reports of intimidation, threats to kill, and torture.

226.   The Defendants knew or should have known their actions would cause the Steiners emotional and psychological harm, including but not limited to stress, anxiety and fear, which they callously acknowledged through texts: at one point Defendant Baugh texted Defendant Stockwell, "We've 'burned' 2 of our rental cars by following them...now they are seeing ghosts, think everyone is following them and they call the police every 10

minutes." Defendant Gilbert later texted, "…We know the targets have been impacted by this op."

227.    Despite recognizing the terror Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea – which were ordered by and forseeable to Defendants Wenig, Wymer and Jones – were inflicting upon the Steiners, they continued to persist with the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, demonstrating depravity, actual malice and reckless disregard. The conduct was intended to cause injury, and it was despicable conduct which was carried out by the Defendants with a willful and conscious disregard for the rights and safety of Ina and David Steiner. The conduct also subjected the Steiners to cruel and unjust hardship in conscious disregard for the Steiner's rights.

228.    As admitted to by Defendants Gilbert, Popp, Stockwell and Zea during their plea hearings, the conspiracy was set in motion to attempt to eliminate what eBay executives, including Defendants Wenig, Wymer and Jones viewed as negative coverage of eBay, to put a final end to the Steiners' reporting. The conspiracy was also enacted to send a message to all reporters that any negative reporting into eBay would not be tolerated. Defendants eBay, Wenig, Wymer, Jones, Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea knew or should have known that the plan would cause great harm, where it was reasonably foreseeable that such a relentless campaign of around-the-clock threats, harassment, and stalking would cause the Steiners to suffer emotional, physical and economic harm.

229.    Although the stated purpose of the duties of the employees of eBay's security division GSR was to eliminate legitimate security threats worldwide, with a sizeable budget and

an entire department devoted to carrying out that objective, Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell, acting within the scope of their employment with eBay, and Defendant Zea acting within the scope of her employment with PFC,  and under directions from executive leadership, including Defendants Wenig, Wymer, Jones and Krystek, used those corporate resources like personal weapons to intimidate, threaten, torture, terrorize, stalk and silence the Steiners from providing legitimate reporting on eBay.

230.   eBay's Chief Executive Officer, Defendant Wenig, and eBay's Senior Vice President and Chief Communications Officer, Defendant Wymer gave the directive to do "whatever it takes," granting the Defendants broad discretion to use their sought-after background and skills, including Defendants Baugh, Harville, Cooke and Gilbert's past law enforcement and military experience and training. Defendant Jones instructed Defendant Baugh to take care of the Steiners off the radar, and to just get it done. This allowed Defendants to engage in whatever means necessary to carry out Defendant eBay's goal of intimidating, threatening, torturing, terrorizing, stalking and silencing the Steiners.

231.   eBay, through its negligent hiring practices, sought out employees with the unique experience and skills necessary to engage in the type of behavior used during the course of the conspiracy, such as former CIA and law enforcement agents, and former military. eBay used its vast resources to form an internal army with the idiosyncratic proficiency needed to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, and the tactics used by Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell, Zea and John and Jane DOE were reasonably foreseeable. Defendants eBay, PFC, Wenig, Wymer

and Jones knew or should have known that their directives would result in emotional, physical and economic damage to the Steiners.

232.    At all times relevant to the allegations in this Complaint, all the named individual Defendants acted in concert with one another, in furtherance of eBay's directive – through its executive leadership, Defendants Wenig, Wymer and Jones with funding from Defendant PFC with Defendant Krystek's approval – to silence the Steiners. Members of management, including Defendants Wenig, Wymer and Jones, knew or should have known subordinates were engaging in the vast conspiracy, using eBay resources and time, but were either reckless or willfully blind. All acts, whether committed individually or together, were in furtherance of this goal, and are attributable to eBay due to the conduct, direction and commands of its Chief Executive Officer Defendant Wenig, and Senior Vice President and Chief Communications Officer, Defendant Wymer. All Defendants were acting within the scope of his or her employment during the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners.

233.    On or about August 20, 2019, in an effort to conceal the Defendants' conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, Defendant Gilbert, acting within the scope of his employment with eBay, proposed that co-conspirators "pin the deliveries to a POI in the San Jose or Santa Clara Area" noting that "[m]ost eBay employees live in San Jose or Santa Clara. So it's just a coincidence."

234.    Defendant Baugh instructed Defendant Popp "to find a local POI," and Defendant Popp, in turn, delegated the job to Defendant Stockwell.

235.    Defendant Gilbert, acting within the scope of his employment with eBay, proposed creating a "Samoan POI" who would become the "primary suspect" and believed such a

move "actually might help the entire op," in an effort to conceal all Defendants' conspiracy to intimidate, threaten torture, terrorize, stalk and silence the Steiners.

236.    In an effort to conceal and obstruct the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, Defendant Gilbert, acting within the scope of his employment with eBay, suggested to other co-conspirators that they should blame the Steiners for the acts of the conspiracy. He wrote, "I'll brief the cops on the [Steiner's] background and make them look like the problem."

237.    On or about August 20, 2019, Defendant Popp, acting within the scope of her employment with eBay and in an effort to obstruct the criminal investigation, emailed Defendant Gilbert a Bay Area POI false report to support the claim that a POI was responsible for the pizza delivery, paid for by Defendant PFC with the approval of Defendant Krystek, that would deflect attention from Defendant Zea.

238.    In an effort to conceal the Defendants' conduct and obstruct the criminal investigation, Defendants Baugh, Harville and Gilbert, some of whom are former police officers, acting within the scope of their employment with eBay, discussed intervening with any San Jose area police that the NPD contacted as part of their investigation.

239.    Defendant Gilbert, acting within the scope of his employment with eBay and in an effort to obstruct the investigation, explained that if the NPD raised the issue, then he "might volunteer to assist with that. Then we can control the local cop and maybe provide a video from a different Santa Clara Safeway."

240.    Defendant Baugh continued to conspire with his co-Defendants to attach the GPS device to the Steiners car stating "[i]s there a chance in hell we are even gonna try to put the tracker on at this point?"

241.  On August 21, 2019, officers from the NPD went to the Ritz Carlton in an attempt to speak to Defendant Zea. Defendant Baugh spoke to one of the detectives by phone, falsely claimed to be Defendant Zea's husband, and "played dumb." Defendant Baugh informed the others via WhatsApp within eight minutes of their arrival, and the Defendants began planning a coverup, to protect Defendants eBay, Wenig, Wymer and Jones, and obstruct the criminal investigation.

242.  Through WhatsApp, the Defendants discussed a meeting Defendant Gilbert would have with NPD the next day, in an effort to divert attention from the conspiracy. During that conversation, Defendant Cooke stated, "Brian, important to be convincing so they don't start looking to find video of who purchased the gift cards. Don't think they would go that far but is a little concerning. If I was the Detective I would ask you for a local PD [contact] to go get video. Might want to have a friendly in mind." When Defendant Gilbert suggested providing surveillance video from the wrong supermarket, Defendant Cooke responded with two "thumbs up" emojis.

243.  In attempting to come up with a cover story for their presence in Boston/Natick, Defendant Gilbert stated to the group, "We can say [Zea] and Harville were looking into the Tui case. That investigation is confidential and details weren't shared with Special Ops. I'll [] brief the cops on the [Steiners'] background and make them look like the problem. The cops just want a logical and legitimate reason for [Zea] and Harville being here." Defendant Gilbert replied, "We just need to explain away [Zea] and Dave's [Harville's] activities. Adamantly deny any deliveries and put focus on the POIs."). Gilbert further stated: "How does this sound for [Zea] and [Harville]: - they were in Boston for the conference (if we can prove it) . . .). Defendant Baugh then messaged the

others: "for Daves [Harville] cover . . . since he is business continuity, we could just tell them we are reopening our Boston office - which is confidential..."

244.   The Defendants defamed the Steiners by created a false Person of Interest file on them, and "making them look like the problem" to the Natick Police Department. Defendants made these false statements intentionally and with reckless disregard for the truth.

245.   That same day, August 21, 2019, Defendant Zea, with the assistance of Defendant Popp, removed her public LinkedIn profile to obstruct the NPD from discovering the connection between the conspiracy and Defendant eBay.

246.   On August 22, 2019, in another effort to conceal their criminal conspiracy and obstruct the investigation Defendant Zea, acting within the scope of her employment with PFC, lied to NPD about the rental car that David Steiner photographed.

247.   When the NPD made the connection between Defendant Zea and eBay and attempted to interview Defendant Zea regarding her presence in Natick, Defendant Baugh, acting within the scope of his employment with eBay, obstructed the investigation and answered Defendant Zea's phone. Defendant Baugh lied to the detective claiming he was Defendant Zea's husband and insisted that any questions to Defendant Zea could be directed to him, as admitted to by Defendant Zea during her plea hearing. Defendant Baugh then instructed Defendant Zea to pack her bags right away.

248.   Defendant Baugh drove Defendant Zea to the airport for a flight, paid for by Defendant PFC with the approval of Defendant Krystek, to make her escape and conceal her from law enforcement, in an effort to obstruct the criminal investigation.

249.   As part of its criminal investigation, a member of the NPD contacted eBay in order to investigate any potential eBay involvement in the scheme.  On information and belief, the

NPD officer did so by initiating contact through the dedicated portal

lawenforcement@eBay.com.  When the NPD email reached the portal, on information

and belief, with astounding coincidence, Defendant Gilbert was the responder.

250.    On information and belief, eBay hosts hundreds of police officers around the country at

its headquarters, under the auspices of relationship building, education and familiarizing

local police departments. eBay's website states *"we are committed to keeping eBay a safe*

*place to shop and will always assist in a criminal investigation…"*.

251.    On or about August 21, 2019, Defendant Gilbert, acting within the scope of his

employment with eBay and in an effort to obstruct the criminal investigation, lied to NPD

detectives and falsely claimed that he did not know either Defendants Zea or Harville,

that there was a legitimate investigation underway by Defendant eBay, and that he had to

travel to NY and Toronto but would attempt to change his travel plans to come to Boston

and meet with the NPD.

252.    Defendant Gilbert, acting within the scope of his employment with eBay, then traveled

from California to Natick to speak to investigators with the NPD to attempt to cover-up

the conspiracy, obstruct the investigation and divert attention from eBay and its

executives.  During a meeting with NPD, Defendant Gilbert insisted that eBay had no

involvement in the intimidation and threats to silence the Steiners.

253.    As Defendant Gilbert admitted during his plea hearing, he falsely told investigators that

Defendants Harville and Zea traveled to Boston to attend the software developers

conference, and that Defendant Zea traveled to Natick alone.

254.    After meeting with NPD investigators, Defendant Gilbert updated the Defendants via

WhatsApp.

Gilbert: I spoke with investigator. He was polite and clueless.

Cooke: Perfect.

Gilbert: Good. This is fine. The cops obviously have nothing else to do in Natick. We [have] known the targets have been very impacted by this op. Perfect time for next phase.

Cooke: Yes!

Baugh: Bring out bad boy please; these people are wasting our time. It's go time.

On information and belief, "bad boy" referred to Plan B, and the Samoan gang member.

255.   In an effort to conceal Defendants' conspiracy, Defendant Gilbert, acting within the scope of his employment with eBay, brazenly offered eBay's assistance to the NPD to investigate the torture and harassment of the Steiners.

256.   The NPD obtained store video surveillance showing Defendant Zea and another eBay employee purchasing gift cards, paid for by Defendant PFC with the approval of Defendant Krystek, used to send the threatening and intimidating deliveries to the Steiners.

257.   After learning that the NPD was investigating the use of a prepaid debit card to purchase one of the harassing deliveries to the Steiners, Defendant Baugh directed Defendant Stockwell to prepare a document featuring eBay "Persons of Interest" that could be used to deflect attention from Defendant Zea, who had used that debit card. Defendant Stockwell created the document, "Bay Area POIs_August 2019.docx," and emailed it to Defendant Baugh, who passed it along to Defendant Gilbert to provide to the NPD.

258.   Days into the NPD investigation, Defendant Baugh messaged Defendant Gilbert, "Ina is such a cunt – that 20 year anniversary article about journalism and integrity came out of

nowhere. I assume it's for the cops. These people are scum. I think we could still get [the tracker] on the car, bu[t] My concern with the tracker is that you guys patch things up and build a rapport with the local cops tomorrow then either David or Ina finds it next month during an oil change and we lose credibility with PD."

