## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INA STEINER, DAVID STEINER, and STEINER ASSOCIATES, LLC, | |
| Plaintiffs, | |
| v. | CIVIL ACTION NO.: 1:21-CV-11181-PBS |
| EBAY INC., ET AL., | |
| Defendants. | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT BY DEFENDANT BRIAN GILBERT</u>

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

I.      STATEMENT OF FACTS ....................................................................................... 2

II.     LEGAL STANDARD .............................................................................................. 4

III.    ARGUMENT ............................................................................................................ 6

        A.      Count Two: Stalking ................................................................................... 6

        B.      Count Four: Negligence .............................................................................. 7

        C.      Count Three: Negligent Infliction of Emotional Distress ("NIED") ...... 8

        D.      Count Eight: Assault ................................................................................... 9

        E.      Count Nine: Massachusetts Civil Rights Act ........................................ 10

        F.      Count Ten: Defamation ............................................................................ 13

        G.      Count Twelve: False Imprisonment ........................................................ 15

IV.     CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*ABC Soils, Inc. v. DRS Power Tech., Inc.*,
  386 F. Supp. 3d 107 (2019) ..................................................................................... 8, 9

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
  512 F.3d 46 (1st Cir. 2008) .......................................................................................... 5

*Alharbi v. Theblaze, Inc.*,
  199 F. Supp. 3d 334 (D. Mass. 2016) ........................................................................ 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 5, 8

*Atuahene v. City of Hartford*,
  10 Fed. Appx. 33 (2d Cir. 2001) ................................................................................... 5

*Bagheri v. Galligan*,
  160 Fed. Appx. 4 (1st Cir. 2005) .................................................................................. 6

*Ball v. Wal–Mart, Inc.*,
  102 F. Supp. 2d 44 (D. Mass. 2000) .......................................................................... 14

*Bally v. Ne. Univ.*,
  403 Mass. 713 (1989) ................................................................................................. 11

*Barbosa v. Conlon*,
  962 F. Supp. 2d 316 (D. Mass. 2013) ........................................................................ 14

*Barrigas v. United States*,
  No. 17-cv-10232-ADB, 2018 WL 1244780 (D. Mass. Mar. 9, 2018) ............................ 7

*Batchelder v. Allied Stores Corp.*,
  393 Mass. 819 (1985) ................................................................................................. 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 5

*Buster v. Moore*,
  No. CIV. A. 97-637-F, 2000 WL 576363  (Mass. Super. Apr. 28, 2000) ................. 11, 12

*Calvi v. Knox County*,
  470 F.3d 422 (1st Cir. 2006) ......................................................................................... 5

*Canales v. Gatzunis*,
  979 F. Supp. 2d 164 (D. Mass. 2013) ....................................................................... 5, 7

*Commonwealth v. Delgado,*
    367 Mass. 432 (1975) ................................................................. 10

*Commonwealth v. Gorassi,*
    432 Mass. 244 (2000) ............................................................. 9, 10

*Conley v. Romeri,*
    60 Mass. App. Ct. 799 (2004) ................................................. 8, 9

*Cremaldi–Vickery v. Otis Elevator, Inc.,*
    57 Mass. App. Ct. 1105, 2003 WL 168452 (Jan. 24, 2003) ...................... 14, 15

*Davis v. Westwood Grp.,*
    420 Mass. 739 (1995) ............................................................. 7, 8

*Diamond Multimedia Sys., Inc. v. Superior Ct.,*
    19 Cal. 4th 1036 (1999) ............................................................. 7

*Educadores Puertorriqueños en Acción v. Hernández,*
    367 F.3d 61 (1st Cir. 2004) ......................................................... 5

*Fine v. Guardian Life Ins. Co. of Am.,*
    No. 3:19-CV-30067-KAR, 2021 WL 916270  (D. Mass. Mar. 10, 2021) ............... 5

*Freeman v. Plan. Bd. of W. Boylston,*
    419 Mass. 548 (1995) ............................................................... 11

*Grant v. Target Corp.,*
    126 F. Supp. 3d 183 (D. Mass. 2015) ............................................... 12

*In re Loestrin 24 Fe Antitrust Litig.,*
    814 F.3d 538 (1st Cir. 2016) ........................................................ 5

*Jupin v. Kask,*
    447 Mass. 141 (2006) ............................................................... 7

*Kader v. Sarepta Therapeutics, Inc.,*
    887 F.3d 48 (1st Cir. 2018) ......................................................... 5

*Korb v. Raytheon Corp.,*
    410 Mass. 581 (1991) ............................................................... 11

*Lanier v. President and Fellows of Harvard College,*
    490 Mass. 37 (2022) ............................................................... 8, 9

*McCann v. Wal–Mart Stores, Inc.,*
    210 F.3d 51 (1st Cir. 2000) ......................................................... 15

*Mehta v. Ocular Therapeutix, Inc.*,
   955 F.3d 194 (1st Cir. 2020)......................................................................... 5

