# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

Ina Steiner,
David Steiner,
Steiner Associates, LLC,

<em>Plaintiffs</em>,

v.

eBay, Inc.,
Progressive F.O.R.C.E. Concepts, LLC,
Devin Wenig,
Steve Wymer,
James Baugh,
David Harville,
Brian Gilbert,
Stephanie Popp,
Stephanie Stockwell,
Veronica Zea,
Philip Cooke, and
John and Jane Doe,

<em>Defendants</em>.

No. 1:21-cv-11181-PBS

Leave to File Granted
March 10, 2023

## DEFENDANT DEVIN WENIG'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

BACKGROUND ............................................................................................................................ 1

    A.      Baugh's harassment campaign against Plaintiffs.................................................... 1

    B.      Plaintiffs' reliance on innuendo and fabrications ................................................. 5

MOTION-TO-DISMISS STANDARD ........................................................................................... 7

ARGUMENT .................................................................................................................................. 8

I.      Collective allegations do not support claims against Wenig in particular.......................... 8

II.     Plaintiffs do not state a claim against Wenig. ................................................................... 9

    A.      Plaintiffs do not state a negligence claim. .............................................................. 9

          1.      Plaintiffs do not adequately allege proximate causation............................ 9

          2.      Plaintiffs' negligent-supervision claim fails for an additional
                reason. ...................................................................................................... 11

    B.      Plaintiffs do not state a claim for intentional infliction of emotional distress...... 12

    C.      Plaintiffs do not state a claim for assault. ............................................................ 13

    D.      Plaintiffs do not state a claim for stalking. .......................................................... 14

    E.      Plaintiffs do not state a claim under the Massachusetts Civil Rights Act. ........... 14

    F.      Plaintiffs do not state a claim for defamation. ..................................................... 15

    G.      Plaintiffs do not state a claim for trespass. .......................................................... 16

    H.      Plaintiffs do not state a claim for false imprisonment. ........................................ 16

III.    Wenig is not vicariously liable for torts committed by others........................................ 17

    A.      Plaintiffs' civil conspiracy claim fails as a matter of law.................................... 17

    B.      Plaintiffs do not adequately allege a civil conspiracy.......................................... 17

          1.      Plaintiffs do not adequately allege concerted action.............................. 18

          2.      Plaintiffs do not adequately allege aiding and abetting. ......................... 18

CONCLUSION............................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*8 Erie St. JC LLC v. City of Jersey City*,
  2020 WL 2611540 (D.N.J. 2020) .......................................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................................7, 8

*Bassett v. Jensen*,
  459 F. Supp. 3d 293 (D. Mass. 2020) ...........................................................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................................7

*Bellows v. Worcester Storage Co.*,
  7 N.E.2d 588 (Mass. 1937) ...........................................................................................10

*Bobbitt v. United States*,
  2006 WL 335231 (D. Mass. 2006) ............................................................10, 11, 13, 16

*Com. v. Gorassi*,
  733 N.E.2d 106 (Mass. 2000) .......................................................................................13

*Cremaldi-Vickery v. Otis Elevator, Inc.*,
  782 N.E.2d 48, 2003 WL 168452 (Mass. App. Ct. 2003) ......................................16, 17

*Daniels v. Varela*,
  2020 WL 5440574 (D. Mass. 2020) ................................................................................8

*Delaney v. Reynolds*,
  825 N.E.2d 554 (Mass. App. Ct. 2005) ........................................................................10

*Dilbert v. Hanover Ins. Co.*,
  825 N.E.2d 1071 (Mass. App. Ct. 2005) .......................................................................16

*Do Corp. v. Town of Stoughton*,
  2013 WL 6383035 (D. Mass. 2013) ..............................................................................15

*Gidwani v. Wasserman*,
  365 N.E.2d 827 (Mass. 1977) .......................................................................................11

*Gilanian v. City of Boston*,
  431 F. Supp. 2d 172 (D. Mass. 2006) ...........................................................................15

*Gutierrez v. Mass. Bay Transp. Auth.*,
    772 N.E.2d 552 (Mass. 2002) ...................................................................18

*Helfman v. Ne. Univ.*,
    149 N.E.3d 758 (Mass. 2020) ...................................................................11

*Kent v. Commonwealth*,
    437 Mass. 312 (2002) ...............................................................................10

*Levin v. Dalva Bros., Inc.*,
    459 F.3d 68 (1st Cir. 2006)........................................................................14

*Lucero v. Safeway, Inc.*,
    2022 WL 79860 (D. Colo. 2022) ...............................................................17

*Maldonado v. Fontanes*,
    568 F.3d 263 (1st Cir. 2009)........................................................................8

*Mansor v. JPMorgan Chase Bank, N.A.*,
    183 F. Supp. 3d 250 (D. Mass. 2016) ........................................................20

*Nesbitt v. Wellpath*,
    2022 WL 617514 (D. Mass. 2022) .............................................................10

*O'Connor v. Nantucket Bank*,
    992 F. Supp. 2d 24 (D. Mass. 2014) ...........................................................3

*Payton v. Abbott Labs*,
    512 F. Supp. 1031 (D. Mass. 1981) ......................................................18, 19

*Roman v. Trustees of Tufts Coll.*,
    964 N.E.2d 331 (Mass. 2012) ...................................................................13

*Sanchez v. Pereira-Castillo*,
    590 F.3d 31 (1st Cir. 2009).........................................................................9

*Sarvis v. Boston Safe Deposit & Tr. Co.*,
    47 Mass. App. Ct. 86 (1999) .....................................................................16

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012).........................................................................7

*Sena v. Commonwealth*,
    629 N.E.2d 986 (Mass. 1994) ...................................................................12

*Soto-Torres v. Fraticelli*,
    654 F.3d 153 (1st Cir. 2011)....................................................................7, 8

*Taylor v. Am. Chemistry Council*,
    576 F.3d 16 (1st Cir. 2009)..........................................................................18

*U.S. v. Baugh*,
    No. 20-cr-10263 (D. Mass. Sept. 29, 2022)............................................... *passim*

*White v. Blue Cross & Blue Shield of Mass., Inc.*,
    809 N.E.2d 1034 (Mass. 2004).....................................................................15

*Woods Hole Oceanographic Inst. v. ATS Specialized, Inc.*,
    514 F. Supp. 3d 369 (D. Mass. 2021)...........................................................10

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017).................................................................................17

