**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| INA STEINER, DAVID STEINER, and STEINER ASSOCIATES, LLC, )<br><br>Plaintiffs, )<br><br>v. )<br><br>EBAY INC., et al. )<br><br>Defendants. ) | Case No.: 1:21-cv-11181-PBS |

**DEFENDANT STEVE WYMER'S MEMORANDUM OF LAW IN SUPPORT OF**
<u>**MOTION TO DISMISS FIRST AMENDED COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................2

III.    LEGAL STANDARD ............................................................................................7

IV.    ARGUMENT .........................................................................................................8

    A.    The FAC Fails to Plead Direct Liability Against Wymer ............................ 8

        1.    The FAC Does Not State an IIED Claim Against Wymer .............................. 8

        2.    No Negligence or NIED Claim is Stated Against Wymer............................. 11

        3.    No Stalking Claim is Stated Against Wymer .................................................. 12

        4.    No Assault Claim is Stated Against Wymer.................................................... 13

        5.    No Massachusetts Civil Rights Act Claim is Stated Against Wymer ........... 13

        6.    No Defamation Claim is Stated Against Wymer............................................. 13

        7.    No Trespass Claim is Stated Against Wymer.................................................. 14

        8.    No False Imprisonment Claim is Stated Against Wymer............................... 14

    B.    The FAC Fails to Plead That Wymer is Secondarily or Vicariously Liable ............. 15

        1.    The Intra-Corporate Conspiracy Doctrine Bars Count XIII .......................... 15

        2.    No Conspiracy Theory Is Adequately Alleged Against Wymer ................... 16

        3.    The FAC States No Aiding and Abetting Theory Against Wymer ............... 19

V.    CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ABC Soils, Inc. v. DRS Power Tech., Inc.*,
  386 F. Supp. 3d 107 (D. Mass. 2019) ...............................................................11

*Alston v. Spiegel*,
  988 F.3d 564 (1st Cir. 2021) .........................................................................7, 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................7, 17

*Bergendahl v. Massachusetts Elec. Co*.,
  45 Mass. App. Ct. 715 (1998) .........................................................................11

*Bell v. Rinchem Co*.,
  2016 U.S. Dist. LEXIS 57668 (D. Mass. Feb. 11, 2016) ................................16

*Blake v. Prof. Coin Grading Serv.*,
  898 F. Supp. 2d 365 (D. Mass. 2012) .................................................15, 17, 19

*Bobbitt v. United States*,
  2006 WL 335231 (D. Mass. Feb. 10, 2006) ...............................................11, 12

*Brown v. Suffolk Univ*.,
  2021 WL 2785047 (D. Mass. Mar. 31, 2021) ..................................................11

*Cohen v. Brokers'Serv. Mktg. Grp. II, LLC*,
  31 N.E.3d 76 (Mass. App. Ct. 2015) ...............................................................20

*Connolly v. Woburn Pub. Sch*.,
  2023 WL 2333500 (D. Mass. Mar. 2, 2023).....................................................10

*Cook v. WHDH-TV, Inc*.,
  1999 WL 1327222 (Mass. Super. Mar. 4, 1999) ..............................................13

*Delaney v. Reynolds*,
  63 Mass. App. Ct. 239 (2005)..........................................................................11

*Dilbert v. Hanover Ins. Co.*,
  825 N.E.2d 1071 (Mass. App. Ct. 2005) ..........................................................14

*Fine v. Guardian Life Ins. Co. of Am.*,
  2021 WL 916270 (D. Mass. Mar. 10, 2021)......................................................8

*Gilanian v. City of Boston*,
  431 F. Supp. 2d 172 (D. Mass. 2006) ..............................................................13

*Go-Best Assets Ltd. v. Citizens Bank of Mass.*,
  972 N.E.2d 426 (Mass. 2012) ..........................................................................20

*Guadalupe- Báez v. Pesquera*,
    819 F.3d 509 (1st Cir. 2016) ............................................................................20

*Heal v. Wells Fargo, Nat'l Ass'n*,
    560 F. Supp. 3d 347 (D. Mass. 2021),
    *aff'd*, 2023 WL 1872583 (1st Cir. Jan. 17, 2023) .........................................14

*Heath-Latson v. Styller*,
    487 Mass. 581 (2021) ..............................................................................11, 12

*Heinrich ex rel. Heinrich v. Sweet*,
    49 F. Supp. 2d 27 (D. Mass. 1999) ..................................................................17

*Husband v. Dubose*,
    26 Mass. App. Ct. 667 (1988) ..........................................................................11

*In re TelexFree Sec. Litig.*,
    2022 U.S. Dist. LEXIS 156964 (D. Mass. Aug. 31, 2022)...............................20

*Integrated Commc'ns & Techs., Inc. v. Hewlett-Packard Fin. Servs., Co.*,
    2017 WL 354847 (D. Mass. Jan. 24, 2017) ...............................................14, 15

*Irwin v. Town of Ware*,
    467 N.E.2d 1292 (Mass. 1984) ........................................................................20

*Leavitt v. Brockton Hosp., Inc.*,
    454 Mass. 37 (2009) .........................................................................................12

*Maldonado v. Fontanes*,
    568 F.3d 263 (1st Cir. 2009) ............................................................................20

*Martensen v. Koch*,
    2014 U.S. Dist. LEXIS 91817 (D. Colo. June 12, 2014)..................................16

*Martinez v. Wolferseder*,
    997 F. Supp. 192 (D. Mass. 1998) ...................................................................13

*Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*,
    62 F. Supp. 2d 236 (D. Mass. 1999) ................................................................16

*Metro. Prop. & Cas. Ins. Co. v. Savin Hill Family Chiropractic, Inc.*,
    322 F.R.D. 151 (D. Mass. 2017).........................................................................6

*Morgan v. Driscoll*,
    2002 WL 15695 (D. Mass. Jan. 3, 2002) ........................................................13

*O'Connor v. Franke*,
    2017 WL 1908154 (C.D. Cal. May 9, 2017),
    *aff'd*, 723 F. App'x 473 (9th Cir. 2018)...........................................................12

*O'Brien v. Wilmington Tr. Nat'l Ass'n as Tr. to CitiBank, N.A.*,
   506 F. Supp. 3d 82 (D. Mass. 2020) ...................................................................19

*Payton v. Abbott Labs*,
   512 F. Supp. 1031 (D. Mass. 1981) .......................................................16, 17, 18

*Penalbert-Rosa v. Fortuno-Burset*,
   631 F.3d 592 (1st Cir. 2011) .................................................................................7

