**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Ina and David Steiner, et al., | |
| Plaintiffs, | |
| vs. | No. 21-CV-11181-PBS |
| | **ORAL ARGUMENT REQUESTED** |
| eBay, Inc., et al., | |
| Defendants. | |

**DEFENDANT PHILIP COOKE'S MEMORANDUM IN SUPPORT OF**
**HIS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## TABLE OF AUTHORITIES

*Albright v. Morton*, 321 F. Supp. 2d 130 (D. Mass. 2004)..................................................... 8

*Amrak Prods., Inc. v. Morton*, 410 F.3d 69 (1st Cir. 2005)................................................... 8

*Appling v. City of Brockton*, 649 F. Supp. 258 (D. Mass. 1986) .................................... 14

*Ball v. Wal-Mart, Inc*., 102 F. Supp. 2d 44 (D. Mass. 2000).......................................... 6

*Barrows v. Wareham Fire Dist*., 82 Mass. App. Ct. 623 (2012) ...................................... 6

*Blake v. Prof'l Coin Grading Serv*., 898 F. Supp. 2d 365 (D. Mass. 2012) .......................... 11, 12

*Blazheiev v. Ubisoft Toronto Inc*., No. 17-CV-07160, 2018 WL 3417481 (N.D. Cal. 2018) ........ 5

*Brennan v. Ferreira*, 251 F. Supp. 3d 338 (D. Mass. 2017)......................................... 12

*Briggs v. Boat/U.S., Inc*., No. 12-11795-DJC, 2014 WL 4662305 (D. Mass. Sept. 16, 2014) .... 12

*Conning v. Halpern*, No. 18-CV-12336-ADB, 2021 WL 1580837 (D. Mass. Apr. 22, 2021) .... 11

*Damon v. Moore*, 520 F.3d 98 (1st Cir. 2008)................................................................ 11

*Diaz v. Devlin*, 229 F. Supp. 3d 101 (D. Mass. 2017) .................................................... 5

*Disend v. Meadowbrook Sch.*, 33 Mass. App. Ct. 674 (1992)..................................... 8, 10

*Emerson v. Mass. Port Auth.*, 138 F.Supp.3d 73 (D. Mass. 2015).............................. 16

*Farrah ex rel. Estate of Santana v. Gondella*, 725 F.Supp.2d 238 (D. Mass. 2010)................ 14

*Fiorillo v. Winiker*, 85 F. Supp. 3d 565 (D. Mass. 2015) .......................................... 9, 10

*Greenspan v. Random House, Inc*., 859 F. Supp. 2d 206 (D. Mass. 2012) ..................... 8, 10

*Guzman v. Pring-Wilson*, 81 Mass. App. Ct. 430 (March 13, 2012)................................. 7

*Hallal v. Vicis Cap. Master Fund Ltd*., 2013 WL 1192384 (D. Mass. Feb. 25, 2013)................ 12

*Haufler v. Zotos*, 446 Mass. 489 (2006) ...................................................................... 13, 14

*Henriquez v. City of Lawrence*, No. 14-CV-14710, 2015 WL 3913449 (D. Mass. 2015) ........... 15

*In re TelexFree Sec. Litig*., No. 2022 WL 3915989 (D. Mass. Aug. 31, 2022)....................... 3

*Jupin v. Kask*, 447 Mass. 141 (June 30, 2006) ........................................................... 13

*Li v. Zeng*, 98 Mass. App. Ct. 743 (2020) ........................................................................ 9

*Lockwood v. Madeiros*, 2018 WL 4087938 (D. Mass. August 27, 2018) .................................... 16

*Meuser v. Fed. Express Corp.*, 564 F.3d 507 (1st Cir. 2009) ........................................................ 14

*Mullane v. Breaking Media, Inc.*, 433 F. Supp. 3d 102 (D. Mass. 2020) .................................... 12

*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1 (1st Cir. 2011) ................................................. 4

*Orwat v. Maloney*, 360 F. Supp. 2d 146 (D. Mass. 2005) ............................................................. 14

*Payton v. Wells Fargo Bank, N.A.*, No. 12-11540, 2013 WL 782601 (D. Mass. Feb. 28, 2013). 15

*Phelan v. May Dept. Stores Co.*, 443 Mass. 52 (2004) .................................................................. 10

*Pollard v. Georgetown Sch. Dist.*, 132 F.Supp.3d 208 (D. Mass. 2015) ..................................... 16

*Rose v. Town of Concord*, 971 F. Supp. 47 (D. Mass. 1997) .......................................................... 6

*Wellesley Hills Realty Trust v. Mobil Oil Corp.*, 747 F. Supp. 93 (D. Mass. 1990) ...................... 5

