**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| INA STEINER, DAVID STEINER, and STEINER ASSOCIATES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> EBAY INC., et al. <br><br> Defendants. | Case No. 1:21-cv-11181-PBS |

**DEFENDANT WENDY JONES'S MEMORANDUM IN SUPPORT OF HER MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................1

LEGAL STANDARD ..........................................................................................................4

ARGUMENT ........................................................................................................................4

I.   Plaintiffs Have Not Alleged that Ms. Jones Directly Participated in Any Tortious Conduct..5

    A.   Intentional Common Law Torts ................................................................................5

        1.   Count 1: Plaintiffs Fail to Allege that Ms. Jones Engaged in Outrageous Conduct Intending to Cause Emotional Distress as Required to State a Claim for Intentional Infliction of Emotional Distress. ..................................................................................5

        2.   Count 8: Plaintiffs Do Not Allege that Ms. Jones Created an Imminent Apprehension of Physical Harm as Required to State a Claim for Assault....................6

        3.   Count 10: Plaintiffs Do Not Adequately Allege that Ms. Jones Is at Fault for Any Defamatory Statements about Plaintiffs. ......................................................................7

        4.   Count 11: Plaintiffs Do Not Allege that Ms. Jones Was Ever Present at the Plaintiffs' Home or Caused Damage to Their Property as Required to State a Claim for Trespass.................................................................................................................8

        5.   Count 12: Plaintiffs' False Imprisonment Claim Fails Because They Do Not Allege that Ms. Jones Intended to Confine Plaintiffs, and Plaintiffs Were Not in Fact Confined.................................................................................................................9

    B.   Negligence Common Law Claims...........................................................................9

        1.   Count 4: Plaintiffs Fail to Plead Facts Sufficient to Establish that Ms. Jones Breached a Duty or Was the Proximate Cause of Plaintiffs' Harm. ..............................9

        2.   Count 3: Plaintiffs Do Not Adequately Plead that Ms. Jones Was Negligent or Caused Distress, as Required to State a Claim for Negligent Infliction of Emotional Distress..................................................................................................................11

    C.   Statutory Causes of Action ......................................................................................11

        1.   Count 2: Plaintiffs Do Not State a Statutory Claim for Stalking Because No Such Cause of Action Exists Under Controlling Massachusetts Law. ..................................11

        2.   Count 9: Plaintiffs Do Not Allege a Violation of the Massachusetts Civil Rights Act Because They Do Not Allege that Ms. Jones Threatened, Intimidated, or Coerced Them. ..................................................................................................................13

II.   Ms. Jones's Role at eBay Does Not Render Her Liable for the Acts of the Security Team Defendants…………………………………………………………………………………14

    A.   Plaintiffs' Conspiracy Claim Fails Both Because Intracorporate Conspiracies Are Not Actionable and Because Plaintiffs Do Not Plead Sufficient Facts as to Ms. Jones .............14

        1.   Plaintiffs Have Not Pled a "Concerted Action" Theory Against Ms. Jones. ........15

        2.   Plaintiffs Have Not Pled a "Substantial Assistance" Theory Against Ms. Jones..16

i

B.    Plaintiffs Do Not State a Claim Against Ms. Jones for Aiding and Abetting...............17

C.    Plaintiffs' Negligent Supervision Claim Fails Because No Well-Pled Facts Indicate that Ms. Jones Knew or Should Have Known of Others' Tortious Conduct..............................17

CONCLUSION.........................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston v. Spiegel*,
   988 F.3d 564 (1st Cir. 2021) ................................................................................... 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. 4

*Burleigh v. Alfa Laval, Inc.*,
   313 F. Supp. 3d 343 (D. Mass. 2018) .................................................................... 12

*Conley v. Romeri*,
   806 N.E.2d 933 (Mass. App. Ct. 2004) ................................................................. 11

*Cremaldi-Vickery v. Otis Elevator, Inc.*,
   782 N.E.2d 48, 2003 WL 168452 (Mass. App. Ct. 2003) ........................................ 9

*Diaz v. Devlin*,
   229 F. Supp. 3d 101 (D. Mass. 2017) ................................................................. 6, 7

*Do Corp. v. Town of Stoughton*,
   Case No. 13-11726-DJC, 2013 WL 6383035 (D. Mass. Dec. 6, 2013) ............ 13, 14

*Doe v. Brandeis Univ.*,
   177 F. Supp. 3d 561 (D. Mass. 2016) .................................................................... 17

*Doe v. Cavanaugh*,
   437 F. Supp. 3d 111 (D. Mass. 2020) .................................................................... 13

*Fine v. Guardian Life Ins. Co. of Am.*,
   Case No. 3:19-cv-30067-KAR, 2021 WL 916270 (D. Mass. Mar. 10, 2021) ......... 4

*Galvin v. U.S. Bank, N.A.*,
   852 F.3d 146 (1st Cir. 2017) ................................................................................... 8

*Gilanian v. City of Boston*,
   431 F. Supp. 2d 172 (D. Mass. 2006) .................................................................... 13

*HDI-Gerling Am. Ins. Co. v. Navigators Ins. Co.*,
   Case No. 15-cv-10338-FDS, 2015 WL 5315190 (D. Mass. Sept. 11, 2015) ......... 11

*Heal v. Wells Fargo, N.A.*,
   560 F. Supp. 3d 347 (D. Mass. 2021) ...................................................................... 8

*Jenny B. Realty, LLC v. Danielson, LLC*,
    456 F. Supp. 3d 307 (D. Mass. 2020) ........................................................................... 11, 12

