# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| _____ | ) | |
| INA STEINER, DAVID STEINER, and STEINER ASSOCIATES, LLC, | ) ) ) | |
| | ) | Civil Action No. 21-CV-11181-PBS |
| Plaintiffs, | ) ) | |
| v. | ) ) | Leave to File Granted March 20, 2023 |
| | ) | |
| EBAY INC., et al., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT EBAY INC.'S PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT

Jack W. Pirozzolo (BBO #564879)
Kathryn L. Alessi (BBO #651110)
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
Telephone: (617) 223-0300
Facsimile: (617) 223-0301
jpirozzolo@sidley.com
kalessi@sidley.com

Scott T. Nonaka (*pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1285
snonaka@sidley.com

Daniel J. Feith (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, D.C. 20005
Telephone: (202) 736-8511
dfeith@sidley.com

*Counsel for eBay Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................... i

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ....................................................................................................................... 6

    **I.**   **The Complaint Fails To State a Claim for Negligent Hiring (Count V), Negligent Retention (Count VII), or Negligent Supervision (Count VI)**................... 6

    **II.**  **The Complaint Fails To State a Claim for Assault (Count VIII)**............................ 10

    **III.** **The Complaint Fails To State a Claim for False Imprisonment (Count XII)** ........ 12

    **IV.** **The Complaint Fails To State a Claim for Stalking (Count II)** ............................... 14

    **V.**  **The Complaint Fails To State a Claim for Civil Conspiracy (Count XIII)** ........... 17

    **VI.** **The Complaint Fails To State a Claim for Ratification (Count XIV)** ..................... 19

CONCLUSION..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.G. ex rel. Maddox v. v. Elsevier, Inc.*,
  732 F.3d 77 (1st Cir. 2013) ...................................................................................8

*Adams v. Cong. Auto Ins. Agency, Inc.*,
  65 N.E.3d 1229 (Mass. App. Ct. 2016)..................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................6

*Ball v. Wal-Mart, Inc.*,
  102 F. Supp. 2d 44 (D. Mass. 2000) ....................................................................12

*Boice-Perrine Co. v. Kelley*,
  137 N.E. 731 (Mass. 1923) ..................................................................................20

*Brower v. Ackerley*,
  943 P.2d 1141 (Wash. Ct. App. 1997) .................................................................11

*Burleigh v. Alfa Laval, Inc.*,
  313 F. Supp. 3d 343 (D. Mass. 2018) ..................................................................16

*Carden v. Klucznik*,
  775 F. Supp. 2d 247 (D. Mass. 2011)...................................................................13

*Carter's of New Bedford v. Nike, Inc.*,
  No. 13-11513-DPW, 2014 WL 1311750 (D. Mass. Mar. 31, 2014),
  *aff'd*, 790 F.3d 289 (1st Cir. 2015) .......................................................................6

*Commonwealth v. Walters*,
  37 N.E.3d 980 (Mass. 2015) ................................................................................11

*Commonwealth v. Welch*,
  825 N.E.2d 1005 (Mass. 2005) ............................................................................11

*Culver v. Culver*,
  360 S.W.3d 526 (Tex. Ct. App. 2011) .................................................................12

*Doe v. Bradshaw*,
  No. 11-11593-DPW, 2013 WL 5236110 (D. Mass. Sept. 16, 2013)..................7, 8

*Doe v. Medeiros*,
  168 F. Supp. 3d 347 (D. Mass. 2016) ....................................................................7

*Doe v. Stonehill Coll., Inc.*,
  55 F.4th 302 (1st Cir. 2022) ..................................................................................8

*Donovan v. Whalen*,
  No. 05-CV-211, 2005 WL 2979322 (D.N.H. Nov. 4, 2005)................................11

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Garcia ex rel. Marin v Clovis Unified Sch. Dist.*,
  627 F. Supp. 2d 1187 (E.D. Cal. 2009) ...................................................................20

*Kamayou v. Univ. of Mass. Lowell*,
  No. 16-cv-10098, 2018 WL 4609130 (D. Mass. Sept. 7, 2018),
  *report and recommendation adopted*, 2018 WL 4600646 (D. Mass. Sept. 25,
  2018) ...............................................................................................................12, 13

*Kennedy v. Town of Billerica*,
  617 F.3d 520 (1st Cir. 2010) ..............................................................................11

*Kyte v. Philip Morris Inc.*,
  556 N.E.2d 1025 (Mass. 1990) ...........................................................................18

*Ledet v. Mills Van Lines, Inc.*,
  150 N.E.3d 782 (Mass. App. Ct. 2020) .................................................................10

*Lee v. Bos. Pub. Schs.*,
  No. 15-CV-10811, 2016 WL 11372334 (D. Mass. Feb. 1, 2016),
  *adopted in relevant part*, 2016 WL 632198 (D. Mass. Feb. 17, 2016) ................................7, 8

*Levin v. Dalva Bros., Inc.*,
  459 F.3d 68 (1st Cir. 2006) ................................................................................14

*Linkage Corp. v. Trs. of Bos. Univ.*,
  679 N.E.2d 191 (Mass. 1997) ............................................................................19

*Mahoney v. Bank of Am., N.A.*,
  No. 10-12230-DPW, 2011 WL 3105265 (D. Mass. June 10, 2011) .........................................6

*Marczeski v. Law*,
  122 F. Supp. 2d 315 (D. Conn. 2000) ....................................................................11

*McAndrew v. Lockheed Martin Corp.*,
  206 F.3d 1031 (11th Cir. 2000) ...........................................................................17

*McCann v. Wal-Mart Stores, Inc.*,
  210 F.3d 51 (1st Cir. 2000) ................................................................................13

*McConney v. City of Worcester*,
  No. 03-CV-11920-JLA, 2006 WL 8458061 (D. Mass. Aug. 15, 2006) ................................10

*McCumber v. Henderson*,
  No. 90-G-1570, 1991 WL 116504 (Ohio Ct. App. June 21, 1991) ........................................12

*Murray v. Uber Techs., Inc.*,
  486 F. Supp. 3d 468 (D. Mass. 2020) .....................................................................8

*O'Neil v. DaimlerChrysler Corp.*,
  538 F. Supp. 2d 304 (D. Mass. 2008) ...............................................................13, 14

