# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

INA STEINER, DAVID STEINER, and
STEINER ASSOCIATES, LLC,

      Plaintiffs,

v.

EBAY INC., ET AL.,

      Defendants.

**CIVIL ACTION NO.: 1:21-CV-11181-DPW**

## DEFENDANT STEVE KRYSTEK'S
## MEMORANDUM OF LAW IN SUPPORT OF HIS
## MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Tory A. Weigand, BBO #548559
tweigand@morrisonmahoney.com
Mathew J. Holmes, BBO #675994
mholmes@morrisonmahoney.com
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210-1181
(617) 439-7500
*Counsel for Steve Krystek*

102568033

## Table of Authorities

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano County,*
    480 U.S. 102, 109, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987).......................................6

*Ashcroft v. Iqbal,*
    129 S. Ct., 1949-50 (2009) ................................................................................9

*Bally v. Ne. Univ.,*
    403 Mass. 713, 718 (1989) ..............................................................................14

*Boit v. Gar-Tec Prods., Inc.,*
    967 F.2d 671, 675 (1st Cir. 1992)..............................................................5n.5, 8

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462, 477 105 (1985)...........................................................................9

*Burleigh v. Alfa Laval, Inc.,*
    313 F. Supp. 3d 357, 354, 358 (D. Mass. 2018) ....................................... 15-16

*Buster v. Moore,*
    No. CIV. A. 97-637-F, 2000 WL 576363, at *22 (Mass. Super. Apr. 28, 2000) .............14

*Calder v. Jones,*
    465 U.S. 783, 790 (1984)...................................................................................7

*Carden v. Klucznik,*
    775 F. Supp. 2d 247, 249 (D. Mass. 2011) ....................................................15

*Carson v. Canning,*
    180 Mass. 461, 62 N.E. 964, 964 (1902) ........................................................10

*Chlebda v. H.E. Fortna & Nro Inc.,*
    609 F.3d 1022, 1024 (1st Cir. 1979)..................................................................8

*Cimino v. Milford Keg, Inc.,*
    385 Mass. 323, 330, 431 N.E.2d 920 (1982) ..................................................12

*Copia Commc'ns, LLC v. AMResorts, L.P.,*
    812 F.3d 1, 4 (1st Cir. 2016)...............................................................................5

*Dalai v. Wolas,*
    100 Mass. App, Ct. 1134 (2022)......................................................................11

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,*
    290 F.3d 42**,** 52 (1st Cir. 2002)..........................................................................5

*Foster v. The Loft, Inc.,*
    26 Mass. App. Ct. 289, 295, 526 N.E.2d 1309, 1310, 1313 ......................10, 12

*Foster–Miller, Inc. v. Babcock & Wilcox Canada,*
   46 F.3d 138, 145 (1st Cir. 1995) ............................................................................5n.5

*Freeman v. Plan. Bd. of W. Boylston,*
   419 Mass. 548, 565 (1995) ........................................................................................14

*Grice v. VIM Holdings Group, LLC,*
   280 F. Supp. 3d 258, 277 (D. Mass. 2017) .................................................................7

*International Shoe Co. v. Washington,*
   326 U.S. 310, 316 (1945) .............................................................................................6

*Irwin v. Ware,*
   329 Mass. at 765, 467 N.E.2d 1292 ..........................................................................12

*Kamayou v. Univ. of Mass. Lowell,*
   No. 16-cv-10098-IT, 2018 WL 4609130, *8 (D. Mass. Sept. 7, 2018) ................ 14-15

*King v. Prodea Sys. Inc.,*
   433 F. Supp. 3d 7, 16 (D. Mass. 2019) .......................................................................6

*Korngold v. DRB Systems, Inc.,*
   2023 WL 2465797 (D. Mass 2023) .............................................................................8

*LaVallee v. Parrot-Ice Drink Products of Am., Inc.,*
   193 S. Supp. 2d 296, 301-02 (D. Mass. 2002) .........................................................7, 8

*Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n,*
   142 F.3d 26, 34 (1st Cir. 1998) ...............................................................................7n.7

*M-R Logistics LLC v. Riverside Rail LLC.,*
   537 F. Supp. 2d 269, 279 (D. Mass. 2008) .................................................................6

*Murray v. Uber Technologies, Inc.,*
   486 F. Supp 3d 468, 477 (D. Mass. 2020) ........................................................... 10-11

*Nixon v. Kysela Pere Ltd.,*
   2021 WL 3700253, *5 (W.D. Va. 2021) ......................................................................9

*Noonan v. Winston Co.,*
   135 F.3d 85, 90 (1st Cir. 1998) ...............................................................................7n.7

*O'Neil v. DaimlerChrysler Corp.,*
   538 F. Supp. 2d 304, 321-22 (D. Mass. 2008) ..........................................................15

*Perras v. Trane U.S. Inc.,*
   462 F. Supp. 3d 38 (D. Mass. 2020) ...........................................................................6

ii

*Phillips Exeter Academy v. Howard Phillips Fund, Inc.,*
    196 F.3d 284, 288 (1st Cir. 1999) ............................................................6n.6, 9

*Planned Parenthood League of Mass., Inc. v. Blake,*
    417 Mass. 467, 473 (1994) .............................................................................14

