# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

INA STEINER, DAVID STEINER, and
STEINER ASSOCIATES, LLC,

     Plaintiffs,

v.

EBAY INC., ET AL.,

     Defendants.

**CIVIL ACTION NO.: 1:21-CV-11181-DPW**

---

### DEFENDANT PROGRESSIVE F.O.R.C.E. CONCEPTS, LLC'S
### MEMORANDUM OF LAW IN SUPPORT OF ITS
### MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Tory A. Weigand, BBO #548559
tweigand@morrisonmahoney.com
Mathew J. Holmes, BBO #675994
mholmes@morrisonmahoney.com
Morrison Mahoney LLP
250 Summer Street
Boston, MA  02210-1181
(617) 439-7500
 *Counsel for Progressive F.O.R.C.E.
 Concepts, LLC*

# TABLE OF CONTENTS

Factual Allegations in Plaintiffs' Amended Complaint Pertinent to PFC ........................................1

ARGUMENT ...................................................................................................................6

I.      Plaintiffs Fail to Establish That This Court Has
        Personal Jurisdiction Over PFC ...........................................................................6

II.     The Amended Complaint Fails to State Any Viable State Based Claim
        As to PFC...........................................................................................................9

        A.      The Amended Complaint Fails to Allege That PFC Controlled,
                Directed, Ratified or Was Even Aware of Zea's Actions.....................................10

        B.      The Amended Complaint Is Devoid of Any Factual
                Allegation Supporting Any Assertion That
                Zea's Alleged Actions Were Within the Scope Of
                Any Agency With PFC ..........................................................................15

        C.      Plaintiffs' Attempt to Bootstrap Direct Liability Onto PFC on a Negligent
                Retention or Supervision Theory Fails As a Matter of Law................................16

        D.      The Amended Complaint Fails To State A Claim for: Violations of the
                Massachusetts Civil Rights Act; False Imprisonment; and Stalking....................18

        CONCLUSION...........................................................................................20

102539096

## Table of Authorities

*Afonso v. City of Boston,*
    587 Supp. 1342 (D. Mass. 1984) ...............................................................................11n.6

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 (2009) ...............................................................................................10

*Bally v. Ne. Univ.,*
    403 Mass. 713 (1989) .....................................................................................................18

*Boit v. Gar-Tec Prods., Inc.,*
    967 F.2d 671 (1st Cir. 1992)...................................................................................6n.4, 8

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).........................................................9

*Burleigh v. Alfa Laval, Inc.,*
    313 F. Supp. 3d 343 (D. Mass. 2018) .............................................................................20

*Buster v. Moore,*
    No. CIV. A. 97-637-F, 2000 WL 576363, at *22 (Mass. Super. Apr. 28, 2000) ..............18

*Carden v. Klucznik,*
    775 F. Supp. 2d 247, 249 (D. Mass. 2011) ....................................................................19

*Chlebda v. H.E. Fortna & Nro Inc.,*
    609 F.3d 1022 (1st Cir. 1979).........................................................................................8

*Cimino v. Milford Keg, Inc.,*
    385 Mass. 323, 330, 431 N.E.2d 920 (1982) ..................................................................18

*Copia Commc'ns, LLC v. AMResorts, L.P.,*
    812 F.3d 1, 4 (1st Cir. 2016)...........................................................................................6

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,*
    290 F.3d 42 (1st Cir. 2002)..................................................................................6, 7, 9

*Dalai v. Wolas,*
    100 Mass. App, Ct. 1134 (2022)....................................................................................17

*Denton v. Yazoo & Miss. Valley R.R. Co.,*
    284 U.S. 305, 308 (1932)...........................................................................................11n.6

*Dias v. Brigham Med. Assocs., Inc.,*
    438 Mass. 317 (2002) .....................................................................................................15

*Foster–Miller, Inc. v. Babcock & Wilcox Canada,*
    46 F.3d 138 (1st Cir. 1995)........................................................................................6n.4

*Foster v. The Loft Inc.,*
   26 Mass. App. Ct. 289 (1988) ........................................................................17

*Freeman v. Plan. Bd. of W. Boylston,*
   419 Mass. 548 (1995) ....................................................................................18

*Gabriel v. Superstation Media, Inc.,*
   2014 WL 551009 (D. Mass. 2014) ...............................................................15

*Galloway's Case,*
   354 Mass. 427 (1968) ................................................................................11n.6

*In re N.E. Compounding Pharmacy Inc.,*
   Litig., 2014 WL 4322409 *21-22 (D. Mass. 2014) ......................................15

*International Shoe Co. v. Washington,*
   326 U.S. 310  (1945) .......................................................................................7

*Irwin v. Ware,*
   392 Mass. at 765, 467 N.E.2d 1292(1984) .............................................. 17-18

*Kamayou v. Univ. of Mass. Lowell,*
   No. 16-cv-10098-IT, 2018 WL 4609130, at *8 (D. Mass. Sept. 7, 2018) ........19

*Ledbetter v. M.B. Foster Electric, Co.,*
   354 Mass. 780 (1970) ................................................................................11n.6

*Lerner v. Coleman,*
   485 F. Supp 3d 319 (D. Mass. 2020) ...........................................................12

*Lev v. Beverly Enterprises-Massachusetts, Inc.,*
   457 Mass. 234, 238 (2010) ...................................................................... 15-16

*Mosko v. Raytheon Co.,*
   416 Mass. 395 (1993) ...................................................................................15

*Murray v. Uber Technologies, Inc.,*
   486 F. Supp 3d 468, 477  (D. Mass. 2020) ..................................................17

*N.E. Compounding Pharmacy Inc. Litig.,*
   2014 WL 4322409 *21-22 (D. Mass. 2014) .................................................15

*Nixon v. Kysela Pere Ltd.,*
   2021 WL 3700253, *5 (W.D. Va. 2021 ........................................................10

*Noonan v. Winston Co.,*
   135 F.3d 85, 90 (1st Cir. 1998) ..................................................................7n.5

102539096

*O'Neil v. DaimlerChrysler Corp.,*
    538 F. Supp. 2d 304 (D. Mass. 2008) ................................................................19

*Phillip Exeter Academy v. Howard Phillips Fund, Inc.,*
    196 F.3d 284 (1st Cir. 1999) ..........................................................................9

*Planned Parenthood League of Mass., Inc. v. Blake,*
    417 Mass. 467 (1994) ................................................................................18

