Case 1:21-cv-11181-PBS   Document 239   Filed 07/12/23   Page 1 of 13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| INA STEINER, DAVID STEINER, and STEINER ASSOCIATES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>EBAY INC., et al.,<br><br>Defendants. | Case No.: 1:21-cv-11181-PBS<br><br>**Leave to File Granted on 6/16/2023 (ECF No. 227)** |

**DEFENDANT STEVE WYMER'S REPLY TO PLAINTIFFS' CONSOLIDATED OPPOSITION TO MOTION TO DISMISS THE AMENDED COMPLAINT**

## I.  INTRODUCTION

Plaintiffs' Opposition, like the FAC, relies on implausible characterizations of Wymer's messages that cannot be squared with their language or with any well-pleaded allegation in the FAC. Pointing out these deficiencies does not "hold the Steiners to too high a burden." Opp. at 4. It merely illustrates Plaintiffs' failure to carry their burden of pleading sufficient facts to state a *plausible* claim and their improper reliance on "unreasonable inferences" and "bald assertions" unsupported by factual allegations. *See Guilfoile v. Shields*, 913 F.3d 178, 186 (1st Cir. 2019) (on a motion to dismiss, "we do not draw unreasonable inferences or credit bald assertions").

For instance, although the Opposition refers to supposed "directives" from Wymer, none of the alleged messages says anything about stalking, threatening, or harming Plaintiffs, let alone directing such actions. None shows that Baugh told Wymer what he was doing, or that Wymer had reason to know Baugh and his team were engaged in criminal conduct. To the contrary, the FAC acknowledges that Baugh did not report to Wymer, hid his actions (¶ 319) and planned his crimes in meetings Wymer did not know about or attend. *E.g.*, ¶¶ 60, 68, 93-99, 141.[1] It also establishes Wymer learned that Baugh's "team ran an OP" after it ended. ECF No. 1-1 ¶ 177.

The Opposition cites animated language in some of Wymer's messages but ignores the fact that these messages were, on their face, related to Plaintiffs' *website*. *E.g.*, ¶ 111. They were not about physically or emotionally harming, harassing, or terrorizing Plaintiffs themselves. Further, Plaintiffs' own allegations show that Wymer used similar language in the ordinary course, which makes equating such language with a criminal directive even more implausible.

The Opposition asks the Court to infer that Wymer knew or anticipated that Baugh would

---

[1] References to "¶ __" refer to paragraphs of the FAC, ECF No. 176. "Motion" refers to Wymer's Motion to Dismiss Memorandum, ECF No. 199, and "Opposition" and "Opp." refer to Plaintiffs' Consolidated Opposition to Defendants' Motions to Dismiss, ECF No. 221.

harm Plaintiffs based on alleged "red flags" in Baugh's background. Critically, however, Baugh was hired well before Wymer, and the FAC contains no well-pleaded allegation that Wymer knew of Baugh's alleged predisposition to tortious behavior. *E.g.*, ¶ 307. There is no allegation that Wymer knew or had reason to suspect Baugh had done anything similar in any context.

## II.  ARGUMENT

### A.  Plaintiffs Do Not State Any Direct Liability Claim Against Wymer

#### 1.  Plaintiffs Do Not State an IIED Claim Against Wymer

As Wymer's opening brief demonstrated, Plaintiffs' IIED claim must be dismissed because he lacked the requisite knowledge and intent, his actions were not "extreme and outrageous," and he did not cause Plaintiffs' distress. Motion at 8-11.

With respect to knowledge and intent, Plaintiffs concede that Baugh, not Wymer, planned and executed the bizarre crimes that caused their distress. The FAC admits Wymer did not "physically participat[e]." ¶ 216. Baugh planned his actions in meetings Wymer is not alleged to have known about or attended. *See* ¶¶ 60, 68, 93-99, 137, 141. No well-pleaded allegation suggests Wymer provided resources or support to Baugh's criminal activities.[2]

Lacking allegations that tie Wymer to Baugh's crimes,[3] the Opposition almost

---

[2] Although the FAC alleges that Baugh asked for "top cover" *after* Defendants ceased their bad acts, it does not allege that Wymer responded to that request or agreed to assist. ¶ 266.

