**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

INA STEINER, DAVID STEINER, and STEINER ASSOCIATES, LLC,

Plaintiffs,

v.

EBAY INC., et al.

Defendants.

Case No. 1:21-cv-11181-PBS

**DEFENDANT WENDY JONES'S REPLY BRIEF IN FURTHER SUPPORT OF HER MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I. PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED THAT MS. JONES IS DIRECTLY LIABLE UNDER ANY CAUSE OF ACTION ........ 1

II. PLAINTIFFS’ STATUTORY STALKING CLAIM MUST BE DISMISSED AS A MATTER OF LAW FOR ADDITIONAL REASONS ........ 2

III. PLAINTIFFS HAVE NOT STATED A CLAIM AGAINST MS. JONES PREMISED ON ANY THEORY OF INDIRECT LIABILITY ........ 5

A. Lumping Individuals Together in Group-Pled Allegations Does Not Plead a Conspiracy ........ 5

B. Plaintiffs’ Mischaracterization of Their Own Threadbare Allegations Cannot Support a Claim Against Ms. Jones ........ 6

CONCLUSION ........ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....7

*Burleigh v. Alfa Laval, Inc.*,
313 F. Supp. 3d 343 (D. Mass. 2018)....4

*Canales v. Gatzunis*,
979 F. Supp. 2d 164 (D. Mass. 2013)....5, 6

*Levin v. Dalva Bros., Inc.*,
459 F.3d 68 (1st Cir. 2006)....2, 3

*Mukarker v. City of Phila.*,
238 F. Supp. 3d 174 (D. Mass. 2017) (Saris, J.)....4

*Peter Pan Bus Lines, Inc. v. Greyhound Lines, Inc.*,
189 F. Supp. 3d 217 (D. Mass. 2016)....7

*Silica Tech, L.L.C. v. J-Fiber, GmbH*,
Civ. Action No. 06-10293-WGY, 2009 WL 2579432 (D. Mass. August 19, 2009)....3

*Taylor v. Am. Chemistry Council*,
576 F.3d 16 (1st Cir. 2009)....8

*Thomas v. Harrington*,
909 F.3d 483 (1st Cir. 2018)....7, 8

*Thunder Studios, Inc. v. Kazal*,
13 F.4th 736 (9th Cir. 2021)....4

*White v. Blue Cross & Blue Shield of Mass., Inc.*,
809 N.E.2d 1034 (Mass. 2004)....1, 2

**Statute**

Cal. Civ. Code § 1708.7....2

Ms. Jones's Motion to Dismiss identified myriad shortcomings in the asserted claims against her. Rather than squarely addressing those shortcomings in their Opposition, Plaintiffs double down on their approach of tacking Ms. Jones's name onto allegations about other Defendants and insisting on guilt by association. More troubling still, the Opposition exaggerates and misstates the small handful of specific allegations Plaintiffs actually made against Ms. Jones in the Amended Complaint. Ms. Jones agrees the facts here are repugnant. But they do not support a cause of action against everyone for everything. The Court should reject Plaintiffs' spaghetti-at-the-wall approach and dismiss the Amended Complaint as to Ms. Jones.

## I. PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED THAT MS. JONES IS DIRECTLY LIABLE UNDER ANY CAUSE OF ACTION

In her Motion to Dismiss, Ms. Jones observed that Plaintiffs have not pled that Ms. Jones was directly involved in the harassing conduct targeting the Steiners. She is therefore not liable under a theory of direct liability. Although Plaintiffs' own Amended Complaint concedes the relevant facts, *see, e.g.*, Am. Compl. ¶ 216 (acknowledging that Ms. Jones did "not physically participat[e] in the events"), they resist the conclusion that the direct claims against Ms. Jones should be dismissed, *see, e.g.*, ECF No. 221, Opp'n Br. at 65.

