UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MASSACHUSETTS

| | |
|---|---|
| Ina Steiner,<br>David Steiner,<br>Steiner Associates, LLC,<br>    (*Publisher of EcommerceBytes*)<br>          Plaintiffs<br><br>vs.<br><br>eBay, Inc., et al.,<br>          Defendants | CASE NO: 1:21-cv-11181 |

**PLAINTIFFS' SUR-REPLY TO DEFENDANT EBAY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**
(**Leave to File Granted on June 16, 2023**)

Now come the Plaintiffs and respectfully file this Sur-Reply to Defendant eBay's Reply Brief in Support of its Motion to Dismiss Plaintiffs' Amended Complaint.

**I.     Contrary to eBay's argument, Plaintiffs adequately defended the negligence claims, and the facts set forth in the Amended Complaint set forth a plausible claim for relief.**

Preliminarily, Plaintiffs did not attempt to "duck" the foreseeability requirement and argue a negligence claim can never be dismissed due to the failure to allege facts establishing foreseeability; instead, Plaintiffs pointed out that it is a question of fact that is usually left to the jury. By no means did Plaintiffs suggest a negligence claim cannot be dismissed because the Complaint failed to sufficiently allege foreseeability. Document No. 221 at 19-20.

Plaintiffs note at the outset that eBay has maintained the acts were carried out by rogue employees, and the company had no way of knowing any of the acts would occur, or that any of its executives or employees had the propensity to stalk, harass and torment the Steiners. The timeline of Defendant Wymer's hiring in relation to the communications and events casts serious

1

doubt on those claims. Defendant Wymer was hired in February of 2019. *See* Document No. 199 at 2. Two months later, in April of 2019, Defendant Wymer was already saying, "[w]e are going to crush this lady" in response to an EcommerceBytes article that merely observed that Defendant Wenig's $18 million compensation was more than 152 times that of an average eBay employee. FAC ¶ 61. Within six months of Defendant Wymer's hiring, EcommerceBytes was already giving him "ulcers," he was instructing Defendant Baugh to do "Whatever. It. Takes." to end the reporting, and he was promising Defendant Baugh "executive level support" if there were any "legal problems." FAC ¶ 111. A fair inference is Defendant Wymer did not get hired at eBay already harboring a hatred for the Steiners and EcommerceBytes; the disdain was developed for the Steiners in just a short couple of months because of the culture at eBay and the pervasiveness of the focus on Plaintiffs, starting with Defendant Wenig and overflowing onto his subordinates. Or, if Defendant Wymer did already harbor these views when he was hired, then it would go directly to the negligent hiring claim. Either way, eBay's claim of ignorance and the assertion that they could not have foreseen that the acts would occur does not hold water.

Not only does Defendant Wymer's conduct demonstrate the pervasiveness of the toxic culture within eBay, when eBay's CEO, Defendant Wenig; Vice President and Chief Communications Officer, Defendant Wymer; and Senior Vice President of Global Operations, Defendant Jones, were obsessed with the Steiners and EcommerceBytes to the point where they were reading and communicating – and having subordinates track EcommerceBytes and report to them – on every article written about eBay, it should have been apparent to everyone at the upper echelons at eBay that this conduct was occurring. The Government stated during the plea hearings that it was the Senior Executives who were frustrated with tone and content of EcommerceBytes articles, and the criminal defendants admitted that this was the reason the acts

that followed occurred. FAC at 89-90 ("Senior executives…at eBay were frustrated with the newsletter's tone and content and with the tone and content of comments that appeared underneath the newsletter's article. The stalking campaign…arose from communications between eBay senior executives and Jim Baugh…it was intended to intimidate or harass [the Steiners]…"). The obsession with EcommerceBytes and the Steiners and the frequency of the communications were so pervasive, eBay's Board would have known about it. FAC ¶¶ 52-54, 60, 61, 64, 66, 70, 73, 76, 80, 82. General Counsel was in on many of the emails, and advised there was nothing legally they could do about the issue. FAC ¶ 92.

eBay further claims Plaintiffs failed to defend the sufficiency of three of the negligence claims: (1) negligent hiring as to Wymer because the Amended Complaint does not set forth facts about what eBay knew or should have known when it hired Wymer; (2) there were no facts alleging that eBay knew or should have known of Gilbert, Cooke, Popp and Stockwell's proclivity to commit the acts; and (3) Plaintiffs failed to allege what the Board of Directors knew or should have known. Document No. 240 at 2.

