**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF MASSACHUSETTS**

| |
|---|
| Ina Steiner, |
| David Steiner, |
| Steiner Associates, LLC, |
|     (*Publisher of EcommerceBytes*) |
|           Plaintiffs |
| |
|    vs. |
| |
| |
| eBay, Inc., et al., |
|           Defendants |
| |

CASE NO: 1:21-cv-11181

**PLAINTIFFS' SUR-REPLY TO DEFENDANT WENIG'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**
(***Leave to File Granted on June 16, 2023***)

Now come the Plaintiffs and respectfully file this Sur-Reply to Defendant Wenig's Reply Brief in Support of his Motion to Dismiss Plaintiffs' Amended Complaint.

**I.**    **Contrary to Defendant Wenig's claim, his stated intent behind his communications are not "obvious alternative explanation[s]" the Court is required to weigh against the plain meaning of his words.**

Defendant Wenig suggests that this Court is *required* to weigh Defendant Wenig's stated meaning behind his words to others in the conspiracy, and his "innocent explanations" for his communications, instead of taking the reasonable inferences and plain meaning of his words in favor of Plaintiffs. *See* Document No. 238 at 1-2. As the Supreme Court has made clear, however, it is only "obvious alternative explanation[s]" that the Court must consider. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 567 (2007).

Defendant Wenig's interpretations of his communications – that are nowhere within the Amended Complaint – are by no means "obvious" innocent explanations. In fact, that a directive

to "take her down" merely meant to neutralize the EcommerceBytes website is far from obvious. Defendant Wenig points to retaining a consultant firm and received a report that "outlined strategies that would drive the Steiners' articles lower in search engine results," and claims the same language was used in both circumstances, so Defendant Wenig must have been referring to other such legal methods. This claim fails.

First, "take her down" and "strategies that would drive Steiners' articles lower in search engine results" are two wildly different things. One was aimed at taking "her" down, and the other may have been referring to driving the EcommerceBytes website lower in internet search results so the website is not as accessible. Next, the directive to "take her down" came two months after the consultant report, and after discussions and after it was already acknowledged that "comms and legal" could not handle the articles and tweets relating to eBay. FAC ¶¶ 65, 70, 82. The logical inference is that the advice provided by the consultant firm did not work, so they were resorting to unconventional methods. Defendant Wymer's subsequent orders to Defendant Baugh, and the conduct that followed obviously implies that Plaintiffs are not the only ones who interpret Defendant Wenig's words as meaning more than driving Ecommercebytes down in search engine results. FAC ¶ 85.

Additionally, Defendant Wenig contends that the email from Huber stating there were no additional legal means to handle the situation was on August 6, so the August 1 text to "take her down" "cannot plausibly support any inference that the prior message was motivated by a perceived lack of legal alternatives." Document No. 238 at 3. As Plaintiffs clearly stated, however, "[t]here were discussions between…Wenig, Wymer, Jones, Baugh and the legal department relating to the fact that there were no legal means to shut things down, and that the communications department had no tools at its disposal…" Document No. 221 at 21; FAC ¶ 65.

A careful reading of the FAC demonstrates that Plaintiffs were referring to collective conversations; Defendant Jones was not on the August 6 email, and there was no mention of the communications department in that email. FAC ¶ 91-92. On May 23, 2019, Defendant Jones advised Defendant Baugh that legal and communications could not handle the situation, a conversation which occurred over two months prior to Defendant Wenig's directive. FAC ¶ 65. A week later, during a discussion with Defendant Wymer, Defendant Wenig said, "I couldn't care less what [Ina] says…[t]ake her down." FAC ¶ 66. The obsession with EcommerceBytes and the Steiners continued, and further on-record communications occurred through August. FAC ¶¶ 65-81.

Defendant Wenig also alleges there is no factual allegations to support that Defendant Wenig "enlisted" Baugh to do anything. This is contrary to the allegations in the FAC and the reasonable inferences.

