**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| INA STEINER, DAVID STEINER, and STEINER ASSOCIATES, LLC,<br><br>                      Plaintiffs,<br>     v.<br><br>EBAY INC., *et al.*,<br><br>                      Defendants. | Civil Action No. 1:21-CV-11181-DPW |

<u>**UNITED STATES' STATEMENT OF INTEREST AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**</u>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 2

I.     Proceedings in the Related Criminal Matter of *United States v. Baugh* ............................ 2

II.    Proceedings in This Matter ........................................................................... 3

III.   Protective Order Negotiations...................................................................... 5

      A.     The Proposed Protective Order ........................................................ 5

      B.     Negotiations with Defendants.......................................................... 6

      C.     Negotiations with Plaintiffs ............................................................. 7

LEGAL STANDARD............................................................................................ 8

ARGUMENT ....................................................................................................... 9

I.     Discovery of Classified U.S. Government Information is Not Relevant or
Proportional to the Needs of the Case......................................................... 9

      A.     Information Concerning the United States Government Has Little to No
Relevance to an Adjudication of Any Issue in This Case.................... 10

      B.     The Burden of Discovery Regarding the United States Is Disproportionate
to the Needs of this Case................................................................. 11

II.    The Proposed Protective Order Limits the Government's Involvement in this
Litigation to the Maximum Extent Possible. ................................................ 14

III.   The Court Should Continue to Maintain Redacted Versions of ECF No. 144-2 and
ECF No. 146-2 Under Seal While Permitting the Parties to Maintain Redacted
Versions Only. ........................................................................................... 14

IV.   The Court Should Enter the Protective Order Without Reaching the Question of
the State Secrets Privilege........................................................................... 15

CONCLUSION................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. FBI,*
    186 F.R.D. 188 (D.D.C. 1999) ................................................................ 16

*Bassiouni v. FBI,*
    436 F.3d 712 (7th Cir. 2006) ................................................................ 12

*Cheney v. United States District Court for District of Columbia,*
    542 U.S. 367 (2004) ................................................................ 16

*Church of Scientology of Boston v. IRS,*
    138 F.R.D. 9 (D. Mass. 1990) ................................................................ 18

*Community Federal Savings & Loan Ass'n v. Federal Home Loan Bank Board,*
    96 F.R.D. 619 (D.D.C. 1983) ................................................................ 18

*Crawford-El v. Britton,*
    523 U.S. 574 (1998) ................................................................ 9

*Delozier v. First National Bank of Gatlinburg,*
    113 F.R.D. 522 (E.D. Tenn. 1986) ................................................................ 16

*Department of Navy v. Egan,*
    484 U.S. 518 (1988) ................................................................ 13

*El-Masri v. Tenet,*
    437 F. Supp. 2d 530 (E.D. Va. 2006), *aff'd sub nom. El-Masri v. United States*, 479 F.3d 296
    (4th Cir. 2007) ................................................................ 17

*Epstein v. MCA, Inc.,*
    54 F.3d 1422 (9th Cir. 1995) ................................................................ 10

*Fazaga v. FBI,*
    884 F. Supp. 2d 1022 (C.D. Cal. 2012) ................................................................ 17

*Food Lion, Inc. v. United Food & Commercial Workers International Union,*
    103 F.3d 1007 (D.C. Cir. 1997) ................................................................ 9-10

*Freeman v. Seligson,*
    405 F.2d 1326 (D.C. Cir. 1968) ................................................................ 16, 18

*Global Relief Foundation, Inc. v. O'Neill,*
    315 F.3d 748 (7th Cir. 2002) ................................................................ 12

*Haig v. Agee*,
 453 U.S. 280 (1981) ........................................................................................ 12

*Herbert v. Lando*,
 441 U.S. 153 (1979) .......................................................................................... 8

*Holder v. Humanitarian Law Project*,
 561 U.S. 1 (2010) ........................................................................................... 13

*Holy Land Foundation for Relief & Devvelopment v. Ashcroft*,
 333 F.3d 156 (D.C. Cir. 2003) ....................................................................... 12

*In re Federal Deposit Insurance Corp.*,
 58 F.3d 1055 (5th Cir. 1995) .......................................................................... 18

*Jifry v. FAA*,
 370 F.3d 1174 (D.C. Cir. 2004) ..................................................................... 12

*Kasza v. Browner*,
 133 F.3d 1159 (9th Cir. 1998), *appeal after remand sub nom. Kasza v. Whitman*, 325 F.3d
 1178 (9th Cir. 2003) ....................................................................................... 17

*Kyle Engineering Co. v. Kleppe*,
 600 F.2d 226 (9th Cir. 1979) .......................................................................... 18

*Mohamed v. Jeppesen Dataplan, Inc.*,
 614 F.3d 1070 (9th Cir. 2010) (*en banc*).................................................. 16, 17

