# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INA STEINER, DAVID STEINER, and STEINER ASSOCIATES, LLC,<br><br>　　　　　　　Plaintiffs,<br>　v.<br><br>EBAY INC., *et al.*,<br><br>　　　　　　　Defendants. | Civil Action No. 1:21-CV-11181-DPW |

# UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION TO VACATE THE PRIOR ORDER SEALING THE DOCUMENTS THAT ARE THE SUBJECT OF THE GOVERNMENT'S REQUESTED PROTECTIVE ORDER

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

    I.    Proceedings in the Related Criminal Matter of United States v. Baugh ................. 2

    II.    Proceedings in This Matter ..................................................................................... 3

    III.    The Government's Motion for a Protective Order .................................................. 5

LEGAL STANDARD ............................................................................................................... 7

ARGUMENT ............................................................................................................................ 7

    I.    The Single Paragraph of Information at Issue Has Limited to No Relevance to Plaintiffs' Claims. ............................................................................. 8

    II.    The Letter Should be Redacted and Sealed to Protect Classified National Security Information. ............................................................................................... 9

    III.    The Temporary Availability of Classified Information on the Public Docket Does Not Limit the Government's Ability to Protect That Information. ............................................................................................................ 12

    IV.    Permitting the Documents to Be Unsealed in this Matter Would Nullify the Baugh Court's Order Sealing the Same Documents, to Which Plaintiffs Did Not Object. ...................................................................................................... 15

CONCLUSION ....................................................................................................................... 16

## TABLE OF AUTHORITIES

**CASES**

*ACLU v. Dep't of State*,
  878 F. Supp. 2d 215 (D.D.C. 2012) .................................................................................. 15

*Alfred A. Knopf, Inc. v. Colby*,
  509 F.2d 1362 (4th Cir. 1975) .......................................................................................... 15

*CIA v. Sims*,
  471 U.S. 159 (1985) .......................................................................................................... 10

*Dep't of Navy v. Egan*,
  484 U.S. 518 (1988) .......................................................................................................... 10

*Fitzgibbon v. CIA*,
  911 F.2d 755 (D.C. Cir. 1990) ................................................................................... 13, 14

*FTC v. Standard Fin. Mgmt. Corp.*,
  830 F.2d 404 (1st Cir.1987) ................................................................................................ 7

*Haig v. Agee*,
  453 U.S. 280 (1981) ............................................................................................................ 9

*Holder v. Humanitarian L. Project*,
  561 U.S. 1 (2010) .............................................................................................................. 10

*Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*,
  659 F. Supp. 674 (E.D.N.Y. 1987), *aff'd*, 891 F.2d 414 (2d Cir. 1989) .................................. 13

*In re Providence J. Co.*,
  293 F.3d 1 (1st Cir. 2002) ............................................................................................... 7, 9

*Maynard v. CIA*,
  986 F.2d 547 (1st Cir. 1993) ............................................................................................. 11

*N.Y. Times v. CIA*,
  965 F.3d 109 (2d Cir. 2020) .............................................................................................. 14

*Nat'l Org. for Marriage v. McKee*,
  649 F.3d 34 (1st Cir. 2011), *abrogated on other grounds by Frese v. Formella*,
  53 F.3d 34 (1st Cir. 2022) ................................................................................................... 9

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978) ........................................................................................................ 7, 9

*Nuclear Control Inst. v. U.S. Nuclear Regul. Comm'n*,
  563 F. Supp. 768 (D.D.C. 1983) ....................................................................................... 14

*Pfeiffer v. CIA*,
  60 F.3d 861 (D.C. Cir. 1995) ............................................................................. 13, 14

*Phillippi v. CIA*,
  655 F.2d 1325 (D.C. Cir. 1981) ................................................................................ 15

*Pub. Citizen v. Dep't of State*,
  11 F.3d 198 (D.C. Cir. 1993) ..................................................................................... 13

*Siedle v. Putnam Invs., Inc.*,
  147 F.3d 7 (1st Cir. 1998) ................................................................................. 7, 9, 11

