IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

INA STEINER, et al, Plaintiffs )
-VS- ) CA No. 21-11181-PBS
) Pages 1 - 34
eBAY INC., et al, Defendants )

**MOTION HEARING BY VIDEO**

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE

United States District Court
1 Courthouse Way
Boston, Massachusetts 02210
December 6, 2023, 11:03 a.m.

LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 7200
Boston, MA 02210
leemarz@aol.com

A P P E A R A N C E S:

FOR THE PLAINTIFFS:

JILLISE M. McDONOUGH, ESQ.
Law Office of Rosemary C. Scapicchio
107 Union Wharf
Boston, MA 02109

FOR THE DEFENDANTS:

JACK W. PIROZZOLO, ESQ.
Sidley Austin LLP
60 State Street
34th Floor
Boston, MA 02109

MATTHEW J. HOLMES, ESQ.
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210-1181

MARTIN G. WEINBERG, ESQ.
Martin G. Weinberg, PC
20 Park Plaza
Suite 1000
Boston, MA 02116

ANDREW O'CONNOR, ESQ.
Ropes & Gray - MA
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600

FOR THE INTERESTED PARTY:

CHRISTOPHER D. EDELMAN, ESQ.
Department of Justice, Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20530

P R O C E E D I N G S

THE CLERK: Good morning, Judge.

THE COURT: Good morning.

THE CLERK: So I have everybody on, so I'll call the case.

THE COURT: Thank you.

THE CLERK: The Court calls Civil Action 21-11181, Steiner, et al v. eBay, Inc., et al. Could counsel please identify themselves.

11:03 THE COURT: Well, actually, can I back off that for a minute, Maryellen. I only want to hear from people who are going to argue the motions because right now my board is completely filled, and I get confused as to who's talking and who you're representing. So anyone who's not going to be doing oral argument, please shut off your video. I only want to be left with who's going to make presentations. And if someone else needs to -- like, you know, it's in a field where you have unique knowledge -- just jump in, but I think this is more manageable for me, I think, right now. So thank you.

11:04 THE CLERK: So, Counsel, you can just identify yourselves for the record. Thank you.

THE COURT: All right.

MS. McDONOUGH: Good morning, your Honor. Jillise McDonough for all plaintiffs.

MR. PIROZOLLO: Good morning, your Honor. Jack

Pirozzolo for eBay.

MR. GELB: Good morning, your Honor. Daniel Gelb for David Harville.

THE COURT: Okay.

MR. HOLMES: Good morning, your Honor. Matthew Holmes for PFC & Krystek.

THE COURT: Yes.

MR. EDELMAN: Good morning, your Honor. Christopher Edelman from the Department of Justice for the United States.

11:04 THE COURT: And you're in DC, right? You're not up here?

MR. EDELMAN: Yes, that's correct, I'm in DC.

THE COURT: All right, so there are multiple matters that we need to discuss today. There's a motion for a protective order filed by the government, both in this case, and also I think there's maybe some questions about what the docket should look like in the criminal case. In addition, there is, as far as I can tell, agreement, another protective order, I think, outstanding having to do with other matters. 11:05 So there are two outstanding requests for protective orders, right, in addition to whatever the criminal controversy is?

MR. EDELMAN: Your Honor, I would make one correction to that. So I believe in the criminal case of Baugh, the matter is settled. Your Honor entered an order in February of this year permanently sealing the letter in question in the --

THE COURT: No, but here's where it's a little confusing. And you keep getting in touch with my docket clerk and courtroom deputy, so I want to make it clear. My criminal docket has the full letter as originally submitted to me under seal which no one can access, okay? I have not taken it off the docket as the government has requested because it is part of a criminal docket, and I am not going to tamper with the criminal docket, but I have it there in a form that no one can see based on in camera submissions that the government made.

11:06 That is the current state of the docket, and there seemed to be some confusion in your briefings on that.

MR. EDELMAN: Yes, your Honor. So to the extent there is any confusion, I apologize. That's all the government has asked for is that the redacted version be kept under seal on the docket.

THE COURT: No, no, that's what you're not understanding, which is it's the full version that is on the docket under seal.

MR. EDELMAN: Okay.

11:07 THE COURT: Okay? I just want to make it clear. At least going back in, I can get access to. It is not redacted. It is the full copy of the letter that is under seal, and no one has had access to it through me. Okay?

MR. EDELMAN: Yes.

