### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

_____
)
INA STEINER, DAVID STEINER, and    )
STEINER ASSOCIATES, LLC,         )
)
                Plaintiffs,     )    Civil Action
)    21-cv-11181-PBS
v.                      )
)
EBAY, INC., et al.,           )
)
                Defendants.    )
_____)

### MEMORANDUM AND ORDER

December 12, 2023

Saris, D.J.

### INTRODUCTION

In 2019, Ina and David Steiner, a married couple living in Natick, Massachusetts, became the target of a months-long harassment and intimidation scheme. The Steiners own and operate a trade publication, ECommerceBytes, which reports on e-commerce companies such as eBay. A group of eBay employees devised and engaged in a campaign of harassment, stalking, and threats to stop the Steiners from reporting about eBay. The conduct carried out by the group included: sending the Steiners threatening online messages; arranging for the delivery of disturbing packages, including fly larvae, live spiders, cockroaches, a Halloween mask of a bloody pig face, a funeral wreath, and a book entitled "Grief

1

Diaries: Surviving Loss of a Spouse"; signing the Steiners up for unwanted email subscriptions; publicly posting the Steiners' address inviting strangers for parties and yard sales; and traveling to Massachusetts and surveilling the Steiners' home. The government subsequently brought criminal charges against seven individuals involved in the conspiracy. All seven have pled guilty.

The Steiners bring this civil suit against those seven individuals, in addition to six other parties: eBay, three former eBay executives, and a separate company and its CEO. The Steiners assert fourteen different claims. Several Defendants move to dismiss the claims brought against them.

After hearing, the Court **ALLOWS** the motions to dismiss the stalking and assault claims asserted against all Defendants. The Court also **ALLOWS** eBay's motion to dismiss the negligent hiring claim. Finally, the Court **ALLOWS** without prejudice Steve Krystek's motion to dismiss for lack of personal jurisdiction. All other motions to dismiss are **DENIED**.

## BACKGROUND

The facts of this case are now well-known.[1] The following summary is based on the facts as alleged in Plaintiffs' 572-paragraph, 123-page First Amended Complaint ("FAC"). See

---

[1] See, e.g., United States v. Baugh and Harville, 588 F. Supp. 3d 140, 143-45 (D. Mass. 2022) (summarizing facts as alleged in the indictment against Defendants Jim Baugh and David Harville).

Dkt. 176. For the purposes of Defendants' motions to dismiss, these facts are accepted as true.

I.   **The Parties**

Plaintiffs Ina Steiner and David Steiner reside in Natick, Massachusetts. They own and operate Steiner Associates, LLC, through which they publish EcommerceBytes, an online trade publication they started in 1999. The publication reports on e-commerce platforms to support the needs of e-commerce sellers and buyers.

Defendant eBay, Inc. ("eBay") is an e-commerce corporation with its principal place of business in San Jose, California. Defendant Progressive F.O.R.C.E. Concepts, LLC ("PFC") is a limited liability company with its principal place of business in Las Vegas, Nevada. PFC provides security services, with many of their employees consisting of former law enforcement and military personnel. In January 2019, eBay contracted PFC to supply intelligence analysts to work on eBay's security team in its Global Security and Resiliency Department.

The names and relevant titles of the eleven individual Defendants are:

1. **Devin Wenig**, eBay's former Chief Executive Officer
2. **Steve Wymer**, eBay's former Senior Vice President and Chief Communications Officer
3. **Wendy Jones**, eBay's former Senior Vice President of Global Operations

4. **Steve Krystek**, PFC's Chief Executive Officer

5. **Jim Baugh**, eBay's former Senior Director of Safety & Security, Global Security and Resiliency Department

6. **Brian Gilbert**, eBay's former Senior Manager of Special Operations, Global Security Team

7. **Stephanie Popp**, eBay's former Senior Manager of the Global Intelligence Center

8. **Stephanie Stockwell**, eBay's former manager of the Global Intelligence Center

9. **David Harville**, eBay's former Director of Global Resiliency

10. **Philip Cooke**, eBay's former Security Operations Manager (and later Director)

11. **Veronica Zea**, PFC employee and eBay contractor, Intelligence Analyst in the Global Intelligence Center

Defendants Baugh, Gilbert, Popp, Stockwell, Harville, Cooke, and Zea worked on eBay's security team.[2] They all directly reported to Jones, eBay's head of security and operations. Baugh's workspace was near Wenig's, Wymer's, and Jones' conference room office suites. When Baugh was hired by eBay in September 2016, the Executive Defendants (Wenig, Wymer, and Jones) were aware of his background as a government agent and private sector security contractor.

Both Jones and Wymer directly reported to Wenig. All Defendants followed instructions directly or indirectly from senior management at eBay.

---

[2] The Court refers to Baugh, Gilbert, Popp, Stockwell, Harville, Cooke, and Zea collectively as the "Security Team Defendants"; to Wenig, Wymer, and Jones collectively as the "Executive Defendants"; and to all defendants collectively as "Defendants."

## II.  <u>Communications About the Steiners</u>

Starting in at least January 2019, the Executive Defendants became increasingly concerned about negative coverage of eBay by EcommerceBytes. In order to keep the Executive Defendants informed, Baugh directed two employees on his security team, Stockwell and Zea, to monitor EcommerceBytes' newsletters for mentions of eBay. Baugh also had weekly meetings with Jones during which they frequently discussed EcommerceBytes and the Steiners' publications about eBay.

On April 10, 2019, Wenig sent a text to Wymer with a link to an article written by Ina Steiner, to which Wymer replied: "We are going to crush this lady." FAC ¶ 61. On April 20, 2019, in reference to negative coverage about eBay by the Wall Street Journal, Wenig texted Wymer: "Fuck them. The journal is next on the list after [Ina Steiner]." <u>Id.</u> ¶ 62.

On May 23, 2019, Jones and Baugh met to discuss another article by Ina Steiner, during which Jones asked Baugh if he could deal with the issue "off the radar since comms and legal couldn't handle it," also adding: "Just get it done. I don't want to know the details, just make sure you sync with Wymer." <u>Id.</u> ¶ 65. On May 31, 2019, in reference to another Ina Steiner article, Wenig wrote to Wymer: "I couldn't care less what she says . . . Take her down." <u>Id.</u> ¶ 66.

On July 19, 2019, Baugh played for Jones a recorded call between a security team member using a false identity and a subject associated with "Fidomaster." Fidomaster is the username of a commenter on EcommerceBytes who often posted criticism of eBay and who the Security Team Defendants believed was connected to the Steiners. After hearing the recording, Jones "fist bumped" Baugh.

