UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| INA STEINER, DAVID STEINER, and STEINER ASSOCIATES, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Civil Action No. 21-CV-11181-PBS |
| v. | ) ) ) | Leave to File Granted July 25, 2024 |
| EBAY INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO PUNITIVE DAMAGES**

Jack W. Pirozzolo (BBO #564879)
Kathryn L. Alessi (BBO #651110)
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
Telephone: (617) 223-0300
Facsimile: (617) 223-0301
jpirozzolo@sidley.com
kalessi@sidley.com

Scott T. Nonaka (*pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1285
snonaka@sidley.com

Daniel J. Feith (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, D.C. 20005
Telephone: (202) 736-8511
dfeith@sidley.com

*Counsel for eBay Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................1

    I.     Plaintiffs Ignore Controlling Precedent ..................................................................1

    II.    Plaintiffs Fail to Address Other On-Point Massachusetts Authority ....................3

    III.   Plaintiffs' Argument Fails on Its Own Terms ........................................................6

CONCLUSION .....................................................................................................................9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alharbi v. TheBlaze, Inc.*,
   199 F. Supp. 3d 334 (D. Mass. 2016) .................................................................................3, 9

*Burleigh v. v. Alfa Laval, Inc.*,
   313 F. Supp. 3d 343 (D. Mass. 2018) ........................................................................................3

*Computer Sys. Eng'g, Inc. v. Qantel Corp.*,
   571 F. Supp. 1365 (D. Mass. 1983) ......................................................................................2, 9

*Computer Sys. Eng'g, Inc. v. Qantel Corp.*,
   740 F.2d 59 (1st Cir. 1984) ...................................................................................................1, 2

*Cruz v. Ford Motor Co.*,
   435 F. Supp. 2d 701 (W.D. Tenn. 2006) ...................................................................................5

*Danziger v. Ford Motor Co.*,
   402 F. Supp. 2d 236 (D.D.C. 2005) ..........................................................................................5

*Dean v. Raytheon Corp.*,
   399 F. Supp. 2d 27 (D. Mass. 2005) .........................................................................................4

*In re Future Motion, Inc. Prods. Liab. Litig.*,
   2024 WL 3262638 (N.D. Cal. July 1, 2024) ............................................................................5

*La Plante v. Am. Honda Motor Co.*,
   27 F.3d 731 (1st Cir. 1994) .......................................................................................................5

*Rodriguez v. Gen. Elec. Co.*,
   2021 WL 5626318 (Mass. Super. Ct. Nov. 23, 2021) ..........................................................4, 6

*Sanchez v. Boston Sci. Corp.*,
   38 F. Supp. 3d 727 (S.D. W. Va. 2014) ....................................................................................5

*Schulhof v. Ne. Cellulose, Inc.*
   545 F. Supp. 1200 (D. Mass. 1982) ..........................................................................................3

*Smith v. I-Flow Corp.*,
   753 F. Supp. 2d 744 (N.D. Ill. 2010) ........................................................................................6

*Talley v. Novartis Pharm. Corp.*,
   2011 WL 2559974 (W.D.N.C. June 28, 2011) .........................................................................5

*Thelen v. Somatics, LLC*,
   2021 WL 765580 (M.D. Fla. Feb. 26, 2021) ............................................................................. 6

*Value Partners S.A. v. Bain & Co.*,
   245 F. Supp. 2d 269 (D. Mass. 2003) ................................................................................. 6, 9

*Vertex Surgical, Inc. v. Paradigm Biodevices, Inc.*,
   648 F. Supp. 2d 226 (D. Mass. 2009) ..................................................................................... 2

**Other Authorities**

Restatement (Second) of Conflict of Laws § 6 ............................................................................. 2

Restatement (Second) of Conflict of Laws § 145 ..................................................................... 5, 8

# INTRODUCTION

Plaintiffs argue that California law governs the availability of punitive damages because the wrongful conduct in this case supposedly occurred there and "California has an obvious interest in regulating the conduct of corporations and individuals from within its territory." Dkt. 430-1 ("Pls.' Mem.") at 2. This argument fails at every turn. *First*, it ignores controlling First Circuit precedent holding, in circumstances virtually identical to those here, that Massachusetts' interests in having its law govern punitive damages outweigh California's interests. *Second*, it also ignores that Massachusetts cases uniformly demonstrate that the place where wrongful conduct occurred does not dictate choice of law for punitive damages, and that factors such as the place of the injury and the plaintiffs' domicile may also be significant. And *third*, Plaintiffs' argument fails even on its own terms because, as Plaintiffs themselves have repeatedly acknowledged, a substantial part of the wrongful conduct occurred in Massachusetts. Each of these reasons independently requires denying Plaintiffs summary judgment and applying Massachusetts law to punitive damages.

# ARGUMENT

## I. Plaintiffs Ignore Controlling Precedent.

The fundamental problem with Plaintiffs' position is that it is foreclosed by controlling First Circuit precedent, *see* Dkt. 432 ("eBay Mem.") at 4–5—a point Plaintiffs' brief altogether ignores. Indeed, Plaintiffs' omission of any discussion of *Computer Systems Engineering, Inc. v. Qantel Corp.*, 740 F.2d 59 (1st Cir. 1984), is especially curious given that eBay referenced the case at the July 18 status conference, *see* Tr. of July 18, 2024 Hr'g at 10:20-23, and given that Plaintiffs clearly have searched far and wide for depecage cases and cite district court opinions from such jurisdictions as Nebraska, *see* Pls.' Mem. at 13 (citing *Fanselow v. Rice*, 213 F. Supp. 2d 1077 (D. Neb. 2002)); Washington, *see id.* at 11 n.7 (citing *Bryant v. Wyeth*, 879 F. Supp. 2d

1

1214 (W.D. Wash. 2012)); and Florida, *see id.* at 15 (citing *Thelen v. Somatics, LLC*, 2021 WL 765580 (M.D. Fla. Feb. 26, 2021)). Yet Plaintiffs never mention the controlling First Circuit precedent that addresses the identical issue raised here in the virtually identical circumstances of a Massachusetts plaintiff, California defendant, and misconduct occurring in both Massachusetts and California. *See Computer Sys.*, 740 F.2d at 70; *see also Vertex Surgical, Inc. v. Paradigm Biodevices, Inc.*, 648 F. Supp. 2d 226, 231 n.3 (D. Mass. 2009) (noting that "a federal district court is bound by First Circuit precedent" on state-law issues "unless and until the Supreme Judicial Court has addressed a pertinent state law issue").

Plaintiffs' failure is particularly inexplicable because *Computer Systems* squarely rejects Plaintiffs' core assertion that Massachusetts "lacks any identifiable interest" here. Pls.' Mem. at 2. In adopting the district court's analysis in full, the First Circuit held that "Massachusetts has a significant interest in the uniformity and predictability of its law" and in avoiding the "upset [to] the legislative balance achieved by Massachusetts precedents and statutes regarding punitive damages" that would occur from "[b]ifurcating the issues of punitive and compensatory damages" and "discriminat[ing] against a class of nonresident defendants." *Computer Sys. Eng'g, Inc. v. Qantel Corp.*, 571 F. Supp. 1365, 1370 (D. Mass. 1983), *aff'd*, 740 F.2d at 70; *see also* Restatement (Second) of Conflict of Laws § 6(2) (identifying "the needs of the interstate … system[]," "relevant policies of the forum," and "certainty, predictability and uniformity of result" as "factors relevant to the choice of the applicable rule of law"). Moreover, *Computer Systems* squarely held that these interests outweigh the very interest Plaintiffs invoke here: the "specific interest" of California in deterring serious misconduct—in that case, fraud—"by its domiciliary corporations." *Computer Sys.*, 571 F. Supp. at 1369; *see* Pls.' Mem. at 2 (asserting that California "has a significant interest

2

in punishing and deterring malicious, oppressive, and fraudulent conduct"). *Computer Systems* thus dictates the same result here.

## II.   Plaintiffs Fail to Address Other On-Point Massachusetts Authority.

*Computer Systems* forecloses Plaintiffs' position and obviates the need for a further choice-of-law analysis. But even if *Computer Systems* did not dictate the result here, Plaintiffs' brief also ignores the fact that Massachusetts cases addressing choice of law for punitive damages uniformly refute Plaintiffs' argument that the place where the wrongful conduct occurred is controlling. *See* Pls.' Mem. at 9–14. Instead, these cases demonstrate that in determining choice of law for punitive damages, such factors as the place of injury and the plaintiff's domicile may be significant as well. *Contra* Pls.' Mem. at 14 (asserting that with respect to punitive damages, "a plaintiff's domicile is irrelevant").

For example, in *Schulhof v. Northeast Cellulose, Inc.*, the court noted "the preference the Second Restatement and Massachusetts law assign to the law of the place of the injury" in deciding which state's law governs punitive damages. 545 F. Supp. 1200, 1206 (D. Mass. 1982). Similarly, in *Alharbi v. TheBlaze, Inc.*, this Court held that Massachusetts rather than Texas law governed punitive damages, notwithstanding that wrongful conduct occurred in Texas, because the plaintiff was domiciled (and thus injured) in Massachusetts when the defamatory statements at issue were published, those statements concerned events in Massachusetts, and the plaintiff sued in Massachusetts. *See* 199 F. Supp. 3d 334, 361 (D. Mass. 2016). Likewise, in *Burleigh v. Alfa Laval, Inc.*, the court held that Maine's wrongful death statute, which capped punitive damages, applied instead of Massachusetts' statute, which did not, because the plaintiff's "lifelong domicile and residence in Maine . . . carry greater weight when grouped with the place of injury in Maine than [the corporate defendant's] wrongful conduct in Massachusetts when grouped with its principal place of

business in that state." 313 F. Supp. 3d 343, 354 (D. Mass. 2018). Plaintiffs do not dispute that the other factors highlighted by these various cases—Plaintiffs' domicile, the focus of the wrongful conduct, and the place of the injury—favor Massachusetts law here.

Even the *one* relevant Massachusetts case Plaintiffs cite—this Court's decision in *Dean v. Raytheon Corp.*, 399 F. Supp. 2d 27 (D. Mass. 2005)—does not adopt their position. In *Dean*, contrary to Plaintiffs' narrow focus on the location of the wrongful conduct, the Court noted that "[m]any courts have held that the state *of the injury* and of the alleged wrongful conduct has a more significant relationship to the issue of punitive damages than does the state of plaintiff's domicile." *Id.* at 33 (emphasis added). Consistent with that approach, the Court in *Dean* held that Massachusetts law applied not simply because wrongful conduct occurred in Massachusetts, *contra* Pls.' Mem. at 10, but because virtually *every factor* except the plaintiff's domicile favored application of Massachusetts law over the Texas law the plaintiff favored. *See id.* at 32 ("In this case, the state of Massachusetts was the location of [the defendant's] local base of operation (albeit not its headquarters), the alleged wrongful conduct of maintenance and repair, the aircraft crash, [the decedent's] injuries and death, [the decedent's] place of employment, and the airport from which the aircraft departed on the day of the accident. Moreover, [the decedent's] survivors are being compensated through the workers' compensation system in Massachusetts."). It also bears noting that in *Dean*, as in every one of the Massachusetts cases cited above, the court applied the same jurisdiction's law to punitive damages as applied to liability and compensatory damages. Indeed, Plaintiffs do not cite a *single* Massachusetts case applying a different state's law to punitive damages from that governing liability and compensatory damages.

The other Massachusetts and First Circuit authorities Plaintiffs do cite shed little light on the question at hand. *Rodriguez v. General Electric Co.*, 2021 WL 5626318 (Mass. Super. Ct. Nov.

4

23, 2021), addressed whether Mexican or Massachusetts law governed damages in general, not punitive damages specifically. *La Plante v. American Honda Motor Co.*, 27 F.3d 731 (1st Cir. 1994), addressed the law governing compensatory, not punitive, damages and decided the issue under the choice-of-law principles of Rhode Island, not Massachusetts. And despite Plaintiffs' representation that *Sanchez v. Boston Scientific Corporation*, 38 F. Supp. 3d 727 (S.D. W. Va. 2014) supports their argument "under Massachusetts law," Pls.' Mem. at 13, *Sanchez* is a West Virginia case that decided choice of law under California's "governmental interest approach," not Massachusetts' functional approach. *Sanchez*, 38 F. Supp. 3d. at 738.

Given the lack of support for their position in cases decided under Massachusetts' choice-of-law framework, Plaintiffs rely principally on non-Massachusetts, products liability cases to argue for focusing on the place of the wrongful conduct. *See, e.g.*, *Talley v. Novartis Pharm. Corp.*, 2011 WL 2559974 (W.D.N.C. June 28, 2011); *In re Future Motion, Inc. Prods. Liab. Litig.*, 2024 WL 3262638 (N.D. Cal. July 1, 2024). Such cases, however, are inapposite in two respects. First, in products liability cases, the place of injury is usually fortuitous. *See Danziger v. Ford Motor Co.*, 402 F. Supp. 2d 236, 240 (D.D.C. 2005) ("Nebraska is [] where the injury occurred, but . . . this fact is of minimal importance in a 'fortuitous crash' case."); *Cruz v. Ford Motor Co.*, 435 F. Supp. 2d 701, 707 (W.D. Tenn. 2006) ("Defendant distributed the [Ford] Explorer in Tennessee and had little reason to foresee that subsequent owners would drive the vehicle in Mexico," the place of the injury); *La Plante*, 27 F.3d at 742 (stating that the place of injury in Colorado from an allegedly defective ATV was "pure chance"). It is well-established that "when the place of injury . . . is fortuitous, . . . the place where the defendant's conduct occurred will usually be given particular weight in determining the state of the applicable law." Restatement (Second) of Conflict of Laws § 145 cmt. e. Here, by contrast, there is no question that the harassment campaign against

5

the Steiners was intentionally directed at them in Massachusetts. Thus the fact that injury occurred there was not mere happenstance and weighs more heavily in the choice-of-law analysis.

Second, the cases Plaintiffs cite predominantly involve wrongful conduct in only one jurisdiction. *See, e.g.*, *Thelen*, 2021 WL 765580, at *4 ("the actions for which Plaintiff seeks punitive damages—marketing, mislabeling, and distributing the Thymatron device—presumably occurred in Somatics' headquarters in Florida"); *Smith v. I-Flow Corp.*, 753 F. Supp. 2d 744, 748 (N.D. Ill. 2010) (conduct that caused the injury, including "marketing and distribution of [defendant's] pain pumps," occurred in California, where defendant is headquartered). The same is true of such cases as *Rodriguez* that give significant weight to the place of wrongful conduct. *See Rodriguez*, 2021 WL 5626318, at *3 (finding that "the fact that the plaintiffs' claims are almost entirely based on conduct that occurred in Massachusetts elevates the importance" of the place where the wrongful conduct occurred over the place where the injury occurred and the parties' domicile). By contrast, as explained below, the wrongful conduct here occurred in both Massachusetts and California, strengthening Massachusetts' interests in having its laws apply. *See Value Partners S.A. v. Bain & Co.*, 245 F. Supp. 2d 269, 277 (D. Mass. 2003) (observing, in a case involving a Brazilian plaintiff, Massachusetts defendant, and wrongful conduct in both jurisdictions, that Brazil has a "direct interest in regulating the behavior of foreign companies within Brazil, particularly when Brazilian businesses and Brazilian workers are involved").

### III. Plaintiffs' Argument Fails on Its Own Terms.

Finally, even if Plaintiffs were correct that the place of the wrongful conduct dictates the applicable law, their argument that California law applies here still would fail. To be sure, one could be forgiven after reading Plaintiffs' brief for believing that virtually nothing of note in this case happened in Massachusetts. The brief makes just *two* passing references to conduct in

6

Massachusetts, couching both in verbiage meant to play up California. *See* Pls.' Mem. at 3 (stating that "[t]he directions to travel from California to Massachusetts to commit harassing and tortious acts against Plaintiffs occurred in California" and that the Criminal Defendants "met in California to plan the trip to Boston to surveil the Plaintiffs"). Yet the truth is far different. As this Court explained in holding that Massachusetts law applied to the issue of stalking, "the majority of the conduct causing the injury"—namely, the "stalking of the Steiners and their residence in a rented black van and the surveillance, tailing and stalking of the Steiners, both by vehicle and on foot"—"occurred in Massachusetts." Dkt. 309 at 23 (cleaned up).

Even Plaintiffs themselves have previously said as much. Their amended complaint acknowledges that "a substantial part of the events and omissions giving rise to the claims occurred in Massachusetts," Am. Compl. ¶ 22, and their original complaint stated that Defendants' misconduct—including "sending disturbing packages to Plaintiffs' home" and "conducting surveillance on the Plaintiffs while at their home and in their community in Natick"—"occurred primarily and substantially in the Commonwealth of Massachusetts because their wrongful conduct was directed toward Plaintiffs who are residents of Massachusetts," Compl. ¶¶ 346–347. Indeed, it is telling that Plaintiffs have never attempted to argue that California law governs liability for any claim except stalking. *See* Dkt. 419 ¶ 1 (joint motion acknowledging that "Massachusetts law governs Defendants' liability and the issue of compensatory damages").

Furthermore, the California conduct that Plaintiffs emphasize here merely rehashes the conduct they claimed justified their California stalking claim. Plaintiffs stress that the direction and planning of the harassment campaign occurred in California and that the Criminal Defendants

sent threatening messages and packages from California.[1] *See* Pls.' Mem. at 3–4. This is the same conduct the Court acknowledged in its ruling dismissing the stalking claim. As the Court explained, "online messages may have been sent from California," and "planning and facilitating occurr[ed] there as well." Dkt. 309 at 23. Yet the Court still found that notwithstanding that California conduct, "the majority of the conduct causing" Plaintiffs' stalking injury, including the "most disturbing act of surveilling and stalking the Steiners in their home and while driving," "occurred in Massachusetts." *Id.* That reasoning is equally applicable here. Even after taking into account the California conduct Plaintiffs now highlight, the Court has concluded that the majority of the wrongful conduct occurred in Massachusetts. Plaintiffs offer no reason the Court should reconsider that conclusion.

Perhaps recognizing this, Plaintiffs mischaracterize the Court's decision dismissing the stalking claim as applying the presumption that "the law of the place where the injury occurred . . . applies." Pls.' Mem. at 17. But as the foregoing discussion makes clear, that is false. The Court never invoked such a presumption, and its analysis emphasized *both* "the place where the injury occurred" and "the place where the conduct causing the injury occurred," finding *both* "factors

---

[1] Plaintiffs pad their list of California contacts by listing as four separate items the basic point that eBay's principal place of business is in California and most Defendants were employed by eBay there, *see* Pls.' Mem. at 3 (items 1–4), and by listing three items related to efforts by the Criminal Defendants to cover up their misconduct, *see id.* at 4 (items 12–14). This Court has already considered the Defendants' domicile and found it "not significant enough to overcome" the place of wrongful conduct and place of injury factors, "which favor Massachusetts." Dkt. 309 at 23–24. The Criminal Defendants' coverup efforts, meanwhile, are irrelevant to the choice of law inquiry, which focuses not on wrongful conduct generally, but on the "place where the conduct *causing the injury* occurred." Restatement (Second) of Conflict of Laws § 145(2)(b) (emphasis added). Plaintiffs also provide no authority that any expectation by the Criminal Defendants that California law would govern *employment* disputes with eBay outweighs Plaintiffs' own expectation that Massachusetts law would govern wrongful conduct in Massachusetts causing them injury there. *See* Pls.' Mem. at 2, 4, 17.

favor applying Massachusetts law." Dkt. 309 at 22–23. The same conclusion, for the same reasons, applies here.

Finally, the fact that some conduct occurred in California does not distinguish this case from *Computer Systems*, *Alharbi*, or *Value Partners*. In each case, wrongful conduct occurred in both the jurisdiction held to govern liability and compensatory damages, and in the jurisdiction favored by the plaintiffs to govern punitive damages. *See Computer Sys.*, 571 F. Supp. at 1369 ("[T]he place where the defendant made the representations was divided nearly evenly between Massachusetts and California."); *Alharbi*, 199 F. Supp. 3d at 360 (noting that virtually all "the defendants' allegedly wrongful conduct occurred in Texas," the jurisdiction plaintiff argued should govern punitive damages); *Value Partners*, 245 F. Supp. 2d at 276 (noting that wrongful conduct in Brazil "at least counterbalance, and perhaps outweigh, the activities that took place in Boston"). In all three cases, the Court held that the law of the jurisdiction governing liability and compensatory damages should govern punitive damages as well.

## CONCLUSION

For the reasons set forth here and in eBay's opening brief, the Court should grant eBay's partial motion for summary judgment and hold that Massachusetts law governs the availability of punitive damages in this case.

Dated: August 2, 2024

*/s/ Jack W. Pirozzolo*
Jack W. Pirozzolo (BBO #564879)
Kathryn L. Alessi (BBO #651110)
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
Telephone: (617) 223-0300
Facsimile: (617) 223-0301
jpirozzolo@sidley.com
kalessi@sidley.com

Scott T. Nonaka (*pro hac vice*)
SIDLEY AUSTIN LLP

9

555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1285
snonaka@sidley.com

Daniel J. Feith (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, D.C. 20005
Telephone: (202) 736-8511
dfeith@sidley.com

*Counsel for eBay Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 2, 2024, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: August 2, 2024

                                                                   /s/ *Jack W. Pirozzolo*
                                                                   Jack W. Pirozzolo