UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INA STEINER, DAVID STEINER, and STEINER ASSOCIATES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> EBAY INC., et al., <br><br> Defendants. | Civil Action No. 21-CV-11181-PBS <br><br> **ORAL ARGUMENT REQUESTED** |

### DEFENDANT EBAY INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL DISCLOSURE OF THE IDENTITIES OF PLAINTIFFS' SOURCES

Plaintiffs are seeking more than $12 million in economic damages on the ground that Defendants' conduct allegedly damaged Plaintiffs' ecommerce trade publication by making "would-be sources" fearful of providing them information and thereby stifling their ability to produce articles. At the same time, Plaintiffs have refused to disclose any information about those would-be sources by invoking the reporter's privilege. Defendant eBay Inc. ("eBay") brings this motion to compel because Plaintiffs are improperly using the reporter's privilege as both a sword and a shield. Plaintiffs' wholesale refusal to provide any information in response to Defendants' discovery into those sources' identities and history of providing information to Plaintiffs improperly prevents Defendants from investigating Plaintiffs' damages claims.

Plaintiffs cannot have it both ways. If they wish to pursue claims that put at issue whether and to what extent sources stopped providing information to Plaintiffs in response to the Natick events, they cannot shield information about those sources behind a claim of privilege.

1

Alternatively, if Plaintiffs wish to protect the confidentiality of their sources behind a claim of privilege, they cannot pursue theories of liability that put the identities of those sources at issue.

To be clear, eBay's request for relief is limited. eBay seeks the identities of *only* those sources Plaintiffs allege stopped working with them as a result of the Natick events, not all of Plaintiffs sources. And although the highest level of protection under the Amended Protective Order is "Attorneys' Eyes Only" (Dkt. 443), eBay would be willing to further limit disclosure of information about Plaintiffs' sources to "*Outside* Attorneys' Eyes Only" in order to mitigate Plaintiffs' concerns.

For this and the other reasons set forth below, the Court should grant eBay's motion to compel and either order Plaintiffs to provide all information and unredacted documents regarding sources Plaintiffs alleged stopped working with them as a result of the Natick events, which were withheld pursuant to their claim of reporter's privilege or, if Plaintiffs wish to maintain privilege, preclude them from seeking damages based on any harm flowing from the alleged loss of these "would-be sources."

## BACKGROUND

Plaintiffs own and operate an online ecommerce publication called EcommerceBytes. Am. Compl. ¶¶ 23-24. They allege in their Amended Complaint that Defendants' conduct caused Plaintiffs' "would-be sources" to "avoid further dealings with the Steiners for fear that they will become eBay's next victims," *id.* ¶ 17, and that, "[w]ithout sources and new content, EcommerceBytes is unable to fully provide new material and content for its readership and subscribers," *id.* ¶ 381. Plaintiffs further allege that "[b]ecause of the loss of sources, and, in turn, website content," website traffic has decreased, which "has caused advertisers to stop contracting with EcommerceBytes, resulting in a loss of revenue." *Id.* ¶ 384. Based on this alleged harm,

Plaintiffs seek approximately $2.7 million in lost profits from EcommerceBytes and $10 million in damage to EcommerceBytes' value and goodwill.[1] *See* Plaintiffs' July 30, 2024 Supplemental Initial Disclosure at 87.

Given Plaintiffs' allegations, Defendants sought discovery into the identities of Plaintiffs' sources.[2] In Interrogatory No. 5 to Plaintiff Steiner Associates, LLC ("Steiner Associates"), Defendants requested:

> For all "would-be sources" that You contend no longer "want to work with the Steiners for fear that they could also be terrorized by eBay," as alleged in paragraph 381 of the Amended Complaint, provide the names, last known contact information, Date(s) of contact, the Date that each stopped Communicating with You, a general summary of the topics addressed, and a list of any Articles for which they were previously a source.

Defendants' Collective First Set of Interrogatories to Plaintiff Steiner Associates, Interrogatory No. 5 at 7. Similarly, in Request for Production No. 77 to Steiner Associates, Defendants requested, in relevant part, "All Documents and Communications Related to any 'would-be sources and customers' as the term is used in paragraph 17 of the Amended Complaint," including "all Documents and Communications demonstrating that said sources have 'been reluctant to speak' to Plaintiffs . . . as alleged in paragraph 381 of the Amended Complaint." Defendants' Collective First Set of Requests for Production of Documents to Plaintiff Steiner Associates, Request No. 77 at 26-27; *see also* Defendants' Collective First Set of Requests for Production of Documents to Plaintiff Ina Steiner and to Plaintiff David Steiner, Request No. 78 at 26-27. Defendants sought this discovery to determine whether any sources indeed had ceased

---

[1] In addition to these economic damages, Plaintiffs seek substantial non-economic damages.

[2] Pursuant to the Court's scheduling order, Dkt. 275, the relevant interrogatories and requests for production were propounded on behalf of all Defendants collectively.

communicating with Plaintiffs in response to the Natick events; if so, how many had; and what effect, if any, this had on Plaintiffs' ability to produce new content and on Plaintiffs' revenues.

Plaintiffs, however, have refused to disclose the identities of their sources or other relevant information in response to these requests, invoking a "source" or "reporter's" privilege.[3] Steiner Associates refused to produce any information responsive to Interrogatory No. 5, "object[ing] to this Request as it is covered by the source or reporter's privilege, and would expose the identity of sources and would-be sources." Steiner Associates' Responses and Objections to Defendants' Collective First Set of Interrogatories, Response to Interrogatory No. 5 at 12 (Ex. A). Through its corporate representative, Steiner Associates similarly objected to providing any information about Plaintiffs' sources at its Rule 30(b)(6) deposition. *See* Transcript of Rule 30(b)(6) Deposition of Steiner Associates by and through Ina Steiner at 145 (Ex. B). And in their written responses to Defendants' requests for production, Plaintiffs objected to the requests "as it is covered by the reporter's privilege, and would expose the identity of sources and would-be sources." *See* Ina's and David's Responses and Objections to Defendants' Collective First Set of Requests for Production of Documents, Response to Request No. 78 at 56 (Exs. C, D); Steiner Associates' Responses and Objections to Defendants' Collective First Set of Requests for Production of Documents, Response to Request No. 77 at 53 (Ex. E).

eBay promptly challenged Plaintiffs' assertion of the reporter's privilege in deficiency letters dated May 23, 2024 and July 3, 2024, stating that "Plaintiffs have waived any applicable privilege by putting the [material/information] sought in the [Requests/Interrogatories] at issue in this case." Exs. F at 2, G at 2. Nevertheless, Plaintiffs have continued to withhold discovery on the

---

[3] Plaintiffs have indicated that they have used the terms "source privilege" and "reporter's privilege" interchangeably. *See* Plaintiffs' August 28, 2024 Letter to eBay at 1 n.1 (Ex. I).

basis of this privilege. They have produced 307 documents with the identities of the sources redacted, listing those documents as protected by the "source privilege" in their privilege logs. And despite supplementing its interrogatory responses on July 22, 2024, Steiner Associates has to date provided no information responsive to Interrogatory No. 5.

On August 23, 2024, eBay sent Plaintiffs another deficiency letter focused exclusively on the reporter's privilege issue. *See* Ex. H. Plaintiffs responded five days later, maintaining their assertion of the privilege. *See* Ex. I. On September 5, 2024, the Court held a telephonic conference on this issue and ordered briefing on this motion. *See* Dkt. 444.

## LEGAL STANDARD

A party may take discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Plaintiffs, "as the party claiming privilege or protection, 'bear[] the burden of establishing that it applies to the communications at issue and that it has not been waived.'" *Roy v. FedEx Ground Package Sys., Inc.*, 2023 WL 7116755, at *2 (D. Mass. Oct. 27, 2023) (quoting *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003)).

## ARGUMENT

Plaintiffs are free to preserve the confidentiality of their sources, and they are free to pursue damages based on the alleged loss of those sources as a result of the Natick events. But Plaintiffs are not free to do both. Doing both, as Plaintiffs seek to do here, is a textbook example of using privilege as a sword and a shield by putting at issue the very information about their sources that Plaintiffs seek to protect from disclosure. *See infra* Part I. And even apart from that at-issue waiver, Plaintiffs' attempt to shield information about their sources from disclosure fails at both steps of the balancing test Massachusetts courts use to evaluate reporters' claims of source confidentiality.

*See infra* Part II. Plaintiffs thus must choose whether to seek damages based on allegedly lost sources and disclose the information needed to test that theory, or withhold that information and forego such damages.

### I. Plaintiffs' Have Waived the Reporter's Privilege by Putting Their Sources At Issue In This Litigation

Although no reporter's privilege applies here in the first place, *see infra* Part II, the simpler ground for resolving this motion is that even assuming the reporter's privilege did apply, Plaintiffs have waived it by putting information about their sources, including the sources' identities, at issue in this litigation. It is axiomatic that a party waives privilege when it places the privileged information it seeks to protect at issue—*i.e.*, when it "injects certain claims or defenses into the case which implicate" the privileged information. *Bacchi v. Mass. Mut. Life Ins. Co.*, 110 F. Supp. 3d 270, 275 (D. Mass. 2015); *see also Columbia Data Prods., Inc. v. Autonomy Corp.*, 2012 WL 6212898, at *16 (D. Mass. Dec. 12, 2012) ("Waiver may be found when a party takes a position in a case that places at issue the very information sought to be protected from disclosure." (cleaned up)). The purpose of this rule is to prevent the unfairness of a party using a privilege as both a sword and a shield. *See United States v. Chin*, 2024 WL 2883366, at *2 (D. Mass. June 7, 2024) ("Privilege cannot at once be used as a shield and a sword. The privilege may be expressly or implicitly waived where a party asserting the privilege places protected information in issue for personal benefit through some affirmative act, because allowing the privilege to protect against disclosure of that information would be unfair to the opposing party." (cleaned up)). This principle applies in the context of the reporter's privilege. *See Anderson v. Nixon*, 444 F. Supp. 1195, 1199-1200 (D.D.C. 1978) ("[T]he newsman waives his qualified privilege of silence where his sources have information that goes to the heart of the defense."); *Driscoll v. Morris*, 111 F.R.D. 459, 464 (D. Conn. 1986) ("Having placed the confidentiality of his sources at issue, the plaintiff reporter

is precluded from asserting any first amendment reporter's privilege which he might otherwise have had in this case.").

Here, Plaintiffs have put their "would-be sources" at issue by repeatedly alleging that Defendants' conduct financially harmed them by causing those sources to stop working with them. *See* Am. Compl. ¶¶ 17, 381, 384. Indeed, Plaintiffs expressly attribute the alleged economic damage to EcommerceBytes—damage they claim exceeds $12 million, *see supra* at 2—to the alleged loss of would-be sources following the Natick events. *See* Am. Compl. ¶ 384.

eBay is thus entitled to discovery to test whether that theory of causation is true. Yet, in response to Defendants' discovery requests on this topic, Plaintiffs have consistently invoked the reporter's privilege to shield any relevant information from discovery, refusing entirely to answer an interrogatory seeking relevant information about would-be sources and redacting all identifying information in their document productions. *See* Ex. A, Response to Interrogatory No. 5 at 12.

Courts have consistently rejected assertions of the reporter's privilege by reporter-plaintiffs in similar circumstances. In *Anderson v. Nixon*, the plaintiff, a widely syndicated columnist, alleged that certain former high-ranking government officials conspired to harass him and "to retaliate against his sources" because of his writings, and that, "[a]s a result of this conspiracy . . . his ability to gather and report news was injured by the reluctance of sources to provide information." 444 F. Supp. at 1197, 1199. The defendants accordingly sought the identities of those sources and, when the plaintiff refused to reveal their names, moved to compel. The court granted the defendants' motion, stating:

> Here the newsman is not being obliged to disclose his sources. Plaintiff's pledge of confidentiality would have remained unchallenged had he not invoked the aid of the Court seeking compensatory and punitive damages based on his claim of conspiracy. Plaintiff is attempting to use the First Amendment simultaneously as a sword and a shield. He believes he was wronged by a conspiracy that sought to retaliate against his sources and to undermine his reliability and professional

> standing before the public because what he said was unpopular with the conspirators. But when those he accuses seek to defend by attempting to discover who his sources were, so that they may find out what the sources knew, their version of what they told him, and how they were hurt, plaintiff says this is off limits a forbidden area of inquiry. He cannot have it both ways. Plaintiff is not a bystander in the process but a principal. He cannot ask for justice and deny it to those he accuses.

*Id.* at 1199. The court held that the plaintiff had waived the reporter's privilege and concluded that "[w]here the interests of a newsman in preserving the anonymity of his sources clash with his responsibilities as a plaintiff, and where the information sought to be protected goes to the heart of the defense, the privilege must give way." *Id.* at 1200.

The court reached a similar conclusion in *Driscoll v. Morris*. There, the plaintiff, a *Hartford Courant* reporter, sought damages for defamation and intentional and negligent infliction of emotional distress, claiming that defendant's wrongful conduct affected his relationship with and his ability to utilize confidential sources. 111 F.R.D. at 460. The defendant moved to compel after the plaintiff invoked the reporter's privilege to avoid disclosing information about his sources. The court held that the privilege was waived: "By claiming that the defendant's wrongful conduct affected his relationship with and his ability to utilize past, present, and future confidential sources, which in turn has had a negative impact on his ability to function as an investigative reporter, the plaintiff has placed at issue the identity of his sources. By so doing, he has waived the privilege against disclosure." *Id.* at 463; *see also Lousteau v. City of Canton*, 2013 WL 1827738, at *2 (S.D. Miss. Apr. 30, 2013) ("[W]here a news reporter chooses to file a lawsuit about which his sources may have information that goes to the heart of a claim or defense, he waives his privilege to keep those sources confidential.").

The result here should be no different. Plaintiffs have put their sources at issue by alleging that as a result of Defendants' conduct, their journalistic sources have stopped working with them,

stifling their reporting and ability to create new content and ultimately causing severe economic damage to their business. *See* Am. Compl. ¶¶ 17, 381, 384. If Plaintiffs wish to pursue this theory of causation, eBay must be able to discover who these sources are, and when and to what extent they provided Plaintiffs with information in the past, in order to test Plaintiffs' claims and ascertain, among other things, whether those sources stopped working with the Steiners after the criminal conduct and whether they did so because of the criminal conduct. *See Anderson*, 444 F. Supp. at 1199 ("Plaintiff's version of what he was told must be tested against the recollection of others with knowledge of the disclosure, including the source itself."). The information from these sources that Plaintiffs seek to protect "goes to the heart" of Plaintiffs' claims for damages and eBay's potential defenses to those claims, and thus the "privilege must give way." *Id.* at 1200.

## II.     Massachusetts' Balancing Test Favors Disclosure of Plaintiffs' Sources

Plaintiffs' privilege claim also fails because Massachusetts's common-law balancing test favors disclosure and any reporter's privilege is therefore inapplicable in the first place.[4] Although Massachusetts does not recognize a "constitutional, statutory, or common-law privilege protecting a news reporter against . . . disclosure," *Wojcik v. Bos. Herald, Inc.*, 803 N.E.2d 1261, 1264 n.9 (Mass. App. Ct. 2004), the Supreme Judicial Court has established a common-law balancing test to afford reporters such protection. The balancing test has two steps. First, "a party seeking to avoid disclosure must . . . make some showing that the asserted damage to the free flow of information is more than speculative or theoretical." *Ayash v. Dana-Farber Cancer Inst.*, 706 N.E.2d 316, 319 (Mass. App. Ct. 1999) (cleaned up). Second, if the threshold showing is made,

---

[4] Under Federal Rule of Evidence 501, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Here, all claims and defenses will be decided using Massachusetts law, *see* Dkt. 419 ¶1, and thus Massachusetts' law on the reporter's privilege applies.

9

the court will balance "(a) the public interest in having every person's evidence available against (b) the public interest in the free flow of information." *Matter of John Doe Grand Jury Investigation*, 574 N.E.2d 373, 375 (Mass. 1991). In conducting this analysis, courts consider, among other factors, the importance of the information to the case, *see id.* at 377; the ability of the party seeking disclosure to identify the confidential source through other means, *see Summit Tech., Inc. v. Healthcare Cap. Grp., Inc.*, 141 F.R.D. 381, 385 (D. Mass. 1992); and "the investigative purpose of and public interest in [a reporter's] use of confidential sources," *Sinnott v. Bos. Ret. Bd.*, 524 N.E.2d 100, 104 (Mass. 1988).

Here, Plaintiffs have not established the required threshold showing of damage to the free flow of information. To make this showing, Plaintiffs must demonstrate that "the reporter would not have received the information she obtained if she had not promised anonymity to her sources and the reporter's future news-gathering ability, both generally and in the case being investigated would be impaired if she violated her promises." *Ayash*, 706 N.E.2d at 322 (cleaned up) (quoting *Matter of John Doe Grand Jury Investigation*, 574 N.E.2d at 376). But Plaintiffs have identified only scant evidence that *any* sources ever requested anonymity, let alone made it a condition of providing information. *See* Ex. J. And Plaintiffs have never even attempted to make any such showing as to *each* of the would-be sources whose identities they seek to keep confidential. The little evidence Plaintiffs provide from the five years since the Natick events is simply insufficient to show anything more than "speculative or theoretical" harm to Plaintiffs' ability to gather information.

Furthermore, even if Plaintiffs can clear this initial hurdle, the balancing test decidedly tilts in favor of disclosure. As discussed above, the identities of Plaintiffs' sources are key to eBay's ability to test Plaintiffs' allegations that the Natick events caused those sources to stop working

10

with Plaintiffs and thereby damaged Plaintiffs' business. *See, e.g.*, Am. Compl. ¶¶ 17, 381, 384. The balance favors eBay all the more where Plaintiffs' allegations directly put those sources at issue. *Cf. Anderson*, 444 F. Supp. at 1199 ("Where, as here, it is the newsman himself who has provoked the legal controversy about which his confidential sources may have relevant information, any 'balancing' seems most unrealistic."). And eBay has no alternative means to learn the identity of Plaintiffs' "would-be sources" except through discovery provided by Plaintiffs. These factors far outweigh any risks to the public interest in the free flow of information, both given the minimal evidence that Plaintiffs' sources provided them information on the condition of anonymity and given the ability to limit the extent of disclosure of sources' identities through special designation of that information as "*Outside* Attorneys' Eyes Only."

This Court's decision in *Alharbi v. TheBlaze, Inc.*, 199 F. Supp. 3d 334 (D. Mass. 2016), is instructive.[5] There, the plaintiff brought a defamation claim against Glenn Beck and the owners and distributors of his show for falsely identifying him as a participant in the 2013 Boston Marathon bombing. *See id.* at 340. The defendants claimed to have received this information from confidential sources. *See id.* The plaintiff argued that he needed to know the identity of the defendants' confidential sources because the defendants' arguments that the statements at issue were true and that they did not act negligently or maliciously "hinge[d] on whether the confidential sources confirmed [the plaintiff's] role in funding the Boston Marathon bombing," and "the only way to verify or confirm what the confidential sources told the defendants would be to speak with

---

[5] Although the threshold showing required in the First Circuit analysis governing the reporter's privilege differs from that required under Massachusetts law, the balancing test is almost identical, requiring the court to "place those factors that relate to the movant's need for the information on one pan of the scales and those that reflect the objector's interest in confidentiality and the potential injury to the free flow of information that disclosure portends on the opposite pan." *Alharbi*, 199 F. Supp. 3d at 348 (citation omitted).

11

the sources themselves." *Id.* at 349. The defendants countered that the harm to the free flow of information outweighed the plaintiff's need for the information because "[t]he sources . . . were only willing to speak with the defendants after they received promises of confidentiality because they could face 'loss of employment and even criminal charges' if their identities are disclosed." *Id.* Rejecting the defendants' argument, this Court agreed with the plaintiff and allowed his motion to compel, finding that "the plaintiff has a strong need for the sources' identities" and that there was no "alternative means for the plaintiff to verify what the confidential sources" told the defendants. *Id.* at 350.

So too here. A major component of Plaintiffs' claim for damages hinges on whether their sources stopped working with them because of Defendants' conduct, and "the only way to verify or confirm" whether and why those sources stopped working with the Plaintiffs "would be to speak with the sources themselves." *Id.* at 349. Moreover, Plaintiffs' argument that disclosure of their sources would harm the free flow of information is significantly weaker than that of the reporters in *Alharbi* because Plaintiffs have provided no evidence that their sources "were only willing to speak with the defendants after they received promises of confidentiality." *Id.* By any measure, eBay's need for information about Plaintiffs' sources far outweighs the speculative harm to Plaintiffs' reporting from disclosure of their sources.

## CONCLUSION

For the foregoing reasons, the Court should grant eBay's motion to compel and direct Plaintiffs to provide all information and unredacted documents regarding sources Plaintiffs alleged stopped working with them as a result of the Natick events that are responsive to Interrogatory No. 5 and Request for Production No. 77 to Steiner Associates, and Request for Production No. 78 to Ina Steiner and David Steiner, that Plaintiffs have withheld pursuant to their claim of reporter's

privilege. Alternatively, if Plaintiffs wish to maintain privilege, the Court should preclude them from seeking any damages based on the alleged loss of sources due to the Natick events.

Dated: September 11, 2024                                              Respectfully submitted,

*/s/ Jack W. Pirozzolo*
Jack W. Pirozzolo
Kathryn L. Alessi
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
Telephone: (617) 223-0300
jpirozzolo@sidley.com
kalessi@sidley.com

Scott T. Nonaka (*pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1285
snonaka@sidley.com

Daniel J. Feith (*pro hac vice*)
Lucas Croslow (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
Telephone: (202) 736-8511
dfeith@sidley.com

*Counsel for eBay Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2024, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: September 11, 2024          */s/ Jack W. Pirozzolo*
                                                        Jack W. Pirozzolo