# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INA STEINER, DAVID STEINER, and STEINER ASSOCIATES, LLC, | ) ) ) |
| *Plaintiffs*, | ) ) |
| *v.* | ) Civil Action No. 21-CV-11181-PBS ) |
| EBAY INC., et al., | ) ) |
| *Defendants*. | ) |

## MEMORANDUM IN SUPPORT OF DEFENDANT EBAY INC.'S PARTIAL MOTION FOR SUMMARY JUDGMENT

Jack W. Pirozzolo (BBO #564879)
Kathryn L. Alessi (BBO #651110)
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
Telephone: (617) 223-0300
Facsimile: (617) 223-0301
jpirozzolo@sidley.com
kalessi@sidley.com

Scott T. Nonaka (*pro hac vice*)
David A. Goldenberg (*pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1285
snonaka@sidley.com
dgoldenberg@sidley.com

Daniel J. Feith (*pro hac vice*)
Lucas Croslow (*pro hac vice*)
Emily Rose (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, D.C. 20005
Telephone: (202) 736-8511
dfeith@sidley.com
lcroslow@sidley.com
emily.rose@sidley.com
*Counsel for eBay Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

LEGAL STANDARD ............................................................................................................... 4

ARGUMENT ............................................................................................................................. 4

I.     The Court should grant summary judgment on Plaintiffs' defamation claim. ................... 4

     A.     True statements are not defamatory. ...................................................................... 4

     B.     Statements not capable of damaging reputation are not defamatory. ................... 6

     C.     Statements that are not published are not defamatory. ......................................... 7

     D.     Statements not made by eBay are not actionable against eBay ............................ 9

     E.     Statements not "of and concerning" Plaintiffs were not defamatory....................... 9

     F.     Plaintiffs' remaining defamation claims also fail. ............................................... 10

II.     The Court should grant summary judgment on Plaintiffs' negligent retention claim. ..... 11

III.     The Court should grant summary judgment on Plaintiffs' false imprisonment claim...... 11

IV.     The Court should grant summary judgment on Plaintiffs' ratification claim. ................... 12

     A.     Plaintiffs may not bring a standalone ratification claim. ...................................... 12

     B.     In all events, Plaintiffs fail to raise a triable issue as to ratification. .................... 13

V.     Plaintiffs have not carried their burden to show consulting or goodwill damages. .......... 16

     A.     Plaintiffs fail to raise a triable issue as to lost consulting fees............................ 17

     B.     Plaintiffs fail to raise a triable issue as to damages for lost value or goodwill..... 19

CONCLUSION......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albright v. Morton*,
  321 F. Supp. 2d 130 (D. Mass. 2004) ....................................................................7

*Augat, Inc. v. Aegis, Inc.*,
  417 Mass. 484 (1994) ..........................................................................................17

*Ayyadurai v. Floor64, Inc.*,
  270 F. Supp. 3d 343 (D. Mass. 2017) ...........................................................4, 5, 7

*Bassett v. Jensen*,
  459 F. Supp. 3d 293 (D. Mass. 2020) ....................................................................7

*Boyd v. Teamsters Local Union 968*,
  No. 15-cv-3710, 2018 WL 2321951 (S.D. Tex. Feb. 9, 2018) ..............................13

*Brauer v. Globe Newspaper Co.*,
  351 Mass. 53 (1966) ..........................................................................................9, 10

*Ceithaml v. Celebrity Cruises, Inc.*,
  207 F. Supp. 3d 1345 (S.D. Fla. 2016) ................................................................13

*Cole v. Westinghouse Broad. Co.*,
  386 Mass. 303 (1982) ............................................................................................7

*Cottrell v. Laidley*,
  220 N.E.3d 610 (Mass. App. Ct. 2023) ...............................................................11

*Damon v. Moore*,
  520 F.3d 98 (1st Cir. 2008) ...................................................................................8

*Doe v. UMass-Amherst*,
  708 F. Supp. 3d 100 (D. Mass. 2023) .....................................................................8

*Foster v. Loft, Inc.*,
  526 N.E.2d 1309 (Mass. App. Ct. 1988) ..............................................................11

*Franchini v. Bangor Publ'g Co.*,
  109 F.4th 13 (1st Cir. 2024)....................................................................................5

*Fuller v. Golden*,
  No. 9778, 2002 WL 1906925 (Mass. App. Div. Aug. 14, 2002)............................8

*Hendricks & Assocs., Inc. v. Daewoo Corp.*,

923 F.2d 209 (1st Cir. 1991) ...................................................................................17

*Johnston v. City of Syracuse*,
No. 20-cv-1497, 2021 WL 3930703 (N.D.N.Y. Sept. 2, 2021)....................................13

*Jonielunas v. City of Worcester Police Dep't*,
338 F. Supp. 2d 173 (D. Mass. 2004) .........................................................................11

*Kamayou v. Univ. of Mass. Lowell*,
No. 16-cv-10098, 2018 WL 4609130 (D. Mass. Sept. 7, 2018)...................................12

*Kelleher v. Lowell Gen. Hosp.*,
152 N.E.3d 126 (Mass. App. Ct. 2020) ...............................................................4, 10

*Khalil v. Museum of Sci.*,
No. 97-cv-01811, 2000 WL 1372485 (Mass. Super. Ct. Aug. 18, 2000)......................8

*Korpacz v. Women's Pro. Football League*,
No. 04-cv-10735, 2006 WL 220762 (D. Mass. Jan. 27, 2006)....................................17

*La. Firefighters' Ret. Sys. v. N. Trust Invs., N.A.*,
No. 09-cv-7203, 2015 WL 1281493 (N.D. Ill. Mar. 17, 2015) ...................................13

*Lemanski v. Lenox Sav. Bank*,
No. 95-cv-30074, 1996 WL 253315 (D. Mass. Apr. 12, 1996)............................13, 14

*Linkage Corp. v. Trs. of Bos. Univ.*,
425 Mass. 1 (1997) ...........................................................................................13, 14, 16

*Lowell Hous. Auth. v. PSC Int'l, Inc.*,
759 F. Supp. 2d 104 (D. Mass. 2010) ...........................................................13, 15, 16

*Maier-Schule GMC, Inc. v. Gen. Motors Corp.*,
154 F.R.D. 47 (W.D.N.Y. 1994).................................................................................16

*Garcia ex rel. Marin v. Clovia Unified Sch. Dist.*,
627 F. Supp. 2d 1187 (E.D. Cal. 2009).................................................................15, 16

*McCann v. Wal-Mart Stores, Inc.*,
210 F.3d 51 (1st Cir. 2000)........................................................................................12

*McDermet v. DirecTV, LLC*,
No. 19-cv-11322, 2021 WL 217336 (D. Mass. Jan. 21, 2021).................................13

*Mullane v. Breaking Media, Inc.*,
433 F. Supp. 3d 102 (D. Mass. 2020) (Saris, J.)...............................................4, 6, 9

*O'Neil v. DaimlerChrysler Corp.*,
538 F. Supp. 2d 304 (D. Mass. 2008) ......................................................................12

*Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.,*
    781 F.3d 1245 (11th Cir. 2015) ...................................................................13

*Perea v. Ed. Cultural, Inc.,*
    13 F.4th 43 (1st Cir. 2021) .............................................................................4

*Petrell v. Shaw,*
    453 Mass. 377 (2009) ..............................................................................14, 16

*Phelan v. May Dep't Stores Co.,*
    443 Mass. 52 (2004) .......................................................................................7

*Ratcliff v. The Roman Catholic Archbishop of L.A.,*
    294 Cal. Rptr. 3d 875 (Cal. Ct. App. 2022) .................................................12

*Rich v. Eastman Kodak Co.,*
    583 F.2d 435 (8th Cir. 1978) ........................................................................19

*S. Port Marine, LLC v. Gulf Oil Ltd. P'ship,*
    234 F.3d 58 (1st Cir. 2000) .....................................................................19, 20

*Saunders v. Town of Hull,*
    874 F.3d 324 (1st Cir. 2017) ........................................................................15

*Schonfeld v. Hilliard,*
    218 F.3d 164 (2d Cir. 2000) .........................................................................19

*Stallworth Timber Co. v. Triad Bldg. Supply,*
    968 F. Supp. 279 (D.V.I. 1997) ...................................................................20

*Strike It Rich, Inc. v. Joseph Schlitz Brewing Co.,*
    505 F. Supp. 89 (D.D.C. 1980) ...................................................................16

*Taxinet Corp. v. Leon,*
    114 F.4th 1212 (11th Cir. 2024) ..................................................................20

*Terek v. Finkbiner,*
    No. 14-cv-1391, 2015 WL 5542535 (N.D. Ohio Sept. 18, 2015) ...........16

*Thomas v. Town of Chelmsford,*
    267 F. Supp. 3d 279 (D. Mass. 2017) ...........................................................9

*Toltec Fabrics, Inc. v. August Inc.,*
    29 F.3d 778 (2d Cir. 1994) ...........................................................................19

*United States v. eBay, Inc.,*
    No. 24-cr-10003-PBS (D. Mass. Jan .11, 2024) ...........................................1

*Wellington Corp. v. Gennari Consulting, Inc.,*

631 F. Supp. 3d 464 (N.D. Ohio 2022)..............................................................................18, 29

*West v. Yrc Worldwide, Inc.*,
No. 20-cv-3849, 2021 WL 2638462 (N.D. Ga. Mar. 16, 2021), *report adopted*
2021 WL 2638457 (N.D. Ga. Apr. 1, 2021).....................................................................12

*White v. Blue Cross & Blue Shield of Mass., Inc.*,
442 Mass. 64 (2004) ............................................................................................................6

*White's Farm Dairy, Inc. v. De Laval Separator Co.*,
433 F.2d 63 (1st Cir. 1970) ..........................................................................................13, 14

**Statutes**

Mass. Gen. Laws ch. 260, § 4 ..................................................................................................10

**Other Authorities**

38 Am. Jur. 2d Good Will § 17 (2024) ....................................................................................19

Restatement (Second) of Torts § 36.....................................................................................11, 12

Robert D. Sack et al., Sack on Defamation: Libel, Slander, and Related Problems
(5th ed. 2024) ................................................................................................... *passim*

## INTRODUCTION

As eBay has stated since the outset of the case, *e.g.*, Dkt. 90 at 2, it is committed to compensating the Steiners fairly and appropriately for the appalling conduct they endured. eBay has admitted that it is vicariously liable for the criminal conduct of the six employees and one former contractor whose actions form the basis of this case, *see* Deferred Prosecution Agreement (DPA), *United States v. eBay, Inc.*, No. 24-cr-10003-PBS (D. Mass. Jan .11, 2024), and that, based on the admissions in the DPA, it is vicariously liable on several of the Steiners' claims, including intentional infliction of emotional distress, *see, e.g.*, Dkt. 320 ¶¶ 406–18. Principally, what remains in dispute is, first, whether eBay is liable on certain other claims the Steiners have brought and, second, the extent of the Steiners' damages, particularly for emotional distress.

The Court previously recognized that several claims in Plaintiffs' sprawling amended complaint had no basis in the law. Fact discovery has now shown that several of the remaining claims also fail because no genuine issue of material fact exists to support them. Similarly, no genuine issue of material fact exists to support several of Plaintiffs' categories of damages.

eBay brings this partial motion for summary judgment to eliminate such claims so that further proceedings can focus on the core issue in this case—the extent of the Steiners' emotional distress damages. eBay is entitled to summary judgment on the following claims:

- **Defamation:** The allegedly defamatory statements fail to meet one or more essential elements of a defamation claim. There is no genuine dispute that, among other defects, some statements were objectively true; some were statements of opinion; some were not published; and some are not attributable to eBay.

- **Negligent Retention:** Plaintiffs cannot raise any issue that eBay negligently retained the head of the security team, Jim Baugh, because there is no evidence that eBay knew or should have known that Baugh was not fit for his role.

- **False imprisonment:** There is no triable issue of false imprisonment because the Steiners admit they repeatedly left their home and car throughout the harassment campaign, and there is no evidence that the criminal defendants intended to confine them.

- **Ratification:** Plaintiffs' ratification claim fails both because ratification is a theory of lia-bility, not a standalone claim, and because there is no genuine dispute that eBay did not ratify the individual defendants' conduct. Rather, eBay promptly fired the criminal de-fendants when it learned of their conduct, and none of its actions towards the executive defendants manifested assent to any actions in connection with the criminal harassment campaign against Plaintiffs (the "Natick events").

- **Damages for Lost Consulting Fees, Site Value, and Goodwill:** Plaintiffs cannot show damages for lost consulting fees because they admittedly never engaged in consulting work, never had firm plans to do so, and have no basis for the rates they supposedly would have charged. Plaintiffs also have no basis for the alleged loss of goodwill to their business. The lack of any evidence for these damages warrants summary judgment.

## BACKGROUND

The core facts underlying Plaintiffs' claims are well-known and largely undisputed. Ina and David Steiner own Steiner Associates, LLC, through which they publish EcommerceBytes, a website and blog covering news related to various ecommerce platforms, including eBay Inc. SOF ¶ 2. In January 2019, EcommerceBytes' negative coverage about eBay drew the attention of Defendants Devin Wenig, Steve Wymer, and Wendy Jones, who were, respectively, eBay's then-CEO, Chief Communications Officer, and Vice President of Global Operations. SOF ¶ 3. The executives discussed the need to address EcommerceBytes' reporting, and, in or around May 2019, Wymer retained a public relations firm to develop options for doing so. SOF ¶ 4.

The harassment campaign against the Steiners began in June 2019, when Jim Baugh, eBay's then-Senior Director of Safety & Security, directed a subordinate, Brian Gilbert, to travel to Natick, where he scrawled the word "FIDOMASTER" on the Steiners' fence, a reference to the username of a commenter on EcommerceBytes who often posted criticism of eBay and who Baugh and Gilbert believed was connected to the Steiners. SOF ¶ 5. In early August, Baugh and several of his subordinates—Gilbert, Stephanie Stockwell, Veronica Zea, Dave Harville, Stepha-nie Popp, and Phil Cooke—began inundating the Steiners with threatening and vulgar emails, packages, and online messages. SOF ¶ 6. The online messages included Twitter direct messages

2

and posts directing vulgar insults, invective, and threats at the Steiners. SOF ¶ 7. A week later, as the threatening and vulgar deliveries, posts, and messages continued, Baugh, Harville, and Zea traveled to Natick. SOF ¶ 8. There, over several days, they surveilled the Steiners by sitting in a van outside the Steiners' house, circling the Steiners' block, and following Mr. Steiner around town. SOF ¶ 9. According to the Steiners, during the harassment campaign, they each left their house and car on multiple occasions to buy groceries and run other errands. SOF ¶¶ 90–99.

Understandably, the Steiners reported this conduct to the Natick police, which began an investigation on or about August 16. SOF ¶ 10. eBay also began its own investigation immediately after being contacted by the Natick police, and hired outside counsel at Morgan Lewis & Bockius LLP to lead it. SOF ¶ 11. From August 20–26, the criminal defendants took numerous steps to obstruct both the Natick police's investigation and eBay's own internal investigation, including lying to both law enforcement and eBay investigators and deleting records from their phones. SOF ¶ 12. But both investigations proceeded quickly. By August 22, the FBI and Massachusetts U.S. Attorney's office had opened an investigation of their own. SOF ¶ 13. And on or about August 30, 2019, eBay placed Baugh, Popp, and Harville on administrative leave and, on September 16, 2019, terminated their employment for cause, together with that of Wymer, Gilbert, and Stockwell. SOF ¶ 14. That same month, eBay also terminated Zea's contract, and

███████████████████████████████████████████████

████████████████████████████. SOF ¶¶ 15–16. As part of its investigation, eBay conducted over 90 interviews of 50-plus witnesses, undertook an extensive review of documents, and, at the direction of its Board, fully cooperated with law enforcement. SOF ¶ 17. Aided by that cooperation, the Massachusetts U.S. Attorney's Office subsequently brought criminal charges against Baugh, Stockwell, Zea, Harville, Gilbert, Popp, and Cooke, all of whom eventually

pled guilty to various offenses. SOF ¶¶ 18–19.

## LEGAL STANDARD

"A court may grant summary judgment only if the record, construed in the light most amiable to the nonmovant, presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law." *Perea v. Ed. Cultural, Inc.*, 13 F.4th 43, 50 (1st Cir. 2021) (cleaned up). Cross motions "do not change the standard." *Id.* (cleaned up).

## ARGUMENT

**I.    The Court should grant summary judgment on Plaintiffs' defamation claim.**

Plaintiffs assert that they have been defamed by dozens of statements.[1] But while many of the statements Plaintiffs identify are appalling and potentially relevant to such claims as intentional infliction of emotional distress, a statement is defamatory only if Plaintiffs can prove: "(1) that the defendant published a written statement; (2) of and concerning the plaintiff; that was both (3) defamatory and (4) false; and (5) either caused the plaintiff economic loss, or is actionable without proof of economic loss." *Mullane v. Breaking Media, Inc.*, 433 F. Supp. 3d 102, 109 (D. Mass. 2020) (Saris, J.) (cleaned up). As set forth below, there is no genuine dispute that each of the allegedly defamatory statements fails to meet one or more of these elements. Because "summary disposition of defamation claims is 'especially favored' in Massachusetts," *id.* at 110, the Court should grant summary judgment as to each deficient statement.

### A.  True statements are not defamatory.

Plaintiffs have the burden of proving falsity because Ms. Steiner is a limited purpose pub-

---

[1] Interrogatory No. 28 asked Ina and David Steiner to list "each defamatory statement You attribute to eBay Inc. or any other defendant in this case." SOF ¶¶ 23–44. Given Plaintiffs' obligation to "specifically identify the allegedly false statement[s]," *Kelleher v. Lowell Gen. Hosp.*, 152 N.E.3d 126, 131 n.2 (Mass. App. Ct. 2020), the Court should grant summary judgment for eBay on all statements not identified in response to Interrogatory No. 28. However, out of an abundance of caution, eBay also addresses statements identified in Interrogatory Nos. 9 and 29 to Ina and David Steiner, and No. 19 to Steiner Associates.

lic figure. *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 356 (D. Mass. 2017). She has been interviewed, cited, and featured as an authority on ecommerce in dozens of major media outlets, and she asserts that, based on her reporting, EcommerceBytes "was a 'leading source of ecommerce information and data nationwide.'" SOF ¶¶ 20–21; *see Franchini v. Bangor Publ'g Co.*, 109 F.4th 13, 32–33 (1st Cir. 2024) (blog posts create voluntary limited public figure status). There is no genuine issue, however, that numerous allegedly defamatory statements are true.

1.      **Statements that Ms. Steiner was a "blogger." (Refs. 17-18, 33, 42, 44).**[2] Plaintiffs complain that eBay defamed Ms. Steiner by describing her as "a 'blogger who writes about the company.'" SOF ¶ 58. But Ms. Steiner testified that the Steiners, through Steiner Associates, publish a blog, and the EcommerceBytes website identifies Ms. Steiner as the "author of the EcommerceBytes blog" and as having been featured in the book *Blogging Heroes*. SOF ¶ 58(a).

2.      **Statements that Plaintiffs "had a stalker" and doxing Plaintiffs (Refs. 22, 30).** Plaintiffs assert they were defamed when "neighbors saw police cruisers outside their house … and then became aware Plaintiffs had a stalker." SOF ¶ 55. But Plaintiffs acknowledge that they indeed had stalkers. SOF ¶ 55(c). Thus, even if these events could constitute statements, they cannot support a claim for defamation. Similarly, posting Plaintiffs' actual address on Twitter, SOF ¶ 47, while threatening, is not defamatory because it is not false, SOF ¶ 47(b).

3.      **Statements regarding eBay executives' suspicion of Ms. Steiner's associations (Refs. 16, 38).** Plaintiffs assert that their reputation was harmed by statements connecting Ms. Steiner to an eBay competitor and investor. SOF ¶¶ 40, 63. But the challenged statements merely state that *eBay executives suspected* that the Steiners were associated with those entities, which

---

[2] A table of all the allegedly defamatory statements, together with all the grounds for awarding eBay summary judgment on them, is included as an appendix. The table assigns each statement a reference number. For each category of statements discussed herein, eBay lists the reference number of the statements included within that category.

Plaintiffs have not alleged is false.[3] SOF ¶¶ 40(a), 63(a), (c). Nor is there evidence that information about Ms. Steiner given to Ryan Moore by an early eBay employee, Jim Griffith, is false. SOF ¶ 62.

**4.    Statements by media outlets (Refs. 6, 15-20, 31-32, 39-46).** Despite claiming various articles were defamatory, Plaintiffs admit that nothing about them in those articles is false. SOF ¶¶ 39–44, 56, 67–73. Thus, even if those articles were attributable to eBay, *but see infra* at 9, they are not actionable.

**B.  Statements not capable of damaging reputation are not defamatory.**

**1.    Non-actionable insults (Refs. 6, 10-13, 23-25, 40).** Only statements of fact—that is, statements capable of being proven true or false—are actionable in tort. *Mullane*, 433 F. Supp. 3d at 111–12. "[M]ere epithets … are insufficiently fact-based to ground a defamation claim." *Id.* at 112 (cleaned up). Indeed, "the use of epithets, insults, name-calling, and hyperbole" has "virtually impenetrable legal armor" because recipients do not treat "merely vituperative[] or insulting" language as reflecting adversely on a plaintiff's reputation. Robert D. Sack et al., Sack on Defamation: Libel, Slander, and Related Problems § 2:4.6 (5th ed. 2024) (hereinafter "Sack"); *see White v. Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass. 64, 68 (2004) (describing Sack as the "leading authority on defamation").

Here, many of the allegedly defamatory statements, while offensive, are non-actionable insults or hyperbole. *Compare* SOF ¶¶ 30, 34–37, 48–50 ("biased troll," "cow," "fat pussy husband," "fucking pussies," "take[] the plugs out of his asshole," "sick motha fuckers," "cunt," "bitch," "cunt ass bitch," "20 yrs of lies n distroin familys," "U R distroin familys n bizness"), *with* Sack §§ 2:4.6, 4:3.3–.5 ("asshole," "bitch," "crank," "fucking cunt," "liar," and "troll" not

---

[3] Moreover, one of the statements, which appeared in a *Wall Street Journal* article, was immediately followed by the statement that the executives "ultimately didn't find any evidence of [the suspected connection]." SOF ¶ 40.

6

actionable); *see also Ayyadurai*, 270 F. Supp. 3d at 361 (calling plaintiff a "fraud" not actionable). That these statements appeared on social media—a medium "frequently used as [a] vehicle[] for hyperbolic personal opinions"—only reinforces this conclusion. Sack § 4:3.1(D); *see Cole v. Westinghouse Broad. Co.*, 386 Mass. 303, 309 (1982) ("the medium by which the statement is disseminated" bears on whether it should be understood "as fact or opinion").

> **2.    Statements of opinion (Refs. 2, 6, 12-13, 15, 17-18, 20, 24, 31, 34-36 40-44, 46).**
Similarly, opinions are not actionable because "they are not susceptible of being proved true or false." *Bassett v. Jensen*, 459 F. Supp. 3d 293, 315–16 (D. Mass. 2020) (citation omitted). As relevant here, "[w]hether a reporter is sloppy and irresponsible with bad techniques is a matter of opinion." *Cole*, 386 Mass. at 312. Ms. Steiner was thus correct to admit that the statements regarding her reporting—"critic," "bush league," "BS," "click-bait fringe media," "drivel," and "shoddy reporting, SOF ¶¶ 56, 59–60—are uniformly opinions, *see* SOF ¶¶ 56(b), 59, 60. So too are statements that she is "biased" and "skews" her stories. SOF ¶¶ 30, 39.

> **3.    Statement regarding Fidomaster (Ref. 29).** The "defamatory" element of the tort requires that the statement be capable of damaging "plaintiff's reputation in the community." *Albright v. Morton*, 321 F. Supp. 2d 130, 134 (D. Mass. 2004). Plaintiffs have not introduced evidence that the word "Fidomaster" scrawled on their fence conveyed *anything* to the neighbor who saw it, let alone conveyed something damaging to their reputation. *See* SOF ¶ 54.

### C. Statements that are not published are not defamatory.

The element of publication requires that the defamatory communication be transmitted to and read by a third party—*i.e.*, someone other than the plaintiff. *Phelan v. May Dep't Stores Co.*, 443 Mass. 52, 56, 58–59 (2004). Plaintiffs must provide evidence of the person or category of persons to whom the allegedly defamatory material was published. *See id.*; Sack § 2:5.2.

1.      **Private messages on Twitter (Refs. 11-13, 23).** The criminal defendants sent private messages to the "EcommerceBytes" Twitter account, which Ina Steiner controls. SOF ¶¶ 35(a), 36(a), 37(a), 48(a). Private messages about Ms. Steiner to Ms. Steiner, SOF ¶¶ 35–37, 48, were not published and are therefore not actionable in defamation. *E.g.*, *Fuller v. Golden*, 2002 WL 1906925, at *2 (Mass. App. Div. Aug. 14, 2002) (allegedly libelous letter not actionable because it was "addressed to, and received, by [plaintiff] herself"); *Khalil v. Museum of Sci.*, 2000 WL 1372485, at *4 (Mass. Super. Ct. Aug. 31, 2000) (same).

2.      **Newsletter sign-ups (Ref. 5).** Plaintiffs assert that they were defamed when the Criminal Defendants signed them up for various newsletters. But Plaintiffs acknowledge that such sign-ups are largely automated, SOF ¶ 29(b), and there is no evidence that a person rather than an automated system "received" the requests to add the Steiners to newsletters. Thus, there is no evidence of publication. *See* Sack § 2:5.1. The one non-automated follow-up Plaintiffs do identify—a call from an adult sex-toy store after the criminal defendants signed Plaintiffs up as potential franchisees—is not defamatory for the separate reason that the franchisor would not find the purported interest in a franchise damaging to Plaintiffs' reputation. Sack § 2:4.3 ("Communications are thus judged on the basis of the impact that they will probably have on those who are likely to receive them."); *accord Damon v. Moore*, 520 F.3d 98, 103–04 (1st Cir. 2008).

4.      **Unseen Craigslist ads (Ref. 4).** Plaintiffs allege they were defamed by Craigslist ads referencing sexual encounters and drugs. SOF ¶ 28. Plaintiffs admit they have no evidence any third party viewed these posts. SOF ¶ 28(b). Speculation that third parties *might* have viewed them is inadequate. *See Doe v. UMass-Amherst*, 708 F. Supp. 3d 100, 138 (D. Mass. 2023).

4.      **Communications to Natick police and "person of interest" file (Refs. 7-9).** The Steiners assert that the criminal defendants created a "fake persons of interest file" on them.

SOF ¶¶ 31–33. But the criminal defendants' unrebutted testimony and an FBI affidavit indicate that the file was not shared with any third party. SOF ¶¶ 31(b), 32(b), 33(b).

### D. Statements not made by eBay are not actionable against eBay (Refs. 6, 14-21, 31-32, 38-46).

Defamation liability is limited by agency principles. *See Thomas v. Town of Chelmsford*, 267 F. Supp. 3d 279, 311 (D. Mass. 2017) (dismissing complaint in absence of allegations about the capacity in which a non-defendant spoke); Sack § 2:10.2. Plaintiffs thus cannot bring a defamation claim *against eBay* based on a text by Wenig's wife Cindy about their reporting, SOF ¶¶ 39, 42, or based on various statements by former employees, where Plaintiffs have not introduced any evidence of an agency relationship between those individuals and eBay. Similarly, claims relating to statements by Betsy Monjott, SOF ¶ 38, are not actionable because Plaintiffs acknowledge that Monjott was not an eBay employee, that eBay did not repost her statements, and that eBay was not obligated to moderate the posts on the Facebook page where Monjott's statements appeared. SOF ¶ 38(a)–(b), (d). Nor have Plaintiffs established any basis for attributing to eBay statements by media outlets describing EcommerceBytes' reporting in their own editorial voices. SOF ¶¶ 39–44, 56, 67–73.

### E. Statements not "of and concerning" Plaintiffs were not defamatory (Refs. 4, 29).

To be defamatory, statements must be "of and concerning" the plaintiff. *Mullane*, 433 F. Supp. 3d at 109. Where a person "is not referred to by name or in such manner as to be readily identifiable from the descriptive matter in the publication, extrinsic facts must be alleged and proved showing that a third person other than the person libeled understood it to refer to him." *Brauer v. Globe Newspaper Co.*, 351 Mass. 53, 56 (1966). Plaintiffs' allegations regarding the "swinger" and "house party" Craigslist posts do not meet this requirement. Those posts did not identify them by name, SOF ¶ 28(a), and there is no evidence "that a third person other than

[Plaintiffs] understood [the posts] to refer to [them]." *Brauer*, 351 Mass. at 56. The "Fidomaster"

graffiti on Plaintiffs' fence is not defamatory for similar reasons. SOF ¶¶ 5, 54(b).

**F. Plaintiffs' remaining defamation claims also fail.**

**1.  No specific statement identified (Refs. 7, 21, 45,).** Numerous allegedly defama-

tory statements listed by Plaintiffs fail to "specifically identify the allegedly false statement[s]."

*Kelleher*, 152 N.E.3d at 131 n.2; *see* SOF ¶¶ 31, 43–44, 69, 71–73. These include the statement

that "Brian Gilbert defamed Plaintiff with the Natick Police Department" and news articles for

which Plaintiffs list only the headline. Such statements are not actionable.

**2.  Statute of limitations (Refs. 1-2, 47).** Defamation has a three-year limitations pe-

riod. M.G.L. c. 260 sec 4. Plaintiffs' claims relating to a 2008 blog post, 2009 comment by Jose

Mallabo, and 2012 report that EcommerceBytes was a phishing website are time-barred. SOF ¶¶

24–25, 75.

**3.  Lack of damages (Refs. 3-4).** Plaintiffs have not introduced evidence of damages

from their neighbors receiving pornographic magazines in Mr. Steiner's name. Plaintiffs identi-

fied three households that received the magazines, and testified that two were aware that Plain-

tiffs had a stalker prior to receipt. SOF ¶ 27(a)(ii). Plaintiffs could not remember whether they

told the third neighbor they had a stalker before he received any magazine, and he testified any-

way that he did *not* receive any pornography. SOF ¶ 27(a)(iii)–(iv). Because the recipients were

aware that Plaintiffs had a stalker, and therefore that the pornography was not ordered by Mr.

Steiner, neither economic nor non-economic damages can flow from the magazines.

Nor have Plaintiffs introduced any evidence of damages from disparaging comments

posted by the criminal defendants as responses to Ms. Steiner's public Tweets. SOF ¶¶ 49–53.

There is no evidence anyone viewed those comments before the charges against the criminal de-

fendants were made public, and the available evidence shows that anyone who viewed the comments after that time understood they were part of a criminal harassment campaign. *Id.*

## II.    The Court should grant summary judgment on Plaintiffs' negligent retention claim.

To prevail on their claim that eBay negligently retained Baugh, Am. Compl. ¶¶ 474−477, Plaintiffs must show that eBay knew or should have known that Baugh was "unworthy[] by habits, temperament, or nature" of holding his position. *Foster v. Loft, Inc.*, 526 N.E.2d 1309, 1310−11 (Mass. App. Ct. 1988). The record, however, provides no evidence that eBay knew or should have known of any misconduct by Baugh indicating violent tendencies. Jones, Baugh's direct supervisor, met with Baugh one-on-one every few weeks, communicated with him regularly beyond those meetings, and never observed a violent temperament. SOF ¶¶ 76–78; *see Cottrell v. Laidley*, 220 N.E.3d 610, 619 (Mass. App. Ct. 2023) (supervisor "testified that he never noticed [employee later diagnosed with sleep apnea] having trouble breathing or needing to take an extra break at work"). In fact, Baugh's annual reviews by his subordinates were uniformly positive, rating him above the average of managers reporting to Jones. SOF ¶¶ 87–89. Nor did Jones or anyone else at eBay receive any reports of misconduct by Baugh, either directly or through anonymous reporting channels like the Integrity Helpline. SOF ¶¶ 78, 80–86, 89. Further, when Jones did become aware of minor performance issues involving Baugh—issues differing in kind from the Natick events—she investigated and successfully addressed them. *See* SOF ¶ 79. Given the absence of evidence that Baugh's supervisors knew or should have known of any behavior indicating his unfitness, Plaintiffs' negligent retention claim fails as a matter of law.

## III.    The Court should grant summary judgment on Plaintiffs' false imprisonment claim.

eBay is also entitled to summary judgment on Plaintiffs' false imprisonment claim because they cannot show the required elements of confinement or intent. *See Jonielunas v. City of Worcester Police Dep't*, 338 F. Supp. 2d 173, 177 (D. Mass. 2004).

First, Plaintiffs cannot show that their "confinement within the boundaries fixed by the [defendant]" was "complete." Restatement (Second) of Torts § 36. Plaintiffs' allegation that they were confined to their house and car, Am. Compl. ¶¶ 534–537, "is easily belied by the fact that [they] left" both on multiple occasions. *Kamayou v. Univ. of Mass. Lowell*, 2018 WL 4609130, at *8 (D. Mass. Sept. 7, 2018) (granting summary judgment for defendants in part on this basis). Plaintiffs admit that throughout the course of the harassment campaign, Mr. Steiner left the house and his car at least eight times, and Ms. Steiner left the house and car at least seven times, to run various errands. SOF ¶¶ 90–99. Plaintiffs thus were not actually confined.

Second, there is no evidence that Defendants "intended to … 'confine' [Plaintiffs] 'within boundaries fixed by [Defendants].'" *McCann v. Wal-Mart Stores, Inc.*, 210 F.3d 51, 53 (1st Cir. 2000) (quoting Restatement (Second) of Torts § 35). Defendants never expressly or implicitly "fixed" any "boundaries," *id.*, or "t[old] [Plaintiffs] that [they] could not leave" their house or car, *O'Neil v. DaimlerChrysler Corp.*, 538 F. Supp. 2d 304, 322 (D. Mass. 2008); *see* SOF ¶ 100. eBay is entitled to summary judgment on this basis as well.

## IV. The Court should grant summary judgment on Plaintiffs' ratification claim.

Plaintiffs' ratification claim fails twice over. First, ratification is a theory of liability, not an independent cause of action. Second, and in all events, there is no genuine dispute that eBay did not acquiesce in or otherwise approve any conduct related to the Natick events.

### A. Plaintiffs may not bring a standalone ratification claim.

While Plaintiffs allege ratification as a freestanding count, *see* Am. Compl. ¶¶ 556–572, "[t]here is no such thing as a claim for 'ratification.'" *West v. Yrc Worldwide, Inc.*, 2021 WL 2638462, at *2 (N.D. Ga. Mar. 16, 2021), *report adopted* 2021 WL 2638457, at *1 (N.D. Ga. Apr. 1, 2021); *accord Ratcliff v. The Roman Catholic Archbishop of L.A.*, 294 Cal. Rptr. 3d 875, 889 (Cal. Ct. App. 2022) ("Ratification is not itself a tort."); *cf. White's Farm Dairy, Inc. v. De*

*Laval Separator Co.*, 433 F.2d 63, 66 (1st Cir. 1970) (under Massachusetts law, "the general rule is that in actions against a principal, there is no necessity of pleading that the agreement was executed through an agent"). Rather, ratification is a "theor[y] of vicarious liability," *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1250 (11th Cir. 2015), and theories of vicarious liability are "theories of liability for other claims"—"not independent causes of action." *Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1349 (S.D. Fla. 2016); *accord McDermet v. DirecTV, LLC*, 2021 WL 217336, at *7 (D. Mass. Jan. 21, 2021). Numerous courts have thus rejected standalone ratification claims like the one Plaintiffs allege. *E.g.*, *Boyd v. Teamsters Local Union 968*, 2018 WL 2321951, at *7 (S.D. Tex. Feb. 9, 2018) (granting summary judgment because "ratification is not a cause of action" (citation omitted)); *Johnston v. City of Syracuse*, 2021 WL 3930703, at *5 (N.D.N.Y. Sept. 2, 2021) (dismissing because "ratification is … not a freestanding claim for supervisory liability"); *La. Firefighters' Ret. Sys. v. N. Trust Invs., N.A.*, 2015 WL 1281493, at *6 (N.D. Ill. Mar. 17, 2015) (finding no cases "supporting the existence of a ratification cause of action"). This Court should do the same.

### B. In all events, Plaintiffs fail to raise a triable issue as to ratification.

Even if Plaintiffs' ratification claim could proceed, summary judgment would still be warranted because undisputed facts show that eBay did not ratify any conduct related to the Natick events. A principal ratifies its agent's conduct when it "acquiesces in the agent's action" or "fails promptly to disavow the unauthorized conduct after disclosure of material facts." *Linkage Corp. v. Trs. of Bos. Univ.*, 425 Mass. 1, 18 (1997). While a principal may not "willfully blind" itself, it "must generally have full knowledge of all material facts" for a court to find ratification. *Lowell Hous. Auth. v. PSC Int'l, Inc.*, 759 F. Supp. 2d 104, 109 (D. Mass. 2010). Here, Plaintiffs' ratification theory fails because there is no genuine dispute that eBay (1) promptly fired the crim-

inal defendants when it learned of their conduct and (2) did not acquiesce in the executive defendants' actions related to the Natick events. That warrants summary judgment. *See Lemanski v. Lenox Sav. Bank*, 1996 WL 253315, at *8 (D. Mass. Apr. 12, 1996) (ratification theory "may be determined on a motion for summary judgment").

1.     Far from ratifying the criminal defendants' actions, eBay terminated all seven criminal defendants when their conduct came to light. *Petrell v. Shaw*, 453 Mass. 377, 384 n.5 (2009) (rejecting ratification theory as a matter of law because defendant "took prompt action to discipline" employee). eBay was first notified by law enforcement of the Natick events on August 20 and 21, 2019 and immediately began reviewing and analyzing documents and interviewing witnesses. SOF ¶¶ 101–02. Based on that investigation, eBay suspended Baugh, Popp, and Harville on August 30, and in September terminated them, alongside Gilbert and Stockwell, for cause. SOF ¶¶ 14, 110, 112. eBay terminated Zea's contract that same month. SOF ¶¶ 15, 122. eBay's "prompt action" defeats ratification as to those defendants. *Petrell,* 453 Mass. at 384 n.5.

Cooke is no different. Plaintiffs emphasize that eBay "promoted Cooke" and "only terminated him after his criminal charges became public." Dkt. 309 at 42. ███████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████ SOF ¶ 125, so eBay had no basis to suspect Cooke when it promoted him. ████████████████████████████████ ████████████████████, eBay "terminated [him] for cause" within a day. SOF ¶¶ 123–24. In short, the company "promptly … disavow[ed]" Cooke's actions upon learning of them. *Linkage Corp.*, 425 Mass. at 18.

2.     eBay did not ratify its executives' conduct either. Plaintiffs' ratification theory as

14

to the executives rests on allegations that eBay conducted a sham investigation to cover up their involvement, protected them by changing its bylaws to indemnify them, and took no punitive actions against them. Am. Compl. ¶¶ 560–571. The record uniformly refutes these allegations, and Plaintiffs, who elected not to depose either the executives or any members of eBay's Board, have made virtually no effort to substantiate them.

For starters, no evidence creates a triable issue that eBay's internal investigation was a sham. eBay retained an experienced partner at a well-respected law firm to lead a robust investigation that ultimately involved over 90 interviews of more than 50 witnesses and the extensive review of documents. SOF ¶¶ 17, 103, 104. The investigation aimed to uncover and collect relevant facts about the harassment of the Steiners, regardless of the position or title of anyone involved. SOF ¶¶ 103–07. At the direction of its Board of Directors, eBay gave the U.S. Attorney's Office "full[] cooperat[ion]," providing information on employees and executives alike and receiving credit from that Office for its cooperation. SOF ¶¶ 17–18, 105–07. Plaintiffs offer no contrary evidence, and "cannot rest on … unsupported speculation to defeat a motion for summary judgment." *Saunders v. Town of Hull*, 874 F.3d 324, 331 (1st Cir. 2017) (cleaned up).

Plaintiffs' allegations regarding indemnification are likewise baseless. The indemnification provisions of eBay's bylaws were unchanged between 2012 and 2023. SOF ¶ 127. Moreover, eBay's indemnification obligations "reflect standard industry practice to retain and attract" qualified talent—not ratification of the conduct that injured Plaintiffs. SOF ¶ 128. eBay's actions in 2012 (or before) clearly could not have ratified conduct that occurred years later. *See Lowell*, 759 F. Supp. 2d at 109 (ratification requires "full knowledge of all material facts").

Finally, there is no basis to infer ratification from eBay's actions with respect to Wenig, Wymer, and Jones. While "an employer need not always terminate an employee in order to avoid

15

ratification," *Garcia ex rel. Marin v. Clovia Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1203 (E.D. Cal. 2009), the company terminated Wymer for cause shortly after the Natick events "as a result of the investigation." SOF ¶¶ 14, 110, 112. ████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████ SOF ¶¶ 16, 114–17. ████████████████████████████████

SOF ¶¶ 116–17. ███████████████████████████████████████████████████

████████████████████████████ SOF ¶¶ 109, 117. ██████████████████████

████████████████████████████████████████████████████████████████

███████████ SOF ¶ 116. ██████████████████████████████████████████

███████████ SOF ¶ 118. ██████████████████████████████████████████

████████████████████████████████████████████████. SOF ¶ 119. eBay's "prompt action" vis-a-vis both executives, *Petrell*, 453 Mass. at 384 n.5, plainly "disaffirm[ed]" their conduct, *Linkage Corp.*, 425 Mass. at 18, foreclosing ratification.

As for Jones, eBay did not ratify her conduct by letting her retire. *Contra* Am. Compl. ¶ 562. ████████████████████████████████████████████████████████████

████████████████████████████████ SOF ¶ 126. eBay thus could not have acquiesced in any conduct by Jones related to the Steiners. *Lowell*, 759 F. Supp. 2d at 109; *Terek v. Finkbiner*, 2015 WL 5542535, at *4–5 (N.D. Ohio Sept. 18, 2015) (granting summary judgment where the "only evidence" of ratification was that defendant "allowed [employee] to voluntar[ily] resign.").

## V.    Plaintiffs have not carried their burden to show consulting or goodwill damages.

"[A] defendant may prevail on a motion for summary judgment where the plaintiff fails to provide evidence of damages." *Maier-Schule GMC, Inc. v. Gen. Motors Corp.*, 154 F.R.D. 47, 56 (W.D.N.Y. 1994); *see also, e.g.*, *Strike It Rich, Inc. v. Joseph Schlitz Brewing Co.*, 505 F. Supp. 89, 92 (D.D.C. 1980). Here, Plaintiffs have not shown damages for lost consulting fees,

goodwill, or site value, warranting summary judgment as to those issues.

### A. Plaintiffs fail to raise a triable issue as to lost consulting fees.

The Steiners seek damages for the profits they purportedly could have earned from consulting on ecommerce, website design and content creation, search-engine optimization, and related matters. SOF ¶¶ 129, 134. To recover damages for future lost profits, a plaintiff must show "what the profits would have been," *Hendricks & Assocs., Inc. v. Daewoo Corp.*, 923 F.2d 209, 217 (1st Cir. 1991), with "reasonable certainty," *Korpacz v. Women's Pro. Football League*, 2006 WL 220762, at *3 (D. Mass. Jan. 27, 2006). Such damages "cannot be recovered when they are remote, speculative, hypothetical, and not within the realm of reasonable certainty." *Augat, Inc. v. Aegis, Inc.*, 417 Mass. 484, 488 n.4 (1994). Since a prospective venture by definition has no history of earnings, damages for lost future profits "must be 'capable of ascertainment upon some definite standard, either of market value, established experience, or direct inference from known circumstances.'" *Hendricks*, 923 F.2d at 217. Here, however, Plaintiffs offer no evidence establishing a "definite standard" from which a jury could calculate such damages.

To begin with, Plaintiffs cannot base their damages claim on "established experience" or "known circumstances." *Id*. Steiner Associates was never involved in consulting work, SOF ¶ 137; Ms. Steiner has not consulted since "2001 or 2002 or 2003," when she "co-wrote" a single report, SOF ¶ 139; and Mr. Steiner has done no paid consulting work since the "early 2000s," when he "consult[ed] with clients about videos" he created as a "TV producer." SOF ¶ 140.  That role did not involve search-engine optimization, web-based content creation, or website design, apart from "one video" from "a long time ago" about the "usability" of "Mosaic," a now-defunct web browser. *Id*. Moreover, the Steiners admit they "did not take any steps" towards establishing a consulting business in more recent years. SOF ¶ 138.

For these reasons, Plaintiffs' assertion that they could have charged $250-450 for consulting work per hour is pure speculation. Plaintiffs concede those figures are based on "nothing tangible"—just "some cursory searches" and the impression that consulting is "a lucrative business." SOF ¶¶ 133, 136. Indeed, less than three months before claiming an hourly rate of $250-450, Mr. Steiner "conservatively" estimated his hourly rate at $150. SOF ¶ 134. His only explanation for later increasing that figure was that his "thought process" changed. SOF ¶¶ 135–36. Plaintiffs likewise "provid[e] no reasonable or reliable estimation" of the volume of services they "could have sold" at $250–$450 per hour—leaving "no way to calculate lost profit damages with reasonable certainty." *Wellington Corp. v. Gennari Consulting, Inc.*, 631 F. Supp. 3d 464, 476 (N.D. Ohio 2022). Nor have Plaintiffs provided expert testimony on these issues, despite stating that they "anticipate presenting expert testimony" relating to lost consulting work.[4] SOF ¶ 130.

*Wellington Corp.*, which also applied the "reasonable certainty" standard, underscores Plaintiffs' total failure of proof. 631 F. Supp. 3d at 474. The plaintiff there invented a new power tool and then engaged the defendant to market it. *See id.* at 469, 471. When the partnership soured, the plaintiff sued for breach of contract, seeking $1.5 to $2 million in lost future profits. *See id.* at 474. At summary judgment, the plaintiff offered evidence that a prior "launch of [its] tool to Lowe's" had "generated $1.4 million," arguing that it could have had "similarly valued" sales elsewhere had the defendant not breached. *Id.* at 474–75. The court held that even though the $1.4 million Lowe's launch might provide a "reasonable benchmark," *id.* at 475, that still was not enough to show a triable issue because the plaintiff offered no expert report or other basis for a "reliable estimation" of how many tools it "could have sold" had the defendant performed. *Id.* at 476. So even if jurors could find *some* lost profits, the evidence "d[id] not support a finding

---

[4] Plaintiffs have submitted an expert report on economic damages, but it discusses only damages related to lost income from EcommerceBytes. It offers no analysis at all about lost consulting fees or lost goodwill or site value.

regarding the amount of profit lost to the requisite certainty" to avoid summary judgment. *Id.*

As in *Wellington*, Plaintiffs here offer no expert report or other "documentation to support" their claim. *Id.* Nor can Plaintiffs even offer a "reasonable benchmark" for lost profits. *Id.* at 475. They have thus "failed to come forward with any evidence" that any purported losses are "reasonably certain to occur," *id.* at 476, leaving no triable issue as to lost consulting profits. *See, e.g.*, *Schonfeld v. Hilliard*, 218 F.3d 164, 184 (2d Cir. 2000) (affirming "grant of … summary judgment dismissing [all] claims insofar as they seek damages for lost profits").

## B. Plaintiffs fail to raise a triable issue as to damages for lost value or goodwill.

Plaintiffs also seek $10 million in damages for their business's alleged loss of goodwill and value. SOF ¶ 141. But they offer no evidence creating a triable issue on such losses.

To recover for loss of goodwill, a plaintiff must prove "the amount of that loss." *Toltec Fabrics, Inc. v. August Inc.*, 29 F.3d 778, 781 (2d Cir. 1994) (citation omitted). "The measure of damage to business property, such as good will, is based on the measurement of the difference in value of the property before and after the injury." 38 Am. Jur. 2d Good Will § 17 (2024). Such damages must "be capable of proof with reasonable certainty," not "merely speculative, possible or imaginary." *Toltec*, 29 F.3d at 781. While a business owner "may testify as to the value of his own property," such testimony is "meaningless" without a "basis for th[e] valuation." *Rich v. Eastman Kodak Co.*, 583 F.2d 435, 437 (8th Cir. 1978). Indeed, even where a plaintiff offers expert testimony regarding the value of its goodwill and evidence suggesting damage to its reputation, it must also offer "concrete numbers" showing "how [any reputational damages] affected all, or even part, of the goodwill of the business" to survive summary judgment. *S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 67–68 (1st Cir. 2000).

Here, Plaintiffs' $10 million loss figure is sheer speculation. Again, despite previously

stating they would "presen[t] an expert relating to the value of their business," SOF ¶ 142, Plaintiffs do not offer even that starting point. Far from it: "in the entire 25-year history" of EcommerceBytes, Plaintiffs have never "had a valuation of the business done," or "informally conduct[ed] a valuation" themselves. SOF ¶¶ 146–47. Ms. Steiner could not even ballpark various components of the business's value, like its "Google rank" and "user base," the value of its content or reputation, or "the marketability of the domain name." SOF ¶ 145. Nor has anyone ever "prepared a term sheet for the possible purchase of the company." SOF ¶ 148.

Plaintiffs also have not offered any "concrete numbers … explaining how" the Natick events "affected all, or even part, of the goodwill of the business." *S. Port Marine*, 234 F.3d at 67. In fact, Plaintiffs seem to have reached their $10 million loss figure without "any mathematical calculations" at all. *Stallworth Timber Co. v. Triad Bldg. Supply*, 968 F. Supp. 279, 284 (D.V.I. 1997). When asked for "the basis" of their demand, Ms. Steiner replied that "on the advice of counsel, that's the number that we put here." SOF ¶ 149. That is far from enough to create a triable issue. *See Taxinet Corp. v. Leon*, 114 F.4th 1212, 1226 (11th Cir. 2024) (business owner "not allowed to … merely repeat another person's valuation" (citation omitted)). At this stage in the litigation, Plaintiffs must do more than simply cite a number suggested by their counsel. Without more, Plaintiffs lack any "factual basis" for lost value or goodwill damages, *Rich*, 583 F.2d at 437, leaving no triable issue.

## CONCLUSION

For the foregoing reasons, the Court should grant eBay's partial motion for summary judgment.

Dated: October 28, 2024

/s/ Jack W. Pirozzolo
Jack W. Pirozzolo (BBO #564879)
Kathryn L. Alessi (BBO #651110)
SIDLEY AUSTIN LLP
60 State Street, 36th Floor

Boston, MA 02109
Telephone: (617) 223-0300
Facsimile: (617) 223-0301
jpirozzolo@sidley.com
kalessi@sidley.com

Scott T. Nonaka (*pro hac vice*)
David A. Goldenberg (*pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1285
snonaka@sidley.com
dgoldenberg@sidley.com

Daniel J. Feith (*pro hac vice*)
Lucas Croslow (*pro hac vice*)
Emily Rose (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, D.C. 20005
Telephone: (202) 736-8511
dfeith@sidley.com
lcroslow@sidley.com
emily.rose@sidley.com

*Counsel for eBay Inc.*

# APPENDIX

| Ref. # | SOF ¶ | Statement | Not False | Opinion | Insult | Not Damaging | Lacks Factual Statement | Not eBay | No Publication | Not "Of and Concerning" | No Specific Language | Time-Barred | No Damages | Not In Rog 28 | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | **From Interrogatory No. 28 (listed in order of appearance)** | | | | | | | | | | | | | |
| 1 | 24 | *Mallabo.* "In 2009, … Jose Mallabo posted … denigrat[ing Plaintiffs]." | | | | | | | | X | | | | | |
| 2 | 25 | *eBay Ink .* "On 9/8/2008, eBay said Plaintiff was 'inaccurate,' 'uninformed,' 'absolutely false,' 'incorrect,' 'absurd,' 'misinformed,' 'no basis in reality,' and 'lacking in any real understanding of business.'" | X | | | | | | | X | | | | | |
| 3 | 27 | *Pornographic magazines.* "Sending 'Barely Legal' porn to neighbors in David's name." | | | | | | | | | | | X | | One neighbor, Mr. M, further testified that he did not receive a magazine. |
| 4 | 28 | *Craigslist ads.* "Placing ads in Plaintiffs' local community portraying them as drug users and sex swingers." | | | | | | X | X | | | | X | | No publication: no recipient identified. |
| 5 | 29 | *Newsletters.* "Signing Plaintiff up for newsletters of a political, sexual, and medical nature that could be used by companies (including insurance companies) to profile Plaintiff inaccurately." | | | | X | | X | | | | | | | No publication: no recipient identified. |
| 6 | 30 | *"Biased troll."* "Wymer called Plaintiff a 'biased troll.' That statement also got picked up in news articles, harming Plaintiff's reputation." | X | X | | | X | X | | | | | | | Not statement of eBay as "picked up in news articles." No publication: the original "biased troll" statement was communicated only among Defendants. |
| 7 | 31 | *Natick Police Department.* "Brian Gilbert defamed Plaintiff with the [NPD] on or around the August 2019 time period." | | | | | | X | X | | | | | | No publication: no publication outside eBay. |
| 8 | 32 | *Persons of interest file.* "Defendants created a fake persons of interest file for Plaintiff." | | | | | | X | | | | | | | No publication: no publication outside eBay. |
| 9 | 33 | *Threats against Wenig.* "Defendants falsely claimed Plaintiff made threats against Defendant Wenig." | | | | | | X | | | | | | | No publication: no publication outside eBay. |
| 10 | 34 | *"Cow."* "Defendant Jones referred to Plaintiff as a 'cow.'" | | | X | | | X | | | | | | | No publication: no publication outside eBay. |
| 11 | 35 | *Pejorative private messages I .* "Defendants referred to David as a 'fat pussy husband' who Plaintiff needed 'to put in line.'" | | | X | | | X | | | | | | | No publication: direct message. |
| 12 | 36 | *Pejorative private messages II .* "Defendants stated that David needed to 'take[] the plugs out of his asshole' and called Plaintiffs 'fucking pussies'." | | | X | | | X | | | | | | | No publication: direct message. |
| 13 | 37 | *Pejorative private messages III.* "Defendants called Plaintiff a 'cunt'." | X | X | | | | X | | | | | | | No publication: direct message. |
| 14 | 38 | *Monjott.* "Ina… has been bitter." | | | | X | | | | | | | | | |
| 15 | 39 | *Wall Street Journal, Cindy Wenig.* "Mr. Wenig's wife had texted Mr. Baugh …. 'The author gets people worked up with the way she skews her stories'" | X | | | | | X | | | | | | | Not statement of eBay both in original statement (by Ms. Wenig) and WSJ publication. |

| Ref. # | SOF ¶ | Statement | Not False | Opinion | Insult | Not Damaging | Lacks Factual Statement | Not eBay | No Publication | Not "Of and Concerning" | No Specific Language | Time-Barred | No Damages | Not In Rog 28 | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16 | 40 | ***Wall Street Journal, Amazon.com.*** " … eBay executives tried to prove their suspicion that its rival Amazon.com Inc. was helping to fund ECommerceBytes." | X | | | | X | | | | | | | | |
| 17 | 41 | ***Vox.*** "Blogger," "often critical." | X | X | | | X | | | | | | | | Not false: "blogger." Opinion: "often critical." |
| 18 | 42 | ***Daily Mail .*** "Blogger," "criticizing eBay," "Wenig's wife … complained." | X | X | | | X | | | | | | | | Not false: "blogger." Opinion: "criticizing." Not eBay: any statement by Ms. Wenig, Daily Mail article itself. |
| 19 | 43 | ***ABC7.*** "Former eBay execs face cyberstalking charges after allegedly sending gruesome deliveries to couple." | X | | | | X | | | | | | | | |
| 20 | 44 | ***New York Times.*** "Ex-eBay Workers Sent Critics Live Roaches and a Mask of a Bloody Pig Face, U.S. Says." | X | X | | | X | | | | | | | | Not false: "Ex-eBay Workers Sent." Opinion: "critic." |
| **From Interrogatory No. 9 (in order of appearance)** | | | | | | | | | | | | | | | |
| 21 | 46 | ***Fear of retribution.*** "Plaintiff's reputation was harmed because sellers are wary of speaking to her in fear of retribution from eBay." | | | | X | | | | X | | | X | | |
| 22 | 47 | ***Twitter doxing.*** "[T]hey also doxed her." | X | | | | | | | | | | X | | |
| 23 | 48 | ***August 11 private message.*** "'U are sick motha fuckers.. and every one will kno! U fuckin cunt ass bitch!!'" | | | X | | X | | | | | | X | | No publication: direct message. |
| 24 | 49 | ***"Still live" Tweets I.*** "Some tweets that are still live on Twitter […] include[:] '20 yrs of lies n distroin familys… dunt b proud of dat u wurthless BITCH!!! i wil distroy ur family n bizness 2… C how u like it… @Elei_Tui wen r we goin 2 visit her in natik???'" | | | X | X | | | X | | | | | | No publication: no recipient identified prior to unsealing of criminal charges. |
| 25 | 50 | ***"Still live" Tweets II.*** "Some tweets that are still live on Twitter […] include[:] 'U R NOT A JOURNALIST!!.. U R DISTROIN FAMILYS N BIZNESS… N ITS ALL GOIN 2 CUM BAK 2 U!!'" | | | X | | X | | | | | | | | No publication: no recipient identified prior to unsealing of criminal charges. |
| 26 | 51 | ***"Still live" Tweets III.*** "Some tweets that are still live on Twitter […] include[:] WTF!!??? Hey @Elei_Tui wats Ina adress again?? guest i hav to pay her a visit…" | | | | X | X | | | | | | X | | No publication: no recipient identified prior to unsealing of criminal charges. |
| 27 | 52 | ***"Still live" Tweets IV.*** "Some tweets that are still live on Twitter […] include[:] Thx @Elei_Tui 4 the adress… i safed it b4 it gut deleted!!" | | | | X | X | | | | | | X | | No publication: no recipient identified prior to unsealing of criminal charges. |
| 28 | 53 | ***"Still live" Tweets V.*** "Some tweets that are still live on Twitter […] include[:] Ina focuz on sumthin else and stop fuckin with our custumers!!! I dunt wanna c unuther fuckin post bout #ebay… Leave our bizness alone!!!!!! @Elei_Tui" | | | | | X | | | | | | | | No publication: no recipient identified prior to unsealing of criminal charges. |

| Ref # | SOF ¶ | Statement | Not False | Opinion | Insult | Not Damaging | Lacks Factual Statement | Not eBay | No Publication | Not "Of and Concerning" | No Specific Language | Time-Barred | No Damages | Not In Rog 28 | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 29 | 54 | *Fidomaster graffiti.* Defendant Brian Gilbert scrawled "fidomaster" on their fence in June 2019." | | | X | | | X | | | | | X | | |
| 30 | 55 | *"Aware Plaintiffs had a stalker."* "[N]eighbors saw police cruisers outside their house in August 2019 and then became aware Plaintiffs had a stalker." | X | | | X | | | | | | | X | | |
| 31 | 56 | *"eBay critic."* "Many media outlets and people refer to Plaintiff as 'an eBay critic.'" | X | X | | | X | | | | | | X | | |
| 32 | 57 | *Google sidebar.* "Related searches on Google come back with […] 'What did the Steiners do to eBay?'" | | | | X | X | | | | | | X | | |
| 33 | 58 | *Blogger.* "[eBay] described Plaintiff as a 'blogger who writes about the company and her husband'." | | | | | | | | | | | X | | |
| 34 | 59 | *Edelman, January 7.* "[eBay told Edelman] that Plaintiff's content was 'drivel'; and referred to EcommerceBytes as 'click-bait fringe media'" | | X | | | | | | | | | X | | |
| 35 | 60 | *Edelman, January 11.* "[eBay to Edelman] characterized Plaintiffs reporting as 'BS'; said Defendant Devin Wenig wanted to call her out for 'shoddy reporting'; and characterized her reporting as 'bush league'" | | X | | | | | | | | | X | | |
| 36 | 61 | *Sloane.* "[eBay disparaged Ms. Steiner to Sloane] calling her unfair and falsely asserting that she does not always correct errors when brought to her attention." | X | X | | | | | | | | | X | | |
| 37 | 62 | *Sloane, Griffith.* "Ina adamantly suggested that she deserves equity of the company – as did other sellers – prior to the IPO." | X | | | | | | | | | | | | |
| 38 | 63 | *Elliott Management.* "… the false narrative that she was colluding with and possibly receiving funding from an activist investor, Elliott Management." | X | | | | | X | | | | | X | | Interrogatory response misquotes Sentencing Memorandum; see SOF. |
| **From Interrogatory No. 29 (in order of appearance)** | | | | | | | | | | | | | | | |
| 39 | 66 | *Michelle Fang.* "… the former head of eBay North America Litigation [wrote that EcommerceBytes] has been dogging eBay with negative press coverage." | X | | | | | X | | | | | X | | |
| 40 | 67 | *New York Times I.* "… called Plaintiffs 'eBay Critics' [and quoted Wymer re:] 'biased troll'". | X | X | X | | | X | X | | | | X | | No publication: The original "biased troll" statement was communicated among Defendants. |
| 41 | 68 | *San Jose Inside.* "Refers to Plaintiff as 'a critic.'" | X | X | | | | X | | | | | X | | |
| 42 | 69 | *Wall Street Journal.* "'Crush This Lady.' Inside eBay's Bizarre Campaign Against a Blog Critic." | X | X | | | | X | | | | | X | | |
| 43 | 70 | *Vox.* "The site, and some of its readers who post comments below articles, were often critical of eBay" | X | X | | | | X | | | | | X | | |

| Ref. # | SOF ¶ | Statement | Not False | Opinion | Insult | Not Damaging | Lacks Factual Statement | Not eBay | No Publication | Not "Of and Concerning" | No Specific Language | Time-Barred | No Damages | Not In Rog 28 | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 44 | 71 | **Daily Mail.** "Blogger couple were 'sent live spiders' after criticizing eBay." | X | X | | | X | | | | | | | X | Not false: "blogger." Opinion: "criticizing." |
| 45 | 72 | **ABC7.** "Former eBay execs face cyberstalking charges after allegedly sending gruesome deliveries to couple." | X | | | | X | | | X | | | | | The excerpt identified in Interrogatory 29 does not refer to Plaintiffs as critics. |
| 46 | 73 | **New York Times II.** "Ex-eBay Workers Sent Critics Live Roaches and a Mask of a Bloody Pig Face, U.S. Says." | X | X | | | X | | | | | X | | | |
| **From Complaint** | | | | | | | | | | | | | | | |
| 47 | 75 | **Phishing.** In May 2012 "eBay falsely accused and reported EcommerceBytes as a phishing site" | | | | | | | | | | X | | X | |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2024 this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: October 28, 2024                     */s/ Jack W. Pirozzolo*
                                            Jack W. Pirozzolo