**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| INA STEINER, DAVID STEINER, and STEINER ASSOCIATES, LLC, | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| *v.* | ) ) | Civil Action No. 21-CV-11181-PBS |
| EBAY INC., et al., | ) ) ) | |
| *Defendants*. | ) ) | |

**DEFENDANT EBAY INC.'S STATEMENT OF PROPOSED UNDISPUTED FACTS**

Pursuant to Local Rule 56.1, and in support of its Partial Motion for Summary Judgment (the "Motion"), Defendant eBay Inc. ("eBay") submits this statement of the material facts of record as to which eBay contends there is no genuine issue to be tried.

In the January 11, 2024 Deferred Prosecution Agreement ("DPA"), eBay admitted to an extensive and detailed statement of facts made part of the DPA ("DPA SOF") as well as to allegations set forth in an Information accompanying the DPA. *See United States v. eBay*, No. 24-cr-10003-PBS (D. Mass. filed Jan. 11, 2024). The statement of facts, attached hereto as Exhibit A, and the Information, attached hereto as Exhibit B, present the general background facts that are relevant to this case and to eBay's Motion. For the convenience of the Court and the parties, and in addition to the proposed undisputed facts that follow, eBay hereby incorporates paragraphs 1–61 of the DPA SOF and paragraphs 1–53 of the Information by reference as material facts of record as to which eBay contends there is no genuine issue to be tried. eBay herein and in the declarations accompanying its Motion refers to the criminal harassment campaign against the Steiners as the "Natick events."

1

## I.    Undisputed Background Facts

1.    eBay has admitted and acknowledged that the facts described in the statement of facts included as Attachment A to the DPA are true and accurate. Ex. C, Tr. A. Apte 30(b)(6) 78:23–79:12.

2.    Ina and David Steiner own and operate Steiner Associates, LLC, through which they publish EcommerceBytes, a website and blog covering news related to various ecommerce platforms, including Defendant eBay Inc. Ex. A, DPA SOF ¶ 11; *see also* Ex. G, Tr. I. Steiner 30(b)(6) 69:5–15.

3.    In January 2019, EcommerceBytes' negative coverage about eBay drew the attention of Defendants Devin Wenig, Steve Wymer, and Wendy Jones, who were, respectively, eBay's then-CEO, Chief Communications Officer, and Vice President of Global Operations. Ex. A, DPA SOF ¶ 12.

4.    Wenig, Wymer, and Jones discussed the need to address EcommerceBytes' reporting, and, in or around May 2019, Wymer retained a public relations firm to develop options for doing so. Ex. A, DPA SOF ¶¶ 25, 26.

5.    The harassment campaign against the Steiners began in June 2019, when Defendant Jim Baugh, eBay's then-Senior Director of Safety & Security, directed a subordinate, Defendant Brian Gilbert, to travel to Natick, where he scrawled the word "FIDOMASTER" on the Steiners' fence.  Fidomaster was a reference to the username of a commenter on EcommerceBytes who often posted criticism of eBay and who Baugh and Gilbert believed was connected to the Steiners. Ex. A, DPA SOF ¶¶ 28, 30, 32; *see also* Ex. K, Tr. I. Steiner Individual 320:23–321:21.

6.    In early August, Baugh and several of his subordinates—Defendants Gilbert, Stephanie Stockwell, Veronica Zea, Dave Harville, Stephanie Popp, and Phil Cooke—began

inundating the Steiners with threatening and vulgar emails, packages, and online messages. Ex. A, DPA SOF ¶¶ 48, 51, 52.

7. The online messages included Twitter direct messages and posts directing vulgar insults, invective, and threats at the Steiners. Ex. A, DPA SOF ¶¶ 48, 51, 52.

8. A week later, as the threatening and vulgar deliveries, posts, and messages continued, Baugh, Harville, and Zea traveled to Natick. Ex. A, DPA SOF ¶ 52(z).

9. There, over several days, they surveilled the Steiners by sitting in a van outside the Steiners' house, circling the Steiners' block, and following Mr. Steiner around town. Ex. A, DPA SOF ¶ 52(ff), (hh).

10. The Steiners reported this conduct to the Natick police, which began an investigation on or about August 16. Ex. A, DPA SOF ¶¶ 52(rr), (vv), 53.

11. eBay began an internal investigation of the Natick events on August 22, 2019, immediately after being contacted by the Natick Police Department on August 20 and 21, 2019. October 28, 2024 Decl. of Molly Finn ¶¶ 7–8.

12. Between August 20 and August 26, Baugh, Harville, Popp, Gilbert, Cooke, Zea, and Stockwell (the "criminal defendants") took numerous steps to obstruct both the Natick police's investigation and eBay's own internal investigation, including lying to both law enforcement and eBay investigators and deleting records from their phones. Ex. A, DPA SOF ¶¶ 50, 51(g), (h), (j), (l)-(r).

13. Around that same time, the Massachusetts U.S. Attorney's office ("USAO") opened an investigation of their own. October 28, 2024 Decl. of Molly Finn ¶¶ 4, 11.

14. On or about August 30, 2019, eBay placed Baugh, Popp, and Harville on administrative leave and, in September 16, 2019, terminated their employment for cause,

together with that of Wymer, Gilbert, and Stockwell. Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶ 191; October 28, 2024 Decl. of Molly Finn ¶ 14; Ex. Z, Baugh Separation Letter at EBAY_STEINER_00002581; Ex. RR, Gilbert Separation Letter at EBAY_STEINER_00027832; Ex. SS, Harville Separation Letter at EBAY_STEINER_00027850; Ex. TT, Popp Separation Letter at EBAY_STEINER_00027860; Ex. UU, Stockwell Separation Letter at EBAY_STEINER_00027862; Ex. VV, Wymer Separation Letter at EBAY_STEINER_00207883.

15.    On September 16, 2019, eBay terminated Zea's contract. Ex. RRR, Amir Vonsover's September 16, 2019 Zea Termination Email at EBAY_STEINER_00138057; *see also* Ex. WW, Zea PFC Personnel File at PFC0001130.

16.    ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████ October 28, 2024 Decl. of Paul Pressler ¶ 12; Ex. GGG, September 23, 2019 meeting minutes of eBay's Board of Directors at EBAY_STEINER_00212526; *see also* Ex. C, Tr. A. Apte 30(b)(6) 192:10–199:11, 200:6–201:22.

17.    As part of its investigation, eBay conducted over 90 interviews of more than 50 different witnesses, collected, searched, and/or reviewed extensive documents, and, at the direction of its Board, fully cooperated with law enforcement. October 28, 2024 Decl. of Molly Finn ¶ 13.

18.    The USAO has credited eBay for its cooperation with the office's investigation, including proactively disclosing certain evidence of which the United States was previously unaware; providing information obtained through its internal investigation, which allowed the

4

government to preserve and obtain evidence as part of its own independent investigation; making detailed factual presentations to the U.S. Attorney's Office; voluntarily facilitating interviews of employees; and collecting and producing voluminous relevant documents to the USAO. Ex. D, DPA ¶ 4(c).

19.     The Massachusetts USAO subsequently brought criminal charges against Baugh, Stockwell, Zea, Harville, Gilbert, Popp, and Cooke, all of whom eventually pled guilty to various offenses. Ex. KKK, Baugh Judgment; Ex. LLL, Harville Judgment; Ex. MMM, Popp Judgment; Ex. NNN, Gilbert Judgment; Ex. OOO, Cooke Judgment; Ex. PPP, Stockwell Judgment; Ex. QQQ, Zea Judgment.

## II.    Undisputed Facts Regarding Plaintiffs' Defamation Claim

### A.    Reputation of Ms. Steiner and Steiner Associates LLC

20.     Ms. Steiner asserts and has testified that she "has moderated and participated in panels at industry events; has been interviewed on television and radio and quoted in print media; contributed columns; written and edited books." Ex. E, I. Steiner Interrogatory Responses & Objections at 31; *see also* Ex. G, Tr. I. Steiner 30(b)(6) 154:19–159:24.

a.   "Ina Steiner is editor of EcommerceBytes.com, an independent trade publication for online merchants that she co-founded in 1999." *Id.*; *see also* Ex. G, Tr. I. Steiner 30(b)(6) 69:5–23

   i.   "She is author of the EcommerceBytes blog." *Id.*

   ii.   "Ina wrote 'The Web Page' column for New England Antiques Journal and appeared as a weekly guest on 'Calling all Collectors' syndicated radio show." *Id.* at 32.

   iii.   "Ina was Technical Editor of 'Top 100 Simplified Tips & Tricks: eBay' (Wiley Publishing 2004) and Editor of 'Snappy Auction Photos: The

Online Auction Seller's Guide to Digital Photography' (EcommerceBytes 2003)." *Id.*

iv. "Ina has written articles about online auctions, research and technology for AntiqueWest, Online magazine, FreePint and The CyberSkeptic's Guide to Internet Research, and her research has been published by International Data Corporation…." *Id.*

b. "She … was featured in the book, 'Blogging Heroes' (Wiley 2008)." *Id.* at 31; *see also* Ex. G, Tr. I. Steiner 30(b)(6) 68:11–18

c. Ms. Steiner moderated and spoke at panels. *Id.*

i. Ms. Steiner was "[i]nvited to moderate the Small Business track at leading industry conference IRCE (Internet Retailer) two consecutive years." Ex. F, Steiner Associates LLC Interrogatory Responses & Objections at 31; Ex. G, Tr. I. Steiner 30(b)(6) 154:3–159:21 (confirming response to Interrogatory 6).

ii. Ms. Steiner was "invited to moderate at BuySafe's multichannel selling conference." *Id.*

iii. Ms. Steiner was "[i]nvited to cover conferences (with press credentials) at many industry conferences including, eBay Live (2002-2008); eBay and PayPal Developer conferences; Search Engine Strategies; Etail East; NRF's Shop.org conference; Yahoo Merchant Summit." *Id.*

iv. Ms. Steiner was "[i]nvited to speak at the Appraisers Association of America National Conference in NYC." *Id.*

6

d.  "Ina has appeared on television and radio programs to talk about ecommerce and the online-auction industry, including Public Radio's Marketplace, National Public Radio's On Point, eBay Radio, CNBC Squawk Box, CNN Anderson Cooper 360, CNBC's 'Closing Bell with Maria Bartiromo,' and Bloomberg Radio's Tomorrow Tonight." Ex. E, I. Steiner Interrogatory Responses & Objections at 31; *see also* Ex. F, Steiner Associates LLC Interrogatory Responses & Objections at Interrogatory 12–35 (listing approximately 130 interviews, features, citations); Ex. G, Tr. I. Steiner 30(b)(6) 154:3–159:21 (confirming response to Interrogatory 6).

   i.  "Ina wrote and anchored the "EcommerceBytes News in Review" program on EcommerceBytes.TV…." Ex. E, I. Steiner Interrogatory Responses & Objections at 32.

e.  "She has been quoted in Wall Street Journal, New York Times, BusinessWeek Smart Money Magazine, Fortune Small Business, CNET, USA Today, San Jose Mercury News, profiled in the Boston Globe, Boston Herald, and ContentBiz." Ex. E, I. Steiner Interrogatory Responses & Objections at 31–32; *see also* Ex. F, Steiner Associates LLC Interrogatory Responses & Objections at 12–35 (listing approximately 130 interviews, features, citations); Ex. G, Tr. I. Steiner 30(b)(6) 154:3–159:21 (confirming response to Interrogatory 6).

21.  Plaintiffs have testified that EcommerceBytes was a "leading source of ecommerce information and data nationwide" and had a "stellar reputation … in the ecommerce industry" "based on Ina and David Steiner's work within the field." Ex. F, Steiner Associates

LLC Interrogatory Responses & Objections at 12–13; Ex. G, Tr. I. Steiner 30(b)(6) 154:3–159:21 (confirming response to Interrogatory 6).

    a. EcommerceBytes was "Named Forbes Best of the Web for 2 years." *Id.*

    b. EcommerceBytes was "named one of the world's top 30 blogs." *Id.*

22. Plaintiffs assert that the EcommerceBytes website was worth at least $10 million. Ex. H, Plaintiffs' Rule 26(a) Supplemental Initial Disclosures at 87 (July 30, 2024); Ex. G, Tr. I. Steiner 30(b)(6) 162:3–24.

**B.    Statements Identified In Response To Interrogatory 28**

23. ***Interrogatory 28 requested defamatory statements.*** Defendants' Interrogatory No. 28 requested that each Plaintiff: "List each defamatory statement You attribute to eBay Inc . or any other defendant in this case, and provide for each statement the source, Date, time, medium, contents of the message, and name of the defendant(s) to whom You attribute it." Ex. E, I. Steiner Interrogatory Responses & Objections at 98–102; Ex. I, D. Steiner Interrogatory Responses & Objections at 44–46. Plaintiffs identified the following statements.[1] Each statement below is copied from Plaintiffs' interrogatory responses; eBay accepts that Plaintiffs' interrogatory responses accurately reflect the allegedly defamatory statements for the purposes of this Motion for Summary Judgment.

24. ***Mallabo (Ref. No. 1).*** "In 2009, Defendant eBay through its Director of Communications Jose Mallabo posted a comment on the EcommerceBytes website without disclosing his identity and denigrated us and advised Plaintiffs to study the fuzz in our belly button."

---

[1] Quotations are from Ms. Steiner's interrogatory responses unless stated otherwise.

a. Plaintiffs were aware of this allegedly defamatory statement in 2009. Ex. J, Tr. D. Steiner 30(b)(6) 201:25–202:14.

25. ***eBay Ink (Ref. No. 2)***. "On 9/8/2008, eBay […] published a post on eBay's 'eBay Ink' […] to take Plaintiff to task about what they called inaccuracies in Plaintiff's reporting. They said Plaintiff was 'inaccurate,' 'uninformed,' 'absolutely false,' 'incorrect,' 'absurd,' 'misinformed,' 'no basis in reality,' and 'lacking in any real understanding of business.' Taken as a whole, Defendant eBay's blog post was meant to discredit Plaintiff with eBay sellers and EcommerceBytes readers."

a. Plaintiffs were aware of this allegedly defamatory statement in 2008. Ex. K, Tr. I. Steiner Individual 95:17–18.

b. Ms. Steiner acknowledged that "uninformed," "absurd," and "misinformed" are statements of opinion. *Id.* at 95:21–96:9.

26. ***Tweets (Ref. Nos. 49-50, 53)***. "[T]weets that Plaintiff hurt sellers' businesses."

a. Specific Tweets were identified in response to Interrogatory No. 9. Additional detail regarding each Tweet is provided *infra* Part II.C.

27. ***Pornographic magazines (Ref. No. 3)***. "[S]ending 'Barely Legal' porn to neighbors in David's name."[2]

a. The recipients of the pornography were aware that the Steiners had a stalker prior to receipt of the magazines.

i. According to Ms. Steiner, the recipients of the magazines were Mr. and Ms. C, Mr. F, and Mr. M.[3] Ex. K, Tr. I. Steiner Individual 104:7–10.

---

[2] *See also* Ex. E, I. Steiner Interrogatory Responses & Objections at 19 ("Plaintiffs' reputation was harmed when defendants sent pornography in David's name to three of Plaintiffs' neighbors.").

[3] The names of the individuals are known to the parties and are pseudonymized here to protect the individuals' privacy.

ii. Mr. and Ms. C and Mr. F were aware that the Steiners had a stalker prior to receipt of the magazines. Ex. K, Tr. I. Steiner Individual 105:17–24; Ex. L, Tr. D. Steiner Individual 147:4–149:8.

iii. Neither of the Steiners knows whether Mr. M was aware that the Steiners had a stalker prior to receipt of the magazine. Ex. K, Tr. I. Steiner Individual 107:5–108:4; Ex. L, Tr. D. Steiner Individual 144:10–146:18.

iv. Mr. M testified that he did not receive a pornographic magazine. Ex. M, Tr. of Mr. M 25:10–26:10.

28. *Craigslist ads (Ref. No. 4).* "[P]lacing ads in Plaintiffs' local community portraying them as drug users and sex swingers."[4]

a. This allegation refers to two Craigslist posts contained in Ex. N, June 11, 2020 Affidavit of Mark Wilson. Ex. K, Tr. I. Steiner Individual 109:12–110:7. These posts are reproduced from the Affidavit of Mark Wilson immediately below. The advertisements did not identify the Steiners by name. Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶¶ 102, 106.

---

[4] *See also* Ex. E, I. Steiner Interrogatory Responses & Objections at 19 ("Plaintiffs' reputation was harmed when defendants placed classified ads advertising sex parties at their home.").





b. No person visited the Steiners' residence in response to advertisements involving drugs or sex. Ex. K, Tr. I. Steiner Individual 128:18–130:23; *see also id.* 73:3–73:20; Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶¶ 105–08. Ms. Steiner could not recall being aware of these two Craigslist advertisements prior to June 2020. Ex. K, Tr. I. Steiner Individual 110:11–111:11.

29.    *Newsletters (Ref. No. 29).* "[S]igning Plaintiff up for newsletters of a political, sexual, and medical nature that could be used by companies (including insurance companies) to profile Plaintiff inaccurately."[5]

    a.    Plaintiffs are not aware of any person other than Plaintiffs and the criminal defendants who was aware of these sign-ups. Ex. K, Tr. I. Steiner Individual 112:17–113:22.

    b.    Newsletter subscriptions are generally processed on an automated basis. *Id.* at 114:15–24.

    c.    Plaintiffs are not aware of the signups being used by any insurance company to profile them incorrectly. *Id.* at 112:1–16.

    d.    Plaintiffs speculate that a "Dun & Bradstreet report" about them was influenced by the signups. Ex. K, Tr. I. Steiner Individual 112:9-13.

30.    *"Biased troll" (Ref. No. 6).* "Defendant Steve Wymer called Plaintiff a 'biased troll.' That statement also got picked up in news articles, harming Plaintiff's reputation."

    a.    Wymer called Ms. Steiner a "biased troll" in a text message to Baugh in August 2019. Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶ 38.

    b.    There is no evidence in the record that Wymer or any person under eBay's direction or control intended republication of this statement. *Cf.* Ex. K, Tr. I. Steiner Individual 116:17–117:13.

---

[5] *See also* Ex. E, I. Steiner Interrogatory Responses & Objections at 29 ("Plaintiff believe that her 'social credit' may have declined, which she believes could cause her accounts to be flagged in the future (i.e., health and life insurance companies, apartment rentals, nursing homes, gyms, etc.), since the defendants used her identity to make purchases and/or sign her and David Steiner up for products and services….").

31.     *Natick Police Department (Ref. No. 7).* "Defendant Brian Gilbert defamed Plaintiff with the Natick Police Department on or around the August 2019 time period."[6]

    a.  The criminal defendants discussed making false statements about Plaintiffs to the Natick Police Department.

        i.  Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶¶ 120–22, 156–60 ("Knowing that the NPD was investigating the harassment of the Victims, Gilbert stated to the group: 'The more I thought about it I do think we should bring a dossiers on the [Victims] to the PD. Definitely want to make them look crazy.' BAUGH replied, 'I agree,' and Popp relied, 'Copy re dossiers.'"); *id.* ¶ 138 ("Popp emailed BAUGH and Gilbert several documents: (1) the false [persons of interest ("POI")] document featuring the Victims as eBay's two top Persons of Interest along with selections from the Newsletter's comments critical of or mocking eBay and Executive 1; (2) an eBay POI list that did not include the Victims but did include a POI that the Victims had mentioned to the NPD; (3) screenshots of the unsuckEbay Parody Account; and (4) a selection of the tweets that Popp had written targeting the Victims.").

        ii.  Ex. K, Tr. I. Steiner Individual 72:10–17 ("[I]t's my understanding from the government documents that he had with him a dossier on David and me, saying that we had threatened eBay executives […] you could see the chatter behind the scenes, 'Make them look crazy.'").

---

[6] *See also* Ex. E, I. Steiner Interrogatory Responses & Objections at 21 ("Plaintiff's reputation was harmed by Defendant Brian Gilbert in his discussions with the Natick Police Department, when he devised the idea of bringing dossiers on Plaintiffs to the NPD ('Definitely want to make them look crazy') in an August 20, 2019 WhatsApp exchange to which Defendants Popp and Baugh agreed.").

b. The criminal defendants ultimately did not make false statements about Plaintiffs to the Natick Police Department.

  i. Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶ 174 n.13 ("Although Popp and BAUGH had equipped Gilbert with the document described above, Gilbert did not show any of them to the NPD); *id.* ¶¶ 126–31, 135, 139–45 (reflecting a number of false statements by Gilbert to the Natick Police Department regarding the criminal defendants' activities, but no false statements regarding Plaintiffs).

  ii. Ex. O, B. Gilbert's Responses to eBay, Inc.'s Requests for Admission at 8 (admitting that Gilbert did not share the POI document with anyone other than the Criminal Defendants).

32.    ***Persons of interest file (Ref. No. 8).*** "Defendants created a fake persons of interest file for Plaintiff."[7]

a. The criminal defendants internally circulated among themselves a persons of interest file identifying the Steiners as having threatened eBay executives.

  i. Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶ 138 ("Popp emailed BAUGH and Gilbert several documents: (1) the false POI document featuring the Victims as eBay's two top Persons of Interest along with selections from the Newsletter's comments critical of or mocking eBay and Executive 1; (2) an eBay POI list that did not include the Victims but did include a POI that the Victims had mentioned to the NPD; (3)

---

[7] *See also* Ex. E, I. Steiner Interrogatory Responses & Objections at 21 ("Plaintiff's reputation was harmed when Defendants added her name to a bulletin titled 'eBay Open 2019 Top POI's' that claimed Plaintiff operated the UnsuckeBay account and that she did so in order to make direct threats to the company, its employees, and executives; particularly Defendant Devin Wenig, and called Plaintiff a 'direct and credible threat.'")

14

screenshots of the unsuckEbay Parody Account; and (4) a selection of the tweets that Popp had written targeting the Victims.").

    ii. Ex. K, Tr. I. Steiner Individual 72:10–17 ("[I]t's my understanding from the government documents that he had with him a dossier on David and me, saying that we had threatened eBay executives […] you could see the chatter behind the scenes, 'Make them look crazy.'").

b. The criminal defendants ultimately did not circulate the persons of interest document to the Natick Police Department or to anyone other than the criminal defendants.

    i. Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶ 174 n.13 ("Although Popp and BAUGH had equipped Gilbert with the document described above, Gilbert did not show any of them to the NPD); *id.* ¶¶ 126–31, 135, 139–45 (reflecting a number of false statements by Gilbert to the Natick Police Department regarding the criminal defendants' activities, but no false statements regarding Plaintiffs); Ex. O, B. Gilbert's Responses to eBay, Inc.'s Requests for Admission at 8 (admitting that Gilbert did not share the POI document with anyone other than the Criminal Defendants).

    ii. Plaintiffs are not aware of the persons of interest document being circulated outside eBay, including to the Natick Police Department. Ex. K, Tr. I. Steiner Individual 121:5–24.

33.   ***Threats against Wenig (Ref. No. 9).*** "Defendants falsely claimed Plaintiff made threats against Defendant Wenig."

a.  The criminal defendants internally circulated a persons of interest file listing the Steiners.

      i.  Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶ 65 ("BAUGH also directed Stockwell and Zea to create a document that featured Victims 1 and 2 as eBay 'Persons of Interest' (or 'POIs') […] this document falsely suggested that Victims 1 and 2 were the authors of the Parody Account, and that Victims 1 and 2 had disparaged and threatened eBay executives"); *id.* ¶ 138 ("Popp emailed BAUGH and Gilbert several documents: (1) the false POI document featuring the Victims as eBay's two top Persons of Interest along with selections from the Newsletter's comments critical of or mocking eBay and Executive 1; (2) an eBay POI list that did not include the Victims but did include a POI that the Victims had mentioned to the NPD; (3) screenshots of the unsuckEbay Parody Account; and (4) a selection of the tweets that Popp had written targeting the Victims.").

      i.  Ex. K, Tr. I. Steiner Individual 72:10–17 ("[I]t's my understanding from the government documents that he had with him a dossier on David and me, saying that we had threatened eBay executives […] you could see the chatter behind the scenes, 'Make them look crazy.'"); *id.* at 122:21–23 ("we're in territory where I'm relying on the government and anything that was produced. I don't have knowledge of this myself").

16

b. The criminal defendants ultimately did not circulate the persons of interest document to the Natick Police Department or to anyone other than the criminal defendants.

 i. Ex. O, B. Gilbert's Responses to eBay, Inc.'s Requests for Admission at 8 (admitting that Gilbert did not share the POI document with anyone other than the Criminal Defendants).

 ii. Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶ 174 n.13 ("Although Popp and BAUGH had equipped Gilbert with the document described above, Gilbert did not show any of them to the NPD); *id.* ¶¶ 126–31, 135, 139–45 (reflecting a number of false statements by Gilbert to the Natick Police Department regarding the criminal defendants' activities, but no false statements regarding Plaintiffs).

34. ***"Cow" (Ref. No. 10).*** "Defendant Jones referred to Plaintiff as a 'cow.'"

a. On or about May 21, 2019, Jones texted Wymer referring to Ms. Steiner as a "cow." Ex. B, Information ¶ 20, *United States v. eBay Inc.*, No. 1:24-cr-10003-PBS, (D. Mass. Jan. 11, 2024), ECF No. 1.

b. There is no evidence in the record that Jones or any person under eBay's direction or control intended republication of this statement.

35. ***Pejorative Private Messages I (Ref. No. 11).*** "Defendants referred to David as a "fat pussy husband" who Plaintiff needed "to put in line."

a. These statements were sent as private messages to Ms. Steiner's Twitter account. Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶ 75; *accord* Ex. K, Tr. I. Steiner Individual 124:15–125:1.

b. There is no evidence in the record these statements were publicly available.

c. Ms. Steiner controls the EcommerceBytes Twitter account. Ex. J, Tr. D. Steiner 30(b)(6) 138:16–139:2.

36. ***Pejorative Private Messages II (Ref. No. 12).*** "Defendants stated that David needed to 'take[] the plugs out of his asshole' and called Plaintiffs 'fucking pussies'."

a. These statements were sent as private messages to Ms. Steiner's Twitter account. Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶ 75.

b. There is no evidence in the record these statements were publicly available.

37. ***Pejorative Private Messages III (Ref. No. 13).*** "Defendants called Plaintiff a 'cunt'."

a. The criminal defendants referred to Ms. Steiner using this vulgarity in several Twitter private messages. Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶¶ 75, 104; *accord* Ex. K, Tr. I. Steiner Individual 124:15–125:1; Ex. P, Amended Complaint ¶ 187 ("the Tui_Elei Account, sent a private message to Ina Steiner asking, 'U get my gifts cunt???'").

b. There is no evidence in the record these statements were publicly available.

a. The criminal defendants also referred to Ms. Steiner using this vulgarity in their internal WhatsApp chain. Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶ 173; Ex. P, Amended Compl. ¶ 258.

38. ***Monjott (Ref. No. 14).*** "Defendant eBay through its relationship with Betsy Bolger Monjott, aka Ebetsy, aka eBetsie (she is a member of eBay Voices, an eBay Ambassador) let stand the following defamatory information in the 'eBay for Business' group on Facebook on June 15, 2020 in a post from eBay Executive Jordan Sweetnam:

18

> Ebetsy Monjott: Ina was working for eBay on a contract labor (i.e., not salaried employee) basis when the IPO went live and has been bitter ever since that she didn't get included in the distribution. I agree that the comment threads are where you find the outright vitriol, but EcommerceByte's editorial tone is invariably pejorative. I think Tamebay gives much more even-handed coverage of eBay news. Just MHO. As for the commenters, I don't think anything justifies their viciousness. Or the amount of hatred and bitterness they let take up space in their head when it comes to eBay. It's very sad, really. Marie tries to stem the tide, but she is mostly a lone voice of reason crying in the wilderness.

Shortly thereafter, eBay profiled Betsy Bolger Monjott in a July 24, 2020 post on the eBay corporate blog […] Not only did eBay fail to moderate the false and defamatory statements posted by Monjott, eBay provided her and her statements with legitimacy and notoriety."[8]

    a.  Ms. Steiner asserted that an eBay ambassador is "a person who is not an eBay employee, but is a seller who is – receives some sort of special treatment from eBay a part of a long-term relationship." Ex. G, Tr. I. Steiner 30(b)(6) 185:21–25.

    b.  eBay did not repost the comment. Ex. K, Tr. I. Steiner Individual 136:5–6.

    c.  Plaintiffs stated that the July 24, 2020 "profile" post of Monjott on the eBay corporate blog was not defamatory of Plaintiffs. *Id.* at 137:16–138:11.

    d.  Ms. Steiner stated that it is not her position that eBay was required to moderate the posts on the Facebook page at issue. *Id.* at 139:15-18.

39.  ***Wall Street Journal, Cindy Wenig (Ref. No. 15).*** A *Wall Street Journal* article titled "'Crush This Lady.' Inside eBay's Bizarre Campaign Against a Blog Critic" stated: "Mr. Wenig's wife had texted Mr. Baugh in July about a reader comment that called Mr. Wenig a 'con artist and thief,' under an ECommerceBytes article. 'The author gets people worked up with the

---

[8] *See also* Ex. E, I. Steiner Interrogatory Responses & Objections at 100–01.

way she skews her stories,' Ms. Wenig wrote, according to the affidavit." *See also* Ex. Q (copy of article at issue).

     a. There is no evidence in the record that Cindy Wenig was an employee or agent of eBay.

     b. Ms. Steiner acknowledged that this statement is not defamatory. Ex. K, Tr. I. Steiner Individual 141:11–142:2.

     c. Ms. Steiner acknowledged that this is a statement by the *Wall Street Journal*, not by eBay. *Id.* at 143:19–23.

40.     ***Wall Street Journal, Amazon.com (Ref. No. 16).*** A *Wall Street Journal* article titled "'Crush This Lady.' Inside eBay's Bizarre Campaign Against a Blog Critic" stated: "As part of that strategy, eBay executives tried to prove their suspicion that its rival Amazon.com Inc. was helping to fund ECommerceBytes, two of these people said."[9] *See also* Ex. Q (copy of article at issue).

     a. Ms. Steiner acknowledged that she has no basis or evidence to suggest that eBay executives did not try to prove their suspicion that Amazon was funding eCommerceBytes. Ex. K, Tr. I. Steiner Individual 143:24–145:5; *id.* at 140:15–20 ("I believe that eBay had a theory or suspicion that […] Amazon was helping to fund eCommerceBytes"); *see also generally id.* at 140:6–150:22.

     b. Ms. Steiner acknowledged that this is a statement by the *Wall Street Journal*, not by eBay. *Id.* at 143:19–23.

     c. A fuller excerpt from the article states: "As part of that strategy, eBay executives tried to prove their suspicion that its rival Amazon.com Inc. was helping to fund

---

[9] *See also* Ex. E, I. Steiner Interrogatory Responses & Objections at 101.

ECommerceBytes, two of these people said. They ultimately didn't find any evidence of that. An Amazon spokesman said the company has never funded the site." Ex. Q (copy of article at issue)

41.    ***Vox (Ref. No. 17).*** A *Vox* article titled "EBay's former CEO denies any link to the cyberstalking of a blogger. But he did want to create a competitor to challenge her" stated: "The site, and some of its readers who post comments below articles, were often critical of eBay under Wenig's leadership and sometimes of Wenig himself." *See also* Ex. R (copy of article at issue).

    a.  Ms. Steiner acknowledged that this is a statement by *Vox*, not by eBay. Ex. K, Tr. I. Steiner Individual 146:5–7.

    b.  Ms. Steiner acknowledged that the statement is not false. *Id.* at 145:22–146:7 ("I think that this is a reporter who is giving an opinion about eCommerceBytes, and so I would say that while I would disagree with the characterization that we were often critical of eBay, I don't think that basically the statement is false, per se.").

    c.  Plaintiffs have testified that a quote from a former eBay spokesman describing them as "relentlessly critical of eBay" is "positive." Ex. S, Steiner Associates Supplemental Interrogatory Responses & Objections at 5 (in response to interrogatory requesting facts supporting EcommerceBytes' positive reputation, identifying Tweet by Hani Durzy stating: "I was the lead spokesperson at eBay from 04-08 and talked to Ina and David Steiner of @AuctionBytes nearly every day. They were relentlessly critical of eBay, usually for good reason. They cared about the platform. I am horrified, and these staffers should go to prison"); Ex. G, Tr. I. Steiner 30(b)(6) 193:11–23 (describing Durzy Tweet as "positive,"

21

"basically vouching for [Plaintiffs]," and supportive of "the idea that [Plaintiffs] had a good reputation").

42.    ***Daily Mail (Ref. No. 18).*** A *Daily Mail* article titled "Blogger couple were 'sent live spiders' after criticizing eBay" stated: "The two executives failed to yield any evidence to support the theory, but Wenig's wife, Cindy Lee Horowitz, complained to eBay's security team about the tone of ECommerceBytes' reader comments about her husband, claiming than an unknown man had also shown up at their house because of them."

    a.    Ms. Steiner stated that "I don't have any reason to believe that that [the quoted language] is false." Ex. K, Tr. I. Steiner Individual 147:16–148:3.

    b.    There is no evidence in the record that Cindy Wenig was an employee or agent of eBay.

43.    ***ABC7 (Ref. No. 19).*** An ABC7 article was titled: "Former eBay execs face cyberstalking charges after allegedly sending gruesome deliveries to couple." *See also* Ex. U (copy of article at issue).

    a.    Ms. Steiner stated that the headline is accurate. Ex. K, Tr. I. Steiner Individual 148:8–20.

    b.    Ms. Steiner acknowledged that this is a statement by ABC7, not by eBay. *Id.* at 149:16–20.

44.    ***New York Times (Ref. No. 20).*** A *New York Times* article was titled: "Ex-eBay Workers Sent Critics Live Roaches and a Mask of a Bloody Pig Face, U.S. Says." *See also* Ex. V (copy of article at issue).

    a.    As noted above, Ms. Steiner acknowledged that the word "critic" can be a matter of opinion and that characterizing EcommerceBytes's reporting as "often critical

22

of eBay" is not "false per se"; Ms. Steiner also characterized a quote from a former eBay spokesman describing them as "relentlessly critical of eBay" as "positive," "basically vouching for [Plaintiffs]," and supportive of "the idea that [Plaintiffs] had a good reputation." *See supra* ¶ 41 b-c.

b. There is no evidence in the record that eBay, rather than the *New York Times*, wrote or is responsible for the wording in this headline.

### C.     Statements Identified In Response To Interrogatory 9

45.     ***Interrogatory 9 requested information regarding harm to reputation.*** Defendants' Interrogatory No. 9 requested that each Plaintiff: "State all facts, Including descriptions of all Documents or Communications, that support Your contention that You suffered harm to Your reputation as a result of the Criminal Conduct." Ex. E, I. Steiner Interrogatory Responses & Objections at 18–21; Ex. I, D. Steiner Interrogatory Responses & Objections at 16–17; Ex. F, Steiner Associates LLC Interrogatory Responses & Objections at 3. Plaintiffs identified the following statements. Each statement below is copied from Plaintiffs' interrogatory responses; except as it pertains to the statement regarding Elliott Management in Baugh's sentencing memorandum, eBay accepts that Plaintiffs' interrogatory responses accurately reflect the allegedly defamatory statements for the purposes of this Motion for Summary Judgment.

46.     ***Fear of retribution (Ref. No. 21).*** "Plaintiff's reputation was harmed because sellers are wary of speaking to her in fear of retribution from eBay."

a. Plaintiffs have asserted that several persons requested anonymity when communicating with Plaintiffs, *e.g.*, Ex. G, Tr. I. Steiner 30(b)(6) 59:9–17, but these are not statements by eBay.

47.    ***Twitter doxing (Ref. No. 22).*** "Plaintiff's reputation has been harmed because of Defendants' actions in 2019 where they publicly disparaged her on Twitter, where they also doxed her." *See also* Ex. P, Amended Complaint ¶ 187 ("on August 19, 2019 at 9:00am, the Defendants doxed the Steiners, and Defendant Popp, through the Tui_Elei Account, publicly posted the Steiners full name and address then asked 'Dis UR address??'").

    a.   Additional detail regarding each allegedly disparaging Tweet is provided immediately *infra*.

    b.   The criminal defendants doxed the Steiners by posting their true address online. Ex. K, Tr. I. Steiner Individual 102:25–103:24.

48.    ***August 11 Direct Message (Ref. No. 23).*** "On 8/11/19 at 8:56 PM, she received a message threatening to harm Plaintiffs' reputation: 'U are sick motha fuckers.. and every one will kno! U fuckin cunt ass bitch!!'"

    a.   This message was a private message to Ms. Steiner's Twitter account. Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶ 75. As such, it would have been viewable only by her. Ex. K, Tr. I. Steiner Individual 124:21–125:1.

49.    ***"Still live" Tweets I (Ref. No. 24).*** "Some tweets that are still live on Twitter […] include[:] '20 yrs of lies n distroin familys... dunt b proud of dat u wurthless BITCH!!! i wil distroy ur family n bizness 2... C how u like it... @Elei_Tui wen r we goin 2 visit her in natik???'"[10]

---

[10] *See also* Ex. O, Amended Complaint ¶ 198 ("Defendant Popp, using the account with the sinister mask, responded to @TopSeller13 stating, 'I agree! [Ina] is hurting small business with all the negativity and pushing buyers to Amazon!'").

a.  Plaintiffs do not have any knowledge regarding whether anyone other than themselves and the criminal defendants viewed these Tweets. Ex. K, Tr. I. Steiner Individual 97:10–100:13.

b.  Where interactions with these Tweets can be identified, such interactions post-date the June 2020 unsealing of criminal charges and reflect awareness that the Tweets were part of a criminal harassment campaign. October 25, 2024 Decl. of Doug Bania Ex. A, Expert Report of Doug Bania, Oct. 21, 2024, at 22–23.

50.    *"Still live" Tweets II (Ref. No. 25).* "Some tweets that are still live on Twitter […] include[:] 'U R NOT A JOURNALIST!!.. U R DISTROIN FAMILYS N BIZNESS... N ITS ALL GOIN 2 CUM BAK 2 U!!'"

a.  Plaintiffs do not have any knowledge regarding whether anyone other than themselves and the criminal defendants viewed these Tweets. Ex. K, Tr. I. Steiner Individual 97:10–100:13.

b.  Where interactions with these Tweets can be identified, such interactions post-date the June 2020 unsealing of criminal charges and reflect awareness that the Tweets were part of a criminal harassment campaign. October 25, 2024 Decl. of Doug Bania Ex. A, Expert Report of Doug Bania, Oct. 21, 2024, at 22–23.

51.    *"Still live" Tweets III (Ref. No. 26).* "Some tweets that are still live on Twitter […] include[:] WTF!!??? Hey @Elei_Tui wats Ina adress again?? guest i hav to pay her a visit..."

a.  Plaintiffs do not have any knowledge regarding whether anyone other than themselves and the criminal defendants viewed these Tweets. Ex. K, Tr. I. Steiner Individual 97:10–100:13.

b. Where interactions with these Tweets can be identified, such interactions post-date the June 2020 unsealing of criminal charges and reflect awareness that the Tweets were part of a criminal harassment campaign. October 25, 2024 Decl. of Doug Bania Ex. A, Expert Report of Doug Bania, Oct. 21, 2024, at 22–23.

52. ***"Still live" Tweets IV (Ref. No. 27).*** "Some tweets that are still live on Twitter […] include[:] Thx @Elei_Tui 4 the adress... i safed it b4 it gut deleted!!"

a. Plaintiffs do not have any knowledge regarding whether anyone other than themselves and the criminal defendants viewed these Tweets. Ex. K, Tr. I. Steiner Individual 97:10–100:13.

b. Where interactions with these Tweets can be identified, such interactions post-date the June 2020 unsealing of criminal charges and reflect awareness that the Tweets were part of a criminal harassment campaign. October 25, 2024 Decl. of Doug Bania Ex. A, Expert Report of Doug Bania, Oct. 21, 2024, at 22–23.

53. ***"Still live" Tweets V (Ref. No. 28).*** "Some tweets that are still live on Twitter […] include[:] Ina focuz on sumthin else and stop fuckin with our custumers!!! I dunt wanna c unuther fuckin post bout #ebay... Leave our bizness alone!!!!!! @Elei_Tui"

a. Plaintiffs do not have any knowledge regarding whether anyone other than themselves and the criminal defendants viewed these Tweets. Ex. K, Tr. I. Steiner Individual 97:10–100:13.

b. Where interactions with these Tweets can be identified, such interactions post-date the June 2020 unsealing of criminal charges and reflect awareness that the Tweets were part of a criminal harassment campaign. October 25, 2024 Decl. of Doug Bania Ex. A, Expert Report of Doug Bania, Oct. 21, 2024, at 22–23.

54. ***Fidomaster graffiti (Ref. No. 29).*** *"*Defendant Brian Gilbert scrawled 'fidomaster' on their fence in June 2019."

    a. The record reflects that one neighbor of the Steiners viewed this graffiti. Ex. K, Tr. I. Steiner Individual 81:11–13 ("A neighbor saw [the graffiti].").

    b. There is no evidence in the record that any person who viewed the graffiti understood that it was "of and concerning" the Steiners.

    c. There is no evidence in the record that any person who viewed the graffiti understood the term "fidomaster," let alone understood it as a factual statement about the Steiners.

55. ***"Aware Plaintiffs had a stalker" (Ref. No. 30).*** "[N]eighbors saw police cruisers outside their house in August 2019 and then became aware Plaintiffs had a stalker."

    a. Neighbors saw police cruisers outside the Steiners' residence. Ex. L, Tr. D. Steiner Individual 144:10–145:15; Ex. K, Tr. I. Steiner Individual 73:19–22.

    b. The Steiners' neighbors became aware that they had a stalker. Ex. K, Tr. I. Steiner Individual 105:17–107:4; Ex. L, Tr. D. Steiner Individual 146:4–149:9.

    c. The Steiners in fact had stalkers. *See, e.g.*, Ex. E, I. Steiner Interrogatory Responses & Objections at 19 (alleging that misconduct "allow[ed] the plaintiffs to be stalked); *id.* at 36–40 (listing "all unwanted visits"); *id.* at 90–92 (Plaintiffs conveyed that they had a stalker to various persons).

56. ***"eBay critic" (Ref. No. 31).*** "Many media outlets and people refer to Plaintiff as 'an eBay critic.' ('EBay to pay $3 million after employees sent live spiders, funeral wreath and fetal pig to critics - The online auction company called the actions of former employees, who in 2019 targeted a Massachusetts couple behind a critical online newsletter, as 'wrong and

reprehensible,' NBC News, 1/11/2024). The focus has shifted from Plaintiff being known as a reputable reporter on Ecommerce, to being known as a 'critic,' because that is how the Defendants described her."

    a.  Ms. Steiner acknowledged that statements by media outlets are not statements of eBay. Ex. K, Tr. I. Steiner Individual 143:19–23, 146:5–7, 149:16–20.

    b.  As noted above, Ms. Steiner acknowledged that the word "critic" can be a matter of opinion and that characterizing EcommerceBytes's reporting as "often critical of eBay" is not "false per se"; Ms. Steiner also characterized a quote from a former eBay spokesman describing them as "relentlessly critical of eBay" as "positive," "basically vouching for [Plaintiffs]," and supportive of "the idea that [Plaintiffs] had a good reputation." *See supra* ¶ 41 b-c.

    c.  There is no evidence in the record that any employee or agent of eBay called any Plaintiff a "critic" or intended the republication of such statement.

    d.  The Affidavit of Mark Wilson stated: "The anonymous comments [on ECommerceBytes] were sometimes critical of eBay and its executive leadership team." Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶ 22 ("At other times, the comments amounted to name-calling. For example, a May 2015 comment called eBay executives 'liars'….").

57.    ***Google sidebar (Ref. No. 32).*** "Related searches on Google come back with a 'people also ask' sidebar: 'What did the Steiners do to eBay?' (Google explains, 'These are questions people commonly search on Google.')"

    a.  There is no evidence in the record that any employee or agent of eBay stated "What did the Steiners do to eBay?"

58.    ***Blogger (Ref. No. 58).*** "[eBay] described Plaintiff as a 'blogger who writes about the company and her husband' in its 6/15/2020 press release."

    a.    The Steiners, via EcommerceBytes, publish blogs and refer to those blogs as such. Ex. G, Tr. I. Steiner 30(b)(6) 61:5–62:22, 64:8–65:8; *see also* Ex. W, I. Steiner 30(b)(6) Dep. Ex. 11 (screenshot of ECommerceBytes homepage); Ex. E, I. Steiner Interrogatory Responses & Objections at 31 ("As Plaintiff's bio on the EcommerceBytes website shows …. She is the author of the EcommerceBytes blog and was featured in the book, 'Blogging Heroes' (Wiley 2008).").

    b.    EcommerceBytes was "named one of the world's top 30 blogs." Ex. F, Steiner Associates LLC Interrogatory Responses & Objections at 13.

    c.    Ms. Steiner's typical weekly activities include "writing blog posts." Ex. G, Tr. I. Steiner 30(b)(6) 72:10–73:5.

    d.    Mr. Steiner described EcommerceBytes as a blog. Ex. L, Tr. D. Steiner Individual 72:9–11 ("many of our commenters who are in our blogs are admittedly vocal"); *see also, e.g.*, Ex. J, Tr. D. Steiner 30(b)(6) 146:2–3 ("we had custom software for the blogs"); *id.* at 225:10–13 (EcommerceBytes website includes EcommerceBytes blog and AuctionBytes blog); *id.* at 227:16–18 ("Virtually anyone who goes to a blog post" can comment); *id.* at 234:6–20 (comments on EcommerceBytes produced in litigation as "Ecom_blog_comments.slxs");

    e.    Ms. Steiner stated that the term "blogger" is not "in and of itself disparaging." Ex. G, Tr. I. Steiner 30(b)(6) 68:6–10.

59.    ***Edelman, January 7 (Ref. No. 59).*** "eBay's Ryan Moore told Edelman's William Crain and Diane Henry that Plaintiff's content was 'drivel'; and referred to EcommerceBytes as

'click-bait fringe media' (Ryan Moore 1/7/2019 11:56 am email)." *See also* Ex. G, Tr. I. Steiner 30(b)(6) 152:11–22.

       a.  Ms. Steiner testified that "drivel" is a statement of opinion. Ex. K, Tr. I. Steiner Individual 161:12–18.

       b.  Ms. Steiner testified that "click-bait fringe media" is a statement of opinion. Ex. *Id.* at 161:19–162:6.

60.     ***Edelman, January 11 (Ref. No. 35).*** "eBay's Ryan Moore told Edelman's William Crain and Diane Henry characterized Plaintiff's reporting as 'BS'; said Defendant Devin Wenig wanted to call her out for 'shoddy reporting'; and characterized her reporting as 'bush league' (Ryan Moore 1/11/2019 3:33 pm email)." *See also* Ex. G, Tr. I. Steiner 30(b)(6) 152:11–22.

       a.  Ms. Steiner admitted that "BS" is a statement of opinion. Ex. K, Tr. I. Steiner Individual 163:1–12.

       b.  Ms. Steiner admitted that "shoddy reporting" is a statement of opinion. *Id.* at 164:6–24.

       c.  Ms. Steiner admitted that "bush league" is a statement of opinion. *Id.* at 164:25–165:19.

61.     ***Sloane (Ref. No. 36).*** "Defendant Steve Wymer disparaged her reporting to two employees of an external PR agency (Sloane) in an email on May 22, 2019, calling her unfair and falsely asserting that she does not always correct errors when brought to her attention."

       a.  Ms. Steiner testified that calling her "unfair" is an "opinion." Ex. K, Tr. I. Steiner Individual 168:12–15.

b. There is no evidence in the record that it is untrue that Ms. Steiner did "not always correct errors when brought to her attention."

c. Ms. Steiner testified that she has no evidence that Wymer's statements went beyond anyone at the PR agency. *Id.* at 168:5–11.

62. ***Griffith, Sloane (Ref. No. 37).*** In "a May 23, 2019 email to a distribution list that included four people from an external PR agency (Sloane PR)," Ryan Moore "passed along" information from eBay employee Jim "Griff" Griffith "who said he had a conversation with Plaintiff in late 1997 or early 1998 in which she claimed she deserved equity of the company prior to eBay's Initial Public Offering (IPO)."

a. Moore's email states, in relevant part: "Late 1997/Early 1998 – In a conversation with Griff, Ina adamantly suggested that she deserves equity of the company – as did other sellers – prior to the IPO. She claimed Pierre [Omidyar, founder of eBay,] promised sellers equity, but according to Griff, Pierre simply mentioned on a chat board that 'If I could, I would (offer equity).'" Ex. X, EBAY_STEINER_00108903.

b. There is no evidence in the record that Griffith's description of his conversation with Ina, as relayed by Moore, is false.

63. ***Elliott Management (Ref. No. 38).*** "Plaintiff's reputation was harmed by Defendants who devised the false narrative that she was colluding with and possibly receiving funding from an activist investor, Elliott Management. (Defendant Jim Baugh's sentencing memorandum, Case 1:20-cr-10263-PBS Document 227 Filed 09/27/22)."

a. The relevant portion of Jim Baugh's sentencing memorandum states: "In addition, the ELT suspected the Steiners and FidoMaster of colluding with and possibly

receiving funding from an activist investor, Elliott Management, that was critical of eBay executives and wanted to obtain seats on the company's Board." Ex. Y, Defendant Jim Baugh's Sentencing Memorandum at 10, *United States v. Baugh*, No. 20-cr-10263-PBS, (D. Mass. Sep. 27, 2022), ECF No. 227.

b. Ms. Steiner has no evidence that the allegedly false statement was published outside of eBay in any context other than this sentencing memorandum. Ex. K, Tr. I. Steiner Individual Tr. 171:4–12.

c. Plaintiffs do not assert that the sentencing memorandum itself is defamatory. *Id.* at Tr. 171:10–20.

d. Mr. Baugh was not employed by or an agent of eBay at the time of the sentencing memorandum. Ex. Z, Baugh Separation Letter at EBAY_STEINER_00002581.

**D.      Statements Identified In Response To Interrogatory 29**

64.      Plaintiffs have not identified any instance in which eBay or any of the defendants in this case referred to Plaintiffs as "eBay critics."

65.      ***Interrogatory 29 requested "eBay critic" information.*** Defendants' Interrogatory No. 29 requested that each Plaintiff: "List all instances of Your being referred to or described as 'eBay critics' or another similar title or characterization, as alleged in paragraph 377 of the Amended Complaint." Ex. E, I. Steiner Interrogatory Responses & Objections at 103–06; Ex. I, D. Steiner Interrogatory Responses & Objections at 47–51; Ex. F, Steiner Associates LLC Interrogatory Responses & Objections at 393–94. Plaintiffs identified the following statements. Each statement below is copied from Plaintiffs' interrogatory responses; eBay accepts the statements as reflected in Plaintiffs' interrogatory responses as accurate for the purposes of this Motion for Summary Judgment.

66.     *Michelle Fang (Ref. No. 39).* "Just two days after the government made the charges against the criminal defendants public, the former head of eBay North America Litigation Michelle Fang wrote an Op-Ed […] Excerpts: EcommerceBytes (formerly AuctionBytes) has been dogging eBay with negative press coverage since 1999 […] No doubt eBay's leadership felt under a wholesale assault and Steiner was just one of the culprits..." *See also* Ex. AA (copy of article at issue).

  a. Ms. Fang was not employed by eBay at the time of this article's publication. *Id.* (describing Ms. Fang as "former" employee); Ex. G, Tr. I. Steiner 30(b)(6) Tr. 174:14–15.

  b. As noted above, Ms. Steiner acknowledged that the word "critic" can be a matter of opinion and that characterizing EcommerceBytes's reporting as "often critical of eBay" is not "false per se"; Ms. Steiner also characterized a quote from a former eBay spokesman describing them as "relentlessly critical of eBay" as "positive," "basically vouching for [Plaintiffs]," and supportive of "the idea that [Plaintiffs] had a good reputation." *See supra* ¶ 41 b-c.

  c. The Affidavit of Mark Wilson stated: "The anonymous comments [on EcommerceBytes] were sometimes critical of eBay and its executive leadership team." Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶ 22.

67.     *New York Times I (Ref. No. 40).* "The New York Times (and many other publications) called Plaintiffs 'eBay Critics' in a June 27, 2020 headline and quoted eBay C-level executive (Defendant Steve Wymer) referring to Plaintiff as a 'biased troll': 'I want her DONE,' Steven Wymer, eBay's former communications chief, told James Baugh, the company's

former senior director of safety and security. 'She is a biased troll who needs to get BURNED DOWN.'" *See also* Ex. BB (copy of article at issue).

a.  Ms. Steiner acknowledged that statements by media outlets are not statements of eBay. Ex. K, Tr. I. Steiner Individual 143:19–23, 146:5–7, 149:16–20.

b.  As noted above, Ms. Steiner acknowledged that the word "critic" can be a matter of opinion and that characterizing EcommerceBytes's reporting as "often critical of eBay" is not "false per se"; Ms. Steiner also characterized a quote from a former eBay spokesman describing them as "relentlessly critical of eBay" as "positive," "basically vouching for [Plaintiffs]," and supportive of "the idea that [Plaintiffs] had a good reputation."  See supra ¶ 41 b-c.

c.  Wymer called Ms. Steiner a "biased troll" in a text message to Baugh in August 2019. Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶ 38. There is no evidence in the record that Wymer or any person under eBay's direction or control intended republication of this statement.

d.  Ms. Steiner acknowledged that the dissemination of the term "biased troll" is a consequence of the criminal complaint against certain criminal defendants becoming public. Ex. K, Tr. I. Steiner Individual 116:17–20.

e.  There is no evidence in the record that any employee or agent of eBay called any Plaintiff a "critic" or intended the republication of such statement.

f.  The Affidavit of Mark Wilson stated: "The anonymous comments [on ECommerceBytes] were sometimes critical of eBay and its executive leadership team." Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶ 22.

68.     ***San Jose Inside (Ref. No. 41).*** "In a San Jose Inside article focused on the impact of Defendants' actions (related to the criminal conduct) on eBay sellers, the reporter refers to Plaintiff as 'a critic.'" *See also* Ex. CC (copy of article at issue).

      a.   Ms. Steiner acknowledged that statements by media outlets are not statements of eBay. Ex. K, Tr. I. Steiner Individual 143:19–23, 146:5–7, 149:16–20.

      b.   There is no evidence in the record that any employee or agent of eBay called any Plaintiff a "critic" or intended the republication of such statement.

      c.   As noted above, Ms. Steiner acknowledged that the word "critic" can be a matter of opinion and that characterizing EcommerceBytes's reporting as "often critical of eBay" is not "false per se"; Ms. Steiner also characterized a quote from a former eBay spokesman describing them as "relentlessly critical of eBay" as "positive," "basically vouching for [Plaintiffs]," and supportive of "the idea that [Plaintiffs] had a good reputation." *See supra* ¶ 41 b-c.

      d.   The Affidavit of Mark Wilson stated: "The anonymous comments [on ECommerceBytes] were sometimes critical of eBay and its executive leadership team." Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶ 75.

69.     ***Wall Street Journal (Ref. No. 42).*** The *Wall Street Journal* published an article titled "'Crush This Lady.' Inside eBay's Bizarre Campaign Against a Blog Critic." *See also* Ex. Q (copy of article at issue).

      a.   Ms. Steiner acknowledged that statements by media outlets are not statements of eBay. Ex. K, Tr. I. Steiner Individual 143:19–23, 146:5–7, 149:16–20.

      b.   There is no evidence in the record that any employee or agent of eBay called any Plaintiff a "critic" or intended the republication of such statement.

c.  As noted above, Ms. Steiner acknowledged that the word "critic" can be a matter of opinion and that characterizing EcommerceBytes's reporting as "often critical of eBay" is not "false per se"; Ms. Steiner also characterized a quote from a former eBay spokesman describing them as "relentlessly critical of eBay" as "positive," "basically vouching for [Plaintiffs]," and supportive of "the idea that [Plaintiffs] had a good reputation."  See supra ¶ 41 b-c.

d.  The Affidavit of Mark Wilson stated: "The anonymous comments [on ECommerceBytes] were sometimes critical of eBay and its executive leadership team." Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶ 22.

70.  ***Vox (Ref. No. 43).*** A *Vox* article stated: "The site, and some of its readers who post comments below articles, were often critical of eBay under Wenig's leadership and sometimes of Wenig himself." *See also* Ex. R (copy of article at issue).

a.  Ms. Steiner acknowledged that statements by media outlets are not statements of eBay. Ex. K, Tr. I. Steiner Individual 143:19–23, 146:5–7, 149:16–20.

b.  There is no evidence in the record that any employee or agent of eBay called any Plaintiff a "critic" or intended the republication of such statement.

c.  As noted above, Ms. Steiner acknowledged that the word "critic" can be a matter of opinion and that characterizing EcommerceBytes's reporting as "often critical of eBay" is not "false per se"; Ms. Steiner also characterized a quote from a former eBay spokesman describing them as "relentlessly critical of eBay" as "positive," "basically vouching for [Plaintiffs]," and supportive of "the idea that [Plaintiffs] had a good reputation."  See supra ¶ 41 b-c.

    d.   The Affidavit of Mark Wilson stated: "The anonymous comments [on

         ECommerceBytes] were sometimes critical of eBay and its executive leadership

         team." Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶ 22.

71.    ***Daily Mail (Ref. No. 44).*** The *Daily Mail* published an article titled "Blogger couple were 'sent live spiders' after criticizing eBay."

    a.   Plaintiffs' interrogatory responses do not identify any responsive text other than the title of the article.

    b.   As noted above, Ms. Steiner acknowledged that the word "critic" can be a matter of opinion and that characterizing EcommerceBytes's reporting as "often critical of eBay" is not "false per se"; Ms. Steiner also characterized a quote from a former eBay spokesman describing them as "relentlessly critical of eBay" as "positive," "basically vouching for [Plaintiffs]," and supportive of "the idea that [Plaintiffs] had a good reputation." *See supra* ¶ 41 b-c.

72.    ***ABC7 (Ref. No. 45).*** An ABC7 article was titled: "Former eBay execs face cyberstalking charges after allegedly sending gruesome deliveries to couple." *See also* Ex. U (copy of article at issue).

    a.   Ms. Steiner stated that the headline is accurate. Ex. K, Tr. I. Steiner Individual 148:8–20.

    b.   Ms. Steiner acknowledged that this is a statement by ABC7, not by eBay. *Id.* at 149:16–20.

73.    ***New York Times II (Ref. No. 46).*** The *New York Times* published an articled titled: "Ex-eBay Workers Sent Critics Live Roaches and a Mask of a Bloody Pig Face, U.S. Says." *See also* Ex. V (copy of article at issue).

   a.   Ms. Steiner acknowledged that statements by media outlets are not statements of eBay. Ex. K, Tr. I. Steiner Individual 143:19–23, 146:5–7, 149:16–20.

   b.   There is no evidence in the record that any employee or agent of eBay called any Plaintiff a "critic" or intended the republication of such statement.

   c.   As noted above, Ms. Steiner acknowledged that the word "critic" can be a matter of opinion and that characterizing EcommerceBytes's reporting as "often critical of eBay" is not "false per se"; Ms. Steiner also characterized a quote from a former eBay spokesman describing them as "relentlessly critical of eBay" as "positive," "basically vouching for [Plaintiffs]," and supportive of "the idea that [Plaintiffs] had a good reputation." *See supra* ¶ 41 b-c.

   d.   The Affidavit of Mark Wilson stated: "The anonymous comments [on ECommerceBytes] were sometimes critical of eBay and its executive leadership team." Ex. N, June 11, 2020 Affidavit of Mark Wilson ¶ 22.

74.    In a supplemental response to Interrogatory No. 6 ("State all facts … that support Your contention that EcommerceBytes is or was a 'leading source of ecommerce information and data nationwide" and has or had a "stellar reputation as an unbiased and impartial reporting source in the ecommerce industry"), Plaintiff Steiner Associates LLC identified a Tweet by Hani Durzy stating: "I was the lead spokesperson at eBay from 04-08 and talked to Ina and David Steiner of @AuctionBytes nearly every day. They were relentlessly critical of eBay, usually for good reason. They cared about the platform. I am horrified, and these staffers should go to prison." Ex. S, Steiner Associates Supplemental Interrogatory Responses & Objections at 5.

38

a.  Ms. Steiner testified that Mr. Durzi's Tweet was "positive," was "basically vouching for us," and "support[s] the idea that [Plaintiffs] had a good reputation." Ex. G, Tr. I. Steiner 30(b)(6) 193:11–23.

### E.      Other Statements

75.      ***Phishing (Ref. No. 47).*** The Amended Complaint alleges that in May 2012 "eBay falsely accused and reported EcommerceBytes as a phishing site. eBay later admitted its error and retracted its report." Ex. P, Amended Complaint ¶ 48.

a.  Plaintiffs were aware of this phishing report in 2012. Ex. J, Tr. D. Steiner 30(b)(6) 202:15–204:13.

## III.    Undisputed Facts Regarding Plaintiffs' Negligent Retention Claims

### A.      Jim Baugh's Employment at eBay

76.      As Senior Director of Safety and Security, Baugh reported to Jones. October 27, 2024 Decl. of Wendy Jones ¶ 5 ("In July 2017, Mr. Baugh became eBay's Senior Director of Safety & Security and became my direct report.").

77.      Jones had regular 1:1 meetings with Baugh every two to four weeks. October 27, 2024 Decl. of Wendy Jones ¶ 7 ("By way of example, my supervision of Mr. Baugh, like my supervision of other direct reports, involved regular staff meetings, 1:1 meetings that would generally take place every two to four weeks, additional meetings and communications (e.g., email) as business needs demanded, annual reviews, observation and assessment of outcomes, the review of internal survey results.").

78.      Jones did not observe Baugh do anything that suggested he had violent tendencies. October 27, 2024 Decl. of Wendy Jones ¶ 11 ("I did not observe any conduct that would suggest that Mr. Baugh was capable of the criminal acts he committed in Natick. I never observed Baugh do anything illegal or anything that suggested violent or criminal tendencies.  I

never observed, or heard about, any of the violent drills, videos or similar activities described in the complaint as occurring in the Security offices until after the events in Natick.  I also never observed, or heard from others, that Baugh in any way harassed or mistreated the individuals he managed until this litigation.").

79.    ███████████████████████████████████████████

███████████████████████████████████ Ex. DD, Baugh 2018 Annual

Performance Review at EBAY_STEINER_00002546–47.

    a.    ████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████ *Id.* █████████████████████

████████████████████████████ *Id.* at

EBAY_STEINER_00002546.

    b.    ████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████

██████ *Id.* at EBAY_STEINER_00002547. █████████████████

████████████████████████ *Id.* ██████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████ *Id.*

80.     eBay has numerous reporting channels that employees, including GSR employees and contractors, could have used to report misconduct, abuse, or violent behavior by a supervisor or coworker.

   a. Ex. EE, eBay Professionalism Standard at EBAY_STEINER_00199025 (instructing employees to report violations of eBay's Professionalism Standard to the employee's "manager, Human Resources, the Legal Department, [] a member of senior management" or confidentially via the "eBay Ethics Hotline").

   b. Ex. FF, eBay 2019 Annual Compliance Training at EBAY_STEINER_00196750, EBAY_STEINER_00196754 (instructing employees and contractors to report workplace violence to the employee's "local security representative, manager, [] People Experience" or "confidentially and anonymously by contacting eBay's Integrity Helpline"); Ex. BBB, Zea Compliance Training Email at EBAY_STEINER_00215111 (July 7, 2019 email from Defendant Zea confirming her completion of the 2019 Annual Compliance Training); Ex. CCC, Stockwell Compliance Training Email at EBAY_STEINER_00216695 (July 7, 2019 email from Defendant Stockwell stating, "It is my understanding that everyone in the GIC (myself included) completed compliance training several weeks ago."); Ex. DDD, Gilbert and Popp Compliance Training Email at EBAY_STEINER_00020338 (July 7, 2019 emails from Defendants Gilbert and Popp confirming their completion of the 2019 Annual Compliance Training); Ex. T, Harville Training Transcript at EBAY_STEINER_00197512 (training transcript showing that Defendant Harville completed the 2019 Annual Compliance Training on June 16, 2019).

c. Ex. GG, eBay Code of Conduct at EBAY_STEINER_00211062 ("The Integrity

Helpline is available 24 hours a day, 7 days a week and is a resource for asking

questions and reporting suspected misconduct or violations of the law or the

Code. All calls to the Helpline are confidential and can be made anonymously in

your local language. Additionally, you can choose to submit reports online

without speaking with an operator.").

81.    There is no evidence in the record of reports to eBay regarding Baugh's

misconduct toward subordinates or violent behavior.

a. Ex. C, Tr. A. Apte 30(b)(6) 206:4–14 ("Q. eBay kept a personnel file on Jim

Baugh; correct? A. Correct. Q. And there's nothing in Jim Baugh's personnel file

to suggest that a complaint was ever lodged against him; correct? A. That is

correct. All I'm recalling is Ms. Jones had some feedback for him in his

performance review about how he could improve in his role. Q. But it wasn't a

complaint; correct? A. Correct.").

b. Ex. HH, Tr. C. Amara 29:18–25 ("Q. We talked earlier about the mechanisms that

are in place through which an employee could report an HR concern? A. Uh-huh.

Q. Remember that? To your knowledge, did any employee through any of those

avenues report a concern about Mr. Baugh? A. I don't recall any.")

c. *Id.* 33:20–35:4 ("Q. Through your personal observations or through any of the

multiple ways in which someone could report an HR concern, did you ever hear

of a situation where someone on Mr. Baugh's team had committed violent acts?

A. No. Q. Did you ever hear about or observe Mr. Baugh or anyone else removing

an employee's personal belongings from their locker or dumping those belongings

in the trash? A. No. Q. Did you ever hear about or observe Mr. Baugh showing a clip of any employee falling off of a stool or in an otherwise embarrassing situation? A. No. Q. Did you ever hear of anyone on Mr. Baugh's team forcing members to watch violent videos? A. No. Q. Did you ever hear about any unnecessarily traumatic or violent active shooter drills? A. No. Q. Did you ever hear of anyone stabbing a chair? A. No. Q. Did you ever hear of anyone having inappropriate relationships with other members of the security team? A. No. Q. Did you ever hear in your role as an HR professional any concerns about any security team member behaving in a criminal way? A. No.").

82.     Defendant Cooke admitted he did not make any complaint or other negative report regarding Jim Baugh's behavior to any eBay executive or via any periodic survey by eBay (such as Glint or Pulse surveys). Ex. II, P. Cooke's Responses to eBay, Inc.'s Requests for Admission at 10.

83.     Defendant Gilbert admitted he did not make any complaint or other negative report regarding Jim Baugh's behavior to any eBay executive or via any periodic survey by eBay (such as Glint or Pulse surveys). Ex. O, B. Gilbert's Responses to eBay, Inc.'s Requests for Admission at 9.

84.     Defendant Popp admitted she did not make any complaint or other negative report regarding Jim Baugh's behavior to any eBay executive or via any periodic survey by eBay (such as Glint or Pulse surveys). Ex. JJ, S. Popp's Responses to eBay, Inc.'s Requests for Admission at 9.

85.     Defendant Stockwell admitted she did not make any complaint or other negative report regarding Jim Baugh's behavior to any eBay executive or via any periodic survey by eBay

(such as Glint or Pulse surveys). Ex. KK, Stockwell's Responses to eBay, Inc.'s Requests for Admission at 10; Ex. LL, S. Stockwell Tr. 127:22–25 ("Q. [Y]ou didn't report on misconduct to anyone at -- at eBay outside of the security team? A. That's correct.").

86.    Defendant Zea admitted she did not make any complaint or other negative report regarding Jim Baugh's behavior to any eBay executive or via any periodic survey by eBay (such as Glint or Pulse surveys). Ex. MM, Zea's Responses to eBay, Inc.'s Requests for Admission at 7; Ex. NN, V. Zea Tr. 125:19–126:9 ("Q. At any time, did you report any concerns about the Natick events to a business ethics officer at eBay? A. No. Q. At any time, did you report any concerns about the Natick events to the Integrity Helpline? A. No. Q. At any time, did you report any concerns about the Natick events to the askethics@eBay.com? A. No. Q. At any time, did you report any concerns about the Natick events to anyone in eBay HR? A. No. Q. At any time prior to being interviewed by Amir Vonsover, did you report any concerns about the Natick events to anyone in eBay legal? A. No.").

87.    Surveys of Baugh's subordinates revealed a high level of engagement by Baugh and positive comments from his team. Ex. HH, Tr. C. Amara 28:22–29:11 ("Q. Through working with Mr. Baugh, did you come to have a view on his management capabilities and style? A. I did. Q. What was that view? ████████████████████████████████████ ████████████████████████████████████████ And I say surprising because when you do restructurings like he did, that can often take a hit. I thought that he was very thoughtful in the proposals that he made around team. I remember being impressed by his ability to negotiate with vendors and find efficiencies within the organization.").

    a.    Ex. OO, Baugh Glint Engagement Comments at EBAY_STEINER_00160228 (█

    ████████████████████████████████████

███████████████████████████████████████████████████████

████████

b.  *Id.* ████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████

c.  *Id.* (███████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████

d.  *Id.* (███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████

e.  *Id.* (███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

f.  *Id.* (████████████████████████████████████████

███████████████████████████████████████████

█████████████████

g.  Ex. PP, Baugh Glint Ethics Comments at EBAY_STEINER_00160229 ███

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

██████

88.    ████████████████████████████████

████████████████████████████████████████

████████████ Ex. QQ, Jones 2019 Glint Engagement Heat Map at

EBAY_STEINER_00161816 (reproduced below).



89.    There is no evidence from surveys of Baugh's subordinates of comments regarding Baugh's misconduct toward subordinates or violent behavior.

    a.  Ex. OO, Baugh Glint Engagement Comments at EBAY_STEINER_00160228.

    b.  Ex. PP, Baugh Glint Ethics Comments at EBAY_STEINER_00160229.

**IV.    Undisputed Facts Regarding Plaintiffs' False Imprisonment Claim**

90.    During the course of the harassment campaign, Ina and David Steiner left their house and their car on multiple occasions. Ex. E, I. Steiner Interrogatory Responses & Objections at 92–94; Ex. I, D. Steiner Interrogatory Responses & Objections at 39–42; Ex. L, Tr. D. Steiner Individual 141:4–142:18.

91.    David Steiner testified that the occasions when Plaintiffs left their home during the harassment campaign were spread out over the three-week period of the campaign. Ex. L, Tr. D. Steiner Individual 143:13–15.

92.    On or about August 15, 2019, Ina and David Steiner left both the house and the car when they "went to the post office to mail the requests to have [their] credit frozen" and then left the car again when they went "to the Framingham Post Office to confirm their identification" in order to sign up for Informed Delivery. Ex. E, I. Steiner Interrogatory Responses & Objections at 92, 94; Ex. I, D. Steiner Interrogatory Responses & Objections at 40.

93.    On or about August 16, 2019, Ina and David Steiner left both the house and the car when they "stopped by their friend Dick Graham's garage." Ex. E, I. Steiner Interrogatory Responses & Objections at 93–94; Ex. I, D. Steiner Interrogatory Responses & Objections at 40, 42.

94.    On or about August 16, 2019, Ina and David Steiner left both the house and the car when they "went to Best Buy to purchase security equipment" and then left the car again when they "picked up food on their way home." Ex. E, I. Steiner Interrogatory Responses & Objections at 93; Ex. I, D. Steiner Interrogatory Responses & Objections at 40–42.

95.    On or about August 17, 2019, Ina and David Steiner left both the house and the car when they "drove to the gun store and purchased pepper spray." Ex. E, I. Steiner

47

Interrogatory Responses & Objections at 93; Ex. I, D. Steiner Interrogatory Responses & Objections at 41–42.

96.     On or about August 18, 2019, David Steiner left the house "to drive to the grocery store," and when he was followed, "he drove downtown to the police station." Ex. I, D. Steiner Interrogatory Responses & Objections at 41; Ex. L, Tr. D. Steiner Individual 142:19–143:12.

97.     On or about August 19, 2019, Ina and David Steiner left both the house and the car when they met with Detective Haswell at the Natick Police station and then left the car again when they "went to Home Depot and got some alarms." Ex. E, I. Steiner Interrogatory Responses & Objections at 93; Ex. I, D. Steiner Interrogatory Responses & Objections at 41–42; Ex. L, Tr. D. Steiner Individual 143:6–12.

98.     On or about August 22, 2019, Ina and David Steiner left both the house and the car when they "went to eat near the police station." Ex. E, I. Steiner Interrogatory Responses & Objections at 93–94; Ex. I, D. Steiner Interrogatory Responses & Objections at 41.

99.     On or about August 24, 2019, Ina and David Steiner left both the house and the car when they "went to purchase additional security measures at Home Depot." Ex. E, I. Steiner Interrogatory Responses & Objections at 94; Ex. I, D. Steiner Interrogatory Responses & Objections at 41.

100.    There is no evidence in the record that any Defendant ever fixed any boundaries around Plaintiffs or told Plaintiffs that they could not leave their house or car.

## V.     Undisputed Facts Regarding Plaintiffs' Ratification Claim

### A.     eBay's Response to the Natick Events

#### 1.     eBay's Investigation of the Natick Events

101.    eBay began an internal investigation of the Natick events on August 22, 2019, immediately after being contacted by the Natick Police Department on August 20 and 21, 2019.

48

October 28, 2024 Decl. of Molly Finn ¶¶ 7–8. eBay further rebuffed an effort by Baugh to insert himself into the investigation. October 28, 2024 Decl. of Molly Finn ¶ 9.

102.    Between August 22 and 28, as part of the internal investigation, eBay collected documents and conducted more than 15 interviews, including interviews of Gilbert, Harville, Baugh, Popp, Zea, Wymer, and others. October 28, 2024 Decl. of Molly Finn ¶¶ 9–10.

103.    On or about August 28, 2019, eBay retained the law firm Morgan Lewis & Bockius LLP ("Morgan Lewis") to further investigate the Natick events. Andy Phelan was the partner at Morgan Lewis primarily responsible for representing eBay in the internal investigation. Morgan Lewis, Phelan, and/or eBay conducted more than twenty additional interviews between the end of August 2019 and early 2020, including interviews of Cooke, Jones, Wymer, and Wenig. October 28, 2024 Decl. of Molly Finn ¶¶ 4–6, 11–12.

104.    eBay's internal investigation ultimately involved over 90 interviews of more than 50 different witnesses and the extensive review of documents, including a review of Wenig's and Wymer's 2019 emails using targeted search terms. October 28, 2024 Decl. of Molly Finn ¶ 13.

105.    eBay fully cooperated with the USAO's investigation of the Natick events. October 28, 2024 Decl. of Molly Finn ¶¶ 15–19.

106.    In the DPA, the USAO acknowledged eBay's extensive cooperation with the office's investigation, including proactively disclosing certain evidence of which the United States was previously unaware; providing information obtained through its internal investigation, which allowed the government to preserve and obtain evidence as part of its own independent investigation; making detailed factual presentations to the U.S. Attorney's Office; voluntarily facilitating interviews of employees; and collecting and producing voluminous relevant documents to the USAO. Ex. D, DPA ¶ 4(c).

49

107.   ███████████████████████████████████

███████████████████████████████████████████████

████████████████████████████ October 28, 2024 Decl. of Paul Pressler ¶¶ 9, 11; Ex. EEE,

September 12, 2019 meeting minutes of the Audit Committee of eBay's Board of Directors at

EBAY_STEINER_00212493; Ex. FFF, September 17–18, 2019 meeting minutes of eBay's

Board of Directors at EBAY_STEINER_00216089.

### 2.   Terminations After the Natick Events

108.   The Audit Committee of eBay's Board of Directors held a meeting on September

12, 2019. October 28, 2024 Decl. of Paul Pressler ¶ 9; Ex. EEE, September 12, 2019 meeting

minutes of the Audit Committee of eBay's Board of Directors at EBAY_STEINER_00212493.

109.   ███████████████████████████████████

█████████████████████████████████████████████████

October 28, 2024 Decl. of Paul Pressler ¶ 9; Ex. EEE, September 12, 2019 meeting minutes of

the Audit Committee of eBay's Board of Directors at EBAY_STEINER_00212493.

110.   On September 16, 2019, eBay terminated Baugh, Gilbert, Harville, Popp,

Stockwell, and Wymer for cause as a result of its investigation. October 28, 2024 Decl. of Molly

Finn ¶ 14; Ex. Z, Baugh Separation Letter at EBAY_STEINER_00002581 ("This letter confirms

the decision to terminate your employment with eBay effective immediately for unprofessional

conduct, including, but not limited to: Failing to fully cooperate in an internal eBay

investigation; Failing to be fully accurate and honest in an internal eBay investigation; and Your

involvement in a course of conduct in and around Natick, Massachusetts in August 2019."); Ex.

RR, Gilbert Separation Letter at EBAY_STEINER_00027832 (same); Ex. SS, Harville

Separation Letter at EBAY_STEINER_00027850 (same); Ex. TT, Popp Separation Letter at

EBAY_STEINER_00027860 (same); Ex. UU, Stockwell Separation Letter at

EBAY_STEINER_00027862 (same); Ex. VV, Wymer Separation Letter at

EBAY_STEINER_00207883 ("This letter confirms the decision to terminate your employment

with eBay for cause, effective immediately. You are being terminated due to a variety of

unprofessional conduct, including, but not limited to: Your communications regarding

eCommerceBytes, Ina Steiner, and the events in and around Natick, Massachusetts in August

2019; Your conduct in connection with the investigation into the events in and around Natick,

Massachusetts in August 2019; and Failing to maintain the standards of professionalism,

discretion, and good judgment expected of a senior eBay executive.").



111.     ██████████████████████████████████████████████

████████████████████████  October 28, 2024 Decl. of Paul Pressler ¶ 10; Ex. FFF, September

17–18, 2019 meeting minutes of eBay's Board of Directors at EBAY_STEINER_00216089.

112.     ██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████  October 28, 2024 Decl. of Paul Pressler ¶ 10; Ex. FFF,

September 17–18, 2019 meeting minutes of eBay's Board of Directors at

EBAY_STEINER_00216089.

113.     ██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████  October 28,

2024 Decl. of Paul Pressler ¶ 11; Ex. FFF, September 17–18, 2019 meeting minutes of eBay's

Board of Directors at EBAY_STEINER_00216089.

114. ████████████████████████████████████

████████████████████████████████

October 28, 2024 Decl. of Paul Pressler ¶ 12; Ex. GGG, September 23, 2019 meeting minutes of eBay's Board of Directors at EBAY_STEINER_00212526.

115. ████████████████████████████████

████████████████████████████████████ October 28, 2024 Decl. of Paul Pressler ¶ 12; Ex. GGG, September 23, 2019 meeting minutes of eBay's Board of Directors at EBAY_STEINER_00212526.

116. ████████████████████████████████

████████████████████████████████████

████████████████████████ October 28, 2024 Decl. of Paul Pressler ¶ 12; Ex. GGG, September 23, 2019 meeting minutes of eBay's Board of Directors at EBAY_STEINER_00212526; *see also id.* ████████████████████████

████████████████████████

117. ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████ October 28, 2024 Decl. of Paul Pressler ¶¶ 11–12; Ex. FFF, September 17–18, 2019 meeting minutes of eBay's Board of Directors at EBAY_STEINER_00216089; Ex. GGG, September 23, 2019 meeting minutes of eBay's Board of Directors at EBAY_STEINER_00212526.

118. ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ October
28, 2024 Decl. of Paul Pressler ¶ 13; Ex. GGG, September 23, 2019 meeting minutes of eBay's
Board of Directors at EBAY_STEINER_00212526.

119.    █████████████████████████████████████████

██████████████████████████ October 28, 2024 Decl. of Paul Pressler ¶ 13; Ex. GGG,
September 23, 2019 meeting minutes of eBay's Board of Directors at
EBAY_STEINER_00212526.

120.    ████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████ October 28, 2024
Decl. of Paul Pressler ¶¶ 14–18; Ex. HHH, June 20, 2020 meeting minutes of the Project Lewis
Special Committee of eBay's Board of Directors at EBAY_STEINER_00212546; Ex. III, June
24, 2020 meeting minutes of the Project Lewis Special Committee of eBay's Board of Directors
at EBAY_STEINER_00212548.

121.    Wenig was separated from eBay in September 2019. October 28, 2024 Decl. of
Molly Finn ¶ 14.

122.    On September 16, 2019, eBay terminated Zea's contract to work at eBay as a
result of the investigation of the Natick events. Ex. RRR, Amir Vonsover's September 16, 2019
Zea Termination Email at EBAY_STEINER_00138057; *see also* Ex. WW, Zea PFC Personnel
File at PFC0001130 ("The company has been advised by the client that in continuance of their
investigation your employment on their contract is being terminated.").

123. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Ex. HHH, June 20, 2020 meeting minutes of the Project Lewis Special Committee of eBay's Board of Directors at EBAY_STEINER_00212546; Ex. JJJ, Defendant Cooke's Separation Letter at EBAY_STEINER_00137592.

124. On June 16, 2020, eBay terminated Cooke for cause. October 28, 2024 Decl. of Molly Finn ¶ 14; Ex. HHH, June 20, 2020 meeting minutes of the Project Lewis Special Committee of eBay's Board of Directors at EBAY_STEINER_00212546; Ex. JJJ, Defendant Cooke's Separation Letter at EBAY_STEINER_00137592.

125. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. HHH, June 20, 2020 meeting minutes of the Project Lewis Special Committee of eBay's Board of Directors at EBAY_STEINER_00212546.

126. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ October 28, 2024 Decl. of Paul Pressler ¶ 20.

### 3.    eBay's Unchanged Indemnification Bylaws

127. eBay's bylaws have contained indemnification provisions since at least 2012. Ex. XX, Amended and Restated Bylaws of eBay Inc., Art. VI (Indemnification) (Apr. 27, 2012).[11]

---

[11] *Available at* https://www.sec.gov/Archives/edgar/data/1065088/000119312512191579/d344479dex32.htm (last visited Oct. 25, 2024) (publicly available version of bylaws filed with SEC).

These indemnification provisions were unchanged from 2012 through 2023. Ex. YY, Amended and Restated Bylaws of eBay Inc., Art. VI (Indemnification) (Jan. 12, 2023).[12]

128.    eBay's indemnification bylaws reflect standard industry practice to retain and attract officers and directors. October 28, 2024 Decl. of Molly Finn ¶ 22.

## VI.    Undisputed Facts Regarding Plaintiffs' Claims for Lost Profits and Goodwill Damages

### A.    Plaintiffs' claims as to lost consulting fees

129.    Plaintiffs seek $4,845,000 in damages for the "lost business opportunity for consulting work." Ex. ZZ, Plaintiffs' Rule 26(a) Supplemental Initial Disclosures at 83 (Mar. 4, 2024).

130.    Plaintiffs stated that they "anticipate[d] presenting expert testimony relating to" their alleged lost consulting fees. *Id.*

131.    Plaintiffs have not presented expert testimony relating to their alleged lost consulting fees.

132.    Ms. Steiner stated that she "could potentially earn between $250–450 an hour in consulting income." Ex. E, I. Steiner Interrogatory Responses & Objections at 32.

133.    Ms. Steiner testified that she reached the $250-$450 hourly figure "intuitively," based on her "know[ledge] that [consulting is] a lucrative business." Ex. K, Tr. I. Steiner Individual 49:16–21. Ms. Steiner did not "collect any data to provide any benchmarking," nor could she "tell … how [she] kn[e]w what people make as consultants," *id.* at 49:18–20, or "remember … the specifics" of how she settled on "250 to 450 an hour." *Id.* at 50:4–5.

---

[12] *Available at* https://www.sec.gov/Archives/edgar/data/1065088/000155278123000014/e23005_ex3-1.htm (last visited Oct. 25, 2024) (publicly available version of bylaws filed with SEC).

134.    In May 2024, Mr. Steiner stated that he "could conservatively earn $150/hour" by "consulti[ing] in website design, [search-engine optimization], advertising, and content creation." Ex. I, D. Steiner Interrogatory Responses & Objections at 26.

135.    In July 2024, Mr. Steiner stated that "an hourly rate of $250–450 would have been the requested rate based on [his] experience." Ex. AAA, D. Steiner Supplemental Interrogatory Responses & Objections at 6.

136.    Mr. Steiner testified that he changed his hourly rate from $150 to $250–450 after changing his "thought process" about his "experience" and "the value [he] would bring to a potential client." Ex. L, Tr. D. Steiner Individual 24:21–25:13. He stated that he "d[id] some cursory searches for related services, but nothing — nothing tangible …. No consulting with a headhunter or things of that nature." *Id.* at 26:5–8.

137.    Steiner Associates has never "had a business that involved consulting work." Ex. G, Tr. I. Steiner 30(b)(6) 109:16–22.

138.    Plaintiffs "did not take any steps" toward establishing a consulting business because they "hadn't … decided that that was something that [they] wanted to do" in recent years. *Id.* at 111:22–112:8.

139.    Ms. Steiner has not consulted since "2001 or 2002 or 2003," when she "co-wrote" a single "report." Ex. K, Tr. I. Steiner Individual 42:19–43:20; 44:23–45:1.

140.    Mr. Steiner has done no paid consulting work since the "early 2000s," Ex. L, Tr. D. Steiner Individual 29:5–9, when he "consult[ed] with clients about videos that [he] produced for them" as a "TV producer," *id.* at 26:19–21. That role did not involve "[s]earch [e]ngine [o]ptimization," web-based "content creation," or website design, apart from "one video [he] produced … a long time ago" about the "usability" of "Mosaic." *Id.* at 27:17–28:12.

**B.    Plaintiffs' claims as to lost business value or goodwill.**

141.    Plaintiffs seek $10 million in damages for their business's alleged loss of "goodwill" and "value." Ex. H, Plaintiffs' Rule 26(a) Supplemental Initial Disclosures at 87 (July 30, 2024).

142.    Plaintiffs stated that they would "presen[t] an expert relating to the value of their business" and "the goodwill of their business." *Id.*

143.    Plaintiffs have not presented an expert relating to the value of their business or the goodwill of their business.

144.    Plaintiffs claimed that the value and goodwill of Plaintiffs' business depend, in part, on its "Google rank, user base, value of the content, reputation, [and] marketability of the domain name." *Id.*

145.    Ms. Steiner testified that she "d[id]n't know" the business's "Google rank," "user base," "the value of the content," "the monetary value" of its "reputation," or "the marketability of the domain name." Ex. G, Tr. I. Steiner 30(b)(6) 163:23–164:17.

146.    "[A]t [no] time in the entire 25-year history of EcommerceBytes" have Plaintiffs "ever had a valuation of the business done." Ex. J, Tr. D. Steiner 30(b)(6) 199:12–15.

147.    "Separate and apart from whether [Plaintiffs] actually formally had a business valuation done," they never "informally conduct[ed] a valuation of the business" either. Ex. G, Tr. I. Steiner 30(b)(6) 136:13–17.

148.    No one has ever "prepared a term sheet for the possible purchase of the company." Ex. J, Tr. D. Steiner 30(b)(6) 199:17–19.

149.    Asked for "the basis of a value of the site being $10 million," Ms. Steiner stated that she "provided information, and on the advice of counsel, that's the number that we put here." Ex. G, Tr. I. Steiner 30(b)(6) 162:20–24.