# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Ina Steiner,<br>David Steiner,<br>Steiner Associates, LLC,<br><br>       *Plaintiffs*,<br><br>  v.<br><br>eBay, Inc.,<br>Progressive F.O.R.C.E. Concepts, LLC,<br>Devin Wenig,<br>Steve Wymer,<br>Wendy Jones,<br>James Baugh,<br>David Harville,<br>Brian Gilbert,<br>Stephanie Popp,<br>Stephanie Stockwell,<br>Veronica Zea,<br>Philip Cooke, and<br>John and Jane DOE,<br><br>       *Defendants*. | No. 1:21-cv-11181 |

**DEFENDANT DEVIN WENIG'S MEMORANDUM IN SUPPORT OF**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES..............................................................................................ii

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD ..................................................................................................... 5

ARGUMENT .................................................................................................................. 5

   A.  Plaintiffs' intentional tort claims should be dismissed.................................... 5

     1.  Mr. Wenig did not intentionally inflict emotional distress on Plaintiffs. ................... 6

     2.  Plaintiffs' claim for trespass fails............................................................ 10

     3.  Mr. Wenig is not liable for false imprisonment...................................... 10

   B.  Plaintiffs' negligence claims should be dismissed........................................ 11

     1.  Mr. Wenig did not owe Plaintiffs a duty of care...................................... 11

     2.  Mr. Wenig's purported negligence was not the proximate cause of Plaintiffs' injuries................................................................................. 13

     3.  Plaintiffs' negligent supervision claim fails for independent reasons. ........................ 14

   C.  Mr. Wenig is not liable under the Massachusetts Civil Rights Act.............................. 15

   D.  Mr. Wenig did not defame Plaintiffs. ........................................................... 16

   E.  Mr. Wenig is not liable for civil conspiracy................................................. 18

     1.  Mr. Wenig was not involved in concerted action. ..................................... 18

     2.  Mr. Wenig did not participate in aiding and abetting................................. 19

CONCLUSION............................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Cas. Sur. Co. v. P&B Autobody*,
    43 F.3d 1546 (1st Cir. 1994) ........................................................................................ 19

*Arraj v. United States*,
    95 F. Supp. 3d 150 (D. Mass. 2015) ............................................................................ 13

*Barrigas v. United States*,
    2018 WL 1244780 (D. Mass. Mar. 9, 2018) ............................................................... 11

*Bobbitt v. United States*,
    2006 WL 335231 (D. Mass. Feb. 10, 2006) .................................................................. 9

*Butcher v. Univ. of Mass*,
    111 N.E.3d 294 (Mass. App. Ct. 2018), *aff'd in part, rev'd in part*, 136 N.E.3d
    719 (Mass. 2019) .......................................................................................................... 17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................................ 5

*Cloutier v. City of Lowell*,
    2017 WL 11488633 (D. Mass. July 12, 2017) ............................................................. 16

*Cremaldi-Vickery v. Otis Elevator, Inc.*,
    782 N.E.2d 48, 2003 WL 168452 (Mass. App. Ct. Jan. 21, 2003) .............................. 11

*Davignon v. Clemmey*,
    322 F.3d 1 (1st Cir. 2003) .............................................................................................. 8

*Davis v. Westwood Grp.*,
    652 N.E.2d 567 (Mass. 1995) ...................................................................................... 11

*Delaney v. Reynolds*,
    825 N.E.2d 554 (Mass. 2005) ......................................................................................... 9

*Dilbert v. Hanover Ins. Co.*,
    825 N.E.2d 1071 (Mass. App. Ct. 2005) ...................................................................... 10

*DiMare v. RealtyTrac, Inc.*,
    714 F. Supp. 2d 199 (D. Mass. 2010) .......................................................................... 10

*Do Corp. v. Town of Stoughton*,
    2013 WL 6383035 (D. Mass. Dec. 6, 2013).................................................... 15, 16

*Doe v. Medeiros*,
    168 F. Supp. 3d 347 (D. Mass. 2016)............................................................... 14

*Dulgarian v. Stone*,
    652 N.E.2d 603 (Mass. 1995)........................................................................ 17

*Dyer v. Steward Carney Hosp., Inc.*,
    2021 WL 4554083 (D. Mass. Oct. 5, 2021)...................................................... 6

*Exxon Co., U.S.A. v. Sofec, Inc.*,
    517 U.S. 830 (1996).................................................................................... 10

*Foley v. Polaroid Corp.*,
    508 N.E.2d 72 (Mass. 1987)........................................................................... 7

*Go-Best Assets Ltd. v. Citizens Bank*,
    972 N.E.2d 426 (Mass. 2012)........................................................................ 20

*Jorgensen v. Massachusetts Port Auth.*,
    905 F.2d 515 (1st Cir. 1990).......................................................................... 13

*Jupin v. Kask*,
    849 N.E.2d 829 (Mass. 2006)........................................................................ 11

*Kourouvacilis v. General Motors, Corp.*,
    575 N.E.2d 734 (Mass. 1991)......................................................................... 5

*Leavitt v. Brockton Hosp., Inc.*,
    907 N.E.2d 213 (Mass. 2009)......................................................................... 9

*Lev v. Beverly Enterprises-Massachusetts, Inc.*,
    929 N.E.2d 303 (Mass. 2010)........................................................................ 12

*Maclellan v. Dahlheimer*,
    2012 WL 6971005 (Mass. Super. Dec. 21, 2012)............................................. 7

*Martinez v. Wolferseder*,
    997 F. Supp. 192 (D. Mass. 1998).................................................................. 15

*Martinez-Rodriguez v. Guevara*,
    597 F.3d 414 (1st Cir. 2010).......................................................................... 5

*Meridian at Windchime, Inc. v. Earth Tech, Inc.*,
    960 N.E.2d 344 (Mass. App. Ct. 2012)........................................................... 12

*Morehouse v. Berkshire Gas Co.*,
    989 F. Supp. 54 (D. Mass. 1997) ............................................................ 6

*Neil v. Daimlerchrysler Corp.*,
    538 F. Supp. 2d 304 (D. Mass. 2008) ..................................................... 11

*Payton v. Abbott Labs*,
    512 F. Supp. 1031 (D. Mass. 1981) ........................................................ 19

*Pollard v. Georgetown Sch. Dist.*,
    132 F. Supp. 3d 208 (D. Mass. 2015) ....................................................... 7

*Saldivar v. Racine*,
    818 F.3d 14 (1st Cir. 2016) .................................................................... 14

*Santos v. Kim*,
    706 N.E.2d 658 (Mass. 1999) ................................................................ 13

*Satanic Temple, Inc. v. City of Boston*,
    684 F. Supp. 3d 21 (D. Mass. 2023) ......................................................... 8

*Scholz v. Delp*,
    41 N.E.3d 38 (Mass. 2015) .................................................................... 18

*Shay v. Walters*,
    702 F.3d 76 (1st Cir. 2012) .................................................................... 17

*Steinmetz v. Coyle & Caron, Inc.*,
    862 F.3d 128 (1st Cir. 2017) .................................................................. 12

*Taylor v. Am. Chemistry Council*,
    576 F.3d 16 (1st Cir. 2009) .................................................................... 18

*Thomas v. Harrington*,
    909 F.3d 483 (1st Cir. 2018) ............................................................ 19, 20

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023) .............................................................................. 20

*U.S. v. Baugh*,
    No. 20-cr-10263 (D. Mass. Sept. 29, 2022) ............................................. 9

*Vazquez v. Lopez-Rosario*,
    134 F.3d 28 (1st Cir. 1998) ................................................................. 5, 18

*Vicarelli v. Business Intern., Inc.*,
    973 F. Supp. 241 (D. Mass. 1997) ......................................................... 14

*Williams v. Steward Health Care Sys., LLC,*
  103 N.E.3d 1192 (Mass. 2018).............................................................................5

**Other Authorities**

Fed. R. Civ. P. 56(a)........................................................................................5

## INTRODUCTION

In August 2019, a small group of rogue eBay employees unleashed an abhorrent campaign of harassment on Ina and David Steiner, the publishers of the EcommerceBytes website, in their home in Natick, Massachusetts (the "Natick Events"). The campaign was as bizarre as it was clandestine, and each of its participants took great pains to ensure that only they knew of the disgusting acts they planned and executed. When the details of the Natick Events came to light, then-CEO Devin Wenig, his colleagues at eBay, and the public at large were horrified. Appropriately, eBay engaged in an independent internal investigation. The Department of Justice also began its own comprehensive investigation, indicted the seven responsible individuals (the "Criminal Defendants"), and ultimately secured guilty pleas for every indictment it brought. This was the right result.

Through this civil action, Plaintiffs seek monetary compensation for the Natick Events. There is no disagreement that these events were horrific, and that Plaintiffs may have civil claims against the Criminal Defendants, given their actions and acknowledgement of guilt. But the decision to name Mr. Wenig here was misguided. While he was CEO of eBay when the events occurred, that does not justify holding him responsible for events he did not plan, direct, or know of, especially where the criminal acts were unforeseeable. This Court must consider the evidence as to Mr. Wenig individually, and there is no legal basis for a case against him to continue.

eBay's independent inquiry and the DOJ's investigation were thorough: they involved millions of pages of documents, search warrants by the DOJ, and hundreds of hours of witness interviews. Both concluded that Mr. Wenig had no involvement in the harassment whatsoever. Statement of Material Facts as to Which There Are No Dispute ("SUMF") ¶¶ 30, 36. Likewise, the chief architect of the Natick Events, Jim Baugh, admitted that he and he alone was "one

hundred percent responsible" for orchestrating and effectuating the Natick Events. SUMF ¶ 38. As aptly put by eBay's independent investigator, there was absolutely no evidence that Mr. Wenig ███████████████████████████████████████████ SUMF ¶ 30.

Fact discovery has confirmed these conclusions. After nearly a year, the production of more than 50,000 documents, the taking of 20 depositions, and the issuance of myriad responses to interrogatories and requests for admission, the record of Mr. Wenig's non-involvement is exactly as it was, actually stronger, than when the prior investigations exonerated him. SUMF ¶¶ 37–41.

Against this backdrop, Plaintiffs rest their entire case against Mr. Wenig on two texts, the first in May and the second in August 2019. Through those texts, Mr. Wenig advocated a common, public relations "take down" strategy to expose the errors and bias in Ms. Steiner's reporting. Mr. Wenig did not send those texts to the Steiners, or to Mr. Baugh, or anyone on the eBay security team, but rather, quite appropriately, to eBay's head of communications.

Context is important. The EcommerceBytes articles were long-perceived by eBay and others as ███████████████ ████████████████ and ██████████████████████████████████████ SUMF ¶ 6. The EcommerceBytes blog content also █████████████████████████ *Id.* Documents produced in this litigation confirm that EcommerceBytes sought to monetize discontent among eBay customers: the more traffic the Steiners got to their site, the more advertising they could sell. SUMF ¶¶ 7–8. Plaintiffs also described wanting to "teach" eBay a lesson, and "get [its] attention" through critical articles. SUMF ¶ 8.

While Mr. Wenig was not involved in all of the eBay communications team's day-to-day discussions about the EcommerceBytes coverage, he periodically sent emails and texts over the years suggesting that eBay proactively respond to negative and inaccurate reporting generally.

SUMF ¶¶ 12, 14–17, 23–24. One such idea was to work with outside public relations consultants to create and employ effective communications response strategies. SUMF ¶¶ 18–22.

Shortly before the first of Mr. Wenig's text messages on May 31, 2019, eBay Chief Communications Officer Steve Wymer discussed with public relations consultant Sloane & Company the implementation of a "takedown" communications strategy specific to Plaintiffs' reporting on eBay. SUMF ¶¶ 20, 25. A "takedown" is a public relations strategy to combat negative press coverage by exposing reporting bias. SUMF ¶ 21.

On May 24, 2019, Mr. Wenig emailed Mr. Wymer with a link to a LinkedIn poll that discussed eBay favorably and stated, ██████████████████████████████ ███████████████ SUMF ¶ 23. In other words, Mr. Wenig proposed to Mr. Wymer that he consider using an online poll for the takedown. Mr. Wymer then raised the online poll with Sloane & Company, and asked them to confirm its veracity before using it as part of any takedown strategy. SUMF ¶ 24. A few days later, on May 31, Mr. Wenig texted Mr. Wymer to enact the planned strategy. SUMF ¶ 25. Several months later, on August 1, 2019, Mr. Wenig again texted Mr. Wymer about the communications strategy. SUMF ¶ 27.

Far from illicit commands, Mr. Wenig's texts reflect an appropriate focus on eBay and its customers. SUMF ¶¶ 12, 14. To be sure, the tone of Mr. Wenig's texts is direct. But Plaintiffs contort their context and meaning in an effort to find liability where none exists factually or legally.

There is not a shred of evidence to support Plaintiffs' attempt to reimagine Mr. Wenig's two texts as an illicit directive to unleash the Natick Events. Nor is there a scintilla of evidence that Mr. Wenig knew of or participated in those events. On the contrary, the record is replete with admissions from the Criminal Defendants that Mr. Wenig was not involved. The Criminal Defendants also went to great lengths to conceal and cover up their actions. The Criminal Defendants deleted

documents, used non-eBay email and text platforms, lied to eBay and investigating authorities, and devised bogus cover stories for their actions. SUMF ¶ 61. What is more, the terror campaign they designed and implemented was not foreseeable: it was as ██████████ (as the Plaintiffs themselves have described it, SUMF ¶ 62) as it was unimaginable.

Before the Court are nine claims against Mr. Wenig: (1) intentional infliction of emotional distress; (2) negligence; (3) negligent infliction of emotional distress; (4) negligent supervision; (5) violation of the Massachusetts Civil Rights Act; (6) defamation; (7) trespass; (8) false imprisonment; and (9) civil conspiracy. Each fails as a matter of fact and law.

As to Plaintiffs' intent-based claims—intentional infliction of emotional distress, trespass, and false imprisonment—the complete absence of evidence that Mr. Wenig intended to cause, or was the proximate cause of, that harm compels summary judgment. Plaintiffs' three negligence-based claims should be dismissed as well because Plaintiffs have not established that Mr. Wenig owed them a duty of care or that his alleged negligent acts were the proximate cause of their injuries. Plaintiffs have also failed to prove their defamation claim given that the lone alleged defamatory statement by Mr. Wenig constitutes an inactionable opinion statement. Additionally, Plaintiffs' Massachusetts Civil Rights Act claim must be dismissed because Plaintiffs cannot show that Mr. Wenig personally engaged in behavior that interfered with their constitutional rights. Finally, Plaintiffs' civil conspiracy claim is barred by the intra-corporate conspiracy doctrine, a complete lack of evidence of any agreement Mr. Wenig made with any wrongdoer, and because the undisputed record shows that Mr. Wenig lacked knowledge of tortious activity.

However understandable Plaintiffs' efforts to seek damages from those who actually injured them might be, the unsupported attempt to hold Mr. Wenig liable for wrongs he did not commit, conspiracies orchestrated behind his back, and the deplorable actions of others

unbeknownst to him is a legal step too far and should end now. Summary judgment on all of Plaintiffs' claims should be granted in Mr. Wenig's favor.

## LEGAL STANDARD

A court is required to grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To create a "genuine issue" of material fact, a plaintiff "must 'present definite, competent evidence'" that would support each of the elements of its claims. *Martinez-Rodriguez v. Guevara*, 597 F.3d 414, 419 (1st Cir. 2010). A plaintiff cannot survive a motion for summary judgment merely through "conclusory allegations" or "rank speculation." *Id.* Items that would be "inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vazquez v. Lopez-Rosario*, 134 F.3d 28, 33 (1st Cir. 1998).

Where, as here, the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by showing that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Moreover, where a nonmoving party with the burden of proof can have "no reasonable expectation of proving an essential element of the claim," summary judgment is appropriate. *Williams v. Steward Health Care Sys., LLC*, 103 N.E.3d 1192, 1196 (Mass. 2018) (citing *Kourouvacilis v. General Motors, Corp.*, 575 N.E.2d 734 (Mass. 1991)).

## ARGUMENT

### A. Plaintiffs' intentional tort claims should be dismissed.

Plaintiffs' three intent-based claims all suffer from the same fundamental infirmity: there is no evidence that Mr. Wenig intended to cause Plaintiffs' harm. Moreover, Plaintiffs have not demonstrated, and cannot demonstrate, that Mr. Wenig should have known of the injuries Plaintiffs

would incur, or that Mr. Wenig was the proximate cause of said injuries. Summary judgment is warranted on all three claims.

### 1.  Mr. Wenig did not intentionally inflict emotional distress on Plaintiffs.

To survive summary judgment on a claim of intentional infliction of emotional distress, Plaintiffs must demonstrate that "[Mr. Wenig] intended to inflict emotional distress or that he knew or should have known that emotional distress would result from his action; 2) [Mr. Wenig's] conduct was extreme and outrageous, beyond all bounds of decency and utterly intolerable in a civilized community; 3) [Mr. Wenig's] conduct caused the Plaintiffs' distress; and 4) Plaintiffs' emotional distress was severe and of a nature that no reasonable person could be expected to endure it." *Morehouse v. Berkshire Gas Co.*, 989 F. Supp. 54, 65–66 (D. Mass. 1997) (internal quotations omitted). Plaintiffs have not met this standard.

Conduct is "extreme and outrageous" if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Dyer v. Steward Carney Hosp., Inc.*, 2021 WL 4554083, at *2 (D. Mass. Oct. 5, 2021). To be sure, Plaintiffs were subjected to terrible acts during the Natick Events. And one can assume, for the sake of argument, that such actions satisfied the "extreme and outrageous" requirement for intentional infliction of emotional distress by someone. Even so, Mr. Wenig—who was on a long-planned sabbatical from eBay and out of the country at the time the events took place—is not that someone.

It is undisputed that Mr. Wenig did not participate in the Natick Events and under black-letter law, a defendant must have personally engaged in the "extreme and outrageous" conduct at issue to be held liable on a claim of intentional infliction of emotional distress. *Morehouse*, 989 F. Supp. 54, at 66 (granting summary judgment in favor of defendant where the defendant did not

personally participate in the "extreme and outrageous" conduct of his co-defendants as "inaction cannot" support a finding of liability).

Because Mr. Wenig did not participate in the Natick Events, Plaintiffs rest their intentional infliction of emotional distress claims on Mr. Wenig's two text messages. Even if one deems the texts improper in tone[1] or incorrectly construes them as relating to a non-communications strategy, they do not come close to rising to the level of the "extreme and outrageous" action necessary for an intentional infliction of emotional harm claim to survive summary judgment. *Foley v. Polaroid Corp.*, 508 N.E.2d 72, 82 (Mass. 1987) (finding that extreme and outrageous conduct "cannot be predicated on mere insults, indignities, [or] threats . . . nor even is it enough that the defendant has acted with an intent which is tortious or even criminal").

Nor does the notion that Mr. Wenig purportedly facilitated a "toxic culture" at eBay by using direct language, as Plaintiffs allege, suffice to show extreme and outrageous conduct. *Pollard v. Georgetown Sch. Dist.,* 132 F. Supp. 3d 208, 232 (D. Mass. 2015) (citing *Maclellan v. Dahlheimer*, 2012 WL 6971005, at *3–4 (Mass. Super. Dec. 21, 2012)) (recognizing that "creating an atmosphere conductive to [the alleged "extreme and outrageous" conduct] . . . was not "sufficiently extreme and outrageous" to constitute intentional infliction of emotional distress"). With good reason: it is common that people use strong language which is not taken literally. SUMF ¶ 35.  In fact, Plaintiff David Steiner acknowledged that ██████████████████████████ ███████████████████████████████████ *Id.*

The lack of a dispute of material fact concerning Mr. Wenig's intent also compels summary judgment. After years of investigations and discovery, there is not a single piece of evidence showing that Mr. Wenig intended for eBay personnel to engage in anything but a communications

---

[1] SUMF ¶ 34.

strategy concerning Plaintiffs, or that Mr. Wenig intended to injure Plaintiffs. SUMF ¶¶ 14–17. And as discussed *infra* and *supra* (pgs. 2–3; 13–15), Mr. Wenig had no reason to know that the actions that inflicted emotional harm on Plaintiffs would take place. Moreover, Plaintiffs chose not to depose Mr. Wenig, perhaps in an attempt to avoid eliciting any evidence on this point. *See Satanic Temple, Inc. v. City of Boston*, 684 F. Supp. 3d 21, 33 n.6 (D. Mass. 2023) (recognizing that where plaintiffs decided not to take the deposition of key witnesses, "[i]f relevant evidence is absent from the summary judgment record, it is the result of [plaintiff's] own actions."). On such a record, the "intent" element of Plaintiffs' claim cannot be satisfied.

Plaintiffs also cannot show that Mr. Wenig's actions were the proximate cause of their injuries. *Davignon v. Clemmey*, 322 F.3d 1, 8 n.2 (1st Cir. 2003) (recognizing that a plaintiff must prove that "the defendant's conduct proximately caused plaintiff's emotional distress"). Although the actions taken against Plaintiffs were undoubtably deplorable and shock the conscience, there is no evidence suggesting, much less proving, that that the actions of the Criminal Defendants were foreseeable to Mr. Wenig. The record is devoid of evidence that Mr. Wenig had any knowledge of Mr. Baugh's workplace behavior or the Natick Events; SUMF ¶¶ 30, 33–34, 36–37 in fact, it shows just the opposite. SUMF ¶¶ 38–41. Plaintiffs can also point to no evidence that Mr. Wenig ever spoke with Mr. Baugh or members of the eBay security team about the Steiners or EcommerceBytes. SUMF ¶¶ 30, 38–41.

Further bolstering the point, Ms. Zea and Ms. Stockwell, members of the eBay security team who pleaded guilty for their role in the Natick Events, acknowledged that they were instructed to adhere to a "circle of trust" and did not report either Mr. Baugh's workplace behavior, or their actions relative to the Natick Events, to eBay personnel. SUMF ¶¶ 59–60. The Criminal Defendants each went to great lengths to hide the criminal harassment campaign from Mr. Wenig

and others at eBay while it was happening, including by using WhatsApp and personal emails (rather than work emails) to communicate about criminal conduct, deleting text messages, using non-eBay credit cards, lying to law enforcement, and using phones and computers purchased exclusively for the purpose of the harassment campaign. SUMF ¶¶ 61. To those outside the security team, the group appeared to be fulfilling only its appropriate and legitimate purpose: ensuring safety for eBay's employees. SUMF ¶¶ 44–47.

Moreover, Plaintiffs' theory of liability against Mr. Wenig rests exclusively on his May and August "take down" texts, which, as discussed above, were part of a long-standing and entirely appropriate discussion of communication strategies to respond to Plaintiffs' coverage of eBay. In such circumstances, Plaintiffs cannot establish proximate cause because the complained of injury was plainly not foreseeable. *Bobbitt v. United States*, 2006 WL 335231, at *1 (D. Mass. Feb. 10, 2006); *see Leavitt v. Brockton Hosp., Inc.*, 907 N.E.2d 213, 219–20 (Mass. 2009) (dismissing claim where injury was not within the scope of foreseeable consequences).

Second, a defendant cannot be found to be the proximate cause of the acts of others where an "extraordinary" intervening event results in the complained-of injury. *Delaney v. Reynolds*, 825 N.E.2d 554, 556–57 (Mass. 2005). The actions of the Criminal Defendants are the quintessential definition of this concept. Their behavior was so appalling that the government acknowledged that "the most common question" it "is asked" when "the facts of this case come up" is "who could make this stuff up?" Transcript of Sentencing, *U.S. v. Baugh*, No. 20-cr-10263 (D. Mass. Sept. 29, 2022) ECF 239 at 12. Plaintiffs themselves have (appropriately) described the Natick Events as acts of ███████ and acknowledging being in ███████ at what unfolded. SUMF ¶ 62. So too did eBay personnel, who uniformly testified that the actions of Mr. Baugh and the Criminal Defendants were ███████ and ███████ them. SUMF ¶ 63 (D. Cory, eBay's

Director of Global Security and a direct reportee to Mr. Baugh, describing that he was ███████ and ███████ by the Natick Events; J. Gordon, the Chief of Staff to Communications Officer, testifying that Mr. Baugh's workplace conduct was ███████). As a matter of law, the acts of the Criminal Defendants against Plaintiffs constitute an "extraordinary" intervening event that forecloses liability against Mr. Wenig. *Exxon Co., U.S.A. v. Sofec, Inc.,* 517 U.S. 830, 833–35, 839–40 (1996) (a third party's "extraordinary negligence" was the "sole proximate cause" of the injury, thereby "cut[ting] off" the defendant's liability).

### 2.  Plaintiffs' claim for trespass fails.

It is undisputed that Mr. Wenig never traveled to Natick nor entered Plaintiffs' property: during the time of the Natick Events, Mr. Wenig was on a long-planned sabbatical and outside of the United States. Plaintiffs' claims against Mr. Wenig for civil trespass and trespass to chattels consequently cannot survive summary judgment.

Liability for trespass arises if a person "intentionally . . . enters land in the possession of [an]other, or causes . . . a third person to do so.'" *Dilbert v. Hanover Ins. Co.*, 825 N.E.2d 1071, 1077 (Mass. App. Ct. 2005). For the same reasons that foreclose Plaintiffs' claim of intentional infliction of emotional distress (*see supra* at pgs. 6–8), there is no genuine dispute that Plaintiffs cannot demonstrate that Mr. Wenig possessed the requisite intent to establish scienter. Nor can Plaintiffs establish that Mr. Wenig was the proximate cause of any trespass or trespass to chattels undertaken by the Criminal Defendants. *Supra* at pgs. 8–9; *see DiMare v. RealtyTrac, Inc.,* 714 F. Supp. 2d 199, 208 (D. Mass. 2010) (granting summary judgment in favor of defendant where plaintiff could not establish proximate cause for the alleged trespass of a third party).

### 3.  Mr. Wenig is not liable for false imprisonment.

To establish a triable claim of false imprisonment, a plaintiff must demonstrate that defendant "act[ed] intending to confine another within fixed boundaries; (b) the act directly or indirectly results in confinement; and (c) the plaintiff is conscious of the confinement." *Cremaldi-Vickery v. Otis Elevator, Inc.*, 782 N.E.2d 48 (table), 2003 WL 168452, at *2 (Mass. App. Ct. Jan. 21, 2003). This requires a showing of "specific intent" on the part of the defendant. *Id.* Once again, this element forecloses Plaintiffs' claim as to Mr. Wenig, as there is no evidence in the record suggestive of an intent by him to confine, injure, or harm Plaintiffs. *See supra* at pgs. 6–8. Moreover, while Plaintiffs contend that they felt they were confined to their home during the Natick Events, this subjective view is insufficient to establish a claim of false imprisonment: there must be evidence that Plaintiffs were prohibited from leaving their home as a matter of fact. *Neil v. Daimlerchrysler Corp.,* 538 F. Supp. 2d 304, 322 (D. Mass. 2008) (granting summary judgment to defendants on false imprisonment claim where plaintiff was unable to show intent and there was "no evidence that O'Neil asked or otherwise attempted to leave and was unable to do so.").

**B. Plaintiffs' negligence claims should be dismissed.**

Despite ample opportunity to establish viable negligence claims, Plaintiffs have fallen far short. There is no evidence or law to support that Mr. Wenig owed Plaintiffs a duty, and even if he did, the evidence belies that Mr. Wenig's conduct proximately caused Plaintiffs' harm.

**1. Mr. Wenig did not owe Plaintiffs a duty of care.**

A duty of care is required for Plaintiffs to prevail on their negligence claims. *Barrigas v. United States*, 2018 WL 1244780 at *8 (D. Mass. Mar. 9, 2018) (quoting *Jupin v. Kask*, 849 N.E.2d 829, 834–35 (Mass. 2006)); *see also Davis v. Westwood Grp.*, 652 N.E.2d 567, 569 (Mass. 1995) ("Before liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff…."). The absence of a duty is sufficient basis to deny negligence claims

on a dispositive motion. *See, e.g.*, *Lev v. Beverly Enterprises-Massachusetts, Inc.,* 929 N.E.2d 303, 309 (Mass. 2010). Plaintiffs' negligence claims rest only on the conclusory allegation that Mr. Wenig was subject to, and owed them, "a duty of care not to cause harm." Am. Compl. ¶ 440. But merely saying does not make it so nor satisfy the legal requirements to proceed with a case, and Plaintiffs' conclusory allegations cannot save their claims.

The First Circuit's decision in *Steinmetz v. Coyle & Caron, Inc.* is instructive. 862 F.3d 128, 134 (1st Cir. 2017). In *Steinmetz*, plaintiffs sued a landscape design firm that opposed plaintiffs' plan to build a home. Plaintiffs brought a negligence claim, arguing that the defendant had engaged in illicit activity, including posting defamatory materials online, in an effort to harm plaintiffs' reputation and reduce the chances of their housing permit being approved. As here, plaintiffs theorized that the defendant was subject to a duty to not engage in harmful behavior against them. The First Circuit squarely rejected this theory and noted both that plaintiffs were unable to identify a single case supporting this proposition and that the court's "own survey of Massachusetts negligence law has likewise yielded no sources that articulate such a duty." *Id.* at 140. The negligence claim was dismissed. So too here.

Moreover, it is undisputed that Mr. Wenig and Plaintiffs did not enjoy an employment relationship, a fiduciary relationship, nor any type of association that would inherently give rise to a duty of care under Massachusetts law. Plaintiffs were noncontractual third parties publishing content concerning eBay and the professional services—*i.e.*, the eBay marketplace—it offered. In such circumstances, a professional duty of care only arises when "it[i]s foreseeable and reasonable for [the third party] to rely on the services provided ... by the professional, and the professional ha[s] actual knowledge that [the third party] [i]s relying on the professional's services." *Meridian at Windchime, Inc. v. Earth Tech, Inc.*, 960 N.E.2d 344, 350 (Mass. App. Ct. 2012). But Mr. Wenig

12

provided the Steiners no "services," thus no duty of care arises. *Santos v. Kim*, 706 N.E.2d 658, 662 (Mass. 1999) ("The question in these cases is whether the defendant owed a duty personally to the patient. The radiologist who reads an X-ray and reports his conclusion clearly does; the chief of medicine of a hospital, simply by virtue of his position, does not. The chief's duty is to his employer, not to patients who are not his patients but those of the treating physicians.").

Nor have Plaintiffs demonstrated (or could they demonstrate) that it was "foreseeable and reasonable" for them to rely on any services by Mr. Wenig himself; on the contrary, EcommerceBytes published critical content on eBay and Mr. Wenig from afar. Likewise and unsurprisingly, even if Plaintiffs could stretch the duty doctrine to find that Mr. Wenig provided a service to them, that they relied on that duty, and that it was foreseeable and reasonable that they did (and they cannot), Plaintiffs' negligence claim is further doomed because they have not shown that Mr. Wenig "actually knew" that the Steiners were relying on any such services. Plaintiffs made the strategic decision not to take Mr. Wenig's deposition and have no record evidence supporting this element of their claim; they therefore cannot establish that he possessed "actual knowledge" of Plaintiffs' reliance on his services.

### 2. Mr. Wenig's purported negligence was not the proximate cause of Plaintiffs' injuries.

Even if Mr. Wenig owed Plaintiffs a duty of care, there is no evidence showing that (i) Mr. Wenig's purported negligence was the proximate cause of their injuries, (ii) Mr. Wenig's negligence was a but-for cause of the loss, or (iii) Mr. Wenig's negligence was a substantial factor in bringing about Plaintiffs' loss. *Jorgensen v. Massachusetts Port Auth.*, 905 F.2d 515, 522–23 (1st Cir. 1990). As discussed above, because Plaintiffs have failed to put forth evidence establishing that Mr. Wenig's actions were the proximate cause of their injury, summary judgment is appropriate. *Arraj v. United States*, 95 F. Supp. 3d 150, 152 (D. Mass. 2015).

13

### 3.  Plaintiffs' negligent supervision claim fails for independent reasons.

Additional bases compel summary judgment in favor of Mr. Wenig with respect to Plaintiffs' claim of negligent supervision. In the context of a negligent supervision claim, an employer can be held liable for the acts of its agent-subordinate only when that employer "knew, or should have known, that the offending employee had a proclivity to commit the complained-of acts, and that the employer nevertheless failed to take corrective action." *Vicarelli v. Business Intern., Inc.*, 973 F. Supp. 241, 246 (D. Mass. 1997). Put otherwise, there must be a nexus between the improper workplace events committed by the agent, and the actions of the agent that caused the plaintiff's injury, that establishes that it was foreseeable that the agent would commit the specific complained-of conduct.  As such, an agent's tendency to generally commit bad acts is insufficient to satisfy this burden. *See Doe v. Medeiros*, 168 F. Supp. 3d 347, 354 (D. Mass. 2016) (ruling that "[t]he fact that an employee has a criminal record, by itself, is not automatically sufficient to establish an employer's knowledge" because "[t]here must be a connection between the employee's criminal background and the nature of the alleged tortious conduct"). Rather, Plaintiff must demonstrate that the employer should have been aware that "the employee might harm someone in the same general manner in which the employee is alleged to have harmed the plaintiff." *Saldivar v. Racine*, 818 F.3d 14, 21 (1st Cir. 2016).

The undisputed facts here demonstrate that Mr. Baugh's conduct was unknown to Mr. Wenig and others who worked closely with him.  SUMF ¶¶ 58–60. Mr. Wenig communicated with the eBay security team concerning security (not communications) issues. SUMF ¶¶ 51, 52. (DW requesting that Mr. Baugh research a security issue while asking the communications team to take separate action).

Of course, and as discussed *supra* at pgs. 8-9, the record also demonstrates that members of the security group did not report Mr. Baugh's behavior, foreclosing a finding that Mr. Wenig,

as CEO of a 12,000+ person company, could or should have been aware. Equally, nothing in Mr.

Baugh's employment history suggested that he had the proclivity to terrorize the Steiners. He was

a former government employee, having served for years with various government agencies,

including the Central Intelligence Agency, and in his private sector career had been entrusted with

providing security services for high-profile individuals like then-Vice President Joe Biden and Bill

Gates. SUMF ¶ 57. There is simply no evidence supporting the notion that Mr. Wenig should have

been aware of Mr. Baugh's proclivity to behave as he did.

Plaintiffs have not established that Mr. Wenig owed them a duty of care, was the proximate

cause of the injury, or should have been aware of Mr. Baugh's proclivity to commit acts like those

inflicted on Plaintiffs. As such, summary judgment in favor of Mr. Wenig on Plaintiffs' claims of

negligence, negligent infliction of emotional harm, and negligent supervision is warranted.

### C. Mr. Wenig is not liable under the Massachusetts Civil Rights Act.

Mr. Wenig's lack of involvement with the Natick Events likewise forecloses Plaintiffs'

claim under the Massachusetts Civil Rights Act, Mass. Gen. Laws. ch. 12, § 11*I* (The "MCRA").

To demonstrate a claim under the MCRA, Plaintiffs are required to that show (1) their exercise or

enjoyment of rights secured by the Constitution or laws of either the United States or of the

Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the

interference or attempted interference was by threats, intimidation or coercion." *Do Corp. v. Town*

*of Stoughton*, 2013 WL 6383035, at *12 (D. Mass. Dec. 6, 2013). Direct participation in the

purported interference is the *sine qua non* of an MCRA claim: if Plaintiff is unable to demonstrate

that the defendant "personally engaged in any acts that constituted threats, intimidation, or

coercion" the claim is deficient. *Martinez v. Wolferseder*, 997 F. Supp. 192, 195 (D. Mass. 1998).

Nor can this doctrine be circumvented based on the theory that a defendant instructed, directed, or

encouraged another actor to engage in the complained-of interference. *Do Corp.*, 2013 WL 6383035, at *12 (finding that conduct intended to cause a third party to take an unlawful action against plaintiff "failed to state an MCRA claim" as defendant's conduct was "directed towards" that third party).

Such is the case here. The Criminal Defendants affirmed that Mr. Wenig did not personally direct or instruct them to undertake any action relating to the Natick Events. Put simply, Mr. Wenig did not personally participate in the Natick events (and he did not "instruct, direct or encourage" them) and he cannot be held liable under the MCRA as a matter of law. *Cloutier v. City of Lowell*, 2017 WL 11488633, at *30 (D. Mass. July 12, 2017) (granting summary judgment in favor of defendants concerning an illicit surveillance scheme where "there is no evidence to indicate that [] defendants personally engaged in any conduct giving rise to a claim for a constitutional violation.").

### D. Mr. Wenig did not defame Plaintiffs.

The gravamen of Plaintiffs' defamation claim[2] rests on statements made and actions taken as part of, and surrounding, the Natick Events. These include the following purported statements or actions:

- The sending of pornographic materials to Plaintiffs' neighbors.
- Placing online advertisements for fictious events at the Steiners' home, including sexual encounters.
- Creating a "person of interest" file concerning Plaintiffs.
- Calling Ms. Steiner a "biased troll" in non-public communications, which was then reported on by media outlets.
- Various insulting statements, including referring to Ms. Stainer as a "cow," in non-public communications.

---

[2] In their interrogatory responses, Plaintiffs identified a litany of other purportedly defamatory statements that either predate or postdate Mr. Wenig's tenure at eBay and, as such, cannot form the basis of a claim of defamation against Mr. Wenig. SUMF ¶ 42.

That Mr. Wenig did not make or take any of these statements or actions is undisputed.

To establish a claim of defamation, a plaintiff must prove four elements: 1) the defendant published a false statement, (2) of or concerning the plaintiff, (3) that was capable of damaging the plaintiff's reputation in the community and that caused the plaintiff economic loss or is actionable without proof of economic loss, and (4) the defendant was at fault." *Butcher v. Univ. of Mass*, 111 N.E.3d 294, 299 (Mass. App. Ct. 2018), *aff'd in part, rev'd in part*, 136 N.E.3d 719 (Mass. 2019). Disposition of a claim of defamation at the summary judgment stage is "especially favored" because "[a]llowing a trial to take place in a meritless case would put an unjustified and serious damper on freedom of expression. *Dulgarian v. Stone*, 652 N.E.2d 603, 606 (Mass. 1995). The record compels that result here.

Massachusetts law requires that "the defendant"—not an agent—either negligently (in the case of a false statement) or with actual malice (with respect to a true statement) published the statement. *Shay v. Walters*, 702 F.3d 76, 81–82 (1st Cir. 2012) (dismissing defamation claim against defendants where the alleged defamatory statements were republished by third parties given that "the republished statements were not made by the defendant [and] therefore, fail to satisfy the first element of the plaintiff's defamation claim").

While neither alleged nor identified in Plaintiffs' interrogatory responses as a defamatory statement, Ms. Steiner claimed at her deposition that she "learned from the [document] production" in this case that Ryan Moore, eBay's Director of Communications, told one of eBay's public relations firms that Mr. Wenig's viewed Plaintiffs' website as ████ SUMF ¶ 43. Ms. Steiner further contended that this is an actionable defamatory statement. *Id.* Not so. As a threshold matter, Mr. Moore's description of statements purportedly made by Mr. Wenig is plainly hearsay, and Plaintiffs willingly forewent the opportunity to depose either Mr. Wenig or Mr. Moore concerning

this claim. *See Vazquez*, 134 F.3d at 33 (recognizing that communications that would be "inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment."). Regardless, and as Ms. Steiner admitted at her deposition, the comment that her publications were ███ is nothing more than an opinion statement, which is inactionable under defamation law. *Scholz v. Delp*, 41 N.E.3d 38, 41 (Mass. 2015) (affirming grant summary judgment in favor of defendant because "[s]tatements of opinion and not verifiable fact…could not form the basis of a claim for defamation"). Moreover, Plaintiffs have no evidence that this purported statement had the capacity to damage their reputation in their community: this was a confidential comment made between eBay and its public relations firm that was never publicly disseminated, and which Plaintiffs were not even aware of until years after it was made. As a matter of law, Mr. Wenig's purported opinion statement regarding Plaintiffs' reporting is inactionable under a claim of defamation.

### E. Mr. Wenig is not liable for civil conspiracy.

A predicate element to a claim of civil conspiracy is a viable underlying tort. *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 34–35 (1st Cir. 2009). As established above, none of Plaintiffs' tort claims can viably proceed past summary judgment; Plaintiffs' claim for civil conspiracy consequently falls as well. Moreover, and as discussed in the brief of defendant Jones at Section II.A and incorporated by reference here, the intra-corporate conspiracy doctrine bars a civil conspiracy claim here in any event. That said, multiple additional deficiencies preclude Plaintiffs' civil conspiracy claim against Mr. Wenig. Summary judgment in his favor is warranted.

### 1. Mr. Wenig was not involved in concerted action.

Massachusetts recognizes two theories on which a defendant can be found liable for civil conspiracy, the first of which is known as the "concerted action" doctrine. Under this doctrine, a plaintiff must demonstrate "first, a common design or an agreement, although not necessarily

express, between two or more persons to do a wrongful act and second, proof of some tortious act in furtherance of the agreement." *Thomas v. Harrington*, 909 F.3d 483, 490 (1st Cir. 2018) (quoting *Aetna Cas. Sur. Co. v. P&B Autobody*, 43 F.3d 1546, 1564 (1st Cir. 1994)). As to the second element, a plaintiff must show that the Defendant's own conduct was tortious: it is insufficient to establish that the individual with whom the Defendant purportedly conspired committed a tort. *Payton v. Abbott Labs*, 512 F. Supp. 1031, 1035 (D. Mass. 1981).

As has been made apparent, Mr. Wenig did not engage in tortious activity, and thus cannot be held liable for a claim of civil conspiracy. *Supra* at pgs. 1–18. Moreover, Plaintiffs cannot establish that Mr. Wenig's text messages to Mr. Wymer amounted to an "agreement" to commit a wrongful act, let alone the Natick Events. The record plainly establishes that these text messages concerned a communications strategy commonly employed to respond to negative press coverage rather than any sort of illicit scheme. In any event, the content of these messages, as a matter of law, do not amount to an "agreement" to commit a wrongful act that gives rise to civil conspiracy.

The First Circuit's ruling in *Thomas* is on all fours here. 909 F.3d at 483. *Thomas* concerned a wrongful termination claim, where plaintiff was fired after an "investigation" that allegedly amounted to a civil conspiracy between a town manager and a third-party investigator. *Id*. Plaintiff contended that the manager's directive to "dig deep" into the plaintiff's history was an instruction to generate a pretextual justification that could be used to terminate plaintiff's employment. *Id.* at 492. The First Circuit rejected this theory, ruling that such a statement was "insufficient to support a finding that [defendant] was aware of [his alleged co-conspirator's] tortious purpose" and could not serve as the basis of an "agreement" under civil conspiracy law. *Id.*

### 2. Mr. Wenig did not participate in aiding and abetting.

The second theory of civil conspiracy recognized in Massachusetts is known as the "aiding and abetting" or "substantial assistance" doctrine. To make the requisite showing, a plaintiff must

demonstrate that that the . . . conduct [of another person] constitute[d] a breach of duty and g[ave] substantial assistance or encouragement to the other to so conduct himself." *Thomas*, 909 F.3d at 491. The assistance provided must be "a substantial factor in causing the resulting tort." *Id*. Further, the plaintiff must demonstrate that the defendant had an "'unlawful intent,' consisting of both 'knowledge that the other's conduct is tortious[] and an intent to substantially assist or encourage that conduct.' Merely showing the defendant's 'general awareness' that [his] ostensible co-conspirator is engaged in tortious acts is insufficient." *Id*; *see also Twitter, Inc. v. Taamneh*, 598 U.S. 471, 472 (2023) (recognizing that aiding and abetting liability requires "conscious, voluntary, and culpable participation in another's wrongdoing").

The undisputed record establishes that Mr. Wenig's two texts—the sum total of Plaintiffs' case theory against him—clearly related to the implementation of a communications strategy devised in tandem with eBay's outside communications consultant. The absence of any intent to assist or encourage tortious intent is apparent: Mr. Wenig desired for the eBay communications team to appropriately respond to Plaintiffs' negative coverage of eBay, and nothing more. As such, Plaintiffs cannot demonstrate that Mr. Wenig held the requisite intent or knowledge for an aiding and abetting theory to lie against him, warranting its dismissal here. *See Go-Best Assets Ltd. v. Citizens Bank*, 972 N.E.2d 426, 429 (Mass. 2012) (finding no aiding and abetting liability "where [defendant] had no knowledge of [his purported co-conspirator's scheme to defraud").

## **CONCLUSION**

For the foregoing reasons, Mr. Wenig respectfully submits that summary judgment on all claims against him should be granted in Mr. Wenig's favor.

Dated: October 28, 2024

Respectfully submitted,

/s/ *Abbe David Lowell*

Abbe David Lowell (*pro hac vice*)
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
adlowell@winston.com
(202) 282-5000

Kelly A. Librera (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
klibrera@winston.com
(212) 294-6700

Martin G. Weinberg, Esq.
Martin G. Weinberg PC
20 Park Plaza
Suite 1000
Boston, MA 02116
owlmgw@att.net
(617) 227-3700
*Counsel for Devin Wenig*

## <u>CERTIFICATE OF SERVICE</u>

I, Abbe David Lowell, hereby certify that on this date, October 28, 2024, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

<u>**/s/ Abbe David Lowell**</u>
Abbe David Lowell, Esq.