UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 1:21-cv-11131-PBS

Ina Steiner,
David Steiner,
Steiner Associates, LLC,

      Plaintiffs,

v.

eBay, Inc.,
Progressive F.O.R.C.E.Concepts, LLC,
Devin Wenig,
Steve Wymer,
Wendy Jones,
Steve Krystek,
Jim Baugh,
David Harville,
Brian Gilbert,
Stephanie Popp,
Stephanie Stockwell,
Veronica Zea,
Philip Cooke,
John and Jane DOE

      Defendants.

## DEFENDANT STEPHANIE POPP'S RESPONES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Local Rule 33.1, Defendant Stephanie Popp ("Popp") hereby objects and responds to Plaintiff' First Set of Interrogatories as follows.

## GENERAL OBJECTIONS

1.      Popp answers each and every one of Plaintiffs' Interrogatories subject to the following General Objections and Limitations. These objections and limitations form part of the

answer to each and every one of the Interrogatories as though restated in full therein. General Objections and Limitations may be referred to specifically in certain answers for the purpose of clarity. However, the failure to incorporate a General Objection or Limitation specifically should not be construed as a waiver of the same.

2.    Popp's providing information in response to the Interrogatories shall not be construed as a stipulation that the information is relevant. Such information is subject to all objections regarding relevancy, materiality, propriety, admissibility, and any other objections that would require exclusion if offered as evidence at the trial or a hearing in this matter, all of which objections are hereby expressly reserved and may be interposed at the time of trial or hearing.

3.    These answers are based on the information known by Popp at the present time based on her diligent investigation to date. Popp reserves the right to correct, clarify, modify, amend, or supplement her answers at any time should she discover facts and/or information responsive to the Interrogatories.

4.    Popp objects to the Interrogatories, including each of their Instructions and Definitions, to the extent that they call for the disclosure of information protected from discovery by any privilege or immunity, including but not limited to the attorney-client privilege and/or the attorney work-product doctrine or other applicable privilege or immunity. Popp asserts each and every applicable privilege and rule governing confidentiality to the fullest extent provided by law. Popp reserves the right to withdraw any document or information covered by such privileges if Popp inadvertently or mistakenly produces such document or information in response to the Interrogatories.

5.    Popp objects to the extent these Interrogatories seek information beyond the scope of discovery allowed by the Federal Rules of Civil Procedure, including, without limitation,

information that is irrelevant to any claim or defense in this case and not reasonably calculated to

lead to the discovery of admissible evidence pursuant to Fed. R. Evid. 401, 402 and 403, or to the

extent that the probative value of the information sought is substantially outweighed by the danger

of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or

needless presentation of cumulative evidence. All objections as to relevance, materiality,

authenticity and admissibility of any information or documents referred to herein stated are

expressly reserved.

6.      Popp objects generally to the Interrogatories to the extent that they seek

information that is already in Plaintiffs' possession, custody, or control or already readily

accessible to Plaintiffs.

7.      Popp objects generally to the Interrogatories to the extent that they are not limited

to a specific, relevant, and discoverable time period, and therefore are overly broad, oppressive,

and unduly burdensome or designed to harass or annoy Defendant.

8.      Popp reserves the right to rely, at the time of trial or in other proceedings in this

action, upon documents, responses, and evidence in addition to those provided in response to

these Interrogatories.

9.      Popp incorporates in each of her answers to the Interrogatories, as if fully stated

therein, each General Objection made heretofore.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1**:

Identify any and all persons whom you contend have knowledge of the facts and

circumstances alleged in the complaint, the facts known to each person, and identify any and all

documents which describe, support, or otherwise reflect the facts known to each person. Include

in your response a list of any and all documents which describe, support, or otherwise reflect the facts known to each person.

**OBJECTIONS**:

Popp objects to this Interrogatory as overly broad and unduly burdensome.

Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 1**:

All persons whom I contend have knowledge of the facts and circumstances alleged in the complaint are listed in the Information filed against me by the United States on May 22, 2020, *United States v Gilbert, et al.*, United States District Court for the District of Massachusetts, Case No. 1:20-cr-10098-WGY, and I refer Plaintiffs to that document.

It is my understanding that the U.S. Government has all documents which describe, support, or otherwise reflect the facts known to each person.

**INTERROGATORY NO. 2**:

State the name, address, and job title or capacity of each person who prepared or assisted in the preparation of the response to these interrogatories. Include in your response whether you or your counsel spoke to any other defendant or his/her counsel in preparing these interrogatories, or whether you or your counsel shared your responses with any other defendant or his/her counsel.

**ANSWER NO. 2**:

My counsel includes Alexandra Deal, Partner at Paik Deal, LLP, and Anna Bruno, Associate at Paik Deal, LLP. Paik Deal is located at 6 Beacon St, Suite 305 in Boston, Massachusetts. Neither my counsel nor I have spoken with any other defendant or his/her counsel in preparing these Answers.

**INTERROGATORY NO. 3**:

Describe the job you applied to at eBay, PFC and Concentric Advisors, your qualifications and resume and describe the position you were hired for, who recommended you for each position and your duties and responsibilities for each position held, the name and position of each person you interviewed with, and any concerns that any potential employer expressed about your skills, or lack of experience. Describe your qualifications, including a detailed description of your past employment. Include in your response your educational background, prior employment, and any training, licenses, or prior experience that qualified you for the position of a security analyst at eBay and describe the circumstances around your promotion to Manager of the GIC including your qualifications, who made the decision, when, and the actions they took to fill the position and why there was a vacancy.

**OBJECTIONS**:

Popp objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case.

Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 3**:

I was never employed by PFC.

Regarding Concentric Advisors, I applied for the position of Senior Intelligence Analyst assigned to eBay, Inc., a client of Concentric. I began working in this role on February 13, 2017. In this role, I provided strategic intelligence to support eBay's Global Security Team. My job duties included but were not limited to conducting research (i.e., crime and safety risks, political stability, travel safety) on international locations where eBay and its employees may visit, monitoring multiple data streams for potential and known threats, and analyzing risks and

providing recommendations to help mitigate identified risks. Defendant Jim Baugh, who worked at eBay, recommended me for the position. I interviewed with Jeff Baker, Senior VP of Security Operations at Concentric Advisors in Seattle, WA. I also interviewed with Jim Fussell, who was eBay's Sr. Director/Head of Safety and Security at the time. There were no concerns expressed about my skills or lack of experience.

In July of 2017, I applied for the position of Senior Manager of Global Intelligence at eBay. I began working in this role on July 31, 2017. In this role, I was responsible for managing open-source intelligence (OSINT) analysis and reporting, intelligence research and communications, travel support, threat assessments, and protective intelligence for the Executive Protection team. My job duties included but were not limited to team management, training curriculum, budget, contract negotiations, and hiring for a team of 8-10 intelligence analysts' contractors. The role also included coordinating with foreign and domestic law enforcement and intelligence agencies to identify and mitigate threats. Baugh encouraged me to apply to this position. I interviewed with Patrick Farrell, a recruiter at eBay. I do not recall who else I interviewed with, but at this point, I had been working at eBay for several months and everyone on the team was familiar with my work ethic and professionalism. There were no concerns expressed about my skills or lack of experience.

My qualifications prior to applying at Concentric Advisors & eBay, Inc included a B.A. in Psychology from UCLA (2011). I stated the following languages and proficiency levels in my resume: English (native), Portuguese (native), Spanish (fluent), French (basic). My prior employment included Lead Intelligence Analyst of Protective Services at Amazon.com, Inc. (2015-2017); Intelligence Analyst at Security Industry Specialists, Inc. (2013-2015); Office Manager / Medical Assistant at a medical corporation (2011-2013); and Research Assistant at

UCLA (2011). My memberships included the Association of Threat Assessment Professionals

(ATAP) and the National Analyst Roundtable (AR). Lastly, my certifications and trainings

included the following: Campus Resiliency and Lone Actor Terrorism – ATAP: Open Source

Intelligence (OSINT) Workshop – CATAP; ATAP Threat Management Conference – ATAP;

Advanced Threat Assessment (ATA) and Management Academy – Gavin de Becker &

Associates; Online Social Media & Open Source Investigator's Summit (OSMOSIS); Workplace

Investigative Interviewing Strategies – Wicklander-Zulawski & Associates; Advanced Course on

The Reid Technique of Interviewing and Interrogation – John E. Reid & Associates, Inc.;

Integrated Analyst Symposium II – Domestic Security Alliance Council (DSAC); and

Emergency Medical Technician (EMT-Basic) Certified – California EMS.

**INTERROGATORY NO. 4**:

Outline any observations or concerns regarding the culture within eBay and/or

specifically relating to the GIC, including whether you ever voiced to any supervisors or to

Human Resources such observations, concerns including specific incidents, and if so, what they

were and whether the concerns were addressed and how they were addressed from 2017 through

the date of your termination.

**OBJECTIONS**:

Popp objects to this Interrogatory as vague and overly broad.

Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 4**:

During my employment at eBay, I did not have any concerns regarding the culture and/or

specifically relating to the GIC. As such, I never voiced anything to a supervisor or to Human

Resources other than the incident described in Answer No. 20, below.

**INTERROGATORY NO. 5**:

Summarize any oral or written statements made to any employee, contractor, executive or director at eBay or PFC and/or the Government about the subject matter of this Complaint. In your answer, provide the dates and times of each statement and list all persons present, their title and whether they were taking notes.

**OBJECTIONS**:

Popp objects to this Interrogatory as vague, overly broad, unduly burdensome, and not proportional to the needs of the case.

Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 5**:

I can only recall what is already stated and contained in the Information filed against me by the United States on May 22, 2020, *United States v Gilbert, et al.*, United States District Court for the District of Massachusetts, Case No. 1:20-cr-10098-WGY, and I refer Plaintiffs to that document.

**INTERROGATORY NO. 6**:

Summarize your understanding of eBay's potential reimbursement for legal expenses or judgements against you, including any communications with any co-defendant, employee, agent, contractor, or board member of eBay about the same.

**ANSWER NO. 6**:

It is my understanding that eBay does not intend to reimburse me for legal expenses or judgments against me.

**INTERROGATORY NO. 7**:

Summarize the process you would use to submit expenses or credit card expenditures to eBay during the course of your employment at eBay, PFC and Concentric Advisors. Describe the types of expenses and any limit imposed on your monthly expense accounts and who from each company you submitted your expenses to and who approved those expenses.

**OBJECTIONS**:

Popp objects to this Interrogatory as overly broad and not proportional to the needs of the case.

Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 7**:

All expenses and credit card expenditures during my employment at Concentric Advisors were submitted directly to Concentric Advisors (not eBay). Expenses included but were not limited to any business travel, training, and/or business outings (coffee, lunch, dinner). There was a limit, but I do not remember the exact limit amount. I do not recall who I submitted my expenses to and/or who approved them. Once they were approved, Concentric's finance division would submit an invoice to eBay for reimbursement, if any.

All expenses and credit card expenditures during my employment at eBay were submitted via an online portal called Concur. Expenses included but were not limited to any business travel, training, software tool, and/or business outings (coffee, lunch, dinner). There was a limit, but again, I do not recall the exact limit amount – this also varied depending on the expense type. My direct supervisor (this varied during my employment) had to approve my expenses first before they were sent to eBay's finance / compliance division.

**INTERROGATORY NO. 8**:

Detail whether you ever padded your expense reports directly or at the direction of others, and when and by whom, and describe whether any of your expenses were ever questioned, rejected, or reduced in any way. If so, describe the circumstance of each such occurrence and how you were reimbursed.

**OBJECTIONS**:

Popp objects to this Interrogatory as vague and not proportional to the needs of the case. Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 8**:

While I am not certain what "padded" means in this context, for the sake of completeness, I vaguely remember one of my credit card expenses being questioned by the Legal Compliance division at eBay, but I do not remember the exact date or circumstance. I only remember having to clarify the reason for a certain expense and then it was approved. All expenses incurred were on eBay's credit card and, therefore, I was never reimbursed.

**INTERROGATORY NO. 9**:

Describe, including dates and times, each and every meeting, conference, or communication whether electronic, telephonic, or in person your participated in or became aware of, where intimidating, harassing, threatening, or stalking the Steiners or EcommerceBytes, Fidomaster, UnsuckeBay (and other aliases) and Elliott Management was discussed in any form. Detail the names and positions of each person who was part of any of these communications, that you believed knew about these communications, approved of the communications, and the substance of each communication.

**OBJECTIONS**:

Popp objects to this Interrogatory as vague, overly broad, and unduly burdensome. Popp further objects to the extent this Interrogatory seeks information already in the possession, custody or control of Plaintiffs, and/or information more properly obtained from other parties.

Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 9**:

I can only recall what is already stated and contained in the Information filed against me by the United States on May 22, 2020, *United States v Gilbert, et al.*, United States District Court for the District of Massachusetts, Case No. 1:20-cr-10098-WGY, and I refer Plaintiffs to that document.

**INTERROGATORY NO. 10**:

Describe the substance of all conversation or communications including dates and times any eBay or PFC employee, contractor, executive or director, including the names of each, discussing the cover up or debriefing, include any promises made by eBay or PFC employee, contractors, executives or directors made to you involving the subject matter of this complaint.

**OBJECTIONS**:

Popp objects to this Interrogatory as vague, overly broad, unduly burdensome, and not proportional to the needs of the case. Popp further objects to the extent this Interrogatory seeks information already in the possession, custody, or control of Plaintiffs, and/or information more properly obtained from other parties.

Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 10**:

I generally recall what is already stated and contained in the Information filed against me by the United States on May 22, 2020, *United States v Gilbert, et al.*, United States District Court for the District of Massachusetts, Case No. 1:20-cr-10098-WGY, and I refer Plaintiffs to that document.

Additionally, regarding eBay's internal investigation, on or around August 22, 2019, Defendant Jim Baugh asked me to stick to the "cover story" that Defendants Veronica Zea and David Harville were at a DevCon Conference in Boston, MA, but only until such time as he was able to communicate with Defendant Steve Wymer, who had promised him "top cover" from eBay executives should there be any issues related to his request to "take them down" (referring to the Steiners / Ecommercebytes).

**INTERROGATORY NO. 11**:

Describe in detail the substance of all texts messages or other communications that are the subject matter of this Complaint that were deleted, whether someone else directed you to delete the communications, and the name of the person directing you.

    **OBJECTIONS**:

Popp objects to this Interrogatory as vague, overly broad, unduly burdensome, and not proportional to the needs of the case.

Subject to and without waiving the foregoing, Popp answers as follows.

    **ANSWER NO. 11**:

I generally recall what is already stated and contained in the Information filed against me by the United States on May 22, 2020, *United States v Gilbert, et al.*, United States District Court

for the District of Massachusetts, Case No. 1:20-cr-10098-WGY, and I refer Plaintiffs to that

document.

Additionally, on or after August 26, 2019, I deleted the Whatsapp app from my eBay

work phone. I do not recall what all the messages stated, but the government was able to extract

some or all of the messages. The substance of my Whatsapp communications is summarized in

aforementioned document.

**INTERROGATORY NO. 12**:

Identify the name of your supervisor and the name of all other employees within your

team and the number of times you reported to your supervisor per week and per month, and a

summary of any and all conversations with your supervisor regarding your training, experience,

and/or any information about the Steiners, EcommerceBytes, Fidomaster, UnsuckeBay (and

other aliases) and/or Elliot Management.

**OBJECTIONS**:

Popp objects to this Interrogatory as vague, overly broad, unduly burdensome, and not

proportional to the needs of the case.

Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 12**:

During my employment at eBay, I had two different supervisors at different times: Dan

Cory and Jim Baugh. I met with each of them regularly, 3-5 times per week. I do not recall the

conversations I had with them, but they varied extensively (i.e., training, business trips,

geopolitical events and threats being monitored, budget, software tools, contractors). I could not

possibly summarize them. I did not have any direct reports that were employees – they were all

contractors. When Stephanie Stockwell transitioned from PFC contractor to eBay employee, she became my direct report.

**INTERROGATORY NO. 13**:

Identify whether there was a reporting channel within eBay if issues arose during the course of your employment, and describe the reporting process, and explain if there were impediments or negative consequences to using this process. Include in your response a list of any complaints made to supervisors and any supervisory feedback you received regarding any of the complaints you made to supervisors during the course of your employment with eBay.

**OBJECTIONS**:

Popp objects to this Interrogatory as vague, overly broad, unduly burdensome, and not proportional to the needs of the case.

Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 13**:

There were reporting channels within eBay. One could report directly to his/her supervisor or bypass the supervisor and go directly to HR (depending on the circumstance and comfort level). I did not experience any impediments or negative consequences to using this process. I do not recall ever making a complaint (other than my experience regarding sexual harassment further detailed in Interrogatory no. 20) nor receiving any supervisory feedback during my course of employment with eBay.

**INTERROGATORY NO. 14**:

Identify the actions of Defendant Baugh related to the number of times he fired (or threatened to fire you) and re-hired you during the course of your employment with eBay, and how many times and for what reasons you were sent home or punished by Baugh and describe

those punishments. Include in your response whether Defendant Baugh ever reported your termination or firing to his supervisors, including Defendant Jones.

**OBJECTIONS**:

Popp objects to this Interrogatory as vague and not proportional to the needs of the case.

**ANSWER NO. 14**:

I was never fired (or threatened to be fired) by Baugh during the course of my employment with eBay, nor was I ever sent home or punished by Baugh.

**INTERROGATORY NO. 15**:

Outline how often you socialized outside eBay's offices with any defendant, including but not limited to Baugh, Cooke, Harville, Gilbert, Jones, Wenig or Wymer and the nature of the social event, and on which of those occasions you were required or felt pressured to do so. Include in your response how often you and other persons on the GIC drank with Defendant Baugh on or off the premises of eBay Headquarters and describe the nature of the social interactions, if any, and on which of those occasions you were required or felt pressured to do so.

**OBJECTIONS**:

Popp objects to this Interrogatory as vague, overly broad, and not proportional to the needs of the case.

Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 15**:

The number of times I "socialized" with any defendant, including but not limited to Baugh, Cooke, Harville and Gilbert, cannot be readily or accurately quantified. I sometimes socialized with them frequently, but it was never consistent. There were days/weeks/months where we didn't socialize at all. When we did socialize outside of eBay's offices, it was

generally at a nearby restaurant close to the office. Never was it required, nor did I feel pressured to do so.

My drinking with Baugh on or off the premises of eBay Headquarters was also inconsistent and at certain times frequent. Our social interactions centered on getting to know one another, venting about work-related issues, and discussing upcoming projects (both work and personal). It was never required, nor did I feel pressured to do so. There were times where I was tired and/or didn't feel like going out, and I would state so and skip socializing events altogether. There were never any negative consequences for doing so.

I never interacted with Jones, Wenig or Wymer outside of a professional context.

**INTERROGATORY NO. 16**:

Outline your understanding of the relationship between Concentric Advisors and eBay and why Concentric Advisors was fired by eBay and why PFC was hired by eBay. Include in this response the process by which Concentric Advisors was fired, whether the firing was reported to anyone above Defendant Baugh, and who had to approve the firing.

**OBJECTIONS**:

Popp objects to this Interrogatory as vague, overly broad, and not proportional to the needs of the case. Popp further objects to this Interrogatory to the extent it seeks information more properly obtained from other parties.

Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 16**:

To the best of my understanding, Concentric Advisors provided contractors (myself included at one point) to work at eBay's Global Security division. The company was terminated as a contractor provider, and replaced by PFC, due to a breach of agreement (they were not

delivering on the quality of services agreed upon). I do not know how Concentric Advisors was terminated from eBay's account, but I do know that eBay's Procurement team had to get involved for the termination and the transition to PFC contractors. I do not know if someone above Baugh had to approve the contract termination.

**INTERROGATORY NO. 17**:

Indicate how many individuals were fired from Concentric Advisors in the year leading up to the termination of their contract and their names, dates, and circumstances of their termination.

**OBJECTIONS**:

Popp objects to this Interrogatory as overly broad and not proportional to the needs of the case. Popp further objects to this Interrogatory to the extent it seeks information more properly obtained from other parties.

Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 17**:

As I understand it, eBay cannot fire someone else's employee (Concentric Advisors). Concentric Advisors offers employment and then assigns contractors to a client (i.e., eBay). Therefore, I have no idea who or how many individuals Concentric Advisors fired versus just re-assigning them to a different account once they left their positions/assignments at eBay.

**INTERROGATORY NO. 18**:

Indicate the number of times and the locations where you were present when anyone discussed, the "White Knight Strategy," "Plan B" - and what the Plan B was - and/or the hiring of a Samoan gang member as it relates to the subject matter of this Complaint and identify each and every person present during each and every conversation. Detail in your answer the plan

involving Samoan gangs as you understood it, whether the "White Knight Strategy" was "Plan A," and how the plans were formulated.

**OBJECTIONS**:

Popp objects to this Interrogatory as vague, overly broad, and not proportional to the needs of the case. Popp further objects to this Interrogatory to the extent it seeks information more properly obtained from other parties.

Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 18**:

The "White Knight Strategy" is a term that the United States government used, not one that I or other defendants used. I can only recall what is already stated and contained in the Information filed against me by the United States on May 22, 2020, *United States v Gilbert, et al.*, United States District Court for the District of Massachusetts, Case No. 1:20-cr-10098-WGY, and I refer Plaintiffs to that document.

**INTERROGATORY NO. 19**:

Describe each time you or other GIC analysts were referred to as "Baugh's Angels" or "Jim's Angels" whether you heard it directly or learned of it; each person who used this term to describe you or anyone in the GIC and when, and what you understood "Baugh's Angels" or "Jim's Angels" to mean.

**OBJECTIONS**:

Popp objects to this Interrogatory as overly broad and not proportional to the needs of the case.

Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 19**:

I learned about the GIC analysts being referred to as "Jim's Angels" only once. I don't recall when or who told me about it. I only remember that whoever told me was laughing about it (implying they thought it was funny), so I did not put any more thought to it. I have no idea what it means, nor the context in which that term was being used.

**INTERROGATORY NO. 20**:

Describe any sexual harassment you experienced at PFC or eBay by any person, identifying the person and the substance of any such conduct, whether you reported it to anyone at PFC or eBay, and how such reports were handled.

**OBJECTIONS**:

Popp objects to this Interrogatory on the ground that it is not proportional to the needs of the case.

Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 20**:

In 2018, I experienced harassment by Dan Tarman, eBay's Chief Communications Officer at the time. He had been contacting me inappropriately and making me feel uncomfortable. I reported it to my supervisor at the time, Jim Baugh, who brought it to eBay HR's attention. An internal investigation was conducted, which resulted in Tarman being fired for inappropriate conduct. It is my understanding that eBay allegedly found other inappropriate conduct by Tarman with other unnamed individuals during its internal investigation. My experience with Tarman was not the sole reason for his termination.

**INTERROGATORY NO. 21**:

Describe your relationship with the Baugh family, including whether you ever worked or volunteered as a nanny for the Baugh family, whether you ever had a romantic or sexual relationship with Jim Baugh and whether you still remain friends with Baugh or with any member of the Baugh family.

**OBJECTIONS**:

Popp objects to this Interrogatory on the grounds that it is not proportional to the needs of the case and appears designed to harass, intimidate, or annoy Popp.

Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 21:**

During my employment at eBay, Jim Baugh's wife and children would occasionally visit the eBay campus in San Jose, CA. That is the extent of my communication and relationship with his family. I have never worked nor volunteered as a nanny for the Baugh family. I did not have a romantic or sexual relationship with Baugh.

**INTERROGATORY NO. 22**:

Explain why you contacted the IT department or requested an IT ticket on August 19, 2019, and requested a remote wipe of Michelle Echivarria's phone, including whether you received any confirmation that the remote wipe occurred. Also indicate whether you had ever requested a remote wipe of any employee's phone at any other time, the names of any individual(s) for which you requested a remote wipe, the approximate dates, and the background as to why you requested a remote wipe.

**OBJECTIONS**:

Popp objects to this Interrogatory as overly broad and not proportional to the needs of the case.

Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 22**:

I have no recollection of the event involving Michelle Echivarria and no reason to believe it occurred as stated in the interrogatory. During my employment at eBay, it was a security protocol to request a remote wipe of a contractor or employee's eBay-issued phone if they had been (or were being) terminated. This was done to ensure that a potentially disgruntled employee or contractor would not try to steal or copy eBay's proprietary information, passwords, etc. As such, I most likely requested remote wipes during my employment, but I do not recall the names of any individual(s) nor approximate dates.

**INTERROGATORY NO. 23**:

Identify the names of any and all individuals who instructed you, discussed with you or in any way knew about your travel to Natick in August 2019 and what you were told about the purpose of the trip, and who arranged your trip, how it was paid for including all of your expenses, and who approved your expenses. Include in this response whether you stayed in communication with anyone about your progress while you were in Natick, who you remained in contact with, the substance of any conversations, and who you updated during and after your return, and their assessment of the success or failure of your trip.

**OBJECTIONS**:

Popp objects to this Interrogatory as vague, overly broad, unduly burdensome, and not proportional to the needs of the case.

Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 23**:

Individuals who knew of my travel to Natick in August 2019 include Defendants Baugh, Cooke, Gilbert, Harville, Stockwell, and Zea. Baugh asked me to travel to Natick to replace Harville, who had to return for a family event. I believe Zea purchased my airline ticket using her PFC credit card, but I do not remember the specifics. I did not stay in communication with anyone about my progress while I was in Natick, nor did I update anyone during and after my return.

I can otherwise only recall what is already stated and contained in the Information filed against me by the United States on May 22, 2020, *United States v Gilbert, et al.*, United States District Court for the District of Massachusetts, Case No. 1:20-cr-10098-WGY, and I refer Plaintiffs to that document.

**INTERROGATORY NO. 24**:

Indicate whether you were ever involved in or learned of any other stalking, harassment incidents - or any attempts to investigate any individuals other than the Steiners - including reporters, eBay buyers and sellers, current or former eBay employees, content creators, forum commenters or perceived eBay critics, during your employment at eBay and/or PFC and provide details of what you know about such instances from the date you were hired with PFC through the date of your termination with eBay.

**OBJECTIONS**:

Popp objects to this Interrogatory as vague, overly broad, unduly burdensome, and not proportional to the needs of the case.

Subject to and without waiving the foregoing, Popp answers as follows.

**ANSWER NO. 24**:

I was never involved in nor did I learn of any other "stalking, harassment incidents" by eBay other than the Steiners. Any attempts to investigate any individuals would have been because they made a threat to eBay's call center or employees, which would classify them as a perceived threat. These types of investigations would be conducted internally via open source (i.e., public information) and would not require eBay employees to communicate with the individual in question. If the threat was of a serious nature, we would engage with local law enforcement.

**INTERROGATORY NO. 25**:

Indicate whether any photographs or videos were taken of the Steiners or of the Steiner's property in 2019 including during your trip to Natick in August 2019, whether you disseminated any photographs or videos to anyone else or received any photographs or videos from anyone else, whether you still hold any photographs or videos, and if you provided them to the Government, eBay, any agent, executive or contractor, and all places where those photos and videos now reside.

**ANSWER NO. 25**:

I am not aware of any photographs or videos that were taken of the Steiners or of the Steiner's property in 2019, including during my trip to Natick in August 2019.

Signed under the pains and penalties of perjury this 30th day of April, 2024,

_Stephanie Popp_
Stephanie Popp

As to objections:

_____
Alexandra H. Deal (BBO #660645)
Paik Deal, LLP
6 Beacon Street, Suite 305
Boston, MA 02108
(617) 439-0150
adeal@paikdeal.com

## CERTIFICATE OF SERVICE

I, Alexandra H. Deal, hereby certify that on May 1, 2024, I served this document on all parties by electronic mail.

_____
Alexandra H. Deal