```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                                    )
INA STEINER, DAVID STEINER, and     )
STEINER ASSOCIATES, LLC,            )
                                    )
                 Plaintiffs,        )   Civil Action
                                    )   21-cv-11181-PBS
v.                                  )
                                    )
EBAY, INC., et al.,                 )
                                    )
                 Defendants.        )
_____)
```

**MEMORANDUM AND ORDER**

November 1, 2024

Saris, D.J.

## INTRODUCTION

In this extraordinary and troubling case, eBay, an e-commerce company, conducted a campaign to silence Ina and David Steiner, a married couple living in Natick, Massachusetts, through harassment, stalking, and threats. The Steiners own and operate a trade publication that published critical coverage of eBay. In response, as alleged, eBay's top executives and employees made online threats, signed the Steiners up for over fifty unwanted email subscriptions, and sent disturbing packages to their home, including fly larvae, spiders, a bloody pig mask, and a funeral wreath. The planning for this illegal campaign originated in California, where much of the online activity also took place, but other actions, like the surveillance and vandalism of the Steiners'

1

home, occurred in Massachusetts. As a result of the harassment campaign, seven individuals involved in the conspiracy were criminally charged and have since pleaded guilty. The Steiners filed this civil suit against multiple defendants, including eBay. Now, both eBay and the Steiners have moved for partial summary judgment on the issue of whether Massachusetts or California law will govern the question of punitive damages.

After oral argument and review of the briefing, the Court **ALLOWS IN PART AND DENIES IN PART** Defendant eBay's Partial Motion for Summary Judgment as to Punitive Damages (Dkt. 431) and **ALLOWS IN PART AND DENIES IN PART** Plaintiffs' Motion for Partial Summary Judgment (Dkt. 430).

## FACTUAL BACKGROUND

The Court assumes familiarity with the facts of this case and the Court's Memorandum and Order on the Defendants' motions to dismiss dated December 12, 2023 (Dkt. 309). Except where stated otherwise, the following is an abbreviated summary of the facts as described in the First Amended Complaint (Dkt. 176).[1]

For over two decades, Ina and David Steiner have owned and operated *EcommerceBytes*, an online publication reporting on e-commerce companies such as eBay. Beginning around January 2019,

---

[1] For the limited purpose of these motions, eBay has not disputed the following facts, arguing instead that punitive damages "are unavailable as a matter of undisputed fact or law." Dkt. 432 at 4.

executives at eBay grew increasingly concerned about the Steiners' critical coverage of eBay. eBay's former Chief Executive Officer, Devin Wenig, exchanged messages with the former Senior Vice President and Chief Communications Officer, Steven Wymer, communicating his desire to "crush" Ina Steiner. Dkt. 176 ¶ 61. In multiple messages, Wenig directed Wymer to "take her down." Id. ¶¶ 66, 82. Wymer then told eBay's former Senior Director of Safety & Security, Jim Baugh, that he "want[ed] [Ina Steiner] DONE" and that Ina Steiner needed to "get BURNED DOWN." Id. ¶ 85. eBay's former Senior Vice President of Global Operations, Wendy Jones, directed Baugh to deal with the Steiners "off the radar since comms and legal couldn't handle it." Dkt. 176 ¶ 65.

What began as a series of concerned communications grew into a "coordinated effort to intimidate, threaten to kill, torture, terrorize, stalk and silence the Steiners, in order to stifle their reporting on eBay." Dkt. 176 ¶ 1. The harassment campaign originated in California. A windowless room on eBay's campus served as the "security nerve center where Baugh and his co-conspirators planned their harassment campaign." Dkt. 430-1 at 11.[2] From California, eBay's executives and employees brainstormed

---

[2] The Steiners quote Defendant Wymer's position in a joint letter submitted by Defendants Wymer and eBay to the Magistrate Judge in anticipation of a discovery conference. eBay does not dispute Wymer's description in the original letter or in the briefing on the motions for partial summary judgment. See Dkts. 404, 432.

3

threatening items they could send to the Steiners and began posting threatening content online. Examples of the actions taken by the security team online during their harassment of the Steiners include sending a series of anonymous tweets and Twitter direct messages to the Steiners that were vulgar and threatening; signing up the Steiners for over 53 email subscriptions; ordering a preserved pig fetus, fly larvae, live spiders, cockroaches, a Halloween mask of a bloody pig face, a funeral wreath, and a book entitled *Grief Diaries: Surviving Loss of a Spouse* to be delivered to the Steiners; sending pornographic magazines to Steiners' neighbors, with David Steiner's name on the mailing label; and posting a Craigslist advertisement falsely identifying the Steiners as a married couple seeking sexual partners and providing the Steiners' home address.

In addition to their actions online, members of the security team took multiple trips to Massachusetts to vandalize the Steiners' property by spray painting an intimidating message on their fence; surveilling, tailing, and stalking the Steiners by vehicle and on foot; and attempting to install a GPS tracking system on the Steiners' vehicle.

After the Natick Police Department began investigating, eBay employees took steps from their base in California to cover up their actions, such as creating false documents featuring the

4

Steiners as eBay "Persons of Interest" to suggest that the Steiners had a history of threats against eBay and its executive management.

## PROCEDURAL HISTORY

The Steiners sued eleven named defendants, including eBay, in this civil suit on July 21, 2021. Dkt. 1. On March 1, 2023, the Steiners filed an amended complaint adding new factual allegations, new causes of action, and additional defendants. In the amended complaint, the Steiners sought punitive damages solely in connection with their California stalking claim. In this Court's Order on eBay's and other defendants' motions to dismiss, this Court dismissed the stalking claim, finding that Massachusetts law, which does not have a stalking statute granting a private right of action, should apply, as the injuries and most of the relevant stalking conduct occurred in Massachusetts. Eleven claims remain against eBay. Following a change in counsel in May 2024, the Steiners altered their position and now assert that California law should govern the availability of punitive damages for six of their remaining claims against eBay.[3]

## LEGAL STANDARD

---

[3] Intentional Infliction of Emotional Distress (Count I); Massachusetts Civil Rights Act Violation (Count IX); Defamation (Count X); Trespass (Count XI); False Imprisonment (Count XII); and Civil Conspiracy (Count XIII). Although the Steiners initially sought punitive damages in connection with Ratification (Count XIV), they have not demonstrated that ratification constitutes an independent tort rather than a theory of liability.

5

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists where the evidence "is such that a reasonable jury could resolve the point in the favor of the non-moving party." Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 87 (1st Cir. 2018) (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 23-24 (1st Cir. 2017)). A material fact has the "potential of changing a case's outcome." Doe v. Trs. of Bos. Coll., 892 F.3d 67, 79 (1st Cir. 2018).

"The court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in [its] favor." Carlson v. Univ. of New Eng., 899 F.3d 36, 43 (1st Cir. 2018). When parties cross-move for summary judgment, courts must evaluate each motion "separately, drawing inferences against each movant in turn." Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 21 (1st Cir. 2018) (quoting EEOC v. S.S. Clerks Union, Local 1066, 48 F.3d 594, 603 n.8 (1st Cir. 1995)).

## DISCUSSION

The parties agree that Massachusetts law governs questions of liability and compensatory damages but disagree on whether this Court should apply Massachusetts or California law to the issue of punitive damages for six of the Steiners' remaining claims against eBay. The parties and the Court also agree that California and

6

Massachusetts law conflict: punitive damages are available under California law but not under Massachusetts law for the relevant causes of action. Compare Pine v. Rust, 535 N.E.2d 1247, 1249 (Mass. 1989) ("Punitive damages are not favored in Massachusetts, and we have long followed the principle that, absent statutory authorization, punitive damages may not be awarded."), with Haigler v. Donnelly, 117 P.2d 331, 335 (Cal. 1941) ("If . . . the action is one in tort, exemplary damages may be recovered upon a proper showing of malice, fraud or oppression . . . ."). Therefore, the Court must determine which state's law applies.

## I.   Massachusetts' Conflict of Law Rules

In an action based on diversity jurisdiction, this Court must apply the conflict of law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Putnam Res. v. Pateman, 958 F.2d 448, 464 (1st Cir. 1992). Massachusetts courts employ a "functional choice of law approach." Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 5 (1st Cir. 2004) (quoting Bushkin Assocs., Inc. v. Raytheon Co., 473 N.E.2d 662, 668 (Mass. 1985)); see also Alharbi v. TheBlaze, Inc., 199 F. Supp. 3d 334, 360 (D. Mass. 2016) (involving a defamation claim). "Under the functional approach, the forum applies the substantive law of the state which has the more significant relationship to the transaction in litigation." Hendricks & Assocs., Inc. v. Daewoo Corp., 923 F.2d 209, 212 n.3 (1st Cir. 1991).

7

To determine which state has the more significant relationship to the transaction, Massachusetts courts rely primarily on the Restatement (Second) of Conflict of Laws. Lou v. Otis Elevator Co., 933 N.E.2d 140, 150 (Mass. App. Ct. 2010). For a tort claim, the Restatement provides the following factors: (1) where the injury occurred, (2) where the conduct causing the injury occurred, (3) where the parties are domiciled, reside, incorporated, or maintain their place of business, and (4) where the relationship, if any, between the parties is centered. Restatement (Second) of Conflict of Laws § 145 (Am. L. Inst. 1971); see also Cornwell Ent., Inc. v. Anchin, Block & Anchin, LLP, 830 F.3d 18, 34 (1st Cir. 2016). Courts examine these contacts in light of the interests of the "States involved, and the interstate system as a whole." Dean ex rel. Est. of Dean v. Raytheon Corp., 399 F. Supp. 2d 27, 31 (D. Mass. 2005) (quoting Bushkin Assocs., 473 N.E.2d at 668); see also Restatement (Second) of Conflict of Laws § 6.[4]

---

[4] Restatement (Second) of Conflict of Laws § 6 provides that:

> [T]he factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and

Courts consider the contacts from the Restatement according to their relative importance in the "resolution of the particular issue presented." Pevoski v. Pevoski, 358 N.E.2d 416, 417 (Mass. 1976) ("[T]here is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction. . . . [T]he disposition of . . . issues must turn . . . on the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented." (first alteration in original) (quoting Babcock v. Jackson, 191 N.E.2d 279, 285 (N.Y. 1963))); see also La Plante v. Am. Honda Motor Co., 27 F.3d 731, 741 (1st Cir. 1994) ("Under the doctrine of depecage, different substantive issues in a tort case may be resolved under the laws of different states where the choices influencing decisions differ."); Schulhof v. Ne. Cellulose, Inc., 545 F. Supp. 1200, 1203 (D. Mass. 1982) ("Pevoski ruled that the law of a single jurisdiction would not necessarily govern all issues in a case.").

Accordingly, the Court must decide which state has the most significant relationship to "each punitive damage claim." Freeman v. World Airways, Inc., 596 F. Supp. 841, 843 (D. Mass. 1984) (relying on Restatement (Second) of Conflict of Laws § 146). Typically in the case of personal injury claims, "the local law of

---

(g) ease in the determination and application of the law to be applied.

9

the state where the injury occurred determines the rights and liabilities of the parties." Restatement (Second) of Conflict of Laws § 146. But the general presumption may be rebutted if "with respect to the particular issue, some other state has a more significant relationship." Id.; see also Pevoski, 358 N.E.2d at 417.

## II. Applying Massachusetts' Functional Approach to Punitive Damages

In the context of punitive damages, "[m]any courts have held that the state of the injury and of the alleged wrongful conduct has a more significant relationship to the issue of punitive damages than does the state of plaintiff's domicile." Dean, 399 F. Supp. 2d at 33. This is because, as the Restatement suggests, if the purpose of the law "is to punish the tortfeasor and thus to deter others from following his example, there is better reason to say that the state where the conduct occurred is the state of dominant interest." Restatement (Second) of Conflict of Laws § 146 cmt. e; see Burleigh v. Alfa Laval, Inc., 313 F. Supp. 3d 343, 356 (D. Mass. 2018); see also Freeman, 596 F. Supp. at 846 ("The primary purposes underlying a state's decision to allow punitive damages are to punish the defendant and to deter others from following similar conduct. Such damages are not awarded to compensate the plaintiff." (citation omitted)).

It is necessary to identify the state where the relevant events and conduct took place tort-by-tort. The significant contacts and conduct took place either in California or Massachusetts. The Steiners argue that all the wrongful conduct emanated from California, where eBay maintains its principal place of business and the defendants made key decisions regarding the harassment. Dkt. 430-1 at 9. Conversely, eBay asserts that a substantial amount of the conduct that caused injury occurred in Massachusetts -- where the surveillance, stalking, and physical activities were carried out -- making Massachusetts the more appropriate jurisdiction for punitive damages. Dkt. 437 at 10-13. Rather than paint with broad strokes, the Court examines whether Massachusetts or California law applies to each claim. See Freeman, 596 F. Supp. at 843.

The Steiners' claims of trespass, false imprisonment, and Massachusetts Civil Rights Act violations are rooted in actions taken in Massachusetts, chiefly the physical surveillance and vandalism that exacerbated their fear for personal safety. The defendants traveled to Natick, Massachusetts, to vandalize the Steiners' fence, install a GPS tracker on their car, and "predatorily stalk and surveil" them. Dkt. 176 ¶¶ 73, 148, 155. In addition to these actions, the Steiners claim the "incessant packages" that arrived at their home in Massachusetts forced them to remain confined to their home and threatened to silence their

11

blog. Id. ¶ 534. In short, the most distressing conduct underlying the claims of trespass, false imprisonment, and Massachusetts Civil Rights Act violations occurred in Massachusetts.

The torts of intentional infliction of emotional distress and civil conspiracy present a closer question. The Steiners' distress stems not only from the conduct described above -- being followed, surveilled, stalked, and tailed -- but also from a broader range of concerted, online conduct. The defendants bombarded the Steiners with online threats, menacing deliveries, doxing, and unwanted email subscriptions. Dkt. 176 ¶ 408. The defendants' online activity, including the online threats and ordering of threatening packages, originated from eBay's place of business in California. California is also the state where the defendants originally formed their plans to "intimidate, threaten to kill, torture, terrorize, stalk and silence" the Steiners. Id. ¶ 1. eBay's California campus allegedly served as the "security nerve center" where Baugh and his co-conspirators orchestrated their harassment campaign. Dkt. 430-1 at 11. From there, the defendants made plans to travel from California to Massachusetts, ordered threatening packages, subscribed the Steiners to unwanted emails, sent online threats, and, once law enforcement became involved, undertook efforts to cover up the investigation. See Dkt. 430-1 at 9-11.

As a result, with respect to the claims for trespass, false imprisonment, and Massachusetts Civil Rights Act violations, Massachusetts contacts "predominate, as that state is the place of injury, the place of much of the relevant conduct, and the place where the relationship between [eBay] and the [Steiners] . . . is centered." Church of Scientology of Cal. v. Flynn, 578 F. Supp. 266, 267 (D. Mass. 1984). However, with respect to the intentional infliction of emotional distress and civil conspiracy claims, California's countervailing interest in deterring such malicious and extreme conduct by its corporate domiciles prevails since the most significant of the unlawful conduct took place within its borders. Consequently, for these claims, the Steiners in this case rebut the general presumption that the law of the state where the injury occurs governs.

In arguing that Massachusetts law restricting punitive damages should apply, eBay relies heavily on Computer Systems Engineering, Inc. v. Qantel Corp., 571 F. Supp. 1365 (D. Mass. 1983), aff'd, 740 F.2d 59 (1st Cir. 1984). In Computer Systems, the District Court declined to apply Massachusetts law to compensatory damages and California law to punitive damages, stating that "[b]ifurcating the issues of punitive and compensatory damages in this manner would discriminate against a class of nonresident defendants, and upset the legislative balance achieved by Massachusetts precedents and statutes regarding

13

punitive damages." Id. at 1370. The District Court further reasoned that "Massachusetts has a significant interest in the uniformity and predictability of its law." Id. The First Circuit affirmed but added that "though the Supreme Judicial Court of Massachusetts ha[d] not yet explicitly adopted the position of the Restatement (Second) of Conflict of Laws on tort claims, a Massachusetts court would apply a test not materially different from that of the Restatement (Second) of Conflict of Laws § 148 in determining the law applicable in this case." Computer Sys. Eng'g, Inc., 740 F.2d at 70.

Significantly, Computer Systems involved claims of fraud and misrepresentation governed by § 148 of the Restatement, id. at 1368, not § 146, which applies to actions for personal injuries. In addition, the First Circuit has explained that choice of law considerations such as predictability and uniformity of result "are geared more toward consensual relationships than tort situations." Mason v. S. New Eng. Conf. Ass'n of Seventh-Day Adventists of the Town of S. Lancaster, 696 F.2d 135, 137 (1st Cir. 1982) (citing Restatement (Second) of Conflict of Laws § 6 cmts. d, g, i). As a result, the First Circuit cautioned courts against using factors such as predictability to grant the interest of a forum state greater weight in tort actions "simply because of its status as the forum." Id. at 138. Accordingly, given that the conspiracy to harass, intimidate, and threaten the Steiners

14

originated in California and a substantial amount of the distressing conduct occurred there as well, California's interest in applying punitive damages to conduct that occurred within its borders by one of its resident corporations outweighs any interest Massachusetts might have in protecting eBay "from excessive liability" for actions taken in California. Freeman, 596 F. Supp. at 846; Schulhof, 545 F. Supp. at 1206.

Finally, during oral argument, the Steiners singled out defamation as especially related to California. They point out that in addition to the general principles guiding Massachusetts' choice of law approach, defamation is subject to § 150 of the Restatement (Second) of Conflict of Laws. See Alharbi, 199 F. Supp. 3d at 361. Though the Steiners correctly point out that § 150 applies, their conclusion that California has the most significant relationship to the defamation claim is incorrect -- § 150 dictates that Massachusetts law applies.

Under § 150, "[w]hen a natural person claims that he has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state." Restatement (Second) of Conflict of Laws § 150(2); see Green v. Cosby, 138 F. Supp. 3d 114, 124 (D. Mass. 2015) ("Pursuant to section 150 of the Restatement (Second) of Conflict of Laws, 'the law of the state where the defamed person

was domiciled at the time of publication applies "if the matter complained of was published in that state."'" (quoting Davidson v. Cao, 211 F. Supp. 2d 264, 274 (D. Mass. 2002))). A comment to § 150 emphasizes that when a defamatory statement has been published in two or more states, the focus of the inquiry is where the plaintiff suffered the greatest harm:

> Rules of defamation are designed to protect a person's interest in his reputation. When there has been publication in two or more states of an aggregate communication claimed to be defamatory, at least most issues involving the tort should be determined . . . by the local law of the state where the plaintiff has suffered the greatest injury by reason of his loss of reputation. This will usually be the state of the plaintiff's domicil if the matter complained of has there been published.

Restatement (Second) of Conflict of Laws § 150 cmt. e.

Here, the Steiners allege that the defendants defamed them by sending sexually charged pornography to their neighbors, making defamatory comments to third parties, posting ads on Craigslist that the Steiners were sexual swingers and inviting potential partners to their home, tweeting false statements, and creating fake "Persons of Interest" files on the Steiners. Dkt. 176 ¶¶ 504-10.

Statements posted online have "a greater potential to spread," Butcher v. Univ. of Mass., 136 N.E.3d 719, 735 n.22 (Mass. 2019), and here, the postings meant to solicit strangers to the Steiners' home were directed at Massachusetts. Further, defamatory

16

mail was sent to the Steiners' neighbors, also in Massachusetts. Because the mail was sent to persons in Massachusetts and not to persons in California, the pornographic magazines in David Steiner's name were published only in Massachusetts. See Kamelgard v. Macura, 585 F.3d 334, 342 (7th Cir. 2009) (holding that defamatory letters are published in the state to which they are sent); see also Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1104 (9th Cir. 2009) (explaining that publication for defamation "simply means" communication to someone other than the plaintiff). Though "Persons of Interest" files were kept in California and the tweets were published nationally, the "Persons of Interest" files were shared with the Natick Police Department. Further, the Steiners failed to discuss the location of their reputational harm in their briefing and did not allege that they "suffered greater special damages in [California] than in the state of [their] domicil," Massachusetts. Restatement (Second) of Conflict of Laws § 150 cmt. e. Consequently, § 150 dictates that Massachusetts law apply to the issue of punitive damages for the defamation claim.

## ORDER

For the foregoing reasons, the Court **ALLOWS IN PART AND DENIES IN PART** Defendant eBay's Partial Motion for Summary Judgment as to Punitive Damages (Dkt. 431) and **ALLOWS IN PART AND DENIES IN PART** Plaintiffs' Motion for Partial Summary Judgment (Dkt. 430).

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge