UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

INA STEINER, DAVID STEINER, and
STEINER ASSOCIATES, LLC,

      Plaintiffs,

v.

EBAY INC., ET AL.,

      Defendants.

CIVIL ACTION NO.: 1:21-CV-11181-DPW

## DEFENDANT PROGRESSIVE F.O.R.C.E. CONCEPTS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

      Defendant Progressive F.O.R.C.E. Concepts, LLC (PFC) and pursuant to Federal Rule of

Civil Procedure 56, hereby moves for summary judgment. As grounds for this motion, PFC states

there are no genuine issues of material fact and is entitled to judgment as a matter of law.

### I.    PFC IS NOT VICARIOUSLY LIABLE FOR THE CRIMINAL ACTS OF VERONICA ZEA

      Eight of the plaintiffs' ten surviving Counts[1] against PFC are for vicarious liability based on

the conduct of defendant, Veronica Zea ("Zea"), whose actions are well known to this Court. PFC,

however, as a matter of law, cannot be vicariously liable for Zea's actions, as she was a "borrowed

servant" from PFC to eBay, whereby, under the Borrowed Servant Doctrine, any vicarious liability

here would attach to eBay, not PFC, as eBay was who directed and controlled her conduct as to

---

[1] . The Counts include: (1) Intentional Infliction of Emotional Distress, (2) Negligent Infliction of Emotional Distress, (3) Negligence, (4) Violation of Massachusetts Civil Rights Act, (5) Defamation, (6) Trespass, (7) False Imprisonment, and (8) Civil Conspiracy. *See* Amended Complaint.

the Steiners. Her actions also were not within the scope of her employment.[2] Consequently, summary judgment must be granted in PFC's favor on the vicarious liability counts.

### a. Pursuant to the Borrowed Servant Doctrine, PFC, as a Matter of Law, Cannot be Vicariously Liable for Zea's Conduct

For an employer to be vicariously liable for an employee's actions, the employee's actions need to be within the course of the employer's work and for the purpose of accomplishing that employer's work, creating a "master-servant" relationship. *See* Bohmbach v. Shivers, No. 1:22-CV-10318-JEK, 2024 WL 1675689 (D. Mass. Mar. 20, 2024). A "master-servant" relationship is premised on the right to control, and it is that right to control that renders a Master liable for the negligence of its servant. A Master's right to control the servant only exists though if the Master has a right to control the result to be accomplished by the servant as well as the means.[3] For PFC to be found vicariously liable here for Zea's conduct, Zea would have needed to be acting within the course of PFC's work and for the purpose of accomplishing PFC's work. PFC also would have needed to have the right to control the result to be accomplished by Zea as well as the means. Neither are true here given PFC's and eBay's contractual relationship and Zea's status as a "borrowed servant", whereby PFC cannot, as a matter of law, be found liable for Zea's actions.

PFC and eBay entered into a Master Service Agreement ["MSA"] dated January 1, 2019, as to PFC's provision of Protective Services to eBay. See Ex. 9 Section 4. Therein, it was agreed that any PFC personnel would be under the direction and control of PFC as well as only PFC would have the ability to control how the Protective Services were performed, with PFC also being contractually obligated though to "tak[e] into account, at all times, eBay's preferences". *See* Ex.

---

[2] It should be noted there is a potential conflict of law between California and Massachusetts. Both states have framed the tests for "borrowed servant" and scope of employment differently. For purposes of summary judgment, an application of either state's law requires judgment for PFC. Additionally, PFC reserves the right to press a conflicts of law position if summary judgment is not granted.

[3] Bohmbach v. Shivers, No. 1:22-CV-10318-JEK, 2024 WL 1675689 (D. Mass. Mar. 20, 2024) (quoting Cheek v. Econo-Car Rental Sys. Of Bos., Inc., 393 Mass. 660, 662 (1985)).

9. As is clear from the record, in practice eBay fully exercised its right to assert its preferences, which was that eBay, not PFC, controlled and directed the PFC personnel embedded at eBay in eBay's GIC, including as to how said personnel performed and carried out their work at eBay. Indeed, the MSA gave eBay the right to assert direction and control over PFC personnel, including Zea, if they so preferred. Ultimately, eBay did so prefer, whereby PFC was then contractually obligated to accommodate eBay's preference, which it did.

In rescinding PFC's rights to direct and control its personnel to eBay, as required of PFC under the MSA to accommodate eBay's preferences, PFC's personnel in eBay's GIC, including Zea, were effectively "loaned servants" to eBay, for whom eBay, not PFC, would now be liable for any negligence pursuant to the Borrowed Servant Doctrine.  Under the Borrowed Servant Doctrine "the general master of a servant may lend him, with his consent, to another person for service in the business of the other, and that while he is engaged in the business of the other person and in all respects subject to his direction and control, he becomes the servant of the new master, and this master becomes liable for his negligence."[4] Said doctrine requires some control by the borrower over the loaned employee and it is this question of control that determines whether the borrower or the master servant is subject to liability for the loaned employee.[5]

As is undisputed, and among other things, it was eBay's ultimate decision to hire Zea[6] and Zea received her work tools, performance reviews, day to day assignments, and daily training and supervision all from eBay. See Ex. 4. Her eBay supervisors, including Baugh and/or Popp, also instructed her to report issues directly to them, not Concentric or PFC. Id. While PFC fronted Zea's salary and expenses, eBay ultimately funded both. See Exs. 2 & 4. eBay also determined Zea's

---

[4] Shepard v. Jacobs, 90 N.E. 392 (Mass. 1910); see also Restatement (Second) of Agency §227 (1958) ("A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services.")

[5] Raymond v. I/S Caribia, 626 F.2d 203 (1st Cir. 1980); Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S. Ct. 252, 53 L. Ed. 480 (1909).

[6] This includes when first hired to work at eBay through Concentric. It also includes when eBay instructed PFC to keep Zea as an analyst for eBay when PFC took over the contract.

**Error! Unknown document property name.**

promotional title changes, salary, and raises, including as to amount and timing.[7] See Exs. 2, 4, 10, & 12. Further, while Zea's corporate credit card was provided by PFC, her expenses, including as to any charges, were ultimately reviewed and approved by eBay. See Exs. 2 & 4. PFC also had no authority to direct or control Zea's actions or work at eBay, with it also undisputed that Zea was at all times directed and controlled, including as to the criminal conduct, by her eBay supervisors.

All of these elements point to Zea being an employee of eBay, not PFC, under the Borrowed Servant Doctrine. Furthermore, as direction and control of an employee is essential to determining a "master" and "servant" relationship to which vicarious liability can attach, it cannot be said, based on the undisputed facts, that such a relationship exists between PFC and Zea.[8] The "guiding principle" of vicarious liability cases is that vicarious liability is imposed on a master who has the right to direct and control the decisions of the defendant.[9] Here, as the record makes clear, eBay was the "master" who directed and controlled the Zea's conduct. As a result, PFC cannot be held vicariously liable for Zea's criminal actions.

### b. Veronica Zea's Criminal Actions are Not Within Scope of Employment whereby PFC Cannot Be Held Vicariously Liable.

PFC also cannot be found vicariously liable for Zea's conduct, including her alleged intentional torts, negligence, violation of Massachusetts Civil Rights Act ("MCRA")[10] and civil conspiracy, as it cannot be said that her conduct was within the scope of her employment. An employee's conduct is within the scope of employment if (1) the conduct in question is of the kind the employee is hired to perform; (2) if the conduct occurs substantially within the authorized time

---

[7] As the record makes clear, eBay would decide to give her a raise and the amount and timing of it. After making these determinations, eBay would then relay their determinations to PFC and instruct PFC to administer the changes.
[8] Langthorne v. Lopez, No. MI201001369, 2013 WL 1191742 (Mass. Super. Feb. 28, 2013) (staffing agency could not be found vicariously liable for actions of nurse staffed at a hospital as agency did not supervise, direct, or control nurse's treatment of patients).
[9] Langthorne v. Lopez, No. MI201001369, 2013 WL 1191742 (Mass. Super. Feb. 28, 2013) (citing to Hohenleitner v. Quorum Health Res., Inc., 435 Mass. 424, 758 N.E.2d 616 (2001)).
[10] For an employer to be held vicariously liable for the intentional torts of an agent, the tortious acts must have been committed within the scope of employment. Miller v. Federated Dep't Stores, Inc., 364 Mass. 340, 304 N.E.2d 573 (1973).

and space limits; and (3) it is motivated, at least in part, by a purpose to serve the employer.[11] It is undisputed, however, that Zea's stalking campaign was not within her job description, nor what an intelligence analyst was employed to do. As such, PFC also, as a matter of law, cannot be vicariously liable for Zea's conduct as the uncontroverted evidence is that it was outside of the scope of her employment.[12]

Zea's criminal actions cannot be said to have been motivated to serve PFC or were the kind of actions she was employed to perform. Indeed, Zea drafted a job description for Baugh on May 3, 2019 in an effort to hire more analysts for the GIC. See Ex. 11. Therein, Zea makes it clear that the "essential functions" of the job included researching, monitoring, briefings, and intelligence assessments. Id. Nowhere does it mention stalking, intimidating, harassing or terrorizing perceived enemies of eBay. Indeed, the uncontroverted evidence is that Zea's criminal conduct was not the type of work she was hired to perform and cannot be considered to serve PFC. Consequently, PFC cannot be held vicariously liable for any of Zea's alleged intentional torts and negligent actions, nor for her alleged Massachusetts Civil Right Act ("MCRA") violations.[13] To be sure, PFC is not in the business of stalking or harassing, nor is stalking and harassing part of an analysts' duties. Lastly, plaintiffs' civil conspiracy claim under a theory of vicarious liability also fails as a matter of law for the same reasons plaintiffs' other vicarious liability claims against PFC fail. To wit, the

---

[11] Wang Lab'ys, Inc. v. Bus. Incentives, Inc., 398 Mass. 854, (1986); Worcester Ins. Co. v. Fells Acres Day Sch., Inc., 408 Mass. 393, 558 N.E.2d 958 (1990); Clickner v. City of Lowell, 422 Mass. 539, (1996); Lev v. Beverly Enterprises-Massachusetts, Inc., 457 Mass. 234, (2010).

[12] Doe v. Westlake Acad., No. CIV. A. 97-2187, 2000 WL 1724887 (Mass. Super. Nov. 21, 2000) (no vicarious liability for employee who sexually assaulted plaintiff holding employer of staff who was alleged to have sexually assaulted plaintiff as the alleged conduct was not conduct the staff was hired to perform or motivated to serve the employer).Alba v. Interactive Data Corp., No. 9203570A, 1995 WL 1146839 (Mass. Super. Nov. 17, 1995), aff'd sub nom. Alba v. Sampson, 44 Mass. App. Ct. 311, 690 N.E.2d 1240 (1998) (no vicarious liability for accusation that co-worker created crude bumper stickers of the plaintiff as the accusation was made in a personal capacity); Heal v. Wells Fargo, N.A. as Tr. for WaMu Mortg. Pass-Through Certificates Servs. 2006-PR2 Tr., 560 F. Supp. 3d 347 (D. Mass. 2021), aff'd, No. 21-1817, 2023 WL 1872583 (1st Cir. Jan. 17, 2023) Bloomer v. Becker Coll., No. CIV.A. 09-11342-FDS, 2010 WL 3221969 (D. Mass. Aug. 13, 2010) (no vicarious liable for actions for false imprisonment of a student in his hotel room) Doe v. Westlake Acad., No. CIV. A. 97-2187, 2000 WL 1724887 (Mass. Super. Nov. 21, 2000) (no vicariously liable as the alleged conduct did not fall within scope of employment). To prevail on a vicarious liability claim, plaintiff needs to show that (1) at the time of the alleged negligence the defendant was an employee of the employer, and (2) the alleged negligent conduct occurred within the scope of the employee's employment. Dias v. Brigham Med. Assocs., Inc., 438 Mass. 317, (2002).

[13]Under the MCRA, a plaintiff must prove (1) the exercise or enjoyment of some constitutional or statutory right; (2) has been interfered with, or attempted to be interfered with; and (3) such interference was by threats, intimidation, or coercion. Pettiford v. Branded Mgmt. Grp., LLC, 104 Mass. App. Ct. 287, 237 N.E.3d 1191 (2024).

**Error! Unknown document property name.**

borrowed servant doctrine renders eBay liable for Zea's conduct, not PFC. Furthermore, any conspiring to commit the criminal stalking campaign was not in the scope of Zea's employment with PFC, nor served any purpose for PFC. As such, PFC cannot be vicariously liable for any civil conspiracy. Regardless, there can also be no conspiracy between Zea and eBay, as a matter of law, pursuant to the Intercorporate Conspiracy Doctrine.

Accordingly, each of the plaintiffs' vicarious liability claims against PFC fail as a matter of law, whereby summary judgment must enter as to all of plaintiffs' vicarious liability claims.

## II. PLAINTIFFS' CLAIMS OF DIRECT LIABILITY AGAINST PFC FAIL

In addition to the vicarious liability counts, the plaintiffs also allege that PFC is directly liable for negligently supervising (Count VI) and negligently retaining (Count VII) Zea and for civil conspiracy (Count XIII) (the vicarious liability aspect of the Civil Conspiracy claim is addressed, supra.). There is no evidence, however, expert or otherwise, to support these direct claims against PFC and the plaintiffs will also be unable to prove these claims. [14].

### 1. PLAINTIFFS' FAILURE TO DESIGNATE AN EXPERT IS FATAL TO THEIR DIRECT CLAIMS AGAINST PFC

The direct claims against PFC fail as a matter of law due to the plaintiffs' failure to timely designate an expert setting forth (a) the standard of care applicable to PFC, a contractor, which placed an embedded security intelligence analyst with eBay; (b) PFC's breach of that standard of care; and (c) that said breach was the proximate cause of the plaintiffs' alleged damages.

All of plaintiffs' direct liability claims require that a jury conclude that PFC breached the standard of care of the average qualified contractor providing embedded intelligence professionals

---

[14] A judge faced with a motion for summary judgment in a negligence action "may decide the issue [of negligence] as a matter of law when no rational view of the evidence permits a finding of negligence." Petrell v. Shaw, 453 Mass. 377, 381 (2009) ("The moving party may satisfy their burden…by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial."); Cottrell v. Laidley, 103 Mass. App. Ct. 483, 220 N.E.3d 610 (2023).  A judge, is entitled to determine that a rational jury could not find that a defendant was negligent if there is no evidence to support the claim. Petrell 453 Mass. at 386-387.

Error! Unknown document property name.

in the global intelligence unit of a company as sophisticated as eBay under the facts of this case. The plaintiffs have the burden of proof on these elements and failed to designate an expert.  PFC did timely designate a standard of care expert, Rodney Magallan, who's report is attached as exhibit 19.  Where expert testimony is required to support the non-moving party's case, and there is an absence of such testimony, summary judgment is appropriate. See Flanders & Medeiros, Inc. v. Bogosian, 65 F.3d 198, 206 (1st Cir. 1995).

There is absolutely no evidence to support the plaintiffs' allegation that Zea had a "propensity to engage in . . . tortious conduct," (Amended Complaint, para. 457-458) or, if she did, that PFC knew or reasonably should have known of such alleged propensity.  At worst, Zea's *alleged* "bad" conduct was her use of a PFC "credit card for improper purchases, including expensive dinners and strip clubs" just days prior to the commencement of the harassment campaign. Id. par. 468 & 478. There exists no evidence whatsoever that the PFC credit card was used for any tortious or criminal conduct prior to the start of the harassment campaign.

Despite the lack of evidence, the plaintiffs claim that an investigation of the purchases should have been undertaken by PFC and that such investigation "would have revealed that Defendant Baugh was using the credit card as his personal slush fund to carry out the conspiracy." Given the complexities in this case, such claims cannot be answered by a lay jury without expert testimony.  Those complexities include (a) the duties of a contractor who handles payroll and administration functions for an embedded intelligence analyst, hired by eBay, where it is undisputed that their work was not directed or controlled by the contractor; (b) the diligence required of the contractor to review expense submissions when the applicable contract required eBay to approve and ultimately pay the expenses and where eBay supervisors did approve the expenses at issue; (c) whether Zea's Las Vegas expenses incurred in July 2019 after an extremely

busy and stressful security event hosting the eBay Open were even of a nature requiring investigation;[15] (d) whether, if a duty arose to make an inquiry after August 5 (when the approved expenses were submitted to PFC), whether such an inquiry must occur within days[16]; and (d) the nature of the inquiry or action that would have been necessary to meet the standard of care.[17]  As to the last issue, expert testimony is required to prove what PFC should have done to meet the standard of care.  Should PFC have cancelled Zea's card, reprimanded her, contact eBay, etc.? If PFC would have satisfied the standard of care by communicating with Zea's supervisor (Jim Baugh) who would have verified his approval (again) of the expense and his presence at the venue, it would not have stopped the harassment campaign.[18]   The plaintiffs cannot meet their burden on proving the elements of Negligent Supervision, Negligent Retention or Civil Conspiracy without expert testimony on these topics.  Without expert testimony, the jury would be forced to engage in conjecture and speculation.

The facts and opinions discussed by PFC's expert, Rodney Magallan, (Ex. 19) further demonstrate that the plaintiffs' allegations require expert testimony.  The duties of a company such as PFC that places intelligence analysts in positions dealing with highly sensitive information are not within the common experience of laypersons.  Further, Dan Cory's confidential testimony (SOF, ¶ 19) and Ex. 7A, which is confidential Ex. 10 to his deposition, demonstrate that eBay's intelligence operation is obscure and complex, and not a workplace that lay persons can appreciate. Because of the secret and highly confidential nature of these facts, no further details will be set forth here.

---

[15] See  affidavit (exhibit 18)of Steven Krystek, the CEO of PFC, who is familiar with corporate entertainment in Las Vegas.
[16] The harassment began on August 6, 2019; it was on that date that I. Steiner alleges that she began home confinement because she was paralyzed with fear.  (Amended Complaint, pars. 10, 93.)  Baugh, Harville, and Zea all travelled to Boston on August 15, 2019.
[17] In his report, Magallan opines that there was no duty to make an inquiry into the expenses already approved by Zea's eBay supervisors and, if there was a duty, it was not an issue requiring urgent attention but an issue that could wait until the next client check-in. (Ex. 15, p. 7-8)
[18] It is noteworthy that eBay employee David Harville used his personal credit card to pay for his flight to Boston.  (SOF ¶*)

Error! Unknown document property name.

The jury's task in this case is further complicated by, as described by Mr. Magallan, the interplay of the facts with the MSA. Ex. 9.  The MSA encompassed three different Statements of Work ("SOW") for very different positions/services, not just intelligence analysts.  PFC provided workers for Protective Services and Professional Services.  SOW 1 (page 15 of exhibit 9) covered workers placed as part of the Emergency Response Team, Protective Services and Special Projects. SOW 2 (page 19) covered Uniform and Non-Uniform Security Support Services.  Both SOW 1 and 2 workers are defined in those documents as providing Protective Services.  Those workforces provided separate and distinct services from the analyst provided for the GIC; the attached expert report of Mr. Magallan explains this difference in more detail.  Neither SOW 1 or SOW2 includes the requirement that PFC supply the workers with a credit card.  SOW 3 (page 24) is different.  It covers not the Protective Services workforce, but the Professional Services workforce – those workers being placed in intelligence units.  It is only SOW 3 that requires PFC to provide GIC Analysts with a credit card with a $10,000.00 limit.  (MSA, p. 27, Ex. 9.)  The MSA (page 3, ¶ 5) required eBay to reimburse expenses along with a service charge; PFC merely fronted the expense.

Courts have mandated expert testimony in all types of negligence cases where the business of the defendant is beyond the knowledge of the average layperson.[19] The allegations in this case raise a combination of judgments involving security/intelligence operations as well as the duties of the contractor to investigate allegedly improper use of a credit card that does not rise to the level of tortious or criminal conduct and the timing and likely result of such an investigation.

---

[19] See, e.g., Beard et al. v. Goodyear Tire & Rubber Company, et al., 587 A.2d 195 (D.C. 1991) (summary judgment where no expert testimony regarding duty of merchants for failing to detect fraud in credit card applications); Murphy v. DiNisco, 54 Mass.App.Ct. 1115 (2002) (expert required to demonstrate applicable standard of care for general contractor); Lees v. Carthage Coll., 714 F.3d 516, 522 (7th Cir. 2013) (expert testimony required on standard of care for ensuring security of college campus); Shadday v. Omni Hotels Management Corp., 477 F.3d 511, 515 (7th Cir. 2007) (summary judgment for defendant hotel due to lack of proper expert testimony regarding safety precautions customarily taken regarding security); Varner v. D.C., 891 A.2d 260, 267 (D.C. 2006) (expert testimony required to demonstrate that student who murdered fellow student should have been expelled by college instead of suspended after repeated offenses).

Error! Unknown document property name.

This Court found expert testimony necessary in an analogous situation.  See Cruickshank v. Cook, 2014 WL 2615364 (D. Mass 2014).  In Cruickshank, Judge O'Toole found that expert testimony was required in a case in which the plaintiff alleged that the officer of a non-profit corporation failed to take corrective action after years of warnings that the entity was misinterpreting government contracts and failed to implement proper policies to comply with the contracts. In granting judgment for the defendant as a matter of law, the Court wrote:

> Whether Cook "failed" to take "corrective action" after being warned that ECO was "misinterpreting government contracts," or to "sufficiently inquire" into company practices, or to "ensure" that the "proper policies" were implemented, and importantly whether any such failure amounted to a breach of the applicable standard of care under state law, are not matters that a lay fact finder can reliably assess without the assistance of persons having "knowledge, skill, experience, training, or education" concerning such matters. See Fed.R.Evid. 702. It may be true that the Court could adequately guide the jury's understanding of what the relevant contracts required by appropriate legal instructions, but the jury's understanding of proper accounting and/or corporate management practices would have to come from a witness qualified by education, training, or experience to speak to such practices.
> * * *
> Unless the members of the jury have all had experience "in a like position with respect to a similar corporation," they will need to have evidence from someone with that experience about what ordinary prudence would call for in that situation. And without it, they will not have what they need to make a rational evaluation and decision.

Likewise, a jury cannot decide "what ordinary prudence would call for" of PFC regarding Zea's expenses approved by eBay without an expert with experience in the security contractor field. Judge O'Toole cited to LeBlanc v. Logan Hilton Joint Venture, 463 Mass. 316 (2012) to support the proposition that "that substantive matters beyond the ken of lay jurors require evidence from a qualified witness who testifies subject to cross-examination."  Like the architect in LeBlanc, contactors like PFC "do not have a duty to be perfect in their work, but rather are expected to exercise that skill and judgment which can be reasonably expected from similarly situated professionals."  Indeed, simply stating that PFC breached the standard of care or that the

Error! Unknown document property name.

harassment campaign would not have occurred in the absence of negligence is speculative and unsubstantiated. Such conjecture is not appropriate for a jury.

## 2. PLAINTIFFS' LACK OF ANY EVIDENCE WHATSOEVER TO SUPPORT THEIR DIRECT NEGLIGENCE CLAIMS IS ALSO FATAL

Not only have the plaintiffs failed to proffer the requisite expert testimony to support their direct negligence claims against PFC, but there is no evidence, expert or otherwise, which would support their negligent retention and supervision claims against PFC. As discussed above, said claims are premised on Zea's business expenses charged to her PFC card for "team dinner[s]" at K-Kel, Inc.[20] in Las Vegas on July 26, 2019, while on a business trip to Las Vegas with eBay's GIC for eBay's annual company-wide eBayOpen event.  The plaintiffs contend that such charges were improper, whereby PFC should have known therefrom that Zea was using her PFC credit card for improper purposes and thus had a duty to protect the Steiners from Zea stalking and harassing them. Allegedly, PFC breached this duty by not investigating the charges, which proximately caused their injuries, as, had PFC investigated the charges, Baugh and his subordinates would have been precluded from being able to fund and carry out the harassment campaign against the Steiners. Such claims, however, fail as a matter of law. Not only was PFC, under its contract with eBay and as discussed above, not responsible for Zea's expenses or her day to day activities, but it is also undisputed that PFC had no knowledge of the stalking campaign and was not otherwise on notice that Zea had any proclivity to criminally stalk orharassthe Steiners. There is also no evidence that PFC did not act reasonably in their supervision or retention of Zea, nor is there any evidence that an investigation of Zea's expenses would have stopped Baugh and his subordinates from being able to fund and carry out the harassment campaign, nor is there any

---

[20] Zea's credit card statement for July 2019, as well as her July 2019 expense report, reflect charges to "K-Kel, Inc." and do not specify Spearmint Rhino whatsoever. based on information and belief, K-Kel, Inc. operates the Spearmint Rhino gentleman's club located in Las Vegas, Nevada.

Error! Unknown document property name.

evidence that the stalking campaign was only able to occur due to negligence on PFC's behalf.[21].

**a. NO EVIDENCE ZEA HAD THE PROPENSITY TO COMMIT CRIMINAL CONDUCT**

At the forefront, and as discussed supra, PFC contractually relinquished to eBay any control over Zea's expenses and her day to day activities, whereby eBay, not PFC, is the responsible party for same. Plaintiffs' negligent supervision and retention claims also fail for the further reason that there is no evidence of any prior criminal stalking or harassment conduct by Zea, nor even any evidence otherwise that would tend to show that Zea had any proclivity to commit the criminal stalking campaign here. In the absence of same, PFC, as a matter of law, could not have reasonably foreseen that Zea would criminally stalk and harass the Steiners and, thus, PFC would have had no duty[22] to protect the Steiners from Zea's criminal conduct.[23]

Negligent retention and supervision requires competent evidence that the employer failed to use reasonable care in the retention and supervision of the employee and that this failure was the proximate cause of the plaintiff's harm.[24] Ultimately, "employers are responsible for exercising reasonable care to ensure that their employees do not cause foreseeable harm to a foreseeable class of plaintiffs" Cottrell v. Laidley, 103 Mass. App. Ct. 483, 493 (2023). Courts, however, "will not hold the defendant liable for all possible injury no matter how remote or farfetched.[25] Rather, the

---

[21] Summary judgment on a negligence count is the appropriate remedy when a plaintiff fails to provide sufficient evidence that the harm that occurred was within the scope of the link between duty and foreseeable risk to the victim.  See also Foley v. Boston Housing Authority, 407 Mass. 640, 646 (Mass. 1990) (summary judgment for defendant affirmed as attack of plaintiff by fellow employee was outside the scope of the risk of foreseeable harm); Staelens v. Dobert, 318 F.3d 77, 79 (1st Cir. 2003)(summary judgment affirmed where undisputed facts would not permit a fair-minded jury to conclude that the plaintiff's injuries were within the reasonably foreseeable risks of harm resulting from the Defendant's negligent conduct.").

[22] The existence of a duty is a question of law and is thus an appropriate subject of summary judgment. Jupin v. Kask, 447 Mass. 141, 146 (2006). If no such duty exists, a claim of negligence cannot be brought. Remy v. MacDonald, 440 Mass. 675, 677 (2004). "There is no duty owed when the risk which results in the plaintiff's injury is not one which could be reasonably anticipated by the defendant." Glick v. Prince Italia Foods of Saugus, Inc., 25 Mass.App.Ct. 901, 902. That is exactly the case here

[23] In any negligent supervision or retention claim, the potential harm must be foreseeable for the defendant to be liable. See Foley v. Boston Housing Authority, 407 Mass. 640, 646 (1990).

[24] Carson v. Canning, 180 Mass. 461, 462 (1902); Foster v. Loft Inc., 26 Mass. App. Ct. 289, 290 (1988); Rabelo v. Nasit, M.D., 30 Mass. L. Rptr. 547 (2012); Limone v. U.S., 497 F. Supp. 2d 143, 233 (D. Mass. 2007).

[25] Proximate cause, and its concurrent question of foreseeability, "is the ultimate litmus" –merging essential elements of duty and causation. See Rossaci v. Stop and Shop Cos., 7 Mass. L. Rep. 7 (Mass. Super. Ct. 1997). See also Hebert v. Enos, 60 Mass. App. Ct. 817, 821, n5 (Mass. App. Ct. 2004)("where the issue is 'reasonable foreseeability, the distinction between duty and proximate causation is not critical,' and we do not therefore address the two issues separately. Cimino v. Milford Keg, Inc., 385 Mass. 323, 328 n.6, (1982). See Whittaker v. Saraceno, 418 Mass. 196, 198-199, (1994) ('As a practical matter, in deciding the foreseeability question, it seems not important whether [we] define

cause of the injury must be reasonably foreseeable." To be sure though, "not every infirmity of character, such, for example, as dishonesty or querulousness, will [forewarn the employer that the employee may eventually commit criminal or tortious conduct]." Foster v. The Loft, Inc., 26 Mass. App. Ct. 289, 290-291 (internal citations omitted).  "[Even in tragic cases where an employee murders a third party,] 'there must be limits[26] to the scope or definition of reasonable foreseeability based on considerations of policy and pragmatic judgment.'"[27]

## b. PLAINTIFFS' INJURIES WERE NOT WITHIN THE FORESEEABLE RISK

In order for the plaintiffs to prove their negligent supervision or retention claims, the injury must have been within the foreseeable risk.[28] Indeed, foreseeability is key in such claims and, to succeed, plaintiffs must prove that "the employer knew, or should have known, that the offending employee had a proclivity to commit the *complained-of acts,* and that the employer nevertheless failed to take corrective action". Vicarelli v. Business Intern, Inc., 973 F. Supp. 241 (D. Mass. 1997) *citing* Foster v. The Loft Inc., 26 Mass. App. Ct. 289 (1988) (emphasis added).[29] In other words, the evidence must show that the employer was on prior notice of any proclivity of the employee to commit the acts complained of.[30] A proclivity to commit bad acts, in general, is

---

a duty as limited to guarding against reasonably foreseeable risk of harm or whether [we] define the necessary causal connection between a breach of duty and some harm as one in which the harm was a reasonably foreseeable consequence of the breach of a duty')).

[26] These limits to foreseeability in the context of a summary judgment motion are also illustrated in Hebert v. Enos, 60 Mass. App. Ct. 817, 822 (2004). Therein, the plaintiff claimed that the defendant's faulty repairs of a second-floor toilet caused the toilet to overflow.  This overflow sparked a house-wide electrical current that shocked and injured plaintiff when he touched the outside water faucet.  The Court weighed whether or not this was a reasonably foreseeable outcome by "consider[ing] the likelihood, character, and location of the harm, [and] conclud[ing] as matter of law that the injuries sustained by [plaintiff] were a 'highly extraordinary' consequence of a defective second-floor toilet." Hebert v. Enos, 60 Mass. App. Ct. 817, 822 (2004)(citing Restatement (Second) of Torts, § 435(2).)  The Court further noted that: "although we can envision a variety of foreseeable injuries arising out of a defective toilet, the electric shock to a neighbor when he touches a faucet outside the house is well beyond the 'range of reasonable apprehension' and therefore not foreseeable. Id.

[27] Coughlin v. Titus & Bean Graphics, Inc., 54 Mass. App. Ct. 633, 641 (2002)(quoting Griffiths v. Campbell, 425 Mass. 31, 35-36 (1997)), review denied, 772 N.E.2d 590 (2002). See also, Poskus v. Lombardo's of Randolph, Inc., 423 Mass. 637, 640 (1996)

[28] Foster v. Loft, Inc., 26 Mass. App. Ct. 289, 295, 526 N.E.2d 1309, 1313 (1988), citing Irwin v. Ware, 392 Mass. at 765, , and quoting from Cimino v. Milford Keg, Inc., 385 Mass. 323, 330, (1982).

[29] Massachusetts case law does not meaningfully distinguish between torts of negligent supervision, retention, training, and hiring. Doe v. Brandeis Univ., 718 F. Supp. 3d 83, 92 (D. Mass. 2024).

[30] Murray v. Uber Technologies, Inc., 486 F. Supp 3d 468, 477 (D. Mass. 2020). See also Dalai v. Wolas, 100 Mass. App, Ct. 1134 (2022)( judgment as a matter of law as to negligent supervision and retention claim as insufficient evidence that employer on notice of past criminal conduct).

insufficient.[31]Instead, it must be foreseeable that "the employee might harm someone in the same general manner in which the employee is alleged to have harmed the plaintiff."[32]

Here, however, the record is clear that PFC had no prior knowledge of, and was definitively not involved in, the stalking campaign, nor is there any evidence which to support that PFC had any reason to anticipate that its loaned servant,[33] Zea, would stalk and harass someone or otherwise engage in the "campaign of terror" of which she was later convicted. To be sure, Zea had no prior history of stalking or harassing, nor was there anything else in her history or background which could have put PFC on notice of her proclivity for stalking or harassment. Rather, the uncontroverted evidence is that during her tenure at eBay prior to the harassment campaign, Zea was an exemplary analyst for eBay and held in eBay's high regard. After eBay's employment evaluation of Zea in June 2018 she became salaried as opposed to paid hourly. eBay also specifically told PFC that Zea was to remain an analyst for eBay when PFC took over the GIC contract. In the 8 to 10 months that PFC technically employed Zea while she worked for eBay, eBay frequently relayed their approval and satisfaction of Zea to PFC,[34] even doing so while Zea, unbeknownst to PFC, was perpetrating the stalking campaign.[35] Furthermore, never once did anyone raise any concerns or complaints about Zea to PFC until after the Natick events. This includes with respect to her expenses.[36] There was thus nothing to put PFC on notice that Zea had

---

[31] *See* <u>Doe v. Medeiros</u>, 168 F. Supp. 3d 347, 354 (D. Mass. 2016)("[t]he fact that an employee has a criminal record, by itself, is not automatically sufficient to establish an employer's knowledge" because "[t]here must be a connection between the employee's criminal background and the nature of the alleged tortious conduct").

[32] <u>Saldivar v. Racine</u>, 818 F.3d 14, 21 (1st Cir. 2016).

[33] The uncontroverted evidence is that Zea, while technically the employee of PFC, was loaned out to eBay to work as an analyst for eBay in eBay's GIC. Within this arrangement, and pursuant to PFC's contractual agreement with eBay, PFC only administered Zea's salary and benefits and otherwise had no direction or control, nor knowledge of, Zea's day to day tasks while working at eBay, with eBay, pursuant to the agreement, otherwise acting as Zea's employer/Master. As is established, eBay provided all supervision and training as to her day to day work, conducted her employment reviews, determined her salary, raises, and promotions, and had the right and power to terminate her from her position at eBay.

[34] eBay also promoted Zea from hourly to salary in and gave Zea three raises in the spring and summer of 2019=., , with eBay also relaying each of these decisions to PFC in short order

[35] On August 21, 2019, eBay advised PFC of their decision to again increase Zea's salary.

[36] The significance of eBay never having an issue with, or taking any corrective action as to, any of Zea's expenses, including her July 2019 expenses, cannot be understated. eBay, *not PFC*, was ultimately who paid for Zea's expenses, yet, as the footer of the bill, eBay, after reviewing them, approved them and never once raised or expressed any concern or issue with them to PFC, nor took any action or steps to prevent or stop similar expenses in the future

14

any criminal propensity or was otherwise unfit to be an analyst for eBay.

Indeed, until this harassment campaign, Zea had been a model employee in her work for eBay,[37] with no history which would support a claim of negligent retention or supervision. In the absence of any evidence of prior stalking or harassment or substantial misconduct, it was, thus, entirely unforeseeable to PFC, as a matter of law, that Zea would harass or stalk the Steiners. While plaintiffs point to Zea's expenses on July 26, 2019 for a "team dinner" at a Las Vegas gentleman's club while Zea and the eBay team were in Las Vegas to provide security for eBay's annual eBayOnly, this was not an improper or unsanctioned charge. This was an eBay sanctioned and authorized expense, with no indicia that PFC should have viewed this as an improper or unauthorized charge.[38]

Indeed, the plaintiffs, in the absence of any actual competent evidence, have also resorted to relying on said charge for "expensive dinners and strip clubs"[39] to contend that PFC was on notice of Zea's proclivity to criminally stalk and harass. These charges though are insufficient, as a matter of law, to prove that Zea had a propensity to engage in the kind of criminal stalking and harassment of which she was later convicted. Indeed, expensive dinners and strip clubs are not illegal, nor so similar to the conduct here so as to put PFC on notice that Zea would engage in a "campaign of terror" against eBay's perceived enemies. Such activities are nothing like the particular acts that materialized and injured the plaintiffs and are not sufficient to establish negligent retention or negligent supervision. Indeed, Courts have consistently rejected negligent retention claims premised on an employer's knowledge of an employee's proclivity for misconduct

---

[37] As discussed further below, eBay also regularly and consistently relayed their approval and satisfaction of Zea to PFC.

[38] See Doe v. Brandeis Univ., 718 F. Supp. 3d 83, 93 (D. Mass. 2024).

Error! Unknown document property name.

different from that which injured the plaintiff.[40] There is also no evidence from which to make the leap that to the extent PFC was or should have been aware of Zea charging "expensive dinners and strip clubs," they should have anticipated that she would engage in a scheme of criminal stalking/harassment. Indeed, knowledge of Zea's charges of "expensive dinners and strip clubs" or of any propensity for expensive dinners and strip clubs would not make it foreseeable that Zea would stalk or harass someone.  Indeed, such traits, even if they had been known to PFC, are too "attenuated from [Plaintiffs'] injuries to show negligent supervision or retention.  Because the harm alleged by plaintiffs was not foreseeable by PFC, the negligent supervision and retention claims must fail. In short, this is simply not a tenable theory.

Furthermore, the Las Vegas charges also would not have alerted PFC to any proclivity or risk for any criminal conduct and certainly did not here. To be sure, such charges in no way reflected a propensity for Zea to use her PFC card for improper or unauthorized purchases,[41] with the record also clear that such charges were not in any way improper or unauthorized,[42] but had been allowed and approved by her eBay supervisors beforehand.[43] eBay also approved the expenses on her expense report before the report was even received by PFC.[44] Ex. 15.

---

[40] *See, e.g.*, <u>Adams v. Cong. Auto Ins. Agency, Inc.</u>, 65 N.E.3d 1229, 1236 n.6 (Mass. App. Ct. 2016) (employer's knowledge of employee's check-fraud conviction "would not establish negligence" if employee later committed rape); <u>Saldivar v. Pridgen</u>, 91 F. Supp. 3d 134, 137–39 (D. Mass. 2015) (disciplinary violations "entirely unrelated to any form of sexual misconduct" did not make it foreseeable that officer would commit sexual assault), *aff'd sub nom.* <u>Saldivar v. Racine</u>, 818 F.3d 14 (1st Cir. 2016).

[41] . Indeed, the uncontroverted evidence is that, in making said purchases, Zea was using the PFC Cardper the direction and instruction of her eBay supervisors to pay for an eBay "team outing" at the Spearmint Rhino in Las Vegas while there for eBay's annual company wide eBayOnly event. Indeed, her eBay supervisors were present for and authorized the team outing and she was paying for the team outing on her PFC card at the instruction of her eBay supervisors and with their knowledge. Her eBay supervisors also directed her to expense the team outing and authorized her to pay for the team outing on her PFC card.

[42] Zea was also not the only GIC analyst employed by PFC to make charges like this—both in kind and expense-- during the July 2019 eBayOne event, further confirming the propriety of the activities and charges—both in kind and expense. Zea was, however, the only such analyst to go on to stalk, harass, and terrorize the Steiners, further confirming not only the propriety of the charges, including the kind and expense, but also that such activities and/or charges, as well as an analysts' propensity for such activities and/or charges, in no way made it foreseeable that an analyst would stalk, harass, or terrorize someone.

[43] Her eBay supervisors were present for, and authorized, the Spearmint Rhino team outing, directed Zea to expense the outing, and authorized her to pay for it on her PFC card

[44] Indeed, not only were such charges authorized by Zea's eBay supervisors at the time made, but said charges were also retroactively approved and implicitly sanctioned by eBay, who, as the ultimate payor of those charges, never took any punitive or corrective action against Zea or her eBay supervisors related to the charges, nor relayed any issue to PFC about the charges, nor otherwise took any corrective steps or measures or implemented any safeguards to prevent those types of charges in the future.

Error! Unknown document property name.

Ultimately, the uncontroverted evidence is that Zea's charges for "expensive dinners and strip clubs" were not illegal or improper, were not viewed as improper by PFC, nor, by eBay, were done with Zea's eBay supervisor's knowledge and at his instruction, and were approved again by eBay on Zea's July 2019 expense report before sending the already approved expense report to PFC on August 5, 2019.[45]  While the plaintiffs contend that these charges, nevertheless, should still have been a "red flag" to PFC,  PFC's only way of learning about them would have been through either the July credit card statement, which did not close until August 21, 2019 (after the Natick events), or through Zea's expense report, which PFC first received the day before the stalking campaign began. At the time of receipt though, the charges and expenses, consistent with the terms of the MSA, had already been approved by the ultimate payor of them and the party ultimately responsible[46] for Zea's expenses and day to day activities (eBay).[47] There was also nothing to suggest anything untoward about the activities and charges. The already eBay approved expenses were all described as "team dinner" on the expense report, and only further supported the implication that this was an eBay sanctioned event with the eBay team. Furthermore, eBay, as the ultimate payor of the expense, also had no issue with the expense or paying the expense and took no preventative action against such future charges, thereby giving their implicit authorization and approval for continued expenses like this. . As such. PFC had no reason to know or suspect any impropriety and no reason to view the expense as anything other than an eBay sanctioned and

---

[45] Under the MSA agreement, eBay was required to review and approve the expense reports before sending them to PFC. Expense reports were, thus, not to be sent to PFC unless already reviewed and approved by eBay, whereby the sending of an expense report to PFC meant that that the report was approved by eBay.

[46] Not only were the July 2019 expenses, consistent with eBay's responsibility for them under the MSA, already approved by eBay when received by PFC, but PFC had also otherwise relinquished its right to control to eBay under the MSA as to Zea's expenses and was not responsible for approving her expenses and had no duty to approve her expenses..

[47] While it is true that the expense reports were ultimately sent to PFC, they were not sent to PFC for approval purposes, but were sent to PFC having already been approved by eBay. Indeed, rather than for approval purposes, the expense reports were sent to PFC for PFC to prepare the eBay invoices required of it under the MSA in order to get reimbursed for the expenses it fronted for eBay. As only further establishes eBay's control over these expenses despite PFC's fronting the payment of them upfront, PFC, after completing such an invoice, then needed to still submit it to eBay for review and approval, before the invoice could be submitted to eBay's payment processing system for processing and reimbursement to PFC.

Error! Unknown document property name.

approved business expense. Indeed, it would be nonsensical to conclude that PFC failed to, or even had any duty to, take steps to remedy or address charges by Zea that Zea's eBay supervisors were aware of and had instructed her to incur and which, eBay, as the financially responsible party for the expenses and the overseer of Zea's day to day activities, also approved, found no issues with, and did not itself take any steps or actions to remedy or change.

Under such undisputed and uncontroverted facts, the plaintiffs will not be able to present any evidence that said charges on PFC's card were unauthorized or impermissible or should have put PFC on notice that Zea was at risk of engaging in criminal misconduct. Furthermore, based on Zea's stellar record while working at eBay, as well as the intentionally secretive nature of the harassment campaign, PFC also had no way of knowing that Zea was capable of engaging in the entirely unforeseeable behavior that forms the basis of this lawsuit. As such, plaintiffs' negligent retention and supervision claims fail as a matter of law.

c. **PLAINTIFFS HAVE NO EXPECTATION OF PROVING CAUSATION**

Plaintiffs' direct negligence claims also fail for the further reason that they will not be able to establish that any negligent conduct by PFC was the proximate and/or but for cause of the harm and, thus, they will be unable to prove causation. Even if PFC, as a security contractor, was somehow negligent in its retention and supervision of an employee/loaned servant embedded at eBay and under eBay's direction and control, it is still entitled to summary judgment because, as a matter of law, such negligence was not the **proximate cause** of the plaintiffs' harm.[48] Here, any

---

[48] "'[N]egligence is without legal consequence unless it is a contributing cause of the injury.'  And a contributing cause must be a proximate, not a **remote,** cause." When all the facts are established and there can be no reasonable difference as to the effect of them, causation becomes a question of law. See, e.g., Horan v. Watertown, 217 Mass. 185, 186-187 (1914)(directed verdict upheld in favor of defendant town which negligently stored dynamite in an unsafe box along a public way, because the subsequent daylight thefts of dynamite by children, who then injured themselves when playing with the dynamite, were not reasonably foreseeable); Sullivan v. Griffin, 318 Mass. 359. **Galbraith v. Levin**, 323 Mass. 255.

negligence by PFC, if found, would, as a matter of law, be a remote cause of the harm,  not a proximate cause of the plaintiffs' injuries, because the plaintiffs' harm was not foreseeable to PFC.

Not only can there be no proximate causation as to PFC, but PFC's actions are too "attenuated from [Plaintiffs'] injuries and are not a but for cause of the plaintiffs' harm. Indeed, the plaintiffs will be unable to prove that, but for negligence on that part of PFC, the stalking campaign would not have occurred. PFC had no knowledge of or involvement or participation in the stalking campaign which was otherwise orchestrated and perpetrated in secret by multiple criminal wrongdoers, only one of whom—Zea-- PFC had an affiliation with. PFC, however, did not have control of Zea's day to day activities, with it remaining that Zea was under the direct supervision and control of her eBay supervisors, namely Baugh, Popp, Harville, and, at times, Stockwell, all of whom were participants with Zea in the criminal stalking campaign, if not the primary orchestrators of it. Indeed, it is completely unrealistic and nothing more than mere speculation and conjecture for the plaintiffs to claim that the stalking campaign would not have occurred had PFC terminated, reprimanded, suspended, or otherwise taken any action against Zea, including as to her PFC card. Zea was only one of many participants and, though she purchased items for the campaign on her PFC credit card, the plaintiffs cannot prove that, without Zea or her PFC card, her actions and purchases would not have otherwise been made by someone else and that the criminal defendants would not have still otherwise proceeded and succeeded with their criminal scheme.. Schlichte v. Granite Sav. Bank, 40 Mass. App. Ct. 179, (1996).

Just like in Schlichte, manifestly this was not the case, with the record devoid of any evidence that the other criminal defendants could not have stepped in the place of Zea or that the purchases made by Zea on the PFC credit card would not have still been made, with the record also clear that purchases for this campaign were, in fact, made on non PFC credit cards. To wit,

Error! Unknown document property name.

there is no evidence, and no ability of the plaintiffs to prove that, had PFC investigated Zea's "expensive dinner and strip club" charges, it would have rendered Baugh and his subordinates unable to proceed. Nor is there any evidence that PFC's investigation would not have been similarly thwarted by lies like eBay's subsequent investigation. Indeed, Zea's eBay supervisors who were responsible for her day to day supervision and control were the orchestrators of the campaign and the primary proponents and facilitators of keeping it hidden from anyone outside of the GIC. Furthermore, PFC did not learn of the Las Vegas charges until the day before the approximately 2 week campaign began and it is entirely speculative for the plaintiffs, in the absence of any evidence, to contend that an ensuing investigation at that time would have prevented or impacted the stalking campaign. As such, plaintiffs cannot prove causation, warranting summary judgment for their direct negligence claims.

### **3.** **PLAINTIFFS' LACK OF EVIDENCE THAT PFC CONSPIRED WITH EBAY TO COMMIT THE STALKING CAMPAIGN IS FATAL**

Plaintiffs' civil conspiracy claim fails as a matter of law, with it entirely undisputed that PFC had no knowledge of the stalking campaign and no participation or involvement in it whatsoever. Indeed, there is also no evidence whatsoever that PFC authorized, participated in, or consented to Zea's criminal conduct[49] or that PFC had an agreement with any of the other defendants to do a wrongful act, with it also undisputed that Baugh concealed the plan to harass the Steiners from individuals outside of the GIC, including PFC. On the contrary, the only competent evidence is that PFC had no knowledge or awareness of any wrongful conduct by

---

[49] To establish a **civil conspiracy**, a plaintiff must demonstrate that "a combination of persons [acted] pursuant to an **agreement** to injure the plaintiff." Gutierrez v. Mass. Bay Transp. Auth., 437 Mass. 396, 415 (2002), quoting J.R. Nolan & L.J. Sartorio, Tort Law § 99, at 136 (2d ed. 1989). "For liability to attach on this basis, there must be, first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994).

Error! Unknown document property name.

anyone at eBay, including Zea, and did not become concerned with the operations of eBay's GIC until August 19, 2019, the day before Natick Police reached out to eBay.  Furthermore, the only competent evidence, including by expert Rodney Magallan, is that Zea's credit card charges did not put PFC on notice of criminal conduct.

To be sure, PFC lacked the intent and knowledge needed for civil conspiracy. It also cannot be said that PFC provided substantial assistance to Zea, or encouraged Zea to engage in the alleged criminal conduct as PFC had no knowledge of the alleged Steiner operation. Further, defendant Cook explicitly informed defendants Popp, Baugh and Gilbert that Scott Pugh at PFC should not be informed of the Boston trip or alleged Steiner operation. Indeed, from the very beginning of Zea's work at eBay, her eBay supervisors made it clear that the GIC analysts were not to report anything to Concentric or PFC. The very nature of the industry for sensitive intelligence operations is that knowledge is on a "need to know" basis. PFC was not considered "need to know" as to the Steiner operation. Consequently, the plaintiffs' civil conspiracy claims against PFC fail.

WHEREFORE, defendant Progressive F.O.R.C.E. Concepts, LLC respectfully requests that its Motion for Summary Judgment be ALLOWED.

Respectfully submitted,
PROGRESSIVE F.O.R.C.E. CONCEPTS, LLC,
By Its Attorneys,

/s/ *Kimberly Iverson Tufo*
_____
Scott Douglas Burke, BBO #551255
sburke@morrisonmahoney.com
Kimberly Iverson Tufo, BBO #686062
ktufo@morrisonmahoney.com
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210-1181
Phone:  617-439-7500

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 28, 2024.

*Kimberly Iverson Tufo*
—————————————————

Kimberly Iverson

**Error! Unknown document property name.**