# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| INA STEINER, DAVID STEINER, and STEINER ASSOCIATES, LLC, | ) ) ) |
| Plaintiffs, | ) Civil Action No. 21-CV-11181-PBS ) ) |
| v. | ) **Oral Argument Requested** ) |
| EBAY INC., et al., | ) ) |
| Defendants. | ) ) |

# DEFENDANT EBAY INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO CERTIFY INTERLOCUTORY APPEAL OF NOVEMBER 1 ORDER UNDER 28 U.S.C. § 1292(b)

## TABLE OF CONTENTS

INTRODUCTION ........................................ 1

BACKGROUND ........................................ 1

ARGUMENT ........................................ 3

I. The order involves a controlling question of law. ........................................ 3

II. There is substantial ground for difference of opinion. ........................................ 7

III. Immediate appeal would materially advance the litigation. ........................................ 11

CONCLUSION ........................................ 12

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adams v. Murakami*
   54 Cal.3d 105 (1991) ...................................................................................................................5

*In re Air Crash Disaster Near Chi.*,
   500 F. Supp. 1044 (N.D. Ill. 1980), *aff'd in part, rev'd in part,* 644 F.2d 594
   (7th Cir. 1981)...............................................................................................................................6

*In re Air Disaster in Lockerbie*,
   736 F. Supp. 18 (E.D.N.Y. 1990), *aff'd,* 928 F.2d 1267 (2d Cir. 1991)......................................6

*Atl. Sounding Co. v. Townsend*,
   557 U.S. 404 (2009).....................................................................................................................6

*Batterton v. Dutra Grp.*,
   2015 WL 13752889 (C.D. Cal. Feb. 6, 2015)..............................................................................6

*Bergeron v. Atl. Pac. Marine*,
   899 F. Supp. 1544 (W.D. La. 1993)............................................................................................6

*Calhoun v. Yamaha Motor Corp. U.S.A.*,
   216 F.3d 338 (3d Cir. 2000).........................................................................................................6

*In re Clark-Franklin-Kingston Press, Inc.*,
   No. 90-11231-WF, 1993 WL 160580 (D. Mass. Apr. 21, 1993).................................................5

*Comput. Sys. Eng'g, Inc. v. Qantel Corp.*,
   571 F. Supp. 1365 (D. Mass. 1983), *aff'd*, 740 F.2d 59 (D. Mass 1983) ...........................7, 8, 9

*Comput. Sys. Eng'g, Inc. v. Qantel Corp,* 740 F.2d 59 (1st Cir. 1984) ...................................7, 8, 9

*Curtis v. Metro Ambulance Serv., Inc.*,
   982 F.2d 472 (11th Cir. 1993) (per curiam)................................................................................6

*Exxon Shipping Co. v. Baker*,
   554 U.S. 471 (2008).....................................................................................................................6

*Lawson v. FMR LLC*,
   724 F. Supp. 2d 167 (D. Mass. 2010) .........................................................................................5

*Maertin v. Armstrong World Indus., Inc.*,
   2006 WL 827881 (D.N.J. Mar. 29, 2006)...................................................................................3

*Moore v. LaSalle Corr., Inc.*,
    2020 WL 13851436 (W.D. La. Jan. 14, 2000) ...........................................................................6

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    No. 05-11084-PBS, 2008 WL 163644 (D. Mass. Jan. 16, 2008) ...............................4, 5, 6, 10

*Philip Morris Inc. v. Harshbarger*,
    957 F. Supp. 327 (D. Mass. 1997) ...........................................................................................4

*Rawnsley v. Sup. Ct.*,
    183 Cal. App. 3d 86 (1986) .....................................................................................................6

*Reicher v. Berkshire Life Ins. Co. of Am.*,
    360 F.3d 1 (1st Cir. 2004) ........................................................................................................3

*Schalliol v. Fare*,
    206 F. Supp. 2d 689 (E.D. Pa. 2002) ...................................................................................3, 6

*Schulhof v. Ne. Cellulose, Inc.*,
    545 F. Supp. 1200 (D. Mass. 1982) .........................................................................................9

*Simmons v. Galvin*,
    No. 01-11040-MLW, 2008 WL 11456109 (D. Mass. Jan. 16, 2008) ...................................4, 5

*Sterk v. Redbox Automated Retail, LLC*,
    672 F.3d 535 (7th Cir. 2012) ...................................................................................................5

*In re TMI Litig.*,
    1994 WL 858043 (M.D. Pa. July 13, 1994) ..................................................................4, 6, 11

*Trident Marine, Inc. v. M/V Atticos*,
    1995 WL 91125 (E.D. La. Mar. 1, 1995) .................................................................................6

*United States v. Rent Am., Corp.*,
    734 F. Supp. 474 (S.D. Fla. 1990) ...........................................................................................6

*Value Partners S.A. v. Bain & Co.*,
    245 F. Supp. 2d 269 (D. Mass. 2003) ......................................................................................9

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000) ....................................................................................................5

*Waters v. Day & Zimmermann NPS, Inc.*,
    No. 19-11585-NMG, 2020 WL 4754984 (D. Mass. Aug. 14, 2020) .......................................5

*Winter v. Novartis Pharms. Corp.*,
    739 F.3d 405 (8th Cir. 2014) ............................................................................................10, 11

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................................1, 3, 11

Cal. Civ. Code § 3294(b) ................................................................................................................5

**Other Authorities**

Restatement (Second) of Conflict of Laws (1971) .......................................................................8, 9

**INTRODUCTION**

As the Court knows, Plaintiffs and eBay sought an early determination of the choice of law governing punitive damages in this case because that issue will significantly shape future proceedings and determine whether settlement is possible. On November 1, 2024, the Court ruled that Massachusetts law governs punitive damages for all of Plaintiffs' claims except those for intentional infliction of emotional distress ("IIED") and civil conspiracy, which the Court held are governed by California law. *See generally* Dkt. 506 ("Order"). eBay respectfully submits that the Court's ruling regarding Plaintiffs' IIED and civil conspiracy claims is contrary to First Circuit precedent and other decisions in this district. In addition, although eBay is committed to compensating Plaintiffs fairly and appropriately for what they endured, Plaintiffs' asserted damages claims are entirely unfounded, and thus the Court's ruling allowing punitive damages makes trial in this matter all but certain and significantly expands the trial's likely scope. Because interlocutory reversal of that ruling would save the Court and parties considerable time and expense by making settlement likelier and, at a minimum, simplifying trial, and because there is substantial ground for difference of opinion over the ruling, eBay respectfully moves for certification of the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

**BACKGROUND**

In their operative complaint, Plaintiffs sought punitive damages only with respect to one of their 14 claims: stalking under California's stalking statute. *See* Dkt. 176 ¶¶ 427–428. In December 2023, this Court granted defendants' motion to dismiss the California stalking claim because Plaintiffs' injuries "occurred primarily in Massachusetts" and "the majority of the conduct causing the injury … also occurred in Massachusetts," notwithstanding that "online messages may have been sent from California" and "planning and facilitating occurr[ed] there as well." Dkt. 309

1

at 23. Plaintiffs subsequently amended their initial disclosures to remove the claim for punitive damages that they had included in the disclosures served before the dismissal of the stalking count and took no issue with eBay's later statement that their amended initial disclosures "abandon the Steiners' prior demand" for punitive damages "due to the dismissal of the California stalking claim, which was the only claim that provided any basis for punitive damages."

Plaintiffs resurrected their claim for punitive damages upon obtaining new counsel in May 2024, seeking over $466 million. They argued that although Massachusetts law governs liability and compensatory damages, California law should govern punitive damages. Recognizing the critical importance of this issue, the Court permitted the parties to address it in early cross-motions for partial summary judgment. Dkt. 418. Plaintiffs' briefs argued that California law governed the availability of punitive damages on all the alleged intentional torts, *see* Dkt. 430-1 at 18, without differentiating among the claims. At oral argument on the parties' cross-motions, Plaintiffs focused on their defamation and ratification claims. When Plaintiffs' counsel suggested California law governed punitive damages on the IIED claim, the Court responded, "I'm not sure I would agree with that. I mean, having presided over all of this, it did strike me that the bulk of the misconduct was here, although I have to agree some of it was planned there." Tr. of Oct. 4, 2024 Hr'g at 12:8–18.

On November 1, the Court ruled on the motions. The Court acknowledged the "presumption" in personal injury cases that the law of the place of the injury applies, but explained that the "general presumption may be rebutted if with respect to the particular issue, some other state has a more significant relationship." Order at 9–10. The Court then held that California has a more significant relationship with respect to the availability of punitive damages on Plaintiffs' IIED and civil conspiracy claims because California's "interest in deterring … malicious and extreme

2

conduct by its corporate domiciles prevails since the most significant of the unlawful conduct [as to those claims] took place within its borders." *Id.* at 13.

## ARGUMENT

A district court may certify an interlocutory appeal of an order that (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," when (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). All three conditions are met here. The question of whether punitive damages are governed by California or Massachusetts law—and thus are available or not—will shape the course of this years-long litigation, and interlocutory reversal of the Court's ruling regarding Plaintiffs' IIED and civil conspiracy claims will materially advance the litigation's termination by substantially increasing the likelihood of settlement and narrowing the issues for trial (if any). And although this Court held that California law governs the availability of punitive damages on those claims, that ruling at a minimum is in substantial tension, if not outright conflict, with First Circuit precedent and other decisions in this district, and is thus a ruling "as to which there is substantial ground for difference of opinion." *Id.* Certification of that ruling for interlocutory appeal is therefore warranted.

**I.     The order involves a controlling question of law.**

The November 1 Order decides a controlling question of law: whether California or Massachusetts law governs the availability of punitive damages on Plaintiffs' IIED and civil conspiracy claims. To begin with, choice of law is a question of law, reviewed by the court of appeals *de novo*. *See, e.g.*, *Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 4 (1st Cir. 2004) ("Choice of law determinations are legal questions over which courts of appeal have plenary review, and we accordingly review the issue *de novo*." (citation omitted)). Numerous courts have thus certified orders deciding choice of law issues for interlocutory review. *See, e.g.*, *Maertin v. Armstrong*

3

*World Indus., Inc.*, 2006 WL 827881, at *6–7 (D.N.J. Mar. 29, 2006); *Schalliol v. Fare*, 206 F. Supp. 2d 689, 701 (E.D. Pa. 2002).

In this case, the question of which state's law governs punitive damages is also "controlling." A question is "controlling" if its resolution is likely to "significantly alte[r]" the litigation. *Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997). This is fundamentally a practical inquiry. Thus, the "controlling" standard is met not only when reversal of the district court's order would "dispose of the entire lawsuit," *In re Pharm. Indus. Average Wholesale Price Litig.*, No. 05-11084-PBS, 2008 WL 163644, at *1 (D. Mass. Jan. 16, 2008), but also when "interlocutory reversal might save time for the district court, and time and expense for the litigants," *Simmons v. Galvin*, No. 01-11040-MLW, 2008 WL 11456109, at *3 (D. Mass. Jan. 16, 2008) (quoting 16 Wright & Miller, *Federal Practice & Procedure* § 3930).

That standard is met here for two reasons. *First*, "[i]f punitive damages are not at issue, … trial [in this case] is likely to be greatly simplified and significantly shorter in duration," *In re TMI Litig.*, 1994 WL 858043, at *1 (M.D. Pa. July 13, 1994), because Plaintiffs' claim that eBay ratified misconduct by the individual defendants would be cumulative. This claim, which focuses on the actions of eBay's Board of Directors and outside counsel in the period *after* the Natick events, involves a distinct set of events from the underlying claims, different documentary evidence, and different fact and expert witnesses, and thus would require a trial within the trial on this one issue. *See generally* Dkt. 176 ¶¶ 559–571. If only compensatory damages are available, however, such a mini-trial would be unnecessary. eBay has already admitted it is vicariously liable for such damages based on *respondeat superior* for the misconduct giving rise to the Plaintiffs' claims, *see* Dkt. 320 ¶¶ 414, 553, and, as the Court has recognized, ratification is not an "independent tort" but rather just another "theory of liability" for holding eBay vicariously liable, Order at 5 n.3. By

4

contrast, if punitive damages are available, Plaintiffs' ratification theory would acquire independent relevance because *respondeat superior* liability is not sufficient to impose punitive damages on eBay under California law, but ratification is. *See* Cal. Civ. Code § 3294(b). Relatedly, if punitive damages are unavailable, evidence of the individual defendants' financial condition would be irrelevant. *See Adams v. Murakami*, 54 Cal.3d 105, 109 (1991). Reversal of the Court's ruling regarding the applicability of California law to Plaintiffs' IIED and civil conspiracy claims thus would "save time for the district court, and time and expense for the litigants." *Simmons*, 2008 WL 11456109.

*Second*, reversal of the Court's Order could "dispose of the entire lawsuit," *In re Pharm. Litig.*, 2008 WL 163644, at *1, by substantially increasing the likelihood of settlement. In the "closely tied" inquiry of whether immediate appeal would materially advance the litigation, *Waters v. Day & Zimmermann NPS, Inc.*, No. 19-11585-NMG, 2020 WL 4754984, at *2 (D. Mass. Aug. 14, 2020), courts have recognized that an interlocutory appeal is warranted when it would eliminate "uncertainty about the status of [a] claim" that would otherwise "delay settlement, … and by doing so further protract the litigation," *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012). As Judge Woodlock has recognized, "[c]ertainty as to the fundamental legal issue" in a case may shape "settlement strategies in a fashion which should expedite resolution of th[e] cas[e] overall." *Lawson v. FMR LLC*, 724 F. Supp. 2d 167, 169 (D. Mass. 2010); *see also In re Clark-Franklin-Kingston Press, Inc.*, No. 90-11231-WF, 1993 WL 160580, at *3 (D. Mass. Apr. 21, 1993) (recognizing that "interlocutory appea[l] should be granted where resolution of the issues on appeal might lead to settlement"). Thus, in the class-certification context, the First Circuit has made clear that the effect of an immediate appeal on settlement negotiations is an

5

important consideration. *See Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 293 (1st Cir. 2000).

As the parties' agreement to seek an early determination of the issue recognized, the Court's ruling on choice of law for punitive damages will heavily influence the course of this case. Courts have long recognized how the specter of punitive damages distorts settlement negotiations. *See, e.g.*, *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 499 (2008); *Rawnsley v. Sup. Ct.*, 183 Cal. App. 3d 86, 90–91 (1986). Indeed, in recognition of the fact that "resolution of the punitive damages issues may alter the direction of the case," *Batterton v. Dutra Grp.*, 2015 WL 13752889, at *3 (C.D. Cal. Feb. 6, 2015), numerous courts have concluded that the availability of punitive damages is a proper issue for interlocutory appeal. *See, e.g.*, *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 408 (2009); *Calhoun v. Yamaha Motor Corp. U.S.A.*, 216 F.3d 338, 342 (3d Cir. 2000); *Curtis v. Metro Ambulance Serv., Inc.*, 982 F.2d 472, 473 (11th Cir. 1993) (per curiam); *Batterton*, 2015 WL 13752889, at *2; *Moore v. LaSalle Corr., Inc.*, 2020 WL 13851436, at *2–3 (W.D. La. Jan. 14, 2000); *Trident Marine, Inc. v. M/V Atticos*, 1995 WL 91125, at *3 (E.D. La. Mar. 1, 1995); *In re TMI Litig.*, 1994 WL 858043, at *1; *Bergeron v. Atl. Pac. Marine*, 899 F. Supp. 1544, 1550–51 (W.D. La. 1993); *In re Air Disaster in Lockerbie,* 736 F. Supp. 18, 21 (E.D.N.Y. 1990), *aff'd*, 928 F.2d 1267 (2d Cir. 1991); *United States v. Rent Am., Corp.*, 734 F. Supp. 474, 483 (S.D. Fla. 1990); *In re Air Crash Disaster Near Chi.*, 500 F. Supp. 1044, 1054 (N.D. Ill. 1980). Given the more than $466 million in punitive damages Plaintiffs seek here, "an immediate appeal may materially advance the ultimate termination of the litigation by providing the parties with certainty as to the scope of possible financial exposure if the case were to proceed to trial, which differs greatly depending on whether [California] or [Massachsuetts] law is applied." *Schalliol*, 206 F. Supp. 2d at 701 (certifying choice of law ruling for interlocutory appeal).

## II. There is substantial ground for difference of opinion.

There is also substantial ground for difference of opinion over the choice-of-law question resolved in the November 1 Order. A "substantial ground for difference of opinion" exists when "[r]easonable jurists could reasonably disagree" about resolution of the issue. *In re Pharm. Litig.*, 2008 WL 163644, at *1. Here, even leaving aside that Plaintiffs themselves have flip-flopped over whether punitive damages remain available, *see supra* at 1–2, this prong is met by decisions of the First Circuit and other courts in this district that conflict with the Court's decision.

Specifically, eBay respectfully submits that insofar as it applies California law to Plaintiffs' claims, the Order conflicts with *Computer Systems Engineering, Inc. v. Qantel Corp.*, 571 F. Supp. 1365, 1369 (D. Mass. 1983), *aff'd*, 740 F.2d 59 (1st Cir. 1984). As eBay explained in its partial motion for summary judgment, *see* Dkt. 432 at 4–5, *Computer Systems* involved a near identical choice-of-law question to this case: A Massachusetts plaintiff brought tort claims against a California corporation; culpable conduct was divided between Massachusetts and California; Massachusetts law governed all issues of liability and compensatory damages; and the plaintiff nevertheless argued that California law governed the availability of punitive damages because "California has a specific interest in deterring fraud by its domiciliary corporations that outweighs any Massachusetts interest in disallowing punitive damages." 571 F. Supp. at 1369. Both the district court and First Circuit rejected this argument, holding that Massachusetts' "significant" interests "in the uniformity and predictability of its law," in not "discriminat[ing] against a class of nonresident defendants," and in maintaining the "legislative balance achieved by Massachusetts precedents and statutes regarding punitive damages" outweigh California's interests. *Id.* at 1370.

The Order distinguishes *Computer Systems* on several grounds, each of which eBay respectfully submits is mistaken. First, the Court found it "[s]ignifican[t]" that *Computer Systems* "involved claims of fraud and misrepresentation governed by § 148 of the Restatement, … not

7

§ 146, which applies to actions for personal injuries." Order at 14 (citation omitted). In *Computer Systems*, however, the court relied on § 148 only to determine which state's laws governed liability and compensatory damages. *See* 571 F. Supp. at 1368–69. The separate portion of the court's decision on punitive damages did not cite § 148 at all. *See id.* at 1369–70. Instead, it emphasized various factors drawn from § 6 of the Restatement (Second) of Conflict of Laws, such as the relevant policies of the forum; the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; and certainty, predictability and uniformity of result. *Compare* Restatement (Second) of Conflict of Laws § 6(2) (1971) *with Comp. Sys.*, 571 F. Supp. at 1370. These are precisely the factors that, under § 146, guide whether any state has a more significant interest in an issue, such as punitive damages, than the state of injury. *See id.* § 146 (providing in a personal injury case, the "local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties"). Thus, those factors apply equally here and dictate the same result.

Second, the Court stated that the "First Circuit has explained that choice of law considerations such as predictability and uniformity of result 'are geared more toward consensual relationships than tort situations.'" Order at 14 (quoting *Mason v. S. New Eng. Conf. Ass'n of Seventh-Day Adventists of the Town of S. Lancaster*, 696 F.2d 135, 137 (1st Cir. 1982)). The quoted First Circuit opinion, however, was decided two years before the First Circuit's decision in *Computer Systems*, which applied those interests in the context of tort claims.[1] Nor does anything in

---

[1] At oral argument, the Court suggested that in *Computer Systems*, the First Circuit "affirmed without opinion." Tr. of Oct. 4, 2024 Hr'g at 13:5–8. In fact, the First Circuit in that case expressly considered the plaintiff's argument "that California's punitive damages statute should have been applied to its fraud claim," praised the district court's "cogent and complete" analysis of that issue,

8

*Computer Systems* suggest those interests apply only to torts arising from consensual relationships. For one thing, it is odd to say that the parties in *Computer Systems* had a "consensual" relationship since the jury found that "Qantel's fraudulent representations *induced* CSE to enter into" the parties' commercial relationship in the first place. 740 F.2d at 62 (emphasis added). And regardless, nothing about the decision on the choice of law for punitive damages turned on whether the parties' relationship was consensual. Indeed, the decision signaled that this factor is irrelevant by citing *Schulhof v. Northeast Cellulose, Inc.*, 545 F. Supp. 1200, 1203 (D. Mass. 1982), in which the court refused to apply different states' laws to punitive and compensatory damages claims arising out of a mid-air plane collision—a nonconsensual relationship if ever there was one. *See Comp. Sys.*, 571 F. Supp. at 1370 (citing *Schulhof* for the concern that applying different states' laws to punitive and compensatory damages would "upset the delicate balance achieved by legislative compromise"); *cf.* Restatement (Second) of Conflict of Laws § 150 (providing that the "principles stated in § 6" dictate which state "has the most significant relationship" as to any "particular issue" involving defamation, notwithstanding that defamation often involves nonconsensual relationships).

Distinguishing *Computer Systems* on the ground that it involved fraud claims is also difficult to square with the Court's observation that punitive damages primarily serve a state's interest in "deterring … malicious and extreme conduct by its corporate domiciles." Order at 13. The plaintiff invoked that very interest in *Computer Systems*, arguing that "California has a specific interest in deterring fraud by its domiciliary corporations." 571 F. Supp. at 1369. *Computer Systems* shows that in circumstances like those here, California's interest in "deterring" tortious conduct "by its domiciliary corporations" simply is not strong enough to overcome Massachusetts' "significant"

---

and affirmed "on the basis of [the district court's] opinion." *Comp. Sys.*, 740 F. 2d at 70. The First Circuit thus adopted the district court's reasoning on the issue in full.

9

countervailing interests under § 6 of the Restatement. *Id.* at 1369–70. The district court's decision in *Value Partners S.A. v. Bain & Co.*, 245 F. Supp. 2d 269 (D. Mass. 2003), similarly rejected the argument that a defendant's home state's "particular interest in 'policing the behavior of businesses domiciled [there]'" warranted application of that state's enhanced damages laws. *Id.* at 277–78; *see generally* Dkt. 432 at 6–7 (discussing *Value Partners*). eBay respectfully submits that *Computer Systems* and *Value Partners* demonstrate, at a minimum, that "[r]easonable jurists could reasonably disagree" about the Court's application of California law to Plaintiffs IIED and civil conspiracy claims.[2] *In re Pharm. Litig.*, 2008 WL 163644, at *1.

Reasonable jurists in other jurisdictions have also decided similar choice-of-law issues differently from the Court. For example, in *Winter v. Novartis Pharmaceuticals Corp.*, 739 F.3d 405 (8th Cir. 2014), Missouri resident Ruth Baldwin sued Novartis Pharmaceuticals for failure-to-warn after she developed a medical condition not mentioned in the package inserts of the drugs her Missouri-based doctor prescribed. *Id.* at 407–08. Novartis argued that the law of its home state, New Jersey, should apply to Baldwin's request for punitive damages because it was "the site of any labeling and marketing misconduct" and because Missouri's only interest was to "compensate Baldwin, not to impose punitive damages." *Id.* at 410.

---

[2] Tension between the Court's rulings in this very case underscore the reasonableness of disagreement over the Court's Order. In dismissing Plaintiffs' California stalking claim, the Court held that Massachusetts law applied given the "disturbing act of surveilling and stalking" that occurred in Massachusetts, even though "online messages" were "sent from California" and that "planning and facilitating occur[red] there as well." Dkt. 309 at 23–24. In the Order, by contrast, the Court held that the "broader range of concerted, online conduct" and planning that originated in California tipped the scales in favor of California law, despite the same "surveill[ance], stalk[ing], and tail[ing]" occurring in Massachusetts. Order at 12–13. The tension between those opinions demonstrates that, as the Court rightly recognized, whether Massachusetts or California law applies to plaintiffs' IIED and civil conspiracy claims is a "closer question," *id.* at 12, and that it is one on which reasonable jurists could reach differing conclusions.

The Eighth Circuit disagreed. Applying a "most significant relationship" test like Massachusetts', the court emphasized that "Missouri is the place where the injury occurred, making it presumptively the state with the most significant relationship," and that at least some of the injury-causing conduct occurred in Missouri (where Novartis's Missouri-based sales representative failed to warn Baldwin's doctor). *Id.* The fact that New Jersey admittedly had an "interest in its corporations being governed by its punitive damages provisions" and that much of the culpable conduct occurred in New Jersey simply "d[id] not overcome Missouri's presumption that the law of the place of injury should apply." *Id.*

The same should have been true here. Even assuming that "the most significant of [defendants'] unlawful conduct took place within" California, Order at 13, that was true in *Winter* too. But because Missouri, like Massachusetts, was both the place of the injury and "at least in part, the state of the conduct causing the injury," *Winter* held that law of the place of the injury controlled. 739 F.3d at 410. *Winter* thus reinforces the conclusion that there is substantial ground for difference of opinion over the Court's choice-of-law analysis.

### III. Immediate appeal would materially advance the litigation.

"The requirement that an immediate appeal materially advance the ultimate termination of the litigation is 'closely tied' to the controlling-question-of-law element." *Waters*, 2020 WL 4754984, at *2 (quoting 16 Wright & Miller, *Federal Practice & Procedure* § 3930). Thus, for the same reasons that choice of law regarding punitive damages in this case is a controlling question, *supra* Part I, an immediate appeal would also materially advance the termination of this litigation.

An immediate appeal, moreover, would not delay the proceedings in this Court. eBay is not seeking to stay the litigation here, and a stay is not automatic upon certification, 28 U.S.C. § 1292(b), so the appeal could be prosecuted in parallel with the remaining pretrial proceedings. And because the Court has not yet scheduled trial, Dkt. 477, "the delay in trial, if any, associated

11

with an appeal is likely to be slight in comparison to the advantages conferred by clarification of these controlling legal issues." *In re TMI Litig.*, 1994 WL 858043, at *1. Whether the case ultimately goes to trial or settles before then, an immediate appeal of the Order would materially advance the ultimate termination of this litigation.

## CONCLUSION

For these reasons, the Court should certify for immediate appeal its ruling in the Order that California law governs the availability of punitive damages on Plaintiffs' claims for intentional infliction of emotional distress and civil conspiracy.

Dated: November 27, 2024

>*/s/ Jack W. Pirozzolo*
>Jack W. Pirozzolo (BBO #564879)
>Kathryn L. Alessi (BBO #651110)
>SIDLEY AUSTIN LLP
>60 State Street, 36th Floor
>Boston, MA 02109
>Telephone: (617) 223-0300
>Facsimile: (617) 223-0301
>jpirozzolo@sidley.com
>kalessi@sidley.com
>
>Scott T. Nonaka (*pro hac vice*)
>SIDLEY AUSTIN LLP
>555 California Street, Suite 2000
>San Francisco, CA 94104
>Telephone: (415) 772-1285
>snonaka@sidley.com
>
>Daniel J. Feith (*pro hac vice*)
>Lucas Croslow (*pro hac vice*)
>Emily A. Rose (*pro hac vice*)
>SIDLEY AUSTIN LLP
>1501 K Street NW
>Washington, D.C. 20005
>Telephone: (202) 736-8511
>dfeith@sidley.com
>lcroslow@sidley.com
>emily.rose@sidley.com
>
>*Counsel for eBay Inc.*

**CERTIFICATE OF SERVICE**

  I hereby certify that on November 27, 2024, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: November 27, 2024            */s/ Jack W. Pirozzolo*
                               Jack W. Pirozzolo