**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| INA STEINER, et al., ) | |
|  Plaintiffs, ) | Civil Action No. 21-CV-11181-PBS |
|  v. ) | |
| EBAY INC., et al., ) | |
|  Defendants. ) | |

**DEFENDANT WENDY JONES'S RESPONSE TO PLAINTIFFS'**
**STATEMENT OF PROPOSED UNDISPUTED FACTS**

**[FILED UNDER SEAL]**
**Leave to file granted on Feb. 14, 2025**

Pursuant to Fed. R. Civ. P. 56(c)(1) and Local Rule 56.1, Defendant Wendy Jones ("Ms. Jones") respectfully submits this Response to Plaintiffs' Rule 56(c)(1) Statement of Proposed Undisputed Facts. *See* ECF No. 532.

## PRELIMINARY STATEMENT

On January 10, 2025, Plaintiffs filed a response in opposition to Ms. Jones's motion for summary judgment and responses to Ms. Jones's 56.1 statement of undisputed facts pursuant to Federal Rule 56 and Local Rule 56.1. ECF Nos. 530, 531; Fed. R. Civ. P. 56; L.R., D. Mass. 56.1. In addition to these filings, Plaintiffs improperly filed their own Statement of Proposed Undisputed Facts, despite not filing a cross motion for summary judgment. ECF No. 532.

Plaintiffs' procedurally improper addition of their own undisputed facts is an obvious attempt to create the *impression* of disputed facts as to all Defendants, even though the record contains no actual dispute of material fact *relevant to the claims against Ms. Jones*. In ruling on

Ms. Jones's motion, the Court should consider only Ms. Jones's Statement of Undisputed Facts in Support of Her Motion for Summary Judgment and Plaintiffs' response thereto (ECF Nos. 497, 531), as a moving party's statement of facts "are designed to function as a means of focusing a district court's attention on what is—and what is not—genuinely controverted." *Reynolds v. Steward St. Elizabeth's Med. Ctr. of Bos., Inc.*, 364 F. Supp. 3d 37, 43 n.1 (D. Mass. 2019) (citation omitted).

The Court need not consider Plaintiffs' omnibus additional statements of "fact," which are not directed at any specific party and do not respond to the specific undisputed facts Ms. Jones set forth in her filing. *See Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007) ("Given the vital purpose that [local rules such as 56.1] serve, litigants ignore them at their peril. In the event that a party opposing summary judgment fails to act in accordance with the rigors that such a rule imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated."). Indeed, Plaintiffs' Statement seems intended to muddy the waters. Plaintiffs continue to lump defendants together, without specifying which Defendants were involved. *See, e.g.*, Pls.' Proposed Undisputed Fact ¶ 76 ("The Steiners were terrified to leave their house and defendants tailed Mr. Steiner and followed him throughout town he left their home."). In many paragraphs, they cite documents without providing pin cites, sometimes even citing to entire transcripts. *See, e.g.*, ¶¶ 56, 66. They fail to rely on true and correct copies of their proffered evidence, instead relying on copies of documents that appear modified by Plaintiffs' counsel. *See, e.g.*, Pls.' Ex. 13. The court should accordingly set Plaintiffs' Proposed Statement of Undisputed Facts aside.

However, in an abundance of caution, to the extent the Court considers Plaintiffs' own statement of facts, Ms. Jones responds as follows:

The majority of Plaintiffs' proposed statements of fact are irrelevant and immaterial as to Ms. Jones. Some statements of fact are undisputed, where indicated below. Others do not actually give rise to a disputed issue of fact because they are legal conclusions or are unsupported by any evidence that could be presented in an admissible form at trial. Although such statements are marked "disputed" below, they do not give rise to a genuine dispute of material fact as to Ms. Jones for the purposes of her motion under Rule 56. *See Lopera v. Town of Coventry*, 640 F.3d 388, 403 (1st Cir. 2011).

## <u>STATEMENT OF UNDISPUTED FACTS</u>

1. eBay is a multinational ecommerce business that operates marketplaces that connect online sellers and their customers. DPA ¶ 1. Finkelstein Ex. 1.

   **Response:** Undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief in Further Support of Her Motion for Summary Judgment ("Reply Brief," filed on February 14, 2025), Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.

2. Defendant Devin Wenig ("Wenig") was eBay's CEO. *Id.* ¶ 2.

   **Response:** Undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.

3. Defendant Steve Wymer ("Wymer") was eBay's Chief Communications Officer. *Id.* ¶ 3. Wymer reported directly to Wenig. Wymer Answer ¶ 40. Finkelstein Ex. 3.

   **Response:** Undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.

4. Defendant Wendy Jones ("Jones") was eBay's Senior Vice President for Global Operations. DPA ¶ 4. Finkelstein Ex. 1. Jones reported directly to Wenig. Wymer Answer ¶ 40. Finkelstein Ex. 3.

**Response:** Undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.

5. Defendant Jim Baugh ("Baugh") was eBay's Senior Director of Safety & Security. DPA ¶ 5. Finkelstein Ex. 1.

**Response:** Undisputed. For clarification, ████████████████ Coulon Ex. 57, ████████████████████ For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.

6. ████████████████████████████ Finkelstein Ex. 2.

**Response:** Undisputed. For clarification, ████████████████ Coulon Ex. 57, ████████████████ For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on evidence that cannot be presented in an admissible form, namely interview notes taken during eBay's internal investigation, which are inadmissible as to Ms. Jones.

7. Defendant David Harville ("Harville") was eBay's Director of eBay's Global Security and Resiliency Department ("GSR"). DPA ¶ 6. Finkelstein Ex. 1.

**Response:** Undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.

8. Harville reported directly to Baugh. *Id.*

**Response:** Undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.

9. Defendant Stephanie Popp ("Popp") served as Baugh's de facto chief of staff and, until May 2019, managed eBay's Global Intelligence Center ("GIC"), an intelligence and analytics group within the GSR that supported eBay's security operations. *Id.* ¶ 7.

**Response:** Undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.

10.    Defendant Stephanie Stockwell ("Stockwell") was an intelligence analyst in the GIC who became its manager in mid-2019, when eBay promoted Ms. Popp. *Id.* ¶ 8.

**Response:** Undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.

11.    Defendants Brian Gilbert ("Gilbert") and Philip Cooke ("Cooke") were retired police captains who worked at eBay and had responsibilities for safety and security at eBay facilities, executive protection, and special events security. *Id.* ¶ 10.

**Response:** Undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.

12.    By June 2020, after the termination of Baugh and Gilbert, Cooke was promoted by eBay to Director of Security Operations. Cooke Sentencing Memo at 5. Finkelstein Ex. 4.

**Response:** Undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on evidence that cannot be presented in an admissible form, namely Cooke's sentencing memorandum, which is inadmissible as to Ms. Jones.

13.    ███████████████████████████████████████████

███████████████████████████████████████████

Finkelstein Ex. 63.

**Response:** Undisputed but neither relevant nor material as to Ms. Jones.

14.    Defendant Veronica Zea ("Zea") was an employee of PFC that worked as an intelligence analyst in the GIC. DPA ¶ 9. Finkelstein Ex. 1.

**Response:** Disputed to the extent that Plaintiffs state a legal conclusion regarding Zea's employment or which entity controlled Zea's actions for the reasons stated in Section II.A of Ms. Jones's Memorandum of Law in Support of Her Motion for Summary Judgment. ECF 496 at 12–13. It is undisputed that Zea worked as an intelligence analyst in the GIC. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.

15.     Zea worked under Baugh. DPA ¶ 9. Finkelstein Ex. 1.

**Response:** Undisputed.  For the reasons stated in Section I of Ms. Jones's Reply Brief,
Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred
Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.

16.     Plaintiffs Ina Steiner ("Ms. Steiner") and David Steiner ("Mr. Steiner") (collectively, the

        "Steiners") are a married couple living in Natick, Massachusetts. DPA ¶ 11. Finkelstein

        Ex. 1.

**Response:** Undisputed.  For the reasons stated in Section I of Ms. Jones's Reply Brief,
Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred
Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.

17.     The Steiners co-founded EcommerceBytes, a website that since 1999 had reported on

        ecommerce companies, including eBay. *Id.*

**Response:** Undisputed.  For the reasons stated in Section I of Ms. Jones's Reply Brief,
Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred
Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.

18.     By the spring of 2019, EcommerceBytes' reporting was a source of frustration at eBay.

        DPA ¶ 12. Finkelstein Ex. 1.

**Response:** Disputed, as the term "source of frustration" is vague and ambiguous.
Moreover, it is unclear to whom the term "at eBay" applies, as eBay is a large company
with thousands of employees.  For the reasons stated in Section I of Ms. Jones's Reply
Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred
Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.

19.     The Executive Leadership Team ("ELT"), which included Wenig, Wymer, and Jones,

        viewed eCommerceBytes as "an existential threat to the company." Baugh Sentencing

        Memo at p. 8. Finkelstein Ex. 5.

**Response:** Undisputed that Ms. Jones, Wenig, and Wymer were members of eBay's
Executive Leadership Team.  Otherwise disputed.  For the reasons stated in Section I of
Ms. Jones's Reply Brief, Ms. Jones disputes this statement as it relies solely on evidence
that cannot be presented in an admissible form, namely Baugh's sentencing
memorandum, which is not admissible as to Ms. Jones.

20.    ████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████     Finkelstein Ex. 6; DPA Attachment A ¶ 17.

Finkelstein Ex. 7.

**Response:** Disputed to the extent that Plaintiffs misstate what is shown in Pls.' Exs. 6
and 7. ████████████████                          Pls.' Ex. 6,
████████████     For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms.
Jones further objects to this statement to the extent that it relies on eBay's Deferred
Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.  Moreover, this
statement is neither relevant nor material as to Ms. Jones.

21.    ████████████████████████████████████████████████████

Finkelstein Ex. 6; DPA Attachment A ¶ 17. Finkelstein Ex. 7.

**Response:** Disputed to the extent that Plaintiffs mischaracterize what is shown in Pls.'
Exs. 6 and 7; ████████████████████████████████████████
████████████████████████     Pls.' Ex. 6,                      For the reasons
stated in Section I of Ms. Jones's Reply Brief, Ms. Jones further objects to this statement
to the extent that it relies on eBay's Deferred Prosecution Agreement, which is
inadmissible evidence as to Ms. Jones.  Moreover, this statement is neither relevant nor
material as to Ms. Jones.

22.    EcommerceBytes' reporting was a source of frustration at eBay. Wenig, Wymer, Jones,

Baugh, and others at eBay viewed Ina Steiner's reporting adversarially and sometimes used

coarse and aggressive language in messages and e-mails about her and EcommerceBytes.

DPA ¶ 12. Finkelstein Ex. 1.

**Response:** Disputed, as the term "source of frustration" is vague and ambiguous.  Further
disputed as the term "aggressive" is not supported by admissible record evidence.
Moreover, it is unclear to whom the term "at eBay" applies, as eBay is a large company
with thousands of employees.  This statement is further disputed to the extent that
Plaintiffs lump Defendants Wenig, Wymer, Jones, and Baugh together along with other
eBay employees without providing specific examples for each individual.  For the
reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement
to the extent that it relies on eBay's Deferred Prosecution Agreement, which is
inadmissible evidence as to Ms. Jones.

23.     On April 20, 2019, discussing the Wall Street Journal's coverage of Executive 1, Executive

1 texted to Executive 2, "Fuck them. The journal is next on the list after [Ina]." DPA ¶ 19.

Finkelstein Ex. 1.

**Response:** Undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief,
Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred
Prosecution Agreement, which is inadmissible evidence as to Ms. Jones. Moreover, this
statement is neither relevant nor material as to Ms. Jones.

24.     On May 21, 2019, an anonymous source who went by "FidoMaster" and EcommerceBytes

posted information about "Walker's West," a replica of Wenig's favorite New York pub

that had been constructed on the eBay campus. DPA Attachment A ¶ 22. Finkelstein Ex.

7.; Baugh Sentencing Memo at p.12. Finkelstein Ex. 5.

**Response:** It is undisputed that on or around May 21, 2019, EcommerceBytes and
FidoMaster posted information regarding Walker's West, a pub on eBay's campus. ECF
No. 503, Ex. 20, EBAY_STEINER_00003890. For the reasons stated in Section I of Ms.
Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on
eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.
For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones further objects
to this statement to the extent that it relies on evidence that cannot be presented in an
admissible form, namely Baugh's sentencing memorandum, which is also inadmissible as
to Ms. Jones. Disputed to the extent that Plaintiffs have not proffered admissible
evidence to support the proposition that Walker's West replicated Mr. Wenig's favorite
pub, however this fact is neither relevant nor material as to Ms. Jones.

25.     The next day on May 22, 2019, Jones asked Baugh to deal with the situation "off the radar

since comms and legal couldn't handle it." *Id.*

**Response:** Disputed. For the reasons stated in Section I of Ms. Jones's Reply Brief,
Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely
Baugh's sentencing memorandum, which is not admissible as to Ms. Jones. Moreover,
Ms. Jones states that she never told Baugh to deal with EcommerceBytes "off the radar"
or any other statement of similar intent or effect. *See* ECF No. 503, Ex. 7, Wendy Jones
Aff. ¶ 10 (Oct. 27, 2024).

26.     Jones told Mr. Baugh, "Just get it done. I don't want to know the details, just make sure

you sync with Wymer." *Id.*

**Response:** Disputed.  For the reasons stated in Section I of Ms. Jones's Reply Brief, Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely Baugh's sentencing memorandum, which is not admissible as to Ms. Jones.  Moreover, Ms. Jones states that she never told Baugh "Just get it done.  I don't want to know the details, just make sure you sync with Wymer" with regards to EcommerceBytes, or any other statement of similar intent or effect.  *See* ECF No. 503, Ex. 7 ¶ 10.

27. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████ Finkelstein Ex. 6.

**Response:** Disputed.  Ms. Jones objects to this statement because Pls.' Ex. 6 does not support this proposition.  Plaintiffs refer to the correct document identified by its Bates number but the incorrect exhibit.  Moreover, this statement is neither relevant nor material as to Ms. Jones.

28. That same day, Wymer showed Jones the text from Wenig, which elicited the following exchange:

   a.    Jones referred to Ina Steiner as a "cow";

   b.    Wymer responded, "Her day is coming..."

   c.    Jones stated, "I can't wait. // Jim Baugh came to me with some thoughts and | told him to stand down and leave it alone."

   d.    Wymer responded, "You are being too kind... tell him to be my advisor on this issue // Some times you just need to make an example out of someone. Justice // We are too nice. She needs to be crushed"

   e.    Jones responded, "I told [Baugh] I would raise to you and you would let him know if you want him to proceed — but knew you were working on something and didn't want to step into that."

   f.    Wymer responded with a "thumbs up" emoji.

   DPA Attachment A ¶ 27. Finkelstein Ex. 7.

**Response:** Disputed that "Wymer showed Jones the text from Wenig"; Plaintiffs do not cite any evidence that supports this proposition. Also disputed to the extent that Plaintiffs misquote the content of the original texts and to the extent that Plaintiffs exclude the entirety of the exchange. Otherwise, undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.

29.    On June 7, 2019, at Baugh's direction, and paid for by a PFC-issued credit card (PFC0000317. Finkelstein Ex. 50.), Gilbert travelled to the Boston area to surveil the Steiners. DPA ¶ 30. Finkelstein Ex. 1.

**Response:** Undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones. Moreover, this statement is neither relevant nor material as to Ms. Jones.

30.    The next day, Gilbert wrote the word "FidoMaster" on the Steiners' fence. DPA ¶ 32. Finkelstein Ex. 1.

**Response:** Undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones. Moreover, this statement is neither relevant nor material as to Ms. Jones.

31.    On June 8, Baugh told Wymer that his team had given the Steiners "a tap on the shoulder." Baugh Sentencing Memo at p. 13. Finkelstein Ex. 5.

**Response:** Disputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely Baugh's sentencing memorandum, which is not admissible as to Ms. Jones. Moreover, this statement is neither relevant nor material as to Ms. Jones.

32.    Wymer expressed approval, but did not ask questions. *Id.*

**Response:** Disputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely Baugh's sentencing memorandum, which is not admissible as to Ms. Jones. Moreover, this statement is neither relevant nor material as to Ms. Jones.

33.    ███████████████████████████████████████████████████████

    ████████████████████    Finkelstein Ex. 59.

**Response:** Disputed.  For the reasons stated in Section I of Ms. Jones's Reply Brief, Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely notes from eBay's internal investigation, which are not are admissible evidence as to Ms. Jones.  Moreover, this statement is neither relevant nor material to Ms. Jones.  Further, Plaintiffs mischaracterize the content of Pls.' Ex. 59. ████████████████████████████████ ████████████████████████████████

34.     In the immediate aftermath of the vandalism, the ELT was pleased, because they perceived

        that negative postings from EcommerceBytes had subsided. Baugh Sentencing Memo at p.

        13. Finkelstein Ex. 5.

        **Response:** Disputed.  For the reasons stated in Section I of Ms. Jones's Reply Brief, Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely Baugh's sentencing memorandum, which is not admissible as to Ms. Jones.  This statement is further disputed to the extent that Plaintiffs lump members of the ELT together without specifying to whom this proposed statement of fact is supposed to be referencing.

35.     On or about June 25, 2019, discussing Ms. Steiner, Wymer messaged two eBay

        communications employees, stating "Love it when a secret, we can't speak it out loud plan

        comes together..." and "[w]e always reserve the right to go 0-60 and get crazy on her ass."

        DPA ¶ 34. Finkelstein Ex. 1.

        **Response:** Undisputed that the quoted language appears in the original message, however disputed to the extent that Plaintiffs' proposed statement does not include message in its entirety.  For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.  Moreover, this statement is neither relevant nor material as to Ms. Jones.

36.     On or about July 18, 2019, Executive 1's spouse texted BAUGH privately about a comment

        underneath a Newsletter article that called Executive 1 a "con artist and thief." The spouse

        wrote: "I'm not exactly thrilled with this post on my favorite [Newsletter]. The author gets

        people worked up with the way she skews her stories. Don't tell [Executive 1] I sent this

        I'm just letting you know about it. Ok?"" FBI Mark Wilson Affidavit (June 2020) ¶ 31.

        Finkelstein Ex. 8.

**Response:** Undisputed.  Ms. Jones objects to this statement to the extent that Plaintiffs rely on inadmissible hearsay evidence.  Pls.' Ex. 8 ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████  Plaintiffs have presented no evidence or argument suggesting that they will be able to cure this triple hearsay at trial.  Plaintiffs therefore provide no admissible evidence to support this proposed fact.  *See* Fed. R. Evid. 801, 805.  Moreover, this statement is neither relevant nor material as to Ms. Jones.

37.    On July 19, 2019, Baugh met with Jones and played a recorded call between a security

       team member using a false identity and a subject associated with FidoMaster.  Baugh

       Sentencing Memo at p. 14.  Finkelstein Ex. 5.

       **Response:** Disputed.  For the reasons stated in Section I of Ms. Jones's Reply Brief, Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely Baugh's sentencing memorandum, which is not admissible as to Ms. Jones.  Ms. Jones further states that Baugh never informed her of his plans to engage in the criminal behavior described in Plaintiffs' complaint, presumably because he knew Ms. Jones would never endorse such a thing.  ECF No. 503, Ex. 7 ¶ 10.

38.    Jones fist-bumped Mr. Baugh in approval. *Id.*

       **Response:** Disputed.  For the reasons stated in Section I of Ms. Jones's Reply Brief, Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely Baugh's sentencing memorandum, which is not admissible as to Ms. Jones.  Ms. Jones further states that she did not endorse or otherwise approve Baugh's criminal behavior.  ECF No. 503, Ex. 7 ¶ 10.

39.    On August 1, 2019, Ms. Steiner posted an article on EcommerceBytes about legal disputes

       between eBay and Amazon.com and eBay's declining market sales.  DPA ¶ 36.  Finkelstein

       Ex. 1.

       **Response:** Undisputed.  For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.  Moreover, this statement is neither relevant nor material as to Ms. Jones.

40.    That day, Wenig texted Wymer that: "Ina is out with a hot piece on the litigation. If we are

ever going to take her down . . . now is the time." DPA ¶ 37. Finkelstein Ex. 1.; Wymer

Answer ¶ 82. Finkelstein Ex. 3.

**Response:** Disputed to the extent that Plaintiffs misquote the text from Mr. Wenig to Mr.
Wymer. *See* Coulon Ex. 58, ██████████████    Otherwise, undisputed.  For the
reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement
to the extent that it relies on eBay's Deferred Prosecution Agreement, which is
inadmissible evidence as to Ms. Jones.  Moreover, this statement is neither relevant nor
material as to Ms. Jones.

41.    Wymer responded: "On it." DPA ¶ 38. Finkelstein Ex. 1.; Wymer Answer ¶ 82. Finkelstein

Ex. 3.

**Response:** Undisputed.  For the reasons stated in Section I of Ms. Jones's Reply Brief,
Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred
Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.  Moreover, this
statement is neither relevant nor material as to Ms. Jones.

42.    Wymer then texted Baugh, passing along Wenig's suggestion that "we . . . take her down."

DPA ¶ 39. Finkelstein Ex. 1.

**Response:** Disputed as to the term "passing along," which is not supported by the
original text or other record evidence.  Otherwise, undisputed.  For the reasons stated in
Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that
it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to
Ms. Jones.  Moreover, this statement is neither relevant nor material as to Ms. Jones.

43.    That same day, Baugh and Wymer exchanged further text messages regarding Ms. Steiner.

DPA ¶ 39. Finkelstein Ex. 1.

**Response:** Undisputed.  For the reasons stated in Section I of Ms. Jones's Reply Brief,
Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred
Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.  Moreover, this
statement is neither relevant nor material as to Ms. Jones.

44.    Wymer said that "hatred is a sin. I am very sinful" and that "I want her done" (referring to

Ms. Steiner). DPA ¶ 39. Finkelstein Ex. 1.

**Response:** Undisputed that the quoted language appears in the original message.
Disputed to the extent that Plaintiffs fail to provide the entire text of the original message.

For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.  Moreover, this statement is neither relevant nor material as to Ms. Jones.

45.    Baugh stated that Wenig had told him "to burn her to the ground correct," to which Wymer

responded, "she is a biased troll who needs to get BURNED DOWN. DPA ¶ 39. Finkelstein

Ex. 1.; Wymer Answer ¶ 85. (emphasis in the original). Finkelstein Ex. 3.

**Response:** Disputed as to the phrase "Baugh stated" because that description does not accurately describe the original text.  Further disputed to the extent that the statement does not include the original text in its entirety.  Otherwise, undisputed.  For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.  Moreover, this statement is neither relevant nor material as to Ms. Jones.

46.    

DPA ¶ 40. Finkelstein Ex. 1.;

Finkelstein Ex. 9; Wymer Answer ¶ 4. Finkelstein Ex. 3.

**Response:** Disputed as to the term ▮▮▮▮▮ as argumentative.  Otherwise, undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on evidence that cannot be presented in an admissible form, namely interview notes taken during eBay's internal investigation, which are inadmissible as to Ms. Jones.  For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones further objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones. Moreover, this statement is neither relevant nor material as to Ms. Jones.

47.    On August 7, 2019, Baugh asked Wymer by message, "If I can neutralize Ina's website in

two weeks or less, does that work for you?" Within minutes, Wymer responded, "I want to

see ashes. As long as it takes. Whatever it takes." EBAY_STEINER_00206665.

Finkelstein Ex. 10.; DPA ¶ 46. Finkelstein Ex. 1.; Wymer Answer 4, 126. Finkelstein Ex.

3.

**Response:** Disputed to the extent that Plaintiffs misquote the original text between Wymer and Baugh. *See* Coulon Ex. 59, ████████████████ Otherwise, undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on evidence that cannot be presented in an admissible form, namely interview notes taken during eBay's internal investigation, which are inadmissible as to Ms. Jones. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones further objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones. Moreover, this statement is neither relevant nor material as to Ms. Jones.

48.    On August 6, 2019, Baugh, Gilbert, Cooke, and Popp met at eBay headquarters to plan part

of its operation against Plaintiffs. DPA ¶ 52. Finkelstein Ex. 1.

**Response:** Undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones. Moreover, this statement is neither relevant nor material as to Ms. Jones.

49.    That same day, Baugh, Popp, Stockwell, Zea, and others met at eBay headquarters to plan

the delivery to the Steiners' home of unwanted and disturbing items to distract the Steiners

from publishing EcommerceBytes. *Id.*

**Response:** Undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones. Moreover, this statement is neither relevant nor material as to Ms. Jones.

50.    Popp created a Twitter account through which she would harass and threaten Ms. Steiner.

*Id.*

**Response:** Undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones. Moreover, this statement is neither relevant nor material as to Ms. Jones.

51.    On, or shortly after, August 7, 2019, Wymer met with Baugh. Baugh Sentencing Memo at

p. 19. Finkelstein Ex. 5.

**Response:** Disputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely Baugh's sentencing memorandum, which is not admissible as to Ms. Jones. Moreover, this statement is neither relevant nor material as to Ms. Jones.

52.   Wymer instructed Baugh to "take any actions necessary" to neutralize the Steiners and identify FidoMaster, making clear that this was a "[d]irect order" from Wenig and that Wenig "wants the website burned to the ground." *Id.*

**Response:** Disputed.  For the reasons stated in Section I of Ms. Jones's Reply Brief, Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely Baugh's sentencing memorandum, which is not admissible as to Ms. Jones.  Further, no evidence in the record demonstrates that Wenig actually made such statements to Wymer. Moreover, this statement is neither relevant nor material as to Ms. Jones.

53.   Wymer did not want to know details, but assured Baugh that his group would have "executive level support" if efforts led to "any legal problems." Id. "The only thing that matters is that it stops." *Id.*

**Response:** Disputed.  For the reasons stated in Section I of Ms. Jones's Reply Brief, Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely Baugh's sentencing memorandum, which is not admissible as to Ms. Jones.  Moreover, this statement is neither relevant nor material as to Ms. Jones.

54.   eBay admits and takes legal responsibility for the fact that: Beginning on or about August 5, 2019 and continuing through at least September 6, 2019, Baugh, Harville, Gilbert, Cooke, Popp, Stockwell, and Zea (together "the Individual Defendants") worked together to harass and intimidate the Steiners, and to place them under surveillance with the intent to harass and intimidate them, through repeated and hostile Twitter messages, deliveries of unwanted -- and in some instances disturbing -- items to the Steiners' home, and travel to Massachusetts to conduct physical surveillance. The Individual Defendants' conduct caused, attempted to cause, and would reasonably have been expected to cause substantial emotional distress to the Steiners. DPA ¶ 48. Finkelstein Ex. 1.

**Response:** Undisputed but neither relevant nor material as to Ms. Jones.

55.   eBay admits and takes legal responsibility for these actions, which included, but were not limited to:

- Sending DMs to Ms. Steiner stating: "WTF . . . whats it goin to take for u to answer me??"; " I guess im goin to have to get ur attention another way bitch . . ."; "U dont have the balls to talk to me?? Stop hiding behind ur computer screen u fuckin cunt!!!"; "Ur fat fuck pussy husband [Mr. Steiner] needs to put u in line cunt"; and "after [Mr. Steiner] takes the plugs out of his asshole . . . fuckin pussies!!!";

- Ordering live spiders, fly larvae, live cockroaches, and a Halloween Pig for delivery to the Steiners' home;

- Ordering subscriptions for pornographic magazines in the name of Mr. Steiner to be sent to the Steiners' neighbors;

- Attempting to order a pig fetus for delivery to the Steiners' home;

- Sending a funeral wreath and a book entitled "Grief Diaries: Surviving Loss of a Spouse" to the Steiners' home;

- Renting vans to surveil the Steiners and drove past their home repeatedly;

- Following Mr. Steiner as he drove around Natick;

- Ordered pizza to be delivered to the Steiners' home at 4:30 a.m.; and

- Sending a public tweet on Ms. Steiner's Twitter account, stating, "Dis ur address???" and including information about Ms. Steiner, such as her name, age, address, and telephone number. DPA ¶ 52. Finkelstein Ex. 1.

**Response:** Undisputed but neither relevant nor material as to Ms. Jones.

56.    eBay's workplace was rife with misconduct, violent tendencies, and drunkenness. This

includes violent and belligerent behavior towards co-workers (sometimes in full view of

other eBay employees, including in eBay's parking lots). See Olausson letter. Finkelstein

Ex. 11.; Olausson deposition. Finkelstein Ex. 12.; Baugh Sentencing Memo. Finkelstein

Ex. 5.; Cooke Sentencing Memo. Finkelstein Ex. 4.; Zea Sentencing Letter. Finkelstein Ex.

13.

**Response:** Disputed.  eBay's workplace was not "rife with misconduct, violent
tendencies, and drunkenness."  Coulon Ex. 62, Carmen Amara Dep. Tr. at 33:21–35:4
(Sept. 25, 2024); Coulon Ex. 63, Dan Cory Dep. Tr. at 77:2–20; 126:9–15 (Sept. 6,
2024); ECF No. 503, Ex. 7, Wendy Jones Aff. ¶ 11 (Oct. 27, 2024).  For the reasons
stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the
extent that it relies on evidence that cannot be presented in an admissible form, namely
Cooke's and Baugh's sentencing memoranda, as well as Zea's sentencing letter and
Olausson's letter, which are inadmissible as to Ms. Jones.  Ms. Jones further objects to
Plaintiffs' proposed statement to the extent that Plaintiffs fail to provide page references,
as required by Local Rule 56.1.  L.R., D. Mass. 56.1 ("Motions for summary judgment
shall include a concise statement of the material facts of record as to which the moving
party contends there is no genuine issue to be tried, **with page references to affidavits,
depositions, and other documentation.**") (emphasis added).  Instead, Plaintiffs cite to
entire filings, including an entire deposition transcript.  Moreover, nothing in the
statement indicates that it is relevant or material as to Ms. Jones.

57.    Baugh created a fear-driven and punitive environment where minor errors became cause

for humiliation and punishment. Olausson letter. Finkelstein Ex. 11.; Zea Sentencing Letter

at 5, 22. Finkelstein Ex. 13.

**Response:** Disputed as to the vague phrase "fear-driven and punitive environment."
Further disputed for the reasons stated in Section I of Ms. Jones's Reply Brief; Plaintiffs
rely solely on evidence that cannot be presented in an admissible form, namely Zea's
sentencing letter and Olausson's letter, which are unreliable and not admissible evidence
as to Ms. Jones.  Moreover, this statement is not relevant or material as to Ms. Jones.

58.    Baugh conducted active shooter drills, forcing analysts to run outside into the parking lot

and practice running from the "shooter" in front of other eBay employees; leadership would

pretend to shoot GIC analysts in the middle of eBay's campus for all staff to watch.

Olausson letter. Finkelstein Ex. 11.; Zea Sentencing Letter. Finkelstein Ex. 13.

**Response:** It is undisputed that the security team conducted a safety drill in one of eBay's parking lots. Coulon Ex. 60, Veronica Zea Dep. Tr. at 39:22–40:17 (Sept. 11, 2024). Disputed to the extent that the term "leadership" does not specify which leaders were involved or make clear that the leadership referred to is certain members of eBay's security team. *See* Pls.' Ex. 11; Coulon Ex. 61, Anneli Olausson Dep. Tr. at 45:25–46:6 (Sept. 18, 2024). Further disputed to the extent that the statement suggests that all of eBay's campus staff *did* watch the security team's active shooter drills, for which Plaintiffs' provide no evidence. Further disputed for the reasons stated in Section I of Ms. Jones's Reply Brief to the extent that Plaintiffs rely on evidence that cannot be presented in an admissible form, namely Zea's sentencing letter and Olausson's letter, which are unreliable and not admissible evidence as to Ms. Jones. Moreover, this statement is not relevant or material as to Ms. Jones.

59.     Some of Baugh's initiated shooting drills forced analysts to take "cover" in someone's car, when Baugh would then slam his hand down on the roof of the car while yelling, "Bang! You're dead! You're dead! Bang! You're all dead!." Zea Sentencing Letter. Finkelstein Ex. 13.

**Response:** Disputed for the reasons stated in Section I of Ms. Jones's Reply Brief to the extent that Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely Zea's sentencing letter, which is unreliable and not admissible evidence as to Ms. Jones. Moreover, this statement is not relevant or material as to Ms. Jones.

60.     Baugh conducted earthquake drills where leadership would blast airhorns in the ears of GIC analysts while timing their response to write an email with no grammatical errors. Olausson letter. Finkelstein Ex. 11.

**Response:** Disputed to the extent that "leadership" does not specify which leaders were involved or make clear that the leadership referred to is certain members of eBay's security team. *See* Pls.' Ex. 11; Coulon Ex. 61, Anneli Olausson Dep. Tr. at 45:25–47:6 (Sept. 18, 2024). Otherwise, undisputed. Ms. Jones objects to this statement for the reasons stated in Section I of Ms. Jones's Reply Brief to the extent that Plaintiffs rely on evidence that cannot be presented in an admissible form, namely Olausson's letter, which is unreliable and not admissible evidence as to Ms. Jones. Moreover, this statement is not relevant or material as to Ms. Jones.

61.     Baugh showed a video of Zea falling of a chair to co-workers to humiliate her, and Baugh specifically showed the video to Wenig. Zea Sentencing Letter at 22. Finkelstein Ex. 13.

**Response:** Disputed for the reasons stated in Section I of Ms. Jones's Reply Brief. Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely

Zea's sentencing letter, which is unreliable and not admissible evidence as to Ms. Jones. Moreover, this statement is neither relevant nor material as to Ms. Jones.

62.    Baugh sexually assaulted Stockwell. Stockwell deposition. Finkelstein Ex. 14.

**Response:** Undisputed but neither relevant nor material as to Ms. Jones.

63.



Finkelstein Ex. 15.

**Response:** Disputed. Plaintiffs mischaracterize

64.

Finkelstein    Ex.    16.;

Finkelstein Ex. 17.

**Response:** Disputed. Plaintiffs mischaracterize

Pls.' Ex. 16.

Pls.' Ex. 17.

65.

Finkelstein  Ex.  21.;  Jones'  56.1  Exhibit  7  (Jones

Declaration) #8. Finkelstein Ex. 19.

**Response:** Undisputed.

66.    No one was supervising Baugh while Jones was on sabbatical from July 25, 2019 to August

26, 2019. Transcript of Deposition of Carmen (Orr) Amara, 9/25/24. Finkelstein Ex. 20.

**Response:** Disputed. Plaintiffs mischaracterize Ms. Amara's testimony. Ms. Amara testified that she did not recall, in September 2024, who supervised Ms. Jones's teams

while Ms. Jones was on sabbatical in July and August of 2019.  Coulon Ex. 62, Carmen
Amara Dep. Tr. at 47:23–48:6 (Sept. 25, 2024).  Ms. Jones further objects to Plaintiffs'
proposed statement to the extent that Plaintiffs fail to provide page references, as required
by Local Rule 56.1.  L.R., D. Mass. 56.1 ("Motions for summary judgment shall include
a concise statement of the material facts of record as to which the moving party contends
there is no genuine issue to be tried, **with page references to affidavits, depositions,
and other documentation.**") (emphasis added).

67.  ███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████  Finkelstein Ex. 18.

**Response:** Disputed.  For the reasons stated in Section I of Ms. Jones's Reply Brief,
Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely
notes from eBay's internal investigation, which are not are admissible evidence as to Ms.
Jones.

68.  ███████████████████████████████████████████████████

██████████████████  Finkelstein Ex. 18.

**Response:** Disputed.  For the reasons stated in Section I of Ms. Jones's Reply Brief,
Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely
notes from eBay's internal investigation, which are not are admissible evidence as to Ms.
Jones.

69.  ███ ██ ████ ████ ████ ███ ██ ███ ████ ███

██████████████████  Finkelstein Ex. 18.

**Response:** Undisputed that Ms. Jones would meet regularly with Baugh, as she did with
all of her direct reports.  ECF No. 503, Ex. 7 ¶¶ 6–7. ████████████████████
███████████████████████████████████████████
██████████ Coulon Ex. 63, ██████████████████████████
██████████████████████  Moreover, this statement is neither relevant nor material as to
Ms. Jones.

70.  ███████████████████████████████████████████████████

██████  Finkelstein Ex. 22.

**Response:** Disputed.  For the reasons stated in Section I of Ms. Jones's Reply Brief,
Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely
notes from eBay's internal investigation, which are not are admissible evidence as to Ms.

Jones.  Further, Plaintiffs mischaracterize Pls.' Ex. 22.  When read in context, it is clear that ███████████████████████████████████████████  Moreover, this statement is neither relevant nor material as to Ms. Jones.

71.    ██████████████████████████████████████████████  Finkelstein

Ex. 23.; ████████████████████  Finkelstein Ex. 24.

**Response:** Disputed as neither of Plaintiffs' exhibits supports the proposed statement of fact.  For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones further disputes this statement because Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely interview notes taken during eBay's internal investigation, which are inadmissible as to Ms. Jones.  Moreover, this statement is neither relevant nor material as to Ms. Jones.

72.    ████████████████████████████████████████████████

███████████████████. Finkelstein Ex. 25. Finkelstein Ex. 26.

**Response:** Disputed.  Plaintiffs rely solely on documents containing hearsay that cannot be presented in an admissible form.  Moreover, this statement is neither relevant nor material to Ms. Jones.

73.    Baugh told his team, with respect to eBay's internal investigation, to keep Wenig and

Wymer's names out of any conversations. EBAY_STEINER_00162001 paragraph 181.

Finkelstein Ex. 27.

**Response:** Disputed. Pls.' Ex. 27



Plaintiffs have presented no evidence or argument suggesting that they will be able to cure this triple hearsay at trial. Plaintiffs therefore provide no evidence that can be presented in an admissible form to support this proposed fact. *See* Fed. R. Evid. 801, 805; Fed. R. Civ. P. 56(c)(2). Moreover, this statement is neither relevant nor material as to Ms. Jones.

74.    Baugh told his team that Wenig told him "his loyalty would pay off." Zea letter at

Finkelstein Ex. 13.

**Response:** Disputed for the reasons stated in Section I of Ms. Jones's Reply Brief;
Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely
Zea's sentencing letter, which is unreliable and not admissible evidence as to Ms. Jones.
Moreover, this statement is not relevant or material as to Ms. Jones.

75.    
Finkelstein   Ex.   23.;
Finkelstein Ex. 24.

**Response:** Disputed.  For the reasons stated in Section I of Ms. Jones's Reply Brief,
Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely
notes from eBay's internal investigation, which are not are admissible evidence as to Ms.
Jones.  Moreover, Pls.' Ex. 23 does not support the proposition that ▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Pls.' Ex. 23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Moreover, this statement is neither relevant nor material as
to Ms. Jones.

76.    The Steiners were terrified to leave their house and defendants tailed Mr. Steiner and

followed him throughout town he left their home. Steiner Response to Interrogatory No. 1

and 25. Finkelstein Ex. 28.

**Response:** Undisputed that Plaintiffs were terrified.  Disputed to the extent that this
statement does not specify which defendants followed Mr. Steiner.  Disputed to the
extent that Plaintiffs suggest Ms. Jones tailed Mr. Steiner, as the cited evidence does not
establish that Ms. Jones did so.  *See* ECF 530, Pls.' Response to Def. Wendy Jones's
Rule 56.1 Statement of Undisputed Facts at 2, 12.  Moreover, this statement is neither
relevant nor material as to Ms. Jones.

77.    Any trips Mr. Steiner or the Steiners took away from the home were taken out of necessity.

Steiner Response to Interrogatory No. 25. *Id.*

**Response:** Undisputed that Plaintiffs did not leave their house except for trips that they
believed were necessary.  This statement is neither relevant nor material as to Ms. Jones.

78.    The Steiners took these necessary trips to: purchase security equipment; acquire protection

for themselves and their property; purchase food when the Steiners ran out; and go to the

police station. *Id.*

**Response:** Undisputed but neither relevant nor material as to Ms. Jones.

79.    The Steiners did not leave their home to celebrate their 31st Wedding anniversary. Steiner

       Response to Interrogatory No. 25. *Id.*; Cooke Sentencing Hearing Transcript 07/27 21.pdf

       page 34, line 21 - page 35, line 8. Finkelstein Ex. 29.

       **Response:** Undisputed but neither relevant nor material as to Ms. Jones.

80.    Further, Baugh and Harville approached the Steiners' home and attempted to install a GPS

       on the Steiners' vehicle. Zea sentencing letter at 17-18. Finkelstein Ex. 13.

       **Response:** Undisputed.  Ms. Jones objects to this statement for the reasons stated in
       Section I of Ms. Jones's Reply Brief to the extent that Plaintiffs rely on evidence that
       cannot be presented in an admissible form, namely Zea's sentencing letter, which is
       unreliable and not admissible evidence as to Ms. Jones.  Moreover, this statement is not
       relevant or material as to Ms. Jones.

81.    After eBay learned of the actions taken by defendants to criminally harass the Steiners,

       eBay allowed Wenig to resign with a generous severance package and without any

       suggestion that he acted improperly. DPA ¶ 4(e). Finkelstein Ex. 1.; eBay 30(b)(6)

       deposition (Apte) page 74. Finkelstein Ex. 30.

       **Response:** Disputed as to the term "defendants" to the extent that it is intended to refer to
       Ms. Jones, because Plaintiffs have provided no record evidence that Ms. Jones engaged in
       such criminal harassment.  Further disputed as to the term "allowed…to resign" as
       argumentative.  Undisputed that Wenig separated from eBay by mutual agreement as
       described in eBay's SEC filings.  However, this statement is neither relevant nor material
       as to Ms. Jones.

82.     Finkelstein   Ex.   31.

       Finkelstein Ex. 32.

       **Response:** Disputed as to the

       *See* Pls.' Exs. 31.

83.    eBay retained and promoted Cooke to Director of Security Operations. Cooke Sentencing

       Memo at p. 5. Finkelstein Ex. 29.

**Response:** Disputed as to the term "retained," as Cooke was terminated after the government's indictments were unsealed and his role in these events became known. *See* Coulon Ex. 63, Dep. Tr. of Dan Cory at 119:15–120:18 (Sept. 6, 2024). Undisputed that Cooke was promoted prior to the unsealing of the indictments.

84.    eBay re-hired Michelle Alford, who participated in some harassment planning. Zea

Sentencing Letter. Finkelstein Ex. 13.

**Response:** Disputed as to the vague phrase "some harassment planning." Otherwise, undisputed. Ms. Jones objects to this statement for the reasons stated in Section I of Ms. Jones's Reply Brief to the extent that Plaintiffs rely on evidence that cannot be presented in an admissible form, namely Zea's sentencing letter, which is unreliable and not admissible evidence as to Ms. Jones. Moreover, this statement is not relevant or material as to Ms. Jones.

85.    eBay retained Meagan Barret and fired her in 2020 citing her involvement.

EBAY_STEINER_00215846. Finkelstein Ex. 13.

**Response:** Undisputed but neither relevant nor material as to Ms. Jones.

86.    ███████████████████████████████████████████████████████

███████████████████ Finkelstein Ex. 33.; ███████████████ Finkelstein Ex.

34.; ██████████████████ Finkelstein Ex. 35.

**Response:** Disputed to the extent that ███████████████████████████

████████████████████████████████████████████ Pls.' Ex. 33 ███████████

████████████████████████ Plaintiffs have made no indication that they will be able to present the facts from Pls.' Ex. 33 in a form that will be admissible in evidence.

87.    ███████████████████████████████████████████████████████

DPA ¶ 37, 46. Finkelstein Ex. 1.; Wymer Answer ¶ 82, 85. Finkelstein Ex. 3.;

████████████████████ Finkelstein Ex. 24.; Baugh Sentencing Memo at p. 19.

Finkelstein Ex. 5.

**Response:** Disputed, as it is unclear who "he" refers to in this statement. Further disputed for the reasons stated in Section I of Ms. Jones's Reply Brief. Plaintiffs rely on evidence that cannot be presented in an admissible form, namely notes from eBay's internal investigation as well as Baugh's sentencing memorandum, which are not are

admissible evidence as to Ms. Jones.  For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones further objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones. In addition, the paragraph of the Deferred Prosecution Agreement cited to in support of this proposed statement does not support the fact asserted.  Moreover, this statement is neither relevant nor material as to Ms. Jones.

88.       Finkelstein  Ex.  2.;

Finkelstein Ex. 38.; DPA ¶ 20. Finkelstein Ex. 1.

**Response:** Disputed.  For the reasons stated in Section I of Ms. Jones's Reply Brief, Plaintiffs rely on evidence that cannot be presented in an admissible form, namely notes from eBay's internal investigation, which are not are admissible evidence as to Ms. Jones.  For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones further objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.  This statement is further disputed because none of the evidence Plaintiffs cite to, admissible or inadmissible, supports the propositions in the statement.

89.      Defamatory Craigslist advertisements were publicly accessible on a message board system used by millions of people. DPA ¶ 52. Finkelstein Ex. 1.

**Response:** Disputed to the extent that Plaintiffs' proposed statement of fact reaches a legal conclusion about whether statements posted on Craigslist were defamatory.  For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.  Moreover, this statement is neither relevant nor material as to Ms. Jones.

90.      Video taken from the Steiners' security cameras at their home show an unusually large number of persons walking in front of their house at all hours of the day and night during the period at issue. PPROD-028300. Finkelstein Ex. 39.

**Response:** Disputed that Pls.' Ex. 39 shows video footage.  It is undisputed that video from Plaintiffs' security cameras show persons walking in front of their house.  It is disputed that the number of persons captured in the security footage was "unusually large."  Plaintiffs have offered no evidence, including in the record cited, that calculates

the foot traffic near their house as "unusually large," nor do Plaintiffs provide any kind of comparison to what would be considered normal foot traffic for the dates and times in question. Moreover, this statement is neither relevant nor material as to Ms. Jones.

91.    The Craigslist advertisements identify a married couple living at the Steiners' address

making it obvious that the advertisements are of and concerning the Steiners. DPA ¶ 52.

Finkelstein Ex. 1.

**Response:** It is undisputed that a Craigslist advertisement referring to a married couple and including the Steiners' address was posted. Disputed whether the information in the advertisement made it obvious that the advertisement was "of and concerning the Steiners." For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones. Moreover, this statement is neither relevant nor material as to Ms. Jones.

92.    The Steiners' have, in fact been damaged by these defamatory advertisements. In the same

way, the Steiners were damaged when the defendants sent pornographic materials to the

Steiners' neighbors. Galinsky Report. Finkelstein Ex. 40.

**Response:** Disputed. For the reasons stated in eBay's motion to exclude the testimony of Plaintiffs' proffered expert Adam Galinsky, and for the reasons stated in the joint motion by Defendants Wenig, Wymer, and Jones to exclude the same, the evidence Plaintiffs rely on to support this proposed statement of fact (Pls.' Ex. 40) is based on unreliable methodology and should be excluded at trial. *See generally*, ECF Nos. 544, 545, 546, 547. This statement is further disputed to the extent that it proposes conclusions of law regarding whether Plaintiffs have been damaged and whether the statements in the advertisements were defamatory.

93.    Statements such as: "20 yrs of lies n distroin familys"; Ms. Steiner has engaged in "shoddy

reporting"; and the Steiners are "biased" defame the Steiners professionally. "Distroin

families" (Charging Doc Affidavit #18 ff. Finkelstein Ex. 8.); "she is a biased troll who

needs to get BURNED DOWN (Wymer Answer ¶ 85. Finkelstein Ex. 3.); ███

███████████████████████ Finkelstein Ex. 41.)

**Response:** Disputed. Plaintiffs' proposed statement of fact is an improper legal conclusion. Moreover, this statement is neither relevant nor material as to Ms. Jones.

94.    Wymer's statements demonstrate malice: "hatred is a sin. I am very sinful" and that "I want

her done" (Wymer Answer ¶ 85. Finkelstein Ex. 3.); "she is a biased troll who needs to get

BURNED DOWN." (Wymer Answer ¶ 85. Finkelstein Ex. 3.); and "I want to see ashes.

As long as it takes. Whatever it takes." (8/28/19 Wymer interview at

EBAY_STEINER_00206665; DPA ¶ 46. Finkelstein Ex. 1.; Wymer Answer ·ᵛ 4, 126.

Finkelstein Ex. 3.)

**Response:** Disputed as Plaintiffs state a legal conclusion and attempt to characterize Mr. Wymer's state of mind. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones. Moreover, this statement is neither relevant nor material as to Ms. Jones.

95.    Baugh and his team acted with malice. DPA ¶ 52. Finkelstein Ex. 1.

**Response:** Disputed as Plaintiffs state a legal conclusion and attempt to characterize the states of mind of Baugh and members of his security team without record evidence. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones. Moreover, this statement is neither relevant nor material as to Ms. Jones.

96.    Wymer directed, and is responsible for, the actions of Baugh and Baugh's team. Wymer

Ex. 52 at Response to Interrogatory No. 41. Finkelstein Ex. 42.; Wymer Ex. 54 at Response

to Interrogatory No. 41. Finkelstein Ex. Finkelstein Ex. 43.

**Response:** Disputed. Plaintiffs' proposed statement of fact is an improper legal conclusion. Moreover, this statement is neither relevant nor material as to Ms. Jones.

97.    ███████████████████████████████████████████ DPA ¶ 37.

Finkelstein Ex. 1.; Wymer Answer ¶ 82, 85. Finkelstein Ex. 3.;

████████████████████ Finkelstein Ex. 24.; Baugh Sentencing Memo at p. 19.

Finkelstein Ex. 5.

**Response:** Disputed. Plaintiffs' proposed statement of fact is an improper legal conclusion. Further, for the reasons stated in Section I of Ms. Jones's Reply Brief, Plaintiffs rely on evidence that cannot be presented in an admissible form, namely notes

from eBay's internal investigation as well as Baugh's sentencing memorandum, which are not are admissible evidence as to Ms. Jones. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones further objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones. Moreover, this statement is neither relevant nor material as to Ms. Jones.

98. Stockwell believed persons at eBay more senior than Jim Baugh were aware of the activity Baugh had directed her and other defendants to carry out. Stockwell's response to eBay's RFA No. 22. Finkelstein Ex. 82.

**Response:** Undisputed but neither relevant nor material as to Ms. Jones.

99. Popp believed eBay Executives were aware of the activity her superiors at eBay directed her to carry out. Popp's response to eBay's RFA No. 21. Finkelstein Ex. 45.

**Response:** Undisputed but neither relevant nor material as to Ms. Jones.

100. Baugh told Zea she was to provide a "cover story" to eBay investigators until Baugh could speak with their superiors. Zea's response to eBay's RFA No. 12. Finkelstein Ex. 46.

**Response:** Undisputed but neither relevant nor material as to Ms. Jones.

101. Popp believed persons at eBay more senior than Jim Baugh were aware of the activity Ms. Popp was directed to carry out by her superiors at eBay. Popp's response to eBay's RFA No. 22. Finkelstein Ex. 45.

**Response:** Undisputed but neither relevant nor material as to Ms. Jones.

102. Popp believed and/or knew that at least one person at the PFC Group of Companies was aware of the activity her superiors at eBay directed her to carry out. Popp's response to eBay's RFA No. 23. Finkelstein Ex. 45.

**Response:** Undisputed that Defendant Popp's Admission reflects the information in this paragraph. Ms. Jones objects to the vagueness of the statement "believed and/or knew."

103. Zea did not feel comfortable reporting her concerns to anyone at eBay because it was her understanding that the higher ups were all aware of Jim Baugh's operation and she feared

that someone would tell Baugh that she was talking about his plans, and she was scared of retaliation." Zea's response to eBay's RFA No. 20. Finkelstein Ex. 46.

**Response:** Undisputed but neither relevant nor material as to Ms. Jones.

104. On August 1, 2019, Wymer told Baugh "Hatred is a sin. I am very sinful"; "[Ina Steiner] is biased troll who needs to get BURNED DOWN"; and "I want to see ashes. As long as it takes. Whatever it takes." Wymer Answer 4, 85, 126. Finkelstein Ex. 3.

**Response:** Disputed as to the date the text messages listed in this proposed statement were sent. Pls.' Ex. 3 specifies August 11, 2019 as the date that some of the text messages were sent (*e.g.*, ¶ 126) and does not specify a date for the remaining texts (*e.g.*, ¶¶ 4, 85). Otherwise, undisputed. Moreover, this statement is neither relevant nor material as to Ms. Jones.

105. There were communications between Wymer and Baugh that Wymer destroyed. DPA 51-52; 61. Finkelstein Ex. 1.

**Response:** Undisputed that Wymer deleted texts between himself and Baugh. For the reasons stated in Section I of Ms. Jones's Reply Brief, Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred Prosecution Agreement, which is inadmissible evidence as to Ms. Jones. Moreover, this statement is neither relevant nor material as to Ms. Jones.

106. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

Finkelstein Ex. 2.

**Response:** Disputed. For the reasons stated in Section I of Ms. Jones's Reply Brief, Plaintiffs rely solely on evidence that cannot be presented in an admissible form, namely notes from eBay's internal investigation, which are not are admissible evidence as to Ms. Jones. Further disputed because the term ███████████ appears nowhere in the proffered record evidence. This statement is further disputed to the extent that Plaintiffs take the quote out of context.

107.  On May 31, 2019, there were texts between Jones and Wymer: with Wymer stating "her

day is coming" and Jones stating "I can't wait" "She is a cow." WYMER00000423, DPA

¶ 20. Finkelstein Ex. 1.

**Response:** Undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief,
Ms. Jones objects to this statement to the extent that it relies on eBay's Deferred
Prosecution Agreement, which is inadmissible evidence as to Ms. Jones.

108.  Jones was unaware of "illegitimate" expenses by the security team, including: PFC paying

for eBay employees' expenses, (Gilbert flight to Boston in June and LA in August paid for

with one of the analysts's PFC-issued credit cards); PFC0000317. Finkelstein Ex. 50; ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Finkelstein Ex. 18;

Baugh's flight to Boston in August (paid for with Zea's PFC-issued credit card).

PFC0001188. Finkelstein Ex. 115.

**Response:** Undisputed. For the reasons stated in Section I of Ms. Jones's Reply Brief,
Ms. Jones objects to this statement to the extent that it relies on evidence that cannot be
presented in an admissible form, namely interview notes taken during eBay's internal
investigation, which are inadmissible as to Ms. Jones.

109.  EcommerceBytes had record number of page views and users prior to eBay's actions in

August 2019. PPROD-071821 p.251. Finkelstein Ex. 49.

**Response:** Disputed as to the characterization of a "record number" of page views. Pls.'
Ex. 49 at 251 only goes back to 2013, but, as Plaintiffs have proffered (*see* Plaintiffs'
Proposed Statement 17, above), EcommerceBytes was founded in 1999. Pls.' Ex. 49 at
251 also shows that EcommerceBytes received the greatest number of new users in 2020.
Undisputed that pg. 251 of Pls.' Ex 49 shows that EcommerceBytes received the greatest
number of page views some time before August 2019. However, this statement is neither
relevant nor material to Ms. Jones.

110.  EcommerceBytes experienced a drop in page views and users, after the criminal complaint

became public in June 2020. PPROD-071821 p.251. Finkelstein Ex. 49.

**Response:** Disputed. Pls.' Ex. 49 shows a significant increase in page views the day
after the criminal complaint was unsealed in June 2020. Pls.' Ex. 49 at 315. Pls.' Ex. 49
also shows an increase in new users the day after the criminal complaint was unsealed.
*Id.* at 405. Moreover, this statement is neither relevant nor material as to Ms. Jones.

Dated: February 14, 2025

Respectfully submitted,

*/s/ Andrew J. O'Connor*

Andrew J. O'Connor (BBO# 672960)
William L. Roberts (BBO# 679735)
Jesse R. Coulon (BBO# 705248)
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
andrew.oconnor@ropesgray.com
william.roberts@ropesgray.com
jesse.coulon@ropesgray.com

*Counsel for Wendy Jones*