UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INA STEINER, DAVID STEINER, and STEINER ASSOCIATES, LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>EBAY INC., ET AL.,<br><br>    Defendants. | CIVIL ACTION NO.: 1:21-CV-11181-PBS |

**DEFENDANT PROGRESSIVE F.O.R.C.E. CONCEPTS, LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

NOW COMES, Defendant, Progressive F.O.R.C.E. Concepts, LLC ("PFC"), and pursuant to Federal Rule of Civil Procedure 56, hereby Replies to plaintiffs' Opposition to PFC's Motion for Summary Judgment, as follows:

**I.    PFC'S BRIEF IS COMPLIANT WITH PAGE NUMBERS AND SHOULD NOT BE STRICKEN**

As their last-ditch attempt to thwart summary judgment in PFC's favor, Plaintiffs, in their Opposition, contend that PFC's brief, at 21 pages in total including the caption and signature line, exceeds the Court's rules on page limits. A cursory review of PFC's brief though makes clear that PFC's brief only exceeds 20 pages due to the caption and signature line, as is allowed and as is also the case with the respective summary judgment briefs of several of the other parties in this matter, as well as with the prior briefings filed by the parties throughout the pendency of this action.

1

Though Plaintiffs further contend that PFC's footnote font size is also somehow improper so as to also warrant striking PFC's brief, a simple review of the Rules applicable to this matter establish that PFC's footnotes are entirely compliant and allowed. Indeed, Judge Saris does not have any Standing Orders on motions, oppositions, or replies practice, whereby any and all motion papers, such as PFC's brief, need only abide by Local Rule 7.1, which PFC also confirmed with the Court and as Judge Saris also confirms in her Judicial Forum Survey responses posted on her website. Therein, Judge Saris specifically responds "NO" when asked if, "other than the presumptive pages limits for memoranda under Rule 7.1(b), do you have any other requirements or preferences about the filing of dispositive motions?".[1] To be sure, PFC's brief is in full compliance with Local Rule 7.1, which has no requirements on footnotes, whether font size or otherwise. PFC's brief is thus, contrary to Plaintiffs' contentions, entirely appropriate and compliant and should not be stricken.

## II.     BORROWED SERVANT DOCTRINE BARS PFC'S VICARIOUS LIABILITY

Plaintiffs in their opposition to the instant motion argue that Zea was at all times under the complete control of PFC and PFC must be held vicariously liable. The Plaintiffs base this argument solely on the fact that PFC provided Zea with benefits and paid her salary. Plaintiffs' Opposition p. 7. In making this argument, Plaintiffs have completely ignored the undisputed evidence and testimony that eBay controlled all aspects of Zea's day to day functions of her job as an eBay Security Analyst. The determination of a "master" and "servant" relationship for purposes of the Borrowed Servant Doctrine and to determine liability is fact dependent.[2]

---

[1] Judge Patti B. Saris | United States District Court for the District of Massachusetts, USDC Judicial Forum Survey, Question 23.
[2] Ward v. Kylander, Mass. Super., No. CIV.A. 2003-2030 (June 8, 2006)(stating what entity pays an employee's salary and what entity has the right to direct and control the employee's decisions plays a part in determining a "master" and "servant" relationship).

However, control is the essential element in determining if a "borrowed servant" relationship exists.[3]

Control by eBay over Zea is evident as she received her day-to-day assignments from Popp, Baugh, and Stockwell, received daily training from eBay personnel, and was given performance reviews by eBay personnel. Deposition of Veronica Zea, p. 103, 143, and 162, **Ex. 4**; Deposition of Daniel Cory, p. 128-130, **Ex. 7**; and Deposition of Stephanie Stockwell, p. 149-150, **Ex. 6**. Further, Zea was instructed by Baugh and Popp to bring any issues directly to them, and to never go to Concentric or PFC. Deposition of Veronica Zea, p. 122, **Ex. 4**; Deposition of Anneli Olausson, p. 75-76, **Ex. 8**. It was well known within the GIC that if an analyst attempted to contact anyone outside the GIC on any issues, Baugh or other eBay leadership would take retaliatory action. Deposition of Stephanie Stockwell, p. 67-68, **Ex. 6**; Deposition of Anneli Olausson, p. 75-76, Ex. 8. Baugh, Popp, and Stockwell created an atmosphere of complete control within the GIC which included PFC embedded personnel.

PFC's role relating to PFC embedded personnel at eBay, including Zea, was limited to paying the salaries of those embedded employees (which was determined by eBay and not PFC) and providing benefits. Deposition of Veronica Zea, p. 168, **Ex. 4**; Email Chain Dated May 14, 2019, **Ex. 10**. Plaintiffs attempt to use these facts to argue that PFC controlled Zea, and goes on to cite Gurry v. Cumberland Farms, Inc., 406 Mass. 615, 622-23 (1990). Gurry held "[w]hether a person employed by one entity becomes a loaned servant of another entity to perform services for that entity, usually depends on whether the employee remained subject to the control of the original employer, or answered only to the second entity." Id. at 622.

---

[3] Shepard v. Jacobs, 90 N.E. 392 (Mass1910); see also Restatement (Second) of Agency §227 (1958) ("A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services.")

However, the Court based their determination that Peck, the Vice President of Operations for Cumberland Farms Dairy, Inc. ("Dairy"), was not a "loaned servant" to United Cranberry Growers Associates, Inc. ("Cranberry Growers") primarily on the fact that Peck was providing management and consultation services to multiple subsidiaries, like Cranberry Growers, and was paid solely by Dairy.[4] Id. at 623. While Zea did draw her salary from PFC, it was ultimately paid by eBay based on an itemization of hours worked. Also, in sharp contrast to Gurry, Zea did not provide services to multiple entities. She worked exclusively at eBay and under eBay personnel's direct control. Using the Court's analysis in Gurry, Zea is a "loaned servant" to eBay, as Zea's work primarily served the interests of eBay and not PFC. Id.

[REDACTED]

Additionally, Plaintiffs allege that Zea's use of her PFC credit card to pay for flights, hotels, and other materials related to the events in Natick somehow indicates that Zea was acting as an employee of PFC. Plaintiffs' Opposition to PFC's Motion for Summary Judgment, page 8. PFC has never claimed Zea was not an employee of PFC. Instead, PFC has shown that Zea,

---

[4] Cranberry Growers paid an administrative fee to Dairy to cover[] the management services rendered by Peck and other Dairy corporate executives, as well as record keeping services," the payment by Cranberry Growers did not distinguish for Peck's work. Id. at 617.

under the Borrowed Servant Doctrine, was ultimately controlled by eBay meaning eBay is vicariously liable for Zea's actions.[5] ███████████████████████████████████████████████████████████████████████████████████████████████ GIC Team Expenses for July 2019, **Ex.15 to PFC's SOF**. Those expense reports were then reviewed by eBay before being submitted to PFC. Deposition of Veronica Zea, p. 198-200; **Ex. 4**; Email Correspondence between Scott Pugh and Stephanie Popp dated August 9, 2019, **Ex. 16 to PFC's SOF**; and Email Correspondence between Scott Pugh and Stephanie Popp dated August 16, 2019, **Ex. 17 to PFC's SOF**. Zea's use of her PFC credit card only further highlights the control eBay exerted over Zea and PFC embedded employees, supporting the notion that Zea was a "loaned servant" and under the Borrowed Servant Doctrine PFC is not liable for Zea's actions.

Plaintiffs are unable to point to any clear evidence to support its claim that PFC actually controlled Zea. This is because the evidence clearly indicates that eBay controlled Zea's actions by directing her day-to-day activities, providing performance reviews and training, directing her when to use her PFC credit card, determining her salary, and approving her expense reports. Deposition of Veronica Zea, p. 103, 143,162 and 168, **Ex. 4**; Deposition of Daniel Cory, p. 128-130, **Ex.7**; Deposition of Stephanie Stockwell, p. 149-150, **Ex. 6**; and Email Chain Dated May 14, 2019, **Ex. 10**. As such, it is clear that liability attaches to eBay for Zea's actions under the Borrowed Servant Doctrine.[6]

---

[5] Raymond v. I/S Caribia, 626 F.2d 203 (1st Cir. 1980)( "The prime requisite for invoking the borrowed servant doctrine is some sort of control by the borrower over the loaned employee(s)."); Standard Oil Co v. Anderson, 212 U.S. 215, 29 S. Ct. 252, 53 L. Ed. 480 (1909) ("In many of the cases to power of substitution or discharge, the payment of wages, and other circumstances bearing upon the relation are dwelt upon. They, however, are not the ultimate facts, but only those more or less useful in determining whose is the work and whose is the power of control.")

[6] Afonso v. Boston, 587 F. Supp. 1342 (D. Mass. 1984) ("Under Massachusetts law, the critical test of a master-servant relationship is the existence of a right to control the servant's actions…Other tests, such as who employs or

### III. ZEA WAS ACTING OUTSIDE THE SCOPE OF HER EMPLOYMENT WITH PFC

It cannot be said Zea was acting within the scope of her employment with PFC while harassing and stalking the Steiners. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The events in Natick did not include any of the above referenced functions as described in Zea's job description. As such, Zea was not acting within the scope of her employment with PFC and PFC cannot be held vicariously liable.

An employee's conduct is within the scope of employment if (1) the conduct in question is of the kind the employee is hired to perform; (2) if the conduct occurs substantially within the authorized time and space limits; and (3) it is motivated, at least in part, by a purpose to serve the employer.[7] Plaintiffs must meet all three factors. Wang at 859-60. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ These actions constitute harassment and stalking, and are not indicated as a function Zea was hired to fulfill for PFC, demonstrated by the

---

pays the servant, are not decisive; they are important only to the extent that they bear on the question of control."); Coughlan v. Cambridge, 166 Mass. 268 (1896).

[7] Wang Lab'ys, Inc. v. Bus, Incentives, Inc., 398 Mass. 854, (1986); Worcester Ins. Co. v. Fells Acres Day Sch., Inc., 408 Mass. 393 (1190); Clickner v. City of Lowell, 422 Mass. 539, (1996); Lev v. Beverley Enterprises-Massachusetts, Inc., 457 Mass. 234, (2010).

extreme lengths she went through to hide the events from PFC before, during, and after they occurred. The Natick events were not motivated in part to serve PFC, but rather to serve Baugh's own harassment campaign against the Steiners. Consequently, PFC cannot be held vicariously liable for Zea's actions.[8]

Plaintiffs argue at page 9 of their Opposition that the job description she drafted for her own position does not support PFC's argument that Zea was acting outside of the scope of her employment. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████

████████ Plaintiffs contend in their Opposition that sending spiders, trespassing, harassing and stalking fit into the above job description. Plaintiffs' Opposition, p. 9. ████████████

███████████████████████████████████████

███████████████████████████████████████ Id. A job description that requires flexibility in the prospective employee cannot be said to support the events that occurred in Natick.

Additionally, the Plaintiffs argue that eBay Executives considered the Steiners to be a security risk and "an existential threat to the company and even to the physical safety of its employees" which "could not be solved through ordinary 'lawyer' tools." Plaintiffs' Opposition, p. 10; Baugh Sentencing Memo, p. 2, Finkelstein Decl. Exhibit 5. ████████████

███████████████████████████████████████

But, Plaintiffs seem to argue that no matter how Zea carried out that mission, it still fell within

---

[8] Howard v. Burlington, 399 Mass. 585 (1987)("It is ordinarily the actual and customary, rather than formally described duties which determine scope of employment").

7

the scope of her employment; that is simply not correct. PFC did not hire Zea to commit crimes in the name of performing her job.

Plaintiffs seem to believe that the security services Zea was hired to perform by PFC to deal with threats to PFC clients includes harassment, stalking and intimidation. Plaintiffs' Opposition, p. 13. However, Zea's actions purported to be within the scope of her employment have been repeatedly considered by the Plaintiffs and the Court to be "outrageous." Memorandum and Order dated December 12, 2023, p. 20, **ECF No. 309**; Plaintiffs' Opposition to Defendants' Motion to Dismiss, p. 32, **ECF No. 117**.[9] "The fact that an act is done in an outrageous or abnormal manner has value in indicating that the servant is not actuated by an intent to perform the employer's business." See Restatement (Second) of Agency ¶235, Comment C. This is seen in Berry v. Commerce Ins. Co., 488 Mass. 633 (2021), which held that a firearms instructor was not acting within the scope of his employment when while driving on the job he drove fast towards a picnic table, slammed on his brakes, spun his tires, and skidded into the picnic table pinning the plaintiff between the vehicle and the picnic table. Id. at 640. "The egregious nature of Sheehan's misconduct had no employment-based purpose…." Id. at 640-641.

Berry makes it clear that the test for scope of employment does not rest on if the act performed was part of the offending employee's duties or in service to the employer, but rather on how the task itself is performed. Id. A task ordinarily considered to be within the scope of employment, such as driving a vehicle, can fall outside the scope of employment if performed in a manner that is "extreme" or "egregious" in nature. Id. This is because under Berry the conduct

---

[9] "The harassment and intimidation scheme certainly went 'beyond all possible bounds of decency' to constitute 'extreme and outrageous' conduct." Memorandum and Order dated December 12, 2023, p. 20. Even plaintiffs refer repeatedly to the actions of Baugh and his team as a "campaign of terror." Plaintiffs' Memorandum of Law in Opposition to eBay's Motion for Partial Summary Judgment, pp. 1, 3. Acts of terror did not serve the purposes of PFC.

is no longer considered to further the interests of the employer and thus fails the third prong of the scope of employment test under Wang.[10]

Similarly, Zea's conduct cannot be said to have an "employment-based purpose" due to the extreme and outrageous nature of the Natick events. The actions performed by Zea, including sending funeral wreaths, cockroaches and spiders to Steiners, attempting to install a GPS tracker on the Steiners' vehicle, or tailing Mr. Steiner, cannot be considered "normal" functions of a security analyst, but rather "abnormal" and "outrageous." See Restatement (Second) of Agency ¶235, Comment C; Berry, 488 Mass. at 640. Under Berry, these actions, if deemed job functions, would nonetheless still fall outside the scope of employment as the way Zea performed her "job functions" related to the Natick events are extreme, outrageous, and in no way serve to protect eBay. Berry, 488 Mass. at 640. Consequently, PFC cannot be held vicariously liable for Zea's actions as due to their extreme and outrageous nature they fall outside the scope of Zea's employment.

The evidence presented supports PFC's position that Zea's participation in the harassment, stalking, and intimidation of the Steiners was outside the scope of her employment with PFC and in no way was performed to serve PFC. PFC is not in the business of stalking and harassing, and the job descriptions drafted by Zea and used to hire Zea support such an assertion. Veronica Zea's Draft Job Description and Email Chain dated May 1, 2019. As a result, PFC cannot be held vicariously liable for the actions of Zea performed during the Natick events.

## IV. PFC IS ENTITLED TO SUMMARY JUDGMENT ON THE DIRECT TORT CLAIMS AGAINST IT BECAUSE THE PLAINTIFFS CANNOT PROVE THAT PFC OWED A DUTY OR BREACHED A DUTY.

---

[10] "Regardless of the determination as to the first factor, consideration of the third factor – whether the conduct was motivated, at least in part, by a purpose to serve the employer – compels the conclusion that Sheehan was not acting within the scope of his employment." Berry v. Commerce Ins. Co., 488 Mass. 633, 640 (2021).

9

In order to prevail on its direct tort claims against PFC (negligent supervision, negligent retention and civil conspiracy), it is elementary that the plaintiffs must prove, inter alia, the elements of duty and breach of duty. They are unable to meet their burden as a matter of law as to either element.

"Fundamentally, the existence of a duty of care depends upon the foreseeability of a risk of harm that the defendant has an ability to prevent." Heath-Latson v. Styller, 487 Mass. 581, 584 (2021). In addition to foreseeability of risk, it must be shown that the defendant had an ability to prevent the misconduct. See Hill-Junious v. UTP Realty, LLC, 492 Mass. 667, 673-674 (2023). In other words, a defendant, as a matter of law, will not owe a duty of care unless both the harm was foreseeable to that particular defendant *and* the misconduct was able to be prevented by that particular defendant, as the SJC recently made clear in Hill-Junious. Id. at 673-674. In Hill-Junious, a patron of a night club where prior violent acts had taken place was shot and killed exiting it. In affirming summary judgment granted in favor of the defendant property owner, the SJC held that the defendant had no duty to protect against the perpetrator's act of violence because the act of violence was not foreseeable to that defendant where that defendant could not have prevented it. Id. at 674. This was true even if that defendant knew or should have known about the prior acts of violence. In so holding, the SJC explained that "even if [the property owner] should have known of prior acts of violence identified by the plaintiff, that would not be conclusive on the question of duty [citations omitted]. Id. at 674. We must also consider whether the harm that the plaintiff claims was foreseeable is one 'that the defendant has an ability to prevent.' [citations omitted] Id. Here, the record cannot reasonably support a conclusion that security measures, including those suggested by the plaintiff's expert . . . would have prevented the shooting that occurred." Id. at 674-675. Just as in Hill-Junious, and as demonstrated in PFC's Memorandum of Law in Support

10

of its Motion for Summary Judgment, the harassment campaign was neither foreseeable nor an event that PFC could have prevented, whereby PFC, as a matter of law, owed no duty of care to the plaintiffs This is made particularly clear by the fact that Zea was only one of several perpetrators of the harassment campaign, and not even one of the primary perpetrators of it. And, unlike in Hill-Junious, the Plaintiffs here do not even have expert testimony to support their empty and specious contention that PFC could have somehow prevented the harassment campaign and to also demonstrate what PFC could have and should have done differently that would have prevented this harassment campaign and how that would have prevented the harassment campaign.

Recognizing the lack of a duty of care owed by PFC under general tort principles, the plaintiffs have resorted to arguing that "[a] duty of care can arise from a contract" and relying on the contract between eBay and PFC to prove a breach of the standard of care by PFC as to the plaintiffs. Plaintiffs' Memorandum, p. 11. ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

a. **Plaintiffs are Not Intended Beneficiaries of the Contract Between eBay and PFC.**

The plaintiffs are not intended beneficiaries of the contract between eBay and PFC and, therefore, cannot rely upon the contract to create a duty or a breach of duty to meet their burden of proof. Though the plaintiffs are correct that a duty of care can arise as to a third party under a contract, the third party needs to be an intended beneficiary of the contract to be owed such a duty under the contract. Such is not the case here and the plaintiffs have failed to provide any applicable

11

caselaw to show otherwise. Rather, the single case cited by the plaintiffs, Brettel, in support of their position in no way stands for that the Plaintiffs would be intended beneficiaries here and plaintiffs' reliance on it is misplaced. In Bretton, the defendant was specifically hired by the plaintiff's employer to create a safe environment for the benefit of the plaintiff-employee and their fellow employees. Brettel v. Omron Sci. Techs., Inc., 302 F. Supp. 3d 460 (D. Mass. 2018). In holding that the defendant owed a contractual duty of care to the plaintiff-employee and their fellow employees, the Court made clear that contractual duties of care do not extend to any potential beneficiary of a contract, but rather only extend to those persons the contract specifically intended to benefit with the performance of the contract and who the contract's purpose was to benefit. As further explained by Judge Dein, "In the instant case, in light of the fact that Omron was hired to identify safety risks in connection with the use of machinery by Madico employees, it is reasonable for a duty of care to run to such *employees* [emphasis added]." Brettel, 302 F. Supp. 3d at 467 (D. Mass. 2018).

In support of its narrow interpretation and extension of contractual beneficiaries to only those persons the Contract by its stated intent or purpose directly intended to benefit, the Brettel Court emphasized the similar facts in Parent v. Stone & Webster Engineering Corp., 408 Mass. 108 (1990), wherein the SJC was also willing to find that a third party was an intended beneficiary of a contract, but again only where by the terms and purpose of the contract it was clear that the contract was entered into specifically to benefit that class of persons. It is not enough that a person or group of persons is an incidental beneficiary to a contract or is otherwise affected or has the potential to be affected by a contract. The person or the class of persons must be who the contract specifically intended to benefit with its creation. In Parent, the plaintiff was an electrician who worked for Montaup Electric Company ("Montaup") at its electrical generating plan. Parent at

109-110. Parent was injured when testing voltage in an electrical panel. Id. He was working on a high voltage panel, and claimed that he would not have conducted the test if the high voltage panel was properly marked as, "Danger – High Voltage." Id. The defendant, Stone & Webster ("S&W"), had been hired to conduct an evaluation of Montaup's electrical system and make recommendations about safety, which would have included marking dangerous, high voltage, conditions. Id. S&W failed to label the panel. Id. The SJC held that the employee was owed a duty by S&W as an intended beneficiary of the contract between the Montaup and S&W. Id. at 114-115. It was both foreseeable to S&W that a negligent performance of its duties could pose a serious risk to plant employees, and it could have prevented the harm by labeling the electrical panel. See id. at 115. The employees in Brettel and Parent were able to establish that they were intended beneficiaries of the contracts entered into by their employers with the vendors who were contracted to come on-site to make conditions safe. Judge Dein also found in Brettel that the employees were relying on Omron to conduct a safety study and were aware of their work. ▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Moreover, and in addition to the actual purpose of a contract and who specifically the contracted to services are intended to benefit directly, Courts must also consider the contract language itself when assessing whether the contracting parties intended to give a plaintiff the benefit of the promised performance. Anderson v. Fox Hill Village Homeowners Corp. 424 Mass. 365, 365-67 (1997) (a plaintiff, in order to prevail on theory that she was intended third party beneficiary under a contract, must prove that the contracting parties intended to give her the benefit

of the promised performance under the contract). ███

███

███

███

███

███

███

███

███

███

███

███

███

███ PFC was hired for the benefit of eBay's employees, not a couple in Natick, Massachusetts. The plaintiffs' theory, if accepted by the Court, would be tantamount to PFC having a duty to the population of the world - clearly an unreasonable result.

### b. Reliance on the MSA Does Not Obviate the Need for Expert Testimony.

███

███.

███

███

14

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████ Krumsiek v. Collins Electric Company, Inc., 105 Mass.App.Ct. 214, 218 (2025); Varni Bros. Corp. v. Wine World, Inc., 35 Cal.App.4th 880, 889-890 (1995). "'[T]he purpose of course of performance evidence [is] to ascertain the intent of the parties to the contract. See Pittsfield & N. Adams R.R., 260 Mass. at 398, 157 N.E. 611, quoting Brooklyn Life Insurance Co. v. Dutcher, 95 U.S. 269, 273, 24 L.Ed. 410 (1877) (There is no surer way to find out what parties meant, than to see what they have done)." Krumsiek at 222. ████████████████████████████

███████████████████████████████████████████████████

██████

████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████ Expert testimony, in this case, is still required.

"Where a contractual relationship creates a duty of care to third parties, the duty rests in tort, not contract, and therefore a breach is committed only by the *negligent performance* of that duty, not by a mere contractual breach. [emphasis added]" Brettel v. Omron Sci. Techs., Inc., 302 F. Supp. 3d 460, 467 (D. Mass. 2018).  See also, Anderson at 368 (where the contract creates a duty to third parties, the plaintiff must still prove negligence – a breach of reasonable care in performance.) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  All of these alleged failures require expert testimony to demonstrate a breach of industry standards.

First, the plaintiffs claim that "PFC did not provide a project manager to whom Zea would solely report to and be directed." Plaintiffs' Opposition, p. 11.  To the extent that the plaintiffs imply that PFC did not provide a project manager at all, that is false.  Veronica Zea described in her deposition that the PFC project manager, Scott Pugh, would visit the GIC once every couple of months, walk through the GIC and would ask, "Is everything good in here? How is it going? What are you doing?"  Deposition of Veronica Zea, p. 158-160.  She had Pugh's email address and telephone number.  Id. at 160.  Zea was asked:

> Q.   Did he seem approachable to you?
> A.   Yes, but there was always the fear that anything
> I told him would just go straight to someone who would
> tell Jim.
> Q.   And that fear was because of the prior
> experience you had when you reported something to
> Concentric.  Is that correct?
> A.   Yes.

Id.  While Zea may not have felt comfortable reporting anything to PFC given the experience of another employee when they reported a concern to Concentric, PFC did, in fact, provide a manager to whom Zea could seek help.

To the extent that the plaintiffs' argument is that the project manager existed, but did not solely direct Zea's work, the record establishes very clearly that PFC personnel embedded with the Global Intelligence Center (as distinguished from PFC personnel assigned to other teams) were supervised by Baugh and Popp.  For all of the reasons set forth in PFC's Memorandum of Law in Support of its Motion for Summary Judgment, the plaintiffs cannot prove without expert testimony that it was a breach of the standard of care for PFC to permit eBay to supervise the embedded security analysts. ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████

The second breach of the contract alleged by the plaintiffs is that PFC failed to provide training.  The plaintiffs allege that the failure to train Zea is something that "a lay juror can certainly understand."  Plaintiffs Opposition, p. 12. ████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████ Under these circumstances, a breach of the standard of care is certainly not within the knowledge of a lay juror and requires expert testimony.  Further, expert testimony is required

to inform the jury of what training would have been required and how it would have prevented the harassment campaign.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████ As described in PFC's Memorandum in Support of Motion for Summary Judgment, pp. 4, 7-9, Zea's eBay supervisors approved and submitted the credit card charges to PFC, which in turn added those charges to its invoice submitted to eBay. And, certainly, the charges made by Zea in Boston were not known to PFC until after the events occurred. The plaintiffs claim that PFC would have learned "something was wrong" fails to identify what was wrong, when the something would have been identified, what course of diligence should have been followed, when that diligence should have occurred and how it would have prevented the harassment campaign. Without expert testimony, the plaintiffs have no evidence to answer any of those questions and cannot prove that PFC's conduct breached the standard of care. See, e.g., Beard et al. v. Goodyear Tire & Rubber Company, et al., 587 A.2d 195 (D.C. 1991) (summary judgment where no expert testimony regarding duty of merchants for failing to detect fraud in credit card applications).

Finally, to support their direct claims of negligence, the plaintiffs allege that PFC personnel knew about the harassment campaign. Plaintiffs' Opposition, p. 15. The record demonstrates that PFC employees embedded in eBay, including Zea, clearly knew about the campaign - they participated in it. The record demonstrates that no one at PFC, outside of those in the GIC, were aware of the planning or execution of the harassment campaign until it was uncovered. Statement

18

of Undisputed Mateiral Facts in Support of PFC's Motion for Summary Judgment, ¶¶ 73, 78, 81-83, 87, 93- 96, 100, 105, 106, 107.

In summary, the plaintiffs' argument on negligence boils down to this: ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████ The plaintiffs cite not a single case to support their claim that expert testimony is not necessary.

WHEREFORE, defendant Progressive F.O.R.C.E. Concepts, LLC respectfully requests that its Motion for Summary Judgment be ALLOWED.

Respectfully submitted,
PROGRESSIVE F.O.R.C.E. CONCEPTS, LLC,
By Its Attorneys,

/s/ *Kimberly Iverson Tufo*
_____
Scott Douglas Burke, BBO #551255
sburke@morrisonmahoney.com
Kimberly Iverson Tufo, BBO #686062
ktufo@morrisonmahoney.com
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210-1181
Phone:  617-439-7500

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 14, 2025.

                                                *Kimberly Iverson Tufo*

                                                Kimberly Iverson