**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Ina Steiner,<br>David Steiner,<br>Steiner Associates, LLC,<br><br>         *Plaintiffs*,<br><br>   v.<br><br>eBay, Inc.,<br>Progressive F.O.R.C.E. Concepts, LLC,<br>Devin Wenig,<br>Steve Wymer,<br>Wendy Jones,<br>James Baugh,<br>David Harville,<br>Brian Gilbert,<br>Stephanie Popp,<br>Stephanie Stockwell,<br>Veronica Zea,<br>Philip Cooke, and<br>John and Jane DOE,<br><br>         *Defendants*. | No. 1:21-cv-11181 |

**DEFENDANT DEVIN WENIG'S RESPONSE TO PLAINTIFFS' STATEMENT OF
PROPOSED UNDISPUTED FACTS**

## INTRODUCTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, Mr. Devin Wenig hereby responds to Ina Steiner's, David Steiner's, and Steiner Associates, LLC's ("Plaintiffs") Statement of Proposed Undisputed Facts ("SPUF").

## PRELIMINARY STATEMENT

Plaintiffs' SPUF is deficient and improper in multiple respects.  First, Plaintiffs have filed their own *separate* statement of proposed undisputed material facts, notwithstanding the fact that they did not move for summary judgment.  This flouts the letter of Local Rule 56.1, which requires "a party opposing summary judgment to file a statement of *disputed* material facts *in response* to the moving party's statement of *undisputed* material facts," and the purpose of the Rule, which is to clearly identify and present the undisputed material facts in the record and to aid the court in effectively narrowing the issues in dispute on summary judgment.  *Plourde v. Sorin Grp.U.S., Inc.*, 517 F. Supp. 3d 76, 81 (D. Mass. 2021); *see also Terry v. SimplexGrinnell LP*, No. 11–40117–TSH 2013, WL 1332240, at *3 (D. Mass. Mar. 28, 2013) (explaining a "submission of a separate statement of *undisputed* facts is not contemplated by the [local] rule").  As a result, Plaintiffs' submission of an additional 110 paragraphs of "undisputed material facts" has improperly complicated, confused, and broadened the matters at issue before the Court—exactly the opposite of what Rule 56.1 was designed to achieve.  *See Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007) (Local Rule 56.1 is "designed to function as a means of focusing a district court's attention on what is—and what is not—genuinely controverted.") (internal citations and quotations omitted).

In addition, Plaintiffs have filed just one statement of proposed undisputed facts against all *five* Defendants that moved for summary judgment, irrespective of the arguments raised in each

Defendant's motion. This singular statement of proposed undisputed facts has unnecessarily muddied the waters for the Court and the parties. Mr. Wenig must now raise numerous evidentiary objections, and respond to numerous irrelevant allegations that are immaterial to his pending motion for summary judgment, which would have been unnecessary had Plaintiffs followed proper procedure.[1] Plaintiffs' procedural gambit is all the more troubling since Plaintiffs decided not to take the deposition of any member of the Executive Leadership Team at eBay, resulting in Plaintiffs making improper assertions about one Defendant rooted in speculation, conjecture, and hearsay about another Defendant.

Next, Plaintiffs' SPUF is rife with unsupported allegations based on evidence that is inadmissible as to Mr. Wenig. Indeed, to support the bulk of their 110 paragraphs, Plaintiffs cite to sentencing materials,[2] interview notes taken by eBay's former attorneys during eBay's internal investigation ("Morgan Lewis") ███████████████████████████

█████████████████[3] Morgan Lewis summaries of messages text collected from cellular

---

[1] To the extent that Mr. Wenig states in his responses that a purported "fact" submitted by Plaintiffs is "undisputed," that "fact" is undisputed for the purposes of this Motion only and not for any other purpose. Mr. Wenig explicitly reserves his right to object or challenge Plaintiffs' evidence at trial. *See generally Ramgoolie v. Ramgoolie*, 2018 U.S. Dist. LEXIS 152156, at *19–20 (S.D.N.Y. Sept. 6, 2018) ("That these facts were deemed admitted at summary judgment does not preclude Defendant from challenging Plaintiff's evidence at trial."); Fed R. Civ. P. 56(g) advisory committee's note to 2010 amendment (noting that a party has the "ability to accept a fact for purposes of the motion only").

[2] Finkelstein Ex. 4; Finkelstein Ex. 5; Finkelstein Ex. 11; Finkelstein Ex. 13; Finkelstein Ex. 29.

[3] Finkelstein Ex. 2; Finkelstein Ex. 9; Finkelstein Ex. 10; Finkelstein Ex. 18; Finkelstein Ex. 21; Finkelstein Ex. 22; Finkelstein Ex. 23; Finkelstein Ex. 24; Finkelstein Ex. 36; Finkelstein Ex. 37; Finkelstein Ex. 59; Finkelstein Ex. 61; Finkelstein Ex. 94; Finkelstein Ex. 95; Finkelstein Ex. 96; Finkelstein Ex. 99; Finkelstein Ex. 100; Finkelstein Ex. 102.

phones,[4] eBay's Deferred Prosecution Agreement,[5] and an affidavit submitted by FBI Agent Mark Wilson.[6]  These materials are inadmissible hearsay, and hearsay within hearsay, that do not satisfy any exceptions.  *See* Reply at 3–6.  Further, these materials, and the statements therein, "cannot be presented in a form that would be admissible in evidence" as to Mr. Wenig.  Fed. R. Civ. P. 56(c)(2). This leaves the vast majority of Plaintiffs' allegations unsupported by admissible evidence.

Finally, Plaintiffs' attempt to incorporate the entirety of eBay's Deferred Prosecution Agreement statement of facts ("DPA Statement of Facts") and Information ("DPA Information," collectively the "DPA") in their combined SPUF is also patently improper and violates Local Rule 56.1.  Local Rule 56.1 requires "a concise statement of the material facts of record . . . with page references to affidavits, depositions and other documentation."  Yet, Plaintiffs seek to "incorporate[] . . . by *reference*" the entirety of the DPA Statement of Facts and DPA Information into their SPUF.  *See* SPUF at 1 (emphasis added).  This shortcut does not provide a "concise statement[] of material facts" and deprives Mr. Wenig of the opportunity to adequately respond to any of these "reference[d]" DPA paragraphs.[7]  Therefore, although Mr. Wenig responds to the provisions of the DPA that Plaintiffs chose to set forth in individual paragraphs below, Mr. Wenig also specifically objects to the DPA as a whole, and any allegations therein, as the DPA cannot be presented in a form that would be admissible as to Mr. Wenig.

---

[4] Finkelstein Ex. 25; Finkelstein Ex. 26; Finkelstein Ex. 55.

[5] Finkelstein Ex. 1; Finkelstein Ex. 7.

[6] Finkelstein Ex. 8; Finkelstein Ex. 27.

[7] Plaintiffs repeatedly cite entire deposition transcripts and sentencing materials, *see, e.g.*, SPUF ¶¶ 56–62, 66, 84, which similarly violates Local Rule 56.1 and prevents Mr. Wenig from adequately responding to any "concise statements" contained within such documents.

**DEFENDANT DEVIN WENIG'S RESPONSE TO PLAINTIFFS' SPUF**

1. eBay is a multinational ecommerce business that operates marketplaces that connect online sellers and their customers. DPA ¶ 1. Finkelstein Ex. 1.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion for Summary Judgment ("Motion") that eBay is a multinational ecommerce business that operates marketplaces that connect online sellers and their customers. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 1 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

2. Defendant Devin Wenig ("Wenig") was eBay's CEO. *Id.* ¶ 2.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Mr. Wenig was eBay's CEO. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 2 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record. Mr. Wenig qualifies the statement to note that he served as the President and Chief Executive Officer of eBay from July 2015 until September 2019. Lowell Ex. 3, I. Steiner Dep. Ex. 20 (PPROD-035597) at pp. 1–2.

3. Defendant Steve Wymer ("Wymer") was eBay's Chief Communications Officer. *Id.* ¶ 3. Wymer reported directly to Wenig. Wymer Answer ¶ 40. Finkelstein Ex. 3.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Mr. Wymer was eBay's Chief Communications Officer and reported directly to Mr. Wenig. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 3 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

4. Defendant Wendy Jones ("Jones") was eBay's Senior Vice President for Global Operations. DPA ¶ 4. Finkelstein Ex. 1. Jones reported directly to Wenig. Wymer Answer ¶ 40. Finkelstein Ex. 3.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Ms. Jones was eBay's Senior Vice President for Global Operations and reported directly to Mr. Wenig. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to

Mr. Wenig. Nevertheless, Paragraph 4 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

5. Defendant Jim Baugh ("Baugh") was eBay's Senior Director of Safety & Security. DPA ¶ 5.

Finkelstein Ex. 1.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Mr. Baugh was eBay's Senior Director of Safety & Security. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 5 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

6. ███████████████████████ EBAY_STEINER_00206553. Finkelstein Ex. 2.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that ████████████████████████ However, Mr. Wenig objects to the reliance on Finkelstein Ex. 2, EBAY_STEINER_00206553 because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 6 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

7. Defendant David Harville ("Harville") was eBay's Director of eBay's Global Security and

Resiliency Department ("GSR"). DPA ¶ 6. Finkelstein Ex. 1.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Mr. Harville was eBay's Director of eBay's Global Security and Resiliency Department. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 7 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

8. Harville reported directly to Baugh. *Id.*

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Mr. Harville reported directly to Mr. Baugh. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 8 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

5

9.  Defendant Stephanie Popp ("Popp") served as Baugh's de facto chief of staff and, until May 2019, managed eBay's Global Intelligence Center ("GIC"), an intelligence and analytics group within the GSR that supported eBay's security operations. *Id.* ¶ 7.

> **Mr. Wenig's Response:**  Disputed in part for the purposes of Mr. Wenig's Motion. Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig.  Mr. Wenig disputes the characterization that Stephanie Popp was "Baugh's de facto chief of staff" as there is no admissible evidence to support this allegation as offered against Mr. Wenig.
>
> However, it is undisputed for the purposes of Mr. Wenig's Motion that Stephanie Popp served as the Senior Manager of the GIC and that the GIC was an intelligence and analytics group within the GSR that supported security operations, as this is supported by other admissible evidence in the record.

10. Defendant Stephanie Stockwell ("Stockwell") was an intelligence analyst in the GIC who became its manager in mid-2019, when eBay promoted Ms. Popp. *Id.* ¶ 8.

> **Mr. Wenig's Response:**  Undisputed for the purposes of Mr. Wenig's Motion that Ms. Stockwell was an intelligence analyst in the GIC who became its manager in mid-2019, when eBay promoted Ms. Popp. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 10 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

11. Defendants Brian Gilbert ("Gilbert") and Philip Cooke ("Cooke") were retired police captains who worked at eBay and had responsibilities for safety and security at eBay facilities, executive protection, and special events security. *Id.* ¶ 10.

> **Mr. Wenig's Response:**  Undisputed for the purposes of Mr. Wenig's Motion that Mr. Gilbert and Mr. Cooke were retired police captains who worked at eBay and had responsibilities for safety and security at eBay facilities, executive protection, and special events security. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 11 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

12. By June 2020, after the termination of Baugh and Gilbert, Cooke was promoted by eBay to Director of Security Operations. Cooke Sentencing Memo at 5. Finkelstein Ex. 4.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that by June 2020, after the termination of Mr. Baugh and Mr. Gilbert, Mr. Cooke was promoted by eBay to Director of Security Operations. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 4, Cooke Sentencing Memo because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 12 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 12.

13.  eBay & PFC Master Service Agreement. Finkelstein Ex. 63.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that ███████████████████████████████████████████
>
> Mr. Wenig has no knowledge of the truth or veracity of Paragraph 13.

14. Defendant Veronica Zea ("Zea") was an employee of PFC that worked as an intelligence analyst in the GIC. DPA ¶ 9. Finkelstein Ex. 1.

> **Mr. Wenig's Response:** Disputed in part for the purposes of Mr. Wenig's Motion. Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Mr. Wenig disputes the assertion that Ms. Zea was "an employee of PFC" as an improper legal conclusion and not a factual proposition.
>
> However, it is undisputed for the purposes of Mr. Wenig's Motion that Ms. Zea worked as an intelligence analyst in the GIC, as it is supported by other admissible evidence in the record.

15. Zea worked under Baugh. DPA ¶ 9. Finkelstein Ex. 1.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Zea worked under Baugh. Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, the statement of fact contained in Paragraph 15 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

16. Plaintiffs Ina Steiner ("Ms. Steiner") and David Steiner ("Mr. Steiner") (collectively, the "Steiners") are a married couple living in Natick, Massachusetts. DPA ¶ 11. Finkelstein Ex. 1.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Mr. and Mrs. Steiner are a married couple living in Natick, Massachusetts. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 16 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.
>
> Mr. Wenig has no knowledge of the truth or veracity of Paragraph 16.

17. The Steiners co-founded EcommerceBytes, a website that since 1999 had reported on ecommerce companies, including eBay. *Id.*

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that the Steiners co-founded EcommerceBytes, a website that since 1999 had reported on ecommerce companies, including eBay. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 17 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 17.

18. By the spring of 2019, EcommerceBytes' reporting was a source of frustration at eBay. DPA ¶ 12. Finkelstein Ex. 1.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Mr. Wenig disputes the characterization that EcommerceBytes' "reporting" was "a source of frustration at eBay." Rather, individuals at eBay, including Mr. Wenig, were frustrated by perceived biases and inaccuracies about eBay published by EcommerceBytes. *See, e.g.,* Lowell Ex. 25, Gordon Tr. at 28:17–29:16 █████████████████████████████████████████████ ███████████████████████████████████████████. Lowell Ex. 7, Clay Dep. Ex. N (SLOANE00006701) at p. 1 (█████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████. Mr. Wenig further disputes the inaccurate characterization that the frustration with EcommerceBytes' "reporting" appeared in "spring of 2019." The evidence shows that EcommerceBytes' "reporting" had long been a source of frustration at eBay, long predating Mr. Wenig's tenure. *See, e.g.,* Lowell Ex. 8, EBAY_STEINER_00126591 at p. 1 (████████ ██████ ████

8

███████████████████████████████████████████████████
███████████

19. The Executive Leadership Team ("ELT"), which included Wenig, Wymer, and Jones, viewed eCommerceBytes as "an existential threat to the company." Baugh Sentencing Memo at p. 8. Finkelstein Ex. 5.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to reliance on Finkelstein Ex. 5, Baugh Sentencing Memo because it cannot be presented in a form that would be admissible as to Mr. Wenig. Without relying on an exhibit that is inadmissible, there is no support in the record for Paragraph 19.[8]

20. ████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████ Finkelstein Ex. 6; DPA Attachment A ¶ 17. Finkelstein Ex. 7.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to reliance on Finkelstein Ex. 7, DPA Attachment A because it cannot be presented in form that is admissible as to Mr. Wenig and does not support the factual allegation contained in Paragraph 20. Contrary to the allegation in Paragraph 20, Finkelstein Ex. 6, WYMER00000029 ███████████████████████████████ ███████████████████████████

21. ████████████████████████████████████████████████████

Finkelstein Ex. 6; DPA Attachment A ¶ 17. Finkelstein Ex. 7.

> **Mr. Wenig's Response:** Disputed in part for the purposes of Mr. Wenig's Motion. Mr. Wenig objects to the reliance on Finkelstein Ex. 7, DPA Attachment A because it cannot be presented in a form that would be admissible as to Mr. Wenig. Mr. Wenig disputes the allegation, which is not supported by either source cited, that Mr. Wymer "replied" to any message sent by Mr. Wenig.
>
> However, it is undisputed for the purposes of Mr. Wenig's Motion that Mr. Wymer sent Mr. Wenig the above-quoted text message, as it is supported by other admissible evidence in the record.

---

[8] Plaintiffs chose not to take the deposition of Mr. Wenig or any other member of the Executive Leadership Team. *See* Wenig's Summary Judgment Opening Brief at 8; Reply at 2, 9–10, 12.

22. EcommerceBytes' reporting was a source of frustration at eBay. Wenig, Wymer, Jones, Baugh, and others at eBay viewed Ina Steiner's reporting adversarially and sometimes used coarse and aggressive language in messages and e-mails about her and EcommerceBytes. DPA ¶ 12. Finkelstein Ex. 1.

> **Mr. Wenig's Response:**   Disputed in part for the purposes of Mr. Wenig's Motion. Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Mr. Wenig objects to Plaintiffs attempt to group Mr. Baugh in with the members of the Executive Leadership Team. Mr. Wenig disputes the characterization that EcommerceBytes' "reporting" was "a source of frustration at eBay."   Rather, individuals at eBay, including Mr. Wenig, were frustrated by perceived biases and inaccuracies about eBay published by EcommerceBytes.   *See, e.g.*, Lowell Ex. 25, Gordon Tr. at 28:17–29:16 ███████████████████████████████ Lowell Ex. 7, Clay Dep. Ex. N (SLOANE00006701) at p. 1 (███████████████████████ ████████████████████████████████████ Mr. Wenig disputes the characterization of language used in messages and emails about Ms. Steiner and EcommerceBytes as "aggressive."
>
> However, it is undisputed for the purposes of Mr. Wenig's Motion that strong and/or course language, which was not to be taken literally, was used when discussing EcommerceBytes' "reporting." *See* Lowell Ex. 25, Gordon Tr. at 27:17–28:8 ████████████████████████████████████

23. On April 20, 2019, discussing the Wall Street Journal's coverage of Executive 1, Executive 1 texted to Executive 2, "Fuck them. The journal is next on the list after [Ina]." DPA ¶ 19. Finkelstein Ex. 1.

> **Mr. Wenig's Response:**  Undisputed for the purposes of Mr. Wenig's Motion that Mr. Wymer and Mr. Wenig exchanged text messages on April 20, 2019 containing the language described in Paragraph 23. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 23 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

24. On May 21, 2019, an anonymous source who went by "FidoMaster" and EcommerceBytes posted information about "Walker's West," a replica of Wenig's favorite New York pub that had been constructed on the eBay campus. DPA Attachment A ¶ 22. Finkelstein Ex. 7.; Baugh Sentencing Memo at p.12. Finkelstein Ex. 5.

> **Mr. Wenig's Response:**  Disputed in part for the purposes of Mr. Wenig's Motion. Mr. Wenig objects to the reliance on Finkelstein Ex. 7, DPA Attachment A and Finkelstein Ex. 5, Baugh Sentencing Memo because they cannot be presented in a form that would be admissible as to Mr. Wenig. Mr. Wenig disputes the characterization of "Walker's West" as "a replica of Wenig's favorite New York pub," as there is no admissible evidence in the record for such a proposition.[9]

> However, it is undisputed for the purposes of Mr. Wenig's Motion that EcommerceBytes published an article about the new eBay campus restaurant construction and that @Fidomaster1 shared a link to the EcommerceBytes' article on Twitter, as this is supported by other admissible evidence in the record.

> Regardless, Paragraph 24 is immaterial to Mr. Wenig's Motion.

25. The next day on May 22, 2019, Jones asked Baugh to deal with the situation "off the radar since comms and legal couldn't handle it." *Id*.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the reliance on Finkelstein Ex. 7, DPA Attachment A (which does not support the allegation in Paragraph 25) and Finkelstein Ex. 5, Baugh Sentencing Memo because they cannot be presented in a form that would be admissible as to Mr. Wenig. Without relying on inadmissible evidence, there is no support in the record for the allegation in Paragraph 25.

> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 25 and Paragraph 25 is immaterial to Mr. Wenig's Motion.

26. Jones told Mr. Baugh, "Just get it done. I don't want to know the details, just make sure you sync with Wymer." *Id*.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the reliance on Finkelstein Ex. 7, DPA Attachment A (which does not support the allegation in Paragraph 26) and Finkelstein Ex. 5, Baugh Sentencing Memo because they cannot

---

[9] Plaintiffs chose not to take the deposition of Mr. Wenig or any other member of the Executive Leadership Team. *See* Wenig's Summary Judgment Opening Brief at 8; Reply at 2, 9–10, 12.

be presented in a form that would be admissible as to Mr. Wenig. Without relying on inadmissible evidence, there is no support in the record for Paragraph 26.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 26 and Paragraph 26 is immaterial to Mr. Wenig's Motion.

27. ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████    Finkelstein Ex. 6.

> **Mr. Wenig's Response:**  Undisputed for the purposes of Mr. Wenig's Motion that Mr. Wenig and Mr. Wymer exchanged text messages on May 31, 2019 containing the quoted language from Paragraph 27. *See* Finkelstein Ex. 61, WYMER00000290.

28. That same day, Wymer showed Jones the text from Wenig, which elicited the following exchange:

a.      Jones referred to Ina Steiner as a "cow";

b.      Wymer responded, "Her day is coming..."

c.      Jones stated, "I can't wait. // Jim Baugh came to me with some thoughts and | told him to stand down and leave it alone."

d.      Wymer responded, "You are being too kind... tell him to be my advisor on this issue // Some times you just need to make an example out of someone. Justice // We are too nice. She needs to be crushed"

e.      Jones responded, "I told [Baugh] I would raise to you and you would let him know if you want him to proceed — but knew you were working on something and didn't want to step into that."

f.      Wymer responded with a "thumbs up" emoji. DPA Attachment A ¶ 27. Finkelstein Ex. 7.

> **Mr. Wenig's Response:**  Disputed in part for the purposes of Mr. Wenig's Motion. Mr. Wenig objects to the reliance on Finkelstein Ex. 7, DPA Attachment A because

it cannot be presented in a form that is admissible as to Mr. Wenig. Mr. Wenig disputes the allegation, which is not supported by the cited evidence, that "Wymer showed Jones the texts from Wenig." There is no evidence in the record supporting that allegation.

However, it is undisputed for the purposes of Mr. Wenig's Motion that the text exchanges quoted in Paragraph 28 occurred, as they are supported by other admissible evidence in the record.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 28 and Paragraph 28 is immaterial to Mr. Wenig's Motion.

29. On June 7, 2019, at Baugh's direction, and paid for by a PFC-issued credit card (PFC0000317.

Finkelstein Ex. 50.), Gilbert travelled to the Boston area to surveil the Steiners. DPA ¶ 30.

Finkelstein Ex. 1.

**Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that on June 7, 2019, at Mr. Baugh's direction, and paid for by a PFC-issued credit card, Mr. Gilbert travelled to the Boston area to surveil the Steiners. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 29 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 29 and Paragraph 29 is immaterial to Mr. Wenig's Motion.

30. The next day, Gilbert wrote the word "FidoMaster" on the Steiners' fence. DPA ¶ 32.

Finkelstein Ex. 1.

**Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Mr. Gilbert wrote the word "FidoMaster" on the Steiners' fence. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 30 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 30 and Paragraph 30 is immaterial to Mr. Wenig's Motion.

31. On June 8, Baugh told Wymer that his team had given the Steiners "a tap on the shoulder."

Baugh Sentencing Memo at p. 13. Finkelstein Ex. 5.

13

**Mr. Wenig's Response:** Disputed. Mr. Wenig objects to reliance on Finkelstein Ex. 5, Baugh Sentencing Memo because it cannot be presented in a form that would be admissible as to Mr. Wenig. Without relying on an exhibit that is inadmissible, there is no support in the record for Paragraph 31.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 31 and Paragraph 31 is immaterial to Mr. Wenig's Motion.

32. Wymer expressed approval, but did not ask questions. *Id.*

**Mr. Wenig's Response:** Disputed. Mr. Wenig objects to reliance on Finkelstein Ex. 5, Baugh Sentencing Memo because it cannot be presented in a form that would be admissible as to Mr. Wenig. Without relying on an exhibit that is inadmissible, there is no support in the record for Paragraph 32.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 32 and Paragraph 32 is immaterial to Mr. Wenig's Motion.

33. ████████████████████████████████████████████████

████████ Finkelstein Ex. 59.

**Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the reliance on Finkelstein Ex. 59, Wenig Interview Memo because it cannot be presented in an admissible form as to Mr. Wenig. Without relying on an exhibit that is inadmissible, there is no support for Paragraph 33.

Further, the source cited does support the proposition that Mr. Wenig spoke to Mr. Baugh about the "Steiner's fence." The allegation contained in Paragraph 33 omits key context, ████████████████████████████████████████ ████████████████████████ See Finkelstein Ex. 59, EBAY STEINER 00203661 at EBAY STEINER 00203661 ████████████████████████████ ████████████████████████████████████ (emphasis added). Evidence in the record shows that Mr. Baugh had recently built a fence around eBay in response to a shooting at of employees at YouTube the previous year. *See* Finkelstein Ex. 81, Zea Dep. Tr. at 39:6–15 ("[Mr. Baugh] got this fence built, and he used – there was the situation of a shooter at the YouTube campus that he had us build a presentation about and focus on, saying we were at risk of that."); Finkelstein Ex. 15, EBAY STEINER 00002647 at EBAY STEINER 00002640 ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████

███████████████ *See* Lowell Ex. 81, eBay 30(b)(6) Dep. Ex. 16 at 7; Finkelstein Ex. 30, eBay 30(b)(6) Dep. Tr. 200:1-201:16 ███████████████

████ ; Lowell Ex. 63, eBay 30(b)(6) Dep. Ex. 11 at 33 ████████████████

███████████████ .

34. In the immediate aftermath of the vandalism, the ELT was pleased, because they perceived that negative postings from EcommerceBytes had subsided. Baugh Sentencing Memo at p. 13. Finkelstein Ex. 5.

> **Mr. Wenig's Response:** Disputed.[10] Mr. Wenig objects to reliance on Finkelstein Ex. 5, Baugh Sentencing Memo because it cannot be presented in a form that would be admissible as to Mr. Wenig. To the extent that "the ELT" is intended to refer to Mr. Wenig, Mr. Wenig disputes that allegation. Without relying on an exhibit that is inadmissible, there is no support in the record for the allegation in Paragraph 34.

35. On or about June 25, 2019, discussing Ms. Steiner, Wymer messaged two eBay communications employees, stating "Love it when a secret, we can't speak it out loud plan comes together..." and "[w]e always reserve the right to go 0-60 and get crazy on her ass." DPA ¶ 34. Finkelstein Ex. 1.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Without relying on an exhibit that is inadmissible, there is no support in the record for the allegations in Paragraph 35.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 35 and Paragraph 35 is immaterial to Mr. Wenig's Motion.

36. On or about July 18, 2019, Executive 1's spouse texted BAUGH privately about a comment underneath a Newsletter article that called Executive 1 a "con artist and thief." The spouse wrote: "I'm not exactly thrilled with this post on my favorite [Newsletter]. The author gets people worked

---

[10] Plaintiffs chose not to take the deposition of Mr. Wenig. *See* Wenig's Summary Judgment Motion at ___; Reply at ___.

up with the way she skews her stories. Don't tell [Executive 1] I sent this I'm just letting you know about it. Ok?"" FBI Mark Wilson Affidavit (June 2020) ¶ 31. Finkelstein Ex. 8.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the reliance on Finkelstein Ex. 8, FBI Mark Wilson Affidavit (June 2020) ¶ 31 because it cannot be presented in a form that would be admissible as to Mr. Wenig. Without relying on an exhibit that is inadmissible, there is no support in the record for Paragraph 36.
>
> To the contrary, Mr. Wenig's spouse did not send the above-quoted text message to Mr. Baugh. ██████████████████████████████████ ████████████████████████. *See* Lowell Ex. 82, WENIG_0000694; Finkelstein Ex. 79, Daniel Cory Dep. Tr. 27:8–23. Nonetheless, Mr. Wenig disputes the materiality of such a fact.

37. On July 19, 2019, Baugh met with Jones and played a recorded call between a security team member using a false identity and a subject associated with FidoMaster. Baugh Sentencing Memo at p. 14. Finkelstein Ex. 5.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to reliance on Finkelstein Ex. 5, Baugh Sentencing Memo because it cannot be presented in a form that would be admissible as to Mr. Wenig. Without relying on an exhibit that is inadmissible, there is no support in the record for Paragraph 37.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 37 and Paragraph 37 is immaterial to Mr. Wenig's Motion.

38. Jones fist-bumped Mr. Baugh in approval. *Id*.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to reliance on Finkelstein Ex. 5, Baugh Sentencing Memo because it cannot be presented in a form that would be admissible as to Mr. Wenig. Without relying on an exhibit that is inadmissible, there is no support in the record for Paragraph 38.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 38 and Paragraph 38 is immaterial to Mr. Wenig's Motion.

39. On August 1, 2019, Ms. Steiner posted an article on EcommerceBytes about legal disputes between eBay and Amazon.com and eBay's declining market sales. DPA ¶ 36. Finkelstein Ex. 1.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Ms. Steiner posted the above-described article on August 1, 2019. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless,

16

Paragraph 39 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

40. That day, Wenig texted Wymer that: "Ina is out with a hot piece on the litigation. If we are ever going to take her down . . . now is the time." DPA ¶ 37. Finkelstein Ex. 1.; Wymer Answer ¶ 82. Finkelstein Ex. 3.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Mr. Wenig sent Mr. Wymer the above-quoted text message. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 40 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

41. Wymer responded: "On it." DPA ¶ 38. Finkelstein Ex. 1.; Wymer Answer ¶ 82. Finkelstein Ex. 3.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Mr. Wymer sent Mr. Wenig the above-quoted text message. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 41 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

42. Wymer then texted Baugh, passing along Wenig's suggestion that "we . . . take her down." DPA ¶ 39. Finkelstein Ex. 1.

> **Mr. Wenig's Response:** Disputed in part for the purposes of Mr. Wenig's Motion. Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that is admissible to Mr. Wenig. Mr. Wenig disputes the allegation, which is not supported by any evidence, that Mr. Wymer was "passing along Wenig's suggestion" to Mr. Baugh.
>
> Further, ███████████████████████████████████████ ████████████████████ Lowell Ex. 55, eBay 30(b)(6) Dep. Ex. 12 at p. 9. Mr. Wenig has no personal knowledge of the truth or veracity of the allegations contained in Paragraph 42.
>
> However, it is undisputed for the purposes of Mr. Wenig's Motion that Mr. Wymer sent Mr. Baugh the above-described text message, as this is supported by other admissible evidence in the record.

43. That same day, Baugh and Wymer exchanged further text messages regarding Ms. Steiner.

DPA ¶ 39. Finkelstein Ex. 1.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Mr. Baugh and Mr. Wymer exchanged further text messages regarding Ms. Steiner on August 1, 2019. Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 43 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 43 and Paragraph 43 is immaterial to Mr. Wenig's Motion.

44. Wymer said that "hatred is a sin. I am very sinful" and that "I want her done" (referring to Ms.

Steiner). DPA ¶ 39. Finkelstein Ex. 1.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Mr. Wymer sent Mr. Baugh text messages containing the above-quoted language. Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 44 is undisputed for the purposes of Mr. Wenig's Motion as it is supported by other admissible evidence in the record.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 44 and Paragraph 44 is immaterial to Mr. Wenig's Motion.

45. Baugh stated that Wenig had told him "to burn her to the ground correct," to which Wymer

responded, "she is a biased troll who needs to get BURNED DOWN. DPA ¶ 39. Finkelstein Ex.

1.; Wymer Answer ¶ 85. (emphasis in the original). Finkelstein Ex. 3.

> **Mr. Wenig's Response:** Disputed in part for the purposes of Mr. Wenig's Motion. Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that is admissible to Mr. Wenig. Mr. Wenig disputes the allegation, which is not supported by the cited evidence, that "Baugh stated that Wenig had told him to 'burn her to the ground correct[.]'" (emphasis added). ██████████████████████████████████████ *See* Finkelstein Ex. 103, WYMER 00000204.
>
> However, it is undisputed for the purposes of Mr. Wenig's Motion that Mr. Wymer sent Mr. Baugh a text message containing the phrase "she is a biased troll who needs to get BURNED DOWN" in response to Mr. Baugh's question "DW said to burn her to the ground correct?" as it is supported by other admissible evidence in the record. However,

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 45 and Paragraph 45 is immaterial to Mr. Wenig's Motion.

46. ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

DPA ¶ 40. Finkelstein Ex. 1.; ████████████████████████████████████████

█████████████ Wymer Answer ¶ 4. Finkelstein Ex. 3.

> **Mr. Wenig's Response:** Disputed in part for the purposes of Mr. Wenig's Motion. Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA and Finkelstein Ex. 9, August 28, 2019 Wymer Interview because they cannot be presented in a form that would be admissible as to Mr. Wenig. ████████████████████████████
> ████████████

> However, it is not disputed for the purposes of Mr. Wenig's Motion that the text conversation quoted in Paragraph 46 occurred, as it is supported by other admissible evidence in the record.

> However, Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 46 and Paragraph 46 is immaterial to Mr. Wenig's Motion.

47. On August 7, 2019, Baugh asked Wymer by message, "If I can neutralize Ina's website in two weeks or less, does that work for you?" Within minutes, Wymer responded, "I want to see ashes. As long as it takes. Whatever it takes." EBAY_STEINER_00206665. Finkelstein Ex. 10.; DPA ¶ 46. Finkelstein Ex. 1.; Wymer Answer ¶¶ 4, 126. Finkelstein Ex. 3.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Mr. Wymer and Mr. Baugh exchanged text messages containing the language quoted in Paragraph 47. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 10, EBAY_STEINER_00206665 and Finkelstein Ex. 1, DPA because they cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 47 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 47 and Paragraph 47 is immaterial to Mr. Wenig's Motion.

48. On August 6, 2019, Baugh, Gilbert, Cooke, and Popp met at eBay headquarters to plan part of its operation against Plaintiffs. DPA ¶ 52. Finkelstein Ex. 1.

**Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Without relying on an inadmissible exhibit, there is no support in the record for Paragraph 48.

However, Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 48 and Paragraph 48 is immaterial to Mr. Wenig's Motion.

49. That same day, Baugh, Popp, Stockwell, Zea, and others met at eBay headquarters to plan the delivery to the Steiners' home of unwanted and disturbing items to distract the Steiners from publishing EcommerceBytes. *Id*.

**Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Without relying on an inadmissible exhibit, there is no support in the record for Paragraph 49.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 49 and Paragraph 49 is immaterial to Mr. Wenig's Motion.

50. Popp created a Twitter account through which she would harass and threaten Ms. Steiner. *Id*.

**Mr. Wenig's Response:**  Undisputed for the purposes of Mr. Wenig's Motion that Ms. Popp created a Twitter account through which she would harass and threaten Ms. Steiner. Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 50 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 50 and Paragraph 50 is immaterial to Mr. Wenig's Motion.

51. On, or shortly after, August 7, 2019, Wymer met with Baugh. Baugh Sentencing Memo at p. 19. Finkelstein Ex. 5.

**Mr. Wenig's Response:** Disputed. Mr. Wenig objects to reliance on Finkelstein Ex. 5, Baugh Sentencing Memo because it cannot be presented in a form that would be admissible as to Mr. Wenig. Without relying on an exhibit that is inadmissible, there is no support in the record for Paragraph 51.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 51 and Paragraph 51 is immaterial to Mr. Wenig's Motion.

52. Wymer instructed Baugh to "take any actions necessary" to neutralize the Steiners and identify FidoMaster, making clear that this was a "[d]irect order" from Wenig and that Wenig "wants the website burned to the ground." *Id*.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to reliance on Finkelstein Ex. 5, Baugh Sentencing Memo because it cannot be presented in a form that would be admissible as to Mr. Wenig. There is no evidence in the record that Mr. Wenig gave any such "[d]irect order" or "want[ed] the website burned to the ground." Without relying on an exhibit that is inadmissible, there is no support in the record for Paragraph 52.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 52 and Paragraph 52 is immaterial to Mr. Wenig's Motion.

53. Wymer did not want to know details, but assured Baugh that his group would have "executive level support" if efforts led to "any legal problems." *Id*. "The only thing that matters is that it stops." *Id*.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to reliance on Finkelstein Ex. 5, Baugh Sentencing Memo because it cannot be presented in a form that would be admissible as to Mr. Wenig. Without relying on an exhibit that is inadmissible, there is no support in the record for Paragraph 53.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 53 and Paragraph 53 is immaterial to Mr. Wenig's Motion.

54. eBay does not dispute and takes legal responsibility for the fact that: Beginning on or about August 5, 2019 and continuing through at least September 6, 2019, Baugh, Harville, Gilbert, Cooke, Popp, Stockwell, and Zea (together "the Individual Defendants") worked together to harass and intimidate the Steiners, and to place them under surveillance with the intent to harass and intimidate them, through repeated and hostile Twitter messages, deliveries of unwanted -- and in some instances disturbing -- items to the Steiners' home, and travel to Massachusetts to conduct physical surveillance. The Individual Defendants' conduct caused, attempted to cause, and would reasonably have been expected to cause substantial emotional distress to the Steiners. DPA ¶ 48. Finkelstein Ex. 1.

**Mr. Wenig's Response:**  Undisputed for the purposes of Mr. Wenig's Motion that "eBay does not dispute and takes legal responsibility" for the events described in Paragraph 54. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 54 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other evidence in the record.  *See* Finkelstein Ex. 30, eBay 30(b)(6) Dep. Tr. at 78:8–79:1.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 54 and Paragraph 54 is immaterial to Mr. Wenig's Motion.

55. eBay admits and takes legal responsibility for these actions, which included, but were not limited to:

- Sending DMs to Ms. Steiner stating: "WTF . . . whats it goin to take for u to answer me??"; " I guess im goin to have to get ur attention another way bitch . . ."; "U dont have the balls to talk to me?? Stop hiding behind ur computer screen u fuckin cunt!!!"; "Ur fat fuck pussy husband [Mr. Steiner] needs to put u in line cunt"; and "after [Mr. Steiner] takes the plugs out of his asshole . . . fuckin pussies!!!";

- Ordering live spiders, fly larvae, live cockroaches, and a Halloween Pig for delivery to the Steiners' home;

- Ordering subscriptions for pornographic magazines in the name of Mr. Steiner to be sent to the Steiners' neighbors;

- Attempting to order a pig fetus for delivery to the Steiners' home;

- Sending a funeral wreath and a book entitled "Grief Diaries: Surviving Loss of a Spouse" to the Steiners' home;

- Renting vans to surveil the Steiners and drove past their home repeatedly;

- Following Mr. Steiner as he drove around Natick;

- Ordered pizza to be delivered to the Steiners' home at 4:30 a.m.; and

22

- Sending a public tweet on Ms. Steiner's Twitter account, stating, "Dis ur address???" and including information about Ms. Steiner, such as her name, age, address, and telephone number. DPA ¶ 52. Finkelstein Ex. 1.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that "eBay admits and takes legal responsibility" for the events described in Paragraph 55. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 55 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other evidence in the record. *See* Finkelstein Ex. 30, eBay 30(b)(6) Dep. Tr. at 78:8–79:1.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 54 and Paragraph 55 is immaterial to Mr. Wenig's Motion.

56. eBay's workplace was rife with misconduct, violent tendencies, and drunkenness. This includes violent and belligerent behavior towards co-workers (sometimes in full view of other eBay employees, including in eBay's parking lots). *See* Olausson letter. Finkelstein Ex. 11.; Olausson deposition. Finkelstein Ex. 12.; Baugh Sentencing Memo. Finkelstein Ex. 5.; Cooke Sentencing Memo. Finkelstein Ex. 4.; Zea Sentencing Letter. Finkelstein Ex. 13.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the reliance on Finkelstein Ex. 11, Olausson letter; Finkelstein Ex. 5, Baugh Sentence Memo; Finkelstein Exhibit 4, Cooke Sentencing Memo; and Finkelstein Ex. 13, Zea Sentencing Letter because they cannot be presented in a form that would be admissible as to Mr. Wenig. Finkelstein Ex. 12, Olausson deposition (which is 111 pages and does not include a page reference as required by Local Rule 56.1) does not support the allegation contained in Paragraph 56. Accordingly, there is no admissible evidence in the record to support the allegations contained in Paragraph 56. Mr. Wenig objects to allegations in Paragraph 56 as vague and ambiguous generalizations.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 56.

57. Baugh created a fear-driven and punitive environment where minor errors became cause for humiliation and punishment. Olausson letter. Finkelstein Ex. 11.; Zea Sentencing Letter at 5, 22. Finkelstein Ex. 13.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to reliance on Finkelstein Ex. 11, Olausson letter; Finkelstein Ex. 13, Zea Sentencing letter they cannot be

presented in a form that would be admissible as to Mr. Wenig. Without relying on exhibits that are inadmissible, there is no support in the record for Paragraph 57. Further, Mr. Wenig objects to the terms "fear-driven," "punitive," "humiliation," and "punishment" as vague and ambiguous.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 57 and Paragraph 57 is immaterial to Mr. Wenig's Motion.

58. Baugh conducted active shooter drills, forcing analysts to run outside into the parking lot and practice running from the "shooter" in front of other eBay employees; leadership would pretend to shoot GIC analysts in the middle of eBay's campus for all staff to watch. Olausson letter. Finkelstein Ex. 11.; Zea Sentencing Letter. Finkelstein Ex. 13.

> **Mr. Wenig's Response:**  Disputed in part for the purposes of Mr. Wenig's Motion. Mr. Wenig objects to the reliance on Finkelstein Exhibit 11, Olausson letter and Finkelstein Ex. 13, Zea Sentencing Letter as they cannot be presented in an admissible form as to Mr. Wenig. To the extent that Plaintiffs are alleging that "leadership" in this Paragraph refers to the Executive Leadership Team ("ELT"), Mr. Wenig disputes the allegation. Ms. Olausson testified that "Leadership" specifically referred to Jim Baugh, Dave Harville, and Stephanie Popp. *See* Finkelstein Ex. 12, Olausson Dep. Tr. at 44:14–21. Mr. Wenig further objects to the term "all staff" as vague and unsupported.
>
> However, it is undisputed for the purposes of Mr. Wenig's Motion that Mr. Baugh conducted active shooter drills as described in Paragraph 58, as this is supported by other admissible evidence in the record.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 58 and Paragraph 58 is immaterial to Mr. Wenig's Motion.

59. Some of Baugh's [sic] initiated shooting drills forced analysts to take "cover" in someone's car, when Baugh would then slam his hand down on the roof of the car while yelling, "Bang! You're dead! You're dead! Bang! You're all dead!." Zea Sentencing Letter. Finkelstein Ex. 13.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Mr. Baugh would conduct active shooter drills as described in Paragraph 59. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 13, Zea Sentencing Letter as it cannot be presented in an admissible form as to Mr. Wenig. Nevertheless, Paragraph 59 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 59 and Paragraph 59 is immaterial to Mr. Wenig's Motion.

60. Baugh conducted earthquake drills where leadership would blast airhorns in the ears of GIC analysts while timing their response to write an email with no grammatical errors. Olausson letter. Finkelstein Ex. 11.

> **Mr. Wenig's Response:** Disputed in part for the purposes of Mr. Wenig's Motion. Mr. Wenig objects to the reliance on Finkelstein Ex. 11, Olausson letter because it cannot be presented in a form that would be admissible as to Mr. Wenig. To the extent that Plaintiffs are alleging that "leadership" in this Paragraph refers to the Executive Leadership Team ("ELT"), Mr. Wenig disputes the allegation. Ms. Olausson testified that "Leadership" specifically referred to Jim Baugh, Dave Harville, and Stephanie Popp. *See* Finkelstein Ex. 12, Olausson Dep. Tr. at 44:14–21.
>
> However, Paragraph 60 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record. *See* Finkelstein Ex. 12, Olausson Dep. Tr. at 46:11–23.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 60 and Paragraph 60 is immaterial to Mr. Wenig's Motion.

61. Baugh showed a video of Zea falling of [sic] a chair to co-workers to humiliate her, and Baugh specifically showed the video to Wenig. Zea Sentencing Letter at 22. Finkelstein Ex. 13.

> **Mr. Wenig's Response:** Disputed.[11] Mr. Wenig objects to the reliance on Finkelstein Ex. 13, Zea Sentencing Letter because it cannot be presented in a form that would be admissible as to Mr. Wenig. Without relying on an exhibit that is inadmissible, there is no support in the record for Paragraph 61. Regardless, the allegation contained in Paragraph 61 is immaterial to Mr. Wenig's Motion.

62. Baugh sexually assaulted Stockwell. Stockwell deposition. Finkelstein Ex. 14.

> **Mr. Wenig's Response:** Undisputed that Ms. Stockwell testified that she had she been sexually assaulted by Mr. Baugh. Nonetheless, Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 62 and Paragraph 62 is immaterial to Mr. Wenig's Motion.

63. ███████████████████████████████████████████████

███████████████████████████████████████████████

---

[11] Plaintiffs chose not to take the deposition of Mr. Wenig or any other member of the Executive Leadership Team. *See* Wenig's Summary Judgment Opening Brief at 8; Reply at 2, 9–10, 12.

███████████████████████████████████████████████

████████████ EBAY_STEINER_00002647. Finkelstein Ex. 15.

> **Mr. Wenig's Response:** Disputed in part for the purposes of Mr. Wenig's Motion. Mr. Wenig objects to the vague and ambiguous characterization of the comments as "disturbing," and taken out of context.
>
> However, Mr. Wenig does not dispute that Ms. Jones included the above-quoted language in Mr. Baugh's 2018 performance review.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 63 and Paragraph 63 is immaterial to Mr. Wenig's Motion.

64. ████████████████████████████████████████████████████.

EBAY_STEINER_00002537. Finkelstein Ex. 16.; EBAY_STEINER_00002642. Finkelstein Ex.

17.

> **Mr. Wenig's Response:** Disputed. Paragraph 64 mischaracterizes the cited evidence, which does not support the proposition in Paragraph 64. *See* Finkelstein Ex. 16, EBAY_STEINER_00002537 at p.1 ("Manager Overall Evaluation"); Finkelstein Ex. 17, EBAY_STEINER_00002642 at p.1 (same).
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 64 and Paragraph 64 is immaterial to Mr. Wenig's Motion.

65. ██ ██ ██ ████ ██ ██ ██ ██ ██ ████ ██ ████.

EBAY_STEINER_00206575. Finkelstein Ex. 21.; Jones' 56.1 Exhibit 7 (Jones Declaration) #8.

Finkelstein Ex. 19.

> **Mr. Wenig's Response:** █████████████████████████
> ████████████████████████████████████ However, Mr. Wenig objects to the reliance on Finkelstein Ex. 21, EBAY_STEINER_00206575 because it cannot be put in an admissible form as to Mr. Wenig. Nevertheless, Paragraph 65 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.
>
> Mr. Wenig has not recollection of the specific dates of Ms. Jones' sabbatical and Paragraph 65 is immaterial to Mr. Wenig's Motion.

66. No one was supervising Baugh while Jones was on sabbatical from July 25, 2019 to August

26, 2019. Transcript of Deposition of Carmen (Orr) Amara, 9/25/24. Finkelstein Ex. 20.

**Mr. Wenig's Response:** Disputed. The source cited (which does not include a page reference as required by Local Rule 56.1) does not support Paragraph 66. Ms. Amara was asked during her deposition, "[w]as somebody supervising Mr. Baugh during the period of time that Wendy Jones went on sabbatical?" and Ms. Amara responded, "I don't recall the specifics." Finkelstein Ex. 20, Amara Dep. Tr. at 49:10–13.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 66 and Paragraph 66 is immaterial to Mr. Wenig's Motion.

67. ███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ EBAY_STEINER_00206575. Finkelstein Ex. 18.

**Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the reliance on Finkelstein Ex. 18, EBAY_STEINER_00206575 because it cannot be presented in a form that is admissible as to Mr. Wenig. Without reliance on an exhibit that is inadmissible, there is no support in the record for the allegation in Paragraph 67.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 67 and Paragraph 67 is immaterial to Mr. Wenig's Motion.

68. ████ ████ ███ ████ ███ █ █ ████ ████ ███ ████.

████████████████████. Finkelstein Ex. 18.

**Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the reliance on Finkelstein Ex. 18, EBAY_STEINER_00206575 because it cannot be presented in a form that is admissible as to Mr. Wenig. Mr. Wenig objects to the term "easily" as an argumentative characterization. Without reliance on an exhibit that is inadmissible, there is no support in the record for Paragraph 68.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 68 and Paragraph 68 is immaterial to Mr. Wenig's Motion.

69. ███████████████████████████████████████████████████.

Finkelstein Ex. 18.

**Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion. Mr. Wenig objects to the reliance on Finkelstein Ex. 18, EBAY_STEINER_00206575 because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 69 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

27

Mr. Wenig has no personal knowledge of how frequently the two spoke and Paragraph 69 is immaterial to Mr. Wenig's Motion.

70. ███████████████████████████████████████████████████████████

████████    Finkelstein Ex. 22.

**Mr. Wenig's Response:** Disputed.[12] Mr. Wenig objects to the reliance on Finkelstein Ex. 59, Wenig Interview Memo because it cannot be presented in an admissible form as to Mr. Wenig. Without relying on an exhibit that is inadmissible, there is no support for the proposition in Paragraph 33.

Further, ████████████████████████████████████████████████ ████████████████████████████ he allegation contained in Paragraph 33 also omits key context, ████████████████████████████████████████████████████ ██████████████████████ See Finkelstein Ex. 59, EBAY STEINER 00203661 at EBAY STEINER 00203661 ████████████████████████████████████████ ████████████████████████████████████████ (emphasis added)." Evidence in the record shows that Mr. Baugh had recently built a fence around eBay in response to a shooting of employees at YouTube the previous year. *See* Finkelstein Ex. 81, Zea Dep. Tr. at 39:6–15 ("[Mr. Baugh] got this fence built, and he used – there was the situation of a shooter at the YouTube campus that he had us build a presentation about and focus on, saying we were at risk of that."); Finkelstein Ex. 15, EBAY STEINER 00002647 at EBAY STEINER 00002640 ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████ *See* Lowell Ex. 81, eBay 30(b)(6) Dep. Ex. 16 at 7; Finkelstein Ex. 30, eBay 30(b)(6) Dep. Tr. 200:1-201:16 ██████████████████████ ██████████████████████ ; Lowell Ex. 63, eBay 30(b)(6) Dep. Ex. 11 at 33 ██████████████████████████████████████████████████ ██████████████████████████████████

---

[12] Plaintiffs chose not to take the deposition of Mr. Wenig. *See* Wenig's Summary Judgment Opening Brief at 8; Reply at 2, 9–10, 12.

71. ███████████████████████████████████████. Finkelstein Ex.

23.; EBAY_STEINER_00005456. Finkelstein Ex. 24.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the reliance on Finkelstein Ex. 23, EBAY_STEINER_00206593 and Finkelstein Ex. 24, EBAY_STEINER_00005456 because they cannot be presented in a form that would be admissible as to Mr. Wenig. Additionally, neither source cited supports the allegation in Paragraph 71. There are no emails in the record between Mr. Wenig and Mr. Baugh about the Steiners.

72. ████████████████████████████████████████████████████

███ EBAY_STEINER 00003312-13. Finkelstein Ex. 25. Finkelstein Ex. 26.

> **Mr. Wenig's Response:** Disputed.[13] █████████████████████████
> ███████████████████████████████████████
> ███████ and further objects to the reliance on Finkelstein Exs. 25–26, EBAY_STEINER 00003312-13 because it cannot be presented in a form that would be admissible as to Mr. Wenig. Accordingly, there is no admissible evidence in the record for the allegation contained in Paragraph 72.

73. Baugh told his team, with respect to eBay's internal investigation, to keep Wenig and Wymer's names out of any conversations. EBAY_STEINER_00162001 Paragraph 181. Finkelstein Ex. 27.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to reliance on Finkelstein Ex. 27 Paragraph 181, EBAY_STEINER_00162001 because it cannot be presented in a form that would be admissible as to Mr. Wenig. Without relying on inadmissible evidence, there is no support in the record for Paragraph 73.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 73 and Paragraph 73 is immaterial to Mr. Wenig's Motion.

74. Baugh told his team that Wenig told him "his loyalty would pay off." Zea letter at 22. Finkelstein Ex. 13.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the reliance on Finkelstein Ex. 13, Zea Sentencing Letter because it cannot be presented in a form that is admissible as to Mr. Wenig. Additionally, the cited source does not support the proposition contained in Paragraph 74. Rather, it states that Baugh "showed the group texts from the eBay CEO saying that he was sorry to see Baugh go and *Baugh*

---

[13] Plaintiffs chose not to take the deposition of Mr. Wenig. *See* Wenig's Summary Judgment Opening Brief at 8; Reply at 2, 9–10, 12.

*said* his loyalty would pay off." Finkelstein Ex. 13, Zea Sentencing Letter at 22 (emphasis added).

Mr. Wenig has no personal knowledge of the allegation contained in Paragraph 74.

75. ████████████████████████████████████████████████████

████    ████████████████████████    Finkelstein  Ex.  23;  ██████████████████

Finkelstein Ex. 24.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the reliance on Finkelstein Ex. 23, EBAY_STEINER_00206593 and Finkelstein Ex. 24, EBAY_STEINER_00005456 because they cannot be presented in a form that would be admissible as to Mr. Wenig. ███████████████████████████████ ████████████████████████████████████ o the contrary, Mr. Baugh admitted that he was the sole architect of the Natick Events, stating that he "was one hundred percent responsible" for the harassment campaign." Tr. of Sentencing Hearing, *U.S. v. Baugh et al.*, No. 20-cr-10263-PBS (D. Mass. Sept. 29, 2022), ECF 239 at p. 37. Without reliance on inadmissible evidence, there is no support in the record for Paragraph 75.

76. The Steiners were terrified to leave their house and defendants tailed Mr. Steiner and followed him throughout town he left their home. Steiner Response to Interrogatory No. 1 and 25. Finkelstein Ex. 28.

> **Mr. Wenig's Response:** Disputed in part for the purposes of Mr. Wenig's Motion. To the extent that "defendants" is intended to refer to Mr. Wenig, Mr. Wenig disputes that he engaged in any of the conduct alleged in Paragraph 76, and there is no evidence in the record to support such an allegation.
>
> However, it is undisputed for the purposes of Mr. Wenig's Motion that the Steiners asserted that they were "terrified to leave their house" and that Mr. Baugh, Mr. Harville, Mr. Gilbert, Mr. Cooke, Ms. Popp, Ms. Stockwell, and/or Ms, Zea "tailed Mr. Steiner and followed him throughout town when he left their home," as these facts are supported by admissible evidence in the record.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 76 and Paragraph 76 is immaterial to Mr. Wenig's Motion.

77. Any trips Mr. Steiner or the Steiners took away from the home were taken out of necessity. Steiner Response to Interrogatory No. 25. *Id.*

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the characterization that trips taken by the Steiners were "out of necessity" as ambiguous and argumentative.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 77 and Paragraph 77 immaterial to Mr. Wenig's Motion.

78. The Steiners took these necessary trips to: purchase security equipment; acquire protection for themselves and their property; purchase food when the Steiners ran out; and go to the police station. *Id.*

> **Mr. Wenig's Response:** Disputed in part for the purposes of Mr. Wenig's Motion. Mr. Wenig disputes the characterization of the trips as "necessary" as subjective and unsupported.
>
> However, it is undisputed for the purposes of Mr. Wenig's Motion that the Steiners left their home to "purchase security equipment; acquire protection for themselves and their property; purchase food when the Steiners ran out; and go to the police station."
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 78 and Paragraph 78 immaterial to Mr. Wenig's Motion.

79. The Steiners did not leave their home to celebrate their 31st Wedding anniversary. Steiner Response to Interrogatory No. 25. *Id.*; Cooke Sentencing Hearing Transcript 07/27 21.pdf page 34, line 21 - page 35, line 8. Finkelstein Ex. 29.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that the Steiners have asserted that they did not leave their home to celebrate their 31st Wedding anniversary. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 29, Cooke Sentencing Hearing Transcript because it cannot be presented in a form that would be admissible as to Mr. Wenig. Nevertheless, Paragraph 79 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 79 and Paragraph 79 immaterial to Mr. Wenig's Motion.

80. Further, Baugh and Harville approached the Steiners' home and attempted to install a GPS on the Steiners' vehicle. Zea sentencing letter at 17-18. Finkelstein Ex. 13.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the reliance on Finkelstein Ex. 13, Zea Sentencing Letter because it cannot be presented in a form that would be admissible as to Mr. Wenig. Without relying on an exhibit that is inadmissible, there is no support in the record for Paragraph 80.

31

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 80 and Paragraph 80 immaterial to Mr. Wenig's Motion.

81. After eBay learned of the actions taken by defendants to criminally harass the Steiners, eBay allowed Wenig to resign with a generous severance package and without any suggestion that he acted improperly. DPA ¶ 4(e). Finkelstein Ex. 1.; eBay 30(b)(6) deposition (Apte) page 74. Finkelstein Ex. 30.

> **Mr. Wenig's Response:** Disputed in part for the purposes of Mr. Wenig's Motion. Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that would be admissible as to Mr. Wenig. To the extent that "defendants" is intended to refer to Mr. Wenig, Mr. Wenig disputes that he engaged in any criminal harassment and there is no evidence in the record to support such an allegation. Mr. Wenig disputes the argumentative characterization that "eBay allowed Wenig to resign." Mr. Wenig's separation was a mutual decision between eBay and Mr. Wenig, and the terms of such separation are accurately described in eBay's SEC filings. *See* Lowell Ex. 83, eBay 30(b)(6) Dep. Ex. 14 at 5–14.
>
> However, it is undisputed for the purposes of Mr. Wenig's Motion that Mr. Wenig mutually separated from eBay on September 24, 2019 and that there was no suggestion that he acted improperly.

82.  Finkelstein Ex. 31. ██████████ Finkelstein Ex. 32.

> **Mr. Wenig's Response:** Disputed in part for the purposes of Mr. Wenig's Motion. ███████████████████████████████████████████ However, Paragraph 82 is immaterial to Mr. Wenig's Motion.

83. eBay retained and promoted Cooke to Director of Security Operations. Cooke Sentencing Memo at p. 5. Finkelstein Ex. 29.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that eBay retained and promoted Mr. Cooke to Director of Security Operations. However, Mr. Wenig objects to the reliance on the Cooke Sentencing Memo, which is Finkelstein Ex. 4 (not Finkelstein Ex. 29) because it cannot be presented in a form that is admissible as to Mr. Wenig. Nevertheless, Paragraph 83 is undisputed

for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 83 and Paragraph 83 is immaterial to Mr. Wenig's Motion

84. eBay re-hired Michelle Alford, who participated in some harassment planning. Zea Sentencing Letter. Finkelstein Ex. 13.

**Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that eBay re-hired Michelle Alford. However, Mr. Wenig objects to the reliance on the Zea Sentencing Letter, Finkelstein Ex. 13 because it cannot be presented in a form that is admissible as to Mr. Wenig. Nevertheless, Paragraph 84 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 84 and Paragraph 84 is immaterial to Mr. Wenig's Motion.

85. eBay retained Meagan Barret and fired her in 2020 citing her involvement. EBAY_STEINER_00215846. Finkelstein Ex. 13.

**Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that eBay retained Ms. Barret and fired her in 2020 citing her involvement. However, Mr. Wenig objects to the reliance on the Zea Sentencing Letter, Finkelstein Ex. 13 because it cannot be presented in a form that is admissible as to Mr. Wenig. Nevertheless, Paragraph 85 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 85 and Paragraph 85 is immaterial to Mr. Wenig's Motion.

86.

. Finkelstein Ex. 33.;                    Finkelstein Ex. 34.;

. Finkelstein Ex. 35.

**Mr. Wenig's Response:** Disputed.[14]

*See* Finkelstein Ex. 33, EBAY-STEINER_00005468 at EBAY-

---

[14] Plaintiffs chose not to take the deposition of Mr. Wenig. *See* Wenig's Summary Judgment Opening Brief at 8; Reply at 2, 9–10, 12.

STEINER_5500. ███████████████████████████████████
████████████████████████████

Neither Finkelstein Ex. 34 nor Finkelstein Ex. 35 ██████████████████
███████████████████████

87. ████████████████████████████████████████████████████████. DPA

¶ 37, 46. Finkelstein Ex. 1.; Wymer Answer ¶ 82, 85. Finkelstein Ex. 3.;

EBAY_STEINER_00005456. Finkelstein Ex. 24.; Baugh Sentencing Memo at p. 19. Finkelstein

Ex. 5.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the reliance on Finkelstein
> Ex. 5, Baugh Sentencing Memo, Finkelstein Ex. 24, EBAY_STEINER_00005456,
> and Finkelstein Ex. 1, DPA because they cannot be presented in a form that is
> admissible as to Mr. Wenig. ███████████████████████████████████
> ████████████████ Finally, Paragraph 84 is an improper legal conclusion and
> not a factual proposition.

88. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Finkelstein Ex. 2.; ██████████████████ Finkelstein Ex. 38.; DPA ¶ 20. Finkelstein Ex. 1.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the reliance on
> Finkelstein Ex. 2, EBAY_STEINER_00206553 and Finkelstein Ex. 1, DPA—
> neither of which contain the allegation or quoted language in Paragraph 88—
> because they cannot be presented in a form that would be admissible as to Mr.
> Wenig. Finkelstein Ex. 38, WYMER00000423 also does not contain the allegation
> or the quoted language above. Without relying on inadmissible evidence and
> mischaracterizations, there is no support in the record for Paragraph 88.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 88 and
> Paragraph 88 is immaterial to Mr. Wenig's Motion.

89. Defamatory Craigslist advertisements were publicly accessible on a message board system

used by millions of people. DPA ¶ 52. Finkelstein Ex. 1.

> **Mr. Wenig's Response:** Disputed in part for the purposes of Mr. Wenig's Motion.
> Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be
> presented in a form that would be admissible as to Mr. Wenig. Mr. Wenig objects

to the characterization of the advertisements as "[d]efamatory" as an improper legal conclusion and not a factual proposition.

Nevertheless, it is not disputed for the purposes of Mr. Wenig's Motion that Mr. Baugh, Mr. Harville, Mr. Gilbert, Mr. Cooke, Ms. Popp, Ms. Stockwell, and/or Ms, Zea posted advertisements on Craigslist, as this is supported by other admissible evidence in the record.

Mr. Wenig has no personal knowledge of advertisements alleged in Paragraph 89 and such allegations are immaterial to Mr. Wenig's Motion.

90. Video taken from the Steiners' security cameras at their home show an unusually large number of persons walking in front of their house at all hours of the day and night during the period at issue. PPROD-028300. Finkelstein Ex. 39.

> **Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the reliance on Finkelstein Ex. 39, PPROD-028300 because it cannot be presented in a form that would be admissible as to Mr. Wenig. Without relying on inadmissible evidence, there is no support in the record for the allegation contained in Paragraph 90. Mr. Wenig objects to the phrases "unusually large number of persons," "at all hours of the day," and "the period at issue" as vague and ambiguous.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 90 and such Paragraph 90 is immaterial to Mr. Wenig's Motion.

91. The Craigslist advertisements identify a married couple living at the Steiners' address making it obvious that the advertisements are of and concerning the Steiners. DPA ¶ 52. Finkelstein Ex. 1.

> **Mr. Wenig's Response:**  Disputed in part for the purposes of Mr. Wenig's Motion. Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in an admissible form as to Mr. Wenig. Mr. Wenig disputes the unsupported characterization that it was "obvious" to those who viewed the advertisements that they were "of and concerning the Steiners," as this is an improper legal conclusion and not a factual proposition.
>
> Nevertheless, it is undisputed for the purposes of Mr. Wenig's Motion that Mr. Baugh, Mr. Harville, Mr. Gilbert, Mr. Cooke, Ms. Popp, Ms. Stockwell, and/or Ms, Zea posted advertisements on Craigslist, as this is supported by other admissible evidence in the record.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 91 and Paragraph 92 is immaterial to Mr. Wenig's Motion.

35

92. The Steiners have, in fact been damaged by these defamatory advertisements. In the same way, the Steiners were damaged when the defendants sent pornographic materials to the Steiners' neighbors. Galinsky Report. Finkelstein Ex. 40.

> **Mr. Wenig's Response:** Disputed. Paragraph 92 is an improper legal conclusion and not a factual proposition. Mr. Wenig objects to the reliance on Finkelstein Ex. 40, Galinsky Report because Galinsky's opinions do not satisfy Federal Rule of Evidence 702's requirements for the admissibility of expert opinion testimony. *See* ECF No. 546, 547 (Joint Motion and Memorandum to Exclude Testimony, Reports, and Opinions of Adam Galinsky).

93. Statements such as: "20 yrs of lies n distroin familys [sic]"; Ms. Steiner has engaged in "shoddy reporting"; and the Steiners are "biased" defame the Steiners professionally. "Distroin [sic] families" (Charging Doc Affidavit #18 ff. Finkelstein Ex. 8.); "she is a biased troll who needs to get BURNED DOWN (Wymer Answer ¶ 85. Finkelstein Ex. 3.); ███████████████ ██████████████████. Finkelstein Ex. 41.)

> **Mr. Wenig's Response:** Disputed. Paragraph 93 is an improper legal conclusion and not a factual proposition.

94. Wymer's statements demonstrate malice: "hatred is a sin. I am very sinful" and that "I want her done" (Wymer Answer ¶ 85. Finkelstein Ex. 3.); "she is a biased troll who needs to get BURNED DOWN." (Wymer Answer ¶ 85. Finkelstein Ex. 3.); and "I want to see ashes. As long as it takes. Whatever it takes." (8/28/19 Wymer interview at EBAY_STEINER_00206665; DPA ¶ 46. Finkelstein Ex. 1.; Wymer Answer ¶¶ 4, 126. Finkelstein Ex. 3.)

> **Mr. Wenig's Response:** Disputed. Paragraph 94 is an improper legal conclusion and not a factual proposition.

95. Baugh and his team acted with malice. DPA ¶ 52. Finkelstein Ex. 1.

> **Mr. Wenig's Response:** Disputed. Paragraph 95 is an improper legal conclusion and not a factual proposition.

36

96. Wymer directed, and is responsible for, the actions of Baugh and Baugh's team. Wymer Ex. 52 at Response to Interrogatory No. 41. Finkelstein Ex. 42.; Wymer Ex. 54 at Response to Interrogatory No. 41. Finkelstein Ex. Finkelstein Ex. 43.

> **Mr. Wenig's Response:** Disputed. Paragraph 96 is an improper legal conclusion and not a factual proposition.

97. ██████████████████████████████████████████ DPA ¶ 37. Finkelstein Ex. 1.; Wymer Answer ¶ 82, 85. Finkelstein Ex. 3.; ██████████████ Finkelstein Ex. 24.; Baugh Sentencing Memo at p. 19. Finkelstein Ex. 5.

> **Mr. Wenig's Response:** Disputed. Paragraph 97 is an improper legal conclusion and not a factual proposition.

98. Stockwell believed persons at eBay more senior than Jim Baugh were aware of the activity Baugh had directed her and other defendants to carry out. Stockwell's response to eBay's RFA No. 22. Finkelstein Ex. 82.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Ms. Stockwell asserted that she "believed persons at eBay more senior than Jim Baugh were aware of the activity Baugh had directed her and other defendants to carry out." However, the phrase "persons at eBay more senior than Jim Baugh" is vague and ambiguous, as it is unclear who Ms. Stockwell is referring to.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 98 and Paragraph 98 is immaterial to Mr. Wenig's Motion.

99. Popp believed eBay Executives were aware of the activity her superiors at eBay directed her to carry out. Popp's response to eBay's RFA No. 21. Finkelstein Ex. 45.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Ms. Popp asserted that she "believed Executives were aware of the activity her superiors at eBay directed her to carry out." However, the phrase "eBay Executives" is vague and ambiguous, as its unclear who Ms. Popp was referring to.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 99 and Paragraph 99 is immaterial to Mr. Wenig's Motion.

100.    Baugh told Zea she was to provide a "cover story" to eBay investigators until Baugh could speak with their superiors. Zea's response to eBay's RFA No. 12. Finkelstein Ex. 46.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Ms. Zea asserted that Mr. Baugh told her to "provide a 'cover story' to eBay investigators until [he] could speak with their superiors." However, the term "superiors" is vague and ambiguous, as it is unclear who Ms. Zea is referring to.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 100 and Paragraph 100 is immaterial to Mr. Wenig's Motion.

101.    Popp believed persons at eBay more senior than Jim Baugh were aware of the activity Ms. Popp was directed to carry out by her superiors at eBay. Popp's response to eBay's RFA No. 22. Finkelstein Ex. 45.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Ms. Popp asserted that she "believed persons at eBay more senior than Jim Baugh were aware of the activity [she] was directed to carry out by her superiors at eBay." However, the phrase "persons at eBay more senior to Jim Baugh" is vague and ambiguous, as it is unclear who Ms. Popp is referring to.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 101 and Paragraph 101 is immaterial to Mr. Wenig's Motion.

102.    Popp believed and/or knew that at least one person at the PFC Group of Companies was aware of the activity her superiors at eBay directed her to carry out. Popp's response to eBay's RFA No. 23. Finkelstein Ex. 45.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Ms. Popp asserted that she "believed and/or knew that at least one person at the PFC Group of Companies was aware of the activity her superiors at eBay directed her to carry out."
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 102 and Paragraph 102 is immaterial to Mr. Wenig's Motion.

103.    Zea did not feel comfortable reporting her concerns to anyone at eBay because it was her understanding that the higher ups were all aware of Jim Baugh's operation and she feared that someone would tell Baugh that she was talking about his plans, and she was scared of retaliation." [sic] Zea's response to eBay's RFA No. 20. Finkelstein Ex. 46.

38

**Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Ms. Zea asserted that she "did not feel comfortable reporting her concerns to anyone at eBay because it was her understanding that the higher ups were all aware of Jim Baugh's operation and she feared that someone would tell Baugh that she was talking about his plans, and she was scared of retaliation." However, the term "higher ups" is vague and ambiguous, as it is unclear who Ms. Zea is referring to.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 103 and Paragraph 103 immaterial to Mr. Wenig's Motion.

104.    On August 1, 2019, Wymer told Baugh "Hatred is a sin. I am very sinful"; "[Ina Steiner] is biased troll who needs to get BURNED DOWN"; and "I want to see ashes. As long as it takes. Whatever it takes." Wymer Answer ¶¶ 4, 85, 126. Finkelstein Ex. 3.

**Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Mr. Wymer and Mr. Baugh exchanged text messages on August 1, 2019 containing the quoted language in Paragraph 104.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 104 and Paragraph 104 is immaterial to Mr. Wenig's Motion.

105.    There were communications between Wymer and Baugh that Wymer destroyed. DPA ¶¶ 51-52; 61. Finkelstein Ex. 1.

**Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that there were communications between Mr. Wymer and Mr. Baugh that Mr. Wymer deleted. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that is admissible as to Mr. Wenig. Nevertheless, Paragraph 105 is undisputed for the purposes of Mr. Wenig's Motion, as Mr. Wymer admitted in his Answer to the Amended Complaint that "text messages with Baugh were among a variety of deleted texts on his phone" (ECF 325).

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 105 and Paragraph 105 is immaterial to Mr. Wenig's Motion.

106.    ███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ Finkelstein Ex. 2.

**Mr. Wenig's Response:** Disputed. Mr. Wenig objects to the reliance on Finkelstein Ex. 2, EBAY_STEINER_00206553 because it cannot be presented in an admissible form as to Mr. Wenig. Without relying on inadmissible evidence,

there is no support in the record for the proposition contained in Paragraph 106. Mr. Wenig objects to the unsupported characterization that ███████████████ ████████████████████████████████████████ as argumentative, vague, and ambiguous.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 106 and Paragraph 106 is immaterial to Mr. Wenig's Motion.

107.    On May 31, 2019, there were texts between Jones and Wymer: with Wymer stating "her day is coming" and Jones stating "I can't wait" "She is a cow." WYMER00000423, DPA ¶ 20. Finkelstein Ex. 1.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Mr. Wymer and Ms. Jones exchanged text messages on May 31, 2019 containing the above quoted language. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 1, DPA because it cannot be presented in a form that is admissible as to Mr. Wenig. Nevertheless, Paragraph 107 is undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 107 and Paragraph 107 is immaterial to Mr. Wenig's Motion.

108.    Jones was unaware of "illegitimate" expenses by the security team, including: PFC paying for eBay employees' expenses, (Gilbert flight to Boston in June and LA in August paid for with one of the analysts's PFC-issued credit cards); PFC0000317. Finkelstein Ex. 50; ██████████ ████████████████████████████████████ Finkelstein Ex. 18; Baugh's flight to Boston in August (paid for with Zea's PFC-issued credit card). PFC0001188. Finkelstein Ex. 115.

> **Mr. Wenig's Response:** Undisputed for the purposes of Mr. Wenig's Motion that Ms. Jones was unaware of the expenses by the security team described above. However, Mr. Wenig objects to the reliance on Finkelstein Ex. 18, EBAY_STEINER_00206575 because it cannot be presented in an admissible form as to Mr. Wenig. Nevertheless, Paragraph 108 are undisputed for the purposes of Mr. Wenig's Motion, as it is supported by other admissible evidence in the record.
>
> Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 108 and Paragraph 108 is immaterial to Mr. Wenig's Motion.

109.    EcommerceBytes had record number of page views and users prior to eBay's actions in August 2019. PPROD-071821 p.251. Finkelstein Ex. 49.

**Mr. Wenig's Response:**  Disputed in part for the purposes of Mr. Wenig's Motion. Mr. Wenig disputes the characterization that EcommerceBytes had a "record number" of page views and users prior to August 2019.  The cited document only shows data back as far as 2013.  EcommerceBytes has been in existence since 1999. *See* supra Paragraph 17. It is therefore not clear this was a "record number." Additionally, the source cited does not support the proposition that EcommerceBytes had a "record number" of users prior to August 2019. To the contrary, Finkelstein Ex. 49, PPROD-071821 at 251 shows that, for the years 2013–2023, EcommerceBytes had greatest number of new users in 2020.

However, it is undisputed for the purposes of Mr. Wenig's Motion that for the time frame 2013–2023, EcommerceBytes had the most page views in 2019.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 109 and Paragraph 109 is immaterial to Mr. Wenig's Motion.

110.    EcommerceBytes experienced a drop in page views and users, after the criminal complaint became public in June 2020. PPROD-071821 p.251. Finkelstein Ex. 49.

**Mr. Wenig's Response:**  Disputed. The source cited does not support the allegation contained in Paragraph 110. To the contrary, Finkelstein Ex. 49, PPROD-071821 shows that the number of page views increased from 8,760 the day before the criminal complaint was unsealed to 64,447 the day after. *See* Finkelstein Ex. 49, PPROD-071821 at p. 315. Similarly, Finkelstein Ex. 49, PPROD-071821 shows that the number of new users increased from 3,388 the day before the criminal complaint was unsealed to 14,405 the day after. *Id.* at 405.

Mr. Wenig has no personal knowledge of the truth or veracity of Paragraph 110 and Paragraph 110 is immaterial to Mr. Wenig's Motion.

Dated: February 14, 2025                    Respectfully submitted,

                                            /s/ *Abbe David Lowell*

                                            Abbe David Lowell, Esq. (*pro hac vice*)
                                            WINSTON & STRAWN LLP
                                            1901 L Street, NW
                                            Washington, DC 20036
                                            adlowell@winston.com
                                            (202) 282-5000

                                            Kelly A. Librera, Esq.
                                            WINSTON & STRAWN LLP
                                            200 Park Avenue
                                            New York, NY 10166
                                            klibrera@winston.com
                                            (212) 294-6700

                                            Martin G. Weinberg, Esq.
                                            Martin G. Weinberg PC
                                            20 Park Plaza
                                            Suite 1000
                                            Boston, MA 02116
                                            owlmgw@att.net
                                            (617) 227-3700

                                            *Counsel for Devin Wenig*

**CERTIFICATE OF SERVICE**

I, Abbe David Lowell, hereby certify that on this date, February 14, 2025, a copy of the foregoing

document has been served via Electronic Court Filing system on all registered participants.


          */s/Abbe David Lowell*
          Abbe David Lowell, Esq.