**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| INA STEINER, DAVID STEINER, and STEINER ASSOCIATES, LLC, <br><br>                  Plaintiffs, <br>    v. <br><br><br> EBAY INC., *et al.*, <br><br>                  Defendants. | Civil Action No. 1:21-CV-11181-DPW <br><br> **IN-PERSON ORAL ARGUMENT REQUESTED** |

**UNITED STATES' OPPOSITION TO DEFENDANT WYMER'S MOTION TO VACATE PROTECTIVE ORDER**

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

BACKGROUND ...........................................................................................................3

I.     Protective Order Negotiations..........................................................................3

II.    The Protective Order ......................................................................................4

III.   Discovery .......................................................................................................4

LEGAL STANDARD ...................................................................................................5

ARGUMENT ................................................................................................................6

I.     Baugh's Alleged Government Background Has Limited Relevance to Defendants' Defenses. ...................................................................................6

    A.   Baugh's Alleged Government Background Has Little Bearing on Baugh's Lack of Credibility..............................................................7

    B.   Baugh's Alleged Government Background Has Little Bearing on Wymer's Lack-of-Knowledge Defense....................................................9

    C.   Circumstances Concerning the Relevance of Classified Information Have Not Materially Changed Since this Court's Prior Ruling. ...................12

IV.   The Burden of Discovery Regarding the United States Is Disproportionate to the Needs of this Case. ....................................................13

V.    The Court Should Enter the Protective Order Without Reaching the Question of the State Secrets Privilege..................................................16

CONCLUSION.............................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Alexander v. FBI*,
    186 F.R.D. 188 (D.D.C. 1999) .................................................................................17

*Barre v. Obama*,
    932 F. Supp. 2d 5 (D.D.C. 2013)..............................................................................19

*Cheney v. United States District Court for the District of Columbia*,
    542 U.S. 367 (2004)...................................................................................................17

*Crawford-El v. Britton*,
    523 U.S. 574 (1998).....................................................................................................5

*Delozier v. First National Bank of Gatlinburg*,
    113 F.R.D. 522 (E.D. Tenn. 1986) ...........................................................................17

*Department of the Navy v. Egan*,
    484 U.S. 518 (1988)...........................................................................................14, 15

*El-Masri v. Tenet*,
    437 F. Supp. 2d 530 (E.D. Va. 2006), *aff'd sub nom. El-Masri v. United States*, 479 F.3d 296
    (4th Cir. 2007) ...........................................................................................................17

*Epstein v. MCA, Inc.*,
    54 F.3d 1422 (9th Cir. 1995)......................................................................................6

*Fazaga v. FBI*,
    884 F. Supp. 2d 1022 (C.D. Cal. 2012) ...................................................................18

*Food Lion, Inc. v. United Food & Commercial Workers International Union*,
    103 F.3d 1007 (D.C. Cir. 1997)..................................................................................6

*Freeman v. Seligson*,
    405 F.2d 1326 (D.C. Cir. 1968)................................................................................17

*Haig v. Agee*,
    453 U.S. 280 (1981).................................................................................................14

*Herbert v. Lando*,
    441 U.S. 153 (1979).....................................................................................................5

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010).....................................................................................................15

*In re Federal Deposit Insurance Corp.*,
    58 F.3d 1055 (5th Cir. 1995)....................................................................................18

*Kasza v. Browner*,
  133 F.3d 1159 (9th Cir. 1998), *appeal after remand sub nom. Kasza v. Whitman*, 325 F.3d
  1178 (9th Cir. 2003) ................................................................................................................17

*Kyle Engineering Co. v. Kleppe*,
  600 F.2d 226 (9th Cir. 1979) ...................................................................................................18

*Mohamed v. Jeppesen Dataplan, Inc.*,
  614 F.3d 1070 (9th Cir. 2010) ...........................................................................................17, 18

*Roule v. Petraeus*,
  No. C 10-04632 LB, 2012 WL 2367873 (N.D. Cal. June 21, 2012) ...................................19, 20

*Sakab Saudi Holding Co. v. Aljabri*,
  58 F.4th 585 (1st Cir. 2023) .....................................................................................................16

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984) ......................................................................................................................5

*St. John v. Napolitano*,
  274 F.R.D. 12 (D.D.C. 2011) .....................................................................................................15

*Stillman v. Department of Defense*,
  209 F. Supp. 2d 185 (D.D.C. 2002) ..........................................................................................19

*United States v. Miracle Recreation Equipment Co.*,
  118 F.R.D. 100 (S.D. Iowa 1987) ..............................................................................................18

*United States v. Nixon*,
  418 U.S. 683 (1974) ...................................................................................................................15

*United States v. Reynolds*,
  345 U.S. 1 (1953) .............................................................................................. 16, 17, 18, 19

*United States v. Zubaydah*,
  595 U.S. 195 (2022), *on remand sub nom. Husayn v. Mitchell*, 31 F.4th 1274 (9th Cir.
  2022) .........................................................................................................................................14

*Vire v. Entergy Operations, Inc.*,
  No. 4:15-cv-214, 2016 WL 10576707 (E.D. Ark. Sept. 28, 2016) ...........................................15

## **Rules**

Fed. R. Civ. P. 26(b)(1) ....................................................................................................5, 6

Fed. R. Civ. P. 26(c)(1) .........................................................................................................5

Fed. R. Civ. P. 26(c)(1)(A) ....................................................................................................5

iii

**<u>Other Authorities</u>**

Memorandum from Attorney General to Heads of Executive Departments & Agencies and to Heads of Department Components on Policies and Procedures Governing Invocation of the States Secrets Privilege (Sept. 23, 2009), http://www.justice.gov/opa/documents/state-secret-privileges.pdf.........................................18

## INTRODUCTION

The United States has always sought in good faith to minimize its role in this litigation to the greatest extent possible while safeguarding classified government information. Consistent with that goal, it spent three months negotiating the terms of a protective order with all the parties in this matter, before settling on a proposed order that was not opposed by any of the thirteen defendants in this case. Those negotiations took place well before Defendant Jim Baugh invoked his Fifth Amendment right to foreclose discovery. The Court ultimately entered a slightly modified version of the protective order. Only now, following the close of discovery, several of those same defendants move the Court to vacate the previously agreed upon protective order in a thinly veiled attempt to force the Government to assert the State Secrets Privilege to permit them to argue for their outright dismissal from the case. The Court should not indulge these strategic litigation tactics.

First and foremost, any marginal relevance of the specifics of Baugh's alleged government background are overwhelmingly outweighed by the Government's national security interests. Defendants Wymer, Wenig, and Jones (collectively, "Defendants") claim they would be assisted by the ability to probe certain aspects of Baugh's background because of its supposed relevance to Baugh's credibility and Defendants' lack-of-knowledge defenses. But, although those two issues are relevant to the case, the details of Baugh's alleged government background are not relevant to those two issues. Moreover, Defendants already have access to certain information concerning Baugh's alleged government background in the form of filings in the criminal case and discovery already obtained or obtainable under the protective order in this case. That is more than enough to permit them to effectively litigate their case.

By contrast, disclosure of that limited—and only marginally relevant—information could

reasonably be expected to implicate the national security of the United States.  The Government thus has an interest in protecting against disclosure in this case of certain limited information, as described in the Government's *ex parte*, *in camera* submissions.

This Court already ruled that the United States has met the standard for a protective order under Federal Rule of Civil Procedure 26(b) and (c).  It met that standard because discovery or disclosures regarding details of Baugh's alleged Government background are beyond the scope of permissible discovery, they are not directly relevant to any party's claim or defense, and the Government's burden is not proportional to the need for this information.  There is no basis for the Court to change that ruling now, particularly as the sensitivity of the information has not changed.

Nevertheless, Defendants argue that the Court should force the Government to assert the State Secrets Privilege.  They make clear why they hope that the Government will do so and why they hope the Court will uphold that privilege assertion: because "a successful assertion of the state secrets privilege may deprive Wymer of a valid defense and entitle him to dismissal of claims in this matter."  Def. Wymer's Mem. of Law in Supp. of Mot. to Vacate Prot. Order at 17, ECF No. 622 ("Mot.").   But a court may, and properly should, consider questions of relevance before reaching assertions of privilege.  The Government should not be forced to assert the State Secrets Privilege as part of a Hail Mary litigation strategy by Defendants to get the entire case dismissed.

The Government and Defendants agree that "[i]f the Court finds that Baugh's . . . limited testimony is not admissible at trial, then there is no need to vacate the Government's protective order."  Def. Jones's Joinder to Mot. at 1–2, ECF No. 624.  However, should the Court permit Baugh to testify, the Government respectfully requests that the Court deny Defendants' motion to vacate and not require the Government to assert the State Secrets Privilege to protect classified information from unauthorized disclosure in this matter when it has met the Rule 26(c) standard.

## BACKGROUND

### I.    Protective Order Negotiations

On January 5, 2024, the Court issued a Protective Order to protect classified information from unauthorized disclosure.  ECF No. 315 ("PO").  The PO was a modified version of a draft that the Government had proposed in its Statement of Interest and Motion for Protective Order on October 17, 2023.  United States' Statement of Interest & Mem. of Law in Supp. of Mot. for a Prot. Order, ECF No. 273-1 ("Mot. for PO").  That proposed protective order was, itself, nearly a year in the making.  The Government began discussing the general idea of a protective order to protect the Government's interests in this matter with the parties in November 2022.  Those general discussions continued while the Government ascertained the specific classified information that was at risk of disclosure and determined how best to protect that information while minimizing its role in this litigation.  After the Court ordered the start of discovery on August 10, 2023, Electronic Clerk's Notes, ECF No. 260, the Government circulated a draft proposed protective order to the parties the following day, starting off a three-month-long process of extensive negotiations with all thirteen defendants in this matter.  (Plaintiffs, represented by different counsel at that time, chose not to engage in those negotiations.)  From August through October, the Government made significant modifications to its initial proposal in response to feedback from the defendants, significantly narrowing the scope of the information to be protected and limiting the Government's role in this litigation.  *See* Mot. for PO at 6–7.  At the time the Government move the Court to enter the proposed protective order, five defendants continued to oppose the motion while the rest did not object to it.

While the Government's motion was pending, however, it continued to negotiate with the remaining five defendants.  As a result of those negotiations, the Government made several further

concessions and ultimately agreed with the remaining five defendants on a Revised Proposed Protective Order, which Defendant eBay filed. *See* ECF No. 288-1. None of the thirteen defendants opposed the Government's proposed protective order. Def. eBay Inc.'s Resp. to Government's Mot. for Prot. Order at 1, ECF No. 288. That includes all three of the Defendants—Wenig, Wymer, and Jones—who now move the Court to vacate the protective order.

## II.    The Protective Order

On January 5, 2024, the Court issued a modified version of the proposed protective order, and that order remains in place today. The PO prevents the parties from eliciting or using in this litigation any information regarding any relationship that Baugh might have had with the U.S. Government, as well as any other classified information and information subject to nondisclosure or secrecy agreements. *See* PO ¶ 2. It also imposes an obligation on the parties to ensure that they do not knowingly violate the terms of the order. *Id.* ¶ 3. And it provides the Government with an opportunity to participate in certain types of depositions, hearings, and trial where protected information might reasonably be disclosed. *Id.* ¶¶ 5, 6.

There are also several noteworthy things that the PO does not do. Most importantly, the PO does not preclude elicitation or disclosure of whether Baugh had a relationship with the U.S. Government. *Id.* ¶ 3. The PO also does not provide the Government an opportunity to review any discovery materials or filings before they are made public, as the Government had requested and which no defendant opposed but which the Court chose not to include in the final version.

## III.    Discovery

Fact discovery lasted from August 10, 2023 to September 27, 2024. *See* Electronic Clerk's Notes, ECF No. 260; Order Modifying Scheduling Order, ECF No. 400. During that time, the Government sought to minimize its role in this litigation. Government counsel attended several

depositions at which information concerning Baugh's alleged government background seemed likely to be discussed.  In each of those depositions, Government counsel objected to a limited amount of questioning by various parties' attorneys, ultimately resulting in the protected information not being divulged.  Government counsel also reviewed discovery materials for classified information, and it never requested that any party withdraw any document based on its review.  At no point has any party been prevented from filing any document, nor has the Government requested that any party make any redaction of any material as a result of the PO in this case.  And at no point in discovery, up until the meet-and-confers regarding the currently pending motions, has any party requested any modification to the scope of the protective order.

## LEGAL STANDARD

The Court has wide discretion to control the nature and timing of discovery and "should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979).  This power includes authority to issue a protective order under Federal Rule of Civil Procedure 26(c) upon a showing of good cause to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."); *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.").  This discretion includes orders forbidding the requested discovery altogether and "forbidding inquiry into certain matters."  Fed. R. Civ. P. 26(c)(1)(A), (D).

Rule 26 limits discovery to information that is both "relevant" to a party's claims or defenses and "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Among other

factors, the proportionality analysis turns on the "importance of the discovery in resolving the issues" and whether the likely benefit of the discovery outweighs the burden or expense of responding. *Id.* Although "'relevance' for discovery purposes is broadly construed," the requirement is "not without bite," and discovery should be deemed impermissible where there is no "reasonable likelihood that allowing discovery . . . will lead to discovery of evidence relevant" to the litigation. *Food Lion, Inc. v. United Food & Com. Workers Int'l Union*, 103 F.3d 1007, 1012–13 (D.C. Cir. 1997); *see also Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995) (vacating discovery-related contempt order because the information sought was irrelevant; it "would have no bearing on either the merits of the case or on the motion for class certification").

## ARGUMENT

The Court should deny the motion to vacate the PO because discovery of classified U.S. Government information is not relevant or proportional to the needs of the case. The Defendants that now file this motion to vacate the protective order previously agreed not to object to the precise terms they now object to, following months of negotiations between the Government and these parties, and the final PO limits the Government's involvement in this litigation to the maximum extent possible while still protecting classified information. The Court should deny Defendants' motion without requiring the Government to invoke the State Secrets Privilege, as Defendants seek it to do in a vain attempt to be dismissed from this litigation.

## I. Baugh's Alleged Government Background Has Limited Relevance to Defendants' Defenses.

Defendants mistakenly claim that detailed evidence concerning Baugh's alleged government background is relevant to two issues: (1) Baugh's credibility and (2) Defendants' lack-of-knowledge defense. *See* Mot. at 1. While both of those issues are relevant to the disposition of this case, details of Baugh's alleged government background have almost no relevance to either of

those two issues.  Moreover, to the extent Baugh's alleged government background has any relevance, Defendants have other ways of presenting sufficient evidence on any such alleged background.  This includes the highly detailed statements Baugh made in his criminal matter concerning the specific alleged activities he undertook for the Government.[1]  *See id.* at 4–5.

### A. Baugh's Alleged Government Background Has Little Bearing on Baugh's Lack of Credibility.

Wymer contends that "the specifics of Baugh's intelligence activities are expected to show Baugh's long history and pattern of sophisticated deception, which bear directly on the credibility of any testimony he offers against other Defendants in this lawsuit." *Id.* at 12.  If Baugh were to testify at trial, his credibility as a witness would undoubtedly be relevant, but Defendants are wrong that any alleged Government background is relevant to establishing his credibility as a witness.  Wymer claims that the relevance is tied to Baugh's "use of deception to achieve objectives specified by his Government 'handlers,'" *id.*, but even if Wymer's description of Baugh's background is to be believed, it does not follow that one who deceives in service to his country is less likely to be truthful in providing sworn testimony in a trial on a completely unrelated matter.  In Wenig's words and based on his assumptions, "nothing in Mr. Baugh's employment history suggested that he had the proclivity to terrorize the Steiners. He was a former government employee, having served for years with various government agencies, including the Central

---

[1] Wymer appears to suggest that, because Baugh has already made these detailed allegations, Defendants should be able to probe them further in discovery and at trial. *See* Mot. at 13 n.9. That does not follow.  Baugh did not seek the Government's consent to file that information on the public docket, nor did the Government ever authorize the disclosure of any classified information. The Government has neither confirmed nor denied the accuracy of any of that information, including in the criminal matter in which it was filed.  A private individual cannot somehow waive the Government's right or negate its duty to protect classified information by making public allegations without the Government's consent.

Intelligence Agency." Def. Wenig's Mem. of Law in Supp. of Mot. for Summ. J. at 3, ECF No. 498 ("Wenig Mot. for Summ. J."). The probative value of that information is therefore low.

Relatedly, Wymer mistakenly claims that details of Baugh's alleged government background may show that he was more likely to lie to his superiors at eBay because he was allegedly taught how to effectively use deception. This is illogical. As Wymer acknowledges, Baugh allegedly performed government work "to achieve objectives specified by his Government 'handlers.'" Mot. at 12; *see also id.* at 14 (alleging Baugh "commit[ted] acts with impunity at the direction of a Government 'handler'"). In other words, according to Wymer's own allegations, whatever Defendants believe Baugh did for the Government, they believe he did at the direction of his government superiors. For example, they do not allege that Baugh operated in government independent of any supervision or direction. In fact, to the contrary, they allege Baugh followed directions he was given. The private sector analog of what Defendants refer to as Baugh's "handler," here, is plainly Defendants themselves. To the extent the evidence were to show that Baugh followed the directions of his "handler," it could make it more likely that he was similarly following the directions of his eBay superiors—the Defendants here. Defendants have therefore not met their burden to show that this information would help bolster either their argument that Baugh lacks credibility or their lack-of-knowledge defense, as opposed to undermine it.

Moreover, Defendants have a font of other sources of information concerning Baugh's credibility. *First*, Wymer identifies several detailed statements Baugh has publicly made concerning specific tasks he undertook in his alleged former government service. *See id.* at 12–13. Defendants are free to present Baugh's claims regarding those specific tasks, which Wymer claims show his lack of credibility, to the Court and jury. Baugh's description of those tasks is quite detailed and would satisfy Defendants' desire for the jury to "hear details of that history to

fairly evaluate whether Baugh weaponized his training and experience in deception against Wymer and other eBay executives." *Id.* at 13. The actions Baugh claims to have taken speak for themselves, and further identifying information about his allegations such as names, dates, places, etc. have limited to no relevance to establishing whether he is credible.

*Second*, Wymer contends that "the alleged facts in [his] motion are derived from Baugh's own account to the Court. If that account turns out to be false in whole or in part, Baugh's filing of a motion filled with lies or half-truths would be essential to the jury's ability to assess the credibility of his anticipated trial testimony against Wymer and other defendants." *Id.* at 13 n.10. But Baugh has made numerous representations in filings to the Court—particularly in his criminal case—including ones that directly relate to the actual focus of this case—i.e., his harassment of the Steiners and his role in that campaign. If Defendants seek to demonstrate his lack of credibility, they are free to draw comparisons between those many other representations and whatever testimony he provides in discovery—should the Court re-open discovery—or at trial. Defendants need not demonstrate his lack of credibility by specifically drawing comparisons between representations he made and classified government information.

Given the illogic in Defendants' reasoning regarding the meaning of his alleged government background and the other various facts in the record or otherwise available to Defendants, the relevance of any *additional* more highly detailed or nuanced information concerning Baugh's alleged government background is of marginal relevance to Baugh's credibility.

### B. Baugh's Alleged Government Background Has Little Bearing on Wymer's Lack-of-Knowledge Defense.

Wymer claims that probing details of Baugh's alleged government background will help him establish both whether Defendants "could have reasonably discovered" that Baugh was

planning to commit crimes against Plaintiffs and also that Wymer's "vague and hyperbolic messages to Baugh were not directives to commit crimes." *Id.* at 13–14. At the outset, it should be noted that what is plainly relevant is whether Defendants knew *about the crimes Baugh committed against the Steiners*—not whether Defendants knew about Baugh's alleged government background.[2] Anyway, setting aside the wisdom of sending "vague and hyperbolic messages" to a security professional who one does not know well, Wymer claims that "[he]—a newcomer to eBay—knew nothing of Baugh's prior Government work, much less the details of that work, *and Plaintiffs elicited no evidence to the contrary.*" *Id.* at 14 (emphasis added); *see also id.* at 2 ("It is undisputed that Wymer knew nothing of Baugh's Government background . . . ."). If that statement is accurate and there is no evidence in the record that Wymer knew anything of Baugh's alleged government background, then there is no genuine dispute of material fact on that issue, and any information about what Baugh actually allegedly did for the government is irrelevant because there is no evidence in the record showing Wymer knew about it. *See also* Def. Wenig's Joinder to Mot. at 1, ECF No. 625 ("Information concerning Mr. Baugh's previous work for the Government, and any special training he received, will not impact Mr. Wenig's pending motion

---

[2] On this point, all three Defendants have identified substantial evidence in their summary judgment briefing that they claim show they lacked knowledge about the crimes Baugh committed against the Steiners. *See* Def. Wymer's Mem. of Law in Supp. of Mot. for Summ. J. at 4–5, ECF No. 485 (stating that "Wymer has sworn under oath that he knew nothing about the Charged Defendants planning or executing their crimes, and Plaintiffs elicited no evidence to dispute his account" and reviewing the evidence supporting that statement); Wenig Mot. for Summ. J. at 3 ("There is not a . . . . scintilla of evidence that Mr. Wenig knew of or participated in those [criminal] events. On the contrary, the record is replete with admissions from the Criminal Defendants that Mr. Wenig was not involved."); Def. Jones's Mem. of Law in Supp. of Mot. for Summ. J. at 4, ECF No. 496 ("There is no evidence in the record that Ms. Jones saw or heard anything that would lead someone to believe Mr. Baugh would engage in violence or harassing behavior."). All this evidence in the record is plainly more relevant to Defendants' lack-of-knowledge defense than evidence regarding Baugh's alleged government background would be.

for summary judgment because Mr. Wenig did not engage with Mr. Baugh about the Steiners, or know that others were engaging with Mr. Baugh about the Steiners . . . .").

In any event, there has already been substantial discovery on the issue of Defendants' knowledge of Baugh's alleged government background, and if discovery is re-opened as to Baugh, Wymer will enjoy substantial opportunities to develop that defense further because he is not foreclosed from questioning Baugh about who he allegedly told about his alleged government background. *First*, as Wymer acknowledges, "[m]ultiple witnesses testified that Baugh told them he had worked for the CIA." Mot. at 7. Wymer, for his part, is of course also able to provide evidence and testify in his own defense that he did not know about Baugh's alleged government background. It is the knowledge of the background that may be potentially relevant to Wymer's lack-of-knowledge defense—not the alleged background itself. And the PO imposes no impediment to inquiring about who knew about Baugh's alleged government background.

*Second*, Wymer admits that, in his view, Veronica Zea offered testimony that he can use to support his defense that Baugh was more likely to interpret his directions, unreasonably in his view, as calling for violence:

> From Zea's testimony, a jury could reasonably infer that Baugh claimed to have previously used these harassment tactics on behalf of the United States Government. This inference would strongly support Wymer's argument that the harassment in Natick was unforeseeable to a reasonable person with no knowledge that Baugh had any Government background, let alone Government-sanctioned experience in using these precise means of harassment.

*Id.* at 9. Wymer is free to use this testimony at trial, further demonstrating why even more detailed testimony simply is not appropriate in light of the Government's substantial national security interests here.

Given Defendants' acknowledgment that there is no evidence in the record that they knew anything of Baugh's alleged prior government work and the other various facts in the record or

11

otherwise available to Defendants, any *additional* more highly detailed or nuanced information concerning Baugh's alleged government background is of marginal relevance to Defendants' lack-of-knowledge defense.

### C. Circumstances Concerning the Relevance of Classified Information Have Not Materially Changed Since this Court's Prior Ruling.

Defendants misleadingly claim that "Baugh's agreement to testify against the other Defendants in exchange for dismissal has changed the posture of this case dramatically . . . ." *Id.* at 11. Although the case posture may have certainly changed from the perspective of the parties to this case, and the Court will need to determine whether to grant Defendant Jones's motion to strike based on those changes, the changes are of no relevance to the PO. At the time that Defendants negotiated the proposed protective order with the Government, Baugh had not invoked his Fifth Amendment rights and there was no reason to believe that he would not provide testimony and other discovery in this matter. By Wymer's own account, the first time the parties became aware that Baugh "intended to broadly invoke his Fifth Amendment rights against self-incrimination" was on June 12, 2024. *Id.* at 9–10. That was a distant eight months after Defendants agreed with the Government upon the terms of the proposed protective order and six months after the Court entered the PO. At the time Defendants negotiated what ultimately became the PO, they had no reason to believe that Baugh would invoke his Fifth Amendment rights, nor did they condition their agreement on him not invoking those rights. The fact that Baugh is now waiving Fifth Amendment rights that he asserted only after the Court entered the PO therefore does not provide a basis for altering the terms Defendants agreed to based on the same understanding.

Nor is it true that the situation is different now than at the time the Court entered the PO because "fact discovery has illuminated certain key parallels between Baugh's Government background and his conduct in this case." *Id.* at 16. Defendants note that Baugh has, to-date,

broadly invoked his Fifth Amendment rights in response to discovery in this case, meaning that their basis for understanding both Baugh's alleged government background and his conduct in this case comes from information sources available to them at the time they negotiated the proposed protective order. Their own motion bears this out. Defendants' primary source of information concerning Baugh's alleged Government background is statements Baugh made in his criminal case on August 16, 2021. *See id.* at 4–5. Similarly, Defendants' primary sources of information concerning Baugh's conduct in this case come from the many pleadings in the criminal case. It also comes from numerous public reports on the criminal conduct, including in the *New York Times*, *Boston Globe*, and elsewhere. And it comes from Defendants themselves, who had learned about Baugh's conduct, at the latest, as part of the FBI's investigation and their own varying extents of participation in the criminal prosecutions. To imply that Defendants did not realize at the time they agreed to the proposed protective order that there was any similarity between Baugh's description of his alleged Government background and his conduct in this case strains credulity. Defendants either knew, or should have known, of any alleged similarities before the Court entered the PO, and nothing about those similarities has changed to warrant a change to the PO.

## IV. The Burden of Discovery Regarding the United States Is Disproportionate to the Needs of this Case.

Even if certain information regarding the United States could arguably have some potential relevance to Plaintiffs' claims, the burden of such discovery would be disproportionate to the needs of this case. The United States is unable to provide a full explanation of those burdens in this filing, but it addresses the matter at great length in the Government's earlier *ex parte*, *in camera* submissions in this matter, as well as two *ex parte*, *in camera* filings submitted herewith: a brief and a declaration. These submissions explain the reasoning for the Government's determination that its involvement in this case is necessary to protect national security and the reasoning for the

entry of the proposed protective order.[3]  The Government's *ex parte* submissions here contain classified national security information and are submitted solely for the Court's *ex parte*, *in camera* review, as courts have repeatedly found is appropriate under similar circumstances and as this Court previously found appropriate.  *See* Mot. for PO at 12.

In his motion to vacate, Wymer repeatedly refers to statements the Court made during the hearing on the Government's motion for a protective order that suggested that the Court considered the Government's national security interest to be outweighed by the relevance of the information sought.  *See* Mot. at 5, 14.  The Court made those statements before it had reviewed any of the Government's *ex parte*, *in camera* submissions that provide the basis for the Government's national security argument, however.  *See* Tr. of Hr'g on Gov't Mot. for Prot. Order at 7:11-14, ECF No. 307 ("I have not looked at [the *ex parte*, *in camera* filings] yet and I will. I need to hear if there's another way of resolving this first. So I wasn't willing to take ex parte communications before I even read the briefing.").  And of course, after reviewing the *ex parte*, *in camera* briefing, the Court ultimately entered the PO.

In considering the Government's reasoning for seeking to protect sensitive information, courts are mindful that "no governmental interest is more compelling than the security of the Nation."  *Haig v. Agee*, 453 U.S. 280, 307 (1981).  "[I]n assessing the Government's claim that disclosure may harm national security, courts must exercise the traditional 'reluctan[ce] to intrude upon the authority of the Executive in military and national security affairs.'"  *United States v. Zubaydah*, 595 U.S. 195, 205 (2022) (alteration in original) (quoting *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988)), *on remand sub nom. Husayn v. Mitchell*, 31 F.4th 1274 (9th Cir. 2022).

---

[3] The Government has lodged its classified submissions *ex parte*, *in camera* with the Department of Justice's CISO, who will make it available to the Court for review at the Court's convenience.

The responsible executive officials possess "the necessary expertise" to make the required "[p]redictive judgment" about risks to national security. *Egan*, 484 U.S. at 529. And the Supreme Court has further recognized that "when it comes to collecting evidence and drawing factual inferences [concerning national security], the lack of competence on the part of the courts is marked." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 34 (2010) (internal quotations marks omitted) (citation omitted). Courts therefore afford "the utmost deference" to the Executive's assessment of potential national security harms. *Egan*, 484 U.S. at 529–30 (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)); *see also id.* at 527 (recognizing the Government's "'compelling interest' in withholding national security information from unauthorized persons" and stating that the "authority to protect such information falls on the President as head of the Executive Branch and as Commander in Chief" (citation omitted)).

In general terms, the United States seeks protection under Rule 26 because of the impact the disclosure of information regarding the Government in this litigation could reasonably be expected to have on national security. That harm should be dispositive in the Rule 26 proportionality calculus where it is compared to the (at most) minimal relevance of the details of Baugh's alleged government background to the resolution of this litigation. *Cf. St. John v. Napolitano*, 274 F.R.D. 12, 17 (D.D.C. 2011) (deeming production of various medical records not proportional because of, *inter alia*, the "harm to the plaintiff's privacy interests from the disclosure"); *Vire v. Entergy Operations, Inc.*, No. 4:15-cv-214, 2016 WL 10576707, at *2 (E.D. Ark. Sept. 28, 2016) (balancing "the government's interest in confidentiality" against the plaintiff's need for certain "highly sensitive information" regarding nuclear power plants and finding "the need for confidentiality outweighs plaintiffs' need"). The United States is unable to provide additional detail in this filing, but addressed these matters at greater length in the

supplemental classified memorandum and declarations filed with its original motion, ECF No. 273-1, as well as an additional supplemental classified memorandum and declaration filed concurrently with this filing.[4]

## V.    The Court Should Enter the Protective Order Without Reaching the Question of the State Secrets Privilege.

The Government concurs with Defendants that the national security information at issue in this motion is potentially subject to an assertion of the state secrets privilege, an absolute privilege that protects information from disclosure in civil cases where disclosure can reasonably be expected to harm national security. *See generally United States v. Reynolds*, 345 U.S. 1 (1953); *Sakab Saudi Holding Co. v. Aljabri*, 58 F.4th 585 (1st Cir. 2023). However, the Government disputes the notion that it should have to assert the State Secrets Privilege at this juncture as a substitute for a protective order under Rule 26. The Court recognized that Rule 26 determinations should precede State Secrets Privilege assertions when it issued the protective order in this case without requiring the Government to unnecessarily assert the State Secrets Privilege, which is an extensive process that would delay proceedings in this matter.

And the Court's prior determination was manifestly appropriate. As a general matter, when a discovery request calls for the production of potentially privileged information, a court may, and properly should, consider questions of relevance before reaching assertions of privilege. *See, e.g.,*

---

[4] Defendant Wymer suggests that it might be possible for the parties to negotiate "appropriate terms for a modified protective order." Mot. at 12 n.8. Given that Wymer seeks detailed information on "training and guidance from the Government in how to engage in covert activities without detection, how to craft and maintain a false cover story, how to appear credible while lying, and how to use an unwitting accomplice, among other clandestine arts," *id.* at 13–14,—all of which information, if it existed—would plainly be classified on its face—no further compromise beyond the months-long negotiations that resulted in this agreed upon PO will be possible. The PO the Court entered already permits the parties the maximum access to all non-classified government information possible. *See* Mot. for PO at 14.

*Alexander v. FBI*, 186 F.R.D. 188, 192 (D.D.C. 1999) (finding requested information to be irrelevant, rendering it unnecessary to reach issue of presidential communications privilege, which had been bifurcated for later consideration); *Delozier v. First Nat'l Bank of Gatlinburg*, 113 F.R.D. 522, 524 (E.D. Tenn. 1986) (emphasizing that "the information sought must *initially* satisfy the relevancy requirement . . . before there is any necessity" to reach claims of privilege). Thus, "matters of privilege"—including formal assertion of privilege—"can appropriately be deferred . . . until after the production demand has been adequately bolstered by a general showing of relevance and good cause." *Freeman v. Seligson*, 405 F.2d 1326, 1338 (D.C. Cir. 1968).

This approach is especially appropriate in cases involving Executive privileges. *Cf. Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 390–91 (2004) (in case concerning the presidential communications privilege, encouraging courts, "whenever possible," to "explore other avenues, short of forcing the Executive to invoke [Executive] privilege"). The state secrets privilege protects "matters which, in the interest of national security, should not be divulged." *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1082 (9th Cir. 2010) (*en banc*) (quoting *Reynolds*, 345 U.S. at 10). "Given the vitally important purposes it serves, . . . the state secrets privilege is . . . a privilege of the highest dignity and significance." *El-Masri v. Tenet*, 437 F. Supp. 2d 530, 536 (E.D. Va. 2006), *aff'd sub nom. El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007). "Once . . . properly invoked and the court is satisfied as to the danger of divulging state secrets, the privilege is absolute" and cannot be overcome by any claim of necessity. *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998), *appeal after remand sub nom. Kasza v. Whitman*, 325 F.3d 1178 (9th Cir. 2003). Because of its potentially "harsh" consequence in requiring dismissal of a case, *id.* at 1167, the state secrets privilege "is not to be lightly invoked," *Mohamed*, 614 F.3d at 1080 (quoting *Reynolds*, 345 U.S. at 7).

A formal claim of privilege must be "lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Id.* (internal quotation marks omitted) (quoting *Reynolds*, 345 U.S. at 7–8). The decision "must reflect the certifying official's *personal* judgment; responsibility for this task may not be delegated to lesser-ranked officials." *Id.* In addition, as a matter of Executive Branch practice, officials at the highest levels of the Department of Justice also must review any proposed assertion of the state secrets privilege. *Id.* at 1077 (citing Memorandum from Att'y Gen. to Heads of Exec. Dep'ts & Agencies and to Heads of Dep't Components on Policies and Procedures Governing Invocation of the States Secrets Privilege (Sept. 23, 2009), http://www.justice.gov/opa/documents/state-secret-privileges.pdf ("Sept. 23, 2009 Memorandum")). Consideration of these matters within the Department of Justice requires, *inter alia*, a "recommendation from the Assistant Attorney General; evaluation, consultation, and recommendation by a state secrets review committee; and approval by the Attorney General." *See Fazaga v. FBI*, 884 F. Supp. 2d 1022, 1040 (C.D. Cal. 2012) (subsequent history omitted) (citing Sept. 23, 2009 Memorandum ¶¶ 2–4). And as courts have recognized in other contexts, "[h]igh ranking government officials have greater duties and time constraints" than other government employees, *In re Fed. Deposit Ins. Corp.*, 58 F.3d 1055, 1060 (5th Cir. 1995) (citation omitted), and "must be allowed the freedom to perform their duties without the constant interference of the discovery process," *United States v. Miracle Recreation Equip. Co.*, 118 F.R.D. 100, 104 (S.D. Iowa 1987) (citing *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 232–32 (9th Cir. 1979)); *see* Mot. for PO at 18 (collecting cases). In keeping with these principles, the Court should render a determination as to the relevance of the classified information that Defendants seek—and grant the Government's motion without considering issues bearing on the potential need to address the State Secrets Privilege.

Notwithstanding the overwhelming weight of this case law making clear that a State Secrets Privilege assertion should only be required as a last resort, Wymer cites four cases that he implies hold otherwise. *See* Mot. at 16–17. They do not. As an initial matter, none of the cases Wymer cites relates to a Rule 26 determination, which is what is at issue here. In *Barre v. Obama*, the court declined to protect information where *the government itself* made an inadvertent disclosure of information that was "'officially acknowledged' by the government" and the government did not "follow[] the procedures outlined in [the protective order]" to remove that information from the public docket. 932 F. Supp. 2d 5, 9 (D.D.C. 2013) (citation omitted). Here, there are no allegations of government disclosure, official acknowledgement, or failure to follow protective order terms.

In both *Reynolds*, 345 U.S. 1, and *Stillman v. Department of Defense*, 209 F. Supp. 2d 185 (D.D.C. 2002), the courts merely held that courts are not free to make *sua sponte* State Secrets Privilege determinations absent appropriate invocations of that privilege, which is of course not what the Government asks the Court to do here. In *Reynolds*, the Supreme Court made the uncontroversial statement that "the trial judge was in no position to decide that [evidence] was privileged until there had been a formal claim of privilege." *Reynolds*, 345 U.S. at 10. And in fact, as already explained, in that same case, the Supreme Court chastised litigants that "forc[ed] a showdown on the claim of privilege," *id.* at 11, just as Defendants attempt to do here. The *Stillman* court faulted the government for "attempt[ing] to adopt the result of cases in which the state secrets privilege has been invoked" to foreclose discovery. *Stillman*, 209 F. Supp. 2d at 223. The Government makes no such request here but simply asks the Court to maintain its prior Rule 26 ruling.

And *Roule v. Petraeus*, No. C 10-04632 LB, 2012 WL 2367873 (N.D. Cal. June 21, 2012)

is perhaps the furthest afield. As Wymer correctly notes, all the court held there was that "the possibility that the government 'may' invoke the state secrets privilege is not sufficient to stay the case or discovery." *Roule*, 2012 WL 2367873, at *1. Far from requesting a stay of the case or of discovery, all the Government asks is that the status quo—that discovery be foreclosed only as to the classified details of a single individual's work history—be maintained.

Requiring the Government to assert the State Secrets Privilege is manifestly inappropriate where the Defendants unapologetically seek to leverage the privilege to gain a litigation advantage. Wymer does not hide the ball, but rather explicitly argues, "a successful assertion of the state secrets privilege may deprive Wymer of a valid defense and entitle him to dismissal of claims in this matter." Mot. at 17. In other words, Defendants are looking for an easy way out of liability without having to go to trial. But no such way exists where the limited amount of evidence excluded by the PO is plainly not of critical importance to the litigation.[5]

## CONCLUSION

For the foregoing reasons, the United States respectfully requests the Court deny Defendants' motion to vacate under Rule 26(c).

---

[5] Should the Court find under Federal Rule of Civil Procedure 26(c) that discovery of detailed classified information of Baugh's alleged government background is appropriate, and that the Government is required to assert the State Secrets Privilege to protect it, the Government respectfully requests sixty days from the date of the Court's order to make a final determination on whether to assert the privilege.

Dated: April 23, 2025                    Respectfully submitted,


                                         YAAKOV M. ROTH
                                         Principal Deputy Assistant Attorney General
                                         Civil Division

                                         LAUREN A. WETZLER
                                         Deputy Director, Federal Programs Branch

                                         */s/ Christopher D. Edelman*
                                         CHRISTOPHER D. EDELMAN
                                         (D.C. Bar No. 1033486)
                                         JASON LYNCH
                                         (D.C. Bar No. 1016319)
                                         Senior Counsel
                                         U.S. Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street, NW
                                         Washington, D.C. 20005
                                         Tel: (202) 305-8659
                                         Email: christopher.edelman@usdoj.gov

                                         *Counsel for the United States of America*

## **REQUEST FOR IN-PERSON & *EX PARTE*, *IN CAMERA* ORAL ARGUMENT**

Pursuant to Local Rule 7.1(d), the Government respectfully requests an in-person hearing in connection with this Defendant Wymer's motion to vacate the Government's protective order, including a portion of such oral argument that is *ex parte* and *in camera* to permit argument on the classified information that bears directly on this motion.  The Court previously contemplated this approach.  *See* Electronic Clerk's Notes, ECF No. 306 ("The Court will review the Governments ex parte submissions. . . . If necessary, the Court will hold an ex parte hearing.").  The Government submits that it would be appropriate to hold such a hearing here.