**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| INA STEINER, DAVID STEINER and STEINER ASSOCIATES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> EBAY INC., et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) Case No.: 1:21-cv-11181-PBS <br> ) <br> ) **Leave to File Granted on November 26,** <br> ) **2025 (Dkt. 819)** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT STEVE WYMER'S OPPOSITION TO DEFENDANT EBAY INC.'S
MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF WORKING CONDITIONS IN
THE GLOBAL INTELLIGENCE CENTER**

## I.    INTRODUCTION

The jury should be allowed to consider highly probative evidence about the abusive tactics that Jim Baugh used to mold his team into a high-demand, high-control ("HDHC") group characterized by extreme secrecy and obedience. As the Court noted, where terrible conduct goes unreported, juries ask, "Why didn't you disclose right away?"—and the Court and eBay agreed that experts can help answer why "counterintuitive" non-reporting happens. 9/5/25 Tr. at 45:7-8, 50:5-23 (Dkt. 739). Given the number of Baugh's subordinates and the outrageous conduct that he directed, jurors will naturally wonder why the subordinates did not disclose the conduct to senior eBay management (or assume those above Baugh greenlit the conduct). Shielding the jury from any evidence of how Baugh controlled his team and inculcated secrecy will preclude the jury from answering that question, and will effectively hamstring a key part of Steve Wymer's defense: that he did not know, foresee, or intend the crimes of Baugh and six members of his team.

In seeking to exclude this critical evidence, the MIL rests on the premise that Wymer's lack of knowledge of, and inability to foresee, Baugh's and his team's conduct toward Plaintiffs is "a fact that the direct evidence puts beyond dispute." Dkt. 799 ("MIL") at 5. Wymer appreciates eBay's recognition—from years of discovery and depositions—of the "overwhelming" evidence that Wymer did not, and could not, know what Baugh and his team were doing. *Id.* at 2. Wymer agrees that, given this evidence, Plaintiffs' claims against him should have ended at summary judgment. But those claims have been permitted to go forward. It is "[a]gainst this backdrop" of impending trial on a factual dispute over Wymer's knowledge (*cf. id.* at 3)—not the backdrop of arguments Wymer made on summary judgment—that the MIL must be decided and denied.

The GIC evidence and testimony from Dr. Jacqueline M. Johnson—an expert on HDHC tactics—is highly probative (not unfairly prejudicial) and corroborative (not cumulative). Dr. Johnson will provide context on techniques commonly used by HDHC leaders to achieve secrecy

1

and insularism. She does not use the label "cult"—a term used by Baugh's subordinates[1]—as she prefers the less-loaded term "HDHC," which focuses on methods of control. GIC members will testify, briefly but crucially, on Baugh's use of sleep deprivation, threats of violence, and social isolation, among other methods. No mini trial will be required. Wymer anticipates presenting the entirety of the GIC evidence through 90 minutes of deposition testimony and a 30-minute examination of Dr. Johnson, meaning everything eBay seeks to exclude can be presented in just *two hours*. The probative value is high, the Rule 403 risks are low, and the MIL should be denied.

## II.    BACKGROUND

### A.    Baugh's Manipulative and Coercive Control Tactics

Three former intelligence analysts will testify about the abuse Baugh used to isolate and control them. To "break" or "crack"[2] GIC members, Baugh employed classic HDHC tactics including: sleep deprivation; encouragement of infighting to win his favor; social isolation from other employees, family, and significant others; exposure to violent simulations and gory videos; lectures about loyalty and the need to treat him as the "Dad" of their "family"; and threats of punishment for disloyalty, backed by a gun.[3] ███████████████████████████

████████████████████████████████████████[4] ████████████████████

████████████████████████████████████ Ex. 4 at 307:23-308:20.[5]

---

[1] Declaration of Trevor N. Templeton Exhibit ("Ex.") 9 at 25:11-19; Ex. 2 at 19:14-20:5.

[2] Ex. 2 at 72:3-13; Ex. 9 at 35:7-19.

[3] *See, e.g.*, Ex. 9 at 28:24-29:7, 32:16-23, 33:18-34:6, 36:16-38:12, 38:20-40:16, 41:15-42:16, 45:25-46:13, 49:16-50:9; Ex. 1 at 33:2-34:7, 50:19-52:10, 54:8-58:2, 59:10-61:25, 62:12-66:11, 67:18-68:15, 69:17-72:4; Ex. 2 at 20:6-21:9, 22:14-23:15, 28:3-14, 37:17-38:9, 39:22-41:3, 41:7-43:24, 45:1-24, 47:6-23, 53:20-56:24, 57:14-20, 58:8-59:25, 70:15-72:1, 72:3-74:13, 74:20-77:18, 80:11-24, 92:19-94:1, 97:20-99:7.

[4] Ex. 1 at 67:6-12; Ex. 2 at 46:14-47:5.

[5] Baugh's hold is illustrated by his use of GIC personnel in a campaign unrelated to eBay *during the same period* he targeted Plaintiffs. He directed subordinates to plan a similar operation against an Arkansas prosecutor investigating his father. Ex. 2 at 84:20-87:1; Ex. 1 at 72:14-74:4. When questioned about this, Baugh invoked the Fifth Amendment. Ex. 4 at 122:17-126:3, 135:17-137:2.

**B.      Dr. Jacqueline Johnson's Proffered Testimony about HDHC Groups**

Dr. Johnson will offer expert testimony to assist the jury's understanding of the acts at issue and why GIC members—including young inexperienced employees as well as more seasoned lieutenants—would follow Baugh's directives to commit crimes and not report them to eBay executives. The MIL does not challenge her extensive expertise or the validity of her opinions regarding HDHC groups: namely, how such leaders commonly use abusive tactics to manipulate followers to engage in pathological behavior while concealing the group's activities from others. As Wymer's counsel told eBay's counsel before eBay filed its motion, Dr. Johnson would *not* opine on the GIC, equate it to NXIVM, or label it a "cult." *Contra* MIL at 4.

**III.    ARGUMENT**

**A.      The GIC Evidence's Probative Value Is Not Substantially Outweighed**

Evidence of Baugh's secretive, totalistic control over the GIC is probative of Wymer's lack of actual or constructive knowledge of what Baugh and his team were doing or intended to do. This probative significance on a key issue is not substantially outweighed by any Rule 403 risk.

Since a "key issue" is what Wymer knew and intended regarding Baugh's conduct toward Plaintiffs, evidence of the abusive, insular environment in the GIC *at a minimum* "move[s] the inquiry forward to some degree" by explaining why Wymer had no warning of what Baugh's team was doing to Plaintiffs. *See Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010). The discrepancy between Baugh's outwardly professional persona and his secret abuse in the GIC underscores why Wymer could not have foreseen what Baugh would do to Plaintiffs—particularly since he lacked specific information about Baugh's propensity to engage in such conduct and was unaware of red flags such as Baugh's alcoholism or prior use of similar tactics. Ex. 2 at 86:20-87:5, 81:4-82:7, 83:11-84:15; *see Kavanagh v. Trs. of Bos. Univ.*, 795 N.E.2d 1170, 1178 (Mass. 2003) (foreseeability requires "specific information" suggesting another's propensity for the

wrongdoing). And the GIC evidence shows the crimes were so extraordinary as to be an intervening cause.[6] *See Bobbitt v. United States*, 2006 WL 335231, at \*1 (D. Mass. Feb. 10, 2006).

eBay has not established that this probative value is substantially outweighed by Rule 403 risks. *See United States v. Carrasco*, 79 F.4th 153, 163 (1st Cir. 2023) ("party opposing the admission of evidence on Rule 403 grounds … bears the burden"). Where, as here, the evidence bears on a "critical element," "there must be a *significant* tipping of the scales against [its] evidentiary worth[.]" *United States v. Iwuala*, 789 F.3d 1, 8 (1st Cir. 2015) (emphasis added). Evidence is not cumulative unless "its probative effect is already achieved by other evidence in the record," *United States v. Perrault*, 995 F.3d 748, 768 (10th Cir. 2021), and there is no other evidence like this. Rather than cumulative, it is *corroborative* of Wymer's "assailable" testimony, as well as Baugh's own testimony that Wymer lacked knowledge. *See id.*; *contra* MIL at 3. eBay faces little risk of unfair prejudice from this evidence—*Baugh* may be viewed as "a bad person" for sexual assault and other abuses, MIL at 3, but Baugh is not a defendant.

Finally, how Baugh ran the GIC is not a "collateral issue," and his subordinates' focused testimony would not be a "mini-trial." MIL at 5. The other parties have not disputed their testimony—and, as eBay concedes, Baugh himself merely "invoked the Fifth" on key points. *Id.*

### B.       Dr. Johnson's Testimony's Probative Value Is Not Substantially Outweighed

Through focused expert testimony, Dr. Johnson would educate the jury on methods used to create an HDHC environment in which group members will carry out abhorrent acts for the

---

[6] *Baker v. Dalkon Shield Claimants Tr.*, 156 F.3d 248, 252 (1st Cir. 1998) ("[T]he defendant may … present evidence showing that some other cause accounts for the injury."); *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 754 F. Supp. 3d 373, 379 (E.D.N.Y. 2024) ("Defendants must be permitted to introduce evidence and solicit testimony … because such evidence is necessary to allow Defendants to provide a plausible alternative explanation for the injuries that Plaintiff claims to have suffered and to try to defeat Plaintiff's theory of causation."); *Boucher v. CVS/Pharmacy, Inc.*, 822 F. Supp. 2d 98, 104 (D.N.H. 2011) ("The jury should be permitted to hear evidence in support of this alternative explanation for [plaintiff's injury].").

leader without reporting them to the outside world. By explaining how such behavior could—and why such behavior *would*—have been concealed, this corroborates Wymer's testimony that he did not know what Baugh and his team were doing. *See Doe ex rel. Pike v. Pike*, 405 F. Supp. 3d 243, 249 (D. Mass. 2019) (expert testimony about "how abusers conceal their behavior is highly probative and relevant" where jury must "assess the credibility of [the defendant's] claim that she was unaware of" the abuser's wrongful behavior).[7] Further, eBay rightly agreed with the Court that expert testimony helps explain counterintuitive behavior, Dkt. 739 at 50:5-23,[8] and Dr. Johnson will explain counterintuitive behavior of those subjected to HDHC methods: (i) failure to leave or report wrongdoing, and (ii) inability to exercise independent moral judgment. Along with the GIC evidence, this will allow the jury to understand why Wymer would receive no notice or report of Baugh's plan.

Finally, since Dr. Johnson will not characterize the GIC at all—let alone call it a "cult"—the strawman Rule 403 risks asserted do not exist, let alone substantially outweigh the probative value. *Contra* MIL at 4-5. Baugh's secret use of HDHC methods also used by the NXIVM leader may reflect poorly on Baugh, but it does not prejudice eBay or other Defendants. Regardless, other Defendants claiming prejudice should not preclude Wymer from putting on a complete defense, given the Court's decision to try the Individual Defendants and eBay all together.

## IV.   CONCLUSION

For all these reasons, the Court should deny eBay's motion *in limine*.

---

[7] Lack of knowledge and foreseeability would defeat secondary liability. *See Go-Best Assets Ltd. v. Citizens Bank of Mass.*, 972 N.E.2d 426, 430, 438 (Mass. 2012); *Alberts v. Devine*, 479 N.E.2d 113, 121 (Mass. 1985); *Bobbitt v. United States*, 2006 WL 335231, at *1 (D. Mass. 2006).
[8] *See, e.g.*, *Pulinario v. Goord*, 291 F. Supp. 2d 154, 164 (E.D.N.Y. 2003) (counterintuitive conduct of rape victims), *aff'd*, 118 F. App'x 554 (2d Cir. 2004); *Bloomfield v. Senkowski*, 2008 WL 2097423, at *35 (E.D.N.Y. May 15, 2008) (expert testimony on matters "counterintuitive" and thus "beyond the ken of laypersons").

Respectfully submitted,

STEVE WYMER,

By his Attorneys,

**s/ *Caz Hashemi***
Caz Hashemi, Esq. (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300
chashemi@wsgr.com

Melissa Mills, Esq. (*pro hac vice*)
Trevor Templeton, Esq. (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
953 East Third Street, Suite 100
Los Angeles, CA 90013
(323) 210-2900
mmills@wsgr.com
ttempleton@wsgr.com

Lon F. Povich (BBO# 544523)
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
(617) 621-6578
lpovich@andersonkreiger.com

Dated: November 26, 2025

6

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2025, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Caz Hashemi*
Caz Hashemi