IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

INA STEINER, et al, )
)
Plaintiffs )
)
-VS- ) CA No. 21-11181-PBS
) Pages 1 - 38
eBAY INC., et al, )
)
Defendants )

**STATUS CONFERENCE BY VIDEO**

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE

United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts 02210
February 11, 2026, 9:37 a.m.

LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 7200
Boston, MA 02210
leemarz@aol.com

A P P E A R A N C E S:

FOR THE PLAINTIFFS:

ANDREW G. FINKELSTEIN, ESQ.
Finkelstein & Partners, LLC
1279 Route 300
Newburgh, NY 12551

FOR THE DEFENDANTS:

JACK W. PIROZZOLO, ESQ. and
KATHRYN LUNDWALL ALESSI, ESQ.
Sidley Austin LLP
60 State Street
34th Floor
Boston, MA 02109

KATHRYN LUNDWALL ALESSI, ESQ.
Sidley Austin LLP
60 State Street
34th Floor
Boston, MA 02109

EMILY A. ROSE, ESQ.
Sidley Austin LLP
1501 K Street, NW
Washington, DC 20005

SCOTT T. NONAKA, ESQ.
Sidley Austin LLP
101 California Street
Suite 3500
San Francisco, CA 94111

MELISSA MILLS, ESQ. and
TREVOR N. TEMPLETON, ESQ.
Wilson Sonsini Goodrich & Rosati
953 East Third Street
Suite 100
Los Angeles, CA 90013

CAZ HASHEMI, ESQ.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 93404

A P P E A R A N C E S: (Cont'd)

FOR THE DEFENDANTS:

MARTIN G. WEINBERG, ESQ.
Martin G. Weinberg, PC
20 Park Plaza
Suite 1000
Boston, MA 02116

ANDREW O'CONNOR, ESQ.
Ropes & Gray - MA
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600

ABBE DAVID LOWELL, ESQ.
Winston & Strawn, LLP
1901 L Street, NW
Washington, DC 20036

KELLY A. LIBRERA, ESQ.
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166

LON F. POVICH, ESQ.
Anderson & Kreiger LLP
50 Milk Street
21st Floor
Boston, MA 02109

ALSO PRESENT:

CHRISTOPHER D. EDELMAN, ESQ.
Department of Justice, Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20530

P R O C E E D I N G S

THE CLERK: Good morning, Judge.

THE COURT: Good morning to everyone.

THE CLERK: So I have both sides on, so I'll call the case.

THE COURT: Thank you.

THE CLERK: The Court calls Civil Action 21-11181, Steiner, et al v. eBay Inc., et al. Could counsel please identify themselves.

MR. FINKELSTEIN: On behalf of plaintiff, Andrew Finkelstein, and with me -- Judge, if you'd like me to announce everyone, I'm happy to.

THE COURT: Just you're going to be the spokesman?

MR. FINKELSTEIN: Unless there's an issue that I have to defer to someone, and then I'll introduce them.

THE COURT: That's fine. Well, let me ask you, how many members of your team will be at the trial?

MR. FINKELSTEIN: At the trial, there will be three plus a technology person.

THE COURT: So three lawyers plus a tech?

MR. FINKELSTEIN: Correct.

THE COURT: Thank you.

All right, Mr. Pirozzolo.

MR. PIROZZOLO: Good morning, your Honor. Jack Pirozzolo on behalf of eBay, and there are others who I may

call on, if necessary, but I'm --

THE COURT: How many members of your team in the courtroom?

MR. PIROZZOLO: We have four lawyers, plus one corporate representative, plus one technology person.

THE COURT: Okay, thank you.

MR. FINKELSTEIN: Obviously, also my clients will be there.

THE COURT: Who just said that?

MR. FINKELSTEIN: Andrew Finkelstein. I'm sorry.

THE COURT: Of course.

MR. WEINBERG: Good morning, your Honor. Martin Weinberg, Kelly Librera, Abbe Lowell on behalf of Devin Wenig, and I'll let Mr. Lowell answer regarding the courtroom expectations.

THE COURT: Okay, I see Mr. Lowell. I see Mr. Weinberg. How many people all together on your team? I missed that.

MR. LOWELL: At counsel table, your Honor, will be, like, three or four attorneys, but, I mean, not all, and counsel's right behind; and then there will be somebody to help us with technology. We're figuring out who can else be needed in a support capacity, so it would be the same numbers as some of the others, like three or four.

THE COURT: Okay.

MR. O'CONNOR: Good morning, your Honor. Andrew O'Connor for Wendy Jones, and I'm here with Sarah Walters as well. It will be three lawyers at counsel table along with our client.

THE COURT: All right.

MS. MILLS: Your Honor, Melissa Mills on behalf of Steve Wymer along with Caz Hashemi and Trevor Templeton. I believe Lon Povich is on as well. We intend to have three lawyers at counsel table and likely a technology person.

THE COURT: All right, so three plus who?

MS. MILLS: A technology person, your Honor.

THE COURT: Plus Ms. Jones, right?

MS. MILLS: Plus Mr. Wymer.

THE COURT: I'm sorry. Mr. Wymer.

All right, so I'm here primarily not to deal with the merits of anything but to talk about the logistics, which are very daunting given the number of lawyers, the number of parties, and the limited size of my courtroom, so let's talk about that.

As you may remember, and I issued an order of this, we'll have this trial in two phases. Phase one will be liability and whether to award punitives, and phase two will be, if we get to it, the amount of the punitives. So that's sort of how that's going to go. We will be sitting from 9:00 until 1:00, but I expect everyone to be here and ready to go at

8:30 in the morning because we'll review objections to exhibits as they come in, you know, for that day kind of thing.

So if you remember -- I just spoke to phase one -- 30 minutes per party for openings, 20 hours for plaintiffs and 26 hours for defendants for witness -- you know, the total of witness examinations, direct, cross, redirect, recross, and 60 minutes per party for closings.

Now, that's just phase one, if you remember. And what we were hoping to do was -- there's a little bit of Murphy's Law. For those who do not live in Boston, we have had at least three or four snowstorms in the last few months, so there's still a little bit of Murphy's Law. We can still get snowstorms in March. And the other thing is, I'm supposed to be at the First Circuit Judicial Conference, which is sort of de rigueur, in the middle of March. I think it's like the 10th and the 11th. We'll give you the exact dates of those, which cuts into our time and may move it up a few days in terms of --

Or I'm also reserving -- we're sitting 9:00 to 1:00 -- the possibility is, if we really need that time that I've lost, of going into a few afternoons because I think we're going to lose jurors if I don't keep on a timely schedule. So I wanted to flag that issue for you all.

THE CLERK: Judge, it's Mem. The First Judicial -- I opened up your calendar for you -- it's actually the 17th and the 18th.

THE COURT: All right, so I'm a week off, okay, First Circuit Judicial Conference, which is Portland, Maine, so I'm not flying. I'll probably be there the Tuesday and the Wednesday, okay?

Okay, we have a serious problem in our courtroom, which is, I don't know how I'm going to fit everyone in when I'm impaneling. So I just talked to the Jury Commissioner. The most I can fit in is 100 people, 100 prospective jurors in the venire. So I'm assuming that once I tell them it's potentially a six-week trial, I'm assuming I'm going to lose half of them. Has anyone ever impaneled a jury the size -- you may have better statistics than I have. Mr. McAlear actually thinks there's a chance I could actually lose three-quarters of them, but, regardless, I'm going to lose a lot. So my theory is that I am going to ask that question first.

So I'm going to be the first out, good news, we're going to be the first out; we'll get a fresh pool. We'll be first out, which means they'll probably come in around 9:30 or 10:00. I'm going to have 100 jurors there. I'm going to right away ask how many people can't sit for six weeks. I'm going to get every doctor, every teacher -- you know this, you're all experienced -- every doctor, every teacher, every sole practitioner, every self-employed person, and then I'm just going to get rid of them. I'm going to send them back to the other judges for impanelment.

So let's say that leaves me in the vicinity of 50. At that point we'll have more room, hopefully, so people can start coming in. I was thinking about putting 116 in because we could put 16 in the jury box, but I'm worried about that because I'm going to need room for the numbers of people you just talked to me about. I mean, for sure, right, the parties are going to want to be there and eyeball the jurors, right? And I have to assume, minimum, one lawyer and maybe two. I'm assuming that there may be a few people who hire jury consultants.

So I'm just trying to figure out how to fit everybody in. You're all extremely experienced lawyers, so one thought would be is, you don't need everybody there, a full legal team, even clients, even jury examiners, if I'm just going to knock people out because they can't sit. So I was sort of thinking we would only do first, when I bring in the 100 jurors, it would be one lawyer at counsel table and your client. I'm not sure how many --

Mem, I know some folks are coming in next week so we can try out the spacing of all this. We can get four tables, which is essentially what we need, one for the plaintiff, and maybe we could fit all the defendants in three tables. Maybe we could even get a fifth table in there, but I can't fit the kinds of teams you just talked about and impanel.

Any proposals here?

MR. PIROZZOLO: Well, for purposes of eBay, I don't think we need all of our lawyers at the table during jury selection, so we could cut down the number during that process.

THE COURT: Yes, I'm thinking the client and one lawyer at each table, just for the preliminary piece, just, like, who is it who can't sit for six weeks? And then when I start going into the, you know, "Have you heard of the eBay case? What do you know about the eBay case? Do you have any biases? Did you have a bad experience on eBay? Do you think they're the greatest thing since sliced bread?" you know what I mean, all those kinds of questions, we could have more of a team there.

MR. WEINBERG: It's acceptable to Defendant Wenig that we have one lawyer during the hardship phase and then the further team when your Honor starts the normal voir dire.

MR. PIROZZOLO: That's fine with eBay as well.

MR. FINKELSTEIN: Sure, that's fine with the plaintiffs.

THE COURT: All right, thank you. I know the plaintiffs have two plaintiffs, so I'm going to have to logistically figure that out. And I know you once told me -- I don't know if it's still the case -- that there's a lawyer for each of the plaintiffs. Is that still the case? Can we dispense with that, at least for this phase of the jury impanelment?

MR. FINKELSTEIN: Yes.

THE COURT: All right, so now we've got the second phase, which is, I've knocked out everyone who can't serve, you know, the teachers, et cetera, and now I'm at the more substantive phase. I'm not sure what to do. I still think I need to have your client at the table, but I'm trying to figure out how they can actually see -- typically what I do -- oh, by the way, if we don't have enough jurors, Jim assures me we can get a second traunch on Tuesday. I just don't want to lose a day if I can get through it, but we'll try for one day.

Now, what do I do when I've knocked them out? I've now got 50 people in the room. I now have more space to fit all your folks. What I typically do is ask all the questions, have people raise their hands if they have an affirmative response, and then bring everyone up to sidebar and say, "What's the issue? Oh, I had a bad experience at eBay," or, "I had a great experience at eBay," those kinds of answers. But I can't fit your whole set of teams of lawyers at sidebar. It just can't happen, and neither could I fit all the clients.

Now, one thing I could do is put the juror in the box, but if I do that, then all the other jurors hear the answer, which is the problem, and I don't have an adjacent courtroom to put them in anymore. So we could look around for an adjacent courtroom where we could put the jurors, and so that if they're sitting in the box, all the parties can hear the answers. Or

what I'm going to have to do is just bring the key players up to sidebar because I don't think I can fit, eight times four, 32 lawyers up at sidebar plus the prospective juror. So I think we're going to have to wait and see.

Maryellen, if we can find another courtroom to put all the jurors in, we might have to do that so everyone can hear, and that would be fairer. You know what I mean?

THE CLERK: Okay.

THE COURT: But if we don't, we're just going to have to do it the way we always do it, and we'll just have to limit the number of lawyers. Will your clients want to be there? Do you know?

MR. PIROZZOLO: For the voir dire, I think I would expect the corporate rep would want to be there.

MR. WEINBERG: The same with Mr. Wenig.

MR. FINKELSTEIN: The same with the plaintiffs.

THE COURT: Yes, so I have to finesse that logistically, and I'm not sure I have an answer yet. I used to have the courtroom next door when there were all those vacancies, but Judge Joun, one of our newer judges, now has it. So I'm going to see if I have even that option. If not, we're just going to have to be flexible about it. In any event --

MR. EDELMAN: Your Honor, I'm sorry to interrupt. I didn't get to notice my appearance at the beginning for the record, but this is Christopher Edelman from the U.S. Department

of Justice. We'll only have one person.

THE COURT: Yes, though I'm not expecting you to be at sidebar for the voir dire.

MR. EDELMAN: That's absolutely fine.

THE COURT: In fact, you don't even have to be here for the jury thing.

MR. EDELMAN: Understood.

THE COURT: I know you have one matter you want me to address, but I'm not getting to that right now, okay?

MR. EDELMAN: Understood, your Honor. We're not asking that you address it today.

THE COURT: Okay.

He wants an ex parte hearing with me, which I'm likely to grant, so just flagging that issue so I'm not too cryptic about it.

We'll obviously have ten in the box.

Now, sidebars, in general, I minimize sidebars, and that's why I meet at 8:30 in the morning. But I can't have these full teams every time if there's a problem or an objection. So I think you should have designated hitters, and for sure, the parties don't come up at sidebars. So even if it's just two a side, it's ten people, which I think I can handle, but it can't be the whole team. I'd encourage you to let a few of the younger associates occasionally come up because it's probably a unique opportunity for them. So few

things go to trial. But, in any event, I'm just flagging that.

I'm really worried about all of you because there's so much team power on your side, and it's just me and my law clerk. so no motions should be filed -- I think we went through this before -- between 6:00 p.m. and 7:00 a.m. in the morning. I will not be reading them or ruling on them in the middle of the night. So get everything filed by 6:00. I certainly don't expect a response overnight. You're all preparing a trial, right? And then I will meet you at 8:30 in the morning in order to deal with any big issues that come up.

All right, so exhibits, this is a main area of controversy for me. I can't deal with the number of objections that you have on the fly. As I understand it, Maryellen, you have the exact numbers, but it's something like 142 are agreed upon and something like 500 are disputed that are likely to be introduced at trial.

THE CLERK: And there's another batch, Judge, of maybe 1,701 that may come in, and they're also objected to, but they're not --

THE COURT: I'm not even going to worry about those if they come in. I can't even worry about those.

So the ones that are likely to come in, what I was thinking was that the night before a witness is going to take the stand, by 5:00 o'clock, you will share with opposing counsel the exhibits you're going to use with that witness.

Now I'm talking about direct exam. So at 5:00 o'clock, let's say we have Joe Schmo on. You're going to share the exhibits you plan on using and whether they're objected to or not, and I will have a hearing on them the following morning. All right?

I'm having a hard time, honestly, getting through your deposition objections because I don't know these people. You know, you pick snippets at a time, and I don't know the context or necessarily even what the basis for the objection is, other than you list every objection under the Federal Rules of Evidence. So I'm not quite sure how to handle that. I may have to, you know, that night after court or first thing in the morning deal with any portions of the deposition transcripts I don't understand, but then you're going to have to -- are they all audio, or is someone reading them in? Do we know?

MR. PIROZZOLO: They're all videos.

THE COURT: They're all videos, so I don't know if you have somebody who can edit fast because I'm sustaining a fair number of the objections. So I need to get them to you, and I'm going to do as many as I can and then scan them in and send it to you edited. But I may not finish them all, and some of them I just don't understand, and I'll get to them in a minute, all right? But the exhibits are the ones that are killing me.

We had a good laugh yesterday. I don't know who came up with the numbering scheme, 8 to the 92nd? I had to go back to math. No, we can't do it that way. I think the better way

to do it is to just do it straight out numerically. So if you can get your paralegals together to just go, you know, 1 -- how many were undisputed, 1 to 141? -- and then all the other ones just in numeric order, and then I'll be able to rule on them.

THE CLERK: Judge, it's just Mem one time. On the numerical, so, Counsel, this would be super-helpful. Like the Judge just said, you can run them consecutive. But the ones that are going to start to be contested, it would be greatly appreciated, just say number 200 through 700 or 500 is contested. Just put a hyphen and put a C beside it, all of them, so that we know 200 has a hyphen and a C, which means contested. And you can still run the numbers, like the Judge said, consecutive. That would help.

Is that okay, Judge?

THE COURT: Does anyone actually use the 8 to the 92nd? We never have seen that before. But, anyway, it's more helpful to us just to have them numerically done.

And now the bigger question is, I don't know -- I've had many trials recently, I've been on trial a lot, where it's very hard for me to rule on the fly on these chats and these emails that go on for six pages. So it's not just the number 52. It's usually -- it's ten pages long. So I don't know if there's a proposal on how to deal with it other than you have to tell me the night before, and you have to confer the night before. I find, in general, most of that goes away, but I

can't just put in a full chat. How many of these would you say are chats that go on for pages, a lot of them? I just don't know, and so you're going to have to try and confer at 5:00 o'clock.

And the following two things are true: We'll get through as much as we can at 8:30, but there's a problem, in that in general, and unless you agree otherwise, I don't require documents being used on cross-examination because it's like giving away your strategy kind of thing. Do you want to change that presumption? My guess is you don't, right?

MR. PIROZZOLO: No, your Honor.

MR. WEINBERG: We don't.

THE COURT: So how am I going to be ruling on objections? I mean, honestly, what I'm likely to do -- and this is where you're all at peril -- which is, if there's an objection to something being used on cross and I've never seen it before, I am not an objection lady. In other words, we're not going to spend hours at sidebar. But to the extent that I rule against you on -- you know, you're seeking something and someone else objects, if there's an objection that I sustain, it's going to count against you in your time. If there's an objection that I overrule, it's going to count against the other person on their time, because there's nothing jurors hate more than to have everyone sitting there at sidebar. So, frankly, if it's a well-known document and you know that the

other side is going to use it, I mean, I think you should probably vet it with me beforehand because you have some peril, depending on how I rule.

MR. LOWELL: Judge, this is Abbe Lowell. I think you've probably done this. I've done this various times. I have no objection to providing a complete list or a complete copy of those which we might use only to your Honor and not to plaintiffs that might be cross-examined, so you'll have them in advance.

THE COURT: You mean ex parte or just with an agreement not to prep your client with them?

MR. LOWELL: No. I mean it would be ex parte, and you would get a complete set of what might be used only for the Court, not for plaintiffs.

THE COURT: Well, that's one way of doing it. Would people like that?

MR. LOWELL: It would give you the opportunity to know in advance if you want. I don't know that there's tons and tons of those, but it seems to me that's something that has been used in other trials I've been in, and it helps the Court know in advance, but it doesn't, as you say, tip the strategy or provide a witness in advance what they --

THE COURT: I'm very happy to do that, or, alternatively, the way I've sometimes done it is with a protective order that you can't share it with your client. I'm

happy to go either route.

MR. LOWELL: With all respect, I wouldn't want to do the other. I wouldn't even want the other side's lawyer to know that that document --

THE COURT: Okay. And, as I understand it, Mr. Lowell, sometimes you're all going to be in sync on a strategy, but to some extent, there are some competing strategies here. So it would just be, am I correct, you would give it to me but not necessarily even the codefendants?

MR. LOWELL: That's likely the case.

THE COURT: Okay, do people think that's a good solution?

MS. MILLS: That's fine, your Honor.

THE COURT: I'm happy to do that. Okay, that's very helpful.

MR. PIROZZOLO: That's fine for eBay as well.

THE COURT: Hopefully you'll all have the opportunity to track how much time has been used on the time clock, and I'm assuming that that's pretty straightforward. We'll probably keep our own time too so that there isn't a problem there.

MR. FINKELSTEIN: But, Judge, would it just be possible, at the beginning of each day, you let us know where you're at, just so we're in sync?

THE COURT: Sure, or we can all do it. We can all keep notes.

MR. FINKELSTEIN: Okay.

THE COURT: Okay, that's a good idea. All right, I have this punch list here. Are you asking for daily copy with the Court Reporter?

MR. PIROZZOLO: So eBay has asked for daily and real time, your Honor.

MR. FINKELSTEIN: And plaintiff is getting daily.

THE COURT: Okay, so you'll work with Lee Marzilli, my Court Reporter, on that. It's a huge big deal for her to have six weeks worth of daily copy. I think she's hired some other people to help. Of course, I have things -- the only reason I'm going 9:00 to 1:00 is because I have all this other stuff in the afternoon, so I can't totally disappear and do this case. I mean, if nothing else, as you've all read in the paper, there's so many immigration cases, you know, if nothing else, not to mention my daily docket. So I can't give you the whole afternoon, but I do need a court reporter for the afternoon, so just to make sure that you're coordinating with her.

Now, my law clerk did a very helpful outline. So what's left in this case after summary judgment? You may want to double-check us on this because I'll be making rulings on my understanding about what's left. And don't forget, it's both liability, compensatory, and whether the jury wants to grant punitives in phase one.

So, as I see, Count 1 is still in with eBay and the executive defendants. Count 3 is still in with eBay and the executives. Count 4 is negligence, just eBay. Count 6 is negligent supervision, eBay, Wenig, and Jones. Count 9, Mass. Civil Rights Act, eBay and the executive defendants; defamation, eBay and the executive defendants; trespass, eBay and the executive defendants; false imprisonment, eBay and the executive defendants. By the way, the defamation is only on the Craig's List post, and Count 14 is the ratification issue with respect only to eBay.

Now, I'm not a hundred percent sure if you agree with that. We did a quick -- just to make sure. I'm not going to be giving them any kind of preliminary instruction on the substance of any of these counts, but I'll be ruling on evidentiary objections under the understanding these are still left, and maybe you could all see if you disagree with this.

So effectively it's Counts 1, 3, 4, 6, 9, 10, 11, 12, and 14, and that's going to include a question about compensatories and about punitives. I'm not even going through phase two yet because I don't know if we'll get there.

Now, there were two preliminary things. The plaintiffs filed two motions. No, maybe it was defendants who filed one. It had to do with -- I know there are a lot of people on this call, so I want to be careful here -- certain issues that Mr. Steiner has had recently, and everyone agrees

they shouldn't come in. And if you see that they're starting to come in, you'll jump up and tell me.

MR. FINKELSTEIN: No, Judge, that's inaccurate.

THE COURT: All right.

MR. FINKELSTEIN: We haven't put in our reply papers the statement that everyone agrees it shouldn't come in.

THE COURT: It was represented to me in discussions with counsel it was agreed.

MR. FINKELSTEIN: No. That was a mischaracterization of what --

THE COURT: I may have mischaracterized it.

MR. FINKELSTEIN: No, no, no, not you. What was set forth in the papers was a mischaracterization. At the time we had that meet-and-confer, I did not have the benefit of the records themselves and disclosed that, and said if it's not related, then --

THE COURT: Well, let me put it this way: It should not be mentioned at all in any opening statement.

MR. FINKELSTEIN: It won't be.

THE COURT: And it should not be mentioned at all in plaintiff's testimony -- I'm sort of assuming that plaintiff's testimony will be among the first -- maybe I'm wrong, Mr. Steiner's -- until I've ruled on it.

MR. FINKELSTEIN: Okay.

THE COURT: Okay. The number two issue is --

MR. PIROZZOLO: Your Honor, I apologize for interrupting, but there's an additional issue related to that, and I do want to be careful, but yesterday, after multiple representations by the plaintiffs that they were not going to provide any supplementation, we received a supplemental expert report from their expert, and --

THE COURT: On the issue of Mr. Steiner?

MR. PIROZZOLO: On this issue and another issue, and if you have time, I can explain this, but it's a very significant change in the record.

THE COURT: Well, I'm aware -- how to say this without revealing too much -- at least some of it involves very private mental health evidence, and I don't think we should discuss it because there are a number of people on from the press, and I want to protect it. So if there's something that doesn't fall in that bucket, you can raise it now, or you can just file what you're going to file.

MR. PIROZZOLO: I think it's probably best that we supplement this because it does relate to additional information about mental health. It's different than the subject of the -- it's not exactly the same thing that's the subject of the motion before you, but it's new additional information that's come to our attention. And so I guess what I will do is, we'll file briefly a supplemental filing on that.

THE COURT: Okay.

MR. PIROZZOLO: But what I can say is that we got a supplemental report from the expert yesterday after representations that there wasn't going to be any supplementation of the expert report; and not only is that way out of time, it came under circumstances where we believe it was totally inappropriate because the plaintiffs had known about this information for some time.

MR. FINKELSTEIN: Judge, we won't --

THE COURT: Well, I will read it, and, if necessary, the week before trial have another hearing on it. I will be away Presidents week, so I probably won't get to anything till the last week, literally, before trial will be here.

The next issue was, there's a request for more discovery on the plaintiffs' financial situation. I haven't really read that in depth yet, but I have a thumb-on-the-scales note for anything that's brand-new. This case has been pending since --

MR. FINKELSTEIN: Judge, just to clarify --

THE COURT: It's been pending five years, so I'm leaning towards "no" to anything new at this point, but I will read the papers and make a ruling.

MR. FINKELSTEIN: If I could, I can just bottom-line it. It's simply to open so we can serve a subpoena. That's all it is, just to serve a subpoena related to financial information that's contained in the papers.

THE COURT: Well, that's not discovery. That's at trial that you're talking about. I'm not opening discovery short of something, like, glossily new. So I don't know. If it's a trial subpoena, that's a different story.

MR. FINKELSTEIN: That's all it is.

MR. O'CONNOR: Your Honor, that's not an accurate characterization of what they served, but we will be filing a response to their motion that was filed just before today.

THE COURT: Okay, good. Is there anything else that at least we can resolve right now? Let me just also say, if there's going to be any last-minute settlement -- I don't want to discuss it now, there are a lot of people on this call, but we're bringing in a lot of jurors, and it would be very troubling to have that happen before we impanel. It would be a big issue. So I'm just --

Maybe, Mem, is there a way of just letting me talk to the parties without everyone out -- I know the parties will be excluded too, just to have us out in a separate room?

THE CLERK: Sure. Let me see. Lisa, I might need your help on this because my computer -- yes, we can do it, Judge.

MR. FINKELSTEIN: Judge, can we have our clients present during this?

THE COURT: I don't know if she can handle that.

THE CLERK: Hold on. My computer for some reason --

Lisa, do you have access to the breakout rooms? I do not, and I don't know why.

MS. PEZZAROSSI: I do not. I do not. I can certainly remove people, but I don't have access to a breakout room.

THE CLERK: It's the same thing, Judge. She can remove all the spectators out of --

THE COURT: No, just remove all the spectators because I have a very simple question.

THE CLERK: So I'll let you know, Judge, when everybody else is just removed back to the waiting room.

MR. FINKELSTEIN: Just please be sure to keep our clients in.

THE COURT: Yes, we'll do that.

MR. PIROZZOLO: Your Honor, just a scheduling issue while we're waiting for that. Is the last day of trial planned to be April 3?

THE COURT: No, because we have to do phase two.

MR. PIROZZOLO: Okay. So April 3 is through the liability phase, your Honor?

THE COURT: I forget. We did the math, right? And we were hoping phase two would only be a week. We can count it down, but now it's a little unclear because I have to miss those two days for the First Circuit Judicial Conference. I could make it up in half days if there's a problem. I do know it's Easter week and Passover week, so we could try and adjust

around it for people's personal religious purposes, like, you want to be home with your family maybe? So I could try and adjust to respect that.

MR. WEINBERG: Judge, on a separate issue, there remains significant evidentiary objections to some of the proposed exhibits, as your Honor has seen. We just want to be sure that before there's a ruling by the Court, that they're not put into openings by the plaintiffs, some of the central pieces of evidence that the defendants object to. What would be the best way to do that for the Court?

THE COURT: I'm not going to look at them. I can't look at that number of exhibits in advance. I'm having trouble, I'll be honest, with the depositions. There's one that's highlighted in gray. Whose is that? That's -- I can't even read it, let's just start there, the highlighting is so dark, and I guess I don't have a dark enough printer. I can't even read the excerpts. I think it's reputation evidence about Mr. Wymer, so you may have to resubmit that. And there's other evidence to come in about the Deferred Prosecution Agreement which is admissible against eBay, but I'll have to give a limiting instruction with respect to the other defendants, so I'm looking for some sort of limiting instruction. So there are things that are coming up.

MR. WEINBERG: Judge, as to the DPA, it's a 73-page document, and it's permeated with opinions from the U.S.

Attorney. It's not even an ordinary statement of a --

THE COURT: Well, that's right, and I'm going to have to do that carefully, but I also need a limiting instruction because it does come in against eBay, but it doesn't necessarily come in against everybody else.

MR. WEINBERG: We would argue, Judge, a limiting instruction because of the number of paragraphs. They have a 61-paragraph statement of facts. It parallels the civil pleading. It's permeated, like I said, with the U.S. Attorney saying we're entering this agreement because of the criminal affects that --

THE COURT: No, I understand, but there was a deposition that refers back to that that only flagged certain paragraphs, and I thought that was useful.

MR. WEINBERG: Perhaps a stipulation that whatever relevance it has, eBay can enter a stipulation that would eliminate all of this multiple levels of hearsay and opinions by the U.S. Attorney, and, you know, allegations of criminal conduct --

THE COURT: Well, that's exactly the kind of objection that I won't be able to deal with on the fly at 8:30 in the morning. But there was a deposition I read last night -- I'm starting to go through them -- where they only flagged, I don't know, 20 statements, and I would give a limiting instruction.

MS. MILLS: Your Honor, some of our counsel have been

removed to the waiting room. Can we bring in Caz Hashemi and Trevor Templeton for this discussion?

THE CLERK: We can do that, Counsel, and then when you're ready to discuss things that nobody else should hear, you're going to have to confirm with us, because there's so many people in this hearing, if anyone else needs to be excused. We're doing the best we can, but we will let them back in right now.

MS. MILLS: I understand. Thank you very much.

THE CLERK: And then we'll confirm once we've excused everybody.

MS. PEZZAROSSI: Yeah, have people taken a look at this participant list here? They can see it. I have 26 participants in the room, and I'm not sure if anybody else needs to be removed.

THE COURT: I actually just have a very simple question, which is -- are we now sort of just the lawyers and the Court?

THE CLERK: Hold on. We're checking.

MS. PEZZAROSSI: Can counsel see the participant list? Can you click on the participant list and please let us know if someone else should be removed. I've got 26 participants currently on this Zoom, and I don't know if they're lawyers and they should be dismissed. And obviously anybody on the call, if you shouldn't be on the call, please just excuse yourself,

leave the meeting.

MR. PIROZZOLO: There's one person who should be added which is Scott Nonaka, but I don't see anybody else.

MS. MILLS: Also Caz Hashemi and Trevor Templeton are not in.

MR. LOWELL: Also my colleague Kelly Librera was somehow knocked off.

THE CLERK: I just brought Kelly back in. She's coming back in. She's joining.

MS. ROSE: I apologize. Off the top of my head, I don't recognize Sam Pokros, Clary Karasek, or Peter Kalicki.

MS. PEZZAROSSI: That's our court staff.

THE COURT: They're my team, okay, my law clerks and my docket clerk, so you'll be working with all of them extensively. So, anyway, this is taking too long and probably a lot longer than the answer is.

MS. MILLS: I'm sorry. May we have our counsel back in? Caz Hashemi and Trevor Templeton are still not in the room.

THE CLERK: Sure. We'll do that.

MS. MILLS: Thank you very much.

MR. PIROZZOLO: And, Maryellen, Kathryn Alessi as well.

THE CLERK: Okay.

MR. PIROZZOLO: Thank you.

THE CLERK: Okay, Kathryn is coming right back in.

MR. PIROZZOLO: Great. Thank you.

THE CLERK: Melissa, are we all set? Are your people back in?

MS. MILLS: Yes. Thank you very much, Maryellen.

[redacted]

[redacted]

[redacted]

[redacted]

MR. PIROZZOLO: Your Honor, my colleague Scott Nonaka I think was dropped from this group and should be added in. He had a question about the two phases that he wanted to ask the Court, just in terms of logistics.

THE COURT: Can we get him back in?

MR. PIROZZOLO: Yeah, if we can.

THE COURT: I forgot to ask this very important question: Lee, are you still recording this, or do you have to get back on?

THE COURT REPORTER: Oh, I was recording.

THE COURT: Okay, so we should impound that piece of the transcript that talks about settlement, but now we're going to go back into an open discussion.

MS. PEZZAROSSI: Judge, you want me to admit all in the waiting room now?

THE COURT: No. Just this one person who is --

MR. PIROZZOLO: Scott Nonaka.

THE COURT: Scott Nonaka, because I'm about to get out.

MR. PIROZZOLO: Here he is. Scott, if you can go on screen, that would be helpful. Great.

THE COURT: There you are at Sidley Austin.

MR. PIROZZOLO: Sidley Austin, yes.

THE COURT: Okay, what's the question? Sir, I understand you have a question about phase two, sir?

MR. NONAKA: So, your Honor, sorry. I just joined. I did not hear what was going on.

THE COURT: I know. I'm so sorry. Anyway, we're about to sign off and --

MR. NONAKA: I wanted a clarification regarding phase two. Based on your Honor's rulings related to the bifurcation in prior rulings, we wanted to understand exactly what would be part of phase one, punitive damages liability.

THE COURT: I thought I already parsed that.

MR. NONAKA: We wanted to make sure that the only issue for phase two is amount --

THE COURT: Yes.

MR. NONAKA: -- strictly related to liability --

THE COURT: Everything else comes in, which is a two-edge sword for all of you.

MR. NONAKA: Okay, we just wanted to clarify the issue.

THE COURT: Just the amount for anyone for whom there was a decision of punitives, just the amount. And, of course, I'm sure that counsel have informed their clients there are certain constitutional limitations in terms of the proportion to compensatory that it can be. In other words, it's not "sky is the limit." There are certain -- what's it, nine or ten times compensatory? What is it? It's something like that, right?

MR. PIROZZOLO: That's the outer constitutional --

THE COURT: That's the outer limit.

MR. PIROZZOLO: But it's actually lower than that.

THE COURT: Is it really? Well, I haven't had to look at that issue for a while, but I know it's not "anything goes," so --

THE CLERK: Judge, sorry. This is Mem. Do you want everyone back in the room now or what?

THE COURT: No. I think we're going to sign off right now.

THE CLERK: Okay, that's fine.

THE COURT: The government wants to see me at some point, as I mentioned, ex parte; and if issues come up at the last minute, we may hold another quick either in person or Zoom towards the end of the week. But the current thing is that I will be gone for the Presidents week, and we've I think gone through most of it. As I mentioned before, I've been struggling a little bit with the depositions, so we may need another hearing, or at least some argument on it.

Who's the one who does the gray highlighting, does anyone know, on the deposition transcripts?

MS. MILLS: I'm not sure about the gray highlighting, your Honor, but if I can speak on behalf of Mr. Wymer, who has I think the most depositions and the most objected to, we propose a process at which we would continue to meet with the other parties and then file some narrow designations or file something on the objections.

THE COURT: They have to be done. I've got to rule on them at some point. You know I have other cases in the afternoons. We're being swamped in this district.

MS. MILLS: Yes, I think, your Honor, within the next couple of days and get something on file within the next week.

THE COURT: Okay, that's good. And whoever -- I'm sure some paralegal didn't realize, or associate, how it shows up when it's printed, but actually the print is hard to read on

the gray highlighting. The yellow is beautiful, but I had trouble with the gray in actually reading some of the words. So, in any event, we might shoot an email to whoever it is and just say "Could you use another color?" Okay, that's minor, but the more major one is sometimes I don't understand the issues, so that's another issue.

MS. MILLS: We'll try to file something over the next week on that, your Honor.

THE COURT: Okay. All right, thank you, and see you soon, I guess. Bye-bye.

MS. MILLS: Thank you, your Honor.

(Adjourned, 10:28 a.m.)

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )
DISTRICT OF Massachusetts ) ss.
CITY OF BOSTON )

I, Lee A. Marzilli, Official Federal Court Reporter, do hereby certify that the foregoing transcript, Pages 1 through 38 inclusive, was recorded by me stenographically at the time and place aforesaid in CA No. 21-11181-PBS, Ina Steiner, et al v. eBay, et al, and thereafter by me reduced to typewriting and is a true and accurate record of the proceedings.

Dated this 12th day of February, 2026.

/s/ Lee A. Marzilli

LEE A. MARZILLI, CRR
OFFICIAL COURT REPORTER