UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INA STEINER, DAVID STEINER, and STEINER ASSOCIATES, LLC,<br><br>            Plaintiffs,<br>       v.<br><br>EBAY, INC., et al.,<br><br>            Defendants. | Civil Action<br>21-cv-11181-PBS |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION IN LIMINE TO EXCLUDE EVIDENCE OF LATE-DISCLOSED DAMAGES**

Defendants seek an extraordinary remedy: categorical exclusion of all evidence relating to David Steiner's late 2025 inpatient psychiatric hospitalization and threatening a mistrial if it is mentioned, mischaracterizing both the records and the law. The records diagnose Post-Traumatic Stress Disorder ("PTSD") arising from the prolonged stalking and harassment at issue in this case and document that a court postponement reactivated that trauma, precipitating inpatient care. Plaintiffs disclosed the hospitalization promptly once medically feasible and authorized. Defendants received the records weeks before trial and show no meaningful prejudice. Rule 37 does not mandate preclusion here, and the hospitalization evidence is probative of the severity and progression of Mr. Steiner's tort-caused injury. The motion should be denied.

## STATEMENT OF RELEVANT FACTS

### I.    Late November-December 2025 Hospitalization and PTSD Diagnosis

From November 21 through December 1, 2025, Mr. Steiner was admitted for inpatient psychiatric treatment following acute decompensation. The records repeatedly link the trauma to the cyber-stalking and harassment inflicted upon him by Defendants. Ex. 1, at 107, 108, 119, 133. The contemporaneous medical record establishes a direct causal chain between the prolonged stalking, the development of PTSD, and Mr. Steiner's psychiatric hospitalization.

PTSD was formally diagnosed and carried as an active hospital diagnosis during the admission. *Id.* at 24, 44, 46, 66, 68, 79, 90. The discharge summary likewise reflects PTSD as a principal condition treated during inpatient care. *Id.* at 3-4. Providers documented classic PTSD symptomatology, including intrusive recollections, emotional dysregulation, insomnia, hopelessness, and suicidal ideation. *Id.* at 6, 90, 115, 120. The records further note that Mr. Steiner had no prior psychiatric hospitalizations before the stalking. *Id.* at 90. Clinicians documented classic PTSD symptomatology precipitating hospitalization, including intrusive recollections and flashbacks, emotional dysregulation, insomnia, anger, hopelessness, and suicidal ideation. *Id.* at 6,

1

90, 115, 120. Multiple providers emphasized that Mr. Steiner had no prior psychiatric hospitalizations before the stalking and its aftermath. *Id.* at 11, 24, 44, 66. Treating providers repeatedly documented that, in 2019, Mr. Steiner and his wife were cyberstalked, terrorized, and inflicted with severe emotional distress—with related criminal proceedings continuing through 2024. *Id.* at 107, 108, 119, 133.

## II.     Trauma Reactivation as the Immediate Precipitant

Clinicians documented that Mr. Steiner's hospitalization was caused by a reactivation of unresolved trauma associated with the prolonged stalking and the loss of safety and control that accompanied it. *Id.* at 76, 87, 93. This reactivation was triggered by the unexpected postponement of a court proceeding. Importantly, the record consistently treats the legal proceedings as derivative of the stalking, not as an independent stressor. Providers describe the litigation as existing because of the stalking and as forcing repeated re-living of the traumatic events. *Id.* at 76, 87, 93, 127.

## III.    Timing and Circumstances of Disclosure

Mr. Steiner was hospitalized until December 2025. On January 23, 2026, Mr. Steiner authorized disclosure and executed HIPAA authorizations for the new providers. Plaintiffs notified Defendants and provided those authorizations the same day. At that time, counsel did not yet possess the medical records.[1] The parties met and conferred on January 26, 2026. That evening, Mr. Steiner obtained the hospitalization records and transmitted them to counsel. Plaintiffs produced the Bates-stamped records to Defendants on January 27, 2026. On this same day, Defendants themselves served trial subpoenas on Plaintiffs' health-care providers seeking additional medical records for use at trial. *See, e.g.*, Exs. 2-3 (subpoenas dated Jan. 27, 2026).

---

[1] In light of the Court's prior ruling on litigation-related damages, the relevance of those records was not immediately clear until Plaintiffs' counsel later reviewed them.

2

**ARGUMENT**

I.   **The Court Should Not Preclude Evidence of Mr. Steiner's 2025 Hospitalization**

   A.   **Plaintiffs' Disclosure Is Not Untimely Under Rule 37(c)(1)**

Defendants effectively ask this Court to adopt a rule that would sanction counsel for failing to supplement a disclosure before counsel was even clear as to its relevance, and when clarity was achieved it was remarkably produced within less than twenty-four hours.[2] That is not the standard imposed by either Rule 26(e) or Rule 37(c)(1). It would create a draconian and unworkable obligation untethered to Rule 26's requirement of timely supplementation under the circumstances, and inconsistent with the substantial body of case law interpreting it. *See, e.g.*, *Sinclair Wyo. Ref. Co. v. A&B Builders, Ltd.*, 2018 U.S. Dist. LEXIS 220608, at *23 (D. Wyo. Aug. 31, 2018) ("[T]here is no bright line rule on timeliness, rather 'the key inquiry is whether the timing of the supplemental disclosure is reasonable based on when the information was available to the plaintiff.'" (quoting *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 241 (D. Nev. 2017))); *Abiomed, Inc. v. Maquet Cardiovascular LLC*, 2020 U.S. Dist. LEXIS 128854, at *8 (D. Mass. July 22, 2020) (the mere ability to disclose earlier does not, by itself, make a disclosure untimely).

---

[2] Plaintiffs further note that the information at issue concerns a highly sensitive health matter affecting Mr. Steiner (one that arose from Defendants' conduct in 2019) and was disclosed the day that Plaintiffs authorized its release. Rule 26(e) does not require counsel to override a client's autonomy or prematurely disclose intimate medical details before the client is prepared to do so.

A ruling in Defendants' favor would effectively impose a regime under which attorneys must aggressively and repeatedly press already fragile clients to disclose the most personal aspects of their health within days of learning new information, for fear that any delay—even one grounded in sensitivity, privacy, or medical instability—would result in preclusion. That is not what the Federal Rules contemplate. The supplementation obligation is measured by reasonableness under the circumstances, including the nature of the information and the client's condition. It is not a mechanism to punish litigants for proceeding carefully when dealing with intimate medical issues.

3

Even if considered late, the disclosure was substantially justified and harmless to Defendants.³ *See* Fed. R. Civ. P. 37(c)(1); *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (whether a Rule 26(a) violation is justified or harmless lies within the district court's broad discretion (quoting *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996))). In deciding this issue, the Court should consider: (1) the prejudice or surprise to the opposing parties; (2) that party's ability to cure any prejudice; (3) the potential disruption to the orderly progression of trial; (4) whether the proponent acted in bad faith or with willfulness, and (5) the history of the litigation. *See Providence Piers, LLC v. SMM New Eng., Inc.*, No. 12-532, 2014 U.S. Dist. LEXIS 157125, at *12-13 (D.R.I. Nov. 6, 2014) (citing *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 36-37 (1st Cir. 2012)). Here, there was no bad faith. Plaintiffs disclosed the information shortly after the hospitalization occurred and once disclosure was authorized. Defendants therefore suffered little, if any, prejudice—particularly given the recent nature of the event. Under these circumstances, sanctions are not justified, as numerous courts have recognized in analogous situations.⁴ *See, e.g.*, *id.*, 2014 U.S. Dist. LEXIS 157125, at *12-13 (denying sanctions where the party did not act in bad faith and did not have a history of "routinely flout[ing] its discovery obligations and deadlines").

---

³ In mid-January 2026, Defendants served trial subpoenas on Plaintiffs' health-care providers seeking additional records for use at trial, confirming that they contemplate additional medical evidence at this stage. *See, e.g.*, Exs. 2-3 (subpoenas dated Jan. 27, 2026). Thus, Defendants' claim of prejudice rings hollow. They cannot pursue new medical evidence on the eve of trial while arguing that Plaintiffs' contemporaneous disclosure warrants the drastic sanctions of Rule 37(c)(1). This underscores that any alleged prejudice is merely tactical.

⁴ None of the cases cited by Defendants support their request to preclude this evidence, and their reliance on *HipSaver Co. v. J.T. Posey Co.*, 497 F. Supp. 2d 96 (D. Mass. 2007), is misplaced. There, the court excluded financial data that existed during discovery but was produced only after the discovery cutoff and on the eve of trial—after the plaintiff had represented that all relevant data had already been produced—which is plainly not what occurred here.

### B. The Hospitalization Evidence Is Relevant And Should Not Be Excluded.

Defendants ask the Court to usurp the role of the factfinder by attributing Mr. Steiner's late-2025 hospitalization to litigation-induced stress, even though the evidence and testimony will show that it was directly caused by the underlying tort at issue. *See Tuck v. City of Gardiner Police Dep't*, 2019 U.S. Dist. LEXIS 23180, at *10 (D. Me. Feb. 13, 2019) ("The question of causation is generally one of fact to be determined by the fact-finder . . . ." (quoting *Dyer v. Me. Drilling & Blasting, Inc.*, 984 A.2d 210, 219 (Me. 2009))). The Court should not do so.

Here, the medical records document that the trial postponement reactivated Mr. Steiner's PTSD arising from years of stalking, precipitating acute decompensation. Ex. 1 at 124-25. The hospitalization, thus, is relevant as it reflects the severity and course of the underlying tort-caused injury, not a free-standing claim for routine litigation anxiety. *See* Fed. R. Evid. 401. The probative value of a ten-day inpatient psychiatric hospitalization with documented PTSD and suicidality is substantial. *See* Fed. R. Evid. 403. The fact that such evidence is emotionally powerful does not make it unfairly prejudicial. Any risk of confusion can be cured with a limiting instruction clarifying that damages may be awarded only upon a finding of proximate causation.

## II. Defendants' Request to Pre-Admonish Mr. Steiner Should Be Denied.

Defendants have mischaracterized Plaintiffs' counsels' position. Neither Plaintiff nor his counsel would ever intend to disregard this Court's rulings. Counsel's acknowledgment during the meet and confer was not an admission of defiance, but a candid recognition that testimony involving the longstanding effects of the harassment and stalking, which resulted in a recent and sensitive hospitalization, presents unique practical challenges. When a witness is testifying about emotional distress and related events, the line between responsive testimony and reference to surrounding circumstances can be delicate. That reality does not signal noncompliance; it reflects the human dimension of testimony on intimate medical matters.

5

## **CONCLUSION**

The Court should deny Defendants' motion to exclude highly probative evidence.

Dated: February 18, 2026  
       White Plains, New York

Respectfully submitted,

*/s/Todd S. Garber*
Todd S. Garber
Erin Raye Kelley
FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP
1 North Broadway, Suite 900
White Plains, NY 10601
(914) 298-3283
tgarber@fbfglaw.com
ekelley@fbfglaw.com

Andrew G. Finkelstein
Brian D. Acard
Kenneth B. Fromson
Lawrence D. Lissauer
FINKELSTEIN & PARTNERS, LLP
1279 Route 300
Newburgh, NY 12551
(845) 563-9459
afinkelstein@fbfglaw.com
kfromson@lawampm.com
LLissauer@lawampm.com

Max Finkelstein
JACOBY & MEYERS, LLP
39 Broadway
Ste 1910
New York, NY 10006
(516) 246-2680
mfinkelstein@jmlawyer.com

Marc A. Diller
DILLER LAW, LLP
50 Congress Street
Ste 420
Boston, MA 02109
(617) 523-7771
marc@dillerlaw.com

6

                      Christopher R. Murphy
                      FOSTER, SCALLI & MURPHY, LLC
                      537 Broadway
                      Everett, MA 02149
                      (617) 387-7000
                      cmurphy@scallimurphy.com

*Counsel for Ina Steiner, David Steiner and Steiner Associates, LLC*

7

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2026, this filing was submitted via the CM/ECF system and will be transmitted electronically to all registered users listed on the Notice of Electronic Filing. Paper copies will be provided to any parties identified as non-registered participants.

*/s/ Todd S. Garber*
Todd S. Garber