259.   In anticipation of a further investigation by the police, Defendant Baugh discussed leveraging eBay executive leadership's promises to "manage any bad fallout" stating, "[a]nd just remember, [Defendant Wymer] said this [Steiner reporting] has to stop even if ebay takes on some risk (which we have). If I need to bring in and ebay attorney to talk to cops, I have that in my back pocket."

260.   On August 22, 2019, the FBI along with the United States Attorney's Office opened an official investigation into the cyberstalking of the Plaintiffs, as well as the efforts to obstruct the investigation and tamper with witnesses.

261.   While Defendant Gilbert was meeting with the NPD, Defendant Popp, acting within the scope of her employment with eBay further obstructed the criminal investigation, continued to send intimidating and threatening messages to carry out the conspiracy's goal to silence the Steiners and was a continued attempt to divert attention from eBay, as Defendant Popp admitted to during her plea hearing. Using @TopSeller13 account, she wrote:

- UR NOT A JOURNALIST!! U R DISTROIN FAMILYS N BIZNESS. . . N ITS ALL GOIN 2 CUM BAK 2 U!!

- 20 years of lies n distroin familys. . .dunt b proud of dat u worthless BITCH!!! i will distroy ur family n bizness 2 . . . C how u like it . . . \n\n@Elei_Tui vven r we goin 2 visit her in natik???"



262.   At the time Defendants made the false statements on Twitter claiming that Plaintiff Ina

Steiner was destroying small and family businesses through her biased and negative

reporting on eBay, the Defendants knew that these statements were false, and that making

such a statement would defame Ina Steiner and EcommerceBytes. Defendants made these

statements intentionally and with reckless disregard for the truth.

263.   These posts caused the Steiners to believe that nothing would stop the Defendants

because even when the police were investigating, the torture continued.

264.   In an effort to conceal Defendants' conspiracy directed by Defendants Wenig and

Wymer, to which Defendant Jones was willfully blind, Defendant Gilbert, acting within

the scope of his employment with eBay, phoned Plaintiff Ina Steiner, identified himself

as an eBay employee and offered eBay's assistance to the Steiners, as admitted by

Defendant Gilbert during his plea hearing.

265.   After speaking with Plaintiff Ina Steiner, Defendant Gilbert informed the other

Defendants: "[j]ust made phone contact . . . They are totally rattled and immediately

referred me to the Natick PD . . . [Plaintiff] said talk to the detective and then hung up the

phone." Defendant Gilbert then wrote, "[Ina] was a bitch."

266.   On or about August 23, 2019, in order to keep Defendant Wymer updated on the progress

of the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners,

Defendant Baugh sent the following text communication to Defendant Wymer:

> [w]e will continue to cooperate but not sure how much longer we can keep
> this up. If there is any way to get some top cover that would be great. If
> not, I just wanted you to have a heads up because they are aware that
> multiple members of the ELT are not a fan of that website to include
> [Defendant Wenig] and his wife. Again, no crime was committed and
> local police don't have a case. I don't want our legal team to give them
> one. Let me know if you want to discuss this weekend.

267.   That same day, Defendant Wenig Tweeted, "Oh boy."

268.   On or about August 24, 2019 and August 25, 2019, in an effort to conceal Defendants'

conspiracy and obstruct the investigation, Defendant Baugh, acting within the scope of

his employment, directed Defendant Popp to take down any accounts that had been used

to contact the Steiners, including any accounts registered with the EcommerceBytes

newsletter, as Defendant Popp admitted during her plea hearing.

269.   On August 24, 2019, there was a detailed "op" text between Defendants Baugh and

Wymer, however, the contents of this text has not yet been revealed, and Defendant

Wymer deleted it in an attempt to conceal it from criminal investigators. Defendants

Baugh and Wymer also had a 10+ minute phone call this same day, which Defendant

Wymer deleted from his call log history.

270.   On August 25, 2019, Defendant Wenig sent Defendant Baugh a communication just

before his return from sabbatical: "See you tomorrow. The Cavalry is back."

271.   On August 26, 2019, on information and belief, Defendants Baugh, Harville, Popp,

Gilbert, Cooke, Stockwell and Zea and others, all acting within the scope of their

employment with eBay and PFC, gathered in an eBay conference room to discuss the

NPD investigation of the Steiners' complaints as well as the internal investigation that was being conducted by eBay in response to the NPD's request for assistance. At this meeting, Defendant Baugh instructed all Defendants not to talk to anyone and to keep Defendants Wenig and Wymer's names out of any conversations.

272. Sometime during the timeframe of the events in August, Defendant Wenig's director of operations, Cindy Lam, asked Defendant Baugh what was going on, so he pulled her into the parking lot to tell her. One of the analysts observed Defendant Baugh speaking to Lam and asked what it was about, so Defendant Baugh fired him, demonstrating that Defendant Baugh's initiative was to protect Defendant eBay and the C-Suite, including Defendants Wenig, Wymer and Jones, while simultaneously carrying out their objectives.

273. During the August 26, 2019 meeting, in an effort to conceal all conspiracy activity and obstruct the criminal investigation, Defendant Baugh, acting within the scope of his employment with eBay, directed Defendants Harville, Gilbert, Cooke, Popp, Stockwell and Zea to delete the WhatsApp messages on their phones.

274. On or about August 26, 2019, Defendant Harville was interviewed by eBay's legal department in response to NPD's request for assistance. The interview was conducted over the phone, without careful confidentiality protocols, instead of in person where the integrity of the investigation could be maintained.

275. Defendant Harville kept the call on the speakerphone to allow Defendants Baugh, Gilbert, Cooke, Popp, Stockwell and Zea to hear the conversation, to collectively enable those Defendants to align their statements, and maintain a consistent story throughout the investigation, to protect Defendants Wenig, Wymer and Jones.

276.   Defendant Harville said he attended the conference in Boston with Defendant Zea, and that he had rented a vehicle in order to visit his sister, who lived in the area.

277.   On or about August 26, 2019, the legal department also conducted Defendant Popp's "interview" over the phone rather than in person. Because of eBay's lack of attention and adherence to protocols during the investigation, Defendant Popp was also able to allow Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea to listen in, so the Defendants could continue to attempt to maintain a consistent story, and thus obstruct the criminal investigation, and protect Defendants Wenig, Wymer and Jones.

278.   Defendant Popp said that Defendant Zea traveled to Boston with Defendant Harville in order to attend the conference.

279.   Defendant Baugh, acting within the scope of his employment with eBay, then directed Defendant Popp to monitor the subsequent "interviews" of Defendants Stockwell and Zea.

280.   Defendant Popp was able to coach Defendants Stockwell and Zea when they spoke with eBay's legal department, because they were not physically present for the critical "investigation" and the "interviews" were conducted over the phone. Defendant Baugh informed the others that eBay was "interviewing" them to check off boxes because Defendant Baugh knew he was acting at the direction of and with "cover" from Defendants Wenig, Wymer and Jones.

281.   On or about August 30, 2019, eBay placed Defendants Baugh, Popp and Harville on administrative leave. On the same day, Defendant Baugh directed an eBay employee to retrieve computers from the GIC and bring them to his house again in an attempt to protect Defendants Wenig, Wymer and Jones.

282.   Defendants Baugh and Gilbert instructed Defendant Zea to contact PFC payroll team and ask them to delete the email with gift card receipts.

283.   On or about September 6, 2019, still acting within the scope of her employment with eBay and in an effort to obstruct the criminal investigation, Defendant Popp posted five new tweets to one of the Twitter accounts created and used to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, to create the appearance that those responsible for the torture were still at large.

284.   On information and belief, in September of 2019, eBay terminated the employment of Defendants Baugh, Harville, Gilbert, Popp, and Stockwell. On information and belief, PFC terminated Defendant Zea.

285.   Shortly after their termination, Defendant Baugh had Defendants Harville, Gilbert, Popp, Stockwell and Zea over to his house to discuss the conspiracy. During that meeting, Defendant Baugh showed the group texts from Defendant Wenig saying that he was sorry to see Baugh go, and Baugh said his loyalty would pay off.

286.   On information and belief, Defendant Cooke was promoted from Manager to Director following the termination of the other employees, and after eBay issued a press release stating that they had "terminated all involved employees," once again calling into question the integrity of any internal eBay "investigation." Defendant Cooke was interviewed by the USAO, while Attorney Andrew Phelan, acting on behalf of Defendant eBay, sat in the interview. On information and belief, Defendant Cooke's employment was later terminated after the federal charging document became public and then he was subsequently charged in Federal District Court, District of Massachusetts with conspiracy to commit cyberstalking and conspiracy to tamper with a witness.

287.   Defendant Wenig departed eBay at about the same time as the other Defendants, in mid-
September 2019, with a $57 million severance package. There was a clawback provision
in place in Defendant Wenig's contract, allowing eBay to "clawback" the $57 million due
to wrongdoing. While there appear to be at least two meetings within eBay regarding
whether to clawback Defendant Wenig's funds, eBay never did so. The first meeting
regarding Defendant Wenig's clawback was not until June 23, 2020, three days after the
criminal indictments and the stalking, harassment and intimidation campaign was made
public, and eBay first had to answer for the company's conduct.

288.   Defendant eBay allowed Defendant Wenig to resign, rather than enacting a "for cause
termination" later calling his behavior "inappropriate." eBay's action allowed Defendant
Wenig to reap the substantial benefits of his severance pay and equity holdings, while
also receiving the benefit of legal and travel costs for cooperation in future litigation, as
detailed in his 2019 severance agreement. As noted in the 2019 severance agreement,
eBay's compensation committee voted to allow Defendant Wenig's acceleration of
vesting of his equity related payments.

289.   On information and belief, eBay terminated Defendant Wymer's employment with an
unknown and undisclosed severance package.

290.   On the day that the charges became public, nearly one year after the incidents, Jamie
Iannone, eBay's CEO, sent an email to the Steiners in an attempt to absolve itself from
liability, referring to the actions of "several former eBay employees." This was an effort
to minimize the conduct, insisting the actions of Defendants Baugh, Harville, Gilbert,
Popp, Stockwell and Zea "are not representative of the values held by eBay team
members," despite that eBay knew of Defendants Wenig, Wymer and Jones'

involvement. The email further claimed, "[t]hose responsible hid their actions from the company." While Iannone indicated that eBay had conducted its own internal investigation during the time of law enforcement's investigation, notably, eBay still had not terminated Defendant Cooke, and the email did not address why Defendant Cooke was retained and promoted after eBay's internal "investigation," or why eBay never turned over interviews of Defendants Wenig or Jones.

291.    While eBay did conduct its own internal "investigation," it was aimed at saving the company and its top executives, including Defendants Wenig and Jones, from prosecution. eBay never provided any transcripts or notes of any interviews of any employees, and provided only oral reports of some interviews. eBay never shared the contents of the interviews with Defendants Wenig, Wymer or Jones with the USAO. eBay hired Morgan Lewis on August 28, 2019 to conduct the investigation, but also retained the firm to represent eBay in conjunction with the USAO investigation, in order to convince the USAO not to prosecute eBay.

292.    On March 21, 2021, Amir Vonsover, a lawyer from eBay's legal department, and Attorney Andrew Phelan, on behalf of Morgan Lewis, met with USAO to convince the government not to charge eBay criminally. During the meeting, the attorneys suggested reasons not to indict eBay, Wenig or Wymer.

293.    Additionally, while Morgan Lewis and eBay did admit Defendants Wenig and Wymer's communications were "inappropriate" during its lobby to the USAO, they took the position that Defendant Wenig's conduct may have been negligent or reckless, but in their opinion it was not criminal.

294.    Morgan Lewis and eBay also admitted that eBay could be charged criminally because the company is vicariously liable for the conduct of its employees. In a recent 10-K filing, it also admitted that it was under criminal investigation as a result of the actions forming the basis of this Complaint.

295.    When Attorney Andrew Phelan communicated with the USAO and shared interviews and other documents, he orally relayed the contents of several eBay employee interviews to AUSA Seth Kosto, but tellingly did not reveal the contents of the interviews with Defendant Wenig or Defendant Jones, two long-term executives within eBay.

296.    Although supposedly hired to conduct and internal investigation, neither Morgan Lewis or any attorney acting on its behalf ever prepared a report outlining the investigation, or its findings. The investigation was a sham.

**eBay's Hiring Practices, Lack of Supervision & Culture**

297.    Through its hiring practices, Defendant eBay was able to hand-select a security team equipped to work on its behalf to neutralize what it deemed to be "threats" to eBay, and used Defendant PFC through Defendant Krystek to actively recruit individuals with the background and experience necessary.

298.    Prior to Defendant Baugh's employment with eBay, he was a U.S. government agent involved in national security activities. While working as a private sector security contractor, Defendant Baugh was enlisted by U.S. government agencies, via a "handler" from the FBI, to assist the government agencies with covert operations. Defendant Baugh engaged in various activities on the government's behalf, including conducting physical and electronic surveillance, engaging in physical trespass, using false pretenses and fake

identities, and gaining unauthorized access to private computer systems, documentation, and resources, to further national security objectives.

299.    During covert government operations, Defendant Baugh used private security resources, then secretly reimbursed the costs using government provided cash, similar to the "expensing loophole" between Defendants PFC and eBay used here. Defendant Baugh also used false pretenses to gain the trust of individuals investigated by the government, and was frequently instructed to use false "cover stories" if questioned by local law enforcement or corporate representatives, in order to protect the US Government.

300.    Mr. Baugh was consistently instructed by his FBI handler to stick with his false "cover story" if confronted or questioned by local law enforcement or corporate representatives about his actions in connection with these covert government operations.

301.    Before eBay hired Defendant Baugh, he was working as the Senior Director of Special Operations for Security Industry Specialists, Inc. It was through this employment that he first established a relationship with Defendant eBay.

302.    Defendant Baugh was hired by Defendant eBay in September of 2016.

303.    Defendant eBay and its executives, including Defendants Wenig and Jones, were well aware of Defendant Baugh's background when he was hired and promoted and given bonuses, and they expected he would use strategies and tactics he learned in service of the U.S. government to address EcommerceBytes and the Steiners.

304.    Defendant eBay knew or should have known that Defendant Baugh was unfit for position as eBay's Senior Director of Safety and Security in charge of the Global Security and Resiliency department. Defendant eBay's placement of Defendant Baugh in this position

created an unreasonable risk of harm to third parties, including the Steiners and EcommerceBytes.

305.   When hiring Defendant Baugh, and enlisting him as eBay's Senior Director of Safety and Security in charge of the Global Security and Resiliency department, Defendant eBay and its executives, including Defendants eBay, Wenig and Jones, were aware of Defendant Baugh's background and expected he would use the same strategies and tactics he used when working on behalf of the U.S. government, and cause his subordinates to engage in the same tactics, in order to address the Steiners and their trade publication. Prior to Defendant Baugh's promotion, James Fussell fulfilled the role of Senior Director of Safety and Security, but Defendant Baugh convinced Defendant Jones to fire Fussell, and replace him with Defendant Baugh.

306.   Defendant eBay also hired Defendant Baugh because they knew that his past experience working with Government agencies would cause Defendant Baugh to have the utmost loyalty and secrecy on behalf eBay, and its executives. Defendant eBay's hiring of Defendant Baugh, and its failure to supervise Defendant Baugh, was the proximate cause of the Steiners and EcommerceBytes' injuries. Defendant Baugh weaponized his team of analysts to engage in conduct that was clearly criminal, including sending harassing and threatening Twitter messages and packages.

307.   Reflecting a toxic culture that goes to the very top of many powerful technology companies, senior eBay executives, including Defendants Wenig and Jones, hired Defendant Baugh precisely because of his prior experience as a government security professional with a demonstrated ability to solve difficult problems through unconventional means. The purpose in hiring and promoting someone like Defendant

Baugh was to use him as a tool to use to carry out the company's objectives, while attempting to shield and insulate C-Suites executives from liability.

308.   Since, according to General Counsel Huber, ordinary legal tools were insufficient to address the issues posed by the Steiners, eBay executives turned to Defendant Baugh, and gave him marching orders to solve the problem using less conventional means. When Defendant Wymer directed Defendant Baugh to do "whatever it takes" to eradicate the Steiners, General Counsel Huber was copied on the email announcing this directive.

309.   That executives at eBay, including Defendants Wenig, Wymer and Jones, used Defendant Baugh and his security team – rather than the legal department or the public relations department – and explicitly indicating "ordinary" means were not sufficient, plainly implies Defendant eBay was specifically calling upon Defendant Baugh *because of* his background and experience, and the approach he would use in eradicating the Steiners, such as through surveillance, trespassing, threats to kill, and other illegal activity.

310.   Although Defendant Baugh was on the security team, his workspace was directly outside of Defendant Wenig's conference room office suite. Defendant Wymer's conference room office suite was adjacent to Defendant Wenig's suite, with Defendant Jones' suite next to his. All of the suites were in close proximity to Defendant Baugh, to allow for ease of communication on a daily basis.

311.   Defendant Baugh also had Defendant Wenig's personal cell phone number.

312.   Defendant eBay hired Defendant Wymer even though eBay knew or should have known that Defendant Wymer was unfit for the position of eBay's Senior Vice President and Chief Communications Officer. Defendant eBay's placement of Defendant Wymer in this position created an unreasonable risk of harm to third parties, including the Steiners. In

its lobby to the USAO, Defendant eBay admitted that Defendant Wymer was "green" and "inexperienced" which rendered him unable to push back against Defendant Wenig.

313.   eBay's placement of Defendant Wymer in this position was the proximate cause of the Steiner's injuries. eBay's negligent hiring caused Defendant Wymer to fail to reach out to the Steiners to discuss what eBay perceived to be negative news coverage or issue a public statement. eBay's hiring of Defendant Wymer caused Wymer to instruct Baugh to "burn the Steiners to the ground." eBay knew or should have known that after Defendant Wymer issued this directive to Defendant Baugh that it would put the Steiners in significant danger and that it would, in turn, destroy EcommerceBytes. Defendant eBay's negligence caused the Steiners to suffer emotional, physical and mental damages as well as damages to EcommerceBytes. eBay had actual and constructive knowledge of Defendant Wymer's unfitness and knew or should have known that placing Defendant Wymer in such a position would proximately cause the Steiners and Steiner Associates, LLC's injuries.

314.   The culture itself within eBay fostered an almost cult-like atmosphere where employees were not only expected, but required, to fulfill company directives, regardless of criminality. On information and belief, eBay was known to break down analysts psychologically, and there was a high turnover rate for employees, which executives at eBay knew or should have known was due to the culture.

315.   Defendant Baugh would orchestrate routine active shooter drills when the analysts would least expect it. Defendant Baugh would announce, "There's an active shooter in Building Two!" Everyone would scramble. The drills were conducted all the time; Defendant Baugh and other supervisors would create chaotic scenarios where role playing was

expected while yelling out "man (or woman) down", "shooter to your left", "get the safety equipment out", "Bang, Michelle has just been shot" "There's bullets flying over your head, what are you going to do?", "You're dead! Bang, you're all dead!" all while security safety notifications were required to be sent to eBay staff. Sometimes the room would fill up with smoke. The drills were stressful and intended to be psychological in nature for the analysts. Given the nature of the drills – chaos, smoke and announcements to the rest of eBay staff – it was impossible for Defendants Wenig, Wymer and Jones not to be aware of Defendant Baugh's actions. Defendants eBay, Wenig, Wymer and Jones failed to properly supervise.

316. For years, Defendant Baugh engaged in a pattern of breaking down the analysts, firing them without cause, and creating a toxic work environment.

317. Defendant Baugh would also show the analysts graphic videos. For example, he once showed the group a video of footage taken after a car crash where there was a car on fire, surrounded by severed limbs and a decapitated head. If Defendant Baugh noticed anyone looking away or flinching, he would decide you were "weak" and being weak was a reason for termination.

318. Defendant Baugh, the ringleader, referred to himself as "Dad." He used off-kilter techniques to get within the heads of the other Defendants. On one occasion, after discovering a knife on a barbeque grill onsite, Defendant Baugh warned his team that a deranged person could have found it and used it to stab someone, and proceeded to maniacally stab a chair to prove this point.

319. Defendant Baugh, acting within the scope of his employment with eBay, would often call meetings where he would play movie clips in an effort to perpetuate the code of silence

and the requirement that all members of the conspiracy display the utmost loyalty towards other members of the group. This behavior was well known and could have easily been corrected or prevented by eBay. During one such meeting, Defendant Baugh played a clip from "American Gangster" where Denzel Washington casually executed a man in front of a crowd in order to prove a point. On another occasion, Defendant Baugh played a scene from "The Wolf of Wall Street" where the federal government was investigating lurid activities, but somehow none of the perpetrators could recall a thing. Defendant Baugh also played a clip from "Meet the Fockers" about a retired CIA agent's "circle of trust" and Defendant Baugh would often warn "we'll keep it in the circle of trust" when secrets within the Global Resiliency department arose.

320.   On another occasion, Defendant Baugh went as far as to have all employees' personal belongings stripped from their lockers and dumped into trash bags by an off-duty officer in order to teach them that they were not entitled to privacy at work. Defendant Baugh then played a clip from "Full Metal Jacket" about locker discipline.

321.   Defendant Baugh would frequently embarrass his subordinates publicly. For example, Defendant Baugh had a video of Defendant Zea falling off a stool in the office saved on his phone. Defendant Baugh would show it others whenever he wanted to belittle Defendant Zea. Defendant Baugh even showed the video to Defendant Wenig to degrade Defendant Zea, which demonstrates Defendant Wenig was directly exposed to the way in which Defendant Baugh treated his subordinates and employees, but failed to properly supervise.

322.   The GSR employees, reporting to Defendant James Baugh consisting mainly of women, were referred to as "Jim's Angels" amongst eBay executive leadership, demonstrating

that the sick and dysfunctional culture was well known and rose to the top echelons, and that they failed to properly supervise.

323.   Defendant Baugh would frequently chastise the analysists for making him look "incompetent." Frequently, this was Defendant Baugh taking out on the analysts' criticism Defendant Baugh received from Defendant Wenig. For example, in October of 2017, the GIC failed to report on the Northern California Wildfires before Defendant Wenig asked Defendant Baugh about them. When Defendant Baugh was unable to provide Defendant Wenig with updated information, Defendant Wenig chastised him, so Defendant Baugh in turn went into a rage against his subordinates, insulting their intelligence and mental capacity. This became a frequent pattern, and demonstrated the way in which the abuse carried down multiple levels of the corporate structure, starting with Defendant Wenig.

324.   Despite that Defendants eBay, Wenig and Jones knew or should have known of Defendant Baugh's treatment of other employees, Defendants eBay, Wenig and Jones never investigated, reassigned, disciplined or discharged Defendant Baugh. Defendant eBay's failure to supervise Defendant Wenig, Wymer and Jones and, in turn, their failure to supervise Defendant Baugh, was the proximate cause of the Steiners' injuries, and led to the criminal acts against the Steiners and EcommerceBytes.

325.   Defendant eBay, Wenig and Jones' failure to supervise and their retention of Defendant Baugh was the proximate cause of the Steiners' damages, including their physical, mental, emotional and financial harm.

326.   Defendant Harville was also infamous within the company for his rude, corrupt, and misogynistic persona. Defendant Harville was reported to HR numerous times for saying

extremely graphic things. He called the analysts "Girl Scouts" and constantly insulted them over their age and gender. Defendant eBay failed to properly supervise him.

327.   There was also a pervasive drinking culture throughout eBay, not limited to the security department. There was the bar on campus, built at Defendant Wenig's request, and members of the security department, including Defendant Baugh's team, would drink at all hours of the day and night, while on the clock. Defendants Baugh and Cooke both admitted at their sentencing to starting to drink early in the morning, and drinking throughout the day. Defendant Zea has reported that Defendant Baugh forced her and other analysts to drink when in his presence, including going out for expensive dinners – charged on company cards – where everyone was expected to drink heavily. Defendants eBay, PFC, Wenig, Krystek and Jones failed to properly supervise.

328.   Defendant Baugh would also require the analysts to work until 10pm almost every night, and he kept alcohol there and would require his subordinates to drink with him. Defendant Baugh was verbally abusive, and other security teams would hear him yelling at the analysts through the walls.

329.   Defendant Baugh would also force the analysts to go out to dinner with him, and drink heavily. Defendant Baugh would charge expensive and lavish dinners and trips on the PFC credit card with Defendant Krystek's approval. One such trip was to Las Vegas, where Defendant Baugh and others spent $10,000.00 on Defendant Zea's PFC credit card in one night, on dinner and strip clubs. Defendant Baugh would not allow Defendant Zea to leave the trip because they were using her PFC credit card, as authorized by Defendants PFC and Krystek. Leading up to these events, there were over $100,000.00 in charges over a two-three month span. Defendant Zea would submit the credit card bills

and the underlying receipts to Defendant PFC. The PFC expense reports were reviewed both Stephanie Hughes and Defendant Krystek at PFC, and Hughes would send the bills and requests for payment to eBay.

330.    When Defendant Krystek and other PFC executives saw the strip club on Defendant Zea's credit card report, they laughed and told her about the last time they had been to that strip club. Neither Defendants PFC nor Krystek had any concerns about a hostile work environment, or that the PFC credit card was being used for non-work purposes. Defendant PFC failed to supervise.

331.    An October 28, 2019 Reddit post details that others within eBay knew about both the issues within the Global Security and Resiliency team, as well as the campaign against the Steiners before the news broke.

332.    Defendant eBay owed a duty of care to third-parties including the Steiners because they knew or should have known of their employees' propensity to engage in tortious conduct. Defendant eBay failed to properly supervise Defendants Wenig, Wymer, Jones, Baugh, Harville, Gilbert, Cooke, Popp and Stockwell. Had Defendant eBay properly supervised Defendants eBay knew or should have known that Defendants Wenig, Wymer and Jones became obsessed with Ina and David Steiner and EcommerceBytes. Defendant eBay knew or should have known that Defendant Wenig, Wymer and Jones and other John and Jane Doe Defendants directed other eBay employees and contractors to monitor EcommerceBytes on an hourly basis, then directed the acts that resulted in the stalking, harassment, threats and torture of the Steiners. Had eBay properly supervised the Defendants, they could have stopped eBay employees from using unconventional means

and engage in criminal activity including but not limited to stalking, harassment, and threats to kill the Steiners to stop the Steiners' reporting.

333.   Defendant eBay was negligent in retaining and granting bonuses to Defendant Baugh after Defendant eBay was aware or should have become aware of Defendant Baugh's harassment and mistreatment of subordinates, his use of corporate funds for personal use, his violent actions, including stabbing a chair, and demonstrating an unstable mental and emotional capacity.

334.   Defendant eBay knew or should have known that Defendant Baugh was capable of and would likely commit tortious and/or criminal acts. Defendant Baugh in fact engaged in overtly improper and violent acts during the course of his employment relationship with eBay. Defendant eBay failed to investigate, reassign, discipline or discharge Baugh to prevent the Steiners and EcommerceBytes injuries. eBay admitted in its lobby to the USAO that they "uncovered new information about Baugh's unsuitability as a manager." This suggests both that eBay had at least *some* information about Defendant Baugh's unsuitability as a manager before the conspiracy, but also that it learned new information that it should have known before Defendant Baugh and his subordinates harassed, stalked, threatened and tortured the Steiners. Had eBay investigated, disciplined, reassigned or discharged Defendant Baugh for his unsuitability as a manager before the conspiracy, then the Steiners would not have been harassed, stalked, threatened and tortured by the Defendants and EcommerceBytes would not have suffered a 64% drop in revenue.

335.   The privilege logs generated in Defendants Baugh and Harville's criminal cases suggest eBay was immediately aware of the Reddit thread and that it was a topic of concern. The

logs refer to documents dated October 30, 2019 shared by Marie Huber, Chief Legal
Counsel at eBay, to outside counsel, Andy Phelan: (1) "Project Lewis – Reddit posting
and revised statement – Privileged," and (2) "Project Lewis Reddit posting and draft
release Privileged."

336.    After the criminal defendants were fired, Defendant Baugh kept in touch to provide
Defendants Harville, Cooke, Gilbert, Popp, Stockwell and Zea with "talking points"
when speaking with investigators. Additionally, before Defendant Stockwell's proffer
with the USAO, he paid her $5,000.00 and had sex with her multiple times in order to
influence her statements to the Government.

337.    eBay admitted in the aftermath that the internal investigation "uncovered new
information about Baugh's unsuitability as a manager." Defendants eBay, Wenig and
Jones failed to properly train and supervise Defendant Baugh.

338.    All acts or omissions alleged which caused the Steiners and EcommerceBytes' injuries
were ratified by eBay and its Board of Directors. eBay and its Board of Directors knew of
the acts and omissions by the Defendants, as well as the culture and hiring practices, and
failed to take any actions to stop it.

**The Relationship Between eBay and PFC**

339.    PFC was hired by eBay and entered into a contract to supply analysts to the Global
Security and Resiliency Department in January of 2019.

340.    Before eBay, Defendant Baugh was employed by Security Industry Specialists, Inc.,  and
established a relationship with eBay during the course of this employment.

341.    Within a span of months, Defendants Baugh and Popp fired at least 12 Concentric
Advisor analysts. For example, one analyst was fired for "his attitude," another was fired

for "trying to stir sh*t up" and a third was fired for finding another job behind Baugh's back.

342.    When Paul Florence, the chief executive officer of Concentric Advisors, learned of the intolerable work environment, he traveled from Seattle to eBay Headquarters and asked to speak to eBay management about the problem. Florence also spoke to Defendants Baugh and Popp, and expressed disapproval with the way the Concentric analysts were treated, and that the company was being treated as a "temp agency." Defendant Baugh terminated the Concentric contract on the spot.

343.    Florence said: "It felt like eBay was breaking the analysts down psychologically – making them doubt themselves, isolating them, turning them against each other."

344.    Defendant PFC through Defendant Krystek were actively recruited by Defendant Baugh because of its ability to funnel the type of employees necessary to carry out the criminal enterprise. Defendant Baugh had a 25-year relationship with Defendant Steve Krystek, the CEO of PFC.

345.    Defendant Harville also had a long-standing relationship with Defendant PFC, and sold knives designed by PFC on his website.

346.    Before receiving contracts with eBay, both Defendants Cooke and Stockwell worked for PFC.

347.    PFC did not have a background in intelligence analysis. Before its contract with eBay, they were strictly doing physical security. For example, their employees would pick up executives and high-profile athletes from the airport and provide them with security. Employees consisted almost entirely of former law enforcement and former military.

348.    Defendant Baugh informed the analysts that PFC was run by a friend – Defendant
Krystek - of his who would be "very hands off" and let Defendant Baugh "do whatever
he wanted." Defendant Baugh said he hired them as "puppets" and that since they had no
idea how to manage an intel unit, they were an integral part of the conspiracy because
they financed the conspiracy with the approval of Defendant Krystek. Defendant PFC
funded the laptops, gift cards, flights, hotels, car rental, funeral wreath, books,
pornographic magazines, pig mask and fetus, cockroaches and spiders. The conspiracy
would not have been successful without funding from Defendant PFC through Defendant
Zea's PFC credit card.

349.    Before securing the contract with eBay, PFC had only three employees.  It became a $4
million enterprise once it was hired by eBay to provide contractors and employees to the
security team.

350.    Defendants Baugh and Krystek would frequently meet, and Defendant Baugh would keep
Defendant Krystek informed regarding the Defendant PFC contractors. Defendant
Krystek would travel to eBay Headquarters to meet with Defendant Baugh, and
Defendant Baugh would also travel to Las Vegas to PFC Headquarters to meet with
Defendant Krystek. PFC through Defendant Krystek had a direct incentive to appease
Defendant eBay, where it was its biggest and most profitable client.

351.    Any complaint the PFC analysts brought to Defendant PFC was immediately reported
back to Defendants Popp and Baugh, so there was no means for the PFC contractors to
comfortably ask for help from PFC. Defendants PFC and eBay failed to supervise both its
employees and contractors. When Defendant Krystek would travel to eBay Headquarters
or direct other employees of PFC to travel to eBay Headquarters to check on the analysts,

Defendants Baugh or Popp would be present in the room so Defendant Zea and the other

contractors could not express any issues to Defendant Krystek or any other PFC

employee without fear of reprisal.

352.    In the time period leading up to the August 2019 events, Defendants Zea and Stockwell's

credit card limits were increased to $20,000.00 in order to fund the conspiracy, which

was approved by Defendant PFC through Defendant Krystek.

353.    Through the contract between Defendants PFC and eBay, Defendant PFC would cover all

financial expenses for analysts, then bill Defendant eBay for the expenses along with a

5% markup. During Defendant eBay's lobby to the USAO, it referred to this arrangement

as an "expensing loophole."

354.    Defendant PFC owed a duty of care to protect the Steiners from Defendant Zea's criminal

and tortious acts where Defendant PFC knew or reasonably should have known of

Defendant Zea's propensity to engage in criminal and tortious conduct especially since

Defendant Baugh was involved. Despite that Defendant PFC knew or should have known

that Defendant Zea was using her credit card to fund activities by the Global Security and

Resiliency Department, they continued to approve her bills, while receiving 5% markup

from eBay. Defendant PFC's failure to investigate Defendant Zea's use of the credit card

allowed the Defendants to use Defendant Zea's credit card to fund the conspiracy, to

harass, stalk, threaten and torture the Steiners, and interfere with their reporting.

Defendant PFC's failure to supervise Defendant Zea was the proximate cause of the

Steiners and EcommerceBytes' injuries. As a direct and proximate cause of Defendant

PFC's negligent supervision, the Steiners suffered damages including mental, emotional

and physical harm as well as interference with their ability to report for
EcommerceBytes, which resulted in a 64% decrease in advertising.

355.    PFC was negligent in retaining Defendant Zea. During the course of her employment,
PFC was aware or should have been aware that Defendant Zea was using her company
credit card for improper purposes, including expensive dinners and strip clubs. Instead of
investigating the improper purchases – which would have revealed that Defendant Baugh
was using the credit card as his personal slush fund – Defendant Zea's supervisors
laughed at the purchases, approved them, then sought reimbursement and a 5% markup
from eBay.

356.    Because of the lack of investigation into the use of Defendant Zea's credit card,
Defendant Baugh and his subordinates were able to fund and carry out the conspiracy to
stalk, harass, threaten and torture the Steiners.

357.    Defendant PFC's negligent retention of Defendant Zea was the proximate cause of the
Steiners and EcommerceBytes' injuries.

358.    On September 17, 2019, Defendant Baugh and Defendant Krystek had dinner together.
The next day, Defendant Baugh sent Defendant Krystek a follow-up email, where he
outlined their discussions from the evening prior. Defendant Baugh first reiterated that
"its in all of our best interest to get this case handled (go away) by a solid criminal
defense attorney. eBay has been absolved from it." Defendant Baugh also urged
Defendants Krystek and PFC to keep Defendant Zea and Stockwell on the payroll.

359.    After the Natick events occurred and Defendant Zea was fired, Defendants Krystek and
PFC did not conduct any remedial training within the company or conduct any
investigation to ensure a similar incident never occurs again.

360.   Defendant PFC is vicariously liable for the actions of Defendant Zea, where she was an employee of PFC and was acting within the scope of her employment when she harassed, stalked, threatened, defamed and caused the Steiners and EcommerceBytes' injuries. Defendant PFC had a duty to manage and supervise Defendant Zea.

361.   Defendant PFC knew or should have known of Defendant Zea's actions and their failure to supervise Defendant Zea, Defendant PFC acquiesced in Defendant Zea's conduct, and either directed or were aware of her activities in relation to the Steiners, and that her credit card was being used to fund the conspiracy.

**The Criminal Cases and the Defendants' Admissions**

362.   Defendants Baugh, Harville, Gilbert, Cooke, Popp, Stockwell and Zea were charged in the Federal District Court, District of Massachusetts with various offenses relating to the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, and the attempted cover up and obstruction of the criminal investigation.

363.   On May, 22, 2020, a two-count Information was returned for Defendants Gilbert, Popp, Stockwell, and Zea, charging them with the following:

    a.   Conspiracy to commit cyberstalking, 18 U.S.C. § 371; and

    b.   Conspiracy to tamper with a witness, 18 U.S.C. § 371.

364.   On June 11, 2020, a Complaint was issued charging Defendants Baugh and Harville with the following:

    c.   Conspiracy to commit stalking through travel and through facilities of interstate commerce, 18 U.S.C. § 371;

    d.   Stalking through interstate travel, 18 U.S.C. § 2261A(1)(B);

    e.   Stalking through facilities of interstate commerce, 18 U.S.C. § 2261A(2)(B);

      f.   Witness tampering, 18 U.S.C. § 1512(b)(3); and

      g.   Destruction, alteration and falsification of records in a federal investigation, 18 U.S.C. § 1519.

365.   On July 7, 2020, a two-count Information was returned for Philip Cooke, charging him with:

      h.   Conspiracy to commit cyberstalking, 18 U.S.C. § 371; and

      i.   Conspiracy to tamper with a witness, 18 U.S.C. § 371.

366.   In October 2020, Defendants Popp, Stockwell, and Zea pled guilty to conspiracy to commit cyberstalking in violation of U.S.C. § 371 and conspiracy to obstruct justice in violation of U.S.C. § 371. Defendants Gilbert and Cooke pled guilty to conspiracy to commit cyberstalking and conspiracy to commit witness tampering. The charges of conspiracy to commit cyberstalking, conspiracy to tamper with a witness, and conspiracy to obstruct justice each carry a sentence of up to five years in prison, three years of supervised release, a fine of up to $250,000 and restitution. In addition to their own individual conduct, each of the Defendants admitted the following during their plea hearings:

      j.   As recited by the Government, between approximately August 5, 2020 and August 23, 2020, Defendants Popp, Zea, Stockwell, Gilbert, Baugh, Harville, Cooke and others:

      [A]ll then employees or contractors of eBay, Inc., the multinational eCommerce company, agreed to engage in a stalking campaign targeting a husband and wife who lived in Natick, Massachusetts…The campaign targeted [the Steiners] for their roles in publishing a newsletter that reported on issues of interest to people who sold goods on eBay. Senior executives…at eBay were frustrated with the newsletter's tone and content and with the tone and content of comments that appeared underneath the newsletter's article.

The stalking campaign…arose from communications between eBay senior executives and Jim Baugh, who was then eBay's senior security officer, it was intended to intimidate or harass [the Steiners], and was a course of conduct that included sending threatening communications to the victims over Twitter, which is an instrumentality of interstate commerce, ordering unwanted and securing deliveries to the [Steiner's] home through Amazon and other instrumentalities of interstate commerce, and to Zea's, Harville's, Baugh's and Popp's travel, from California to Natick, to surveil the victims in their home and community.

The deliveries ordered to the [Steiner's] home [] included a book on surviving the death of a spouse, a bloody pig mask, a fetal pig, a funeral wreath, and various live insects. The harassment also featured Craigslist posts on the internet invited the public for sexual encounters or estate sales at the [Steiner's] home.

The threatening Twitter messages were written to [Ina Steiner] and sometimes addressed to [David Steiner] as if they had been sent by eBay sellers who were unhappy with [the Steiners'] coverage in the newsletter. Some of these messages posted the [Steiner's] address publicly on the internet and threatened to visit the [Steiners] at their home…

Mr. Baugh and Mr. Harville and Ms. Zea also traveled to Natick on August 15th. Mr. Baugh and Mr. Harville intended to install a GPS device on the [Steiner's] car, but the car was safe in the [Steiner's] garage. The [Steiner's], however, spotted the surveillance team on August 16th, which led them to call the Natick Police Department in fear.

Ms. Zea, Mr. Baugh, and Ms. Popp, who arrived to replace Mr. Harville on August 17th, continued surveillance even after having been spotted by the [Steiners]. The Natick police, which was investigating the deliveries, threats, and the surveillance, connected Ms. Zea and Mr. Harville to two of the rented cars and then to eBay, who they reached out to for assistance.

k.   Defendants Harville, Gilbert, Popp, Stockwell and Zea admitted that all co-

conspirators "agreed to harass or intimidate [the Steiners] and to use the facilities

of interstate commerce to engage in a course of conduct that caused or would

reasonably be expected to cause substantial emotional distress to [the Steiners]."

367.   On November 3, 2020, a federal grand jury in Boston indicted Defendants Baugh and

Harville for conspiracy to commit stalking through interstate travel and through facilities

of interstate commerce, stalking through interstate travel, stalking through facilities of

interstate commerce, witness tampering, and destruction, alteration, and falsification of records in a federal investigation.

368. Defendant Baugh pled guilty on April 25, 2022 and Defendant Harville pled guilty on May 12, 2022.

369. In addition to the facts admitted to by Defendants Harville, Cooke, Gilbert, Popp, Stockwell and Zea, Defendant Baugh admitted the following additional facts:

> [O]n August 15, 2019, Mr. Baugh flew interstate from California to Boston with Ms. Zea; and that upon arrival at Logan Airport, the pair met up with Mr. Harville, rented cars and drove out to the victims's residence in Natick in that unsuccessful attempt to install a GPS device on the victim's car.

> With respect to Counts Six and Seven, the use of the instrumentalities of interstate commerce in furtherance of stalking, the evidence would show that on August 5, 2021, Mr. Baugh convened a meeting at the GIC at eBay's corporate headquarters with Stephanie Stockwell, Veronica Zea, Stephanie Popp and others. He directed them to brainstorm the harassing packages that could be sent to the victims's residence. This meeting led to the delivery of the harassing packages…

> On or about August 6, 2019, Mr. Baugh convened a second meeting among himself, Mr. Gilbert, Ms. Popp, and Mr. Cooke. In that meeting, Mr. Baugh and those in attendance planned the online harassment that would lead to the White Knight Strategy that I described a moment ago, and that led to the delivery of those harassing and threatening communications that I described a moment ago. In Natick, during the course of surveilling Victim 1 and Victim 2, Mr. Baugh dialed into a telephone conference line and used that facility of interstate commerce to communicate with other members of the surveillance team in part to monitor any police activity that might compromise the surveillance team.

> Mr. Baugh also used WhatsApp in a facility of interstate commerce to communicate with his coconspirators about the surveillance and about the content of the harassing messages that would be sent to Victims 1 and 2.

> [O]n August 21, 2019, at approximately 9:34 a.m. at Boston's Ritz Carlton Hotel the evidence would show that with the intent to prevent NPD Detective Jason Sutherland from speaking with Ms. Zea, Mr. Baugh falsely told the detective that Ms. Zea was his wife. Mr. Baugh also stated that Ms. Zea didn't want to speak with the detective; and within 10 minutes Mr. Baugh took -- took Ms. Zea away from the Ritz Carlton where the police were looking to speak with her to another Boston area hotel…

> [O]n August 21, 2019, Mr. Baugh learned from Brian Gilbert, who had attended the meeting with the NPD, that the NPD was looking into the use of a prepaid debit card in the San Jose, California, area to purchase one of the harassing deliveries. Veronica Zea, one of the coconspirators, had, in fact, made that purchase using that prepaid debit card, but Mr. Baugh directed a subordinate, Stephanie Stockwell, to assemble a list of eBay, quote, persons of interest in the Bay area that could be used to throw the NPD off the trail of Ms. Zea as a suspect, and that persons of interest list did not include Ms. Zea's name.

> [O]n or about August 26, 2019, there was a meeting at eBay headquarters among Mr. Baugh and his coconspirators, and during that meeting Mr. Baugh directed the group to delete their WhatsApp and electronic messages concerning the trip to Boston and the harassment of the victims.

370.   Defendant Baugh was sentenced to 57 months of imprisonment, followed by two years of supervised release. Defendant Harville was sentenced to 24 months of imprisonment, followed by two years of supervised release. Defendant Cooke was sentenced to 18 months of incarceration, followed by three years of supervised release. Defendant Popp was sentenced to one year and one day, followed by 24 months of supervised release. Defendants Stockwell and Zea were each sentenced to two years of probation.

371.   While Defendants eBay, Wenig, Wymer and Jones were never charged criminally, eBay admitted when attempting to convince the USAO not to charge eBay (and inferentially, Defendant Wenig), eBay acknowledged that Defendants Wenig and Wymer set an "improper tone" that was critical of the Steiners and EcommerceBytes and that their tone "contributed significantly to the crimes in Natick."

372.   Defendant eBay discovered that Defendant Wymer deleted all texts with Defendants Wenig and Baugh relating to the Steiners, EcommerceBytes and/or the Natick events. Despite that the lower-level employees were charged with obstruction of justice for the same such acts, Defendant Wymer was never charged criminally.

373.   Defendant eBay admitted to the USAO that eBay, Wenig and Wymer could be charged

criminally, but offered several reasons why the USAO should decline to charge eBay,

including its claim that "remains ready to address restitution with the victims."

**The Steiners have been gravely and irreparably injured – mentally, emotionally, physically and financially**

374.   David and Ina Steiner have worked together for the past 23-years, building a small

publishing company from the ground up.

375.   Over the years, the Steiners have built up the business to the point where it could sustain

them financially, however, the events from August of 2019 have stripped the Steiners of

their financial security.

376.   The Steiners have devoted a tremendous amount of time and effort developing

EcommerceBytes into a reputable trade publication, serving as the leading source of

ecommerce information nationwide. The trade publication built its goodwill and is highly

regarded within the ecommerce community, known for providing balanced reporting. Ina

Steiner, who serves as the face of EcommerceBytes, has gained considerable recognition

and esteem for her vast knowledge of ecommerce.

377.   Once known as a reporter and expert on eCommerce, Ina Steiner and EcommerceBytes

are now widely regarded as "eBay critics," tarnishing the good name Ina created with

decades of reputable research and reporting, and the reputation she accomplished for

EcommerceBytes.

378.   Even after inflicting so much pain and damage on the Steiners, when the criminal case

was made public in 2020, eBay continued to degrade the Steiners and EcommerceBytes

by referring to them as "a blogger, who writes about the Company, and her husband,"

instead of 20-year veterans of the ecommerce industry.

379.   The Defendants knew or should have known that the commercial value of EcommerceBytes' name, image and identity would be substantially diminished and tainted by the Defendants' actions, and in fact, the commercial value of EcommerceBytes was and continues to be, substantially diminished. The EcommerceBytes name is now associated with the misconduct of eBay and those acting on its behalf, and the false implication eBay attempted to portray that the trade publication was unfairly reporting negatively on eBay.

380.   The Defendants' conduct manifested a depraved disregard for the Steiners' autonomy, sense of safety, psychological well-being and their good name.

381.   The Steiners' publication, EcommerceBytes, which relies on both advertisements as well as sourced information to provide content for news articles, has been severely impacted by the conduct of Defendants eBay, PFC, Wenig, Wymer, Jones, Krystek, Baugh, Harville, Gilbert, Cooke, Popp, Stockwell, Zea, John and Jane DOE. The Defendants knew or should have known that their conduct would stifle reporting, and would cause would-be sources not to want to work with the Steiners for fear that they could also be terrorized by eBay. Without sources and new content, EcommerceBytes is unable to fully provide new material and content for its readership and subscribers, which was reasonably foreseeable to the Defendants. Not only have pre-existing customers ceased contracting with the Steiners, prior sources have been reluctant to speak to the Steiners for fear that they will next be targeted by eBay, creating a stifling effect on honest reporting, which was one of the goals of the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners.

382.   At all material times, the actions or omissions of each Defendant were intentional and/or wanton and/or willful and/or reckless and/or callous and/or malicious and/or deliberately indifferent to Ina and David Steiner's rights.

383.   David and Ina Steiner, as well as their business, have incurred economic harms and losses as well as ongoing stress and anxiety as a result of the Defendants tortious wrongful and Constitutionally volatile conduct.

384.   Since the events in August 2019 became public, the EcommerceBytes website has steadily declined in revenue, and is now down 64% since the events. Because of the loss of sources, and, in turn, website content, website traffic is down 36%. The decrease in traffic has caused advertisers to stop contracting with EcommerceBytes, resulting in a loss of revenue.

385.   The Steiners have been unable to continue to pay their modest bills and household expenses with their EcommerceBytes revenue, so David has been forced to take his Social Security early in order to make ends meet. Since David has not yet reached the age of 66 and 10 months, when he would have received full benefits, he has received a penalty and will never have the opportunity to fully recoup his benefits. This will impact the Steiners' income for the remainder of their lives.

386.   The Steiners were planning to continue with EcommerceBytes into the foreseeable future, however, the Defendants' actions have caused irreparable damage to their name and reputation, which will have lingering effects for years to come. As a result, the Steiners have suffered future losses to their business and income.

387.   Because of the damage to the company and revenue, there is no longer the potential that another company or individual will attempt to acquire the business, which likely would

have amounted to a lump sum sale of the name and website. The Steiners likely now will never realize or accomplish this goal.

388. The Steiners have always lived modestly, and bought their home decades ago as a fixer-upper. They spent nights and weekends making it into the house of their dreams. In August of 2019, it became their prison, too frightened to leave, but also not feeling safe in their home. The sanctity and security of their home has been taken from them, and they still do not feel as safe as they once felt in their quaint home.

389. All Defendants intended or were negligent in causing Plaintiffs to suffer emotional distress by engaging in the above acts. The Defendants knew or should have known these actions would cause a reasonable person emotional distress.

390. The Steiners did in fact suffer extreme and severe emotional distress, including mental anguish, permanent and persistent psychological trauma, humiliation, embarrassment, and panic attacks.

391. All Defendants actions were the proximate cause of the Steiners' injuries. The Steiners have suffered and continue to suffer emotional distress, constant anxiety, persistent concern about their physical safety and when in public, and chronic fear they are being followed. The Steiners still suffer daily, even during ordinary events, such as a knock at the door or a package delivery, which causes the Steiners to relive the torture and psychological turmoil as a result of the Defendants' actions.

392. Throughout the events, David and Ina lost weight, and could not sleep. The Steiners suffered physical harm, and both experienced panic attacks, chest pains, and had trouble breathing. David Steiner had a panic attack so severe, he thought he was having a heart attack. They still continue to have issues sleeping, have constant anxiety both inside and

out of their home and look over their shoulder at all times, continually watchful of strangers. The acts exacerbated David Steiner's Essential tremor and arthritis, making it difficult for him to stand or walk for any significant period of time.

393.   The Steiners have a camera installed on the back of their vehicle so they can be hypervigilant about whether they are being followed, and have kept the security cameras around the perimeter of their home.

394.   Before these events, David Steiner was a caring and jovial person, always making people laugh. Since the events, he is distrustful, angry and depressed.

395.   Ina Steiner still frequently feels overwhelming anxiety, which interrupts her focus and ability to work. Ina has been diagnosed with depression and PTSD.

396.   When Ina Steiner works in her office and hears noises on the street, she continues to run to the other room to look outside. She still remains alert for signs of unusual activity in the neighborhood. Ina Steiner does not know if she will ever feel safe enough to be alone in her home at night ever again.

397.   Ina Steiner still brings pepper spray every time she leaves at home. For over a year following the events, she would even carry it around with her inside her home.

398.   Both David and Ina Steiner – in addition to the sense of security they lost in their home – also lost the security they had in their financial future.

399.   The Steiners' wedding anniversary has also been forever tainted. They spent their 31st wedding anniversary in August of 2019, barricaded in their home with a car blocking the head of their driveway to stave off unwanted deliveries, and had baking sheets leaning against their back door so they could hear anyone trying to break into the home.

400.   Plaintiffs Ina and David Steiner, and Steiner Associates, LLC, have suffered

immeasurable and significant damage to their reputation and great emotional distress as a

result of the Defendants false statements about them to third-parties. Defendants intended

to cause Plaintiffs Ina and David Steiner and EcommerceBytes' reputational harm. As a

direct and proximate cause of the Defendants false statements, the Plaintiffs have

suffered emotional and mental anguish. EcommerceBytes suffered economic damage and

loss of revenue.

401.   As a direct and proximate result of the Defendants' trespass onto the Plaintiffs' property,

Plaintiffs suffered significant harm, including damage to property and emotional distress.

402.   The above acts violated the Steiners' civil rights because the purpose of the Defendants'

campaign to stalk, harass, threaten and torture the Steiners was to cease their reporting

and eBay.

403.   By way of threats, intimidation and coercion, the Defendants attempted to interfere with

the Steiners and Steiner Associates, LLC's exercise and enjoyment of their First

Amendment and Article 16 (as amended by Article 77) rights to free speech and liberty

of the press, rights secured by both the United States Constitution and the Massachusetts

Declaration of Rights.

404.   As a direct and proximate cause of the Defendants violation of the Steiners' civil rights,

the Steiners suffered physical, emotional, mental and economic damages.

405.   Defendants eBay, Wenig, Wymer and Jones' aiding and abetting the violation of the

Steiners' civil rights and their failure to intervene caused the Steiners to suffer physical,

emotional, mental and economic damages.

**CAUSES OF ACTION**

**COUNT I: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(All Defendants)**

406.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 405 above, and incorporates them by reference, herein.

407.    All named Defendants' conduct towards Plaintiffs was significantly extreme and outrageous.

408.    All named intentionally or recklessly engaged in outrageous conduct, or aided and abetted by directing the acts, and the specific conduct was foreseeable, including but not limited to: threatening the Steiners online; sending unwanted threatening deliveries and packages including a book on surviving the loss of a spouse, a bloody pig SAW mask, a funeral wreath, and live spiders; engaging in around-the-clock harassment; signing them up for over 50 unwanted email subscriptions, some vulgar in nature; doxing them online and soliciting strangers to their house; following them and surveilling them at all hours of the day and night; stalking and tailing them; and threatening, intimidating, harassing and terrorizing them for weeks on end. The Defendants' actions caused the Steiners to believe they would be killed, and any reasonable person would believe the same as a result of the Defendants' relentless actions. The Defendants admitted that their intimidation caused emotional damage to the Steiners.

409.    The Defendants' conduct was extreme and outrageous, went beyond all bounds of decency and was utterly intolerable in a civilized society.

410.    The Steiners' distress was severe, and of a nature that no reasonable man could be expected to endure it.

411.   All named Defendants intended to have the Steiners suffer emotional distress by engaging in the above acts that the Defendants knew or should have known would cause a reasonable person emotional distress.

412.   All named Defendants knew or should have known the Steiners would suffer emotional distress from the actions of all Defendants.

413.   All named Defendants harmed Plaintiffs because their actions caused them to suffer humiliation, embarrassment, mental anguish, permanent and persistent psychological trauma and emotional distress.

414.   Defendants eBay and PFC are vicariously liable for the acts of their employees.

415.   As a direct and proximate result of the Defendants' actions, Plaintiffs were injured in mind and body. Plaintiffs suffer from significant and continuing emotional distress, including but not limited to, severe anxiety, persistent concern about their physical safety, loss of sleep, shame, humiliation embarrassment, and when in public, the chronic fear that they are being followed.

416.   The conduct of Defendants proximately caused Plaintiffs to suffer, to continue to suffer, and suffer in the future, damages, in an amount which will be proven at trial.

417.   The Steiners request compensatory, emotional and special damages, including lost income and damage to their business.

418.   The aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants, as well as other to-be-identified John and Jane DOE Defendants.

### COUNT II: STALKING
### (All Defendants)

419.   Plaintiffs reallege each and every allegation set forth in Paragraphs 1 through 418, inclusive, and incorporate them by reference, herein.

420. This is a cause of action by the Plaintiffs against all of the Defendants working in concert both in California and Massachusetts for Stalking in violation California Civil Code 1708.7.

421. The Defendants engaged in a pattern of conduct, the intent of which was to follow, alarm, place under surveillance and harass the Steiners.

422. Defendants Cooke, Gilbert, Baugh, Harville, Popp, Stockwell and Zea admitted in the criminal cases to stalking and intending to place the Steiners in fear for the purpose of stopping Ina Steiners' reporting.

423. As a result of the Stalking scheme, the Steiners reasonably feared for their lives and their safety. The Steiners suffered substantial emotional distress as a result of the pattern of conduct, and the conduct would cause a reasonable person to suffer substantial emotional distress.

424. The conduct which caused the Steiners substantial emotional distress includes but is not limited to taunting and threatening Twitter and email messages, and menacing package deliveries. The Defendants then began physically surveilling, following and harassing the Steiners in Natick, while simultaneously continuing with the threatening Twitter messages and packages sent or directed from California. The Defendants pattern of conduct caused alarm, annoyed, tormented and harassed the Steiners.

425. Because the Steiners did not know who was stalking them, they were unable to clearly and definitively demand that the Defendants cease and abate their behavior, giving rise to exigent circumstances that rendered a demand impractical. The Defendants persisted even though they were aware that their conduct was causing the Steiners considerable distress. After the Defendants intercepted communications on the NPD police scanner

and called Ina Steiner, the Defendants acknowledged the Steiners were "rattled" and were "seeing ghosts." Despite the obvious distress they were causing Plaintiffs, the Defendants continued with their stalking campaign.

426. Defendants eBay and PFC are vicariously liable for the acts of their employees.

427. The Defendants acted with malice, or oppression or fraud, entitling the Steiners to punitive damages.

428. Plaintiffs have been harmed emotionally as a result of the pattern of conduct. The actions caused the Steiners to suffer, and continue to suffer, damages, in an amount which will be proven at trial. The Steiners also request general, special, punitive and exemplary damages pursuant to California Civil Code 1708.7 and Section 3294.

429. The Steiners also request injunctive relief.

430. The aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants, as well as other to-be-identified John and Jane DOE Defendants.

**COUNT III: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(All Defendants)**

431. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 430 above, and incorporate them by reference, herein.

432. Defendants negligent conduct caused the Steiners emotional distress.

433. As a direct and proximate result of the Defendants' actions, the Steiners suffered physical harm manifested by objective symptomology where they suffered from chest pains, panic attacks, anxiety, insomnia, headaches and lost weight. The Defendants acts also exasperated David Steiner's Essential tremors and arthritis, making it very difficult for David to walk or stand for any length of time.

434.    A reasonable person would have suffered emotional distress if subjected to the same

        harassment, stalking, threats and torture.

435.    The conduct of Defendants proximately caused Plaintiffs to suffer, to continue to suffer,

        and suffer in the future, damages, in an amount which will be proven at trial.

436.    Defendants eBay and PFC are vicariously liable for the acts of their employees.

437.    The Steiners request compensatory, emotional and special damages, including lost

        income and damage to their business.

438.    The aiding and abetting, and the failure to intervene, gives rise to liability on the part of

        all named Defendants, as well as other to-be-identified John and Jane DOE Defendants.

## COUNT IV: NEGLIGENCE
### (All Defendants)

439.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 438 above,

        and incorporate them by reference, herein.

440.    Defendants had a duty of care not to cause harm to the Steiners.

441.    Each Defendant breached that duty of care.

442.    Each Defendants' negligence caused the Steiners to suffer physical, emotional, mental

        and financial damages, and damages to EcommerceBytes.

443.    The Defendants' breach of their duty to exercise reasonable care caused the Steiners and

        EcommerceBytes' damages.

444.    Defendants eBay and PFC are vicariously liable for the acts of their employees.

## COUNT V: NEGLIGENT HIRING
### (Defendant eBay)

445.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 444 above,

        and incorporate them by reference, herein.

446.    Defendant eBay knew or should have known that Defendant Baugh was unfit for the
        position as eBay's Senior Director of Safety & Security in charge of its Global Security
        and Resiliency department. Defendant Baugh's placement in this position created an
        unreasonable risk of harm to third parties. In fact, eBay hired Defendant Baugh for the
        specific purpose of using his past experiences working for the FBI and CIA so he could
        engage in the type of conduct he inflicted upon the Steiners. He was also hired because
        eBay knew that in working for these Government agencies, he understood his duty to
        impart the utmost loyalty and secrecy on behalf of the agency he was working for.

447.    Defendant eBay knew or should have known that Defendant Wymer was unfit for the
        position as eBay's Senior Vice President and Chief Communications Officer. Defendant
        Wymer's placement in this position created an unreasonable risk of harm to third parties.

448.    Defendant Baugh was unfit to be hired by eBay. Executives at eBay established a
        relationship with Defendant Baugh when he worked for SIS, and were aware of his off-
        kilter and unconventional means of dealing with what is perceived as a problem.
        Moreover, not only did eBay know Defendant Baugh was unfit for the role, they
        specifically hired him to use his skills to deal with issues in an unconventional "off the
        radar" manner.

449.    Defendant Wymer was unfit for the position of Senior Vice President and Chief
        Communications Officer. eBay knew or should have known Defendant Wymer was unfit
        for the position. In its lobby to the USAO, eBay admitted that Defendant Wymer was
        "green" and "inexperienced" which rendered him unable to pushback against Defendant
        Wenig.

450.    Defendant Wymer's unfitness for the role of Senior Vice President and Chief

Communications Officer was the proximate cause of the Steiners and Ecommerce'ytes'

injuries. Instead of using his role as Chief Communications Officer to either reach out to

the Steiners to discuss what eBay perceived to be negative news coverage, or issue a

public statement, Defendant Wymer instructed Defendant Baugh – head of security – to

burn Ina Steiner to the ground. After this directive was issued, the events directly

followed and were foreseeable to Defendant Wymer.

451.    Defendant Baugh's unfitness for the role of Senior Director of Safety & Security in

charge of its Global Security and Resiliency department, and Defendant eBay, Wenig and

Jones' failure to supervise Defendant Baugh, was also the proximate cause of the Steiners

and EcommerceBytes' injuries. Defendant Baugh weaponized his team of analysts to

engage in conduct that was clearly criminal, and directed around the clock Twitter

threats, harassing and threatening packages, then organized the team to travel to Natick to

stalk and surveil the Steiners.

452.    eBay had both actual and constructive knowledge of Defendants Wymer and Baugh's

unfitness, and their unfitness was the proximate cause of the Steiners and

EcommerceBytes injuries.

453.    The Steiners and EcommerceBytes are entitled to damages for emotional, physical and

mental harm, as well as compensatory damages.

**COUNT VI: NEGLIGENT SUPERVISION**
**(Defendants eBay, PFC, Wenig, Jones, and Krystek)**

454.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 453 above,

and incorporate them by reference, herein.

455. Negligent supervision occurs where a Plaintiff is injured as a result of the employer's failure to adequately supervise an employee.

456. To state a claim for negligent supervision, a plaintiff must prove that he suffered an injury due to the employer's failure to supervise an employee whom the defendant had a duty to supervise.

457. eBay owed a duty of care to protect the Steiners from another employee's tortious acts where the defendant knew or reasonably should have known of the employee's propensity to engage in that type of tortious conduct.

458. eBay failed to properly supervise Defendants Wenig, Wymer, Jones, Baugh, Harville, Gilbert, Cooke, Popp, and Stockwell. Defendants PFC and Krystek failed to properly supervise Defendant Zea.

459. Defendant Wenig, Wymer, and Jones became obsessed with EcommerceBytes and Ina Steiner's reporting. They directed their subordinates to monitor the reporting on an hourly basis, then directed the acts that resulted in the stalking, harassment, threats, and torture of the Steiners. Had eBay properly supervised these executives, they would have known, or should have known, that the eBay executives were directing members of their staff to handle the problem through unconventional means, leading to criminal activity.

460. Defendant Harville was also infamous within the company for his rude, corrupt, and misogynistic persona. Defendant Harville was reported to HR numerous times for saying extremely graphic things. He called the analysts "Girl Scouts" and constantly insulted them over their age and gender. Defendant eBay never investigated Defendant Harville's conduct, or provided remedial training.

461.   Despite that eBay knew or should have known about Defendant Wenig, Wymer and Jones' directives aimed at the Steiners and EcommerceBytes, Defendant eBay never did a thorough investigation, or discharged C-Suite executives based on improper conduct to prevent the stalking, harassment and threats from occurring to the Steiners.

462.   Defendant eBay was negligent in supervising Defendants Wenig, Wymer and Jones.

463.   Defendants eBay, Wenig and Jones were negligent in supervising Defendant Baugh. For years, Defendant Baugh engaged in a pattern of breaking down the analysts, firing them without cause, and creating a toxic work environment. Because Concentric Advisors pushed back, Defendant Baugh fired the contracting company, and hired PFC with a $4million contract, which eBay approved without investigating why Concentric Advisors was fired.

464.   Defendant Baugh also engaged in violent conduct towards his employees, stabbing chairs and forcing them to watch graphic video footage in an effort to break them down. Defendants eBay, Wenig and Jones knew or should have known about Defendant Baugh's violent propensities.

465.   Despite that Defendants eBay, Wenig and Jones knew or should have known about Defendant Baugh's treatment of his employees – which placed him in a position of power over employees that he had mentally broken down in order to allow this conspiracy to happen – neither Defendants eBay, Wenig nor Jones ever investigated, reassigned or discharged Defendant Baugh.

466.   Defendant eBay failure to supervise Defendants Wenig, Wymer and Jones was the proximate cause of the Steiners' injuries where it caused them to direct lower level

employees to take down the Steiners off the radar, leading to the criminal acts against them.

467. Defendants eBay, Wenig and Jones' failure to supervise Defendant Baugh was the proximate cause of the Steiners and EcommerceBytes' injuries where it caused a toxic environment within eBay to persist, where Defendant Baugh was able to curate and mold a team to carry out the acts of the conspiracy.

468. PFC was negligent in supervising Defendant Zea. During the course of her employment, PFC was aware or should have been aware that Defendant Zea was using her company credit card for improper purposes, including expensive dinners and strip clubs. Instead of investigating the improper purchases – which would have revealed that Defendant Baugh was using the credit card as his personal slush fund to carry out the conspiracy – Defendant Zea's supervisors laughed at the purchases, approved them, then sought reimbursement and a 5% markup from eBay.

469. Because of the lack of investigation into the use of Defendant Zea's credit card, Defendant Baugh and his subordinates were able to fund and carry out the conspiracy to stalk, harass, threaten and torture the Steiners.

470. Defendant PFC's negligent supervision of Defendant Zea was the proximate cause of the Steiners and EcommerceBytes' injuries.

471. The Steiners and EcommerceBytes are entitled to damages for emotional, physical and mental harm, as well as compensatory damages.

## COUNT VII: NEGLIGENT RETENTION
### (Defendants eBay and PFC)

472. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 471 above, and incorporate them by reference, herein.

473. Negligent retention occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge or reassignment.

474. eBay was negligent in retaining and promoting Defendant Baugh after eBay became aware of should have become aware with Defendant Baugh's harassment and mistreatment of subordinates, his use of corporate funds for personal use, his violent actions, including stabbing a chair, and demonstrating an unstable mental and emotional capacity.

475. Defendant Baugh engaged in overtly improper and violent acts occur during the employment relationship with eBay, so eBay had warning Defendant Baugh was capable of and would be likely to commit tortious or criminal acts. Because of his improper and violent acts, action should be taken, such as investigation, reassignment or discharge.

476. As admitted by eBay in its lobby to the USAO, the internal investigation "uncovered new information about Baugh's unsuitability as a manager." This suggests both that eBay had at least *some* information about Defendant Baugh's unsuitability as a manager before the conspiracy, but also that it learned new information that it should have known before Defendant Baugh and his subordinates harassed, stalked, threatened and tortured the Steiners.

477. Despite having information that Defendant Baugh was unsuitable as a manager, eBay never investigated Baugh, discharged him or reassigned him. Instead, eBay promoted Defendant Baugh, then allowed him to remain in a position of power over a number of subordinates.

478. PFC was negligent in retaining Defendant Zea. During the course of her employment, PFC was aware or should have been aware that Defendant Zea was using her company credit card for improper purposes, including expensive dinners and strip clubs. Instead of investigating the improper purchases – which would have revealed that Defendant Baugh was using the credit card as his personal slush fund – Defendant Zea's supervisors laughed at the purchases, approved them, then sought reimbursement and a 5% markup from eBay.

479. Because of the lack of investigation into the use of Defendant Zea's credit card, Defendant Baugh and his subordinates were able to fund and carry out the conspiracy to stalk, harass, threaten and torture the Steiners.

480. Defendant eBay's negligent retention of Defendant Baugh was the proximate cause of the Steiners and EcommerceBytes' injuries.

481. Defendant PFC's negligent retention of Defendant Zea was the proximate cause of the Steiners and EcommerceBytes' injuries.

482. The Steiners and EcommerceBytes are entitled to damages for emotional, physical and mental harm, as well as compensatory damages.

## COUNT VIII: ASSAULT
### (All Defendants)

483. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 482 above, and incorporate them by reference, herein.

484. Assault involves an act which puts another in reasonable apprehension of imminent harmful or offensive contact, either an attempted battery or an immediately threatened battery.

485.  It requires the "intentional creation of an apprehension of immediate physical harm by means of an overt gesture."

486.  Defendants Baugh, Harville, Popp and Zea physically followed David Steiner in his car, and also menacingly circled the block and stalked the Steiner home.

487.  During the course of the conspiracy, the Defendants barraged the Steiners with unrelenting, around-the-clock threatening Twitter messages, emails, and deliveries, which they knew or should have known would terrorize and frighten the Steiners.

488.  The Defendants strategically selected a book on spousal death, together with the funeral wreath, and the SAW pig mask so that the Steiners would truly believe that the stalkers were going to kill them, and to make them feel as though their lives were in imminent danger.

489.  Both the online threats to kill, along with the threatening and menacing packages, were all overt acts that were intentionally effectuated to cause the Steiners apprehension of immediate physical harm.

490.  The surveillance, tailing and stalking of the Steiners, both by vehicle and on foot, caused the Steiners to fear immediate physical harm of a battery or attempted battery.

491.  This fear caused the Steiners mental, emotional and physical harm and injuries. Defendants eBay and PFC are vicariously liable for the acts of their employees.

**COUNT IX:  VIOLATION OF TITLE II, Ch. 12, § 11I**
**(MASSACHUSETTS CIVIL RIGHTS ACT VIOLATION)**
**(All Defendants)**

492.  Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 491 above, and incorporates them by reference, herein.

493.   The violation of Plaintiffs' civil rights, as described by the cruel acts detailed above, was pursuant to the direction of the highest levels of Defendants' management.

494.   The main purpose of the Defendants' campaign to intimidate, threaten, torture, terrorize, stalk and silence the Steiners was to coerce them into ceasing their reporting on eBay.

495.   By way of threats, intimidation and coercion, the Defendants attempted to interfere with the Steiners and EcommerceBytes' exercise and enjoyment of their First Amendment and Article 16 (as amended by Article 77) rights to free speech and liberty of the press, rights secured by both the United States Constitution and the Massachusetts Declaration of Rights.

496.   The aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants, as well as other to-be-identified John and Jane DOE Defendants.

497.   Defendants eBay and PFC are vicariously liable for the acts of their employees.

498.   As a direct and proximate result of Defendants' actions, Plaintiffs suffered harm, and request compensatory and emotional damages in an amount which will be proven at trial.

## COUNT X: DEFAMATION
### (All Defendants)

499.   Plaintiff Ina and David Steiner reallege each and every allegation set forth in Paragraphs 1 through 498, inclusive, and incorporates them by reference, herein.

500.   Plaintiff Ina Steiner is the reporter and editor for the online trade publication, EcommerceBytes, and is the author of the EcommerceBytes Blog and Newsletters. David Steiner is also a reporter of EcommerceBytes as well as its publisher.

501.   Plaintiff Ina Steiner has enjoyed a stellar reputation as an unbiased and impartial reporter in the ecommerce industry amongst the online community of merchants.

502.   Plaintiff Ina Steiner was an early contributor to support the needs of ecommerce sellers and buyers, filling a void that exists between selling platforms and sellers and buyers. She is frequently quoted by major news organizations about eBay, online trading and Internet fraud including such publications as the *Wall Street Journal*, *New York Times*, *Smart Money Magazine*, and *Fortune Small Business*.

503.   Plaintiff Ina Steiner has appeared on multiple television and radio programs to discuss ecommerce and the online-auction industry, including Public Radio's Marketplace, National Public Radio's On Point, eBay Radio, CNBC Squawk Box, CNN Anderson Cooper 360, CNBC's "Closing Bell with Maria Bartiromo," and Bloomberg Radio's Tomorrow Tonight.

504.   Defendants caused defamation by intentionally sending sexually charged pornography to the Steiners' neighbor's homes, in David Steiner's name.  Such activity was meant to reputationally harm the Steiners and tarnish their name within the community.

505.   Defendants engaged in communications with third parties that were false, defamatory, unprivileged and with the natural tendency to injure and cause special damages.

506.   Defendants made the defamatory communications to third parties who understood the defamatory meaning of the statements to David Steiner.

507.   Defendants slandered David Steiner by making false and unprivileged publications to neighbors through the mail, which accused David of soliciting pornography and anthropornography.

508.   Defendants caused defamation by posting ads on Craigslist that the Plaintiffs were sexual swingers.  Such activity was shown to the public and included their personal home address.

509.    At the time Defendants made the false statements on Twitter claiming that Plaintiff Ina Steiner was destroying small and family businesses through her biased and negative reporting on eBay, the Defendants knew that these statements were false.

510.    Defendants defamed the Steiners by creating fake "Persons of Interest" files on them, in order to suggest the Steiners were a threat to eBay and their security.

511.    Defendants made these false statements intentionally and with reckless disregard to the truth.

512.    The Defendants knew that the false and libelous statements about the Plaintiffs' would be read by individuals both in the United States and in the Defendants' international audience.

513.    Plaintiffs' social reputation harmed, as now her name is associated with bondage and anthropornography, and other illicit sites.

514.    As a direct and proximate results of the acts of the Defendants, Plaintiffs have suffered injury, damage, loss, harm, anxiety, embarrassment, humiliation, shame and severe emotional distress.

515.    The Defendants actions constitute defamation per se where the Defendants actions and statements related to, and caused damage to, the Steiners' business, and where the Defendants falsely claimed the Steiners were engaged in criminal activity.

516.    Plaintiffs Ina and David Steiner have suffered immeasurable and significant damage to their reputation and great emotional distress as a result of the false statements made by the Defendants and with this Complaint seek compensation for this defamation and libel by the Defendants.

517.  In addition to presumed damages, as the direct and proximate cause of the Defendants actions, the Steiners were emotionally injured and suffered distress and pain and suffering, and incurred lost wages, and other costs.

518.  Such activity was intended to harm the reputations of the Plaintiffs.

519.  Defendants eBay and PFC are vicariously liable for the acts of their employees.

520.  The Plaintiffs suffered economic and emotional harm as a result of the publications.

521.  In making the libelous and defamatory statements about Plaintiffs, the Defendants acted with malice, oppression and/or fraud and thus the Defendants are liable for compensatory damages in an amount to be proven at trial.

522.  The aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants, as well as other to-be-identified John and Jane DOE Defendants.

**COUNT XI:  TRESPASS (PHYSICAL AND TRESPASS TO CHATTELS)**
**(All Defendants)**

523.  Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 522 above, and incorporates them by reference, herein.

524.  The Defendants entered onto the Steiners' property without right or privilege to do so, in order to attempt to attach a GPS device to their vehicle. The Defendants entry onto the property was intentional and illegal.

525.  As part of the plan to silence the Steiners, the Defendants did deface, mutilate, vandalize and injure the Steiners' property by scrawling "Fidomaster" on their fence.

526.  As a direct and proximate result of the Defendants' actions, Plaintiffs suffered harm, including damage to property and emotional distress, and request compensatory and emotional damages, in an amount which will be proven at trial.

527.   The aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants, as well as other to-be-identified John and Jane DOE Defendants.

528.   The intrusive nature of the Defendants' actions onto their property and within the sanctity of their home and yard caused them emotional turmoil.

529.   Defendants eBay and PFC are vicariously liable for the acts of their employees.

530.   The aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants, as well as other to-be-identified John and Jane DOE Defendants.

531.   As a direct and proximate result of the Defendants' actions, Plaintiffs suffered significant harm, including emotional distress, and request emotional and compensatory damages in an amount which will be proven at trial.

## COUNT XII: FALSE IMPRISONMENT

532.   Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 531 above, and incorporates them by reference, herein.

533.   All named Defendants' conduct towards Plaintiffs was extreme and outrageous.

534.   Defendants harmed Plaintiffs because their actions caused them to suffer horrifying fear confining them to their home.  The Defendants' incessant packages and cruel and abusive messages and threats forced the Plaintiffs to remain in their home, as house prisoners, too fearful to leave their property.  The actions of Defendants injured Plaintiffs' mind and body. Plaintiffs suffer from significant and continuing emotional distress, including but not limited to, physical manifestations of anxiety, persistent concern about their physical safety and, loss of sleep, and when in public, the chronic fear that they are being followed.

535.  Plaintiffs were under the justified belief that leaving their home would place them in danger that they might be killed. They believed the only safe place to remain during periods of unrelenting messages and deliveries was in their home, where they remained on constant alert at all times.

536.  After several days, David Steiner was forced to leave the home to gather groceries for the home, but even when doing so, the Defendants tailed him, confining him to his car. David left the home rather than Ina, since she was the target of the threats.

537.  The above-described acts and omissions of the Defendants constitute intentional confinement of Ina and David Steiner.

538.  The intentional confinement of Ina and David Steiner was committed without lawful privilege.

539.  The intentional confinement lasted for an appreciable period of time.

540.  By the above-described acts or omissions alleged herein, the Plaintiffs were falsely imprisoned thereby entitling Ina and David Steiner to damages pursuant to Massachusetts law.

541.  The Plaintiffs justifiably believed the fear of threat of physical force, as demonstrated by the threatening messages and vehicles stalking their home, restricted their ability to leave the safety of their home.

542.  Defendants eBay and PFC are vicariously liable for the acts of their employees.

543.  The aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants, as well as other to-be-identified John and Jane DOE Defendants.

544. The conduct of Defendants proximately caused Plaintiffs to suffer, and to continue to suffer, damages, and request compensatory and emotional damages in an amount which will be proven at trial.

## COUNT XIII: CIVIL CONSPIRACY
### (All Defendants)

545. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 544 above, and incorporate them by reference, herein.

546. The Defendants, acting in concert, conspired to intimidate, harass, threaten, and stalk the Steiners,

547. The Defendants, as part of a common design, conspired to implement a common scheme to intimidate, harass, threaten, and stalk the Steiners, and in order to destroy their business and end their reporting on eBay.

548. The Defendants intended to, and did commit the tortious acts alleged herein in furtherance of the conspiracy to silence the Steiners.

549. As a result of their common design, the Defendants are each jointly and severally liable for the tortious acts alleged herein committed by any one of them.

550. Defendants eBay, Wenig, Wymer and Jones provided substantial assistance and/or encouragement to Defendants Baugh, Harville, Cooke, Gilbert, Popp, Stockwell, Zea and John and Jane DOE, who were engaging in the tortious conduct alleged herein and Defendant PFC funded the conspiracy with Defendant Krystek's approval.

551. Defendants Wenig and Wymer specifically advised the other Defendants, including but not limited to, Baugh, Harville, Cooke, Gilbert, Popp, Stockwell, Zea and John and Jane DOE, to engage in the tortious conduct.

552.   Defendants Wenig, Wymer and Jones knew the conduct of the other Defendants was

tortious, and intended to substantially assist or encourage that conduct.

553.   Defendants eBay and PFC are vicariously liable for the acts of their employees.

554.   The aiding and abetting, and the failure to intervene, gives rise to liability on the part of

all named Defendants, as well as other to-be-identified John and Jane DOE Defendants.

555.   As a result other their unified actions, the Steiners have sustained compensatory,

emotional and business damages, in an amount to be determined at trial, plus interests,

costs and other relief that this Court deems just.

**COUNT XIV: RATIFICATION**
**(Defendant eBay)**

556.   Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 555 above,

and incorporates them by reference, herein.

557.   Defendants Wenig, Wymer and Jones were executive officers with eBay during their

employment.  Defendants Baugh, Harville, Gilbert, Cooke, Popp, and Stockwell were

employees of eBay. Defendant Zea was a contractor with eBay, and employed by

Defendant PFC.

558.   At the time of the acts, there was an actual or assumed relationship between each

individually named Defendant and eBay.

559.   All acts or omissions alleged that caused the Steiners' and EcommerceBytes' injuries

were ratified by eBay and its Board of Directors. eBay and its Board of Directors knew of

the acts and omissions by the Defendants, as well as the culture and hiring practices, and

failed to take any actions to stop it.

560.   Despite knowledge of Defendant Wenig, Wymer and Jones's misconduct, on information

and belief, no true disciplinary action was taken against the executives. As eBay admitted

during its lobby to the USAO, Defendant Wymer was uncooperative in the investigation, and obstructed and destroyed evidence.

561.   Despite overwhelming evidence that Defendants Wenig, Wymer and Jones were involved in the acts, eBay allowed Defendant Wenig to resign from eBay without terminating him for cause, thus allowing him to reap the rewards of not-for-cause termination. On information of belief, Defendant Wymer was terminated, but consistent with eBay practices, received no punitive action.

562.   Additionally, Defendant Jones suffered no adverse actions as a result of her conduct. Not only did eBay shield her from a USAO investigation by not disclosing her interviews or other communications with the Government, she was retained as a high level executive at eBay, then permitted to retire with the full benefits retirement carried approximately six months after the criminal charges were made public.

563.   Upon information and belief, eBay's actions regarding Defendants Wenig, Wymer and Jones were ratified by eBay's Board of Directors, who knew or should have known about the volatile conduct of the Defendants, but took no action. The Board, with fiduciary obligations, ratified the behavior by seemingly rewarding executives with severance and no evidence of any significant disciplinary action taken. The Board acted willfully blind to the behavior and conduct of senior executives, with no disincentive for wrongdoing.

564.   On June 15, 2020, after the criminal charges against Defendants Baugh, Harville, Cooke, Gilbert, Popp, Stockwell and Zea were made public, then President and CEO of eBay, Jamie Iannone, sent the Steiners a letter where he attempted to absolve eBay from liability claiming "[t]hose responsible for this matter hid their actions from the company," despite knowing the actions of Defendants Wenig, Wymer and Jones. In a

public statement, eBay also claimed it did not have knowledge, and did not place any blame on Defendants Wenig or Wymer, stating only that some "inappropriate" comments were made.

565.   Defendant eBay acquiesced to the conduct and failed to disavow it. Instead of conducting an actual internal investigation, Defendant eBay hired Morgan Lewis both to conduct an "investigation" and lobby to the Government not to charge eBay.

566.   Defendant eBay never provided any transcripts or notes of any interviews of any employees, and provided only oral reports of some interviews. Defendant eBay never shared the contents of the interviews with Defendants Wenig or Jones with the USAO. Defendant eBay hired Morgan Lewis on August 28, 2019 to conduct the investigation, but also retained the firm to represent eBay in conjunction with the USAO investigation, in order to convince the USAO not to prosecute eBay. Morgan Lewis never compiled or drafted a report outlining its investigation or findings.

567.   On March 21, 2021, Amir Vonsover, a lawyer from eBay's legal department, and Attorney Andrew Phelan, on behalf of Morgan Lewis, met with USAO to convince the government not to charge eBay criminally.

568.   Additionally, while Morgan Lewis and eBay did admit Defendants Wenig and Wymer's communications were "inappropriate," during its lobby to the USAO, they took the position that even if Defendant Wenig's conduct may have been negligent or reckless, it was not criminal.

569.   When Attorney Andrew Phelan communicated with the USAO and shared interviews and other documents, he orally relayed the contents of several eBay employee interviews to

AUSA Seth Kosto, but tellingly did not reveal the contents of the interviews with Defendant Wenig or Defendant Jones, two long-term executives within eBay.

570.   Defendant eBay also entered into agreements with its directors and executive officers to require eBay to indemnify "such persons against expenses, judgments, fines, settlements and other amounts that such person becomes legally obligated to pay…provided such person acted in good faith and in a manner such person reasonably believes to be in or not opposed to the best interests of the Company."

571.   This change in the bylaws expressly protects executives and directors from the conduct that created the causes of actions in this complaint, and demonstrates that Defendant eBay ratifies such conduct, and seeks to protect executives and directors in the future.

572.   eBay and PFC are responsible for the acts of the individually named Defendants.

**DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs pray that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including but not limited to an Order:

1.  Entering judgment in their favor;

2.  Awarding Plaintiffs monetary relief, including damages sustained by Plaintiffs in an amount to be determined at trial;

3.  Awarding compensatory damages;

4.  Awarding Plaintiffs treble damages;

5.  Awarding Plaintiffs punitive and exemplary damages in such amount as may be awarded at trial;

6. Awarding special damages;

7. Awarding attorneys' fees;

8. Awarding costs of suit incurred herein;

9. Awarding interest according to law;

10. For a constructive trust to be placed upon Defendants and all persons acting on their behalf
    under their direction or control, as to all revenues and profits received by any and all such
    individuals, including Defendants, to be held for the benefit of the Plaintiffs, and to be
    disgorged in their entirety to the Plaintiffs, in connection with any book, movie, story or any
    other media or means to attempt to profit off of the events set forth within this Complaint;

11. Awarding such other and further relief as this Court may deem just and proper.

Respectfully submitted,
INA AND DAVID STEINER
By their attorney,

/s/ Rosemary Curran Scapicchio
Rosemary C. Scapicchio, BBO No. 558312
Law Office of Rosemary Scapicchio
107 Union Wharf
Boston, MA 02109
617.263.7400
Rosemary@Scapicchiolaw.com

Respectfully submitted,
STEINER ASSOCIATES, LLC
(Publisher of EcommerceBytes)
By its attorney,

/s/ Jillise McDonough
Jillise McDonough, BBO No. 688694
Law Office of Jillise McDonough
107 Union Wharf
Boston, MA 02109
617.263.7400
Jillise@Scapicchiolaw.com

DATED: March 1, 2023