*O'Neil v. Daimlerchrysler Corp.*,
   538 F. Supp. 2d 304 (D. Mass. 2008) ......................................................... 15

*Ortiz v. Hampden County*,
   16 Mass. App. Ct. 138 (1983)..................................................................... 14

*Payton v. Abbott Labs*,
   386 Mass. 540 (1982) .................................................................................. 8

*Piccone v. Bartels*,
   785 F.3d 766 (1st Cir. 2015)....................................................................... 13

*Planned Parenthood League of Mass., Inc. v. Blake*,
   417 Mass. 467 (1994) ...................................................................... 10, 11, 12

*Ravnikar v. Bogojavlensky*,
   438 Mass. 627 (2003) ................................................................................. 12

*Redgrave v. Bos. Symphony Orchestra, Inc.*,
   855 F.2d 888 (1st Cir. 1988)................................................................... 10, 11

*Remy v. MacDonald*,
   440 Mass. 675 (2004) .................................................................................. 7

*Sarvis v. Boston Safe Deposit & Trust Co.*,
   47 Mass. App. Ct. 86 (1999)....................................................................... 15

*Shay v. Walters*,
   702 F.3d 76 (1st Cir. 2012)......................................................................... 12

*Sietins v. Joseph*,
   238 F. Supp. 2d 366 (D. Mass. 2003) ......................................................... 14

*Sires v. Hefferman*,
   No. CA 10-11993-MLW, 2011 WL 2516093 (D. Mass. June 21, 2011) .................. 1, 5, 7

*Thunder Studios, Inc. v. Kazal*,
   13 F.4th 736 (9th Cir. 2021) ........................................................................ 7

*Wax v. McGrath*,
   255 Mass. 340 (1926) ................................................................................. 14

**Statutes**

42 U.S.C. § 1983.............................................................................................. 10

Cal. Civ. Code § 1708.7(a)(3) ................................................................................. 7

Cal. Civ. Code § 1708.7 ........................................................................................... 6

Mass. Gen. Laws ch. 12, § 11H ....................................................................... 10, 11

Mass. Gen. Laws ch. 265, § 43 ............................................................................... 6

**Other Authorities**

Restatement (Second) of Conflict of Laws § 145 (1971) .......................................... 7

Restatement (Second) of Torts § 31, cmt. b ........................................................... 10

Restatement (Second) of Torts § 35 (1965) ............................................................ 15

Restatement (Second) of Torts § 40 cmt. b (2021 update) ..................................... 15

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 5, 16

Fed. R. Civ. P. 8(a)(2) .............................................................................................. 1

## INTRODUCTION

The original complaint filed in this action by Plaintiffs Ina and David Steiner was 92 pages long, included 366 paragraphs of factual allegations, named 11 different defendants, and asserted 12 different claims against each of them, totaling 132 distinct causes of action. Dkt. 1. Numerous motions to dismiss were filed against this pleading. *See* Dkt. 79, 81, 83, 88, 89, 93, 98, 101, 102, 106. Following several rounds of supplemental briefing, the Court denied all of these motions without prejudice and ordered Plaintiffs to file an amended complaint in light of intervening events during the pendency of the motions. Dkt. 167. Plaintiffs responded by filing a First Amended Complaint that is 123 pages long, includes 572 paragraphs of factual allegations, names 13 different defendants, and asserts 14 different causes of action (most of which are pled against all of the defendants collectively). Dkt. 176 ("FAC").

Plaintiffs' new complaint suffers from the same defects as their first one. The sheer volume of the FAC's allegations and claims should not be confused for adequate pleading. Despite its girth, the FAC sets forth almost exclusively shotgun allegations, without bothering to distinguish between the acts of the many defendants, let alone articulating a factual basis for the specific claims asserted against each of them.

Rule 8 requires a "short and plain statement" of each claim, as well as actual facts (not conclusions or mere recitations of claim elements) demonstrating a plaintiff's entitlement to relief. Fed. R. Civ. P. 8(a)(2). "To provide the notice required under Rule 8(a), a plaintiff cannot 'lump' defendants together when it cannot be reasonably inferred that all of the defendants were involved in the alleged misconduct, or it is otherwise not clear to which defendant or defendants the plaintiff is referring." *Sires v. Hefferman*, No. CA 10-11993-MLW, 2011 WL 2516093, at *5 (D. Mass. June 21, 2011).

Plaintiffs have failed to satisfy their basic pleading obligations here, for despite the volume of the FAC, in most instances it does not set forth allegations sufficient to sustain the specific claims asserted against the individual defendants, including against Defendant Brian Gilbert. As to Gilbert, the FAC asserts 10 separate causes of action.  (Counts Five, Six, Seven, and Fourteen, which are for negligent hiring, negligent supervision, negligent retention, and ratification, respectively, are not pled against him.)  By this motion, Gilbert requests that the Court dismiss 7 of these claims—Counts Two, Three, Four, Eight, Nine, Ten, and Twelve—as each of these fails to state a viable cause of action as to him.

## I.  STATEMENT OF FACTS

The FAC's 572 paragraphs of allegations are summarized in relevant part here and, for purposes of this motion, are assumed to be true—even though many are not true, some are demonstrably false, and some are contradicted by the very sources upon which Plaintiffs rely.

Plaintiffs are a married couple who operate a "trade publication" called "EcommerceBytes."  FAC ¶ 2.  Their publication reports on "ecommerce companies, including eBay."  *Id.*  Plaintiffs claim that eBay and certain individuals associated with it engaged in a "coordinated effort to intimidate, threaten to kill, torture, terrorize, stalk and silence [them] in order to stifle their reporting on eBay."  *Id.* ¶ 1.

Defendant Brian Gilbert is alleged to have been one of the people who participated in eBay's unlawful "conspiracy."  He is alleged to have acted at all relevant times within the scope of his employment at eBay.  *Id.*  ¶ 40.

The exact conduct for which Plaintiffs seek to hold Gilbert individually liable, however, is unclear.  This is because the FAC does not actually or adequately allege what Gilbert—as opposed to the other twelve Defendants—did.  Instead, the FAC repeatedly and inappropriately

describes conduct undertaken by "Defendants," without specifying which of these 13 separate actors were responsible for the actions underlying each individual claim that is asserted against Gilbert.  In other words, Plaintiffs plead their claims as though the conduct described in the FAC was that of a single indivisible actor, as opposed to separate defendants who have been separately sued.

The FAC contains the following limited allegations with respect to Gilbert:

Gilbert is citizen of California, a resident of San Jose, and a former employee of eBay. *Id.* ¶ 33.  He is a former police captain and, during the relevant period, was "Senior Manager of Special Operations for eBay's Global Security Team."  *Id.*  Gilbert took directions from eBay management and reported to the head of eBay's security and operations team.  *Id.* ¶ 40.  All of the acts attributed by the FAC to Gilbert were done "in the scope of [his] employment under the authority of and for the benefit of eBay."  *Id.* ¶ 4.

As alleged in the FAC, Gilbert's individual contributions to the conspiracy among eBay agents are limited to the following:

- Gilbert incorrectly believed there was a relationship between Plaintiffs and an individual known by the handle "Fidomaster," who had expressed "negative opinions regarding eBay" in the comments section of Plaintiffs' online trade publication.  *Id.* ¶¶ 56-57, 63, 71.  He allegedly flew from California to Massachusetts, went to Plaintiffs' house, and "scrawled the word 'FIDOMASTER' on their fence."  *Id.* ¶ 73.

- Gilbert "began reconnaissance" into Plaintiffs' lives, which included "attending a yard sale" at their home and "falsely posing as a potential buyer." *Id.* ¶ 74.

- Gilbert flew to Los Angeles and "met with a Samoan gang member he knew" from his time as a police officer and paid the individual $4,000 to "carry out" a "Plan B" to intimidate the Steiners.  *Id.* ¶ 89.  (The FAC contains no allegations about what this individual ever did.)

- Gilbert, along with a co-defendant, allegedly provided names of sex workers who could be sent (but are not actually alleged to have been sent) to Plaintiffs' residence. *Id.* ¶ 163.

- When Plaintiffs made reports to the Natick Police Department ("NPD"), Gilbert allegedly acted to "conceal" the wrongdoing of other Defendants and divert the NPD investigation.  He allegedly participated in email exchanges about the idea of providing "dossiers" to NPD to make Plaintiffs "look crazy."  *Id.* ¶ 224.  He proposed deflecting the attention of the NPD back onto the Steiners to "make them look like the problem," or alternatively, proposed concocting a "person of interest" for the NPD to pursue in San Jose, allegedly to deflect attention from eBay.  *Id.* ¶¶ 235-236.  Further, he allegedly attempted to link certain actions taken by other Defendants to fictional Twitter users.  *Id.* ¶¶ 193, 194.  He also traveled to Natick to meet with NPD officers to "cover up" the conspiracy.  *Id.* ¶¶ 251-255.  Further, he telephoned Ina Steiner and offered to help her with her complaints to the NPD.  *Id.* ¶¶ 284-285.

Beyond these specific allegations about his own conduct, the Complaint simply lumps Gilbert in with the rest of the Defendants.  For example, "Defendants," including Gilbert, allegedly "approved" anonymous and threatening messages sent to Plaintiffs, yet Gilbert is not alleged to have drafted these messages.  *Id.* ¶ 104.  Similarly, "Defendants" allegedly directed a "relentless stream of Tweets, email subscriptions and packages" to Plaintiffs, and while Gilbert is one of numerous persons who acknowledged that these deliveries occurred, he is not alleged to have directed or made any of them, nor is his supposed involvement described with supporting facts.  *Id.* ¶¶ 126, 130, 133, 145-146.

Finally, in boilerplate language appended to each of the causes of action in the Complaint, Plaintiffs group Gilbert together with all other Defendants, and Plaintiffs assert that "aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants."  *E.g.*, *id.* ¶ 418, 430, 438.  This aiding-and-abetting hook is, apparently, the method by which Plaintiffs hope to escape the requirement of Rule 8 and to pin liability on all 13 individual defendants based on the acts of any of the others.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter … to state a claim to relief that is plausible on its face."  *Mehta v. Ocular Therapeutix, Inc.*, 955 F.3d

194, 205–06 (1st Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted)).  In determining whether a complaint is adequately pled, a district court must "accept well-pleaded factual allegations in the complaint as true and view all reasonable inferences in the plaintiffs' favor.'"  *Id.* (quoting *Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 56 (1st Cir. 2018) (quoting *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008)) (internal quotation marks omitted)).  The standard on a Rule 12(b)(6) motion is lenient, but substantive: a complaint "must provide 'more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do.'"  *In re Loestrin 24 Fe Antitrust Litig.*, 814 F.3d 538, 549 (1st Cir. 2016) (quoting *Twombly*, 550 U.S. at 555).

"In a multiple defendant case, each defendant's acts must be isolated and analyzed separately under Rule 12(b)(6)."  *Fine v. Guardian Life Ins. Co. of Am.*, No. 3:19-CV-30067-KAR, 2021 WL 916270, at *3 (D. Mass. Mar. 10, 2021).  "At a minimum, the complaint must 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  *Sires*, 2011 WL 2516093, at *4 (quoting *Calvi v. Knox County*, 470 F.3d 422, 430 (1st Cir. 2006) (quoting *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 66 (1st Cir. 2004))). "This means that the statement of the claim must 'at least set forth minimal facts as to who did what to whom, when, where, and why.'"  *Id.* (quoting *Calvi*, 470 F.3d at 430 (quoting *Educadores*, 367 F.3d at 68)).  A complaint is not adequately pled, and is subject to dismissal, if it asserts claims by "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct."  *Id.* (quoting *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001)).  *Accord Canales v. Gatzunis*, 979 F. Supp. 2d 164, 170 (D. Mass. 2013) ("[T]o satisfy the minimal requirements of notice pleading, a plaintiff cannot 'lump' multiple

defendants together and must 'state clearly which defendant or defendants committed each of the alleged wrongful acts.'" (quoting *Bagheri v. Galligan*, 160 Fed. Appx. 4, 5 (1st Cir. 2005))).

## III.   ARGUMENT

By this motion, Gilbert seeks dismissal of only a subset of the claims pled against him. Claims Five, Six, Seven, and Fourteen are not pled against him.  And for purposes of this motion, Gilbert does not challenge the adequacy of Plaintiff's pleading with respect to Count One (intentional infliction of emotional distress), Count Eleven (trespass), or Count Thirteen (civil conspiracy).  However, the remaining causes of action—Counts Two, Three, Four, Eight, Nine, Ten, and Twelve—are not adequately pled against Gilbert and must be dismissed.

### A.   Count Two: Stalking

Under Massachusetts law, "stalking" is not a valid civil claim.  It is a crime.  The crime of stalking is defined in Chapter 265 of the Massachusetts General Laws ("Crimes Against Persons") as the willful or malicious engagement in a knowing pattern of conduct or series of acts over a period of time, directed at a specific person, which seriously alarms or annoys that person and would cause a reasonable person to suffer substantial emotional distress.  Mass. Gen. Laws ch. 265, § 43.  The Massachusetts Legislature has not written the stalking statute to afford a private right of action.  So, to the extent it is asserted under Massachusetts law, Count Two must be dismissed.

The Complaint indicates that Plaintiffs are pursuing their claim for "stalking" under California law.  *See* FAC ¶ 420 (citing Cal. Civ. Code § 1708.7).  But a stalking claim under California law fails for three reasons.  First, the Complaint does not describe any conduct *by Gilbert* that falls within California's civil stalking statute.  Specifically, the Complaint does not allege that Gilbert ever "violated a restraining order," and it does not allege that he individually

ever "made a credible threat" against Plaintiffs with either "intent to place [Plaintiffs] in reasonable fear for [their] safety" or "reckless disregard for [their] safety."  Cal Civ. Code § 1708.7(a)(3).  To the extent that the Complaint would simply "lump" Gilbert in with other Defendants, it fails to state a claim against him.  *Canales* 979 F. Supp. 2d at 170; *Sires*, 2011 WL 2516093, at *4.  Second, the Complaint contains no allegations that Plaintiffs were in California at any relevant time while they were allegedly stalked, and California's stalking law does not apply extraterritorially to protect residents of Massachusetts.  *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743 (9th Cir. 2021) (citing *Diamond Multimedia Sys., Inc. v. Superior Ct.*, 19 Cal. 4th 1036, 1059 n.20 (1999)).  Third, even if California's Civil Code could be construed to apply extraterritorially, choice of law principles dictate that Massachusetts law must govern Plaintiffs' claim of stalking, because the conduct supporting it is alleged to have occurred in that jurisdiction.  Restatement (Second) of Conflict of Laws § 145 (1971); *see also* FAC ¶¶ 147, 152, 155, 160, 162, 170.

## B.   Count Four: Negligence

To prevail on a negligence claim, "a plaintiff must prove [1] that the defendant owed the plaintiff a duty of reasonable care, [2] that the defendant breached this duty, [3] that damage resulted, and [4] that there was a causal relation between the breach of the duty and the damage." *Barrigas v. United States*, No. 17-cv-10232-ADB, 2018 WL 1244780 (D. Mass. Mar. 9, 2018) (quoting *Jupin v. Kask*, 447 Mass. 141, 146 (2006)).  "The existence of a legal duty is a question of law determined by reference to existing social values and customs and appropriate social policy."  *Id.* (internal quotations omitted).  "If no such duty exists, a claim of negligence cannot be brought."  *Remy v. MacDonald*, 440 Mass. 675, 677 (2004); *see also Davis v. Westwood Grp.*, 420 Mass. 739, 742-43 (1995) ("Before liability for negligence can be imposed, there must first

be a legal duty owed by the defendant to the plaintiff, and a breach of that duty proximately resulting in the injury.")

The FAC's allegation of a legal duty is insufficient.  Indeed, it merely states that Defendants "had a duty of care not to cause harm" to Plaintiffs.  FAC ¶ 440.  This "formulaic recitation" is simply a legal conclusion as to a central element of a negligence claim.  *Iqbal*, 556 U.S. at 678.  Ignoring the lone conclusory statement on duty, the FAC does not articulate a basis for imposing on Gilbert a legal duty owed to Plaintiffs, and absent such a duty, there can be no liability.  *See, e.g.*, *Conley v. Romeri*, 60 Mass. App. Ct. 799, 801 (2004) (affirming dismissal of plaintiff's negligent infliction of emotional distress claim against former boyfriend because the complaint "d[id] not identity any legally cognizable duty between parties in a dating relationship, nor are we aware of any legally defined duty applicable in these circumstances"); *Davis*, 420 Mass. at 748 (property owner owed patron no duty of safe passage across nearby highway).  Because the FAC fails to allege any duty owed to Plaintiffs, the negligence claim fails.

### C.      Count Three: Negligent Infliction of Emotional Distress

Plaintiffs' claim for negligent infliction of emotional distress ("NIED") must be dismissed for the same reason.  "To recover for negligently inflicted emotional distress, a plaintiff must prove '(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objected symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case.'"  *Lanier v. President and Fellows of Harvard College*, 490 Mass. 37, 44 (2022) (quoting *Payton v. Abbott Labs*, 386 Mass. 540, 557 (1982)).  "To establish the first element of negligence, the plaintiff must show that the defendant owed a duty to the plaintiff and that the defendant's failure to exercise reasonable care resulted in a breach of that duty."  *Id.* (citing cases).

As discussed above with respect to negligence, Plaintiffs have failed to establish that Gilbert owed them a legal duty.  Just as Plaintiffs' conclusory allegation that Defendants "had a duty of care not to cause harm" was insufficient to support their negligence claim, so too is it inadequate to sustain a claim for NIED.  FAC ¶ 440.  Courts routinely dismiss NIED claims where, as here, no legal duty runs from the defendant to the plaintiff.  *See, e.g.*, *Conley*, 60 Mass. App. Ct. at 801 (affirming dismissal of NIED claim against former boyfriend because the complaint "d[id] not identity any legally cognizable duty between parties in a dating relationship"); *ABC Soils, Inc. v. DRS Power Tech., Inc.*, 386 F. Supp. 3d 107, 112–13 (2019) (dismissing NIED claim against defendant contractor that did not owe plaintiff subcontractor a legal duty (citing *Conley*)); *cf. Lanier*, 490 Mass. at 44 ("Unless Harvard owed a duty of care to Lanier, then, she has no claim to relief for [NIED].").  If Plaintiffs' blanket "duty of care not to cause harm" were sufficient, then the NIED claims in *Conley* and *ABC Soils* would have survived past the pleading stage.  But instead, the claims were dismissed because the "duty" Plaintiffs offer here, as in those cases, is legally insufficient.  Because Plaintiffs cannot establish that Gilbert owed them a legally cognizable duty, the NIED claim fails.

### D.      Count Eight: Assault

"Under the common law, an assault may be accomplished in one of two ways—either by an attempted battery, or by putting another in fear of an *immediately threatened* battery." *Commonwealth v. Gorassi*, 432 Mass. 244, 247 (2000) (emphasis added).  The first category patently does not apply, as there is no allegation that Gilbert attempted to use physical force against Plaintiffs.  Regarding the second category, Plaintiffs have the burden of proving that Gilbert "engaged in objectively menacing conduct with the intent to put the victim in fear of *immediate bodily harm*."  *Id.* at 248 (quotation marks omitted) (emphasis added).  "[W]hat is

9

essential is that the defendant intended to put the victim in fear of *imminent bodily harm*, not that the defendant's actions created a generalized fear or some other unspecified psychological harm in the victim." *Id.* at 249 (emphasis added).

The FAC fails to allege facts sufficient to state a claim for assault against Gilbert. In fact, although this claim, like most others, is asserted against all Defendants, Gilbert is not included in the only allegations that arguably could have caused Plaintiffs to fear an imminent *physical* confrontation. *See* FAC ¶ 486 (alleging that *different* named defendants followed Plaintiff to his car and "menacingly circled the block"). By contrast, the other alleged conduct could not reasonably give rise to a fear of an "immediately threatened battery." *Gorassi*, 432 Mass. at 247. For example, the FAC alleges that "Defendants barraged the Steiners with unrelenting…Twitter messages," but even assuming Gilbert was involved in these actions, they would not state a claim for assault against him. *See Commonwealth v. Delgado*, 367 Mass. 432, 437 n.3 (1975) ("Words do not make the actor liable for assault unless together with other acts or circumstances they put the other in reasonable apprehension of an *imminent harmful or offensive contact* with the person." (quoting Restatement (Second) of Torts § 31, cmt. b) (emphasis added)). In the only allegations placing Gilbert in the same general vicinity as Plaintiffs, there is no suggestion that Gilbert threatened physical harm. *See, e.g.*, FAC ¶¶ 73-74 (describing Gilbert's alleged writing on Plaintiffs' fence and attending a yard sale posing as a potential buyer). Because the FAC lacks allegations of any acts by Gilbert that could have caused Plaintiffs to fear an "immediately threatened battery," the assault claim must be dismissed as to him. *Gorassi*, 432 Mass. at 247.

### E.    Count Nine: Massachusetts Civil Rights Act

Plaintiffs' claim under the Massachusetts Civil Rights Act ("MCRA") is subject to dismissal because it does not allege—as to any of the Defendants, let alone as to Gilbert

specifically—that Defendants' conduct involved "*an actual or potential physical confrontation accompanied by a threat of harm*," which is "an element of MCRA claims." *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 473 (1994) (emphasis added).

The MCRA is an "unusual statute." *Redgrave v. Bos. Symphony Orchestra, Inc.*, 855 F.2d 888, 904 (1st Cir. 1988) (en banc).  Enacted to safeguard civil liberties, the MCRA provides for a private right of action against anyone who "interfere[s]" or "attempt[s] to interfere" with "rights secured by the constitution or laws" of the United States or the Commonwealth.  Mass. Gen. Laws ch. 12, § 11H.  With respect to the constitutional interests it protects, the MCRA is thus "coextensive with 42 U.S.C. § 1983." *Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 823, 473 N.E.2d 1128, 1131 (1985).  In contrast to Section 1983, however, the MCRA provides that a defendant may be sued for constitutional interference "whether or not acting under color of law."  Mass. Gen. Laws ch. 12, § 11H.  Thus, MCRA claims may be asserted against private as well as governmental actors. *Redgrave*, 855 F.2d at 904.[1]  Also, unlike Section 1983, the MCRA provides that a constitutional injury is actionable only if it occurs through "threats, intimidation or coercion." Mass. Gen. Laws ch. 12, § 11H

---

[1] For purposes of this motion, Gilbert assumes that the constitutional right alleged to be at issue—Plaintiffs' right to free expression under the First Amendment and Article 16 of the Massachusetts Declaration of Rights, FAC ¶ 495—may support a claim against a private actor under the MCRA, and that Plaintiffs' publication of EcommerceBytes constitutes an exercise of such rights.  Still, as the First Circuit has noted, the logic of the MCRA is "strained" where the constitutional right at issue is "the plaintiff's 'right' to free speech." *Redgrave*, 855 F.2d at 904. In this context, freedom of speech "traditionally has content only in relation to state action," for the right "is to be free of state regulation, so that all private speech is formally on equal footing as a legal matter." *Id.* (emphasis added).  For this reason, courts applying the MCRA have tended to interpret the statute narrowly when evaluating claims for interference with free speech rights by private actors. *See id.* (no liability where symphony orchestra refused to perform with actor following her exercise of free speech rights); *Korb v. Raytheon Corp.*, 410 Mass. 581, 585 (1991) ("no improper interference with secured rights" occurs "when an employer fires an at-will employee" in response to exercise of free speech rights).

In interpreting the MCRA, Massachusetts courts have held, based on the "threats, intimidation or coercion" clause, that the statute applies only when a constitutional injury stems from "an actual or potential physical confrontation accompanied by a threat of harm." *Buster v. Moore*, No. CIV. A. 97-637-F, 2000 WL 576363, at \*22 (Mass. Super. Apr. 28, 2000) (citing *Blake*, 417 Mass. at 473). A physical confrontation is thus "an essential element of a claim under the Act." *Id.* As Massachusetts courts have explained, the physical confrontation requirement is necessary to circumscribe the otherwise potentially limitless reach of the MCRA:

> The fact of the matter is that, unless the Act is limited in scope to those interferences of secured rights involving an actual or potential physical confrontation accompanied by a threat of harm, it will be limited only by some judicial variant of "I know it when I see it." Since so much conduct falls within the rubric of "rights secured by the constitution or laws" of the United States and Commonwealth, and since the reach of the Act is not limited to state action, and since so much that persons do may affect the economic position of others, interpreting the Act to include economic coercion will render the Act nearly boundless in its reach. *Limiting the Act to actual or potential physical confrontations accompanied by a threat of harm reflects what the Legislature thought it was enacting in 1979* and is necessary to prevent that legislation from becoming "a vast constitutional [and statutory] tort."

*Id.* at \*23 (quoting *Freeman v. Plan. Bd. of W. Boylston*, 419 Mass. 548, 565 (1995) and citing *Bally v. Ne. Univ.*, 403 Mass. 713, 718, 532 N.E.2d 49, 52 (1989) (emphasis added).

Here, Plaintiffs allege no "actual or potential physical confrontation" with Gilbert. To the contrary, they allege only limited interactions with him, always non-physical and non-confrontational. Specifically, the Complaint asserts that Gilbert (i) scrawled graffiti on Plaintiffs' fence, FAC ¶ 73; (ii) attended a yard sale at their house while "falsely posing as a potential buyer," *id.* ¶ 74; and (iii) called Ina Steiner to offer to help with her complaints to the police, *id.* ¶¶ 264-265. None of these allegations involves an "actual or potential physical confrontation," and the Complaint alleges no other interaction between Plaintiffs and Gilbert. So

Plaintiffs' MCRA claim against him must be dismissed.  *Buster*, 2000 WL 576363, at *22;

*Blake*, 417 Mass. at 473.

### F.      Count Ten: Defamation

"To establish a defamation claim under Massachusetts law, a plaintiff must allege four

elements: '(1) that the defendant made a statement, concerning the plaintiff, to a third party; (2)

that the statement was defamatory such that it could damage the plaintiff's reputation in the

community; (3) that the defendant was at fault in making the statement; and (4) that the

statement either caused the plaintiff economic loss ... or is actionable without proof of economic

loss.'" *Alharbi v. Theblaze, Inc.*, 199 F. Supp. 3d 334, 351 (D. Mass. 2016) (quoting *Shay v.

Walters*, 702 F.3d 76, 81 (1st Cir. 2012) (citing *Ravnikar v. Bogojavlensky*, 438 Mass. 627

(2003))).  To satisfy Rule 8, a plaintiff must "explain the essential 'who, what, when, and where'

of the allegedly defamatory statements." *Grant v. Target Corp.*, 126 F. Supp. 3d 183, 193 (D.

Mass. 2015); *see also id.* ("Merely alleging that unnamed Target agents or employees made

defamatory statements about the propriety of Plaintiff's conduct … does not give Target fair

notice of the factual basis for Plaintiff's defamation claim.").

Here, Plaintiffs' defamation claim does not allege the publication of any defamatory

statement *by Gilbert*.  To the contrary, each allegedly defamatory statement described in the FAC

falls short of the elements necessary to state a claim against him:

- *First*, the FAC alleges defamation based on the mailing of sexually explicit material to

   Plaintiffs' neighbors.  *See* FAC ¶¶ 5, 146, 191, 504, 507-508.  None of the relevant

   allegations in the FAC describes any conduct by Gilbert.

- *Second*, the FAC describes an ad on Craigslist relating to sexual activities. *Id.* ¶¶ 8, 178,

   508.  Again, Gilbert is not alleged to have had any individual participation in the

publication of this statement—which, in addition, does not identify Plaintiffs and therefore cannot be said to be a statement "concerning the plaintiff" insofar as its publication is concerned.

- *Third*, the Complaint asserts that "false statements" were made "on Twitter" that Plaintiffs were "destroying small and family business" through "biased and negative reporting." *Id.* ¶ 262, 509. To begin, such statements are opinions, not falsehoods, and therefore not actionable. *See, e.g.*, *Piccone v. Bartels*, 785 F.3d 766, 772 (1st Cir. 2015) (holding that "pejorative and unflattering" description of plaintiff as "[u]nprofessional" was "protected" and not actionable). Regardless, the Complaint affirmatively alleges that these statements were made by another defendant, not Gilbert. *Id.* ¶¶ 197-198. And Gilbert is alleged only to have created a Twitter account for the purpose of sending direct messages *to Plaintiffs*, not publishing any statements to third parties. *Id.* ¶ 194.

- *Fourth*, Plaintiffs claim defamation based on "fake 'Persons of Interest' files" suggesting Plaintiffs were "a threat to eBay." *Id.* ¶ 510. As to this item, the Complaint does not describe any allegedly false statement in the file, nor does it allege the *publication* of this file to anyone. *See id.* ¶ 11 (alleging that "cover-up attempts included efforts to *create* … a phony 'person of interest' file" (emphasis added)); *id.* ¶ 212 (alleging that other eBay employees, not including Gilbert, were ordered to "*create* a false document" (emphasis added)). Absent an allegation that the file was ever shown to a third party, or that Gilbert caused its publication, Plaintiffs have failed to state a cause of action against him.

Beyond the specific statements described above, Plaintiffs allege only vaguely that "Defendants" made unspecified "defamatory communications" to unnamed "third parties" who "understood the defamatory meaning of the statements." *Id.* ¶ 506; *see also id.* ¶¶ 511-512.

These remaining vacuous allegations do not satisfy notice pleading requirements and cannot support a defamation claim against *any* defendant, including Gilbert.

### G.   Count Twelve: False Imprisonment

Plaintiffs' claim for false imprisonment fails because they do not allege that Gilbert did anything that resulted in their "unlawful confinement."  *Ortiz v. Hampden County*, 16 Mass. App. Ct. 138, 140 (1983) (citing *Wax v. McGrath*, 255 Mass. 340, 342 (1926)).  Nor do they allege facts plausibly suggesting that Gilbert committed any act with "the specific intent to confine" Plaintiffs in their home.  *Cremaldi–Vickery v. Otis Elevator, Inc.*, 57 Mass. App. Ct. 1105, 2003 WL 168452, at *2 (Jan. 24, 2003) (unpub. op.).

"Under Massachusetts law, the tort of "[f]alse imprisonment consists of '(1) intentional and (2) unjustified (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement.'"  *Barbosa v. Conlon*, 962 F. Supp. 2d 316, 334 (D. Mass. 2013) (quoting *Sietins v. Joseph*, 238 F. Supp. 2d 366, 381 (D. Mass. 2003) (quoting *Ball v. Wal–Mart, Inc.*, 102 F. Supp. 2d 44, 55 (D. Mass. 2000))).  Regarding confinement, a plaintiff must allege conduct by the defendant "which is intended to, and does in fact, 'confine' another 'within boundaries fixed by the actor.'"  *O'Neil v. Daimlerchrysler Corp.*, 538 F. Supp. 2d 304, 321 (D. Mass. 2008) (quoting *McCann v. Wal–Mart Stores, Inc.*, 210 F.3d 51, 53 (1st Cir. 2000) (quoting Restatement (Second) of Torts § 35 (1965)).  It is "critical to a claim for false imprisonment that the confining act be done with the specific intent to confine another." *Cremaldi-Vickery*, 2003 WL 168452, at *3 (citing *Sarvis v. Boston Safe Deposit & Trust Co.*, 47 Mass. App. Ct. 86, 98 (1999)).

Here, Plaintiffs do not allege actual "confinement."  Instead, Plaintiffs claim that they suffered "horrifying fear" that "if they left their home, they would be in danger or would be

killed." FAC ¶ 534. They assert that this fear was due to the "incessant" delivery of "packages" to their home and "abusive messages and threats," and that the "above-described acts and omissions … constitute intentional confinement." *Id.* ¶ 537. But this is a legal conclusion. Merely reciting the element of intentional confinement does not establish an adequate factual basis for Plaintiffs' claim. Massachusetts law requires more: the delivery of "packages" and the transmission of "messages" do not constitute "actual confinement" within "fixed boundaries," as Plaintiffs were at all times free to leave their home and do not allege otherwise. *See, e.g.*, *O'Neil*, 538 F. Supp. 2d at 322 (holding that plaintiff could not establish a false imprisonment claim on the ground that he "felt he could not leave" because he had "failed to establish that he was *actually confined*" (emphasis added)); *see also* Restatement (Second) of Torts § 40 cmt. b (2021 update) (noting that threats of force are sufficient to establish "confinement" only where there is a "threat to apply … physical force immediately"). Nor is it plausible that the publication of messages on the Internet or the delivery of packages to Plaintiffs' home suggests an *intent* to confine them within the "fixed boundaries" of their house. To hold otherwise would stretch "confinement" beyond all plausible meaning.

## IV.    CONCLUSION

For the reasons set forth above, Gilbert respectfully requests that Court enter an order, pursuant to Rule 12(b)(6), dismissing Counts Two, Three, Four, Eight, Nine, Ten, and Twelve, which do not adequately state a claim against him.

Dated: April 21, 2023                    */s/ Mark R. Conrad*
                                          Mark R. Conrad
                                          CONRAD | METLITZKY | KANE LLP
                                          Four Embarcadero Center, Suite 1400
                                          San Francisco, California 94111
                                          Tel:    (415) 343-7100
                                          Fax:    (415) 343-7101
                                          Email: mconrad@conmetkane.com

Dated: April 21, 2023

*/s/ Douglas S. Brooks*
Douglas S. Brooks (BBO No. 636697)
LIBBY HOOPES BROOKS & MULVEY P.C.
260 Franklin Street
Boston, Massachusetts 02110
Tel:    (617) 338-9300
Fax:    (617) 338-9911
Email: dbrooks@lhbmlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-participants on April 21, 2023.

*/s/ Douglas Brooks*
Douglas S. Brooks