**Statutes**

Cal. Civ. Code § 1708.7.....................................................................................14

Cal. Civ. Code § 1708.7(a)(1)............................................................................14

Mass. Gen. Laws Ann. ch. 12, § 11*I*................................................................14

**Other Authorities**

Fed. R. Civ. P. 8..................................................................................................7

Fed. R. Civ. P. 12(b)(6)...............................................................................1, 3, 7

https://www.nytimes.com/2018/04/03/technology/youtube-shooting-suspect-head
    quarters.html..............................................................................................12

L. Debter, *EBay's CEO Resigns, Citing Disagreement With Board*, Forbes (Sept.
    25, 2019), *available at* bit.ly/3UrjgHE.......................................................6

Restatement (Second) of Conflict of Laws § 145 (1971).................................14

Restatement (Second) of Torts § 35..................................................................16

Restatement (Second) of Torts § 158................................................................16

Restatement (Second) of Torts § 876(a), (b) ...................................................18

# INTRODUCTION

That Ina and David Steiner were subjected to vile harassment by former eBay employees does not mean that then CEO Devin Wenig is or should be liable for the Steiners' damages. The 123-page complaint contains no well-pleaded facts plausibly suggesting that Wenig committed a tort or aided and abetted torts committed by others. That is no surprise. Plaintiffs' claims are contrary to Wenig's character, conduct, and reputation. They rest on just three words. Ripped from a lone, decontextualized text sent to eBay's head of communications and construed by Plaintiffs in an implausible manner contrary to Wenig's intent, those three words cannot sustain Plaintiffs' claims. Moreover, Plaintiffs ignore clear evidence that Wenig had no role in harassing them, including that an outside investigation found no evidence that Wenig "directed or knew that [the harassment] would occur"; that no one participated in the harassment has ever said that Wenig was involved; that Jim Baugh, the architect of the harassment campaign, admitted that he is "one hundred percent responsible"; and that the U.S. Attorney's Office that investigated the case told this Court that "[t]here's no one above Jim Baugh at eBay who thought up the depraved things that happened to David and Ina Steiner." Unable to plead facts, Plaintiffs rely on implausible inferences, such as deriving a desire for "plausible deniability" from Wenig taking a long-planned sabbatical. Because the complaint alleges no facts plausibly suggesting that Wenig bears any responsibility for Baugh's harassment campaign, Plaintiffs' claims against Wenig (Counts 1–4, 6, 7, 9–should be dismissed under Rule 12(b)(6).

# BACKGROUND

## A.    Baugh's harassment campaign against Plaintiffs

Plaintiffs Ina and David Steiner publish EcommerceBytes, an online trade publication that "report[s] on the inner-workings of various ecommerce companies," including eBay. ECF 176 ¶ 2. Their claims arise from an August 2019 harassment campaign allegedly intended "to intimidate,

threaten, torture, stalk and silence" them. ECF 176 ¶¶ 100, 366(j). Properly characterized by

Plaintiffs as "bizarre" (ECF 239 at 28, *U.S. v. Baugh*, No. 20-cr-10263 (D. Mass. Sept. 29, 2022)),

the harassment ranged from "signing them up for over 50 unwanted email subscriptions, some

vulgar in nature," to sending them "a book on surviving the loss of a spouse, a bloody pig … mask,

a funeral wreath, and live spiders." ECF 176 ¶¶ 408; *see also id.* ¶¶ 8, 146, 178, 182.

As made clear by the complaint, judicially noticeable documents, and evidence that

Plaintiffs previously submitted, the harassment campaign was conceived and conducted by Jim

Baugh, eBay's former Senior Director of Safety and Security who—together with six of his

subordinates—pleaded guilty to multiple felonies as a result. ECF 176 ¶¶ 362–70. As the

government told this Court at Baugh's sentencing:

> [N]o one at eBay told [Baugh] to anonymously threaten and harass and stalk the Steiners. That idea, what happened to the Steiners, was ***his and his alone***. There's no one above Jim Baugh at eBay who thought up the depraved things that happened to David and Ina Steiner.

ECF 239 at 16, *U.S. v. Baugh*, No. 20-cr-10263 (D. Mass. Sept. 29, 2022) (emphasis added).[1] For

his part, Baugh admitted that he "was ***one hundred percent responsible***" for the harassment

campaign. ECF 239 at 37, *U.S. v. Baugh*, No. 20-cr-10263 (D. Mass. Sept. 29, 2022) (emphasis

added).[2] A document submitted by Plaintiffs in opposition to Wenig's initial motion to dismiss

---

[1]    The allegation (ECF 176 ¶ 459) that Wenig "directed" Baugh to harass Plaintiffs because Wenig was "obsessed" with their reporting is contrary to Plaintiffs' own evidence. The only alleged communications involving Wenig and Baugh around the time Baugh was planning his harassment campaign concerned an anonymous Twitter user with apparent inside knowledge of Wenig's travel plans who made implicit threats of violence against Wenig and eBay. *See* ECF 146-1 at 9–10, 16; *cf.* ECF 176 ¶ 57. One such communication, with eBay's general counsel, discussed the "*legal*" channels" eBay could pursue through "outside counsel." ECF 117-1 at R437–39 (emphasis added). In the other, Wenig described himself as "relaxed" about the situation and told Baugh, "don't worry" because "this comes with the territory" and is simply "part of running [a] consumer company." ECF 146-1 at 16. If Wenig was "relaxed" about implicit threats made by a Twitter user, it is implausible that at the same time Wenig would be instigating or directing a criminal harassment campaign over the Steiner's or anyone else's criticism of eBay or him.

[2]    Other evidence that the harassment scheme was entirely Baugh's brainchild includes an affidavit from an FBI agent submitted in support of Baugh's arrest warrant (and by Plaintiffs in

shows that an exhaustive internal investigation—during which investigators reviewed more than 1.2 million records (including all of Wenig's communications) and conducted nearly 100 interviews—uncovered no evidence that Wenig "directed or knew that criminal acts would occur." ECF 117-1 at R13.[3] In short, as alleged in the complaint, it was Baugh and *his* subordinates who planned and "set" the harassment campaign "in motion." ECF 176 ¶ 100; *see also id.* ¶¶ 94, 369.

Despite this, Plaintiffs seek to hold Wenig liable for Baugh's criminal conduct by alleging that Baugh's harassment campaign was carried out at Wenig's "direction." ECF 176 ¶ 13; *see also e.g.*, *id.* ¶¶ 82, 205, 208, 210, 229. The principal basis for that false assertion is an August 1, 2019 text that Wenig sent eBay's then-Senior Vice President and Chief Communications Director, Steve Wymer, after eCommerceBytes published an article discussing litigation between eBay and Amazon. *Id.* ¶ 82. Wenig told Wymer that "[i]f we are ever going to take [Ina Steiner] down … now is the time." *Id.* According to the complaint, Wymer responded, "[o]n it." *Id.* Based on this exchange, which takes Wenig's text entirely out of context, Plaintiffs falsely suggest that Wenig directed Wymer (and others through him) to launch the subsequent harassment campaign.[4]

In fact, Wenig's text in response to Ina Steiner's article on eBay and Amazon followed a series of conversations in which Wenig and Wymer discussed how to publicize the fact that

---

opposition to Wenig's prior motion to dismiss) stating: "at the exact same time" he was terrorizing the Steiners, Baugh tried to enlist two eBay employees "to harass a prosecutor" then prosecuting his father. ECF 117-1 at R387. This, said the government, shows "that what … Baugh did" to the Steiners "was not about eBay because he was doing it to someone else for his own reasons at the exact same time." ECF 239 at 18–20, *U.S. v. Baugh*, 20-cr-10263 (D. Mass. Sept. 29, 2022).

[3]     The amended complaint relies heavily albeit implicitly on this document, a presentation that eBay made to the government. *Compare* ECF 176 ¶¶ 293, 312, 334, 353, 371, 373, 449, 476, 560, 568 *with* ECF 117-1 at R4–R36. "When," as here, "the complaint relies upon a document whose authenticity is not challenged, such a document merges into the pleadings and the court may properly consider it under a Rule 12(b)(6) motion to dismiss," even when the document "was not appended to or expressly incorporated in [the] complaint." *O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 28 (D. Mass. 2014) (Saris, J.) (internal quotation marks omitted).

[4]     Plaintiffs' false assertion that Wenig "encourage[d]" Baugh's tortious conduct (ECF 176 ¶ 550) rests entirely on the same lone text.

EcommerceBytes's reporting was biased by the substantial advertising dollars that it took from eBay's direct competitors and a disservice to the small sellers who relied on it as an independent source of news to their detriment. A text that Wenig sent Wymer using the identical phrase a few months earlier after publication of a previous Ina Steiner article makes clear that when he spoke of "tak[ing] her down," Wenig was referring to common—and entirely legal—public relations measures designed to address negative publicity. When after the earlier article Wenig said "[t]ake her down," the result was the retention of a consulting firm that then prepared a "report outlin[ing] strategies that would drive the Steiners' articles lower in search engine results." ECF 176 ¶ 69–70. Thus, the sole basis for Plaintiffs' claims against Wenig is the unwarranted imputation of a sinister meaning to a colloquial phrase commonly used in public relations and communications circles.

Alluding to Wenig's August 1 text, Plaintiffs allege that Wymer "[d]isseminat[ed]" what they characterize as "Wenig's orders." ECF 176 ¶ 85. But characterizing Wenig's text to Wymer as an "order" is contrary to its plain meaning and the complaint's factual allegations which admit that, when Baugh asked Wymer whether Wenig had "said to burn [Steiner] to the ground," Wymer did not confirm any order or directive from Wenig. *Id.* (emphasis added).[5]

Notwithstanding its conclusory assertion that "[a]ll Defendants knew or should have known" of Baugh's "plan and its purpose" (ECF 176 ¶ 217), the complaint pleads no facts plausibly suggesting that Wenig knew or should have known of Baugh's bizarre criminal intent. Indeed, the complaint's well-pleaded allegations suggest the exact opposite. For example, rather than allege that Wenig knew of Brian Gilbert's vandalization of the Steiner's home, the complaint alleges it was at Baugh's direction "with [the] knowledge" of Wendy Jones, eBay's then-Senior

---

[5]    Similarly, the complaint alleges that it was Wymer, not Wenig, who told Baugh that Ina Steiner was "a biased troll who needs to get BURNED DOWN." ECF 176 ¶ 85. And it further alleges that it was Wymer who "ordered" Baugh to take action, telling him: "I want to see ashes. As long as it takes. Whatever it takes." *Id.* ¶ 126. Wenig was not a party to either of Wymer's texts.

Vice President of Global Operations and Baugh's direct supervisor, and that Baugh subsequently "informed … Wymer that his team had given the Steiners 'a tap on the shoulder.'" *Id.* ¶¶ 30, 73 75. Moreover, contrary to the baseless suggestion that Baugh was implementing a plan known to Wenig, a document previously submitted by Plaintiffs reports that Wymer "hid" his texts to Baugh "from everyone[,] … apparently even Wenig." Dkt. 117-1 at R13; *cf. supra* at 2–3 & n3. No basis exists to suggest that Wenig even knew of, let alone ordered Baugh's campaign.

### B.    Plaintiffs' reliance on innuendo and fabrications

Seeking to hold him liable for the acts of others, Plaintiffs rely on innuendo and fabrications to impugn Wenig. To cite one glaring example: Plaintiffs allege that "eBay admitted to the USAO that eBay, Wenig and Wymer could be charged criminally." ECF 176 ¶ 373. But evidence submitted ***by Plaintiffs***—eBay's presentation to the U.S. Attorney's Office—establishes precisely the opposite. It reports that a thorough investigation by outside counsel "did ***not*** find evidence that [Wenig] directed or knew that the criminal acts would occur." ECF 117-1 at R13 (emphasis added).

Plaintiffs also falsely attribute statements to Wenig that they elsewhere acknowledge were made by others. For example, Plaintiffs assert that "eBay's directive" to "burn [Steiner] down" was transmitted through "Wenig and Wymer" despite alleging—and having submitted evidence establishing—that it was Wymer alone who gave Baugh that instruction. ECF 176 ¶¶ 85, 224; ECF 146-1 at 15. And they assert that Wenig "gave the directive to do 'whatever it takes'" (ECF 176 ¶ 230) but allege—and offer evidence—that the words were used by Wymer, not Wenig, in communications with Baugh to which Wenig was not a party. *Id.* ¶¶ 110, 126; ECF 117-1 at R437.

Plaintiffs try to besmirch Wenig through the unwarranted juxtaposition of unrelated facts. In one instance, Plaintiffs hypothesize that "[i]t is no coincidence" that Wenig issued his "take down" directive "the same day he began sabbatical and travelled to Italy for the month, allowing him a measure of plausible deniability." ECF 176 ¶ 83. Plaintiffs allege no facts to support that

5

false and conclusory assertion. It not only strains credulity to believe that Wenig, the CEO of a Fortune 500 Company, took a last-minute, extended foreign trip with his family to provide cover for an elaborate harassment scheme supposedly triggered by an unanticipated article published that same day. In fact, Wenig's sabbatical was, of necessity, planned months in advance,[6] and the most plausible inference is that Wenig's sabbatical and Baugh's harassment campaign were unrelated and that their timing was mere coincidence (or, alternatively, that Baugh deliberately took advantage of Wenig's absence to engage in conduct that he knew Wenig would not approve of).

Similarly, Plaintiffs allege that Wenig tweeted "'Oh boy'" the "same day" that Baugh and Wymer allegedly communicated about the police investigation into Baugh's criminal conduct (ECF 176 ¶¶ 266–67)—even though they have no basis and plead no facts to suggest that the tweet had anything to do with Baugh's harassment campaign. In fact, it was in response to a *Wall Street Journal* article concerning an investigation into a competitor.

Then Plaintiffs falsely imply that Wenig's decision to leave eBay was related to Baugh's harassment of the Steiners (ECF ¶ 288) when, as contemporaneously reported, Wenig's "departure was prompted by a disagreement with the board" after "a strategic review of [eBay's] assets" that had been "announced" long before Baugh's criminal conduct "as part of an agreement with … activist investors." L. Debter, *EBay's CEO Resigns, Citing Disagreement With Board*, Forbes (Sept. 25, 2019), *available at* bit.ly/3UrjgHE.

In sum, Plaintiffs' complaint is devoid of any well-pleaded facts plausibly suggesting that Wenig directed, knew of, or encouraged Baugh's criminal conduct. That is understandable, for Wenig did not direct, did not know of, and did not encourage Baugh's reprehensible conduct.

---

[6]      And contrary to Plaintiffs' allegation, Wenig did not tell Baugh "just before his return from sabbatical" that "[t]he Cavalry is back." ECF 176 ¶ 270. The document from which the false allegation is ultimately derived, a privilege log, does not support the allegation. It does not identify Baugh as the recipient of Wenig's message, and in fact he was not. ECF 117-1 at R544–55.

## MOTION-TO-DISMISS STANDARD

To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" and must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

The Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). Mere "labels and conclusions" do not suffice; nor do "naked assertion[s] devoid of further factual enhancement." *Id.* (quotation marks omitted). On the contrary, a complaint's "*[f]actual* allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (emphasis added). Thus, when determining whether a complaint states a claim upon which relief may be granted, a court must "isolate and ignore" all conclusory assertions and consider only "the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Because "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss" (*Iqbal*, 556 U.S. at 679), the critical question is whether the complaint's well-pleaded facts "state a plausible, not a merely conceivable, case for relief." *Soto-Torres v. Fraticelli*, 654 F.3d 153, 159 (1st Cir. 2011).

*Iqbal* is not only binding but instructive. There, the defendant was the head of an agency that, according to the plaintiff, had adopted a policy subjecting certain individuals to "harsh" treatment. *Iqbal*, 556 U.S. at 680. The plaintiff claimed that the agency head was liable for acts purportedly committed by subordinates pursuant to that policy because he was allegedly "the principal architect" of the policy and allegedly "knew of, condoned, and … agreed" to the unlawful

acts supposedly committed pursuant to that policy. *Id*. Finding those "bare assertions" of direction, knowledge, and acquiescence to be "conclusory and not entitled to be assumed true," the Court held that they "fail[ed] to plead sufficient facts to state a claim" against the top official "under a theory of 'supervisory liability.'" *Id*. at 677, 681. Applying *Iqbal*, the First Circuit has directed the dismissal of "supervisory liability" claims when they allege that a top official "participated in or directed" purportedly unlawful activity but "provide[s] no facts to support" the official's participation in or direction of such activity. *Soto-Torres*, 654 F.3d at 159. Even when subordinates have allegedly "inflict[ed] truly outrageous, uncivilized, and intolerable harm on a person," the First Circuit has directed dismissal of "supervisory liability" claims where there are no well-pleaded allegation that the top official engaged in such conduct or that his "conduct led inexorably to" that of the subordinates. *Maldonado v. Fontanes*, 568 F.3d 263, 274 (1st Cir. 2009).

## ARGUMENT

The complaint pleads no facts plausibly suggesting that Wenig knew of, let alone aided and abetted, Baugh's bizarre criminal conduct. Plaintiffs' claims against Wenig hang on three words in a lone text that—as demonstrated by facts pleaded elsewhere in the complaint, by Plaintiffs' own evidence, and by judicially noticeable documents—do not mean what Plaintiffs say they mean. The Steiners were unquestionably harmed by Baugh's outrageous harassment campaign, but Wenig had nothing to do with, and is not liable, for it.

## I.   Collective allegations do not support claims against Wenig in particular.

The complaint often alleges that "the Defendants" engaged in certain, purportedly tortious conduct. ECF 176 ¶¶ 10, 73, 156, 204, 262, 487–88. But when a "claim is asserted against multiple defendants," the complaint must "allege the factual basis for the claim against each defendant" individually. *Daniels v. Varela*, 2020 WL 5440574, at *5 (D. Mass. 2020). Therefore, on a motion to dismiss, the court "must determine whether, *as to each defendant*, a plaintiff's pleadings are

sufficient to state a claim." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009). Thus, to state a claim against him, Plaintiffs must plead facts as to Wenig in particular.

In an apparent effort to do so, Plaintiffs repeatedly augment specific allegations against Baugh and the other criminal defendants with conclusory allegations that they acted pursuant to "directives from Defendants Wenig, Wymer and Jones." ECF 176 ¶ 100; *see also, e.g., id.* ¶¶ 205, 208, 210, 225, 227. But naming Wenig as one in a litany of multiple defendants does not cure the collective-pleading problem. Conclusory allegations are never sufficient, let alone "conclusory allegations against [d]efendants as a group." *8 Erie St. JC LLC v. City of Jersey City*, 2020 WL 2611540, at *3 (D.N.J. 2020). That is especially so here, where the conclusory collective allegations are contrary to specific allegations made elsewhere in the complaint. For example, although the complaint frequently asserts that Baugh and his crew were acting under directives from "Wenig, Wymer and Jones" (ECF 176 ¶ 100), it never alleges that Wenig ever directed Baugh to do anything regarding the Steiners. The only "directives" actually alleged are from Wymer, who allegedly told Baugh to do "whatever it takes," and Jones, who allegedly told Baugh to "deal with [Plaintiffs'] reporting 'off the radar.'" ECF 176 ¶¶ 65, 126, 224, 308.

For these reasons, allegations of what "the Defendants" or what "Wenig, Wymer and Jones" supposedly did cannot sustain Plaintiffs' claims against Wenig.

## II.   Plaintiffs do not state a claim against Wenig.

### A.   Plaintiffs do not state a negligence claim.

The amended complaint asserts three negligence counts—negligence, negligent infliction of emotional distress, and negligent supervision. None states a claim against Wenig.

#### 1.   Plaintiffs do not adequately allege proximate causation.

The negligence claims against Wenig fail because the complaint alleges no facts plausibly suggesting that his purported negligence proximately caused Plaintiffs' alleged injuries. To state a

9

claim for negligence, a plaintiff must allege facts sufficient to plausibly suggest that the defendant's alleged "negligence was a proximate cause of her injury." *Delaney v. Reynolds*, 825 N.E.2d 554, 556 (Mass. App. Ct. 2005); *accord Woods Hole Oceanographic Inst. v. ATS Specialized, Inc.*, 514 F. Supp. 3d 369, 374 (D. Mass. 2021). For negligent conduct to be "the proximate cause of an injury," the injury must have been "a foreseeable result of the defendant's … conduct." *Kent v. Commonwealth*, 437 Mass. 312, 320 (2002); *accord, e.g.*, *Nesbitt v. Wellpath*, 2022 WL 617514, at *7 (D. Mass. 2022). Plaintiffs allege no facts plausibly suggesting that Baugh's outrageous criminal behavior was a foreseeable result of Wenig's alleged negligence.

Nor could they. Even if Baugh somehow mistakenly believed that he was acting at Wenig's indirect behest (*but see* ECF 176 ¶ 85), what Baugh and his subordinates allegedly did was "so extraordinary that it could not reasonably have been foreseen" by Wenig. *Bobbitt v. United States*, 2006 WL 335231, at *1 (D. Mass. 2006) (quoting *Delaney*, 825 N.E.2d at 557); *cf.* ECF 176 ¶ 135 (alleged conduct was "extreme and outrageous").[7] So unforeseeable was Baugh's harassment campaign that the government explained at his sentencing hearing that "the most common question" it "is asked" when "the facts of this case come up" is "who could make this stuff up?" ECF 239 at 12, *U.S. v. Baugh*, No. 20-cr-10263 (D. Mass. Sept. 29, 2022). "[T]he answer," said the government, is "Baugh," who was "responsible for all of it." *Id.* at 12–13.

Baugh's conduct—which Plaintiffs themselves have described as "bizarre" (ECF 239 at 28, *U.S. v. Baugh*, No. 20-cr-10263 (D. Mass. Sept. 29, 2022))—was so "extraordinary, abnormal, irrational, and impossible to foresee" that it was, at minimum, "a superseding cause" of Plaintiffs' alleged injuries. *Bellows v. Worcester Storage Co.*, 7 N.E.2d 588, 592 (Mass. 1937). "Generally,

---

[7]       That Baugh would launch a rogue harassment campaign against the Steiners using eBay employees was no more foreseeable to Wenig than was Baugh's effort to use eBay employees to harass an Arkansas prosecutor. *See supra* 2 n.2.

the act of a third person in committing an intentional tort constitutes a superseding cause" because, "in the absence of any reason to expect the contrary, the actor may reasonably expect that others will obey the criminal law." *Gidwani v. Wasserman*, 365 N.E.2d 827, 830 (Mass. 1977). Because Baugh's extraordinary criminal conduct was—at the very least—an unforeseeable superseding cause of Plaintiffs' alleged injuries, it is "deemed to be the proximate cause" of those injuries and "relieves" Wenig "of liability" even if he had been negligent. *Bobbitt*, 2006 WL 335231, at *1.

### 2.    Plaintiffs' negligent-supervision claim fails for an additional reason.

The negligent-supervision claim fails for yet another reason. To state such a claim, one must plead facts plausibly suggesting that the defendant became "aware or should have become aware of problems with an employee that indicated his unfitness" and failed "to take further action such as investigating, discharge or reassignment." *Helfman v. Ne. Univ.*, 149 N.E.3d 758, 775 (Mass. 2020). Plaintiffs allege that Wenig "knew or should have known" that "[f]or years … Baugh engaged in a pattern of breaking down the analysts, firing them without cause, and creating a toxic work environment" (ECF 176 ¶¶ 463, 465), but plead no facts to support that assertion.

Neither the fact that Baugh had been a "U.S. government agent involved in national security activities" (*id.* ¶ 298), nor the fact that he ran active shooter drills (*id.* ¶ 315), nor the fact that he supposedly showed Wenig a video of Zea falling off a stool (*id.* ¶ 321) plausibly suggest that Wenig knew or should have known that Baugh —who reported to Jones, not Wenig (*id.* ¶ 30)—was unfit for his job.[8] The suggestion that someone's background in national security indicates an unfitness to work in corporate security would shock executives across America who routinely hire former government agents precisely because their background suggests that they are well suited to the job. That Baugh conducted vigorous active shooter drills while at eBay does not

---

[8]    Baugh had no history of criminal conduct. As this Court noted when sentencing him, he was "a first-time offender." ECF 239 at 41, *U.S. v. Baugh*, 20-cr-10263 (D. Mass. Sept. 29, 2022).

indicate that he was unfit to be eBay's Senior Director of Safety and Security; to the contrary, he would have been remiss had he not done so, especially after the 2018 shooting at Google's nearby headquarters. *Cf.* https://www.nytimes.com/2018/04/03/technology/youtube-shooting-suspect-headquarters.html. And even if Baugh had shown Wenig a video of Zea falling off a stool, it would not have indicated that Baugh was prone to outrageous criminal activity. No facts alleged plausibly suggest that Wenig knew or should have known of problems indicating that Baugh was unfit for his job and thus fail to state a claim for negligent supervision against Wenig.

### B.   Plaintiffs do not state a claim for intentional infliction of emotional distress.

"To sustain a claim of intentional infliction of emotional distress, a plaintiff must show (1) that *the defendant* intended to cause, or should have known that his conduct would cause, emotional distress; (2) that *the defendant's* conduct was extreme and outrageous; (3) that *the defendant's* conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress." *Sena v. Commonwealth*, 629 N.E.2d 986, 994 (Mass. 1994) (emphasis added). That Baugh's August 2019 harassment campaign caused the Steiners to suffer severe emotional distress, is not the same as alleging facts plausibly suggesting (1) that Wenig intended to cause or knew that texting Wymer about a media strategy would cause, emotional distress; (2) that Wenig's text to Wymer was "extreme and outrageous"; or (3) that Wenig's text caused the Steiners' distress.

The complaint conclusorily asserts that "[t]he Defendants" collectively—or "Defendants Wenig, Wymer and Jones" collectively—"knew or should have known their actions would cause the Steiners emotional … harm" (ECF 176 ¶ 226; *see also id.* ¶¶ 203, 204, 208, 211, 228, 231) but it alleges no facts as to what Wenig in particular knew or should have known about the consequences of his alleged conduct. Nowhere does it plead facts plausibly suggesting that Wenig knew or should have known that texting Wymer in the context he did would (or even could) purportedly result in Baugh "set[ting] in motion" a campaign to "intimidate, threaten, torture,

terrorize, stalk and silence the Steiners." *Id.* ¶ 93. Similarly, although the complaint several times alleges that "[a]ll named Defendants" collectively "intended to have the Steiners suffer emotional distress" (*id.* ¶ 411), it pleads no facts about Wenig's intent in particular, let alone facts sufficient to plausibly suggest that he intended the Steiners to suffer extreme emotional distress.

Even if the complaint had adequately alleged that Wenig had intended that the Steiners suffer emotional distress, that alone would not sustain a claim against him for intentional infliction of emotional distress. It is "no[t] … enough that the defendant … intended to inflict emotional distress, or even that his conduct [was] characterized by malice." *Roman v. Trustees of Tufts Coll.*, 964 N.E.2d 331, 341 (Mass. 2012) (quotation marks omitted). Rather, the defendant's actions must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (quotation marks omitted). Baugh's and his subordinates' conduct might well satisfy that standard, but Wenig's alleged conduct—texting eBay's chief communications officer—does not.[9]

### C.   Plaintiffs do not state a claim for assault.

Plaintiffs assert an assault claim against "all defendants" (ECF 176 ¶ 110) but allege no facts plausibly suggesting that Wenig assaulted them. "[A]n assault is defined as either an attempt to use physical force on another, or as a threat of use of physical force." *Com. v. Gorassi*, 733 N.E.2d 106, 110 (Mass. 2000). The complaint does not allege any facts that, if true, would plausibly suggest that Wenig either attempted or threatened to use physical force against the Steiners. The complaint alleges that "*Baugh, Harville, Popp and Zea*" followed, stalked, and menaced Plaintiffs (ECF 176 ¶ 486 (emphasis added)) but it does not—and cannot—allege that

---

[9]      And again, even if Baugh mistakenly thought that he was acting at Wenig's directive (*but see* ECF 176 ¶ 85), what he did was "so extraordinary that it could not reasonably have been foreseen" by Wenig and is thus an intervening cause that would in any case "relieve[]" Wenig "of liability" for the Steiners' emotional distress. *Bobbitt*, 2006 WL 335231, at *1; *supra* at 10–11.

Wenig engaged in such conduct. Thus, the complaint fails to state an assault claim against Wenig.

**D.      Plaintiffs do not state a claim for stalking.**

Recognizing that Massachusetts tort law does not recognize a claim for stalking, Plaintiffs assert a claim under Cal. Civ. Code § 1708.7. But it does not apply. Sitting in Massachusetts, this court applies Massachusetts conflict-of-law principles, which are "explicitly guided by the Restatement (Second) of Conflict of Laws." *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 74 (1st Cir. 2006) (quotation marks omitted). Under the Restatement, "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." Restatement (Second) of Conflict of Laws § 145 (1971). Here, Massachusetts, not California, has the most significant relationship to the alleged stalking. *Cf.* Compl. §§ 97, 103. Thus, Massachusetts law— which does not recognize a stalking claim—applies and Plaintiffs' claim fails.

Even under California law, Plaintiffs do not state a claim because they must, yet do not, allege that "[t]he defendant engaged in a pattern of conduct the intent of which was to follow, alarm, place under surveillance, or harass the plaintiff." Cal. Civ. Code § 1708.7(a)(1). The statute defines "pattern of conduct" as "a series of acts over a period of time." *Id*. § 1708.7(b)(1). Here, the complaint contains no well-pleaded factual allegations that Wenig engaged in a series of acts over a period of time. It attributes only one arguably relevant act to him—texting Wymer (not Baugh) and has no well-pleaded facts regarding Wenig's intent, let alone well-pleaded facts plausibly suggesting that Wenig intended "to follow, alarm, place under surveillance, or harass" the Steiners. *Id.* § 1708.7(a)(1). Thus, the complaint fails to state a stalking claim against Wenig.

**E.      Plaintiffs do not state a claim under the Massachusetts Civil Rights Act.**

To state a claim under the Massachusetts Civil Rights Act, M.G.L. ch. 12, § 11*I*, a plaintiff must allege "that (1) their exercise or enjoyment of rights secured by the Constitution or laws of

14

either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion." *Do Corp. v. Town of Stoughton*, 2013 WL 6383035, at \*12 (D. Mass. 2013). Here, the MCRA claim against Wenig is "barred" because Plaintiffs do not allege that he "personally engaged" in threats, intimidation, or coercion. *Gilanian v. City of Boston*, 431 F. Supp. 2d 172, 174 n.1 (D. Mass. 2006). That he texted Wymer does not support an MCRA claim against Wenig because, even if it prompted Wymer to act against the Steiners, the text "was directed towards [Wymer]" and "not aimed at Plaintiffs." *Do Corp.*, 2013 WL 6383035, at \*12 (allegation that defendant's letter encouraged third party to take unlawful action against plaintiff "failed to state an MCRA claim"). Thus, Plaintiffs fail to state an MCRA claim against Wenig.

### F.   Plaintiffs do not state a claim for defamation.

"To prevail on a claim of defamation, a plaintiff must," among other things, "establish that the defendant was at fault for the publication of a false statement regarding the plaintiff." *White v. Blue Cross & Blue Shield of Mass., Inc.*, 809 N.E.2d 1034, 1036 (Mass. 2004). The Steiners allege that "Defendants" defamed them "by … sending sexually charged pornography to the Steiners' neighbor[s'] homes, in David Steiner's name" (ECF 176 ¶ 504); "by posting ads on Craigslist [stating] that the Plaintiffs were sexual swingers" (*id.* ¶ 508); by making "false statements on Twitter claiming that … Ina Steiner was destroying small and family businesses through her biased and negative reporting on eBay" (*id.* ¶ 509); and "by creating fake 'Persons of Interest' files on [the Steiners], in order to suggest the Steiners were a threat to eBay and [its] security" (*id.* ¶ 510).

The collective, conclusory allegation that "Defendants" defamed the Steiners does not state a claim against Wenig in particular. *Cf. supra* at 8–9. And the complaint pleads no facts suggesting that he personally made or was otherwise "at fault for the publication of" any allegedly defamatory statement. *White*, 809 N.E.2d at 1036. Thus, it fails to state a defamation claim against Wenig.

15

### G.     Plaintiffs do not state a claim for trespass.

One is liable for trespass if one "intentionally … enters land in the possession of [an]other, or causes … a third person to do so.'" *Dilbert v. Hanover Ins. Co.*, 825 N.E.2d 1071, 1077 (Mass. App. Ct. 2005) (quoting Restatement (Second) of Torts § 158). Here, Plaintiffs' trespassing claim turns on the collective allegation that "[t]he Defendants entered onto the Steiners' property without right or privilege to do so, in order to attempt to attach a GPS device to their vehicle." ECF 176 ¶ 524. Because he is not alleged to have entered the Steiners' property, the trespass claim against Wenig must rest on an implicit contention that he "cause[d] … a third person to do so." *Dilbert*, 825 N.E.2d at 1077. But the complaint pleads no facts suggesting that Wenig caused anyone to enter the Steiners' property for any purpose. Because Wenig "could not reasonably have … foreseen" that his lone alleged act, texting Wymer, would lead someone to enter the Steiners' property, it cannot be said that he proximately "cause[d]" the alleged trespass, even if the text were "a but-for cause." *Bobbitt*, 2006 WL 335231, at *1. Thus, the trespassing claim against Wenig fails.

### H.     Plaintiffs do not state a claim for false imprisonment.

"A defendant is liable for false imprisonment if: (a) he acts *intending to confine* another within fixed boundaries; (b) the act directly or indirectly results in confinement; and (c) the plaintiff is conscious of the confinement." *Cremaldi-Vickery v. Otis Elevator, Inc.*, 782 N.E.2d 48 (table), 2003 WL 168452, at *2 (Mass. App. Ct. 2003) (citing Restatement (Second) of Torts § 35) (emphasis added). Thus, to be liable for false imprisonment, one must act with "the specific intent to confine another." *Id.* (citing *Sarvis v. Boston Safe Deposit & Tr. Co.*, 47 Mass. App. Ct. 86, 98 (1999)). Here, the complaint makes yet another collective allegation—that "[t]he Defendants' incessant packages and cruel and abusive messages and threats forced the Plaintiffs to remain in their home, as house prisoners, too fearful to leave their property." ECF 176 ¶ 534. Although it characterizes this as "intentional confinement" (*id.* ¶ 537), it alleges no facts plausibly suggesting

that Wenig ever acted with "the specific intent to confine" the Steiners. *Cremaldi-Vickery, Inc.*,
2003 WL 168452, at *2. No valid false-imprisonment claim against Wenig is alleged.

**III.   Wenig is not vicariously liable for torts committed by others.**

Unable to plead facts plausibly suggesting that Wenig committed any tort, Plaintiffs seek
to hold him liable for torts allegedly committed by others, claiming that he "aided and abetted" or
otherwise "conspir[ed]" with those who committed the torts. *E.g.*, ECF 176 ¶¶ 162, 208, 216, 228,
546–55. But Plaintiffs do not plead facts sufficient to hold Wenig liable under a joint-action theory.

**A.   Plaintiffs' civil conspiracy claim fails as a matter of law.**

Plaintiffs claim that Wenig is liable for the other defendants' purportedly tortious acts
under the civil-conspiracy doctrine. ECF 176 ¶¶ 546–55. But the claim is barred by the "intra-
corporate-conspiracy doctrine," which holds that "an agreement between or among agents of the
same legal entity … is not an unlawful conspiracy," when, as here, "the agents act in their official
capacities." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017); *accord Lucero v. Safeway, Inc.*, 2022
WL 79860, at *7 (D. Colo. 2022). Plaintiffs allege that the purported individual conspirators "were
acting … within the scope of their employment" as "employees of eBay and/or PFC." ECF 176 ¶
15. While Zea was allegedly a PFC employee, she "contracted with eBay," was a "member[] of
the eBay security division," and was "a direct report [to] eBay's head of security and operations."
*Id.* ¶¶ 15, 40. In other words, all of the putative conspirators are alleged to have been agents of
eBay acting "in furtherance of" the company's purported goal. *Id.* ¶¶ 15, 232. Because all are
alleged to have been "agents of the same legal entity" acting within the scope of their agency,
Plaintiffs' conspiracy claim fails as a matter of law under the intra-corporate-conspiracy doctrine.

**B.   Plaintiffs do not adequately allege a civil conspiracy.**

Even if Plaintiffs' conspiracy claim were legally cognizable, it fails because Plaintiffs do
not allege facts plausibly suggesting that Wenig conspired to harass Plaintiffs. Under

Massachusetts civil-conspiracy law, one person can be held vicariously liable for the tortious conduct of another if that person "does a tortious act in concert with the other pursuant to a common design with him," or if that person "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." *Payton v. Abbott Labs*, 512 F. Supp. 1031, 1035 (D. Mass. 1981) (quoting Restatement (Second) of Torts § 876(a), (b)); *accord Taylor v. Am. Chemistry Council*, 576 F.3d 16, 35 (1st Cir. 2009). Plaintiffs do not plead facts sufficient to support vicarious liability under either theory.

### 1.      Plaintiffs do not adequately allege concerted action.

To state a civil-conspiracy claim under the "concert of action" theory, Plaintiffs must plead: (1) "that the defendant and the other have an agreement to perform the act or achieve the particular result"; and (2) "that the defendant's own conduct [was] tortious." *Payton*, 512 F. Supp. at 1035. Plaintiffs do not adequately allege either element. Apparently trying to satisfy the first element, they baldly assert that "the individually named Defendants were acting in concert with one another" and that "Wenig … specifically advised" the others "to engage in the tortious conduct." ECF 176 ¶¶ 15, 232, 551. But they allege no facts to support these conclusory assertions; nor do they allege any facts that would plausibly suggest that Wenig and the other "'defendants agreed together' to commit an underlying tort." *Bassett v. Jensen*, 459 F. Supp. 3d 293, 312 (D. Mass. 2020) (quoting *Gutierrez v. Mass. Bay Transp. Auth.*, 772 N.E.2d 552, 568 (Mass. 2002)). And as shown above (*see supra* at 8–17), the complaint contains no well-pleaded factual allegations plausibly suggesting that Wenig's "own conduct" was tortious. *Payton*, 512 F. Supp. at 1035. Thus, Plaintiffs fail to state a civil-conspiracy claim against Wenig under the "concert of action" theory.

### 2.      Plaintiffs do not adequately allege aiding and abetting.

To state a civil-conspiracy claim under the "aiding and abetting" theory, a plaintiff must plead: (1) that the defendant gave "substantial assistance or encouragement to the other party";

18

and (2) that the defendant had "an unlawful intent, *i.e.*, knowledge that the other party [wa]s breaching a duty and the intent to assist that party's actions." *Payton*, 512 F. Supp. at 1035.

Plaintiffs fail to adequately plead either element. The complaint says that "Wenig, Wymer, and Jones" both "knew the conduct of the other Defendants … was tortious" and "provided" them "substantial assistance and/or encouragement" to "engag[e] in the tortious conduct" (ECF 176 ¶¶ 550, 552) but alleges no facts to support these bare assertions. It pleads no facts that, if true, would plausibly suggest that Wenig even knew of, let alone substantially assisted or encouraged, Baugh's bizarre plan to harass Plaintiffs. Nor could it. As alleged in Plaintiffs' original complaint, Wenig's only supposed act of assistance or encouragement—the text to Wymer (ECF 176 ¶ 82)—happened *before* the harassment campaign was "plann[ed]" and "set in motion" by Baugh, its "ringleader." ECF 1 ¶¶ 71, 75, 77; *see also* ECF 176 ¶¶ 94–104. As a matter of temporal logic, Wenig could not knowingly assist or encourage tortious conduct before it was even planned.

Indeed, materials previously submitted by Plaintiffs—and implicitly relied on throughout their amended complaint (*cf.* ECF 167 (allowing Plaintiffs to file amended complaint to incorporate materials they submitted in opposition to Wenig's previous motion to dismiss))—contradict Plaintiffs' conclusory assertion that Wenig knew of Baugh's scheme. They have, for example, submitted evidence that: Baugh's attorney told an outside investigator that "Baugh had confirmed" that "Wenig … never told him to do anything illegal or improper with regard to the Steiners" (ECF 117-1 at R460); that the external investigation found no "evidence that [Wenig] directed or knew that criminal acts would occur" (*id.* at R13); and that Wymer—who was in direct contact with Baugh—"hid" his texts with Baugh from "everyone[,] … apparently even Wenig. (*id.*).

Other evidence likewise belies Plaintiffs' claim that Wenig knew of and encouraged Baugh's criminal conduct. As the government told the Court at Baugh's sentencing, "no one at

19

eBay told him to … threaten and harass and stalk the Steiners"; on the contrary, the "idea … was his and his alone." ECF 239 at 16, *U.S. v. Baugh*, No. 20-cr-10263 (D. Mass. Sept. 29, 2022). Confirming the government's account, Baugh admitted that he "was one hundred percent responsible" for the harassment campaign. *Id.* at 37.

Thus, Plaintiffs' conclusory accusations notwithstanding, the documents that they have submitted and that underlie their amended complaint demonstrate that Wenig neither knew of, nor assisted, nor encouraged Baugh's criminal activity. That reality prevents Plaintiffs from pleading facts sufficient to state a conspiracy claim against Wenig under the "aiding and abetting" theory.[10]

\*\*\*

Because the complaint fails to adequately plead Wenig's participation in a civil conspiracy under either the concert-of-action or the aiding-and-abetting theory, he cannot be held vicariously liable for torts committed by others. At bottom, Plaintiffs' claims against Wenig rest on three words in one text that are taken entirely out of context. As explained above, they do not mean what Plaintiffs claim they mean. As the U.S. Attorney who investigated the case and prosecuted Baugh for his crimes observed about the texts he reviewed when making his charging decisions:

> People say things like that all the time. Especially senior people in companies. It's not the same as, "I am knowingly joining a criminal conspiracy to cyberstalk a couple in Natick." People use loose talk like that all the time.

60 Minutes, bit.ly/3KO6Jeg. In short, as the U.S. Attorney recognized, Wenig did not conspire to harass the Steiners.

## CONCLUSION

Plaintiffs' claims against Devin Wenig should be dismissed.

---

[10]     The complaint's general aiding-and-abetting allegations (ECF 176 ¶¶ 136, 162, 216, 405, 408, 418, 430, 438, 496, 522, 527, 530, 543, 554) fail for the same reasons. *See Mansor v. JPMorgan Chase Bank, N.A.*, 183 F. Supp. 3d 250, 264 (D. Mass. 2016).

Dated: April 21, 2023

Respectfully submitted,

 /s/ *Abbe David Lowell*
Abbe David Lowell (*pro hac vice*)
Andrew E. Tauber (*pro hac vice*)
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
adlowell@winston.com
atauber@winston.com
(202) 282-5000

Martin G. Weinberg, Esq.
Martin G. Weinberg PC
20 Park Plaza
Suite 1000
Boston, MA 02116
owlmgw@att.net
(617) 227-3700

*Counsel for Devin Wenig*

**CERTIFICATE OF SERVICE**

I certify that on April 21, 2023, this brief was served on all participating counsel via the CM/ECF system and on pro se defendant Stephanie Stockwell via email at stockwellstephanie21@gmail.com.

Dated: April 21, 2023                              By: */s/ Andrew Tauber*