*Platten v. HG Bermuda Exempted Ltd.*,
   437 F.3d 118 (1st Cir. 2006) .........................................................................15, 16

*Rubin v. Waplate Constr. Mgmt.*,
   1999 Mass. Super. LEXIS 319 (Mass. Super. Ct. Aug. 24, 1999) ....................14

*Schatz v. Republican State Leadership Comm.*,
   669 F.3d 50 (1st Cir. 2012) .................................................................................7

*Sena v. Commonwealth*,
   629 N.E.2d 986 (Mass. 1994) .......................................................................8, 10

*Shay v. Walters*,
   702 F.3d 76 (1st Cir. 2012) ...............................................................................14

*Sovereign Bank v. Sturgis*,
   863 F. Supp. 2d 75 (D. Mass. 2012) .................................................................13

*Stamas v. Fanning*,
   345 Mass. 73 (1962) ..........................................................................................11

*Steep Hill Labs., Inc. v. Moore*,
   2018 WL 1242182 (N.D. Cal. Mar. 8, 2018),
   *aff'd*, 744 F. App'x 443 (9th Cir. 2018)..............................................................12

*Stuart v. City of Gloucester*,
   2019 WL 3082830 (D. Mass. July 15, 2019).....................................................10

*Taylor v. Am. Chemistry Council*,
   576 F.3d 16 (1st Cir. 2009).................................................................................15

*Thomas v. Harrington*,
   909 F.3d 483 (1st Cir. 2018)...................................................................16, 17, 18

*United States ex rel. Winkelman v. CVS Caremark Corp.*,
   827 F.3d 201 (1st Cir. 2016)..................................................................................2

*White v. Blue Cross & Blue Shield of Mass., Inc.*,
   809 N.E.2d 1034 (Mass. 2004) .....................................................................13, 14

*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017).........................................................................................15

**STATUTES**

Cal. Civ. Code § 1708.7 ............................................................................................. 12

M.G.L. c. 12 § 11I ..................................................................................................... 13

M.G.L. c. 265 § 43A .................................................................................................. 12

**RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 2, 7

## I.   <u>INTRODUCTION</u>

Plaintiffs' First Amended Complaint (ECF No. 176, "FAC") describes an appalling course of harassment carried out against Ina and David Steiner by seven former employees of eBay's security staff—all of whom have been criminally charged and pleaded guilty (the "Charged Defendants"). But defendant Steve Wymer, eBay's former Chief Communications Officer, was not among those Charged Defendants and had no involvement in their harassment.

Following Wymer's motion to dismiss their original complaint, Plaintiffs filed the FAC, adding more than 200 new paragraphs.  Tellingly, only a small fraction of the new paragraphs even reference Wymer.  Most are devoted to describing the details of the Charged Defendants' planning and criminal activity.  Far from curing the defects in the original complaint as to Wymer, the new allegations underscore the bizarre and unforeseeable nature of the Charged Defendants' actions. While Wymer remains shocked and appalled by the conduct directed at Plaintiffs by those defendants, the FAC makes clear that he simply was not involved nor can he be held secondarily or vicariously liable for their acts.

As to primary liability, the FAC fails to state a direct claim against Wymer for any alleged tort.  The FAC now concedes—as it must—that Wymer did not participate in any of the Charged Defendants' acts.  Nor does the FAC plead facts plausibly showing Wymer knew or should have known that the Charged Defendants intended to—or did—threaten, stalk, or harass Plaintiffs.

The FAC also fails to state a claim against Wymer for secondary or vicarious liability.  As an initial matter, the FAC's civil conspiracy claim is barred by the intra-corporate conspiracy doctrine, which treats a corporation and its agents as a single actor that cannot conspire for a civil conspiracy.

That doctrine aside, the FAC fails to plead the elements of a civil conspiracy claim under Massachusetts law.  Such a claim requires alleging facts showing that Wymer had *actual knowledge*

1

that the Charged Defendants were committing the crimes alleged and that he *actively participated* or *substantially assisted* in the commission of those acts.  The FAC does not—and cannot—do so.  The FAC relies largely on a handful of animated and off-the-cuff messages from Wymer, stacking inference upon inference on them to attempt to state a claim against him.  That is not enough to survive this motion to dismiss.  The communications do not plausibly suggest that Wymer knew the types of extraordinary acts alleged in the FAC were being (or had been) committed—let alone that he participated or substantially assisted in committing those unforeseeable tortious acts.  To the contrary, the FAC confirms that Wymer was not contemporaneously made aware of any misconduct.

Accordingly, Wymer respectfully submits that he should be dismissed under Rule 12(b)(6).

## II.    BACKGROUND

Wymer had a very successful career leading communications and policy at several well-known companies before joining eBay in February 2019, and before then he served as a senior advisor in the U.S. Senate and led communications on behalf of three U.S. senators.  *See* Exhibit A.[1]

As described in the FAC, the Steiners and Steiner Associates, LLC (collectively, "Plaintiffs") publish EcommerceBytes, which reports on ecommerce companies, including eBay.  ¶¶ 1, 2.[2] According to the FAC, in August 2019, the Steiners were the subject of a "coordinated effort to intimidate, threaten to kill, torture, terrorize, stalk and silence" them (¶ 1), including by "threatening Tweets," "following and harass[ment]," "menacing package deliveries," and "attempting to break into their home to install a GPS on their car."  ¶ 160.  The FAC alleges that seven members of eBay's security staff planned and executed the campaign (*e.g.*, ¶¶ 7-8, 100, 137, 369), led by

---

[1] The Court can take judicial notice of the Exhibit A press release, attached to the Declaration of Caz Hashemi ("Hashemi Decl.").  *See United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 208 (1st Cir. 2016) (affirming court's judicial notice of press release).

[2] References to "¶ __" refer to paragraphs of the FAC, ECF No. 176, unless otherwise stated.

"ringleader" Jim Baugh, eBay's former Senior Director of Safety & Security.  ¶¶ 32, 318.  Federal prosecutors charged all seven individuals with various crimes, and all pleaded guilty.  ¶¶ 12, 32-38, 362-373.  Wymer was not charged, and none of the government's charging documents allege that Wymer knew of or participated in the criminal acts.

Wymer's original motion to dismiss (ECF No. 84) explained that he did not participate in the alleged wrongdoing, did not have knowledge of it, and did not assist it.  In the FAC, Plaintiffs now concede that Wymer did not "physically participate in" the criminal campaign.  ¶ 216.  Plaintiffs also do not allege that Wymer directed the Charged Defendants' actions, was aware of, or participated in meetings in which they planned their crimes.  *See, e.g.*, ¶¶ 60, 68, 93-99, 137, 141.  Further, the FAC pleads no facts showing that anyone told Wymer what the Charged Defendants were planning at any time.  To the contrary, the FAC alleges that Baugh went to great lengths to maintain secrecy over the security staff's actions, often "warn[ing] [his group] 'we'll keep it in the circle of trust' when secrets within the [security] department arose," and he played movie clips to reinforce the directive.  ¶ 319.

The FAC also acknowledges that Wymer had no supervisory responsibilities over the security team.  Baugh "reported directly" to defendant Wendy Jones (then-Senior VP of Global Operations) (¶¶ 3, 32), who "r[an] the [security department]" (¶ 30) and reported to then-CEO Devin Wenig.  ¶¶ 3, 40.  It was Jones who "had the responsibility for overseeing" the Charged Defendants.  ¶ 215.  No Charged Defendant reported to Wymer, and Wymer is not alleged to have ever communicated or interacted with any Charged Defendant other than minimally with Baugh.

While the FAC newly alleges that Baugh was predisposed to use tactics learned in prior covert operations work for the government (¶¶ 298-300, 303, 304), and had a history of disturbing conduct at eBay—such as stabbing a chair (*e.g.*, ¶¶ 317, 318)—the only executives alleged to know of Baugh's background are Wenig and Jones, *not* Wymer.  ¶¶ 303, 305, 307.  In fact, the FAC does

3

not allege that Wymer "knew or should have known" of Baugh's alleged disturbing behavior and
that he was a danger to others—though it makes that assertion as to Wenig and Jones.  ¶¶ 304, 324.

Given Wymer's lack of involvement in or knowledge of Baugh's wrongdoing, the FAC tries
to hold Wymer liable for the Charged Defendants' conduct by quoting certain messages between
Wymer and his boss (Wenig) and between Wymer and Baugh that express eBay's frustration with
Plaintiffs' reporting on their website and Wymer's desire, as eBay's Chief Communications Officer,
to counteract the reporting.  While the FAC alleges messages about "tak[ing] her down," that eBay
should do "Whatever. It. Takes." and that Wymer would "manage any bad fall out" (¶¶ 82, 86, 110),
neither the messages themselves nor any other pleaded facts plausibly suggest that the messages
were intended as directives to stalk, harass, or threaten the Steiners—or engage in criminal conduct
of any sort.  None of these messages reference countering the website through *criminal* action as
opposed to ordinary business strategies.  Indeed, the FAC admits that Wenig and Wymer hired a
consultant firm in June 2019 to develop a plan to "driv[e] the Steiners' articles lower in search
engine results."  ¶ 70; *see also* ECF No. 1-1 at ¶ 55 (full text reflecting that messages were in
response to Baugh question about "neutraliz[ing] [the Steiners'] *website*") (emphasis added).

Moreover, the FAC refers in new allegations to examples of Wymer using hyperbolic
language in the ordinary course.  For instance, Wymer allegedly used the phrase "Whatever. It.
Takes" in an email with eBay's General Counsel Marie Huber—obviously not referring to criminal
conduct.  *See* ¶¶ 108-110.[3]  And, Wenig and Wymer allegedly used similarly hyperbolic language in
discussing the *Wall Street Journal*.  ¶ 62.  Further, none of the messages alleged in the FAC reflect

---

[3] Plaintiffs previously filed the full chain of this email with the Court, which contains further
context about the imposter Twitter account being discussed in the email.  ECF No. 117 at R437-39.

that Wymer was even aware of the Charged Defendants' bad acts until they were brought to his attention during an investigation in late August 2019.

In addition, although the FAC asserts that Baugh was "keep[ing] Defendant Wymer updated on the progress of the conspiracy" (¶ 266), this relies on a selective quotation of portions of an August 23 text message, the full content of which shows Wymer had *not* been "updated." *See* ¶ 266 (selective quotation); ECF No. 1-1 at ¶ 177 (full message). Specifically, *after* the Charged Defendants ceased their bad acts in Natick, Baugh texted Wymer: "Hi [Steve] – this is Jim Baugh's personal cell. My team ran an Op on our friend in Boston. Nothing illegal occurred and we were actually intending to team up with [Ms. Steiner] and get her on our side in a positive manner." ECF No. 1-1 at ¶ 177. Baugh also informed Wymer that "[w]e are cooperating" in "an internal investigation on us." *Id.* In the FAC-cited portion, Baugh informed Wymer "[w]e will continue to cooperate" with an internal investigation, and reiterated that "no crime was committed[.]" *Id.*; ¶ 266.

The full message makes clear that Baugh had *not* told Wymer what was going on, and viewed him as an outsider. If Wymer had knowledge of what was going on, Baugh would not have begun the message by stating "[m]y team ran an Op on our friend in Boston." ECF No. 1-1 at ¶ 177. Baugh was informing Wymer about something Wymer did *not* know, and in doing so, Baugh drew a clear distinction between those involved in the "Op" ("[m]y team," "my people," "we") and Wymer, to whom he relayed that no crime had occurred despite an apparent police investigation. *Id.* This message contradicts the FAC's key allegation against Wymer—namely that he knew about, directed, and encouraged the Charged Defendants' tortious acts. *E.g.*, ¶¶ 550-552.[4] Thus, not only does the

---

[4] Plaintiffs also cite a purported conversation in which Baugh allegedly informed Wymer that "his team had given the Steiners 'a tap on the shoulder,'" and Wymer "expressed approval but did not ask questions." ¶ 75, *quoting* ECF No. 146 at 4. But the allegation is unsubstantiated by any

FAC fail to plead facts supporting that allegation, it pleads facts negating it.

The FAC claims that Wymer was noncooperative in eBay's internal investigation (¶¶ 222, 269)—but this allegation is *flatly refuted* by the very documents on which the FAC bases the allegation, which show that Wymer voluntarily sat for *four interviews* with eBay's investigators.  *See* ECF No. 117 at R215-222 (eBay investigation attorney declaration), R226 at ¶ 5 (explanation of table of interviews and whether substance provided to government), R243 (table reflecting four interviews of Wymer by both internal and external investigators, with disclosure of substance to government).  Finally, the FAC alleges that Wymer deleted a text message and phone call record with Baugh.  ¶ 269.  But it does not allege that Wymer had been informed that he should preserve documents; nor does it allege any well-pled facts showing he knew at the time what the Charged Defendants had done.  To the contrary, the FAC acknowledges that Baugh told Wymer repeatedly that no crime had been committed.  ¶ 266; ECF No. 1-1 at ¶ 177.  The FAC's gratuitous conclusion that Wymer's intent was to conceal evidence is nonsensical—Wymer never would have condoned any criminal activity by anyone, and no well-pled allegations in the FAC suggest otherwise.[5]

Indeed, Baugh's attorney conceded during Baugh's sentencing hearing before this Court that eBay's executives "didn't order [Baugh] to do it."[6]  Sentencing Transcript at 34:6, *U.S. v. Baugh*,

---

contemporaneous record or document, derives from Baugh's self-serving sentencing memorandum, and should not be credited.  In any event, the phrase "tap on the shoulder" itself lacks any context, is utterly vague, and does not allude to any criminal or improper conduct.

[5] The FAC suggests the content of this "op" text "has not been revealed" (¶ 269), but Plaintiffs quote the "op" text in the FAC (¶ 266) and previously filed the full version of it.  *See* ECF No. 1-1 at ¶ 177.  The message makes clear that Wymer did not know of the Charged Defendants' actions.

[6] Exhibit B can be judicially noticed.  "It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." *Metro. Prop. & Cas. Ins. Co. v. Savin Hill Family Chiropractic, Inc.*, 322 F.R.D. 151, 154 (D. Mass. 2017) (judicially noticing hearing transcript).

Crim. No. 20-10263-PBS (D. Mass. Sept. 29, 2022), Hashemi Decl. Ex. B.  Baugh admitted *he* was

responsible for what occurred, stating: "***I was one hundred percent responsible for everything that***

***happened on my watch, and that means everything.***  I take one hundred percent responsibility for

this, and there is no excuse for what I've done."  *Id*. at 37:11-15 (emphasis added).  The government

confirmed that, telling this Court Baugh "earned every point of [a] four-point [sentencing guideline]

enhancement" as the "leader/organizer" of the harassment campaign, and "no one at eBay told

[Baugh] to anonymously threaten and harass and stalk the Steiners.  ***That idea, what happened to***

***the Steiners, was his and his alone***.  There's no one above Jim Baugh at eBay who thought up the

depraved things that happened to [the Steiners]."  *Id*. at 14:5-6, 16:10-14 (emphasis added).

## III.   <u>LEGAL STANDARD</u>

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  "Plausible ... means something more than merely possible, and gauging a pleaded

situation's plausibility is a 'context-specific' job that compels [a court] 'to draw on'[its] 'judicial

experience and common sense.'"  *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55

(1st Cir. 2012) (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with'

a defendant's liability, it 'stops short of the line between possibility and plausibility,'" warranting

dismissal.  *Iqbal*, 556 U.S. at 678 (citation omitted).  "[L]egal labels and conclusions" and "merely

rehash[ing] cause-of-action elements" should be ignored.  *Schatz*, 669 F.3d at 55; *see also Iqbal*, 556

U.S. at 664.  "[T]hreadbare or speculative" allegations must also be ignored.  *Penalbert-Rosa v.*

*Fortuno-Burset*, 631 F.3d 592, 595 (1st Cir. 2011).  Further, the court "must determine whether, *as*

*to each defendant,* a plaintiff's pleadings are sufficient[.]"  *Alston v. Spiegel*, 988 F.3d 564, 573 (1st

Cir. 2021) (citation omitted).  In other words, whether the FAC states a claim against *other*

7

defendants in this case is irrelevant as to whether it states a claim against Wymer.

## IV.    ARGUMENT

The FAC fails to state a claim against Wymer under any theory.  First, the FAC admits that Wymer did "not physically participat[e]" in the harassment campaign.  ¶ 216.  Second, setting aside its impermissible group allegations, the FAC hangs its claims against Wymer on a few hyperbolic messages from filings in criminal cases in which Wymer was not charged.[7]  None of those messages plausibly establish Wymer's participation in, knowledge of, or substantial assistance with any extraordinary acts committed against the Steiners, defeating Plaintiffs' claims as a matter of law.

### A.    The FAC Fails to Plead Direct Liability Against Wymer

#### 1.    The FAC Does Not State an IIED Claim Against Wymer

A claim for intentional infliction of emotional distress ("IIED") requires showing, among other things: "(1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; [and] (3) that the defendant's conduct caused the plaintiff's distress[.]"  *Sena v. Commonwealth*, 629 N.E.2d 986, 994 (Mass. 1994).  The FAC does not sufficiently allege such facts as to Wymer.

As an initial matter, the FAC does not allege that Wymer engaged in any of the allegedly outrageous conduct underlying Plaintiffs' IIED claim, thus requiring dismissal of that claim against him.  Specifically, the FAC asserts IIED based on the following alleged acts of "outrageous conduct": "threatening the Steiners online; sending unwanted threatening deliveries and packages

---

[7] The FAC includes over 100 paragraphs attributing bad acts to "Defendants" collectively without specifying who took the alleged action.  *See, e.g.*, ¶¶ 5, 16, 121, 123, 132, 136, 145-146, 400-404, 546-549, 554.  Group allegations should not be considered in evaluating whether the FAC states a claim against Wymer.  *See Alston*, 988 F.3d at 573; *Fine v. Guardian Life Ins. Co. of Am.*, 2021 WL 916270, at *5 (D. Mass. Mar. 10, 2021) ("[A] plaintiff cannot 'lump' multiple defendants together").

including a book on surviving the loss of a spouse, a bloody pig SAW mask, a funeral wreath, and live spiders; engaging in around-the-clock harassment; signing them up for over 50 unwanted email subscriptions, some vulgar in nature; doxing them online and soliciting strangers to their house; following them and surveilling them at all hours of the day and night; stalking and tailing them; and threatening, intimidating, harassing and terrorizing them for weeks on end." ¶ 408.  But the FAC admits that Wymer did not participate in any of this activity (¶ 216) and instead identifies only threats, surveillance, and harassment by the *Charged Defendants*.  *E.g.*, ¶¶ 103, 133, 144.

In addition, while the FAC alleges conclusorily that the "Defendants" "knew or should have known their actions would cause the Steiners emotional ... harm" (¶ 226), there are no well-pled facts plausibly suggesting that Wymer (i) knew Baugh was executing a harassment campaign (in fact, ECF No. 1-1 at ¶ 177 undermines any such suggestion), or (ii) intended or reasonably should have expected for Baugh to do so.  That the FAC rests its new allegation about a purported Wymer "directive" to "eradicate the Steiners" *on an email with eBay's General Counsel Huber* (¶ 308) underscores the implausibility of the allegation (and defies common sense).[8]  It also fails to acknowledge that the Steiners were not the subject or focus of the email, but merely mentioned in discussion of a broader topic related to imposter Twitter accounts.  And, contrary to the FAC's claim, "the specific conduct" the Charged Defendants committed was the *antithesis* of "foreseeable." ¶ 408.  Under the facts alleged, the first time anyone even informed Wymer that anything had happened in Natick was Baugh's text on August 23, after Baugh's "op" was complete.[9]  ECF No. 1-1 at ¶ 177.  Nor does the FAC plead any facts suggesting that anything similar to Baugh's campaign

---

[8] Plaintiffs' decision not to include eBay General Counsel Huber as a defendant tacitly concedes the implausibility of their characterization of this email as a criminal "directive" made to Baugh.

[9] Even then, Baugh put an innocuous spin on the Charged Defendants' acts and assured Wymer that "no crime was committed."  ¶ 266 (quoting part of text); ECF No. 1-1 at ¶ 177 (full text).

had ever happened at eBay (or any other corporate workplace).  Wymer also did not supervise the

Charged Defendants (¶¶ 30, 215) and is not alleged to have known about Baugh's background, his

bizarre conduct at eBay, or any other fact that allegedly predisposed Baugh to commit and/or order

others to commit the acts against the Steiners.  *Cf.* ¶¶ 303, 305, 307, 324.  This requires the dismissal

of the claim.  *Sena*, 629 N.E.2d at 994.

The FAC also fails to show that Wymer's conduct was "extreme and outrageous" as

required.  "The standard ... for extreme and outrageous behavior is very high.  '[L]iability has been

found only where the conduct has been so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

civilized community.'"  *Connolly v. Woburn Pub. Sch.*, 2023 WL 2333500, at *15 (D. Mass. Mar. 2,

2023) (citation omitted).  The Charged Defendants' actions towards the Steiners may well satisfy

this standard, but Count I specifies no conduct by Wymer that would do so.  *See* ¶ 408.  Wymer's

alleged acts of using animated language in internal discussions with coworkers and with eBay's

attorneys—none of which Wymer directed to Plaintiffs or intended for their consumption—is not the

type of atrocious conduct for an IIED claim.  *See, e.g.*, *Connolly*, 2023 WL 2333500, at *15 ("even

insults and threats are normally insufficient"); *Stuart v. City of Gloucester*, 2019 WL 3082830, at *4,

*12 (D. Mass. July 15, 2019) (allegation that plaintiff received "threats, intimidation, and coercion"

in retaliation for not participating in actions he considered illegal not "extreme and outrageous").

Likewise, the FAC does not plausibly allege that *Wymer* caused Plaintiffs' alleged harm.

The FAC acknowledges it was *Baugh* who planned the harassment campaign (*e.g.*, ¶¶ 93, 104), and

that he went to great lengths to deceive others—for instance, falsely holding himself out as acting

with the approval of eBay's General Counsel.  ¶ 97 (alleging Baugh "informed Defendant Zea and

other members of the conspiracy that General Counsel Huber instructed him to 'do what you need to

10

do,' and that she had given him the green light to use unconventional means to address the Steiners.").  Even if Baugh somehow believed he was acting at another's behest, his and the Charged Defendants' actions were "so extraordinary that [they] could not reasonably have been foreseen," *Bobbitt v. United States*, 2006 WL 335231, at *1 (D. Mass. Feb. 10, 2006), and thus their conduct constitutes an intervening cause that precludes holding Wymer liable for Plaintiffs' emotional distress.  *See Delaney v. Reynolds*, 63 Mass. App. Ct. 239, 242 (2005) (when "the intervening event was of a type so extraordinary that it could not reasonably have been foreseen, that new event is deemed to be the proximate cause of the injury and relieves a defendant of liability"); *Bergendahl v. Massachusetts Elec. Co.*, 701 N.E.2d 656, 663 (Mass. App. Ct. 1998) (foreseeability may sometimes be decided "as a matter of law"); *Stamas v. Fanning*, 185 N.E.2d 751, 753 (Mass. 1962) (similar).

## 2.  No Negligence or NIED Claim is Stated Against Wymer

Plaintiffs' claims for negligence and negligent infliction of emotional distress ("NIED") require alleging that Wymer breached a duty of care owed to them and that the breach proximately caused an injury to them.  *See Heath-Latson v. Styller*, 487 Mass. 581, 584 (2021); *ABC Soils, Inc. v. DRS Power Tech., Inc.*, 386 F. Supp. 3d 107, 112 (D. Mass. 2019).  Plaintiffs cannot show either.

"There is no duty owed when the risk which results in the plaintiff's injury is not one which could be reasonably anticipated by the defendant."  *Husband v. Dubose*, 531 N.E.2d 600, 669 (Mass. App. Ct. 1988) (citation omitted).  "Whether a duty of care exists is a question of law and an appropriate subject of a motion to dismiss pursuant to Rule 12(b)(6)."  *Brown v. Suffolk Univ.*, 2021 WL 2785047, at *9 (D. Mass. Mar. 31, 2021) (citation omitted).  While Plaintiffs allege that "harassment, stalking, threats and torture" led to their distress (¶ 434), there are no well-pled facts to show that Wymer could have reasonably anticipated that Baugh would order a deranged campaign of harassment, stalking, threats, and torture of Plaintiffs.  It is precisely the unfathomable nature of

what Baugh did, and the lengths he took to conceal his actions, that is shocking behavior far beyond the standard realm of possibility that any established professional would consider. At bottom, Wymer's alleged conduct breached no duty to Plaintiffs. *See Heath-Latson*, 169 N.E.3d at 158.

In addition, to the extent Plaintiffs may argue Wymer's messages proximately caused their distress, this would fail given the extraordinary nature of Baugh and the Charged Defendants' actions, which is *intervening conduct* "deemed to be the proximate cause of the [Steiners'] injury and relieves [Wymer] of liability." *Bobbitt*, 2006 WL 335231, at *1; *see also Leavitt v. Brockton Hosp., Inc.*, 907 N.E.2d 213, 219-20 (Mass. 2009) (dismissing claim where injury was not within the scope of foreseeable consequences). Thus, the claims against Wymer must be dismissed.

### 3.      No Stalking Claim is Stated Against Wymer

The FAC alleges the Steiners were stalked in Massachusetts in violation of California Civil Code Section 1708.7. ¶¶ 419-430.[10] But Section 1708.7 only applies to stalking in California. *See Steep Hill Labs., Inc. v. Moore*, 2018 WL 1242182, at *11 (N.D. Cal. Mar. 8, 2018) (dismissing § 1708.7 claim because conduct occurred in Nevada, not California), *aff'd*, 744 F. App'x 443 (9th Cir. 2018). Even if it applied here, a plaintiff must plead "a pattern of conduct the intent of which was to follow, alarm, place under surveillance, or harass the plaintiff," Cal. Civ. Code § 1708.7(a)(1), but the FAC does not allege Wymer ever followed, alarmed, or harassed the Plaintiffs (or interacted with them at all). *E.g.*, ¶¶ 147-148, 157, 424 (Charged Defendants engaged in such conduct); *see also* ¶ 216 (admitting Wymer did not physically participate). *See O'Connor v. Franke*, 2017 WL 1908154, at *6 (C.D. Cal. May 9, 2017) (dismissing claim when "Plaintiff does not even allege that Defendant is the person who broke into her home or followed her"), *aff'd*, 723 F. App'x 473 (9th Cir. 2018).

---

[10] Massachusetts law does not recognize a claim for stalking. *Cf.* M.G.L. c. 265 § 43A.

### 4. No Assault Claim is Stated Against Wymer

Plaintiffs' new claim for assault (¶¶ 483-491) requires alleging that Wymer "intentional[ly] create[ed] … an apprehension of immediate physical harm by means of an overt gesture." *Cook v. WHDH-TV, Inc.*, 1999 WL 1327222, at *6 (Mass. Super. Mar. 4, 1999). The only "overt gesture[s]" the FAC identifies, however, are the Charged Defendants' acts of sending threatening messages and packages (¶¶ 485, 487-488) and surveilling (¶ 486), which the FAC admits Wymer did not do. ¶ 216; *see also* ¶¶ 483-491 (no reference to Wymer in assault claim). This forecloses the claim against him. *See Morgan v. Driscoll*, 2002 WL 15695, at *9 (D. Mass. Jan. 3, 2002) (dismissing assault claim when defendant made no actual move to place plaintiff in fear of physical harm).

### 5. No Massachusetts Civil Rights Act Claim is Stated Against Wymer

To plead a Massachusetts Civil Rights Act ("MCRA," M.G.L. c. 12 § 11I) claim, Plaintiffs must allege Wymer interfered with a right secured by the U.S. Constitution, federal law, or state law by way of threats, intimidation, or coercion. *Sovereign Bank v. Sturgis*, 863 F. Supp. 2d 75, 87 (D. Mass. 2012). But Wymer is not alleged to have interfered with any such right—only the Charged Defendants are specifically alleged to have threatened and intimidated Plaintiffs. *See, e.g.*, ¶¶ 103-104, 106, 114-118, 120-126, 128, 130-134, 143-155, 158-160, 163. *See Martinez v. Wolferseder*, 997 F. Supp. 192, 195 (D. Mass. 1998) (dismissing MCRA claim against police chief who was not personally involved in battery and arrest); *Gilanian v. City of Boston,* 431 F. Supp. 2d 172, 173 n.1 (D. Mass. 2006) (claim "barred" where defendant did not "personally engage[]" in unlawful acts).

### 6. No Defamation Claim is Stated Against Wymer

For defamation, the FAC must sufficiently plead that Wymer is at "fault [] for publi[shing] a false statement" regarding the Plaintiffs that is "capable of damaging" their reputation. *White v. Blue Cross & Blue Shield of Mass., Inc*., 809 N.E.2d 1034, 1036 (Mass. 2004). But the FAC alleges

Plaintiffs were defamed by the Charged Defendants making false online postings and delivering pornography to the Steiners' neighbors in David Steiner's name. *E.g.*, ¶¶ 5, 144, 195, 212, 262, 504, 508-510. The FAC admits Wymer did not "physically participat[e]" in these actions. ¶ 216. *See White*, 809 N.E.2d at 1036, 1040 (defamation claim dismissed because defendant not alleged to have made alleged defamatory statement). Nor are there any well-pled allegations that Wymer is "at fault for the publication of" such material (particularly where no well-pled facts show he knew of those acts). *Id.* at 1036; *see also Shay v. Walters*, 702 F.3d 76, 82-83 (1st Cir. 2012) (affirming dismissal of defamation claim where "the complaint contains no plausible allegations of fault" of defendant).

### 7.      No Trespass Claim is Stated Against Wymer

Trespass requires a defendant "intentionally ... enter[ed] land in the possession of the other, or caus[ed] a thing or a third person to do so …."" *Dilbert v. Hanover Ins. Co.*, 825 N.E.2d 1071, 1077 (Mass. App. Ct. 2005). The FAC alleges trespass based on specific Charged Defendants' entering the Steiners' property (¶ 524), but admits Wymer did not do so. ¶ 216. Nor are there any well-pled facts alleging that Wymer "caus[ed]" anyone to trespass. *See Rubin v. Waplate Constr. Mgmt.*, 1999 Mass. Super. LEXIS 319, at *10-11 (Mass. Super. Ct. Aug. 24, 1999) (dismissing trespass claim where no allegation of defendant's entry or directing a thing onto property). Plaintiffs' trespass to chattels claim likewise fails because Plaintiffs plead no facts showing Wymer disposed them of a chattel or impaired its condition or quality. *Heal v. Wells Fargo, Nat'l Ass'n*, 560 F. Supp. 3d 347, 363 (D. Mass. 2021), *aff'd*, 2023 WL 1872583 (1st Cir. Jan. 17, 2023).

### 8.      No False Imprisonment Claim is Stated Against Wymer

False imprisonment is the intentional and unjustified confinement of a person. *Integrated Commc'ns & Techs., Inc. v. Hewlett-Packard Fin. Servs., Co.*, 2017 WL 354847, at *7 (D. Mass. Jan. 24, 2017). The FAC alleges that "[t]he Defendants' incessant packages and cruel and abusive

messages and threats forced the Plaintiffs to remain in their home." ¶ 534.  However, there is no

allegation that Wymer ever sent the Steiners a package, message, or threat.  *See* ¶¶ 104, 133, 144;

*see also* ¶ 216 (conceding he did not participate in the conduct).  Nor are there well-pled facts that he

*intended* to confine anyone.  *See Integrated Commc'ns.*, 2017 WL 354847, at *7.

> ## B.       The FAC Fails to Plead That Wymer is Secondarily or Vicariously Liable

Unable to allege Wymer should be directly liable, the FAC tries to hold him secondarily

liable for other defendants' misconduct through Count XIII for civil conspiracy.  ¶¶ 545-555.  But

the count cannot withstand the intra-corporate conspiracy doctrine, and that aside, the FAC fails to

plead the elements of civil conspiracy under either a concert of action or substantial assistance

theory.[11]

> ### 1.       The Intra-Corporate Conspiracy Doctrine Bars Count XIII

The intra-corporate conspiracy doctrine provides that "an agreement between or among

agents of the same legal entity [like a corporation], when the agents act in their official capacities, is

not an unlawful conspiracy."  *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017).  In other words, a

corporation and its agents acting within the scope of their duties are considered one entity and, "an

entity cannot conspire with itself."  *Platten v. HG Bermuda Exempted Ltd.,* 437 F.3d 118, 131 (1st

Cir. 2006).  Here, Plaintiffs repeatedly allege that the individual defendants acted within the scope of

their agency and employment and on behalf of eBay.  For example (emphasis added below):

- "At all times relevant to this Complaint, the individually named Defendants were acting in concert with one another, as agents and employees of eBay and/or PFC, *within the scope of their employment* …."  ¶ 15.

---

[11] If any tort claims are dismissed, the FAC's conspiracy and secondary/vicarious liability claims would require dismissal.  *See Taylor v. Am. Chemistry Council*, 576 F.3d 16, 34-35 (1st Cir. 2009) ("Because it is vicarious liability, this type of civil conspiracy requires an underlying tort."); *Blake v. Prof'l. Coin Grading Serv.*, 898 F. Supp. 2d 365, 392 (D. Mass. 2012) (applying same).

- "All Defendants *were acting within the scope of his or her employment ….* " ¶ 232.

- "Defendants Baugh, Harville and Zea, all *acting within the scope of their employment* with eBay and PFC *for the benefit of eBay*, traveled to Massachusetts." ¶ 143.

This includes defendants PFC, Steve Krystek, and Veronica Zea—who are alleged to have acted at eBay's direction and in furtherance of its goals. *See, e.g.*, ¶ 27 ("PFC hired analysts for eBay"), ¶ 15 (Zea worked in "furtherance of eBay's direct command"); ¶ 143 (Zea travelled to Massachusetts "for the benefit of eBay"); ¶ 40 ("All Defendants ... took instructions ... from senior management of eBay"). Because all the alleged conspirators were "agent[s]" of the same legal entity acting within the scope of their agency, the intra-corporate conspiracy doctrine bars the claim. *See Platten*, 437 F.3d at 131; *Bell v. Rinchem Co*., 2016 U.S. Dist. LEXIS 57668, at *2, *59-60 (D. Mass. Feb. 11, 2016) (no conspiracy of company, its subsidiary, and its employees); *Martensen v. Koch*, 2014 U.S. Dist. LEXIS 91817, at *20-21 (D. Colo. June 12, 2014) (applying principle).

### 2.  No Conspiracy Theory Is Adequately Alleged Against Wymer

Count XIII also fails as to Wymer because the FAC fails to plead a viable conspiracy claim. Under Massachusetts law, a defendant can be liable for another's tortious conduct if the defendant (i) "does a tortious act in concert with the other pursuant to a common design with him," or (ii) "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." *Payton v. Abbott Labs*, 512 F. Supp. 1031, 1035 (D. Mass. 1981) (citation omitted).[12] The FAC does not plead either theory as to Wymer.

For the concert of action theory, one must show that the defendant and someone else agreed to commit a wrongful act, *and* the defendant committed a tortious act. *Thomas v. Harrington,* 909

---

[12] A "true conspiracy" claim, as to market collusion or refusals to deal, is irrelevant here. *Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 244 (D. Mass. 1999).

F.3d 483, 490 (1st Cir. 2018); *see also Blake*, 898 F. Supp. 2d at 393 ("[Defendants] must have

agreed to work toward an unlawful result and take steps to do it."); *Payton*, 512 F. Supp. at 1035

("[T]he defendant's own conduct must be tortious.").

     This theory is precluded because the FAC pleads no facts reflecting that Wymer agreed to—

or was even aware of—the Charged Defendants' unlawful conduct.  *See Heinrich ex rel. Heinrich v.*

*Sweet*, 49 F. Supp. 2d 27, 44 (D. Mass. 1999) (under concert of action theory, "the defendant [must]

be aware of and agree with the allegedly tortious conduct of its co-defendants").  As alleged in the

FAC, the first time anyone even informed Wymer that anything had happened in Natick was *after*

Baugh engaged in his harassment campaign.  *See* ECF No. 1-1 at ¶ 177.  Wymer's internal messages

relied on in the FAC certainly do not reflect an agreement with the Charged Defendants to engage in

the unlawful acts alleged in the FAC (*see* ¶¶ 91, 110), nor do they reflect that he was aware of *any*

unlawful acts.  *See Thomas*, 909 F.3d at 490-492 (rejecting claim that town manager and investigator

conspired to find a pretextual justification to terminate plaintiff's employment, because manager's

instruction to "dig deep" was not an agreement to commit a wrongful act); *Payton*, 512 F. Supp. at

1038 (judgment on concert of action conspiracy theory granted where parties' contacts showed no

agreement to engage in "inherently wrong" conduct).  The FAC's threadbare recitals that all "named

individual Defendants acted in concert with one another," and "Defendants Wenig and Wymer

specifically advised the other Defendants ... to engage in the tortious conduct" are insufficient as

they rely on the bare assertion itself without any factual support.  ¶¶ 232, 551.  *See Iqbal*, 556 U.S. at

664 ("mere conclusions[] are not entitled to the assumption of truth" on motion to dismiss).[13]

---

[13] The FAC includes, without attribution, a purported comment by Wymer to Baugh that eBay would "absorb any legal exposure" as to the Steiners' website, and concludes this implied to Baugh that he could "br[ea]k the law" with impunity and eBay would pay for all legal costs.  ¶ 111.  Setting

A concert of action theory also fails because the FAC pleads no facts showing that Wymer committed a tortious act in furtherance of the conspiracy. *See Payton*, 512 F. Supp. at 1035 ("the defendant's own conduct must be tortious"). As explained above, no well-pleaded facts show any tortious acts by Wymer. Further demonstrating this, in a section titled "Overt Acts in Furtherance of the Conspiracy" in the Baugh and Harville indictment Plaintiffs previously submitted to the Court, the government listed 70 overt acts taken by the Charged Defendants in furtherance of the conspiracy. ECF No. 1-2 at ¶ 16. Not a *single* one of those acts references Wymer. The same is true for the information filed by the government as to defendants Gilbert, Popp, Stockwell, and Zea; there is no mention of Wymer in the recitation of the overt acts alleged in furtherance of the conspiracy to commit cyberstalking (or obstruction). ECF No. 1-3 at ¶¶ 18-22. Wymer's complete absence from the planning and execution of the alleged conspiracy—as reflected in the FAC (*see* ¶¶ 60, 68, 93-99, 137, 141)—underscores his non-involvement in the harassment of the Steiners.

Plaintiffs' claim under the substantial assistance theory fares no better. This theory requires pleading that the defendant (1) gave substantial encouragement or assistance to another, and (2) acted with "knowledge that the other's conduct is tortious[] and an intent to substantially assist or encourage that conduct." *Thomas*, 909 F.3d at 491. The FAC comes nowhere close to this bar.

With respect to the first element, the FAC pleads no facts suggesting Wymer assisted—let alone substantially assisted—the Charged Defendants' commission of any tort. Wymer is not alleged to have helped plan the criminal harassment campaign, participated in it, or provided it resources. While the FAC alleges Baugh asked Wymer for "top cover" on August 23 (¶ 266), no

---

aside the unreliability of the allegations in ¶ 111 and the inapt characterization applied to them, nothing in the allegations refers to paying costs for *illegal* conduct. Even crediting the allegations, the more plausible inference is it referred to legal costs stemming from *legal* actions. *Cf.* ¶ 70.

pleaded facts show that Wymer responded or agreed to assist.  It alleges—falsely—that Wymer refused to cooperate in eBay's investigation (¶ 222), but Plaintiffs' previously-relied upon documents show Wymer voluntarily sat for *four interviews*.  *See* ECF No. 117 at R215-222 (eBay investigation attorney declaration); R243.  *See O'Brien v. Wilmington Tr. Nat'l Ass'n as Tr. to CitiBank, N.A.*, 506 F. Supp. 3d 82, 90 (D. Mass. 2020) (explaining that when a document referenced in the complaint or integral to the plaintiff's claims contradicts the complaint, the document "trumps the allegations.").  As for the assertion that after eBay began investigating, Wymer told Baugh in a phone call to "stick to your guns" and referenced getting "rid of the Hardy Boys" (¶ 221), this derives from Baugh's self-serving sentencing memorandum and is wholly uncorroborated, post-dates Baugh directing the bad acts, and includes no claim that Baugh *admitted* to Wymer what he had done.  That Baugh supposedly "understood" these purported references as "instruction[s] ... to stick to [the] cover story" that they went to Boston for a conference shows only that Baugh (purportedly) interpreted Wymer's (purported) words in a self-serving manner.  And, Wymer's purported words say nothing about knowing of a "cover story" of a conference.  ¶ 221.

Second, no facts are pled reflecting that Wymer intended that a tort be committed—which requires *knowledge* of the others' tortious conduct (and knowledge that it is a tort).  *Blake*, 898 F. Supp. 2d at 392.  The FAC does not plead (nor could it) that Wymer knew of the other defendants' harassment of the Steiners, and the message pled in ¶ 266 (ECF No. 1-1 at ¶ 177) further shows that he was not aware of it.  *See Blake*, 898 F. Supp. 2d at 392 (dismissing conspiracy claim for lack of allegations that defendant intended for co-conspirator to commit the tort and knew he committed it).

### 3.      The FAC States No Aiding and Abetting Theory Against Wymer

The FAC asserts for each intentional tort claim (except Count VIII) that "[t]he aiding and abetting, and the failure to intervene, gives rise to liability on the part of all named Defendants ...."

19

¶¶ 418, 430, 438, 496, 522, 527, 530, 543, 554.  Aiding and abetting requires a showing that "the [defendant] *knew* [the tortfeasor] was committing the tort" and "*actively participated in or substantially assisted in*" the commission of the tort.  *Go-Best Assets Ltd. v. Citizens Bank of Mass.*, 972 N.E.2d 426, 438 (Mass. 2012) (emphasis added).  Because these elements "mirror[]" those of a substantial assistance conspiracy, Plaintiffs' failure to plead a substantial assistance conspiracy, as explained above, also defeats their claim for aiding and abetting liability as to Wymer.  *See In re TelexFree Sec. Litig.*, 2022 WL 3915989, at *11 (D. Mass. Aug. 31, 2022); *see also, e.g.*, *Go-Best Assets*, 972 N.E.2d at 429 (no aiding and abetting liability "where [defendant] had no knowledge of Goldings's scheme to defraud"); *Cohen v. Brokers' Serv. Mktg. Grp. II, LLC*, 31 N.E.3d 76, at *2 (Mass. App. Ct. 2015) (affirming dismissal of aiding and abetting claim where "a void remains [in the complaint] concerning Brokers' actual knowledge that Baldo was stealing money").

Moreover, the FAC's conclusory assertions that Wenig, Jones, and Wymer "directed the acts that resulted in the stalking, harassment, threats, and torture" (¶¶ 332, 459) do not suffice because the FAC pleads no facts reflecting such "direction" to engage in the conduct alleged in the claims.  *See Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 517 (1st Cir. 2016) ("bare and conclusory allegations" against police chief insufficient to plead liability for junior officers' misconduct); *Maldonado v. Fontanes*, 568 F.3d 263, 274 (1st Cir. 2009) ("generalized allegation that the Mayor planned, personally participated in, and executed the raids ... are insufficient ....").[14]

## V.   **CONCLUSION**

For these reasons, Wymer respectfully requests dismissal of all claims asserted against him.

---

[14] The FAC also does not adequately plead a failure to intervene.  There is no duty to "intervene" absent a "special relationship" between a plaintiff and defendant, *Irwin v. Town of Ware*, 467 N.E.2d 1292, 1300 (Mass. 1984), and Plaintiffs have not pleaded they had *any* relationship with Wymer.  It is also axiomatic that one cannot intervene without knowledge of events giving rise to such a need.

Respectfully submitted,

STEVE WYMER,

By his Attorneys,

*/s/ Caz Hashemi*
Caz Hashemi, Esq. *(pro hac vice)*
WILSON SONSINI GOODRICH & ROSATI P.C.
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300
chashemi@wsgr.com

Michael J. Pineault, Esq.
Mass. Bar. No. 555314
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
(617) 621-6578
mpineault@andersonkreiger.com

Dated: April 21, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 21, 2023, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


Dated: April 21, 2023                        */s/ Michael J. Pineault*                    
                                             Michael J. Pineault