*Whitman & Co. v. Longview Partners*, No. 14-CV-12047, 2015 WL 4467064 (D. Mass.  2015)13

## TABLE OF CONTENTS

RELEVANT BACKGROUND ............................................................................................. 2

LEGAL STANDARD ...................................................................................................... 4

ARGUMENT ................................................................................................................. 4

I.      Plaintiffs' Trespass and Trespass to Chattels Claim Must be Dismissed. ................... 4

II.     Plaintiffs Cannot State Claims for Stalking, False Imprisonment, or Assault............ 5

III.    Plaintiffs Cannot State a Claim for Defamation. ........................................................ 7

IV.     Plaintiffs' Civil Conspiracy and Negligence Claims Fail. ......................................... 11

V.      Plaintiffs' Claim Under the Massachusetts Civil Rights Act Fails............................. 13

VI.     Plaintiffs' IIED and NIED Claims Must be Dismissed................................................ 15

CONCLUSION ............................................................................................................. 16

This action arises out of claims by Plaintiffs against various employees and executives of eBay and PFC.  Despite the plethora of conclusory allegations against a laundry list of defendants including Mr. Cooke, Plaintiffs fail to allege specific facts to tie Mr. Cooke to the individual acts underlying their claims.  Mr. Cooke was not involved in sending items to Plaintiffs.  He never traveled to Massachusetts. He did not sign Plaintiffs up for unwanted email subscriptions or purchase items for the alleged conspiracy.  He did not surveil the Plaintiffs, assault them, trespass on their property, or falsely imprison them.  He was not a senior executive and Plaintiffs do not allege that he supervised anyone, including any of the other defendants in this action.  Mr. Cooke was largely based overseas and was out of the country when most of the alleged conduct took place.  Given the lack of factual allegations regarding Mr. Cooke, all of Plaintiffs claims should be dismissed.

Plaintiffs' trespass claim fails because Mr. Cooke did not enter their property or damage it in any way.   The stalking and false imprisonment claims should be dismissed because Plaintiffs do not allege that Mr. Cooke engaged in a pattern of harassing conduct or intentionally confined them to their home.  The assault claim should be dismissed because Plaintiffs fail to allege facts upon which a reasonable conclusion can be drawn that Mr. Cooke specifically intended to place them in fear of immediate harm.

Plaintiffs cannot state a claim for defamation because they fail to allege that Mr. Cooke published defamatory statements about them, which caused economic loss.  The civil conspiracy claim likewise fails because Plaintiffs do not allege facts to demonstrate that Mr. Cooke agreed to commit the acts alleged in the complaint.   Similarly, the negligence claim fails because the Plaintiffs fail to allege specific facts upon which a reasonable conclusion can be drawn that Mr. Cooke knew what the other Defendants were doing, much less had any duty or power to stop them.

Finally, the Massachusetts Civil Rights Act and intentional/negligent infliction of emotional distress claims fail because Plaintiffs do not allege that Mr. Cooke threatened them, intended to inflict emotional distress, or committed extreme and outrageous conduct. For the negligent infliction theory, plaintiffs fail to specify which individual tweets they claim Mr. Cooke approved and to allege how those tweets caused their alleged injuries. For these reasons, the Amended Complaint has no merit and should be dismissed in its entirety.[1]

## RELEVANT BACKGROUND[2]

Mr. Cooke is a California resident. Am. Compl. ¶ 37. From April 2018 through October 2018, Mr. Cooke worked for Progressive F.O.R.C.E. Concepts, LLC ("PFC"). *Id*. PFC is a Nevada company that provides self-defense training, consulting services, tactical equipment, fitness programs, and concierge services. *Id*. at ¶ 27. In April 2019, Mr. Cooke joined eBay. *Id*. at ¶ 37. His role was largely based overseas where he supervised security operations at eBay's offices in Europe and Asia. *Id*. Plaintiffs do not allege that Mr. Cooke had supervisory authority over any other employees, including the other defendants in this action. *Id*.

As the Amended Complaint makes clear, the alleged conduct was driven by other Defendants and not Mr. Cooke. The Amended Complaint is devoid of specific factual allegations regarding Mr. Cooke's purported role. For example, Plaintiffs do not allege that Mr. Cooke followed Ecommerce Bytes or Twitter posts regarding eBay; or that he part of the eBay meetings and discussions following those activities in the June and July 2019. *Id*. at ¶¶ 53-72. They do not allege that Mr. Cooke knew about Defendant Gilbert's trip to Massachusetts in June 2019; or that Mr. Cooke was aware of the writing of "Fidomaster" on the Plaintiffs' fence. *Id*. at ¶¶ 73-81.

---

[1] The new counts in the Amended Complaint regarding negligent hiring, supervision, and retention (Counts 5 through 7) do not include Mr. Cooke. Neither does ratification (Count 14).

[2] For the purposes of this Motion only, Mr. Cooke accepts the allegations of the Amended Complaint.

While plaintiffs claim Mr. Cooke had a relationship with Samoan gang members from his work in the Police Department, they do not allege Mr. Cooke met with any gang member or attempted to hire one for a "hit," instead specifically alleging Mr. Gilbert took those steps.  *Id.* at ¶¶ 88-90. Instead, Plaintiffs allege that "Defendants" [either unnamed, or in one case, a laundry list of Defendant names] were responsible for sending certain items.  *Id*. at ¶¶ 121, 123, 130, 133, 145, 146.  No facts are alleged from which a reasonable conclusion can be drawn that Mr. Cooke sent any item to the Plaintiffs.  Nor do Plaintiffs allege that Mr. Cooke purchased any items used in the alleged conspiracy such as prepaid debit cards or laptops.  *Id*. at ¶¶ 101, 113.  Nor do they allege he signed them up for unwanted email subscriptions. *Id.* at ¶¶ 114-115.

Mr. Cooke was not involved in any alleged stalking or trespassing in Massachusetts, and he never traveled there.  He was not alleged to be part of the Massachusetts "op" meeting on August 14, 2019. *Id.* at ¶ 137.  He did not visit Plaintiffs' home in Massachusetts.  *See id.* at ¶¶ 147-153.  He was not present when Defendants Baugh, Harville, and Zea allegedly traveled to Massachusetts on August 15, 2019, and there is no allegation that he knew about the Massachusetts travel at the time it took place.  *Id*. at ¶¶ 138, 143.  He was not involved in surveillance of the Plaintiffs in Massachusetts.  *Id*. at ¶¶ 147-153.  To the extent Plaintiffs attempt to draw him in through an allegation of "aiding and abetting," Plaintiff's fail to allege that Mr. Cooke knew the underlying torts were being committed, or that he actively participated in or substantially assisted the actual tortfeasor(s) in committing the underlying tort(s).  *See, In re TelexFree Sec. Litig.*, No. 2022 WL 3915989 at 22-23 (D. Mass. Aug. 31, 2022).

As to the conduct that Mr. Cooke was purportedly involved in, approving tweets (*Id*. at ¶¶ 104), the Amended Complaint provides no supporting factual allegations regarding Mr. Cooke. Defendant Popp created the Twitter account and Defendant Baugh approved the account's avatar.

*Id*. at ¶ 103.   Defendant Popp drafted the tweets. *Id*. at ¶ 104. Plaintiffs do not allege that Mr. Cooke ever created a Twitter account or drafted a tweet or message. *Id*. at ¶¶ 103-104.   Plaintiffs claim that Mr. Cooke was one of three people who approved tweets drafted and sent by Defendant Popp to Plaintiffs.  *Id*. at ¶¶ 104.   However, the Amended Complaint is entirely devoid of any supporting factual allegations regarding the tweets Mr. Cooke purportedly approved, including the nature and form of his approval, the specific tweets he was supposedly involved in approving, the number of tweets he was involved in approving, whether anyone else was involved in approving the tweets with him, and when he approved them.

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(b)(6), a court must dismiss Plaintiffs' Amended Complaint where they fail to state a claim upon which relief may be granted.  In making this determination, a court should employ a two-pronged approach.  *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).[3]  First, it begins "by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." *Id*.  Second, taking non-conclusory factual allegations as true, a court must determine whether the allegations "state a plausible, not a merely conceivable, case for relief." *Id*.  Here, because Plaintiffs merely recite the elements of causes of action and offer no sufficient factual allegations regarding Mr. Cooke, dismissal of each of their claims is warranted.

## ARGUMENT

### I.    Plaintiffs' Trespass and Trespass to Chattels Claim Must be Dismissed.

The trespass claim fails because Plaintiffs do not allege that Mr. Cooke entered their property or damaged it in any way.  To state a claim for trespass, a plaintiff must allege actual

---

[3] Except where otherwise indicated, all internal citations are omitted.

possession of the property and an intentional and illegal entry by the defendant. *Wellesley Hills Realty Trust v. Mobil Oil Corp.*, 747 F. Supp. 93, 99 (D. Mass. 1990) (dismissing claim where defendant did not intrude on another's land); *Diaz v. Devlin*, 229 F. Supp. 3d 101, 113 (D. Mass. 2017) (dismissing claim where defendant was not physically present at time of alleged trespass). Plaintiffs do not allege that Mr. Cooke entered onto their property or even traveled to Massachusetts.   Plaintiffs allege that Defendants Baugh, Harville, and Zea traveled to Massachusetts, surveilled the Plaintiffs, and attempted to install a GPS device on Plaintiffs' vehicle.  Am. Compl. ¶¶ 143, 148.  Plaintiffs do not allege that Mr. Cooke was aware of these activities or was personally involved or substantially assisted in them.

## II.    Plaintiffs Cannot State Claims for Stalking, False Imprisonment, or Assault.

Plaintiffs do not plausibly allege claims for stalking, false imprisonment, or assault. The Amended Complaint fails to state a claim for stalking because it does not allege that Mr. Cooke was engaged in a pattern of harassing conduct or that he intended to place Plaintiffs in reasonable fear for their safety.  To state a stalking claim, Plaintiffs must prove that (1) the defendant was engaged in a pattern of conduct with the intent to follow, alarm, or harass the plaintiff, (2) as a result of the defendant's conduct, the plaintiff reasonably feared for his safety or the safety of an immediately family member or suffered substantial emotional distress, and (3) the defendant made a credible threat intending to place plaintiff in reasonable fear for his or her own safety despite plaintiff's demand to cease and desist the pattern of conduct.  *Blazheiev v. Ubisoft Toronto Inc.*, No. 17-CV-07160, 2018 WL 3417481, at *7 (N.D. Cal. 2018).

Plaintiffs allege no facts to show that Mr. Cooke engaged in a pattern of harassing conduct or made a credible threat.  Plaintiffs allege that Mr. Cooke was one of three people who approved tweets drafted and sent by Defendant Popp. *Am. Complaint,* at ¶ 104.   However, the Amended

Complaint contains no factual allegations to show a pattern.  For example, Plaintiffs do not allege the text of the tweets Mr. Cooke allegedly approved, the number of tweets, or the date they were sent.  They similarly do not allege any facts from which a reasonable conclusion can be drawn that Mr. Cooke intended to make Plaintiffs fear for their safety.  Because Plaintiffs do not allege a plausible stalking claim against Mr. Cooke, the Court should dismiss it.

The false imprisonment claim must be dismissed because Plaintiffs do not allege that Mr. Cooke intentionally confined them to their home.  To state a claim for false imprisonment, Plaintiffs must allege an intentional and unlawful confinement of a person, directly or indirectly, of which the person confined is conscious or harmed by such confinement.  *Ball v. Wal-Mart, Inc*., 102 F. Supp. 2d 44, 55 (D. Mass. 2000).  "The tort of false imprisonment requires an unlawful restraint of a person's freedom of movement by force or threats." *Rose v. Town of Concord*, 971 F. Supp. 47, 51 (D. Mass. 1997).   It also requires a clear specific intent.  *Barrows v. Wareham Fire Dist*., 82 Mass. App. Ct. 623, 629 n.8 (2012).

Plaintiffs fail to adequately allege confinement and specific intent.  The "key factor in determining whether there has been confinement is determining whether the person is free to leave." *Ball*, 102 F. Supp. 2d at 55.  Here, Plaintiffs do not allege that Mr. Cooke confined their movement to their home such that they were not free to leave.  They do not allege that Mr. Cooke threatened them in order to restrain their movement. *Rose*, 971 F. Supp. at 51.  Even if Plaintiffs alleged confinement, they have not sufficiently alleged specific intent.  Plaintiffs do not allege any facts from which a reasonable conclusion can be drawn that Mr. Cooke specifically intended to confine them to their home.  They claim that deliveries, surveillance, stalking, and messages by the Defendants made them fearful.  Am. Compl., e.g. ¶¶ 160-163.  However, Plaintiffs do not allege that Mr. Cooke was involved in sending deliveries to Plaintiffs, instead grouping the

"Defendants" generically with no supporting factual allegations (*Id.* at ¶¶121-146); conducting surveillance (*Id.* at ¶¶ 147-53); signing them up for unwanted subscriptions (*Id.* at ¶¶ 114-115); or attempting to install a GPS device on Plaintiffs' car (*Id.* at ¶¶ 148-150). As to messages, Mr. Cooke never created a Twitter account or drafted or sent a message. Plaintiffs claim that Mr. Cooke was one of three people who approved tweets drafted and sent by Defendant Popp. *Id.* at ¶ 104. However, the Amended Complaint is entirely devoid of any supporting factual allegations regarding the tweets Mr. Cooke purportedly approved, such as the nature of his approval and the tweets he was involved in approving.

A civil assault is an act done with the intention of causing "a harmful or offensive contact with the person of the other…, or an imminent apprehension of such contact [if] … the other is thereby put in such imminent apprehension. *Guzman v. Pring-Wilson*, 81 Mass. App. Ct. 430 (March 13, 2012), citing *Restatement (Second) of Torts*, Section 21(1) (1965). The missing allegation here is that Mr. Cooke intended to cause harmful or offensive contact with the Plaintiffs or to put them in imminent apprehension of an intended battery. That other defendants may have so intended does not mean Mr. Cooke intended such a result, or that he had sufficient information to reasonably anticipate such a result. Insufficient facts are alleged to allow a reasonable conclusion that Mr. Cooke so intended. Plaintiffs fail to specify which tweets Mr. Cooke supposedly approved, or to explain how those tweets placed them in fear of the infliction of bodily harm.

### III.    Plaintiffs Cannot State a Claim for Defamation.

Plaintiffs cannot state a claim for defamation because they do not allege that Mr. Cooke published defamatory statements about them or caused them economic loss. To maintain a defamation action, "a plaintiff must allege facts to show that (1) a defendant made a false statement

of and concerning the plaintiff; (2) the statement could damage the plaintiff's reputation in the community; (3) the defendant was at fault in making the statement; and (4) the statement caused economic harm or is actionable without proof of economic loss." *Albright v. Morton*, 321 F. Supp. 2d 130, 134 (D. Mass. 2004).  To be defamatory, a statement must be false and "tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community." *Amrak Prods., Inc. v. Morton*, 410 F.3d 69, 72 (1st Cir. 2005).  Courts must examine the alleged defamatory statement in context.  *Id*.  Statements of pure opinion are not defamatory.  *Greenspan v. Random House, Inc*., 859 F. Supp. 2d 206, 223 (D. Mass. 2012).  None of the alleged statements identified by Plaintiffs constitute actionable defamation.

*Pornography*.  The alleged delivery of pornographic magazines to Plaintiffs' neighbors is not defamatory because Plaintiffs do not allege that Mr. Cooke had any involvement in these deliveries, and they do not subject the Plaintiffs to scorn in the minds of a large segment of the community.   Plaintiff alleges no facts to suggest that Mr. Cooke was involved in sending pornography to their neighbors in Plaintiff David Steiner's name.  Am. Compl. ¶¶ 146, 191.  Nor do pornographic deliveries subject Plaintiffs to scorn in the community.  Defamatory statements include allegations of dishonesty, bankruptcy, and mental illness.  *Disend v. Meadowbrook Sch.*, 33 Mass. App. Ct. 674, 675 (1992).  The deliveries do not suggest any of these typical defamatory allegations.

*Communications*.   The conclusory allegation that Defendants engaged in false and defamatory communications fails for lack of specificity.   "To survive a motion to dismiss, a plaintiff must allege (1) the general tenor of the libel or slander claim, along with the precise wording of at least one sentence of the alleged defamatory statement(s); (2) the means and approximate dates of publication; and (3) the falsity of those statements." *Fiorillo v. Winiker*, 85

F. Supp. 3d 565, 575 (D. Mass. 2015) (dismissing claim where plaintiff did not include the means or dates of publication).   Plaintiffs fail to allege any description of the alleged defamatory communications.  Compl. ¶¶ 295-296.

*Craigslist*.  The Craigslist ad is not defamatory because Plaintiffs do not allege that Mr. Cooke made the statement or that it was "of and concerning" them.  Plaintiffs do not specifically allege that Mr. Cooke participated in the Craigslist posts. Am. Compl. ¶¶ 178.   Moreover, Craigslist is not defamatory because it is not of and concerning the Plaintiffs.  To prove defamation, Plaintiffs must show that those to whom the Craigslist ad was published would have understood the statement as being of and concerning Plaintiffs.  *Li v. Zeng*, 98 Mass. App. Ct. 743, 747 (2020) (affirming dismissal of defamation claim where plaintiffs' identity was not revealed).   "[I]f the person is not referred to by name or in such manner as to be readily identifiable from the descriptive matter in the publication, extrinsic facts must be alleged and proved showing that a third person other than the person [defamed] understood it to refer to him."  *Id*.  The Craigslist ad does not refer to Plaintiffs by name and Plaintiffs do not allege that a third person understood it to refer to them. Am. Compl. ¶ 178.

*Twitter*.  The Twitter messages and tweets are not defamatory because Plaintiffs do not sufficiently allege that Mr. Cooke was involved in drafting or sending them.  Defendant Popp created the Twitter account and Defendant Baugh approved the account's avatar.  Am. Compl. ¶ 103.  Defendant Popp drafted the tweets and messages.  *Id*. at ¶ 104.  Mr. Cooke never created a Twitter account or drafted or sent a tweet or message.  Plaintiffs claim that Mr. Cooke was one of three people who approved anonymous tweets drafted and sent by Defendant Popp to Plaintiffs.  *Id*. at ¶ 104.  However, the Amended Complaint is entirely devoid of any supporting factual allegations regarding the tweets Mr. Cooke purportedly approved, including the nature and form

of his approval, the specific tweets he was involved in approving, the number of tweets he was involved in approving, whether anyone else was involved in approving the tweets with him, and when he approved them.

Even assuming Mr. Cooke was involved in the Twitter messages and tweets, the claim still fails because the messages were not published, and the tweets were not defamatory.  Publication is a required element of defamation.  Direct messages cannot constitute defamation because they were not published to anyone other than the Plaintiffs.  *Phelan v. May Dept. Stores Co.*, 443 Mass. 52, 56 (2004) (publication element is satisfied if statement is made to someone other than the plaintiff).  In addition, the tweets were not defamatory in nature.  For example, Plaintiffs allege that the tweets were threatening, but threatening language does not subject them to scorn or hatred in the community.  Am. Compl. ¶ 104.  As explained above, defamatory statements include allegations of adultery, substance abuse, dishonesty, and mental illness.  *Disend*, 33 Mass. App. Ct. at 675.  Any non-threatening statements were pure opinion, which cannot be defamatory. *Greenspan*, 859 F. Supp. 2d at 223.  *"A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is."  Id*.  For example, the tweet that "[Plaintiff Ina Steiner] is hurting small business with all the negativity and pushing buyers to Amazon!" is an expression of pure opinion and no reasonable reader would conclude that it suggests an assertion of fact about Plaintiffs.  Am. Complaint, ¶¶ 197-198.

*Persons of Interest File*.  The Persons of Interest File was created by Defendants Baugh, Stockwell, Zea, and Gilbert.  Am Compl. ¶ 212.  Plaintiffs allege no facts in support of its claim that Mr. Cooke assisted with it.  Even if they had made such an allegation, the claim still fails because defamation is subject to strict pleading standards.  *Fiorillo*, 85 F. Supp. 3d at 575.

Plaintiffs must allege "precise wording of at least one sentence of the alleged defamatory statements" to survive a motion to dismiss.  *Id*.  Because they allege only that the Persons of Interest File was created to undermine Plaintiffs' credibility, the claim must be dismissed.  Am. Compl. ¶ 212.

Each defamation claim independently fails because Plaintiffs do not sufficiently allege economic loss.  Plaintiffs do not allege any specific facts showing that they suffered damages as a result of the claimed defamatory statements.  They allege generally that their business has been harmed, but they do not allege that it was harmed because of any defamatory statements.  Am. Compl. ¶¶ 374-384.   Plaintiffs also do not allege any statements that are actionable without proof of economic loss.   Statements that may prejudice the plaintiff's profession or business are actionable without proof of economic loss.  *Damon v. Moore*, 520 F.3d 98, 104 (1st Cir. 2008). "A statement falls within this exception to the economic harm requirement if it alleges that the plaintiff lacks a necessary characteristic of the profession." *Conning v. Halpern*, No. 18-CV-12336-ADB, 2021 WL 1580837, at *10 (D. Mass. Apr. 22, 2021).   Plaintiffs claim that they suffered economic harm, but they fail to apecify any statements that Mr. Cooke supposedly approved which suggested Plaintiffs lacked a necessary characteristic of their profession.

## IV.   Plaintiffs' Civil Conspiracy and Negligence Claims Fail.

The civil conspiracy claim should be dismissed because Plaintiffs do not allege facts to demonstrate an agreement or a tortious act in furtherance by Mr. Cooke.  To state a claim for civil conspiracy, a plaintiff must allege (1) a common design or agreement between two or more persons to do a wrongful act and (2) proof of some tortious act in furtherance of the agreement.[4]  *Mullane*

---

[4] Massachusetts recognizes another type of civil conspiracy, known as "true conspiracy," which is a limited cause of action requiring coercion.  *Blake v. Prof'l Coin Grading Serv*., 898 F. Supp. 2d 365, 392 (D. Mass. 2012).  Plaintiffs do not allege coercion, and therefore Mr. Cooke does not address this theory.

*v. Breaking Media, Inc.*, 433 F. Supp. 3d 102, 115 (D. Mass. 2020).  "Key to this cause of action is a defendant's substantial assistance [to another], with the knowledge that such assistance is contributing to a common tortious plan." *Brennan v. Ferreira*, 251 F. Supp. 3d 338, 343 (D. Mass. 2017).  Because Plaintiffs fail to adequately Mr. Cooke knew and agreed to a tortious plan, the civil conspiracy claim must be dismissed.

Conspiracy "derives from concerted action whereby liability is imposed on one individual for the tort of another."  *Hallal v. Vicis Cap. Master Fund Ltd.*, 2013 WL 1192384, at *19 (D. Mass. Feb. 25, 2013).  The agreement among the parties to the alleged conspiracy may be proven by direct evidence or may be inferred from conduct suggesting that the parties had an implied meeting of the minds.  *Id*.  A civil conspiracy claim cannot be maintained unless a plaintiff alleges facts evincing an agreement between the parties.  *Blake*, 898 F. Supp. 2d at 392 (dismissing civil conspiracy claim for failure to allege agreement to commit a wrongful act); *Briggs v. Boat/U.S., Inc.*, No. 12-11795-DJC, 2014 WL 4662305, at *7 (D. Mass. Sept. 16, 2014) (same).

Here, Plaintiffs do not allege any facts in support of their claim that Mr. Cooke agreed to commit the acts alleged in the Amended Complaint.  Mr. Cooke purportedly attended one meeting with Defendant Baugh and others.  Am. Compl. ¶ 93.  However, Plaintiffs do not allege that Mr. Cooke agreed with any other defendant to undertake any acts.   Mr. Cooke was responsible for security in Europe and Asia (*Id*. at ¶ 37), and he was overseas when most of the conduct alleged in the Amended Complaint occurred.  At most, Plaintiffs allege that Mr. Cooke approved tweets and messages drafted by Defendant Popp.  *Id*. at ¶ 104.  They fail to allege what tweets Mr. Cooke allegedly approved and when.  Any inference of an agreement is further belied by the lack of allegations connecting Mr. Cooke to the other Defendants.  Plaintiffs do not allege that Mr. Cooke was specifically involved in signing them up for email subscriptions or purchasing items for use

in the conspiracy.  *Id*. at ¶¶ 81, 83-85.  Mr. Cooke was not involved in any alleged stalking or trespassing or false imprisonment in Massachusetts, and he never traveled there.

The civil conspiracy claim independently fails because there is no underlying tort liability against Mr. Cooke.  This type of conspiracy requires an underlying tort because it is vicarious liability.  *Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*, No. 14-CV-12047-ADB, 2015 WL 4467064, at *12 (D. Mass. July 20, 2015) (dismissing civil conspiracy claim where underlying tort claim failed).

Here, Plaintiffs fail to state a tort claim against Mr. Cooke. To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of duty and the damage.  *Jupin v. Kask*, 447 Mass. 141, 146 (June 30, 2006).  Despite the plethora of conclusory allegations against the "Defendants" collectively, the only specific involvement alleged against Mr. Cooke is that he was one of three persons supposedly approving tweets.  Am. Complaint, at ¶ 104. No further detail is provided about what tweets Mr. Cooke supposedly approved, when, or what was said in those tweets.  Additionally, no allegation is made that the tweets Mr. Cooke supposedly approved could have reasonably been expected to cause damage, or in fact did cause damage to the Plaintiffs.

## V.     Plaintiffs' Claim Under the Massachusetts Civil Rights Act Fails.

The Court should dismiss the Massachusetts Civil Rights Act (the "MCRA") claim because Plaintiffs do not allege that Mr. Cooke threatened, intimidated, or coerced them.  The MCRA provides enhanced protection for existing civil rights and was not intended to be a "vast constitutional tort."  *Haufler v. Zotos*, 446 Mass. 489, 504 (2006).  To state a claim under the MCRA, plaintiffs must show interference with their federal or state constitutional rights by threats,

- 13 -

intimidation, or coercion.  Mass. Gen. Laws Ch. 12, §§ 11H, 11I.  "A direct violation of civil rights is not, without a showing of coercive behavior, actionable."  *Orwat v. Maloney*, 360 F. Supp. 2d 146, 164 (D. Mass. 2005).  Courts use a reasonable person standard to determine whether the conduct constituted threats, intimidation, or coercion.  *Haufler*, 446 Mass. at 504.  Because Plaintiffs allege no facts to support threats, intimidation, or coercion by Mr. Cooke, their MCRA claim should be dismissed.

*Threats and Intimidation*.  Plaintiffs do not allege that Mr. Cooke threatened them or intimidated them.  A threat under the MCRA is the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.  *Meuser v. Fed. Express Corp.*, 564 F.3d 507, 516 (1st Cir. 2009).  Intimidation involves putting another in fear for the purpose of compelling or deterring her conduct.  *Id.*  At most, Plaintiffs allege that Mr. Cooke approved tweets drafted by Defendant Popp.  Compl. ¶ 104.  They do not allege that Mr. Cooke took any action threatening Plaintiffs with injury or harm or intimidating them.  Therefore, they cannot base their MCRA claim on threats or intimidation.  *Appling v. City of Brockton*, 649 F. Supp. 258, 261 (D. Mass. 1986) (dismissing claim where plaintiff failed to plead facts showing threats, coercion, or intimidation).

*Coercion*.  Plaintiffs fail to allege that Mr. Cooke coerced them, and the MCRA claim similarly fails under this theory.  To constitute coercion under the MCRA, a defendant must act with force, either physical or moral, against another to constrain her to do against her will something she would not otherwise have done.  *Meuser*, 564 F.3d at 516.  There are no allegations that Mr. Cooke acted with force against the Plaintiffs.  *Farrah ex rel. Estate of Santana v. Gondella*, 725 F.Supp.2d 238, 248 (D. Mass. 2010).  He had no direct contact with them as he was in charge of Security in Europe and Asia and did not travel to Massachusetts. ¶ 37.  Plaintiffs

cannot allege threats, intimidation, or coercion, and therefore, the MCRA claim should be dismissed.

### VI.   Plaintiffs' IIED and NIED Claims Must be Dismissed.

Plaintiffs' intentional infliction of emotional distress claim fails because they do not allege facts to show that Mr. Cooke intended to inflict emotional distress and that his conduct was extreme and outrageous.  To establish intentional infliction of emotional distress, a plaintiff must demonstrate (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.  *Henriquez v. City of Lawrence*, No. 14-CV-14710-IT, 2015 WL 3913449, at *5 (D. Mass. June 25, 2015).

Plaintiffs do not allege any facts to demonstrate that Mr. Cooke intended to inflict emotional distress on them.  Recovery "requires more than that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress." *Payton v. Wells Fargo Bank, N.A*., No. 12-11540-DJC, 2013 WL 782601, at *4 (D. Mass. Feb. 28, 2013).  Here, there are no factual allegations that Mr. Cooke intended to harm Plaintiffs or should have known that his conduct would harm Plaintiffs.  As explained herein, Mr. Cooke's alleged role was minimal.  Plaintiffs do not allege that Mr. Cooke sent any specific items to them or came up with the idea to send certain items to them.  Compl.  ¶¶ 88, 91, 92.  He did not visit Plaintiffs' home in Massachusetts. *See id.* at ¶¶ 54-55.  There are no factual allegations from which the Court can infer that Mr. Cooke intended to harm the Plaintiffs.

The minimal factual allegations regarding Mr. Cooke are insufficient to allege extreme and outrageous conduct.  Conduct is extreme and outrageous when it is atrocious, beyond all possible

bounds of decency, and is utterly intolerable in a civilized community. *Emerson v. Mass. Port Auth.*, 138 F.Supp.3d 73, 76 (D. Mass. 2015). Mr. Cooke's alleged conduct cannot surpass this high bar.[5] Mr. Cooke was in charge of security in Europe and Asia (Am. Compl. at ¶ 37), and in fact was out of the U.S. on business when most of the conduct alleged in the Amended Complaint occurred. Plaintiffs allege that Mr. Cooke approved tweets and messages drafted by Defendant Popp. *Id*. at ¶ 104. They fail to allege what tweets Mr. Cooke allegedly approved and when. Such conduct cannot be considered extreme and outrageous.

To properly allege a claim of negligent infliction of emotional distress, Plaintiff must properly allege 1) negligence, 2) emotional distress, 3) causation, and 4) physical harm manifested by objective symptomatology; and 5) that a reasonable person would have suffered emotional distress under the circumstances of the case. *Lockwood v. Madeiros*, 2018 WL 4087938 (D. Mass. August 27, 2018). Again, Plaintiffs fail to specify what tweets Mr. Cooke supposed approved, when, or how they caused emotional distress. There are simply insufficient facts alleged from which reasonable conclusions can be drawn that Mr. Cooke was responsible for the Plaintiffs' injuries.

## CONCLUSION

For the foregoing reasons, Mr. Cooke respectfully requests that this Court dismiss the Amended Complaint with prejudice for failure to state a claim upon which relief can be granted.

---

[5] To the extent Plaintiffs' claim that Mr. Cooke failed to act, passive conduct is insufficient to state a claim for intentional infliction of emotional distress. *Pollard v. Georgetown Sch. Dist.*, 132 F.Supp.3d 208, 232 (D. Mass. 2015).

- 16 -

Dated: April 21, 2023

Respectfully submitted,

PHILIP COOKE,

By his attorneys,

*Susan G. Winkler*
Susan G. Winkler, BBO No. 530862
swinkler@msdefenders.com
Christina N. Lindberg, BBO No. 690443
clindberg@msdefenders.com
MINER SIDDALL LLP
101 Federal Street, Suite 650
Boston, MA 02110
Tel: (617) 202-5873/5890

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed through the ECF system on April 21, 2023, and will be sent electronically to the registered participants on the Notice of Electronic Filing and paper copies will be sent to any non-registered participants.

*Christina N. Lindberg*
Christina N. Lindberg