*Johnson v. Allen*,
    Case No. 22-cv-10907-DJC, 2022 WL 16823008 (D. Mass. Nov. 8, 2022) ........................... 7

*Jorgensen v. Mass. Port Auth.*,
    905 F.2d 515 (1st Cir. 1990) ........................................................................................ 9, 10

*Kamayou v. Univ. of Mass. Lowell*,
    Case No. 16-cv-10098-IT, 2018 WL 4609130 (D. Mass. Sept. 7, 2018) ............................... 9

*Kyte v. Phillip Morris, Inc.*,
    556 N.E.2d 1025 (Mass. 1990) ........................................................................................ 15

*Ledet v. Mills Van Lines, Inc.*,
    150 N.E.3d 782 (Mass. App. Ct. 2020) ........................................................................ 8, 18

*Levin v. Dalva Bros., Inc.*,
    459 F.3d 68 (1st Cir. 2006) ............................................................................................. 11

*O'Neil v. Daimlerchrysler Corp.*,
    538 F. Supp. 2d 304 (D. Mass. 2008) ................................................................................ 9

*Payton v. Abbott Labs*,
    512 F. Supp. 1031 (D. Mass. 1981) ................................................................................. 15

*Polay v. McMahon*,
    10 N.E.3d 1122 (Mass. 2014) ............................................................................................ 6

*Saldivar v. Racine*,
    818 F.3d 14 (1st Cir. 2016) ........................................................................................ 17, 18

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012) ............................................................................................... 4

*Sena v. Commonwealth*,
    629 N.E.2d 986 (Mass. 1994) ............................................................................................ 5

*Taylor v. Am. Chemistry Council*,
    576 F.3d 16 (1st Cir. 2009) ........................................................................................ 14, 15

*Thomas v. Harrington*,
    909 F.3d 483 (1st Cir. 2018) ...................................................................................... 15, 16

*White v. Blue Cross & Blue Shield of Mass., Inc.*,
    809 N.E.2d 1034 (Mass. 2004) .......................................................................................... 7

*Winfield v. Town of Andover*,
   305 F. Supp. 3d 286 (D. Mass. 2018)......................................................................13

*Ziglar v. Abbasi*,
   582 U.S. 120 (2017) .........................................................................................14

**Statutes**

Cal. Civ. Code § 1708.7 ........................................................................................ 12, 13

Massachusetts Civil Rights Act ................................................................................13

## INTRODUCTION

There is no dispute that Ina and David Steiner ("Plaintiffs") were subject to shocking mistreatment at the hands of former members of eBay's security team.  Plaintiffs may well state a claim against those individuals, each of whom has been criminally charged and convicted in connection with their actions.  But sufficiently pleading a case against *certain employees* is not enough for Plaintiffs to subject *everyone* in the corporate hierarchy to protracted civil litigation.

Wendy Jones was eBay's Senior Vice President for Global Operations.  When she learned of the criminal actions carried out by Defendants Baugh, Harville, Gilbert, Popp, Stockwell, Zea, and Cooke (the "Security Team Defendants"), she was horrified.  Each of those defendants was part of her organization.  But the Amended Complaint does not, and cannot, plead a single fact showing that Ms. Jones—who led an organization of thousands of employees—participated in, ordered, or had prior knowledge of the actions of the Security Team Defendants.  The Amended Complaint instead lumps Ms. Jones together with other executives who were defendants in the original Complaint.  And it now alleges, in conclusory terms, that she too directed, knew about, or recklessly ignored the criminal acts.

Those allegations do not state a claim.  Conclusory allegations must be ignored, and the handful of factual allegations pleaded with respect to Ms. Jones—which, right or wrong, are accepted as true for purposes of this motion—do not connect her to the Security Team Defendants' tortious actions.  The claims against Ms. Jones should therefore be dismissed.

## BACKGROUND

Ms. Jones worked at eBay for 17 years in various roles.  In 2016, Ms. Jones was promoted to eBay's Senior Vice President of Global Operations.  She managed the $48 billion company's customer service, risk, trust, payment operations, security, and workplace resources

functions.  Ms. Jones led an organization of thousands of employees and contractors.  She retired in December 2020.

Ms. Jones was unaware of the events in Natick until late August 2019.  She had been on sabbatical, a benefit offered to senior eBay employees every five years.  She learned of the incidents from the company's legal department upon her return.  *See* ECF 176, Am. Compl. ¶ 220.

Plaintiffs filed their original Complaint on July 21, 2021.  On March 1, 2023, Plaintiffs filed an Amended Complaint that, among other things, added Ms. Jones as a defendant.  Nearly every allegation directed at Ms. Jones is conclusory.  In many cases, Plaintiffs simply tack Ms. Jones's name onto allegations made in the original complaint against Defendants Wenig and Wymer.  For example:

- "eBay, through its Chief Executive leadership, Defendants Wenig, Wymer *and Jones*, sent a directive and enlisted at least seven members of the eBay security staff . . . ." Am. Compl. ¶ 4 (emphasis added).

- "This was done to keep executive leadership, including Defendants Wenig, Wymer *and Jones*, up to date on an immediate basis." *Id.* ¶ 52 (emphasis added).

- "In direct response to the intentional and malicious acts of the Defendants, and the conspiracy hatched by eBay and its senior management, including Defendants Wenig, Wymer *and Jones* . . . ." *Id.* ¶ 136 (emphasis added).

- "Defendant Baugh's premeditated acts demonstrate the conscious knowing and embracing of unlawful behavior condoned by Defendant eBay through its senior management, including but not limited to Defendants Wenig, Wymer *and Jones*." *Id.* ¶ 142 (emphasis added).

- "In an effort to conceal Defendants' conspiracy directed by Defendants Wenig and Wymer, *to which Defendant Jones was willfully blind*…." *Id.* ¶ 264 (emphasis added).

- " . . . it was impossible for Defendants Wenig, Wymer *and Jones* not to be aware of Defendant Baugh's actions." *Id.* ¶ 315 (emphasis added).

The few *factual* allegations levied against Ms. Jones are either non-substantive—that she was a Senior Vice President and retired in December 2020—or unrelated to the Security Team Defendants' harassment campaign.

For example, the Amended Complaint alleges that Defendant Jones asked in an email to "huddle on this at lunch" in connection with efforts to remove a posting from a contractor's website, which was later picked up by EcommerceBytes. Am. Compl. ¶ 64. The Amended Complaint attempts to make hay from that email by tying it to allegations appearing in a sentencing memorandum filed by attorneys for Jim Baugh. *Id.* ¶ 65. Even taking those allegations as true (though they are not[1]), this Court can and should take them for what they actually say: that Ms. Jones asked Mr. Baugh to deal with "the issue"—*i.e.*, the contractor's posting of information—"off the radar." *Id.* ¶ 65. The allegation does not say that Ms. Jones asked anyone to deal with Plaintiffs' blog post or Plaintiffs in general. And the allegation certainly does not say that Ms. Jones directed or even implied that anyone should engage in any action resembling the harassment campaign that followed.

The same is true of the only other factual allegation against Ms. Jones of any substance: that Ms. Jones listened to a recording of a phone call between a security team member and a "subject associated with Fidomaster" and gave a "fist bump" to Mr. Baugh. Am. Compl. ¶ 81. Putting aside the veracity of the statement, Plaintiffs' own allegations make clear that Fidomaster had nothing to do with the Steiners, and there is not a single allegation in the Amended Complaint that Ms. Jones believed there was such a connection.

---

[1] Ms. Jones wholeheartedly rejects these allegations—she never told Mr. Baugh to do anything "off the radar." Mr. Baugh's motivation to shift the spotlight in a sentencing memorandum is clear, though the Court need not weigh his credibility to reject the relevance of the allegation to the case at hand.

In sum, the Amended Complaint's allegations directed at Ms. Jones—as opposed to other Defendants—are either (a) conclusory or (b) not factually connected to the tortious conduct alleged elsewhere in the Amended Complaint.

## LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), a complaint must plead as to each individual defendant "sufficient ***factual matter***, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). In assessing plausibility, a court should rely on their "judicial experience and common sense." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility,'" and should be dismissed. *Iqbal*, 556 U.S. at 678 (citation omitted).

Critically, Plaintiffs' factual allegations must be assessed separately "<u>as to each defendant</u>." *Alston v. Spiegel*, 988 F.3d 564, 573 (1st Cir. 2021) (quoting *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009)) (emphasis in original). A "plaintiff cannot 'lump' multiple defendants together and must 'state clearly which defendant or defendants committed each of the alleged wrongful acts.'" *Fine v. Guardian Life Ins. Co. of Am.*, Case No. 3:19-cv-30067-KAR, 2021 WL 916270, at *5 (D. Mass. Mar. 10, 2021) (citation omitted). In other words, whether the Plaintiffs have stated a claim against *other* defendants in this case is irrelevant to whether they have stated a claim against Ms. Jones.

## ARGUMENT

Plaintiffs include Ms. Jones as a defendant in various counts. Although it is not clear whether Plaintiffs claim that she committed any given tort directly or that she is secondarily liable for the conduct of others, both theories fail for the reasons discussed below.

# I.    PLAINTIFFS HAVE NOT ALLEGED THAT MS. JONES DIRECTLY PARTICIPATED IN ANY TORTIOUS CONDUCT

To the extent that Plaintiffs attempt to bring claims of Intentional Infliction of Emotional Distress ("IIED") (Count 1), Stalking (Count 2), Negligent Infliction of Emotional Distress (Count 3), Negligence (Count 4), Assault (Count 8), violation of the Massachusetts Civil Rights Act (Count 9), Defamation (Count 10), Trespass (Count 11), or False Imprisonment (Count 12) against Ms. Jones under a theory of direct liability, these claims should be dismissed out of the gate.  Nowhere in the Amended Complaint do Plaintiffs allege that Ms. Jones engaged in the acts that resulted in harm to the Plaintiffs.  Indeed, Plaintiffs expressly concede that Ms. Jones did "not physically participat[e]" in any "harassment, torture, intentional and negligent infliction of emotional distress, stalking, defamation, trespass, threats and damage to the EcommerceBytes business."  Am. Compl. ¶ 216.  Because Plaintiffs have failed to plead sufficient factual matter as to Ms. Jones to support the elements of these claims, they should be dismissed.

## A.   Intentional Common Law Torts

1.   *Count 1: Plaintiffs fail to allege that Ms. Jones engaged in outrageous conduct intending to cause emotional distress as required to state a claim for Intentional Infliction of Emotional Distress.*

To state a claim of intentional infliction of emotional distress, "a plaintiff must show (1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress."  *Sena v. Commonwealth*, 629 N.E.2d 986, 994 (Mass. 1994).

Plaintiffs have made no showing that Ms. Jones was involved in the acts giving rise to an IIED claim and, in fact, acknowledge the opposite.  *See* Am. Compl. ¶ 216.  The Amended Complaint describes outrageous conduct in the form of online threats; sending unwanted

deliveries "including a book on surviving the loss of a spouse, a bloody pig SAW mask, a funeral wreath, and live spiders"; ongoing harassment; subscribing the Steiners to various email accounts; publishing the Steiners' personal information online; inviting strangers to the Steiners' house; and surveilling the Steiners at their home.   Am. Compl. ¶ 408.   But nowhere in the Amended Complaint do Plaintiffs allege that *Ms. Jones* had anything to do with those outrageous actions.   Even taken as true, the allegations regarding Ms. Jones's supposed conversations with Jim Baugh do not rise to the level of outrageous conduct necessary to maintain a claim of IIED. Although Ms. Jones said no such thing, asking a direct report to take care of an improper post by a company contractor "off the radar" does not in any way qualify as "atrocious" conduct.   *Polay v. McMahon*, 10 N.E.3d 1122, 1128 (Mass. 2014) (quoting *Roman v. Trustees of Tufts Coll.*, 964 N.E.2d 331, 341 (Mass. 2012)) ("Conduct qualifies as extreme and outrageous only if it 'go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.'").   Nor does an alleged "fist bump" after the playing of a recording of an unrelated individual.   For these same reasons, the Amended Complaint also fails to plausibly allege that Ms. Jones "should have known" that her alleged conduct would result in the Security Team Defendants' mind-boggling actions and, in turn, Plaintiffs' emotional distress.

    2.   *Count 8: Plaintiffs do not allege that Ms. Jones created an imminent apprehension of physical harm as required to state a claim for assault.*

To maintain a cause of action for assault, a plaintiff must show that "a defendant 'act[ed] intending to cause a harmful or offensive contact' with a plaintiff, 'or [acted to create] an imminent apprehension of such a contact,' and that a plaintiff was 'thereby put in such imminent apprehension.'"   *Diaz v. Devlin*, 229 F. Supp. 3d 101, 111 (D. Mass. 2017) (quoting Restatement (Second) of Torts § 21 (1) (1965)).   "The intent required [for civil assault] is the intent to make

the victim apprehensive of immediate physical harm." *Id.* at 112 (quoting *Commonwealth v. Musgrave*, 649 N.E.2d 784, 787 (1995)).

Plaintiffs allege that the Security Team Defendants' conduct—surveilling the Steiners and sending them threatening messages and deliveries—caused Plaintiffs to believe they were at risk of immediate physical harm.  Am. Compl. ¶¶ 486-90.  Nowhere, however, do Plaintiffs allege that *Ms. Jones* was one of the Defendants acting to create an apprehension of harm.  Indeed, the Amended Complaint does not allege that Ms. Jones had any contact with Plaintiffs whatsoever.  Moreover, Plaintiffs plead no facts suggesting that Ms. Jones intended for the Steiners to believe that they were in imminent *physical* danger, as required to state a claim.

### 3. Count 10: Plaintiffs do not adequately allege that Ms. Jones is at fault for any defamatory statements about Plaintiffs.

"To prevail on a claim of defamation, a plaintiff must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss."  *White v. Blue Cross & Blue Shield of Mass., Inc.*, 809 N.E.2d 1034, 1036 (Mass. 2004); *see also Johnson v. Allen*, Case No. 22-cv-10907-DJC, 2022 WL 16823008, at *3 (D. Mass. Nov. 8, 2022).  To establish the publication element, a plaintiff must show that "the defendant communicate[d] the defamatory statement to a third party."  *White*, 809 N.E.2d at 1036.

Plaintiffs allege that Defendants defamed them by: "intentionally sending sexually charged pornography to the Steiners' neighbor's homes, in David Steiner's name;" "posting ads on Craigslist that the Plaintiffs were sexual swingers;" posting false statements about the Steiners on Twitter; and "creating fake 'Persons of Interest' files" for the Steiners.  Am. Compl. ¶¶ 504, 508-10.  Plaintiffs acknowledge, however, that Ms. Jones did not physically participate in these

actions, Am. Compl. ¶ 216, and do not allege a single defamatory statement attributable to her. Moreover, Plaintiffs do not plead facts plausibly suggesting that Ms. Jones was otherwise "at fault for" the publication of any defamatory statement.  Indeed, Plaintiffs do not even allege— beyond the threadbare assertion that Ms. Jones was "willfully blind"—that Ms. Jones was aware of the existence of the allegedly defamatory actions and materials.  *See* Am. Compl. ¶ 208.

   4. *Count 11: Plaintiffs do not allege that Ms. Jones was ever present at the Plaintiffs' home or caused damage to their property as required to state a claim for trespass.*

   Plaintiffs' claims against Ms. Jones for civil trespass and trespass to chattels should likewise be dismissed.  "To support an action of trespass, it is necessary to prove actual possession of the plaintiff, and an illegal entry by the defendant." *Galvin v. U.S. Bank, N.A.*, 852 F.3d 146, 163 (1st Cir. 2017) (quoting *New England Box Co. v. C & R Const. Co.*, 49 N.E.2d 121, 128 (Mass. 1943)).  Plaintiffs do not—and cannot—allege that Ms. Jones ever entered Plaintiffs' property or caused anyone else to do so.  *See* Am. Compl. ¶ 216.  The Amended Complaint does not even place Ms. Jones in the Commonwealth of Massachusetts.  Nor does it plausibly assert facts suggesting Ms. Jones intended to enter Plaintiffs' property or that she intended anyone else to do so based on the meager discussions alleged.  *Cf. Ledet v. Mills Van Lines, Inc.*, 150 N.E.3d 782, 787 (Mass. App. Ct. 2020) (affirming summary judgment for the defendant-employer where the employee's actions were unforeseeable).

   Plaintiffs fare no better on the theory of trespass to chattels.  Although Plaintiffs allege that Defendants vandalized the Steiners' fence, once again they fail to allege any facts suggesting *Ms. Jones* traveled or intended to travel to the Steiners' home or impaired the condition of their chattel, as required to state a claim.  *See Heal v. Wells Fargo, N.A.*, 560 F. Supp. 3d 347, 363 (D. Mass. 2021) (citation omitted).  Nor have they plausibly alleged that she caused a third party to do so through her alleged comments about contractor webpages or fist bumps.

     *5. Count 12: Plaintiffs' false imprisonment claim fails because they do not allege that Ms. Jones intended to confine Plaintiffs, and Plaintiffs were not in fact confined.*

"A defendant is liable for false imprisonment if: (a) he acts intending to confine another within fixed boundaries; (b) the act directly or indirectly results in confinement; and (c) the plaintiff is conscious of the confinement." *Cremaldi-Vickery v. Otis Elevator, Inc.*, 782 N.E.2d 48 (table), 2003 WL 168452, at *2 (Mass. App. Ct. 2003) (citing Restatement (Second) of Torts § 35 (1965)). A plaintiff must show that "the confining act [is] done with the specific intent to confine another." *Id.* (citation omitted).

Plaintiffs do not allege a single fact indicating that Ms. Jones had the specific intent to confine Plaintiffs to their home. Moreover, Plaintiffs were not actually confined: Plaintiffs expressly concede that David Steiner left his house, *see* Am. Compl. ¶ 172, and they do not allege that Ina Steiner attempted to leave unsuccessfully. *See O'Neil v. Daimlerchrysler Corp.*, 538 F. Supp. 2d 304, 321-22 (D. Mass. 2008) (plaintiff's false imprisonment claim failed because plaintiff did not attempt to leave); *Kamayou v. Univ. of Mass. Lowell*, Case No. 16-cv-10098-IT, 2018 WL 4609130, at *8 (D. Mass. Sept. 7, 2018) (false imprisonment claim failed because plaintiff left), *report and recommendation adopted*, 2018 WL 4600646 (D. Mass. Sept. 25, 2018).

**B. Negligence Common Law Claims**

     *1. Count 4: Plaintiffs fail to plead facts sufficient to establish that Ms. Jones breached a duty or was the proximate cause of Plaintiffs' harm.*

To plead a negligence claim, "[p]laintiffs must show: (1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury." *Jorgensen v. Mass. Port Auth.*, 905 F.2d 515, 522 (1st Cir. 1990).

Plaintiffs cannot show that Ms. Jones breached any duty of care owed to them or that Ms. Jones's actions caused them any harm. Plaintiffs only specifically plead two acts by Ms. Jones:

her alleged comment about resolving the contractor concern "off the radar," and her alleged "fist bump" after hearing a recorded message unrelated to the Steiners.  Neither allegation, accepted as true, is sufficient to establish Ms. Jones breached a duty of care to Plaintiffs.  As discussed above, addressing the issue of a contractor posting details of its work "off the radar" does not implicate the Steiners, period—and certainly does not suggest Ms. Jones was insufficiently careful about their safety.  Similarly, the Amended Complaint fails to plead any facts suggesting that Ms. Jones knew or believed that the conversation preceding the alleged "fist bump" in any way involved the Steiners, such that it could be seen as a breach of a duty owed to them.

In addition, proximate cause requires, "first, that the loss was a foreseeable consequence of the defendant's negligence, second, that the defendant's negligence was a but-for cause of the loss, and third, that the defendant's negligence was a substantial factor in bringing about the loss." *Jorgensen*, 905 F.2d at 522-23.  A defendant is relieved of liability if the chain of causation is broken by an extraordinary and thus unforeseeable event.  *Id.*  While Plaintiffs allege that Defendant Baugh's management of the security team was aggressive—that he belittled colleagues and conducted stressful active shooter drills—Plaintiffs do not allege *factual material* sufficient to show that Ms. Jones knew or should have known about those antics.  Instead, they assert in conclusory fashion that "it was impossible for Defendants Wenig, Wymer and Jones not to be aware."  Am. Compl. ¶ 315.  Plaintiffs even acknowledge that Baugh took steps to *hide* his concerning behavior from Ms. Jones by encouraging members of his team to keep secrets within a "circle of trust."  *Id.* ¶ 319.

Moreover, Baugh's aggressive behavior toward his team is different—in degree and in kind—from the criminal harassment campaign he orchestrated against the Steiners.  Plaintiffs do not allege that any Security Team Defendant had a criminal record or any history of violent

conduct.  They plead no threat of violence of which Ms. Jones was aware.  As a result, the Security Team Defendants' bizarre actions break the causal chain between any act or omission by Ms. Jones and the harm suffered by Plaintiffs.

      *2.  Count 3: Plaintiffs do not adequately plead that Ms. Jones was negligent or caused distress, as required to state a claim for Negligent Infliction of Emotional Distress.*

To state a claim of Negligent Infliction of Emotional Distress, the Plaintiffs must allege "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case."  *Conley v. Romeri*, 806 N.E.2d 933, 936 (Mass. App. Ct. 2004) (quoting *Payton v. Abbott Labs*, 437 N.E.2d 171, 181 (1982)).  Ms. Jones is in no position to dispute that the Steiners suffered emotional distress from the conduct of the Security Team Defendants.  However, Plaintiffs fail to make out an NIED claim against Ms. Jones because, as discussed in connection with Count 4, *supra*, Plaintiffs fail to adequately plead that Ms. Jones was negligent.  Indeed, Plaintiffs acknowledge that Ms. Jones did not participate in any infliction of emotional distress and therefore did not cause any such distress.  Am. Compl. ¶ 216.

**C.  Statutory Causes of Action**

      *1.  Count 2: Plaintiffs do not state a statutory claim for stalking because no such cause of action exists under controlling Massachusetts law.*

Count 2 of the Amended Complaint should be dismissed on multiple grounds.  First, Massachusetts law governs this case, and Massachusetts does not recognize a standalone cause of action for stalking.  Plaintiffs' California stalking claim is therefore unavailable.

Where one state has a law to which the other state has no parallel, a conflict of laws exists.  *See Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 73-74 (1st Cir. 2006); *HDI-Gerling Am. Ins. Co. v. Navigators Ins. Co.*, Case No. 15-cv-10338-FDS, 2015 WL 5315190, at *2 (D. Mass. Sept. 11, 2015).  This court applies Massachusetts conflict of law principles to resolve such conflicts.

*Jenny B. Realty, LLC v. Danielson, LLC*, 456 F. Supp. 3d 307, 316 (D. Mass. 2020).  Those principles follow the Restatement (Second), which requires courts to apply the "local law of the state which … has the most significant relationship to the occurrence and the parties."  *Id.* (cleaned up).  When considering which state has the "most significant relationship," courts look to "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  *Id*. (quoting Restatement (Second) of Conflict of Laws § 145 (1971)).  Where the conduct and injury occur in different states, "***the law of the state where the injury occurred 'usually' applies***."  *Burleigh v. Alfa Laval, Inc.*, 313 F. Supp. 3d 343, 353 (D. Mass. 2018) (quoting Restatement § 146 cmt e (1971)) (emphasis added).  Moreover, "the law where the injury occurred carries even greater weight 'when the injured person has a settled relationship to that state . . . .'" *Id.*

Applying those principles, Massachusetts law governs.  Massachusetts has the most significant relationship to the conduct and the parties.  Plaintiffs' alleged injuries occurred exclusively in Massachusetts, where the Steiners are domiciled and where Steiner Associates, LLC is based; conversely, Defendants are domiciled in various states across the country.  Am. Compl. ¶¶ 23-38.  Moreover, the most egregious conduct took place in Massachusetts when, at various times, Defendants Baugh, Zea, Harville, Gilbert, and Popp flew to the Steiners' home to follow and harass them.  *Id.* ¶¶ 73, 127, 144, 147, 366.  Because Massachusetts law does not recognize stalking as a standalone cause of action, Count 2 should be dismissed in its entirety.

In the alternative, Count 2 should be dismissed as to Ms. Jones because Plaintiffs do not plead the elements required by the California statute.  To plead a stalking claim under Cal. Civ.

Code § 1708.7, Plaintiffs must allege that: "[t]he defendant engaged in a pattern of conduct the intent of which was to follow, alarm, place under surveillance, or harass the plaintiff." Cal. Civ. Code § 1708.7(a)(1).  The Code defines "pattern of conduct" as "a series of acts over a period of time."  *Id*. § 1708.7(b)(1).  Plaintiffs do not allege that Ms. Jones engaged in a series of acts intending to "follow, alarm, place under surveillance, or harass" Plaintiffs.  Indeed, they go so far as to acknowledge that she did no such thing.  *See* Am. Compl. ¶ 216.

> 2.  *Count 9: Plaintiffs do not allege a violation of the Massachusetts Civil Rights Act because they do not allege that Ms. Jones threatened, intimidated, or coerced them.*

"[T]o establish a claim under the MCRA, the plaintiff must show the 'interference with the plaintiff's civil rights by threats, intimidation, or coercion.'  Such threats, intimidation, or coercion comprises 'the essential element of an MCRA violation.'"  *Winfield v. Town of Andover*, 305 F. Supp. 3d 286, 299-300 (D. Mass. 2018) (quoting *Matthews v. Rakiey*, 649 N.E.2d 770, 772 n.5 (Mass. App. Ct. 1995) and *Chaabouni v. City of Boston*, 133 F. Supp. 2d 93, 100 (D. Mass. 2001)) (internal citations omitted).  To sustain a claim under the MCRA, courts have required plaintiffs to show that a defendant was "***personally engaged***" in the acts that interfered with plaintiffs' civil rights.  *See Gilanian v. City of Boston*, 431 F. Supp. 2d 172, 173 n.1 (D. Mass. 2006).  The MCRA "contemplates a two-part sequence: (1) the defendant threatens, intimidates, or coerces the plaintiff, in order to (2) cause the plaintiff to give up something that the plaintiff has the constitutional right to do."  *Doe v. Cavanaugh*, 437 F. Supp. 3d 111, 118 (D. Mass. 2020) (quoting *Goddard v. Kelley*, 629 F. Supp. 2d 115, 128-29 (D. Mass. 2009)).

Plaintiffs' claim fails at the first step.  Even accepted as true, Plaintiffs' allegations about Ms. Jones are insufficient to establish that she personally threatened, intimidated, or coerced Plaintiffs—or, indeed, that she engaged with them personally in any way.  *See Do Corp. v. Town of Stoughton*, Case No. 13-11726-DJC, 2013 WL 6383035, at *12 (D. Mass. Dec. 6, 2013)

(holding that communications with a third party were insufficient to establish an MCRA claim involving threats against plaintiffs).  As a result, those allegations fail to state a claim.

## II.    MS. JONES'S ROLE AT EBAY DOES NOT RENDER HER LIABLE FOR THE ACTS OF THE SECURITY TEAM DEFENDANTS

Conceding, as they must, that Ms. Jones was not personally involved in the tortious conduct alleged, Plaintiffs also attempt to hold her indirectly liable by asserting that she conspired with, aided, or abetted the Security Team Defendants or negligently supervised them. As an initial matter, civil conspiracy and negligent employment claims fail when their predicate claims fail.  Thus, to the extent any predicate claims are dismissed as to other defendants, they should be dismissed as to Ms. Jones, as well.  *See Taylor v. Am. Chemistry Council,* 576 F.3d 16, 34-35 (1st Cir. 2009).  In addition, Plaintiffs' conspiracy claim fails as a matter of law both because it alleges a non-actionable intracorporate conspiracy and because Plaintiffs fail to adequately plead Ms. Jones's entry into any conspiracy whatsoever.  Plaintiffs' negligent supervision claim likewise fails because there are no facts alleged supporting Plaintiffs' bare assertion that Ms. Jones had a duty to foresee and prevent the outrageous conduct at issue.

### A.  Plaintiffs' Conspiracy Claim Fails Both Because Intracorporate Conspiracies Are Not Actionable and Because Plaintiffs Do Not Plead Sufficient Facts as to Ms. Jones

As a matter of law, "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017).  Defendants Wenig, Wymer, Jones, Baugh, Harville, Gilbert, Popp, Stockwell, and Cooke were all employees—and therefore agents—of eBay in 2019.  Am. Compl. ¶¶ 28-30, 32-37.  Defendant Progressive F.O.R.C.E. and its principal, Defendant Krystek, were also contracted by eBay in January 2019 to provide security analysts, including Defendant Zea, for eBay.  *Id.* ¶¶ 27, 31, 38.  By Plaintiffs' own telling, all individual Defendants "took

instructions, both directly and indirectly, from senior management of eBay." *Id.* ¶ 40.  Count 13 thus alleges a non-actionable, intracorporate conspiracy and should be dismissed.

Even if Count 13 were not barred by the intracorporate conspiracy doctrine, the count should be dismissed as to Ms. Jones.  Massachusetts recognizes two types of civil conspiracy, only one of which is relevant here.  *See Taylor v. Am. Chemistry Council*, 576 F.3d 16, 34 (1st Cir. 2009) (distinguishing between a "true conspiracy" involving market collusion and a Section 876 conspiracy).  Here, Plaintiffs attempt to plead a Section 876 conspiracy, "a form of vicarious liability [that] requires an underlying tort."  *Id.* at 34-35.  A Section 876 conspiracy requires either concerted action or substantial assistance.  *Id.* at 35.  Plaintiffs do not plausibly allege either.

### 1.   Plaintiffs have not pled a "Concerted Action" theory against Ms. Jones.

 "Under the 'common design' theory, a plaintiff must show 'first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and second, proof of some tortious act in furtherance of the agreement.'"  *Thomas v. Harrington*, 909 F.3d 483, 490 (1st Cir. 2018) (quoting *Aetna Cas. Sur. Co. v. P&B Autobody*, 43 F.3d 1546, 1564 (1st Cir. 1994)); *see also Payton v. Abbott Labs*, 512 F. Supp. 1031, 1035 (D. Mass. 1981) ("The second element . . . is that *the defendant's own conduct* must be tortious.") (emphasis added).

The Amended Complaint may well allege facts adequate to plead a conspiracy between certain Defendants.  But Plaintiffs do not adequately plead that *Ms. Jones* agreed to participate in, or even had knowledge of, those Defendants' actions.  *See Kyte v. Phillip Morris, Inc.*, 556 N.E.2d 1025, 1028 (Mass. 1990) (granting summary judgment where defendant knew nothing about illegal conduct).  The few allegations made with any specificity as to Ms. Jones do not

come close to establishing her agreement, express or implied, to inflict harm on Plaintiffs, and therefore cannot sustain a claim.

The First Circuit's decision in *Thomas*, 909 F.3d at 483, is instructive.  There, the plaintiff alleged that he was wrongfully terminated after an "investigation" that was the result of a conspiracy between the town manager and an investigator.  He argued that the town manager's communications to the investigator, including an order to "dig deep," revealed a concerted action conspiracy to find a pretextual justification to terminate the plaintiff's employment.  The court disagreed, reasoning that the communications did not show an agreement to commit a wrongful act. *Id*. at 491-92 ("[S]uch communications show that [town manager] was 'generally aware[]' of the investigation's progress, [but] they do not rise to the level necessary to impose liability under the common design theory.").  So too here.  There is no factual allegation that Ms. Jones agreed to any wrongful act whatsoever.

    2.  *Plaintiffs have not pled a "Substantial Assistance" theory against Ms. Jones.*

To plead a "substantial assistance" conspiracy, the Plaintiffs must show that Ms. Jones knew "that the … conduct [of another person] constitute[d] a breach of duty and g[ave] substantial assistance or encouragement to the other to so conduct himself." *Thomas*, 909 F.3d at 491.  Such assistance must be "a substantial factor in causing the resulting tort.'" *Id.* (emphasis added).  Further, the plaintiff must demonstrate that the defendant had an "'unlawful intent,' consisting of both 'knowledge that the other's conduct is tortious[] and an intent to substantially assist or encourage that conduct.'  Merely showing the defendant's 'general awareness' that their ostensible co-conspirator is engaged in tortious acts is insufficient." *Id.* (cleaned up).

As explained above, there are no well-pled facts supporting the notion that Ms. Jones *knew* of the Security Team Defendants' future tortious conduct—much less than she substantially assisted in it.  The conspiracy claim against Ms. Jones therefore fails.

**B. Plaintiffs Do Not State a Claim Against Ms. Jones for Aiding and Abetting**

A defendant may be liable for aiding and abetting a tort under Massachusetts law where "(1) a third-party committed the relevant tort; (2) the defendant knew the third-party was committing the tort; and (3) the defendant actively participated in or ***substantially assisted*** in the commission of the tort." *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 616 (D. Mass. 2016).

Plaintiffs do not state a claim against Ms. Jones on an aiding and abetting theory for the same reasons discussed in connection with their civil conspiracy claim. The Amended Complaint does not plausibly allege that Ms. Jones knew the Security Team Defendants had committed any tort; that she provided any assistance to the Security Team Defendants—let alone substantial assistance; or that she was present for the tortious acts alleged. Indeed, Plaintiffs concede that Ms. Jones was on sabbatical when the conduct took place. For all these reasons, Plaintiffs' allegations are insufficient to establish secondary liability for substantially assisting in the other Defendants' alleged tortious conduct.

**C. Plaintiffs' Negligent Supervision Claim Fails Because No Well-Pled Facts Indicate that Ms. Jones Knew or Should Have Known of Others' Tortious Conduct**

Plaintiffs do not allege that Ms. Jones negligently hired or retained Defendant Baugh but allege a claim of Negligent Supervision in Count 6 of the Amended Complaint. Am. Compl. ¶¶ 463, 467. Negligent supervision "occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge or reassignment." *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 613 (D. Mass. 2016) (internal quotations omitted). Critically, to hold a supervisor liable under this theory, the harm caused by the employee must have been foreseeable to the supervisor. *Saldivar v. Racine*, 818 F.3d 14, 21 (1st Cir. 2016). Where, as here, the kind of harm alleged is violent, the Massachusetts Supreme

Judicial Court has held that "the violent nature of that harm must be a reasonably foreseeable result of the defendant's negligence in order for that defendant to be held liable for that harm." *Id*.  Massachusetts courts have further "required that the employer have known, or at least should have known, that the employee might harm someone in the same general manner in which the employee is alleged to have harmed the plaintiff."  *Id.*

The Amended Complaint contains no well-pled factual allegations that Ms. Jones "knew or should have known" that any of the Security Team Defendants would harm the Steiners as they are alleged to have done.  To begin, as alleged, the directive to "take the Steiners' down" [*sic*], Am. Compl. ¶ 82, and the harassment campaign that followed took place while Ms. Jones was away on sabbatical, Am Compl. ¶ 83.  Moreover, the conduct attributed to Defendant Baugh was so bizarre as to be unforeseeable to anyone not personally involved in it.  *See, e.g., Ledet v. Mills Van Lines, Inc.*, 150 N.E.3d 782, 787-88 (Mass. App. Ct. 2020) (employer not liable where employee who beat and sexually assaulted a pedestrian had extensive criminal history and employer failed to conduct a background check, because those issues were "too attenuated from the harms suffered").  As discussed in Section I.B.1., *supra*, Plaintiffs do not allege that Baugh had a criminal record before being hired at eBay, or that Ms. Jones was aware of prior criminal conduct on the part of Baugh or the other Security Team Defendants.  Although Plaintiffs allege that Baugh displayed erratic behavior and assert the speculative conclusion that "it was impossible for Defendants Wenig, Wymer and Jones not to be aware," Am. Compl. ¶ 315, the Court need not—indeed must not—accept that conclusory allegation as true. Nothing in the Amended Complaint suggests the Security Team Defendants ever displayed violent or harassing conduct around Ms. Jones.

To the extent that Plaintiffs allege Ms. Jones had any knowledge of the Security Team Defendants' *actual* conduct (as opposed to their propensity for it), Plaintiffs do so only in a threadbare and conclusory fashion.  For example, Plaintiffs allege that, "acting within the scope of his employment and in an effort to carry out eBay's directive and goal to intimidate, threaten, torture, terrorize, stalk and silence the Steiners, Defendant Gilbert…*with Defendant Jones' knowledge*, flew cross country from California to Boston and drove to the Steiner's home in Natick, Massachusetts and scrawled the word "FIDOMASTER" on their fence."  Am. Compl. ¶ 73 (emphasis added).  Such formulaic recitations regarding Ms. Jones's knowledge—without well-pled facts—cannot form the basis for a claim for negligence for failing to uncover and prevent the bizarre misconduct of other eBay employees and contractors.

## CONCLUSION

For these reasons, Ms. Jones respectfully submits that all claims asserted against her should be dismissed.

Dated: April 21, 2023                    Respectfully submitted,


                                         */s/ Andrew J. O'Connor*
                                         Andrew J. O'Connor (BBO# 672960)
                                         Ropes & Gray LLP
                                         800 Boylston Street
                                         Boston, MA 02199-3600
                                         Tel: (617) 235-4650
                                         Fax: (617) 235-9882
                                         andrew.oconnor@ropesgray.com

                                         Brien T. O'Connor (BBO# 546767)
                                         Ropes & Gray LLP
                                         800 Boylston Street
                                         Boston, MA 02199-3600
                                         Tel: (617) 951-7385
                                         Fax: (617) 235-0084
                                         brien.oconnor@ropesgray.com


                                         *Counsel for Wendy Jones*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 21, 2023, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: April 21, 2023

*/s/ Andrew J. O'Connor*
Andrew J. O'Connor