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Owen-Williams v. City of Gaithersburg*,
   No. PJM 10-185, 2011 WL 53082 (D. Md. Jan. 7, 2011) ........................................................11

*People v. McKinney*,
   95 N.Y.S.3d 673 (N.Y. App. Div. 2019) ...............................................................................12

*Petrell v. Shaw*,
   902 N.E.2d 401 (Mass. 2009) ................................................................................................20

*Platten v. HG Bermuda Exempted Ltd.*,
   437 F.3d 118 (1st Cir. 2006) ..................................................................................................17

*Saldivar v. Pridgen*,
   91 F. Supp. 3d 134 (D. Mass. 2015) ........................................................................................9

*Saldivar v. Racine*,
   818 F.3d 14 (1st Cir. 2016) ...............................................................................................7, 9

*Taylor v. Am. Chemistry Council*,
   576 F.3d 16 (1st Cir. 2009) ....................................................................................................18

*Terek v. Finkbiner*,
   No. 3:14-CV-1391, 2015 WL 5542535 (N.D. Ohio Sept. 18, 2015) .....................................20

*Thomas v. Harrington*,
   909 F.3d 483 (1st Cir. 2018) ............................................................................................18, 19

*Thunder Studios, Inc. v. Kazal*,
   13 F.4th 736 (9th Cir. 2021) ...................................................................................................17

*Vicarelli v. Bus. Int'l, Inc.*,
   973 F. Supp. 241 (D. Mass. 1997) .............................................................................6, 8, 9, 10

*Watterson v. Page*,
   987 F.2d 1 (1st Cir. 1993) .........................................................................................................6

*Wentworth Precious Metals, LLC v. City of Everett*,
   No. 11-10909-DPW, 2013 WL 441094 (D. Mass. Feb. 4, 2013) ...........................................17

*Zell v. Ricci*,
   957 F.3d 1 (1st Cir. 2020) .........................................................................................................7

*Ziglar v. Abbasi*,
   582 U.S. 120 (2017) ................................................................................................................17

**Statutes**

Cal. Civ. Code § 1708.7 ................................................................................................................16

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Other Authorities**

Restatement of Employment Law § 4.04 (2015) ............................................................................6

Restatement (Second) of Conflict of Laws § 6 (1971) ...............................................................15

Restatement (Second) of Conflict of Laws § 145 (1971) .....................................................15, 16

Restatement (Second) of Conflict of Laws § 146 (1971) ...........................................................16

Restatement (Second) of Torts § 31 (1965) ...............................................................................11

Restatement (Second) of Torts § 36 (1965) ...............................................................................12

Restatement (Second) of Torts § 40 (1965) ...............................................................................12

U.S. Dep't of Justice, Press Release, *Six Former eBay Employees Charged with Aggressive Cyberstalking Campaign Targeting Natick Couple* (June 15, 2020), https://www.justice.gov/usao-ma/pr/six-former-ebay-employees-charged-aggressive-cyberstalking-campaign-targeting-natick ...............................................................20

## INTRODUCTION

By any measure, the conduct of the seven criminally-convicted individuals that forms the basis for this case was appalling, and eBay is committed to compensating Plaintiffs Ina and David Steiner ("Steiners," and with Steiner Associates, LLC, "Plaintiffs") appropriately and in accordance with the law. In seeking dismissal of certain of Plaintiffs' claims, eBay wants to make clear that it does not intend to minimize the conduct alleged in the amended complaint ("Complaint"). But reaching a just and efficient resolution of this matter requires that the case proceed on those legal theories that are properly pleaded rather than those that are not. It is for this reason that eBay brings this partial motion to dismiss.

This facts of this case are now well-known. As alleged in the Complaint, from June to August 2019, seven members of eBay's security team engaged in stalking, harassment, and threats to pressure the Steiners to stop writing negatively about eBay on their trade publication, EcommerceBytes. Those same individuals then attempted to conceal their misdeeds in an effort to thwart investigations by law enforcement and eBay. But within days of learning of possible misconduct, eBay took action against the individuals, and promptly reported information it gathered in its investigation to federal prosecutors. Roughly nine months later, federal prosecutors filed criminal charges against the former security team members, each of whom has since pleaded guilty to charges arising from the misconduct.

By their Complaint, the Steiners seek relief against eBay, the former security team members and several executives allegedly responsible for these actions, and a separate company and its CEO who allegedly funded the scheme. The Complaint seeks to hold eBay liable under fourteen different legal claims. As eBay sets forth below, many of the claims are not legally viable. Specifically:

- the negligent hiring, supervision, and retention claims (Counts V, VI, and VII) fail because the Complaint does not allege facts establishing that it was foreseeable that any of the individual defendants would commit the alleged acts;

- the assault claim (Count VIII) fails because it does not allege that any defendant was ever in a position to make immediate physical contact with Plaintiffs;

- the false imprisonment claim (Count XII) fails because it does not adequately allege that Plaintiffs were confined or that any defendants intended to confine them;

- the California-law stalking claim (Count II) fails because Massachusetts law applies here and does not provide an independent cause of action for stalking;

- the civil conspiracy claim (Count XIII) fails because as a matter of law eBay cannot conspire with its own agents and because Plaintiffs' allegations establish neither concert of action nor substantial assistance between eBay and the non-agent defendants; and

- the ratification claim (Count XIV) fails because Plaintiffs' allegations do not support a reasonable inference that eBay ratified the other defendants' conduct, particularly given that the Complaint acknowledges that within weeks of discovering the conduct, eBay had terminated six involved employees.

## BACKGROUND[1]

Ina and David Steiner own and operate Steiner Associates, LLC, through which they publish EcommerceBytes, a trade publication covering ecommerce. Dkt. 176 ("Compl.") ¶¶ 23–24, 42. EcommerceBytes publishes both email newsletters and a website covering news related to various ecommerce platforms, including Defendant eBay Inc. *Id.* ¶ 42. The Steiners reside in Natick, Massachusetts, and Steiner Associates has its principal place of business there. *Id.* ¶¶ 23–24.

According to the Complaint, beginning in January 2019, Defendant Devin Wenig, eBay's then-CEO, Defendant Steven Wymer, eBay's then-Senior Vice President and Chief Communications Officer, and Defendant Wendy Jones, eBay's then-Senior Vice President of Global Operations, became increasingly concerned about negative news coverage of eBay and expressed

---

[1] eBay accepts Plaintiffs' factual allegations as true solely for purposes of this motion. *See infra* at 5−6.

frustration specifically about EcommerceBytes' reporting. *Id.* ¶¶ 28–30, 50, 52. To keep the executive leadership up to date, *id.* ¶ 52, Defendant Jim Baugh, eBay's then-Senior Director of Safety & Security, directed two subordinates on the Global Security and Resiliency (GSR) team, Defendants Stephanie Stockwell and Veronica Zea, to monitor EcommerceBytes' reporting and forward posts to Baugh, *id.* ¶¶ 32, 35, 38, 52.

Over the course of the first half of 2019, EcommerceBytes continued to publish articles and user comments that Wenig, Wymer, Jones, Baugh, and others at eBay viewed as negative. *See id.* ¶¶ 52, 54–57, 61–66, 70–71, 80, 82, 85, 110. In response, according to the Complaint, these defendants, together with Defendants David Harville, Brian Gilbert, Stephanie Popp, and Philip Cooke, all of whom worked under Baugh, *see id.* ¶¶ 33–34, 36–37, allegedly began to formulate a plan to silence Plaintiffs' reporting,[2] *see id.* ¶¶ 52, 55–57, 60–63, 66, 80, 82, 85–86, 110, 228–232. The alleged plan was to "intimidate, threaten, torture, terrorize, stalk and silence" the Steiners in order to "coerce them into ceasing their reporting on eBay." *Id.* ¶ 494.

According to the Complaint, Baugh and Gilbert first put this plan into action in June 2019. That month, at Baugh's direction, Gilbert flew to Natick and scrawled the word "FIDOMASTER" on the Steiners' fence. *Id.* ¶ 73. The graffiti was a reference to the username of a commenter on EcommerceBytes who often posted criticism of eBay and who Baugh and Gilbert believed was connected to the Steiners. *See id.* ¶¶ 56–57, 63.

The next phase of the alleged plan took place over three weeks in August 2019. Beginning on or about August 6, the GSR Defendants subjected the Steiners to "several days of around the clock threatening and vulgar emails, packages and online messages." *Id.* ¶¶ 6, 101, 106–136. The

---

[2] This memorandum refers to Baugh, Stockwell, Zea, Harville, Gilbert, Popp, and Cooke collectively as the "GSR Defendants"; to the GSR Defendants, Wenig, Wymer, and Jones collectively as the "Individual Defendants"; and to all the defendants collectively as "Defendants."

following week, on or about August 15, Baugh, Harville, and Zea traveled to Natick, where, over the next five days, they proceeded to surveil the Steiners by sitting in a rented van outside the Steiners' house, circling the Steiners' block, and following Mr. Steiner around town. *Id.* ¶¶ 138–143, 147–157, 170–176, 486. Meanwhile, the GSR Defendants continued to subject the Steiners to threatening and vulgar deliveries, *id.* ¶¶ 145–146, 164–167, 169, 191, online postings, and messages, *id.* ¶¶ 177–178, 182, 187. The messages continued through August 22. *Id.* ¶¶ 194–198, 261. The expenses associated with these activities were allegedly paid for by Defendant Progressive F.O.R.C.E. Concepts, LLC (PFC), a company run by Defendant Steve Krystek that contracted personnel to eBay. *See id.* ¶¶ 27, 31, 123, 167, 177–178, 181–182, 191, 248.

Understandably, the Steiners reported the GSR Defendants' conduct to the Natick police, which began an investigation on or about August 16. *See id.* ¶¶ 164–166, 189. eBay also began its own investigation immediately after being contacted by the Natick police. *Id.* ¶ 271. Between August 20 and August 26, the GSR Defendants took numerous steps to obstruct both the Natick police's investigation and eBay's own internal investigation, including lying to both law enforcement and eBay investigators and deleting records from their phones. *Id.* ¶¶ 233–259, 264–283. But both investigations proceeded quickly. By August 22, the FBI and Massachusetts U.S. Attorney's office had opened an investigation of their own. *Id.* ¶ 260. And on or about August 30, 2019, eBay placed Baugh, Popp, and Harville on administrative leave and, in September 2019, terminated their employment, together with that of Wymer, Gilbert, and Stockwell. *Id.* ¶¶ 281, 284, 289. PFC terminated Zea's employment. *Id.* ¶ 284. Wenig, eBay's CEO, also departed around this time. *Id.* ¶ 287.

The Massachusetts U.S. Attorney's Office subsequently brought criminal charges against all the GSR Defendants. *See id.* ¶¶ 363–365. Gilbert, Popp, Stockwell, and Zea were charged in May 2020 with conspiracy to commit cyberstalking and conspiracy to tamper with a witness. *See*

*id.* ¶ 363. The following month, Baugh and Harville were charged with conspiracy to commit stalking, stalking, witness tampering, and destruction, alteration, or falsification of records in a federal investigation. *See id.* ¶ 364. In July 2020, Cooke was charged with conspiracy to commit cyberstalking and conspiracy to tamper with a witness. *Id.* ¶ 365. Popp, Stockwell, and Zea subsequently pleaded guilty to conspiracy to commit cyberstalking and to obstruct justice. *Id.* ¶ 366. Gilbert and Cooke pleaded guilty to conspiracy to commit cyberstalking and to commit witness tampering. *Id.* And Harville and Baugh pleaded guilty to conspiracy to commit both stalking and cyberstalking, and to substantive counts of stalking, with Baugh also pleading guilty to witness tampering and evidence destruction. *See id.* ¶¶ 32, 36, 368. After the charges became public, eBay's new CEO emailed the Steiners to apologize for what they went through. *See id.* ¶ 290.

Plaintiffs initiated this action on July 21, 2021, Dkt. 1, and eBay and other Defendants filed motions to dismiss or partially dismiss the complaint, Dkts. 79, 81, 83, 88, 89, 93, 98, 101, 102, and 106. Over the course of briefing those motions, Plaintiffs attempted to supplement their allegations with over 600 pages of exhibits. Dkts. 117, 146. In light of this "massive accumulation of paper," the Court encouraged the Plaintiffs to file an amended complaint, Dkt. 167, which they did on March 1, 2023. Dkt. 176. That Complaint abandons a variety of claims asserted in Plaintiffs' initial complaint, including a RICO claim. Plaintiffs now assert fourteen claims against eBay: (1) intentional infliction of emotional distress; (2) stalking; (3) negligent infliction of emotional distress; (4) negligence; (5) negligent hiring; (6) negligent supervision; (7) negligent retention; (8) assault; (9) violation of the Massachusetts Civil Rights Act; (10) defamation; (11) trespassing; (12) false imprisonment; (13) civil conspiracy; and (14) ratification.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The plausibility standard requires that a plaintiff's factual allegations establish "more than a sheer possibility that a defendant has acted unlawfully," and allegations that are "merely consistent with a defendant's liability" do not clear this bar. *Id.* (cleaned up). To determine whether a complaint states a plausible claim to relief, the court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Mahoney v. Bank of Am., N.A.*, 2011 WL 3105265, at *1 (D. Mass. June 10, 2011); *see Iqbal*, 556 U.S. at 678. Dismissal is warranted where the complaint fails to set forth well-pleaded factual allegations "respecting each material element necessary to sustain recovery under some actionable legal theory." *Carter's of New Bedford v. Nike, Inc.*, 2014 WL 1311750, at *1–2 (D. Mass. Mar. 31, 2014) (cleaned up), *aff'd*, 790 F.3d 289 (1st Cir. 2015).

## ARGUMENT

### I.     The Complaint Fails To State a Claim for Negligent Hiring (Count V), Negligent Retention (Count VII), or Negligent Supervision (Count VI)

The Complaint alleges that eBay is liable for negligently hiring Wymer and Baugh, negligently retaining Baugh, and negligently supervising all Individual Defendants except Zea. Compl. ¶¶ 445−482. To adequately plead each of these torts, a plaintiff must allege facts showing that the plaintiff's injury was the proximate result of "the risks that made the employer's conduct negligent in the first instance." Restatement of Employment Law § 4.04 reporter's note on cmt. e (2015). In other words, a plaintiff must establish foreseeability by "alleg[ing] that the employer knew, or should have known, that the offending employee had a proclivity to commit the complained-of acts." *Vicarelli v. Bus. Int'l, Inc.*, 973 F. Supp. 241, 246 (D. Mass. 1997). A proclivity to commit bad acts, in general, is insufficient. *See Doe v. Medeiros*, 168 F. Supp. 3d 347, 354 (D. Mass. 2016)

(explaining that "[t]he fact that an employee has a criminal record, by itself, is not automatically sufficient to establish an employer's knowledge" because "[t]here must be a connection between the employee's criminal background and the nature of the alleged tortious conduct"). Instead, it must be foreseeable that "the employee might harm someone in the same general manner in which the employee is alleged to have harmed the plaintiff." *Saldivar v. Racine*, 818 F.3d 14, 21 (1st Cir. 2016). Here, Plaintiffs' negligent hiring, retention, and supervision claims all fail for the same reason: Plaintiffs allege no facts showing that eBay knew, or should have known, that the relevant Individual Defendants posed risks of engaging in a scheme of stalking, harassment, and threats.

***Negligent Hiring.*** As noted above, Plaintiffs allege that eBay negligently hired Wymer and Baugh. But the Complaint alleges no facts about Wymer's hiring, let alone facts showing that his hiring would foreseeably lead to his alleged role in the Natick events. Plaintiffs allege only that eBay had "actual and constructive knowledge" that Wymer was "unfit" for his role, Compl. ¶¶ 312−313, and that, more than a year after the Natick events, eBay told the Government that Wymer, in hindsight, was too "green" and "inexperienced" to stand up to Wenig, *id.* ¶ 449. The former allegation, however, is only a "legal label[] and conclusion[]" that the Court should "ignore," *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020), while the latter allegation does not show that eBay was "on notice of poor character, specifically as relevant to [the harms alleged]" at the time it hired Wymer, *Doe v. Bradshaw*, 2013 WL 5236110, at *12 (D. Mass. Sept. 16, 2013). Because Plaintiffs plead no facts about what eBay knew or should have known when it hired Wymer, the negligent hiring claim fails at the threshold. *See Lee v. Bos. Pub. Schs.*, 2016 WL 11372334, at *5 (D. Mass. Feb. 1, 2016) (recommending dismissal where plaintiffs "fail[ed] to assert any facts" about hiring), *adopted in relevant part*, 2016 WL 632198, at *2 (D. Mass. Feb. 17, 2016).

As to Baugh, the Complaint alleges that eBay knew or should have known that he was unfit in light of his "off-kilter and unconventional" methods, "government security" background, and "loyalty and secrecy." Compl. ¶¶ 305–307, 448. Yet none of that "put [eBay] on notice" that Baugh posed a risk of engaging in stalking, harassment, or threats. *Bradshaw*, 2013 WL 5236110, at *12. The Complaint does not allege that Baugh's reputation for using unconventional methods involved a "proclivity to commit the complained-of acts." *Vicarelli*, 973 F. Supp. at 246. Nor did the covert expertise and loyalty that Baugh developed as a "U.S. government agent" make it foreseeable that Baugh posed any risk of lawlessness. Compl. ¶ 298. Finally, the Court need not credit the "naked conclusion[]," *A.G. ex rel. Maddox v. v. Elsevier, Inc.*, 732 F.3d 77, 81 (1st Cir. 2013), that eBay hired Baugh "for the specific purpose of using his past experiences" to "engage in the type of conduct he inflicted upon the Steiners," Compl. ¶ 446; *see Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 316 (1st Cir. 2022) ("In [the negligent-hiring] context, plausible means something more than merely possible …." (cleaned up)). In sum, the Complaint does not allege that the particular harm that materialized was foreseeable when eBay hired Baugh, so the claim should be dismissed. *See Murray v. Uber Techs., Inc.*, 486 F. Supp. 3d 468, 477 (D. Mass. 2020) (dismissing negligent-hiring claim on foreseeability grounds).

***Negligent Retention.*** Plaintiffs' claim that eBay negligently retained Baugh similarly fails because the Complaint does not adequately allege that eBay knew or should have known that retaining Baugh risked the "complained-of acts"—*i.e.*, the stalking and harassment of the Steiners. *Vicarelli*, 973 F. Supp. at 246. Plaintiffs assert that Baugh was an "abusive" supervisor who "belittle[d]," "chastise[d]," and "mistreat[ed]" his subordinates, damaged furniture, and used corporate funds to pay for strip clubs and lavish dinners. Compl. ¶¶ 318, 321, 323, 328–329, 333. But this alleged "toxic work environment" under Baugh, *id.* ¶ 463, while reprehensible, is nothing like

the particular acts that materialized and injured Plaintiffs, so allegations about Baugh's management style do not suffice to plead negligent retention here. Indeed, courts have consistently rejected negligent retention claims premised on an employer's knowledge of an employee's proclivity for misconduct different from that which injured the plaintiff. *See, e.g.*, *Adams v. Cong. Auto Ins. Agency, Inc.*, 65 N.E.3d 1229, 1236 n.6 (Mass. App. Ct. 2016) (employer's knowledge of employee's check-fraud conviction "would not establish negligence" if employee later committed rape); *Saldivar v. Pridgen*, 91 F. Supp. 3d 134, 137–39 (D. Mass. 2015) (disciplinary violations "entirely unrelated to any form of sexual misconduct" did not make it foreseeable that officer would commit sexual assault), *aff'd sub nom. Saldivar v. Racine*, 818 F.3d 14 (1st Cir. 2016). Because the Complaint does not allege that eBay knew or should have known that retaining Baugh created a specific risk of harassment, stalking, and threats, the negligent-retention claim should be dismissed.

**Negligent Supervision.** The Complaint likewise does not state a negligent-supervision claim against eBay because it does not allege that eBay knew or had reason to know that any of its employees had a "proclivity" either to direct or carry out stalking, harassment, and threats. *Vicarelli*, 973 F. Supp. at 246. As to Wenig, Wymer, and Jones, the Complaint asserts that eBay knew or should have known that they "became obsessed" with Plaintiffs and had Plaintiffs' reporting "monitor[ed]," Compl. ¶ 332, but it alleges no facts to support this conclusory assertion about eBay's knowledge. Furthermore, even crediting this assertion would not avail Plaintiffs, as knowledge of Wenig, Wymer, and Jones' alleged "obsess[ion]" would not make it foreseeable that they would direct a campaign stalking, harassment, or threats, as Plaintiffs allege. *Id.*

The insufficiency of Plaintiffs' allegations is particularly stark as to eBay's Board. Plaintiffs allege that "eBay and its Board of Directors knew of the acts and omissions by the Defendants, as

well as the culture and hiring practices, and failed to take any actions to stop it." *Id.* ¶ 338. Apart from this purely conclusory allegation, Plaintiffs offer *zero* allegations regarding the Board's knowledge of the facts underlying the negligent supervision claim (or negligent hiring and retention claims, for that matter). Thus, at a minimum, these claims as related to the Board's alleged role should be dismissed.

As to Baugh and Harville, the Complaint alleges that eBay knew that "Baugh was unsuitable as a manager" and that Harville was "rude, corrupt, and misogynistic." *Id.* ¶¶ 460, 477; *see id.* ¶¶ 316–323. But, as explained above, an alleged propensity to insult, chastise, and embarrass subordinates did not make it foreseeable that Baugh and Harville would stalk, harass, and threaten to kill Plaintiffs. In other words, such traits, even if they had been known to eBay, are too "attenuated from [Plaintiffs'] injuries" to show negligent supervision. *Ledet v. Mills Van Lines, Inc.*, 150 N.E.3d 782, 787 (Mass. App. Ct. 2020).

Finally, as to Gilbert, Cooke, Popp, and Stockwell, the Complaint does not allege that eBay knew of any "proclivity to commit the complained-of acts." *Vicarelli*, 973 F. Supp. at 246. This alone warrants dismissal of the negligent supervision claim insofar as it relates to them.

## II.     The Complaint Fails To State a Claim for Assault (Count VIII)

The Complaint also fails to state a claim for assault. "Assault is the intentional creation of an apprehension of immediate physical harm by means of an overt gesture." *McConney v. City of Worcester*, 2006 WL 8458061, at *8 (D. Mass. Aug. 15, 2006) (citing *Cook v. WHDH-TV, Inc.*, 1999 WL 1327222, at *6 (Mass. Super. Ct. Mar. 4, 1999)). "Under Massachusetts tort law, although a defendant need not 'be able instantly to carry out the physical violence threatened by his conduct'" to commit assault, the defendant must be "so close to striking distance that he can reach [plaintiff] almost at once." *Kennedy v. Town of Billerica*, 617 F.3d 520, 539 (1st Cir. 2010) (quoting *Ginsberg v. Blacker*, 852 N.E.2d 679, 684 n.8 (Mass. App. Ct. 2006) and Restatement (Second) of

Torts § 29 cmt. b (1965))). "This is true even though the mental discomfort caused by a threat of serious future harm … may be far more emotionally disturbing than many of the attempts to inflict minor bodily contacts which are actionable as assaults."[3] Restatement (Second) of Torts § 31 cmt. a (1965).

Plaintiffs' allegations do not establish the immediacy necessary for assault. The "online threats" and "menacing packages," Compl. ¶ 489, were undoubtedly emotionally disturbing, but they do not show that any of the Defendants was ever "close to striking distance" or capable of "reach[ing] [the Steiners] almost at once," *Kennedy*, 617 F.3d at 539, and thus are not actionable as common law assault. *See Marczeski v. Law*, 122 F. Supp. 2d 315, 325 (D. Conn. 2000) (explaining that the requirement of physical presence means that "[a] threat by telephone or on the Internet is not a civil assault").[4] The allegation that the GSR Defendants "followed David Steiner in his car" and "circled the block" outside the Steiners' home, Compl. ¶ 486, although also disturbing, likewise lacks the required immediacy. Indeed, the Complaint expressly alleges that the GSR Defendants kept their distance in their vehicle, *see id.* ¶ 155 (alleging Baugh and Zea "parked at the end of the street"), distinguishing this case from those in which plaintiffs established civil assault

---

[3] Other torts and crimes, such as intentional infliction of emotional distress and Massachusetts's criminal harassment and criminal stalking statutes, reach disturbing or threatening conduct that does not meet the elements of assault. For example, the Massachusetts Supreme Judicial Court has explained that the state's criminal harassment statute "extend[s] protections to victims of harassment, providing a remedy to victims before 'nonthreatening' harassment escalates into life-threatening assault." *Commonwealth v. Welch*, 825 N.E.2d 1005, 1021 (Mass. 2005); *see also Commonwealth v. Walters*, 37 N.E.3d 980, 993 (Mass. 2015) ("[F]or a threat to meet the requirements of the stalking statute, it need not necessarily cause the victim to fear that physical harm will come to him or her *immediately*." (cleaned up)).

[4] *See also Donovan v. Whalen*, 2005 WL 2979322, at *4 (D.N.H. Nov. 4, 2005) ("the claim is based upon telephone calls from Texas to New Hampshire, which makes it impossible for Donovan to have been placed in fear of imminent physical contact, a necessary element of common law assault."); *Brower v. Ackerley*, 943 P.2d 1141, 1145 (Wash. Ct. App. 1997) (similar); *Owen-Williams v. City of Gaithersburg*, 2011 WL 53082, at *5 (D. Md. Jan. 7, 2011) (similar).

against defendants who used vehicles in a dangerous manner threatening immediate physical harm. *See Culver v. Culver*, 360 S.W.3d 526, 533 (Tex. Ct. App. 2011) (defendant committed assault by driving dangerously and repeatedly forcing another driver off the road); *People v. McKinney*, 95 N.Y.S.3d 673, 675 (N.Y. App. Div. 2019) (defendant committed assault when she "drove her car directly at" two people); *McCumber v. Henderson*, 1991 WL 116504, at *1 (Ohio Ct. App. June 21, 1991) (defendant committed assault when he chased the plaintiff's car at night with defendant's lights off, after rear-ending and side-swiping plaintiff's car). Because Defendants' alleged conduct does not fit the legal definition of assault, the assault claim should be dismissed.

## III.   The Complaint Fails To State a Claim for False Imprisonment (Count XII)

The Complaint also fails to state a claim for false imprisonment. The elements of false imprisonment are (1) intentional and (2) unjustified (3) confinement of a person, (4) directly or indirectly, (5) of which the person confined is conscious or is harmed by such confinement. *See Ball v. Wal-Mart, Inc.*, 102 F. Supp. 2d 44, 55 (D. Mass. 2000) (citing Restatement (Second) of Torts § 35). Here, Plaintiffs' allegations are insufficient on two independent grounds: they fail to adequately allege confinement or intent.

*First*, to adequately allege false imprisonment, the "confinement within the boundaries fixed by the [defendant] must be complete." Restatement (Second) of Torts § 36; *see also id.* § 40 cmt. c (explaining that to allege confinement by threats of physical force, the alleged victim "must submit to the threat by remaining within the limits fixed by the actor in order to avoid or avert force threatened"). As a matter of law, Plaintiffs cannot claim false imprisonment in their home if they were able to, and did, leave it. *See Kamayou v. Univ. of Mass. Lowell*, 2018 WL 4609130, at *8 (D. Mass. Sept. 7, 2018) (concluding at summary judgment that the plaintiff was not confined because he actually left the office), *report and recommendation adopted*, 2018 WL 4600646 (D. Mass. Sept. 25, 2018); *O'Neil v. DaimlerChrysler Corp.*, 538 F. Supp. 2d 304, 321–22 (D. Mass.

2008) (finding that plaintiff could not establish confinement where "there is no evidence that [plaintiff] … attempted to leave and was unable to do so"); *see also Carden v. Klucznik*, 775 F. Supp. 2d 247, 249 (D. Mass. 2011) (explaining that, on a motion to dismiss, "a court will not accept as true any facts that are conclusively contradicted by plaintiffs' concessions or otherwise" (cleaned up)). Here, the Complaint explicitly alleges that Mr. Steiner in fact left the house during the period when the Steiners were receiving threatening messages and packages. *See* Compl. ¶¶ 155, 172, 536. This forecloses any claim that the Steiners were falsely imprisoned in their home.

Plaintiffs evidently recognize this problem, because the Complaint adds the allegation that Defendants "confin[ed] [David Steiner] to his car" by "tail[ing] him" when he left "the home to gather groceries." Compl. ¶ 536; *compare id. with* Dkt. 1 ¶¶ 317−327 (alleging only confinement in the house). Even with this allegation, however, the false imprisonment claim fails. While the GSR Defendants' misconduct surely scared Plaintiffs, the fact that Mr. Steiner was free to leave the house for his car, leave the car for his house, and possibly even "gather groceries" shows that he was not "actually confined" and thus was not falsely imprisoned. *O'Neil*, 538 F. Supp. 2d at 322.

*Second*, the Complaint also fails to adequately allege that Defendants intended to confine the Steiners. "[T]he gist of the common law tort [of false imprisonment] is conduct by the [defendant] which is intended to, and does in fact, 'confine' another 'within boundaries fixed by the [defendant]' …." *McCann v. Wal-Mart Stores, Inc.*, 210 F.3d 51, 53 (1st Cir. 2000) (quoting Restatement (Second) of Torts § 35). Here, although the Complaint alleges that the Steiners were "too fearful to leave their property," Compl. ¶ 534, and that when Mr. Steiner did leave the property, the GSR Defendants "tailed him, confining him to his car," *id.* ¶ 536, it alleges no facts indicating that Defendants, either expressly or implicitly, "fixed" any "boundaries." The GSR Defendants'

conduct, awful as it was, did not threaten "to apply physical force to [Plaintiffs] immediately upon [Plaintiffs'] going or attempting to go beyond" their home or car. Restatement (Second) of Torts § 40. As in *O'Neil*, Defendants "did not place [Plaintiffs] anywhere, did not touch [Plaintiffs] and did not tell [Plaintiffs] that [they] could not leave." 538 F. Supp. 2d at 322 (concluding that, without such evidence, plaintiff's feeling that "he could not leave his office" due to the defendants' actions did not establish that defendants intended to confine him there). Given the absence of facts indicating that Defendants intended to confine them to any fixed boundaries, Plaintiffs' false imprisonment claim must be dismissed.

## IV.    The Complaint Fails To State a Claim for Stalking (Count II)

Plaintiffs bring a stalking claim under California Code of Civil Procedure Section 1708.7. This claim must be dismissed, however, because Massachusetts law applies here, and Massachusetts does not recognize a standalone cause of action for stalking.

Plaintiffs' stalking claim presents a conflict of laws because Section 1708.7 has "no parallel in Massachusetts law," *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 74 (1st Cir. 2006), which protects its residents from stalking through criminal laws and traditional tort claims. To resolve this conflict, the Court must apply the choice-of-law principles of the forum state, Massachusetts. *See id.* at 73.

"Massachusetts applies a functional approach to choice of law," that "is explicitly guided by the Restatement (Second) of Conflict of Laws (1971)." *Id.* at 74 (cleaned up). The Restatement factors relevant to the general choice of law analysis include:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

14

Restatement (Second) of Conflict of Laws § 6 (1971). In applying these principles to tort actions, the Restatement specifies four factors to take into account: (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) the "residence," "place of incorporation and place of business of the parties," and (4) "the place where the relationship, if any, between the parties is centered." *Id.* § 145.

Here, all four factors point to Massachusetts law. First, as alleged, Plaintiffs suffered injury in Massachusetts from the stalking. *See id.* cmt. e; Compl. ¶ 21. Second, notwithstanding allegations of some wrongful conduct in California, Plaintiffs concede that "the most disturbing act of surveilling and stalking the Steiners in their home and while driving occurred in Massachusetts." Dkt. 117 at 34. Indeed, Plaintiffs previously acknowledged that the alleged conduct underlying their stalking claim "occurred primarily and substantially in the Commonwealth of Massachusetts." Dkt. 1 ¶¶ 346−347. Third, both Plaintiffs' residence and place of business are in Massachusetts, whereas eBay does business from California but is incorporated in Delaware. And fourth, to the extent Plaintiffs allege the parties had any preexisting relationship, it was centered on Plaintiffs' reporting on eBay's business, which took place in Massachusetts. *See* Compl. ¶ 48.

Furthermore, even if all four factors did not favor Massachusetts law, the weight of the factors certainly would. Under the Restatement, where the defendant's conduct and the resulting injury "occur in different states … the local law of the state of injury will usually be applied to determine most issues involving the tort," especially "when the injured person has a settled relationship to that state … because he is domiciled or resides there." Restatement (Second) of Conflict of Laws § 146 cmt. e (1971). This is particularly true where the nature of the interest affected is a personal one, as is the case with a claim for stalking. Indeed, the Restatement expressly recognizes that "[w]hen the interest affected is a personal one," as here, the "single most important contact

for determining the state of the applicable law" is the "plaintiff's domicile," which in this case unquestionably is Massachusetts. *Id.* § 145 cmt. e.

The Restatement's general choice of law factors also favor Massachusetts law here. First, applying Massachusetts law serves the needs of the interstate system because it would be highly "anomalous for [Massachusetts] to insist on providing greater benefits to its citizens under another state's law than it provides to its citizens under its own law." *Burleigh v. Alfa Laval, Inc.*, 313 F. Supp. 3d 343, 357 (D. Mass. 2018). Second, Massachusetts' substantial interest in protecting its own residents according to its own laws overrides any interest California may have in deterring wrongful conduct merely "directed" from within its borders. Compl. ¶ 424; *see Burleigh*, 313 F. Supp. 3d at 354 (interests of state where injury took place and plaintiff resided were weightier than interests of state where defendants' conduct took place). California's interest is particularly weak here because Section 1708.7 is expressly "for the protection of the health, safety, and welfare of the people of the State of California," Cal. Civ. Code § 1708.7(g), not out-of-state plaintiffs.

Third, applying Massachusetts law also promotes predictability and simplifies judicial determinations. In general, applying the law of the state where plaintiff's injury occurred yields predictable results because "the state where the injury occurred will usually be readily ascertainable." *Burleigh*, 313 F. Supp. 3d at 358 (quoting Restatement (Second) of Conflict of Laws § 146 cmt. c). In this case, applying Massachusetts law is also easier for the court because Massachusetts law applies to all Plaintiffs' other tort claims. Massachusetts law also avoids the complications of dissecting Plaintiffs' allegations to determine which (if any) conduct falls within the reach of California's stalking statute. *See Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 744–45 (9th Cir. 2021) (noting Section 1708.7 does not reach conduct outside California).

For all these reasons, Massachusetts law applies, and Plaintiffs' claim under California's stalking statute should be dismissed.

## V.      The Complaint Fails To State a Claim for Civil Conspiracy (Count XIII)

The Complaint does not state a claim for civil conspiracy. Fundamentally, Plaintiffs allege a conspiracy among the Individual Defendants, all of whom allegedly were acting as eBay's agents. *See* Compl. ¶¶ 550–551. This claim fails because, under the intra-corporate conspiracy doctrine, "all the[se] defendants comprise a single corporate enterprise" and a corporation "cannot conspire with itself." *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 131 (1st Cir. 2006); *see also Wentworth Precious Metals, LLC v. City of Everett*, 2013 WL 441094, at *14 (D. Mass. Feb. 4, 2013) (applying doctrine to alleged conspiracy among three city employees). This is because "under basic agency principles, the acts of a corporation's agents are considered to be those of a single legal actor," *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000), and accordingly, when those agents act jointly, "there has not been an agreement between two or more separate people," *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017). Thus, as a matter of law as pleaded, there could be no conspiracy between or among eBay and the Individual Defendants.

Plaintiffs also do not adequately allege a conspiracy with either PFC or Krystek. A defendant can be liable for civil conspiracy either by agreeing to the commission of a tort through "concert of action," or by providing substantial assistance in the commission of a tort. *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 35 (1st Cir. 2009). Concert of action requires "a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act," as well as "proof of some tortious act in furtherance of the agreement." *Thomas v. Harrington*, 909 F.3d 483, 490 (1st Cir. 2018) (cleaned up). Substantial assistance means that a defendant "knows that the … conduct [of another person] constitutes a breach of duty and gives substantial assistance

or encouragement to the other so to conduct himself." *Id.* at 491 (quoting *Kurker v. Hill*, 689 N.E.2d 833, 837 (Mass. App. Ct. 1998)).

Under either theory, Plaintiffs' allegations of a conspiracy with PFC and/or Krystek fail. Those allegations consist almost exclusively of the refrain that various aspects of the Individual Defendants' scheme were "paid for by Defendant PFC with the approval of Defendant Krystek." Compl. ¶¶ 123, 167, 177–178, 181–182, 191, 248; *see id.* ¶¶ 101, 144. Plaintiffs allege no facts supporting an inference that Krystek or PFC was aware of, let alone agreed to, the alleged common design against the Steiners. Furthermore, even if Plaintiffs' allegations could be said to plausibly suggest that Krystek or PFC was aware the Individual Defendants were using PFC funds for strange or improper purposes, even such a "general awareness … is not sufficient to show the level of knowledge that would give rise to liability for conspiracy." *Kyte v. Philip Morris Inc.*, 556 N.E.2d 1025, 1028 (Mass. 1990). Rather, conspiracy liability requires specific "knowledge that the other's conduct is tortious, and an intent to substantially assist or encourage that conduct." *Taylor*, 576 F.3d at 35. Plaintiffs never allege that PFC or Krystek had such knowledge or intent. To the contrary, they allege that what allowed the Individual Defendants to carry out their conspiracy was PFC and Krystek's "failure to investigate Defendant Zea's use of the [PFC] credit card," Compl. ¶¶ 354–356—*i.e.*, their *lack* of knowledge. These allegations undermine Plaintiffs' assertion that PFC or Krystek conspired with the Individual Defendants or eBay.

Nor can a conspiracy be inferred from the fact that Baugh and Krystek had a longstanding relationship, *id.* ¶ 344, met frequently, *id.* ¶ 350, or, after all the alleged torts were committed, discussed the criminal investigation into Baugh and the other GSR Defendants, *id.* ¶ 358. Again, none of these allegations establishes either PFC's or Krystek's knowledge of the tortious nature of the Individual Defendants' conduct or intent to assist or encourage it. *See Thomas*, 909 F.3d at

490–92 (holding that two defendants' prior work relationship and frequent contact could not form the basis of a civil conspiracy claim). Because there could be no conspiracy between or among eBay and the Individual Defendants as a matter of law, and because Plaintiffs do not allege facts sufficient to infer a conspiracy between eBay and PFC or Krystek, Count XIII should be dismissed.

## VI.    The Complaint Fails To State a Claim for Ratification (Count XIV)

Finally, Plaintiffs fail to plead facts plausibly showing that eBay ratified the Individual Defendants' alleged misconduct. Ratification is a theory of liability that applies where a "principal acquiesces in the agent's action, or fails promptly to disavow the unauthorized conduct after disclosure of material facts." *Linkage Corp. v. Trs. of Bos. Univ.*, 679 N.E.2d 191, 204 (Mass. 1997). Plaintiffs' allegations here do not plausibly allege acquiescence. To the contrary, they show unequivocally that eBay promptly disavowed the Individual Defendants' alleged misconduct.

Plaintiffs plead that eBay promptly investigated the Individual Defendants' actions, and that, within a month of the Natick events, all but two of the Individual Defendants were no longer employed at eBay. Specifically, Plaintiffs allege that eBay began an internal investigation into the Individual Defendants' actions by August 26, 2019, Compl. ¶ 271; placed Baugh, Popp, and Harville on administrative leave just four days later, on August 30, *id.* ¶ 281; and, in September, fired Baugh, Harville, Gilbert, Popp, Stockwell, and Wymer, *id.* ¶¶ 284, 289, and Wenig resigned, *id.* ¶ 288. Plaintiffs also allege that several of the Individual Defendants lied to the members of eBay's legal team conducting the internal investigation, *see id.* ¶¶ 220–221, 271, 276, 278, showing that they knew eBay did not acquiesce to their actions. *See also* Rule 11 H'rg Tr. at 25:1–12, *United States v. Baugh*, No. 20-cr-10263-PBS (D. Mass. Apr. 25, 2022), ECF No. 210 (Baugh guilty plea for lying to "eBay investigators"). In light of these allegations, "no reasonable inference could be

drawn that would suggest [eBay] ratified [the Individual Defendants'] conduct."[5] *Petrell v. Shaw*, 902 N.E.2d 401, 408 n.5 (Mass. 2009) (rejecting ratification theory as a matter of law because where defendant took "prompt action" after learning of the alleged misconduct).

Plaintiffs seem to suggest that the fact that Wenig resigned with severance and that Jones retired with benefits is enough to plead ratification, notwithstanding all of eBay's actions to promptly disavow the Individual Defendants' actions. *See* Compl. ¶¶ 288, 562. That suggestion cannot be correct. Although Massachusetts does not appear to have squarely addressed the issue, other courts have held as a matter of law that ratification may not be inferred where "[t]he only evidence" of alleged ratification was that the defendant "did not terminate [the employee] but rather allowed him to voluntar[il]y resign." *Terek v. Finkbiner*, 2015 WL 5542535, at *4 (N.D. Ohio Sept. 18, 2015); *see also Garcia ex rel. Marin v Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1203 (E.D. Cal. 2009) ("[A]n employer need not always terminate an employee in order to avoid ratification."). In all events, it was enough for eBay, "upon ascertaining the facts, at once to disaffirm an act done in [eBay's] name." *Boice-Perrine Co. v. Kelley*, 137 N.E. 731, 733 (Mass. 1923). Because Plaintiffs' allegations do not plausibly show that eBay acquiesced to the alleged misconduct, their claim for ratification should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant eBay's motion to partially dismiss the Complaint.

Dated: April 21, 2023

*/s/ Jack W. Pirozzolo*
Jack W. Pirozzolo (BBO #564879)

---

[5] Indeed, as DOJ has noted, "eBay provided valuable assistance and cooperation with the federal investigation." U.S. Dep't of Justice, Press Release, *Six Former eBay Employees Charged with Aggressive Cyberstalking Campaign Targeting Natick Couple* (June 15, 2020), https://www.justice.gov/usao-ma/pr/six-former-ebay-employees-charged-aggressive-cyberstalking-campaign-targeting-natick.

Kathryn L. Alessi (BBO #651110)
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
Telephone: (617) 223-0300
Facsimile: (617) 223-0301
jpirozzolo@sidley.com
kalessi@sidley.com

Scott T. Nonaka (*pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1285
snonaka@sidley.com

Daniel J. Feith (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, D.C. 20005
Telephone: (202) 736-8511
dfeith@sidley.com

*Counsel for eBay Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2023 this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: April 21, 2023                                           /s/ *Jack W. Pirozzolo*
                                                                        Jack W. Pirozzolo