*Sawtelle v. Farrell,*
    70 F.3d 1381, 1388-89, 1394 (1st Cir. 1995).......................................6n.6, 8-9

*Sensitech Inc. v. Limestone FZE,*
    548 F. Supp. 3d 244 (D. Mass. 2021) ..............................................................7

*Sires v. Hefferman,*
    2011 WL 2516093, *5 (D. Mass. June 21, 2011) ............................................9

*Steep Hill Labs, Inc v. Moore,*
    2018 WL 1242182, *11 (N. D. Cal. March 8, 2018).......................................15

*Thunder Studios, Inc. v. Kazal,*
    13 F.4th 736, 745 (9th Cir. 2021) ..................................................................15

*United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.,*
    987 F.2d 39, 43-44 (1st Cir. 1993)...............................................................5n.5

*United States v. Swiss Am. Bank, Ltd.,*
    274 F.3d 610, 617, 618 (1st Cir. 2001) ............................................5n.5, 6, 7n.7

*Vicarelli v. Business Intern, Inc.,*
    973 F. Supp. 241 (D. Mass. 1997) .................................................................10

## **Statutes**

Cal. Civ. Code 1708.7(g) ..................................................................15, 15n.11, 16n.12

## **Other Authorities**

Restatement (Second) of Torts § 36..............................................................................14

Restatement (Second) of Torts § 40 cmt c....................................................................14

102568033

This action is premised on the criminal conduct of former eBay security team members undertaken as to Natick residents Ira and David Steiner as well as Steiner Associates, LLC, a publisher of an ecommerce newsletter. Defendants include numerous individuals as well as eBay and Progressive F.O.R.C.E. Concepts, LLC (PFC). PFC is a Nevada based company and was an independent contractor providing certain security services to eBay, including providing one of the individual defendants, Veronica Zea, to eBay who worked out of eBay's California office and as an eBay analyst in its GIC, or Global Intelligence Center. Steve Krystek is the CEO of PFC. As more fully set forth below, the claims as to Krystek must be dismissed as:

- this Court lacks personal jurisdiction over Krystek;

- the allegations specific to Krystek are conclusory and insufficient to state any plausible liability.

**Factual Allegations in Plaintiffs' Amended Complaint Pertinent to Krystek**

Plaintiffs Ina and David Steiner operate a trade publication, Ecommercebytes which reports on ecommerce business including eBay. Compl 2; 23. The gravamen of the Amended Complaint is that the individual defendants, either former executives of eBay or former members of eBay's security department, devised and engaged in a scheme of harassment in an effort to stifle the plaintiffs' reporting on eBay which conduct took place between June and August 2019. It is alleged that the scheme was the result of former senior eBay executives, defendants Wymer (Chief Executive Officer) and Wenig (Chief Communications Officer), frustration with the Steiner's newsletter tone and content. AC. 3. It is alleged that eBay, through Wymer and Wenig, sent a directive to eBay security personnel, particularly James Baugh, Chief of Security for eBay granting authority to Baugh and the individual defendants "to terminate the reporting of the Steiners by whatever means necessary," do "whatever it takes," and "crush this lady" and/or that the campaign

resulted from communications between eBay senior executives and defendant Baugh as eBay Chief of Security. AC. 4; 15; 61; 65; 75; 78; 79; 82; 85; 86; 96; 100; 110; 111; 129.

Based on the directive from eBay's executive management, defendant Baugh directed the remaining individual defendants, all members of eBay security department (Harville, Gilbert, Cooke, Popp, Stockwell and Zea), to engage in certain conduct intended to "intimidate, threaten, torture, terrorize, stalk and silence the Steiners." AC. 6. All of the conduct undertaken between June and August 2019, was to "carry out Wenig and Wymer's plan" (AC. 4-8) and included, *inter alia* creating a phony Twitter account pretending to be a eBay seller and threatening Ms. Steiner to stop reporting on eBay; sending pornographic material/publications to neighbors of the plaintiffs; arranging and having delivered to the Steiners' home "death theme" deliveries such as a "sympathy" wreath; delivering live spiders, cockroaches, a bloody pig mask, a book entitled Grief Diaries: Surviving the Loss of a Spouse; traveling to Massachusetts and surveilling the Steiner's home including attempting to place a GPS tracker on plaintiffs car; and otherwise publicly posting the Steiner's address on Twitter, Craigslist and other websites inviting strangers to the Steiner's home for sex parties and yard sales. AC. 4-8; et seq.

Zea is alleged to be a California resident who at all times and together with eBay employees Harville, Gilbert, Cooke, Popp, and Stockwell was a member of the eBay security (GIC) department.[1] AC. 38. It is otherwise alleged that all of the individual defendants, including Zea,

---

[1] While the Amended Complaint makes periodic and conclusory references to all of the individual defendants "acting within the scope of their employment with eBay and PFC," (Compl. 130; 143; 147; 152; 177; 178; 182; 271) it is undisputed that all of the individual defendants were employees of eBay except for Zea who was an eBay contractor provided by PFC. The Amended Complaint otherwise makes clear that all of the individual defendants, including Zea, were under the direction and control of eBays supervisors and were, in fact, directed and controlled as to the putative conduct as to the Steiners by eBay supervisors pursuant to the purported plan of individual eBay executive defendants Wenig and Wymer. Compl.4; 7; 13; 37; 59; 61-64; 66; 69; 77; 94; 99; 107; 121; 133; 191; 212; Exh A to Comp. 26,28, 41, 43, 51, 62-65, 85, 92, 95, 128-30, 140, 165, 169, 181-82, 184. The Amended Complaint is devoid of any allegations that Krystek knew of the conduct; participated in the conduct; or in any way ratified the conduct.

102568033

were at all times and as to all of the conduct at issue, directed and controlled as to their activities by defendant Baugh as Chief of Security for eBay who, in turn, it is alleged ultimately reported to defendant Wenig. AC. 4; 52; 127; 159; 257; 281; 369; 75; 143; 163; 234; 271; 94; Exh A to Comp. 26, 28, 41, 43, 51, 62-65, 85, 92, 95, 128-30, 140, 165, 169, 181-82, 184. According to the Amended Complaint, all of the individual eBay security team defendants "took direction, directly and indirectly, from senior management at eBay" including and particularly Baugh and as to the specific conduct identified in the Amended Complaint and which is otherwise alleged to be implementation of the "plan" or "orders" of the eBay executive defendants. AC. 4; 15; 61; 65; 75; 78; 79; 82; 85; 86; 96; 100; 110; 111; 129; 52; 127; 159; 257; 281; 369; 75; 143; 163; 234; 271; 94. All of the individual eBay security team defendants were terminated in or about September 2019. There are no allegations that PFC participated in the conduct; knew of the conduct; condoned or ratified the conduct; had any knowledge of the asserted plan or directive of senior eBay management or that any of the conduct, including as to defendant Zea, was within the scope of any agency with PFC.

The allegations as to Krystek are that:

- Krystek resides in and is a citizen of Nevada (AC 9, 31);
- Krystek approved of, assisted, or supported the bad acts of others[2] (AC 4, 10, 15, 41, 101, 123, 133,134, 159, 167, 175, 177, 178, 181, 182, 191, 229, 232, 237, 248, 256, 297, 348, 352, and 550);
- Krystek did not properly supervise Zea or was willfully/recklessly blind as to her conduct and/or bad acts or failed to stop those acts (AC 211, 215, 216,327, 350-352, 381, and 458).
- Baugh urged Krystek to engage in a what could be construed as a cover-up as Baugh and eBay's conspiracy began to unravel (AC 358 and 359)

---

[2] While plaintiffs make the conclusory allegation that Krystek approved of, supported, or assisted the various bad acts of the individual defendants, there are no factual allegations as to how he did so.

- Krystek was aware that Zea used her PFC credit card (the charges on which were ultimately paid by eBay) for expensive dinners and a visit to a strip club[3]. AC. 329, 330, 355, 468, 478.

Five of the individual defendants from the eBay security team, including Zea, subsequently pleaded guilty to conspiracy to commit cyberstalking and conspiracy to obstruct justice. While Zea was paid by PFC (a loaned servant to eBay), PFC – and by extension Krystek – had no knowledge of or in any way directed or controlled Zea's activities as a member of eBay's security team and particularly as to the alleged putative conduct set forth in the Amended Complaint with no factual allegations in the Amended Complaint to the contrary. Indeed, there is no allegation that Krystek had any knowledge of the activities of the security team as to the Steiners including Zea, until informed in mid to late Summer of 2019 at which time investigation and termination of Zea ensued.

The Amended Complaint contains 10 counts as to "All Defendants" but only one that specifically refers to Krystek[4], each a claim under the state law of either Massachusetts or California. Plaintiffs do not adequately plead a connection or nexus between Krystek and Massachusetts sufficient to establish this court's jurisdiction over him. Despite the length of the Amended Complaint and the graphic underlying conduct of eBay's individual security team members taken from the findings of the criminal investigation, the allegations as to Krystek are sparse, conclusory, and insufficient to impose any vicarious or other liability upon PFC. The only Count that specifically references Krystek, Negligent Supervision, fails as a matter of law because the entire factual underpinning of this Count is the allegation that Krystek was aware Zea used her PFC credit for expenses related to legal activities, namely dining and visiting a strip club. Zea gave no warning as to the actions she took against the Steiners, and there is therefore no basis for a

---

[3] This is the only specific factual allegation plaintiffs make as to knowledge Krystek had of Zea's actions while working at eBay in the GIC under Baugh.

[4] Count VI (Negligent Supervision).

negligent supervision claim. The remaining claims appear to rest on the conclusory and baseless allegation that Krystek approved or supported the bad acts of other individual defendants.

The allegations as to Krystek are repetitive, vague, and conclusory; there is almost no detail provided, and what detail there is does not remotely approach establishing a viable claim, or any involvement whatsoever in eBay's alleged "campaign of terror" against the Steiners. Plaintiffs fail to allege that Krystek even knew who the Steiners were prior to the series of events alleged in the Amended Complaint, much less that Krystek was involved in or even knew about any actions directed towards the plaintiffs. Crucially, there are no allegations that would establish the Court has jurisdiction over Krystek; there are no minimum contacts or purposeful availment alleged. Accordingly, this matter should be dismissed as to Krystek.

## **ARGUMENT**

### I. **PLAINTIFFS FAIL TO ESTABLISH THAT THIS COURT HAS PERSONAL JURISDICTION OVER KRYSTEK**[5]

Absent a viable federal claim, both the Massachusetts long arm statute and due process must be met. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002); *Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016). Plaintiffs have plead nothing to establish that Krystek had or has any relationship or contact with

---

[5] The "court must have personal jurisdiction over the parties to hear a case, that is, the power to require the parties to obey its decrees." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 617 (1st Cir. 2001). The court may rule on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing. In such cases, the plaintiff must make a prima facie showing that personal jurisdiction exists. *See id.* at 618; *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F.2d 39, 43-44 (1st Cir. 1993) [hereinafter "*Pleasant St. II*"]. The plaintiff must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the [D]ue [P]rocess [C]lause of the Constitution." *Pleasant St. II*, 987 F.2d at 44 . It is also well settled "that plaintiffs may not rely on unsupported allegations in their pleadings to make a *prima facie* showing of personal jurisdiction," *Boit*, 967 F.2d at 675, and the plaintiff "is obliged to adduce evidence of specific facts." *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995).

Massachusetts whatsoever, much less sufficient to allow this Court to exercise jurisdiction, either general or specific. *See United States v. Swiss Am. Bank*, 274 F.3d 610, 618 (1st Cir. 2001).

Due process, in turn, requires minimum contacts between a nonresident defendant and the forum state such that the exercise of personal jurisdiction over that defendant accords with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). "Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano County,* 480 U.S. 102, 109, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987).[6]

Not only is there no jurisdiction over PFC in Massachusetts but even assuming there is, "[i]t is axiomatic that jurisdiction over the individual officers of a corporation may not be based on jurisdiction over the corporation." *M-R Logistics LLC v. Riverside Rail LLC.*, 537 F. Supp. 2d 269, 279 (D. Mass. 2008); *Perras v. Trane U.S. Inc.*, 462 F. Supp. 3d 38 (D. Mass. 2020); see also *King v. Prodea Sys. Inc.*, 433 F. Supp. 3d 7, 16 (D. Mass. 2019)("an individual's status as a corporate officer is insufficient to establish the minimum contacts required to subject the individual to personal jurisdiction in a foreign forum"). Moreover, there can be no jurisdiction over a

---

[6]The First Circuit employs a three-part analysis to determine whether there are sufficient contacts between the defendant and the forum state to exercise specific personal jurisdiction over a defendant. *See Sawtelle v. Farrell,* 70 F.3d 1381, 1388–89 (1st Cir.1995). First, the court must decide whether the claim underlying the litigation "relates to or arises out of the defendant's contacts with the forum." *Phillips Exeter Acad. v. Howard Phillips Fund,* 196 F.3d 284, 288 (1999). Second, the court must determine whether the defendant's contacts with the forum "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *Sawtelle,* 70 F.3d at 1389. Finally, the exercise of personal jurisdiction must be reasonable in light of certain "gestalt factors." *Id.* at 1394. "An affirmative finding on **each of the three elements** of the test is required to support a finding of specific jurisdiction." *Phillips Exeter Acad.,* 196 F.3d at 288. (Emphasis added).

corporate officer such as Krystek absent factual allegations establishing that he was a primary participant in the wrongdoing, independently and intentionally directed wrongdoing at the forum, and that he derived personal benefit from actions in forum. See *Calder v. Jones*, 465 U.S. 783, 790 (1984); *LaVallee v. Parrot-Ice Drink Products of Am., Inc.*, 193 S. Supp. 2d 296, 301-02 (D. Mass. 2002); see also *Grice v. VIM Holdings Group, LLC*, 280 F. Supp. 3d 258, 277 (D. Mass. 2017) ("The Court must analyze the jurisdictional issue based on the officer's <u>personal contacts</u> with Massachusetts" and that inquiry considers whether the individual was a "primary participant" in the alleged wrongdoing as it relates to the forum); *Sensitech Inc. v. Limestone FZE*, 548 F. Supp. 3d 244 (D. Mass. 2021)(same).

Here, plaintiffs have alleged neither personal contact with Massachusetts by Krystek nor that he was a primary participant in any wrongdoing. There is no allegation whatsoever of Krystek having any personal contact with Massachusetts ever, never mind during the relevant time period. As to the "primary participant" prong, plaintiffs plead to the contrary. Even by plaintiffs' allegations, Krystek merely approved of, assisted, or supported bad acts or was negligent in his supervision of Zea; a far stretch from being a primary participant. This is simply insufficient to establish this forum's personal jurisdiction over Krystek based on his status as a corporate officer.

Further, and crucially, there are no allegations supporting either general or specific jurisdiction over Krystek.[7] Plaintiffs have not alleged any specific forum based contacts of Krystek providing any independent basis for jurisdiction as a result of his personal conduct. Krystek does

---

[7] Specific jurisdiction requires a "demonstrable nexus" between the claims of the plaintiff and the defendant's contacts in the forum state. *Mass. Sch. of Law,* 142 F.3d at 34. Such contacts must demonstrate that the defendant "purposeful[ly] avail[ed] [itself] of the privilege of conducting activities in the forum state." *Noonan v. Winston Co.*, 135 F.3d 85, 90 (1st Cir. 1998). General jurisdiction, on the other hand, exists when the defendant has engaged in "continuous and systematic activity, unrelated to the suit, in the forum state." *Swiss Am. Bank*, 274 F. 3d at 618. Plaintiffs do not attempt to allege "continuous and systematic activity" in Massachusetts by Krystek. "In the absence of general jurisdiction, a court's power depends upon the existence of specific jurisdiction." *Mass. Sch. of Law,* 142 F.3d at 34.

not reside in Massachusetts but Nevada with no allegations that he had any contact or dealings with Massachusetts. The allegations likewise do not support any finding that Krystek was a primary participant in the activities in Massachusetts or that he derived a personal benefit from the alleged actions in Massachusetts. Courts are not to disregard the corporate form or the fiduciary shield doctrine unless the officer was in the forum state to serve personal interests; was the alter-ego of the corporation; or had an identify of interest with the corporation itself. *LaValle*, *supra*; The allegations are otherwise conclusory.

Plaintiffs likewise do not allege that Krystek purposefully availed himself of the privilege of conducting activities in Massachusetts, thereby invoking the benefits and protections of this state's laws and making Krystek's involuntary presence before the state's courts foreseeable owns any property or transacts any business in Massachusetts; again, as plaintiffs do not allege any contacts with this forum by Krystek, personal jurisdiction simply cannot be established. See e.g., *Korngold v. DRB Systems, Inc.*, 2023 WL 2465797 (D. Mass. 2023)

The properly pled allegations fall far short of establishing jurisdiction over Krystek either under the long arm statute or due process minimum contacts. *See Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992)("The 'plaintiff must go beyond the pleadings and make affirmative proof,' " and "may not rely on unsupported allegations in their pleadings to make a *prima facie* showing of personal jurisdiction.") (quoting *Chlebda v. H.E. Fortna & Nro Inc.*, 609 F.3d 1022, 1024 (1st Cir. 1979)). Given the lack of any affirmative showing that the claims arise out of contacts Krystek had with Massachusetts (or that Krystek had any contacts with Massachusetts whatsoever); that Krystek otherwise purposefully availed himself of the privilege to conduct business in Massachusetts; and that exercising jurisdiction over Krystek would be reasonable, the Amended Complaint must be dismissed for lack of personal jurisdiction. *Sawtelle v. Farrell*, 70

8

F.3d 1381, 1388 (1st Cir. 1995); *Phillip Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d

284, 288 (1st Cir. 1999); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

## II.    THE AMENDED COMPLAINT FAILS TO STATE ANY VIABLE STATE BASED CLAIM AS <u>TO KRYSTEK</u>

The state law claims as to Krystek are essentially all conclusory in nature; plaintiffs address

Krystek's alleged conduct specifically only in Count VI, Negligent Retention[8]. Outside of Count

VI (and the vague reference in Count XIII) Krystek's name does not even appear in the remaining

Counts. Plaintiffs instead seem to be relying on the conclusory allegations earlier in their Amended

Complaint that Krystek approved of, assisted, or supported the various bad acts of the individual

defendants; absent allegations as to *how* Krystek approved of, assisted, or supported these acts,

this is simply insufficient. *see Iqbal*, 129 S. Ct. at 1949-50 ("the tenet that a court must accept as

true all of the allegations contained in a Amended Complaint is inapplicable to legal conclusions").

*See Nixon v. Kysela Pere Ltd*., 2021 WL 3700253, *5 (W.D. Va. 2021). The plaintiffs, in the

majority of their Counts, attempt to lump "all Defendants," together, but rarely reference specific

individuals. Krystek, as noted above, is specifically referenced only in two Counts. The Amended

Complaint therefore does not put Krystek on notice as to how he is allegedly liable under each

cause of action. See Fed. R. Civ. P. 8(a); *Sires v. Hefferman*, 2011 WL 2516093, *5 (D. Mass.

June 21, 2011) ("To provide the notice required under Rule 8(a), a plaintiff cannot 'lump'

defendants together when it cannot be reasonably inferred that all of the defendants were involved

in the alleged misconduct, or it is otherwise not clear to which defendant or defendants the plaintiff

is referring").

---

[8] Plaintiffs also include the vague assertion in Count XIII Conspiracy that "PFC funded the conspiracy with Defendant Krystek's approval."

### A.        Plaintiffs' Negligent Supervision Theory Fails As a Matter of Law As to Krystek

In order to prove their claim of negligent supervision, plaintiffs must show (1) that the persons whose actions form the basis of the claim were agents and/or employees of the defendant employer; (2) that the agents and employees came into contact with members of the public in the course of their employer's business; (3) that the employer failed to use reasonable care in the selection, supervision and retention of the agents and employees; and (4) that the failure to use such reasonable care was the proximate cause of harm to the plaintiffs. *See Carson v. Canning,* 180 Mass. 461, 62 N.E. 964, 964 (1902); *Foster v. The Loft, Inc.,* 26 Mass.App.Ct. 289, 526 N.E.2d 1309, 1310 (1988).

Plaintiffs fail to allege any of these prongs as to Krystek and Zea. Initially, the allegations in the Amended Complaint make clear that Zea was under the direction and control of eBay and Baugh, not Krystek. There are no allegations that, in her role as an analyst in eBay's GIC, Zea would be expected to come into contact with the general public in the course of eBay's business (and certainly not within the course of PFC's business).

Plaintiffs likewise fail to sufficiently allege that Krystek had any direct  supervisory responsibility for Zea including any role in any selection, supervision or retention or that he otherwise failed to use reasonable care in any selection, supervision, or retention of  Zea. "[T]o state a claim for these torts requires that a plaintiff allege that the employer knew, or should have known, that the offending employee had a proclivity to commit the complained-of acts, and that the employer nevertheless failed to take corrective action." *Vicarelli v. Business Intern, Inc.*, 973 F. Supp. 241 (D. Mass. 1997) citing *Foster v. The Loft Inc.*, 26 Mass. App. Ct. 289 (1988). A claim for negligent supervision or retention requires allegations that the employer was on prior notice of any proclivity of employee to commit acts complained of. *Murray v. Uber Technologies, Inc.*, 486

F. Supp 3d 468, 477 (D. Mass. 2020). See also *Dalai v. Wol*as, 100 Mass. App, Ct. 1134 (2022)(awarding judgment as a matter of law as to failure to supervise retain claim as insufficient evidence that employer on notice of past criminal conduct).

Plaintiffs provide no allegations of conduct by Zea that should have put Krystek on notice as to Zea's proclivity or tendency to engage in criminal conduct (assuming such tendencies existed in the first place). The crux of a negligent supervision claim is that the employer knew or was on notice as to the employee's poor character or bad tendencies. Plaintiffs do not merely fail to allege that the "terror" Zea "inflict[ed] upon the Steiners" was foreseeable as to Krystek, they affirmatively allege that it was "ordered by and forseeable [sic] to Defendants Wenig, Wymer, and Jones." AC. 227. Plaintiffs, by asserting that Zea's conduct was foreseeable as to the eBay executives, but failing to make that same allegation as to Krystek, seemingly conceding that they do not have a good faith basis to allege that Zea's conduct was foreseeable as to Krystek.

The sole factual allegations plaintiffs were able to plead in an attempt to establish that Krystek should have been on notice was that Zea used her PFC credit card (charges on which were ultimately paid for by eBay) for "expensive dinners and strip clubs," (AC. 352). Neither activity is illegal. Plaintiffs allege that Krystek was either actively directing the unlawful behavior (presumably of Zea), or was reckless or willfully blind. Plaintiffs ask this Court to make the leap that merely because Krystek was allegedly aware of Zea charging "expensive dinners and strip clubs," he should have anticipated that she would engage in a "campaign of terror" against eBay's perceived enemies. This is simply not a tenable conclusion from the facts alleged.

There is also no allegation, nor could there credibly be one, that Krystek should have anticipated that PFC's loaned servant, Zea, would have engaged in the "campaign of terror" alleged by the plaintiffs. In order to properly plead a negligent supervision claim, a plaintiff must assert

that the injury was within the foreseeable risk. *Foster v. Loft, Inc.*, 26 Mass. App. Ct. 289, 295, 526 N.E.2d 1309, 1313 (1988), citing *Irwin v. Ware*, 392 Mass. at 765, 467 N.E.2d 1292, and quoting from *Cimino v. Milford Keg, Inc.*, 385 Mass. 323, 330, 431 N.E.2d 920 (1982). Zea was contracted to eBay as an analyst in their GIC; there is nothing plead to indicate that Krystek should have anticipated that an eBay analyst would go off the rails and begin harassing eBay enemies. Because the harm alleged by plaintiffs was not foreseeable by Krystek, the negligent supervision claim must fail. In short, this is simply not a tenable theory.

### B. *Plaintiffs Reliance on Conclusory Allegations as to Krystek is Not Sufficient to Convey Liability*

Plaintiffs largely rely on generic and conclusory assertions that Krystek approved of, assisted, or supported the bad acts of the individual defendants. Plaintiffs concede that, other than Zea, the remaining individual defendants were eBay employees; presumably then their allegations as to Krystek's approval are meant to be limited to Zea's actions. There is no explanation, no factual allegation, as to how Krystek approved of Zea's misdeeds. Plaintiffs concede that Krystek did not physically participate in the harassment of the Steiners, but continue to assert that he aided and abetted and/or failed to intervene to stop the harassment, torture, intentional and negligent infliction of emotional distress, stalking, defamation, trespass, threats and damage. AC 216.

The only factual allegations plaintiffs make as to Krystek approving of, endorsing, or even knowing of any actions by Zea are the allegations that Krystek was aware that Zea used a PFC corporate card for expensive dinners and a visit to a strip club. Plaintiffs do not explain how engaging in these legal activities is tied to, forms a nexus with, or foretold the "campaign of terror" against the Steiners. Plaintiffs include numerous details and attention grabbing quotes as to how Wenig, Wymer, Jones, and Baugh were incensed by the Steiners' reporting and made plans or issued directives to attack the Steiners. Similar allegations are striking absent as to Krystek; in fact,

there is no indication or allegation that, prior to the events in the Amended Complaint coming to a head and the alleged conspiracy unfolding, Krystek even knew who the Steiners were, or had ever heard of EcommerceBytes.

Plaintiffs also attempt to imply knowledge of the alleged conspiracy on Krystek's part by asserting that, after the events in question had unfolded, Baugh attempted to drag Krystek into a coverup. Specifically, plaintiffs allege that "on September 17, 2019, Defendant Baugh and Defendant Krystek had dinner together. The next day, Defendant Baugh sent Defendant Krystek a follow-up email, where he outlined their discussions from the evening prior. Defendant Baugh first reiterated that 'its in all of our best interest to get this case handled (go away) by a solid criminal defense attorney. eBay has been absolved from it.' Defendant Baugh also urged Defendants Krystek and PFC to keep Defendant Zea and Stockwell[9] on the payroll." AC 358.

Plaintiffs do not allege any substantive conversation between Krystek and Baugh as to what had actually occurred regarding the Steiners, nor do they allege that Krystek, even at that late date, had any knowledge as to the activities undertaken by Zea and her cohorts in the eBay GIC. Crucially, even assuming arguendo that the suggestions by Baugh constitute some sort of cover-up (which the defendant does not concede), there is no allegation that Krystek took any of the steps suggested by Baugh; in fact, plaintiffs affirmatively allege that PFC terminated Zea in September 2019. AC. 284.

These conclusory allegations, absent any factual details, are simply not sufficient to create liability on the part of Krystek; accordingly the Amended Complaint must be dismissed as to him.

---

[9] Plaintiffs appear to contradict themselves, as they assert that Stockwell was an eBay employee at this time, that eBay terminated Stockwell in September 2019, but also allege that Baugh requested that Krystek (and by extension PFC) not terminate Stockwell. AC 35, 358, 284.

### C. *The Amended Complaint Fails To State A Claim for: Violations of the Massachusetts Civil Rights Act; False Imprisonment; and Stalking*

Krystek incorporates by references the arguments and submissions of the co-defendants as to these claims as they apply equally to Krystek.

Reduced to essentials, plaintiffs' claim under the Massachusetts Civil Rights Act ("MCRA") is subject to dismissal because it does not allege—as to any of the Defendants, but specifically as to Krystek —that Krystek's conduct involved "an actual or potential physical confrontation accompanied by a threat of harm," which is "an element of MCRA claims."[10] *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 473 (1994); *Buster v. Moore*, No. CIV. A. 97-637-F, 2000 WL 576363, at *22 (Mass. Super. Apr. 28, 2000) (citing *Blake*, 417 Mass. at 473); *Freeman v. Plan. Bd. of W. Boylston*, 419 Mass. 548, 565 (1995); *Bally v. Ne. Univ.*, 403 Mass. 713, 718 (1989). Further, the Supreme Judicial Court has not addressed whether MCRA imposes vicarious liability.

To allege adequately false imprisonment, the "confinement within the boundaries fixed by the [defendant] must be complete." Restatement (Second) of Torts § 36; *see also id.* § 40 cmt. c (explaining that to allege confinement by threats of physical force, the alleged victim "must submit to the threat by remaining within the limits fixed by the actor in order to avoid or avert force threatened"). As a matter of law, Plaintiffs cannot state a claim for false imprisonment in their home if they were able to leave it. *See Kamayou v. Univ. of Mass. Lowell,* No. 16-cv-10098-IT, 2018 WL 4609130, at *8 (D. Mass. Sept. 7, 2018) (concluding at summary judgment that the

---

[10] Plaintiffs allege no "actual or potential physical confrontation" with PFC. To the contrary, they allege only limited interactions with Zea (and none with Krystek), all non-physical and non-confrontational. Specifically, the Amended Complaint asserts Zea (i) drove by Plaintiffs' house repeatedly or followed their vehicle, Compl. ¶ 7; and participated in sending harassing deliveries (ii)," *id.* Ex. A, ¶ 41. None of these allegations involves an "actual or potential physical confrontation." The Amended Complaint alleges no other interaction between Plaintiffs and Zea or Krystek.

14

plaintiff was not confined because he actually left the office), *report and recommendation adopted,* 2018 WL 4600646 (D. Mass. Sept. 25, 2018); *O'Neil v. DaimlerChrysler Corp.,* 538 F. Supp. 2d 304, 321–22 (D. Mass. 2008) (finding that plaintiff could not establish confinement where "there is no evidence that [plaintiff] … attempted to leave and was unable to do so"); *see also Carden v. Klucznik,* 775 F. Supp. 2d 247, 249 (D. Mass. 2011) (explaining that, on a motion to dismiss, "a court will not accept as true any facts that are 'conclusively contradicted by plaintiffs' concessions or otherwise'"). Plaintiffs explicitly allege that Mr. Steiner in fact left the house during the period when the Steiners were receiving threatening messages and packages. *See* AC. ¶ 536.

Plaintiffs stalking claim is based on a Cal. statute which, by its very terms, has no application to conduct outside of Cal.[11] Since the gravamen of the stalking claim is premised on the physical surveillance undertaken in Mass. there is no viable claim under the asserted statute. *Thunder Studios, Inc. v. Kazal,* 13 F.4th 736, 745 (9th Cir. 2021) (noting Section 1708.7 does not reach conduct outside Cal.); *Steep Hill Labs, Inc v. Moore*, 2018 WL 1242182, *11 (N. D. Cal. March 8, 2018 )(dismissing 1708.7 stalking claim as conduct occurred in Nevada not Cal.). To any extent the Cal. civil stalking statute can be deemed applicable outside of Cal.—which it cannot, all four of the operative Restatement factors dictate that Mass. law applies; injury occurred in Mass.; physical surveillance took place in Mass.; plaintiff's residence and business is in Mass.; and plaintiffs' otherwise concede and allege that the stalking took place "primarily and substantially in the Commonwealth of Mass.." Moreover, the Restatement's general choice of law factors clearly favor Mass. law as it serves the needs of the interstate system because it would be highly

---

[11]The provision expressly provides it is intended for the welfare of residents of California. Cal. Civ. Code 1708.7(g)("[t]his act is an exercise of the police power of the state for the protection of the health, safety, and welfare of the people of the State of California, and shall be liberally construed to effectuate those purposes").

"anomalous for [Mass.] to insist on providing greater benefits to its citizens under another state's law than it provides to its citizens under its own law," *Burleigh,* 313 F. Supp. 3d at 357; Mass.' substantial interest in protecting its own residents according to its own laws overrides any interest Cal. may have in deterring wrongful conduct merely "directed" from within its borders.; *see Burleigh,* 313 F. Supp. 3d at 354 (interests of state where injury took place and plaintiff resided were weightier than interests of state where defendants' conduct took place); [12] and Mass. law promotes predictability and simplifies judicial determinations as applying the law of the state where plaintiff's injury occurred yields predictable results because "the state where the injury occurred will usually be readily ascertainable." *Burleigh,* 313 F. Supp. 3d at 358.

Accordingly, each of these claims fails as a matter of law, regardless of whether plaintiffs plead sufficient facts as to Krystek, which they did not.

## III.   PLAINTIFFS DID NOT HAVE LEAVE OF COURT TO ADD DEFENDANTS WHEN AMENDING THEIR COMPLAINT AND FAILED TO PROVIDE NOTICE TO KRYSTEK IN CONTRAVENTION OF LOCAL RULE 15.1(b)

In their consolidated opposition to defendants' original motions to dismiss and in their consolidated response brief, plaintiffs sought leave to amend their complaint in the alternative, with the implication that amendment would be to fine tune their complaint to better conform to the pleading requirements. Docket 117 and 159. Further, the Court noted that "Plaintiffs' allegations would undoubtedly benefit from careful reconsideration for purposes of specific reframing and focus on whether there is a likelihood that current case law and factual circumstances would support the variety of separate claims initially made in the way they were" in affording plaintiffs the opportunity to amend their complaint. Neither the concept of adding additional defendants nor

---

[12] California's interest is particularly weak because Section 1708.7 is expressly "for the protection of the health, safety, and welfare of the people of the State of California," Cal. Civ. Code § 1708.7(g), not out-of-state plaintiffs

Mr. Krystek were mentioned in any of these pleadings, nor did plaintiffs file a formal motion to amend their complaint (which would generally include a proposed amended complaint).

Further, Local Rule 15.1(b) requires a party moving to amend a pleading to add a new party to serve a copy of the motion on the party to be added, presumably to allow the proposed new party the opportunity to object to their addition. This was not done; plaintiffs instead first formal notice to Krystek was service of the amended complaint[13].

As plaintiffs failed to receive leave of court to add defendants and similarly failed to serve Krystek with a motion to amend the complaint and add him as a party, plaintiffs' claims against Krystek should be dismissed.

**CONCLUSION**

Plaintiffs fail to allege that Steve Krystek had any, let alone sufficient related, contacts with the forum state of Massachusetts; as a result, this Court does not have personal jurisdiction over him. The plaintiffs' allegations as to Krystek are generic and conclusory; the entire basis for his inclusion in this lawsuit appears to be based on his supposed knowledge that Zea used a PFC credit card to pay for expensive business dinners and a visit to a strip club, and plaintiffs specifically fail to allege a crucial element of the one Count specific to Krystek (negligent supervision). Finally, plaintiffs' addition of Krystek as a defendant was procedurally flawed. Based on the foregoing, defendant Steve Krystek's Motion to Dismiss should be GRANTED.

---

[13] At the time plaintiffs filed their amended complaint, and even at the time Krystek was served, undersigned counsel had neither entered an appearance on behalf of Krystek nor had they advised plaintiffs' counsel that they would be representing Krystek.

102568033

Respectfully submitted,
Krystek,
By His Attorneys,

*/s/ Tory A. Weigand*

Tory A. Weigand, BBO #548553
tweigand@morrisonmahoney.com
Matthew J. Holmes, BBO #675994
mholmes@morrisonmahoney.com
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210-1181
Phone: 617-439-7500

## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 28, 2023.

*/s/ Tory A. Weigand*

Tory A. Weigand

102568033