*Roggio v. City of Gardner,*
    2011 WL 1303141 (D. Mass. 2011) ...........................................................10, 15

*Sawtelle v. Farrell,*
    70 F.3d 1381 (1st Cir. 1995) ..........................................................................9

*Scott v. Am. Nat. Trust & Inv. Mgt. Co.,*
    2013 WL 12123836 (N.D. Texas 2013) .........................................................10

*Steep Hill Labs, Inc v. Moore,*
    2018 WL 1242182, *11 (N. D. Cal. March 8, 2018 ) ........................................19

*Thunder Studios, Inc. v. Kazal,*
    13 F.4th 736 (9th Cir. 2021) .........................................................................19

*Trans-Spec Truck Service, Inc. v. Caterpillar Inc.,*
    524 F.3d 315, 321 (1st Cir. 2008) ...............................................................1n.1

*United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.,*
    987 F.2d 39 (1st Cir. 1993) ........................................................................6n.4

*United States v. Swiss Am. Bank, Ltd.,*
    274 F.3d 610 (1st Cir. 2001) .............................................................6n.4, 7, 7n.5

*Vicarelli v. Business Intern, Inc.,*
    973 F. Supp. 241 (D. Mass. 1997) ...............................................................17

*Wang Lab., Inc. v. Business Incentives, Inc.,*
    398 Mass. 854 (1986) ...............................................................................16

## Statutes

Cal. Civ. Code 1708.7(g) ..............................................................19, 19n.9, 20, 20n.10

G.L. c. 223A, 3...........................................................................................7

## Other Authorities

Restatement (Second) of Agency § 228 (1958)...............................................16

Restatement (Second) of Torts § 36 .......................................................................... 19-20

102539096

This action is premised on the criminal conduct of former eBay security team members undertaken as to Natick residents Ira and David Steiner as well as Steiner Associates, LLC, a publisher of an ecommerce newsletter. Defendants include 11 individuals as well as eBay and Progressive F.O.R.C.E. Concepts, LLC (PFC). PFC is a Nevada based company and was an independent contractor providing certain security services to eBay, including providing one of the individual defendants, Veronica Zea, to eBay who worked out of eBay's California office and as an eBay analyst in its GIC, or Global Intelligence Center. The allegations of the Amended Complaint make clear that Zea was, at all material times, directed by eBay's former supervisory security team supervisor/employees as to her activities and responsibilities at eBay, and particularly the events in question. As more fully set forth below, the claims as to PFC must be dismissed as:

- this Court lacks personal jurisdiction over PFC as to the state-based claims;

- the allegations specific to PFC are conclusory and insufficient to state any plausible liability based on vicarious liability or otherwise for any of the alleged conduct of the individual eBay security team defendants, including Zea as to any of the state-based claims;

- the vicarious liability claims fall as PFC did not direct, control, or supervise Zea; and

- the negligent retention/supervision claims fail as PFC did not have any prior notice that Zea may have criminal proclivities nor was the harm foreseeable.

### Factual Allegations in Plaintiffs' Amended Complaint Pertinent to PFC[1]

Plaintiffs Ina and David Steiner operate a trade publication, Ecommercebytes which reports on ecommerce business including eBay. Compl 2;  23. The gravamen of the Amended Complaint

---

[1] The referenced allegations are taken from plaintiffs' Amended Complaint as well as the exhibits to the plaintiffs' initial Complaint that are incorporated by reference. *Trans-Spec Truck Service, Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008);  Fed. R. Civ. P. 10(c) (Exhibits attached to the Complaint are" also "properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6)" ).

is that the individual defendants, either former executives of eBay or former members of eBay's security department, devised and engaged in a scheme of harassment in an effort to stifle the plaintiffs' reporting on eBay which conduct took place between June and August 2019. It is alleged that the scheme was the result of former senior eBay executives, defendants Wymer (Chief Executive Officer) and Wenig (Chief Communications Officer), frustration with the Steiner's newsletter tone and content. AC. 3. It is alleged that eBay, through Wymer and Wenig, sent a directive to eBay security personnel, particularly James Baugh, Chief of Security for eBay granting authority to Baugh and the individual defendants "to terminate the reporting of the Steiners by whatever means necessary," do "whatever it takes," and "crush this lady" and/or that the campaign resulted from communications between eBay senior executives and defendant Baugh as eBay Chief of Security. AC. 4; 15; 61; 65; 75; 78; 79; 82; 85; 86; 96; 100; 110; 111; 129;  see also Exh. A to AC. para. 20,24-25, 29, 32, 36-39, 44, 49, 55, 177.

Based on the directive from eBay's executive management, defendant Baugh directed the remaining individual defendants, all members of eBay security department (Harville, Gilbert, Cooke, Popp, Stockwell and Zea), to engage in certain conduct intended to "intimidate, threaten, torture, terrorize, stalk and silence the Steiners." AC. 6;  Exh. A to AC. (20; 24-25; 29,32,36-39, 44, 49, 55, 177). All of the conduct undertaken between June and August 2019, was to "carry out Wenig and Wymer's plan" (AC. 4-8) and  included, *inter alia* creating a phony Twitter account pretending to be a eBay seller and threatening Ms. Steiner to stop reporting on eBay;  sending pornographic material/publications to neighbors of the plaintiffs;  arranging and having delivered to the Steiners' home "death theme" deliveries such as a "sympathy" wreath;  delivering live spiders, cockroaches, a bloody pig mask, a book entitled Grief Diaries: Surviving the Loss of a Spouse;  traveling to Massachusetts and surveilling the Steiner's home including attempting to

place a GPS tracker on plaintiffs car;  and otherwise publicly posting the Steiner's address on Twitter, Craigslist and other websites inviting strangers to the Steiner's home for sex parties and yard sales. AC. 4-8;  et seq.

The allegations as to PFC are that it is a limited liability company with a principal place of business in Las Vegas, Nevada and that it hired analysts for eBay and paid their salaries including as to defendant Zea. AC. 26. Zea is alleged to be a California resident who at all times and together with eBay employees Harville, Gilbert, Cooke, Popp, and Stockwell was a member of the eBay security (GIC) department.[2] AC. 38;  Ex A to Compl at 15(f). It is otherwise alleged that all of the individual defendants, including Zea, were at all times and as to all of the conduct at issue, directed and controlled as to their activities by defendant Baugh as Chief of Security for eBay who, in turn, it is alleged ultimately reported to defendant Wenig. AC. 4; 52; 127; 159; 257; 281; 369; 75; 143; 163; 234; 271; 94;  Exh A to Comp. 26,28, 41, 43, 51, 62-65, 85, 92, 95, 128-30, 140, 165, 169, 181-82, 184. According to the Amended Complaint, all of the individual eBay security team defendants "took direction, directly and indirectly, from senior management at eBay" including and particularly Baugh and as to the specific conduct identified in the Amended Complaint and which is otherwise alleged to be implementation of the "plan" or "orders" of the eBay executive defendants. AC. 4; 15; 61; 65; 75; 78; 79; 82; 85; 86; 96; 100; 110; 111; 129;  52;

_____

[2] While the Amended Complaint makes periodic and conclusory references to all of the individual defendants "acting within the scope of their employment with eBay and PFC," (Compl. 130; 143; 147; 152; 177; 178; 182; 271) it is undisputed that all of the individual defendants were employees of eBay except for Zea who was an eBay contractor provided by PFC. The Amended Complaint otherwise makes clear that all of the individual defendants, including Zea, were under the direction and control of eBays supervisors and were, in fact, directed and controlled as to the putative conduct as to the Steiners by eBay supervisors pursuant to the purported plan of individual eBay executive defendants Wenig and Wymer. Compl.4; 7; 13; 37; 59; 61-64; 66; 69;  77; 94; 99; 107; 121; 133; 191; 212;  Exh A to Comp. 26,28, 41, 43, 51, 62-65, 85, 92, 95, 128-30, 140, 165, 169, 181-82, 184. The Amended Complaint is devoid of any allegations that PFC knew of the conduct; participated in the conduct;  or in any way ratified the conduct.

102539096

127; 159; 257; 281; 369; 75; 143; 163; 234; 271; 94. All of the individual eBay security team defendants were terminated in or about September 2019. There are no allegations that PFC participated in the conduct;  knew of the conduct;  condoned or ratified the conduct;  had any knowledge of the asserted plan or directive of senior eBay management or that any of the conduct, including as to defendant Zea, was within the scope of any agency with PFC.

Plaintiffs, in amending their complaint, attempt to buttress their conclusory allegations as to PFC by adding the likewise conclusory allegation that PFC engaged in or financed the conspiracy or bad actions of eBay's employees. AC. 15;  16;  79;  82;  94;  345;  et seq. For example, plaintiffs make conclusory and generic references to PFC, stating: "along with PFC" engaged in coordinated effort…. AC 1; "Zea an eBay contractor employed by PFC through Krystek…."; "all knew and approved of the plan to deal with the Steiners"; "with the support of PFC and Krystek—to terminate the reporting of the Steiners by whatever means necessary….."; "while acting in their scope of their employment under the authority of and for the benefit of eBay PFC and Krystek…" AC 4; "the utter depths eBay and PFC would stoop to take Steiner's down…" AC 5; Steiner "calls to the local police grew more frequent which Zea and Popp at the direction of Baugh with the support of PFC and Krystek…." Monitored scanner; "persist with the conspiracy to intimidate…..funded by PFC with the assistance of Krystek…" AC 10; "Zea was employed by PFC and contracted with eBay was acting within the scope of her employment by PFC and with the assistance of Krystek when carrying out Wenig, Wyner and Jones' directive" AC 15; eBay and PFC conspiracy through its employees and contractors AC 16; "the conduct of eBay and PFC stifling….. AC 17; PFC, upon information and belief was paid by eBay during Zea's employment to serve as her manager through her placement with eBay.…… AC 38; "and the conspiracy that followed would be financed by PFC."

4

Plaintiffs subsequently clarify that their allegations of PFC financing the enterprise (the linchpin of their justification for involving PFC in this action) actually consisted of Zea utilizing a PFC credit card, at the direction and control of Baugh, and the credit card expenditures subsequently being reimbursed by eBay. However, plaintiffs only allege that PFC was aware of a handful of specific expenditures, namely "expensive dinners and strip clubs," (AC. 352) which, far from constituting "improper purchases" were instead fairly typical, and more importantly legal, expenditures. There is no allegation—nor could there be—that this awareness took place before the events with the Steiners.

Perhaps knowing that PFC did not actually learn of or approve any improper expenditures, plaintiffs instead pivot to the allegation that PFC was negligent in its oversight (negligent retention/supervision counts) of Zea, alleging that PFC did not investigate Zea's credit card use and did not provide sufficient oversight. AC. 351-354.

Five of the individual defendants from the eBay security team, including Zea, subsequently pleaded guilty to conspiracy to commit cyberstalking and conspiracy to obstruct justice. While Zea was paid by PFC (a loaned servant to eBay) with PFC paid by eBay, PFC had no knowledge of or in any way directed or controlled Zea's activities as a member of eBay's security team and particularly as to the alleged putative conduct set forth in the Amended Complaint with no factual allegations in the Amended Complaint to the contrary. Indeed, there is no allegation that PFC had any knowledge of the activities of the security team as to the Steiners including Zea, until informed in mid to late Summer of 2019 at which time investigation and termination of Zea ensued.

The Amended Complaint contains twelve counts as to PFC[3], each a claim under the state law of either Massachusetts or California. Plaintiffs do not adequately plead a connection or nexus

---

[3] Counts V (Negligent Hiring) and XIV (Ratification) are plead only as to eBay.

between PFC and Massachusetts sufficient to establish this court's jurisdiction over PFC. Despite the length of the Amended Complaint and the graphic underlying conduct of eBay's individual security team members taken from the findings of the criminal investigation, the allegations as to PFC are entirely conclusory and insufficient to impose any vicarious or other liability upon PFC. Based on the specific allegations of the Amended Complaint, Zea took the putative actions at the express and sole control and direction of eBay's supervisory security team members (i.e. Baugh, Harville, etc.) without any knowledge, support, participation of or acquiescence or ratification by PFC. Zea's actions, in turn, were otherwise clearly outside the scope of any loaned servant or agency relationship with PFC.

## ARGUMENT

### I. PLAINTIFFS FAIL TO ESTABLISH THAT THIS COURT HAS PERSONAL JURISDICTION OVER PFC[4]

Absent a viable federal claim, both the Massachusetts long arm statute and due process must be met. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002); *Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016). Plaintiffs have plead nothing to establish that PFC had or has any relationship or contact with Massachusetts

---

[4] The "court must have personal jurisdiction over the parties to hear a case, that is, the power to require the parties to obey its decrees." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 617 (1st Cir. 2001). The court may rule on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing. In such cases, the plaintiff must make a prima facie showing that personal jurisdiction exists. *See id.* at 618; *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F.2d 39, 43-44 (1st Cir. 1993) [hereinafter "*Pleasant St. II*"]. The plaintiff must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the [D]ue [P]rocess [C]lause of the Constitution." *Pleasant St. II*, 987 F.2d at 44 . It is also well settled "that plaintiffs may not rely on unsupported allegations in their pleadings to make a *prima facie* showing of personal jurisdiction," *Boit,* 967 F.2d at 675, and the plaintiff "is obliged to adduce evidence of specific facts." *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995).

102539096

sufficient to allow this Court to exercise jurisdiction, either general or specific. *See United States v. Swiss Am. Bank*, 274 F.3d 610, 618 (1st Cir. 2001).[5]

Under the Massachusetts long-arm statute personal jurisdiction arises, *inter alia*, where the defendant transacts business in the commonwealth;  contracts to provide services and things within the commonwealth;  and where it causes tortious injury within the commonwealth. G.L.c. 223A, 3. Jurisdiction upon a non-resident corporation can arise through the conduct of its agents so long as the actions are authorized or ratified. *Daynard*, 55-56. Due process, in turn, requires minimum contacts between a nonresident defendant and the forum state such that the exercise of personal jurisdiction over that defendant accords with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

Here, plaintiffs make no allegation that PFC owns any property, offices or transacts any business in Massachusetts or otherwise has contracted to provide services in Massachusetts. Indeed, it is simply alleged that PFC is a Nevada based corporation, is a contractor to eBay, and that one of the individual defendants was paid by PFC and was a resident of California (i.e. Zea). AC. 4;  26; 35. As to Zea, it is alleged she was a member of the eBay's GIC and participated in some of the conduct identified in the Amended Complaint including travelling to Massachusetts in August 2019 to surveil the Steiners. It is alleged that she was exclusively under the direction and control as to those putative activities by eBay supervisors. There is otherwise nothing alleging that PFC sent Zea to Massachusetts;  knew of or ratified any of the alleged conduct attributed to

---

[5] Specific jurisdiction requires a "demonstrable nexus" between the claims of the plaintiff and the defendant's contacts in the forum state. *Id.* Such contacts must demonstrate that the defendant "purposeful[ly] avail[ed] [itself] of the privilege of conducting activities in the forum state." *Noonan v. Winston Co.*, 135 F.3d 85, 90 (1st Cir. 1998). General jurisdiction, on the other hand, exists when the defendant has engaged in "continuous and systematic activity, unrelated to the suit, in the forum state." *Swiss Am. Bank*, 274 F. 3d at 618.

her or any facts providing any basis that PFC directed and controlled Zea's conduct as to the Steiner's or any facts setting out any scope of any agency as to PFC. The allegation as to the individual defendants "acting within the scope of employment with eBay and PFC" or their actions being approved of or financed by eBay and/or PFC are entirely conclusory as to PFC with no factual basis. Further, the clear gravamen of the allegations are that Zea was acting at the exclusive and specific direction of eBay supervisors with no allegation whatsoever that PFC knew or, condoned or participated in such activities or that such activities were within the scope of any agency with PFC. Of note,  while plaintiffs attempt to maintain the allegation that Zea was under the direction and control of both eBay and PFC, they inadvertently acknowledge the truth in their motion for limited discovery when they state "the following eBay employees were interviewed:… 8) Defendant Veronica Zea."

The properly pled allegations fall far short of establishing jurisdiction over PFC either under the long arm statute or due process minimum contacts. *See Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992)("The 'plaintiff must go beyond the pleadings and make affirmative proof,' " and "may not rely on unsupported allegations in their pleadings to make a *prima facie* showing of personal jurisdiction.") (quoting *Chlebda v. H.E. Fortna & Nro Inc.*, 609 F.3d 1022, 1024 (1st Cir. 1979)).

The allegation that PFC is a contractor to eBay providing certain security related services is no basis to premise personal jurisdiction in Massachusetts. As a separately constituted corporation, jurisdiction must be assessed based on PFC's own contacts, not any attributable to eBay or its employees. Further, as to the allegations pertaining to defendant Zea and any reliance on her allegedly causing injury to the plaintiffs in Massachusetts, it remains that the Amended Complaint is entirely devoid of factual allegations that her conduct was within the scope of any

agency or employment with PFC. Indeed, the Amended Complaint confirms and makes clear that Zea was working as a member of eBay's GIC including as to the putative conduct in Massachusetts and pursuant to the exclusive and express direction and control of eBay and its supervisors. To any extent that personal jurisdiction can be premised on a corporation's agent's activities or conduct, there must be a factual basis and supporting allegations or evidence that the agent was acting within the scope of the agency. There are no such allegations as to PFC, with the Amended Complaint otherwise clear that the scheme and putative conduct by the individual defendants, including Zea, was at the suggestion, direction, and exclusive control of eBay personnel with no allegation whatsoever supporting any basis to find that Zea acted pursuant to any direction from or pursuant to any possible agency with PFC. There is likewise no allegation that PFC knew of or ratified Zea's alleged conduct. *Daynard*, 290 F. 3d at 55-56 (personal jurisdiction based on evidence/allegations of ratification).

Given the lack of any affirmative showing that the claims arise out of contacts PFC had with Massachusetts;  that PFC otherwise purposefully availed itself of the privilege to conduct business in Massachusetts;  and that exercising jurisdiction over PFC would be reasonable, the Amended Complaint must be dismissed for lack of personal jurisdiction. *Sawtelle v. Farrell*, 70 F.3d 1381, 1388 (1st Cir. 1995);  *Phillip Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999);  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

## II.   THE AMENDED COMPLAINT FAILS TO STATE ANY VIABLE STATE BASED CLAIM AS TO PFC

The state law claims as to PFC are essentially all based on vicarious liability and the conduct of Zea and the allegation she was paid by PFC or that the expenditures she made on behalf of eBay, which were ultimately paid for by eBay, were made using a PFC credit card. The only deviation from a vicarious liability theory, as to PFC, are the counts for negligent supervision and

retention; claims which mimic the essence of a vicarious liability theory, and which fail as a matter of law regardless. The Amended Complaint fails to plead any plausible vicarious liability claim as the allegations establish that Zea's actions were at the sole direction of eBay and as there are no facts supporting any plausible finding that Zea's conduct was in anyway within the scope of any possible agency with PFC. *See Roggio v. City of Gardner*, 2011 WL 1303141 (D. Mass. 2011)(granting motion to dismiss as no plausible claim of vicarious liability); *see also Iqbal*, 129 S. Ct. at 1949-50 ("the tenet that a court must accept as true all of the allegations contained in a Amended Complaint is inapplicable to legal conclusions"). *See Nixon v. Kysela Pere Ltd.*, 2021 WL 3700253, *5 (W.D. Va. 2021) ("District Courts routinely evaluate whether plaintiff has stated a claim for vicarious liability at the motion to dismiss stage").

### A.     The Amended Complaint Fails to Allege That PFC Controlled, Directed, Ratified or Was Even Aware of Zea's Actions

Plaintiffs attempt to implicate PFC by alleging that Zea and the other individual eBay security team defendants were "acting within the scope of their employment with eBay and PFC." (AC. 130; 143; 147; 152; 177; 178; 182; 271). However, this rote and conclusory assertion is woefully insufficient to state a plausible claim or transfer liability based on *respondeat superior*/ vicarious liability as to PFC or to establish that PFC was involved in a conspiracy with Zea, eBay, and others. *Roggio, supra*, ("Conclusory statements that a person was acting as an agent or within the scope of employment are not entitled to any assumption of truth"); *Scott v. Am. Nat. Trust & Inv. Mgt. Co.*, 2013 WL 12123836 (N.D. Texas 2013) (same).

Other than Zea and that she was allegedly paid by PFC, no person affiliated with PFC in any capacity is named or mentioned in the Amended Complaint. There is likewise no allegation that PFC employed, directed or controlled any of the other individual eBay defendants as to the putative conduct at issue. The allegations are to the contrary asserting that they were all eBay

employees. While it is alleged that Zea was an contractor supplied to eBay by PFC, the Amended Complaint is devoid of any factual as opposed to conclusory allegations as to PFC, let alone any facts that PFC directed, controlled, or even had knowledge of Zea's actions as they relate to the Steiners.[6] Plaintiffs do not (and cannot) allege that a specific manager, supervisor, or agent of PFC was directing Zea or was even aware of her activities in relation to the Steiners. Indeed, the Amended Complaint is replete with allegations to the contrary in that Zea, was at all times and as to the allegedly harassing/stalking conduct, being directed and controlled by the eBay supervisors and not in any way by PFC. The specific allegations include the following:

- **eBay… sent a directive and enlisted at least seven members of the eBay security staff** including **Veronica Zea** to deal with the Steiners. AC. ¶ 4.
- **Wenig and Wymer's henchmen, including Zea**, traveled over 3,000 miles from California to Natick, Massachusetts to continue the conspiracy to intimidate, threaten, torture, terrorize, stalk and silence the Steiners. AC. ¶ 6.
- **Zea** and Harville, **carrying out the orders of eBay senior executives**, menacingly stalked and tailed the Steiners. AC. ¶ 7.
- The Steiners were paralyzed with fear. Their calls to the local police grew more frequent, which **Zea** and Popp, **at the direction of Baugh**, monitored. AC. ¶ 10 (here plaintiffs attempt to include PFC in this allegation, amending the allegation by adding the conclusory statement "at the direction of Defendant Baugh, *with the support of Defendants PFC and Krystek*,".
- Zea was carrying out the directives of Wenig, Wymer, and Jones *with the assistance of Krystek* and was acting in furtherance of eBay's direct command. AC. 15
- Baugh directed the other defendants AC. 52; 127; 159; 257; 281; 369.
- **Zea** and other individual defendants make up some of the members of the eBay security division. The entire team was a direct report of eBay's head of security and

---

[6] Under the loaned servant doctrine, there can be no liability upon the loaning "employer" where the loaned servant is subject to the control and direction of the special employer. *Galloway's Case*, 354 Mass. 427, 430 (1968);  *Ledbetter v. M.B. Foster Electric, Co.*, 354 Mass. 780 (1970(no liability upon lending employer);  *Afonso v. City of_Boston,* 587 Supp. 1342 (D. Mass. 1984)(motion to dismiss as no vicarious liability based on borrowed servant doctrine);  see also *Denton v. Yazoo & Miss. Valley R.R. Co.*, 284 U.S. 305, 308 (1932)( "When one person puts his [employee] at the disposal and under the control of another for the performance of a particular service ... [the employee] is to be dealt with as [that] of the latter and not of the former." Zea worked at eBay and under its direction for years.

operations, who **ultimately reported to Wenig** and "all" took instruction directly and indirectly from senior management of eBay. AC. ¶ 40.

- **Baugh directed Zea**, to monitor the EcommerceBytes newsletter posts. AC. ¶ 52.
- eBay executives directed and granted the other defendants carte blanche authority to torture the plaintiffs, *with the support of Defendants PFC and Krystek*. AC. 4;
- **eBay conspired with Zea** to intimidate, threaten, torture, terrorize, stalk and silence the Steiners and all defendant reported to eBay management. AC. ¶ 61.
- In June 2019, Baugh met with Popp and Zea about a Steiner "op."
- All individual defendants acted "under direction from eBay's executive leadership and were carrying out eBay's goal. Compl 4-8.
- Armed with **directives from Wenig and Wymer**, Baugh and the other Defendants, including **Zea**, **set in motion their conspiracy** to intimidate, threaten, torture, terrorize, stalk and silence the Steiners. AC. ¶ 4; 15; 73; 82; 83; et seq.
- As admitted to by the criminal defendants (which includes Zea) during their plea hearings, **their actions were carried out to please "the boss" i.e. Wenig**. AC. 84.
- "the conspiracy hatched by eBay and its senior management; " AC. 136
- **Acting at the direction of eBay** to silence the Steiners, **Zea** rented two vehicles and checked into the Ritz Carlton in Boston. AC. ¶ 143.
- "campaign of terror and threats to kill by eBay, at the direction of its senior management…" AC. 208
- **Baugh, acting within the scope of his employment with eBay, ordered Zea** to create a false document featuring the Steiners as eBay Persons of Interest ("POI"). AC. ¶ 212.
- Th**e [eBay] head of security and operations had the responsibility for overseeing the Defendants, including** but not limited to Baugh, Harville… and **Zea**, while **Wenig and Wymer, executives at eBay, were actively directing the unlawful behavior**. AC. ¶ 215.
- Defendant Baugh "instructed all individual defendants…." AC. 272
- Popp was able to coach Zea when she spoke with eBay's legal department. AC. ¶ 280.
- In either April or May 2019, according to CW-1, CW-2. and CW-3, **Baugh summoned Popp, Stockwell, Analyst 1, and Zea to an eBay conference room**. Baugh stated that the GIC would be writing an anonymous, threatening letter to Mrs. Steiner to get her to stop publishing articles critical of eBay. Wilson Aff., ¶ 26.
- In July 2019, **Baugh directed Zea** to monitor Mrs. Steiner's Newsletter posts, screenshot them, and forward them by WhatsApp on a real-time basis, day or night, any day of the week. Wilson Aff., ¶ 28.
- In mid-July 2019, **Baugh tasked the GIC** with identifying the author of the Parody Account, Fidomaster;  a top priority coming from eBay's executive leadership. Wilson Aff., ¶ 32.

- **Baugh directed Zea** to anonymously harass the Steiners, with the goal of distracting Mrs. Steiner and making her uncomfortable to the point where she would stop writing negative articles about eBay. Wilson Aff., ¶ 41.
- **Baugh** also directed **Zea** and other GIC analysts to pay for the harassing deliveries using prepaid debit cards, and to make online orders using anonymous email accounts, virtual private networks, and cell phones and computers specifically purchased for the harassment campaign. Wilson Aff., ¶ 43.
- In early August 2019, **Baugh recruited Harville and Zea to travel to Boston** to physically surveil the Steiners. Wilson Aff., ¶ 51.
- On August 14, 2019, **Baugh directed Zea to go to a Target store to purchase permanent markers that could be used to write on the Steiners' fence**. Zea purchased these markers at approximately 8:10 p.m. that day (as reflected in a Target receipt obtained by the FBI from eBay). Wilson Aff., ¶ 63.
- On or about August 15, 2019, **Baugh also directed Zea** to create a document that featured he Steiners as eBay "Persons of Interest" (or "POIs"). Wilson Aff., ¶ 56.
- During a meal on August 16, 2019, **Baugh discussed with Harville and Zea that they would need to start "spamming" the Steiners again**. Wilson Aff., ¶ 95.
- **Baugh directed Popp to monitor Zea's interview with eBay's legal department**. Popp listened on speakerphone and **gave prompts to Zea** that helped her get the conference cover story out. Wilson Aff., ¶ 184.
- **Baugh directed Zea to delete her WhatsApp communications and phone data**. Wilson Aff., ¶ 185.
- On August 6, 2019, **Baugh, Popp, Stockwell, Zea, and other members of the GIC met at eBay headquarters to plan** the delivery to the Steiners' home of unwanted and disturbing items to distract the Steiners from publishing the Newsletter.
- On August 12, 2019, **Baugh sent Zea** the following WhatsApp message: "Starting now through Tuesday night double our effort on everything. Spam, house deliveries, etc. I don't want anything delivered on Thursday, so the cutoff should be Wednesday night — wake them up with a limo driver or something and then everything goes cold Thursday morning. ... Take down all Craigslist posts late Wednesday night. Stop spam late Wednesday night, etc. Ex. B, Indictment of Baugh and Harville, ¶ 16.
- Between August 5th, 2019 and August 23rd, 2019, Popp and Zea, along with Stephanie Stockwell, Brian Gilbert, Jim Baugh, David Harville, Phil Cook, and others, all then employees or contractors of eBay, Inc., agreed to engage in a stalking campaign targeting the Steiners. Zea Plea, p. 30-31, 38, 41.
- **The campaign arose from communications between eBay senior executives and Jim Baugh**, who was then eBay's senior security officer, it was intended to intimidate or harass the Steiners. Zea Plea, p. 32, 38, 41.
- **Baugh intended** for the harassment and intimidation to distract the Steiners from publishing the newsletter, to change the newsletter's coverage of eBay, and

ultimately to enable eBay to contact the Steiners to offer assistance with that harassment, what the government has called a "White Night Strategy." Zea Plea, p. 33, 38, 41.

- On August 6th, 2019, at a Safeway Supermarket in Santa Clara, **at Baugh's direction**, Zea wore a baseball cap and paid cash to purchase prepaid gift cards for use in ordering harassing deliveries. Zea Plea, p. 35, 38, 41.
- On August 14th, 2019, **at Baugh's direction**, at a San Jose area target, Zea purchased permanent markers for others to use in writing a message on the Steiners' property. Zea Plea, p. 35.
- On August 14th, 2019, **at Baugh's direction**, Zea registered herself and Harville to attend a software development conference in Boston as cover for their trip to Boston to surveil the Steiners. Zea Plea, p. 35, 38, 41.
- On August 16th, 2020, **at Harville's request**, Zea used the internet to locate a Boston hardware store for Mr. Harville to purchase tools that he could use to break into the Steiners' garage for purposes of installing a GPS tracker on their car. Zea Plea, p. 36, 38, 41.
- On August 21st, 2020, when an officer from the Natick police department called Zea from the lobby of Boston's Ritz Carlton Hotel, where the surveillance team was staying, Zea falsely told the officer that she had a call and could not speak with him, and then **at Baugh's direction**, left the hotel to avoid the officer's request to speak. Zea Plea, p. 36, 38, 41.

Given that the clear <u>factual</u> gravamen of the Amended is that Zea was, at all times, directed and controlled by eBay supervisors, particularly Baugh, as to the conduct pertaining to the Steiners with no factual allegation of involvement, participation or knowledge of PFC, there is no plausible claim as to PFC. The factual allegations include that Zea acted at the express direction of eBay supervisors, generally Baugh, Harville, or Popp. Plaintiffs make no allegations that any supervisor, manager, executive, or owner of PFC in any way directed or controlled Zea's conduct or activities as to the plaintiffs or as an analyst in eBay's GIC. There are no factual allegations that PFC in anyway directed or even knew about the putative conduct alleged to have been taken by Zea as to the Steiners until after the fact. Beyond the conclusory and bare allegation that Zea was acting "within the scope of employment with eBay and PFC", not only is there nothing pled to establish that PFC directed, controlled, or even knew of Zea's actions as to the Steiners but the Amended Complaint's factual allegations make unequivocally clear she was acting, at all times, at the

direction of eBay supervisors without any knowledge or participation of PFC. The Amended Complaint fails to set out any plausible claim as to PFC requiring dismissal of the state law-based claims. *In re N.E. Compounding Pharmacy Inc.* Litig., 2014 WL 4322409 *21-22 (D. Mass. 2014)(failure to sufficiently plead vicarious liability claim); *Roggio*, *supra* (same).

###    B.    The Amended Complaint is Devoid of Any Factual Allegation Supporting Any Assertion That Zea's Alleged Actions Were Within The Scope Of Any Agency with PFC

Zea was loaned/contracted out to eBay to work as an analyst in their GIC. The Amended Complaint alleges that Zea took actions to terrorize the Steiners, beginning with frightening, annoying, or embarrassing deliveries, and ending with Zea travelling to Massachusetts to stalk, harass, and terrorize the Steiners in person. Leaving aside that Zea, based on the unequivocal allegations of the Amended Complaint, was acting at the specific direction of eBay as to the asserted conduct and pursuant to a purported plan or order from eBay executives, there are no facts supporting any plausible basis that Zea was acting within the scope of any possible agency with PFC as to the conduct in question. *Roggio*, 2011 WL 1303141 (dismissing Complaint as no plausible vicarious liability claim as no factual allegations that "employee" acting within scope of employment); *Gabriel v. Superstation Media*, *Inc*., 2014 WL 551009 (D. Mass. 2014) (same).

Under the doctrine of *respondeat superior*, "an employer, or master, should be held vicariously liable for the torts of its employee, or servant, committed within the scope of employment." *Lev v. Beverly Enterprises-Massachusetts, Inc.*, 457 Mass. 234, 238 (2010), citing *Dias v. Brigham Med. Assocs., Inc.,* 438 Mass. 317, 319–320 (2002). "The 'conduct of an agent is within the scope of employment if it is of the kind he is employed to perform, ... if it occurs substantially within the authorized time and space limits, ... and if it is motivated, at least in part, by a purpose to serve the employer' " *Lev* citing *Mosko v. Raytheon Co.,* 416 Mass. 395,

399 (1993)  quoting *Wang Lab., Inc. v. Business Incentives, Inc.,* 398 Mass. 854, 859 (1986). See Restatement (Second) of Agency § 228 (1958).

Here, while agency and within the scope are often times factual issues, there remains no facts plead that plausibly provide any basis that Zea was acting within the scope of any possible "employment" or agency with PFC. While paid by PFC to perform analysis for eBay, there are no factual allegations supporting any finding that Zea's alleged conduct as to the plaintiffs was the kind employed to be performed or which in any way served any interest of PFC. There is no allegation that the purpose of any employment or agency (particularly with PFC) was to harass, stalk, or intimidate critics of eBay at the direction and control of eBay supervisors. There are no factual allegations supporting a plausible finding that PFC was aware of any of the complained of actions including that Zea had travelled to Massachusetts until after the fact. Plaintiffs make numerous allegations throughout their Amended Complaint that the actions of Zea and the other individual defendants were done to silence or otherwise intimidate critics of eBay. However, there is no allegation that the conduct of Zea (or the other individual eBay defendants) was in any way intended to benefit PFC, nor could such allegation be reasonably asserted. Zea's conduct was not of the kind she was paid to perform nor was it motivated in any part by a purpose to serve PFC with the Amended Complaint devoid of sufficient facts to support any plausible showing to the contrary. Plaintiffs have failed to plead any plausible claim as to PFC, and in particular the claims as to PFC which rely on a vicarious liability theory[7] fail as a matter of law.

### C.    *Plaintiffs' Attempt to Bootstrap Direct Liability Onto PFC on a Negligent Retention or Supervision Theory Fails As a Matter of Law*

---

[7] Count I: Intentional Infliction of Emotional Distress, Count II: Stalking, Count III: Negligent Infliction of Emotional Distress, Count IV: Negligence, Count VIII: Assault, Count IX: MCRA, Count X: Defamation, Count XI: Trespass, Count XII: False Imprisonment, and Count XIII: Conspiracy.

"[T]o state a claim for these torts requires that a plaintiff allege that the employer knew, or should have known, that the offending employee had a proclivity to commit the complained-of acts, and that the employer nevertheless failed to take corrective action." *Vicarelli v. Business Intern, Inc.*, 973 F. Supp. 241 (D. Mass. 1997) citing *Foster v. The Loft Inc.*,  26 Mass. App. Ct. 289 (1988). A claim for negligent supervision or retention requires allegations that the employer was on prior  notice of any proclivity of employee to commit acts complained of. *Murray v. Uber Technologies, Inc.*, 486 F. Supp 3d 468, 477  (D. Mass. 2020). See also *Dalai v. Wola*s, 100 Mass. App, Ct. 1134 (2022)(awarding judgment as a matter of law as to failure to supervise retain claim as insufficient evidence that employer on notice of past criminal conduct).

Plaintiffs provide no allegations of conduct that should have put PFC on notice as to Zea's proclivity or tendency to engage in criminal conduct (assuming such tendencies existed in the first place). The crux of a negligent retention or supervision claim is that the employer knew or was on notice as to the employee's poor character or bad tendencies. The strongest allegations plaintiffs were able to plead to this effect were that Zea used her PFC credit card (charges on which were ultimately paid for by eBay) for "expensive dinners and strip clubs," (AC. 352). Neither activity is illegal. Plaintiffs' ask this Court to make the leap that merely because PFC was aware of Zea charging "expensive dinners and strip clubs," they should have anticipated that she would engage in a "campaign of terror" against eBay's perceived enemies.

There is also no allegation, nor could there credibly be one, that PFC should have anticipated that it's loaned servant, Zea, would have engaged in the "campaign of terror" alleged by the plaintiffs. In order to properly plead a negligent supervision or retention claim, a plaintiff must assert that the injury was within the foreseeable risk. *Foster v. Loft, Inc.*, 26 Mass. App. Ct. 289, 295, 526 N.E.2d 1309, 1313 (1988), citing *Irwin v. Ware*, 392 Mass. at 765, 467 N.E.2d 1292,

and quoting from *Cimino v. Milford Keg, Inc.*, 385 Mass. 323, 330, 431 N.E.2d 920 (1982). Zea was contracted to eBay as an analyst in their GIC; there is nothing plead to indicate that PFC should have anticipated that an analyst would go off the rails and begin harassing eBay enemies. Because the harm alleged by plaintiffs was not foreseeable by PFC, the negligent supervision and retention claims must fail. In short, this is simply not a tenable theory.

### D.   *The Amended Complaint Fails To State A Claim for: Violations of the Massachusetts Civil Rights Act; False Imprisonment; and Stalking*

Defendant PFC incorporates by references the arguments and submissions of defendants eBay, Weiner, Wyman, Gilbert, and Baugh as to these claims as they apply equally to PFC.

Reduced to essentials, plaintiffs' claim under the Massachusetts Civil Rights Act ("MCRA") is subject to dismissal because it does not allege—as to any of the Defendants, but specifically as to PFC—that PFC's conduct involved "an actual or potential physical confrontation accompanied by a threat of harm," which is "an element of MCRA claims."[8] *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 473 (1994); *Buster v. Moore*, No. CIV. A. 97-637-F, 2000 WL 576363, at *22 (Mass. Super. Apr. 28, 2000) (citing *Blake*, 417 Mass. at 473); *Freeman v. Plan. Bd. of W. Boylston*, 419 Mass. 548, 565 (1995); *Bally v. Ne. Univ.*, 403 Mass. 713, 718 (1989). Further, the Supreme Judicial Court has not addressed whether MCRA imposes vicarious liability.

---

[8] Plaintiffs allege no "actual or potential physical confrontation" with PFC. To the contrary, they allege only limited interactions with Zea (and none with PFC), all non-physical and non-confrontational. Specifically, the Amended Complaint asserts Zea (i) drove by Plaintiffs' house repeatedly or followed their vehicle, Compl. ¶ 7; and participated in sending harassing deliveries (ii)," *id.* Ex. A, ¶ 41. None of these allegations involves an "actual or potential physical confrontation." The Amended Complaint alleges no other interaction between Plaintiffs and Zea or PFC.

To allege adequately false imprisonment, the "confinement within the boundaries fixed by the [defendant] must be complete." Restatement (Second) of Torts § 36;  *see also id.* § 40 cmt. c (explaining that to allege confinement by threats of physical force, the alleged victim "must submit to the threat by remaining within the limits fixed by the actor in order to avoid or avert force threatened"). As a matter of law, Plaintiffs cannot state a claim for false imprisonment in their home if they were able to leave it. *See Kamayou v. Univ. of Mass. Lowell,* No. 16-cv-10098-IT, 2018 WL 4609130, at *8 (D. Mass. Sept. 7, 2018) (concluding at summary judgment that the plaintiff was not confined because he actually left the office), *report and recommendation adopted,* 2018 WL 4600646 (D. Mass. Sept. 25, 2018);  *O'Neil v. DaimlerChrysler Corp.,* 538 F. Supp. 2d 304, 321–22 (D. Mass. 2008) (finding that plaintiff could not establish confinement where "there is no evidence that [plaintiff] … attempted to leave and was unable to do so");  *see also Carden v. Klucznik,* 775 F. Supp. 2d 247, 249 (D. Mass. 2011) (explaining that, on a motion to dismiss, "a court will not accept as true any facts that are 'conclusively contradicted by plaintiffs' concessions or otherwise'"). Plaintiffs explicitly allege that Mr. Steiner in fact left the house during the period when the Steiners were receiving threatening messages and packages. *See* AC. ¶ 536.

Plaintiffs stalking claim is based on a Cal. statute which, by its very terms, has no application to conduct outside of Cal.[9] Since the gravamen of the stalking claim is premised on the physical surveillance undertaken in Mass. there is no viable claim under the asserted statute. *Thunder Studios, Inc. v. Kazal,* 13 F.4th 736, 745 (9th Cir. 2021) (noting Section 1708.7 does not reach conduct outside Cal.);  *Steep Hill Labs, Inc v. Moore*, 2018 WL 1242182, *11 (N. D. Cal.

---

[9]The provision expressly provides it is intended for the welfare of residents of California. Cal. Civ. Code 1708.7(g)("[t]his act is an exercise of the police power of the state for the protection of the health, safety, and welfare of the people of the State of California, and shall be liberally construed to effectuate those purposes").

March 8, 2018 )(dismissing 1708.7 stalking claim as conduct occurred in Nevada not Cal.). To any extent the Cal. civil stalking statute can be deemed applicable outside of Cal.—which it cannot, all four of the operative Restatement factors dictate that Mass. law applies;  injury occurred in Mass.; physical surveillance took place in Mass.;  plaintiff's residence and business is in Mass.; and plaintiffs' otherwise concede and allege that the stalking took place "primarily and substantially in the Commonwealth of Mass.." Moreover, the Restatement's general choice of law factors clearly favor Mass. law as it serves the needs of the interstate system because it would be highly "anomalous for [Mass.] to insist on providing greater benefits to its citizens under another state's law than it provides to its citizens under its own law," *Burleigh,* 313 F. Supp. 3d at 357;  Mass.' substantial interest in protecting its own residents according to its own laws overrides any interest Cal. may have in deterring wrongful conduct merely "directed" from within its borders.;  *see Burleigh,* 313 F. Supp. 3d at 354 (interests of state where injury took place and plaintiff resided were weightier than interests of state where defendants' conduct took place); [10] and Mass. law promotes predictability and simplifies judicial determinations as applying the law of the state where plaintiff's injury occurred yields predictable results because "the state where the injury occurred will usually be readily ascertainable." *Burleigh,* 313 F. Supp. 3d at 358.

Accordingly, each of these claims fails as a matter of law, regardless of whether PFC could be held vicariously liable for Zea's conduct.

## CONCLUSION

Based on the foregoing, defendant Progressive F.O.R.C.E. Concepts, LLC's Motion to Dismiss should be GRANTED.

---

[10] California's interest is particularly weak because Section 1708.7 is expressly "for the protection of the health, safety, and welfare of the people of the State of California," Cal. Civ. Code § 1708.7(g), not out-of-state plaintiffs

102539096

Respectfully submitted,
PROGRESSIVE F.O.R.C.E. CONCEPTS, LLC,
By Its Attorneys,

*/s/ Tory A. Weigand*

Tory A. Weigand, BBO #548553
tweigand@morrisonmahoney.com
Matthew J. Holmes, BBO #675994
mholmes@morrisonmahoney.com
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210-1181
Phone:  617-439-7500

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 28, 2023.

*/s/ Tory A. Weigand*

Tory A. Weigand