[3] The Opposition asserts without citation that the Charged Defendants admitted that their actions were "premised upon directives from Defendants Wenig and Wymer" or "taken at [their] request." Opp. at 33. The FAC contains no well-pleaded allegation that Wymer communicated with *any* Charged Defendant other than a handful of communications with Baugh. As discussed in Wymer's opening brief and this reply, none of those communications reflect a directive from Wymer to Baugh to criminally harass or terrorize Plaintiffs. Nor, contrary to the Opposition, did Defendant Harville admit in his answer that he acted on Wymer's behalf (Opp. at 34); in fact, he *denied* conclusory allegations about a supposed "directive" from Wymer. ECF No. 191 at ¶ 4.

exclusively resorts to the implausible tactic of labelling messages from Wymer as "directives" to Baugh to take criminal action. But "bald assertions" and "unreasonable inferences" cannot overcome a motion to dismiss. *See Guilfoile*, 913 F.3d at 186 ("unreasonable inferences," "bald assertions," and "empty conclusions" not credited) (internal quotation marks and citation omitted). Plaintiffs' attempt to equate Wymer's messages with criminal directives fails because neither the text of those messages nor any other well-pleaded allegation supports it.[4]

None of Wymer's messages reference terrorizing Plaintiffs or causing emotional distress. None reference a plan or expectation that Baugh would make threats, send spiders, or take any of the other bizarre actions that Baugh concocted. The Opposition cites Wymer's messages about "need[ing] to STOP her" and "managing any bad fall out." Opp. at 35, 42-43. On their face, however, these messages responded to Baugh's questions about Plaintiffs' *website*. *See* ¶ 111 (referencing burning "the *website*") (emphasis added). Nothing in them suggests that Wymer wanted or expected Baugh to counter the website through *criminal action* as opposed to the type of legal measures that Wymer himself was pursuing. *See id.* at ¶ 70 (alleging Wymer hired a firm to lower Plaintiffs' website in search results); ¶ 64 (alleging Wymer had a role in asking a contractor to remove nonpublic information from its website after Plaintiffs republished it).

The Opposition argues that Baugh's "reputation and behavior" should have alerted Wymer to danger, but this only underscores the FAC's insufficiency as to Wymer. Opp. at 44. The FAC *does not allege* that Wymer knew about Baugh's erratic behavior, his covert operations experience, or any other alleged red flag. *See, e.g.*, ¶¶ 303, 305, 307. It does not allege that Wymer "knew or should have known" that Baugh was a threat to others, although it makes that

---

[4] Parsing these messages to identify what inferences they will—and will not—reasonably support does not interject extraneous information or "stretch the pleaded facts." Opp. at 7. It applies the applicable standard, which requires Plaintiffs to plead facts sufficient to state a plausible claim.

3

allegation against Jones and Wenig. ¶¶ 304, 324. This is no mere oversight: Baugh reported to Jones, who ran the security department, not to Wymer, who oversaw communications. ¶¶ 3, 30, 32, 40. And Wymer was hired well after Baugh. In sum, no allegation makes it plausible that Wymer knew that Baugh was predisposed to criminal activities.

Plaintiffs' other arguments are equally implausible. The Opposition cites Wymer's use of phrases like "whatever it takes" to imply that he wanted Baugh to physically harm Plaintiffs. Opp. at 42-44. But Wymer used the same phrase in innocuous settings, including an email with eBay's legal department. Motion at 4; ¶¶ 108-10. Wymer's demonstrated use of this language in the ordinary course makes it unreasonable to construe it as a directive to commit crimes. The Opposition's response—that Wymer's email to eBay's lawyers might *itself* have been a criminal directive—is facially absurd. Opp. at 11. The email's plain language shows that Wymer was responding to a question about whether to pursue litigation against a Twitter user. *See* ECF No. 117-1 at R437 ("Steve – What's your thinking on this from a comms perspective?").

Plaintiffs' suggestion that the timing of Wymer's August 11 message implies that Wymer knew what Baugh was doing (Opp. at 43) fails because other messages in the FAC show that Wymer *did not* learn of Baugh's acts until much later. The FAC's incorporated messages establish that on August 23, *after* the bad acts in Natick ended, Baugh texted Wymer "Hi [Steve] – this is Jim Baugh's personal cell. My team ran an Op on our friend in Boston. Nothing illegal occurred[.]" ECF No. 1-1 at ¶ 177.[5] This message shows that Baugh had *not* told Wymer what he was doing before August 23. Otherwise, Baugh would not have begun the message with "My team ran an Op[.]" ECF No. 1-1 at ¶ 177. Tellingly, although Wymer's opening brief discussed

---

[5] That Baugh began his message by identifying himself also indicates that Wymer did not have Baugh's personal cell phone number. This further distinguishes Wymer from other Defendants who allegedly maintained friendly personal relationships with Baugh. *Cf*. Opp. at 28-29.

4

this message at length (Motion at 5-6), the Opposition does not reference or address it. It would be unreasonable to infer facts that contradict the very materials Plaintiffs use for their allegations. *See O'Brien v. Wilmington Tr. Nat'l Ass'n as Tr. to CitiBank, N.A.*, 506 F. Supp. 3d 82, 90 (D. Mass. 2020) (when a document referenced in the complaint or integral to plaintiff's claims contradicts the complaint, the document "trumps the allegation[s]").[6]

The same deficiencies that sink Plaintiffs' scienter allegations also show that Plaintiffs have not plausibly alleged "extreme and outrageous" conduct. *Roman v. Trs. of Tufts Coll.*, 964 N.E.2d 331, 341 (Mass. 2012). Even taken as true, the FAC's well-pleaded allegations show that Wymer expressed frustration with reporting on Plaintiffs' website and a desire to counteract it. Absent some well-pleaded allegation that Wymer anticipated Baugh responding to those messages by criminally terrorizing Plaintiffs, Wymer's messages cannot possibly qualify as "atrocious" or "beyond all possible bounds of decency." *Id*.

Finally, Plaintiffs' IIED claim lacks a plausible allegation of causation. What Baugh did was "so extraordinary that it could not reasonably have been foreseen" by Wymer and is thus an intervening cause that would in any case "relieve[]" Wymer "of liability" for the Steiners' emotional distress. *Bobbitt v. United States*, 2006 WL 335231, at *1 (D. Mass. Feb. 10, 2006).

### 2. Plaintiffs Do Not State a Negligence or NIED Claim Against Wymer

Plaintiffs' negligence and NIED claims fail because the FAC does not plausibly allege that Wymer owed Plaintiffs a duty or proximately caused their injuries. Motion at 11-12.

The Opposition concedes that any duty owed by Wymer extends only to harm that is

---

[6] In a move that improperly shifts Plaintiffs' pleading burden, the Opposition asks what Wymer expected Baugh to do. Opp. at 22. Not only is it Plaintiffs' burden to state a plausible claim, not Wymer's to plead the inverse, but the FAC makes clear that Wymer pursued *lawful* counter measures. ¶¶ 64, 70. Nothing in the FAC suggests Wymer expected Baugh to commit crimes.

reasonably foreseeable, (Opp. at 20 (citing *Irwin v. Ware*, 392 Mass. 745, 756-57 (1984))), and that injuries that are a "highly extraordinary" consequence of a defendant's actions are not foreseeable and cannot support a negligence claim. Opp. at 20 (citing *Delaney v. Reynolds*, 63 Mass. App. Ct. 239, 242 (2005)); *see also Hebert v. Enos*, 60 Mass. App. Ct. 817, 822 (2004).

These principles foreclose Plaintiffs' negligence claims against Wymer because Baugh's crimes were the definition of extraordinary. No one working in a professional workplace could reasonably anticipate a colleague responding to concerns about online reporting by making death threats, sending spiders, stalking, or taking any similar action. It is precisely the mind-boggling nature of Baugh's conduct that makes it so frightening. The FAC does not allege that Baugh had done anything similar before—or that anything similar had occurred in *any* workplace. Wymer was particularly ill-positioned to anticipate Baugh's conduct, because the FAC does not allege that Wymer knew the alleged red flags of Baugh's criminality. *See, e.g.*, ¶¶ 303, 305, 307.

Courts have dismissed negligence claims in similar situations. In *Leavitt v. Brockton Hospital, Inc.*, for instance, the court held that a hospital that released a patient without an escort could not have reasonably foreseen a police officer being struck by a vehicle while responding to an accident involving the patient. 454 Mass. 37, 39-40 (2009). Thus, the hospital owed the police officer no duty and did not proximately cause the officer's injury. *Id.* at 39-40, 46. Distinguishing between foreseeable and unforeseeable harms, the court explained that "the harm that befell [the officer]—an injury from a collision not involving the patient—arose not from the same general type of danger (harm to the patient or to those injured by the patient as a result of being released while medicated) that the hospital allegedly should have taken reasonable steps to avoid, but from some other danger (the collision between the police cruiser and another vehicle unrelated to the patient)." *Id.* at 46; *see also Hebert*, 60 Mass. App. Ct. at 822 (holding that

plaintiff's electrocution while touching a home's external faucet was a "highly extraordinary consequence" of a leaking toilet inside, and thus the homeowner had no duty).

The same reasoning applies here. Even if, as the Opposition asserts, one could have anticipated that efforts by eBay to counter Plaintiffs' website might cause "damage to their business" and associated distress (Opp. at 22), the actual harm differed qualitatively from any foreseeable business injury. Plaintiffs were not harmed by hardball tactics designed to reduce their readership or visibility. *Cf.* ¶ 70. They encountered "some other danger" entirely—namely, stalking, death threats, trespassing, and other criminal behavior. *Leavitt*, 454 Mass. at 46. Because those crimes (and Plaintiffs' resulting harm) were "well beyond the 'range of reasonable apprehension,'" Wymer owed no duty to prevent them. *Hebert*, 60 Mass. App. Ct. at 822.

Plaintiffs cite *Dos Santos v. Coleta*, 465 Mass. 148 (2013) and *Bernier v. Boston Edison Co.*, 380 Mass. 372 (1980) to suggest that the "extent and manner of the harms" need not be foreseen, but in both cases the general type of harm *was* foreseeable. Opp. at 20. *Dos Santos* held that a defendant could have reasonably anticipated that someone would be hurt jumping from his trampoline into an adjacent shallow pool. 465 Mass. at 162-63. Thus, the fact that the plaintiff was harmed while attempting a flip instead of jumping feet first was immaterial. *Id*. at 162 (because of "the shallow depth of the water, there was no reliably safe way to" jump). *Bernier* held that a utility could have anticipated the injuries of a pedestrian who was harmed when a car knocked over a utility pole. 380 Mass. at 386. It reasoned that "[t]he precise manner of the accident need not have been foreseeable if impacts by moving vehicles were." *Id*. The defendants in both cases could have anticipated the general types of injuries suffered, even if accident-specific details were not foreseen. Here, by contrast, the harm Plaintiffs suffered from Baugh's bizarre and unprecedented crimes differed fundamentally from any injury that Wymer

could reasonably have foreseen. Thus, Wymer had no duty to prevent it.

Plaintiffs' proximate cause allegations are equally deficient. The Opposition does not contest—and has thus conceded—Wymer's argument that Baugh's conduct broke the chain of causation between Wymer and Plaintiffs' injury. *Compare* Motion at 12 (arguing Baugh's conduct was intervening cause); *with* Opp. at 18-33 (no response to Wymer's proximate cause argument). In any event, because Baugh's crimes differed fundamentally from any harm Wymer could have anticipated, Wymer cannot be liable for the resulting harm. *Leavitt*, 454 Mass. at 39.

### 3. The FAC's Remaining Direct Claims Against Wymer Fail

For the remaining direct claims, the Opposition improperly uses the homogenized term "Defendants" to attribute the Charged Defendants' conduct to Wymer and ignores dispositive arguments in Wymer's opening brief. *See, e.g.*, Opp. at 51-54, 58-78. Group assertions aside, the Opposition points to no well-pleaded allegation supporting direct claims against Wymer.

**Stalking, MCRA, and Trespass.** Plaintiffs' stalking, Massachusetts Civil Rights Act ("MCRA"), and trespass claims fail because the FAC does not allege that Wymer personally engaged in conduct that gives rise to liability under any of these theories. The Opposition cites no well-pleaded allegation to the contrary. Instead, the Opposition effectively concedes that Wymer cannot be directly liable by recasting each of these claims as "aiding and abetting" claims as to Wymer—that is, claims for *secondary*, not direct, liability. Opp. at 65 (arguing FAC alleges "aiding and abetting the stalking"), 70 (MCRA), 74 (trespass).[7]

**Assault, Defamation, and False Imprisonment.** The Opposition does not address Wymer's argument that the FAC fails to state a claim against him for assault, defamation, and

---

[7] Speculation that "additional emails" (Opp. at 66) might fill gaps in Plaintiffs' claims cannot withstand dismissal. *See Connor v. Franke*, 2017 WL 1908154, at *6 (C.D. Cal. May 9, 2017) (dismissing stalking claim over argument that discovery might reveal defendant's involvement).

8

false imprisonment. Although the Opposition defends these claims as to other Defendants, it says nothing about the sufficiency of the allegations as to Wymer. *Compare* Motion at 13-15; *with* Opp. at 51-54 (no argument that Wymer engaged in an overt act), 70-73 (no mention of Wymer in defamation section), 76-78 (no mention of Wymer in false imprisonment section). Further, the Opposition's responses to *other* Defendants highlight the FAC's deficiencies as to Wymer. For instance, the Opposition hangs its argument about the sufficiency of the assault claim on "Defendants' attempts to break into the Steiners' home, following the Steiners, and sending threats[.]" Opp. at 54. Plaintiffs concede that Wymer did none of those things. ¶ 216.

### B. Plaintiffs Do Not State Any Secondary Liability Claim Against Wymer

Plaintiffs' effort to hold Wymer secondarily liable also fails.

#### 1. The Intra-Corporate Conspiracy Doctrine Bars Count XIII

The intra-corporate conspiracy doctrine defeats Plaintiffs' conspiracy count. Plaintiffs argue that the doctrine does not apply because PFC employed Zea and Krystek, not eBay. Opp. at 82-83. But Plaintiffs allege that all Defendants—including Zea and Krystek—acted at *eBay's* direction to further *eBay's* goals. *See* ¶ 40 ("[a]ll [Defendants] took instructions … from senior management of eBay"); ¶ 27 (PFC "hired analysts for eBay"); ¶ 143 (Zea went to Massachusetts "for the benefit of eBay"). These allegations trigger the intra-corporate conspiracy doctrine, which applies whenever "*agents*," not merely employees, "of the same legal entity … act in their official capacities." *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) (emphasis added).

#### 2. No Conspiracy is Adequately Alleged as to Wymer

In any event, Plaintiffs' conspiracy claim still fails. Plaintiffs forfeit any claim under a substantial assistance theory because the Opposition focuses entirely on concert-of-action. *See* Opp. at 79-83. Regarding concert-of-action, the Opposition concedes that such a claim will not lie against a defendant unless his or her own conduct was tortious. Opp. at 79. Because the FAC

9

does not plausibly allege that Wymer committed a tort, the claim fails. Plaintiffs' claim fails for the further reason that the FAC does not plausibly allege that Wymer knew about or agreed to the Charged Defendants' crimes. *Heinrich ex rel. Heinrich v. Sweet*, 49 F. Supp. 2d 27, 44 (D. Mass. 1999). The Opposition refers obliquely to messages between Wymer and Baugh (Opp. at 9), but none of the messages reflect an agreement to commit crimes. In fact, they show that the first time anyone told Wymer about anything happening in Natick was after the "op" ended. ECF No. 1-1 at ¶ 177. The Opposition asserts that Wymer promised "top cover." Opp. at 44, 80, 82. But the FAC contains no such allegation. *See supra* at 2 n.2. And this ambiguous phrase cannot support a reasonable inference that Wymer promised to support illegal tactics.

### 3. The FAC States No Aiding and Abetting Theory Against Wymer

Plaintiffs' use of aiding-and-abetting to hold Wymer responsible for torts he did not commit fails for the same reasons as their conspiracy claim. *See Go-Best Assets Ltd. v. Citizens Bank of Mass.*, 972 N.E.2d 426, 438 (Mass. 2012) (aiding and abetting requires knowledge and substantial assistance). Although the Opposition asserts (without citation) that Wymer "helped Defendant Baugh … cover up the campaign," this is conclusory and implausible. Opp. at 82. Documents Plaintiffs relied upon show that Wymer voluntarily sat for *four interviews* with eBay investigators, and nothing in the FAC suggests Wymer said anything to "cover up" crimes. ECF No. 117-1 at R215-22, R243. Further, eBay's investigation report expressly "did not find evidence that [Wymer] directed or knew that criminal acts would occur." *Id.* at R13.[8]

## III. CONCLUSION

---

[8] Plaintiffs' reference to Wymer's alleged deletion of text messages does not support the inference that this was done with knowledge of or intent to assist the Charged Defendants' crimes. The FAC does not allege that Wymer had been told to preserve texts, or that Wymer knew at the time what the Charged Defendants had done. To the contrary, the FAC acknowledges that Wymer was told that nothing illegal was done. ¶ 266; ECF No. 1-1 at ¶ 177.

For the foregoing reasons, all claims against Wymer should be dismissed with prejudice.

                                     Respectfully submitted,

                                     STEVE WYMER,

                                     By his Attorneys,

                                     **_s/ Caz Hashemi_**
                                     Caz Hashemi, Esq. (*pro hac vice*)
                                     WILSON SONSINI GOODRICH & ROSATI, P.C.
                                     650 Page Mill Road
                                     Palo Alto, CA 94304
                                     (650) 493-9300
                                     chashemi@wsgr.com

                                     Michael J. Pineault, Esq. (BBO No. 555314)
                                     ANDERSON & KREIGER LLP
                                     50 Milk Street, 21st Floor
                                     Boston, MA 02109
                                     (617) 621-6578
                                     mpineault@andersonkreiger.com

Dated: July 12, 2023

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 12, 2023, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: July 12, 2023                                s/ *Michael J. Pineault*
                                                       Michael J. Pineault