It is undeniable that the Amended Complaint contains no facts sufficient to show that Ms. Jones directly assaulted, stalked, imprisoned, trespassed against, or defamed Plaintiffs or made threats to EcommerceBytes. Plaintiffs' Opposition does not, and cannot, cure that defect. For example, the Opposition argues that Ms. Jones was "at fault" for the defamatory statements allegedly made against Plaintiffs. Opp'n Br. at 72-73. But once again, they fail to point to a single defamatory statement made by Ms. Jones. As a matter of law, Ms. Jones cannot be directly liable for a defamatory statement she did not make. *See White v. Blue Cross & Blue Shield of Mass., Inc.*, 809 N.E.2d 1034, 1036 (Mass. 2004) (stating that to adequately plead a defamation claim,

plaintiff must show that "the ***defendant communicate[d]*** the defamatory statement to a third party") (emphasis added)). Similarly, the Amended Complaint does not contain a single allegation that Ms. Jones "follow[ed]," "alarm[ed]," "place[d] under surveillance," or "harass[ed] the plaintiff[s]." *See* Cal. Civ. Code § 1708.7(a)(1). Plaintiffs therefore fail to plead a claim for stalking. So too with the allegations of infliction of emotional distress and the other remaining alleged misconduct.

Of course, the fact that Ms. Jones was not directly involved in the relevant torts does not, by itself, resolve the question of vicarious liability. That issue is fully addressed in Section III, below. But the Court need look no further to dismiss the claims Plaintiffs purport to bring against Ms. Jones in Counts 1-4, and 8-12 on a theory of direct liability.

## II. PLAINTIFFS' STATUTORY STALKING CLAIM MUST BE DISMISSED AS A MATTER OF LAW FOR ADDITIONAL REASONS

In addition to the reasons discussed above, Plaintiffs' stalking claim also fails because the relevant California statute does not apply under bedrock conflict of laws principles. Plaintiffs misstate well-settled law to suggest there is no conflict at all. *See* Opp'n Br. at 55. Not so. A statutory prohibition in one state and the lack of a prohibition in another ***is*** a conflict.

In their Opposition, Plaintiffs erroneously assert that the court in *Levin v. Dalva Bros., Inc.*, 459 F.3d 68 (1st Cir. 2006), applied New York law "[s]ince there was no parallel Massachusetts express warranty statute." Opp'n Br. at 55. But the court did not, as Plaintiffs imply, "unquestionably appl[y] the New York express warranty statute" simply because no parallel law existed in Massachusetts. *Id*. Indeed, the *Levin* Court began its choice-of-law analysis by noting that its "initial task" was to "determine whether there is an actual conflict between the substantive law of the interested jurisdictions," and in that very same paragraph recognized that the parties agreed a conflict existed and cited the fact that the New York statute had no parallel in

Massachusetts law as supporting the existence of a conflict. *Levin*, 459 F.3d at 73-74; *see also Silica Tech, L.L.C. v. J-Fiber, GmbH*, Civ. Action No. 06-10293-WGY, 2009 WL 2579432, at *18 (D. Mass. August 19, 2009) (citing *Levin*, 459 F.3d at 74 (1st Cir. 2006)) (describing *Levin* as having found "conflict in part because 'under New York law, the express warranty claims are governed by a statute that has no parallel in Massachusetts law'")).

Given the mismatch between California and Massachusetts law here, the Court should apply standard conflict of law principles, which overwhelmingly favor applying Massachusetts law for the reasons set forth in Ms. Jones's Motion to Dismiss. Plaintiffs acknowledge, as they must, that the "physical surveillance and stalking occurred in Massachusetts." Opp'n Br. at 57. Tellingly, Plaintiffs' original complaint and related briefing go as far as to concede that the conduct underlying their stalking claim "occurred primarily and substantially in the Commonwealth of Massachusetts." ECF No. 1 ¶¶ 346-47; ECF No. 117 at 34. Now, however, Plaintiffs claim that certain "planning and facilitating" and communications occurred partially in California and, as a result, California law should apply. Opp'n Br. at 58-59. Not only is this position unsupported by case law, it is inconsistent with the facts as they are actually alleged in the Amended Complaint. For example, Plaintiffs' Opposition claims that Defendants Baugh, Harville, and Zea purchased a GPS to install on Plaintiffs' car before arriving in Massachusetts—a fact not alleged in the Amended Complaint. *See* Opp'n Br. at 59. In addition to impermissibly attempting to introduce new allegations through briefing, Plaintiffs' Opposition also fails to contend with the Amended Complaint's allegations regarding extensive conduct in Massachusetts, including that Defendants purchased tools "from a Boston hardware store in order to carry out the plan of breaking into the

Steiner garage to install the GPS device" that Plaintiffs now claim was purchased in California.[1] Am. Compl. ¶ 151.

Plaintiffs also contend that "public policy considerations, and the punitive nature of the statute, also support applying the California statute to all activity committed by California residents, even if directed outside the forum state." Opp'n Br. at 63-64. This is incorrect several times over. Not only does this argument ignore the constitutional presumption against the extraterritorial application of state laws, but it cuts directly against Ninth Circuit precedent in *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736 (9th Cir. 2021). In *Kazal*, the Court clearly notes that Cal. Civ. Code § 1708.7 "proscribes only conduct occurring in California" and that "the determinative factor in California's presumption against extraterritoriality is the location of the conduct." *Id.* at 743 (citing *Diamond Multimedia Sys., Inc. v. Superior Ct.*, 968 P.2d 539, 554 n.20 (1999)).

Because the alleged injury and underlying conduct primarily and substantially occurred in Massachusetts, Massachusetts law applies—and the California statute does not. *See Burleigh v. Alfa Laval, Inc.*, 313 F. Supp. 3d 343, 353 (D. Mass. 2018) (quoting Restatement (Second) of Conflict of Laws § 146 cmt. e (1971)) (finding that "the law of the state where the injury occurred 'usually' applies"); *Mukarker v. City of Phila.*, 238 F. Supp. 3d 174, 176-78 (D. Mass. 2017) (Saris, J.) (applying Pennsylvania law where plaintiff was injured in Philadelphia International Airport despite Plaintiff being a Massachusetts resident and booking his ticket in Massachusetts). Count 2 should be dismissed.

[1] Consistent with Plaintiffs' pattern of overstating their own allegations, the Opposition also claims that "All individual Defendants resided and worked in California at the time of the acts." Opp'n Br. at 58. But according to the Amended Complaint, Individual Defendant Krystek resides in *Nevada* and "at all relevant times" acted as CEO of Progressive F.O.R.C.E. Concepts, which had its principal place of business in Nevada. Am. Compl. ¶¶ 27, 31. Nowhere does the Amended Complaint allege that Krystek lived and worked in California.

## III. PLAINTIFFS HAVE NOT STATED A CLAIM AGAINST MS. JONES PREMISED ON ANY THEORY OF INDIRECT LIABILITY

Although Plaintiffs resist the argument that their theory against Ms. Jones is one of indirect or vicarious liability, it is indisputable that they are trying to hold her responsible for the actions of several individuals who made incomprehensible choices. But as a matter of law, to state a claim against Ms. Jones, Plaintiffs must plead specific facts sufficient to connect her to the others' misconduct. The Amended Complaint contains none, and the Opposition cannot cure that defect.

### A. Lumping Individuals Together in Group-Pled Allegations Does Not Plead a Conspiracy

As in the Amended Complaint, the Opposition's primary strategy as to Ms. Jones is to repeatedly lump her into various general allegations against others and hope she is equally tarred. That approach is insufficient as a matter of law. *See Canales v. Gatzunis*, 979 F. Supp. 2d 164, 170 (D. Mass. 2013) (quoting *Bagheri v. Galligan*, 160 Fed. App'x 4, 5 (1st Cir. 2005)) ("[T]o satisfy the minimal requirements of notice pleading, a plaintiff cannot 'lump' multiple defendants together and must 'state clearly which defendant or defendants committed each of the alleged wrongful acts.'"). For example, Plaintiffs assert in their Opposition that the scheme "all came to a head on August 1, 2019." Opp'n Br. at 35. In the Amended Complaint, Plaintiffs concede—as they must—that Ms. Jones was on sabbatical at this time, Am. Compl. ¶ 83, and do not allege that Ms. Jones was party to the August 1 text messages in which Defendants Wenig, Wymer, and Baugh allegedly planned to take Ina Steiner down. Yet in their Opposition, Plaintiffs argue as follows:

> While Defendants Wenig, Wymer, *and Jones* allege they did not physically engage in any stalking, they directed and encouraged the acts by ordering Defendant Baugh to take Ina down and burn her to the ground. In addition, Defendant Wymer deleted all of his emails, texts, and communications with Defendant Baugh and Defendant Wenig.

Opp'n Br. at 65 (emphasis added). While Plaintiffs drop Ms. Jones's name into their argument, the alleged statements they cite—orders to "to take Ina down and burn her to the ground"—only involve Wenig and Wymer. *See* Am. Compl. ¶ 82 (attributing "take her down" to Defendant Wenig); ¶ 85 (attributing "burn her to the ground" to Defendants Wymer and Baugh). Group allegations that include Ms. Jones, without specific facts as to what ***she*** did or said, cannot plead a claim that she conspired with or directed other defendants who committed torts. *See Canales*, 979 F. Supp. 2d at 170.

**B. Plaintiffs' Mischaracterization of Their Own Threadbare Allegations Cannot Support a Claim Against Ms. Jones**

Putting aside conclusory and group-pled allegations, Plaintiffs are left with only ***two*** substantiative allegations involving Ms. Jones. Although Plaintiffs' Opposition and Motion to Strike ask the Court not to parse those allegations carefully to determine whether, if true, they would support a judgment, that is the essential function of a motion to dismiss. And when examined for what the allegations actually say—not what the Opposition says they do—Plaintiffs' allegations fail to state a claim against Ms. Jones.

The first substantive allegation Plaintiffs muster as to Ms. Jones contends that, in May 2019, she requested that Defendant Baugh "huddle" at lunch and deal with "the issue"—*i.e.*, the contractor's posting and, Plaintiffs argue, EcommerceBytes' re-posting, of information about Walker's West—"off the radar." Am. Compl. ¶¶ 64-65. This isolated statement in ***May 2019*** does not plausibly allege that Ms. Jones joined a conspiracy or directed Baugh to engage in any of the extreme and harassing behavior he later carried out in August. The Amended Complaint's allegations, even if they were true, suggest no more than that Ms. Jones asked Baugh to address the narrow issue related to the disclosure regarding Walker's West. Merely suggesting that such

facts are "consistent with" Plaintiffs' broader conspiracy theory does not support a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

The second substantive allegation as to Ms. Jones contends that she listened to a recording of a phone call between a security team member and a "subject associated with Fidomaster," and later gave a "fist bump" to Mr. Baugh. Am. Compl. ¶ 81. Ms. Jones pointed out in her Motion to Dismiss that a call to a Fidomaster associate had nothing to do with the Steiners, and there is not a single factual allegation in the Amended Complaint suggesting that Ms. Jones believed there was any such connection. In their Opposition, Plaintiffs ***<u>baldly misstate their own allegations</u>***: they now assert that the phone call was placed "***to the Steiners***," Opp'n Br. at 13 (emphasis added), rather than to a "subject associated with Fidomaster," as the Amended Complaint actually says, Am. Compl. ¶ 81. While Plaintiffs may rightfully ask this Court to assume (counterfactually) that allegations in the Amended Complaint against Ms. Jones are true for purposes of a motion to dismiss, they cannot amend them on the fly to address the dispositive arguments Ms. Jones raises in her motion. *See Peter Pan Bus Lines, Inc. v. Greyhound Lines, Inc.*, 189 F. Supp. 3d 217, 224 (D. Mass. 2016) ("It is well established that the allegations contained in the complaint control over inconsistent assertions made in briefs or arguments in opposition to a motion to dismiss."). One cannot plausibly infer from the actual allegation—that Ms. Jones fist bumped Baugh after listening to a call with someone associated with ***Fidomaster***, an individual Ms. Jones is not alleged to know had any association with the Steiners—that Ms. Jones thereby joined or directed a conspiracy against the Steiners.

Plaintiffs' attempts to parry Ms. Jones's other arguments fare no better. In her Motion to Dismiss, Ms. Jones cited *Thomas v. Harrington*, 909 F.3d 483 (1st Cir. 2018), which held that an instruction to an investigator to "dig deep" was insufficient to plead that a town manager entered

a conspiracy to deprive the plaintiff of his right to employment. *Id.* at 492. Plaintiffs attempt to distinguish the case by misconstruing the holding, suggesting that the entire case turned on the investigator's intent, rather than the manager's. Opp'n Br. at 80-81. Plaintiffs ignore the crux of the *Thomas* Court's reasoning. The court ruled that the alleged communications, including to "dig deep" and discussions that kept the town manager "generally aware[ ]' of the investigation's progress" were insufficient to support a meeting of the minds and, thus, a claim for conspiracy. *Thomas*, 909 F.3d at 491-92.

So too here. The two limited substantive allegations as to Ms. Jones, regarding the contractor disclosure in May and alleged phone call involving a Fidomaster associate, are insufficient to support a meeting of the minds. They certainly are not sufficient to plead that Ms. Jones joined, and substantially assisted in, a conspiracy to conduct the grotesque harassment campaign that occurred in August 2019. And Ms. Jones's alleged actions are certainly not themselves tortious.

For all these reasons, Plaintiffs fail to plead facts sufficient to support the claim that Ms. Jones intentionally engaged in "concerted action" or "substantially assisted" any conspiracy, or aided and abetted one. *See Thomas*, 909 F.3d at 490-92 (recognizing "concerted action" and "substantial assistance" conspiracies); *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 35 n. 21 (1st Cir. 2009) (explaining that aiding and abetting requires the defendant to share the actor's mental state).

That leaves only one remaining theory that attempts to hold Ms. Jones liable for the conduct of others: negligent supervision. If Ms. Jones did not intentionally direct or substantially assist other Defendants' actions, Plaintiffs insist, she must somehow still be liable by not uncovering and squelching a surreptitious harassment campaign carried out by her subordinates. But like

Plaintiffs' other claims, this one fails for lack of well-pled facts. Nothing in the Amended Complaint is sufficient to suggest that Ms. Jones was on notice of any reasonable possibility that Baugh would instigate a tortious, extrajudicial harassment campaign. Ms. Jones had no duty to anticipate Mr. Baugh's unthinkable acts and certainly had no duty to assume he would engage in such behavior because he purportedly served the country in the CIA, as Plaintiffs suggest. *See* Opp'n Br. at 26; Am. Compl. ¶ 446. The Amended Complaint and the Opposition point to no facts, known to Ms. Jones, sufficient to suggest otherwise. The negligent supervision claim should likewise be dismissed. For all these reasons, Plaintiffs fail to state a claim against Ms. Jones for the conduct of others under Counts 1-4, 6, and 8-13.

## CONCLUSION

For the foregoing reasons and those stated in Ms. Jones's Motion to Dismiss, which are hereby re-asserted, the claims against Ms. Jones should be dismissed.

Dated: July 12, 2023

Respectfully submitted,

*/s/ Andrew J. O'Connor*

Brien T. O'Connor (BBO# 546767)
Andrew J. O'Connor (BBO# 672960)
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
brien.oconnor@ropesgray.com
andrew.oconnor@ropesgray.com

*Counsel for Wendy Jones*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2023, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: July 12, 2023

*/s/ Andrew J. O'Connor*
Andrew J. O'Connor