As to the negligent hiring as to Wymer, the Amended Complaint outlines that in the investigation into the campaign against the Steiners, the investigators learned Wymer was "green" and inexperienced, which rendered him incapable of pushing back against Defendant Wenig. FAC ¶ 312. Instead of standing up to Defendant Wenig when he instructed Defendant Wymer to take Steiner down, he turned around and disseminated the order to the head of security. FAC ¶¶ 82, 85. At the time Defendant Wymer was hired, Defendants Wenig, Jones and other executives already considered EcommerceBytes and the Steiners to be a problem. *See* Document No. 199 at 2 (Wymer joined eBay in February 2019); FAC ¶ 52 (executive leadership became frustrated with Ina Steiner's reporting and tasked Baugh's team with monitoring

EcommerceBytes). Wymer's inexperience and unfitness for the position would have been known to eBay at the time of hiring, given the high stature position for which he was hired, and the reasonable inference is they wanted someone green and malleable to carry out the company goals without question. Taking reasonable inferences in favor of Plaintiffs, it is reasonable to infer that the Senior Vice President and Chief Communications Officer of a multi-billion dollar corporation would be adequately vetted to determine whether he meets the qualifications of the position.

Given how quickly Defendant Wymer jumped on the bandwagon and began disseminating directives to Defendant Baugh to do "Whatever. It. Takes." to take Steiner down and that "ANYTHING we can do to solve it should be explored," with General Counsel on the emails, (FAC ¶¶ 109-110), Plaintiffs have at least set forth a plausible claim that there were red-flags at the time of hiring that set forth a plausible claim for relief, and that there is a reasonable expectation that discovery will reveal evidence of negligent hiring. *See Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 17 (1st Cir. 2011) (recognizing chain of events leading to defendants' actions "may often be unavailable to a plaintiff at this early stage of the litigation").

As to the negligent supervision claims relating to Baugh, Gilbert, Cooke, Popp, and Stockwell, eBay contends the Amended Complaint was insufficient to establish eBay knew of any proclivity to commit the complained-of acts. Document No. 240 at 2. Defendant eBay ignores that this was not a one-off act of criminal activity where the company was rightfully blindsided by an employee's acts. Defendants Baugh, Gilbert, Cooke, Popp and Stockwell participated in a months' long conspiracy and attack on the Plaintiffs, and the Defendants were able to flourish and succeed in tormenting the Steiners because of eBay's lack of supervision,

and actual sanctioning of the events by C-Suite executives, including Defendants Wenig, Wymer and Jones. FAC ¶¶ 52, 54- 63, 67-68, 73, 82-85.

As outlined in the Amended Complaint, there was a toxic culture at eBay that started at the top echelons. FAC ¶ 307. In the GIC in particular, Defendants Cooke and Baugh admitted during their sentencing hearing that they would start drinking early in the morning and drink all day, and Defendant Zea reported that Defendant Baugh would force her and the other analysts to drink heavily. FAC ¶ 327. It was Defendant Wenig who requested that a replica of Walkers West be built on campus, demonstrating that the drinking culture was not limited to the GIC. FAC ¶ 63. Defendant Baugh's work station was right outside Defendants Wenig, Wymer and Jones' respective conference room suites, and they have frequent interactions with one another, suggesting they would have been aware that he was frequently intoxicated. FAC ¶ 310.

In addition to being intoxicated on a daily basis, Defendant Baugh exhibited violent tendencies, including stabbing chairs and verbally abusing his subordinates. FAC ¶ 318, 320-321. While Defendant eBay attempts to downplay his conduct, and claims it would not have put him on notice that he would stalk and harass the Steiners, Massachusetts law makes clear that "[t]he specific kind of harm need not be foreseeable as long as it was foreseeable that there would be harm from the act which constituted the negligence, provided it was foreseeable that there would be violence toward others." *See Carey v. New Yorker of Worcester, Inc.*, 355 Mass. 450, 454 (1969).

Moreover, as alleged in the Amended Complaint, eBay hired security members with the background and experience of people like Defendants Baugh (ex-CIA), Cooke and Gilbert (ex-police Captains) because of their ability to carry out the type of scheme they planned and carried out in this case. FAC ¶ 230. They were hired to work in cybersecurity, not physical security, so

their background and experience did not align with what they were allegedly hired for. The ease with which Defendants Cooke, Gilbert and Baugh were able to orchestrate an attempted coverup with the NPD, including creating a fake dossier, attempting to make the Steiners look like the problem, discussing enlisting a "friendly" police officer in Santa Clara to obtain the wrong surveillance footage to take the attention off of Defendant Zea, and Defendant Gilbert's act of flying to Natick to discuss the matter with the Natick Police and offer assistance with the investigation, and Defendant Gilbert calling Ina Steiner and offering assistance, all demonstrate how they were able to use their experience and background – for which they were specifically hired – to eBay's benefit. FAC ¶¶ 224, 242, 252-254.

Moreover, Defendant Baugh fired Concentric Advisors because he did not want the CEO of Concentric questioning the treatment of his subordinates. FAC ¶ 342. He then replaced Concentric with PFC due to his relationship with Steve Krystek, the CEO of PFC. FAC ¶ 344. At this point, Defendant Baugh had already convinced Defendant Jones to fire his superior, and put Defendant Baugh in his place as head of security. FAC ¶ 305. Defendant Baugh was not even a member of the executive staff, so common sense and reasonable inferences would suggest he needed higher approval to fire the company GIC was contracting with for analysts, and to award a $4 million contract with PFC. FAC ¶ 349. It defies logic to believe that eBay executives and Board members would not have at least questioned why the change was necessary, and learned about the treatment of Concentric Advisors.

As to Defendants Wenig, Wymer and Jones, it was well known that they were completely obsessed with the Steiners and EcommerceBytes, and had a number of employees within the GIC actively monitoring them at all hours of the day and night, and there were numerous brainstorming sessions on eBay property and in eBay conference rooms as to how to "take them

down" and the discussions included advisements that legal means would not be able to eradicate their reporting. FAC ¶¶ 52, 65, 92, 93. Defendant Wymer informed Defendant Baugh that they were all going to be fired if Defendant Baugh did not take care of the problem. FAC ¶ 111. Again, this was not a one-off discussion that proper supervision could not have detected; the conversations went on for months.

As to the Board of Directors, Plaintiffs requested limited discovery to obtain their policies, minutes and any other information which would have demonstrated their level of knowledge, and what they knew when, however, this request was denied. (Docket No. 170, 171). Defendant eBay now faults Plaintiffs for not having the very information that would support their claim. In any event, Plaintiffs have pled sufficient facts to set forth a plausible claim for relief at this stage.

Ultimately, in outlining the culture within eBay, the hiring practices, the conduct of the Defendants, including the directives from the top over a span of weeks and months, set forth a plausible claim for relief for each of the negligence claims against eBay. *See Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 17 (1st Cir. 2011) (recognizing chain of events leading to defendants' actions "may often be unavailable to a plaintiff at this early stage of the litigation"); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). At this point, Plaintiffs have not had the opportunity to conduct any discovery, but have met the plausibility standard, which "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the illegal [conduct]" and where "a material part of the information needed" is "within the defendant's control" this Court should allow "some latitude…in applying the plausibility standard." *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

**II.     As to the remaining Counts, Plaintiffs have set forth a plausible claim for relief.**

As to the remaining counts addressed by Defendant eBay, the Defendant does little more than rehash the arguments already made it their principle motion to dismiss: (1) Assault (Count VIII); (2) False Imprisonment (Count XII); (3) Stalking (Count II); (4) Civil Conspiracy (XIII); (5) Ratification (Count XIV).

Rather than rehash the points in opposition, Plaintiffs emphasize that this Court assesses whether the "factual allegations gives rise to a plausible claim to relief." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013); *Twombly*, 550 U.S. at 556. The context specific inquiry does not demand "a high degree of factual specificity." *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013). "There need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action." *Rodriguez-Reyes*, 711 F.3d at 55.

Plaintiffs have met this standard for each of the claims, for the reasons set forth in Document No. 221.

**CONCLUSION**

Wherefore, for the reasons set forth in this Sur-Reply and Plaintiffs' Consolidated Opposition to the Defendants' Motion to Dismiss (Document No. 221), Plaintiffs respectfully request that this Court deny Defendant eBay's Motion to Dismiss.

Respectfully submitted,
INA AND DAVID STEINER
By their attorney,

/s/ Rosemary Curran Scapicchio
Rosemary C. Scapicchio, BBO No. 558312
Law Office of Rosemary Scapicchio
107 Union Wharf
Boston, MA 02109
617.263.7400
Rosemary@Scapicchiolaw.com


Respectfully submitted,
STEINER ASSOCIATES, LLC
By its attorney,

/s/ Jillise McDonough
Jillise McDonough, BBO No. 688694
Law Office of Jillise McDonough
107 Union Wharf
Boston, MA 02109
617.263.7400
Jillise@Scapicchiolaw.com


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party and upon any party appearing pro se by complying with this Court's directives on electronic filing.

Dated:   July 26, 2023                           Signed: /s/ Rosemary Scapicchio