Plaintiffs alleged that Defendants Wenig, Wymer, Jones and other executives were obsessed with the Steiners and the EcommerceBytes reporting, to the point where they had Defendant Baugh and his team monitoring the site at all hours of the day and night and requiring the analysts to send updates, for which the executives replied with positive reinforcement. FAC ¶¶ 52-53. The reporting that received the most attention were relating to Defendant Wenig, and Defendant Wymer promised Defendant Baugh "executive level support." FAC ¶ 61, 63, 84, 86, 111. Even Defendant Wenig's wife on one occasion reached out to Defendant Baugh to bring his attention to a comment on an article relating to Defendant Wenig, where the commenter called Wenig a "con artist and a thief." FAC ¶ 80. Defendant Baugh had Defendant Wenig's personal cell phone number, and although Defendant Baugh was a member of the security team, his workspace was directly outside of Defendant Wenig's conference room suite, allowing for

frequent and direct communication. FAC ¶ 310, 311.  Defendant Wymer, when disseminating Defendant Wenig's orders, directly advised Defendant Baugh that the order was coming from Defendant Wenig. FAC ¶¶ 86, 111. After Defendant Baugh and the others were fired, Defendant Wenig texted Baugh that he was sorry to see Baugh go, and Baugh said his loyalty would pay off, suggesting Defendant Wenig's communications before the events were not as innocent as he now claims. FAC ¶ 285. If they were, one would think he would not be sorry to see Baugh go as a result.  All of this information supports the Amended Complaint allegations that Defendant Wenig was involved in ensuring Defendant Baugh took care of what the executives perceived as a problem for eBay, and more importantly, Defendant Wenig, Wymer, and others' jobs. FAC ¶ 111 (Wymer advising Baugh that he would receive "executive level support" and "if it doesn't stop, we are all done.").

As previously noted, Defendants Wenig and Jones's interviews were never released, nor were any of their company phone communications. FAC ¶ 295. At this stage, however, Plaintiffs have set forth a plausible claim for relief, and sufficient information to open the doors to discovery. *See Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (plausibility "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the illegal [conduct]" and where "a material part of the information needed" is "within the defendant's control" this Court should allow "some latitude…in applying the plausibility standard.").

Lastly, contrary to Defendant Wenig's claim, he *was* mentioned in the relevant plea transcripts. As stated, "[s]enior executives…at eBay were frustrated with the newsletter's tone and content and with the tone and content of comments that appeared underneath the newletter's articles. The stalking campaign…arose from communications between eBay senior executives

and Jim Baugh, who was then eBay's senior security officer, it was intended to intimidate or harass [the Steiners]…" FAC ¶ 366(j). The Amended Complaint pled that Defendant Wenig is included within those executives mentioned, even if not directly mentioned by name. FAC ¶ 84.

## **CONCLUSION**

Wherefore, for the reasons set forth in this Sur-Reply and Plaintiffs' Consolidated Opposition to the Defendants' Motion to Dismiss (Document No. 221), Plaintiffs respectfully request that this Court deny Defendant Wenig's Motion to Dismiss.

Respectfully submitted,
INA AND DAVID STEINER
By their attorney,

/s/ Rosemary Curran Scapicchio
Rosemary C. Scapicchio, BBO No. 558312
Law Office of Rosemary Scapicchio
107 Union Wharf
Boston, MA 02109
617.263.7400
Rosemary@Scapicchiolaw.com

Respectfully submitted,
STEINER ASSOCIATES, LLC
By its attorney,

/s/ Jillise McDonough
Jillise McDonough, BBO No. 688694
Law Office of Jillise McDonough
107 Union Wharf
Boston, MA 02109
617.263.7400
Jillise@Scapicchiolaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon the attorney of record for each party and upon any party appearing pro se by complying with this Court's directives on electronic filing.

Dated:   <u>July 26, 2023</u>                    Signed: <u>/s/ Rosemary Scapicchio</u>