*People v. Farley*,
 46 Cal. 4th 1053 (Cal. 2010) .......................................................................... 18

*People's Mojahedin Organization of Iran v. Department of State*,
 327 F.3d 1238 (D.C. Cir. 2003)...................................................................... 12

*Sakab Saudi Holding Co. v. Aljabri*,
 58 F.4th 585 (1st Cir. 2023) ........................................................................... 16

*Seattle Times Co. v. Rhinehart*,
 467 U.S. 20 (1984) ........................................................................................... 8

*St. John v. Napolitano*,
 274 F.R.D. 12 (D.D.C. 2011) ......................................................................... 13

*Tabbaa v. Chertoff*,
 509 F.3d 89 (2d Cir. 2007) ............................................................................. 12

*United States v. Miracle Recreation Equipment Co.*,
 118 F.R.D. 100 (S.D. Iowa 1987)................................................................... 18

*United States v. Nixon*,
  418 U.S. 683 (1974) ................................................................................................ 13

*United States v. Reynolds*,
  345 U.S. 1 (1953) ...................................................................................... 16, 17, 18

*United States v. Zubaydah*,
  142 S. Ct. 959 (2022), *on remand sub nom. Husayn v. Mitchell*, 31 F.4th 1274 (9th Cir. 2022)
  .................................................................................................................................. 13

*Vire v. Entergy Operations, Inc.*,
  No. 4:15-cv-214, 2016 WL 10576707 (E.D. Ark. Sept. 28, 2016) .......................... 13

## Statutes

28 U.S.C. § 517 ............................................................................................................. 1

## Rules

Fed. R. Civ. P. 26(b)(1) ................................................................................................ 9

Fed. R. Civ. P. 26(c)(1) ............................................................................................ 8, 9

## Other Authorities

Mem. from Attorney Gen. to Heads of Executive Dep'ts and Agencies on Policies and
  Procedures Governing Invocation of the States Secrets Privilege (Sept. 23, 2009),
  http://www.justice.gov/opa/documents/state-secret-privileges.pdf .......................... 17

*United States v. Baugh*,
  597 F. Supp. 3d 502 (D. Mass. 2022) (No. 1:20-cr-10263-PBS) (Saris, J.) ............... 2, 3, 12, 15

# INTRODUCTION

The United States respectfully submits this Statement of Interest, pursuant to 28 U.S.C. § 517,[1] and memorandum in support of its motion for protective order.  This is a dispute between two private parties.  The United States is not a party to this litigation, and Plaintiffs do not allege that the Government caused or is liable for any of the injuries alleged.  Instead, Plaintiffs raise twelve claims against private Defendants[2]—none of which requires Plaintiffs to show anything related to any of the Defendants' alleged government backgrounds.  Thus, and as discussed below, any such information would only complicate, and should not be subject to discovery in, this case.

Disclosure of that limited—and largely irrelevant—information could, however, reasonably be expected to implicate the national security of the United States.  The Government thus has an interest in protecting against disclosure in this case certain limited information, as described in the Government's accompanying *ex parte*, *in camera* submissions.

To do so, the United States respectfully requests that this Court enter the attached proposed protective order foreclosing discovery or disclosure of information in this civil action that is in any way, either directly or indirectly, related to the Defendants' or any other individual's relationship with the United States Government, as well as any other classified information and information subject to nondisclosure or secrecy agreements.  *See* Ex. A, Proposed Protective Order ("Prot. Order"); *see also infra* at 5–6.  As noted, such information should have little to no relevance to this tort litigation between private parties.  And any conceivable relevance is outweighed by the

---

[1] 28 U.S.C. § 517 provides that an officer of the Department of Justice "may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States . . . or to attend to any other interest of the United States."

[2] The United States takes no position on the merits of the parties' claims.

Government's significant interests in protecting against its disclosure in this proceeding given the impact on national security.  The United States therefore seeks a protective order under Rule 26(b) and (c) because discovery or disclosures regarding the Government are beyond the scope of permissible discovery in this case; they are not relevant to any party's claim or defense and not proportional to the need for this information.

The Government has worked extensively with the parties to attempt to come to agreement on the terms of the proposed protective order, including by making certain concessions over three rounds of edits to minimize the scope of protected information and the Government's involvement in this matter.  The resulting protective order will provide a sensible mechanism to permit the Government to protect national security while allowing this proceeding to move forward with minimal disruption to the Court, the parties, and the discovery process.  The Government therefore respectfully requests that the Court enter the attached proposed protective order.

## BACKGROUND

### I.    Proceedings in the Related Criminal Matter of *United States v. Baugh*

This case arises out of crimes committed by James Lance Baugh ("Baugh"), one of the defendants in this matter, against Ina and David Steiner, two of the plaintiffs in this matter.  On September 29, 2022, the Court sentenced Baugh to 57 months in prison, following his guilty plea to several federal crimes arising out of a harassment and intimidation campaign targeting the Steiners.  Judgement, *United States v. Baugh*, 597 F. Supp. 3d 502 (D. Mass. 2022) (No. 1:20-cr-10263-PBS) (Saris, J.), ECF No. 235.  In connection with his sentencing, on September 27, 2022, Baugh filed a memorandum on the public docket in his criminal case.  Def.'s Mem., *Baugh*, 597 F. Supp. 3d 502 (No. 1:20-cr-10263-PBS), ECF No. 227.  That memorandum attached several letters of support, including a letter of contrition Baugh wrote that contained classified information.

*See* Def.'s Mem. Ex. A, *Baugh*, 597 F. Supp. 3d 502 (No. 1:20-cr-10263-PBS), ECF No. 227-1 (the "Letter").  Baugh did not seek the Government's consent to file that information on the public docket, nor did the Government ever authorize the disclosure of that classified information.  Upon discovering the filed classified information, a Department of Justice ("DOJ") Classified Information Security Officer ("CISO") contacted the court in that case on September 30, 2022, and the Letter was then temporarily sealed and removed from the Court's docket to prevent the further unauthorized disclosure of the classified information.  Baugh's sentencing memorandum and the other letters of support that he attached to his memorandum remained available to the public, and they continue to be publicly available today.

On January 23, 2023, the Government moved the *Baugh* court for an order permitting it to file a redacted version of the Letter that removed the classified information in place of the unredacted version and then requesting that the court maintain that redacted version under seal.  On February 3, 2023, finding that good cause had been shown, the *Baugh* court granted the Government's motion.  Electronic Order, *Baugh*, 597 F. Supp. 3d 502 (No. 1:20-cr-10263-PBS), ECF No. 252.

## II.    Proceedings in This Matter

Separately, and prior to Baugh's sentencing in the criminal matter, the Steiners sued eBay, Baugh, and nine other named defendants on July 21, 2021, seeking money damages.  Compl., ECF No. 1.  Between October 28, 2021 and December 30, 2021, many of the defendants moved to dismiss Plaintiff's original complaint, and briefing on those motions completed on June 25, 2022.  While those motions were pending, after Baugh filed his sentencing memorandum in the criminal matter, Plaintiffs filed a Motion for Leave to File Supplement to Plaintiffs' Consolidated Opposition to Defendants' Motion to Dismiss on September 29, 2022.  ECF No. 144.  That filing

attached Baugh's sentencing memorandum, along with its corresponding attachments, including the Letter.  Then, after the Court granted Plaintiffs' motion for leave to file, Order, ECF No. 145, Plaintiffs filed their Supplemental Opposition to Defendants' Motions to Dismiss on October 1, 2022.  ECF No. 146.  That filing also attached Baugh's sentencing memorandum with its corresponding attachments, including the Letter.  *See* ECF Nos. 146-1, 146-2.

On October 4, 2022, the Government, which had not previously been aware of this matter, discovered that the Steiners' filings contained the same Letter (and the same classified information) that Baugh had filed in the criminal matter, and the two filings (at ECF Nos. 144 and 146) were placed under seal in their entireties until the Government could confer with the parties and propose a plan to the Court for how to handle the Letter.  The Government also began to develop a proposal for a protective order to ensure that classified information remains protected throughout the discovery process and until the conclusion of this matter.  Over the course of a month, Government counsel met and conferred with the twelve parties in the civil matter.

The product of these discussions was a negotiated resolution whereby the Government filed a consent motion proposing that the entirety of ECF Nos. 144 and 146 be unsealed, except the attached Letter, filed at ECF Nos. 144-2 and 146-2.  With the consent of all parties, the Government proposed "that those documents remain under seal . . . until such time as the Government moves for a protective order and th[e] Court rules on the matter."  Status Report at 3, ECF No. 165.  The Court issued an order implementing the Government's proposal on December 20, 2022.  Order, ECF No. 166.  In accordance with the Court's order, the Government prepared a redacted version of the Letter and circulated it to the parties on December 30 to be substituted in place of the version containing classified information and to the Court to be substituted on the docket, still under seal.

4

### III.    Protective Order Negotiations

As referenced above, the Government began discussing the general idea of a protective order to protect the Government's interest in this matter with the parties in November 2022.  After the Court ordered Plaintiffs to file an amended complaint, however, those discussions were suspended so that the parties could evaluate the allegations in the new complaint and also evaluate how Defendants would respond to those allegations.  Meanwhile, Defendants filed motions to dismiss.  The Court ordered the start of discovery on August 10, 2023, and the Government circulated a draft protective order to all the parties the following day.  Thereafter, the Government began to negotiate the terms of the protective order with the individual parties to this matter in the hopes of reaching an agreement.

### A.  The Proposed Protective Order

The protective order the Government proposes prevents the parties from eliciting or using in this litigation any information regarding any relationship that any party in this case might have ever had with the U.S. Government, as well as any other classified information and information subject to nondisclosure or secrecy agreements.  *See* Prot. Order ¶ 2.  The proposed protective order does not preclude elicitation or disclosure of whether Baugh had a relationship with the U.S. Government.  *Id.* ¶ 3.  The protective order imposes an obligation on the parties to ensure that they do not knowingly violate the terms of the order, *id.* ¶ 4, but also provides the Government an opportunity to review a limited set of discovery materials and filings before they are made public, *id.* ¶ 5.  The proposed order also provides the Government an opportunity participate in certain types of depositions, hearings, and trial where protected information might reasonably be disclosed, *id.* ¶¶ 7, 9, and gives the Government a right to review transcripts of such proceedings for redactions, *id.* ¶ 8.  There is also a built-in dispute mechanism, whereby parties may dispute

the Government's application of the terms of the protective order. *See id.* ¶ 12.

### B. Negotiations with Defendants

Some defendants initially objected to the Government's initial proposal, primarily based on (1) the breadth of material the earlier draft required the parties to have the Government review prior to filing or serving, (2) potential complications to deposition scheduling and logistics due to Government involvement, and (3) potential discovery delays.   Government counsel met and conferred with counsel for several defendants and, on September 11, proposed a revised protective order that made several significant changes.  First, the Government narrowed the scope of materials DOJ would review to only those referencing the U.S. Government or Baugh and only those documents that relate exclusively to events occurring before July 1, 2018.  There had previously been no date cutoff.  The Government chose that date because it is exactly six months before Plaintiffs allege in their Amended Complaint that the activities that gave rise to this litigation began.  The Government therefore hoped this would exclude a large volume of materials from DOJ review.  The Government also limited its reservation of rights to participate in depositions to only those that might reasonably be expected to elicit classified information and clarified that the parties should meet and confer with the Government regarding the time, place, and manner of deposition, rather than retaining for the Government the right to determine those.  The Government also clarified wording to make clear its original intent that any determination made by the Government under the terms of the protective order may be challenged by any party in accordance with the mechanism described therein.

The revised draft appeared by the Government to have been significantly better received by Defendants, but some defendants continued to be concerned about (1) limiting the notices of deposition to only those wherein the party taking the deposition intends to elicit information

regarding Protected Information and (2) shifting the July 1, 2018 cutoff date earlier so as to further restrict the materials the Government would be permitted to review.  On September 21, the Government circulated a third revised proposed protective order to the parties.  That draft, which is the same one that the Government moves the Court to enter today, imposes the limitation Defendants requested on the pre-notice obligation to confer with the Government to only those depositions where the party taking the deposition reasonably believes that the deposition might elicit Protected Information or any information regarding Baugh prior to July 1, 2018.  The proposed protective order also implements several other less substantial edits suggested by the parties, primarily for purposes of clarity.  The Government considered the parties' request to move the July 1, 2018 date earlier but determined that a cutoff date of six months before the allegations of Plaintiffs' Amended Complaint begin was the most appropriate option.

Ultimately, counsel for Defendant James Baugh indicated that his client takes no position, and counsel for Defendants David Harville and Veronica Zea indicated that their clients are not opposed to the Government's proposed protective order.  Counsel for Defendants Philip Cooke, eBay, Wendy Jones, David Wenig, and Steve Wymer indicated that, despite the Government's and those Defendants' efforts to try to resolve their remaining differences, their clients oppose the proposed protective order.  The Government was unable to obtain the final positions of Defendants Brian Gilbert, Steve Krystek, Stephanie Popp, Progressive F.O.R.C.E. Concepts LLC, or Stephanie Stockwell, despite using its best efforts to do so.

### C.  Negotiations with Plaintiffs

DOJ counsel first reached out to Plaintiff's counsel on July 27, 2023 to obtain her position on a draft proposed protective order, but counsel indicated that she was too busy at that time and would not be able to respond.  DOJ counsel then circulated another draft on August 11, at the same

time as it circulated that draft to Defendants.  On August 16, Plaintiff's counsel informed the Government that Plaintiffs objected to the August 11 draft protective for much the same reasons as the defendants and also for the additional reason that the Government continues to seek to protect documents containing classified information that Plaintiffs had, themselves, temporarily filed on the public docket because they had been briefly filed on the public docket.

Thereafter, Government counsel sought to engage Plaintiff's counsel in further discussion regarding the protective order in communications, some of which contained draft proposals, on September 11, September 14, and September 27.  Each time, Plaintiffs' counsel indicated she was too busy to be able to review and respond to the Government's communications and draft proposals and that she needed more time.  Following the September 27 email, the Government decided to wait some additional time to file in the hope of working with Plaintiffs on an agreed protective order, but as of the date of this filing—October 17—the Government has still not received Plaintiffs' views on the proposed protective order.  Given that discovery is open and the parties filed a Joint Motion for Entry of Scheduling Order on October 16, ECF No. 272, and will soon be filing their own proposed protective order, *see id.*, the Government cannot await Plaintiffs' input any longer.

## LEGAL STANDARD

The Court has wide discretion to control the nature and timing of discovery and "should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979).  This power includes authority to issue a protective order under Federal Rule of Civil Procedure 26(c) upon a showing of good cause to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("Rule 26(c) confers broad

discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."); *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.").  This discretion includes orders forbidding the requested discovery altogether and "forbidding inquiry into certain matters."  Fed. R. Civ. P. 26(c)(1)(A), (D).

**ARGUMENT**

The Court should grant the Government's proposed protective order because discovery of classified U.S. Government information is not relevant or proportional to the needs of the case. The Government developed the proposed protective order over several rounds of review and consultation with the parties in this matter, and the final draft limits the Government's involvement in this litigation to the maximum extent possible while still protecting classified information.  The Court should also continue to maintain redacted versions of the Letter containing classified information under seal while permitting the parties to maintain redacted versions only.  And the Court should issue this relief without reaching the question of the state secrets privilege.

**I.    Discovery of Classified U.S. Government Information is Not Relevant or Proportional to the Needs of the Case.**

Rule 26 limits discovery to information that is both "relevant" to a party's claims or defenses and "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Among other factors, the proportionality analysis turns on the "importance of the discovery in resolving the issues" and whether the likely benefit of the discovery outweighs the burden or expense of responding.  *Id.*  Although "'relevance' for discovery purposes is broadly construed," the requirement is "not without bite," and discovery should be deemed impermissible where there is no "reasonable likelihood that allowing discovery . . . will lead to discovery of evidence relevant" to the litigation.  *Food Lion, Inc. v. United Food & Com. Workers Int'l Union*, 103 F.3d 1007,

9

1012–13 (D.C. Cir. 1997); *see also Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995) (vacating discovery-related contempt order because the information sought was irrelevant; it "would have no bearing on either the merits of the case or on the motion for class certification").

### A. Information Concerning the United States Government Has Little to No Relevance to an Adjudication of Any Issue in This Case.

Plaintiffs' First Amended Complaint, ECF No. 176 ("FAC"), alleges claims of (1) intentional infliction of emotional distress, (2) stalking, (3) negligent infliction of emotional distress, (4) negligence, (5) negligent hiring, (6) negligent supervision, (7) negligent retention, (8) assault, (9) Massachusetts Civil Rights Act violation, (10) defamation, (11) trespass, (12) false imprisonment, (13) civil conspiracy, and (14) ratification against one or more of a group of thirteen identified defendants and Jane Doe and John Doe defendants.  *See generally* FAC.  None of these claims requires Plaintiffs to demonstrate anything related to Baugh's alleged Government background.  Perhaps for this reason, the 572-paragraph, 123-page complaint references this information in just five paragraphs.  *See* ¶¶ 231 ("eBay, through its negligent hiring practices, sought out employees with the unique experience and skills necessary to engage in the type of behavior used during the course of the conspiracy, such as former CIA and law enforcement agents, and former military."); 298–300 (generally describing work that Plaintiffs allege Baugh performed for the Government, "including conducting physical and electronic surveillance, engaging in physical trespass, using false pretenses and fake identities, and gaining unauthorized access to private computer systems, documentation, and resources, to further national security objectives"); 446 ("eBay hired Defendant Baugh for the specific purpose of using his past experiences working for the FBI and CIA so he could engage in the type of conduct he inflicted upon the Steiners.  He was also hired because eBay knew that in working for these Government agencies, he understood his duty to impart the utmost loyalty and secrecy on behalf of the agency

he was working for.").

In short, Plaintiffs do not allege that any Government agency or entity caused or is liable for any of the injuries alleged.  Rather, their theory of liability appears to be that eBay negligently hired an individual who allegedly had a former Government background and should have realized that an individual with that type of background would commit the kinds of criminal acts that led to this litigation.  The chain of logic is tenuous, and Government information implicating any individual's employment with the United States Government clearly has no direct relevance to resolving at least the primary questions in this action.  But nonetheless, subject to the entry of the protective order sought here, the United States will agree to allow discovery between the parties for the sole purpose of determining whether a relationship existed between Baugh and either the CIA or FBI.  *See* Prot. Order ¶ 3 ("Protected Information shall not include the fact of whether or not a Relationship existed.").  This should permit the parties to derive whatever limited degree of relevant information pertaining to the U.S. Government that they believe they need to litigate this matter.  In short, the United States seeks reasonable safeguards to protect Government information from disclosure, while appropriately facilitating litigation and adjudication of the parties' outstanding issues.

### B.  The Burden of Discovery Regarding the United States Is Disproportionate to the Needs of this Case.

Even if certain information regarding the United States could arguably have some potential relevance to Plaintiffs' claims, the burden of such discovery would be disproportionate to the needs of this case.  The United States is unable to provide a full explanation of those burdens in this filing, but it addresses the matter at greater length in three *ex parte*, *in camera* filings submitted herewith: a brief, and two declarations.  These submissions explain the reasoning for the Government's determination that its involvement in this case is necessary to protect national

11

security and the reasoning for the entry of the proposed protective order.[3]  The Government's *ex parte* submission contains classified national security information and is submitted solely for the Court's *ex parte*, *in camera* review.  Courts have expressly endorsed the practice of filing materials for *ex parte*, *in camera* review under similar circumstances.  *See, e.g.*, *Tabbaa v. Chertoff*, 509 F.3d 89, 93 n.1 (2d Cir. 2007) (reviewing *ex parte* and *in camera* classified information pertaining to the reasons for border inspection); *Bassiouni v. FBI*, 436 F.3d 712, 722 n.7 (7th Cir. 2006) (conducting *ex parte*, *in camera* review of classified FBI declaration); *Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004) ("[T]he court has inherent authority to review classified material *ex parte*, *in camera* as part of its judicial review function."); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (holding that the Due Process Clause does not prohibit designation for sanctions based on classified information submitted only for *ex parte* and *in camera* review) (citing *People's Mojahedin Org. of Iran v. Dep't of State*, 327 F.3d 1238, 1242 (D.C. Cir. 2003)); *Global Relief Found., Inc. v. O'Neill*, 315 F.3d 748, 754 (7th Cir. 2002) (same). And the court in the underlying criminal matter of *United States v. Baugh* similarly accepted the Government's *ex parte* and *in camera* filing regarding much of the same information in that case. *See* Electronic Order, *Baugh*, 597 F. Supp. 3d 502 (No. 1:20-cr-10263-PBS) (Saris, J.), ECF No. 252.

In considering the Government's reasoning for seeking to protect sensitive information, courts are mindful that "no governmental interest is more compelling than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307 (1981).  "[I]n assessing the Government's claim that

---

[3] The Government has lodged its classified submission *ex parte*, *in camera*, with the Department of Justice's CISO, who will make it available to the Court for review at the Court's convenience.

disclosure may harm national security, courts must exercise the traditional 'reluctan[ce] to intrude upon the authority of the Executive in military and national security affairs.'"  *United States v. Zubaydah*, 142 S. Ct. 959, 967 (2022), *on remand sub nom. Husayn v. Mitchell*, 31 F.4th 1274 (9th Cir. 2022) (alteration in original) (quoting *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988)).  The responsible executive officials possess "the necessary expertise" to make the required "[p]redictive judgment" about risks to national security.  *Egan*, 484 U.S. at 529.  And the Supreme Court has further recognized that "when it comes to collecting evidence and drawing factual inferences [concerning national security], the lack of competence on the part of the courts is marked."  *Holder v. Humanitarian L. Project*, 561 U.S. 1, 34 (2010) (quotations marks omitted) (citation omitted).  Courts therefore afford "the utmost deference" to the Executive's assessment of potential national security harms.  *Egan*, 484 U.S. at 529–30 (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)); *see also id.* at 527 (recognizing the Government's "'compelling interest' in withholding national security information from unauthorized persons" and stating that the "authority to protect such information falls on the President as head of the Executive Branch and as Commander in Chief" (citation omitted)).

In general terms, the United States seeks protection under Rule 26 because of the impact the disclosure of information regarding the Government in this litigation could reasonably be expected to have on national security.  That harm should be dispositive in the Rule 26 proportionality calculus where it is compared to the (at most) minimal relevance of Government information to the resolution of this litigation.  *Cf. St. John v. Napolitano*, 274 F.R.D. 12, 17 (D.D.C. 2011) (deeming production of various medical records not proportional because of, *inter alia*, the "harm to the plaintiff's privacy interests from the disclosure"); *Vire v. Entergy Operations, Inc.*, No. 4:15-cv-214, 2016 WL 10576707, at *2 (E.D. Ark. Sept. 28, 2016)

(balancing "the government's interest in confidentiality" against the plaintiff's need for certain "highly sensitive information" regarding nuclear power plants and finding "the need for confidentiality outweighs plaintiffs' need"). The United States is unable to provide additional detail in this filing, but addresses the matter at greater length in its supplemental classified memorandum and declarations.

## II. The Proposed Protective Order Limits the Government's Involvement in this Litigation to the Maximum Extent Possible.

The Government understands the desire of the parties to minimize the Government's role in and effect on this litigation. The Government shares those same goals. To that end, it has successfully worked with the parties over successive drafts of the proposed protective order to narrow its involvement as much as possible. The current draft achieves that. The Government understands that the parties may seek a narrower version of "Protected Information," as defined in paragraph two, or to further minimize the date range of documents subject to Government review, as set forth in paragraph five with a July 1, 2018 cutoff date. Unfortunately, however, neither of those can be further limited beyond what the Government has already done. The reasons for this are explained in the Government's supplemental classified memorandum.

## III. The Court Should Continue to Maintain Redacted Versions of ECF No. 144-2 and ECF No. 146-2 Under Seal While Permitting the Parties to Maintain Redacted Versions Only.

Another particularity of the proposed protective order warrants mention here. As explained above, a redacted version of Baugh's Letter that he attached to his sentencing memorandum in the underlying criminal matter, which Plaintiffs then filed on the public docket in this matter before it was removed from the criminal docket, currently remains under seal in this matter at both ECF No. 144-2 and 146-2. *See supra* at 3–4. The submissions the Government has filed *ex parte* and *in camera* explain why the continued sealing of the Letter, even after redaction to remove classified

information, is consistent with significant national security interests of the United States.  This is so, as the declaration explains, because the classified information was temporarily available on the public docket due to Baugh's unauthorized filing in the criminal matter.  In short, under the circumstances described in the declaration, there is no less restrictive alternative that will simultaneously provide greater access to the Letter and protect against serious damage to the national security of the United States.  The proposed relief preserves the public's and parties' access to the sentencing memorandum to which the Letter was attached.  That sentencing memorandum contains a statement regarding Baugh's alleged government relationship.

This relief would also be consistent with the actions the court took in the underlying criminal case to prevent further dissemination of the same information and would not risk undoing the actions in that matter.  As described above, the court in *Baugh* issued an order that the redacted version of the Letter be maintained under seal on the docket.  Electronic Order, *Baugh*, 597 F. Supp. 3d 502 (No. 1:20-cr-10263-PBS) (Saris, J.), ECF No. 252 ("The Court has reviewed an ex-parte sealed affidavit. Based on this review, the Court finds good cause for sealing the defendant's letter submitted at the sentencing hearing.").  Permitting any further disclosure of the Letter in this case than in the criminal case would effectively undo the actions of the court in *Baugh*.

The fact that these documents temporarily appeared on the public docket does not change the fact that the information at issue in these documents remains classified.  The Government's course of action to date has been calibrated to appropriately protect its information from further disclosure, and, therefore, prevent any further harm to the national security.

## IV. The Court Should Enter the Protective Order Without Reaching the Question of the State Secrets Privilege.

The Government notes that the national security information at issue in this motion is potentially subject to an assertion of the state secrets privilege, an absolute privilege that protects

information from disclosure in civil cases.  *See generally United States v. Reynolds*, 345 U.S. 1 (1953); *Sakab Saudi Holding Co. v. Aljabri*, 58 F.4th 585 (1st Cir. 2023).  To be clear, the Government does not, by this motion, invoke the state secrets privilege.  Indeed, the proposed protective order is designed, in part, to obviate any need for any party or the Court to consider issues bearing on the privilege.

And this is manifestly appropriate.  As a general matter, when a discovery request calls for the production of potentially privileged information, a court may, and properly should, consider questions of relevance before reaching assertions of privilege.  *See, e.g.*, *Alexander v. FBI*, 186 F.R.D. 188, 192 (D.D.C. 1999) (finding requested information to be irrelevant, rendering it unnecessary to reach issue of presidential communications privilege, which had been bifurcated for later consideration).  *Delozier v. First Nat'l Bank of Gatlinburg*, 113 F.R.D. 522, 524 (E.D. Tenn. 1986) (emphasizing that "the information sought must *initially* satisfy the relevancy requirement . . . before there is any necessity" to reach claims of privilege) (emphasis in original).  Thus, "matters of privilege"—including formal assertion of privilege—"can appropriately be deferred . . . until after the production demand has been adequately bolstered by a general showing of relevance and good cause."  *Freeman v. Seligson*, 405 F.2d 1326, 1338 (D.C. Cir. 1968).

This approach is especially appropriate in cases involving Executive privileges.  *Cf. Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 390 (2004) (in case concerning the presidential communications privilege, encouraging courts, "whenever possible," to "explore other avenues, short of forcing the Executive to invoke [Executive] privilege").  The state secrets privilege protects "matters which, in the interest of national security, should not be divulged."  *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1082 (9th Cir. 2010) (*en banc*) (quoting *Reynolds*, 345 U.S. at 10).  "Given the vitally important purposes it serves, . . . the state secrets privilege is . . . a

privilege of the highest dignity and significance." *El-Masri v. Tenet*, 437 F. Supp. 2d 530, 536 (E.D. Va. 2006), *aff'd sub nom. El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007). "Once . . . properly invoked and the court is satisfied as to the danger of divulging state secrets, the privilege is absolute" and cannot be overcome by any claim of necessity. *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998), *appeal after remand sub nom. Kasza v. Whitman*, 325 F.3d 1178 (9th Cir. 2003). Because of its potentially "harsh" consequence in requiring dismissal of a case, *id.* at 1167, the state secrets privilege "is not to be lightly invoked," *Mohamed*, 614 F.3d at 1080 (quoting *Reynolds*, 345 U.S. at 7).

A formal claim of privilege must be "lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Id.* (quoting *Reynolds*, 345 U.S. at 7) (internal quotation marks omitted). The decision "must reflect the certifying official's *personal* judgment; responsibility for this task may not be delegated to lesser-ranked officials." *Id.* (emphasis in original). In addition, as a matter of Executive Branch practice, officials at the highest levels of the Department of Justice also must review any proposed assertion of the state secrets privilege. *Id.* at 1077 (citing Mem. from Attorney Gen. to Heads of Executive Dep'ts and Agencies on Policies and Procedures Governing Invocation of the States Secrets Privilege (Sept. 23, 2009), http://www.justice.gov/opa/documents/state-secret-privileges.pdf ("Sept. 23, 2009 Memorandum")). Consideration of these matters within the Department of Justice requires, *inter alia*, a "recommendation from the Assistant Attorney General; evaluation, consultation, and recommendation by a state secrets review committee; and approval by the Attorney General." *See Fazaga v. FBI*, 884 F. Supp. 2d 1022, 1040 (C.D. Cal. 2012) (subsequent history omitted) (citing Sept. 23, 2009 Memorandum ¶¶ 2–4).

As courts have recognized in other contexts, "[h]igh ranking government officials have

greater duties and time constraints" than other government employees, *In re Fed. Deposit Ins. Corp.*, 58 F.3d 1055, 1060 (5th Cir. 1995) (internal quotation marks omitted) (citation omitted), and "must be allowed the freedom to perform their duties without the constant interference of the discovery process," *United States v. Miracle Recreation Equip. Co.*, 118 F.R.D. 100, 104 (S.D. Iowa 1987) (citing *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 232–32 (9th Cir. 1979)); *see Church of Scientology of Boston v. IRS*, 138 F.R.D. 9, 12 (D. Mass. 1990). "[P]ublic policy requires that the time and energies of public officials be conserved for the public's business to as great an extent as may be consistent with the ends of justice in particular cases." *Cmty. Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 96 F.R.D. 619, 621 (D.D.C. 1983). For all these reasons, particularly in light of the extensive personal consideration required by officials at the highest level of government, the United States should not be forced into a decision about whether to assert the privilege where alternative grounds for disposition may be available. Indeed, in *Reynolds*, the Supreme Court criticized litigants that "forc[ed] a showdown on the claim of privilege" where an alternative was available, and it was not clear that the requested information was needed for the litigation in the first instance. 345 U.S. at 11;[4] *see also People v. Farley*, 46 Cal. 4th 1053, 1124–29 (Cal. 2010); *Freeman*, 405 F.2d at 1338 (trial court "appropriately . . . deferred" consideration of issues related to the state secrets privilege until after the "production demand ha[d] been

---

[4] In *Reynolds*, the widows of civilians that had been killed in the crash of an Air Force plane moved to compel production of an accident report, which contained classified information regarding electronic equipment that had been aboard the aircraft. 345 U.S. at 3–5. The Government asserted privilege, explaining that the report could not be provided "without seriously hampering national security," and offered the testimony of surviving crew members instead. *Id.* at 5. The Supreme Court indicated that that offer should have been accepted. *Id.* at 11. The Court observed that there was no evidence that the electronic equipment described in the classified report had any causal connection to the accident, and that, by failing to accept the Government's offer and insisting on production of the classified report, the plaintiffs had "posed the privilege question for decision with the formal claim of privilege set against a dubious showing of necessity." *Id.*

adequately bolstered by a general showing of relevance and good cause"). In keeping with these principles, the Court should render a determination as to the relevance of the classified information that the parties may seek—and grant the Government's motion without considering issues bearing on the potential need to address the state secrets privilege. *See supra* Sections I–III.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests the Court grant the attached protective order and exclude information from discovery or disclosure in this litigation implicating the United States Government that in any way, either directly or indirectly, relates to information about the Defendants' or any other individual's relationship with the United States Government.

Dated: October 17, 2023                    Respectfully submitted,

                                           BRIAN M. BOYNTON
                                           Principal Deputy Assistant Attorney General
                                           Civil Division

                                           BRIGHAM J. BOWEN
                                           Assistant Director, Federal Programs Branch

                                           */s/ Christopher D. Edelman*
                                           CHRISTOPHER D. EDELMAN
                                           (D.C. Bar No. 1033486)
                                           Trial Attorney
                                           U.S. Department of Justice
                                           Civil Division, Federal Programs Branch
                                           1100 L Street, NW
                                           Washington, D.C. 20005
                                           Tel: (202) 305-8659
                                           Email: christopher.edelman@usdoj.gov

                                           *Counsel for the United States of America*