*Toy v. Holder*,
  714 F.3d 881 (5th Cir. 2013) ..................................................................................... 10

*United States v. Aref*,
  533 F.3d 78 (2d Cir. 2008) ........................................................................................ 10

*United States v. Kravetz*,
  706 F.3d 47 (1st Cir. 2013) .................................................................................... 9, 11

*United States v. Moussaoui*,
  65 F. App'x 881 (4th Cir. 2003) ................................................................................ 10

*United States v. Salemme*,
  985 F. Supp. 193 (D. Mass. 1997) ............................................................................... 9

*United States v. Vinas*,
  No. 08-CR-823 (NGG), 2017 WL 2462503 (E.D.N.Y. June 6, 2017) ........................ 9

*United States v. Zubaydah*,
  595 U.S. 195 (2022) ............................................................................................ 10, 15

**REGULATIONS**

Classified National Security Information,
  Exec. Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) ......................... 12, 13, 14

**OTHER AUTHORITIES**

S. Rep. No. 93-1200 (1974) (Conf. Rep.), *reprinted in* 1974 U.S.C.C.A.N. 6285 ....................... 14

## INTRODUCTION

On September 27, 2022, defendant Jim Baugh improperly filed on the public docket in *United States v. Baugh*, No. 1:20-cr-10263-PBS, a document that contained classified information. Shortly thereafter, on September 29 and October 1, 2022, Plaintiffs in this matter filed the document on the public docket in this action. *See* ECF Nos. 144-2, 146-2. Just five days later, as soon as the Government because aware of these filings, it took prompt action to alert the Court in both matters to Baugh's unauthorized filings and to protect against further disclosure of the classified information therein. In each matter, the respective court removed the document from the public docket on an emergency basis without immediately issuing a written order.

After these immediate steps were taken, undersigned counsel for the Government then reached out individually to counsel for all parties to explain the Government's equities and to work with the parties to come up with a resolution that would allow the parties to fully litigate this case while still ensuring that the classified information in the document would be protected from additional disclosure. Thereafter, in December 2022, all parties in this matter reached an agreement whereunder parties may use all the non-classified contents of Plaintiffs' filings. Under the parties' agreement, just one paragraph remains protected from disclosure. ECF No. 166.

Subsequently, the Court issued an additional sealing order in *Baugh*, confirming that the classified information in the improperly filed documents should remain under seal. Electronic Order, *United States v. Baugh*, No. 1:20-cr-10263-PBS) (Saris, J.), ECF No. 252 ("The Court has reviewed an ex-parte sealed affidavit. Based on this review, the Court finds good cause for sealing the defendant's letter submitted at the sentencing hearing.").

Now, nearly a year later, Plaintiffs move the Court to unseal their two prior filings of the same document, and they do so based on factual misrepresentations regarding how and when these documents were filed and when the public had access to them, as well as on misconceptions about the law related to classified information. *See* Pls.' Opp'n to the Dep't of Justice's Mot. for a Protective Order, & to Vacate the Prior Order Sealing the Documents that are the Subject of the Government's Requested Protective Order, ECF No. 280 ("Pls.' Mot."). The Court should deny Plaintiffs' motion. The document at issue was publicly accessible for less than a week in both matters due to the unauthorized filing in *Baugh*, and those circumstances in no way handicap the Government from its ability, or its duty, to protect that information from further disclosure.

When determining whether a sealing order is appropriate, courts balance the stated need for a document in litigation against the reasons for sealing, yet here, Plaintiffs have not argued that they have *any* need for the contents they seek at all; on the other side, the Government has repeatedly and resoundingly demonstrated its overwhelming interest in protecting the classified information at issue. Moreover, Plaintiffs never objected to the prior sealing of the document. This Court should not now reverse course.

## BACKGROUND

**I.  Proceedings in the Related Criminal Matter of *United States v. Baugh***

This case arises out of crimes committed by Baugh, one of the defendants in this matter, against Ina and David Steiner, two of the plaintiffs in this matter. On September 29, 2022, the Court sentenced Baugh to 57 months in prison, following his guilty plea to several federal crimes arising out of a harassment and intimidation campaign targeting the Steiners. *Baugh*, ECF No. 235. In connection with his sentencing, on September 27, 2022, Baugh filed a memorandum on the public docket in his criminal case. *Baugh*, ECF No. 227. That memorandum attached several

2

letters of support, including a letter Baugh wrote that contained classified information. *See Baugh*, ECF No. 227-1 (the "Letter"). Baugh did not seek the Government's consent to file that information on the public docket, nor did the Government ever authorize the disclosure of that classified information. Upon discovering the filed classified information, a Department of Justice ("DOJ") Classified Information Security Officer ("CISO") contacted the court in that case on September 30, 2022, and the Letter was then sealed and removed from the Court's docket to prevent the further unauthorized disclosure of the classified information. The Letter was therefore publicly available for three days. Baugh's sentencing memorandum and the other letters of support that he attached to his memorandum remained available to the public.

On January 23, 2023, the Government moved the *Baugh* court for an order permitting it to file a redacted version of the Letter that removed the classified information in place of the unredacted version and then requesting that the court maintain that redacted version under seal. On February 3, 2023, finding that the Government had shown good cause, the *Baugh* court granted the Government's motion. *Baugh*, ECF No. 252. A redacted version of the Letter therefore remains under seal on the criminal docket, and all unredacted versions in that matter have either been destroyed or returned to the Government.

**II.   Proceedings in This Matter**

Separately, and prior to Baugh's sentencing in the criminal matter, the Steiners sued eBay, Baugh, and nine other named defendants in this matter on July 21, 2021, seeking money damages. Compl. Between October 29, 2021 and November 29, 2021, many of the defendants moved to dismiss Plaintiffs' original complaint, and briefing on those motions completed on June 25, 2022. After Baugh filed his sentencing memorandum in the criminal matter, however, Plaintiffs filed a Motion to Supplement Plaintiffs' Consolidated Opposition to Defendants' Motions to Dismiss on

3

September 29, 2022.  ECF No. 144.  That filing attached Baugh's sentencing memorandum, along with its corresponding attachments, including the Letter.  Then, after the Court granted Plaintiffs' motion for leave to file, ECF No. 145 (Sept. 30, 2022), Plaintiffs filed their Supplement to Consolidated Opposition to Defendants' Motions to Dismiss on October 1, 2022.  ECF No. 146.  That filing also attached Baugh's sentencing memorandum with its corresponding attachments, including the Letter.  *See* ECF Nos. 146-1, 146-2.

On October 4, 2022, the Government, which had not previously been aware of this matter, discovered that the Steiners' filings contained the same Letter (and the same classified information) that Baugh had filed in the criminal matter, and the two filings (at ECF Nos. 144 and 146) were placed under seal in their entireties until the Government could confer with the parties and propose a plan to the Court for how to handle the Letter's filing.  The Letter was therefore publicly available for five days.  The Government also began to develop a proposal for a protective order to ensure that classified information remains protected throughout the discovery process, should the case proceed to discovery, and until the conclusion of this matter.

The Government thereafter filed a consent motion proposing that the entirety of ECF Nos. 144 and 146 be unsealed, except the attached Letter, filed at ECF Nos. 144-2 and 146-2.  With the consent of all parties, the Government proposed "that those documents remain under seal . . . until such time as the Government moves for a protective order and th[e] Court rules on the matter."  Status Report of the United States ¶ 7, ECF No. 165.  The Court issued an order implementing the Government's proposal on December 20, 2022.  ECF No. 166.  In accordance with the Court's order, the Government prepared a redacted version of the Letter and circulated it to the parties on December 30 to be substituted in place of the version containing classified information and to the

Court to be substituted on the docket, still under seal.[1] And, as noted, the Court issued a final order sealing the document in *Baugh* on February 3, 2023. *Baugh*, ECF No. 252.

### III. The Government's Motion for a Protective Order

Since that time, the Government has been monitoring this action for purposes of guarding against improper disclosure of classified information in this matter. After the commencement of discovery, undersigned Government counsel engaged in an iterative meet-and-confer process with all parties to obtain a protective order for this purpose. On October 17, 2023, the Government moved the Court for such an order. United States' Mot. for Protective Order, ECF No. 273. As relevant to this motion, the proposed protective order states:

> The Court hereby makes permanent its prior interim ruling that the Clerk of Court will maintain under seal a redacted version of the document filed at ECF Nos. 144-2 and 146-2 and that the Parties may continue to possess redacted versions of that document and cite or quote from the non-redacted portions only. *See* ECF No. 166. The Clerk of Court shall delete or return to DoJ any copies of the unredacted versions of ECF Nos. 144-2 and 146-2 in the Court's custody and to continue to maintain under seal only the redacted versions of those documents. The Parties are ordered to either delete or return to DoJ any copies of the unredacted version of the letter containing classified information that they maintain in either physical or electronic format within 14 days of the date of this order and certify to DoJ in writing that they have done so. The Parties shall not share the redacted version of ECF No. 144-2 and ECF No. 146-2 with any entity or individual and shall take reasonably prudent precautions to prevent any such disclosure. The obligations set forth in this paragraph belong to each individual party to this action, and no party

---

[1] Plaintiffs state in their motion that "[t]he Government claimed, absent agreement, that the motion for a protective order would likely succeed, preventing Plaintiffs or any other litigant in the civil case from using any portion of the document, urging Plaintiffs' attorneys to accept their proposal." Pls.' Mot. at 4. That is false. The agreement reached with all parties in December 2022 permits the parties to use all portions of the Letter other than the one paragraph that contains classified information. *See* ECF No. 165 ¶ 3 ("Until a protective order is ultimately resolved, the Government proposes that the portions of the documents containing classified information be made unavailable for any purpose or use by the parties in this case, but that the parties be permitted to quote any other content in the letter of contrition, so long as they do not reveal the full unredacted or redacted version of the documents at ECF Nos. 144-2 and 146-2."). The proposed protective order maintains that same agreement. *See* ECF No. 273-2 ¶ 6.

> shall be held responsible for another party's failure to comply with the terms of this paragraph.

ECF No. 273-2 ¶ 6.  The proposed protective order simply makes permanent the Court's earlier December 2022 ruling in this case as to how the Letter should be treated.

The proposed protective order was the product of three months of negotiations that the Government conducted with the fourteen parties in this matter.  *See* United States' Statement of Interest & Mem. of Law in Supp. of Mot. for a Protective Order at 5–8, ECF No. 273.  After the Government moved the Court for a protective order, however, it continued to meet and confer with several of the defendants regarding the terms of that proposed order.  Throughout this iterative process, Plaintiffs declined to engage with the Government, generally citing (when responding at all) lack of availability due to other matters.  As a result of those negotiations with Defendants, the Government made several further concessions and ultimately agreed with the defendants on a revised proposed protective order, which defendant eBay filed.  *See* ECF No. 288-1.  None of the thirteen defendants opposes the Government's proposed protective order.  Def. eBay Inc.'s Resp. to Government's Mot. for Protective Order at 1, ECF No. 288.  Plaintiffs filed their opposition on October 31, Pls.' Mot., and the Government's reply in support of its motion is due November 21, ECF No. 283.  Although the Government anticipates that the arguments in its reply will, to some degree, overlap with its arguments contained herein, the Government's reply will more directly address Plaintiffs' arguments regarding other aspects of the proposed protective order apart from the unsealing of the Letter.  The Government therefore appreciates the Court's consideration of the Government's forthcoming reply brief.

**LEGAL STANDARD**

"[C]ourts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). However, "[t]his presumptive right of access attaches [only] to those materials 'which properly come before the court in the course of an adjudicatory proceeding and which are relevant to that adjudication.'" *In re Providence J. Co.*, 293 F.3d 1, 9 (1st Cir. 2002) (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 412–13 (1st Cir.1987)). And "[t]hough the public's right of access to such materials is vibrant, it is not unfettered. Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access. . . . It follows that when a party requests a seal order, or, as in this case, objects to an unsealing order, a court must carefully balance the competing interests that are at stake in the particular case." *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998) (citation omitted). "The trial court enjoys considerable leeway in making decisions of this sort." *Id.* It is "a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599.

**ARGUMENT**

The Court should reject Plaintiffs' motion. Further public release of the Letter would reasonably be expected to significantly harm the national security of the United States. The Government's interest in protecting against such harms significantly outweighs any relevance of the Letter, if any, to these mostly unrelated proceedings. Moreover, any Court order to file either a redacted or unredacted version of the Letter publicly would be inconsistent with Judge Saris's prior ruling on the Letter in the related criminal case, where the redacted version of the Letter remains under permanent seal and all unredacted versions have been destroyed or returned.

## I. The Single Paragraph of Information at Issue Has Limited to No Relevance to Plaintiffs' Claims.

The resolution as to these two documents that the Government negotiated with all the parties in December 2022 permitted the parties to use the entirety of the contents of the two sealed documents except for one paragraph containing classified information. In their Motion, Plaintiffs do not make any arguments related to relevance in support of their motion. *See generally* Pls.' Mot. at 7–11. Plaintiffs do not attempt such arguments because no credible ones exist. The redacted paragraph is in no way connected to the present litigation.

Although Plaintiffs do not actually argue that the particular paragraph is in any way relevant, Plaintiffs might contend that it is relevant to demonstrate "the knowledge, skills and background Defendant Baugh acquired during his relationship with the Government, and the Defendants' knowledge of and purposeful use of those skills that is relevant to this litigation." *Id.* at 12. These arguments do not have force as to this paragraph. The paragraph contains details of the allegations Baugh makes in his publicly available sentencing memorandum concerning his alleged prior Government relationship. But, without disclosing specific information in the paragraph, to which the Court has access in the Government's *ex parte* filing, the details alleged do not relate to specific knowledge or skills that are in any way relevant to the crimes Baugh committed that are now the subject of Plaintiffs' complaint. And the paragraph has no bearing at all on Defendants' alleged knowledge of Baugh's alleged prior Government relationship.

Moreover, recognizing that Plaintiffs have alleged that Baugh had a prior Government relationship, the Government has permitted the parties to use information contained in the rest of those two filings in this litigation, including Baugh's assertion that he had a prior Government relationship. For the same reason, the Government did not request redactions of the transcript from Baugh's sentencing hearing, a deliberate Government decision to preserve access by the

parties to this information. The proposed relief simultaneously preserves the public's and the parties' access to sentencing information, which will remain available in the form of Baugh's sentencing memorandum itself and the sentencing hearing transcript—each of which amply reflects the non-classified portions of the Letter.

## II. The Letter Should be Redacted and Sealed to Protect Classified National Security Information.

"It is uncontested . . . that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon*, 435 U.S. at 598; *see also Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 70 (1st Cir. 2011) ("The presumption favoring public access, which extends to both civil and criminal trials, is not inviolate, and may on some occasions be overcome by competing interests" (citation omitted)), *abrogated on other grounds by Frese v. Formella*, 53 F.4th 1 (1st Cir. 2022); *Siedle*, 147 F.3d at 10; *United States v. Salemme*, 985 F. Supp. 193, 195 (D. Mass. 1997). "When addressing a request to unseal, a court must carefully balance the presumptive public right of access against the competing interests that are at stake in a particular case, . . . keeping in mind that 'only the most compelling reasons can justify non-disclosure of judicial records that come within the scope of the common-law right of access.'" *United States v. Kravetz*, 706 F.3d 47, 59 (1st Cir. 2013) (quoting *In re Providence J.*, 293 F.3d at 10).

"[N]o governmental interest is more compelling than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307 (1981). Courts have routinely found it appropriate to seal case materials to protect national security. *See, e.g.*, *United States v. Vinas*, No. 08-CR-823 (NGG), 2017 WL 2462503, at *2 (E.D.N.Y. June 6, 2017) (continued sealing of redacted portions of a sentencing memorandum was warranted, "as the national security interests implicated by the redactions to [a

classified submission] constitute 'higher values' sufficient to outweigh the presumption of public access"); *United States v. Aref*, 533 F.3d 78, 82 (2d Cir. 2008) (redaction for "higher values" justified on a showing that information sought would "impair identified national interests"); *United States v. Moussaoui*, 65 F. App'x 881, 887 (4th Cir. 2003) (unpublished) ("At the outset, we note that there can be no doubt that the Government's interest in protecting the security of classified information is a compelling one").

"[I]n assessing the Government's claim that disclosure may harm national security, courts must exercise the traditional 'reluctan[ce] to intrude upon the authority of the Executive in military and national security affairs.'" *United States v. Zubaydah*, 595 U.S. 195, 205 (2022) (quoting *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988)). The responsible executive officials possess "the necessary expertise" to make the required "[p]redictive judgment" about risks to national security. *Egan*, 484 U.S. at 529 (citing *CIA v. Sims*, 471 U.S. 159, 170 (1985)). And the Supreme Court has further recognized that "when it comes to collecting evidence and drawing factual inferences [concerning national security], 'the lack of competence on the part of the courts is marked.'" *Holder v. Humanitarian L. Project*, 561 U.S. 1, 34 (2010) (citation omitted). Courts therefore afford "the utmost deference" to the Executive's assessment of potential national security harms. *See Egan*, 484 U.S. at 527, 530 (recognizing the Government's "'compelling interest' in withholding national security information from unauthorized persons" and stating that the "authority to protect such information falls on the President as head of the Executive Branch and as Commander in Chief" (citation omitted)). Specifically, "courts may not review decisions to grant access to sensitive information made by the executive," because that decision is "'committed to the broad discretion of the agency responsible'" for the protection and control of such information. *Toy v. Holder*, 714 F.3d 881, 884 (5th Cir. 2013) (quoting *Egan*, 484 U.S. at 529).

The Government's *ex parte* declarations explain the "[i]mportant countervailing interests" in this case that "overwhelm the usual presumption."[2] *See Kravetz*, 706 F.3d at 59 (quoting *Siedle*, 147 F.3d at 10) (internal quotation marks omitted). The declarations also explain why the continued sealing of the Letter, even after redaction to remove classified information, is consistent with significant national security interests of the United States. This is so, as the declarations explain, because the classified information was temporarily available on the public docket due to Baugh's unauthorized filing. In short, under the circumstances described in the declarations, there is no less restrictive alternative that will simultaneously provide greater access to the Letter and protect against serious damage to the national security of the United States. *See Maynard v. CIA*, 986 F.2d 547, 555 (1st Cir. 1993) ("[I]n determining whether withheld material relates to intelligence sources or methods, a court must 'accord substantial weight and due consideration to the CIA's affidavits.'" (citation omitted)).

Plaintiffs, for their part, do not attempt to refute the critical national security arguments the Government made in support of its motion for a protective order, as related to the continued sealing of the Letter. Indeed, Plaintiffs repeatedly misinterpret and misquote the Government's argument as being premised on the Letter's *confidentiality*. *See* Pls.' Mot. at 7 ("The Government . . . stat[es] that the information contained within is 'Confidential.' (Government Memo at 14-15)"); *id.* at 8 ("In evaluating request [sic] for protective orders governing discovery, courts have considered various factors, including, the confidentiality interest at tissue [sic]."); *id.* at 10 ("While it broadly states that the information is 'Confidential' and apparently provided a sealed affidavit to explain

---

[2] The Government made *ex parte* filings in *Baugh* on January 23, 2023, *see* Mot. for Continued Sealing of Docket No. 227-1 at 9, *Baugh*, ECF No. 250, and in this matter on October 17, 2023, *see* ECF No. 273 at 1. Both of those filings explain the need to continue to maintain the Letter under seal, even in redacted form. If the Court wishes to re-review either of these filings, a CISO can once again make them available to the Court at the Court's request of the Government.

11

why, the Government has not sufficiently satisfied its burden of demonstrating further sealing is warranted."). The contents of those documents are not merely confidential—they are *classified*. There is a substantial difference between the two. *See generally* Classified National Security Information, Exec. Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) (prescribing a uniform system for classifying, safeguarding, and declassifying national security information).

Many of Plaintiffs' other arguments are nonsensical and irrelevant. For example, they argue that "[t]he mere fact that the judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access." Pls.' Mot. at 9. But the Government has never argued that as a basis to maintain these documents under seal, and Plaintiffs and the Court have access to the redacted contents, for the time being, and those contents are in no way "embarrassing."

### III. The Temporary Availability of Classified Information on the Public Docket Does Not Limit the Government's Ability to Protect That Information.

Plaintiffs' arguments in supports of its motion center on a material misrepresentation: "that the information the Government seeks to protect was available on the public docket in Defendant Baugh and Harville's criminal cases for 129 days, and available on this docket for 69 days." Pls.' Mot. at 2. Indeed, Plaintiffs repeat this falsity in various forms a total of seven times in their brief.[3] But it is not true. In fact, as already described above, the Letter was available to the public for just

---

[3] *See* Pls.' Mot. at 2, *id.* at 3 ("[C]rucially, the Sentencing Memorandum and letter remained on the public criminal docket for 129 days, and on the docket in this case for 69 days."), *id.* at 4 ("Document was on the public docket for 129 days."); *id.* at 5 ("[T]he Government sought a protective order for a document that had been on the public docket for more than 129 days."); *id.* at 9 ("The documents the government now request be sealed were available to the public for 129 days."); *id.* ("The Document was available to the public for download for more than 60 days."); *id.* at 10 ("The same documents that the government now seeks to protect were on a public docket in either the criminal or civil case for more than 90 and 60 days respectively.").

three days in the criminal matter (September 27–30, 2022) and five days in this matter (September 29, 2022–October 4, 2022). Plaintiffs go as far as to set forth "Motion to Seal Timeline[s]" for both the *Steiner* matter and the *Baugh* matter to justify their assertion that the Letter remained available to the public on the criminal docket for 129 days and on the docket for this case for 69 days. Pls.' Mot. at 3–4. But the one date Plaintiffs fail to include in each of those two timelines is *the date each court removed the Letter from the public docket* in each matter.

The very brief period of three to five days during which each of the iterations of the Letter was available to the public does not prevent the Government from taking necessary steps to protect its contents from further dissemination. It is well-established that the inadvertent and unauthorized disclosure of a classified document does not amount to a waiver of its classified status. *See* Exec. Order No. 13,526 § 1.1(c) ("Classified information shall not be declassified automatically as a result of any unauthorized disclosure of identical or similar information."); *Pfeiffer v. CIA*, 60 F.3d 861, 866 (D.C. Cir. 1995) (finding no First Amendment right of access to a classified government report wrongly retained by plaintiff, an historian who had written the report while employed by the CIA); *Pub. Citizen v. Dep't of State*, 11 F.3d 198, 203 (D.C. Cir. 1993) ("Our decisions make it clear that an agency will not be held to have waived exemption 1 [protecting classified information] absent a showing by a FOIA plaintiff that the *specific information at issue* has been *officially* disclosed" (latter emphasis added)); *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (finding that, in order for classified information to be "officially acknowledged," the "information requested must already have been made public through an *official and documented disclosure*" (emphasis added)); *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 659 F. Supp. 674, 684 (E.D.N.Y. 1987) ("*[O]nly authorized and official disclosures can result in declassification*. Thus, even if plaintiffs were able to obtain evidence that an unauthorized 'leak'

had in fact occurred, these statements could not, as a matter of law, result in declassification of the existence of a Navy proposal to deploy nuclear weapons at the homeport." (emphasis added)), *aff'd*, 891 F.2d 414, 421 (2d Cir. 1989); *Nuclear Control Inst. v. U.S. Nuclear Regul. Comm'n*, 563 F. Supp. 768, 771 (D.D.C. 1983) ("[T]he unauthorized publication of a classified document does not require either declassification or disclosure of the document under the Freedom of Information Act." (citations omitted)). In short, "courts will 'not infer official disclosure of information classified by [a government agency] from (1) widespread public discussion of a classified matter, [or] (2) statements made by a person not authorized to speak for the Agency.'" *N.Y. Times v. CIA*, 965 F.3d 109, 116 (2d Cir. 2020) (citation omitted).[4]

Plaintiffs therefore cannot establish any right to continued access to the Letter because of its inadvertent disclosure. This is, in part, because courts "have unequivocally recognized that the fact that information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods and operations." *Fitzgibbon*, 911 F.2d at 766; *see also* S. Rep. No. 93-1200, at 12 (1974) (Conf. Rep.), *reprinted in* 1974 U.S.C.C.A.N. 6285, 6290 ("[T]he conferees recognize that the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse effects might occur as a result of public disclosure of a particular classified record.").

---

[4] Even employees of the U.S. Government who have been granted appropriate security clearances do not have any right to that classified information upon leaving employment with the Government. *See* Exec. Order No. 13,526 § 4.1(c) ("An official or employee leaving agency service may not remove classified information from the agency's control."). Nor do individuals for whom the Executive Branch has explicitly granted access to classified information, and who have generated work product based on that information, have a continued right of access to that classified information. *See, e.g.*, *Pfeiffer*, 60 F.3d at 866.

14

Nor does the fact that several media outlets have reported on some of the contents of the Letter change its continued classified status. "There may be much left to hide, and if there is not, that itself may be worth hiding." *See Phillippi v. CIA*, 655 F.2d 1325, 1331 (D.C. Cir. 1981). That protection would be lost if the Court were to grant Plaintiffs' motion. In any event, "[i]t is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so." *Zubaydah*, 595 U.S. at 210 (quoting *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975)) (internal quotation marks omitted); *see also ACLU v. Dep't of State*, 878 F. Supp. 2d 215, 224 (D.D.C. 2012) ("In the end, there is no evidence that the Executive has ever officially acknowledged that the specific information at issue in this case was part of the WikiLeaks disclosure (or any other public disclosure)."). "[S]ometimes information that has entered the public domain may nonetheless [even] fall within the scope of the state secrets privilege." *Zubaydah*, 595 U.S. at 207. "Accordingly, the [plaintiff] has failed to meet its burden of showing that the prior disclosure doctrine applies in this case." *ACLU*, 878, F. Supp. 2d at 224. As fully explained in the Government's *ex parte* filings in both *Baugh* and in this action—most recently in support of the Government's motion for a protective order—the information at issue warrants continued and prospective protection from additional disclosure.

### IV. Permitting the Documents to Be Unsealed in this Matter Would Nullify the *Baugh* Court's Order Sealing the Same Documents, to Which Plaintiffs Did Not Object.

Finally, and as described above, in the *Baugh* criminal matter, Judge Saris ordered that the redacted version of the Letter be maintained under seal on the docket. *Baugh*, ECF No. 252 ("The Court has reviewed an ex-parte sealed affidavit. Based on this review, the Court finds good cause for sealing the defendant's letter submitted at the sentencing hearing."). If this Court were to

unseal the Letter in either redacted or unredacted form, the actions taken in the *Baugh* case to protect the classified information would be undone. There are no grounds to do so.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Plaintiffs' Motion to Vacate.[5]

Dated: November 14, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

*/s/ Christopher D. Edelman*
CHRISTOPHER D. EDELMAN
(D.C. Bar No. 1033486)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 305-8659
Email: christopher.edelman@usdoj.gov

*Counsel for the United States of America*

---

[5] If the Court grants Plaintiffs' motion, the Government respectfully requests that the Court stay its order for ninety days to permit the Government to consider whether to pursue further relief of the order.

16