THE COURT: At the request, as you know, of the

government on an expedited basis within days of your finding out about it, you had asked, I believe, that I take it off the docket altogether, which would create, I don't know, an inaccurate record if this case should ever have a habeas corpus proceeding or a belated appeal or anything like that. I'm not going to play with my criminal docket now. That doesn't mean I give access to anyone here on that. That's a whole other thing, and we can talk about redactions to the letter that could become publicly available for purposes of the civil litigation. Okay, so let me just start there.

11:08

Now let's move to the civil case. And let me also say, I don't really remember it because it's a while ago, but I think I did review some ex parte submissions by the government in connection with the criminal case.

MR. EDELMAN: Yes, your Honor. In connection with the criminal case, we filed one ex parte in camera declaration. In connection with the civil case, we filed a short ex parte in camera brief as well as two ex parte in camera declarations. And they're slightly different because --

11:09

THE COURT: I'm not sure I've read those. Did you file them on the docket, or is that what's yet --

MR. EDELMAN: No. We filed them on the same day as we filed the public filing on the docket through the DOJ CISO, Harry Rucker. And my understanding is that --

THE COURT: Okay, that's the stuff that I don't

believe is on my public docket yet.

MR. EDELMAN: That's correct.

THE COURT: And the stuff you're talking about I have declined to review, I think, if we're talking about the same thing, until I held this hearing, so let me just -- so that is not on the public docket yet, if it goes there at all. It's part of the classified information?

MR. EDELMAN: Yes, that's correct, your Honor. It's been launched for review, and, as I understand, it's being held in the skiff by the Court.

11:10

THE COURT: Right, and I have not looked at it yet and I will. I need to hear if there's another way of resolving this first. So I wasn't willing to take ex parte communications before I even read the briefing. So now I've got the briefing, and we're all teed up, we're ready to go.

So let me start perhaps with plaintiffs. And I do understand that Ms. Scapicchio is in a murder trial right now, so you are with her firm; is that right?

MS. McDONOUGH: Yes, your Honor, yes. She's tied up in a murder trial in Brockton, so I'll be arguing on behalf of all the plaintiffs today.

11:10

THE COURT: All right, well, there are just two, right, the Steiners?

MS. McDONOUGH: The Steiners and then Steiner Associates I have an appearance in for.

THE COURT: Okay, all right, go ahead. What is your request at this point? What is it you disagree about? As I understand, the defendants and the government have agreed to some things, to the letter and related issues.

MS. McDONOUGH: So we're still contesting the broad protective order that's requested by the DOJ as to the information relating to Baugh. At this point I think they're only conceding that we can delve into whether there was a past relationship between Baugh and the government, but any other information, they would seek to preclude us from having any discovery requests, asking any deposition questions, submitting anything on the public docket related to it, and potentially also --

THE COURT: You seem to want a lot more than that in your filings. In other words, it's one thing if you could ask Mr. Wymer or Mr. Wenig what they knew about his past. It's another thing to say you want to be able to interrogate Mr. Baugh about what he did and get all documents about what he did. That seems pretty -- they're jumping right into at least what the government claims is classified.

MS. McDONOUGH: So our main concern is mostly the knowledge of Wenig, Wymer, and Jones, and potentially other people at eBay. At this point we're not quite clear what background and experience Baugh actually does have, but we would agree that the most relevancy to our case is the

information that Wenig, Wymer, and Jones have. We're not necessarily seeking at this point to know the truth of any of Baugh's claims as far as his experience or training, but just as to what people at eBay knew and the higher-ups --

THE COURT: It looks from your filings as if you want a whole lot more than that.

MS. McDONOUGH: It does, but I think we're willing to limit it at this point, at least as far as -- our main concern is the C-suite executives, what they knew, what they believed as to Baugh. 11:12 There may be sometime when we need to know exactly what Baugh received as far as training. We're not looking to see, you know, what covert operations he engaged in, if he, you know, protected dignitaries. Those kind of nuanced things that the government is seeking to protect we're not at this point seeking. It's mostly --

THE COURT: It's not very nuanced. It's sort of -- it's a big part of it. So you're basically agreeing not to ask Baugh or seek for any documents having to do with any employment one way or another that Mr. Baugh had with the government? 11:13

MS. McDONOUGH: Well, so we are seeking the existence of relationship. We would be seeking any information that he shared with eBay as far as his background and experience.

THE COURT: Well, that's a second aspect of it. So I will go back into the skiff and see it, but at least what I'm

remembering is, at this point I'm going to narrow your request down, as you said you were, to your biggest concern, which is what Wenig, Wymer, and Jones and perhaps others knew about what he did.

MS. McDONOUGH: Yes, as far as --

THE COURT: Let's start the debate with that narrow topic, okay?

So now I'm going to jump to the government at this point. You seem to misunderstand the case. A big part of the case against Mr. Wenig, Mr. Wymer, and Ms. Jones is negligent supervision, and to establish negligent supervision -- in other words, they said all this stuff, like "Go get her, burn her down," I mean, various kinds of things -- they would say that negligent supervision of what they eventually did, and part of that claim of the duty of reasonable care would be based on what they knew or they didn't know about his past. So that seems fair game for the plaintiffs to ask "What did you know about Mr. Baugh?" or at least "What did he tell you? What did you know from others about what he did?" Are you objecting to that?

MR. EDELMAN: At the outset, we would say that we are very sympathetic to the Steiners' plight. You know, the government is shocked by what happened to them, and we're not seeking to interfere with their ability to prove their case or with the defendants' ability to make their defenses, but what

the plaintiffs are asking for, even as to that negligent supervision claim, is classified information. So I agree there's a very limited degree of relevance, but --

THE COURT: No, no, no, no, don't go "limited degree of relevance." It may be the heart of this case. In other words, Wenig, Wymer, and Jones claim that they didn't know what he was going to do. I mean, this case could boil down to negligent supervision. You know, if you say "Go burn her down" and you know what someone's past is, that's a different kind of claim than "We didn't know anything about him other than that he guarded the head of Microsoft at one point," whatever that was that he used to do for private contractors.

11:15

So on what grounds -- given the fact that we're asking about what the defendants knew, why wouldn't a protective order -- not documents, nothing, what they knew -- why wouldn't having a protective order for that and seal it be sufficient?

MR. EDELMAN: Because what they knew, to the extent it relates to Mr. Baugh's alleged prior government background, is likely to be classified information.

11:16

THE COURT: I won't know that until I hear it, right? In other words, I'm struggling with this a bit because I do agree that I would put it, at least in the beginning, under a protective order.

But let me jump to Mr. Pirozzolo for a minute so we don't have some, you know, disagreement over something that's

irrelevant. Did they know things about his background?

MR. PIROZZOLO: I don't know the answer to that, your Honor. I just don't off the top of my head know the answer to that, so I can't make a representation one way or the other as to what their knowledge was.

THE COURT: Okay. So that wasn't part of the internal investigation in the presentation to the government?

MR. PIROZZOLO: In terms of what they knew with regard to his prior involvement with the CIA, I do not recall that

11:17 that was part of that presentation, your Honor.

THE COURT: Okay.

MR. EDELMAN: Your Honor, if I could step in for one second, the government is completely fine with the parties seeking discovery on the fact of whether or not Mr. Baugh had a prior government background with the CIA or the FBI, or any other --

THE COURT: The government -- I'm sorry, you're a little bit of an echo there. I'm sorry.

MR. EDELMAN: I'm sorry. The government is fine with

11:18 the parties seeking discovery on whether or not Mr. Baugh had a relationship with the CIA or FBI, but any of the details of that relationship are classified. And the way I always think about this is if, for example, your Honor, one of your clerks went to apply for jobs, and potential employers would know that that individual clerked for you, and they would know generally

what it means to clerk for you and generally what kind of experience that clerk would have. They wouldn't necessarily expect to know from one of your former law clerks what cases they worked on, which opinions they participated in --

THE COURT: I think that's in fact asked, you know, just to see if there are any conflict checks, I mean, actually. But regardless of the metaphors, I think the way to solve this is -- of course, I don't want to endanger anybody or any operation. On the other hand, I don't have an answer as to even whether we're fighting about something that matters, whether they knew anything or not.

I think what needs to happen is, I will allow the discussion of what they knew and when they knew it from Mr. Baugh, and I will put it under seal. I'm not talking about -- so that's with respect to what they knew and when they knew it. And then if it is something that the government is worried about, then we can debate whether or not it becomes public or not. And everybody would be subject to the same protective order on that particular thing. I know the press is interested in this case, but it would not be available to the press until I figured out whether or not it was something that should properly be deemed classified or not.

Now, the next issue is, are there documents that exist within eBay? I would imagine things like his application, for example -- that would be the key one -- or perhaps a job review

evaluation where this could come up.

Have you looked at those, Mr. Pirozzolo?

MR. PIROZZOLO: So we have looked at the personnel file, your Honor, and I'm just checking now as to whether I can give you a representation as to whether there's anything in there with regard to his time at the CIA or involvement with the CIA. I don't believe it is in the file is my understanding, but before I make a representation, I just want to check.

THE COURT: Well, I think my order on the protective

11:21 order would apply with respect to anything about his prior employment with the government, and not with private contractors but with the government, that they'll be under seal. And if in fact there's going to be such a deposition, Mr. Edelman has the right to be there and to then file an objection with me to having it disclosed in any way.

Now, in terms of any document request or deposition of the government, I grant the protective order. In other words, you can't go into what he did or the records of him at these organizations. I think what's relevant, at least at this

11:22 point -- I reserve the right to redo it -- what's relevant is what the people at eBay knew about it.

So now to get even more complicated, I do see Mr. Gelb there. I'm not sure what independent basis you have unless -- do you have knowledge about Mr. Baugh's background with the government? Is that why you're here?

MR. GELB: No. I'm here about the other motion relative to the partial (Inaudible) of the protective order in the criminal case.

THE COURT: Okay, all right, so I knew there was another piece of it, but I just didn't know if this was part of it. At some point I should probably go into the skiff, and I just wanted to -- I'm not sure I need to right now.

Do you think I do, Mr. Edelman, because you're the one who knows it? I'm always reluctant to go based on this resolution right now, that I'm not allowing discovery of the government at all or any documents from the government.

MR. EDELMAN: Yes, your Honor, with all due respect, and I understand the Court's position, I think there may be information in our ex parte in camera filing that may lead you to reconsider your order. In particular, from the contours providing the specific categories of information that would be subject to the protective order. You defined it as "prior alleged government employment." I think there's some information that might make you reconsider that.

We also, respectfully, believe that the protective order wouldn't go far enough if it still provides for the ability for information to come out, even in an under-seal form. Classified information is not permitted under --

THE COURT: I have no basis for believing any of it is classified. Let's put it this way: If he told Wenig, Wymer,

Jones or others about certain aspects of his prior employment, if they knew it and they acted on it, it is directly relevant to this lawsuit.

MR. EDELMAN: I agree, I agree that it's relevant, but the second part of the analysis has to be whether it's proportional to the needs of the case, and the question is whether or not endangering United States national security is really proportional.

THE COURT: It depends what it is, and so that's why 11:24 I'm trying to come up with a -- if he simply said, "Yeah, I was aware he worked for such and such, and I didn't know anything about what he did for them," that's one thing. If he says, "Well, yeah, he used to brag about this person and that person and what he did here or there and the other thing," I might agree with you. But I can't know that, Mr. Pirozzolo can't know that, and I can't make that finding yet. I don't know what it is. I don't know what the "there" there is, and you have no way of knowing that either, right?

MR. EDELMAN: We have more way of knowing certainly 11:25 because we know about --

THE COURT: Well, have you interviewed Baugh?

MR. EDELMAN: We have not interviewed Baugh, but we --

THE COURT: You don't know what he told people --

MR. EDELMAN: That's --

THE COURT: -- stuff, you know, right out of the TV

show or something, you know? You don't know, and so we need to find out, as long as the government --

MR. EDELMAN: Well, I mean --

THE COURT: -- imperil national security. And if there's another way that you have to figure that out, that's fine, but it is directly relevant to what happened to the Steiners if in fact -- it's not just what happened to them but who's responsible for them, you know, going into the C-suite. So I will go into the skiff and read the stuff, but at the end 11:25 of the day, we have to figure out what the corporation knew.

MR. EDELMAN: Understood, your Honor. So to the extent you're disinclined to go with our preferred approach and want to at least have some way of knowing what information they knew, we would then propose as a secondary option that any discovery -- for example, documents, response to interrogatories, whatever it may be that may touch on that subject -- go first to the government and to the Court for an in camera review before it's produced to any other parties in the matter. It would seem that that would present an opportunity for your 11:26 Honor to consider that information, consider the relevance.

THE COURT: Oh, I see. So that's very interesting. So instead of starting off with a deposition, have a confidential set of interrogatories. That might be a solution here.

MR. EDELMAN: Yes, your Honor.

THE COURT: So I can at least know what I'm talking

about.

MR. EDELMAN: Yes. So to be clear, this is not our preferred approach, but I think it would be a better secondary action than permitting the information to be disclosed, even to the other parties in this matter. None of them have the necessary security clearance to review this information.

THE COURT: I think I could look at that. In other words, instead of doing it via deposition, have the plaintiff propound interrogatories, and I will see the first -- and Mr. Pirozzolo who's the attorney, and there are some other attorneys for these gentlemen, will prepare the answers. And I will, after having seen the stuff in the skiff, I'll keep them under seal, because I do agree, one of the problems -- and I have no doubt of Ms. Scapicchio's and the Steiners' needs here, I think it's directly relevant, but I do take your -- for example, if they mention specific operations or something that could jeopardize national security, there might be a way in which we could disclose it that wouldn't jeopardize national security or state secrets, which is another thing you floated out there but didn't quite brief.

So I don't know what we're talking about, so I think that's a very good suggestion. Instead of doing it with a deposition with a million defendants who will all be there, that I start off with interrogatories under oath from them about what it is they knew. And it could be nothing, or it

could be, "I just knew generally X," and we take all our deposition about it; or it could be very specific things, so -- and then I could hear argument on it ex parte. I sort of like that actually.

MR. PIROZZOLO: Your Honor, from eBay's perspective, that certainly works as well in terms of that sequencing. I would just point out, I think something very similar to that process is proposed in Exhibit B to eBay's filing, which is I believe Docket 288.

11:28 THE COURT: Exhibit B?

MR. PIROZZOLO: Yes. After the hearing, if you want to take a look at it, I believe it's Exhibit B, Docket 288.

THE COURT: Wait a minute.

MR. PIROZZOLO: I don't believe that precise suggestion is in the protective order --

THE COURT: Well, I'll go look at Exhibit B. I can't jump into the docket right now. I just have the basic motion.

So I like that. That's why I'm doing this hearing, is to come up with creative solutions to a real problem here. So 11:29 I will take a look at that with respect to them.

Now, before I issue a protective order one way or another, so all discovery with respect to Mr. Baugh's background. You should also produce any documents pursuant to that requirement under seal so I can look at them. After I have reviewed what's in the skiff, I'll have a better sense of

the contours of the government's concern, and then I can write something. So either disclose it to the plaintiffs -- and other parties, I should say, because there are other people involved here as well -- or not and explain why.

MR. EDELMAN: Yes, your Honor, that's correct. However, while the plaintiff has documents or interrogatories related to Mr. Baugh's alleged prior government background, we suggest that your Honor adopt the definition of "protected information" that is included in the protective order that's 11:30 been agreed to by all thirteen of the defendants in this case. The reason for that, and there is a difference between government --

THE COURT: Explain it. I've never received so much briefing on a protective order in my life, and I've got a 30-year career here. So what is the precise wording that you want because it can't -- what is the precise wording you want?

MR. EDELMAN: So the precise wording is what is currently in the proposed protective order at Paragraph 2.

THE COURT: Wait a minute. What docket are we on?

11:31 MR. EDELMAN: 288-1.

THE COURT: Okay, all right, and what paragraph are you thinking of?

MR. EDELMAN: Paragraph 2, Defense Protected Information. But, critically, what goes hand in hand with that is Paragraph 5. Paragraph 5 provides a right for DOJ to review

a certain subset of the information in this case before it's produced, and although the Paragraph 2 --

THE COURT: No, no, I don't agree with that. It comes to me as well.

MR. EDELMAN: Yes, that's absolutely fine, your Honor. We would just ask for the right to review it as well because there's certain information that we believe would be implicated here that is classified that would not be apparent to anyone who hadn't read the ex parte in camera briefing. So once your 11:32 Honor has read the ex parte in camera briefing, I think you'll understand why simply limiting it to government information would not fully protect the extent of the classified information in this case. So we would suggest that the protocol inside be adopted but with the final being provision of those documents to your Honor, so both to the government and to the Court.

THE COURT: I don't understand what you're asking for other than information about his background. I don't understand it.

MR. EDELMAN: Yes, your Honor, and as much as I'd like 11:32 to explain it to you today, the reason why I can't go into that information is because to be able to explain it would reveal classified information itself.

THE COURT: All right, this is what I'm going to do is, I'm going to go into the skiff. I will read that stuff. I may have an ex parte hearing with the government, but right now

I'm not going to hold it up for that because you have a misunderstanding this is marginal importance to this case. It is not marginal importance to the case. What Mr. Wenig, Mr. Wymer, and Ms. Jones, and perhaps some of the other people who were convicted, for example, Mr. Harville, might have known or not known in terms of the information is directly relevant to at least one of the claims in the case.

MR. EDELMAN: Yes, your Honor, and we would welcome the opportunity to have an ex parte hearing, or we could present that information to you. And, you know, I think the extent of the briefing in this matter shows the degree of the government's concern about it and interest in this matter. To the extent that you're willing to hold up your order even for a day or two, I can --

THE COURT: No. Excuse me. I'm going to ask the plaintiffs today, understanding it's the holiday time, the plaintiffs whenever they get around to it, but certainly soon, let's say within a month, to file interrogatories to those three people, Mr. Wenig, Mr. Wymer, and Ms. Jones, on this topic; and then they will file answers under seal with me and with the government, not with the plaintiff and not with the other parties and not publicly on the docket. And then I will review them, and I will at that point have gone through the documents in the skiff, and, if necessary, have held an ex parte hearing with the government if I don't understand.

Similarly, you'll do a document request about any documents about his background. I mean, this is going to be a very narrow -- this doesn't have anything to do with the rest of you. You can do all the rest of discovery you want.

MS. McDONOUGH: Okay.

THE COURT: Any documents that eBay has under its custody and control about his background, and Mr. Pirozzolo at that point will have a chance to look to see if there's anything relevant here that could raise a concern, and notify 11:35 the government about what those documents are. Okay? And if the government is objecting in any way, then you'll file them under seal with me. Otherwise you'll provide them to the plaintiff. I think that's a way to proceed.

The rest of discovery can go full-bore ahead as far as I'm concerned. It might mean redoing some depositions. You still should be taking depositions of Wenig, Wymer, and Jones and the rest of them. This is such an ancient case. I don't know why it's a '21 case and it's been pending so long. I'm eager to jump start the case.

11:35 And I think I've allowed discovery to go forward, right? As I said before, we're actually very close, probably in the next week or so, to getting out the opinion on the motion to dismiss, and most of the claims will survive, not all but most, and so I'm really eager to get this going.

Now, what's the second protective order issue?

MR. EDELMAN: I'm sorry, your Honor. I have two points of clarification, if I could ask about the statement you just have made. With the first one, as I understand it, you've asked plaintiffs to file interrogatories of Wymer, Wenig, and Jones. Does that mean that plaintiffs will not be permitted to question any other defendants in this case or any other third parties about the knowledge of Mr. Baugh's government background?

THE COURT: Yes, yes, I find that's off the table till I've reviewed it.

11:36 MR. EDELMAN: Yes. And the second thing, your Honor --

THE COURT: By the way, that doesn't include any -- there are all these allegations, very harsh allegations about his conduct at eBay; you know, the way he treated employees or his conduct obviously in this scheme. They can ask whatever they want about that. It's just his background with the government, not with other private contractors, so --

Okay, now, what's the second issue?

MR. EDELMAN: Well, so the second issue, with regard 11:37 to what you just said there, that it's only about the prior government background, I would respectfully ask that your Honor consider a way to frame that after reviewing the ex parte in camera declaration.

THE COURT: Working for the government, that's all we're talking about. I mean, at the criminal hearing he was

quite open about the fact he worked for some corporate leaders and that sort of thing.

MR. EDELMAN: Yes, your Honor, but it may not be -- it could not, I should say, be apparent to anyone who hadn't been let in on what that includes. I think it will be very apparent once your Honor reviews the ex parte submission. I would really like to be able to answer you, the answer is very easy, but I can't provide that on a public record. So I would just ask that your Honor wait to give the exact wording of your order till you've reviewed those submissions.

11:38

THE COURT: Right, but she can ask about them in an interrogatory, but no one should be talking about his background with the government beforehand, and you can be present at -- this is all going to go within the next month, so I -- I don't know how you can stop him from being asked about his resume`. "Can you shoot a gun?" I mean, what you're asking is very broad. I will try and go into the skiff within the next month.

MR. EDELMAN: I appreciate that, your Honor. And so

11:38

the last request I would add is, if information is produced such as responses to the interrogatories or documents to the Court and to DOJ, we would request that we be able to specify the means by which those documents are produced because, as your Honor is aware, there are very particular ways that the law requires that classified or potentially classified

information be handled.

THE COURT: I don't know what you're talking about. We just went through this. You're going to do the interrogatories under oath about what they knew or they didn't know. They will be under seal and will only be available to you and to me.

MR. EDELMAN: Yes, your Honor, I understand that. I'm speaking very specifically about the logistics of how they'll physically need a letter for those responses. They can't -- 11:39 for example, classified information cannot be transmitted electronically on and off your system. So the government would like to be able to specify to the parties how they should produce those responses that contain potentially classified information, subject, for example, of having a DOJ person go to the location and physically collect the materials to provide to the Court and to the government. And I certainly understand it's an extra step, but, honestly, your Honor, it's one that's required by the law when we're dealing with classified or potentially classified information.

11:40 THE COURT: You don't know if it is. It could just be "I don't know anything."

MR. EDELMAN: Yes, it could be, but --

THE COURT: Well, Mr. Pirozzolo was a former First Assistant U.S. Attorney. If he thinks that there's something that's classified in there, he can call you up and confer, and

you can work on a way to deliver it.

MR. PIROZZOLO: That's exactly right, your Honor, we can.

THE COURT: He was a former First Assistant. I forget, who were you under?

MR. PIROZZOLO: Carmen Ortiz.

THE COURT: Carmen Ortiz? So you can work with -- Mr. Pirozzolo knows this area very well, okay? You may not know that Mr. Edelman is correct, which is now, if I do 11:40 anything like, say, any kind of confidential information, it can't be put on the email, that is correct. It's a new way of doing it because of security protocols. So if there's something in there that is potentially secure, you two work it out as to how I get it and how he gets it, all right?

MR. PIROZZOLO: Yes, your Honor.

MR. EDELMAN: I assume the same would extend to the other three defendants who you ordered plaintiffs to serve interrogatories on?

THE COURT: Well, who are the other lawyers for them? 11:41 Mr. Weinberg knows all about it, and as a prominent criminal defense attorney, you'll work with the government as to how to deliver it. And who else?

MR. HASHEMI: We will as well, your Honor. Caz Hashemi on behalf of Wymer. I have been listening, and we will comply with your instruction.

MR. O'CONNOR: And this is Andrew O'Connor at Ropes & Gray. We're happy to comply on behalf of Ms. Jones.

THE COURT: Well, let me ask you all questions: Is this going to be a big much ado about nothing, or do your clients know something about the background?

MR. WEINBERG: Without committing to details, I don't expect there to be anything close to classified information in Mr. Wenig's response to any proposed interrogatory, your Honor.

MR. HASHEMI: (Inaudible).

11:42 THE COURT: What? I can't hear you. I'm sorry.

MR. HASHEMI: Forgive me. I said the same answer applies to Mr. Wymer, your Honor. I don't expect this to be an issue.

MR. O'CONNOR: And as to Ms. Jones as well.

THE COURT: I'm just wondering if this is a tempest in a teapot. But you'll work with Mr. Pirozollo, you'll work with Mr. Edelman, you'll get any answers; and then the government, if there's no problem, we'll just put it on the public record. If there is a problem, I may have an ex parte hearing.

11:42 Does this satisfy you, Mr. Edelman?

MR. EDELMAN: With all due respect, your Honor, it does not, but we appreciate your willingness to consider a compromise to your original proposed solution, and we think that this takes important steps to protecting the classified information, but we don't think it goes far enough.

THE COURT: All right, thank you. That's what I'm going to do.

So, now, what's the second protective order issue? And I will be reviewing -- unfortunately, it might not happen for a while because I need to figure out how to get into the skiff, and I'm away over Christmas. So I'm not promising this immediately, but it will happen soon.

So what is the story with respect to the second protective order issue?

11:43 MS. McDONOUGH: Your Honor, so we did file a motion to relieve Defendants Harville and Baugh from the protective orders in the criminal case as to -- just as to the documents that the government -- eBay provided to the government and the government --

THE COURT: Just get it from eBay. Just file a document request from eBay. That's how you do it. I'm not going into my criminal docket. Just ask eBay for all the documents it produced to the government or to Baugh and Harville.

11:44 MS. McDONOUGH: Well, your Honor, we were making this request in order to expedite things. Because we're limited to just one discovery request to each of the parties, this will help us -- severely limit the questions that we'll ultimately be asking of eBay. We can get the documents from Baugh and Harville and then tailor our request to eBay.

THE COURT: They're criminal defendants. They're doing sentences right now. Is Harville still in prison? I don't even know. Is Mr. Harville still in prison? Mr. Baugh is, I'm sure.

MR. GELB: A halfway house, your Honor.

THE COURT: A halfway house now? You're going to make this document request of eBay. That's how you do these things, and they'll have to produce it. And so that's what we're going to do for that request. Is that essentially what the request is, is not to have to produce that? Is that the sum and substance of it?

MS. McDONOUGH: That is essentially our request. I think eBay is objecting on the basis that we should request it from them.

THE COURT: Well, they're right, that's procedurally how it should go. And there may be privilege issues or there may be other issues, but I'm going to be very receptive to, anything that was sent to the government or sent to the defendants, it should be produced. There may be a protective order involved, I don't know, but I do agree you get it. Just you need to go that way.

So does this resolve everything?

MR. PIROZZOLO: Yes. eBay had opposed the two requests. There are actually two separate requests for lifting of the protective order.

(Discussion off the record.)

THE COURT: All right, so with respect to the rest of the case, I think it's on its own path, right? I'll get out a motion to dismiss. I will go into the skiff. In the interim, plaintiffs within 30 days will do a doc request and interrogatories that are very narrowly focused just on this issue. You all will answer them under oath. If it's as narrow as counsel seem to represent, this will be a very quick thing. You will confer with Mr. Edelman how to properly provide him with the answers, which would be probably 30 days from then, so we're now talking about a 60-day-type window. And Mr. Edelman will, if he has an objection, will ask for an ex parte hearing in front of me; and if he has an objection, we'll put it all on the record. Does that seem like a game plan?

MS. McDONOUGH: Yes, your Honor. If I could just ask one point of clarification. So our request that we're to submit within 30 days will be separate and apart from the already-granted request for documents and interrogatories under the Court's --

THE COURT: Yes. Yes, this is like a subset. It won't count against you.

MS. McDONOUGH: Okay. All right, thank you.

THE COURT: It won't count against you. I can't even remember what we did, but I know it was heavily negotiated. I am trying to get this case moving forward, potentially at least

a settlement with some of the defendants -- I don't know if it's true of all of them -- or to summary judgment. Do you have a mediation date?

MS. McDONOUGH: We don't have one set in stone, but I believe we've been working towards it, your Honor.

THE COURT: Well, how hard is it? Can we get it? Who do you want as a mediator?

MR. PIROZZOLO: Your Honor, we've asked Mr. Finn in the past, Paul Finn. And so we still, at least the company and 11:47 the Steiners have an open mediation with him, although there has not been any active mediation in the last couple months, I think in part because there's an effort to move discovery forward in order to get that --

THE COURT: -- extensively on the parties as to correct timing on these things, but it might make sense, maybe within that 30 days, to talk about what the right timing is, just so that there's a date on the record, you know. It may be that you need to get all the docs first. I certainly understand that.

11:48 MR. PIROZZOLO: We're happy to do that, your Honor. eBay is happy to move forward with mediation.

THE COURT: Okay. Okay, sounds good. And in the meantime, I will try and figure out how to get into the skiff. So thank you very much. Have a happy holiday to everybody. And at this point I'm not sure what I owe you in terms of a

protective order, and I think I'm going to wait to do one until all of this plays out, until this is all resolved, I think.

MR. PIROZZOLO: Your Honor, I believe that you may have entered a protective order. I may be wrong --

THE COURT: I have the proposed one, but I sure did one in the --

MR. PIROZZOLO: Correct me if I'm wrong --

THE COURT: -- client --

MR. PIROZZOLO: -- but I believe you have --

11:49 THE COURT: -- initially?

MR. PIROZZOLO: And I believe there's one in place, but it does not cover, I don't believe, what the government is looking for here with regard to the --

THE COURT: Okay, but with respect to this issue, I haven't --

MR. PIROZZOLO: No, there is not --

THE COURT: -- weighed in.

MR. PIROZZOLO: Not yet.

THE COURT: Okay. There's too much motions, too much 11:49 going on. Okay, so now that I understand where the debate is, and also what the likely answers are, which may, as I said, it may make Mr. Edelman sleep better at night, let me just go figure out why you're so adamant on the subject.

MR. EDELMAN: And I appreciate that, your Honor. I think one thing that would help me sleep better at night is if

a protective order were in place as to this issue before document productions, and apart from the ones your Honor just ordered started taking place, depositions, those kind of things started taking place.

THE COURT: You know, you're now confusing me. I'm not doing anything till I read this stuff, okay, because I don't know what else to say. Your proposal that you first get a clearing of it, and then after you get notice and you -- it was too much. There may be nothing here, despite all your concerns and probably concerns about Mr. -- you must know a lot that the parties don't know and I'm about to know, so I'll roll up my sleeves, okay?

MR. EDELMAN: Thank you very much, your Honor.

THE COURT: Bye-bye.

MR. PIROZZOLO: Thank you, your Honor.

(Adjourned, 11:50 a.m.)

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS ) ss.
CITY OF BOSTON )

I, Lee A. Marzilli, Official Federal Court Reporter, do hereby certify that the foregoing transcript, Pages 1 through 34 inclusive, was recorded by me stenographically at the time and place aforesaid in Civil Action No. 21-11181-PBS, Ina Steiner, et al v. eBay Inc., et al, and thereafter by me reduced to typewriting and is a true and accurate record of the proceedings.

Dated this 10th day of December, 2023.

/s/ Lee A. Marzilli

LEE A. MARZILLI, CRR
OFFICIAL COURT REPORTER