On August 1, 2019, after Ina Steiner had published an article about a lawsuit eBay had filed against Amazon, Wenig texted Wymer: "[Ina] is out with a hot piece on the litigation. If we are ever going to take her down . . . now is the time," to which Wymer responded: "On it." Id. ¶ 82. On that day, Wenig began a month-long sabbatical to Italy. Wymer later texted Baugh: "I want her DONE." Baugh then asked, "[Wenig] said to burn her to the ground correct?" Wymer replied: "She is a biased troll who needs to get BURNED DOWN." Wymer assured Baugh that he would "embrace managing any bad fall out. We need to STOP her." Id. ¶ 85.

In an August 7, 2019 email, Wymer wrote to Baugh and others that the Steiners' website:

> gives [him] ulcers, harms employee moral [sic], and trickles into everything about our brand. I genuinely believe these people are acting out of malice and ANYTHING we can do to solve it should be explored. Somewhere, at some point, someone chose to let this slide. It has grown to a point that is absolutely unacceptable. It's the []blind eye toward graffiti that turns into mayhem syndrome and I'm sick about it. Whatever. It. Takes.

Id. ¶ 110. Wymer instructed Baugh to neutralize the Steiners, as directly ordered by Wenig who "want[ed] the website burned to the ground." Id. ¶ 111. Wymer assured Baugh that his group would have "executive level support" if efforts led to "any legal problems." Id.

Finally, on August 11, 2019, in a text message to Baugh, Wymer ordered: "I want to see ashes. As long as it takes. Whatever it takes." Id. ¶ 126.

### III. <u>Harassment and Intimidation Campaign</u>

As the Executive Defendants were discussing the Steiners, the Security Team Defendants were simultaneously devising a "coordinated effort to intimidate, threaten to kill, torture, terrorize, stalk and silence the Steiners, in order to stifle their reporting on eBay." Id. ¶ 1. Baugh informed the other members of the security team that eBay, through the Executive Defendants, had approved the scheme to "intimidate, threaten, torture, terrorize, stalk and silence the Steiners." Id. ¶ 96.

In June 2019, Gilbert, at Baugh's direction and with Jones' knowledge, traveled to Natick and wrote "FIDOMASTER" in graffiti on the Steiners' fence. After the trip, Baugh told Wymer that his team had given the Steiners "a tap on the shoulder," to which Wymer expressed approval. Id. ¶ 75.

Starting in August 2019, the Security Team Defendants subjected the Steiners to "several days of around the clock

threatening and vulgar emails, packages and online messages." Id.
¶ 6. Examples of the actions taken by the Security Team Defendants
to harass and intimidate the Steiners include:

- Sending a series of anonymous tweets and Twitter direct messages to the Steiners that were vulgar and threatening

- Signing up the Steiners for over 53 email subscriptions, including subscriptions to pornography, bondage, cadaver interest, sex toys, and anthropornography

- Delivering a preserved pig fetus, fly larvae, live spiders, cockroaches, a Halloween mask of a bloody pig face, a funeral wreath, and a book entitled "Grief Diaries: Surviving Loss of a Spouse"

- Using the Steiners' identities to sign them up as potential franchise owners of an adult sex toy store

- Sending pornographic magazines to Steiners' neighbors, with David Steiner's name on the mailing label

- Travelling to Massachusetts and surveilling, tailing, and stalking the Steiners by vehicle and on foot

- Attempting to install a GPS tracking system on the Steiners' vehicle

- Ordering pizza deliveries to the Steiners' home, often in the middle of the night

- Posting a Craigslist advertisement falsely identifying the Steiners as a married couple seeking sexual partners and providing the Steiners' home address

- Posting an online advertisement for an "Everything must go!" estate sale, listing the Steiners' home address

- Posting the Steiners' full names and address on Twitter

- Creating false documents featuring the Steiners as eBay "Persons of Interest" to suggest that the Steiners had a history of threats against eBay and its executive management

The expenses associated with these activities were financed by PFC with the approval of Krystek. Baugh and Krystek have known each other for at least 25 years and would frequently meet. Based on a contract between PFC and eBay, PFC would cover all expenses for analysts, then bill eBay for the expenses along with a 5% markup. In the period leading up to August 2019, Zea's and Stockwell's credit card limits were increased to $20,000, which was approved by PFC through Krystek.

During this harassment and intimidation campaign, the Steiners installed security cameras and slept in separate rooms. They "suffered significant trauma, including emotional distress, panic attacks, believing they would be killed and psychological trauma." Id. ¶ 156. The Steiners experienced "debilitating fear, were unable to sleep, and lived in terror that they [would] be killed." Id. ¶ 203.

## IV.  Investigation and Aftermath

The Steiners reported the conduct to the Natick Police Department ("NPD"), who began an investigation on August 16, 2019. By August 22, the FBI and the Massachusetts U.S. Attorney's office had opened an official investigation of their own. eBay also began its own investigation after being contacted by the NPD. Gilbert offered eBay's assistance to the NPD in an effort to conceal the actions of eBay's security team. Gilbert also called Ina Steiner to offer eBay's assistance to the Steiners.

On August 20, 2019, Wymer called Baugh to indicate that he and Jones were aware of the NPD criminal investigation. He stated that he believed the harassment was not a crime because it equated to "TPing" a house. Wymer told Baugh: "Stick to your guns." Id. ¶ 220-21.

On August 23, Baugh texted Wymer: "We will continue to cooperate but not sure how much longer we can keep this up. If there is any way to get some top cover that would be great. . . . Again, no crime was committed and local police don't have a case." Id. ¶ 266. On August 25, Wenig sent Baugh a message that he was returning from his sabbatical: "See you tomorrow. The Cavalry is back." Id. ¶ 270.

After a series of interviews by eBay's legal team, on August 30, eBay placed Baugh, Popp, and Harville on administrative leave, and in September 2019, terminated their employment, together with that of Gilbert and Stockwell. eBay later terminated Cooke after his federal charging document became public. PFC also terminated Zea's employment. Wenig departed eBay in September 2019 with a $57 million severance package. Jones retired in December 2020 with a compensation package of over $16 million. eBay terminated Wymer's employment for an undisclosed severance package amount.

## V.   <u>Criminal Proceedings</u>

The U.S. Attorney's Office subsequently brought criminal charges against the seven Security Team Defendants. All seven have pled guilty to criminal charges arising from the alleged misconduct.

Baugh and Harville pled guilty to conspiracy to commit stalking and to the substantive count of stalking. Baugh also pled guilty to witness tampering and evidence destruction. Baugh was sentenced to 57 months and Harville was sentenced to 24 months of imprisonment.[3]

Popp, Stockwell, and Zea pled guilty to conspiracy to commit cyberstalking and obstruction of justice. Popp was sentenced to one year and one day of imprisonment. Stockwell and Zea were each sentenced to two years of probation.[4]

Gilbert and Cooke pled guilty to conspiracy to commit cyberstalking and to commit witness tampering. Cooke was sentenced to 18 months of imprisonment and Gilbert is currently awaiting sentencing.[5]

---

[3] <u>See</u> Sentencing, <u>U.S. v. Baugh, et al.</u>, No. 20-cr-10263 (D. Mass. Sept. 29, 2022), ECF No. 230, 232.

[4] <u>See</u> Judgment, <u>U.S. v. Gilbert, et al.</u>, No. 20-cr-10098 (D. Mass. Oct. 26, 2022), ECF No. 114, 116; Sentencing, <u>U.S. v. Gilbert, et al.</u>, No. 20-cr-10098 (D. Mass. Nov. 3, 2022), ECF No. 122.

[5] <u>See</u> Judgment, <u>U.S. v. Cooke</u>, No. 20-cr-10126 (D. Mass. July 27, 2021), ECF No. 23.

## VI.  **Procedural History**

Plaintiffs initiated this civil suit on July 21, 2021 against eleven named Defendants. Dkt. 1. Numerous defendants filed motions to dismiss against the original complaint.[6] The Court ordered Plaintiffs to file an amended complaint in light of, in part, the "successive guilty pleas by various of the defendants in criminal proceedings against them." Dkt. 167. On March 1, 2023, Plaintiffs filed an amended complaint adding new factual allegations, new causes of action, and Wendy Jones and Steve Krystek as additional Defendants. Dkt. 176.

Plaintiffs assert fourteen different claims. Ten of the claims are asserted against all thirteen Defendants: Intentional Infliction of Emotional Distress (Count I); Stalking (Count II); Negligent Infliction of Emotional Distress (Count III); Negligence (Count IV); Assault (Count VIII); Massachusetts Civil Rights Act Violation (Count IX); Defamation (Count X); Trespass (Count XI); False Imprisonment (Count XII); and Civil Conspiracy (Count XIII). Plaintiffs also assert claims of Negligent Supervision (Count VI) against eBay, PFC, Wenig, Jones, and Krystek, and claims of Negligent Retention (Count VII) against eBay and PFC. Finally, Plaintiffs assert claims of Negligent Hiring (Count V) and Ratification (Count XIV) against eBay alone.

---

[6] See Dkts. 79, 81, 83, 88, 89, 93, 98, 101, 102, 106.

In April 2023, eleven of the thirteen Defendants filed motions to dismiss against the FAC.[7] Harville and Zea did not file motions to dismiss. eBay, Baugh, Gilbert, and Popp move for partial dismissal, while the remaining Defendants move to dismiss all counts in the FAC asserted against them individually.[8] PFC and Krystek also move to dismiss for lack of personal jurisdiction.

On June 12, 2023, Plaintiffs filed a motion to strike extraneous information contained within Defendants' motions to dismiss. See Dkt. 222. Specifically, Plaintiffs request the Court strike certain statements contained within Wenig's, Wymer's, Jones', and PFC's memoranda in support of their respective motions to dismiss.

## DISCUSSION

## I.   Motions to Dismiss for Lack of Personal Jurisdiction

The Court will first address PFC's and Krystek's motions to dismiss for lack of personal jurisdiction. See Dkts. 213, 215.

### A. Legal Standard

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction by satisfying the forum's long-arm statute and the requirements of the U.S. Constitution.

---

[7] See Dkts. 193, 196, 198, 203, 205, 207, 209, 210, 213, 215, 217.
[8] Stockwell filed her motion pro se.

See Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015). Where, as here, there has been no evidentiary hearing, the court applies the *prima facie* standard and takes the specific facts affirmatively alleged by the plaintiff as true, regardless of whether these facts have been disputed, and construes them in the light most favorable to the plaintiff. Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). A plaintiff cannot, however, rely on "unsupported allegations" in its complaint but "must put forward evidence of specific facts to demonstrate that jurisdiction exists." A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (cleaned up). Courts can add to the mix facts put forward by the defendants, to the extent that they are uncontradicted. See Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009).

To make a *prima facie* showing of personal jurisdiction over PFC and Krystek in this case, Plaintiffs must demonstrate that the exercise of jurisdiction "1) is permitted by the Massachusetts long-arm statute, M.G.L. c. 223A § 3, and 2) coheres with the Due Process Clause of the Fourteenth Amendment of the United States Constitution by showing that each defendant has 'minimum contacts' with Massachusetts." King v. Prodea Sys. Inc., 433 F. Supp. 3d 7, 12 (D. Mass. 2019) (citing Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F. 3d 42, 52 (1st Cir. 2002)).

**B. PFC's Motion to Dismiss**

Plaintiffs identify sufficient contacts between a PFC agent (Veronica Zea) and Massachusetts to satisfy the first requirement. Under Mass. Gen. Laws ch. 223A, § 3(c), a court may exercise personal jurisdiction over a defendant "causing tortious injury by an act or omission in this commonwealth." The FAC establishes that Zea was an employee of PFC and allegedly acted within the scope of her employment when she "harassed, stalked, threatened, defamed and caused the Steiners and EcommerceBytes' injuries" in Massachusetts. FAC ¶ 360. In fact, in October 2020, Zea pled guilty to agreeing to "engage in a stalking campaign targeting a husband and wife who lived in Natick, Massachusetts." Id. ¶ 366. As alleged in the FAC, Zea's credit card limit for expenses was increased by PFC to $20,000 in the period leading up to the August 2019 events. Plaintiffs have thus set forth "a well-pleaded allegation" that Zea, as an agent of PFC, "did some act in the Commonwealth that caused the plaintiff harm." Collision Commc'ns, Inc. v. Nokia Sols. & Networks Oy, 485 F. Supp. 3d 282, 293 (D. Mass. 2020) (emphasis omitted). The statutory personal jurisdiction requirements of ch. 223A, § 3(c) have been met.

As for the due process requirements of the Fourteenth Amendment, the First Circuit applies a three-part test to determine whether exercising personal jurisdiction over a defendant comports with due process: "(1) the claim(s) must directly arise out of, or

relate to, the defendant's forum-state activities; (2) the defendant's in-state contacts must 'represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable'; and (3) the exercise of jurisdiction must, in light of the 'gestalt factors,' be reasonable." Beck v. Vision Serv. Plan. Ins. Co., 600 F. Supp. 3d 145, 154 (D. Mass. 2021) (quoting Noonan v. Winston Co., 135 F.3d 85, 90 (1st Cir. 1998)).

Here, Plaintiffs' claims arise out of, or relate to, the Massachusetts activities carried out by Zea and other members of the security team. Zea traveled to Massachusetts, rented a vehicle under her name, drove to the Steiners' home, and stalked the Steiners in a black van. Zea's actions were voluntary and it was entirely foreseeable that Zea, and therefore PFC, could be haled into court in Massachusetts. Moreover, PFC does not "advance any argument as to why it would be unconstitutionally unfair to compel them to litigate in Massachusetts." Grice v. VIM Holdings Grp., LLC, 280 F. Supp. 3d 258, 274 (D. Mass. 2017). Plaintiffs have demonstrated that the Court's exercise of jurisdiction over PFC comports with the constitutional requirements of personal jurisdiction.

PFC's motion to dismiss for lack of personal jurisdiction (Dkt. 215) is **DENIED**.

### C. Krystek's Motion to Dismiss

Plaintiffs argue that the Court may also exercise personal jurisdiction over Krystek, PFC's CEO, because he was a "primary participant in the wrongdoing." Dkt. 221 at 93. In order to exercise personal jurisdiction over a corporate officer such as Krystek, the Court asks "whether the individual was a 'primary participant' in the alleged wrongdoing." Perras v. Trane U.S., Inc., 463 F. Supp. 3d 38, 43 (D. Mass. 2020). As a general matter, "[a]n individual's status as a corporate officer is insufficient to establish the minimum contacts required to subject the individual to personal jurisdiction in a foreign forum." King, 433 F. Supp. 3d at 16 (citing M-R Logistics, LLC v. Riverside Rail, LLC, 537 F. Supp. 2d 269, 279 (D. Mass. 2008)). The Court must consider whether the officer "derived personal benefit from their contacts in Massachusetts and/or acted beyond the scope of their employment." M-R Logistics, 537 F. Supp. 2d at 280.

Plaintiffs fail to allege any facts showing that Krystek was a primary participant in the alleged scheme to harass and intimidate the Steiners. Krystek, who lives in Nevada, had no actual contacts with Massachusetts. Moreover, the FAC does not allege that Krystek directly supervised Zea. Instead, the FAC simply alleges that Krystek approved purchases by Zea to fund

eBay's activities. <u>See, e.g.</u>, FAC ¶¶ 123, 178, 330 ("When Defendant Krystek and other PFC executives saw the strip club on Defendant Zea's credit card report, they laughed . . . ."). The FAC also alleges that Baugh and Krystek had a long-standing 25-year relationship and would frequently meet with each other. These factual allegations do not sufficiently demonstrate that Krystek was a primary participant or even knew about the alleged wrongdoing.

Plaintiffs alternatively argue that "Krystek was the alter-ego of the company." Dkt. 221 at 94. Under the alter-ego theory, if an officer is "the alter-ego of the corporation or . . . had an identity of interest with the corporation itself (i.e., the corporation and the corporation's president)," he may be subject to personal jurisdiction. <u>La Vallee v. Parrot-Ice Drink Prods. of Am., Inc.</u>, 193 F. Supp. 2d 296, 301 (D. Mass. 2002). However, nowhere in the FAC is there an allegation that Krystek was the alter-ego of PFC.

Krystek's motion to dismiss for lack of personal jurisdiction (Dkt. 213) is **<u>ALLOWED</u>** without prejudice.[9]

---

[9] Having determined that it lacks personal jurisdiction over Krystek, the Court need not proceed to adjudicate the claims against him on the merits.

## II.  Motions to Dismiss for Failure to State a Claim

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state claim, a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels [the court] to draw on [its] judicial experience and common sense." Schatz v. Republican State Leadership Comm'n, 669 F.3d 50, 55 (1st Cir. 2012) (cleaned up) (quoting Iqbal, 556 U.S. at 679).

### B. eBay, PFC, and Executive Defendants' Motions to Dismiss

The Court next addresses the motions to dismiss for failure to state a claim filed by the two corporate defendants (eBay and PFC) and the former eBay executives (Wenig, Wymer, and Jones). See Dkts. 207, 215, 196, 198, 205.

#### 1. Intentional Infliction of Emotional Distress (Count I)

The Executive Defendants and PFC move to dismiss the intentional infliction of emotional distress ("IIED") claim. eBay does not move to dismiss this count.

19

To make a claim for IIED in Massachusetts, the plaintiff must show:

> (1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

Limone v. United States, 579 F.3d 79, 94 (1st Cir. 2009) (quoting Agis v. Howard Johnson Co., 355 N.E.2d 315, 318-19 (Mass. 1976)).

The Executive Defendants argue that the FAC alleges no facts showing that they intended to cause (or knew their actions would cause) the Steiners to suffer emotional distress, or that their conduct was "outrageous in character." See Dkt. 197 at 17-18; Dkt. 199 at 14-17; Dkt. 206 at 11-12. However, drawing all reasonable inferences in Plaintiffs' favor, the FAC sufficiently alleges that the Executive Defendants, through their communications and directives, "set in motion" the conspiracy to "intimidate, threaten, torture, terrorize, stalk and silence the Steiners." FAC ¶ 100. Moreover, the harassment and intimidation scheme certainly went "beyond all possible bounds of decency" to constitute "extreme and outrageous" conduct. Jones v. Baystate Health, Inc., No. 22-10417, 2022 WL 21778544, at *9 (D. Mass. Nov.

4, 2022). At this early motion to dismiss stage, Plaintiffs' IIED claim is sufficiently pled.

PFC separately argues that the IIED claim, in addition to other state law claims asserted against it, must be dismissed because the FAC fails to plead a plausible vicarious liability claim, as "Zea's actions were at the sole direction of eBay," not PFC. Dkt. 216 at 16. However, because Zea was an employee of PFC and performed security duties that fell within her scope of employment, the Court finds that Plaintiffs raise a plausible claim that PFC is vicariously liable for Zea's conduct.

The Executive Defendants' and PFC's motions to dismiss the IIED claim (Count I) are **DENIED**.

### 2. Stalking (Count II)

eBay, PFC, and the Executive Defendants all move to dismiss the stalking claim brought by Plaintiffs under California Code of Civil Procedure § 1708.7.

Unlike California, Massachusetts does not have a stalking statute that affords a private right of action. Instead, stalking is a crime under the Massachusetts General Laws. See Mass. Gen. Laws ch. 265, § 43. "Where one state has a law affecting the outcome of the claim and the other state has no comparable law," a conflict of law exists. Woods Servs., Inc. v. Disability Advocs., Inc., 342 F. Supp. 3d 592, 607 (E.D. Pa. 2018); see also HDI-Gerling Am. Ins. Co. v. Navigators Ins. Co., No. 15-10338, 2015 WL

5315190, at *2 (D. Mass. Sept. 11, 2015) ("Because New York recognizes a direct claim . . . and Massachusetts does not, New York and Massachusetts law conflict.") (citations omitted). A choice of law analysis is necessary.

Where, as here, a federal court exercises diversity jurisdiction, "[t]he question of which state's law applies is resolved using the choice of law analysis of the forum state -- in this case, Massachusetts." Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004). Massachusetts follows the Restatement (Second) of Conflict of Laws to determine the applicable law for tort claims. See, e.g., Resolute Mgmt. Inc. v. Transatl. Reins. Co., 29 N.E.3d 197, 302 (Mass. 2015). Factors to be considered to determine the law applicable to Plaintiffs' stalking claim include:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145. In addition, the "rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . ." Resolute Mgmt., 29 N.E.3d at 302.

The Court finds that the first two factors favor applying Massachusetts law. The Steiners' injuries occurred primarily in Massachusetts, as a result of the Security Team Defendants "following them and surveilling them at all hours of the day and night; stalking and tailing them" near their residence in Natick. FAC ¶ 408. In addition, the majority of the conduct causing the injury, i.e., the "stalking [of] the Steiners and their residence in a rented black van" and the "surveillance, tailing and stalking of the Steiners, both by vehicle and on foot," also occurred in Massachusetts. Id. ¶¶ 152, 490. Plaintiffs argue that California law should apply because the Defendants "engaged in countless other bewildering, harassing and tortious acts from California," and that the stalking "would not have resulted in the same measure of fear, anticipation and torment to the Steiners without the California acts leading up to those events." Dkt. 221 at 59-60. Even though online messages may have been sent from California, and even with planning and facilitating occurring there as well, the fact remains that, as Plaintiffs concede, the "most disturbing act of surveilling and stalking the Steiners in their home and while driving occurred in Massachusetts." Id. at 59.

The domicile of the individual Defendants and the place of business of the corporations (California and Nevada) and the place where the relationship between the parties is centered (California and Massachusetts) are not significant enough to overcome the two

first factors which favor Massachusetts. Reilly v. Sheridan Trucking, Inc., No. 16-30128, 2019 WL 13398887, at *4 n.7 (D. Mass. Apr. 19, 2019) (holding that the "law of the place where the injury occurred presumptively applies" unless "another state has a more significant relationship to the case"). Accordingly, Massachusetts law applies to the stalking claim. And because Massachusetts law does not recognize a standalone cause of action for stalking, Plaintiffs' stalking claim fails as a matter of law.

Defendants' motions to dismiss the stalking claim (Count II) are **ALLOWED**.

### 3. Negligent Infliction of Emotional Distress and Negligence (Counts III and IV)

The Executive Defendants and PFC move to dismiss Plaintiffs' claims for negligent infliction of emotional distress ("NIED") and negligence. eBay does not move to dismiss either count.

To recover for NIED, a plaintiff must establish: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology, i.e., objective corroboration of the emotional distress alleged; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." ABC Soils, Inc. v. DRS Power Tech., Inc., 386 F. Supp. 3d 107, 112 (D. Mass. 2019). Thus, "one must establish negligence to successfully set forth a

claim for negligent infliction of emotional distress." <u>Doe v. Stonehill Coll., Inc.</u>, 55 F.4th 302, 338 (1st Cir. 2022).

To state a claim for negligence under Massachusetts law, a plaintiff must allege that "the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." <u>Id.</u> (citing <u>Jupin v. Kask</u>, 849 N.E.2d 829, 834-35 (Mass. 2006)).

The thrust of the Executive Defendants' arguments in support of dismissing the negligence claims is that the FAC does not adequately allege proximate causation or foreseeability. <u>See</u> Dkt. 197 at 14-16; Dkt. 199 at 17-18; Dkt. 206 at 15-17. They argue that the injuries suffered by the Steiners were not reasonably foreseeable to them, as Baugh's "bizarre" actions, Dkt. 199 at 7, were an intervening action that relieved the Executive Defendants of liability. However, the Court finds that the FAC plausibly alleges that, as demonstrated by their directives and communications to Baugh, the Executive Defendants could reasonably foresee that harm to the Steiners would result. For similar reasons as stated above, Plaintiffs have sufficiently alleged their negligence claims.

The Executive Defendants' and PFC's motions to dismiss the NIED claim (Count III) and the negligence claim (Count IV) are **<u>DENIED</u>**.

### 4. Negligent Hiring (Count V)

eBay moves to dismiss the negligent hiring claim, which the Plaintiffs only assert against eBay.

Employers such as eBay have a duty to exercise reasonable care in the hiring and training of their employees. See Foster v. Loft, Inc., 526 N.E.2d 1309, 1310 (Mass. App. Ct. 1988). To state a claim for negligent hiring, a plaintiff must show "(1) that the employer knew or should have known that the employee posed the danger plaintiff alleges and (2) that there is a causal relationship between the breach of duty and the harm alleged." Doe v. Medeiros, 168 F. Supp. 3d 347, 353 (D. Mass. 2016) (citing Armstrong v. Lamy, 938 F. Supp. 1018, 1046 (D. Mass. 1996)). "To determine whether it was reasonably foreseeable that an employee would cause harm to a plaintiff, courts examine the totality of circumstances." Id. at 354.

Plaintiffs allege that eBay negligently hired two employees: Wymer and Baugh. With respect to Wymer, the FAC alleges that eBay knew or should have known that Wymer was "unfit" for his position because, as the company later admitted to the U.S. Attorney's Office, Wymer was too "green" and "inexperienced" to pushback against Wenig. FAC ¶¶ 447, 449. But Plaintiffs fail to identify any "red flags" in Wymer's employment history that should have warned Plaintiffs about Wymer's alleged unfitness or his

propensity to order a harassment or stalking campaign. See Murray v. Uber Techs., Inc., 486 F. Supp. 3d 468, 477 (D. Mass. 2020).

With respect to Baugh, Plaintiffs allege that eBay hired him "for the specific purpose of using his past experiences working for the FBI and CIA so he could engage in the type of conduct he inflicted upon the Steiners." FAC ¶ 446. The FAC states that eBay was aware of Baugh's "off-kilter and unconventional means" and "off the radar" manner of dealing with issues. Id. ¶ 448. However, there is not a sufficient connection between Baugh's background and the alleged misconduct. See Medeiros, 168 F. Supp. 3d at 354 (finding an insufficient connection between defendant's criminal background and alleged misconduct to support a negligent hiring claim).

eBay's motion to dismiss the negligent hiring claim (Count V) is **ALLOWED**.

### 5. Negligent Supervision and Retention (Counts VI and VII)

eBay, PFC, Wenig, and Jones move to dismiss the negligent supervision claim. eBay and PFC also move to dismiss the negligent retention claim.

To establish an employer's liability for negligently training, supervising, or retaining an employee, a plaintiff must show that, during the course of employment, the "employer [became] aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take

further action such as investigating, discharge or reassignment."
Helfman v. Ne. Univ., 149 N.E.3d 758, 775 (Mass. 2020) (quoting
Foster, 526 N.E.2d at 1311). An employer must avoid retaining an
employee whom the employer "knows or has reason to know is unworthy
by habits, temperament, or nature." Foster, 526 N.E.2d at 1310-11.

The FAC plausibly establishes that had eBay and PFC properly
supervised their employees -- and had Wenig and Jones properly
supervised Baugh -- then they would have known (or should have
known) that their employees were engaging in criminal activity.
The FAC alleges that eBay knew or should have known about the
Executive Defendants' directives targeting the Steiners, which the
company failed to investigate. FAC ¶¶ 459, 461. Plaintiffs also
allege that eBay, Wenig, and Jones knew or should have known about
Baugh's violent conduct towards his employees that allowed the
conspiracy to occur, such as his "pattern of breaking down the
analysts, firing them without cause, and creating a toxic work
environment" and "stabbing chairs and forcing [the security team]
to watch graphic video footage . . . ." Id. ¶¶ 463-64. As for PFC,
the FAC alleges that the company knew or should have known that
Zea was using her credit card for improper purchases to fund the
scheme. Id. ¶ 468.

eBay's, PFC's, Wenig's, and Jones' motions to dismiss the
negligent supervision claim (Count VI) and negligent retention
claim (Count VII) are **DENIED**.

### 6. Assault (Count VIII)

eBay, PFC, and the Executive Defendants all move to dismiss the assault claim.

Under Massachusetts law, a civil claim of assault requires that "the defendant acted intending to cause a harmful or offensive contact with plaintiff, or an imminent apprehension of such a contact, and that plaintiff was thereby put in such imminent apprehension." Kennedy v. Town of Billerica, 617 F.3d 520, 538 (1st Cir. 2010) (cleaned up). A "defendant need not be able instantly to carry out the physical violence threatened by his conduct. Rather, it is enough that one is so close to striking distance that he can reach a plaintiff almost at once." Diaz v. Devlin, 229 F. Supp. 3d 101, 112 (D. Mass. 2017) (cleaned up) (quoting Kennedy, 617 F.3d at 539). Moreover, "[w]ords do not make the actor liable for assault unless together with other acts or circumstances they put the other in reasonable apprehension of an imminent harmful or offensive contact with his person." Commonwealth v. Delgado, 326 N.E.2d 716, 719 n.3 (Mass. 1975).

Plaintiffs' factual allegations do not establish a plausible claim of assault. The FAC does not allege that any of the Defendants had physical contact with the Steiners. Instead, the FAC alleges that the "surveillance, tailing and stalking of the Steiners, both by vehicle and on foot, caused the Steiners to fear immediate physical harm of a battery or attempted battery." FAC

¶ 490. The FAC also alleges that "online threats to kill, along with the threatening and menacing packages, were all overt acts that were intentionally effectuated to cause the Steiners apprehension of immediate physical harm." Id. ¶ 489. Plaintiffs argue that the totality of Defendants' escalating threats and conduct was sufficient to cause a reasonable fear that Defendants were "close to striking distance." Dkt. 221 at 53.

But Plaintiffs' allegations fall short of establishing an assault claim. The FAC states that the Security Team Defendants "followed David Steiner in his car," "menacingly circled the block" outside the Steiners' home, and "parked at the end of the street to watch the Steiner residence." Id. ¶¶ 155, 486. The allegations demonstrate that the Defendants kept a certain amount of distance from the Steiners, and thus fail to show that Defendants were "so close to striking distance" that they could reach the Steiners "almost at once." Kennedy, 617 F.3d at 539. Moreover, although the online threats to kill and threatening packages were disturbing, "[w]ords alone, without some overt act" cannot sustain a claim for assault. Morgan v. Driscoll, No. 98-10766, 2002 WL 15695, at *9 (D. Mass. Jan. 3, 2002).

Defendants' motions to dismiss the assault claim (Count VIII) are **ALLOWED**.

### 7. Massachusetts Civil Rights Act (Count IX)

The Executive Defendants and PFC move to dismiss Plaintiffs' claim asserting a violation under the Massachusetts Civil Rights Act ("MCRA"). eBay does not move to dismiss this count.

The MCRA provides that an individual "who interferes, or attempts to interfere, with another's exercise or enjoyment of rights secured by the constitution or laws of the United States or the Commonwealth may be liable." Winfield v. Town of Andover, 305 F. Supp. 3d 286, 299 (D. Mass. 2018) (citing Mass. Gen. Laws ch. 12, § 11I). "To establish a claim under the [MCRA], the plaintiffs must prove that (1) their exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion." Do Corp. v. Town of Stoughton, No. 13-11726, 2013 WL 6383035, at *12 (D. Mass. Dec. 6, 2013) (quoting Swanset Dev. Corp. v. City of Taunton, 668 N.E.2d 333, 337 (Mass. 1996)). Such threats, intimidation, or coercion comprises "the 'essential element' of an MCRA violation." Chaabouni v. City of Boston, 133 F. Supp. 2d 93, 100 (D. Mass. 2001) (quoting Layne v. Superintendent, 546 N.E.2d 166, 168 (Mass. 1989)).

Plaintiffs have stated a plausible claim of relief under the MCRA. The FAC alleges that "the Defendants attempted to interfere

31

with the Steiners and EcommerceBytes' exercise and enjoyment of their First Amendment and Article 16 . . . rights to free speech and liberty of the press, rights secured by both the United States Constitution and the Massachusetts Declaration of Rights." FAC ¶ 495. The FAC is filled with allegations and inferences that the actions of the eBay security team were threatening, intimidating or coercive, and that such actions pressured the Steiners into ceasing their coverage of eBay. See Planned Parenthood League of Mass., Inc. v. Blake, 631 N.E.2d 985, 990-91 (Mass. 1994) (affirming court's finding of an MCRA violation where a reasonable person "would be made fearful and apprehensive, and would feel pressured, by the defendants' conduct so that she would desist from seeking those services while that conduct continued").

PFC argues that Defendants' alleged conduct does not rise to the level of "an actual or potential physical confrontation accompanied by a threat of harm," which is "an element of MCRA claims." Dkt. 216 at 24 (quoting Planned Parenthood, 631 N.E.2d at 989). However, the Massachusetts Supreme Judicial Court has held that a showing of physical force is not required under the MCRA. See Freeman v. Planning Bd. of West Boylston, 646 N.E.2d 139, 150 n.18 (Mass. 1995) ("We assume without deciding that certain forms of oppression or domination not involving physical force might constitute coercion under the [MCRA] . . . ."). At this stage, Plaintiffs have sufficiently pled that Defendants raised at least

the potential of physical confrontation, and accompanied it with threats of harm.

The Executive Defendants also move to dismiss the MCRA claim on the grounds that the FAC fails to allege that they "personally engaged" in the harassment and intimidation acts that interfered with Plaintiffs' civil rights. See Dkt. 197 at 20; Dkt. 199 at 19; Dkt. 206 at 19. However, as discussed above, the Executive Defendants' directives and orders to the security team to "take down" Ina Steiner in order to stop EcommerceBytes' reporting on eBay establish plausible claims of liability under the MCRA.

The Executive Defendants' and PFC's motions to dismiss the MCRA claim (Count IX) are **DENIED**.

### 8. Defamation (Count X)

The Executive Defendants and PFC move to dismiss the defamation claim. eBay does not move to dismiss this count.

To assert a defamation claim, a plaintiff must plausibly allege that the "defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." White v. Blue Cross & Blue Shield of Mass., 809 N.E.2d 1034, 1036 (Mass. 2004) (citing Ravnikar v. Bogojavlensky, 782 N.E.2d 508, 510-11 (Mass. 2003)). "The publication element of defamation

requires that the defendant communicate the defamatory statement to a third party." Id.

Plaintiffs have specifically identified the allegedly defamatory statements. The FAC alleges that Defendants caused defamation by: sending pornography to the Steiners' neighbors to reputationally harm the Steiners; posting a Craigslist advertisement on behalf of the Steiners claiming to be a married couple seeking sexual partners; and creating fake "Persons of Interest" files on the Steiners in order to suggest that the Steiners were a threat to eBay and their security. FAC ¶¶ 146, 178, 212. The identified messages are plausibly defamatory and capable of damaging the Steiners' reputation in their community.

The Executive Defendants argue that the FAC fails to allege that they "physically participated" in these actions or were "at fault for the publication of" any defamatory statement. See Dkt. 197 at 20; Dkt. 199 at 20; Dkt. 206 at 14. Under Massachusetts law, "[i]f a statement is true, the plaintiff must prove that the defendant acted with 'actual malice' to recover. If, however, a statement is false, the plaintiff still must show that the defendant acted negligently. Either way, *some* showing of fault is essential." Shay v. Walters, 702 F.3d 76, 82 (1st Cir. 2012) (citations omitted). Without determining at this stage which statements are true or false, the Court finds that the FAC sets out a plausible showing of the Executive Defendants' fault (either

34

malice or negligence) for the defamatory statements, based on their directives and communications to Baugh and the security team.

The Executive Defendants' and PFC's motions to dismiss the defamation claim (Count X) are **DENIED**.

### 9. Trespass (Count XI)

The Executive Defendants and PFC move to dismiss the trespass claim. eBay does not move to dismiss this count.

A trespass is "an unprivileged, intentional intrusion on land in possession of another." Dusoe v. Mobil Oil Corp., 167 F. Supp. 2d 155, 163 (D. Mass. 2001). A plaintiff claiming civil trespass must establish "1) his actual possession of the property and 2) intentional entry by defendant which is 3) unlawful." Gill v. United States, 588 F. Supp. 3d 134, 137-38 (D. Mass. 2022) (citing New England Box Co. v. C & R Constr. Co., 49 N.E.2d 121, 128 (Mass. 1943)); see also Restatement (Second) of Torts § 158 ("One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally [a] enters land in the possession of the other, or causes a thing or a third person to do so, or [b] remains on the land, or [c] fails to remove from the land a thing which he is under a duty to remove").

Here, the factual allegations establish a straightforward case of physical trespass. On June 8, 2019, Gilbert entered the Steiners' property and wrote "Fidomaster" in graffiti on their

fence, thus defacing and vandalizing the Steiners' property. FAC
¶ 73. On August 15, 2019, Baugh, Harville, and Zea approached the
Steiners' home and attempted to install a GPS on the Steiners'
vehicle. FAC ¶ 147-88. The allegations make clear that members of
the eBay security team physically entered the Steiners' property
without permission. With respect to all the other Defendants that
did not step foot on the Steiners' property, such as the Executive
Defendants, the FAC plausibly alleges that each Defendant had
knowledge of the trespasses and "actively participated in or
substantially assisted" the trespasses. See Mass. Port Auth. v.
Turo Inc., 166 N.E.3d 972, 981 (Mass. 2021) (finding defendant
liable for aiding and abetting trespass due to its "active
participation in or substantial assistance of [other] defendants'
trespass").

The Executive Defendants' and PFC's motions to dismiss the
trespass claim (Count XI) are **DENIED**.

### 10. False Imprisonment (Count XII)

eBay, PFC, and the Executive Defendants all move to dismiss
the false imprisonment claim.

False imprisonment consists of the "intentional and unlawful
confinement of a person, either directly or indirectly, of which
the person confined is conscious or is harmed by such confinement."
Jonielunas v. City of Worcester Police Dep't, 338 F. Supp. 2d 173,
177 (D. Mass. 2004). "While 'confinement' can be imposed by

physical barriers or physical force, much less will do -- although how much less becomes cloudy at the margins." McCann v. Wal-Mart Stores, Inc., 210 F.3d 51, 53 (1st Cir. 2000).

The Restatement (Second) of Torts includes a section titled "Confinement by Threats of Physical Force," which states:

> Under the rule [for false imprisonment], the actor's threat may be by words as well as by other acts. It is not necessary that he do any act actually or apparently effectual in carrying a threat into immediate execution. It is enough that he threatens to apply and has the apparent intention and ability to apply force to the other's person immediately upon the other's attempting to escape from the area within which it is the actor's intention to confine him.

Restatement (Second) of Torts § 40. Even without physical contact, restraint may rise to the level of false imprisonment, such as when a person is "restrained of his personal liberty by fear of a personal difficulty." Coblyn v. Kennedy's Inc., 268 N.E.2d 860, 861 (Mass. 1971); Foley v. Polaroid Corp., 508 N.E.2d 72, 77 (Mass. 1987) ("[A] plaintiff who relinquishes his right to move about freely as the only available alternative to relinquishment of another right . . . is restrained.").

Plaintiffs have stated a plausible claim for false imprisonment because the Steiners were confined to their home out of fear for their lives based on Defendants' death threats. See FAC ¶ 156 ("The Steiners believed they were not free to leave their home for fear that they would be killed, based on the Defendants['] threats to harm, including sending the book on surviving the death

of a spouse, the funeral wreath and the SAW [pig] mask"). Ina Steiner never left the house during the period of harassment.

Defendants contend that the Steiners were neither falsely imprisoned nor confined because they were free to leave the house, which David Steiner did at least on one occasion to buy groceries. See, e.g., Dkt. 208 at 19. However, Mr. Steiner was forced to leave his home out of necessity, and even while he was in his car, the Defendants tailed him and followed him throughout town. As alleged in the FAC, the "Steiners were prisoners in their own home and car." FAC ¶ 155.

Defendants' motions to dismiss the false imprisonment claim (Count XII) are **DENIED**.

### 11. Civil Conspiracy (Count XIII)

eBay, PFC, and the Executive Defendants all move to dismiss the civil conspiracy claim.

As a threshold matter, Defendants argue that under the intra-corporate conspiracy doctrine, there can be no conspiracy between or among eBay and the individual Defendants. See Dkt. 197 at 22; Dkt. 199 at 21-22; Dkt. 206 at 20-21; Dkt. 208 at 23. Under the intra-corporate conspiracy doctrine, if "all the defendants comprise a single corporate enterprise," then "[n]o civil conspiracy claim can lie . . . because an entity cannot conspire with itself." Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 131 (1st Cir. 2006). Here, however, the FAC sufficiently alleges

a conspiracy between at least eBay and PFC (and Zea, acting as PFC's agent). See <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 153 (2017) ("Conspiracy requires an agreement -- and in particular an agreement to do an unlawful act -- between or among two or more separate persons."). Plaintiffs' claim of civil conspiracy is therefore not barred by the intra-corporate conspiracy doctrine.

Massachusetts courts recognize two theories of liability for a civil conspiracy claim: (1) "concert of action" and (2) "aiding and abetting." <u>Taylor v. Am. Chemistry Council</u>, 576 F.3d 16, 35 (1st Cir. 2009). The concert of action theory requires proving two elements: (1) "the defendant and the other have an agreement to perform the act or achieve the particular result" and (2) "the defendant's own conduct must be tortious." <u>Payton v. Abbott Labs</u>, 512 F. Supp. 1031, 1035 (D. Mass. 1981). The aiding and abetting theory also requires proving two elements: (1) "the defendant must give substantial assistance or encouragement to the other party" and (2) "defendant must have an unlawful intent, i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions." <u>Id.</u>

The Court finds that the FAC sets forth factual allegations to render either theory plausible. At least with respect to the Executive Defendants, the alleged directives and communications from Wenig, Wymer, and Jones establish plausible inferences of agreement, tortious conduct, substantial assistance or

encouragement, and/or unlawful intent to support a civil conspiracy claim.

Defendants' motions to dismiss the civil conspiracy claim (Count XIII) are **DENIED**.

### 12. Ratification (Count XIV)

Finally, eBay moves to dismiss the ratification claim, which the Plaintiffs only assert against eBay.

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Doane v. Benefytt Techs., Inc., No. 22-10510, 2023 WL 2465628, at *11 (D. Mass. Mar. 10, 2023) (quoting Restatement (Third) Of Agency § 4.01(1)). "Where an agent lacks actual authority to agree on behalf of his principal, the principal may still be bound if the principal acquiesces in the agent's action, or fails promptly to disavow the unauthorized conduct after disclosure of material facts." Licata v. GGNSC Malden Dexter LLC, 2 N.E.3d 840, 847 (Mass. 2014) (quoting Linkage Corp. v. Trs. of Bos. Univ., 679 N.E.2d 191, 204 (Mass. 1997)). "Ratification must be based upon full knowledge of all material facts, subject, however, to the qualification that there may be ratification when one purposely shuts his eyes to means of information within his own possession and control, and ratifies an act deliberately." Id. (quoting Kidder v. Greenman, 187 N.E. 42, 48 (Mass. 1933)).

As alleged in the FAC, it is plausible that by failing to take disciplinary actions against the Executive Defendants, eBay "manifested assent to the agents' conduct on its behalf." Weinberg v. Grand Circle Travel, LLC, 891 F. Supp. 2d 228, 242 (D. Mass. 2012). The FAC states that eBay allowed Wenig and Jones to resign or retire from eBay, and that it also terminated Wymer without any punitive action, thus ratifying their behavior. FAC ¶¶ 561-63. The FAC also alleges that eBay hired Morgan Lewis to conduct a sham investigation and lobby the Government not to criminally charge eBay, instead of conducting an actual investigation. Id. ¶ 565. The FAC further alleges that eBay amended its bylaws to indemnify its executives and directors for legal expenses, judgments, fines, and settlements. Id. ¶ 570. Based on these collective allegations, there is a plausible claim that eBay ratified Defendants' alleged wrongdoing.

eBay contends that because eBay acted promptly in placing Security Team Defendants on administrative leave and launching an investigation, "no reasonable inference could be drawn that would suggest [eBay] ratified [the Individual Defendants'] conduct." Dkt. 208 at 25-26 (cleaned up) (quoting Petrell v. Shaw, 902 N.E.2d 401, 408 n.5 (Mass. 2009)). However, the FAC alleges that eBay may not have acted promptly in terminating certain employees. For example, the FAC alleges that eBay retained Jones as a high-level executive and permitted her to retire with full benefits

41

"approximately six months after the criminal charges were made public." FAC ¶ 562. eBay also allegedly promoted Cooke from Manager to Director following the termination of the other employees and only terminated him after his criminal charges became public. Id. ¶ 286. Drawing all reasonable inferences in Plaintiffs' favor, the Court finds that eBay's ratification of the Defendants' conduct may exist from the facts alleged.

eBay's motion to dismiss the ratification claim (Count XIV) is **DENIED**.

### C. Security Team Defendants' Motions to Dismiss

Five of the Security Team Defendants -- Baugh, Gilbert, Popp, Stockwell, and Cooke -- also move to dismiss various claims under Rule 12(b)(6). See Dkts. 193, 203, 210, 209, 217. For the reasons stated above, the Court **ALLOWS** their motions to dismiss with respect to the stalking and assault claims. The Court otherwise **DENIES** their motions to dismiss with respect to all other claims.

## III. Motion to Strike

Plaintiffs move to strike certain extraneous information contained within or attached to Wenig's, Wymer's, Jones', and PFC's memoranda in support of their motions to dismiss. See Dkt. 222. Because the Court did not rely on the identified statements, attachments, or exhibits in rendering this decision, Plaintiffs' motion to strike is **DENIED** as moot.

**<u>ORDER</u>**

The Court **<u>ALLOWS</u>** Defendants' motions to dismiss the stalking claim (Count II) and the assault claim (Count VIII). The Court **<u>ALLOWS</u>** eBay's motion to dismiss the negligent hiring claim (Count V). The Court **<u>ALLOWS</u>** without prejudice Steve Krystek's motion to dismiss for lack of personal jurisdiction. All other grounds for dismissal are **<u>DENIED</u>**.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge